# Exhibit C

Westlaw.

Not Reported in F.Supp.2d                                                          Page 1

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
In Re: DIET DRUGS (Phentermine, Fenfluramine,
Dexfenfluramine) Products Liability Litigation.
Sheila BROWN, et al.,
v.
AMERICAN HOME PRODUCTS
CORPORATION.
**MDL Docket No. 1203**
**Civil Action No. 99-20593**

October 3, 2002.

Trial Order

Memorandum and Pretrial Order No. 2622

**MEMORANDUM AMD PRETRIAL ORDER
NO.2422**

*1 Bartle, J.
October 3, 2002

Before the court are the petitions for counsel fees
and costs in connection with the multidistrict
litigation and the class action settlement involving
the diet drugs known as "fen-phen." Included are
the joint petition filed by a group of 72 law firms,
consisting primarily of the Plaintiffs' Management
Committee and Class Counsel for plaintiffs in the
Nationwide Settlement with American Home
Products ("Joint Petitioners"), as well as several
petitions filed by individual law firms and attorneys
who believe they are entitled to compensation for
common benefit work ("Individual Petitioners").
The Joint Petitioners seek costs and fees from three
different sources. They move for an award from two
separate funds established pursuant to the class

settlement, the Fund A Legal Fee Escrow Account
and Fund B Legal Fee Escrow Account. They also
request fees and reimbursement of costs from the
MDL 1203 Fee and Cost Account for work done in
the multidistrict litigation. Various Individual
Petitioners likewise claim entitlement to fees from
these settlement funds. Other Individual Petitioners
move for the return of assessments they paid into
the MDL 1203 Fee and Cost Account.

**I. BACKGROUND**

A detailed description of the course of this
litigation, including the factual basis for liability,
the medical circumstances of the Class Members,
and the provisions of the settlement, can be found in
this court's Pretrial Order No. 1415, 2000 WL
1222042 (E.D. Pa. Aug. 28, 2000), entered by my
predecessor Judge Louis C. Bechtle. We will only
briefly summarize the relevant background and will
then focus on the aspects of this multidistrict
litigation and class settlement that are most
pertinent to fees and costs.

From 1989 through September, 1997, American
Home Products Corporation ("AHP") [FN1]
marketed and sold two prescription drugs for weight
loss in the United States under the brand names
Pondimin (fenfluramine) and Redux
(dexfenfluramine) ("diet drugs"). Beginning in
1992, physicians commonly prescribed Pondimin in
combination with phentermine, another prescription
diet drug. Phentermine was, and still is,
manufactured by various entities and is distributed
and sold under several different brand names. The
combination of Pondimin with phentermine was
often referred to as "fen-phen." Sales of both
Pondimin and Redux were brisk in the mid-1990's.
From January, 1995 until mid-September, 1997,
approximately four million persons in the United
States took Pondimin. Similarly, from June, 1996
through September, 1997, two million people in this
country used Redux.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                        Page 2

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

FN1. AHP changed its name to Wyeth on March 11, 2002. Since the joint petition was filed prior to that date, we will continue to use AHP for purposes of this memorandum.

During the period from March to August, 1997 the Mayo Clinic in Rochester, Minnesota observed and reported an association between the use of fenfluramine and/or dexfenfluramine and valvular heart disease ("VHD"). On September 15, 1997, AHP and the Federal Drug Administration ("FDA") announced that there would be no further sales of Pondimin and Redux in the United States. Since the withdrawal, epidemiological studies have established a causal relationship between fenfluramine and dexfenfluramine and VHD. Epidemiological studies have also established that fenfluramine and dexfenfluramine cause a fatal disease known as primary pulmonary hypertension ( "PPH").

*2 A wave of litigation followed the withdrawal of Pondimin and Redux. Individuals who had ingested diet drugs filed lawsuits and class actions in federal and state courts against AHP and other defendants, including manufacturers, distributors, weight-loss clinics, pharmacies and physicians, on December 10, 1997, the Judicial Panel on Multidistrict Litigation (the "JPML") designated the United States District Court for the Eastern District of Pennsylvania as the transferee court for IN RE: DIET DRUGS (PHENTERMINE/FENFLURA MINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION, MDL 1203 ("MDL 1203"). All cases filed in the federal judicial system were subsequently transferred here for coordinated and consolidated pretrial proceedings. By November, 1999 approximately 18, 000 individual cases and over 130 class actions had been filed. As of May 9, 2001 approximately 3,000 civil actions involving diet drugs had been transferred by the JPML to this court. This number will continue to increase as Class Members who elect either an Intermediate or Back-End Opt-Out initiate lawsuits.

Shortly after the transfer of cases to MDL 1203, the court established the Plaintiffs' Management

Committee ("PMC") to oversee the coordinated and consolidated pretrial proceedings and to conduct discovery of widespread applicability on behalf of plaintiffs in MDL 1203.[FN2] See Pretrial Order No. 6. As part of its duties and responsibilities, the PMC assisted and continues to assist all plaintiffs in MDL 1203 and state-federal coordinated proceedings by appearing frequently before this court, attending regular status conferences held by the Special Discovery Master,[FN3] preparing motions and responses regarding case-wide discovery matters and other pretrial issues, and maintaining a document depository for all documents produced in KDL 1203.

FN2. Ultimately, there were eleven PMC members: Arnold Levin of the Philadelphia law firm, Levin, Fishbein, Sedran & Barman; John J. Cummings, III of the New Orleans firm, cummings, Cummings & Dudenhefer; Stanley Chesley of the Cincinnati firm, Waite, Schneider, Bayless and Chesley; Michael Hausfeld of the Washington, D.C, firm, Cohen, Milstein, Hausfeld & Toll; Daryl Tschirn of San Diego, California; Elizabeth Cabraser of the San Francisco firm, Lieff, Cabraser, Heimann and Bernstein; Will Kemp of the Las Vegas firm, Harrison, Kemp & Jones; Dianne Nast of the Lancaster, Pennsylvania firm, Roda & Nast; Michael Papantonio from the Pensacola firm, Levin, Middlebrooks, Thomas, Mitchell, Green, Echsner, Proctor & Papantonio; John Restaino from the Newport Beach, California firm, Lopez, Hodes, Restaino, Milman, Skikos & Polos; and Roger Brosnahan of the Minneapolis firm, Brosnahan, Joseph & Suggs.

FN3. on April 14, 1998 the court appointed Gregory P. Miller, Esquire, as Special Discovery Master and vested him with the powers enumerated in Rule 53(c) and (d) of the Federal Rules of Civil Procedure for the purposes of administering a discovery schedule, mediating discovery disputes and, if

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

necessary, rendering decisions and recommendations to the court as to any disputed discovery-related matter. See Pretrial order No. 36.

**\*3** The PMC was also charged with establishing a Discovery Committee, which consisted of PMC members as well as additional lawyers representing plaintiffs in various state courts.[FN4] See Pretrial Order No. 38. The PMC Discovery Committee coordinated and completed numerous depositions of defendants' corporate representatives, employees and generic experts. The PMC and the co-chairs of the PMC Discovery Committee were permitted by the court to assign work to other "common benefit" attorneys ("PMC common benefit attorneys").[FN5] The members of the PMC, the PMC Discovery Committee, and the PMC common benefit attorneys are all Joint Petitioners in this matter.

> FN4. The persons appointed to the Discovery Committee in addition to the PMC members were Mike Williams from the Portland, Oregon firm of Williams, Dailey & o'Leary; Michael Slack from the Texas firm of slack and Davis; Michelle Parfitt of the Washington, D.C. based firm, Ashcraft and Gerrell; Alex MacDonald from the large Boston firm, Robinson & Cole; John Hornbeck from the Santa Monica firm, Sherman, Salkow, Petoyan & Weber; and Andrew Hutton out of the Kansas city firm, Hutton & Hutton. See Pretrial Order No. 38 at ¶ 2. Mr. Hutton resigned from the Committee on December 1,1998, and was replaced by John Baker from the Denver firm, Bragg & Baker. The persons appointed as co-chairs of the PMC Discovery Committee were PMC members, Roger Brosnahan and Arnold Levin. See Pretrial Order No. 38 at ¶ 1.

> FN5. The following law firms participated in MDL 1203 as PMC common benefit attorneys: Alley & Ingram; climaco, Lefkowitz, Pecca; Wilcox, & Garofoli, L.P.A.; Gancedo & Nievas; Dennis Mackin; Norrum & Pearson, P.A.;

Robinson, Calcagnie, & Robinson; Sybil Shainwald; Spangenberg, Shibley & Liber, LLP; Law Office of Daniel Thistle; and Weisman, Goldberg & Spitzer.

In late April, 1999, AHP and a coalition of plaintiffs' attorneys consisting of the PMC and counsel for plaintiffs in certified state class actions pending in Illinois, Hew Jersey, New York, Pennsylvania, Texas, Washington, and West Virginia began negotiations for a global resolution of the diet drug litigation.[FN6] As a result of the negotiations, on November 18, 1999 the parties executed a Nationwide class Action Settlement Agreement with AHP (the "Settlement Agreement" ). Five days later the court granted preliminary approval of the settlement. see Pretrial Order No. 997, At that time, the court also established procedures for providing notice and conducting fairness hearing discovery. From May 2, 2000 through May 11, 2000 the court held a hearing to consider the fairness, reasonableness and adequacy of the settlement. Prior to the hearing, the parties executed the First, Second, and Third Amendments, which were considered by the court as part of the Settlement Agreement. The court received additional testimony at a post-fairness hearing on June 1, 2000. Thereafter, the parties agreed to the Fourth Amendment, requiring the court to hold a hearing on August 10, 2000 to consider its provisions. The court approved the Settlement Agreement on August 28, 2000 in Pretrial Order No. 1415. Appeals of Pretrial Order No. 1415 followed. The Court of Appeals for the Third Circuit affirmed on October 3, 2001 with respect to the last outstanding appeal, and Final Judicial Approval, as that term is defined in the Settlement Agreement, occurred on January 3, 2002.

> FN6. The following persons acted as " Class Counsel" in connection with the settlement negotiations and were thereafter formally appointed by the court to serve in that capacity: Arnold Levin of Levin, Fishbein, Sedran & Berman; Michael D. Fishbein of Levin, Fishbein, Sedran & Berman; John J. Cummings, III of Cummings, Cummings & Dudenhefer;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

Stanley Chesley of Waite, Schneider, Bayless & Chesley; Gene Locks of Greitzer & Locks; Sol Weiss of Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C.; and Christopher Placitella of the firm, Wilentz, Goldman & Spitzer. See Pretrial order No. 997 at ¶ 5. Ultimately, Mr. Placitella resigned as Class Counsel and was replaced by Charles Parker of the firm, Hill & Parker. See Pretrial Order No. 1062; see also Pretrial Order No. 1415, 2000 WL 1222042, at *44

**\*4** Prior to Final Judicial Approval, Class Members had two options for seeking settlement benefits: the Accelerated Implementation Option ("AIO") or registration. By electing the AID, Class Members agreed to waive all of their opt-out rights in exchange for benefits, if eligible, regardless of whether the Settlement Agreement ultimately achieved final approval. In contrast, eligible Class Members who registered for benefits were not entitled to receive any benefits until after Final Judicial Approval, Class Members who registered also preserved potential future opt-out rights under the terms of the Settlement Agreement. As of Final Judicial Approval, the AIO ceased as an option available to class Members. See Settlement Agreement at § V.B. Class Members, however, may still register for various benefits in accordance with the deadlines set forth in the settlement agreement and the official Notice of Final Judicial Approval.

There are two categories of benefits available to all Class Members under the Settlement Agreement. First, Class Members may apply for medical monitoring and refund benefits. These benefits differ depending on the length of time that a Class Member ingested diet drugs. Class Members who took drugs for 61 days or more are entitled to: (1) a free echocardiogram and physician visit as part of a screening program or reimbursement for an echocardiogram received outside of the screening program; (2) additional medical services to monitor their VHD of up to $10,000 in value or $6,000 in cash if they are FDA Positive[FN7]; and (3) a refund for prescriptions up to a maximum amount of $500 if there are sufficient funds available to pay such

benefits after payment of all other expenses and benefits. See Settlement Agreement at § IV.A.1. Class Members who took diet drugs for 60 days or less are entitled to: (1) a refund of $30 per month for Pondimin and $60 per month for Redux; (2) reimbursement for out-of-pocket costs for certain privately-obtained echocardiograms if they are FDA Positive; and (3) additional medical services to monitor their VHD of up to $5,000 in value or $3,000 in cash if they are FDA Positive.[FN8] Id. at § IV.A.2. Additionally, the Settlement Agreement provides for the establishment of a Medical Research and Education Fund in the amount of $25 million to finance medical research and education related to heart disease and for the creation of a medical/legal registry to track the medical conditions of Class Members. Id. at IV.A.3.

> FN7. In general, "FDA Positive" means mild or greater regurgitation associated with the aortic valve and/or moderate or greater regurgitation associated with the mitral valve. See Settlement Agreement at § I.22.

> FN8. Class Members could also receive an echocardiogram and associated interpretive visit for compassionate and humanitarian reasons.

**\*5** Second, Class Members who have serious VHD may apply for "matrix benefits. "[FN9] All Class Members diagnosed as FDA Positive or as having Mild Mitral Regurgitation by the end of the Screening Period,[FN10] and their Derivative Claimants,[FN11] are qualified to receive matrix benefits. Id. at §§ IV.B.1.a; IV.B.1.b; IV.B.1.c. Furthermore, all Class Members diagnosed as having endocardial fibrosis by September 30, 2005, and their Derivative Claimants, are also eligible to receive matrix benefits. Id. at §§ IV.B.1.d; IV.B.1.e; IV.B.1.f. The value of matrix benefits for Class Members ranges from $7,389 to $1,485,000, Id. at § Iv.B.2.a. A particular Class Member's benefit is calculated based on his or her age at the time of diagnosis of a matrix-level condition and the severity of the condition. Id., at §§ IV.B.2.a and IV.B.2,b. Recognizing the progressive nature of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

VHD, the Settlement Agreement also allows for damage payments to Class Members who develop serious levels of VHD at any time up to December 31, 2015. Id. at § IV.C.2.

> FN9. The matrix benefits available are set forth on four payment matrices found at section IV.B.2.a of the Settlement Agreement.

> FN10. Under the Settlement Agreement, the Screening Period is the twelve-month period following Final Judicial Approval, which may be extended for six months by the Court for good cause shown. See Settlement Agreement at § IV.A.1.a. As previously noted, the Settlement Agreement achieved Final Judicial Approval on January 3, 2002. See Official Notice of Final Judicial Approval at 2, 5. Accordingly, absent extension by the court, the official end date for the Screening Period is January 3, 2003.

> FN11. Derivative Claimants are members of the settlement class and may include spouses, parents, children, dependents, other relatives or "significant others" of Class Members who ingested diet drugs. See Settlement Agreement at § II.B.

Two separate funds were established under the Settlement Agreement to provide the above benefits to Class Members, and the AHP Settlement Trust (" Trust") was created to administer them. See Settlement Agreement at §§ III.A.1; III.B; and III.C. Fund A provides compensation for all non-matrix benefits available under the Settlement Agreement, the associated costs of administering those benefits, and the out-of-pocket and pre-settlement litigation expenses of plaintiffs' counsel approved by the court for reimbursement in relation to Fund A. Id. at § III.B.2. AHP has fully funded Fund A with $1 billion. Id. at § III.B.1. As of June, 2002, Fund A has paid benefits in the amount of $93,339,673.

Fund B is the source of matrix benefits, the associated costs of administering those benefits, and attorneys' fees and common benefit fees and costs approved by the court in relation to Fund B. Id. at § III.C.4.C. AHP pays into Fund B on an on-going basis. As of June, 2002, $743,627,102 in Fund B matrix benefits have been disbursed to Class Members. Ultimately, AHP is obligated for a total of $2.55 billion plus accretions in Fund B benefits, minus Credits to which it is entitled under the Settlement Agreement.[FN12] If the Trustees[FN13] determine that all Fund A purposes have been satisfied, the remaining balance of Fund A is transferred to Fund B. Any such transfer from Fund A to Fund B does not reduce the maximum payment obligation of AHP to make Fund B payments. Id., at §§ III.B.4 and III.B.5.

> FN12. Pursuant to section VILA of the Settlement Agreement, AHP is entitled to Credits against its Fund B obligations for payments made outside of the Settlement Agreement to Class Members who exercised either an Initial opt-Out or Back-End Opt-Out right. See Settlement Agreement at § VILA, The term Full Credit is defined as the lesser of an amount paid to a Class Member outside of the Settlement Agreement or the matrix payment for which such Class Member would have qualified, less the 9% sequestered for attorneys' fees. Id. at § VII.A.4. initial Opt-Out Credits are capped at $300 million. Id. at § VII.A.2.

> FN13. Seven trustees were appointed by the court in Pretrial Order No. 1159.

