# EXHIBIT 31

OAO88  (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

Advanced Micro Devices, Inc. and AMD
International Sales & Services, Ltd.

**SUBPOENA IN A CIVIL CASE**

v.

Intel Corporation and Intel Kabushiki Kaisha

Case Number:[1]    05-441-JJF
United States District Court,
District of Delaware

TO:    Hewlett-Packard Company
c/o Michael J. Holston, Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

### See Schedule A attached hereto

| PLACE | DATE AND TIME |
|---|---|
| Talone & Associates 423 South 15th Street, Philadelphia, PA  19146 | August 7, 2006 |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendants | June 21, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jason C. Raofield
Howrey, LLP
1299 Pennsylvania Ave., N.W., Washington, DC  20004
(202) 283-7267

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on

| | DATE | SIGNATURE OF SERVER |
|---|---|---|

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

### DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any discovery request.

1.    The term "AMD" means Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd., and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd.

2.    The term "Intel" means Intel Corporation and Intel Kabushiki Kaisha and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Intel Corporation and Intel Kabushiki Kaisha.

3.    The term "COMMUNICATION" means the transmittal of information and encompasses every medium of information transmittal, including, but not limited to, oral, written, graphic and electronic communication.

4.    The term "CONSIDERATION" means discount, rebate, lump sum payment, market development funds, cooperative advertising payment, advertising allowances, promotional payment, seed money, free microprocessors, securities (whether voting or non-voting), options, warrants, or other payment or other compensation or payment.

5.    The term "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy constitutes a separate document within the meaning of the term.

6.     "**YOU**" or "**YOUR**" means **Hewlett-Packard Company** and its predecessors,  present and former divisions, subsidiaries, parents, branches and affiliates, authorized agents, employees, officers, directors, and representatives.

7.     "**PRODUCT TYPE**" means the following platforms: (1) desktop ; (2) laptop; (3) workstation; and/or (4) server.

8.     "**X86 COMPUTER PRODUCT**" means a computer system that contains one or more x86 microprocessors.

9.     "**SKU**" means Stock Keeping Unit.

## INSTRUCTIONS

1.     Documents to be produced include documents in your possession, custody, or control wherever located.

2.     Unless otherwise specifically stated herein, the time period covered by each of these requests is from January 1, 2000 to the date this subpoena was issued.

3.     Documents must be produced as they are kept in the usual course of business, or must be organized and labeled to correspond to the document requests by number.

4.     To the extent that you withhold from production any responsive document on the grounds of a claim of privilege or attorney work product, please provide the total number of responsive documents withheld from production.  You are not required to provide at the time of production a privilege log or other description of the nature of any such documents.  Intel expressly reserves its right to seek a privilege log at a later date.

2

## DOCUMENT REQUESTS

1.      All DOCUMENTS constituting, reflecting or discussing COMMUNICATIONS with AMD concerning the actual or proposed terms and conditions of the sale of microprocessors from AMD or Intel to YOU (including actual sales and proposed sales that were not consummated), including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such sale or proposed sale.

2.      All DOCUMENTS constituting, reflecting or discussing any offer or proposal made by AMD to YOU in connection with the actual or proposed purchase or acquisition of microprocessors by YOU from AMD, including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such offer or proposal.

3.      All DOCUMENTS constituting or reflecting any past or present contractual relationship between YOU and AMD.

4.      All DOCUMENTS reflecting or concerning any evaluation by you whether to purchase microprocessors from AMD or Intel (including any evaluation relating to the quantity or timing of such purchase), including, but not limited to, DOCUMENTS discussing or concerning (a) the technical specifications or performance of AMD's or Intel's microprocessors; (b) the quality or reliability of AMD's or Intel's microprocessors or systems incorporating those microprocessors; (c) the reliability of Intel or AMD as

3

suppliers; (d) AMD's or Intel's ability to supply microprocessors in the quantities that

YOU require or anticipate that YOU will require; (e) the suitability of AMD's or Intel's

microprocessors for YOUR business objectives; (f) the suitability of Intel-based or AMD-

based platforms for particular customer segments, including, but not limited to, corporate

customers; (g) the future roadmap of Intel or AMD, including, but not limited to, the

suitability of future product offerings from the two companies to YOUR needs; (h) actual

or expected consumer demand for systems incorporating AMD's or Intel's

microprocessors; (i) the pricing of AMD's or Intel's microprocessors; (j) negotiations,

proposals or demands in connection with the purchase or potential purchase of

microprocessors; (k) the availability, capability or price of chipsets or motherboards; (l)

the total bill of materials for systems based on Intel or AMD microprocessors; (m) costs

associated with the shifting from the use of one microprocessor to another; (n) or any

other reasons influencing YOUR decision to purchase (or not purchase) microprocessors

from AMD or Intel.

     5.     All DOCUMENTS reflecting or discussing any failure or perceived failure by

AMD or Intel to satisfy any commitment or expectation regarding the sale or supply of

microprocessors or any other product or service, including, but not limited to, a failure to

meet supply commitments, a failure to supply products of sufficient quality or reliability,

a failure to supply products in a timely manner, a failure to supply products that conform

to AMD's claims regarding performance or other attributes, or a failure to provide

adequate service or support.

6.     All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or reliability of claims made by AMD regarding the attributes of its microprocessors or systems incorporating its microprocessors.

7.     All DOCUMENTS, whether generated internally or received from third parties, discussing or concerning any technological, reliability, quality, or other advancements or improvements in any of YOUR products, including any advancements or improvements in the sale of any of YOUR products, that are attributable to any technological initiative by Intel, including, but not limited to, any standard or specification to which Intel made significant contributions.

8.     All DOCUMENTS discussing or concerning the (a) the relative merits of Intel-based platforms for systems directed at or intended for sale to corporate or business customers and (b) the preference of corporate or business customers for either Intel or AMD microprocessors or systems incorporating those microprocessors.

9.     All DOCUMENTS constituting or reflecting any advertisement or promotion by YOU referencing AMD.

10.     All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning any of the following:  (a) any advertising or promotion by YOU referencing AMD or Intel; (b) any product launch by YOU referencing AMD or Intel; (c) product roadmaps of Intel or AMD products; (d) or the terms of any contractual relationship between YOU and Intel.

11.     All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D. Del.), or any of the allegations about YOU in AMD's Complaint in that matter, or

any other litigation involving AMD and Intel, or any investigation relating to Intel by the Japan Fair Trade Commission or the European Commission.

12.  For each **x86 COMPUTER PRODUCT** that **YOU** manufacture or market, **DOCUMENTS** sufficient to identify the (1) **PRODUCT TYPE**; (2) brand; and (3) model; (4) components (e.g., CPU, Keyboard, Monitor) and (5) **SKU**.

13.  For each of **YOUR** microprocessor purchases, **DOCUMENTS** sufficient to show: (1) the vendor; (2) the units, brand and **SKU** number; (3) the dollars paid; and (4) the date of purchase.

14.  For each sale or lease of a **x86 COMPUTER PRODUCT** that **YOU** have made, **DOCUMENTS** sufficient to show: (1) the **x86 COMPUTER PRODUCT SKU**; (2) the number of units in the transaction; (2) the revenue generated by the transaction; (3) the customer name and ship-to address; and (4) the date of the transaction.

15.  For the period June 28, 2001 through December 31, 2005, **DOCUMENTS**, other than transactional **DOCUMENTS** containing only information sought in Request 14 above, sufficient to show the terms and conditions contained in agreements for the sale or lease of **x86 COMPUTER PRODUCTS** to any of the following entities:  Google, Inc.; Citigroup, Inc.; The Boeing Company; Toyota Motor Corporation; Electronic Data Systems Corporation; Accenture Ltd.; BP p.l.c.; Consolidated Edison, Inc.; Lehman Brothers Holdings, Inc.; The Walt Disney Company; Time Warner, Inc.  This request is limited to sales or leases to, or use by, the foregoing entities or any of their divisions, subsidiaries, affiliates or operations, in the United States.

