## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ADVANCED MICRO DEVICES, INC.<br>and AMD INTERNATIONAL SALES &<br>SERVICE, LTD., | ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) <br> ) | |
| v. | ) <br> ) <br> ) | C.A. No. 05-441-JJF<br>(Re: D.I. 115) |
| INTEL CORPORATION and INTEL<br>KABUSHIKI KAISHA, | ) <br> ) <br> ) | |
| Defendants. | ) <br> ) <br> ) <br> ) | |
| IN RE: | ) <br> ) | |
| INTEL CORP. MICROPROCESSOR<br>ANTITRUST LITIGATION | ) <br> ) <br> ) | MDL Docket No. 05-1717-JJF<br>(Re: D.I. 60) |
| PHIL PAUL, on behalf of himself and all<br>others similarly situated, | ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | C.A. No. 05-485-JJF<br>(Re: D.I. 14) |
| INTEL CORPORATION, | ) <br> ) | |
| Defendant. | ) | |

## SPECIAL MASTER'S REPORT AND RECOMMENDATIONS
## REGARDING PROPOSED PROTECTIVE ORDER

# TABLE OF CONTENTS

Page

BACKGROUND ...................................................................................................... 1

    Summary of Third Party Objections/Comments ..................................................... 3

        I.     The Proposed "Whereas" Clauses ........................................................... 3

        II.    The Proposed Definitions ........................................................................ 6

        III.   The Proposed Terms and Conditions ..................................................... 28

    Parties' Responses to Objections/Comments ....................................................... 78

    Hearing re: Proposed Protective Order ............................................................... 78

        I.     Agreed Upon Revisions ......................................................................... 79

        II.    Determinations by Special Master ........................................................ 85

DISCUSSION OF TERMS STILL IN DISPUTE ............................................................... 98

    I.     Identification of Terms Under Advisement ................................................... 98

    II.    Special Master's Recommendations ............................................................. 99

        A.    Definition R ............................................................................................. 99

        B.    Definition S ........................................................................................... 102

        C.    Paragraph 8 ........................................................................................... 105

        D.    Paragraph 16 ......................................................................................... 106

        E.    Japan Litigation/California Class Litigation/Other ............................. 110

CONCLUSION ...................................................................................................... 117

RECOMMENDED FORM OF PROTECTIVE ORDER ................................................ Exhibit A

## BACKGROUND

The captioned cases are antitrust actions brought against the Intel Corporation[1] ("Intel") as the manufacturer of microprocessors that run the Microsoft Windows and Linux families of operating systems (the "x86 Microprocessor Market"), a market in which Intel is alleged to hold worldwide market power measured as 80% of the market in units and 90% of the market in revenues.   The 05-441 action is brought by Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. (collectively, "AMD"), an American-based manufacturer and competitor of Intel in the x86 Microprocessor Market.

The 05-485 action is brought on behalf of a class of consumers who allege economic injury resulting from Intel's alleged anticompetitive and monopolistic practices.   The 05-485 action has been consolidated with over 70 other consumer-related actions by the Judicial Panel on Multidistrict Litigation and assigned to this Court, where it is docketed as MDL Docket No. 05-1717 (collectively, the "Class Litigation").   As used herein, the term "Parties" refers to Intel, AMD and the plaintiffs in the Class Litigation.

There are also several antitrust actions pending in foreign tribunals and other jurisdictions. The first is litigation in Japan between AMD and Intel (the "Japan Litigation").[2] Another group of litigation involves antitrust class actions pending before the California state courts (collectively, the "California Class Litigation").[3]

---

[1]  Intel Kabushiki Kaisha is also a named defendant in the 05-441 case.

[2]  The Japan Litigation includes litigations captioned *AMD Japan K.K. v. Intel K.K.*, Case No. Heisei 17 (Wa) No. 13151 (Tokyo Dist. Ct., 6/30/05), and *AMD Japan K.K. v. Intel K.K.*, Case No. Heisei 17 (Wa) No. 4 (Tokyo High Court, 6/30/05) and all proceedings related thereto.

[3]  The California Class Litigation includes actions filed by or on behalf of a putative California class of indirect purchasers of Intel microprocessors, including certain actions which have been or will be transferred to the Honorable Jack Komar of the Santa Clara County Superior Court by the Judicial Council for the State of California under JCCP 4443, together with actions originally filed in that Court including *Melkonians v. Intel Corp.*, Santa

The matter *sub judice* comes before me, as Special Master,[4] on the joint motion of the
Parties for approval and entry of a Proposed Protective Order to govern the discovery of
confidential materials in these cases. D.I. 115 (05-441) and D.I. 14 (05-485).[5]  In accordance
with the Case Management Order set by the Court, D.I. 123, third parties – from whom extensive
discovery is expected to be taken – received notice of the Proposed Protective Order and were
afforded an opportunity to submit to the Court their comments and/or objections with respect
thereto.  As a result of this procedure, objections and comments (the "Third Party Objections")
were filed by the following third parties (the "Third Parties"):

- D.I. 127 – Objections of Hewlett-Packard Company ("**Hewlett-Packard**");

- D.I. 128 – Objections of Egenera, Inc. ("**Egenera**");

- D.I. 132 – Objections of Best Buy Company, Inc. ("**Best Buy**");

- D.I. 133 – Objections of Fujitsu Limited, NEC Corporation, Sony Corporation, Sony
  Electronics Inc., and Toshiba Corporation (collectively, the "**Japanese OEMs**);

- D.I. 134 – Objections of Circuit City Stores, Inc. ("**Circuit City**");

- D.I. 136 – Objections of Acer America Corporation ("**Acer America**");

- D.I. 139 – Objections of ASI Computer Technologies, Inc., Avnet, Inc., Ingram
  Micro Inc., Synnex Corporation, and Tech Data Corporation (collectively, the "**Third
  Party Distributors**");

- D.I. 141 – Objections of Microsoft Corporation ("**Microsoft**");

- D.I. 142 – Objections of International Business Machine Corporation ("**IBM**");

---

Clara County Superior Court Case No. 1-05-CV-045077; *Macias v. Intel Corp.*, formerly in the Los Angeles County
Superior Court Case No. BC336897; *Toronto v. Intel Corp.*, formerly in the San Diego County Superior Court Case
No. GIC850053; *Groves v. Intel Corp.*, Santa Clara County Superior Court Case No. 1-05-CV-053490; *Wangler v.
Intel Corp.*, formerly in the Los Angeles County Superior Court Case No. BC340460; *Pishvaee v. Intel Corp.*, Santa
Clara Superior Court Case No. 1-05-CV-053300; and other actions made part of JCCP 4443.

[4]  The Order appointing Special Master is docketed at D.I. 106 in the 05-441 case, at D.I. 60 in the 05-1717 MDL
docket, and at D.I. 21 in the 05-485 case.

[5]  Unless  otherwise specified, the docket items cited hereinafter refer only to the docket in case 05-441.

- D.I. 143 – Objections of Dell Inc. ("**Dell**");

- D.I. 144 – Objections of Lenovo Group Ltd. ("**Lenovo**");

- D.I. 145 – Objections of Fry Electronics, Inc. ("**Fry**"); and

- D.I. 146 – Objections of Hitachi, Ltd. ("**Hitachi**").

### Summary of Third Party Objections/Comments

The objections and comments filed by the Third Parties are briefly summarized below,

following the language of the original Proposed Protective Order which they address.[6]

### I.    The Proposed "Whereas" Clauses

### A.    1st "Whereas" Clause

1.    The first proposed "Whereas" clause provides:

> **WHEREAS**, plaintiffs Advanced Micro Devices Inc., and AMD International Sales & Service, Ltd. And their subsidiaries, on the one hand, and defendants Intel Corporation and Intel Kabushiki Kisha and their subsidiaries, on the other, compete in the development, manufacture and sale of microprocessors; and

D.I. 115 at p. 2.

2.    **Objections/Comments Received**

None received.

### B.    2nd "Whereas" Clause

1.    The second proposed "Whereas" clause provides:

> **WHEREAS**, a number of third parties, many of whom are competitors in, *inter alia*, the manufacture and sale of computer systems, will be the subject of document and

---

[6] The summary herein does not recite each Third Party's suggested revisions to the language of each section of the Proposed Protective Order but, rather, recites only various of the suggested revisions for purposes of illustration and/or clarification.

deposition discovery in these actions; and

D.I. 115 at p. 2.

    2.    **Objections/Comments Received**

        None received.

**C.**    **3rd "Whereas" Clause**

    1.    The third proposed "Whereas" clause provides:

> **WHEREAS**, the preparation for trial in these actions may require the discovery and use of documents and other information which constitute or contain commercial or technical trade secrets, or other confidential information the disclosure of which would be competitively harmful to the producing party; and

D.I. 115 at p. 2.

    2.    **Objections/Comments Received**

- **Japanese OEMs** – Object to the failure to state that the Protective Order is subject to the terms of any separate agreements with Third Parties, including any confidentiality agreements governing the use of documents produced voluntarily to the Parties. D.I. 133 at p. 3.

**D.**    **4th "Whereas" Clause**

    1.    The forth proposed "Whereas" clause provides:

> **WHEREAS**, both party and third-party discovery will also be made available to various state and federal consumer plaintiffs who have filed putative class actions against the defendants and who have agreed to subscribe to this stipulation and order; and

D.I. 115 at p. 2.

2.    **Objections/Comments Received**

- **Japanese OEMs** – Object to disclosure of their Confidential Discovery Materials outside of the AMD and the Class litigations.  D.I. 133 at p. 4.

E.    **5th "Whereas" Clause**

1.    The fifth proposed "Whereas" clause provides:

> **WHEREAS**, the parties anticipate that this case will involve the production of hundreds of millions of pages of documents among and between actual and potential competitors and their customers; and

D.I. 115 at p. 2.

2.    **Objections/Comments Received**

None received.

F.    **6th "Whereas" Clause**

1.    The sixth proposed "Whereas" clause provides:

> **WHEREAS**, the parties agree that their interests, the interests of the customers of the corporate parties and of other non-parties that may be requested to provide discovery, and the public interest can be accommodated by a stipulation and order facilitating a timely production and appropriately limiting the use and dissimilation of proprietary and competitively sensitive non-public discovery information entitled to confidential treatment;

D.I. 115 at p. 2.

2.    **Objections/Comments Received**

None received.

5

G.    **The "Therefore" Clause**

    1.    The proposed "Therefore" clause provides:

> NOW THEREFORE, the parties in the above-captioned cases, by and through their respective counsel, hereby stipulate, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, subject to approval and entry by the Court, that the following Stipulated Confidentiality Agreement and Protective Order ("Protective Order") shall govern the handling of all Discovery Material during the pendency of these litigations, as hereafter defined.

D.I. 115 at p. 2.

    2.    **Objections/Comments Received**

- **Japanese OEMs** – Object to the jurisdiction of this Court.  D.I. 133 at p. 4.

II.    **The Proposed "Definitions"**

A.    **Definition "A"**

    1.    Proposed Definition A provides:

> The "AMD Litigation" means the litigation captioned *Advanced Micro Devices, Inc. et al. v. Intel Corporation et al.*, Civil Action No. 05-441-JJF, filed in the United States District Court for the District of Delaware, and all subsequent appellate or other review proceedings related thereto.

D.I. 115 at p. 3.

    2.    **Objections/Comments Received**

None received.

B.    **Definition "B"**

    1.    Proposed Definition B provides:

> The "Japan Litigation" means the litigations captioned

6

> *AMD Japan K.K. v. Intel K.K.*, Case No. Heisei 17 (Wa)
> No. 13151 (Tokyo Dist. Ct., 6/30/05), and *AMD Japan
> K.K. v. Intel K.K.*, Case No. Heisei 17 (Wa) No. 4 (Tokyo
> High Court, 6/30/05), and all subsequent appellate or other
> review proceedings related thereto.

D.I. 115 at p. 3.

2.    **Objections/Comments Received**

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's Confidential Discovery Material to be used in the Japan Litigation. Accordingly, Dell requests that this paragraph be deleted. D.I. 143 at p. 6.

- **IBM** – Objects to the use of its Discovery Material in the "Japan Litigation" and urges that all references "Japan Litigation" be deleted. IBM states that it not aware of any protections that exist with respect to the "Japan Litigation" that would ensure its ability to monitor and enforce the use of its Discovery Material or Confidential Discovery Material. IBM further argues that, if the Court determines that the Protective Order will apply to the use or disclosure of anything in, or will apply in any way to, the "Japan Litigation," a requirement should be included that IBM and other Third Parties must receive advance notice of each specific action, the identity of counsel in those actions, and the terms and conditions, in English, that will apply to any IBM material that may be provided. D.I. 142 at p. 2.

- **Japanese OEMs** – Object to inclusion of any foreign investigations or proceedings and to disclosure of their Discovery Materials outside the AMD or Class litigations. D.I. 133 at p. 5.

- **Lenovo** – Objects to all references to the "Japan Litigation" and urges that such references be deleted throughout the Protective Order. If the Court determines that the

Protective Order will apply to the use or disclosure of anything in, or will apply in

anyway to, the "Japan Litigation," a requirement should be included in the Protective

Order that Lenovo and other Third Parties must receive advance notice of each specific

action, the identity of counsel in those actions, and the terms and conditions, in English,

that will apply to any Lenovo Confidential Discovery Material that may be used in that

action.  D.I. 144 at p. 2.

**C.    Definition "C"**

      1.     Proposed Definition C provides:

> The "Class Litigation" means the various actions filed by or
> on behalf of putative classes of indirect purchasers of Intel
> microprocessors, including certain actions which have been
> or will be transferred to this Court by the Judicial Panel on
> Multidistrict Litigation under Docket No. 1717, together
> with all such actions originally filed in this Court.  When
> used to refer to proceedings in which Confidential
> Discovery Material subject to this order may be used,
> "Class Litigation" shall also include certain follow-on
> matters filed in various state courts asserting claims
> substantially the same as those asserted in the class actions
> comprising the MDL.

D.I. 115 at p. 3.

      2.     **Objections/Comments Received**

- **Japanese OEMs** – Object to the inclusion of any State proceedings and to disclosure of

  their Discovery Materials outside of the AMD or Class litigations.  D.I. 133 at pp. 5-6.

**D.    Definition "D"**

      1.     Proposed Definition D provides:

> The "California Class Litigation" means the actions filed by
> or on behalf of a putative California class of indirect

purchasers of Intel microprocessors, including certain actions which have been or will be transferred to the Honorable Jack Komar of the Santa Clara County Superior Court by the Judicial Council for the State of California under JCCP 4443, together with such actions originally filed in that Court. These actions include: *Melkonians v. Intel Corp.*, Santa Clara County Superior Court Case No. 1-05-CV-045077; *Macias v. Intel Corp.*, formerly in the Los Angeles County Superior Court Case No. BC336897; *Toronto v. Intel Corp.*, formerly in the San Diego County Superior Court Case No. GIC850053; *Gross v. Intel Corp.*, Santa Clara County Superior Court Case No. 1-05-CV-053490; *Wangler v. Intel Corp.*, formerly in the Los Angeles County Superior Court Case No. BC340460; *Pishvaee v. Intel Corp.*, Santa Clara Superior Court Case No. 1-05-CV-053300; and any action that subsequently is made part of JCCP 4443.

D.I. 115 at pp. 3-4.

2.    **Objections/Comments Received**

- **Japanese OEMs** – Object to the inclusion of any State proceedings and to disclosure of their Discovery Materials outside the AMD or Class litigations. D.I. 133 at p. 6.

E.    **Definition "E"**

1.    Proposed Definition E provides:

"Competition Investigation" means any investigation commenced by a duly authorized federal, state or foreign governmental competition or antitrust agency into the conduct of a Party prior to, or during the pendency of the AMD Litigation.

D.I. 115 at p. 4.

2.    **Objections/Comments Received**

- **IBM** – Objects to the extent the Protective Order would allow the use or disclosure of anything in, or apply in any way to, any Competitive Investigation or any other litigation or investigatory matter that is not currently pending and expressly defined in the

9

Protective Order. If the Court determines that the Protective Order will apply to the use or disclosure of anything in, or will apply in any way to, any Competition Investigation or any other litigation or investigatory matter that is not currently pending and expressly defined in the Protective Order, a requirement should be included that IBM and other Third Parties must receive advance notice of each specific action and the identity of counsel in those actions. D.I. 142 at pp. 2-3.

- **Japanese OEMs** – Object to the inclusion of any investigations or foreign proceedings and to disclosure of their Discovery Materials outside the AMD or Class litigations. D.I. 133 at p. 6.

- **Lenovo** – Objects to the extent the Protective Order would allow the use or disclosure of anything in, or apply in any way to, any Competition Investigation or any other litigation or investigatory matter that is not currently pending and expressly defined in the Protective Order. If the Court determines that the Protective Order will apply to the use or disclosure of anything in, or will apply in any way to, any Competition Investigation or any other litigation or investigatory matter that is not currently pending and expressly defined in the Protective Order, a requirement should be included that Lenovo and other Third Parties must receive advance notice of each specific action and the identity of counsel in those actions. D.I. 144 at p. 3.

### F.    Definition "F"

1.    Proposed Definition F provides:

> "Intel" means defendants Intel Corporation and Intel Kabushiki Kaisha, together with their respective direct and indirect subsidiaries.

10

D.I. 115 at p. 4.

    2.    **Objections/Comments Received**

- **Japanese OEMs** – Object to inclusion of any foreign investigations or proceedings and to disclosure of their Discovery Materials outside the AMD or Class litigations. D.I. 133 at p. 7.

    **G.**    **Definition "G"**

        1.    Proposed Definition G provides:

> "AMD" means plaintiffs Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd., together with their respective direct and indirect subsidiaries.

D.I. 115 at p. 4.

    2.    **Objections/Comments Received**

- **Japanese OEMs** – Object to inclusion of any foreign investigations or proceedings and to disclosure of their Discovery Materials outside the AMD or Class litigations. D.I. 133 at p. 7.

    **H.**    **Definition "H"**

        1.    Proposed Definition H provides:

> "Party: means Intel or AMD. "Class Party" means any named plaintiff in the Class Litigation. "Parties" means Intel, AMD and all Class Parties.

D.I. 115 at p. 4.

    2.    **Objections/Comments Received**

- **Japanese OEMs** – Object to inclusion of any State proceedings and to disclosure of their Discovery Materials outside the AMD or Class litigations. D.I. 133 at p. 7.

11

**I.**  **Definition "I"**

1.  Proposed Definition I provides:

> "Outside Counsel" means the law firm(s) that are counsel of record for the Parties in the AMD Litigation, the Japan Litigation, the Class Litigation, and the California Class Litigation, and counsel for a Party in connection with any Competition Investigation, including their associated attorneys, and other persons regularly employed by such law firm(s), and temporary personnel retained by such law firm(s) to perform legal or clerical duties, or to provide logistical litigation support; provided that no person who is or becomes a director, officer or employee of a Party shall be considered Outside Counsel.

D.I. 115 at p. 4.

2.  **Objections/Comments Received**

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's Confidential Discovery Material to be used in the Japan Litigation. Accordingly Dell requests that references to the "Japan Litigation" be removed from this paragraph. D.I. 143 at p. 6.

- **Japanese OEMs** – Object to inclusion of any State proceedings and of any foreign investigations or proceedings, and to disclosure of their Discovery Materials outside the AMD or Class litigations. D.I. 133 at pp. 7-8.

**J.**  **Definition "J"**

1.  Proposed Definition J provides:

> "In-House Litigation Counsel" means any attorney who is an employee in the legal department of a Party whose responsibilities consist of overseeing the AMD Litigation, the Class Litigation, the Japan Litigation or any Competition Investigation and who shall not from the date of entry of this Protective Order through a period of one year following the conclusion of any of the aforementioned

12

> be engaged in: (a) the review and approval of competitive
> pricing or marketing programs; (b) the review of any aspect
> of microprocessor or chipset manufacturing, or (c) the
> filing or prosecution of patent applications.

D.I. 115 at p. 5.

2.    **Objections/Comments Received**

- **Circuit City** –Objects to the definition of "In-House Litigation Counsel" on the basis that it is incomplete and does not afford Circuit City sufficient protection from the disclosure of its trade secrets and highly confidential and proprietary commercial information. Circuit City urges that its confidential information should not be disclosed to In-House Litigation Counsel if they are involved in the development of contract terms or negotiations with customers. D.I. 134 at pp. 2-3.

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's Confidential Discovery Material to be used in the Japan Litigation. Accordingly Dell requests that references to the "Japan Litigation" be removed from this paragraph. D.I. 143 at p. 6.

- **Dell** – Objects to the word "any" in the term restricting certain conduct for a period of "one year following the conclusion of *any* of" the litigation. Dell urges that word "any" be changed to "all" to effectuate the apparent intent of the definition (to prevent In-House Counsel for a Party who has been permitted access to Confidential Discovery Material from engaging in certain business/legal functions for one year after the litigation is concluded). D.I. 143 at p. 8.

- **Egenera** – Objects that the Proposed Protective Order would allow disclosure of its Discovery Material beyond this Court's jurisdiction and in matters in which Egenera has not been and is not expected to be subject to third party discovery. First, Egenera argues

13

that it has not submitted to the jurisdiction of the California or the Japanese courts, and that the provision in 6(d) for automatic use of its Discovery Material in those courts is beyond this Court's authority to order. Additionally, Egenera argues that because it does not manufacture computers for personal use, its Discovery Material are not relevant to the Class Litigation and the California Class Litigation. D.I. 128 at pp. 6-7.

- **Egenera** – On the basis that it does not address a minimum time period to be provided for in the event of settlements, Egenera urges that the Protective Order provide limitations on practice to be in effect for a period of three years from the date of the entry of the Protective Order or for the time period otherwise provided, whichever is longer. D.I. 128 at pp. 10-11.

