# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d                                                     Page 1
Not Reported in F.Supp.2d, 2001 WL 632937 (E.D.Pa.), 52 ERC 2045
**(Cite as: Not Reported in F.Supp.2d)**

**H**

Briefs and Other Related Documents

Gould Electronics Inc. v. U.S.E.D.Pa.,2001.

United States District Court, E.D. Pennsylvania.

GOULD ELECTRONICS INC. f/k/a Gould Inc.,
American Premier Underwriters, Inc.,
v.
UNITED STATES of America.

**No. CIV.A. 99-1130.**

June 7, 2001.

*MEMORANDUM*

O'NEILL.

**\*1** Pursuant to Fed.R.Civ.P. 12(b)(1) defendant
United States has moved to dismiss plaintiffs'
("Gould") claims under the Federal Tort Claims Act,
28 U.S.C. §§ 1346(b) *et seq,* for lack of subject mat-
ter jurisdiction.

BACKGROUND

In *Cheryl Allen, et. al. v. Gould, Inc.,* No 1074/90
(N.Y.Sup.Ct.) seventy-three residents of Cold Spring,
New York, sued Gould for personal injuries and
property damage allegedly caused by Gould's opera-
tion of a nickel-cadmium battery manufacturing plant
in the area. The United States Army had been in-
volved with Gould's corporate predecessor in the
plant's design, construction, ownership and operation.
In January 1994, plaintiffs approached the United
States to determine if the government would consider
joining ongoing settlement discussions in *Allen.* In a
letter dated February 2, 1994, the government de-
clined stating "a review of the documents ... leads us
to conclude that the United States has jurisdictional
defenses to either a direct suit by the [p]laintiffs or a
claim for contribution or indemnification by the de-
fendants." Presumably because of its immunity to
suit in state court the government was not made a
party to *Allen.* In 1997 Gould agreed to pay plaintiffs
$4.5 million and *Allen* settled. In 1998, Gould filed
administrative claims with the Army seeking contri-
bution and indemnity for the *Allen* settlement. These
claims were denied and on March 3, 1999, Gould
filed this action seeking contribution and indemnity

from the government.

Under 28 U.S.C. § 1346(b), the government is liable
if "a private person, would be liable to the claimant in
accordance with the law of the place where the act or
omission occurred." On May 5, 1999, the govern-
ment moved under Rule 12(b)(1) to dismiss the case
for lack of subject matter jurisdiction contending that
New York Law applied and there is no private liabil-
ity under New York law for the claims asserted by
plaintiffs. Plaintiffs contended that Pennsylvania law
applied and permitted the assertion of its claims. I
granted the government's motion and dismissed the
action holding: (1) under Pennsylvania choice of law
rules, New York law applied; (2) I had no jurisdiction
over the contribution claim because the government
would not be liable for contribution under New York
law; (3) the government had not waived protection of
New York's bar against contribution; and (4) the gov-
ernment was not liable for indemnity under New
York law. On July 21, 2000, the Court of Appeals
partially reversed this ruling, stating: "we hold that
Ohio law governs the jurisdictional inquiry and, un-
der Ohio law, the United States would be liable for
contribution, but not indemnity." *Gould Electronics
v. United States of America,* 220 F.3d 169, 174 (3d
Cir.2000) ("*Gould I* ").

On January 31, 2001 the government filed a second
motion to dismiss, again seeking to dismiss plaintiffs'
claims for lack of subject matter jurisdiction. Defend-
ant now argues that plaintiffs' claims challenge gov-
ernmental decisions insulated from judicial review by
the discretionary function exception to the FTCA, 28
U.S.C. § 2680(a), and also impermissibly seek recov-
ery for the negligent acts of an independent contract-
or, 28 U.S.C. § 2671. Plaintiffs oppose the govern-
ment's motion on two grounds: (1) the United States
has lost its challenge with respect to subject matter
jurisdiction and may not relitigate this issue in a sub-
sequent motion; and (2) the specific defenses raised
in the government's second motion have been decided
in favor of plaintiffs by the Court of Appeals.[FN1]

> FN1. By letter dated December 13, 2000, the
> parties agreed that plaintiffs would respond

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 632937 (E.D.Pa.), 52 ERC 2045
(Cite as: Not Reported in F.Supp.2d)

to defendant's motion to dismiss by filing a motion "to strike or otherwise challenge the right of the United States to file a second motion challenging the Court's subject matter jurisdiction. Thereafter, if the Court denies plaintiffs' challenge ..., plaintiffs shall have an adequate opportunity within which ... to address the merits of the United States' motion." (Pl.'s Mot. to Str. at 1 n. 1) (Def.'s Mot. to Dis. at 1 n. 1).

