# EXHIBIT C

1       IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2          IN AND FOR THE COUNTY OF SAN FRANCISCO

3           HONORABLE RICHARD A. KRAMER, JUDGE

4                DEPARTMENT NO. 304

5                   ---o0o---

6   COMPETITION COLLISION CENTER,   )
    LLC, on behalf of itself and    )
7   all others similarly situated,  )
                                    )  Case No. 431278
8                Plaintiff,          )
                                    )
9           v.                      )
                                    )
10  CROMPTON CORPORATION; ROHM and  )
    HAAS COMPANY; ATOFINA CHEMICALS,)
11  INC. F/K/A ELF ATOCHEM          )
    NORTH AMERICA, INC.; FERRO      )
12  CORPORATION; MITSUBISHI RAYON   )
    AMERICA, INC.; KREHA CORPORATION)
13  OF AMERICA; AKCROS CHEMICALS    )
    AMERICA; AKZO NOBEL, INC.;      )
14  BAERLOCHER USA, L.L.C. and      )
    DOES 1 through 100 inclusive,   )
15                                  )
                                    )
16               Defendants.        )
    _____)

17              REPORTER'S TRANSCRIPT

18              OF PROCEEDINGS ON

19          WEDNESDAY, APRIL 27, 2005

20                   ---o0o---

21      PLEASE NOTE GOVERNMENT CODE SECTION 69954(d):

22      "ANY COURT, PARTY, OR PERSON WHO HAS PURCHASED A

23   TRANSCRIPT MAY, WITHOUT PAYING A FURTHER FEE TO THE

24   REPORTER, REPRODUCE A COPY OR PORTION THEREOF AS AN

25   EXHIBIT PURSUANT TO COURT ORDER OR RULE, OR FOR INTERNAL

26   USE, BUT SHALL NOT OTHERWISE PROVIDE OR SELL A COPY OR

27       COPIES TO ANY OTHER PARTY OR PERSON."

28   Reporter:  Irene Burns, CSR #1815

```
1                   PAGE 1 OF APPEARANCES:

2    For Plaintiff Competition Collision Center, LLC:

3    SAVERI & SAVERI, INC.
     By:  R. ALEXANDER SAVERI
4         GEOFFREY C. RUSHING
          Attorneys at Law
5    One Embarcadero Center, Suite 1020
     San Francisco, Ca  94111
6         -and-
     THE FURTH FIRM, LLP
7    By:  CHRISTOPHER L. LEBSOCK, Attorney at Law
     225 Bush Street, 15th Floor
8    San Francisco, Ca  94104

9
     For Defendant Crompton Corporation:
10
     O'MELVENY & MYERS, LLP
11   By: IAN SIMMONS, Attorney at Law
     1625 Eye Street, N.W.
12   Washington, D.C. 20006
          ,-and-
13   O'MELVENY & MYERS, LLP
     By:  JESSICA A. HOOGS, Attorney at Law
14   275 Battery Street, Suite 2600
     San Francisco, CA  94111
15

16   For Defendant Akcros Chemicals America & Akzo Nobel, Inc.:

17   SHOOK, HARDY & BACON, LLP
     By:  PATRICK J. GREGORY, Attorney at Law
18   333 Bush Street, Suite 600
     San Francisco, CA  94104
19

20   For Defendant Kreha Corporation of America:

21   COLLETTE ERICKSON FARMER & O'NEILL, LLP
     By:  ROBERT S. LAWRENCE, Attorney at Law
22   235 Pine Street, Suite 1300
     San Francisco, CA  94104
23

24   For Defendant Baerlocher USA, LLC.:

25   SNYDER MILLER & ORTON
     By:  LUTHER ORTON, Attorney at Law
26   111 Sutter Street, Suite 1950
     San Francisco, CA  94104
27

28
              APPEARANCES CONTINUED ON NEXT PAGE
```

1                       APPERANCES CONTINUED:

2     For Defendant Ferro Corporation:

3     SQUIRE, SANDERS & DEMPSEY, LLP:
      By:  NATHAN LANE III, Attorney at Law
4     One Maritime Plaza, Suite 300
      San Francisco, CA  94111
5

6     For Defendant Mitsubishi Rayon America, Inc.:

7     PILLSBURY, WINTHROP, SHAW & PITTMAN, LLP
      By:  ROXANE A. POLIDORA, Attorney at Law
8     50 Fremont Street
      San Francisco, CA  94105
9

10    For Defendant Atofina Chemicals, Inc.:

11    COBLENTZ, PATCH, DUFFY & BASS, LLP
      By:  FREDERICK S. FIELDS, Attorney at Law
12    One Ferry Building, Suite 200
      San Francisco, CA  94111
13

14    For Defendant Rohm & Haas Company:

15    MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP:
      By:  PETER BRESLAUER, Attorney at Law
16    123 South Broad Street
      Avenue of the Arts
17    Philadelphia, PA  19109
                -and-
18    SHEPPARD, MULLING, RICHTER & HAMPTON, LLP
      By:  GARY L. HALLING, Attorney at Law
19    4 Embarcadero Center, 17th Floor
      San Francisco, Ca  94111
20

21                        ---oOo---

22

23

24

25

26

27

28

4

**WEDNESDAY, APRIL 27, 2005**

---oOo---

THE CLERK:  Competition Collision Center vs. Crompton

Corporation, et al.  Case Number 431278.

THE COURT:  Welcome back.  We have your appearances.  As

always, before you speak speak your name, who you represent and

speak far more slowly than normal people do.

