# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE INTEL CORPORATION MICROPROCESSOR ANTITRUST LITIGATION | MDL No. 05-1717-JJF |
| ADVANCED MICRO DEVICES, INC. and AMD INTERNATIONAL SALES & SERVICE, LTD., <br><br>　　　　　　　　Plaintiffs, <br><br>　　　vs. <br><br>INTEL CORPORATION and INTEL KABUSHIKI KAISHA, <br><br>　　　　　　　　Defendants. | C. A. No. 05-441-JJF |
| PHIL PAUL, on behalf of himself and all others similarly situated, <br><br>　　　　　　　　Plaintiffs, <br><br>　　　vs. <br><br>INTEL CORPORATION, <br><br>　　　　　　　　Defendant. | C. A. No. 05-485-JJF <br><br> CONSOLIDATED ACTION |

**SECOND AMENDED STIPULATION REGARDING ELECTRONIC DISCOVERY
AND FORMAT OF DOCUMENT PRODUCTION**

　　WHEREAS, this action was commenced on June 27, 2005 by plaintiffs Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. (hereafter jointly, "AMD") against defendants Intel Corporation and Intel Kabushiki Kaisha (hereafter jointly, "Intel");

　　WHEREAS, the Delaware District Court Default Standards for Discovery of Electronic Documents recommend that parties cooperatively reach agreement on electronic discovery issues prior to the Federal Rule of Civil Procedure 16 scheduling conference;

RLF1-3117650-1

WHEREAS, AMD, Intel, Class Plaintiffs, and California Class Plaintiffs have reached a compromise under the specific circumstances of this case pursuant to which the number of custodians subject to discovery will be limited (pursuant to a separate stipulation), and have reached agreement on the terms of an appropriate Protective Order; AMD, Intel, Class Plaintiffs, and California Class Plaintiffs have also agreed to a protocol to govern electronic discovery and the format of documents to be produced in this case;

WHEREAS, coordinated class actions filed by purchasers ("Class Plaintiffs") are also pending in this District against Intel pursuant to a November 3, 2005 order of the Judicial Panel on Multidistrict Litigation;

WHEREAS, the Court appointed Interim Class Counsel to represent Class Plaintiffs by order dated April 28, 2006;

WHEREAS, class actions filed by California purchasers ("California Class Plaintiffs"), are also pending in the Superior Court of the State of California for the County of Santa Clara;

WHEREAS, the California Court has appointed Lead Class Counsel ("California Class Counsel") to represent California Class Plaintiffs;

WHEREAS, the parties do not intend for this stipulation to establish a procedure for future cases;

WHEREAS, AMD and Intel filed a "Stipulation Between AMD and Intel Regarding Electronic Discovery and Format of Document Production" on May 15, 2006, which was entered by the Court on May 17, 2006, and which is intended by the parties to be superseded by this Amended Stipulation;

NOW, THEREFORE, IT IS HEREBY STIPULATED BY AND AMONG AMD INTEL, CLASS PLAINTIFFS, AND CALIFORNIA CLASS PLAINTIFFS, THROUGH THEIR RESPECTIVE COUNSEL AND SUBJECT TO THE APPROVAL OF THE COURTS, AS FOLLOWS:

### A. Format of Production

1. AMD and Intel shall, with the exception of those documents described in Section C below, produce all non-privileged, responsive electronic documents in their native file format subject to the inspection and production protocols set forth in the following paragraphs. This means that the parties will initially produce responsive electronic files in the same format in which the files were created and stored on a computer. To the extent technically feasible, each electronic file will be produced with all of its original metadata intact, and all original file names and file paths, and folder structure will also remain intact. E-mail documents will be produced in .pst or .msg format, and loose electronic files will be produced in their native format, except as otherwise provided in this stipulation.

2. The native format documents shall be delivered to opposing counsel on CD, DVD, or a portable hard drive. Each piece of media will be identified by a unique media control number. The documents contained on the media will be organized and identified by custodian, where applicable. The media containing native files will be maintained in a secure location by the Service Providers (described in paragraph 14 below). No copies of the media containing the native format documents shall be made except the copy or copies loaded onto the Service Provider's servers for use in the litigation. The media shall be returned to the Producing Party at the conclusion of the litigation.

