IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE:<br>INTEL CORP. MICROPROCESSSOR<br>ANTITRUST LITIGATION | ) ) ) ) ) | MDL Docket No. 05-1717 (JJF) |
| PHIL PAUL, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>INTEL CORPORATION,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 05-485 (JJF)<br><br>CONSOLIDATED |

**LETTER TO SPECIAL MASTER VINCENT J. POPPITI
FROM MARY B. GRAHAM**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

*Attorneys for Third Party Fry's Electronics, Inc.*

*OF COUNSEL:*

Robert W. Stone
Michael D. Powell
Quinn Emanuel Urquhart Oliver
& Hedges, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94065
650.801.5000

April 17, 2007

Dear Judge Poppiti:

Fry's Electronics, Inc. ("Fry's") submits this letter in response to the March 29, 2007, motion to compel ("Motion") filed by the Class Plaintiffs.[1] Initially it should be noted that Fry's objects to the motion on the grounds that Class Plaintiffs fail to identify with reasonable particularity the "transactional data" which they seek to compel. Indeed, *nowhere in the Motion do Class Plaintiffs identify the specific requests for which they seek to compel production.* Nor do they specifically address Fry's written objections, which are attached as Exhibit A to the Declaration of Michael D. Powell ("Powell Decl."). Moreover, on the one hand Class Plaintiffs argue that Fry's should be compelled to produce unidentified transactional data within three weeks. Motion at 1. On the other hand, Class Plaintiffs state that "this dispute is not about the scope or terms of Fry's production; this dispute is about whether Fry's should have to produce any data." Motion at 1-2. Furthermore, Class Plaintiffs state: "To be sure, Fry's has also raised issues that go to the scope and terms of the production, but the parties have not sufficiently negotiated those yet, given Fry's other objections which deny the need to produce any data at all. If the Court were to grant the relief sought herein, the parties would engage in good faith negotiations with Fry's to work out the details of its production."[2] Motion n.3. Thus, Fry's is at a loss as to exactly what Class Plaintiffs' Motion seeks to compel.

## I.     INTRODUCTION.

Class Plaintiffs apparently seek to compel Fry's, a non-party to the litigation and a privately held company, to comply with a subpoena seeking production of highly confidential and sensitive trade-secret information concerning every single transaction – which number in the millions -- involving computer systems with AMD or Intel chips sold at Fry's since January, 2000. The Motion should be denied for at least three reasons. First, Class Plaintiffs did not adequately meet and confer and their Motion is based upon arguments which were never raised in the meet-and-confer discussions. Second, the information and data requested are trade secrets, and Plaintiffs' cannot demonstrate the required substantial need for the information sufficient to compel its production. Third, the requests are grossly overbroad and unduly burdensome.

---

[1]   Fry's respectfully submits that this Court does not have the power to enforce the documents-only subpoena which issued out of the Northern District of California and is therefore governed by the laws of that district. *See Visx, Inc. v. Nidek Co.*, 208 F.R.D. 615, 616 (N.D. Cal. 2002) (holding that 28 U.S.C. § 1407(b) grants the transferee court (in multidistrict litigation) the power to enforce a pre-trial deposition subpoena but not a documents-only subpoena, and criticizing the cases relied upon by Class Plaintiffs). Accordingly, Fry's requests that this Court deny Class Plaintiffs' motion to compel without prejudice to their seeking relief in the N.D. Cal.

[2]   As mentioned below, Fry's has never stated that it would not produce any information.

II.    **CLASS PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THEY FAILED TO ADEQUATELY MEET AND CONFER AND FAILED TO COMPLY WITH THE COURT ORDERED DEADLINE.**

This Court set a deadline of February 21, 2007, for the parties to complete negotiations regarding the production of transaction data from third parties. Yet Class Plaintiffs inexcusably failed to do so. Indeed, Class Plaintiffs candidly admit that, despite the Court's deadline, "the scope and terms of the production . . . have not sufficiently [been] negotiated [by the parties]. . ." Motion n.3.

Class Plaintiffs inaccurately represent the meet-and-confer discussions, and their Motion is based extensively upon arguments that they failed to raise prior to filing the Motion. For example, Class Plaintiffs' argue that, "Fry's has never denied the relevance of the transactional data to this case." Motion at 3. Not so. In fact, the opposite is true: Class Plaintiffs refused to explain the relevance of the requested transactional data despite Fry's repeated requests, because they said they did not want to "tip their hand to Intel." Henri Decl. ¶ 2. Indeed, Class Plaintiffs argue that production of unspecified transactional data from Fry's is necessary so that they may prove "pass-on as part of a classwide (sic) damages formula" and that "Intel's challenged conduct was anticompetitive". Motion at 2-3. *Yet Class Plaintiffs failed to raise either of these arguments with Fry's in the meet and confer prior to filing the Motion.* Henri Decl. ¶ 3. Because Class Plaintiffs did not raise these issues prior to the Motion, the Motion is obviously premature and the Court should not consider these arguments.