## II. PROVISIONS AND PROCEDURES REGARDING AN AWARD OF FEES AND COSTS

*6 The counsel fees at issue here will be drawn from three different funds: the Fund A Legal Fee Escrow Account, the Fund B Legal Fee Escrow Account, and the MDL 1203 Fee and Cost Account. We explain each in turn.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

### A. Fund A Legal Fee Escrow Account

After Final Judicial Approval AHP deposited $200 million into the Fund A Legal Fee Escrow Account. The funds in this account, including accrued interest, are earmarked for attorneys' fees to Class Counsel, Common Benefit Attorneys [FN14] and incentive awards to Class Representatives in state and federal court actions.[FN15] See Settlement Agreement at §§ III.B.3; VIII.E.1.a; Pretrial Order No. 2386. All payments from the Fund A Legal Fee Escrow Account are subject to the Court's approval. See Settlement Agreement at § III.B.3. AHP cannot take a position with regard to an award of attorneys' fees. Id. Any amount in the Fund A Legal Fee Escrow Account not awarded by the court is returned to AHP. Id.

> FN14. Common Benefit Attorneys are defined in the Settlement Agreement as those attorneys who actually contributed to the creation of the settlement funds through work devoted to the "common benefit" of Class Members, including any attorney who actually conferred benefits upon the class through State court litigation. See Settlement Agreement at § 1.14. These common Benefit Attorneys differ from the PMC common benefit attorneys discussed earlier.

> FN15. These class actions include: (1) Brown v. AHP, MDL No. 99-20593; (2) Jeffers V. AHP, MDL No. 98-20626; (3) Vadino v. AHP (New Jersey); (4) the New York Diet Drug Litigation; (5) the Pennsylvania Diet Drug Litigation; (6) St. John v. AHP (Washington); (7) Rhyne v. AHP (Illinois); (8) Earthman v. AHP (Texas); and (9) Burch v. AHP (West Virginia).

### B. Fund B Legal Fee Escrow Account

Attorneys' fees associated with Fund B are paid out of the Fund B Legal Fee Escrow Account. In the Settlement Agreement the parties agreed that these fees should not exceed $229 million, or 9% of the $2.55 billion which AHP is mandated to pay into Fund B for the benefit of Class Members. See Settlement Agreement at § VIII.E.1. Therefore, 9% of every matrix compensation benefit awarded to a Class Member is set aside in the Fund B Legal Fee Escrow Account. Id.; Pretrial Order No. 2423. In the event a Class Member is represented by counsel, the 9% assessment is deducted from the individual attorney's fee. Prior to Final Judicial Approval, the Trust placed 9% of any matrix benefit awarded to a class member in escrow. This sum, $59,819,624, was transferred to the Fund B Legal Fee Escrow Account after Final Judicial Approval. Due to advanced contributions by AHP, this fund now contains $229 million.

*7 The court is to award counsel fees from the Fund B Legal Fee Escrow Account in accordance with applicable principles of law. See Settlement Agreement at § VIII.E.1. If the court awards less than the 9% assessments in the Fund B Legal Fee Escrow Account, the monies not awarded will be returned to the Class Members or individual attorneys representing Class Members who contributed the 9% set aside, Id. at § VIII.E.1.c.

### C. MDL 1203 Fee and Coat Account

The MDL 1203 Fee and Cost Account was established by Pretrial Orders Nos. 467 and 517. Realizing that there needed to be a method to compensate the PMC and others for costs and attorneys' fees for providing litigation-wide services, the court required the sequestration of 9% of all payments made by defendants to plaintiffs in settlements or in satisfaction of judgments in MDL 1203. See Pretrial Orders Nos. 467 and 517. These 9% assessments, which are deposited in the MDL 1203 Fee and Cost Account, are deducted from the attorneys' fees payable to an individual plaintiff's counsel and, thus, do not diminish the plaintiff's recovery. See Pretrial Order No. 467 at ¶ 8. For example, if AHP and an MDL 1203 plaintiff reach a $100,000 settlement, 9% or $9,000, is deducted from the amount that is owed to the plaintiff's attorney under his or her retention agreement. If the attorney was to receive a 33% contingency fee, he or she would ultimately receive $24,000

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 7

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

($33,000-$9,000) and the plaintiff would receive $67,000, the same as if there had been no assessment. See Pretrial Order No. 2152.[FN16]

> FN16. This example ignores the effect of litigation expenses for simplification. For more detailed examples of how the calculations should be performed, see Pretrial Order No. 2152 Ex. A.

Pretrial Order No. 467 also approved a coordination agreement between MDL 1203 and judicial proceedings in California. Pursuant to this agreement, 6% of all payments made by defendants to plaintiffs with California cases is deposited into the MDL 1203 Fee and Cost Account. See Pretrial Order No. 467 at ¶¶ 10-11. Again, this assessment is deducted from the attorney's fee, not the plaintiff's net recovery. In addition, Pretrial Order No. 467 further directed that any state court action would be eligible for state-federal coordination in the event that a court with jurisdiction over the state court action entered an order requiring, among other things, the sequestration of a 6% assessment. Id. at ¶¶ 13-16. Many individual counsel in state cases entered into private coordination agreements with the PMC whereby they agreed to the 6% assessment in exchange for access to the MDL work product and participation in the MDL management structure.

*8 As of June, 2002, approximately $143 million had been deposited into the MDL 1203 Fee and Cost Account. The court is authorized by Pretrial Order No. 467 to award reimbursement of costs and attorneys' fees to the PMC and PMC common benefit attorneys from some or all of the MDL 1203 Fee and Cost Account. [FN17] After awarding reimbursement of costs and payment of attorneys' fees, the court may refund any remaining amount in the MDL 1203 Fee and Cost Account or may enter an order for the disposition of the funds as appropriate under the law. Id. at ¶ 21.

> FN17. Pretrial Order No. 467 expressly limits an award of fees to those attorneys who were authorized by the PMC to

perform common benefit services. See Pretrial Order No. 467 at ¶ 7.

**D. Procedures**

Beginning in Pretrial Order No. 16, the court developed various procedures to govern the recording and reimbursement of time and expenses. All counsel who wished to make an application for fees were required to submit a report of time and expenses, in appropriate form, along with a fee petition to the court-appointed auditor Alan Winikur, C.P.A. on or before June 30, 2001. See Pretrial Orders Nos. 16, 1164, 2224. The auditor was directed to disallow certain time, including time that was not reported in accordance with Pretrial Order No. 16, time that was expended objecting to the Settlement Agreement, time that appeared grossly excessive, and time that was not authorized by the PMC for common benefit work. See Pretrial Order No. 2224 at ¶ 4.

The auditor received submissions from 106 different law firms. On December 31, 2001 he filed a report containing the results of the audit. He reported that 72 firms had submitted 354,152.29 hours of professional time with a current lodestar value of $101,027,494.54 and had documented $15,989,242.31 in reimbursable expenses that were eligible for inclusion in the joint fee petition. The time submissions of 34 firms, amounting to 47,451.98 hours of time with a lodestar value of $16,725,716.15, were disallowed.

The joint petition for an award of attorneys' fees and reimbursement of expenses, filed February 15, 2002, includes all fee presentations that conformed to the court's orders according to the auditor's determination. Twelve separate fee petitions were filed by law firms whose time was disallowed by the auditor and not included in the joint petition, ultimately, seven of these twelve petitions were withdrawn or resolved and are no longer before the court. The court also allowed time for the filing of objections to the petitions and responses to the objections. Eleven objections to the joint petition were filed, one of which was later withdrawn. Several of these objections came from Individual Petitioners who objected to the joint petition only

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 8

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

insofar as it did not include them. The Joint Petitioners presented objections to all of the individual fee petitions.

**\*9** The Supreme Court has cautioned that "[a] request for attorney's fees should not result in a second major litigation," Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Mindful of this directive but cognizant of the magnitude of the potential fee award at issue, the court permitted limited discovery before the fee hearing. See In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 338 (3d Cir. 1998). Any person who wished to take discovery was required, on or before April 5, 2002, to file a motion for leave to do so, along with a detailed explanation of the discovery requested. see Pretrial Order No. 2387 at ¶¶ 15-19. The court denied the hulk of requests because they were overbroad, cumulative, or irrelevant but did allow the deposition of Michael D. Fishbein, Esquire. Mr. Fishbein is knowledgeable about the work performed by the PMC in MDL 1203 and is one of the attorneys appointed as class Counsel for the settlement class. Mr. Fishbein was deposed by a group of objectors and Individual Petitioners for two full days, on May 15 and 16, 2002.

After limited supplemental briefing, a two-day fee hearing was held on June 25 and 26, 2002.

### III. AWARD OF ATTORNEYS' FEES AND COSTS

The Joint Petitioners request an award of attorneys' fees and costs totaling $567 million. As a result of the class action settlement, they seek $200 million in attorneys' fees from the Fund A Legal Fee Escrow Account and $,229 million from the Fund B Legal Fee Escrow Account for a total of $429 million. According to the Joint Petitioners, the $429 million represent 11.5% of the $3.75 billion face amount of the settlement or 4.07% of the "real value " of the settlement if claims preservation and health preservation benefits, as estimated by the Joint Petitioners, are considered. Due to future work which they acknowledge they will have to perform in connection with the administration of the settlement, they recognize that some of the fee

should be withheld at this time. They suggest that $14 million of the $429 million be reserved for later payment. Finally, they request an award equal to the full 9% and 6% assessments from the MDL 1203 Fee and Cost Account. At the time the joint petition was filed, there were approximately $138 million in that account.

### A. settlement Funds

"[A] thorough judicial review of fee applications is required in all class action settlements." In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig., 55 r.3d 768, 819 (3d Cir. 1995). This oversight function serves not only to detect abuse but also to deal with potential public misunderstandings. Id. at 820. "[T]he district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper. This duty of the court exists independently of any objection." In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 730 (3d Cir. 2001) (quoting Zucker v. Occidental Petroleum Corp., 192 F.3d 1323, 1328-29 (9th Cir. 1999)). There are two methods for calculating attorneys' fees: the percentage of recovery method and the lodestar method. Id. at 732. The percentage of recovery method is generally used in common fund cases. In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 333 (3d Cir. 1998). It "resembles a contingent fee in that it awards counsel a variable percentage of the amount recovered for the class." GM Trucks, 55 F.3d at 819 n.38. The lodestar method has traditionally been applied in statutory fee-shifting cases. Prudential, 148 F.3d at 333. The lodestar is calculated by multiplying the hours worked by counsel by a reasonable hourly fee. Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000).

**\*10** In recent years there has been much discussion about the proper methodology to employ when awarding counsel fees in a class action settlement. See, e.g., In re Cendant Corp. Liticr., 264 F.3d 201, 255-56 (3d Cir. 2001); GM Trucks, 55 F.3d at 821-22; In re Orthopedic Bone Screw Prods. Liab. Litig., 2000 WL 1622741, at \*4-5 (E.D. Pa. Oct.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 9

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

23, 2000); Report of the Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237 (1985). Indeed, the Joint Petitioners spent a significant portion of their supporting brief detailing the respective pros and cons of each approach and urging the court to adopt the percentage of recovery method. In response, several objectors argued that the lodestar calculation should be used to avoid an undeserved windfall for the Joint Petitioners. We are not persuaded by the objectors. The day of the lodestar has passed in class actions such as this, save for perhaps its use as a cross-check in some cases. See Cendant, 264 F.3d at 285. It is now clear that in the Third Circuit the percentage of recovery method should be utilized in common fund cases. Id. at 256; Gunter, 223 F.3d at 195 n.1; Prudential, 148 F.3d at 333-34.

The percentage of recovery method first requires that the court make an assessment of the value of the settlement. GM Trucks, 55 F.3d at 822. Then, as mentioned above, the court awards a reasonable percentage of that value as attorneys' fees. In setting a reasonable percentage award the Third Circuit has instructed courts to consider the following, nonexclusive list of factors:
(1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

Gunter, 223 F.3d at 195 n.1; see Cendant PRIDES, 243 F.3d at 735-41.

An application of the above factors, or other similar methodology, has resulted in fee awards in smaller class action settlements ranging anywhere from 19% to 45%. See GM Trucks, 55 F.3d at 822; In re Ikon Office Solutions, Inc. Sec. Litig., 194 F.R.D. 166, 194 (E.D. Pa. 2000). In class actions involving mega-funds, or those larger than $100 million, the percentage is generally lower. For example, in Cendant PRIDES, our Court of Appeals charted class action settlement fee awards in 18 federal

mega-fund cases since 1985 and found a range of 2.8 % to 36%. Cendant PRIDES, 243 F.3d at 737-38 . Of the 18 cases, however, only three involved settlements of over $1 billion. In those, and the additional case we have found dealing with a class settlement fund greater than $1 billion, the percentages range from 5% to 14%. Id.; In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465 (S.D.N.Y. 1998). These cases are particularly relevant because our Court of Appeals has instructed that "district courts setting attorneys' fees in cases involving large settlements roust avoid basing their awards on percentages derived from cases where the settlement amounts were much smaller." Cendant PRIDES, 243 F.3d at 736.

### 1. Joint Petitioners

*11 As detailed above, the Joint Petitioners seek a fee equal to between 4.07% and 11.5% of the settlement, depending on how it is evaluated. However, it is premature to perform a definitive percentage of recovery analysis at this point. In the usual situation the fee is sought at or near the conclusion of litigation where the only other function remaining is to pay out the court-approved settlement dollars to the class members. The court is then in a good position to review the settlement in light of the Gunter factors. In this class action, in contrast, the settlement is still in many respects in its early stages. Benefits are available under the Settlement Agreement for certain medical conditions which occur in the future, up until December 31, 2015. Thousands of Class Members have not yet received their overdue benefits and may not receive their benefits for some time to come. There is a significant amount of work still to be done by the Joint Petitioners in assisting the administration of the Settlement Agreement. And, contrary to what was originally thought when the joint petition was submitted, much of this work so far has not been routine and commonplace. The administration of this mass tort settlement, involving a Settlement Agreement of over 140 printed pages, is turning out to be as complex and demanding as the litigation that preceded it. Many issues regarding interpretation of the Settlement Agreement, the operation and funding of the Trust,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                     Page 10

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

and the payment of benefits to Class Members remain to be resolved. The court is still faced with a continual flow of contested motions and hearings on a variety of matters which could affect the value and efficacy of the settlement.

In particular, the processing and determination of matrix level benefits from Fund B has been much more difficult and less clear cut than was originally expected. The court recently held a six-day hearing on a motion by the Trust against two law firms whom the Trust alleges are submitting matrix claims on a widespread basis that lack a reasonable medical foundation. Class Counsel and AHP have joined in the motion. The motion also makes allegations against certain cardiologists who have certified Green Forms on behalf of the clients of these law firms.[FN18] At the heart of the dispute are complicated issues ranging from the proper interpretation of echocardiograms under the Settlement Agreement to the correct way to fill out the Green Form. Issues such as these will no doubt also be prevalent as the Screening Period draws to an end and Class Members elect to exercise the Intermediate Opt-Out right. [FN19] Two other motions filed recently reinforce the court's cautiousness. Class Counsel and AHP have filed a joint motion for an emergency stay of processing matrix claims. The basis for this motion is the contention that a significant number of exaggerated or unfounded claims for matrix benefits are being submitted to the Trust. class Counsel and AHP argue that if corrective measures such as additional audits are not taken a large number of unmeritorious claims will be paid, with the result that Fund B will be depleted and Class Members with valid matrix claims will not receive their benefits. Class Counsel and AHP have devised proposals for remedying the perceived problems. However, these proposals, including an additional amendment to the Settlement Agreement, undoubtedly will require hearings and much extra effort on the part of the court and counsel alike.

> FN18. The Green Form is utilized by Class Members applying for matrix benefits. To complete the Green Form a Class Member must obtain answers to a series of

> questions from a Board-Certified Cardiologist or Cardiothoracic Surgeon in Part II of the form.

> FN19. The Intermediate Opt-Out is available to certain Class Members who are diagnosed with FDA Positive levels of aortic and mitral regurgitation after September 30, 1999 but before the end of the Screening Period. See Settlement Agreement at § IV.D.3.

**\*12** Questions regarding the value of the settlement and the benefits conferred on Class Members clearly remain. See Gunter, 223 F.3d at 195 n.1. Under the circumstances, the court finds that it is not possible to undertake a Gunter analysis and make a full fee award from the Fund B Legal Fee Escrow Account at this time.

In addition, the Trust has followed with an emergency motion seeking the suspension of certain Fund A processing deadlines. In it the Trust explains that with its current physical location and staff resources it is unable to meet the Fund A processing deadlines set forth in the settlement Agreement due to Final Judicial Approval occurring earlier than anticipated and the unexpected high volume of claims it has received. It requests that the court stay all deadlines for the time being to allow it to develop a workable plan for future Fund A processing. Again, with this issue pending, it would be premature to make a final award of counsel fees from the Fund A Legal Fee Escrow Account.