6

16.    For the period June 28, 2001 through December 31, 2005, DOCUMENTS sufficient to identify the persons responsible for negotiating agreements for the sale or lease of **x86 COMPUTER PRODUCTS** to any of the entities identified in Request 15 above.

17.    DOCUMENTS sufficient to show, on a monthly basis, by **SKU, PRODUCT TYPE,** and **x86 COMPUTER PRODUCT, YOUR** gross profit and operating margins.

18.    DOCUMENTS sufficient to describe the name, scope, financial and other terms, conditions and effective dates of any rebate, marketing, other promotional program that **YOU** have offered in connection with the sale of **YOUR x86 COMPUTER PRODUCTS,** whether by **YOU** or a reseller.

19.    With regard to payments made under the programs identified in Request 18 above, DOCUMENTS sufficient to show: (1) the program under which the payment was made; (2) the amount that **YOU** paid; (3) whether the recipient of the payment was a reseller or end user; (4) the **x86 COMPUTER PRODUCT SKU** to which the payment relates; and (5) the date of the payment.

20.    With respect to any monetary **CONSIDERATION** that **YOU** received in connection with **YOUR** purchase of microprocessors, DOCUMENTS sufficient to show: (1) the type of payment; (2) the payer; (3) the amount of payment; (4) how you used the payment; and (5) the date of payment.

21.    DOCUMENTS sufficient to identify the component specifications for each **x86 COMPUTER PRODUCT** identified in response to Request No. 12 and the time period during which each such specification was manufactured or marketed.

22. DOCUMENTS sufficient to identify and describe YOUR competitive actions, strategic plans, marketing plans, competitive reviews or market analyses regarding the wholesale or retail market for YOUR x86 COMPUTER PRODUCTS.

# EXHIBIT 32

## Issued by the

# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

Advanced Micro Devices, Inc. and AMD
International Sales & Services, Ltd.

v.

Intel Corporation and Intel Kabushiki Kaisha

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    05-441-JJF
United States District Court,
District of Delaware

TO:    Hitachi America, Ltd.
2000 Sierra Point Parkway
Brisbane, California  94005

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A attached hereto

| PLACE | DATE AND TIME |
|---|---|
| Gibson, Dunn & Crutcher LLP 1881 Page Mill Road, Palo Alto, California  94304 | August 7, 2006 |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Robert E. Cooper* mpr    Attorney for Defendants | June 21, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Robert E. Cooper
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071
(213) 229-7000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number

AO88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                        DATE                                SIGNATURE OF SERVER

                                                    _____
                                                    ADDRESS OF SERVER

                                                    _____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

    (i)    fails to allow reasonable time for compliance,
    (ii)   requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

    (iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or
    (iv)   subjects a person to undue burden.

(B) If a subpoena

    (i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or
    (ii)   requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or
    (iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

### DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any discovery request.

1.   The term "AMD" means Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd., and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd.

2.   The term "Intel" means Intel Corporation and Intel Kabushiki Kaisha and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Intel Corporation and Intel Kabushiki Kaisha.

3.   The term "COMMUNICATION" means the transmittal of information and encompasses every medium of information transmittal, including, but not limited to, oral, written, graphic and electronic communication.

4.   The term "CONSIDERATION" means discount, rebate, lump sum payment, market development funds, cooperative advertising payment, advertising allowances, promotional payment, seed money, free microprocessors, securities (whether voting or non-voting), options, warrants, or other payment or other compensation or payment.

5.   The term "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy constitutes a separate document within the meaning of the term.

6. "**YOU**" or "**YOUR**" means Hitachi America, Ltd. and its predecessors, present and former divisions, subsidiaries, parents, branches and affiliates, authorized agents, employees, officers, directors, and representatives.

7. "**PRODUCT TYPE**" means the following platforms: (1) desktop ; (2) laptop; (3) workstation; and/or (4) server.

8. "**X86 COMPUTER PRODUCT**" means a computer system that contains one or more x86 microprocessors.

9. "**SKU**" means Stock Keeping Unit.

## INSTRUCTIONS

1. Documents to be produced include documents in your possession, custody, or control wherever located.

2. Unless otherwise specifically stated herein, the time period covered by each of these requests is from January 1, 2000 to the date this subpoena was issued.

3. Documents must be produced as they are kept in the usual course of business, or must be organized and labeled to correspond to the document requests by number.

4. To the extent that you withhold from production any responsive document on the grounds of a claim of privilege or attorney work product, please provide the total number of responsive documents withheld from production. You are not required to provide at the time of production a privilege log or other description of the nature of any such documents. Intel expressly reserves its right to seek a privilege log at a later date.

## DOCUMENT REQUESTS

1. All **DOCUMENTS** constituting, reflecting or discussing **COMMUNICATIONS** with AMD concerning the actual or proposed terms and conditions of the sale of microprocessors from

AMD or Intel to YOU (including actual sales and proposed sales that were not consummated), including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such sale or proposed sale.

2. All DOCUMENTS constituting, reflecting or discussing any offer or proposal made by AMD to YOU in connection with the actual or proposed purchase or acquisition of microprocessors by YOU from AMD, including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such offer or proposal.

3. All DOCUMENTS constituting or reflecting any past or present contractual relationship between YOU and AMD.

4. All DOCUMENTS reflecting or concerning any evaluation by you whether to purchase microprocessors from AMD or Intel (including any evaluation relating to the quantity or timing of such purchase), including, but not limited to, DOCUMENTS discussing or concerning (a) the technical specifications or performance of AMD's or Intel's microprocessors; (b) the quality or reliability of AMD's or Intel's microprocessors or systems incorporating those microprocessors; (c) the reliability of Intel or AMD as suppliers; (d) AMD's or Intel's ability to supply microprocessors in the quantities that YOU require or anticipate that YOU will require; (e) the suitability of AMD's or Intel's microprocessors for YOUR business objectives; (f) the suitability of Intel-based or AMD-based platforms for particular customer segments, including, but not limited to, corporate customers; (g) the future roadmap of Intel or AMD, including, but not

limited to, the suitability of future product offerings from the two companies to YOUR needs; (h) actual or expected consumer demand for systems incorporating AMD's or Intel's microprocessors; (i) the pricing of AMD's or Intel's microprocessors; (j) negotiations, proposals or demands in connection with the purchase or potential purchase of microprocessors; (k) the availability, capability or price of chipsets or motherboards; (l) the total bill of materials for systems based on Intel or AMD microprocessors; (m) costs associated with the shifting from the use of one microprocessor to another; (n) or any other reasons influencing YOUR decision to purchase (or not purchase) microprocessors from AMD or Intel.

5. All DOCUMENTS reflecting or discussing any failure or perceived failure by AMD or Intel to satisfy any commitment or expectation regarding the sale or supply of microprocessors or any other product or service, including, but not limited to, a failure to meet supply commitments, a failure to supply products of sufficient quality or reliability, a failure to supply products in a timely manner, a failure to supply products that conform to AMD's claims regarding performance or other attributes, or a failure to provide adequate service or support.

6. All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or reliability of claims made by AMD regarding the attributes of its microprocessors or systems incorporating its microprocessors.

7. All DOCUMENTS, whether generated internally or received from third parties, discussing or concerning any technological, reliability, quality, or other advancements or improvements in any of YOUR products, including any advancements or improvements in the sale of any of YOUR products, that are attributable to any technological initiative by Intel, including, but not limited to, any standard or specification to which Intel made significant contributions.