- **Japanese OEMs** – Object to inclusion of any State proceedings and of any foreign investigations or proceedings, and to disclosure of their Discovery Materials outside the AMD or Class litigations. The Japanese OEMs also object that the one-year time period is too short and should be three years; that the term "any of the aforementioned" should be "*all* of the aforementioned"; and that the scope of prohibited activity is too narrow because it does not include in subparagraph (d) "business (as opposed to legal) activity related to the manufacture or sale of devices using microprocessors or chipsets." D.I. 133 at p. 8.

- **Third Party Distributors** – Comment that the proposed definition of "In-House Litigation Counsel" should be expanded to prevent such persons who are given access to a Distributor's confidential information from engaging in the review or negotiation of contracts with that Distributor, or participating in any litigation against or otherwise interacting in a competitive business manner with that Distributor, for a period of one

14

year following the conclusion of any of the litigations identified in the Protective Order.

D.I. 139 at p. 2.

### K.    Definition "K"

    1.    Proposed Definition K provides:

> "Japan Counsel" means the outside law firm(s) that are counsel of record for AMD or Intel in the Japan Litigation, including their associated attorneys and other persons regularly employed by such law firm(s), and temporary personnel retained by such law firm(s) to perform legal or clerical duties or to provide logistical litigation support; provided that no person who is or becomes a director, officer or employee of a Party shall be considered Japan Counsel.

D.I. 115 at p. 5.

    2.    **Objections/Comments Received**

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's Confidential Discovery Material to be used in the Japan Litigation. Accordingly, Dell requests that this paragraph be deleted. D.I. 143 at p. 6.

- **Japanese OEMs** – Object to inclusion of any foreign investigations or proceedings and to disclosure of their Discovery Materials outside the AMD or Class litigations. D.I. 133 at pp. 8-9.

### L.    Definition "L"

    1.    Proposed Definition L provides:

> "Producing Party" means a Party, Class Party or Third Party that produced or intends to produce Discovery Material in the AMD Litigation, the Japan Litigation or the Class litigation.  "Receiving Party" means any Party or Class Party furnished Discovery Material in the AMD

Litigation, the Japan Litigation or the Class Litigation.

D.I. 115 at p. 5.

2.    **Objections/Comments Received**

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's Confidential Discovery Material to be used in the Japan Litigation.  Accordingly Dell requests that references to the "Japan Litigation" be removed from this paragraph.  D.I. 143 at p. 6.

- **Japanese OEMs** – Object to inclusion of any State proceedings and of any foreign investigations or proceedings and to disclosure of their Discovery Materials outside the AMD or Class litigations.  D.I. 133 at p. 9.

M.    **Definition "M"**

    1.    Proposed Definition M provides:

        "Third Party" means any natural person, partnership, corporation, association, or other legal entity not named as a party to the AMD Litigation, the Japan Litigation or the Class Litigation.

D.I. 115 at p. 5.

2.    **Objections/Comments Received**

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's Confidential Discovery Material to be used in the Japan Litigation.  Accordingly Dell requests that references to the "Japan Litigation" be removed from this paragraph.  D.I. 143 at p. 6.

- **Japanese OEMs** – Object to inclusion of any State proceedings and of any foreign investigations or proceedings and to disclosure of their Discovery Materials outside the

AMD or Class litigations.  D.I. 133 at p. 9.

**N.**  **Definition "N"**

    1.    Proposed Definition N provides:

> "Expert/Consultant" means experts or other consultants (and their assistants and staff) who are retained to assist Outside Counsel.

D.I. 115 at p. 5.

    2.    **Objections/Comments Received**

- **IBM** – Comments that the definition of "Expert/Consultant" in Definition N should be modified to prohibit any current or former employee of AMD or Intel from serving as an Expert and/or Consultant.  D.I. 142 at p. 3.

- **Lenovo** – Objects to the definition of "Expert/Consultant and argues that it should be modified to prohibit any current or former employee of AMD or Intel from serving as an Expert and/or Consultant.  D.I. 144 at p.3.

**O.**  **Definition "O"**

    1.    Proposed Definition O provides:

> "Japan Expert/Consultant" means experts or other consultants (and their assistants and staff) who are retained to assist Japan Counsel in the Japan Litigation.

D.I. 115 at p. 5.

    2.    **Objections/Comments Received**

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's Confidential Discovery Material to be used in the Japan Litigation.  Accordingly, Dell requests that this paragraph be deleted.  D.I. 143 at p. 6.

17

- **Japanese OEMs** – Object to the inclusion of any foreign investigations or proceedings and to disclosure of their Discovery Materials outside the AMD or Class litigations. D.I. 133 at p. 10.

P.    **Definition "P"**

1.    Proposed Definition P provides:

> "Document" shall have the meaning ascribed to it in Federal Rule of Civil Procedure 34(a) and shall include all "writings," "recordings" and "photographs" as those terms are defined in Rule 1001 of the Federal Rules of Evidence. Without limiting the generality of the foregoing, "document" includes the complete original or a true, correct and complete copy and any non-identical copies of any written or graphic matter, no matter how produced, recorded, stored or reproduced, including, but not limited to, any writing, letter, envelope, telegram, meeting minute, memorandum, statement, affidavit, declaration, book, record, survey, map, study, handwritten note, working paper, chart, index, tabulation, graph, tape, data sheet, data processing card, printout, microfilm, index, computer readable media or other electronically stored data, appointment book, diary, diary entry, calendar, desk pad, telephone message slip, note of interview or communication or any other data compilation, including all drafts of all such documents. "Document" also includes every writing, drawing, graph, chart, photograph, phono record, tape and other data compilations from which information can be obtained, and includes all drafts and all copies of every such writing or record that contain any commentary, note, or marking whatsoever not appearing on the original.

D.I. 115 at p. 6.

2.    **Objections/Comments Received**

None received.

18

**Q.**  **Definition "Q"**

1.  Proposed Definition Q provides:

"Discovery Material" includes without limitation deposition testimony, deposition exhibits, interrogatory responses, admissions, affidavits, declarations, and Documents (whether paper or electronic and whether generated or received by the party possessing them), including those produced pursuant to compulsory process or voluntarily in lieu thereof.

D.I. 115 at p. 6.

2.  **Objections/Comments Received**

None received.

**R.**  **Definition "R"**

1.  Proposed Definition R provides:

"Confidential Discovery Material" means any Discovery Material consisting of or containing information falling into any of the following categories:

1.  Non-public pricing information;

2.  Non-public sales and marketing strategies, business plans and tactics, including product roadmaps and planned product introductions;

3.  Non-public data concerning sales, revenues, profits, margin and variances;

4.  Non-public contracts which by their terms are required to be maintained in confidence;

5.  Non-public sales budgets, forecasts, and projections;

6.  Non-public customer lists;

7.  Non-public negotiations with customers relating to the purchase or sale of microprocessors, chipsets or any other product manufactured by a Party;

19

8.    Non-public strategic plans;

9.    Non-public data concerning costs, capacity and ROI or other similar benchmarks;

10.   Any invention, formula, pattern, compilation, program device, product design, method, technique, or process, and information relating to the same, that (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy;

11.   Non-public information that concerns microprocessor or chipset manufacturing, including capital expenditure plans, yields, capacity, costs, utilization, process and scale;

12.   Non-public business or market research, whether acquired or generated internally;

13.   Confidential personnel information whether contained in HR records or otherwise;

14.   Information the disclosure of which could jeopardize the security of confidential databases, networks or other sources of non-public information;

15.   Non-public financial information the public disclosure of which is prohibited by law or regulation or which could jeopardize the integrity of public trading of the Producing Party's securities;

16.   Other information or documents the disclosure of which the Producing party can demonstrate would cause it serious and specific harm.

D.I. 115 at pp. 6-9.

2.   **Objections/Comments Received**

- **Acer America** – Comments that, notwithstanding any prior production of documents,

20

either formal or informal, Producing Parties should have the right to designate any previously produced Discovery Material as "Confidential" under the terms of the Protective Order, and that such Discovery Material will be treated as Confidential Discovery Material under the terms of the Protective Order. D.I. 136 at p. 1.

- **Best Buy** – Comments that (i) Definition R should include as "Confidential Discovery Material" any information contained in the minutes of the meetings of a Producing Party's Board of Directors or any committees of such Board of Directors; and (ii) Paragraph R(7) should include as "Confidential Discovery Material" all non-public negotiations with customers relating to the purchase or sale of products containing microprocessors. D.I. 132 at p. 1.

- **Circuit City** – Objects to Definition R, subsection 4 on the basis that it is incomplete and does not afford Circuit City sufficient protection from the disclosure of its trade secrets and highly confidential and proprietary commercial information. Circuit City suggests R(4) should be amended to read: "Non-public contracts which by their terms are required to be maintained in confidence *and non-public information relating to the contractual terms or arrangements entered into by the Parties with customers*." Circuit City also objections to Definition R, subsection (6) ("non-public customer lists") and its relationship to Definition S to the extent Circuit City's non-public information regarding the identity of its customers, dated or prepared more than two years ago, are treated as presumptively non-confidential. Circuit City's position is that the information it maintains regarding the identity of its customers is non-public, confidential, and subject to privacy law protections, regardless of its date of preparation. Circuit City suggests that its objection be addressed by amending subsection 6 to read "Non-public customer lists

21

of the Parties" and that a new subsection be added to Definition R that adds "Non-public customer lists maintained by retailers." D.I. 134 at pp. 3-4.

- **Egenera** – Objects that Definition R(10), purporting to protect trade secrets, is insufficient to protect Egenera's trade secrets to the extent that it requires a showing that the trade secret "derives independent economic value." Egenera urges that the Protective Order should be broad enough to encompass the definition of a trade secret under all applicable laws, including Massachusetts where it is located. D.I. 128 at p. 3.

- **Egenera** – Objects to Definition R(14) limiting the protection provided to computer data bases and networks to only those "non-public" confidential networks, data bases or other sources of information. Egenera urges that Third Parties have an interest in protecting against the disclosure of information which could jeopardize the security of their "public" internet sites as well. D.I. 128 at pp. 3-4.

- **Hewlett-Packard** – Suggests the addition of another category that includes any materials or information subject to a Producing Party's non-disclosure agreement or other contractual obligation: "To the extent not otherwise covered by this paragraph, any information subject to a Producing Party's non-disclosure agreement or other contractual obligation not to disclose." D.I. 127 at pp. 2-3.

- **Hitachi** – Suggests that references to "microprocessors and chipsets" throughout the Proposed Protective Order – including in R(7) and R(11) be revised to refer to "microprocessors, chipsets, *PCs and servers*". D.I. 146 at p. 2.

- **Japanese OEMs** – Object that the standard on R(16) is too restrictive because it does not include "information or documents that any Producing Non-Party designate as confidential for any legitimate business reason." D.I. 133 at p.12.

22

- **Microsoft** – Objects to Definition R(7) because it is narrowly written to refer only to "negotiations with customers relating to the purchase or sale of microprocessors, chipsets or any other product manufactured by a party." Microsoft urges that this provision should also include negotiations relating to licensing of operating systems, applications, tools and other technologies, to read as follows: "Non-public negotiations with customers relating to the purchase, sale or licensing of microprocessors, chipsets, operating systems, applications, tools, technologies or any other product manufactured, sold or licensed by a Party or Third Party." D.I. 141 at p. 1.

    Microsoft also objects to Definition R(11) in that it is similarly limited to non-public information "that concerns microprocessor or chipset manufacturing, including capital expenditure plans, yields, capacity, costs, utilization, process and scale." Microsoft urges that this section be revised to include development, marketing, manufacture and release of operating systems, applications, tools and other technologies to read as follows: "Non-public information that concerns development, marketing, manufacture or release of microprocessors, chipsets, operating systems, applications, tools, technologies or any other product manufactured, sold or licensed by a Party or Third Party, including but not limited to capital expenditure plans, yields, capacity, costs, utilization, process and scale." D.I. 141 at pp. 1-2.

- **Third Party Distributors** – Comment that R(7) does not account for the "middle-man" role that the Distributors play in the microprocessor market, or the fact that some purchases may not be made directly from a manufacturer. The Distributors urge that the definition be modified as follows: "Non-public negotiations with customers *or vendors* relating to the purchase or sale of microprocessors, chipsets or any other product." D.I.

139 at p. 2.

The Third Party Distributors object to the "serious and specific" harm language in R(16), based upon Third Circuit cases interpreting the "good cause" requirement for the protection of trade secrets and other confidential information under F. R. Civ. P. 26(c)(7), because disclosure of the Distributors' confidential information will not be limited to litigation in the Third Circuit. The Distributors urge that R(16) therefore should not be limited to an interpretation of the Third Circuit but, rather, should include any "[o]ther information or documents that, for good cause, the Producing Party can demonstrate should be treated as Confidential Discovery Material under the terms of this Protective Order." The Distributors further state that "good cause" is the standard required by California law, citing to Cal. Code Civ. Proc. § 2031.060 (b). D.I. 139 at p.2.


**S.    Definition "S"**

1.    Proposed Definition S provides:

> In order to address potential issues relating to the passage of time on the continued confidentiality of documents, the parties agree that for documents in categories R(1) through R(8) dated or prepared more than 24 months prior to a Designation Request under paragraph 16, the Producing Party must also satisfy the standard contained in paragraph R(16) for the documents to be maintained as confidential. For purposes of this paragraph, undated materials or materials or deposition testimony relating to an indeterminate time period shall be deemed dated as of the date of their production or the date of the deposition.

D.I. 115 at p. 8.

2.    **Objections/Comments Received**

- **Best Buy** – Objects to the vagueness of Definition S, as it does not sufficiently describe

24

the method of calculation of time when a document in category R(1) through R(8) contains more than one date, and suggests that the document be "dated" as of the latest date shown on the document.  D.I. 132 at p. 1.

- **Egenera** – Objects to the requirement in Definition S that producing parties must make separate proof of confidentiality for certain categories of Confidential Discovery Materials if disclosure is sought more than 24 months after their preparation.  Egenera urges that Producing Parties should not be put to the additional burden and cost of proving the ongoing confidentiality of their confidential information, especially the highly sensitive categories of information listed in Definitions R(1) - R(8).  D.I. 128 at pp. 3-4.

- **Hewlett-Packard** – Suggests that the period be extended to 36 months before a Producing Party needs to meet the heightened standard.  D.I. 127 at p. 3.

- **IBM** – Objects to the burdens imposed on IBM and Third Parties in order for discovery materials are more than 24 months old to maintain their confidential treatment.  IBM argues that the passage of two years does not simply rid material of its commercial sensitivity or otherwise confidential nature, nor does it justify requiring Third Parties to meet the unreasonable and overly burdensome requirement set forth in R(16).  IBM proposes that Definition S be removed in its entirety and no limitations be placed on the confidentiality of Discovery Materials simply on the basis of the age of such materials. D.I. 142 at p. 3.

- **Japanese OEMs** – Object to the burden of Paragraph S and to any time limitation on their designation of confidential documents or information.  D.I. 133 at pp. 12-13.

- **Lenovo** – Objects to Paragraph S and argues that it should be removed in its entirety from the Protective Order and that no limitations should be placed on the confidentiality of Discovery Materials simply on the basis of the age of such materials.  D.I. 144 at pp. 3-4.

- **Third Party Distributors** – Object on the basis that documents should not presumptively lose their confidential status merely because they were prepared more than two years before a production demand, arguing that many documents such as multi-year contracts and marketing plans are intended to last more than two years.  Older documents are often precursors to, and reflective of, current proprietary information.  So long as there is "good cause" for a document to be classified as confidential pursuant to Definition R(16), the date of the document's preparation with regard to the date it was requested is irrelevant. D.I. 139 at p. 3.

T.      **Definition "T"**

      1.      Proposed Definition T provides:

> "Disclose" means producing any "Discovery Material"
> directly and providing any description of its contents or in
> any way revealing the contents of any "Discovery
> Material."

D.I. 115 at p. 8.

      2.      **Objections/Comments Received**

- **Best Buy** – Objects to Paragraph T as too vague and overbroad in that it does not sufficiently identify what actions constitute the provision of "any description" of the contents of any "Discovery Material" and does not sufficiently describe the actions constituting "in any way revealing the contents of any 'Discovery Material.'"

Additionally, Best Buy urges that Paragraph T does not identify those parties to whom the production, provision, or sharing of "Discovery Material" constitutes a "Disclosure." D.I. 132 at pp. 1-2.

U.    **Definition "U"**

    1.    Proposed Definition U provides:

> "Non-Public" documents and information are those (a) that the Producing Party maintains internally as "confidential," (b) that are not disclosed to third-parties except under written agreements requiring that they be maintained in confidence or pursuant to a course of dealing whereby such communications are maintained in confidence, and (c) that the disclosure of which could damage the Producing Party competitively.

D.I. 115 at p. 8.

    2.    **Objections/Comments Received**

- **Egenera** – Objects to the definition of "non-public" contained in Paragraph U because confidential materials maintained by Producing Parties in their day-two-day operations may not be marked or otherwise officially designated as "confidential". Egenera urges that the only relevant consideration in determining whether materials are "non-public" is whether they are kept confidential vis-à-vis third parties and, therefore, requests that subpart (a) of Definition U be stricken. D.I. 128 at p. 5.

- **Hitachi** – Objects to the quotation marks around the word "confidential" arguing that the benefits of the Protective Order should not apply only to documents maintained internally with explicit "confidential" markings, but rather should protect all documents which Producing Parties maintain internally as confidential. Additionally, Hitachi suggests that subparagraph U(b) be changed to read "that are not disclosed to third-parties except *in the*

27

*course of litigation or government investigation or* under written agreement . . . ." to prevent documents that are involuntarily produced during litigation from losing their confidential status. D.I. 146 at p. 2.

- **Japanese OEMs** – Object to the extent that the definition of "non-public" means anything other than " not available to the general public." D.I. 133 at p 13.

## III.   The Proposed Terms and Conditions

### A.   Paragraph 1

1.   Proposed Paragraph 1 provides:

> Except as set forth in this Protective Order, Confidential Discovery Material, or information derived therefrom, shall be used solely by the Parties for purposes of the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation, and shall not be used for any other purpose, including, without limitation, any business or commercial purpose, or dissemination to the media. Confidential Discovery Material that loses that designation, either by agreement of the Parties or the challenge process set out in Paragraph 16, may be used for any purpose, unless such use is restricted by agreement or by the Court.

D.I. 115 at pp. 8-9.

### 2.   **Objections/Comments Received**

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's Confidential Discovery Material to be used in the Japan Litigation. Accordingly, Dell requests that any reference to the "Japan Litigation" be removed from this paragraph. D.I. 143 at p. 6.

- **Egenera** – Objects that the Proposed Protective Order purports to permit the Parties to use Third-Party Discovery Material for purposes other than the litigations, including

28

commercial purposes of the parties.  Egenera urges that the Protective Order should clearly state that it does not grant any right to use or otherwise authorize the use of Discovery Material for any other purpose other than the litigation, regardless of the confidentiality status of the Discovery Materials.  D.I. 127 at pp. 5-6.

- **Fry** – Objects to the last sentence of Paragraph 1 because it would allow the Parties to agree to treat information designated "confidential" by Third Parties as non-confidential, allowing the parties to circumvent the Third Parties' designation by mere agreement of the Parties.  It is Fry's position that information designated as "confidential" by Third Parties should remain confidential unless the Third Party producing the agreement agrees otherwise or unless the Court, after giving the Third Party notice and an opportunity to be heard on the issue, orders that the information is to be treated in a manner other than Confidential.  Fry further objects to the phrase " . . . may be used for any purpose, unless such use is restricted by agreement or by the court," and requests that this phrase be changed to " . . . may be used for any purpose, unless such use is restricted by agreement, *by law*, or by the Court."  D.I. 145 at p. 2.

- **Hitachi** – Objects to the inclusion of the "Japan Litigation" in this paragraph, arguing that it would eliminate protection of Confidential Discovery Material.  Hitachi argues that, generally speaking, Japanese courts do not provide protection from disclosure to Third Parties for a Producing Party's confidential information.  Hitachi believes that were it to produce Confidential Discovery Material in the U.S. (despite the fact that Hitachi claims it is not subject to U.S. jurisdiction), either of the parties could potentially de-designate that Confidential Discovery Material by using it in the Japan Litigation.  As a result, the proposed inclusion of the Japan Litigation would effectuate a loophole to the

29

protections of the Proposed Protective Order. D.I. 146 at pp. 1-2.

- **Japanese OEMs** – Object to the inclusion of any State proceeding and of any foreign investigation or proceeding and to disclosure of their Discovery Materials outside the AMD or Class litigations. The Japanese OEMs further argue that <u>all</u> documents that they produce (not just confidential documents) should be used only for the purpose of the AMD or Class litigations and for no other purpose (including, without limitation, no distribution to the media or disclosure on the Internet). D.I. 133 at p. 14.

- **Third Party Distributors** – Object to the last sentence of this paragraph, which allows a Party to use Confidential Discovery Material for any purpose. The Distributors are not a party to the various disputes and have no direct involvement or interest in them and, but for the serving of subpoenas, the Parties would not have access to the Distributors' documents, confidential or otherwise. The Distributors argue that even if a document produced by a Distributor does not qualify as a trade secret, a Party should not be allowed to use that document for its own business purposes or disseminate it to the Distributor's competitors. They argue that the Protective Order should provide that the Parties and all other persons to whom *any* of the documents produced by the Distributors are disclosed, are precluded from using the Distributors' information, including any of the Distributors' information produced by a party, for any purpose other than the identified litigations. D.I. 139 at p. 3.