## DISCUSSION

*A. Successive Challenges to Subject Matter Jurisdiction*

**\*2** Plaintiffs point to the Court of Appeals' holding that: "the District Court has subject matter jurisdiction over Gould/APU's FTCA claim for contribution, but not for indemnity." (Pl.'s Mot. Str. at 5, quoting *Gould I,* 220 F.3d at 174). Plaintiffs maintain that since the Court of Appeals decided the issue of subject matter jurisdiction against the government, under the "law of the case doctrine" the government may not raise this issue again. (Pl.'s Mot. to Str. at 7). Under the law of the case, "when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the litigation." *Deisler v. McCormack Aggregates Co.,* 54 F.3d 1074, 1087 (3d Cir.1995). The doctrine was developed "to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Casey v. Planned Parenthood,* 14 F.3d 848 (3d Cir.1994). The rule applies "both to issues expressly decided by a court in prior rulings and to issues decided by necessary implication." *Bolden v. Southeastern Pennsylvania Transportation Authority,* 21 F.3d 29, 31 (3d Cir.1994). Whether a ruling constitutes the law of the case is a matter within the sound discretion of the trial court, see *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983), and "applies only to issues actually addressed and decided at a previous stage of the litigation." *Koppers Co., Inc. by Beazer East, Inc. v. Certain Underwriters at Lloyd's London,* 993 F.Supp. 358, 364 (W.D.Pa.1998)

In my Order dated October 12, 1999, I granted the

government's motion to dismiss plaintiffs' case based on my determination that I lacked subject matter jurisdiction because under New York law a private person would not be liable to plaintiffs and therefore under the FTCA the government is not liable. The Court of Appeals reversed this ruling, holding that Ohio law governs this controversy and that the claim for contribution is permissible under Ohio law. This determination does not, however, foreclose challenges to subject matter jurisdiction based on entirely independent grounds. The law of the case doctrine applies only to issues expressly decided by a court in prior rulings and to issues decided by necessary implication. *See Bolden* 21 F.3d at 31.

Under the Federal Rules of Civil Procedure, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3). "It is elementary that a federal court cannot create jurisdiction where none exists." 5A Wright & Miller § 1350, at 204-05. For this reason, "questions of subject matter jurisdiction are generally exempt from law of the case principles." *Id.* 18 § 4478 at 799 & n. 32. As Justice Scalia has explained, "it is a Court's obligation to dismiss a case whenever it becomes convinced that it has no proper jurisdiction, no matter how late that wisdom may arrive." *Wyoming v. Oklahoma,* 502 U.S. 437, 462, 112 S.Ct. 789, 117 L.Ed.2d 1 (1991) (Scalia, J., dissenting). *In Baca v. King,* 92 F.3d 1031, 1034 (10th Cir.1996), the Court of Appeals for the Tenth Circuit declared that the law of the case doctrine "is not a fixed rule that prevents a federal court from determining the question of its own subject matter jurisdiction in a given case." The Court of Appeals for the Second Circuit has observed that subject matter jurisdiction is "particularly suited" for reconsideration. *DiLaura v. Power Authority of the State of New York,* 982 F.2d 73, 77 (2d Cir.1992).

Plaintiffs argue that while lack of subject matter jurisdiction may be raised "at any time" it may not be raised "time after time." (Pl.'s Mot. to Str. at 18). According to plaintiffs, if the government's motion is allowed to go forward it would encourage litigants to engage in delay tactics by bringing "endless" motions-each prefaced on a different objection to subject

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 3
Not Reported in F.Supp.2d, 2001 WL 632937 (E.D.Pa.), 52 ERC 2045
(Cite as: Not Reported in F.Supp.2d)

matter jurisdiction. Plaintiffs contend that this conduct violates the spirit and specific provisions of Rule 12(g) as well as the policy rationales recently reiterated by the Court of Appeals for the Seventh Circuit in *United States v. County of Cook,* 167 F.3d 381, cert. denied, 528 U.S. 1019, 120 S.Ct. 527, 145 L.Ed.2d 408 (7th Cir.1999). In *Cook* the Court expressed a concern that all decisions adverse to the financial interests of the United States would be reduced to advisory status if the government were allowed to attack collaterally a judgment on the grounds that the issuing court lacked subject matter jurisdiction. *See id.* at 385. This concern was rooted in the fear that "if the governmental body never had to raise the defense in the first litigation, [it] could simply ignore the judgment and insist that its adversary try again." *Id.* at 386. Such a result would run counter to the principles of claim preclusion and res judicata. "The law has developed the doctrine [ ] ... res judicata in order to 'protect ... adversaries from the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Charter Oak Fire Ins. Co. v. Sumitomo Marine and Fire Ins. Co., Ltd.,* 750 F.2d 267, 270 (3rd Cir.1984), quoting *Montana v. United States,* 440 U.S. 147, 153-54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Unlike *Cook,* however, no final judgment has been entered in the case before me and therefore the concerns that motivated the *Cook* Court's decision are not present.