All right.  Let's deal with the demurrers filed by

Crompton Corporation and the starting point is there's a

request for judicial notice in the reply.  Is there an

objection?

MR. RUSHING:  Yes, your Honor.  Well, I guess we don't

object to the Complaint, the fact of its filing.  We do object

to the conclusions drawn from the name of the plaintiff.

THE COURT:  All right.  As I read the request for

judicial notice the request is that I take judicial notice of

something that was filed in a California court, perfectly

appropriate, but you are not asking me to take judicial notice

of the fact that auto repair places don't manufacture plastic

products, that is simply a logical conclusion that you wanted

me to reach, not something as a matter of judicial notice, is

that right?

MR. SIMMONS:  That's correct, your Honor.

THE COURT:  You got to state who you are.

MR. SIMMONS:  Ian Simmons, your Honor, for Crompton

Corporation.

THE COURT:  All right.  The request for judicial notice

with that understanding is granted.  Tentative ruling is to

1  overrule all the demurrers.  I think that starting with that
2  last point that I understand as a matter of common knowledge
3  any auto repair business does not involve the manufacturing of
4  plastic products or the distribution of chemicals.  It's not a
5  matter of my common knowledge of that, nor has there been any
6  showing by the defendant that such is a matter of common
7  knowledge not subject to reasonable debate.  I don't want to go
8  off on a frolic and detour here about what car repair places
9  do, but I would say it is common knowledge that there are
10 plastic parts on cars, where the repair places get them is I
11 don't believe the proper subject of judicial notice.  Nor can I
12 say that that would be the only instance in which the products
13 in question here would be purchased indirectly by the various
14 plaintiffs here.

15     So that logical string doesn't follow and I think that
16 the Complaint itself does sufficiently allege an indirect
17 purchase of plastic additives, that would be paragraph six.
18 It's actually stated in a way that I don't believe I ought to
19 interpret it.  It says plaintiff indirectly purchased plastic
20 additives from one or more of the defendants, period.  I don't
21 know what there is to interpret about that.  Whether it
22 happened in the real world is not my concern for today, this is
23 a demurrer.

24     Equally pertinent here are paragraphs 32, 34, and 36,
25 which I think sufficiently plead a violation of the Cartwright
26 Act if these facts are established.  And the idea that from all
27 of this I'm supposed to inexorably conclude that an indirect
28 purchaser couldn't possibly have bought anything that directly

1    contains the defendants' product, and I said that on purpose,
2    directly contains through an indirect purchase and then it
3    would be so attenuated that you couldn't possibly have standing
4    here.  I can't say that from this Complaint at all.  I have to
5    say the opposite.  I have to interpret it in a way most
6    conducive to finding the existence of a cause of action.

7         The other arguments, the Korea Supply thing and the
8    statute of limitations, even if established are not the subject
9    of a general demurrer.  They may or may not be issues later on
10   in this case, but they are not the subject of a general
11   demurrer.  General demurrer, if a cause of action, any part of
12   it states a cause of action then that's sufficient, even if
13   there are defects within that cause of action.  I'm not saying
14   that there are or are not, but a general demurrer is not
15   appropriate for the attack based on those claims.  That should
16   give you something to argue about.  You want to argue?

17        MR. SIMMONS:  I do, your Honor.

18        THE COURT:  Okie dokie.

19        MR. SIMMONS:  Thank you, your Honor.  Ian Simmons for
20   Crompton Corporation.  We would urge the Court to reverse
21   itself on the tentative.  We think this Complaint, taking this
22   Complaint on its four corners proves what we are urging upon
23   the Court, which is this plaintiff did not purchase even
24   indirectly a product manufactured by Crompton or much less any
25   of these other defendants.  You read paragraph six, your
26   Honor --

27        THE COURT:  Right.  What I need you to do and what your
28   brief did not do is you point me to other paragraphs by number,

|  |  |
|---|---|
| 1 | I have the Complaint up here, that would help immensely.  Go |
| 2 | ahead. |
| 3 | MR. SIMMONS:  Our brief does that, and I'm going to do |
| 4 | it again, your Honor, but I first want to give the Court a |
| 5 | metaphor.  I'm respectfully suggesting to the Court that what |
| 6 | these plaintiffs are saying are that they are suing |
| 7 | manufacturers of producers of electricity, okay?  And what they |
| 8 | bought were shoes and they're contending that the electricity |
| 9 | used to run the machines to make the shoes that they bought |
| 10 | that they therefore bought electricity.  That is what this |
| 11 | Complaint shows.  That is what is demonstrated by the Complaint |
| 12 | that the Court just took judicial notice of -- |
| 13 | THE COURT:  See the picture? |
| 14 | MR. SIMMONS:  Well yes, I see it over there.  Well, it's |
| 15 | covered up by my notes -- |
| 16 | Your Honor, I respectfully -- I'm going to walk you |
| 17 | through the paragraphs of the Complaint.  These plaintiffs did |
| 18 | not buy plastic additives manufactured by Crompton or any of |
| 19 | the other companies sitting before you that were then channeled |
| 20 | down the stream of distribution and ended up in their pockets. |
| 21 | All right? |
| 22 | It's not even apparent from this Complaint that the |
| 23 | products manufactured by Crompton were in fact even a component |
| 24 | of products that they purchased.  My electricity example is a |
| 25 | good one.  Electricity once it's used evaporates -- |
| 26 | THE COURT:  I got it. |
| 27 | MR. SIMMONS:  I'm going to take you to the Complaint |
| 28 | now, your Honor. |