### B. Tracking and Authentication

3. Each piece of media shall be accompanied by a reference file. This reference file will contain certain unique information that will allow the parties to control and authenticate the native files produced. The particular information contained in the reference file may change depending on the circumstances of particular productions, but shall always include:

3

    1. For all files produced
        a. Document Control Number
        b. Custodian Name
        c. Media Control Number
        d. Path
        e. Confidentiality Designation
        f. Filename
    2. For e-mails produced in .pst format
        a. Document Control Number
        b. Parent Id - Document Control Number of the produced .pst
        c. Mail Archive Member ID - pr_entry id property from the produced .pst file
    3. For e-mails produced in .msg format
        a. Folder Name
        b. MD5 Hash Value
    4. For non-e-mail electronic files
        a. MD5 Hash Value

The producing party shall provide, to the extent technically feasible, additional reference file fields to the extent that additional fields are needed for the requesting party to control and identify the documents produced.

### C. De-duplication Protocols

4. Prior to the production, the respective parties may de-duplicate the documents designated for production, as follows

- E-mail – de-duplicated by custodian.
- Non-database electronic documents – de-duplicated by custodian.

### D. Production of Certain Documents in Non-Native Static Image

5. Notwithstanding Section A hereto, the parties have agreed that the following categories of documents may be produced in static image format:

    a.    Information designated as "red", "orange" or "yellow" under Intel's pre-existing color-coding system for highly confidential trade secret information, subject to the limitation that this group will constitute no more than 1.5% of Intel's total production;

    b.    Documents redacted on the basis of privilege, as well as documents that are part of the same attachment group as redacted or withheld documents, even if not privileged;

4

    c.    Legacy documents (described in paragraph 10);

    d.    Hard copy documents (described in paragraph 11).

6.    With regard to item 5(a), the parties have agreed that the electronic version of these documents will be produced in searchable .pdf format at Intel's expense.  With respect to item 5(b), the parties have agreed that the electronic version of these documents will be produced in TIFF.  The specifications for production of documents within 5(c) and 5(d) are discussed in Paragraphs 10 and 11 below.

7.    With regard to items 5(a) and (b), each static version of an electronic document must be created directly from the original electronic document; a party may not create a static version of an electronic document by printing out paper copies of that electronic document and then scanning that paper copy of the electronic document.  For each static version created from an electronic document (excluding email), the Producing Party will generate and preserve an "MD-5 hash value" at the time the document is converted to static image; this hash value must be produced to the requesting party.

8.    To the extent technically feasible, the following metadata shall be produced for documents produced in searchable .pdf pursuant to paragraphs 5(a) and 6:

- For e-mail
    - Bcc
    - Cc
    - Subject
    - Sent time
    - Recipient
    - Received time
    - Begdoc
    - Enddoc
    - Begattach
    - Endattach
    - Attachment name
    - Folder name
    - Author
    - Custodian name

- For non e-mail

    o Author
    o Last Saved Time
    o Notes
    o Subject
    o Title
    o Begdoc
    o Enddoc
    o Comments
    o File name
    o File path
    o File type
    o Last modified date/time
    o MD5 Hash
    o Custodian name

The parties agree that this list may be amended from time to time.

9.  The parties are not required to provide any metadata for documents redacted on the basis of privilege and produced in TIFF pursuant to paragraphs 5(b) and 6. Non-privileged electronic documents that are attached to documents redacted or withheld on the basis of privilege shall be produced in TIFF with the following metadata fields, to the extent technically feasible:

- For e-mail:

    o Bcc
    o Cc
    o Subject
    o Sent time
    o Recipient
    o Received time
    o Begdoc
    o Enddoc
    o Author
    o Custodian name

- For other non-e-mail electronic documents:

    o Author
    o Last Author
    o Last Saved Time
    o Notes
    o Subject

6

- o Title
- o Begdoc
- o Enddoc
- o Comments
- o File name
- o File type
- o Last modified date/time
- o MD5 Hash
- o Custodian name

The parties agree that this list may be amended from time to time.

### E. Legacy Documents

10. It is anticipated that the Parties may produce documents that have previously been reviewed and produced by a Producing Party in a litigation prior to the filing of AMD's Complaint. (For example, AMD has requested that Intel produce documents from the case *Intergraph Corp. v. Intel Corp.*, Case No. CV 97-N-3023-NE (N.D. AL).) Such documents shall be particularly identified to the Receiving Party. To the extent such documents are available in electronic format, they will be produced in the format in which they were originally produced. The requirements of paragraphs 7 and 8 shall not apply, and produced images will be provided in the form that they existed as of the date of the filing of AMD's Complaint.