In addition, Class Plaintiffs refused to identify during the meet and confer discussions any class representative that purchased products at Fry's and have consistently refused to state if and how they would pay for the production. Henri Decl. ¶¶ 4-5. To the contrary, prior to the meet and confer discussions with the parties regarding the subpoenas, Class Plaintiffs wrote Fry's and informed it *that they would not seek or pay for the production of any documents*. Powell Decl. Ex. B. Despite this waiver, Class Plaintiffs now argue that "[t]he subpoena requires Fry's produce documents in addition to data." Motion n.1.

Furthermore, Class Plaintiffs inaccurately represent that " . . . Fry's has steadfastly clung to the position that it should not have to produce transactional data *at all*." Motion at 1. Fry's has never made such a representation. Rather, Fry's has spent considerable time trying to narrow the focus and scope of the requested transactional information. Moreover, Fry's informed the parties that unlike many other retailers, its database is a proprietary system which has taken Fry's years and thousands of man hours to develop and hone. Payne Declaration ¶ 2. As such, it is a closely guarded trade secret and Fry's will not produce its proprietary database. *Id.* ¶¶ 3-4. Along those lines, Fry's has offered to produce a sample set of the requested information in spreadsheet form provided that the Court enter a modified protective order to protect the disclosure of Fry's most sensitive information to anyone other than outside counsel and that Fry's be given the opportunity to object to the disclosure of the information to expert witnesses prior to its disclosure to them. Powell Decl. ¶¶ 6-13 (Exs. C-E). Class Plaintiffs have refused, however, to engage in discussions regarding the scope of the requested information unless Fry's were to reconsider its request to modify the protective order entered by the Court. Powell Decl., Exs. K & L.

**III.    CLASS PLAINTIFFS HAVE NOT MET THEIR BURDEN OF DEMONSTRATING A "PARTICULARIZED" NEED FOR THE REQUESTED TRADE-SECRET INFORMATION THAT OUTWEIGHS THE POTENTIAL BURDEN AND HARM OF THE PRODUCTION.**

Class Plaintiffs do not dispute that the "transactional data" sought in their Motion is trade secret information.[3]  When, as here, a non-party objects to the disclosure of information that is trade secret, confidential, and protected by the right of privacy, the law is clear that the burden shifts to the requesting party to make a "particularized showing" that the "confidential information is relevant and necessary to its case." *In re Indep. Serv. Orgs. Antitrust Litig.*, 162 F.R.D. 355, 358 (D. Kan. 1995) ("Close examination of Xerox's arguments as to need reveal primarily supposition, rather than a particularized showing of substantial need.").  Furthermore, "even if the information sought is relevant, discovery [from a nonparty] is *not* allowed where no need is shown or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (emphasis added); *accord Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980).  Here, Class Plaintiffs do not come close to meeting the legal requirements for compelling production of the requested trade secret information.  Instead, Class Plaintiffs incorrectly argue that all they need to show to compel production is that the requested information "is relevant to the claim or defense of a party" or "appears reasonably calculated to lead to the discovery of admissible evidence." Motion n.4.

**A.    Class Plaintiffs Fail To Demonstrate A Particularized Need for The Requested Trade-Secret Information.**

Class Plaintiffs have failed to make the required "particularized showing of substantial need" for the requested trade-secret information.  In fact, as discussed above, Class Plaintiffs fail to identify with any particularity the "transactional data" which they seek to compel.  Moreover, Plaintiffs' argument concerning the immediate need for the requested information is easily refuted.

Class Plaintiffs seek to put the cart before the horse.  Class Plaintiffs argue that they need the transactional data to prove "an essential element of their damages claim." Motion at 2.  In so arguing, Class Plaintiffs seek to skip several steps in the discovery and litigation of this case.  It is axiomatic that plaintiffs must first certify a class before they can begin merits discovery.  *See Eisen v. Carlisle & Jaqueline*, 417 U.S. 156, 177-78 (1974) (holding "[w]e find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action . . ." and that "such a procedure contravenes the Rule by allowing a representative plaintiff

---

[3]    Class Plaintiffs do not dispute that Fry's transactional data constitutes a "trade secret." *See*, Motion at 3.  Indeed, as set forth in the Declarations of Rajesh Seth and Jerry Payne, Fry's takes substantial measures to ensure the secrecy of its pricing information, inventories, marketing incentives, and profit margins.  Furthermore, it is axiomatic that such information is trade secret. *See e.g., Courtesy Temp. Serv., Inc. v. Camacho*, 222 Cal. App. 3d 1278 (1990); *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244 (3d Cir. 1985).

to secure the benefits of a class action without first satisfying the requirements for it"). Certainly this precept is especially warranted with respect to non-party discovery. Thus, the discovery sought from Fry's is premature.