Nonetheless, the Joint petitioners have engaged in a herculean effort. Without question, they have accomplished a significant amount of necessary and commendable work over a number of years with respect to the class settlement, with no fee recovery on their part to date. To make them wait any longer for at least some fee award would be grossly unfair.

Considering the foregoing, the court finds that it is fair and reasonable to make an interim fee award at this juncture in the amount of $80 million - $40 million from the Fund A Legal Fee Escrow Account and $40 million from the Fund B Legal Fee Escrow Account. We believe an interim award of this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 11

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

magnitude recognizes the remarkable contribution of Class Counsel and provides them with at least partial compensation at a time when the court is not really able to analyze fully the Gunter factors and make a final award. Making a larger award at this time, in the court's view, would be inequitable when so many class Members are experiencing prolonged delays in the receipt of their benefits, and Class Counsel have recently filed a motion for a further delay in the payment of Fund B matrix benefits.

This interim award, of course, is less than one-fifth of the $429 million requested by Class Counsel. It amounts to only about 2% of the $3.75 billion face value of the settlement. As a percentage, the interim award is less than one-half of the 5% fee found by our Court of Appeals to be at the low end of awards in mega-fund class action cases. See Cendant PRIDES, 243 F.3d at 737-38. Under the circumstances, we are confident that an $80 million interim award would not run afoul of Gunter before a full analysis can be undertaken.

When the pressing issues delineated above have been resolved and the entire picture is less clouded, Joint Petitioners and others ruled herein to be entitled to a fee may make further application for additional compensation but no earlier than October 1, 2003. We hope by that point the court will be in a better position to make a final fee award to Class counsel, after consideration and application of Gunter.

### 2. Individual Petitioners

*13 certain Individual Petitioners assert that the work they performed in the diet drug litigation conferred a benefit on the class and, thus, they should be awarded fees from the settlement funds. After reviewing their submissions, the court finds, with two exceptions, that the Individual Petitioners are not entitled to any fees. We briefly address each individual petition.

### a. The Becnel Attorneys[FN20]

FN20. Daniel S. Becnel, Jr., Esquire, Robert M. Becnel, Esquire, Lynn E. Swanson, Esquire, Diane K. Zink, Esquire and the Law Offices of Daniel E. Becnel, Jr. are referred to collectively as the " Becnel Attorneys."

In their Fee Presentation, the Becnel Attorneys seek an award of fees and expenses for work relating to the role of Daniel E. Becnel, Jr. as Co-Chair of the Plaintiffs' State Liaison Committee in HDL 1203 and an alleged study conducted by William E. Shell, M.D. (the "Shell Study"), which involved individuals, including some of the Becnel Attorneys' clients, who ingested diet drugs. With regard to the Plaintiffs' State Liaison Committee, the Becnel Attorneys assert that a portion of the time submitted relates to Mr. Becnel's review of documents in furtherance of his role on this committee. The remaining time submissions pertain to the Becnel Attorneys' purported assistance in the Shell Study, which they believe benefitted all plaintiffs in MDL 1203 and the settlement class.

It is undisputed that the court created the Plaintiffs' State Liaison Committee and appointed 20 attorneys to serve on this committee in Pretrial Order No. 39. It also is undisputed that Mr. Becnel was appointed to serve as Co-Chair of this committee. The Becnel Attorneys, however, have failed to show that this committee made any substantive efforts to achieve federal-state coordination. In fact, there are very few references that specifically refer to this committee in the Becnel Attorneys' time records. The Becnel Attorneys may have reviewed MDL 1203 documents and initially discussed federal-state issues, but they have not met their burden in establishing that this work conferred an actual benefit on plaintiffs in MDL 12,03. Thus, they are not entitled to any fees or expenses associated with this work.

The Becnel Attorneys also have failed to show that they are entitled to fees or expenses for the work they performed relating to the Shell Study. There is no evidence that the Becnel Attorneys commissioned the shell Study.[FN21] Dr. Shell has testified that he was retained by the Becnel

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Attorneys only to evaluate the medical conditions of their clients in furtherance of their individual claims, for which the Becnel Attorneys were compensated from the recoveries of those clients. Furthermore, there is no proof that the Shell Study inured to the benefit of MDL 1203 plaintiffs or the settlement class. The Shell Study has not been published and was not entered into evidence at the fairness hearing in support of the settlement. Accordingly, the Becnel Attorneys are not entitled to any compensation.[FN22]

> FN21. In addition, work relating to the Shell Study was not approved by the PMC as common benefit work.

> FN22. It is unclear whether the Becnel Attorneys were seeking reimbursement from the MDL 1203 Fee and Cost Account, the settlement funds or both. We do not fault the Becnel Attorneys for this confusion, especially because the Joint Petitioners did not separate the recoveries they seek between the funds. In any event, the court has concluded that the Becnel Attorneys are not entitled to reimbursement of fees and costs from any of the funds at issue.

**b. Parker and O'Connell, PLLC**

**\*14** The law firm of Parker fit O'Connell, PLLC (" Parker & O'Connell") requests an award of attorneys' fees and reimbursement of expenses for prosecuting an uncertified medical monitoring state class action against AHP in Jefferson County Circuit Court in Louisville, Kentucky.[FN23] The state court dismissed this class action on the grounds that medical monitoring claims are not recognized under Kentucky law. This dismissal was affirmed by the Kentucky Court of Appeals and, more recently, by the Kentucky Supreme Court.[FN24] Wood v. Wyeth-Ayerst Labs., 2002 WL 1940664, at \*10 (Ky. Aug. 22, 2002). Parker & O'Connell argues that, despite the Kentucky Supreme Court's ruling, its medical monitoring class action was a potential liability for AHP and, therefore, AHP was motivated to enter into the Settlement Agreement because of it. According to Parker & O'Connell, this "motivation" benefitted the settlement class. Parker & O'Connell also argues that its class action is similar to an uncertified class action filed by the Gonzalez Law Office, whose application was included in the joint petition. Thus, Parker & O'Connell believes that its time and expenses also should have been part of the joint petition.

> FN23. Parker & O'Connell also filed two additional class action lawsuits in federal court, which were transferred to MDL 1203 and then voluntarily dismissed without prejudice.

> FN24. At the time of the filing of Parker & O'Connell's individual petition, the Supreme Court of Kentucky had not yet ruled on this matter.

There is no proof that Parker & O'Connell's state class action influenced AHP in negotiating and entering into the Settlement Agreement. Thus, the court cannot conclude that this particular class action conferred any benefit on the settlement class. The fact that the Gonzalez Law Office's Application was included in the joint petition also does not establish Parker & O'Connell's entitlement to fees and expenses. Although both of the class actions filed by Parker & O'Connell and the Gonzalez Law Office were dismissed, the Gonzalez Law Office was successful in having the dismissal reversed by the appellate court in Florida, According to the Joint Petitioners, this reversal was a benefit to the settlement class. For the foregoing reasons, the court denies Parker & O'Connell's request for an award fees and reimbursement of expenses.

**c. Objectors' Counsel**

The following Individual Petitioners seek an award of fees and expenses based on objections they made to the settlement: (1) Pritchard, McCall & Jones; (2) Edward W. Cochran, Esquire; (3) Paul S. Rothstein, Esquire; (4) Cummins & Cronin, LLC; (5) N. Albert Bacharach, Jr., Esquire; (6) R. Steven

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 13

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Griffis, Esquire; (7) Bishop & Associates; (8) George W. Cochran, Esquire; (9) Thompson Hustler, Esquire; and (10) Behrend & Ernsberger, P.c. ("Objectors' Counsel"). Objectors' counsel argue that they are entitled to fees and expenses because their supplemental objections led to the Fourth Amendment, which addressed issues relating to cash flow in funding matrix benefits and AHP's rights to Credits against its funding obligations for payments to Class Members who opted-out of the settlement.

*15 The objections that purportedly resulted in the Fourth Amendment were set forth in a two-page document that was filed one day prior to the commencement of the fairness hearing. The court finds that these objections did not "enhance" the settlement for several reasons. First, the record shows that Class Counsel and AHP began negotiating the terms of the Fourth Amendment before Objectors' Counsel filed their supplemental objections. Second, Objectors' Counsel unconditionally withdrew the supplemental objections, with prejudice, during the fairness hearing. Although objectors' Counsel assert that they withdrew their objections because they were told that the content of their objections would be addressed in the Fourth Amendment, Objectors' Counsel have not submitted any proof that their objections caused the parties to negotiate the Fourth Amendment.[FN25] Third, due to the number of initial Opt-Outs filed prior to the fairness hearing, it was apparent that AHP's right to Credits might negatively impact the solvency of Fund B. Objectors' Counsel seek $2.75 million in fees and expenses. The court finds that it would be inappropriate to award Objectors' Counsel this amount for pointing out the obvious, especially because Fourth Amendment negotiations were already in progress at the time the supplemental objections were made. Thus, for the foregoing reasons, the court finds that Objectors' Counsel are not entitled to an award of fees and expenses because they have failed to show that their supplemental objections actually conferred a benefit on the settlement class.

FN25. It actually appears as if Objectors'

Counsel withdrew their objections because the court was about to consider striking the objections because Objectors' Counsel had failed to comply with their discovery obligations.

**d. Non-PMC Refund Counsel[FN26]**

FN26. References to "Non-PMC Refund Counsel" include the following firms: (1) Finkelstein, Thompson & Loughran; (2) Krause & Kalfayan; (3) G. Martin Meyers, P.C.; and (4) Chitwood & Harley.

Non-PMC Refund Counsel request an award of fees and reimbursement of costs relating to their prosecution of non-certified, nationwide class actions for purchase price refunds. In support of their request, Non-PMC Refund Counsel argue that: (1) they conducted substantial factual investigation and legal research in preparing for the filing of their actions; (2) once the actions were filed, they preserved and pursued the class refund claims by moving for class certification; (3) at the direction of the special Discovery Master, they participated in the "Non-PMC Coordinating Committee," which involved participation in discovery and coordination of the compilation of contested and uncontested facts relating to the Non-PMC's class certification motions; (4) with the approval of the court, they participated in discovery prior to the fairness hearing; and (5) they filed written comments in support of the Settlement Agreement. Furthermore, Non-PMC Refund Counsel argue that, unlike the PMC, they pursued nationwide class refund claims, which ultimately became part of the Settlement Agreement with AHP.

*16 According to the Joint Petitioners, Non-PMC Refund Counsel are not entitled to any award because they have failed to establish that their specific services benefitted the settlement class. The Joint Petitioners also argue that AHP was "indifferent" to the refund claims asserted by Non-PMC Refund counsel. In particular, the Joint Petitioners explain that refund claims were included in the Settlement Agreement because at the time the parties were negotiating the Settlement Agreement

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

state class counsel in New Jersey were trying a certified class action in which they were seeking refunds under New Jersey's consumer fraud statute. Moreover, the Joint Petitioners assert that because Non-PMC Refund Counsel did not actively pursue their medical monitoring claims, it was questionable whether the court had jurisdiction over their refund claims.

The key issue in determining whether attorneys are entitled to fees and expenses from a common fund is whether the work performed benefitted the settlement class. Although it appears that the amount of work performed by Non-PMC Refund Counsel in prosecuting their class actions was significant, the record does not support a finding that these actions caused AHP to include refund benefits in the Settlement Agreement. To the contrary, the record shows that refund claims were included in the Settlement Agreement as a result of the advancement of such claims in the class action trial pending in New Jersey. Thus, Non-PMC Refund Counsel are not entitled to fees and expenses associated with prosecuting their refund class actions.

Nevertheless, the court recognizes that, at the direction of the Special Discovery Master, Non-PMC Refund Counsel did perform certain duties in connection with the Non-PMC Coordinating Committee. Although these services were not approved by the PMC and, thus, do not constitute common benefit work under Pretrial Order No. 467, the court finds that a limited award to Non-PMC Refund Counsel for the work performed in this capacity is warranted because these services assisted the court in its consideration of the various class actions pending in MDL 1203.

### e. Kentucky Applicants

Gallion, Baker & Bray, P.S.C., the Cunningham & Grundy Law Group and the Mills Law Office (the "Kentucky Applicants") have submitted an individual petition for fees and expenses relating to a certified state class action in Kentucky. In May, 1999, the Kentucky Applicants achieved certification for their class action on behalf of

60,000 potential claimants in Kentucky who purchased diet drugs from Dr. Rex Duff and Barratries, Inc. Therefore, in June, 1999, they filed a motion for a trial date which was not heard until November, 1999. [FN27] According to the Kentucky Applicants, upon AHP's request, they agreed to defer the trial of their class action. They maintain that this agreement protected the Settlement Agreement because to opt-out all of the individuals covered by their class action would have caused the nationwide settlement to fail.

> FN27. Near the end of December, 1999 and after Class Counsel and AHP made an announcement about the Settlement Agreement, the Kentucky Applicants expanded their class action to include all Kentucky residents who ingested diet drugs.

**\*17** In response, the Joint Petitioners primarily argue that the Kentucky Applicants are not entitled to an award of fees and expenses because they failed to abide by the requirements of Pretrial Order No. 2224, which required, among other things, that Individual Petitioners submit a sworn Fee Presentation including a narrative statement about the services performed that benefitted the class and verified, contemporaneous time records. They also argue that the Kentucky Applicants have failed to establish that their class action conferred a benefit on the settlement class.

The Joint Petitioners have agreed that multiple certified state class actions benefitted the settlement class and that the counsel involved in those actions should be compensated. The court cannot find any reason to treat the Kentucky Applicants differently than these other counsel. Thus, the court finds that the Kentucky Applicants are entitled to an award of reasonable fees and expenses for the work they performed in connection with their class action.

The court agrees with the Joint Petitioners, however, that the Kentucky Applicants' failure to abide by the requirements of Pretrial Order Ho. 2224 is problematic. Specifically, the lack of detail in their time entries and the fact that these records

Not Reported in F.Supp.2d                                                                                    Page 15

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

were not kept contemporaneously makes it difficult to determine the amount of work, if any, that actually was performed by the Kentucky Applicants. Although the court has determined that a lodestar analysis should not be performed when considering fee petitions, the court does recognize the importance of maintaining accurate time records to substantiate claims that counsel performed significant work for which they should be compensated. During the fee hearing, the Kentucky Applicants conceded that entries in their time records are in fact unsubstantiated. The Kentucky Applicants also agreed to withdraw the unsupported time entries at issue. Thus, the award recommended for the Kentucky Applicants should be decreased due to these deficiencies.

**f. The Remaining Individual Petitioners**

Prior to the fee hearing, the Joint Petitioners agreed that the following Individual Petitioners should receive an award of fees and expenses: (1) Vermont Counsel; (2) Milberg Weiss Bershad Hynes & Lerach, LLP; (3) Kenneth B. Moll and Associates, Ltd.; (4) Law Offices of Charles J. Piven; and (5) Wolf, Haldenstein, Adler, Freeman & Hers, LLP. Because the Joint Petitioners have dropped their objections to these individual petitions, and have therefore acknowledged that a benefit was conferred by these Individual Petitioners, the court finds that these individual Petitioners are entitled to an award of fees and expenses. Additionally, the individual petition filed by the Campbell Law Firm has been resolved and is no longer before the court.

**B. MDL 1203 Fee and cost Account**

It is now commonly accepted in complex multiparty litigation that a court can and in fact should appoint a committee such as the PMC to coordinate the litigation and ease the administrative burden on the court. Vincent v. Hughes Air West, Inc., 557 F.2d 759, 773-74 (9th Cir. 1977); In re Air Crash Disaster at Florida Everglades on December 29, 1972, 549 F.2d 1006, 1014-15 (5th Cir. 1977); Manual for Complex Litigation, Third (1995) § 20.221 at 27. As a corollary to this appointment, the

court must be permitted to compensate fairly the attorneys who serve on such a committee. As the court explained in Florida Everglades: "if lead counsel are to be an effective tool to the court must have means at its disposal to order appropriate compensation for them. The court's power is illusory if it. is dependent upon lead counsel's performing the duties desired of them for no additional compensation." Id. at 1016.

**\*18** As discussed above, in Pretrial Order No. 467 the court established a 9% and a 6% assessment on every federal and coordinated state case, respectively, to provide this necessary additional compensation. These figures were arrived at by estimating what was perceived to be the value of the services that would be performed by the PMC. The assessment on federal cases was greater to account for the additional management services provided by the PMC to cases transferred to MDL 1203. Assessments in other multiparty litigation had ranged from 5% to 13%, so the figures seemed reasonable at the time. The mere sequestration of the 9% and 6% did not guarantee that the PMC would receive the full amount. Rather, the court made clear that an award of fees would be made only after a proper showing of entitlement based upon the contributions made by the PMC common benefit attorneys. Pretrial Order No. 467 at ¶ 7.