8. All DOCUMENTS discussing or concerning the (a) the relative merits of Intel-based platforms for systems directed at or intended for sale to corporate or business customers and (b) the preference of corporate or business customers for either Intel or AMD microprocessors or systems incorporating those microprocessors.

9. All DOCUMENTS constituting or reflecting any advertisement or promotion by YOU referencing AMD.

10. All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning any of the following: (a) any advertising or promotion by YOU referencing AMD or Intel; (b) any product launch by YOU referencing AMD or Intel; (c) product roadmaps of Intel or AMD products; (d) or the terms of any contractual relationship between YOU and Intel.

11. All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D. Del.), or any of the allegations about YOU in AMD's Complaint in that matter, or any other litigation involving AMD and Intel, or any investigation relating to Intel by the Japan Fair Trade Commission or the European Commission.

12. DOCUMENTS sufficient to identify and describe YOUR competitive actions, strategic plans, marketing plans, competitive reviews or market analyses regarding the wholesale or retail market for YOUR x86 COMPUTER PRODUCTS.

13. DOCUMENTS sufficient to show the:

a.        prices paid by YOU to AMD for all microprocessors since January 1, 2000;

b.        any CONSIDERATION provided to YOU by AMD in connection with YOUR purchase of microprocessors since January 1, 2000; and

  c.  how **YOU** used or applied any **CONSIDERATION** provided by AMD since January 1,

2000. For purposes of this request, it shall be sufficient to provide aggregate data or information

on a monthly or quarterly basis.

# EXHIBIT 33

OAO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

Advanced Micro Devices, Inc. and AMD
International Sales & Services, Ltd.

v.

Intel Corporation and Intel Kabushiki Kaisha

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  05-441-JJF
United States District Court,
District of Delaware

TO:  Hon Hai Precision Industry Co., Ltd.
c/o Jeff Tsai
468 E. Lambert Road
Fullerton, California 92835

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

### See Schedule A attached hereto

| PLACE<br>Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue, Los Angeles, CA 90071 | DATE AND TIME<br><br>August 7, 2006 |
|---|---|

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Robert E. Cooper*      Attorney for Defendants | June 20, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Robert E. Cooper
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071
(213) 229-7000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| **SERVED** |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person. except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

### DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any discovery request.

1.  The term "AMD" means Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd., and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd.

2.  The term "Intel" means Intel Corporation and Intel Kabushiki Kaisha and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Intel Corporation and Intel Kabushiki Kaisha.

3.  The term "COMMUNICATION" means the transmittal of information and encompasses every medium of information transmittal, including, but not limited to, oral, written, graphic and electronic communication.

4.  The term "CONSIDERATION" means discount, rebate, lump sum payment, market development funds, cooperative advertising payment, advertising allowances, promotional payment, seed money, free microprocessors, securities (whether voting or non-voting), options, warrants, or other payment or other compensation or payment.

5.  The term "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy constitutes a separate document within the meaning of the term.

6.  "**YOU**" or "**YOUR**" means Hon Hai Precision Industry Co., Ltd. and its predecessors, present and former divisions, subsidiaries, parents, branches and affiliates, authorized agents, employees, officers, directors, and representatives.

7.  "**PRODUCT TYPE**" means the following platforms: (1) desktop ; (2) laptop; (3) workstation; and/or (4) server.

8.  "**X86 COMPUTER PRODUCT**" means a computer system that contains one or more x86 microprocessors.

9.  "**SKU**" means Stock Keeping Unit.

## INSTRUCTIONS

1.  Documents to be produced include documents in your possession, custody, or control wherever located.

2.  Unless otherwise specifically stated herein, the time period covered by each of these requests is from January 1, 2000 to the date this subpoena was issued.

3.  Documents must be produced as they are kept in the usual course of business, or must be organized and labeled to correspond to the document requests by number.

4.  To the extent that you withhold from production any responsive document on the grounds of a claim of privilege or attorney work product, please provide the total number of responsive documents withheld from production.  You are not required to provide at the time of production a privilege log or other description of the nature of any such documents.  Intel expressly reserves its right to seek a privilege log at a later date.

## DOCUMENT REQUESTS

1.  All **DOCUMENTS** constituting, reflecting or discussing **COMMUNICATIONS** with AMD concerning the actual or proposed terms and conditions of the sale of microprocessors from

AMD or Intel to YOU (including actual sales and proposed sales that were not consummated), including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such sale or proposed sale.

2. All DOCUMENTS constituting, reflecting or discussing any offer or proposal made by AMD to YOU in connection with the actual or proposed purchase or acquisition of microprocessors by YOU from AMD, including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such offer or proposal.

3. All DOCUMENTS constituting or reflecting any past or present contractual relationship between YOU and AMD.

4. All DOCUMENTS reflecting or concerning any evaluation by you whether to purchase microprocessors from AMD or Intel (including any evaluation relating to the quantity or timing of such purchase), including, but not limited to, DOCUMENTS discussing or concerning (a) the technical specifications or performance of AMD's or Intel's microprocessors; (b) the quality or reliability of AMD's or Intel's microprocessors or systems incorporating those microprocessors; (c) the reliability of Intel or AMD as suppliers; (d) AMD's or Intel's ability to supply microprocessors in the quantities that YOU require or anticipate that YOU will require; (e) the suitability of AMD's or Intel's microprocessors for YOUR business objectives; (f) the suitability of Intel-based or AMD-based platforms for particular customer segments, including, but not limited to, corporate customers; (g) the future roadmap of Intel or AMD, including, but not

limited to, the suitability of future product offerings from the two companies to YOUR needs; (h) actual or expected consumer demand for systems incorporating AMD's or Intel's microprocessors; (i) the pricing of AMD's or Intel's microprocessors; (j) negotiations, proposals or demands in connection with the purchase or potential purchase of microprocessors; (k) the availability, capability or price of chipsets or motherboards; (l) the total bill of materials for systems based on Intel or AMD microprocessors; (m) costs associated with the shifting from the use of one microprocessor to another; (n) or any other reasons influencing YOUR decision to purchase (or not purchase) microprocessors from AMD or Intel.

5. All DOCUMENTS reflecting or discussing any failure or perceived failure by AMD or Intel to satisfy any commitment or expectation regarding the sale or supply of microprocessors or any other product or service, including, but not limited to, a failure to meet supply commitments, a failure to supply products of sufficient quality or reliability, a failure to supply products in a timely manner, a failure to supply products that conform to AMD's claims regarding performance or other attributes, or a failure to provide adequate service or support.

6. All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or reliability of claims made by AMD regarding the attributes of its microprocessors or systems incorporating its microprocessors.

7. All DOCUMENTS, whether generated internally or received from third parties, discussing or concerning any technological, reliability, quality, or other advancements or improvements in any of YOUR products, including any advancements or improvements in the sale of any of YOUR products, that are attributable to any technological initiative by Intel, including, but not limited to, any standard or specification to which Intel made significant contributions.

8.  All DOCUMENTS discussing or concerning the (a) the relative merits of Intel-based platforms for systems directed at or intended for sale to corporate or business customers and (b) the preference of corporate or business customers for either Intel or AMD microprocessors or systems incorporating those microprocessors.

9.  All DOCUMENTS constituting or reflecting any advertisement or promotion by YOU referencing AMD.

10.  All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning any of the following:  (a) any advertising or promotion by YOU referencing AMD or Intel; (b) any product launch by YOU referencing AMD or Intel; (c) product roadmaps of Intel or AMD products; (d) or the terms of any contractual relationship between YOU and Intel.