### B.     Paragraph 2

1.     Proposed Paragraph 2 provides:

> Nothing in this Protective Order shall be deemed to grant or create discovery rights to any Party, Class Party or Third

30

> Party in the AMD Litigation, the Japan Litigation, the Class Litigation or the California Class Litigation in any other proceeding relating to or arising out of the subject-matter thereof, nor shall the Parties' agreement to this Protective Order constitute a waiver of any rights to resist any discovery efforts that may be initiated in any other proceeding whether or not relating to or arising out of the same subject-matter.

D.I. 115 at p. 9

### 2. **Objections/Comments Received**

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's Confidential Discovery Material to be used in the Japan Litigation. Accordingly, Dell requests that any reference to the "Japan Litigation" be removed from this paragraph. D.I. 143 at p. 6.

- **Egenera** – Objects that the Proposed Protective Order fails to reserve the rights of Third Parties to object to discovery requests. D.I. 128 at p. 11.

- **Third Party Distributors** – Reserve their rights to reimbursement of all costs associated with their preservation, review and production of documents. The Distributors propose adding the provision that "Nothing in this Protective Order prohibits the Court, Parties or Third Parties from shifting any costs incurred by a Producing Party." D.I. 139 at p. 3.

### C. **Paragraph 3**

1. Proposed Paragraph 3 provides:

> Solely for the purposes of the efficient and timely production of documents, and to avoid the need for a detailed and expensive confidentiality examination of millions of Documents the disclosure of which is not likely to become an issue, a Producing Party may initially designate as "Confidential Discovery Material" any Non-public Discovery Material. This designation shall control

31

unless and until a Designation Request is made by a
Receiving Party under Paragraph 16.

D.I. 115 at p. 9.

2.    **Objections/Comments Received**

- **Best Buy** – Objects to Paragraph 3 as too vague, in that does not sufficiently describe the

    protection given a Producing Party's Confidential Discovery Material after that material

    is subject to a Designation Request by a Receiving Party under Paragraph 16 Best Buy

    urges that the designation shall control until a final determination (by agreement or Court

    order) is made.  D.I. 132 at p. 2.

- **Japanese OEMs** – Object to inclusion of any State Proceedings and of any foreign

    investigations or proceedings and to disclosure of their Discovery Materials outside the

    AMD or Class litigations.   The Japanese OEMs further object to the extent that

    Confidential Discovery Material would not include "information or documents that any

    Producing Non-Party designates as confidential for any legitimate business reason," and

    to the extent that the definition of "non-public" means anything other than "not available

    to the general public."  D.I. 133 at p. 14.

D.    **Paragraph 4**

1.    Proposed Paragraph 4 provides:

Such a designation shall be made at the time of production
by marking documents or other tangible Discovery
Material by placing on or affixing, physically or
electronically, in such manner as will not interfere with the
legibility thereof, the notation "CONFIDENTIAL - .MDL
I717/JCCP 4443." Electronic or native documents or data
shall be similarly marked where practicable, and where not
practicable, written notification by a Producing Party that it
is producing Discovery Material as Confidential Discovery

32

Material shall suffice to require Confidential treatment.

D.I. 115 at p. 9.

2.    **Objections/Comments Received**

- **Egenera** – Proposes that the Protective Order provide a remedy for inadvertent failure to mark Confidential Discovery Material pursuant to the terms of the Protective Order. Given the enormous volume of documents expected to be produced in these cases, Egenera suggests that the Producing Party be permitted to notify the Receiving Party in writing within a reasonable time of its discovery that it has failed to mark Confidential Materials. Upon receipt of such notice "the Receiving Party shall return all copies of such material to the Producing Party to allow the materials to be appropriately marked, and the failure to mark such Confidential Discovery Materials shall not be deemed to be a waiver of the confidential status of the material." D.I. 128 at pp. 15-16.

- **Hewlett-Packard** – Objects to the manner of production and designation of certain native format documents and proposes that the language be modified to allow for production of native format documents into an electronic document repository for each Party. Each Party would be able to review documents in its individual repository, but documents designated as confidential could not be printed or copied from the repository unless were individually labeled with the appropriate confidentiality designation to prevent against inadvertent disclosure of confidential documents. D.I. 127 at pp. 3-4.

- **Japanese OEMs** – Repeat and incorporate their objections to Definitions D, L, M, R and U. The Japanese OEMs further object to the extent that this fails to cover documents previously produced, or that will be produced, to the Parties where those documents are marked as requiring confidential treatment using any differing notation (including

33

without limitation "Confidential" or "CONFIDENTIAL"). D.I. 133 at p. 15.

- **Third Party Distributors** – Comment that a Producing Party should only be required to label Confidential Discovery Material as "CONFIDENTIAL" without indicating the specific litigation the material is being produced in, or mark its documents in some other manner that clearly identifies the range of documents or information, or parts thereof, that should be treated as Confidential Discovery Material. They further urge that the written notification required by the Producing Party should need to only be given to the Requesting Party, which in turn should be required to provide similar notification to any others to whom the Requesting Party discloses the Confidential Discovery Material. D.I. 139 at pp. 3-4.

### E.    Paragraph 5

1.    Proposed Paragraph 5 provides:

> Deposition testimony may be designated as Confidential Discovery Material by instructing the Court Reporter recording the testimony to designate portions of the transcript as "CONFIDENTIAL" during the deposition or within thirty (30) days after the deposition transcript is sent to the witness or his or her attorney. Unless those attending a deposition agree at its conclusion that it may be treated as non-confidential, until the expiration of the thirty-day period, the transcript shall be treated as "CONFIDENTIAL" in its entirety under the terms of this Order unless specific designations are made earlier. If a party claiming confidentiality makes no specific designations during the thirty-day period, no part of the deposition transcript will be considered to be subject to this Order.

D.I. 115 at p. 10.

34

2.    **Objections/Comments Received**

- **Best Buy** – Objects to the reference to both "days" and "court days" throughout the Proposed Protective Order and urges that there be only one type of "day" used throughout. Best Buy additionally objects that Paragraph 5 is too vague, in that it does not specifically indicate that a Producing Party may designate as "Confidential Discovery Material" any portion of a transcript (of any witness in the litigations) that contain the Producing Party's Confidential Discovery Material. D.I. 132 at p. 2.

- **Dell** – Objects that this paragraph does not provide adequate protection to Third Parties and, because they will not be attending all depositions, makes it difficult for them to protect their Confidential Discovery Material during depositions. Dell requests that all deposition questions, testimony, and exhibits reflecting its Confidential Discovery Material be automatically designated as Confidential Discovery Material and that no such designation may be changed unless Dell is afforded the procedures of Paragraph 16 of the Proposed Order, by requesting that the following language be added to Paragraph 5: "If Confidential Discovery Material of a Third Party is disclosed in questions, answers, objections, exhibits, or otherwise during a deposition, the entire deposition (including exhibits) shall be designated "Confidential Discovery Material" unless and until the Third Party otherwise agrees or the procedures of Paragraph 16 are followed. No witness, attorney, or other person attending the deposition, unless it is an attorney for the Third Party, may make any agreement or designation to the contrary." D.I. 143 at p. 3.

- **Egenera** – Proposes that the Protective Order provide a remedy for inadvertent failure to mark Confidential Discovery Material pursuant to the terms of the Protective Order. Given the enormous volume of documents expected to be produced in these cases

35

Egenera suggests that the Producing Party be permitted to notify the Receiving Party in writing within a reasonable time of its discovery that it has failed to mark Confidential Materials. Upon receipt of such notice "the Receiving Party shall return all copies of such material to the Producing Party to allow the materials to be appropriately marked, and the failure to mark such Confidential Discovery Materials shall not be deemed to be a waiver of the confidential status of the material." D.I. 128 at pp. 15-16.

- **Japanese OEMs** – Object to inclusion of any State Proceedings and of any foreign investigations or proceedings and to disclosure of their Discovery Materials outside the AMD or Class litigations. The Japanese OEMs further object to the extent that Confidential Discovery Material would not include "information or documents that any Producing Non-Party designates as confidential for any legitimate business reason," and to the extent that the definition of "non-public" means anything other than "not available to the general public." D.I. 133 at p. 14.

- **Third Party Distributors** – Object to the fact that Paragraph 5 does not provide an opportunity for a non-party whose confidential information is used or disclosed during a deposition to review and designate such testimony as "CONFIDENTIAL." The Distributors urge that the Protective Order should state: "Notwithstanding the foregoing, any use or disclosure of documents or information obtained from or related to a Third Party during a deposition, or testimony by any witness concerning any Third Party during a deposition, is presumed to be and shall remain "CONFIDENTIAL." Any person wishing to disclose the deposition testimony or documents to a person other than as permitted by the Protective Order shall make a written designation request to the Third Party as provided in Paragraph 16," as amended. The Distributors note that the Parties

36

may already possess documents containing a Distributor's confidential information and,

therefore, any testimony about the Distributor's confidential information should be treated

as "Confidential Discovery Material." D.I. 139 at p. 4.

## F.    **Paragraph 6**

1.    Proposed Paragraph 6 provides:

Confidential Discovery Material shall not, directly or indirectly, be disclosed or otherwise provided to anyone except to:

(a)    Outside Counsel;

(b)    Experts/Consultants, subject to the provisions and limitations set forth in Paragraph 10 herein;

(c)    Two In-House Litigation Counsel identified to the opposing Party;

(d)    The Court and other court personnel of any court having jurisdiction over any proceedings involving the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation. However, with regard to documents used in the proceedings in Japan, Confidential Discovery Materials produced in the AMD Litigation, the Class Litigation, or the California Class Litigation may only be used if the Japan court institutes procedures to protect the confidentiality of the information at a level of protection comparable to that provided in this Order. The Parties shall cooperate reasonably in seeking such protection. The procedures to effectuate this provision shall be those the Japan Court deems appropriate;

(e)    Court reporters, their staffs, and professional vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgement of Protective Order" attached hereto;

(f)    During the deposition of any current employee,

37

director, agent or Rule 30(b)(6) designee of the Producing Party, an Opposing Party may show the Producing Party's witness any document produced by the Producing Party; and it may show to any former employee of the Producing Party any document the Receiving Party's Outside Counsel reasonably and in good faith believes to have received the information or document, or to have become familiar with its contents, in the ordinary course of his or her business duties, consistent, however, with the provisions of paragraph 10;

(g)    The author of a document containing Confidential Discovery Material or the original source of the information, as well as addressees, copyees or other persons whom the Receiving Party's Outside Counsel reasonably and in good faith believes to have received the information or document, or to have become familiar with its contents, in the ordinary course of his or her business duties, consistent, however, with the provisions of paragraph 10; and

(h)    Japan Counsel and Japan Experts/Consultants, subject to the provisions and limitations set forth herein.

D.I. 115 at pp. 10-11.

## 2.    **Objections/Comments Received to Subparagraph 6(a).**

None received.

## 3.    **Objections/Comments Received to Subparagraph 6(b).**

- **Japanese OEMs** – Object to inclusion of any State proceedings and of any foreign investigations or proceedings and to disclosure of their Discovery Materials outside the AMD or Class litigations. The Japanese OEMs also repeat and incorporate their objections to Definitions B, D, I, J, K and O. D.I. 133 at pp. 16-17.

- **Hewlett-Packard** – Objects to granting an expert access to Confidential Discovery

38

Material without first identifying the proposed expert to the Producing Party and affording Third Parties an opportunity to object to the expert's access to Confidential Discovery Material.  D.I. 127 at pp. 5-6.

### 4.    **Objections/Comments Received to Subparagraph 6(c).**

- **Best Buy** – Urges that the In-House Litigation Counsel should be identified to the Third Parties that produce Confidential Discovery Material.  D.I. 132 at p.2.

- **Dell** – Requests that it and other Third Parties be provided the identities of In-House Litigation Counsel to whom their Confidential Discovery Material is shown. Accordingly, Dell requests that Paragraph 6(c) be replaced by the following:  "To In-House Litigation Counsel identified to the Producing Party, . . ."  D.I. 143 at pp. 5-6.

- **Fry** – Objects to allowing In-House Litigation Counsel to view its highly confidential sales documents, such as industry-wide purchase agreements and sales information.  Fry argues that such information could greatly harm Fry's and the other Third Parties' ability to negotiate competitive purchase orders and vendor agreements should it be disclosed to the Parties to the lawsuit.  Fry therefore requests that a second "tier" be added to the Protective Order that would shield "highly confidential" information from disclosure to the Parties and their In-House Litigation Counsel.  In the alternative, should the Court refuse the request for a two-tier protective order, Fry requests that In-House Litigation Counsel be precluded from viewing confidential documents in their normal place of business and that they only be granted access to view the documents at their outside counsel's offices.  Finally, to the extent that this Court allows In-House Litigation Counsel to view confidential documents produced by Third Parties, Fry requests that the

39

In-House Litigation Counsel's identity be disclosed to the Third Parties by revising Paragraph 6(c) to read: "To In-House Counsel identified to the opposing party *and any Producing Party*." D.I. 145 at pp. 3-4.

- **Hewlett-Packard** – Objects to permitting In-House Litigation Counsel to access Confidential Discovery Material unless the In-House Litigation Counsel is identified to the Producing Parties and they are permitted to object to certain In-House Litigation Counsel's access to Confidential Discovery Material. D.I. 127 at pp. 7-8.

- **Microsoft** – Requests that the In-House Litigation Counsel be identified to Producing Parties since these individuals will have access to information and documents produced by the Third Parties. Microsoft additionally requests that the one-year bar included in Definition J for In-House Litigation Counsel should extend to: "(a) the review and approval of competitive pricing, *licensing or* marketing programs; (b) the review of any aspect of *development, manufacture or release of microprocessors, chipsets, operating systems, applications, tools, technologies or any other product manufactured, sold or licensed by a Party or Third Party; (c) preparation or prosecution of any patent application or patent license relating to microprocessors or chipsets, or (d) preparation or prosecution of any application or license for a patent, copyright or other intellectual property right relating to operating systems, applications, tools or other software technologies."* D.I. 141 at p. 2.

### 5.    Objections/Comments Received to Subparagraph 6(d)

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's Confidential Discovery Material to be used in the Japan Litigation. Accordingly, Dell

requests that any reference to the "Japan Litigation" be removed from this paragraph. D.I. 143 at p. 6.

- **Egenera** – Objects that the Proposed Protective Order would allow disclosure of its Discovery Material beyond this Court's jurisdiction and in matters in which Egenera has not been and is not expected to be subject to third party discovery. First, Egenera argues that it has not submitted to the jurisdiction of the California or the Japanese courts, and that the provision in 6(d) for automatic use of its Discovery Material in those courts is beyond this Court's authority to order. Additionally, Egenera argues that because it does not manufacture computers for personal use, its Discovery Material are not relevant to the Class Litigation and the California Class Litigation. D.I. 128 at pp. 6-7.

6.    **Objections/Comments Received to Subparagraph 6(e)**

None received.

7.    **Objections/Comments Received to Subparagraph 6(f)**

- **Best Buy** – Objects to the use of "Opposing Party" without definition and without knowing whether that term is intended to have a meaning different than "Receiving Party." D.I. 132 at p. 2.

- **Egenera** – Objects to the disclosure of any Confidential Discovery Material to any individual unless they are testifying at a deposition. Egenera further objects to any disclosure based on the Parties' assessment of the likelihood that the individual is familiar with the information contained in a confidential document without first identifying the individual to Egenera and giving Egenera an opportunity to object to such disclosure.

41

Finally, Egenera objects that the provisions do not require execution of the Acknowledgement of Protective Order prior to receiving Confidential Discovery Materials and that the Protective Order does not require Parties making a disclosure to provide Third Parties with copies of the executed Acknowledgements. D.I. 128 at pp. 8-10.

- **Hewlett-Packard** – Objects to the procedure outlined by 6(f) and 6(g) for granting access to Confidential Discovery Material to former employees and to the "reasonably and in good faith" standard because it does not adequately protect Third Parties from potentially damaging disclosures and it fails to provide any procedure by which a Third Party can object to such disclosure. D.I. 127 at pp. 9-11.

### 8.    Objections/Comments Received to Subparagraph 6(g)

- **Egenera** – Objects to the disclosure of any Confidential Discovery Material to any individual unless they are testifying at a deposition. Egenera further objects to any disclosure based on the Parties' assessment of the likelihood that the individual is familiar with the information contained in a confidential document without first identifying the individual to Egenera and giving Egenera an opportunity to object to such disclosure. Finally, Egenera objects that the provisions do not require execution of the Acknowledgement of Protective Order prior to receiving Confidential Discovery Materials and that the Protective Order does not require Parties making a disclosure to provide Third Parties with copies of the executed Acknowledgements. D.I. 128 at pp. 8-10.

- **Hewlett-Packard** – Objects to the procedure outlined in 6(f) and 6(g) for granting access

to Confidential Discovery Materials to "other persons," and to the "reasonably and in good faith" standard because the provision does not adequately protect Third Parties from potentially damaging disclosures and fails to provide any procedure by which a Third Party can object to such disclosure. D.I. 127 at pp. 9-11.

### 9.    **Objections/Comments Received to Subparagraph 6(h)**

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's Confidential Discovery Material to be used in the Japan Litigation. Accordingly, Dell requests that this paragraph be deleted. D.I. 143 at p. 6.

- **Egenera** – Objects that the Proposed Protective Order would allow disclosure of its Discovery Material beyond this Court's jurisdiction and in matters in which Egenera has not been and is not expected to be subject to third party discovery. First, Egenera argues that it has not submitted to the jurisdiction of the California or the Japanese courts, and that the provision in 6(d) for automatic use of its Discovery Material in those courts is beyond this Court's authority to order. Additionally, Egenera argues that because it does not manufacture computers for personal use, its Discovery Material are not relevant to the Class Litigation and the California Class Litigation. D.I. 128 at pp. 6-7.

### 10.    **Objections/Comments Received to Add Subparagraph 6(i)**

- **Acer America** – Suggests the insertion of a new subparagraph "(i)" to read: "The requirements of this Section 6 shall in no way be interpreted to prevent Producing Party from using, disclosing, and/or reviewing its own information and Discovery Material." D.I. 136 at p. 1.

43

G.    **Paragraph 7**

    1.    Proposed Paragraph 7 provides:

        Any person under the Control of a Party Disclosing Confidential Discovery Material who is shown or given access to Confidential Discovery Material will execute or agree to the terms of the "Acknowledgement of Protective Order" set forth and attached hereto. The Acknowledgements will not be exchanged, but will be maintained and made available to the Court upon the Court's request.

    D.I. 115 at p. 11.

    2.    **Objections/Comments Received**

- **Fry** – Requests that Third Parties be given access to the "Acknowledgements of Protective Order" to ensure that the Third Parties know who has been given access to the "Confidential" documents that they have produced. Accordingly, Fry requests that the last sentence in Paragraph 7 be changed to read: "The Acknowledgements *of Protective Order shall be timely produced to the Producing Party and* will be maintained and made available to the Court upon the Court's request." D.I. 145 at pp. 3-4.

- **Microsoft** – Suggests that the Protective Order include a "Notice to Third Parties, as follows:

       ▪ If Confidential Discovery Material from a Third Party is attached to a sealed court filing (and sealing is required under the proposed Protective Order), the Third Party shall be notified sufficiently in advance of any hearing or proceeding that may lead to unsealing of the filing, including but not limited to any proceeding under Rule 243 of the California Rules of Court, to allow that Third Party to communicate with the court and/or appear if it wants to prevent unsealing of its Confidential Discovery Material.

       ▪ If Confidential Discovery Material from a Third Party is designated or expected to be designated for use at trial, the Third Party shall be notified, shall be afforded an

44

opportunity to communicate with the court regarding any confidentiality concerns, and shall be notified in advance of any hearing or proceeding that may result in the Confidential Discovery Material losing its confidential treatment or becoming part of the public record.

▪ The Third Party should be notified before any Confidential Discovery Material from that Third Party is disclosed to Japan Counsel or Japan Experts/Consultants and should be notified of the status of any protective order or other protection that may be available in the Japan Litigation.

D.I. 141 at pp. 3-4.

• **Microsoft** – Suggests that the Proposed Protective Order be amended to provide that, before any consultant or experts who are employed by or otherwise affiliated with companies that compete with Microsoft or other Third Parties are allowed access to Confidential Discovery Material produced by a Third Party, the identity of the person(s) be disclosed to the producing Third Party and the Third Party be allowed an opportunity to raise any objections with the Court. D.I. 141 at p. 4.

• **Third Party Distributors** – Object to the extent that this paragraph does not require disclosure to the Distributors of the identity of the persons to whom their Confidential Discovery Material is disclosed so that the Distributors can ensure that the material is returned or destroyed at the conclusion of the litigation. The Distributors therefore urge that the language of this paragraph be clarified and expanded to provide that: "The acknowledgements will not be exchanged, but will be maintained by the Party that discloses the Confidential Discovery Material and made available to Third Parties within thirty (30) days of the conclusion of the AMD Litigation, the Japan Litigation, the Class Litigation, and/or the California Class Litigation, whichever comes later, and before that date within ten (10) days to the Producing Party or Court upon request. D.I. 139 at p. 4.

### H.    **Paragraph 8**

1.    Proposed Paragraph 8 provides:

> Any attorney (including In-House Litigation Counsel) for any Party or Class Party who receives any technical document designated Confidential Discovery Material produced by a Party other than his or her client shall not participate in the preparation or prosecution of any patent application or patent license relating to microprocessors or chipsets from the time of receipt of such Information through and including one (1) year following the conclusion of the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation, whichever occurs later.

D.I. 115 at p. 11.

### 2.    **Objections/Comments Received**

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's Confidential Discovery Material to be used in the Japan Litigation. Accordingly, Dell requests that any reference to the "Japan Litigation" be removed from this paragraph. D.I. 143 at p. 6.