**\*3** Plaintiffs also maintain that Federal Rule of Civil Procedure 12(g) precludes the government "from challenging subject matter jurisdiction on a piecemeal basis designed to delay litigation and squander judicial and private resources." (Pl. Mot. to Str. at 14). Rule 12(g) states:
A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party. If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.

Plaintiffs correctly point out that subject matter jurisdiction is not one of the excepted defenses listed in Rule 12(h)(2). Therefore, plaintiffs argue, Rule 12(g) mandates that the government raise all of its arguments regarding subject matter jurisdiction in its first motion to dismiss. (Pl.'s Mot. to Str. at 15). I do not agree.**\*4** [E]ven though a Rule 12(b) motion has been made and a second Rule 12(b) motion is not permitted, the three defenses listed in Rule 12(h)(2) may be raised on a motion under 12(c) for judgment on the pleadings at trial. Of course a challenge to the court's subject matter jurisdiction may be raised at any time and is not subject to the consolidation and waiver provisions.

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1385 (2d ed. 1990). The advisory committee's note accompanying the 1966 amendments to the Rules refer to the policy forbidding successive motions established in Rule 12(g). Fed.R.Civ.P.1966 Amendment advisory committee's note. However the note also states:It is to be noted that while the defenses specified in subdivision (h)(1) are subject to waiver as there provided, the more substantial defenses of failure to state a claim upon which relief can be granted, failure to join a party indispensable under Rule 19, and failure to state a legal defense to a claim ..., *as well as the defense of lack of jurisdiction over the subject matter (see Rule 12(b)(1)), are expressly preserved against waiver by amended subdivision (h)(2) and (3).*

*Id.* (emphasis added). Rule 12(g) does not prevent the government from asserting a second challenge to subject matter jurisdiction.

### B. Gould I

Plaintiffs also contend that the Court of Appeals disposed of the specific issues raised by the present motion. Plaintiffs argue that the Court of Appeals was "fully cognizant" of the discretionary function exception to the FTCA due to its discussion of *Gotha v. United States,* 115 F.3d 176 (3d Cir.1997), "one of the leading Third Circuit decisions on that issue." (Pl.'s Mot. to Str. at 6). "Thus, the Third Circuit should be presumed to have considered it in concluding that subject matter jurisdiction exists." *Id.* at 11.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 4
Not Reported in F.Supp.2d, 2001 WL 632937 (E.D.Pa.), 52 ERC 2045
(Cite as: Not Reported in F.Supp.2d)

In support of this contention plaintiffs cite to the *Gould I* Court's discussion of Gotha:

In *Gotha,* the defendant asserted the court lacked jurisdiction under the FTCA because the claim fell under the discretionary function exception to the FTCA. [The case before us] involves a determination of jurisdiction under the FTCA based on whether the United States would be liable 'in accordance with the law of the place where the act or omission occurred.' 28 U.S.C. § 1346(b)(1). Although a different provision of the FTCA is implicated, we see no principled reason to distinguish between a jurisdictional determination based on the discretionary function exception and one based on a conflict of law analysis.

*Gould I,* 220 F.3d at 178. Plaintiffs contend that the above quoted language is an "explicit not[ation] that this was not a discretionary function case." (Pl. Mot. to Str. at 11). In my view, the Court of Appeals was not determining the applicability of the discretionary function exception but was utilizing *Gotha* to evaluate the plaintiffs' argument that I had improperly treated the government's prior Rule 12(b)(1) motion as a Rule 12(b)(6) motion. Whether or not the *Gould I* court was "cognizant" of the discretionary function exception, the Court of Appeals did not rule on the issue.

**\*5** Plaintiffs also assert that the Court of Appeals "explicitly considered whether the independent contractor exception applied to this case and held that it did not." (Pl.'s Mot. to Str. at 9). The Court stated:

Although the United States contracted with Sonotone for operation of the plant, it is still deemed to have been operating the plant by virtue of the control it retained over the operations. *Cf. FMC Corp. v. United States Dep't of Commerce,* 29 F.3d 833, 843 (3d Cir.1994) (en banc). In *FMC,* a CERCLA case, this Court determined the United States was an operator of a plant even if it contracted out the operation, so long as it retained substantial control over the facility and has active involvement in the activities there. *See id.* In *FMC,* the United States was held to be an operator of a plant because it:

determined what product the facility would manufacture, controlled the supply and price of the facility's raw materials, in part by building or causing plants to be built near the facility for their production, supplied equipment for use in the manufacturing process, acted to ensure that the facility retained an adequate labor force, participated in the management and supervision of the labor force, had the authority to remove workers who were incompetent or guilty of misconduct, controlled the price of the facility's product, and controlled who could purchase the product.