8

```
 1        THE COURT:  That's exactly where I want to go.
 2        MR. SIMMONS:  Right.  And I would also suggest to the
 3   Court the cases that we cite and your very language in the
 4   Credit Card case where you state that Associated General
 5   Contractors, just quote back to the Court, sets forth, I'll
 6   find the language for you, your Honor.  The standards of
 7   Associated General Contractors, while perhaps flexible, while
 8   perhaps guidelines still exist, and clearly establish minimum
 9   requirements for standing to file a lawsuit of this kind.  What
10   is it in the Complaint that proves what I'm saying?  That the
11   Court is not obliged to accept as true a mere conclusion.  I
12   bought electricity when the rest of the Complaint shows --
13        THE COURT:  Get off the electricity thing, will you?
14   Because I got it.  Just --
15        MR. SIMMONS:  Let's --
16        THE COURT:  Don't talk while I'm talking because the
17   court reporter won't get anything.
18        The next sentence you utter should have the following
19   words in it: paragraph number, okay?
20        MR. SIMMONS:  Paragraph 27, your Honor.  If you look at
21   that it states:
22             "Plastics are made from resins and additives.
23             Plastic additives are added to plastic resins in
24             order to enhance the quality of those resins.
25             Commercial resins require the use of plastic
26             additives to adjust performance characteristics
27             to desired specifications and applications.
28             Plastic additives are heat stabilizers, impact
```

1          modifiers to processing aids."

2          I'll go on then to 28 29, and 30.

3          THE COURT:  What you have to do is speak loudly into the

4  microphone and much more slowly, especially when you're

5  reading.

6          MR. SIMMONS:  Thank you, your Honor, I will.

7          So I'm respectfully suggesting to the Court that read

8  fairly, taking this Complaint, the plain language in front of

9  the Court, 27 is telling the Court that plastic additives are,

10  I won't use my metaphor again, I'm respectfully suggesting to

11  the Court 27 is proving my metaphor, that it is used, it's not

12  even, it's not even necessarily accurate to say it's an input.

13  So 27, I'm suggesting to the Court, proves the point that they

14  did not buy plastic additives even indirectly from these

15  defendants, rather additives are used to process something that

16  they may have purchased, hence my metaphor.

17          "28:  "Heat stabilizers are used to protect

18          resins."

19          So heat stabilizers are used to protect something that

20  they may have purchased.  That's what it says.  I didn't write

21  that, they did.

22          From thermal degradation and to enhance the

23          flexibility and stability of the end product."

24          The end product.  When Mr. Saveri gets up here perhaps

25  the Court, perhaps it could be put to him what in fact did his

26  client buy that's in issue here, but that's what the Complaint

27  says.

28          "Heat stabilizers are used to protect resins from

1                  thermal degradation and enhance the flexibility

2                  and stability of the end product.  Although heat

3                  stabilizers are used in a number of plastics,

4                  polyvinyl chloride (PVC) accounts for the great

5                  majority of the use."

6      So heat stabilizer, which they define as plastic

7  additives, is used in something else.  And what I'm suggesting

8  to the Court, read fairly this Complaint in conjunction with

9  the Complaint that we cite in Footnote 1 of our reply brief, in

10  which the Court just took judicial notice of, hence my

11  metaphor, they didn't buy electricity they bought shoes.

12                "29:  Impact modifiers are used to improve the

13                resistance of the finishes plastics -- of the

14                finishes plastic products to stress."

15      That's the way it's written, strikes me as a little

16  awkward.

17                "Impact modifiers improve the strength of the

18                product --

19                And there's a typographical error, "impact

20                modifiers," it says "laso" but they mean "also,"

21                it says l-a-s-o --

22                "increase resistance to weathering and stress

23                rupture, and increase chemical resistance and

24                tensile strength of plastic compounds."

25      So, again, read on its face 29 is telling you that one

26  of the sub-components of the product in issue here, impact

27  modifier, which they define to mean plastic additives, is used

28  to make something else.  That's what 29 says.  I'm not saying

```
 1    it, the Complaint says it.
 2             "30:   Processing aids are used to reduce or
 3             increase melt viscosity, increase frictional heat
 4             and reduce uneven die flow."
 5    Again, that's what 30 days.
 6    I think the pleading standards, your Honor, as I
 7    understand them in California law come very close to the
 8    standards under US District Courts and which the Supreme Court
 9    talk about in Associated General Contractors, which you cited
10    in your Credit Card case, you're obliged to accept as true
11    facts pleaded in the Complaint, you're not expected to accept
12    as true conclusions.
13    I think even if you were to take mere conclusions as
14    true, again the Complaint in the light most favorable to the
15    non-moving side, these paragraphs demonstrate my metaphor, they
16    demonstrate what I'm talking about.  This is not an indirect
17    purchaser case.  Indirect purchaser case, your Honor, is where
18    the alleged conspiring entities make a widget, it's sold
19    through a stream of distribution and some indirect level, some
20    indirect level of potential class members purchase that widget.
21    That is not that situation.  The Complaint tells you that.
22    Moreover, your Honor, I think you can also read those
23    paragraphs of the Complaint and reach the conclusion it's not
24    even a situation where the product that they bought contain
25    these alleged products as an input, these are products that are
26    used to make a product that they may have purchased, but the
27    products that we manufactured may well have evaporated, hence
28    my metaphor of electricity.  If what they bought was shoes and
```

1    the suppliers of electricity conspired, and those electricity

2    ran the shoe machines, that's what I suggest that this

3    Complaint is telling you, that's what the Complaint that we

4    cite in Footnote 1 tells you.  This is an auto repair shop that

5    may have plastic products.  I know your Court says it's common

6    knowledge that, you know, that auto repair shops may have

7    plastic products, that proves my point, that proves my very

8    point.  Those are the shoes.  It's not electricity.  And so

9    what I'm suggesting to the Court is you can fairly read this

10   Complaint from front to end from end to front, take it on its

11   own terms, because although they use the mantra plastic

12   additives when they actually define it they are proving the

13   point, they're proving our point better than we could.