### F. Production of Hard Paper Documents

11. Hard-copy documents will be produced in static image format with appropriate confidentiality designations. Each party shall bear the cost of converting its hard-copy paper documents to the agreed-upon static image format. The production of such documents shall be via CD-ROM or portable hard drive.

### G. Hosting of Native Document Database

12. AMD and Intel have engaged the following, mutually agreeable third-party service providers (hereinafter, the "Service Providers") to host the opposing parties' respective databases of documents produced for inspection in native format:

- For AMD – Forensics Consulting Solutions, LLC. and Stratify, Inc.

7

- For Intel – Electronic Evidence Discovery, Inc.

Intel reserves the right to select a second vendor and shall be entitled to do so (with notice to AMD) so long as the vendor meets the requirements set out in this Stipulation.  Should it become necessary, in the event that Class Plaintiffs and/or California Class Plaintiffs cease using AMD's vendors, the parties shall meet and confer about the selection of appropriate additional vendor(s) that meet the requirements set out in this Stipulation.  No other Service Providers or vendors may be utilized to host, process, manage or otherwise access the native documents produced for inspection by the parties, without the consent of the Producing Party.

13. Consistent with the terms of this Stipulation, the parties shall, together with the Service Providers, agree to access, review, and storage protocols for the handling and maintenance of the native documents produced for inspection in this case.

14. The Service Providers will host the database of native documents produced for inspection on stand-alone servers that are to be used for this litigation only and located at the following secure facility:

- For AMD:

    - Forensics Consulting Service, Inc.,
      411 N Central Ave., Suite 170
      Phoenix, AZ 85004

    - Stratify, Inc.
      150 South First Street
      San Jose, CA, 95113

- For Intel :

    - Electronic Evidence Discovery, Inc
      Plaza at Yarrow Bay
      3933 Lake Washington Blvd. NE, Suite 200
      Kirkland, WA 98033

Physical access to the servers will be restricted pursuant to agreed upon security protocols, which shall include card key entry and exits that are logged and appropriately monitored.  The Service Providers will maintain an accurate and up-to-date listing of personnel with physical access

and/or administrative rights to the servers.  No native documents produced for inspection shall be copied from, downloaded and/or replicated for any purpose other than disaster recovery purposes outlined in paragraph 15 hereto.

15.     For disaster recovery purposes, the Service Providers may make daily and weekly back-up tapes of the servers hosting the database of native documents produced for inspection for a rotation period not to exceed 30 days in length.  The back-up tapes shall be used for no purpose other than disaster recovery.  The back-up tapes will remain in the custody of the Service Provider and shall not be distributed to any other party or person.  At the conclusion of the 30-day cycle, the tapes shall be placed back into rotation.  At the conclusion of the litigation, the Service Providers will represent in writing that all then existing back-up tapes containing the Producing Party's information have been destroyed.

### H.     Review of Native Data Set

16.     The parties shall access and review the native documents produced for inspection using web-based electronic discovery review applications.  All such review applications shall utilize a password-based security protocol, including RSA Secure ID, to ensure that only permitted reviewers may access the native documents.  All reviewers (except those authorized under paragraph 22) shall access the documents at the offices of outside counsel for AMD and Intel, including dedicated office space leased for this purpose.  With respect to the class cases, access shall also be permitted at the offices of Interim Class Counsel and California Class Counsel, including dedicated office space leased for this purpose, provided that the Interim Class Counsel shall not have more than 5 separate locations for such access and California Class Counsel shall not have more than 5 separate locations.  Nothing in this stipulation shall be construed as an agreement by Intel that Plaintiffs' use of dedicated leased office space is a necessary, reasonable or recoverable expense.   Plaintiffs shall identify to Intel the addresses of all their access locations, and Intel shall identify to AMD the address of its access locations.

17. Access to native documents produced by the parties shall be limited to:

   (a) Outside Counsel for AMD, Intel, Class Plaintiffs, and California Class Plaintiffs (including any temporary attorneys hired by, and working under the supervision of, Outside Counsel);[1]

   (b) Paralegals and staff employed by Outside Counsel for each party; and

   (c) Employees of the Service Providers identified in paragraph 12 hereto.

18. Non-testifying experts' access to native files shall be limited to those native files whose relevant information is only available in native file format (e.g., certain Excel spreadsheets), and to those documents in native file format that are permitted to be used in the litigation pursuant to paragraphs 29-30 below. If the need arises for non-testifying experts to review additional documents in their native file format, the Receiving Party may request consent of the Producing Party to such access, and the Producing Party's consent shall not be unreasonably withheld.