Class Plaintiffs cite *In re South Dakota Microsoft Antitrust Litigation* ("*In re SDMAL*") 657 N.W.2d 668, 676 (S.D. 2003) and argue that the requested information is necessary for class certification briefing. Motion at 2. This case, however, stands for the opposite position. Specifically, the *In re SDMAL* Court held that class plaintiffs "must advance a method for determining generalized damages on a class-wide basis" and ruled that all that is required at the class certification stage is "a reasonable basis for measuring the loss." *Id.* at 674-75. The Court found that this standard is satisfied even where the testifying experts have no empirical evidence and are merely proposing a methodology to use for determining class-wide damages once the empirical data becomes available through discovery **after the class is certified**. *Id.* at 676-77; *see also Romero v. Phillip Morris Inc.*, 137 N.M. 229, 231 (Ct. App. N.M. 2005) ("[P]laintiffs were not required to show that every single member of the class was injured").[4]

**B.    The Requested "Transactional Data" Is Grossly Overbroad and Duplicative.**

As mentioned above, "even if the information sought is relevant, discovery [from a nonparty] is *not* allowed where no need is shown or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." *Mannington Mills*, 206 F.R.D. at 529 (emphasis added). Here, Plaintiffs concede that much of the information they seek is duplicative of information sought from the parties and other third parties. Motion at 3. Specifically, Class Plaintiffs' subpoena seeks information such as Fry's purchase orders which is also being sought from the manufacturers. Likewise, Class Plaintiffs' subpoena seeks to obtain the marketing funds that Fry's received from Intel and AMD. Because Class Plaintiffs acknowledge that they are receiving such information from others, there is no need to put Fry's through the burden of also producing this information.

Furthermore, Class Plaintiffs' subpoena seeks to have Fry's produce information in several different fields on a monthly aggregate basis. *See*, Subpoena requests Nos. 7 and 8 (Volin Decl. Ex. 1). However, as set forth in the declarations of Rajesh Seth and Jerry Payne, Fry's does not maintain the requested information in the form Class Plaintiffs seek in its normal and ordinary course of business. Seth Decl. ¶¶ 7-8; Payne Decl. ¶¶ 5-10. Thus, to comply with the subpoena Fry's would have to create new documents and summaries of information that would be incredibly time consuming. Payne Decl. ¶¶ 5-8. To the extent Fry's is ordered to produce empirical data, Fry's submits that the data should be limited to a statistically relevant sample of transactional data rather than seven years of data in its entirety. Class Plaintiffs acknowledge in their Motion that not all transaction data from every putative class member is required for proof of pass-on, noting that they are seeking data from only a "sample of re-sellers." Motion at 2 ("[Fry's] is part of the sample of re-sellers that Class Plaintiffs, with the assistance of their experts, selected in order to obtain an appropriate collection of data with which to conduct their

---

[4]    Class Plaintiffs also cite *LePage's Incorporated v. 3M*, 324 F.3d 141 (3rd Cir. 2003). However, this case does not seem to have any bearing on the issues before this Court.

pass-on analysis."). Class Plaintiffs have made no showing as to why a sampling of transactional data is not sufficient to meet their burden of proof at the class certification stage.[5]   It is undisputed that the production Class Plaintiffs seek would cover thousands of different products, from a number of different manufacturers, and includes millions of transactions. Seth Decl. ¶¶ 2-3.  Moreover, there is simply no way for Fry's to obtain individual transaction data without going invoice by invoice. Payne Decl. ¶ 9.  Such a process would take thousands of man hours and entail the production of millions of pages of documents. Payne Decl. ¶ 10.  Given that Class Plaintiffs have unequivocally stated that they refuse to pay for any documents, their Motion must be denied.