The Joint Petitioners request that the court award them the full 9% and 6%, which as of June, 2002 amounted to approximately

We start by examining the benefits conferred by the PMC's efforts. In order to carry out effectively their court ordered duties the PMC opened and operated an office in Philadelphia which at the height of the litigation had a staff of 17 attorneys, 7 legal assistants, and 9 clerical employees. The staff's duties included maintaining a database on the status of each MDL 1203 action, sending copies of over 2,500 pretrial orders and over 100 Special Master Decisions and Recommendations to the individual litigants, and explaining applicable practice and procedures to attorneys who were unfamiliar with multidistrict litigation or the federal system. These duties continue today, as cases are still being transferred to this court. Also continuing to this day

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 16

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

is the PMC's assistance to the court and the Special Discovery Master regarding the administration of the discovery schedule, including the process of collecting plaintiffs' fact sheets, medical authorizations, lists of medical providers, and expert disclosures.

In its role as discovery coordinator, the PMC helped negotiate and draft agreements and pretrial orders that governed discovery issues such as scheduling, the conduct of depositions, confidentiality, and privilege. After its creation, the PMC Discovery committee drafted a comprehensive set of interrogatories and requests for production, then handled objections to them through negotiation, motion practice, and participation at hearings. There were many hard fought battles between the PMC and AHP over issues such as confidentiality and privilege. Ultimately, the PMC Discovery Committee received approximately 9 million pages of documents from defendants and third parties. These were winnowed down to a set of approximately 5,000 documents that were imaged and entered into a database which was employed to prepare for depositions. After deposition discovery was completed, during which the PMC Discovery Committee completed nearly 100 depositions of general fact witnesses, an exhibit list was created and made available to other plaintiffs' attorneys on CD ROM. Additionally, the PMC created a document depository at their office in Philadelphia which contains the millions of documents produced in MDL 1203. It is available to plaintiffs' attorneys and to transferor courts following remand of cases for trial.

**\*19** In order to manage the generic medical and scientific issues involved in the diet drug litigation, the PMC Discovery Committee created a Generic Expert Witness Committee ("GEWC") composed of attorneys with special talents in the areas of science and medicine. The GEWC reviewed and analyzed all available scientific literature relating to VHD and PPH causation and then retained 16 experts to present generic expert testimony on issues of liability, standard of care, causation of injury, and medical monitoring. Further, the GEWC analyzed the reports of the 31 defense experts and deposed 17 of them.

The result of the general fact discovery and generic expert development done by the PMC Discovery Committee in MDL 1203 was a comprehensive " trial package." It consisted of a database of the key documents in the litigation and the documents themselves, transcripts of all depositions taken, summaries, annotations, and video excerpts of key depositions, a narrative factual statement and time line of all relevant events, both with links to relevant documents, a Medical Science Literature Database containing over 2,000 relevant items, key MDL 1203 pretrial orders, defendants' answers to interrogatories, and sample in limine motions, trial briefs, and responses to defendants' Daubert motions. The trial package was designed to enable plaintiffs' attorneys to try diet drug cases. It was presented at various seminars throughout the country and disseminated to other lawyers with cases in MDL 1203.

Liability in the diet drug litigation was not straightforward or certain. AHP had raised what is known as the FDA Defense, resulting from the fact that the Food and Drug Administration had approved both Pondimin and Redux. The PMC faced significant risk at the beginning of the litigation that the work they did would be unsuccessful and uncompensated. The members of the PMC and its committees all brought significant national experience and expertise in mass tort litigation to their roles. They used this experience and expertise to litigate vigorously all aspects of discovery with AHP and to complete their administrative duties. The discovery package created by the PMC ultimately paved the way for the class settlement and many individual settlements, to which the large amount of money in the MDL 1203 Fee and Cost Account bears witness.

Given all of the above, there is no question that the PMC conferred great benefit on all litigants in the MDL and state-coordinated litigation. Moreover, they performed their duties with admirable skill, diligence, and efficiency.

Nevertheless, the court will not award the full 9% and 6% assessments as requested. Rather, the court believes that a fee equal to 6% assessments on federal cases and 4% assessments on state cases is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

more reasonable and fairer to the individual litigants involved, yet still fairly compensates the PMC and others for their expenses and work in MDL 1203. The court arrives at this determination particularly in light of the size of the fund created here. We note again that the 9% and 6% assessments were simply general estimations made at the beginning of this litigation when neither the parties nor the court had any idea how successful plaintiffs would be in their suits against AHP for diet drug related injuries. The court now has the benefit of knowing how much money exists for compensation. As noted above, as of June, 2002, the MDL 1203 Fee and Cost Account had deposits of approximately $143 million. Out of this amount, approximately $65 million represent 9% assessments, $74 million represent 6% assessments, and $2.5 million represent blended deposits.[FN28] In addition, in one instance, the court approved a $1.5 million assessment based on a special agreement between the PMC and the Davis & Feder firm. See Pretrial Order No. 2154. This represents a blend of 4% and 9% on a settlement of a group of cases. The amounts collected represent an enormous sum which surely surpasses what was anticipated. Retroactively reducing the assessments to 6% and 4% still results in a sum of approximately $94 million from which the court can make an award of costs and fees.

> FN28. This sum of $2.5 million consists of deposits where counsel did not delineate how much were 9% assessments and how much were 6% assessments. Since one-third of these assessments is being returned, the exact breakdown between federal and state cases is not important for present purposes.

**\*20** Moreover, the court finds that 6% and 4% assessments are more in keeping with those currently being levied in other MDL's. For example, in In re Baycol Prods. Liab. Litig., MDL 1431, the court has established an across the board 6% in both federal and coordinated state cases. Similarly, in In re Phenylpropanolamine (PPA) Prods. Liab. Litig., HDL 1407, an assessment of 4% in federal cases and 3% in state cases is being used. Finally, in In re Propulsid Prods. Liab. Litig., MDL 1355, and In re Rezulin Prods. Liab. Litig., MDL 1348, the same percentages as chosen here, 6% and 4%, are in place.

Turning first to costs, the Joint Petitioners have documented $11,484,152 in reimbursable expenses allocable to the PMC's KDL 1203 costs. No objection was made to this calculation. The court has reviewed the reimbursable costs associated with the PMC's work in MDL 1203 and finds them reasonable. We will award the PMC $11,484,152 in costs from the MDL 1203 Fee and Cost Account. Since $6,465,815 were previously advanced to the PMC out of this Account with court approval, the actual of costs at this time will be $5,018,337.

Some $82.5 million remain for the fee award after subtracting the total costs of $11,484,152 and the one-third of the $143 million in assessments to be returned. The court will award counsel $80 million. This sum fairly compensates the PMC for its time as well as rewards it for excellent work and ultimate success. The remaining $2.5 million will be retained in MDL 1203 Fee and Cost Account for now. This reserve, along with further deposits from settlements or judgments in MDL cases and the interest that has accumulated and will continue to accumulate in the account, will be used in part to pay the Special Master's fees associated with the fee proceedings, the costs associated with reimbursement, and other incidental expenses. There may also be future payments to counsel.

The court will ask the Escrow Agent[FN29] to establish a procedure by which monies can be returned, in accordance with this memorandum, to individual litigants or their counsel who have been subject to the 9% and 6% assessments. Interest will not be paid on these reimbursements. Finally, from this point forward Pretrial Order No. 467 will be modified, and the defendants will be directed to deduct 6% of all payments made to plaintiffs in settlements or satisfaction of judgments in federal cases, and 4% of all payments made to plaintiffs in cases eligible for state-federal coordination, to be deposited and held in the MDL 1203 Fee and Cost Account.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

FN29. The court appointed Gregory P. Miller, Esquire as the Escrow Agent in Pretrial Order No. 892.

The objectors argue that the settlements reached with AHP in their individual cases were due solely to the work of their own attorneys and not the result of the PMC's efforts.[FN30] They assert that because they did not use or receive the MDL work product, the court should not require them to pay the assessment and doing so would result in unjust enrichment of the PMC. We find these arguments unavailing for several reasons.

FN30. Those who objected to payment of the assessment include: (1) Robins, Kaplan, Miller & Ciresi L.L.P.; (2) Jones, Verras & Freiberg, L.L.C.; (3) Law Offices of Brian S. Riepen; (4) Hersh & Hersh; (5) The Law Offices of Daniel E. Becnel, Jr.; (6) Fleming & Associates. L.L.P.; and (7) Law Offices of Ronald R. Benjamin. The objections made by the foregoing law firms are addressed in this memorandum. Also before the court is a Motion for Exemption from Pretrial Orders Nos. 467 and 517 and for a Refund of Fees ("Motion for Exemption") that was filed by Jonathan B. Andry, Esquire, Glen J. Lerner, Esquire and the Andry Law Firm, L.L.C. (collectively the "Anctry Law Firm") , in Abercrombie, et al. v. American Home Products, et al., MDL 1203 Case No, 01-20102. The Andry Law Firm joined 318 plaintiffs in the Abercrombie case, which was transferred to MDL 1203. After filing a motion to remand, but before said motion was decided, 271 plaintiffs in the Abercrombie action settled their claims with AHP and the Andry Law Firm was required to pay a 9% assessment. In its Motion for Exemption, the Andry Law Firm argues that the court lacked jurisdiction over the entire Abercrombie action and, thus, the assessment should be returned to the Andry Law Firm, Because these plaintiffs settled their claims before determination on their pending motion to remand, the Andry Law Firm's jurisdiction argument as it pertains to the assessment is moot. Thus, the Andry Law Firm's Motion for Exemption is denied. In Pretrial Order No. 2585, the court denied the Andry Law Firm's motion to remand with regard to the 47 plaintiffs who did not settle their claims. Recently, the Andry Law Firm filed a motion to reconsider the court's decision. The motion to reconsider is still pending.

**\*21** First, as the Fifth Circuit pointed out in Florida Everglades, 549 F.2d at 1012, when dealing with a similar situation, this is not simply a fee contest between private lawyers. Such an approach "is a nostalgic luxury no longer available in the hard-pressed federal courts. It overlooks the much larger interests which arise in litigation such as this." Id. Because of the number of cases and the size of this litigation, there is a "public interest on the part of the court and the world at large" that must also be served. Id. The demands on the court in MDL 1203 are and have been extensive throughout the course of the litigation because of both its complexity and size. It is therefore necessary for the court to "be permitted to bring management power to bear upon [it] to prevent it from monopolizing the services of the court to the exclusion of other litigants." Id. In this multidistrict litigation, one of the ways in which the court's managerial power was exercised was the appointment of, and delegation of duties to, the PMC.

Congress created the JPML and vested it with the authority to transfer related cases to a single court for consolidated or coordinated pretrial proceedings. See 28 U.S.C. § 1407. It is important that the transferee court have the power to appoint and compensate a plaintiffs' committee by levying an assessment against all other plaintiffs. We understand how this may seem unfair to some of the individual attorneys involved who did a lot of work on their individual cases.[FN31] Nonetheless, it is necessary to carry out the will of Congress for the good of the public as a whole.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

> FN31. We note however, that some of "Plaintiffs' individually retained attorneys' discovery efforts were duplicative, and thus frustrated the goal of efficiently conducting discovery through a plaintiffs' committee for the benefit of all plaintiffs in an MDL." Pretrial Order No. 1492 at 5.

Second, if the application of an assessment in an HDL such as this depended on an individual analysis of each case to determine exactly how much each plaintiff used the appointed committee's work product, the goals of consolidated proceedings, to promote efficiency and economy would be frustrated. Over 5,000 cases have been subject to either a 9% or 6% assessment. It is unreasonable to suggest that this court should be charged with making "individualized factual determinations as to whether an individual plaintiff actually used any common benefit material or whether the availability of the material actually influenced AHP's decision to settle a case," Pretrial Order No. 1492 at 6. If the court were so charged, it would not be able to function. Furthermore, it would violate the Supreme Court's admonition that "[a] request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); see Manual for Complex Litigation § 24.21 at 194.

*22 The work done by the PMC in KDL 1203 clearly inured to the benefit of all individual diet drug litigants. As we have previously explained:
Indeed, AHP most assuredly has been deeply involved with the PMC from the outset. To assume that AHP's legal position on most questions, including questions regarding settlement, has not been influenced by their adversarial engagement with the PMC is unrealistic. For example, the PMC's voluminous discovery depository was available for Plaintiffs to make use of in their case if they so wished. These materials are in the possession of numerous plaintiffs' attorneys throughout the country. The court can legitimately assume that the availability of these materials and the efforts of the PMC in developing a case for liability against AHP substantially influenced AHP's evaluation of every plaintiff's case and its decision to settle.

Pretrial Order No. 1492 at 5-6. Furthermore, we would remind those who so vigorously object to the MDL assessment that a part of it is used to reimburse the PMC for the portion of the special Master's fees for which it is responsible. The special Master, Gregory P. Miller, Esquire, has been an invaluable resource to the parties and the court. It is hard to believe that any party who participated in the MDL could argue that he or she derived no benefit whatsoever from the Special Master's extraordinary services.

### C. Allocation Committee

The allocation of fees among the many Joint Petitioners and the Individual Petitioners also entitled to compensation is not a simple matter. Recognizing this, the Joint Petitioners urge the court to afford them an opportunity to reach an allocation agreement among themselves. They suggest that the court charge Arnold Levin, Esquire and Michael Fishbein, Esquire with the task of coordinating and developing an agreed upon allocation. The court agrees with this suggestion, with some modification.

There is ample authority for a court making an award of attorneys' fees out of a common fund to permit lead counsel to allocate fees among all counsel entitled to share in the award. Bowling v. Pfizer, Inc., 102 F.3d 777, 781 (6th Cir. 1996); Longden v. Sunderman, 979 F.2d 1095, 1101 (5th Cir. 1992); In re Conley Pharm., Inc., 50 F. Supp. 2d 1141, 1148 (D. Wyo. 1999); In re Indigo Sec. Litig., 995 F. Supp. 233, 235 (D. Mass. 1998). Such a procedure makes sense because it relieves the court of the "difficult task of assessing counsels' relative contributions," In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 329 n.96 (3d Cir. 1988). Moreover, lead/class counsel are generally "better able to decide the weight and merit of each other's contributions." Copley, 50 F. Supp. 2d at 1148. As one court pointed out when dealing with a situation similar to the one here:
*23 [I]t is recognized that the allocation among counsel must depend at least in part upon the more subjective factors of the relative contributions of the attorneys to the group effort. In the context of this

Not Reported in F.Supp.2d                                                                 Page 20

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

litigation, which has extended over an eight-year period, it is virtually impossible for the Court to determine as accurately as can the attorneys themselves the internal distribution of work, responsibility and risk.

In re Ampicillin Antitrust Litig., 81 F.R.D. 395, 400 (D.D.C, 1978). Of course, it is never a given that all counsel will agree with lead counsel's allocation. In such a case, the ultimate allocation must be made by the court. See Copley, 50 F. Supp. 2d at 1148; Indiqo, 995 F. Supp. at 235.

In this case, compensable work was performed by over 80 law firms during a period spanning over four years. The court finds it is both more efficient and fairer to permit a small committee composed of several Joint Petitioners to make a first attempt at allocating the interim class fee award and the MDL 1203 fee and cost award. After considering the objectives of such a committee, the court appoints the following Joint Petitioners to the Fee and Cost Allocation Committee ("FCAC"):
(1) Elizabeth Cabraser, Esquire Lieff, Cabraser, Heimann and Bernstein
• PMC Member
• Counsel for certified Class in Washington State
(2) Michael Fishbein, Esquire Levin, Fishbein, sedran & Berman
• Class Counsel
(3) Arnold Levin, Esquire Levin, Fishbein, Sedran & Berman
• Co-Lead Counsel in MDL 1203
• Liaison Counsel in MDL 1203
• PMC Member
• Class Counsel
(4) Dianne Nast, Esquire Roda & Nast
• PMC Member
• Sub-Class Counsel
(5) Charles Parker, Esquire Hill & Parker
• Counsel for Certified Class in Texas

We name Arnold Levin, Esquire to chair the FCAC. We hope each of the above individuals will be willing to serve.

Those appointed to the FCAC are respected attorneys who represent varying constituencies included in the joint petition and therefore should

be well equipped to develop an acceptable allocation plan. The FCAC is requested to file and serve such a plan within 45 days for court review and approval. We expect that during this period members of the FCAC will engage in meaningful discussions in an attempt to develop an allocation that is fair and equitable to all involved. If approved, the court will order the disbursement of funds.

We strenuously urge the FCAC and all petitioners entitled to an award to reach an agreed upon allocation. If this turns out to be impossible, any objection shall be filed and served within 15 days after the FCAC plan is filed and served. The FCAC shall file and serve a response within 15 days after the filing and service of any objections. The court will then decide the outstanding issues.