11.  All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D. Del.), or any of the allegations about YOU in AMD's Complaint in that matter, or any other litigation involving AMD and Intel, or any investigation relating to Intel by the Japan Fair Trade Commission or the European Commission.

12.  DOCUMENTS sufficient to identify and describe YOUR competitive actions, strategic plans, marketing plans, competitive reviews or market analyses regarding the wholesale or retail market for YOUR x86 COMPUTER PRODUCTS.

13.  DOCUMENTS sufficient to show the:

a.    prices paid by YOU to AMD for all microprocessors since January 1, 2000;

b.    aggregate amount by quarter of any CONSIDERATION provided to YOU by AMD in connection with YOUR purchase of microprocessors since January 1, 2000; and

c.    how YOU used or applied any CONSIDERATION provided by AMD since January 1, 2000. For purposes of this request, it shall be sufficient to provide aggregate data or information on a monthly or quarterly basis.

# EXHIBIT 34

OAO88  (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

Advanced Micro Devices, Inc. and AMD
International Sales & Services, Ltd.

        v.

Intel Corporation and Intel Kabushiki Kaisha

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]     05-441-JJF
United States District Court,
District of Delaware

TO:     IBM Corporation
         c/o Sally Kesh, Cravath Swaine & Moore LLP
         Worldwide Plaza
         825 Eighth Avenue, New York, NY  10019-7475

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):

### See Schedule A attached hereto

| PLACE<br>Keating & Walker<br>1 Beekman Street, New York, NY  10038 | DATE AND TIME<br><br>August 7, 2006 |
|---|---|

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

     Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
|                      Attorney for Defendants | June 21, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jason C. Raofield
Howrey, LLP
1299 Pennsylvania Ave., N.W., Washington, DC  20004
(202) 283-7267

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____           _____
                    DATE                                SIGNATURE OF SERVER

                                                        _____
                                                        ADDRESS OF SERVER

                                                        _____

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,
(ii)   requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in person at attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)   subjects a person to undue burden.

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)   requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

### DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any discovery request.

1.    The term "AMD" means Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd., and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd.

2.    The term "Intel" means Intel Corporation and Intel Kabushiki Kaisha and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Intel Corporation and Intel Kabushiki Kaisha.

3.    The term "COMMUNICATION" means the transmittal of information and encompasses every medium of information transmittal, including, but not limited to, oral, written, graphic and electronic communication.

4.    The term "CONSIDERATION" means discount, rebate, lump sum payment, market development funds, cooperative advertising payment, advertising allowances, promotional payment, seed money, free microprocessors, securities (whether voting or non-voting), options, warrants, or other payment or other compensation or payment.

5.    The term "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy constitutes a separate document within the meaning of the term.

6.      "YOU" or "YOUR" means **IBM Corporation** and its predecessors,  present and former divisions, subsidiaries, parents, branches and affiliates, authorized agents, employees, officers, directors, and representatives.

7.      "PRODUCT TYPE" means the following platforms: (1) desktop ; (2) laptop; (3) workstation; and/or (4) server.

8.      "X86 COMPUTER PRODUCT" means a computer system that contains one or more x86 microprocessors.

9.      "SKU" means Stock Keeping Unit.

## INSTRUCTIONS

1.      Documents to be produced include documents in your possession, custody, or control wherever located.

2.      Unless otherwise specifically stated herein, the time period covered by each of these requests is from January 1, 2000 to the date this subpoena was issued.

3.      Documents must be produced as they are kept in the usual course of business, or must be organized and labeled to correspond to the document requests by number.

4.      To the extent that you withhold from production any responsive document on the grounds of a claim of privilege or attorney work product, please provide the total number of responsive documents withheld from production.  You are not required to provide at the time of production a privilege log or other description of the nature of any such documents.  Intel expressly reserves its right to seek a privilege log at a later date.

2

## DOCUMENT REQUESTS

1.     All **DOCUMENTS** constituting, reflecting or discussing **COMMUNICATIONS** with AMD concerning the actual or proposed terms and conditions of the sale of microprocessors from AMD or Intel to **YOU** (including actual sales and proposed sales that were not consummated), including, but not limited to, any  pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial **CONSIDERATION** associated with such sale or proposed sale.

2.     All **DOCUMENTS** constituting, reflecting or discussing any offer or proposal made by AMD to **YOU** in connection with the actual or proposed purchase or acquisition of microprocessors by **YOU** from AMD, including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial **CONSIDERATION** associated with such offer or proposal.

3.     All **DOCUMENTS** constituting or reflecting any past or present contractual relationship between **YOU** and AMD.

4.     All **DOCUMENTS** reflecting or concerning any evaluation by you whether to purchase microprocessors from AMD or Intel (including any evaluation relating to the quantity or timing of such purchase), including, but not limited to, **DOCUMENTS** discussing or concerning (a) the technical specifications or performance of AMD's or Intel's microprocessors; (b) the quality or reliability of AMD's or Intel's microprocessors or systems incorporating those microprocessors; (c) the reliability of Intel or AMD as

3

suppliers; (d) AMD's or Intel's ability to supply microprocessors in the quantities that YOU require or anticipate that YOU will require; (e) the suitability of AMD's or Intel's microprocessors for YOUR business objectives; (f) the suitability of Intel-based or AMD-based platforms for particular customer segments, including, but not limited to, corporate customers; (g) the future roadmap of Intel or AMD, including, but not limited to, the suitability of future product offerings from the two companies to YOUR needs; (h) actual or expected consumer demand for systems incorporating AMD's or Intel's microprocessors; (i) the pricing of AMD's or Intel's microprocessors; (j) negotiations, proposals or demands in connection with the purchase or potential purchase of microprocessors; (k) the availability, capability or price of chipsets or motherboards; (l) the total bill of materials for systems based on Intel or AMD microprocessors; (m) costs associated with the shifting from the use of one microprocessor to another; (n) or any other reasons influencing YOUR decision to purchase (or not purchase) microprocessors from AMD or Intel.

5.      All DOCUMENTS reflecting or discussing any failure or perceived failure by AMD or Intel to satisfy any commitment or expectation regarding the sale or supply of microprocessors or any other product or service, including, but not limited to, a failure to meet supply commitments, a failure to supply products of sufficient quality or reliability, a failure to supply products in a timely manner, a failure to supply products that conform to AMD's claims regarding performance or other attributes, or a failure to provide adequate service or support.

4

6.    All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or reliability of claims made by AMD regarding the attributes of its microprocessors or systems incorporating its microprocessors.

7.    All DOCUMENTS, whether generated internally or received from third parties, discussing or concerning any technological, reliability, quality, or other advancements or improvements in any of YOUR products, including any advancements or improvements in the sale of any of YOUR products, that are attributable to any technological initiative by Intel, including, but not limited to, any standard or specification to which Intel made significant contributions.

8.    All DOCUMENTS discussing or concerning the (a) the relative merits of Intel-based platforms for systems directed at or intended for sale to corporate or business customers and (b) the preference of corporate or business customers for either Intel or AMD microprocessors or systems incorporating those microprocessors.

9.    All DOCUMENTS constituting or reflecting any advertisement or promotion by YOU referencing AMD.

10.    All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning any of the following: (a) any advertising or promotion by YOU referencing AMD or Intel; (b) any product launch by YOU referencing AMD or Intel; (c) product roadmaps of Intel or AMD products; (d) or the terms of any contractual relationship between YOU and Intel.

11.    All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D. Del.), or any of the allegations about YOU in AMD's Complaint in that matter, or

any other litigation involving AMD and Intel, or any investigation relating to Intel by the Japan Fair Trade Commission or the European Commission.