- **Egenera** – On the basis that it does not address a minimum time period to be provided for in the event of settlements, Egenera urges that the Protective Order provide limitations on the practice provided therein to be in effect for a period of three years from the date of the entry of the Protective Order, or for the time period otherwise provided, whichever is longer. D.I. 128 at pp. 10-11.

- **Hewlett-Packard** – Objects to the limitation in Paragraph 8 that applies it to only "technical" documents and only to attorneys who participate in patent-related legal activities. HP further objects to the limitation in Paragraph 8 that applies it only to Confidential Discovery Material "produced *by a Party*." HP proposes that the prohibition

46

on certain legal activities be extended beyond just patent actions to include any legal proceeding potentially involving the confidential information, and to afford Third Parties or any Producing Party who produces Confidential Discovery Material the same protection as a Party who produces Confidential Discovery Material.  D.I. 127 at pp. 11-12.

- **Japanese OEMs** – Object to the extent that Paragraph 8 would permit disclosure to more than the two In-House Litigation Counsel referenced in Paragraph 6(c).  They further object that the restrictions of Paragraph 8 are too narrow in that they should include all persons who receive any Confidential Discovery Material and should include all of the activities and the three-year time period included in Definition J and in their objection to Definition J.  D.I. 133 at pp. 17-18.

- **Microsoft** – Requests that Paragraph 8 be expanded as follows:  " 8.  Any attorney (including In-House Litigation Counsel) for any Party or Class Party who receives any technical document designated Confidential Discovery Material Produced by a Party other than his or her client *or by a third party* shall not participate in the *(1)* preparation or prosecution of any patent application or patent license relating to microprocessors to chipsets, *or (2) preparation or prosecution of any application or license for a patent, copyright or other intellectual property right relating to operating systems, applications, tools or other software technologies,* from the time of receipt of such information through and including one (1) year following the conclusion of the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation, whichever occurs last."  D.I. 141 at pp. 2-3.

47

**I.    Paragraph 9**

    1.    Proposed Paragraph 9 provides:

> Confidential Discovery Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.  In no event shall Confidential Discovery Material be stored at any business premises of the Receiving Party, or be made accessible electronically to employees of the Receiving Party, except that In-House Litigation Counsel may view, but not store, Confidential Discovery Material at his or her normal workplace by electronically and remotely accessing a Receiving Party's electronic document repository.  In-House Litigation Counsel must implement and document reasonable precautions to prevent unauthorized persons from accessing or otherwise viewing Confidential Discovery Material.

D.I. 115 at p. 11.

    2.    **Objections/Comments Received**

- **Fry** -- Objects to allowing In-House Litigation Counsel to view its highly confidential sales documents, such as industry-wide purchase agreements and sales information.  Fry argues that such information could greatly harm Fry's and the other Third Parties' ability to negotiate competitive purchase orders and vendor agreements should it be disclosed to the Parties to the lawsuit.  Fry therefore requests that a second "tier" be added to the Protective Order that would shield "highly confidential" information from disclosure to the Parties and their In-House Litigation Counsel.  In the alternative, should the Court refuse the request for a two-tier protective order, Fry requests that In-House Litigation Counsel be precluded from viewing confidential documents in their normal place of business and that they only be granted access to view the documents at their outside counsel's offices.  Finally, to the extent that this Court allows In-House Litigation

48

Counsel to view confidential documents produced by Third Parties, Fry requests that the In-House Litigation Counsel's identity be disclosed to the Third Parties by revising Paragraph 6(c) to read: "To In-House Counsel identified to the opposing party *and any Producing Party*." D.I. 145 at pp. 3-4.

- **Japanese OEMs** – Object to the extent that Paragraph 9 would permit disclosure to more than the two In-House litigation counsel referenced in Paragraph 6 (c). The Japanese OEMs further object to any electronic access to their Confidential Discovery Materials from or through any facility or server of any Party or Non-Party. The Japanese OEMs urge the all electronic access must be separate from the facilities or servers of any Party or Non-Party. D.I. 133 at p. 18.

### J.    Paragraph 10

    1.    Proposed Paragraph 10 provides:

> Upon disclosing Confidential Discovery Material pursuant to paragraphs 6(f) or 6(g), other than to a current employee, director, agent or Rule 30(b)(6) designee of the Producing Party, counsel shall inform the witness of the existence of this Order, the confidential status of the information disclosed, and the restriction that the information not be further disseminated or used for any purpose other than the litigation; and counsel shall request the witness to execute and agree to the terms of the Acknowledgment of Protective Order set forth and attached hereto. No copies of Confidential Discovery Material shall be provided to such witness other than for purposes of the deposition examination without the written consent of the Producing Party. No Confidential Discovery Material shall be shown to a former employee of a party employed by the opposing party, except pursuant to separate written agreement.

D.I. 115 at p. 12.

2.    **Objections/Comments Received**

- **Dell** – Requests three changes to Paragraph 10. First, the first word of Paragraph 10 – "Upon" – should be changed to "Before," like Paragraph 11. Second, if the witness refuses to sign the Acknowledgement of Protective Order, Dell should be given ten days' written notice and have the opportunity to determine whether a former employee is bound by a confidentiality provision in a Dell employment agreement or is otherwise independently bound to keep Dell's information confidential. If the witness has no such obligation, Dell would then have the opportunity to seek relief from the Court regarding whether, and the extent to which, the witness could be provided access to Dell's Confidential Discovery Material. Third, if a former Dell employee or other potential witness is employed by a Dell competitor or other Producing Party, that witness should not be shown Dell Confidential Discovery Material except by separate written agreement. D.I. 143 at pp. 3-5.

- **Hewlett-Packard** – Objects to granting an expert access to Confidential Discovery Material without first identifying the proposed expert to the Producing Party and affording Third Parties an opportunity to object to the expert's access to Confidential Discovery Material. Hewlett-Packard also requests that the Protective Order include a provision prohibiting any expert who is granted access to a Third Party's Confidential Discovery Materials from undertaking any representation or employment or performing any service for an individual or entity that could reasonably be construed as a competitor to a Third Party, for one year after the close of litigation. D.I. 127 at pp. 5-7.

- **IBM** – Objects to granting an Expert or Consultant access to Confidential Discovery Material without first providing notice of their identity to IBM and other Third Parties in

advance of the Experts/Consultants' viewing or otherwise accessing the Confidential Discovery Material of Third Parties. IBM further argues that it and other Third Parties should have an opportunity to object to the viewing or otherwise accessing of these Materials by any of these individuals. Additionally, IBM comments that the last sentence of Paragraph 10 is unclear in that it requires a "separate written agreement" in certain instances, but does not identify who the parties to the "separate written agreement" will be. Additionally, the term "party" in the phrase "former employee of a party" should be capitalized so that it clearly refers to AMD and Intel. D.I. 142 at p. 4.

- **Lenovo** – Objects that the last sentence of Paragraph 10 is unclear in that it requires a "separate written agreement" in certain instances but does not identify who the parties to the "separate written agreement" will be. Also, the term "party" in the phrase "former employee of a party" should be capitalized so that it clearly refers to AMD and Intel. Lenovo also argues that it and other Third Parties should receive notice of the identity of any individuals prior to their viewing or otherwise accessing Third Party Confidential Discovery Materials, and that it and the other Third Parties should have an opportunity to object to the viewing or otherwise accessing of these Materials by any of these individuals. D.I. 144 at p. 4.

- **Third Party Distributors** – Object that this paragraph should be expanded to include those persons listed under Paragraph 6(b) and 6(h). In addition, the Distributors urge that the last sentence be revised to state "No Confidential Discovery Material shall be shown to a former employee of a Producing Party employed by a Party, except pursuant to separate written agreement." D.I. 139 at p. 4.

51

### K.    Paragraph 11

1.    Proposed Paragraph 11 provides:

> Before any Confidential Discovery Material may be disclosed or otherwise provided, directly or indirectly, to an Expert/Consultant (or Japan Expert/Consultant), such person must execute and agree to the terms of the Acknowledgment of Protective Order set forth and attached hereto, and shall:

> (a)    maintain such Confidential Discovery Material in a manner calculated to prevent its public disclosure;

> (b)    return such Confidential Discovery Material to counsel for the Party or Class Party that retained such Expert/Consultant within ninety (90) days of the conclusion of the Expert/Consultant's assignment or retention, but in no event shall the expert retain documents beyond the period set out in paragraph 26 herein;

> (c)    not disclose such Confidential Discovery Material to anyone, or use such Confidential Discovery Material, except as permitted by the Protective Order;

> (d)    submit to the jurisdiction of this Court for purposes of enforcing the Protective Order; and

> (e)    use such Confidential Discovery Material and the information contained therein solely for the purpose of rendering consulting services to a Party or Class Party to the AMD Litigation, the Japan Litigation or the Class Litigation, including providing testimony in any such proceeding.

D.I. 115 at pp. 12-13.

2.    **Objections/Comments Received**

- **Best Buy** – Objects to the reference to both "days" and "court days" throughout the Proposed Protective Order and urges that there by only one type of "day" used throughout.  D.I. 132 at p. 2.

52

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's Confidential Discovery Material to be used in the Japan Litigation. Accordingly, Dell requests that any reference to the "Japan Litigation" be removed from this paragraph. D.I. 143 at p. 6.

- **Hewlett-Packard** – Objects to granting an expert access to Confidential Discovery Material without first identifying the proposed expert to the Producing Party and affording Third Parties an opportunity to object to the expert's access to Confidential Discovery Material. Hewlett-Packard also requests that the Protective Order include a provision prohibiting any expert who is granted access to a Third Party's Confidential Discovery Materials from undertaking any representation or employment or performing any service for an individual or entity that could reasonably be construed as a competitor to a Third Party for one year after the close of litigation. D.I. 127 at pp. 5-7.

- **Japanese OEMs** – Object to inclusion of any State proceeding and of any foreign investigation or proceeding and to disclosure of their Discovery Materials outside the AMD or MDL litigation. The Japanese OEMs also object that the activity restrictions contained in its objections to Definition J should apply, as should the three-year time period. D.I. 133 at p. 19.

## L.    **Paragraph 12**

    1.    Proposed Paragraph 12 provides:

> Confidential Discovery Material shall not be copied or otherwise reproduced except to the extent such copying or reproduction is reasonably necessary for permitted uses, and all such copies or reproductions shall be subject to the terms of this Protective Order. If the duplication process by which copies or reproductions of Confidential

Discovery Material are made does not itself preserve the confidentiality designations that appear on the original documents, all such copies or reproductions shall be appropriately marked with those confidentiality designations.

D.I. 115 at p. 13.

2.    **Objections/Comments Received**

- **Acer America** – Suggests the insertion of the following language at the end of Paragraph 12: "In the event that specific documents are printed out in "hard copy" form from any electronically produced Discovery Material, all such "hard copy" printouts shall be affirmatively marked with the "CONFIDENTIAL – MDL 1717/JCCP 4443" designation, and all uses of such documents shall conform strictly to the terms of this Protective Order." D.I. 136 at p. 1.

- **Best Buy** – Objects that Paragraph 12 does not define what uses constitute the "permitted uses" allowing the copying or reproduction of a Producing Party's Confidential Discovery Material. D.I. 132 at p. 3.

**M.    Paragraph 13**

1.    Proposed Paragraph 13 provides:

This Protective Order shall not apply to the disclosure or use by a Producing Party or its counsel of such Producing Party's Confidential Discovery Material.

D.I. 115 at p. 13.

2.    **Objections/Comments Received**

None received.

N.    **Paragraph 14**

1.    Proposed Paragraph 14 provides:

The parties agree to meet and confer prior to the filing of final exhibit lists to evaluate, on a document by document basis, which of the proposed exhibits require confidential treatment for purposes of trial.  The confidentiality legend may be redacted by the Producing Party prior to trial for any use of the material at trial by any party.

D.I. 115 at p. 13.

2.    **Objections/Comments Received**

- **Dell** – Objects that the Proposed Order provides no protection for a Third Party's Confidential Discovery Material.  Dell requests that the Court require the Parties to give Dell ten days' written notice and to meet and confer with Dell if any of the Parties anticipates using Dell's Confidential Discovery Material at trial or other Court proceeding, by adding language that: "Before the Parties may use Confidential Discovery Material of a Third Party at trial, a hearing, or other open court proceeding, they are required to give the Third Party ten days' written notice." D.I. 143 at p. 2.

- **Hewlett-Packard** – Objects to procedure in Paragraph 14 that permits Parties to remove confidentiality protections from Third Parties' Confidential Discovery Material without consulting Third Parties.  Suggests inclusion of language:  "If after meeting and conferring a Party or Parties wishes to use at trial Confidential Discovery Material produced by a Third Party, and the Third Party Confidential Discovery Material could therefore be subject to less-than-confidential treatment, the Party or Parties shall meet and confer with the Third Party regarding such use before filing its exhibit list.  After meeting and conferring, the Third Party whose Confidential Discovery Material is subject to potential disclosure at trial shall have a reasonable time to file objections with the

55

Court regarding the potential disclosure." D.I. 127 at pp. 13-14.

- **Hitachi** – Suggests that Third Parties receive the same protection as the Parties with regard to the use of Confidential Discovery Material at trial, and urges that Paragraph 14 require the Parties to meet and confer with any Third Party in the event that the Third Party wishes to include the Third Party's Confidential Discovery Material on an exhibit list for trial. D.I. 146 at pp. 2-3.

- **IBM** – Objects to the procedure in Paragraph 14 and urges that it be modified to afford IBM and other Third Parties an opportunity to participate in the process. Specifically, to protect against the disclosure of their Confidential Discovery Material at trial, IBM and other Third Parties should receive prior notice of any potential use at trial of this material and be afforded an opportunity to be heard. D.I. 142 at p. 4.

- **Japanese OEMs** – Object to the extent that Paragraph 14 does not require Parties to inform each Non-Party at least 60 days before any proposed public use of that Non-Party's Confidential Discovery Material or any use of such Materials inconsistent with this Order. D.I. 133 at p. 20.

- **Lenovo** – Objects to the procedure in Paragraph 14 concerning the designation of confidential documents at trial, and argues that this paragraph should be modified to afford Lenovo and other Third Parties an opportunity to participate in the process through prior notice of any potential use at trial of this material, as well as an opportunity to be heard on the matter. D.I. 144 at p. 4.

- **Third Party Distributors** – Comment that a Party wishing to use or disclose a Third Party's Confidential Discovery Material at trial should make a written request to the Third Party pursuant to the provisions of Paragraph 16. D.I. 139 at p. 5.

O.    **Paragraph 15.**

    1.    Proposed Paragraph 15 provides:

> Any Third Party that produces documents or provides testimony in the AMD Litigation, the Class Litigation or the California Class Litigation, either voluntarily or by compulsory process, shall have the full benefits and protections of this Protective Order and may designate documents or deposition testimony as Confidential Discovery Material in the manner, and subject to the same protections, set forth above. Nothing in this Order shall be construed to allow any Third Party to obtain access to any Confidential Discovery Material produced by any Party, Class Party, or other Third Party.

D.I. 115 at pp. 13-14.

    2.    **Objections/Comments Received**

- **Egenera** – Objects that the Proposed Protective Order fails to reserve the rights of Third Parties to object to discovery requests. Egenera requests that Paragraph 15 be modified to read: "Nothing in this Order nor the act of production of Discovery Materials pursuant to its terms shall be deemed to limit the right of a Third Party to object to or otherwise to resist discovery propounded in the AMD Litigation, the Class Litigation, the California Class Litigation, the Japan Litigation or in any other proceeding, whether or not relating to or arising out of the same subject matter. D.I. 128 at p. 11.

- **Japanese OEMs** – Object to inclusion of any State proceedings and of any foreign investigation or proceeding and to disclosure of their Discovery Materials outside the AMD or MDL litigation. The Japanese OEMs also object that the right to enjoy the "full benefits and protections of this Protective Order" should be expressly made without prejudice to a Non-Party's right to object generally to discovery requests/subpoenas served (or purportedly served) upon it, or to a Non-Party's petition that jurisdiction does

not exist over the Non-Party.  The Japanese OEMs "also repeat all other objections."  D.I.

133 at pp. 20-21.


P.     **Paragraph 16**

1.     Proposed Paragraph 16 provides:

The parties anticipate designating all Non-public Discovery
Material as Confidential Discovery Material under
Paragraph 3.  Should a Receiving Party wish to disclose
any such material to a person other than as permitted by
Paragraph 6, it shall make a written Designation Request to
the Producing Party, as set forth below:

(a)     Designation Request: The Receiving Party shall
Identify with specificity *(i.e.,* by document control
numbers, deposition transcript page and line
reference, or other means sufficient to easily locate
such materials) the Discovery Material it intends to
disclose and a representation that the material is
probative of one or more material facts In this
litigation.  A Designation Request will trigger an
obligation on the part of the Producing Party to
make a good faith determination of whether the
Discovery Material is entitled to be treated as
Confidential Discovery Materials under Paragraph
R.  Except in the case of a massive Designation
Request as to which a prompt reply would be
impractical, within ten (10) court days the
Producing Party shall respond in writing to the
Designation Request either agreeing to the
disclosure or designating the material as
Confidential Discovery Material.

(b)     Court Determination: If the Receiving Party
disagrees with a Producing Party's designation of
material as Confidential Discovery Material, it shall
provide to the Producing Party a written objection.
Thereafter, the Producing Party may make written
application to the Court for protective treatment.
Except in the case of disputes involving massive
numbers of documents, the application will be made

58

within ten (10) court days of receiving the Receiving Party's written objection to the designation. If the Producing Party fails to make such timely application, the Producing Party's designation will be void.

(c)    In any proceeding on such an application, the Producing Party will bear the burden to demonstrate that the designated Discovery Material qualifies as Confidential Discovery Material under Paragraph R. No presumption or weight will attach to the initial designation of Discovery Material as Confidential Discovery Material.

(d)    Pending a ruling, the Discovery Material shall continue to be treated as Confidential Discovery Material under the terms of this Protective Order.

(e)    With respect to Discovery Material the Parties agree does not constitute Confidential Discovery Material, or as to which the Producing Party does not file a timely application, or which the Court orders not to be treated as Confidential Discovery Material, within ten (10) days of such agreement or order, the Producing Party shall produce a new version with the confidentiality legend redacted.

(f)    Nothing in this Protective Order shall be deemed to prevent a Producing Party from arguing during the determination process for limits on the use or manner of dissemination of Discovery Material that is found to no longer constitute Confidential Discovery Material.

D.I. 115 at pp. 14-15.

2.    **Objections/Comments Received**

• **Acer America** – Suggests that the phrase "massive Designation Request" in Paragraph 16(a) is vague and should be replaced with language that sets a specific "floor" on the number of documents covered by the Designation Request and, given the burden such requests inherently place on third parties, that the floor be set at 1,000 documents or

more.  D.I. 136 at p. 1.

- **Best Buy** – Objects that Paragraphs 16(a) and 16(e) do not allow sufficient time for a Producing Party to act following either (i) a Receiving Party's Designation Request under Paragraph 16(a) or the agreement or Court order that certain Discovery Material is not Confidential Discovery Material under Paragraph 16(e), and suggests enlargement to a 20 day period.  In this regard, Best Buy also objects to the reference to both "days" and "court days" throughout the Proposed Protective Order and urges that there be only one type of "day" used throughout.  Finally, Best Buy objects that Paragraph 16(b) places too heavy a burden on Producing Parties who have designated material as Confidential Discovery Material, and suggests that it should be Receiving Parties who should make written application to the Court to de-designate material designated by a Producing Party as Confidential Discovery Material.  D.I. 132 at pp. 2-3.

- **Dell** – Objects that it will only have 10 days to respond to a challenge, and requests that the "ten (10) court days" provision of Paragraph 16(a), 16(b), and 16(e) be changed to "thirty (30) calendar days" for challenges to Third-Party designations.  D.I. 143 at pp. 7-8.

- **Egenera** – Objects to the 10-day time frame provided in 16(a), 16(b) and 16(e) and requests that it be amended to allow Third Parties 20 days to respond.

- **Hitachi** – Suggests that Paragraph 16 be amended to (i) require identification of the people to whom a Party would like to disclose Confidential Discovery Material; and (ii) limit subsequent disclosures to those people.  D.I. 146 at p. 3.

- **Japanese OEMs** – Repeat their objections to Definitions R, S, and U and reiterate their jurisdictional objection.  The Japanese OEMs also object (a) that given the breadth of

distribution proposed in this Order, the Parties should not be permitted to propose breaching confidentiality of any Confidential Discovery Material until trial; (b) that the Parties should be required to make a specific and detailed showing to any Producing Party at least 60 days before trial as to why any Confidential Discovery Material of that Non-Party should be used publicly at trial; (c) that such Confidential Discovery Material shall not be used publicly at trial unless and until (i) the Receiving Party, after a meet-and-confer session, files a motion to breach the confidentiality of the Material, which motion shall be served on the producing Non-Party at least 30 days before the hearing of the motion, and (ii) the Court grants the motion after affording the Non-Party the opportunity to be heard orally; and (d) that no Confidential Discovery Material shall be used publicly at trial unless it is non-duplicative admissible evidence that could not have been obtained from any other source. The Japanese OEMs further object to Paragraph 16(d) and 16(e) by stating that the time period should be 30 days and they object to any shorter time period. D.I. 133 at pp. 22-23.

- **Third Party Distributors** – Object that, for subsections 16(a) and 16(b), the term "massive" is undefined and creates ambiguity as to when the response or application is required. For 16(a), the Distributors propose that the Protective Order read: "Within twenty (20) court days the Producing Party shall respond in writing to the Designation Request either agreeing to the disclosure or designating the material as Confidential Discovery Material." For 16(b), the Distributors propose that the Producing Party shall have 30 days after receiving the Receiving Party's written objection to file an application with the Court. D.I. 139 at p. 5.