*Id.* Similarly, the United States was an operator of the Cold Spring battery plant because it owned all real and personal property, installed all equipment, owned all materials and supplies, controlled what the plant would produce, had access to the plant at all times, reserved the right to dismantle or repair the plant, reserved the right to shut down the plant, and had the ability to exercise day-to-day control over the operations of the plant, and, through contracts, set the price terms for products produced by the plant.

*Gould I,* 220 F.3d at 182. n. 18. The government maintains that the Court of Appeals found that the government operated the facility merely for the purpose of deciding the choice of law issue, pointing out that the court made no explicit reference to the FTCA's independent contractor exception. Further, the government argues that the test used to determine control in CERCLA cases such as *FMC* is broader than the test applicable under the FTCA's independent contractor exception. In *Norman v. Elwyn Industries,* 111 F.3d 356, 357 (3d. Cir.1997), the Court of Appeals stated that the critical factor used to distinguish a federal agency employee from an independent contractor under the FTCA "is whether the government has the power 'to control the detailed physical performance of the contractor.' " *Id.* (citations omitted). "The question," stated the *Norman* court, "is not whether the contractor receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the federal government." *Id.* (citations omitted). Reviewing the Court of Appeals' characterization of the nature and extent of the government's involvement with the battery plant, I conclude that I am bound by its determination that the government is "deemed to have been operating the plant by virtue of the control it retained over operations." 220 F.3d at 182 n. 18. Accordingly, the government may not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5
Not Reported in F.Supp.2d, 2001 WL 632937 (E.D.Pa.), 52 ERC 2045
(Cite as: Not Reported in F.Supp.2d)

challenge subject matter jurisdiction under the independent contractor exception to the FTCA.

An appropriate Order follows.

### ORDER

**\*6** AND NOW, this ... 6d day of June, 2001, after consideration of plaintiffs' motion to strike defendant's motion to dismiss and defendant's response thereto, it is ORDERED:

1. Plaintiffs' motion to strike defendant's motion to dismiss is GRANTED as to the independent contractor exception to the FTCA, 28 U.S.C. § 2671. In all other respects plaintiffs' motion is DENIED.

2. Defendant's motion to dismiss plaintiffs' complaint under the independent contractor exception to the FTCA, 28 U.S.C. § 2671, is DENIED.

3. Plaintiffs are directed to respond to defendant's Rule 12(b)(1) motion asserting that it is insulated from liability under the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), within fourteen days from the date of this Order. Defendant may reply within fourteen days thereafter.

E.D.Pa.,2001.
Gould Electronics Inc. v. U.S.
Not Reported in F.Supp.2d, 2001 WL 632937 (E.D.Pa.), 52 ERC 2045

Briefs and Other Related Documents (Back to top)

• 2:99cv01130 (Docket) (Mar. 03, 1999)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on October 30, 2006, the attached

document was hand delivered to the following persons and was electronically filed with

the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the

following and the document is available for viewing and downloading from CM/ECF:

James L. Holzman (#663)
J. Clayton Athey (#4378)
Eric M. Andersen (#4376)
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899


I hereby certify that on October 30, 2006, I have Electronically Mailed the

attached document to the following non-registered participants:

Michael D. Hausfeld
Daniel A. Small
Brent W. Landau
Allyson B. Baker
COHEN, MILSTEIN, HAUSFELD
& TOLL , P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
mhausfeld@cmht.com
dsmall@cmht.com
blandau@cmht.com
abaker@cmht.com

Michael P. Lehman
Thomas P. Dove
Alex C. Turan
THE FURTH FIRM LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
mplehmann@furth.com
tdove@furth.com
aturan@furth.com

Steve W. Berman
Anthony D. Shapiro
HAGENS BERMAN SOBOL
  SHAPIRO, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
steve@hbsslaw.com
tony@hbsslaw.com

Guido Saveri
R. Alexander Saveri
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111
guido@saveri.com
rick@saveri.com


By:   /s/ Richard L. Horwitz
        Richard L. Horwitz (#2246)
        W. Harding Drane, Jr. (#1023)
        POTTER ANDERSON & CORROON LLP
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        P.O. Box 951
        Wilmington, DE 19899-0951
        (302) 984-6000
        rhorwitz@potteranderson.com
        wdrane@potteranderson.com


728761