14        So I would respectfully request that the Court

15   reconsider its tentative, that you go back and look at exactly

16   what you did in the Credit Card case where you wrote, and I'm

17   reading here from your opinion, your Honor.

18        THE COURT:  Are you reading the same thing you read a

19   couple of minutes ago?

20        MR. SIMMONS:  No, I'm not.

21        THE COURT:  Okay, go ahead.

22        MR. SIMMONS:  "I also think that the plaintiffs here are

23             neither direct purchasers nor indirect purchasers of any

24             good or service from the defendants here, and to the

25             extent there are exceptions to that requirement, they're

26             inapplicable here.

27          I also think that the plaintiffs here are neither

28             direct purchasers or indirect purchasers of any

1          good or service from the defendants?"

2          I think it's apparent from the face of the Complaint,

3    the paragraphs I've just read you from the Complaint, 27

4    through 30, that whatever products they bought were not

5    products manufactured by this defendant, or we would submit the

6    other defendants.  And indeed, your Honor, I think fairly read,

7    squarely read, those paragraphs 27 through 30 support the

8    proposition that they're not even, the products we made were

9    not even components in the products they made, my electricity

10   metaphor.  So I would urge you to reflect on this ruling, go

11   back and look at Associated General Contractors.  This case is

12   the poster child of a Complaint which is, which has been filed,

13   which has zero facts connecting any cause -- no facts stating a

14   causal relationship between anything these defendants did, much

15   less Crompton Corporation, in any alleged injury in fact that

16   this plaintiff may have suffered.  It's simply not accurate to

17   say that the Court has to accept as true facts posing as legal

18   conclusions.  If I simply assert that Crompton did something

19   wrong, and I was injured thereby and I leave it at that I don't

20   think under controlling standards of evaluating demurrer you're

21   obliged to accept as true my statement.  Why?  Because my

22   statement is a mere legal conclusion posing as a fact.  Rather

23   I believe what I'm obliged to do as a plaintiff is plead facts

24   that then you have to accept as true, and as I think I've

25   indicated, the facts that they plead where they define the

26   products in issue here prove my point, that they're not

27   indirect purchasers of anything we made, and even if they were

28   they have not pleaded facts demonstrating how they were injured

1    in fact, and you're not obliged to accept as true any
2    speculative notion of harm.  Your Honor cited Associated
3    General Contractors in the Credit Card case.  Associated
4    General Contractors, Justice Stevens made quite clear that not
5    every person tangentially affected by an anti-trust violation
6    has standing to sue.  The California courts time and time
7    again, admittedly Associated General Contractos is not binding
8    on your Honor, your Honor recognized that in the Credit Card
9    case, nevertheless you followed it.  Time and time again the
10   California courts have rejected conclusory allegations such as
11   those before you.  And as I've suggested to you, the plain
12   language of the Complaint takes you to what we are urging upon
13   you.

14        Indeed, your Honor, other courts in similar situations
15   have willingly granted motions to dismiss on facts out of
16   complaints such as this, and we cite you a series of cases,
17   Footnote 4 in our reply brief, I believe it's Footnote 7 in our
18   opening brief, where we've had a number of cases, both in the
19   Credit Card cases and in the Chemicals cases, most recently the
20   Crouch v. in North Carolina, where courts have rejected this
21   kind of reasoning.

22        What the plaintiffs are proposing to do here is launch
23   all of us down a long burdensome road of discovery on
24   allegations that simply don't even meet the bare minimum test.
25        So with that, your Honor, I would respectfully urge that
26   you reconsider your tentative and grant the demurrer.  Thank
27   you.
28        THE COURT:  Thank you.

1        MR. RUSHING:   Your Honor, Geoffrey Rushing on behalf of
2   the plaintiffs.   Unless your Honor has questions we would
3   submit it on the papers.
4        THE COURT:   Thank you.   The matter is submitted.   The
5   demurrers are overruled.   The metaphors were entertaining.   I
6   didn't know a case could be a poster child sort of thing,
7   conjured up an image.   And the electricity and the shoe thing
8   was also a good metaphor.   I just don't think this Complaint
9   says that.   This Complaint says unequivocally in paragraph six
10  that the defendants' product was purchased, period.   What
11  plaintiffs, excuse me, defense counsel wants me to do is put
12  together what I'll grant is a logical sequence in paragraphs
13  27, 28.   Of course what's missing from the logic, which appears
14  with the powerful metaphor you gave, is the concept of the
15  electricity disappearing.   There's nothing in 27, or 28 or 29
16  that says that the plastic additives disappear in the sense
17  that the electricity runs the machine and is not found in the
18  final shoes.   Although you can get static electricity from
19  shoes, I doubt that that has to do with what you were talking
20  about, but nonetheless, there's nothing to indicate that
21  whatever this stuff is it disappears or never goes into the
22  product.
23        It is equally plausible to read paragraph 27, for
24  example, to indicate that this stuff forms a protective shield
25  around the resins and enhances it in the way described and
26  remains in the product throughout its life, that is an equally
27  plausible reading of those paragraphs.   And of course I don't
28  know anything about how this stuff really works and I suspect

1   you do, but that goes beyond the four corners.