19. The above categories of specified individuals shall sign an acknowledgement agreeing to be bound by a Stipulated Protective Order in this case, and, as a condition of being granted access to the native documents, shall agree to submit themselves to the jurisdiction of the United States District Court for Delaware to facilitate enforcement of the Stipulated Protective Order. The Receiving Party shall maintain an accurate and up to date listing of those individuals with access to the native documents produced for inspection; such list shall not be exchanged, but shall be made available to the Court upon the Court's request.

### I. Security Procedures and Auditing Rights

20. The web-based review applications utilized by the parties shall permit the parties' document reviewers (as described in paragraph 17 (a)-(c) hereto) to search, review, and code the

---

[1] All provisions of the Protective Order setting out restrictions on Outside Counsel involved in microprocessor or chipset patent prosecution, or otherwise restricting access to any documents or data, shall apply, and no such counsel shall have access to any native documents.

native files.  However, the Service Providers and parties shall preclude any document reviewer, attorney, paralegal, or any other individual or entity associated with the parties, from downloading, editing, modifying, cutting, pasting, copying, printing, or otherwise reproducing or disseminating any of the native files produced by the parties, except to the limited extent necessary for the Service Providers to process, host or otherwise manage the document review.

21. To the extent that the parties employ contract lawyers to review documents, those reviewers must be supervised by the parties' attorneys of record when accessing the native documents.  Contract attorneys may only access the native documents at the offices designated for the review.

22. AMD and Intel each will be permitted to allow fifteen (15) of their law firm's attorneys (or combination of attorneys and paralegals) to access the native document databases from remote locations outside counsel's offices utilizing firm-owned computer equipment only, so long as they use a secure VPN connection and comply with the password-based security protocol set forth in paragraph 20.  Class Plaintiffs and California Class Plaintiffs collectively will be allowed fifteen (15) attorneys (or combination of attorneys and paralegals) who are regularly employed by counsel for the class to have remote access to native documents as set forth herein.  A list of the designated personnel shall be maintained by each party, and subject to inspection upon reasonable request.  The lists shall be updated periodically and may be changed at the discretion of the firms involved so long as the absolute numbers of those given access at any time do not exceed fifteen (15) for each party.  The parties shall meet and confer to discuss a protocol that will ensure compliance with the security measures set forth in paragraph 20.

23. A Producing Party's E-Discovery Liaison Counsel and/or designated E-Discovery Expert may request physical access to the facilities of the Service Providers prior to the initial production of native documents in this case, to ensure that appropriate security precautions and protocols are in place.

24. If either party becomes aware of any violation of the security procedures agreed hereto, it shall immediately notify the opposing party.  The parties and their respective Service

Provider shall take immediate steps to resolve the alleged security violation, including the immediate suspension of access rights to the native documents of any person believed to be involved or otherwise responsible for the violation.

### J.   Use of Documents In Litigation

25.   The parties agree that native files will not be used in the litigation except under the express provisions of 29-30 below. TIFFs of native files (and PDFs of native files described in paragraph 5(a)) shall constitute the authentic and admissible version to be used for any purpose in the case and shall be created pursuant to the following protocol:

- On the first and fifteenth days of each month, each party shall supply a list of the Producing Party's documents that it requests for production. The Producing Party shall make good faith efforts to produce in TIFF format all of the requested documents within thirty (30) days. However, it will be presumed that the maximum amount that any party can reasonably produce in TIFF format within a thirty (30) day period shall not exceed 1.5 million pages. If either the first or fifteenth day of the month, or the expiration of the thirty day period, falls on a weekend or federal holiday, submission of the request list or production of the requested documents will fall on the next regular business day.
- Any amount in excess of 1.5 million pages will be produced as expediently as practicable. The Producing Party will provide a good-faith estimate of a proposed production date for these excess pages within seven (7) days of the request.
- Each Party shall identify two individuals to serve as Production Liaisons. These individuals will be designated as the Parties' contacts responsible for coordinating the ordering of TIFFs, communicating with the requesting parties, and ensuring that productions are made on a timely basis.

- The parties shall submit their lists to the Production Liaisons in writing, preferably by electronic mail. AMD, Interim Class Counsel, and California Class Counsel shall submit a combined list when possible.