### C.    Fry's Is Entitled To Additional Safeguards For Its Data.

Even assuming Class Plaintiffs had met their burden of showing substantial need, the Court must weigh the need against the potential for competitive harm to Fry's. *See e.g., Cytodyne Techs., Inc. v. Biogenic Techs., Inc.*, 216 F.R.D. 533 (M.D. Fla. 2003). Class Plaintiffs seek production of Fry's most sensitive commercial information including the price it pays manufacturers for the computer systems it then resells to consumers.  The consumer computer market is extremely competitive with low margins.  If Fry's profit-margin, cost-of-goods-sold and other data were publicly disseminated, Fry's would lose its most critical competitive advantage -- its bargained-for acquisition pricing -- as each of its competitors would immediately demand each computer manufacturer to sell its systems to them at prices on par with those paid by Fry's. Seth Decl. ¶5. Moreover, if Fry's were compelled to produce information about the marketing development funds and other incentives it receives from Intel and AMD, Intel may learn of AMD's incentive programs and vice versa, thereby allowing one or the other to bargain for tighter incentives based on what its competitor is paying. *Id.* ¶ 6. Because the current protective order permits in-house counsel at Intel and AMD to access materials designated "Confidential," there is a legitimate risk of such disclosure.

Therefore, should the Court be inclined to compel Fry's to produce all or a statistical sampling of its transactional data or other confidential, proprietary or trade secret information, Fry's is entitled to additional safeguards through a modification of the current Confidentiality Agreement and Protective Order. *See e.g., Bancorp Servs., L.L.C. v. Sun Life Assur. Co.*, 2006 U.S. Dist. LEXIS 81000 (E.D. Mo.) (recognizing that status of a person as a nonparty is a factor that weighs against disclosure and is grounds for additional protection for its confidential information even where another party has sought similar protections on the nonparty's behalf which were denied); *In re Indep. Serv. Orgs. Antitrust Litig.*, 162 F.R.D. 355 (D. Kan. 1995) (granting party's request for supplemental protective order to modify existing protective order in order to exclude another party's in-house counsel from accessing materials designated highly confidential).  Here, as in *Bancorp*, the Court should order that an Attorney's Eyes Only designation be used with

---

[5]    In fact, Fry's has learned that other non-parties are currently negotiating for production of a sampling of transaction data as opposed to the full six-plus years requested in the subpoenas. Powell Decl., Ex. M. Class Plaintiffs had incorrectly told Fry's that no non-parties had even requested to produce a sampling of the data. *Id.*

sensitive third-party information. *Id.* at *8 ("[E]xisting protective order . . . does not provide for an 'Attorney's Eyes Only' designation.").[6]

## IV.    CONCLUSION

For the foregoing reasons, Fry's respectfully asks that the Court deny Class Plaintiffs' Motion or, alternatively, enter a modified protective order as proposed by Fry's and permit the parties a further opportunity to meet and confer concerning the scope of Fry's production. In the event the Court compels production of any documents, Class Plaintiffs should be ordered to pay the reasonable out-of-pocket expenses incurred by Fry's in collecting and producing those materials.[7]

Respectfully,

*Mary B. Graham*

Mary B. Graham (#2256)

MBG/dam
cc:    Clerk of the Court (via e-filing and hand delivery)
       J. Clayton Athey (via e-mail)
       David R. Dube (via e-mail)
       Mary Levan (via e-mail)
       Carrie David (via e-mail)
802538

---

[6]    To assist the Court, Fry's has submitted its proposed modifications to the protective order with this letter. Ex. E. Incidentally, the sample protective order provided by N.D. Cal., which district's law governs this motion, is a two-tiered protective order of the type requested by Fry's. Ex. F. Moreover, Judge Joseph Farnan routinely adopts multi-tiered protective orders for use in litigation. Exs. G-J.

[7]    Fry's reserves its rights to seek reimbursement for all expenses reasonably incurred in connection with the identification, collection and production of such materials.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 17, 2007, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that on April 17, 2007 true and correct copies of the foregoing were caused to be served upon the following parties in the manner indicated:

### VIA HAND DELIVERY (in triplicate):

Vincent J. Poppiti
BLANK ROME LLP
1201 North Market Street, Suite 800
Wilmington, DE  19801-4226

### VIA E-MAIL:

Vincent J. Poppiti
BLANK ROME LLP
**poppiti@blankrome.com**

WITH A COPY TO:

David R. Dube
BLANK ROME LLP
**dube@blankrome.com**

Mary Levan
BLANK ROME LLP
**levan@blankrome.com**

Carrie David
BLANK ROME LLP
**david-c@blankrome.com**

### VIA E-MAIL:

J. Clayton Athey
PRICKETT, JONES & ELLIOTT, P.A.
**jcathey@prickett.com**

*/s/ Mary B. Graham*

Mary B. Graham (#2256)

802096