E.D.Pa. 2002.
In re: Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation. Sheila BROWN, et al., v. AMERICAN HOME PRODUCTS CORPORATION.
Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 2684623 (Trial Motion, Memorandum and Affidavit) Wyeth's Motion for Summary Judgment and Request for Stay (Aug. 17, 2005)
• 2004 WL 2070528 (Trial Motion, Memorandum and Affidavit) Joint Motion of Class Counsel and the Seventh Amendment Liaison Committee to Preliminarily and Permanently Enjoin the Jones Law Firm from Disseminating False and Misleading Information to Class Members and Improperly Soliciting Claimants to Opt-Out o f the 7th Amendment (Sep. 08, 2004)
• 2004 WL 2070529 (Trial Pleading) Class Counsel's Memorandum of Law in Reply to the Memorandum of AHP Settlement Trust in Response to Joint Motion by Wyeth, Class Counsel and the Salc for Preliminary Approval of the Seventh Amendment to the Nationwide Class Action Settlement Agreemen t and for the Entry of Related Orders (Aug. 19, 2004)
• 2004 WL 2070530 (Trial Pleading) Memorandum

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

of AHP Settlement Trust in Response to Joint Motion by Wyeth, Class Counsel and the Sale for Preliminary Approval of the Seventh Amendment to the Nationwide Class Action Settlement Agreement and for the Entry of Related Orders (Aug. 17, 2004)

• 2004 WL 1857557 (Trial Motion, Memorandum and Affidavit) Joint Motion by Wyeth, Class Counsel, and the Seventh Amendment Liaison Committee for the Entry of an Order Preliminarily Approving the Seventh Amendment to the Nationwide Class Action Settlement Agreement and for the Entry of Related Orders (Aug. 10, 2004)

• 2004 WL 3569941 () Report of Malcolm Taylor, M.D. (Aug. 9, 2004)

• 2004 WL 3577511 (Trial Motion, Memorandum and Affidavit) Joint Motion to Extend Stay (Aug. 5, 2004)

• 2004 WL 3577512 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Joint Motion to Extend Stay (Aug. 5, 2004)

• 2004 WL 1857558 (Trial Filing) Seventh Amendment to the Nationwide Class Action Settlement Agreement with American Home Products Corporation (Jul. 21, 2004)

• 2004 WL 3569933 () Expert Report of Marcus F. Stoddard, M.D. Regarding Lisa Dean (Jun. 26, 2004)

• 2004 WL 3569930 () Expert Report of Joseph Douglas Ridges, M.D., F.A.C.C. (Jun. 16, 2004)

• 2004 WL 3569932 () Report of Gary A. Salzman, M.D. (Jun. 10, 2004)

• 2004 WL 3569935 () Expert Witness Report of Kenneth W. Rictor, M.D. (May 31, 2004)

• 2004 WL 1576273 (Trial Motion, Memorandum and Affidavit) Wyeth's Memorandum in Opposition to Plaintiff's Motion to Remand (May 24, 2004)

• 2004 WL 1047387 (Trial Pleading) Pretrial Order No. %Y(10)6D (May. 04, 2004)

• 2004 WL 1576280 (Trial Pleading) Defendant, Celltech Pharmaceuticals Inc.'s Answer and Affirmative Defenses to Plaintiff's First Amended Petition (Apr. 26, 2004)

• 2004 WL 1576281 (Trial Pleading) Defendant, Fisons Corporation's Answer and Affirmative Defenses to Plaintiff's First Amended Petition (Apr. 26, 2004)

• 2004 WL 1575640 (Trial Motion, Memorandum and Affidavit) Wyeth's Supplemental Memorandum in Support of its Motion Pursuant to PTO 2383 for

an Order Enforcing PTO 1415 Against Class Member Linda Scott, Who Has Asserted Claims Based on Primary Pulmonary Hypertension (Apr. 15, 2004)

• 2004 WL 1576272 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Opposition to Motion to Dismiss (Apr. 13, 2004)

• 2004 WL 1576284 (Trial Pleading) Wyeth's Answer to Defendant Dr. Arthur Hadley's Cross-Claim (Apr. 8, 2004)

• 2004 WL 3568799 () Report of Wendell N. Williams, M.D. (Pursuant to Federal Rule of Civil Procedure 26) (Apr. 6, 2004)

• 2004 WL 3680352 () Report of Wendell N. Williams, M.D. (Pursuant to ¢yFederal Rule of Civil Procedure 26¢y¢ r;0001;;LQ;USFRCPR26;1004365;¢r) (Apr. 6, 2004)

• 2004 WL 1576270 (Trial Motion, Memorandum and Affidavit) Plaintiffs Memorandum in Opposition to Wyeth's Motion to Compel Identification and Production of Echocardiogram Technicians or in the Alternative, Motion to Dismiss (Apr. 2, 2004)

• 2004 WL 1576274 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment and Motion to Dismiss (Apr. 2004)

• 2004 WL 1576275 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment, or in the Alternative, Motion to Dismiss (Apr. 2004)

• 2004 WL 3680375 () Report of Alan Richard Maniet Jr. (Pursuant to ¢yFederal Rule of Civil Procedure 26¢y¢r;0001;;LQ;USFRCPR26;1004365; ¢r) (Mar. 30, 2004)

• 2004 WL 785071 (Trial Motion, Memorandum and Affidavit) Pretrial Order No. %Y(16)6D (Mar. 30, 2004)

• 2004 WL 785072 (Trial Pleading) Report by Wyeth on Matrix Claims and Fund a Benefits Processing by the AHP Settlement Trust (Mar. 30, 2004)

• 2004 WL 3622064 () Report of Wendell N. Williams, M.D. (Mar. 27, 2004)

• 2004 WL 3680336 () Report of Wendell N. Williams, M.D. (Mar. 27, 2004)

• 2004 WL 3661021 () (Report or Affidavit) (Mar. 22, 2004)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                        Page 22

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

• 2004 WL 3571520 () Report of Alan Richard Maniet Jr. (Mar. 21, 2004)
• 2004 WL 3680350 () Report of Alan Richard Maniet Jr. (Pursuant to ¢yFederal Rule of Civil Procedure 26¢y¢r;0001;;LQ;USFRCPR26;1004365;¢r) (Mar. 21, 2004)
• 2004 WL 3683051 () Report of Alan Richard Maniet Jr. (Mar. 21, 2004)
• 2004 WL 1576283 (Trial Pleading) Defendant's, Dr. Arthur Hadley, Cross-Claim (Mar. 15, 2004)
• 2004 WL 1576285 (Trial Pleading) Answer of Defendant Gate Pharmaceuticals, Division of Teva Pharmaceuticals USA, Inc. (Mar. 13, 2004)
• 2004 WL 1575863 (Trial Motion, Memorandum and Affidavit) Defendant Wyeth's Response to Plaintiffs' Motion to Dismiss (Mar. 11, 2004)
• 2004 WL 3571521 () Supplemental Affidavit of Miguel Quinones, M.D. (Mar. 1, 2004)
• 2004 WL 3608935 () Declaration of David M. Mokotoff, M.D. (Mar. 1, 2004)
• 2004 WL 3608936 () Supplemental Declaration of David M. Mokotoff, M.D. (Mar. 1, 2004)
• 2004 WL 1575680 (Trial Motion, Memorandum and Affidavit) Plaintiff Kathleen Geldreich's Response Opposing Wyeth's Motion to Declare Her Initial Opt-Out Invalid (Feb. 19, 2004)
• 2004 WL 3690608 () Case-Specific Expert Witness Designation (Gary Murray, M.D.) (Feb. 3, 2004)
• 2004 WL 1576276 (Trial Motion, Memorandum and Affidavit) Plaintiff Ruby Weisenberger'S Response to Defendant Stephen Tramill, M.D.'s, Motion to Dismiss (Feb. 2, 2004)
• 2004 WL 1576271 (Trial Motion, Memorandum and Affidavit) Brief in Support of Motion of Non-Party Woodlawn Medical Group, Inc. for Protective Order and to Quash Subpoena (Feb. 2004)
• 2004 WL 3749399 () Affidavit of Dr. Malcolm Taylor (Jan. 26, 2004)
• 2004 WL 1575679 (Trial Motion, Memorandum and Affidavit) Reply in Support of Defendant Wyeth's Motion to Dismiss the Claims of Class Member Tina Cragun (Jan. 22, 2004)
• 2004 WL 305807 (Trial Motion, Memorandum and Affidavit) Pretrial Order No. (Jan. 16, 2004)
• 2004 WL 1496494 (Trial Motion, Memorandum and Affidavit) Wyeth's Response to Plaintiff's Motion for Leave of Court to File an AHP

Settlement Trust Blue form Nunc Pro Tunc (Jan. 15, 2004)
• 2004 WL 3569937 () (Report or Affidavit) (Jan. 13, 2004)
• 2004 WL 3661020 () Expert Witness Report of Hall B. Whitworth, Jr., M.D. (Jan. 4, 2004)
• 2004 WL 3661022 () (Report or Affidavit) (Jan. 2, 2004)
• 2004 WL 1576282 (Trial Pleading) Defendant Eon Labs, Inc.'s Original Answer to Plaintiff's Original Petition (2004)
• 2004 WL 2887040 (Trial Pleading) Plaintiff's Severed and Amended Complaint (2004)
• 2004 WL 3122959 (Trial Pleading) Severed and Amended Complaint (2004)
• 2004 WL 3122960 (Trial Pleading) Severed and Amended Complaint (2004)
• 2004 WL 3680355 () Report of Alan Richard Maniet Jr. (2004)
• 2003 WL 24297112 () Affidavit of James H. Oury, M.D. (Dec. 18, 2003)
• 2003 WL 24310032 () Generic Expert Witness Report of Lawrence Cohen, M.D. (Dec. 17, 2003) Original Image of this Document (PDF)
• 2003 WL 23653035 (Trial Motion, Memorandum and Affidavit) Reply in Support of Defendant Wyeth's Motion to Dismiss the Claims of Class Members Shauna Carson and Wanda Gassner (Dec. 16, 2003)
• 2003 WL 23653409 (Trial Motion, Memorandum and Affidavit) Wyeth's Reply Brief in Support of its Rule 59(E) Motion to Alter, Amend or Vacate Order and Brief in Support of its Rule 60(A) Motion for Relief from Judgment (Dec. 11, 2003)
• 2003 WL 23653408 (Trial Motion, Memorandum and Affidavit) Wyeth's Response to Plaintiffs' Notice of New Authority (Dec. 5, 2003)
• 2003 WL 23653397 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Motion to Dismiss (Dec. 3, 2003)
• 2003 WL 24180262 () Wyeth's Disclosure of Case Specific Experts for Camille Kay Stansfield (Dec. 1, 2003)
• 2003 WL 24232442 () (Report or Affidavit) (Nov. 25, 2003)
• 2003 WL 23145555 (Trial Motion, Memorandum and Affidavit) Motion to Disqualify all Echomotion Echocardiograms from Supporting Claims for Benefits (Nov. 19, 2003)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

• 2003 WL 23145577 (Trial Motion, Memorandum and Affidavit) The AHP Settlement Trust's Motion to Stay Payment of all Claims Supported by Echomotion Echocardiograms (Nov. 19, 2003)
• 2003 WL 24303392 () (Deposition) (Nov. 14, 2003)
• 2003 WL 24232441 () Affidavit of Dr. Laura M. Plunkett, Ph.D., Dabt (Nov. 4, 2003)
• 2003 WL 23653400 (Trial Motion, Memorandum and Affidavit) Plaintiff Yuvonne B. Wilson's Opposition to Defendant Dr. Kynard Adams' Motion for Summary Judgment Based on Limitations (Nov. 2003)
• 2003 WL 23653401 (Trial Motion, Memorandum and Affidavit) Dr. Adams' Reply Brief to Plaintiff's Opposition to Dr. Adams' Motion for Summary Judgment (Nov. 2003)
• 2003 WL 24249622 () Expert Report of C. Hilmon Castle, M.D., F.A.C.C. (Oct. 23, 2003)
• 2003 WL 24297113 () Deposition of Joshua Penn, M.D. (Oct. 7, 2003)
• 2003 WL 24297114 () Deposition of Joshua Penn, M.D. (Oct. 7, 2003)
• 2003 WL 24303388 () Deposition of Joshua Penn, M.D. (Oct. 7, 2003)
• 2003 WL 23653403 (Trial Motion, Memorandum and Affidavit) Dr. Franco's Reply Brief to Plaintiff's Argument in Opposition to Motion to Dismiss and Motion to have Motion to Dismiss Converted to Motion for Summary Judgment (Oct. 2003)
• 2003 WL 23653404 (Trial Motion, Memorandum and Affidavit) Dr. Franco's Response to Plaintiff, Fredda Rainey's Renewed Motion to Reconsider Order Denying Remand or, Alternatively, Motion for Certification (Oct. 2003)
• 2003 WL 24297115 () Oral Deposition Waenard Miller, M.D. (Sep. 19, 2003)
• 2003 WL 23653402 (Trial Motion, Memorandum and Affidavit) Plaintiff, Fredda Rainey's Opposition to Defendant Franco's Motion to Dismiss, Response to Defendant Wyeth's Opposition to Reconsideration, and Renewed Motion to Reconsider Order Denying Remand (Sep. 17, 2003)
• 2003 WL 24303382 () Deposition of Dr. Malcom Taylor Volume II (Sep. 17, 2003)
• 2003 WL 24303391 () Videotaped Deposition of Dr. Malcolm Taylor (Sep. 10, 2003)
• 2003 WL 23653406 (Trial Motion, Memorandum and Affidavit) Wyeth's Memorandum of Law in

Opposition to Plaintiffs' Motion to Remand (Jul. 10, 2003)
• 2003 WL 23653407 (Trial Motion, Memorandum and Affidavit) Wyeth's Memorandum of Law in Opposition to Plaintiffs' Motion to Remand (Jul. 9, 2003)
• 2003 WL 22217677 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion to Determine Inadequacy of Representation for Primary Pulmonary Hypertension and Pulmonary Hypertension Class Members (Jul. 03, 2003)
• 2003 WL 22217678 (Trial Motion, Memorandum and Affidavit) Motion to Determine Inadequacy of Representation for Primary Pulmonary Hypertension and Pulmonary Hypertension Class Members (Jul. 03, 2003)
• 2003 WL 22217680 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Motion to Dissolve MDL 1203 and to Remand All Pending Cases (Jul. 03, 2003)
• 2003 WL 24303396 () Deposition Testimony of Dr. Carlos Garcia (Jul. 2, 2003)
• 2003 WL 24303379 () Oral and Videotaped Deposition Waenard Miller, M.D. (Jun. 27, 2003)
• 2003 WL 24303387 () Oral and Videotaped Deposition of Bradley M. Leonard, Md, Facc (Jun. 26, 2003)
• 2003 WL 24303395 () Oral and Videotaped Deposition of Bradley M. Leonard, MD, FACC (Jun. 26, 2003)
• 2003 WL 24303393 () Oral Deposition of Sharon Lilley (Jun. 24, 2003)
• 2003 WL 22217675 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Management Committee's Memorandum in Opposition to the Motions to Dissolve MDL 1203 and Remand All Pending Cases (Jun. 20, 2003)
• 2003 WL 24258823 () Report of Grover M. Hutchins, M.D. (Pursuant to ¢yFederal Rule of Civil Procedure 26¢y¢ r;0001;;LQ;USFRCPR26;1004365;¢r) (Jun. 10, 2003)
• 2003 WL 23653398 (Trial Motion, Memorandum and Affidavit) Wyeth's Memorandum in Opposition to Dr. Kynard Adams' Motion to Remand (Jun. 2003)
• 2003 WL 23653399 (Trial Motion, Memorandum and Affidavit) Response to Fleming & Associates' MDL Plaintiffs' Motion to Dissolve MDL 1203 and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 24

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

to Remand all Pending Cases (Jun. 2003)
• 2003 WL 22331118 (Trial Motion, Memorandum and Affidavit) Fleming & Associates' MDL Plaintiffs' Motion to Dissolve MDL 1203 and to Remand All Pending Cases (May. 27, 2003)
• 2003 WL 22331119 (Trial Motion, Memorandum and Affidavit) Joinder in Motion to Determine Inadequacy of Representation for Opt-Out Class Members and Motion to Discharge Class Counsel and Subclass Counsel for Subclasses 1(B), 2(A), 2(B), and 3 (May. 27, 2003)
• 2003 WL 22331113 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion to Discharge Class Counsel and Subclass Counsel for Subclasses 1(b), 2(a), 2(b), and 3 (May. 07, 2003)
• 2003 WL 22331114 (Trial Motion, Memorandum and Affidavit) Motion to Discharge Class Counsel and Subclass Counsel for Subclasses 1(b), 2(a), 2(b), and 3 (May. 07, 2003)
• 2003 WL 22331115 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion to Determine Inadequacy of Representation for Opt-Out Class Members (May 2003)
• 2003 WL 22331116 (Trial Motion, Memorandum and Affidavit) Motion to Determine Inadequacy of Representation for Opt-Out Class Members (May 2003)
• 2003 WL 24232443 () Expert Report of Kerry J. Kaplan, M.D., F.A.C.C. (¢yF.R. Civ. P. 26)¢y¢ r;0001;;LQ;USFRCPR26;1004365;¢r    (Apr.    14, 2003)
• 2003 WL 22331117 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Wyeth's Motion for Entry of an Order Establishing a Procedure for Challenging the Eligibility of Plaintiffs in MDL No. 1203 to Exercise Intermediate or Back-End Opt-Out Rights and for Entry of an Order Approving a Revised Pla intiffs' Fact Sheet and Medical Authorization form (Apr. 07, 2003)
• 2003 WL 23653084 (Trial Motion, Memorandum and Affidavit) Wyeth's Reply Memorandum in Support of Its Motion Pursuant to Pto 2383 for an Order Enforcing Pto 1415 Against Class Member Linda Scott, Who Has Asserted Claims Based on Primary Pulmonary Hypertension (Mar. 03, 2003)
• 2003 WL 22023324 (Trial Filing) Pretrial Order No. (Jan. 13, 2003)