12.     For each **x86 COMPUTER PRODUCT** that **YOU** manufacture or market, **DOCUMENTS** sufficient to identify the (1) **PRODUCT TYPE**; (2) brand; and (3) model; (4) components (e.g., CPU, Keyboard, Monitor) and (5) **SKU**.

13.     For each of **YOUR** microprocessor purchases, **DOCUMENTS** sufficient to show: (1) the vendor; (2) the units, brand and **SKU** number; (3) the dollars paid; and (4) the date of purchase.

14.     For each sale or lease of a **x86 COMPUTER PRODUCT** that **YOU** have made, **DOCUMENTS** sufficient to show: (1) the **x86 COMPUTER PRODUCT SKU**; (2) the number of units in the transaction; (2) the revenue generated by the transaction; (3) the customer name and ship-to address; and (4) the date of the transaction.

15.     For the period June 28, 2001 through December 31, 2005, **DOCUMENTS**, other than transactional **DOCUMENTS** containing only information sought in Request 14 above, sufficient to show the terms and conditions contained in agreements for the sale or lease of **x86 COMPUTER PRODUCTS** to any of the following entities: Google, Inc.; Citigroup, Inc.; The Boeing Company; Toyota Motor Corporation; Electronic Data Systems Corporation; Accenture Ltd.; BP p.l.c.; Consolidated Edison, Inc.; Lehman Brothers Holdings, Inc.; The Walt Disney Company; Time Warner, Inc. This request is limited to sales or leases to, or use by, the foregoing entities or any of their divisions, subsidiaries, affiliates or operations, in the United States.

6

16.    For the period June 28, 2001 through December 31, 2005, DOCUMENTS sufficient to identify the persons responsible for negotiating agreements for the sale or lease of **x86 COMPUTER PRODUCTS** to any of the entities identified in Request 15 above.

17.    DOCUMENTS sufficient to show, on a monthly basis, by **SKU**, **PRODUCT TYPE**, and **x86 COMPUTER PRODUCT**, **YOUR** gross profit and operating margins.

18.    DOCUMENTS sufficient to describe the name, scope, financial and other terms, conditions and effective dates of any rebate, marketing, other promotional program that **YOU** have offered in connection with the sale of **YOUR x86 COMPUTER PRODUCTS**, whether by **YOU** or a reseller.

19.    With regard to payments made under the programs identified in Request 18 above, DOCUMENTS sufficient to show: (1) the program under which the payment was made; (2) the amount that **YOU** paid; (3) whether the recipient of the payment was a reseller or end user; (4) the **x86 COMPUTER PRODUCT SKU** to which the payment relates; and (5) the date of the payment.

20.    With respect to any monetary CONSIDERATION that **YOU** received in connection with **YOUR** purchase of microprocessors, DOCUMENTS sufficient to show: (1) the type of payment; (2) the payer; (3) the amount of payment; (4) how you used the payment; and (5) the date of payment.

21.    DOCUMENTS sufficient to identify the component specifications for each **x86 COMPUTER PRODUCT** identified in response to Request No. 12 and the time period during which each such specification was manufactured or marketed.

7

22.     DOCUMENTS sufficient to identify and describe YOUR competitive actions, strategic plans, marketing plans, competitive reviews or market analyses regarding the wholesale or retail market for YOUR x86 COMPUTER PRODUCTS.

# EXHIBIT 35

OAO88 (Rev. 1/94) Subpoena in a Civil Case

### Issued by the

# UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

Advanced Micro Devices, Inc. and AMD
International Sales & Services, Ltd.

v.

Intel Corporation and Intel Kabushiki Kaisha

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  05-441-JJF
United States District Court,
District of Delaware

TO:    Ingram Micro, Inc.
c/o Jonathon P. Hersey, Sheppard Mullin Richter & Hamilton LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA  92626

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A attached hereto

| PLACE
Howrey LLP
2020 Main Street, Suite 1000, Irvine, CA  92614-8200 | DATE AND TIME
August 7, 2006 |
|---|---|

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)                          Attorney for Defendants | DATE
June 21, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jason C. Raofield
Howrey, LLP
1299 Pennsylvania Ave., N.W., Washington, DC  20004
(202) 283-7267

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number

AO88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | | PLACE | |
|---|---|---|---|---|

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on

| | DATE | | SIGNATURE OF SERVER |
|---|---|---|---|

| | ADDRESS OF SERVER |
|---|---|

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

    (i)    fails to allow reasonable time for compliance,
    (ii)   requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

    (iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or
    (iv)   subjects a person to undue burden.

(B) If a subpoena

    (i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or
    (ii)   requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or
    (iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

### DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any discovery request.

1.    The term "AMD" means Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd., and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd.

2.    The term "Intel" means Intel Corporation and Intel Kabushiki Kaisha and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Intel Corporation and Intel Kabushiki Kaisha.

3.    The term "COMMUNICATION" means the transmittal of information and encompasses every medium of information transmittal, including, but not limited to, oral, written, graphic and electronic communication.

4.    The term "CONSIDERATION" means discount, rebate, lump sum payment, market development funds, cooperative advertising payment, advertising allowances, promotional payment, seed money, free microprocessors, securities (whether voting or non-voting), options, warrants, or other payment or other compensation or payment.

5.    The term "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy constitutes a separate document within the meaning of the term.

6.     "YOU" or "YOUR" means **Ingram Micro, Inc.** and its predecessors, present and former divisions, subsidiaries, parents, branches and affiliates, authorized agents, employees, officers, directors, and representatives.

7.     "PRODUCT TYPE" means the following platforms: (1) desktop ; (2) laptop; (3) workstation; and/or (4) server.

8.     "X86 COMPUTER PRODUCT" means a computer system that contains one or more x86 microprocessors.

9.     "SKU" means Stock Keeping Unit.

## INSTRUCTIONS

1.     Documents to be produced include documents in your possession, custody, or control wherever located.

2.     Unless otherwise specifically stated herein, the time period covered by each of these requests is from January 1, 2000 to the date this subpoena was issued.

3.     Documents must be produced as they are kept in the usual course of business, or must be organized and labeled to correspond to the document requests by number.

4.     To the extent that you withhold from production any responsive document on the grounds of a claim of privilege or attorney work product, please provide the total number of responsive documents withheld from production. You are not required to provide at the time of production a privilege log or other description of the nature of any such documents. Intel expressly reserves its right to seek a privilege log at a later date.

## DOCUMENT REQUESTS

1.    All DOCUMENTS constituting, reflecting or discussing COMMUNICATIONS with AMD concerning the actual or proposed terms and conditions of the sale of microprocessors from AMD or Intel to YOU (including actual sales and proposed sales that were not consummated), including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such sale or proposed sale.

2.    All DOCUMENTS constituting, reflecting or discussing any offer or proposal made by AMD to YOU in connection with the actual or proposed purchase or acquisition of microprocessors by YOU from AMD, including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such offer or proposal.

3.    All DOCUMENTS constituting or reflecting any past or present contractual relationship between YOU and AMD.

4.    All DOCUMENTS reflecting or concerning any evaluation by you whether to purchase microprocessors from AMD or Intel (including any evaluation relating to the quantity or timing of such purchase), including, but not limited to, DOCUMENTS discussing or concerning (a) the technical specifications or performance of AMD's or Intel's microprocessors; (b) the quality or reliability of AMD's or Intel's microprocessors or systems incorporating those microprocessors; (c) the reliability of Intel or AMD as

3

suppliers; (d) AMD's or Intel's ability to supply microprocessors in the quantities that YOU require or anticipate that YOU will require; (e) the suitability of AMD's or Intel's microprocessors for YOUR business objectives; (f) the suitability of Intel-based or AMD-based platforms for particular customer segments, including, but not limited to, corporate customers; (g) the future roadmap of Intel or AMD, including, but not limited to, the suitability of future product offerings from the two companies to YOUR needs; (h) actual or expected consumer demand for systems incorporating AMD's or Intel's microprocessors; (i) the pricing of AMD's or Intel's microprocessors; (j) negotiations, proposals or demands in connection with the purchase or potential purchase of microprocessors; (k) the availability, capability or price of chipsets or motherboards; (l) the total bill of materials for systems based on Intel or AMD microprocessors; (m) costs associated with the shifting from the use of one microprocessor to another; (n) or any other reasons influencing YOUR decision to purchase (or not purchase) microprocessors from AMD or Intel.