61

**Q.    Paragraph 17**

1.    Proposed Paragraph 17 provides:

> In the event that any Party or Class Party gains access to Discovery Material of another Party from a Third Party or a U.S., state, or foreign governmental agency or court, the Receiving Party shall promptly notify the Producing Party, in writing.  The Producing Party shall be entitled, and shall be given a reasonable opportunity (not to exceed thirty days following notice) prior to any non-confidential disclosure or use of such materials, to designate, as appropriate, such materials as Confidential Discovery Material pursuant to the terms of this Protective Order.  Such designation shall be subject to the terms set forth in Paragraph 16.  If any such Discovery Material has already been produced and designated as Confidential Discovery Material pursuant to the terms of this Order, then such material shall at all times be governed by the terms of this Protective Order even though also received from a Third Party or a U.S., state or foreign governmental agency or court.  This paragraph shall not apply to materials freely furnished by the Producing Party to a Third Party or a U.S., state, or foreign governmental agency or court without any requested restriction on the recipient's use or disclosure of the materials or without otherwise identifying the confidential nature of the materials. Nor shall it govern the use in connection with the Japanese Litigation of materials produced in that Litigation, which instead will be controlled by the Japanese court.

D.I. 115 at pp. 15-16.

2.    **Objections/Comments Received**

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's Confidential Discovery Material to be used in the Japan Litigation.  Accordingly, Dell requests that any reference to the "Japan Litigation" be removed from this paragraph. D.I. 143 at p. 6.

- **Egenera** – Objects to the provisions of Paragraph 17 because it fails to sufficiently

protect the rights of Third Parties. Egenera further objects that the reference to "Producing Party" in Paragraph 17 is ambiguous and inconsistent with its intended purpose. Egenera urges that Third Parties should be allowed to designate as "Confidential" Discovery Materials received by another Party or Class Party through other sources in the event that the material has not already been properly marked "Confidential." D.I. 128 at pp. 12-13.

- **IBM** – Objects that Paragraph 17 is vague and ambiguous. To the extent the paragraph applies to a Party's receiving materials of a Third Party through another (such as a governmental entity or court), the protections discussed in Paragraph 17 – receiving written notice and being provided an opportunity to designate such material as confidential – should be explicitly extended to the Third Party. IBM additionally urges that the language in Paragraph 17 should make clear that the Protective Order creates no right on behalf of any Party to receive anything it otherwise had no right to receive, nor does it create any right on behalf of any Third Party (including governmental agencies or courts) to disclose anything it could not otherwise disclose. Finally, IBM urges that the second to last sentence of Paragraph 17 be removed on the basis that both the term "freely furnished" is ambiguous and that existing laws and/or regulations limit many Third Parties' abilities to use and disclose materials provided to it, even where there is no requirement that such materials be designated as "confidential". The Protective Order should not expand the existing ability of Third Parties to disclose materials in their possession. D.I. 142 at pp. 4-5.

- **Japanese OEMs** – Object by repeating all their previous objections. They additionally object that Paragraph 17 does not provide adequate confidentiality protection and urge

63

that, with regard to all Confidential Discovery Materials produced by any Non-Party, all Parties should abide by the terms of this Order at all times, in all matters and proceedings, and regardless of any Parties' source of access (including production from other sources) of any Confidential Discovery Material. D.I 133 at p. 13.

• **Lenovo** – Objects that Paragraph 17 is vague and ambiguous. Lenovo argues that, to the extent the paragraph applies to a parties' receipt of materials of a Third Party through another (such as a governmental agency or court), the protections discussed in Paragraph 17 with respect to written notice and an opportunity to designate such materials as confidential should be explicitly extended to the Third Party. Additionally, Lenovo argues that Paragraph 17 should make clear that the Protective Order creates no right on behalf of any Party to receive anything it otherwise had no right to receive, nor does it create any right on behalf of any Third Party (including a governmental agency or court) to disclose anything it could not otherwise disclose. Finally, Lenovo objects that the last sentence of Paragraph 17 should be deleted on the basis that existing laws and/or regulations may limit many Third Parties' ability to use and disclose materials provided to it, even where there is no requirement that such materials be designated as "confidential".; The Protective Order should not expand the existing ability of Third Parties to disclose materials in their possession. D.I. 144 at p. 5.

### R.    Paragraph 18

1.    Proposed Paragraph 18 provides:

> Except as provided in this paragraph, a Party, Class Party or Third Party who is otherwise required in the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation to disclose or produce

documents or other Discovery Material that may contain the Confidential Discovery Material of another Party, Class Party or Third Party ("Originating Party") shall not delay or refuse to do so on grounds that such documents or other Discovery Material are held by the Party, Class Party or Third Party subject to obligations of confidentiality toward the Originating Party. Instead, the Party, Class Party or Third Party from whom discovery is sought shall promptly notify the "Originating Party" in writing of the required disclosure. The Originating Party shall be given a reasonable opportunity (not to exceed thirty days from the date of notice), prior to any production or disclosure of any such Discovery Material, to object to the production and until those objections are resolved, the Discovery Material will not be produced. In the event that such Discovery Material is produced, the Discovery Material produced shall be deemed Confidential Discovery Material pursuant to Paragraph 3 and shall be marked by the Producing Party in accordance with the requirements of Paragraph 4.

D.I. 115 at pp. 16-17.

2.    **Objections/Comments Received**

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's Confidential Discovery Material to be used in the Japan Litigation. Accordingly, Dell requests that any reference to the "Japan Litigation" be removed from this paragraph. D.I. 143 at p. 6.

- **Dell** – Objects to Paragraph 18 because it would require Dell to engage in the burdensome and costly process of a document-by-document analysis to determine whether a responsive document might contain information that AMD or Intel consider to be confidential, give notice to AMD or Intel of the possible production, wait to see if AMD or Intel have objections to the production, and then wait until any objections are resolved. As a non-party to this matter, Dell should not be required to devote the substantial attorney time it would take to resolve confidentiality issues on a document-by-

65

document basis. Dell therefore requests that the first sentence of Paragraph 18 remain in the proposed Order, but that the remainder of that paragraph be deleted. Alternatively, Dell requests that AMD and Intel simply agree that Dell can produce documents without regard to the process set forth in Paragraph 18. D.I. 143 at p. 7.

- **Egenera** – Objects to Paragraph 18 to the extent that it may be interpreted to impose obligations on Egenera beyond the scope of its confidentiality agreements with other entities. Egenera requests that Paragraph 18 provide that a Producing Party may seek permission to produce the confidential materials consistent with the terms of its agreement with or obligation to the Originating Party, or otherwise to provide written notice as provided in Paragraph 18. Egenera also seeks clarification as to the application of the NDA Stipulation to the extent that Paragraph 18 imposes different requirements than does the Stipulation. D.I. 128 at pp. 13-14.

- **Japanese OEMs** – Repeat all of their previous objections and further object to the use of the term "delay." The paragraph expressly contemplates delay. D.I. 133 at p. 25.

- **Third Party Distributors** – Object to any requirement that Third Parties provide notice to any Originating Party that is a Party to one of the actions identified in the Protective Order, since the Parties will presumably receive notice of any Subpoena issued to any Third Party. D.I. 139 at p. 5.

S.    **Paragraph 19**

1.    Proposed Paragraph 19 provides:

> If another court or any US., state or foreign governmental agency should request, subpoena, or order the production of Confidential Discovery Materials from any Party that have been produced by any other Party, the Party receiving such

66

a request shall promptly notify the Producing Party in writing.    Should the Producing Party object to the production, it may seek appropriate relief from the appropriate court or agency, and pending such a request and, if necessary, the entry of an appropriate stay order, the party receiving the request shall not produce the material in dispute so long as it may lawfully refuse.

D.I. 115 at p. 17.

2.    **Objections/Comments Received**

- **Egenera** – Requests that Paragraph 19 provide notice to Third Parties in the event that Confidential Discovery Material is requested or subpoenaed in another action or investigation so that the Third Parties may assert their rights to seek appropriate protection.  D.I. 128 at pp. 12-13.

T.    **Paragraph 20**

1.    Proposed Paragraph 20 provides:

To the extent that discovery properly conducted and permitted in the AMD Litigation, the Class Litigation, or the California Class Litigation is relevant to the issues pending in the Japan Litigation, the Receiving Party may, subject to the terms and limitations of this Protective Order, disclose the Confidential Discovery Material to its Japan Counsel and Japan Experts/Consultants.    Nothing herein shall be deemed to create an independent discovery right for purposes of the Japan Litigation, nor limit the rights of a Party or Class Party to object to discovery propounded in the AMD Litigation, the Class Litigation, the Japan Litigation, or the California Class Litigation.

D.I. 115 at p. 17.

2.    **Objections/Comments Received**

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's Confidential Discovery Material to be used in the Japan Litigation.  Accordingly, Dell

67

requests that this paragraph be deleted. D.I. 143 at p. 6.

- **Egenera** – Objects that the Proposed Protective Order would allow disclosure of its Discovery Material beyond this Court's jurisdiction and in matters in which Egenera has not been and is not expected to be subject to third party discovery. First, Egenera argues that it has not submitted to the jurisdiction of the California or the Japanese courts, and that the provision in 6(d) for automatic use of its Discovery Material in those courts is beyond this Court's authority to order. Additionally, Egenera argues that because it does not manufacture computers for personal use, its Discovery Material are not relevant to the Class Litigation and the California Class Litigation. D.I. 128 at pp. 6-7.

- **Egenera** – Objects that the Proposed Protective Order fails to reserve the rights of Third Parties to object to discovery requests. D.I. 128 at p. 11.

- **Japanese OEMs** – Object to inclusion of any State Proceedings and of any foreign investigations or proceedings and to disclosure of their Discovery Materials outside the AMD or MDL litigation. The Japanese OEMs also object specifically to the disclosure referenced in Paragraph 20 and repeat their objection to Paragraph 17. D.I. 133 at p. 26.

## U.    Paragraph 21

1.    Proposed Paragraph 21 provides:

> In the event that any Confidential Discovery Material is also made available for use in the Japan Litigation (as contemplated by this Order), the material shall remain subject to all terms of this Protective Order and the Party desiring to use or file papers containing such information shall identify it to the appropriate Japanese Court as Confidential, inform the Japanese Court that the information is subject to the terms of this Protective Order entered by this Court, furnish a copy of the Protective Order to the Japanese Court, and request that the Japanese

Court or other authority respect the terms of this Protective
Order and maintain the confidentiality of the material so
produced.

D.I. 115 at pp. 17-18.

2.    **Objections/Comments Received**

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's
  Confidential Discovery Material to be used in the Japan Litigation. Accordingly, Dell
  requests that this paragraph be deleted. D.I. 143 at p. 6.

- **Egenera** – Objects that the Proposed Protective Order would allow disclosure of its
  Discovery Material beyond this Court's jurisdiction and in matters in which Egenera has
  not been and is not expected to be subject to third party discovery. First, Egenera argues
  that it has not submitted to the jurisdiction of the California or the Japanese courts, and
  that the provision in 6(d) for automatic use of its Discovery Material in those courts is
  beyond this Court's authority to order. Additionally, Egenera argues that because it does
  not manufacture computers for personal use, its Discovery Materials are not relevant to
  the Class Litigation and the California Class Litigation. D.I. 128 at pp. 6-7.

- **Japanese OEMs** – Object to inclusion of any State Proceedings and of any foreign
  investigations or proceedings and to disclosure of their Discovery Materials outside the
  AMD or MDL litigation. The Japanese OEMs also object specifically to the disclosure
  referenced in Paragraph 20 and repeat their objection to Paragraph 17. D.I. 133 at p. 26.

V.    **Paragraph 22**

1.    Proposed Paragraph 22 provides:

Prior to accessing Confidential Discovery Material (other
than Discovery Material produced in the Japanese

69

> Litigation), Japan Counsel and Japan Experts/Consultants
> shall separately execute a copy of the Acknowledgment of
> Protective Order attached hereto, binding each of them to
> the terms set forth therein and in this Protective Order.
> Such Japan Counsel and Japan Experts/Consultants agree
> to submit to the jurisdiction of the United States District
> Court for the District of Delaware for the purpose of having
> the terms of the Protective Order enforced.

D.I. 115 at p. 18.

### 2.    **Objections/Comments Received**

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's Confidential Discovery Material to be used in the Japan litigation. Accordingly, Dell requests that this paragraph be deleted. D.I. 143 at p. 6.

- **Egenera** – Objects that the Proposed Protective Order would allow disclosure of its Discovery Material beyond this Court's jurisdiction and in matters in which Egenera has not been and is not expected to be subject to third party discovery. First, Egenera argues that it has not submitted to the jurisdiction of the California or the Japanese courts, and that the provision in 6(d) for automatic use of its Discovery Material in those courts is beyond this Court's authority to order. Additionally, Egenera argues that because it does not manufacture computers for personal use, its Discovery Material are not relevant to the Class Litigation and the California Class Litigation. D.I. 128 at pp. 6-7.

- **Japanese OEMs** – Object to inclusion of any State Proceedings and of any foreign investigations or proceedings and to disclosure of their Discovery Materials outside the AMD or MDL litigation. The Japanese OEMs also object specifically to the disclosure referenced in Paragraph 20 and repeat their objection to Paragraph 17. D.I. 133 at p. 27.

70

**W.**    **Paragraph 23**

1.    Proposed Paragraph 23 provides:

In the event that any Confidential Discovery Material is contained in any pleading, motion, exhibit, or other paper (collectively "papers") filed or to be filed with the Clerk of the Court, the Clerk shall be so informed by the Party or Class Party filing such papers, and the Clerk shall keep such papers under seal until further order of the Court; provided, however, that such papers shall be furnished to the Court and Outside Counsel of the Parties. A Party submitting Confidential Discovery Material to the Santa Clara Superior Court in the California Class Litigation under seal shall comply with the requirements of California Rule of Court 243.2.

D.I. 115 at p. 18.

2.    **Objections/Comments Received**

- **Japanese OEMs** – Object to inclusion of any State proceedings and to disclosure of their

  Discovery Materials outside the AMD or MDL litigation. D.I. 133 at p. 27.

**X.**    **Paragraph 24**

1.    Proposed Paragraph 24 provides:

Information filed under seal shall be placed in sealed envelopes on which shall be written the title to this action, the words "FILED UNDER SEAL," and a statement substantially in the following form:

"This envelope is sealed pursuant to order of this Court and contains confidential information filed in this case by [name of party) and is not to be opened or the contents thereof to be displayed or revealed except by order of the Court."

D.I. 115 at p. 18.

2.    **Objections/Comments Received**

None received.

Y.    **Paragraph 25**

1.    Proposed Paragraph 25 provides:

> Parties shall produce and file redacted versions of any papers in the District Court actions in accordance with the "Administrative Procedures Governing Filing and Service by Electronic Means" as issued by the United States District Court for the District of Delaware, such that there is no disclosure of any Confidential Discovery Material, or in accord with the rules of the Santa Clara Superior Court in the case of Confidential Discovery Material filed with that Court.

D.I. 115 at pp. 18-19.

2.    **Objections/Comments Received**

- **Japanese OEMs** – Object to inclusion of any State Proceedings and to disclosure of their Discovery Materials outside the AMD or MDL litigation.  D.I. 133 at p. 28.

Z.    **Paragraph 26**

1.    Proposed Paragraph 26 provides:

> Within one hundred twenty (120) days of the conclusion of the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation, whichever occurs later, counsel for any Party or Class Party that has received Discovery Material shall return to the Producing Party, or destroy, all originals and copies of all documents and all notes, memoranda, or other papers containing Confidential Discovery Material, including any and all Confidential Discovery Material disseminated pursuant to the terms of this Protective Order.  Notwithstanding this provision, Outside Counsel are entitled to retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product prepared or received in connection with the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation, even if such materials contain

72

protected material. Any such archival copies that contain
or constitute protected material shall remain subject to this
Order.

D.I. 115 at p. 19.

### 2. **Objections/Comments Received**

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's
  Confidential Discovery Material to be used in the Japan Litigation. Accordingly, Dell
  requests that any reference to the "Japan Litigation" be removed from this paragraph.
  D.I. 143 at p. 6.

- **Egenera** – Proposes that the Protective Order be clarified by defining the term
  "conclusion of the litigation" and that the Court's continuing jurisdiction to enforce the
  Protective Order be made express. D.I. 128 at p. 15.

- **IBM** – Objects to the provisions of this paragraph concerning the disposal of
  Confidential Discovery Material upon the conclusion of applicable litigation matters, and
  argues that it should be modified so that disposal obligations become effective on a case-
  by-case basis (i.e., becoming effective at the conclusion of each litigation matter, not
  "whichever occurs later"). D.I. 142 at p. 5.

- **Japanese OEMs** – Object to inclusion of any State Proceedings and of any foreign
  investigations or proceedings and to disclosure of their Discovery Materials outside the
  AMD or MDL litigation. The Japanese OEMs also object specifically to the disclosure
  referenced in Paragraph 20 and repeat their objection to Paragraph 17. D.I. 133 at pp. 28-
  29.

- **Lenovo** – Comments that the disposal of Confidential Discovery Material under
  Paragraph 26 should be modified so that disposal obligations become effective on a case-

by-case basis so that they become effective at the conclusion of each litigation matter, not "whichever occurs later".  D.I. 144 at p. 5.


AA.    **Paragraph 27**

    1.    Proposed Paragraph 27 provides:

> Counsel of record shall certify their compliance with the terms of this paragraph and, not more than one hundred and twenty (120) days after the conclusion of the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation, whichever comes later, shall deliver the same to counsel for the Producing Party.

D.I. 115 at p. 19.

    2.    **Objections/Comments Received**

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's Confidential Discovery Material to be used in the Japan Litigation.  Accordingly, Dell requests that any reference to the "Japan Litigation" be removed from this paragraph.  D.I. 143 at p. 6.

- **Japanese OEMs** – Object to inclusion of any State Proceedings and of any foreign investigations or proceedings and to disclosure of their Discovery Materials outside the AMD or MDL litigation.  The Japanese OEMs also object specifically to the disclosure referenced in Paragraph 20 and repeat their objection to Paragraph 17.  D.I. 133 at p. 29.

- **Third Party Distributors** – Note that the first line contains an incorrect reference to "this paragraph."  The Distributors urge that the sentence read: "Counsel of record shall certify their compliance with the terms of Paragraph 26 and, not more than one hundred and twenty (120) days after the conclusion of the AMD Litigation . . . "  D.I. 139 at p. 5.

74

BB.    **Paragraph 28**

    1.    Proposed Paragraph 28 provides:

> The provisions of this Protective Order, insofar as they restrict the communication and use of Confidential Discovery Material by any Party, Class Party, counsel, or expert witness shall, without written permission of the Producing Party or further order of the Court, continue to be binding after the conclusion of the AMD Litigation, the Japan Litigation, the Class Litigation, and the California Class Litigation.

D.I. 115 at pp. 19-20.

    2.    **Objections/Comments Received**

- **Dell** – Objects to any provision of the Proposed Order that would allow Dell's Confidential Discovery Material to be used in the Japan Litigation. Accordingly, Dell requests that any reference to the "Japan Litigation" be removed from this paragraph. D.I. 143 at p. 6.

- **Egenera** – Proposes that the Protective Order be clarified by defining the term "conclusion of the litigation" and that the Court's continuing jurisdiction to enforce the Protective Order be made express. D.I. 128 at p. 15.

- **Japanese OEMs** – Object to inclusion of any State Proceedings and of any foreign investigations or proceedings and to disclosure of their Discovery Materials outside the AMD or MDL litigation. The Japanese OEMs also object specifically to the disclosure referenced in Paragraph 20 and repeat their objection to Paragraph 17. D.I. 133 at p. 29.

CC.    **Paragraph 29**

    1.    Proposed Paragraph 29 provides:

> The Parties agree that any disclosure of Confidential

75

> Discovery Material contrary to the terms of this Order by a Party or Class Party or anyone acting on its, his or her behalf constitutes a violation of the Order remediable by the Court, regardless of where the disclosure occurs. However, the Santa Clara, California Superior Court shall have enforcement responsibility for any impermissible disclosure by plaintiffs, plaintiffs' witnesses, plaintiffs' counsel and employees, or any other person given access to Confidential Discovery Material by the plaintiffs in the California Class Litigation.

D.I. 115 at p. 20.

### 2.    **Objections/Comments Received**

- **Japanese OEMs** – Object to inclusion of any State Proceedings and to disclosure of their Discovery Materials outside the AMD or MDL litigation. D.I. 133 at pp. 29-30.

### DD.    **Paragraph 30**

1.    Proposed Paragraph 30 provides:

> Nothing contained in this Protective Order shall diminish any attorney-client privilege or attorney work product claim, or obligate any person to provide any discovery to which it asserts objections. Entry of the foregoing Protective Order is without prejudice to the right of the Parties to apply for further protective orders regarding certain categories of information, or for modification of any provision of this Protective Order.

D.I. 115 at p. 20.

### 2.    **Objections/Comments Received**

- **IBM** – Objects to this paragraph unless it is modified to provide IBM and other Third Parties with the right to apply for further protective orders, or for a modification of the Protective Order, as appropriate. D.I. 142 at p. 5.

- **Japanese OEMs** – Object to the exclusion of Non-Parties from the second sentence of

Paragraph 30. The Japanese OEMs further object to the exclusion from the protection of this paragraph (a) work product that is not attorney work product; (b) any other privilege or protection recognized by the Court; and (c) the right of Non-Parties to apply for protective orders. D.I. 133 at p. 30.