2        I'm also not supposed to read this reasonably.  I'm

3   supposed to read this in a way that is most conducive to

4   finding a cause of action, not to find the most reasonable

5   explanation for all of this.

6        Put all that together and tentative ruling stands.

7   Plaintiffs will prepare an order.  Probably have one.

8        MR. RUSHING:  We have one, your Honor.

9        THE COURT:  Does it just say the demurrers are

10  overruled?

11       MR. RUSHING:  Yes.

12       THE COURT:  Okay, you want to show it to them.  How much

13  time do you want to answer?

14       MR. SIMMONS:  Your Honor, if we could have 20 days.

15       MR. SAVERI:  That's fine.

16       THE COURT:  Next time ask for 30.

17       MR. SIMMONS:  I'm used to federal court.  We're ready.

18       THE COURT:  All right, I'll sign it when we're done

19  here.

20       Let's go over to the case management conference.

21       Let me take up first the protective order, there's

22  something in there that caught my eye.  I want to know if you

23  did this on purpose.  The thing in paragraph 15 where if

24  somebody lodges something under seal and then fails to file a

25  motion to seal it within ten days, it automatically becomes

26  unsealed.  Is that what everybody agrees to?  Is that what you

27  have in mind, the ten day thing?  And supposedly it

28  automatically becomes unsealed?  And let me add that nothing

1   happens automatically in the government.  Envision what it's
2   going to look like, you'll have an envelope, a manila envelope
3   with the case caption on the front and you'll say conditionally
4   filed or lodged under seal and the clerk will stamp it, there
5   will be holes in it, it will go in the folder.  If you think
6   we're going to go back in ten days to see whether you filed a
7   motion you don't understand how government works.  It will sit
8   there until somebody opens the envelope, takes it out, and then
9   files it, or until the Court orders it taken out of the file
10  and returned to whoever lodged it.

11      MR. LEBSOCK:  I guess from our perspective, your Honor,
12  the reason we have the ten days in there, first of all it's
13  under the local rules of the San Francisco Superior Court it
14  says that, and under CRC 243 it talks about that as well.  From
15  our perspective we simply wouldn't want to have to go back to
16  the Court if it was -- if it was documents that the defendants
17  gave to us and that they did not move, for example, to seal
18  those records, we understand automatically it doesn't happen,
19  but we wouldn't have to get a further order to then bring the
20  documents down to the courthouse and get them sealed, get them
21  filed.

22      THE COURT:  It's not going to happen the way you wrote
23  it here.  All you're going to end up with is an envelope that's
24  lodged, unless somebody comes in and does something, it's just
25  not the way the clerk's office works.  What you might want to
26  change in here is the simplest way that I could think of was if
27  no motion is filed within ten days then any other party or any
28  party may file the documents without restriction.  And

1   therefore whoever is on the other side of one of these

2   lodgings, if there's a reason to have it filed you can do that.

3   And that way you'd simply take another batch of these things

4   and assuming there's a motion pending, I don't think you file

5   these just to have them in the court file.  You'll file this,

6   that's one way of doing it --

7           MR. HALLING:  Your Honor, Gary Halling for Rohm and

8   Haas.  I think we can work with the plaintiff's counsel and

9   revise the paragraph and submit a new order to you.  I think we

10  understand what you're saying.  If there's anything else in

11  there that you have an issue with we'll address that as well.

12  We'll just work with the plaintiff's counsel and get you a new

13  order.

14          THE COURT:  Okay.

15          MR. SAVERI:  That's fine, your Honor.  Rick Saveri on

16  behalf of the plaintiff.  I was going to say if that's the

17  procedure the Court would prefer because it would know the best

18  way of the documents are happening in the file and up here, I

19  think we're happy to go with it unless there's --

20          THE COURT:  I don't care.

21          (Laughter.)

22          THE COURT:  I truly don't care.  But what you got to do

23  when you write these things up is just think step by step what

24  does it look like and what happens.  You're coming to court,

25  you're giving them an envelope and you're hoping that 10 days

26  later or 11 days later somebody is going to open it up and file

27  it.  It won't happen.  And then if it doesn't happen it's not

28  part of the record, say, in the unlikely event somebody wants

1    writ review of something I've done relating to those documents.

2    So I don't care. If you want something filed then my

3    suggestion is you figure out how to get it filed.

4        My knowledge of how this clerk's office works, what I

5    suggested would work. It would allow anybody to file this

6    thing. You're the monitors not the Court.

7        MR. SAVERI: Fair enough, your Honor. We'll meet and

8    confer and come up with some appropriate language.

9        THE COURT: Okay. It's like a lot of times we'll get

10    something lodged under seal without an envelope and then the

11    clerk will stick it in the file. It will be attached to

12    something, they'll charge you $32 and the clerk's office will

13    stick it in there and then 11 days later or 21 days later,

14    sometime, I'll sign an order that says these documents are

15    sealed. You take the order and you file it. Now you have down

16    this thick in the file documents without an envelope and above

17    them an order that says those other documents are sealed.