- Each document shall be produced in TIFF with a load file containing, for each document: (1) the agreed-upon metadata fields (as set forth in paragraphs 8 and 9 hereto); and (2) the document control number described in paragraph 3(1). An extracted text load file shall also be provided for each document produced in TIFF pursuant to this paragraph, except for those documents redacted on the basis of privilege. Each page shall be affixed with the appropriate bates number and confidentiality designation.

- The Receiving Party shall bear the burden of any costs associated with conversion of the native file to TIFF format, including any costs charged for the creation of the extracted text load file. The amount of such costs shall be subject to negotiation, but shall not exceed reasonable costs.

- Because the set of TIFF documents will, for the most part, make up the set of documents to be used in the litigation, documents the Receiving Party may seek to have included in the production set must be designated not less than 30 days prior to its use in any deposition, motion, trial or other litigation use.

26.  The parties shall take reasonable precautions to protect the disclosure of documents produced in .pdf or TIFF format, consistent with the obligations of the Protective Order in this case.

27.  It is anticipated that a Producing Party may seek to use in the litigation its own documents not designated for production in TIFF format by the Receiving Party. All such documents shall be deemed to be within the scope of the disclosure requirements of Fed. Rule Civ. Proc. 26(a)(1)(B) and shall be produced to the other party in static image format, at the Producing Party's expense, promptly upon determination that the party may use the document to support its claims or defenses, unless solely for impeachment, but in no event later than the date

for exchange of exhibit lists absent good cause shown. In addition, the Producing Party shall disclose such documents to the other party at a reasonable time prior to their use at deposition or in any motion.

28. With respect to third party productions, after a third party produces documents in native file format, the receiving party shall inform opposing counsel, and counsel AMD, Intel, Class Plaintiffs, and California Class Plaintiffs shall then meet and confer to establish a process to reduce the universe of documents in a timely manner to a subset of information produced in static image format for use in the litigation.

### K. Use of the Native Documents

29. The native documents produced for inspection shall only be used to identify those documents to be designated for production in TIFF format, as set forth in paragraph 25 and hereto. Only the TIFF or .pdf version of any document shall constitute the authentic and admissible version to be used for any purpose in the case.

30. Notwithstanding the foregoing, the parties agree that certain documents will be produced in native format for use at depositions, trial or motion practice, according to the following procedure:

    a. The requesting party will identify in writing those native documents for which it seeks production and the basis for seeking each native document. This provision is to be used sparingly and only where use of the non-native format of the document would result in the omission of relevant information that the party offering the document intends to use or rely on in connection with the deposition, motion or trial.

    b. Within fourteen days of receiving such a request, the Producing Party will respond in writing, setting forth their position on the production of the requested native document. To the extent that the Producing Party agrees to the production of the native document, the original confidentiality designation will remain in effect.

    c. If the parties are unable to agree as to the production of the requested files in native format, the parties will submit the

14

        matter to the Special Master. The Receiving Party shall bear the burden of establishing good cause for using the file in native format in connection with the deposition, motion or trial.

    d.    To the extent that a party agrees to produce native documents pursuant to this paragraph, the Producing Party will produce the native documents on a CD-ROM or portable hard drive, in an identical format to that provided in the initial native pre-production set, and will include a reference file containing the file's Native Bates Number and confidentiality designation. At the Producing Party's option, the native documents may be watermarked.

    e.    The Receiving Party will undertake reasonable steps to ensure that the native documents produced pursuant to this paragraph are securely maintained. The Receiving Party will maintain a log of all persons receiving copies of the native documents produced pursuant to this paragraph.

    f.    The Receiving Party shall ensure the integrity of the native documents, and shall not alter, change or amend the documents for any purpose.

    g.    Access to such native documents shall be provided to those entitled to gain access to Confidential Discovery Material under the Protective Order entered in this case.

### L.    Retention of Native Files During the Litigation

31.    The database containing the native documents shall be accessible by the parties throughout the entirety of the litigation.

32. At the conclusion of the litigation, the native and static image documents produced shall be returned or destroyed, pursuant to the terms of the Protective Order.

### M.    Miscellaneous Matters

33.    Nothing in this stipulation shall control how a party treats its own documents, regardless of format.

34.    This Stipulation does not apply to any Party's databases. The Parties agree to meet and confer regarding the format of production of databases.