• 2003 WL 22023325 (Trial Filing) Pretrial Order No. 2704 (Jan. 10, 2003)
• 2003 WL 22023326 (Trial Filing) Pretrial Order No. 2702 (Jan. 06, 2003)
• 2003 WL 23640407 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Wyeth's Motion Pursuant to PTO 2383 as to Class Member Mollie Lawson (Jan. 01, 2003)
• 2003 WL 23653411 (Trial Motion, Memorandum and Affidavit) Plaintiff Gloria Cain's Response to Edward E. Bryant, M.D.'s Motion to Dismiss (2003)
• 2003 WL 23653416 (Trial Pleading) Defendant Rugby Laboratories, Inc.'s Answer to Plaintiff's Original Petition (2003)
• 2003 WL 24258822 () Report of Dr. Harris Busch, M.D., PH.D. Regarding Fenfluramine and Dexfenfluramine (2003)
• 2002 WL 32154083 (Trial Filing) Pretrial Order No. 2663 (Dec. 03, 2002)
• 2002 WL 32154085 (Trial Filing) Pretrial Order No. 2662 (Nov. 26, 2002)
• 2002 WL 32154084 (Trial Filing) Pretrial Order No. 2654 (Nov. 25, 2002)
• 2002 WL 32154194 (Trial Motion, Memorandum and Affidavit) Plaintiff%7Ds Opposition to Wyeth%7DS Motion for Injunctions to Enforce the Nationwide Class Action Settlement Agreement (Oct. 07, 2002)
• 2002 WL 32154082 (Trial Filing) Pretrial Order No. 2603 (Sep. 16, 2002)
• 2002 WL 33004018 () Products Liability Litigation (Sep. 9, 2002)
• 2002 WL 32154195 (Trial Motion, Memorandum and Affidavit) Fleming & Associates%7D Response in Opposition to Joint Motion for an Emergency Stay of Processing Matrix Claims to Tenative and/or Final Determinations (Sep. 07, 2002)
• 2002 WL 32157039 (Trial Motion, Memorandum and Affidavit) Brief in Opposition to Proposition that Joinder of Multiple Plaintiffs Violates Settlement Agreement (Sep. 01, 2002)
• 2002 WL 33004010 () Affidavit of Sheldon Hersh, M.D (Jul. 7, 2002)
• 2002 WL 32153484 (Trial Motion, Memorandum and Affidavit) AHP Settlement Trust's Motion for Temporary Restraining Order and Preliminary Injunction (Jun. 03, 2002)
• 2002 WL 32155302 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

the Joint Petition for an Award of Attorneys%7D Fees and Reimbursement of Litigation Expenses (Feb. 15, 2002)
• 2002 WL 32155301 (Trial Motion, Memorandum and Affidavit) Fleming Plaintiffs%7D Second Motion for Exemption from the Plaintiffs%7D Management Committee%7Ds Common Fund Fee and Expenses (Jan. 30, 2002)
• 2002 WL 32155342 (Trial Filing) Affidavit of Rand P. Nolen (Jan. 30, 2002)
• 2002 WL 33004019 () Videotaped Deposition of Dr. Winston H. Gandy (2002)
• 2001 WL 34134825 (Trial Motion, Memorandum and Affidavit) American Home Products Corporation%7Ds Motion to Enforce Pretrial Order No. 1415 Against Plaintiff Suzanne Jortner (Nov. 05, 2001)
• 2001 WL 34875485 () (Partial Testimony) (Nov. 4, 2001)
• 2001 WL 34134824 (Trial Motion, Memorandum and Affidavit) Motion of American Home Products Corporation for Order Enforcing Pto 1415 Against Certain Plaintiffs Asserting Settled Claims Under the Guise of Asserting Claims Based on Primary Pulmonary Hypertension (Oct. 19, 2001)
• 2001 WL 34896529 () Affidavit of Victor F. Tapson, M.D. (Rule 26 Disclosures) (Oct. 5, 2001)
• 2001 WL 34133960 (Trial Motion, Memorandum and Affidavit) Memorandum in Partial Response to Responses Filed By American Home Products and Andrew A. Chirls, attorney for the AHP Settlement Trust, to Claimant%7Ds Motion to Exercise an Initial OPT-OUT Right; Motion to Rescind the Contract (Failure to Comply wi th an Essential Condition of the Contract, Breach of a Material Contractual Term, Failure of Consideration, Breach of Duty of Good Faith and Fair Dealing) Allowing Claimant to Pursue Compensatory as Well as Punitive Damage Claims Against Defendant AH (Jun. 26, 2001)
• 2001 WL 34133956 (Trial Motion, Memorandum and Affidavit) American Home Products Corporation%7Ds Response to Elliot Palay%7Ds Motion to Exercise Initial OPT-OUT and to Rescind His Accelerated Implementation OPT-OUT contract (Jun. 14, 2001)
• 2001 WL 34133957 (Trial Motion, Memorandum and Affidavit) Class Counsel%7Ds Response to Claimants%7D Motion to Exercise an Initial

OPT-OUT Right; Motion to Rescind the Contract (Failure to Comply With an Essential Condition of the Contract, Breach of a Material Contrctual Term, Failure of Consideration, Bre ach of Duty of Good Faith and Fair Dealing) Allowing Claimant to Pursue compensatory as Well as Punitive Damage Claims Against Defendant AHP With No Statute of Limitations BAR (May. 18, 2001)
• 2001 WL 34133954 (Trial Motion, Memorandum and Affidavit) Motion (May. 14, 2001)
• 2001 WL 34133958 (Trial Motion, Memorandum and Affidavit) Claimant%7Ds Motion to Exercise an Initial OPT-OUT Right; Motion to Rescind the Contract (Failure to Comply with an Essential Condition of the contract, Breach of a Material Contractual Term, Failure of Consideration, Breach of Duty of Good Faith and Fair Dealing) Allowing Claimant to Pursue Compensatory as Well as Punitive Damage Claims Against Defendant AHP with No Statute of Limitations BAR (May. 13, 2001)
• 2001 WL 34133950 (Trial Filing) Stipulation for Dismissal of Interneuron Pharmaceutical, Inc%7Ds., Cross Claim and Counter Cross Claim of American Home Products Corporation, Wyeth-Ayerst Laboratories, Division of American Home Products Corporation, and Wyeth-Ayerst Laboratories Com pany (May. 04, 2001)
• 2001 WL 34129544 (Trial Motion, Memorandum and Affidavit) Benjamin Objectors' Memorandum of Law in Opposition to Brown Class Representative Plaintiffs' Motion to Increase the Appellate Bond and Plaintiffs' Cross-Motion for Modification of This Court's Pretrial Order No. 1488 Directing Objectors be Jointly a nd Severally Liable for Posting A $25.000 Bond for Appellate Costs, and Reduce and Apportioning the Original and Any Increased Appellate Bond in Light of, Inter Alia, Subsequent Voluntary Agreed Dismissals of the Appeals of Certain Objectors. (Mar. 22, 2001)
• 2001 WL 34133965 (Trial Motion, Memorandum and Affidavit) (Mar. 5, 2001)
• 2001 WL 34129540 (Trial Motion, Memorandum and Affidavit) Motion to Request a Hearing (Mar. 01, 2001)
• 2001 WL 34129541 (Trial Motion, Memorandum and Affidavit) Hmo Louisiana, Comed Medical Expense Fund and Central States Health and Welfare Benefit Fund's Objections to and Motion to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 26

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Vacate Court Approved Procedure No.1 (Mar. 01, 2001)
• 2001 WL 34129542 (Trial Motion, Memorandum and Affidavit) Hmo Louisiana, Comed Medical Expense Fund, and Central States Health & Welfare Benefits Fund's Motion to Enjoin the Ahp Settlement Trust from Disbursing any Funds to Individual Claimants and to Stay all Proceedings Regarding the Allocation of Damages Awards from Either Fund a or Fund B (Mar. 01, 2001)
• 2001 WL 34133915 (Trial Motion, Memorandum and Affidavit) Plaintiffs%7D Memorandum of Law in Support of the Joint Motion to Require the Ahp Settlement Trust to Commence Distribution of the Proceeds of Settlement Notwithstanding the %7F%7FPosition%7D%7D Asserted by the United States (Feb. 26, 2001)
• 2001 WL 34129539 (Trial Motion, Memorandum and Affidavit) Motion and Memorandum for Intervention (Feb. 08, 2001)
• 2001 WL 34129543 (Trial Motion, Memorandum and Affidavit) Motion and Memorandum for Intervention (Feb. 08, 2001)
• 2001 WL 34133940 (Trial Filing) Affidavit of Rand P. Nolen (Feb. 07, 2001)
• 2001 WL 34133951 (Trial Motion, Memorandum and Affidavit) Fleming Plaintiffs%7D Motion for Exemption From the Plaintiffs%7D Management Committee%7Ds Common Fund Fee and Expenses Subject to All Motions to Remand (Feb. 07, 2001)
• 2001 WL 34131304 (Trial Motion, Memorandum and Affidavit) HMO Louisiana's Motion to Stay Local Rule 23.1 Class Certification Briefing (Jan. 11, 2001)
• 2001 WL 34896530 () Affidavit of Victor F. Tapson, M.D. (Jan. 5, 2001)
• 2001 WL 34133738 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Reply to Movant's Motion for an Order to Show Cause (Jan. 04, 2001)
• 2001 WL 34900834 () Oral of Robert L. Rosenthal, M.D. (2001)
• 2000 WL 34588082 () Daubert Hearing (Dec. 19, 2000)
• 2000 WL 34588084 () Daubert Hearing (Dec. 19, 2000)
• 2000 WL 34588083 () (Transcript) (Dec. 12, 2000)
• 2000 WL 34588075 () Plaintiff's Supplemental Expert Report (Dec. 6, 2000)
• 2000 WL 34588085 () Daubert Hearing (Dec. 6, 2000)
• 2000 WL 34016472 (Trial Motion, Memorandum and Affidavit) Dunn Objectors%7D Memorandum in Further Support of Motion to Require Disclosure with Respect to Post-Approval Settlements by Class Counsel (Dec. 01, 2000)
• 2000 WL 34016470 (Trial Motion, Memorandum and Affidavit) American Home Products Corporation%7Ds Opposition to the Dunn Objectors%7D Request for Further Discovery (Nov. 29, 2000)
• 2000 WL 34588077 () Report of Pravin M. Shah, M.D. (Nov. 29, 2000)
• 2000 WL 34016445 (Trial Filing) Pretrial Order No. 1516 (Nov. 22, 2000)
• 2000 WL 34588072 () Case Specific Expert Declaration of Allen Gribetz, M.D. (Nov. 13, 2000)
• 2000 WL 34016444 (Trial Filing) Pretrial Order No. 1488 (Nov. 06, 2000)
• 2000 WL 34016474 (Trial Motion, Memorandum and Affidavit) Response of Dunn Objectors to Class Counsels%7D Motion to Impose a Supersedeas Bond Requirement for the Filing of an Appeal (Nov. 06, 2000)
• 2000 WL 34588076 () Declaration of Lemuel A. Moye, M.D., Ph.D. (Oct. 31, 2000)
• 2000 WL 34588078 () Karen L Kelly, MD. (Oct. 31, 2000)
• 2000 WL 34588079 () (Report or Affidavit) (Oct. 31, 2000)
• 2000 WL 34016465 (Trial Motion, Memorandum and Affidavit) Memorandum of Vinson Carithers, III in Opposition to Class Counsels%7D Motion to Impose Bond Requirement on Certain Objectors for the Filing of an Appeal (Oct. 30, 2000)
• 2000 WL 34016469 (Trial Motion, Memorandum and Affidavit) Hmo Louisiana%7Ds Motion to Stay Local Rule 23.1 Class Certification Briefing (Oct. 27, 2000)
• 2000 WL 34016475 (Trial Motion, Memorandum and Affidavit) Memorandum of Jane Scuteri, et al., in Opposition to Class Counsels%7D Motion to Impose a Bond Requirement on Objectors for the Filing of an Appeal (Oct. 24, 2000)
• 2000 WL 34016471 (Trial Motion, Memorandum and Affidavit) Memorandum of Vinson Carithers, III in Opposition to Class Counsels%7D Motion to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 27

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Impose Bond Requirement on Certain Objectors for the Filing of an Appeal (Oct. 23, 2000)
• 2000 WL 34618615 () (Deposition) (Oct. 16, 2000) Original Image of this Document (PDF)
• 2000 WL 34016443 (Trial Filing) Pretrial Order No. 1433 (Sep. 15, 2000)
• 2000 WL 34016467 (Trial Motion, Memorandum and Affidavit) Motion to Intervene and for Rehearing on Pretrial Order No. 1415 (Sep. 09, 2000)
• 2000 WL 34015561 (Trial Motion, Memorandum and Affidavit) American Home Products Corporation Defendants' Motion to Strike Class Action Allegations from Complaint (Sep. 07, 2000)
• 2000 WL 34015562 (Trial Motion, Memorandum and Affidavit) American Home Products Corporation's Motion for Protective Order (Sep. 07, 2000)
• 2000 WL 34016466 (Trial Motion, Memorandum and Affidavit) Movant%7Ds Memorandum in Support of Motion to Intervene and for Rehearing (Sep. 06, 2000)
• 2000 WL 34016464 (Trial Motion, Memorandum and Affidavit) The Plaintiffs%7D Management Committee%7Ds Response and Concurrence in Interneuron Pharmaceuticals, Inc.%7Ds Amended Motion for Return of Funds (Aug. 29, 2000)
• 2000 WL 34016463 (Trial Motion, Memorandum and Affidavit) Interneuron Pharmaceuticals, Inc.%7Ds Amended Motion for Return of Funds (Aug. 24, 2000)
• 2000 WL 34016462 (Trial Motion, Memorandum and Affidavit) Joint Motion for Approval of Fourth Amendment to Nationwide Class Action Settlement Agreement (Aug. 10, 2000)
• 2000 WL 34588073 () (Report or Affidavit) (Jul. 11, 2000)
• 2000 WL 34588070 () (Partial Testimony) (Jun. 28, 2000)
• 2000 WL 34588086 () Fairness Hearing Day Three (Jun. 28, 2000)
• 2000 WL 34588071 () Report of Gary A. Salzman, M.D. (Jun. 23, 2000)
• 2000 WL 34016441 (Trial Filing) Pretrial Order No. (Jun. 20, 2000)
• 2000 WL 34016442 (Trial Filing) Cigna Healthcare%7Ds Statement of the Issues to be Presented on Appeal (Jun. 09, 2000)
• 2000 WL 34588074 () (Report or Affidavit) (May