5.    All DOCUMENTS reflecting or discussing any failure or perceived failure by AMD or Intel to satisfy any commitment or expectation regarding the sale or supply of microprocessors or any other product or service, including, but not limited to, a failure to meet supply commitments, a failure to supply products of sufficient quality or reliability, a failure to supply products in a timely manner, a failure to supply products that conform to AMD's claims regarding performance or other attributes, or a failure to provide adequate service or support.

6.      All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or reliability of claims made by AMD regarding the attributes of its microprocessors or systems incorporating its microprocessors.

7.      All DOCUMENTS, whether generated internally or received from third parties, discussing or concerning any technological, reliability, quality, or other advancements or improvements in any of YOUR products, including any advancements or improvements in the sale of any of YOUR products, that are attributable to any technological initiative by Intel, including, but not limited to, any standard or specification to which Intel made significant contributions.

8.      All DOCUMENTS discussing or concerning the (a) the relative merits of Intel-based platforms for systems directed at or intended for sale to corporate or business customers and (b) the preference of corporate or business customers for either Intel or AMD microprocessors or systems incorporating those microprocessors.

9.      All DOCUMENTS constituting or reflecting any advertisement or promotion by YOU referencing AMD.

10.     All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning any of the following:  (a) any advertising or promotion by YOU referencing AMD or Intel; (b) any product launch by YOU referencing AMD or Intel; (c) product roadmaps of Intel or AMD products; (d) or the terms of any contractual relationship between YOU and Intel.

11.     All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D. Del.), or any of the allegations about YOU in AMD's Complaint in that matter, or

any other litigation involving AMD and Intel, or any investigation relating to Intel by the Japan Fair Trade Commission or the European Commission.

12.    For YOUR microprocessor purchases, DOCUMENTS sufficient to show: (1) the vendor; (2) the units, brand and SKU number; (3) the amount paid; and (4) the date of purchase.

13.    For each of YOUR microprocessor sales, DOCUMENTS sufficient to show: (1) the SKU; (2) the number of units sold; (3) the customer name and ship to location; (4) the revenue generated by that sale; and (5) the date of the sale.

14.    With respect to any monetary CONSIDERATION that YOU were received in connection with YOUR purchase of microprocessors, DOCUMENTS sufficient to show: (1) the type of payment; (2) the payer; (3) the amount of payment; (4) how YOU used the payment; and (5) the date of payment.

15.    DOCUMENTS sufficient to show, on a monthly basis, by SKU, YOUR gross profit and operating margins on microprocessor SKUs.

16.    DOCUMENTS sufficient to identify and describe YOUR competitive actions, strategic plans, marketing plans, competitive reviews or market analyses regarding the wholesale or retail market for microprocessors.

6

# EXHIBIT 36

OAO88  (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

### DISTRICT OF DELAWARE

Advanced Micro Devices, Inc. and AMD
International Sales & Services, Ltd.

        v.

Intel Corporation and Intel Kabushiki Kaisha

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]

       05-441-JJF

TO:    Intcomex, Inc.
       c/o Corporation Service Company
       2711 Centerville Road Suite 400
       Wilmington, DE  19808

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

### See Schedule A attached hereto

| PLACE<br>Potter Anderson & Corroon LLP<br>Hercules Plaza, 1313 North Market Street, Wilmington, DE  19801 | DATE AND TIME<br><br>August 7, 2006 |
|---|---|

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>_[signature]_           Attorney for Defendants | DATE<br><br>June 21, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jason C. Raofield
Howrey, LLP
1299 Pennsylvania Ave., N.W., Washington, DC  20004
(202) 283-7267

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | | PLACE | |
|---|---|---|---|---|
| **SERVED** | | | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

    (i)   fails to allow reasonable time for compliance,
    (ii)  requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

    (iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or
    (iv)  subjects a person to undue burden.

    (B) If a subpoena

    (i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or
    (ii)  requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or
    (iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# SCHEDULE A

## DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any discovery request.

1.     The term "AMD" means Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd., and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd.

2.     The term "Intel" means Intel Corporation and Intel Kabushiki Kaisha and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Intel Corporation and Intel Kabushiki Kaisha.

3.     The term "COMMUNICATION" means the transmittal of information and encompasses every medium of information transmittal, including, but not limited to, oral, written, graphic and electronic communication.

4.     The term "CONSIDERATION" means discount, rebate, lump sum payment, market development funds, cooperative advertising payment, advertising allowances, promotional payment, seed money, free microprocessors, securities (whether voting or non-voting), options, warrants, or other payment or other compensation or payment.

5.     The term "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy constitutes a separate document within the meaning of the term.

6.    "YOU" or "YOUR" means **Intcomex, Inc.** and its predecessors,  present and former divisions, subsidiaries, parents, branches and affiliates, authorized agents, employees, officers, directors, and representatives.

7.    "PRODUCT TYPE" means the following platforms: (1) desktop ; (2) laptop; (3) workstation; and/or (4) server.

8.    "X86 COMPUTER PRODUCT" means a computer system that contains one or more x86 microprocessors.

9.    "SKU" means Stock Keeping Unit.

## INSTRUCTIONS

1.    Documents to be produced include documents in your possession, custody, or control wherever located.

2.    Unless otherwise specifically stated herein, the time period covered by each of these requests is from January 1, 2000 to the date this subpoena was issued.

3.    Documents must be produced as they are kept in the usual course of business, or must be organized and labeled to correspond to the document requests by number.

4.    To the extent that you withhold from production any responsive document on the grounds of a claim of privilege or attorney work product, please provide the total number of responsive documents withheld from production.  You are not required to provide at the time of production a privilege log or other description of the nature of any such documents.  Intel expressly reserves its right to seek a privilege log at a later date.

## DOCUMENT REQUESTS

1.      All DOCUMENTS constituting, reflecting or discussing COMMUNICATIONS with AMD concerning the actual or proposed terms and conditions of the sale of microprocessors from AMD or Intel to YOU (including actual sales and proposed sales that were not consummated), including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such sale or proposed sale.

2.      All DOCUMENTS constituting, reflecting or discussing any offer or proposal made by AMD to YOU in connection with the actual or proposed purchase or acquisition of microprocessors by YOU from AMD, including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such offer or proposal.

3.      All DOCUMENTS constituting or reflecting any past or present contractual relationship between YOU and AMD.

4.      All DOCUMENTS reflecting or concerning any evaluation by you whether to purchase microprocessors from AMD or Intel (including any evaluation relating to the quantity or timing of such purchase), including, but not limited to, DOCUMENTS discussing or concerning (a) the technical specifications or performance of AMD's or Intel's microprocessors; (b) the quality or reliability of AMD's or Intel's microprocessors or systems incorporating those microprocessors; (c) the reliability of Intel or AMD as

suppliers; (d) AMD's or Intel's ability to supply microprocessors in the quantities that YOU require or anticipate that YOU will require; (e) the suitability of AMD's or Intel's microprocessors for YOUR business objectives; (f) the suitability of Intel-based or AMD-based platforms for particular customer segments, including, but not limited to, corporate customers; (g) the future roadmap of Intel or AMD, including, but not limited to, the suitability of future product offerings from the two companies to YOUR needs; (h) actual or expected consumer demand for systems incorporating AMD's or Intel's microprocessors; (i) the pricing of AMD's or Intel's microprocessors; (j) negotiations, proposals or demands in connection with the purchase or potential purchase of microprocessors; (k) the availability, capability or price of chipsets or motherboards; (l) the total bill of materials for systems based on Intel or AMD microprocessors; (m) costs associated with the shifting from the use of one microprocessor to another; (n) or any other reasons influencing YOUR decision to purchase (or not purchase) microprocessors from AMD or Intel.