- **Lenovo** – Suggests that Paragraph 30 be modified to provide Lenovo and other Third Parties with the same right to apply for further protective orders, or for modification of the Protective Order. D.I. 144 at p. 5.

### EE.   Paragraph 31

   1.   Proposed Paragraph 31 provides:

> The production or disclosure of any Discovery Material made after the entry of this Protective Order, which disclosure a Producing Party claims was inadvertent and should not have been produced or disclosed because of a privilege, will not be deemed to be a waiver of any privilege to which the Producing Party would have been entitled had the privileged Discovery Material not inadvertently been produced or disclosed.

   D.I. 115 at p. 20.

   2.   **Objections/Comments Received**

- **Egenera** – Proposes that the Protective Order provide a remedy for inadvertent failure to mark Confidential Discovery Material pursuant to the terms of the Protective Order. Given the enormous volume of documents expected to be produced in these cases Egenera suggests that the Producing Party be permitted to notify the Receiving Party in writing within a reasonable time of its discovery that it has failed to mark Confidential Materials. Upon receipt of such notice "the Receiving Party shall return all copies of such material to the Producing Party to allow the materials to be appropriately marked,

77

and the failure to mark such Confidential Discovery Materials shall not be deemed to be a waiver of the confidential status of the material." D.I. 128 at pp. 15-16.

- **Japanese OEMs** – Object to the extent that the protection provided by this paragraph (a) does not extend to all production of documents related in any way to the AMD or MDL litigation; (b) does not clearly extend to protections such as the work product doctrine; and (c) does not require immediate return of all inadvertently produced documents without copying and with destruction of any copies all ready made. D.I. 133 at pp. 30-31.

### Parties' Responses to Objections/Comments

Following the filing of the Third Party Objections, AMD and Intel filed their respective responses and objections to the Third Party Objections. D.I. 148-49. The Parties' responses addressed some, but not all, of the Third Party Objections by voluntary revisions to certain language of the Proposed Protective Order. The Parties, however, were not in complete agreement with respect to the extent to which the Third Party Objections should be accommodated, as well as with respect to the wording of the revisions to effect certain of the accommodations. This resulted in competing versions of the Proposed Protective Order pending approval before the Court, as well as outstanding issues with respect to those objections raised by the Third Parties that went largely unaddressed. With the Court's agreement, the Special Master scheduled a hearing on the terms of the Proposed Protective Order and directed the parties to provide appropriate notice to the Third Parties of the hearing.

### Hearing re: Proposed Protective Order

On June 9, 2005, prior to the scheduled hearing, the Parties distributed to the Third Parties a revised version of the Proposed Protective Order identifying the changes the parties

78

were willing to make to accommodate certain of the objections posed by the Third Parties, to better allow the scheduled hearing to focus on the provisions remaining in contention.

On June 12, 2006, the Special Master conducted a hearing at which the parties and Third Parties were afforded an opportunity to be heard with respect to those provisions of the Proposed Protective Order still in dispute. *See* D.I. 143 (Transcript of June 12, 2006 Hearing, docketed in 05-1717). For the sake of efficiency, the Third Parties agreed – without waiving the objections they had previously submitted in written form – to allow counsel for one Third Party to speak as a representative for all Third Parties with respect to issues on which they shared similar views. *Id.* at 44:10-46:12.

At the hearing, the major issue in dispute was whether discovery materials obtained through the captioned litigations before this Court – especially Confidential Discovery Materials – can be used for purposes of the Japan Litigation and the California Class Litigation. The Parties and Third Parties also represented that Definitions J, R, S and U of the "Definitions" section of the Proposed Protective Order contained provisions still in dispute. They also identified Paragraphs 1, 4, 5, 6, 7, 8, 10, 14, 15, 16 and 31 of the "Terms and Conditions" section as containing provisions still in dispute.

During the course of the hearing, the remaining disputes were either (a) resolved by revisions agreed to by both the Parties and the Third Parties; (b) resolved by determinations reached by the Special Master; or (c) taken under advisement for further consideration and recommendation by the Special Master.

## I.  Agreed Upon Revisions

At the hearing, the Parties and Third Parties agreed to the following revisions as sufficient to address certain of the Third Party Objections. The Special Master also concludes

79

that each is acceptable as proposed and/or revised.

### A.     Proposed Definition V (new)

The original Protective Order contained references to both "days" and "court days". Several parties objected on the basis that, because both terms appeared to them to be used interchangeably, there was the possibility of confusion in how to count "days". To address these objections, the Parties proposed a revision to the original Proposed Protective Order that would insert a new definition, designated as Definition V, as follows:

> V.  Time periods prescribed by this order shall be computed in accord with Federal Rule of Civil Procedure 6(a).

### B.     Paragraph 5 (revised)

The Third Parties objected to the original version of proposed Paragraph 5 to the extent it would permit those attending a deposition to agree that the deposition testimony could be treated as non-confidential. Because Third Parties do not expect to attend the depositions in these cases, they do not want others to be able to simply agree that the Third Parties' confidential information can be treated as non-confidential. Prior to the hearing, the Parties were in agreement that they would revise Paragraph 5 to address the Third Party Objections, but had differing views with respect to the language of the proposed revision. At the hearing, the Parties and Third Parties agreed to consensually revolve the outstanding differences, and have subsequently proposed the following language:

> To facilitate discovery, all deposition testimony will be presumed to constitute, and all transcripts shall be treated as, Confidential Discovery Material, unless and until a Designation Request is made by a Receiving Party under Paragraph 16. Accordingly, no deponent may refuse to answer a deposition question on the ground that the answer would disclose confidential information or information subject to a non-disclosure agreement. Should a Receiving Party wish to disclose any deposition testimony to a person other than as permitted by Paragraph 6, it shall first make a

> Designation Request under the provisions of Paragraph 16. Such a request shall be made to the Party and/or Non-Party it reasonably concludes has the right to protect the information. The provisions of Paragraph 16 shall thereafter apply. This paragraph will not restrict use of deposition testimony regarding witness background information or other information that could not reasonably be claimed to be Confidential Discovery Material by anyone.

Based upon the representation that the Parties and Third Parties agreed to this revised language, the Special Master concludes that the revision is acceptable and recommends that Paragraph 5 of the Protective Order should be reworded as proposed.

### C.    Paragraphs 6(b) and 11 (revised)

Paragraph 6(b) and 11 address disclosure of Confidential Discovery Materials to Experts/Consultants. The Third Parties objected to the original language of these paragraphs on the basis that it would permit disclosure of their Confidential Discovery Materials to such professionals, without notification to the Third Parties. As argued by the Third Parties:

> The technology world is small and getting smaller every day. And who the parties are selecting, and my guess is there's going to be quite a number of experts and consultants in this case, and who they're using may very well be relevant to the non-parties in the context of the ordinary course of their business . . . [T]here is clearly a legitimate business interest for the non-parties to know who's getting access to their incredibly sensitive information.

D.I. 143 at 88:12-89:6.

The Parties initially argued against the change sought by the Third Parties "simply because there's going to be a lot of experts, a lot of consultants. Many of them are non-testimonial. And both Intel and AMD view that as work product that we wouldn't, in the ordinary course, be disclosing to anybody, nor would we have any obligation to do so." D.I. 143 at 89:13-20. The Parties, however, went on to offer that they would be willing to accommodate the Third Parties' concerns in the spirit of compromise, and agreed to work with the Third Parties

81

to come up with mutually acceptable language.

Following the hearing, by submission dated June 15, 2006, the Parties agreed to revise

the concluding paragraph of Paragraph 11 to add the following language:

> Except with the consent of the Producing Party, however,
> Confidential Discovery Material shall not be disclosed to an expert
> or consultant who at the time of the intended disclosure is an
> officer or employee of a party.    The Acknowledgement of
> Protective Order signed and executed by a Party's or Class Party's
> Expert/Consultant [    ] shall be made available to Third Parties
> whose confidential Discovery Material is disclosed to that
> Expert/Consultant, under the express agreement that such Third
> Parties    maintain    the    information    contained    in    the
> Acknowledgement in absolute confidence.

Based upon this record, the Special Master concludes that Paragraphs 6(b) and 11 of the

Proposed Protective Order, including certain of the proposed revisions agreed to by both the

Parties and the Third Parties, is acceptable and recommends that the proposed revision to

Paragraph 11 should be reworded as set forth above.

### D.    Paragraph 14 (revised)

Paragraph 14 addresses the use of Confidential Discovery Materials at trial.  Prior to the

June 12, 2006 Hearing, the Parties agreed to revise Paragraph 14 to read as follows:

> The Parties agree to meet and confer prior to the filing of final
> exhibit lists to evaluate, on a document by document basis, which
> of the proposed exhibits require confidential treatment for purposes
> of trial.    The confidentiality legend may be redacted by the
> Producing Party prior to trial for any use of the material at trial by
> any Party or Class Party.  The Parties further agree to meet and
> confer with any Third Party whose documents will or may be used
> at trial concerning their appropriate treatment and to afford such
> Third Parties sufficient advance notice of any such use such that
> they can move to have the materials placed under seal.  Should any
> material furnished by a Third Party and received under seal be the
> subject of a motion to unseal, the Parties shall give sufficient
> notice to the Third Party so that it may oppose the motion.

At the hearing, the Third Parties objected on the basis that (i) the proposed language

addresses use at trial and the Third Parties believe it should address use at any hearing as well; and (ii) the language as proposed does not address certain procedures unique to California, in the event that the Proposed Protective Order permits use of confidential information for purposes of the California Class Litigation. D.I. 143 at 142:7-146:2.

In response, the Parties explained that disclosure of Confidential Discovery Materials at a hearing is not a permitted use under the Proposed Protective Order. D.I. 143 at 144:5-16. The Third Parties accepted that representation as sufficient to address their concerns. *Id.* at 144:17-18. The Parties also agreed to work with the Third Parties to develop language to address certain procedural aspects that are unique to filings under seal in the California state courts. Following the hearing, the Parties proposed that the following language be added to Paragraph 14:

> In the event that any Party or Class Party files any Third Party Confidential Discovery Material conditionally under seal in the California Class Litigation, that Party or Class Party shall provide notice to the Third Party before or at the time that the material is filed conditionally under seal so that the Third Party has sufficient time to file a motion to maintain the material under seal.

Given the Special Master's recommendation that reference to the California Class Litigation should be stricken from the Protective Order, as discussed *infra* at pages 110 to 117, the Special Master recommends that Paragraph 14 shall be worded instead as follows:

> The Parties agree to meet and confer prior to the filing of final exhibit lists to evaluate, on a document by document basis, which of the proposed exhibits require confidential treatment for purposes of trial. The confidentiality legend may be redacted by the Producing Party prior to trial for any use of the material at trial by any Party or Class Party. The Parties further agree to meet and confer with any Third Party whose documents will or may be used at trial concerning their appropriate treatment and to afford such Third Parties sufficient advance notice of any such use such that they can move to have the materials received under seal. Should any material furnished by a Third Party and received under seal be the subject of a motion to unseal, the Parties shall give sufficient notice to the Third Party so that it may oppose the motion.

### E.    Proposed Paragraph 19 (new)

To address Third Party Objections questioning the interplay between the Proposed

Protective Order and non-disclosure agreements previously negotiated between certain of the

Parties and Third Parties, the Parties propose the addition of a new Paragraph 19 (that will result

in renumbering existing paragraphs), as follows:

> The production of documents designated as Confidential
> Discovery Material pursuant to this Protective Order by a Third
> Party in the AMD Litigation [or] the Class Litigation [ ] shall not
> constitute a violation of the confidentiality provisions of any
> nondisclosure agreement ("NDA") between any party and AMD or
> Intel. However, such Third Party may consult in a timely fashion,
> with AMD and/or Intel about the nature of the materials to be
> produced in advance of their production for the purpose of
> ensuring that the confidential materials are adequately protected
> from public disclosure.

The Special Master concludes that certain of the proposed additional language is

acceptable, and recommends that it be added to the Protective Order in the form set forth above.

### F.    Paragraph 31 (revised)

Paragraph 31 is intended to make clear that the Protective Order does not diminish the

right of any person to assert attorney-client or work product privilege in responding to discovery.

Additionally, Paragraph 31 clarifies that any Party or any Third Party may move for modification

of the Protective Order for good cause shown.

The Third Parties objected to the proposed language on the basis that Paragraph 31 may

be viewed to "limit privileges that the non-parties can assert." D.I. 143 at 221:15-16. They also

queried why a "good cause" standard was included in this Paragraph. *Id.* at 221:18-222:7.

In response, the Parties explained that the "good cause" standard applies only to motions

for relief from the Protective Order – representing that to be the applicable standard under case

law – and that "good cause" is not intended as a gloss on whether a Party or Third Party may

84

assert any applicable privilege. D.I. 281 at 224:13-225:2. The Parties also agreed to modify the

language of proposed Paragraph 31 to read as follows:

> Nothing contained in this Protective Order shall diminish any
> attorney-client privilege, attorney work product claim, or any other
> applicable privilege, or obligate any person to provide any
> discovery to which it asserts objections. Entry of the forgoing
> Protective Order is without prejudice to the right of the Parties or
> any Third Party for good cause shown, to move for modification of
> this Protective Order, or to apply for other protective orders
> unrelated to the confidentiality of Discovery Material.

The Third Parties agree that the proposed revision addresses their concerns, and the

Special Master recommends that Paragraph 31, as so revised, be included in the Protective

Order.

### G. Proposed Paragraph 32 (new)

To address Third Party comments concerning the inadvertent disclosure of confidential

information, the Parties propose adding the following new paragraph:

> 32. In the event that a Producing Party discovers that it has failed
> to mark Confidential Discovery Material as required by Paragraphs
> 4 and 5, it may notify in writing the Receiving Party within a
> reasonable time of such discovery. So long as the unmarked
> Discovery Material has not already been disclosed to persons other
> than as permitted by Paragraph 6 such that it has entered the public
> domain, the failure to mark such Confidential Discovery Materials
> shall not be deemed to be a waiver of the confidential status of the
> materials, and the Receiving Party shall return all copies of such
> material to the Producing Party to allow the materials to be
> appropriately marked.

Based upon the Parties' and Third Parties' agreement with this language, the Special

Master recommends that it be included in the Protective Order.

### II. Determinations by Special Master

At the hearing, the Special Master made certain determinations with respect to the

following provisions as to which the Parties and Third Parties were unable to reach agreement.

- **Definition J** – The revisions proposed by the Parties to address Third Party Objections

resulted in the following revisions to the proposed language for Definition J:

> "In-House Litigation Counsel" means any attorney who is an
> employee in the legal department of a Party whose responsibilities
> consist of overseeing the AMD Litigation [or] the Class Litigation
> and who shall not from the date of entry of this Protective Order
> **through a period of one (1) year** following the conclusion of the
> AMD Litigation [or] the Class Litigation, [ ] whichever occurs
> later, be engaged in: (a) the review and approval of competitive
> pricing or marketing programs; (b) the review of any aspect of
> microprocessor or chipset manufacturing, (c) the filing or
> prosecution of patent applications, (d) the review or negotiation of
> any contract with a Producing Party related to the sale or
> marketing of microprocessors, (e) counseling in connection with
> PC or server manufacturing or operating system or software design
> or development, and (f) the licensing of Microsoft software or
> technology.

The Third Parties were generally in agreement with the proposed changes, except that certain of

the Third Parties argued that the one-year preclusion period referenced in Definition J should be

extended to three years. D.I. 143 at 24:1-22:15.

In response, the Parties argued that they have voluntarily limited the in-house lawyers

who would receive access to the Third Parties' discovery materials to two lawyers at Intel and

two lawyers at AMD. D.I. 143 at 24:15-17. Additionally, the Parties have agreed to revise

Paragraph 6(c) of the Proposed Protective Order to require notice to the Producing Parties of the

identity of the in-house lawyers who will have access to the discovery materials. *Id.* at 24:18-24.

The Parties also agreed to broaden the scope of the preclusion applicable to in-house counsel by

adding the provisions of (d) through (f) to meet the concerns raised by Third Parties. *Id.* at 25:3-

14.

The Parties, however, are unwilling to extend the preclusion period from one year to

three years based on their view that the preclusion will likely be in effect for a period far in

excess of one year. The Parties argue that any further extension of the preclusion period might have a detrimental effect upon the ability of the in-house lawyers to later obtain other employment:

> [I]f any third party here were to produce their documents this year, whoever the in-house lawyer is who's going to be precluded is going to be precluded for one year after, not the production of the documents, but after the completion of all of these litigations, which I think, as we sit here today, you're looking at years down the road. And so assuming the documents were even prepared last year or the year before, Your Honor, you could have five, six, seven years or a lot longer on some of these documents that separates the time from which the in-house counsel can be back involved in business. And, quite frankly, we believe that it is adequate protection when balanced, and more than adequate when balanced against the fact that if we wipe out some of these in-house lawyers for three years after this is finally over, we may be taking away the career or employment of some of these people.

D.I. 143 at 25:23-26:19. Finally, the Parties argue that the restrictions imposed by the Protective Order, together with ethical restrictions, effectively prohibit in-house counsel from using confidential information for a period of not only one year, but that the "prohibition is lifetime." *Id*. at 27:6-28:16.

Based upon this record, the Special Master concludes that Definition J of the Proposed Protective Order, including certain of the proposed revisions agreed to by both the Parties and the Third Parties, is acceptable in the form set forth above, *supra* at page 86.

- **Definition U** – The Revisions proposed by the Parties to address Third Party Objections resulted in the following revisions to the proposed language for Definition U:

> "Non-public" documents and information are those (a) that the Producing Party maintains internally as confidential, (b) that are not disclosed to third-parties except under written agreements requiring that they be maintained in confidence, pursuant to a course of dealing whereby such communications are maintained in confidence, or under compulsory process or involuntary seizure, and (c) that the disclosure of which could damage the Producing

Party competitively.

The Third Parties were in agreement with the proposed change to subparagraph (b) but argued that the provision in subparagraph (c) – "that the disclosure of which could damage the Producing Party competitively" – is an unnecessarily restrictive definition of "non-public":

> [W]e think it's an unnecessarily restrictive definition with respect to non-parties. If the parties themselves want to use this definition that's one thing. But to have this definition applied to non-parties, we think is inappropriate.
>
> A non-public document is a document not generally available to the public. That's a definition that we've proposed in the objections. That's a definition in the real world. That's a definition for non-parties that should be applicable in the Court.
>
> * * *
>
> We do not think that the change that the parties have provided to this definition is adequate to address this concern. It seems to even add in the subpart C an additional definition or gloss on the – on the definitions that we've already talked about in R16 for the serious and specific harm.
>
> * * *
>
> [T]he non-parties object to the extent that the definition of non-public means anything other than "not available to the general public".

D.I. 148:10-150:16.

In response, the Parties explained that "confidential embodies something more than just not accessible by members of the public . . . seems to us the definition here of confidential should be confidential in the sense in which it's ordinarily applied. And that means the party has taken certain steps to preserve its non-public nature." D.I. 143 at 151:16-152:3. The Parties state that, under Definition R(1) through (7), confidential treatment would be afforded to information that the Third Parties may share with their customers. Although such information is not shared with the general public, the Parties argue that such information would not be

confidential. *Id.* at 151:5-15.  Counsel for Intel also noted that there should be one definition for "non-public" under the Proposed Protective Order, and not separate definitions that could be applicable to information maintained by both the Parties and Third Parties. *Id.* at 153:13-20.

At the hearing, the Special Master concluded that the inclusion of subparagraph (c) adds a gloss that restricts the usual definition of "non-public" and, therefore, that subparagraph (c) should be stricken from Definition U.  D.I. 143 at 154:18-23 and 156:14-15.

Following the hearing, the Parties submitted a revised form of Proposed Protective Order on June 15, 2006.  Contrary to the Special Master's instruction at the hearing, the Parties deleted subparagraph (c) but added the following sentence to the end of Definition U:  "In any event, 'Non-public' documents are those, the disclosure of which could damage the Producing Party competitively."  The Special Master concludes this proposed revision is contrary to his determination at the hearing and, therefore, recommends that the last inserted sentence be stricken.

Accordingly, the Special Master recommends that Definition U be worded as follows:

> "Non-Public" documents and information are those (a) that the Producing Party maintains internally as confidential, and/or (b) that are not disclosed to third-parties except under written agreements requiring that they be maintained in confidence, pursuant to a course of dealing whereby such communications are maintained in confidence, or under compulsory process or involuntary seizure.

* **Paragraph 1** – Paragraph 1 restricts the Parties' use of Confidential Discovery Material to certain litigations.  The Third Parties identified their objections as (a) objections to the inclusion of the Japan Litigation; (b) objections to the inclusion of the California Class Litigation and other state litigations and/or investigations; and (c) the inclusion of the last sentence of Paragraph 1 in the Proposed Protective Order.  The Special Master addresses the issues identified

89

as 1(a)-(b) *infra* at pages 110-117 the discussion of whether Confidential Discovery Materials may also be used for purposes of the Japan Litigation, the California Class Litigation, and other litigations and/or investigations.

The Special Master, therefore, turns to what has been identified as issue 1(c). Prior to the June 12, 2006 Hearing, the Parties proposed the following revision to the last sentence of Paragraph 1:

> Confidential Discovery Material that loses that designation, either by agreement of the Parties or the challenge process set out in Paragraph 16, may be used for any <u>lawful</u> purpose, unless such use is restricted by agreement or by the Court.

At the hearing, the Third Parties continued to object to the inclusion of this language, arguing that their confidential information should not be used for any purpose outside the litigation. D.I. 143 at 171:22-175:18.

In response, the Parties noted that the sentence is addressed solely to Confidential Discovery Material that has lost its designation either by agreement or Court Order, in accordance with Paragraph 16. D.I. 176:18-178:17. Additionally, the Third Parties argue that, because many Third Party documents will be produced from the files of the Parties, the standards applicable to the same information produced by both the Third Parties and the Parties is important so that the same information is protected under a uniform standard. *Id.* at 179:11-180:1.