18    That's what it looks like. It goes up to the Court of Appeal

19    and they go what's going on here? Well, they know because

20    they've all had experience.

21        You are responsible for putting things in the folders

22    and getting the orders attached to them. The clerk's office,

23    and I'm not being pejorative about the clerk's office, the

24    amount of business it handles is staggering and they do a great

25    job there and we are under severe budget restraints.

26        Okay. Fix that, just send it over to me after

27    everybody's signed off on it and think it out step by step.

28        All right, the rest of it is leave you alone for six

1    months, right?

2           Anybody want me to do anything other than that?

3           MR. HALLING:   Your Honor, Gary Halling again for Rohm

4    and Haas.  We have, as you know, in the pretrial order that's

5    been entered, Pretrial Order Number One, we're planning to

6    produce a very very substantial amount of documents to the

7    plaintiffs after the protective order has been entered.  So

8    that certainly will occupy them, I would think, for quite

9    awhile.

10          We would like to make one request, which is the

11   Complaint, as I think we've been discussing, in some ways is

12   rather conclusory and sparse.  We would like to know some basic

13   information about the plaintiff, about who the plaintiff

14   purchased from and what the plaintiff bought with respect to

15   plastic additives.  We think that would be helpful in deciding

16   how best to manage this case and what the next steps ought to

17   be.  So we need to request of your Honor leave to serve such

18   discovery under the order and we would propose that we give a

19   copy in the next few days to plaintiff's counsel and meet and

20   confer with them, let them look at it, but we would like at

21   least to proceed on that discovery while we're waiting for the

22   next CMC.

23          MR. SAVERI:   Your Honor, may I respond to that?

24          THE COURT:   Sure.

25          MR. SAVERI:   The parties have worked out a discovery

26   coordination order which anticipates the type of discovery that

27   the defendants are requesting.  That discovery coordination

28   order specifically sets forth that the discovery here in the

1    State action would be put on hold unless the Court orders
2    otherwise until a date later down the road.  In the meantime
3    plaintiffs here would participate in the discovery in the
4    federal action and that federal action simply, basically the
5    discovery is that we would have access to the documents up
6    there and that we would be able to, in certain circumstances,
7    participate in depositions, or be precluded from those
8    depositions down the road.  However, though, we've reached an
9    agreement on how discovery will work here.  We've negotiated a
10   deal and your Honor has entered it and so we feel that this
11   discovery, because although they may want material of us, we
12   would like material of them then to respond to some of this,
13   and that gets into this whole California type of discovery,
14   which we feel we've already reached an understanding with,
15   should be put later down the road at the end of the litigation,
16   which we've agreed to, your Honor.

17         MR. HALLING:  Your Honor, the pretrial order is dated
18   August of last year, so that is some time ago and we certainly
19   did agree at that time in August to an initial procedure.  It
20   is a one way street to the extent that we're producing vast
21   quantities of documents and we think things are a little
22   different now.  We've heard the argument today.  We heard what
23   your Honor had to say about what was in the Complaint, the
24   arguments that Crompton made.  We think it would be useful to
25   know a little bit more about the plaintiff.  There's no burden
26   issue here.  We're talking about very limited discovery so we
27   can understand who the plaintiff is and simply what products
28   they bought and from whom they bought them and we would be

1    prepared to give that discovery to the plaintiff in the very
2    near future.

3         MR. SAVERI:  Your Honor, in response to that is where
4    they say they've made substantial discovery available, to date
5    they've produced no discovery to us.  We've received nothing.

6         MR. HALLING:  We've been waiting for the protective
7    order, your Honor, that's what triggers it.

8         MR. SAVERI:  And that still is yet to be entered.
9    However, your Honor, but the purpose of the discovery that they
10   have requested, all the defendants now have answered, except
11   for Crompton, which in the next 20 days will respond to the
12   Complaint.  The whole purpose of discovery, we sat down, we've
13   negotiated, we worked a deal with the defendants and the Court
14   has entered an order governing discovery and plaintiff believe
15   the parties should live by that order.

16        THE COURT:  I've got the August 10, 2004 order in front
17   of me here.  And I guess, do you have that?  Let's go off the
18   record for a minute.

19        (Off the record.)

20        THE COURT:  All right, back on the record.  I guess what
21   you're referring to in the, the plaintiffs are referring to
22   where they say that everybody agreed there will be no further
23   discovery, is paragraph Roman numeral III (c) under
24   depositions.

25        MR. SAVERI:  That's correct, your Honor.

26        MR. HALLING:  And we're referring, your Honor, to same
27   heading III (b), which says discovery-related indirect
28   purchaser issues raised in the California action shall take

1  | place at times and on such conditions as the Court may order.
2  | So that's why we're requesting what we think is a rather modest
3  | beginning to some information that would be useful in deciding
4  | how best to proceed with this case.

5  |      THE COURT:  I guess paragraph Roman numeral IV (b) sort
6  | of plays into this a little bit too.

7  |      UNIDENTIFIED FEMALE SPEAKER:  Right, exactly.

8  |      THE COURT:  All right, look, the whole point of this
9  | order, as I understood it when I signed it, was that there's an
10 | agreement that you were going to piggyback on the federal
11 | discovery, not duplicate efforts, and proceed, with the
12 | understanding from either side's perspective if the federal
13 | discovery wasn't satisfying the needs for this case you could
14 | come back to me and sequence something beyond that which is
15 | proceeding in the federal action.

16 |      Is that the plaintiff's understanding of the general
17 | scheme here?