15

35. Processes for the review and protection of privileged information will be implemented by each party. Those processes will be generally described to the other parties, and any objections to those procedures will be raised immediately, so that any failure to object will constitute an acknowledgement that the procedures described, if implemented, are sufficient to protect against any claim that the Producing Party failed to implement reasonable procedures. To the extent any Producing Party provides access to, or produces privileged documents, data or information, it shall not be deemed a waiver of any privilege. If a Producing Party notifies a Receiving Party that it has produced or provided access to privileged documents, data or information, the Receiving Party shall cease any review of the potentially privileged material. If a Receiving Party reasonably believes that the Producing Party has allowed access to any documents, data or information that is potentially privileged, the Receiving Party shall notify the Producing Party and specifically identify the information. The Receiving Party shall cease any review of the potentially privileged material. The Receiving Party shall not reduce or request reduction to TIFF or .pdf format of any information that it reasonably believes contains privileged information without specifically notifying the Producing Party and identifying the documents.

36. Nothing herein shall constitute any agreement that a document is authentic or admissible at trial. The parties shall meet and confer on such issues at a later time.

37. Should any part of this Stipulation prove to be unworkable or cause undue delay, the Parties agree to meet and confer to try to resolve any issues.

Dated:   February 20, 2007              **POTTER ANDERSON & CORROON LLP**

By:        /s/ Richard L. Horwitz #2246
Richard L. Horwitz (#2246)
rhorwitz@potteranderson.com
W. Harding Drane, Jr. (#1023)
wdrane@potteranderson.com
1313 North Market Street
P.O. Box 951
Wilmington, DE  198999-0951
(302) 984-6027

Dated:   February 20, 2007              **GIBSON, DUNN & CRUTCHER LLP**

By:        /s/ Daniel S. Floyd
Daniel S. Floyd
DFloyd@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000

Dated:   February 20, 2007              **HOWREY LLP**

By:        /s/ Darren B. Bernhard
Darren B. Bernhard
BernhardD@howrey.com
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2402
(202) 383-6774

Dated:   February 20, 2007              **BINGHAM McCUTCHEN LLP**

By:        /s/ Richard A. Ripley
Richard A. Ripley
richard.ripley@bingham.com
2020 K Street, N.W.
Washington, DC 20006
(202) 373-6000

Attorneys for Intel Corporation and Intel Kabushiki Kaisha

17

RLF1-3117650-1

| | |
|---|---|
| Dated: February 20, 2007 | **RICHARDS, LAYTON & FINGER, P.A.** |
| | By:  /s/ Frederick L. Cottrell, III #2555 |
| | Frederick L. Cottrell, III (#2555) |
| | cottrell@rlf.com |
| | Richards, Layton & Finger |
| | One Rodney Square |
| | 920 North King Street |
| | P.O. Box 551 |
| | Wilmington, DE 19899 |
| | (302) 651-7700 |
| | |
| | Attorneys For Advanced Micro Devices, Inc. And AMD International Sales & Service, Ltd. |
| Dated: February 20, 2007 | **O'MELVENY & MYERS LLP** |
| | By:  /s/ Charles B. Diamond |
| | Charles B. Diamond |
| | cdiamond@omm.com |
| | 1999 Avenue of the Stars |
| | 7th Floor |
| | Los Angeles, CA 90067-6035 |
| | (310) 553-6700 |
| | |
| | Attorneys for Advanced Micro Devices, Inc. And AMD International Sales & Service, Ltd. |
| Dated: February 20, 2007 | **PRICKETT JONES & ELLIOTT, P.A.** |
| | By:  /s/ James L. Holzman #663 |
| | James L. Holzman (#663) |
| | jlholzman@prickett.com |
| | J. Clayton Athey (#4378) |
| | jcathey@prickett.com |
| | 1310 King Street, P.O. Box 1328 |
| | Wilmington, DE 19899 |
| | (302) 888-6509 |
| | |
| | Interim Liaison Class Counsel, MDL 1717 |

| | |
|---|---|
| Dated: <u>February 20, 2007</u> | **COHEN MILSTEIN HAUSFELD & TOLL** |
| | By: <u>       /s/ Daniel A. Small       </u><br>Michael D. Hausfeld<br>mhausfeld@cmht.com<br>Daniel A. Small<br>dsmall@cmht.com<br>1100 New York Avenue, N.W.<br>Suite 500, West Tower<br>Washington, D.C.  20005<br>(202) 408-4600 |
| | Interim Class Counsel, MDL No. 05-1717 |

**SO ORDERED**:

Dated: _____

<u>                                            </u>
Joseph J. Farnan, Jr.
United States District Judge
District of Delaware

19

RLF1-3117650-1