26, 2000)
• 2000 WL 34611051 () Litigation (May 10, 2000)
• 2000 WL 34588069 () (Partial Testimony) (May 4, 2000)
• 2000 WL 34588068 () (Partial Testimony) (May 2, 2000)
• 2000 WL 34016458 (Trial Motion, Memorandum and Affidavit) Class Counsels%7D Memorandum in Support of Final Settlement Approval (Apr. 21, 2000)
• 2000 WL 34611043 () Rule 26 Affidavit of Expert Witness Sara Echols Trucks, R.N., CRNP, FNP-C, MSN, BSN (Apr. 21, 2000)
• 2000 WL 34611044 () Rule 26 Affidavit of Expert Witness L. Stephens Tilghman (Apr. 21, 2000)
• 2000 WL 34019582 (Trial Motion, Memorandum and Affidavit) Fleming Objectors' Bench Brief to the Court for the Fairness Hearing (Apr. 14, 2000)
• 2000 WL 34614892 () Examination Before Trial of Non-Party Witness, Robyn J. Barst, M.D. (Apr. 14, 2000)
• 2000 WL 34614893 () (Deposition) (Apr. 14, 2000)
• 2000 WL 34614894 () (Partial Testimony) (Apr. 13, 2000)
• 2000 WL 34016455 (Trial Motion, Memorandum and Affidavit) Motion to Strike Improper Sur-Reply Filed by Phentermine Defendants (Apr. 11, 2000)
• 2000 WL 34617100 () (Report or Affidavit) (Apr. 11, 2000) Original Image of this Document (PDF)
• 2000 WL 34611050 () Affidavit of Victor F. Tapson, M.D. (Apr. 7, 2000)
• 2000 WL 34017133 (Trial Filing) Pretrial Order No. 1227 (Apr. 06, 2000)
• 2000 WL 34016456 (Trial Motion, Memorandum and Affidavit) Fleming Objectors%7D memorandum in Support of Objections and Motion to Disapprove the Settlement Agreement (Mar. 30, 2000)
• 2000 WL 34016482 (Trial Pleading) Objection of Vicki Dunn, et al., to Proposed Class Action Settlement (Mar. 30, 2000)
• 2000 WL 34611046 () Expert Report of Dr. Mark McClellan (Mar. 24, 2000)
• 2000 WL 34611048 () Declaration of Dean G. Karalis, M.D. (Feb. 29, 2000)
• 2000 WL 34593124 () (Report or Affidavit) (Feb. 28, 2000)
• 2000 WL 34593125 () Declaration of Steven N.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Goodman, M.D., M.H.S., Ph.D. (Feb. 28, 2000)
• 2000 WL 34611047 () Expert Witness Declaration of Robyn J. Barst, M.D. (Feb. 28, 2000)
• 2000 WL 34627887 () (Transcript) (Feb. 28, 2000) Original Image of this Document (PDF)
• 2000 WL 34627888 () (Transcript) (Feb. 28, 2000) Original Image of this Document (PDF)
• 2000 WL 34627889 () (Transcript) (Feb. 28, 2000) Original Image of this Document (PDF)
• 2000 WL 34627890 () (Transcript) (Feb. 28, 2000) Original Image of this Document (PDF)
• 2000 WL 34627891 () (Transcript) (Feb. 28, 2000) Original Image of this Document (PDF)
• 2000 WL 34627892 () (Transcript) (Feb. 28, 2000) Original Image of this Document (PDF)
• 2000 WL 34627893 () (Transcript) (Feb. 28, 2000) Original Image of this Document (PDF)
• 2000 WL 34627926 () Thomas Quincy Garvey III, M.D. (Feb. 28, 2000) Original Image of this Document (PDF)
• 2000 WL 34627927 () Expert Report of Arthur Frank, M.D. (Feb. 28, 2000) Original Image of this Document (PDF)
• 2000 WL 34627928 () Declaration of Professor Arthur R. Miller (Feb. 28, 2000) Original Image of this Document (PDF)
• 2000 WL 34627929 () Expert Report of Kerry J. Kaplan, M.D., F.A.C.C. (F.R. CIV. P. 26) (Feb. 28, 2000) Original Image of this Document (PDF)
• 2000 WL 34627930 () Declaration of Molly Kuehn Watson (Feb. 28, 2000) Original Image of this Document (PDF)
• 2000 WL 34627945 () (Partial Testimony) (Feb. 28, 2000) Original Image of this Document (PDF)
• 2000 WL 34627946 () (Partial Testimony) (Feb. 28, 2000) Original Image of this Document (PDF)
• 2000 WL 34627947 () (Partial Testimony) (Feb. 28, 2000) Original Image of this Document (PDF)
• 2000 WL 34627948 () (Partial Testimony) (Feb. 28, 2000) Original Image of this Document (PDF)
• 2000 WL 34627949 () (Partial Testimony) (Feb. 28, 2000) Original Image of this Document (PDF)
• 2000 WL 34627950 () (Partial Testimony) (Feb. 28, 2000) Original Image of this Document (PDF)
• 2000 WL 34588080 () Declaration of Jean A. Bisio (Feb. 25, 2000)
• 2000 WL 34588081 () (Report or Affidavit) (Feb. 25, 2000)
• 2000 WL 34614891 () Deposition of: Colin M.

Bloor, M.D. (Volume IV) (Feb. 21, 2000)
• 2000 WL 34016440 (Trial Filing) Pretrial Order No. (Feb. 14, 2000)
• 2000 WL 34016449 (Trial Motion, Memorandum and Affidavit) Defendant American Home Products Corporation%7Ds Memorandum in Opposition to HMO Louisiana%7Ds Motion to Intervene for the Purpose of Objecting to the Proposed Settlement and Conditional Class Certification (Feb. 14, 2000)
• 2000 WL 34611045 () Report of Janet Arrowsmith-Lowe, M.D. (Feb. 3, 2000)
• 2000 WL 34016450 (Trial Motion, Memorandum and Affidavit) Class Plaintiffs Response to the Motion of Paul J. Napoli, Marc Jay Bern, and Napoli, Kaiser & Bern for an Order Striking Plaintiffs%7D Motion for an Order to Show Cause, Etc. (Feb. 01, 2000)
• 2000 WL 34611049 () Second Supplemental Expert Witness Declaration of Colin M. Bloor, M.D. (Jan. 24, 2000)
• 2000 WL 34016448 (Trial Motion, Memorandum and Affidavit) Motion of American Home Products Corporation for a Preliminary Injunction Regarding False and Misleading Communications with Absent Class members Through the Internet Addresses (Jan. 19, 2000)
• 2000 WL 34016279 (Trial Motion, Memorandum and Affidavit) Memorandum of Napoli, Kaiser & Bern, LLP, in Opposition to Plaintiffs' Motion for an Order to Show Cause Why an Order to Protect the Class from Unauthorized and Improper Notice Should not Entered, and for ""Other Relief" (Jan. 10, 2000)
• 1999 WL 34000189 () Oral and Videotaped Deposition of Randall L. Tackett, Ph.D. (Dec. 13, 1999)
• 1999 WL 34002441 () Declaration of James H. Oury, M.D. (Dec. 9, 1999)
• 1999 WL 33644485 (Trial Filing) Local Rule 7.4(b)(2) Stipulation of Extension of Time (Dec. 06, 1999)
• 1999 WL 34000173 () (Partial Testimony) (Nov. 30, 1999)
• 1999 WL 34000187 () Deposition of: Colin M. Bloor, M.D. (Volume III) (Nov. 5, 1999)
• 1999 WL 34000184 () (Deposition) (Oct. 27, 1999)
• 1999 WL 33998286 () Expert Report of Bernard M. Wagner, M.D. (Oct. 25, 1999)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

• 2:99cv20593 (Docket) (Oct. 12, 1999)

• 1999 WL 34000186 () Deposition of: Colin M. Bloor, M.D. (Oct. 5, 1999)

• 1999 WL 34000170 () Deposition of: Colin M. Bloor, M.D. (Volume I) (Oct. 4, 1999)

• 1999 WL 33998257 () Generic Expert Witness Report of Stephen M. Factor, M.D. (Oct. 1, 1999)

• 1999 WL 33998258 () Generic Expert Witness Report of Rhys Bryant, Ph.D. (Oct. 1, 1999)

• 1999 WL 33998259 () Generic Expert Witness Report of Barry Stimmel, M.D. (Oct. 1, 1999)

• 1999 WL 33998260 () Generic Expert Witness Report of Elizabeth Delzell, M. D. (Oct. 1, 1999)

• 1999 WL 33998261 () Rule 26 Expert Disclosure of Kenneth J. Kellar, Ph.D. (Oct. 1, 1999)

• 1999 WL 33998263 () Rule 26 Expert Disclosure of Adaani Frost, M.D. (Oct. 1, 1999)

• 1999 WL 33998264 () (Report or Affidavit) (Oct. 1, 1999)

• 1999 WL 33998265 () (Report or Affidavit) (Oct. 1, 1999)

• 1999 WL 33998268 () Expert Disclosure of Robert Siegel, M.D. (Oct. 1, 1999)

• 1999 WL 33998269 () Expert Witness Declaration of Morton P. Printz, Ph.D. (Oct. 1, 1999)

• 1999 WL 33998282 () Expert Disclosure of Richard T. Lee, M.D. (Oct. 1, 1999)

• 1999 WL 33998284 () Generic Expert Witness Report of Sharon Rounds, M. D. (Oct. 1, 1999)

• 1999 WL 33998252 () Expert Witness Report of Robert W. Pollock (Sep. 29, 1999)

• 1999 WL 33998275 () Expert Report of Kenneth P. Chepenik, Ph.D. (Sep. 29, 1999)

• 1999 WL 33998271 () Report of Michael N. Rubinstein, M.D., F.A.C.C. (Sep. 28, 1999)

• 1999 WL 33998273 () Report of Stanley J. Schneller, M.D. (Sep. 28, 1999)

• 1999 WL 33998278 () Expert Report of Kevin L. Wallace, M.D. (Sep. 27, 1999)

• 1999 WL 33998280 () Expert Report of Paul A. Kvale, M.D. (Sep. 27, 1999)

• 1999 WL 33998281 () Expert Report of Kenneth L. Pinsker, M.D. (Sep. 27, 1999)

• 1999 WL 33998276 () Report of John Concato, M.D., M.S., M.P.H. (Sep. 25, 1999)

• 1999 WL 33998279 () Report of Ronald W. Millard, Ph.D. (Sep. 24, 1999)

• 1999 WL 33998254 () Mark J. Reasor, Ph.D. (Sep. 23, 1999)

• 1999 WL 34002366 () Oral Deposition of Paul Wellman (Sep. 13, 1999) Original Image of this Document (PDF)

• 1999 WL 33998287 () Expert Disclosure of Victor Tapson, M.D. (Sep. 1999)

• 1999 WL 33998255 () Expert Report of Dr. Allan David Sniderman, M.D. (Jul. 1, 1999)

• 1999 WL 33998289 () (Partial Testimony) (Jun. 24, 1999)

• 1999 WL 34000172 () Deposition of James H. Oury, M.D. (Jun. 18, 1999)

• 1999 WL 34000185 () (Deposition) (Jun. 16, 1999)

• 1999 WL 34000171 () (Partial Testimony) (Jun. 10, 1999)

• 1999 WL 34002390 () (Partial Testimony) (Apr. 27, 1999) Original Image of this Document (PDF)

• 1999 WL 33998285 () (Report or Affidavit) (Apr. 20, 1999)

• 1999 WL 33740591 (Trial Motion, Memorandum and Affidavit) Motion to Intervene by Certain Health Benefit Providers for Purposes of Requesting Clarification of, and Objecting to, the Proposed Interneuron Agreement of Compromise and Settlement (Feb. 28, 1999)

• 1999 WL 33998270 () Expert Witness Declaration of Robyn J. Barst, M.D. (Feb. 27, 1999)

• 1999 WL 33740476 (Trial Motion, Memorandum and Affidavit) Intervenors' Motion for Summary Judgment Denying Class Certification Under Rule 23(b)(1)(B) (Feb. 23, 1999)

• 1999 WL 33740493 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Intervenors' Motion for Summary Judgment Denying Class Certification Under Rule 23(b)(1)(B) (Feb. 23, 1999)

• 1999 WL 33740479 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to State Court Intervenor's Motion for Summary Judgment Denying Class Certification Under Rule 23(a)(4) (Feb. 22, 1999)

• 1999 WL 34000188 () (Deposition) (Feb. 20, 1999)

• 1999 WL 33740474 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Management Committee's Motion to Strike Objections of Margaret L. Watson to the Proposed Interneuron Limited Fund Class Settlement or in the Alternative to Compel the Deposition of Margaret L. Watson in Philadelphia

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
<span style="float:right">Page 30</span>

Not Reported in F.Supp.2d, 2002 WL 32154197 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Prior to February 19, 1999 or Suffer the Sanction of the Objections Being Deemed Stricken (Feb. 16, 1999)
• 1999 WL 33740491 (Trial Motion, Memorandum and Affidavit) American Home Product Corporation's Objections and Responses to the Proposed Findings of Fact Regarding the Motions for Class Certification of the Non-PMC Plaintiffs (Feb. 12, 1999)
• 1999 WL 33740553 (Trial Pleading) American Home Products Corporation's Proposed Findings of Fact on the Motions for Class Certification (Feb. 12, 1999)
• 1999 WL 33740469 (Trial Motion, Memorandum and Affidavit) State Court Intervenors' Motion for Summary Judgment Denying Class Certification Under Rule 23(a)(4) (Feb. 09, 1999)
• 1999 WL 33740477 (Trial Motion, Memorandum and Affidavit) Objections of Smithkline Beecham Corporation to Proposed Settlement and Request for Time to Speak at Hearing (Feb. 08, 1999)
• 1999 WL 33740478 (Trial Motion, Memorandum and Affidavit) Comments, Objections, Suggestions and Request to Speak of the Blue Cross/ Blue Shield Plans as to the Proposed Interneuron Mandatory Limited Fund Class Action Settlement (Feb. 04, 1999)
• 1999 WL 33740573 (Trial Pleading) Rugby Laboratories, Inc.'s Objections Regarding the Proposed Interneuron Limited Fund Settlement (Feb. 03, 1999)
• 1999 WL 33740501 (Trial Motion, Memorandum and Affidavit) Notice of Motion and Motion of Non-Parties Mayo Foundation and Heidi M. Connolly, M.D. for a Protective Order (Jan. 29, 1999)
• 1999 WL 34000174 () Report of James H. Oury, M.D. (Jan. 25, 1999)
• 1998 WL 34190437 (Trial Motion, Memorandum and Affidavit) Defendant Les Laboratoires Servier's Motion to Dismiss for Lack of Personal Jurisdiction and for Forum Non Conveniens (Dec. 21, 1998)
• 1998 WL 34190431 (Trial Filing) Response of the American Home Products Corporation Defendants to the Petition of the Plaintiffs' Management Committee Dated October 30, 1998 (Dec. 08, 1998)
• 1998 WL 34190439 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Patti Jo Hellmig's Motion to Intervene (Dec. 04, 1998)

• 1998 WL 34190456 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Patti Jo Hellmig's Motion to Intervene (Dec. 04, 1998)
• 1998 WL 34190442 (Trial Motion, Memorandum and Affidavit) State Court Diet Drug Claimants' Objection to this Court's Jurisdiction to Grant PMC's Petition for an Order to Compel Claimants Either to Forfeit 6% of their Recoveries or Else (A) Forfeit all of Interneuron's Evidence of its Liability, and (B) Forf eit their Access to and Use as Evidence of all MDL Discovery (Nov. 16, 1998)
• 1998 WL 34190449 (Trial Motion, Memorandum and Affidavit) State Court Diet Drug Claimants' Objection to this Court's Jurisdiction to Grant PMC'S Petition for an Order to Compel Claimants Either to Forfeit 6% of their Recoveries or Else (A) Forfeit all of Interneuron's Evidence of its Liability, and (B) Forf eit their Access to and Use as Evidence of all MDL Discovery (Nov. 16, 1998)
• 1998 WL 34190450 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiffs Carol and Armond Aserinsky's Response to PMC's Petition to Set Aside Money for Counsel Fees and Costs in MDL 1203 and to Remand this Case for Trial (Nov. 12, 1998)
• 1998 WL 34190441 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of the PMC's Petition for an Order (1) Securing an Equitable Allocation of Counsel Fees and Costs for Common Benefit Work; (2) Approving an Agreement Between the PMC and the California Pec with Respect to Coordination of Discovery; (3) Establishing a Procedure for Coordination with State-Court Diet Drug Litigation; (4) Protecting the PMC's Work Product; and (5) Appointing John M. Restaino, Esquire to the PMC (Oct. 30, 1998)
• 1998 WL 34202080 (Trial Motion, Memorandum and Affidavit) Memorandum of Lam in Support of Motion of the Plaintiffs' Management Committee to Enforce Subpoenas Served on Third-Parties Monsanto Corporation and Parexel International Corporation (Oct. 16, 1998)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, J. Clayton Athey, hereby certify that on this 26th day of May, 2006, I caused the

foregoing **CLASS PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NATIONAL**

**PLAINTIFFS' GROUP'S MOTION TO FILE CONSOLIDATED COMPLAINT** to be

served on the following counsel via electronic filing:

Frederick L. Cottrell, III, Esquire
Chad Michael Shandler, Esquire
Steven J. Fineman, Esquire
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
cottrell@rlf.com
shandler@rlf.com
fineman@rlf.com
*Counsel for AMD International Sales &
Service LTD and Advanced Micro Devices,
Inc.*

Charles P. Diamond, Esquire
Mark A. Samuels, Esquire
Linda J. Smith, Esquire
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
CDiamond@omm.com
MSamuels@omm.com
lsmith@omm.com
*Counsel for AMD International Sales &
Service LTD and Advanced Micro Devices,
Inc.*

Adam L. Balick, Esquire
Bifferato Gentilotti Biden & Balick
711 North King Street
Wilmington, DE 19801-3503
abalick@bgbblaw.com
*Counsel for AMD International Sales &
Service LTD and Advanced Micro Devices,
Inc.*