5.    All DOCUMENTS reflecting or discussing any failure or perceived failure by AMD or Intel to satisfy any commitment or expectation regarding the sale or supply of microprocessors or any other product or service, including, but not limited to, a failure to meet supply commitments, a failure to supply products of sufficient quality or reliability, a failure to supply products in a timely manner, a failure to supply products that conform to AMD's claims regarding performance or other attributes, or a failure to provide adequate service or support.

6.    All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or reliability of claims made by AMD regarding the attributes of its microprocessors or systems incorporating its microprocessors.

7.    All DOCUMENTS, whether generated internally or received from third parties, discussing or concerning any technological, reliability, quality, or other advancements or improvements in any of YOUR products, including any advancements or improvements in the sale of any of YOUR products, that are attributable to any technological initiative by Intel, including, but not limited to, any standard or specification to which Intel made significant contributions.

8.    All DOCUMENTS discussing or concerning the (a) the relative merits of Intel-based platforms for systems directed at or intended for sale to corporate or business customers and (b) the preference of corporate or business customers for either Intel or AMD microprocessors or systems incorporating those microprocessors.

9.    All DOCUMENTS constituting or reflecting any advertisement or promotion by YOU referencing AMD.

10.    All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning any of the following: (a) any advertising or promotion by YOU referencing AMD or Intel; (b) any product launch by YOU referencing AMD or Intel; (c) product roadmaps of Intel or AMD products; (d) or the terms of any contractual relationship between YOU and Intel.

11.    All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D. Del.), or any of the allegations about YOU in AMD's Complaint in that matter, or

I

any other litigation involving AMD and Intel, or any investigation relating to Intel by the Japan Fair Trade Commission or the European Commission.

12.    **DOCUMENTS** sufficient to identify and describe YOUR competitive actions, strategic plans, marketing plans, competitive reviews or market analyses regarding the wholesale or retail market for microprocessors.

13.    **DOCUMENTS** sufficient to show the:

a.    prices paid by YOU to AMD for all microprocessors since January 1, 2000;

b.    aggregate amount by quarter of any CONSIDERATION provided to YOU by AMD in connection with YOUR purchase of microprocessors since January 1, 2000; and

c.    how YOU used or applied any CONSIDERATION provided by AMD since January 1, 2000.  For purposes of this request, it shall be sufficient to provide aggregate data or information on a monthly or quarterly basis.

# EXHIBIT 37

# Issued by the

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF VIRGINIA

Advanced Micro Devices, Inc. and AMD
International Sales & Services, Ltd.

v.

Intel Corporation and Intel Kabushiki Kaisha

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]     05-441-JJF
United States District Court,
District of Delaware

TO:    JEDEC Solid State Technology Association
2500 Wilson Blvd.
Arlington, Virginia 22201

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A attached hereto

| PLACE<br>JEDEC Solid Waste Technology Association<br>2500 Wilson Blvd., Arlington, Virginia 22201 | DATE AND TIME<br><br>August 7, 2006 |
|---|---|

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>*Robert E. Cooper*     Attorney for Defendants | DATE<br>June 21, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Robert E. Cooper
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071
(213) 229-7000

(See Rule 45, Federal Rules of Civil Procedure. Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number

AO88  (Rev  1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____        _____
                    DATE                                    SIGNATURE OF SERVER

                                                _____
                                                ADDRESS OF SERVER

                                                _____

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENA

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production.  Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    falls to allow reasonable time for compliance,
(ii)   requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)   subjects a person to undue burden.

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)   requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any discovery request.

1. The term "JEDEC" means the JEDEC Solid State Technology Association, formerly known as Joint Electron Device Engineering Council, and any committee, subsidiary, affiliate entity or any other subdivision division, as well as the owners, partners, members, officers, directors, employees, agents, and other representatives of the Joint Electron Device Engineering Council.

2. The term "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy constitutes a separate document within the meaning of the term.

## INSTRUCTIONS

1. Documents to be produced include documents in your possession, custody, or control wherever located.

2. Unless otherwise specifically stated herein, the time period covered by each of these requests is from January 1, 2000 to the date this subpoena was issued.

3. Documents must be produced as they are kept in the usual course of business, or must be organized and labeled to correspond to the document requests by number.

4. To the extent that you withhold from production any responsive document on the grounds of a claim of privilege or attorney work product, please provide the total number of

responsive documents withheld from production. You are not required to provide at the time of production a privilege log or other description of the nature of any such documents. Intel expressly reserves its right to seek a privilege log at a later date.

## DOCUMENT REQUESTS

1. All documents constituting, reflecting or discussing any proposed pin configuration, including, but not limited to, pin definitions or locations for the proposed DDR3 (Double-Data Rate 3) memory standard for either desktop or mobile personal computers.

2. All documents constituting, reflecting or discussing any JEDEC member's position or vote regarding any proposed pin configuration, including, but not limited to, pin definitions or locations for the final or any proposed DDR (Double-Data Rate), DDR2 (Double-Date Rate 2) or DDR3 (Double-Data Rate 3) memory standard for either desktop or mobile personal computers.

# EXHIBIT 38

OAO88 (Rev. 1/94) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

### DISTRICT OF DELAWARE

Advanced Micro Devices, Inc. and AMD
International Sales & Services, Ltd.

**SUBPOENA IN A CIVIL CASE**

v.

Intel Corporation and Intel Kabushiki Kaisha

Case Number:[1]    05-441-JJF

TO:    Lenovo (United States) Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware  19801

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A attached hereto

| PLACE<br>Potter Anderson & Corroon LLP<br>1313 North Market Street, Wilmington, Delaware  19899 | DATE AND TIME<br><br>August 7, 2006 |
|---|---|

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>Robert E. Cooper *(nes)*    Attorney for Defendants | DATE<br><br>June 20, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Robert E. Cooper
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071
(213) 229-7000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number

AO88  (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| | | |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____        _____
                        DATE                                              SIGNATURE OF SERVER

                                                                     _____
                                                                     ADDRESS OF SERVER

                                                                     _____

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,
(ii)   requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)   subjects a person to undue burden.

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)   requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or

(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

### DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any discovery request.

1.   The term "AMD" means Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd., and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd.

2.   The term "Intel" means Intel Corporation and Intel Kabushiki Kaisha and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Intel Corporation and Intel Kabushiki Kaisha.

3.   The term "COMMUNICATION" means the transmittal of information and encompasses every medium of information transmittal, including, but not limited to, oral, written, graphic and electronic communication.

4.   The term "CONSIDERATION" means discount, rebate, lump sum payment, market development funds, cooperative advertising payment, advertising allowances, promotional payment, seed money, free microprocessors, securities (whether voting or non-voting), options, warrants, or other payment or other compensation or payment.

5.   The term "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy constitutes a separate document within the meaning of the term.

6. "YOU" or "YOUR" means Lenovo (United States) Inc., Lenovo Group and its predecessors, present and former divisions, subsidiaries, parents, branches and affiliates, authorized agents, employees, officers, directors, and representatives.