The Special Master concludes that because the language addresses only Confidential Discovery Material that has lost its designation and, therefore, is no longer protectable confidential information, the language as proposed is satisfactory. D.I. 143 at 181:3-14.

- **Paragraph 4** – The Third Parties objected to the proposed language of Paragraph 4 with respect to the proposed notation for marking confidential information. As proposed by the

90

Parties, that notation would read:

CONFIDENTIAL – MDL 1717/JCCP 4443

The Third Parties objected on the basis that, to the extent that confidential information produced in the captioned litigations will be used in other litigations, the marking should be broad enough to cover all possible litigation.  D.I. 143 at 181:22-182:12.

In response, the Parties urged that the designated marking "isn't going to in any way limit where its going to be used."  D.I. 143 at 182:24-183:2.  The Parties then explained that they believe whatever marking is used should be uniform, and – addressing the Third Parties' suggestion that it be "Intel Antitrust Litigation" – that the marking should be neutral.  *Id.* at 183:12-184:11.  Following the hearing, the Parties proposed adding to Paragraph 4 the phrase "Such notation shall be sufficient to indicate that the documents contain 'Confidential Discovery Material' in the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation."

Given the Special Master's recommendation, *infra* at pages 110 to 117, that references to the Japan Litigation and the California Class Litigation be stricken from the Proposed Protective Order, the Special Master recommends that Paragraph 4 of the Protective Order should be worded to read as follows:

> Such a designation shall be made at the time of production by marking documents or other tangible Discovery Material by placing on or fixing, physically or electronically, in such manner as will not interfere with the legibility thereof, the notation "CONFIDENTIAL – MDL 1717/JCCP 4443".  Such notation shall be sufficient to indicate that the documents contain "Confidential Discovery Material" in the AMD Litigation or the Class Litigation. Electronic or native documents shall be similarly marked where practicable, and where not practicable, written notification by a Producing Party that it is producing Discovery Material as Confidential Discovery Material shall suffice to require Confidential treatment.

91

• **Paragraphs 6(f), 6(g) and 10** – Paragraphs 6(f), 6(g) and 10 address disclosure of Confidential Discovery Materials to witnesses. The Third Parties objected to the original language of these paragraphs on the basis that it would permit disclosure of their Confidential Discovery Materials upon the "good faith belief" of counsel for the Parties that the witness may have previously received or become familiar with the contents of the Confidential Discovery Materials. As argued by the Third Parties:

> [W]hat we have here is a protective order that puts limitations, not as much as we would like, but considerable limitations on the parties in terms of how they may use that information. And then, frankly, in one fell swoop, we take a giant step backwards. In these paragraphs all that's required is for a party to reasonably believe and in good faith believe that this person may have received this information, and then they're permitted to show it to the witness . . . The witness didn't write it. The witness didn't receive it. The witness isn't cc'd on the document. And what the parties would like is simply to say, well, I think I reasonably, in good faith, believe that an employee of some other company, he probably would have seen that in the course of his dealings. So now I can let him look at it in the deposition.
>
> * * *
>
> You're talking about situations where [the Parties] are going to be making the decision about a document that's not theirs, and using their best judgment about who may have seen it when the document is confidential. If the document is confidential, they shouldn't be able to just leapfrog over the protections that are in place based upon their belief that this person may have seen the information in one instance, or it contains information or documents that the witness may have become familiar with its contents.

D.I. 143 at 92:3-93:6 and 94:4-15. The Third Parties then argued that the Parties should be required – in advance of showing any Confidential Discovery Materials to any witness – to identify the witness to the Third Parties and obtain their permission to show such materials to the witness. *Id.* at 94:24-95:6.

92

In response, the Parties urged that, when read in combination with Paragraph 10, Paragraphs 6(f) and 6(g) adequately protect the confidential information of the Third Parties. D.I. 143 at 15:19. Additionally, the Parties argued that it would effectively tie the hands of the Parties if, in the middle of discovery, they realize a witness is talking about a transaction of which the Parties had not previously realized the witness had knowledge, and the Parties then have to contact the Producing Party – particularly in the middle of an interview or deposition – to attempt to obtain permission to use confidential information in order to continue the questioning or refresh the witness's recollection. *Id.* at 98:20-99:8.

The Special Master dismissed the adequacy of the "protections" under Paragraph 10 by noting they would apply if, and only if, the witness agreed to execute the Acknowledgement of Protective Order. The Special Master then pressed the Parties on what would happen if the witness simply refused to execute the Acknowledgement. D.I. 143 at 15:22. During the ensuing discussion, it was agreed that language could be built into the subpoena to advise the deponents that they would be deemed automatically bound by the terms of the Protective Order. *Id.* at 100:9-101:24.

The sticking point became whether the Third Parties' Confidential Discovery Materials could be shown to interviewees who refused to sign an Acknowledgement. At the hearing, the Special Master rejected the Third Parties' suggestion that the Parties advise them in advance of the identity of those being interviewed and obtain their permission to share confidential information prior to any interview, on the basis that "provid[ing] the roadmap of witnesses really lays out litigation strategy." D.I. 108 at 5:7. The Special Master also rejected the Parties' suggestion that the Court simply "trust that the lawyers involved in case preparation take seriously their ethical responsibilities and their legal responsibilities under [the Protective Order]

93

and that [they're] not going to be waiving confidential material around indiscriminately to people

who have no business seeing it." D.I. 116 at 22-117:5. Rather, the Special Master concluded:

> [T]he goal is not restriction, but protection and at the same time I
> have to be mindful of the concern [ ] that I do not want to be
> permitting anyone to understand litigation strategy other than the
> parties themselves having a control over their own litigation
> strategy.
>
> With respect to those testifying witnesses, I'd like you to
> craft the language as I suggested to you earlier, namely that all of
> those deponents will be deemed to be bound by the protective
> order, and will be so advised in the subpoena. And that's [on the
> expectation] that you all ultimately agree with me that the Court
> has the authority to impose that obligation on the testifying
> witnesses.
>
> With respect to those interviewees, if you will, I'm going to
> require that unless they first sign an acknowledgement of their
> responsibilities and acknowledgement of the confidential nature of
> any document that you expect to discuss with them and/or show to
> them, and agree to be bound thereby, that they don't get to see it.
> You don't get to discuss it with them.
>
> And the remedy of course for you with respect to that
> interviewee if they don't agree, notice their deposition and the
> protection is [by] virtue of what we've already discussed. I think
> that achieves protection without disclosure of litigation strategy.

D.I. 143 at 126:9-127:16.

The Parties and Third Parties agreed that they would work together to suggest language

that reflected this ruling. The Parties and Third Parties also agreed that the revisions would

include a provision that, following any deposition where Confidential Discovery Materials

provided by Third Parties were shared with a deponent, the Parties would provide notice of same

to the Producing Party. D.I. 143 at 130:5-134:16.

Following the June 12, 2006 Hearing, the Parties submitted the following proposed

revisions to the language of Paragraph 6(f) and Paragraph 10 (which is proposed to be revised in

94

its entirety):

>       6(f)    During the deposition of any current employee, director,
>       agent or Rule    30(b)(6) designee of the Producing Party, a
>       Receiving Party may show the Producing Party's witness any
>       document produced by the Producing Party; and during the
>       deposition of any former employee of the Producing Party, a
>       Receiving Party may show to that former employee any document
>       of the Producing Party that the Receiving Party's Outside Counsel
>       reasonably and in good faith believes the former employee to have
>       received the information or document, or to have become familiar
>       with its contents, in the ordinary course of his or her business
>       duties, consistent, however, with the provisions of Paragraph 10;

In concert with this, Paragraph 10 is proposed to be revised in its entirety, to read as follows:

>       10(a)   All depositions shall be conducted pursuant to subpoena or
>       an equivalent agreement.    This provision shall apply to all
>       subpoenas, including those issued by an attorney as an officer of
>       the Court.    Whether testifying pursuant to a subpoena or
>       voluntarily, each deponent who may be shown Confidential
>       Discovery Material of a Third Party and who is not a current
>       employee, director, agent or Rule 30(b)(6) designee of that Third
>       Party shall be served with a copy of this Order by Outside Counsel
>       that noticed the deposition and shall be advised by such Counsel of
>       the existence of this Order, the confidential status of the
>       information disclosed, and the restriction that the information not
>       be further disseminated or used for any purpose other than the
>       litigation; and Counsel shall inform the deponent that he or she is
>       bound to the terms of this Order.    Counsel for the Third Party shall
>       be entitled to the identity of any deponent shown its Confidential
>       Discovery Material within five (5) days following conclusion of
>       the deposition, on the condition that both Counsel and the Third
>       Party maintain the information in absolute confidence.    No copies
>       of Confidential Discovery Material shall be provided to a deponent
>       other than for purposes of the deposition examination without the
>       written consent of the Producing Party.    The Court Reporter shall
>       be instructed not to provide copies of deposition exhibits to
>       individuals deposed under this provision when the final transcript
>       is provided.
>
>       (b) Except in a deposition, before disclosing Confidential
>       Discovery Material to any person pursuant to paragraph 6(g),
>       counsel shall inform such person of the existence of this Order, the
>       confidential status of the information disclosed, and the restriction
>       that the information not be further disseminated or used for any

> purpose other than the litigation; and counsel shall request such
> person to execute and agree to the terms of the Acknowledgment
> of Protective Order set forth and attached hereto. Except in a
> deposition, a Party or Class Party shall not disclose Confidential
> Discovery Material of a Third Party to any person under paragraph
> 6(g) until that person has executed and agreed to the terms of the
> Acknowledgement of Protective Order. Except in a deposition, no
> Confidential Discovery Material shall be shown to a former
> employee of a Party employed by the opposing Party, except
> pursuant to separate written agreement.

The Special Master concludes that the proposed language complies with the Special
Master's direction at the June 12, 2006 Hearing, and recommends that Paragraphs 6(f), 6(g) and
10 should be reworded as proposed in the Parties' June 15, 2006 submission.

• **Paragraph 7** – Paragraph 7 addresses disclosure of Confidential Discovery Material to
persons who will not be deponents. It requires that any such persons (including those who are
interviewed) execute an Acknowledgement of Protective Order before they can be shown the
Confidential Discovery Materials.

The Third Parties requested that – similar to the Special Master's determination with
respect to deponents – notice be given to Third Parties of those persons (including persons
interviewed) who are shown Confidential Discovery Materials pursuant to an executed
Acknowledgement of Protective Order. D.I. 181 at 192:20-193:2 and 195:6-10. However, as
previously detailed during the discussion of Paragraphs 6 and 10, *supra* at pages 93-94, the
Special Master has concluded that any disclosure of the identity of persons interviewed by the
Parties will necessarily provide a roadmap of the Parties' litigation strategy. Accordingly, the
Special Master concluded at the hearing that "the acknowledgements will not be exchanged, but
will be maintained and made available to the Court upon the Court's request." D.I. 143 at
195:23-196:1.

Following the hearing, the Parties and Third Parties submitted the following proposed

revision to Paragraph 7:

> Any person, <u>other than deponents and those identified in paragraph 6(d)</u>, who is shown or given access to Confidential Discovery Material will execute or agree to the terms of the "Acknowledgement of Protective Order" set forth and attached hereto. The Acknowledgements will not be exchanged, <u>except pursuant to paragraph 11</u>, but will be maintained and made available to the Court upon the Court's request.

The Special Master concludes that the proposed language complies with the Special

Master's direction at the June 12, 2006 Hearing, and recommends that Paragraph 7 should be

reworded as proposed.

- **Other** – The Third Party Objections contained at least one request for cost-shifting to

address the substantial costs that the Third Parties are expected to incur in connection with

discovery in the captioned litigations. Third Party Acer America suggested that the following

language should be inserted into the Proposed Protective Order as new Paragraph 33:

> Pursuant to Fed. R. Civ. P. 45(c)(2)(B), the Court further orders that in the event that a third party has been or in the future is subpoenaed in this matter, the subpoenaing party shall reimburse Producing Party all costs, including but not limited to, costs of copying, production, employee review time, and reasonable attorney's fees directly related to the review and production of Discovery Material, which exceeds $10,000 dollars.

D.I. 38 at p. 2. The request for cost shifting was further pressed at the June 12, 2006 Hearing:

> [W]e simply ask the Court to continue thinking out of the box and to consider putting one simple cost shifting provision into the [Proposed Protective Order] which clarifies the types – the dollar amount, the types of costs which will be considered by the Court to be appropriate.
>
> And we won't have to return here at some future point. It seems to me that while we're all here is we're trying to avoid the situation where . . .[t]here will be motions to compel. Additional orders will be issued. The same thing will result with respect to the other massive burden that the third parties face. And that is the costs associated with complying with this subpoena.

>Prior to . . . being engaged by Acer America, former counsel . . . had gotten some preliminary vendor estimates for dealing with the terabytes of data, which are called on by literal compliance of the order. And **it's in the magnitude approaching a millions dollars, if not exceeding a million dollars**. And what I'm simply seeking is to shortcut the process of having to have to haggle with the plaintiff, haggle with the defendant, haggle with class counsel where the Court can short circuit that by a simple cost shifting provision within this protective order.

D.I. 143 at 227:10-228:19 (emphasis added).

The magnitude of the referenced estimate would, if actually incurred, provide a compelling argument for the Court's consideration of possible cost shifting or other relief. However, the Special Master concludes that the fact-specific nature of a cost shifting analysis does not lend itself to uniform treatment in the Protective Order. Such matters are best addressed on a case-by-case basis. The Special Master, therefore, does not recommend that the Protective Order contain language that provides for cost shifting.

## DISCUSSION OF TERMS STILL IN DISPUTE

### II.    Identification of Terms Under Advisement

The Special Master now turns to those provisions of the Proposed Protective Order that remained contested at the conclusion of the June 12, 2006 hearing and were, therefore, taken under advisement by the Special Master. The contested provisions are Definitions R and S, Paragraphs 8 and 16, and the multiple provisions of the Proposed Protective Order that contemplate the use of Discovery Materials produced in the captioned litigations for purposes of the Japan Litigation, the California Class Litigation, and other litigations and/or investigations.

### III.    Special Master's Recommendations

#### A.    Definition R

At the hearing, the Parties proposed certain revisions to Definition R to voluntarily address Third Party Objections.  Specifically, the Parties proposed rewording Definition R (7) to read as follows:

> 7.  Non-public negotiations negations relating to the purchase or sale of microprocessors, chipsets, PCs, servers, operating systems, software licensing agreements or any other product manufactured or sold by a Producing Party;

The Parties also agreed to voluntarily revise the language of Definition R(11) to read as follows:

> 11.  Non-public information that concerns microprocessor, chipset, PC or server manufacturing, or operating system and software design and development, including capital expenditure plans, yields, capacity, costs, utilization, process and scale;

Finally, the Parties agreed to voluntarily revise Definition R(14) to read:

> 14.  Information the disclosure of which could jeopardize the security of public or private internet sites, confidential data bases, networks or other sources of non-public information;

The Third Parties were in agreement with each of these proposed revisions, and the Special Master likewise concludes that R(7), R(11) and R(14) are acceptable, as proposed.

The Parties and Third Parties, however, do not agree on the proposed language of Definition R(16).  As proposed by the Parties, that subparagraph would read:

> Other information or documents the disclosure of which the Producing Party can demonstrate would cause it serious and specific harm.

D.I. 14 at ¶ Definition R(16).

The Third Parties object to the imposition of a standard that would require them to demonstrate "serious and specific harm" if they were to seek a protective order in connection with discovery sought by the Parties.  The Third Parties argue that the standard for obtaining a

protective order under Federal Rule of Civil Procedure 26(c) is what they view as the lesser

standard of "good cause," and that "good cause" should be interpreted on a case-by-case basis in

accordance with the standards that have evolved in the jurisdictions involved:

> The case law that the parties cite to support the application of the serious and specific harm standard is in the Third Circuit is a standard that applies to parties as we understand it. It doesn't recognize any distinction at all for the confidentiality concerns of non-parties, which is what we are dealing with in terms of these non-party objections.
>
> Moreover, not all of these subpoenas are being issued from the Third Circuit's jurisdiction. Subpoenas are being issued from other jurisdictions that may have different standards. And while it may suit the administrative convenience of the parties to this litigation to have a single standard, which is one of the arguments that they have raised in support of this single standard, to the extent that there are administrative burdens associated with discovery, those burdens are to be borne by the parties rather than the non-parties.
>
> And this ought to be addressed on a case-by-case basis with respect to the non-parties with respect to the jurisdiction that issues the subpoena. And the standard that applies for showing the requisite confidentiality protection in that jurisdiction for a non-party ought to be addressed on a case-by-case basis.

D.I. 143 at 34:3-35:7.

In response, the Parties explain that they have utilized Third Circuit decisions addressing

the standard for "good cause" to distill the "serious and specific harm" language they crafted in

proposed Definition R(16):

> That's the Third Circuit's definition of good cause in this circumstance. And the Third Circuit cases teach that protective orders have to be very specific as to what's protected, and that is, what's not protected. And simply to have a good cause standard . . . all we needed to do, if that's what we're going to do, is we could have had a one liner and said . . . protect anything that is protectable. It doesn't provide the kind of guidance that I think the Third Circuit is telling us needs to be put in a protective order in order to withstand scrutiny from the public access point of view.

100

So that's the [derivation] of the standard.

D.I. 143 at 36:15-37:6.

The Parties also argue that looking to the jurisdiction where the documents repose or the subpoena issues on a case-by-case basis would result in a proliferation of different standards that could apply to the same information. Thus, different levels of protection could apply to the same document if were produced from both the files of a Party and from the files of a Third Party. *Id.* at 37:7-38:14. To avoid different treatment for the same information, and to provide the Third Parties with notice of the applicable standard to guide them in making their confidentiality designations, the Parties urge that nationwide litigation requires one standard, and that standard should be the standard that applies in the district where the MDL cases have been consolidated. D.I. 143 at 37:14-41:22.

Based upon these arguments and the Special Master's review of the written submissions of the Parties and Third Parties, the Special Master concludes that Definition R(16) should promulgate one standard, and that the applicable standard should be that used in the Third Circuit. In *Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005) and *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994), the Third Circuit articulated the standard for good cause applicable to the issuance of a protective order to require a showing that disclosure of the materials would lead to a "clearly defined and serious injury." Accordingly, the Special Master recommends that Definition R(16) be reworded to read:

> Other information or documents the disclosure of which the Producing Party can demonstrate would cause it a clearly defined and serious injury.

101

**B.**    **Definition S**

At the hearing, the Parties also proposed certain revisions to Definition S – described as a

"sunset provision" – to voluntarily address certain of the Third Party Objections.  The Parties

proposed rewording Definition S to read as follows:

> In order to address potential issues relating to the passage of time
> on the continued confidentiality of documents, the parties agree
> that, except with respect to materials the disclosure of which would
> raise consumer privacy issues, for documents in categories R(1)
> through R(8) dated or prepared more than 24 months prior to a
> Designation Request under paragraph 16, the Producing Party must
> also satisfy the standard contained in paragraph R(16) for the
> documents to be maintained as confidential.  For purposes of this
> paragraph, undated materials or materials or deposition testimony
> relating to an indeterminate time period shall be deemed dated as
> of the date of their production or the date of the deposition.

The Third Parties continue to object to the inclusion of a "sunset provision" that would

create a presumption that certain of the confidential information they produce during discovery

would automatically be deemed to be non-confidential after the passage of 24 months.  They

argue that the 24 months is "an entirely arbitrary time period picked by the [P]arties."  D.I. 143 at

50:22-23.  The Third Parties stress that the subpoenas received thus far by the Third Parties are

seeking "the most sensitive types of documents":

> And by way of example, for instance, the subpoenas that AMD has
> already served on the [Third Parties] go to the highest levels within
> the companies.  You're talking about requests for documents from
> the CEO, from the CFO, from the general counsel, from the people
> who run – at least in the instances of Hewlett-Packard and several
> of these other companies – multi-million dollar companies [or]
> divisions of business.
>
> And they want the marketing strategies, the pricing
> information, the pricing strategies across the board.  While we
> appreciate the need for that information in the context of this
> litigation, it really can't be underscored enough how confidential
> and truly proprietary this information is.

102

D.I. 143 at 49:6-23. Accordingly, the Third Parties urge that the continued enforcement of their "confidentiality" designations should be determined by the nature of the information and not by the mere passage of time. The Third Parties also argue that, as a practical matter, it would be neither fair nor efficient to require Third Parties to have to continually seek relief from the sunset provision – on a rolling basis as documents age – with respect to what may be millions of pages of document production. *Id*. at 51:2-52:9. The Third Parties conclude by arguing that, to the extent that the Parties want to employ a sunset provision with respect to their respective productions, that would be fine as long as such provision does not extend to the confidential information of Third Parties. *Id*. at 53:3-9.

In response, the Parties explain that the revision was intended "to come up with a document that satisfies the Third Circuit so that the [P]arties could live with it, and that [it] was practical." D.I. 143 at 55:12-14. The Parties' view is that the documents within the definition of R(1)-(8):

> may not be confidential, may not meet the standard, the specific and serious harm standard.   Yet, we presumptively made everything in those buckets presumptively confidential, so that this agreement could be administered in some reasonable way.
>
> With respect to documents in those categories, though, at the time a party makes a designation request, which is going to be down the road, a lot of these materials, if they were appropriately designated confidential in the first place, are going to be old and stale . . . Most of those documents are going to be old when we get them. And if we ever want to make a use that's not envisioned under this agreement [they will] be even older. . . . The Third Circuit case law is pretty clear that in evaluating claims of confidentiality, you need to look at the age of the document, and whether it has some continuing potential to create injury if it were disclosed.
>
> And all we're saying here is that the presumption of confidentiality that this agreement attaches to categories [R(1)-R(8)] ceases to exist after 24 months.