18 |      MR. SAVERI:  Yes, your Honor.

19 |      THE COURT:  And I'm sure that's the defendants'
20 | understanding as well?

21 |      MR. HALLING:  Yes, your Honor and --

22 |      THE COURT:  All right, and the defendants are saying
23 | that's happened.  The federal case has not resulted in the
24 | production of information regarding such --

25 |      MR. HALLING:  Competition Collision --

26 |      THE COURT:  See the same thing with you, if you
27 | interrupt me the court reporter will only take down what I say,
28 | I can promise you that.

```
 1        Such matters as what it is that the plaintiffs bought
 2   and what their contention is regarding the existence of the
 3   questioned product in what they were buying, electricity and
 4   shoes, or perhaps something more direct than that, and that's
 5   what you want to find out, right?
 6        MR. HALLING:  Correct.
 7        THE COURT:  All right, do the plaintiffs disagree with
 8   what the defendants have represented?  That is, that such
 9   questions have not been propounded in the federal action yet?
10        MR. SAVERI:  I guess my response to that would be I
11   don't know, we haven't seen anything from the federal action,
12   but --
13        THE COURT:  Would it be a pretty good bet --
14        MR. SAVERI:  (Interjecting:)  It would be a pretty good
15   assumption, your Honor, yes it would --
16        THE COURT:  Don't interrupt me again.  What's with
17   everybody today?  You go away for awhile and then you come
18   back...
19        That's a direct purchaser action and my guess is they're
20   not asking what the plaintiffs here have been buying.  Pretty
21   good guess, uh?
22        MR. SAVERI:  That's correct, your Honor.
23        THE COURT:  All right.  So why shouldn't I allow that
24   discovery, which is not covered by the federal action, to
25   proceed here in an organized manner?
26        MR. SAVERI:  One of the reasons may be, your Honor, is
27   this, is that the purpose of this discovery would obviously be
28   they would want to use it for something which would be for
```

1   motions and other, whether it be a summary judgment type motion
2   or a judgment on the pleadings later down the road, no doubt
3   about it.  But for our (sic) to respond to that would then open
4   up additional discovery here, as well as trying to complete the
5   discovery in the federal action as to how impact, pass-on or
6   standing or these issues or injury relates to the indirect
7   purchasers here, your Honor.

8        So I think the best way to take that up would be wait
9   till the federal discovery is completed so then we can see what
10  is done there and then pick up the type of discovery that
11  they're requesting and what additional discovery the plaintiffs
12  would be requesting.  So we can do it all in one finite
13  cohesive seriatim method, and that would be after the discovery
14  in the federal would be complete.

15       THE COURT:  Well, my understanding of what the
16  defendants are asking for is that they're limited to what the
17  plaintiffs here purchased and what the plaintiff's contentions
18  might be relative to that and you do not intend yet to get into
19  the more complicated questions of passing-on or passing through
20  the costs, as well as market impact.  Am I right?

21       MR. HALLING:  Your Honor, you're correct that what we're
22  trying to do here is take the first step, which is simply learn
23  who they purchased from, what they bought, and then we'll see
24  what we get and come back.  If it's appropriate to proceed
25  further we'll -- but right now we're in the dark about this
26  plaintiff.  We don't know much of anything about them other
27  than what's in the Complaint, and you heard the argument here
28  today about what was in the Complaint, and we simply don't

1    know. And it seems fundamental, just basic information about
2    the plaintiff so we can then decide, you know, what might be
3    appropriate as the next step here.

4    THE COURT: All right, well to cut to the bottom line
5    here and to be very blunt, these cases often trail the direct
6    purchaser anti-trust cases and tend to resolve themselves one
7    way or the other in a manner consistent with what happens in
8    the other cases, I'm aware of that, and it is normally not
9    economically productive to get into the entire, say, chain of
10   distribution and product reformulation earlier in these cases.

11   Similarly, the economic impacts on a market, which is
12   the passing through costs thing dressed up slightly
13   differently, likewise difficult to do at this stage, but some
14   of the fundamental questions, who is this plaintiff, what did
15   this plaintiff buy, what's the product, I think ought to be
16   fair game.

17   Now I realize the defense counsel just thought, oh, no,
18   he just ruled that when you come back you're not going to get
19   anything further. I didn't have that in mind at all. But I am
20   mindful that a lot of what the plaintiffs were saying may or
21   may not be appropriate here early on. We'll deal with that
22   when it shows up. But I'm inclined to allow them to ask
23   targeted questions on this plaintiff, what this plaintiff says
24   it did and how it was impacted, without discovery on the
25   intermediate chain of events or distributors or manufacturers
26   or whatever it was that ends up at the plaintiff's place of
27   business and without economic analysis of market impact. It's
28   basically facts as to who this plaintiff is and what this

1    plaintiff bought and what this plaintiff thinks the allegations

2    in the anti-trust case in the federal court have to do with

3    that.

4          You want to come back and then say oh, boy, now we need

5    more stuff, I'll listen to you and I'll listen to the

6    plaintiffs.  Is that clear enough to get you going?

7          MR. HALLING:  I think it is, your Honor.  We envision

8    this, I think as you said, as just basic initial information

9    and then we'll see if there's an issue and if so we'll come

10   back to you.

11         MR. SAVERI:  I guess we'll see what their basic initial

12   requests are, your Honor.

13         'THE COURT:  It's going to be claimed to be overbroad I

14   know that --

15         (Laughter drowning out the last of the Court's

16   comments.)