Laurin Grollman, Esquire
Salem M. Katsh, Esquire
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
lgrollman@kasowitz.com
skatsh@kasowitz.com
*Counsel for AMD International Sales &
Service LTD and Advanced Micro Devices,
Inc.*

Richard L. Horwitz, Esquire
W. Harding Drane, Jr., Esquire
Potter Anderson & Corroon, LLP
1313 N. Market St., Hercules Plaza, 6th Flr.
P.O. Box 951
Wilmington, DE 19899-0951
rhorwitz@potteranderson.com
wdrane@potteranderson.com
*Counsel for Intel Corporation and Intel
Kabushiki Kaisha*

David Mark Balabanian, Esquire
Joy K. Fuyuno, Esquire
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
david.balabanian@bingham.com
joy.fuyuno@bingham.com
*Counsel for Intel Corporation*

Christopher B. Hockett, Esquire
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111
chris.hockett@bingham.com
*Counsel for Intel Corporation*

Daniel S. Floyd, Esquire
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, California
90071-3197
dfloyd@gibsondunn.com
*Counsel for Intel Corporation*

Robert E. Cooper, Esquire
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, California
90071-3197
rcooper@gibsondunn.com
*Counsel for Intel Corporation*

Donald F. Drummond, Esquire
Drummond & Associates
One California Street, Suite 300
San Francisco, CA 94111
ballen@drummondlaw.net
*Counsel for Dressed to Kill Custom Draperies
LLC, Jose Juan, Tracy Kinder and Edward
Rush*

Darren B. Bernhard, Esquire
Peter E. Moll, Esquire
Howrey LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Bernhardd@howrey.com
*Counsel for Intel Corporation and Intel
Kabushiki Kaisha*

B.J. Wade, Esquire
Glassman Edwards Wade & Wyatt, P.C.
26 N. Second Street
Memphis, TN 38103
bwade@gewwlaw.com
*Counsel for Cory Wiles*

Nancy L. Fineman, Esquire
Cotchett, Pitre, Simon & McCarthy
840 Malcolm Road, Suite 200
Burlingame, CA 94010
nfineman@cpsmlaw.com
*Counsel for Trotter-Vogel Realty Inc.*

Robert D. Goldberg, Esquire
Biggs and Battaglia
921 North Orange Street, P.O. Box 1489
Wilmington, DE 19899
goldberg@batlaw.com
*Counsel for Charles Dupraz, Vanessa Z.
DeGeorge, Melissa Goeke, Nancy Bjork,
James R. Conley, Jeff Vaught, Jim Kidwell
Richard Caplan, Virginia Deering, Ficor
Acquisition Co. LLC, Tom Hobbs, David
Kurzman, Leslie March, Andrew Marcus,
Paula Nardella, Bill Richards, Maria Pilar
Salgado, Ron Terranova, Nancy Wolff Ryan
James Volden and Carl Yamaguchi*

Donald Chidi Amamgbo, Esquire
Amamgbo & Associates, APC
1940 Embarcadero Cove
Oakland, CA 94606
donaldamamgbo@citycom.com
*Counsel for Athan Uwakwe*

Jeffrey F. Keller, Esquire
Jade Butman, Esquire
Law Offices of Jeffrey F. Keller
425 Second Street, Suite 500
San Francisco, CA 94107
jkeller@jfkellerlaw.com
jbutman@kellergrover.com
*Counsel for David E. Lipton, Maria I. Prohias,
Patricia M. Niehaus, Peter Jon Naigow, Ronld
Konieczka, Steve J. Hamilton, Susan Baxley
and Kevin Stoltz*

Gordon Ball, Esquire
Ball & Scott
550 W. Main Ave., Suite 750
Knoxville, TN 37902
gball@ballandscott.com
*Counsel for Andrew Armbrister and Melissa
Armbrister*

Joseph M. Patane, Esquire
Law Offices of Joseph M. Patane
2280 Union Street
San Francisco, CA 94123
jpatane@tatp.com
*Counsel for Karol Juskiewicz and Lawrence
Lang*

James Gordon McMillan, III, Esquire
Bouchard Margules & Friedlander
222 Delaware Avenue,
Suite 1400
Wilmington, DE 19801
jmcmillan@bmf-law.com
*Counsel for Raphael Allison and Matthew
Kravitz*

Michele C. Jackson, Esquire
Lieff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West, 275 Battery Street,
30th Floor
San Francisco, CA 94111
mjackson@lchb.com
*Counsel for Huston Frazier, Jeanne Cook
Frazier and Brian Weiner*

19684.1\302870v1

3

A. Zachary Naylor, Esquire
Robert Kriner, Jr., Esquire
Robert R. Davis, Esquire
James R. Malone, Jr., Esquire
Chimicles & Tikellis, LLP
One Rodney Square,  P.O. Box 1035
Wilmington, DE 19899
zacharynaylor@chimicles.com
robertkriner@chimicles.com
robertdavis@chimicles.com
jamesmalone@chimicles.com
*Counsel for Gideon Elliott, Angel Genese, Nir Goldman, Paul C. Czysz, Elizabeth Bruderle Baran, Carrol Cowan, Russell Dennis, Damon DiMarco, Kathy Ann Chapman, Caresse Harms, JWRE Inc., Leonard Lorenzo, Michael E. Ludt, John Maita, Chrystal Moeller, Robert J. Rainwater, Mary Reeder, Stuart Schupler and Sonia Yaco*

Harry Shulman, Esquire
Robert Mills, Esquire
The Mills Law Firm
145 Marina Boulevard
San Rafeal, CA  94901
harry@millslawfirm.com
deepbluesky341@hotmail.com
*Counsel for Stuart Munson*

Ali Oromchian, Esquire
Finkelstein, Thompson & Loughran
601 Montgomery Street, Suite 665
San Francisco, CA 94111
ao@ftllaw.com
*Counsel for Ian Walker, Damon DiMarco, Carrol Cowan, Leonard Lorenzo and Russell Dennis*

Douglas A. Millen, Esquire
Steven A. Kanner, Esquire
Much Shelist Freed Denenberg Ament & Rubenstein, P.C.
191 North Wacker Drive, Suite 1800
Chicago, IL  60606
dmillen@muchshelist.com
skanner@muchshelist.com
*Counsel for HP Consulting Services Inc. and Phillip Boeding*

Vincent J. Esades, Esquire
Muria J. Kruger, Esquire
Marguerite E. O'Brien, Esquire
Heins Mills & Olson, P.L.C.
3550 I.D.S. Center
80 S. Eight Street
Minneapolis, MN  55402
vesades@heinsmills.com
mkruger@heinsmills.com
mobrien@heinsmills.com
*Counsel for Bergerson & Associates Inc.*

Garrett D. Blanchfield, Jr., Esquire
Mark Reinhardt, Esquire
Reinhardt Wendorf & Blanchfield
332 Minnesota Street, Suite E-1250
St. Paul, MN  55101
g.blanchfield@rwblawfirm.com
mreinhardt@comcast.net
*Counsel for Susan Baxley*

Hollis L. Salzman, Esquire
Kellie Safar, Esquire
Goodking Labaton Rudoff & Sucharow, LLP
100 Park Avenue
New York, NY 10017
hsalzman@labaton.com
ksafar@labaton.com
*Counsel for Angel Genese, Gideon Elliott and Nir Goldman*

R. Bruce McNew, Esquire
Taylor & McNew, LLP
3711 Kennett Pike, Suite 210
Greenville, DE 19807
mcnew@taylormcnew.com
*Counsel for Robert Marshall*

Jason S. Kilene, Esquire
Daniel E. Gustafson, Esquire
Gustafson Gluek PLLC
650 Northstar East, 608 Second Avenue South
Minneapolis, MN 55402
jkilene@gustafsongluek.com
dgustafson@gustafsongluek.com
*Counsel for Fiarmont Orthopedics & Sports Medicine PA*

David Boies, III, Esquire
Straus & Boies, LLP
4041 University Drive, 5th Floor
Fairfax, VA 22030
dboies@straus-boies.com
*Counsel for Dressed to Kill Custom Draperies LLC, Jose Juan, Edward Rush and Tracy Kinder*

Lance A. Harke, Esquire
Harke & Clasby
155 S. Miami Avenue
Miami, FL 33130
lharke@harkeclasby.com
*Counsel for Nathaniel Schwartz and Maria I. Prohias*

Allan Steyer, Esquire
Steyer Lowenthal Boodrookas Alvarez & Smith LLP
One California Street, Third Floor
San Francisco, CA 94111
asteyer@steyerlaw.com
*Counsel for Cheryl Glick-Salpeter, Jay Salpeter, Jodi Salpeter and Michael H. Roach*

Bruce J. Wecker, Esquire
Hosie McArthur LLP
One Market Street
Spear Street Tower #2200
San Francisco, CA 94105
bwecker@hosielaw.com
*Counsel for Dwight E. Dickerson*

Mario Nunzio Alioto, Esquire
Trump Alioto Trump & Prescott LLP
2280 Union Street
San Francisco, CA 94123
malioto@tatp.com
*Counsel for Karol Juskiewicz and Lawrence Lang*

Francis O. Scarpulla, Esquire
Law Offices of Francis O. Scarpulla
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
foslaw@pacbell.net
*Counsel for Lazio Family Products, Law Offices of Laurel Stanley, William F. Cronin, Michael Brauch and Andrew Meimes*

Steven A. Asher, Esquire
Robert S. Kitchenoff, Esquire
Weinstein Kitchenoff & Asher, LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
asher@wka-law.com kithenoff@wka-law.com
*Counsel for Joseph Samuel Cone*

Francis A. Bottini, Jr., Esquire
Wolf Haldenstein Adler Freeman & Herz
750 B Street, Suite 2770
San Diego, CA 92101
bottini@whafh.com
*Counsel for Ryan James Volden, Ficor Acquisition Co LLC, Giacobbe-Fritz Fine Art LLC, Andrew Marcus, Bill Richards, Carl Yamaguchi, Charles Dupraz, David Kurzman, James R. Conley, Jeff Vaught, John Matia, Kathy Ann Chapman, Caresse Harms, JWRE Inc., Jim Kidwell, John Maita, Leslie March, Maria Pilar Salgado, Melissa Goeke, Nancy Bjork, Nancy Wolfe, Paula Nardella, Richard Caplan, Ron Terranova, Tom Hobbs, Vanessa Z. DeGeorge, Virginia Deering, Chrystal Moeller, Robert J. Rainwater, Mary Reeder and Sonia Yaco*

Fred Taylor Isquith, Esquire
Adam J. Levitt, Esquire
Wolf Haldenstein Adler Freeman & Herz
270 Madison Ave., 11th Floor
New York, NY 10016
isquith@whafh.com
levitt@whafh.com
*Counsel for Ryan James Volden, Ficor Acquisition Co LLC, Giacobbe-Fritz Fine Art LLC, Andrew Marcus, Bill Richards, Carl Yamaguchi, Charles Dupraz, David Kurzman, James R. Conley, Jeff Vaught, John Matia, Kathy Ann Chapman, Caresse Harms, JWRE Inc., Jim Kidwell, John Maita, Leslie March, Maria Pilar Salgado, Melissa Goeke, Nancy Bjork, Nancy Wolfe, Paula Nardella, Richard Caplan, Ron Terranova, Tom Hobbs, Vanessa Z. DeGeorge, Virginia Deering, Chrystal Moeller, Robert J. Rainwater, Mary Reeder and Sonia Yaco*

Edward A. Wallace, Esquire
The Wexler Firm LLP
One N. LaSalle Street, Suite 2000
Chicago, IL 60602
eawallace@wexlerfirm.com
*Counsel for Peter Jon Naigow*

Jeffrey S. Goddess, Esquire
Rosenthal, Monhait, Gross & Goddess
Mellon Bank Center, Suite 1401
P.O. Box 1070
Wilmington, DE 19899
jgoddess@rmgglaw.com
*Counsel for Ludy A. Chacon, Joseph Samuel Cone, Darice Russ and Michael K. Simon*

Jason S. Hartley, Esquire
Ross, Dixon & Bell LLP
550 West B Street, Suite 400
San Diego, CA 92101
jhartley@rdblaw.com
*Counsel for Gabriella Herroeder-Perras*

Craig C. Corbitt, Esquire
Zelle, Hofmann, Voelbel, Mason & Gette LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
ccorbitt@zelle.com
*Counsel for William F. Cronin, Law Offices of Laurel Stanley and Lazio Family Products*

Scott E. Chambers, Esquire
Schmittinger & Rodriguez, P.A.
414 S. State Street
P.O. Box 497
Dover, DE 19903
schambers@scbmittrod.com
*Counsel for David Arnold, Andrew S. Cohn,*
*Jason Craig, Maria Griffin, Lena K. Manyin,*
*Paul Ramos and Michael Ruccolo*

Juden Justice Reed, Esquire
Schubert & Reed LLP
Two Embarcadero Center, Suite 1600
San Francisco, CA 94111
jreed@schubert-reed.com
*Counsel for Patrick J. Hewson*

Russell M. Aoki, Esquire
Aoki Sakamoto Grant LLP
One Convention Place
701 Pike Street, Suite 1525
Seattle, WA 98101
russ@aoki-sakamoto.com
*Counsel for Kevin Stoltz*

Richard A. Ripley, Esquire
Bingham McCutchen
1120 20th Street, NW, Suite 800
Washington, DC 20036
richard.ripley@bingham.com
*Counsel for Intel Corporation*

Donald L. Perelman, Esquire
Fine Kaplan & Black, RPC
1835 Market Street, 28th Flr
Philadelphia, PA 19103
dperelman@finekaplan.com
*Counsel for Kevin Stoltz*

Reginald Von Terrell, Esquire
The Terrell Law Group
223 25th Street
Richmond, CA 94804
REGGIET2@aol.com
*Counsel for Athan Uwakwe*

Natalie Finkelman Bennett, Esquire
Shepherd, Finkelman, Miller & Shah
65 Main Street
Chester, CT 06412-1311
nfinkelman@classactioncounsel.com
*Counsel for Ludy A. Chacon*

Michael L. Kirby, Esquire
Kirby Noonan Lance & Hoge LLP
One America Plaza
600 West Broadway, Suite 1100
San Diego, CA 92101
mkirby@knlh.com
*Counsel for Justin Suarez*

Jeffrey A. Bartos, Esquire
Guerrieri, Edmond, Clayman & Bartos, PC
1625 Massachusetts Avenue, NW
Washington, DC 20036
jbartos@geclaw.com
*Counsel for Jose Juan, Dressed to Kill Custom*
*Draperies, LLC, Tracy Kinder and Edward*
*Rush*

Randy R. Renick, Esquire
Law Offices of Randy Renick
128 North Fair Oaks Avenue, Suite 204
Pasadena, CA 91103
rrr@renicklaw.com
*Counsel for Shanghai 1930 Restaurant*
*Partners L.P. and Major League Softball Inc.*

Daniel Hume, Esquire
Kirby McInerney & Squire LLP
830 Third Avenue, 10th Floor
New York, NY 10022
dhume@kmslaw.com
*Counsel for Raphael Allison and Matthew
Kravitz*

Scott Ames, Esquire
Serratore & Ames
9595 Wilshire Blvd., Suite 201
Los Angeles, CA  90212
scott@serratoreames.com
*Counsel for Major League Softball, Inc.*

Douglas G. Thompson, Jr., Esquire
Finkelstein, Thompson & Loughran
1050 30th Street N.W.
Washington, DC 20007
dgt@ftllaw.com
*Counsel for Ian Walker, Damon DiMarco,
Carrol Cowan, Leonard Lorenzo and Russell
Dennis*

Daniel B. Allanoff, Esquire
Steven Greenfogel, Esquire
Meredith Cohen Greenfogel & Skirnick, P.C.
22nd Floor, Architects Building
117 S. 17th Street
Philadelphia, PA  19103
dallanoff@mcgslaw.com
sgreenfogel@mcgslaw.com
*Counsel for Benjamin Allanoff*

Harvey W. Gurland, Jr., Esquire
Duane Morris
200 S. Biscayne Blvd., Suite 3400
Miami, FL 33131
HWGurland@duanemorris.com
*Counsel for Intel Corporation*

Barbara C. Frankland, Esquire
Rex A. Sharp, Esquire
Gunderson Sharp & Walke, L.L.P.
4121 W. 83rd St., Ste. 256
Prairie Village, KS 66208
bfrankland@midwest-law.com
rsharp@midwest-law.com
*Counsel for Marvin D. Chance, Jr.*

VIA U.S. MAIL

Clerk Michael J. Beck
Clerk, MDL Judicial Panel
One Columbus Circle, N.E.
Room G-255, Federal Judiciary Bldg.
Washington, DC 20002-8004
*Pro Se*

J. Clayton Athey (#4378)

19684.1\302870v1                    8