7. "PRODUCT TYPE" means the following platforms: (1) desktop ; (2) laptop; (3) workstation; and/or (4) server.

8. "X86 COMPUTER PRODUCT" means a computer system that contains one or more x86 microprocessors.

9. "SKU" means Stock Keeping Unit.

## INSTRUCTIONS

1. Documents to be produced include documents in your possession, custody, or control wherever located.

2. Unless otherwise specifically stated herein, the time period covered by each of these requests is from January 1, 2000 to the date this subpoena was issued.

3. Documents must be produced as they are kept in the usual course of business, or must be organized and labeled to correspond to the document requests by number.

4. To the extent that you withhold from production any responsive document on the grounds of a claim of privilege or attorney work product, please provide the total number of responsive documents withheld from production. You are not required to provide at the time of production a privilege log or other description of the nature of any such documents. Intel expressly reserves its right to seek a privilege log at a later date.

## DOCUMENT REQUESTS

1. All DOCUMENTS constituting, reflecting or discussing COMMUNICATIONS with AMD concerning the actual or proposed terms and conditions of the sale of microprocessors from

AMD or Intel to YOU (including actual sales and proposed sales that were not consummated), including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such sale or proposed sale.

2. All DOCUMENTS constituting, reflecting or discussing any offer or proposal made by AMD to YOU in connection with the actual or proposed purchase or acquisition of microprocessors by YOU from AMD, including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such offer or proposal.

3. All DOCUMENTS constituting or reflecting any past or present contractual relationship between YOU and AMD.

4. All DOCUMENTS reflecting or concerning any evaluation by you whether to purchase microprocessors from AMD or Intel (including any evaluation relating to the quantity or timing of such purchase), including, but not limited to, DOCUMENTS discussing or concerning (a) the technical specifications or performance of AMD's or Intel's microprocessors; (b) the quality or reliability of AMD's or Intel's microprocessors or systems incorporating those microprocessors; (c) the reliability of Intel or AMD as suppliers; (d) AMD's or Intel's ability to supply microprocessors in the quantities that YOU require or anticipate that YOU will require; (e) the suitability of AMD's or Intel's microprocessors for YOUR business objectives; (f) the suitability of Intel-based or AMD-based platforms for particular customer segments, including, but not limited to, corporate customers; (g) the future roadmap of Intel or AMD, including, but not

limited to, the suitability of future product offerings from the two companies to YOUR needs; (h) actual or expected consumer demand for systems incorporating AMD's or Intel's microprocessors; (i) the pricing of AMD's or Intel's microprocessors; (j) negotiations, proposals or demands in connection with the purchase or potential purchase of microprocessors; (k) the availability, capability or price of chipsets or motherboards; (l) the total bill of materials for systems based on Intel or AMD microprocessors; (m) costs associated with the shifting from the use of one microprocessor to another; (n) or any other reasons influencing YOUR decision to purchase (or not purchase) microprocessors from AMD or Intel.

5.  All DOCUMENTS reflecting or discussing any failure or perceived failure by AMD or Intel to satisfy any commitment or expectation regarding the sale or supply of microprocessors or any other product or service, including, but not limited to, a failure to meet supply commitments, a failure to supply products of sufficient quality or reliability, a failure to supply products in a timely manner, a failure to supply products that conform to AMD's claims regarding performance or other attributes, or a failure to provide adequate service or support.

6.  All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or reliability of claims made by AMD regarding the attributes of its microprocessors or systems incorporating its microprocessors.

7.  All DOCUMENTS, whether generated internally or received from third parties, discussing or concerning any technological, reliability, quality, or other advancements or improvements in any of YOUR products, including any advancements or improvements in the sale of any of YOUR products, that are attributable to any technological initiative by Intel, including, but not limited to, any standard or specification to which Intel made significant contributions.

8.  All DOCUMENTS discussing or concerning the (a) the relative merits of Intel-based platforms for systems directed at or intended for sale to corporate or business customers and (b) the preference of corporate or business customers for either Intel or AMD microprocessors or systems incorporating those microprocessors.

9.  All DOCUMENTS constituting or reflecting any advertisement or promotion by YOU referencing AMD.

10. All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning any of the following:  (a) any advertising or promotion by YOU referencing AMD or Intel; (b) any product launch by YOU referencing AMD or Intel; (c) product roadmaps of Intel or AMD products; (d) or the terms of any contractual relationship between YOU and Intel.

11. All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D. Del.), or any of the allegations about YOU in AMD's Complaint in that matter, or any other litigation involving AMD and Intel, or any investigation relating to Intel by the Japan Fair Trade Commission or the European Commission.

12.  For each x86 COMPUTER PRODUCT that YOU manufacture or market, DOCUMENTS sufficient to identify the (1) PRODUCT TYPE; (2) brand; and (3) model; (4) components (e.g., CPU, Keyboard, Monitor) and (5) SKU.

13.  For each of YOUR microprocessor purchases, DOCUMENTS sufficient to show: (1) the vendor; (2) the units, brand and SKU number; (3) the dollars paid; and (4) the date of purchase.

14.  For each sale or lease of a x86 COMPUTER PRODUCT that YOU have made, DOCUMENTS sufficient to show: (1) the x86 COMPUTER PRODUCT SKU; (2) the number of units

in the transaction; (2) the revenue generated by the transaction; (3) the customer name and ship-to address; and (4) the date of the transaction.

15.    For the period June 28, 2001 through December 31, 2005, DOCUMENTS, other than transactional DOCUMENTS containing only information sought in Request 14 above, sufficient to show the terms and conditions contained in agreements for the sale or lease of **x86 COMPUTER PRODUCTS** to any of the following entities:  Google, Inc.; Citigroup, Inc.; The Boeing Company; Toyota Motor Corporation; Electronic Data Systems Corporation; Accenture Ltd.; BP p.l.c.; Consolidated Edison, Inc.; Lehman Brothers Holdings, Inc.; The Walt Disney Company; Time Warner, Inc.  This request is limited to sales or leases to, or use by, the foregoing entities or any of their divisions, subsidiaries, affiliates or operations, in the United States.

16.    For the period June 28, 2001 through December 31, 2005, DOCUMENTS sufficient to identify the persons responsible for negotiating agreements for the sale or lease of **x86 COMPUTER PRODUCTS** to any of the entities identified in Request 15 above.

17.    DOCUMENTS sufficient to show, on a monthly basis, by SKU, PRODUCT TYPE, and **x86 COMPUTER PRODUCT**, YOUR gross profit and operating margins.

18.    DOCUMENTS sufficient to describe the name, scope, financial and other terms, conditions and effective dates of any rebate, marketing, other promotional program that YOU have offered in connection with the sale of YOUR **x86 COMPUTER PRODUCTS**, whether by YOU or a reseller.

19.    With regard to payments made under the programs identified in Request 18 above, DOCUMENTS sufficient to show: (1) the program under which the payment was made; (2) the amount that YOU paid; (3) whether the recipient of the payment was a reseller or end user; (4) the **x86 COMPUTER PRODUCT SKU** to which the payment relates; and (5) the date of the payment.

20.    With respect to any monetary CONSIDERATION that YOU received in connection with YOUR purchase of microprocessors, DOCUMENTS sufficient to show: (1) the type of payment; (2) the payer; (3) the amount of payment; (4) how you used the payment; and (5) the date of payment.

21.    DOCUMENTS sufficient to identify the component specifications for each x86 COMPUTER PRODUCT identified in response to Request No. 12 and the time period during which each such specification was manufactured or marketed.

22.    DOCUMENTS sufficient to identify and describe YOUR competitive actions, strategic plans, marketing plans, competitive reviews or market analyses regarding the wholesale or retail market for YOUR x86 COMPUTER PRODUCTS.