103

> It doesn't mean that the document, if the disclosure of it
> could cause serious and specific harm, can't be claimed to be
> confidential, that's why we have category R16.

D.I. 143 at 56:4-57:19.    The Parties argue that the 24 month period of presumptive

confidentiality "is a sunset provision which works in favor of the producing party, because it

creates almost an irrebutable presumption that if your document falls in one of the first eight

buckets for the first 24 months, [its confidentiality] is cast in stone." *Id.* at 60:10-15.

Finally, the Parties argue that there needs to be uniformity between the standard that

governs production by the Parties and that which governs production by the Third Parties,

because the Parties' files contain "millions and millions of documents" containing Third Party

information that is sensitive and proprietary. To have different standards applicable to the same

information, depending upon whether a document was produced by Intel or a Third Party,

"would simply render this unmanageable beyond anyone's wildest imagination . . . because

trying to remember which protective order a particular document comes under is going to be

confusing and cause a lot of agita." *Id.* at 60:22-62:13 ("it's the same document . . . and the

standard . . . must be the same").

The Special Master's review of the case law submitted by the Parties makes clear that the

issue of staleness, as it relates to the designation of documents as "confidential," has been

consistently determined on a fact-specific basis.    Moreover, the proposed provisions of

Paragraph 16 address a procedure whereby materials previously designated as "confidential" can

be de-designated as such by either agreement of the producing and receiving parties or by

determination of the Court. The Special Master concludes that these provisions are adequate to

address any issues of "staleness" on a case-by-case basis and, therefore, proposed Definition S

should be stricken in its entirety from the Protective Order.

104

### C.    **Paragraph 8**

Paragraph 8 is intended to impose restrictions upon attorneys who receive Confidential

Discovery Material of a technical nature.   Prior to the June 12, 2006 Hearing, the Parties

proposed the following language to address certain of the Third Party Objections:

> Any attorney (including In-House Litigation Counsel) for any
> Party or Class Party who receives any technical document
> designated Confidential Discovery Material by a Producing Party
> other than his or her client shall not participate in the preparation
> or prosecution of any patent application or patent license relating
> to any aspect of microprocessors, chipsets, PCs, operating systems,
> software or servers discussed in any such technical document, from
> the time of receipt of such information through and including one
> (1) year following the conclusion of the AMD Litigation [or] the
> Class Litigation.

At the hearing, the Third Parties continued to object to the proposed language, as revised.

The Third Parties urged that the language of Paragraph 8 be further revised to parallel the

categories of restrictions incorporated into Definition J, with respect to In-House Litigation

Counsel.  D.I. 143 at 135:16-137:4.

In response, the Parties noted that this request is "significantly broader" than anything

contained in the Third Party Objections.  D.I. 143 at 138:14-16.  The Parties went on to explain

that Paragraph 8 is specifically intended to address patent applications and patent licensing

activities only and, therefore, it imposes certain restrictions to patent-related activities only with

respect to those attorneys that have received confidential "technical" information.  *Id*. at 138:22-

139:19.

The Parties also argued that they had agreed to the broad concessions in Definition J

because that paragraph is intended to apply to only four individuals who serve as in-house

counsel for AMD and Intel.  The Parties expressed concern that "once you expand it to the

outside counsel and the people working on this case, . . . a lot of effort must be taken to make

105

sure the restrictions are narrow."" *Id.* at 140:7-10. The Parties pointed out that outside counsel is already bound by their ethical obligations, as well as by their written acknowledgements, that they will only use information obtained in this litigation only for purposes of this litigation. *Id.* at 140:11-17.

The Special Master concludes that the Third Parties' request to restrict the future activities of counsel for the Parties from broad categories of services is both unusual and unworkable. In this regard, the Special Master notes that the Third Parties are not without remedy should an attorney fail to comply with his or her ethical responsibilities and contractual obligations under the Protective Order. Accordingly, the Special Master concludes that the revisions suggested by the Parties are adequate to address the Third Party Objections and the Special Master, therefore, recommends that the proposed language of Paragraph 8, as set forth above, be incorporated into the Protective Order.

### D.    Paragraph 16

Paragraph 16 outlines procedures by which a Receiving Party may object to and seek to de-designate the confidentiality designation of any Discovery Material.

To address certain of the Third Party Objections, the Parties proposed the following revisions to subparagraph 16(a) and 16(b) for discussion at the June 12, 2006 Hearing:

> (a) Designation Request: The Receiving Party shall identify with specificity (i.e., by document control numbers, deposition transcript page and line reference, or other means sufficient to easily locate such materials) the Discovery Material it intends to disclose and a representation that the material is probative of one or more material facts in this litigation. A Designation Request will trigger an obligation on the part of the Producing Party to make a good faith determination of whether the Discovery Material is entitled to be treated as Confidential Discovery Materials under Paragraph R. Except in the case of a Designation Request <u>for more than 250 documents or more than 250 pages of deposition testimony</u>, within ten (10) days the Producing Party

106

shall respond in writing to the Designation Request either agreeing
to the disclosure or designating the material as Confidential
Discovery Material.  If a Designation Request entails more than
250 documents or more than 250 pages of deposition testimony,
the Requesting Party and the Producing Party shall meet and
confer, in good faith, to establish a reasonable timeframe for
designation and response.

(b)  Court Determination:  If the Receiving Party disagrees with a
Producing Party's designation of material as Confidential
Discovery Material, it shall provide to the Producing Party a
written objection.   Thereafter, the Producing Party may make
written application to the Court for protective treatment.  Except in
the case of disputes involving massive numbers of documents, the
application will be made within twenty (20) days of receiving the
Receiving Party's written objection to the designation.   If the
Producing Party fails to make such timely application, the
Producing Party's designation will be void.

At the hearing, the Third Parties continued to object to the revised language based on the

Third Parries' view that ten days is not adequate to respond to a de-designation request, and that

procedurally, the burden should not be on the Third Parties to make written application to the

Court for continued protective treatment:

But the problem here is really two-fold.  We just don't think that it
addresses adequately the concerns that the [de-]designation process
is going to raise, particularly for foreign entities that are going to
have documents, technical documents often in a foreign language.
This is a case where the non-parties are not going to be involved
(once the production obligation is satisfied) in the day-to-day
litigation of the case . . . And they're not going to be focused on . . .
issues that arise in connection with the trial until they're notified
probably on little or no notice that there is a [de-]designation
request.

\* \* \*

We think for document groups in excess of a hundred
pages, the parties and non-parties should meet and confer to
determine whether additional time is necessary.  And then with
respect to Paragraph 16b, the burden should not be on the non-
parties to invoke the Court's process . . . if the parties think the
confidentiality restrictions should be lifted by this Court, they

107

> should give a motion to compel kind of notice, and then give the
> non-parties an opportunity to respond to that.
>
> It's really a question of giving the non-parties an adequate
> period of time and an adequate process to deal with these
> [de-]designation requests where the parties, after a meet and
> confer, cannot agree.

D.I. 143 at 207:2-208:22.

In response, the Parties argue that the timeframe is adequate and that "burden to move"

should clearly be on the Third Parties:

> We have two choices. We could make everybody do good faith
> confidentiality designations at the front end and spend a lot of time
> and money over a lot of documents that will never be at issue or
> presume everything to be confidential . . . so the triggering
> mechanism for a real confidentiality determination is the
> [de-]designation request.
>
> * * *
>
> What we tried to do is come up with reasonable periods so that we
> wouldn't get strung out forever. And effectively, this gives a third
> party a month. They don't have to do anything for a month,
> because it's ten days plus 20 days . . . if they can't make up their
> minds in ten days, they can just say no. They immediately have
> another 20 days to think about it some more and conclude that – if
> they're right the first time, and then they file a motion.

D.I. 143 at 209:20-211:24.

The Third Parties continued to object to this procedure and went on to argue that their

concerns are exacerbated by the last sentence of Paragraph 16(b), which provides "If the

Producing Party fails to make such timely application, the Producing Parties' designation will be

void." D.I. 143 at 217:8-218:5. In response, the Parties explained that, given the provisions of

Paragraph 16(d) that permits Discovery Material to continue to be treated as Confidential

Discovery Materials pending the Court's determination of whether such designation is

appropriate, the "time-out" provision of the last sentence will give closure by providing an

automatic de-designation of any document as to which the Producing Party fails to timely file a motion. *Id*. at 218:12-219:21.

The Special Master has concerns with the process proposed by the Parties. Mindful of the Parties' ultimate goal that, within a thirty (30) day period, any dispute about the designation of a document can be brought to the Court's attention, the Special Master concludes that the more efficient way to proceed would be to (i) allow the Producing Party more time to thoughtfully respond to a de-designation request; (ii) eliminate the requirement that the Requesting Party submit a written objection to the Producing Party if agreement is not reached on a de-designation request; and (iii) require the Requesting Party to file a motion for relief from the Protective Order with the Court to better frame the issues for the Court's determination of whether a document should be de-designated, as to which designation the Producing Party at all times carries the burden of proof.

Importantly, the revised procedure recommended by the Special Master will eliminate the "time-out" provision that could result in the automatic de-designation of confidential information in the event that the Producing Party inadvertently fails to timely file a motion with the Court. Such a situation could easily arise under the process proposed by the Parties if, in response to the Receiving Party's written objection, the Producing Party believes a resolution is under negotiation and doesn't realize the clock is running. By requiring the Receiving Party to frame the issues for the de-designation it seeks and to trigger the clock with a proper motion for relief from the Protective Order, the possibility of an inadvertent de-classification of documents is eliminated or, at least, reduced.

Accordingly, the Special Master recommends that the language of subparagraphs 16(a) and 16(b) be reworded to read as follows:

(a)  Designation Request:  The Receiving Party shall identify with specificity (i.e., by document control numbers, deposition transcript page and line reference, or other means sufficient to easily locate such materials) the Discovery Material it intends to disclose and a representation that the material is probative of one or more material facts in this litigation.  A Designation Request will trigger an obligation on the part of the Producing Party to make a good faith determination of whether the Discovery Material is entitled to be treated as Confidential Discovery Materials under Paragraph R.  Except in the case of a Designation Request for more than 250 documents or more than 250 pages of deposition testimony, within twenty (20) days the Producing Party shall respond in writing to the Designation Request either agreeing to the disclosure or designating the material as Confidential Discovery Material.  If a Designation Request entails more than 250 documents or more than 250 pages of deposition testimony, the Requesting Party and the Producing Party shall meet and confer, in good faith, to establish a reasonable time frame for designation and response.

(b)  Court Determination:  If the Receiving Party disagrees with a Producing Party's designation of material as Confidential Discovery Material, it may apply to the Court for relief from the Protective Order as to the contested designations.

The Special Master also recommends that all other provisions of Paragraph 16 remain as originally proposed.

### E.    Japan Litigation/California Class Litigation/Other[7]

The Special Master turns now to the issue that has prompted the most vehement objection by Third Parties, that being the issue of whether discovery materials produced in this litigation – especially materials designated as Confidential Discovery Materials – may be used for purposes of the Japan Litigation, the California Class Litigation, and other unidentified litigations and/or investigations.  This issue was a lightening rod for objection by Third Parties, prompting objections from at least 10 of the Third Parties who provided comment on the language of the

---

[7]  A the June 12, 2006 Hearing, the Special Master expressed the inclination to adopt the Parties' recommendations on this issue.  Upon further study and consideration, the Special Master -- for reasons explained herein – declines to accept the Parties' position.

Proposed Protective Order.[8]

The objections submitted by the Third Parties fall primarily into one of two arguments: (i) that the Court does not have the authority to approve the use of discovery materials in matters over which it does not have jurisdiction; and (ii) that, even if the Court does have the authority to approve such provisions as part of the Proposed Protective Order, the Court should not exercise that authority on prudential grounds.

The Third Parties argue that this Court does not have jurisdiction over participants in the Japan Litigation and the California Class Litigation, the latter of which involves state law claims in state court proceedings. They also argue that this Court may not have jurisdiction over participants in other potential litigations and investigations which may arise, but which are as yet unidentified and/or unknown. The Third Parties' position is briefly summarized in the following argument made with respect to the Japan Litigation:

> It's not clear that the U.S. courts have the jurisdiction to take on the applicability of the terms of this protective order to non-parties in the Japanese [L]itigation. But more to the point, Your Honor, we don't believe that it should be applicable, and that the parties should be able to bypass whatever rules and restrictions are applicable in the Japanese [L]itigation to the non-parties through this particular protective order here in the U.S. courts . . . **basically the parties should go to the Japanese Court in the Japanese [L]itigation and get an appropriate protective order for the information in that case.**
>
> * * *
>
> [T]he non-parties are not currently seeking a ruling saying whatever we produce here in the U.S. could never be used in Japan. It's just simply a matter of the order in which things proceed. The parties here have said produce everything and let us give it to the Japanese counsel, Japanese experts [n]ow, and then

---

[8] Nine of the Third Parties – Hewlett-Packard, Dell, Microsoft, NEC, Sony Corporation, Sony Electronics, Lenovo, Egenera and Toshiba – appeared at the June 12, 2006 Hearing to lodge their objections with respect to this issue. D.I. 143 at 44:13-45:3. IBM objected by its paper submission. D.I. 41.

> we'll go figure out whether we can get it admitted in the Japanese courts.
>
> The other way to go, of course, would be in Japan for them to serve the appropriate discovery . . . [a]nd if a Japanese Court were to rule that they're entitled to it, then all of the parties – then all of the people that would be getting the information under this protective order currently would get it at that point in time.
>
> What this order does is it goes the other way. It says when you produce information here in the United States, let's make it accessible now to all of the – to the people working just in Japan, Japanese counsel, Japanese experts. And then later we'll figure out how we want to use it.

D.I. 143 at 63:17-64:8; and 74:14-75:19 (emphasis added).

Simply stated, the Third Parties have great concerns that the Proposed Protective Order would serve as a "blank check" to permit the Parties to utilize the Third Parties' confidential information and disclose it to participants in the Japan Litigation, the California Class Litigation and other litigations and/or investigations, without adequate assurance that the terms of the Proposed Protective Order would be honored or could be enforced if violated, particularly with respect to individuals and entities outside the jurisdiction of this Court. As noted in the objections of Hitachi, a Third Party based in Japan:

> Generally speaking, Japanese courts do not provide protection from disclosure to third parties for a producing party's confidential information, and there is no reason to believe those courts would change this practice in response to the provisions [of the Proposed Protective Order] requiring notification of the Japanese court of the confidential status of this Material. As a result, were Hitachi to produce Confidential Discovery Material in the U.S. (despite the fact that Hitachi is not subject to U.S. jurisdiction), either of the Parties could potentially de-designate that Material by using it in the Japanese litigation. As a result, this provision creates a loophole in the [intended protections of the Proposed Protective Order].

D.I. 45 at p. 2. In considering the Third Parties' concerns for the protection of their confidential

112

information, the Special Master gives significant weight to the Third Parties' arguments that their

Confidential Discovery Materials are of the utmost proprietary and commercially sensitive

nature. *See*, *e.g.* D.I. 143 at 19:20-20:11 ("some of the most commercially and technically

sensitive documents in the world . . . what is often referred to as the Coca-Cola formula . . . in

the sense that it's that sensitive"); and D.I. 143 at 49:21-22 ("it really can't be underscored

enough how confidential and truly proprietary this information is").

In response, the Parties argue:

> The question is whether the parties should have their hands tied
> and not be able to bring to the attention of the Japanese judge
> relevant information that may be useful for disposing of that
> proceeding, because it wasn't discovered during the course of
> proceedings authorized by the Japanese court . . . I don't know that
> it behooves this Court to establish a roadblock to the use by a
> Japanese judge of information that may be relevant and helpful in
> disposing of the claims in Japan. If there is some overriding policy
> that needs to be vindicated in Japan, we think that the judge in
> Japan is the appropriate party to implement that policy. If, in fact,
> the Japanese do not want to encourage broad discovery in
> associated U.S. litigations, the judge in Japan can say, look, I'm
> just not going to entertain any evidence that wasn't developed in
> Japan. But that's where this argument ought to be taken to.
>
> It seems to us that it's not appropriate to ask a U.S. court to
> tie the parties' hands with respect to the materials that may well be
> helpful to a judge sitting in Japan to decide his or her case. And
> you know, they're not asking these parties to do anything
> differently than they would otherwise do with respect to the U.S.
> litigation. They're going to produce the same documents. They're
> going to make witnesses at the same deposition.
>
> It's just at the end of the day, what the party does with this
> information. And we don't think that this order ought to cripple the
> party's ability to help the Japanese courts do their job.

D.I. 143 at 67:6-69-18.

The Special Master is not persuaded by the Parties' argument that limiting the use of

Confidential Discovery Materials to the captioned cases would "tie" the hands of the Parties – or

113

even other participants – with respect to the Japan Litigation, the California Class Litigation and other litigations and/or investigations. First, with respect to state litigations and/or investigations, the information is obtainable by other means including by subpoena or by agreement with the Producing Party. Nor does the Special Master accept the Parties' argument that "the point is really to try to minimize the burden on the third parties", D.I. 143 at 162:1-3, in light of the Third Parties' rebuttal that:

> And that while it is appropriate for the parties to be thinking of or solicitous of the interests of the third party, **this is a case where the third parties say that their interests are otherwise, and that they would prefer to have the opportunity to deal with each of those litigations on an individual basis.**

D.I. 143 at 165:24-166:6 (emphasis added).

Second, the Parties themselves cite to 28 U.S.C.A. § 1782 in their papers responding to the Third Party Objections as a vehicle that would allow materials produced during discovery in the captioned litigations to be made available to other tribunals and litigants, including foreign and international tribunals. D.I. 53 at pp. 19-20. Section 1782 provides two possible means by which discovery can be obtained for use in foreign litigations, that being by order of the Court under § 1782(a) and by agreement of the Producing Party under § 1782(b):

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for

114

taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

(b) This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him.

28 U.S.C.A. § 1782.

Moreover, one authority cited by the Parties that construes § 1782 – authority of which the Parties should be intimately aware – makes clear that a court's authority to assist foreign tribunals and interested persons under § 1782(a) is an inquiry separate from whether that authority should be exercised. In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004), the Supreme Court "cautioned[ed] . . . that § 1782(a) authorizes, but does not require, a federal district court to provide judicial assistance to foreign or international tribunals or to 'interested persons' in proceedings abroad. Whether such assistance is appropriate . . . is a question yet to be resolved."

In that decision, the Supreme Court remanded to the district court an application by AMD under § 1782(a) for further determination of such relevant factors as (i) whether the person from whom discovery is sought is a participant in the matter arising abroad and whether the foreign tribunal has jurisdiction over that person; (ii) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign tribunal to assistance from the U.S. court; (iii) whether the § 1782(a) application conceals an attempt to circumvent the

115

limits on discovery or evidence gathering of that foreign tribunal; and (iv) whether the discovery requests are so "unduly intrusive or burdensome" that they should be narrowed or denied. 154 U.S. 244-45.

The Parties do not dispute that the process established by this Court for consideration of the Proposed Protective Order does not constitute an application under 27 U.S.C. § 1782(a). D.I. 143 at 71:3 ("we're not invoking that section"). The Special Master concludes, therefore, that it would be premature on this record to recommend that discovery obtained in the captioned litigations be made available in the Japan Litigation in the context of considering the Proposed Protective Order, especially without the safeguard of providing both the Parties and the Third Parties an opportunity to be fully heard for the purpose of developing the evidentiary record contemplated under the Supreme Court's decision in *Intel*.

Similarly, while mindful of the line of cases that encourage coordination between federal and state courts, the Special Master concludes that he should not at this time – on the present record – recommend that discovery obtained in these captioned litigations be made available in the California Class Litigation or other state actions/and or investigations. Although Third Parties may voluntarily agree to such use in order to avoid the burden of multiple productions of similar discovery materials, the Special Master concludes that this Court should not prematurely circumvent the defenses that Third Parties may wish to raise and/or the actions they may wish to take to protect their confidential information from disclosure to persons not subject to the jurisdiction of this Court.

Accordingly, the Special Master recommends that references to the Japan Litigation, the California Class Litigation, and other litigations and/or investigations not before this Court be stricken from the terms of the Proposed Protective Order; and, specifically that:

- the fourth (4th) "Whereas" Clause; Definitions B, D, E, K and O; Paragraphs 6(h), 21, 22 and 23; and the form entitled "Japan Counsel and Japan Expert/Consultant Acknowledgement of Protective Order" be stricken in their entirety from the Proposed Protective Order; and that

- the "Now Therefore" Clause; Definitions C, I, J, L, M, S and U; Paragraphs 1, 2, 4, 6(d), 8, 11 and 11(e), 14, 17, 18, 19, 24, 26, 27, 28 and 29; and the form entitled "Acknowledgement of Protective Order", together with all revisions proposed by the Parties in their June 15, 2006 submission, be further revised to remove any and all references to the Japan Litigation, the California Class Litigation, and any other litigations and/or investigations not pending before this Court.

These deletions and revisions – which have necessarily resulted in the relettering and renumbering of the corresponding provisions in the final version –  are reflected in the Confidentiality Agreement and the [Proposed] Protective Order that is respectfully attached hereto at Exhibit A.

## CONCLUSION

In conclusion, the Special Master recommends that the Court enter a Protective Order in the revised form that is attached hereto at Exhibit A, for the reasons discussed and the conclusions reached above.

ENTERED this
27th day of June, 2006

Vincent J. Poppiti (DSBA No. 100614)
Special Master

117