17         MR. SAVERI:  I've seen what the defendants' request of

18   basic information tend to be.  And knowing Mr. Halling they're

19   going to be very lengthy and specific and so forth.  But maybe

20   the best thing to do would be to meet and confer ahead of time

21   and come back and maybe if we can't work it out before we start

22   responding to all this stuff.

23         THE COURT:  Sure.  First send it out, propound it, then

24   meet and confer, see if you can work out any stuff.

25         When you meet and confer if it turns out that some of it

26   is acceptable to the plaintiffs but other is not, produce that

27   which is acceptable and then -- so don't withhold all

28   production until you've worked out all details.  It's the same

1    deal I impose on defendants.

2         So if they want to know what did you buy and who did you

3    buy it from, that's pretty simple.

4         There may even be a question that deals with what

5    counsel suggested everybody in their right mind would

6    understand anyway that car manufacturer -- or collision places

7    don't manufacture plastic.  Maybe they do.  Maybe you want to

8    ask them that one too.

9         But in any event after you've done that -- I've got two

10   choices, one would be to have you come back for a case

11   management conference in about a month or so, maybe two months,

12   that will give you enough time to get an answer on file for

13   this one defendant, and to propound the discovery and to meet

14   and confer and to call each other names through correspondence

15   and to reach some understandings.  Then come back on a case

16   management conference and I'll take a look at it without

17   motions to compel so I'll save you some time and money.  If I

18   can work it out I will.  If I can't I'll let you file motions

19   to compel or motions for protective order.

20        MR. HALLING:  That sounds fine, your Honor.  About two

21   months sounds right.  We have lots of matters with Mr. Saveri's

22   office and we will do everything we can to try and work it out

23   and if there's something left I'm hopeful it will be fairly

24   limited.

25        THE COURT:  I would say as a guideline -- Mr. Saveri

26   what do you think of that?

27        MR. SAVERI:  No, that's fine.  I was going to say

28   schedule something three months out, you know, get with the

1    clients, get everything respond (sic), meet and confer and get

2    back.

3         THE COURT:  Isn't this interesting?  Everybody has

4    switched their usual positions.

5         (Laughter.)

6         MR. SAVERI:  We're getting into the summer months.  I

7    know how some certain people go certain places, but however you

8    want to do it.

9         THE COURT:  All right, I'll take care of the scheduling

10   in a minute.

11        What comes to mind is the guideline ought to be, ask the

12   plaintiff what the plaintiff did, or does and thinks, but no

13   questions on the industry, or the chain of, and I said

14   distribution or manufacturing, there's probably both going on

15   in this case.  So who are you?  What do you do?  What don't you

16   do?  That would be the stuff about what everybody supposedly

17   knows about collision places, and where did you get your stuff?

18   And maybe something like, do you contend that you paid a higher

19   price?  If so what makes you think that?  But not into the

20   industry itself, not into a tracking stages so you can do what

21   happens in the indirect purchaser cases later.  And I'm not

22   foreclosing that, I'm just saying for starters this gives you

23   plenty to do and I think answers your initial concern that you

24   don't know what this plaintiff's story is.

25        And because paragraph III (b) and (c) require an order,

26   I think I can do it by ordering it orally now as I just did and

27   I don't need to have a written order.  If anybody wants a

28   written order then speak up now, tell me who you are, tell me

1    that you want a written order, tell me how you propose I get
2    all of you to agree on it.  Nobody said anything.  Good.  This
3    will do the trick.

4          All right, let's go off the record.
5          (Off the record.)

6          THE COURT:  Back on the record.  We'll have a case
7    management conference on June 29, 2005 at 2:30.  Meet and
8    confer regarding the discovery that any defendant wants to
9    propound regarding the points I put on the record earlier.

10         To the extent the plaintiffs agree to produce material
11   start producing it.  To the extent you want to fight about any
12   of these things put it in a case management conference
13   statement, a joint case management conference statement, and
14   we'll take it up without motions to compel and without motions
15   for protective order.  If I can't resolve it informally then we
16   may have to go to the next step.

17         By the way, the Court rule is five court days before the
18   hearing, before these case management conference statements,
19   and the one you filed for today was filed two days ago.  So I
20   could sanction you all and do terrible things to you but I
21   won't.  But make it easier on us, okay?  Appreciate it.

22         Anything further today from the plaintiff

23         MR. SAVERI:  Nothing further, your Honor.

24         THE COURT:  Does any defendant have anything further?
25   That way you don't have to stand up and say your name.  If you
26   do have anything further stand up and say your name.  All
27   right, thanks.  Take it easy.

28                      (PROCEEDINGS CONCLUDED.)



Irene Burns, CSR 1815

```
1    STATE OF CALIFORNIA              )
2    CITY AND COUNTY OF SAN FRANCISCO )  ss.
3                                     )
4
5                    REPORTER'S CERTIFICATE
6
7
8            I, Irene Burns, do hereby certify that I am an
9    Official Court Reporter of the Superior Court of the City and
10   County of San Francisco, State of California, and that as such
11   I reported the proceedings had in the foregoing matter at the
12   date and place set forth herein;
13
14           That my stenographic notes were thereafter transcribed
15   by computerized transcription; and that the foregoing pages 1
16   through 31 inclusive constitute a full and correct transcript
17   of my said notes to the best of my ability.
18
19           Dated this 2nd day of May 2005.
20
21
22
23
24                              Irene Burns
25                              C.S.R. No. 1815
26
27
28
```