EXHIBIT A

BRIAN D. HENRI, ESQ. (CSBN 200205)
FRY'S ELECTRONICS, INC.
600 E. Brokaw Road
San Jose, CA 95112
Telephone: (408) 487-4747
Fax: (408) 487-4741
Email: bdh@i.frys.com

Attorneys for Third Party Witness
FRY'S ELECTRONICS, INC.

UNTIED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In Re Intel Corp. Microprocessors Antitrust Litig.: <br><br> PHIL PAUL, et al. <br><br> Plaintiff, <br><br> vs. <br><br> INTEL CORPORATION <br><br> Defendants. | Case No. 05-485-JJF <br> **MDL Docket No. 1717 JJF** <br> **United States District Court, District of Delaware** <br><br> **NON-PARTY FRY'S ELECTRONICS, INC.'S OBJECTIONS TO PHIL PAUL SUBPOENA** |

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, Fry's Electronics, Inc. ("Fry's"), a non-party in the above-entitled and numbered cause, timely asserts the following objections to the document production subpoena dated June 22, 2006.

By filing these objections, Fry's in no way waives any objection that it has to the exercise of jurisdiction over it, and expressly reserves the right to assert such objections and to seek related relief in the future, including without limitation via motions to quash.

Fry's objections are based on Fry's current knowledge, information and belief, based on

- 1 -

NON-PARTY FRY'S ELECTRONICS, INC.'S OBJECTIONS TO PHIL PAUL SUBPOENA

1  reasonable and diligent inquiry. Fry's is continuing to review its files and reserves the rights to

2  modify, correct, supplement or clarify its responses.

3

4  **GENERAL OBJECTIONS**

5  The following general objections apply to each document request and, accordingly, Fry's

6  incorporates each of them into the specific responses set forth below. The assertion of the same or

7  additional objections in any particular response to these document requests does not waive other

8  general objections set forth below.

9  These objections are preliminary. Fry's investigation of the subject matter of this litigation is

10  ongoing, and it may discover information to support additional objections applicable to this subpoena.

11  Fry's reserves the right to raise further objections as it proceeds with its investigation.

12  Further, a statement by Fry's, in response to a particular request, that it will produce, subject to

13  his objections, all responsive documents in his possession, custody or control is not a representation

14  that any such documents exist, but only that such documents will be produced if they exist and are not

15  subject to any of Fry's objections.

16  1.    Fry's objects to all definitions, instructions and document requests to the extent they

17        call for documents protected from disclosure by the attorney-client privilege or the

18        work-product doctrine. Such documents shall not be provided in response hereto, and

19        inadvertent disclosure shall not be deemed a waiver of any privilege or of the work-

20        product doctrine. Fry's therefore construes each document request to exclude

21        documents protected by the attorney-client privilege or the work-product doctrine.

22  2.    Fry's objects to all definitions, instructions and document requests to the extent they

23        call for documents or portions of documents not related to the subject matter of this

24        litigation. Fry's will produce only those excerpts of the requested documents which

25        relate to or refer to the subject matter of this litigation, and which are not otherwise

26        subject to any objection by Fry's.

27  3.    Fry's objects to all document requests and to the definition of "COMPANY" to the

28        extent it requests documents in the custody or control of Fry's agents, employees,

are unduly burdensome and serve to expand Fry's obligations beyond those required by the Federal Rules of Civil Procedure.

4.      Nothing contained in these responses is intended to be or should be construed as a waiver of any attorney-client privilege, work product protection, the right to privacy, trade secret or confidential information, or any applicable privilege or doctrine, and to the extent that any request may be construed as calling for disclosure of information protected by such privilege or doctrine, a continuing objection to each and every such request is hereby imposed.

5.      Finally, Fry's further objects to each request to the extent it seeks Fry's trade secrets, confidential and/or proprietary information. Without waiving the foregoing objections, if the Propounding Party narrows the scope of some of these demands by designating the exact topics/subject matter on which it seeks information, the Fry's will consider producing relevant portions of the documents requested. Further, the Fry's acknowledges that in the event that the court orders the production of any such documents, it will seek a protective order to limit the scope and method in which these documents are produced.

Without waiving the foregoing, and subject to the limitations stated above, Fry's responds as follows:

## DOCUMENT REQUESTS

### I.   Acquisition of Computer Systems

**DOCUMENT REQUEST NO. 1:**

All DOCUMENTS that Intel and/or AMD have requested in connection with the *In re Intel Corporation Microprocessor Antitrust Litigation*, MDL No, 05-1717-JJF; *Paul v. Intel*, Civil Action No. 05-485-JJF; and *AMD v. Intel.* Civil Action No. 05-441 -JJF.

**RESPONSE TO DOCUMENT REQUEST NO. 1:**

- 3 -

1   Fry's incorporates each of its general objections. Fry's further objects on the grounds that the
2   demand: (i) is overbroad and unduly burdensome; (ii) seeks information that is neither relevant nor likely
3   to lead to the discovery of admissible evidence; (iii) seeks confidential and proprietary business
4   information; (iv) is harassing and oppressive; (v) seeks trade secret information; (vi) is compound; (vii) is
5   vague and ambiguous; (viii) seeks documents protected from disclosure by the attorney-client privilege
6   and attorney work product doctrine.
7
8   **DOCUMENT REQUEST NO. 2:**
9       DOCUMENTS sufficient to identify the (1) product type; (2) brand; (3) model; (4)
10  components (e.g., CPU, Keyboard, Monitor); and (5) SKUs of x86 COMPUTER SYSTEMS that you
11  sell.
12  **RESPONSE TO DOCUMENT REQUEST NO. 2:**
13      Fry's incorporates each of its general objections. Fry's further objects on the grounds that the
14  demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is
15  neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and
16  proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information;
17  (vii) is grossly compound; (viii) is vague and ambiguous as to the terms and phrases "product type,"
18  "brand," "model," and "component;" (ix) seeks documents protected from disclosure by the attorney-
19  client privilege and attorney work product doctrine.
20
21  **Acquisition of Computer Systems**
22  **DOCUMENT REQUEST NO. 3:**
23      All DOCUMENTS constituting, reflecting, or discussing communications with INTEL
24  concerning your COMPANY'S participation in or support of any AMD product launch or promotion,
25  or support of AMD products at any trade show, conference, product launch, promotion or industry
26  meeting.
27  **RESPONSE TO DOCUMENT REQUEST NO. 3:**
28      Fry's incorporates each of its general objections. Fry's further objects on the grounds that the

-4-

demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information; (vii) is grossly compound; (viii) is vague and ambiguous as to the terms and phrases "constituting," "reflecting," "discussing," "COMPANY'S participation or support of any AMD product launch or promotion," " trade show," "conference," "product launch," "promotion," and "industry meeting;" and (ix) seeks documents protected from disclosure by the attorney-client privilege and attorney work product doctrine.

**DOCUMENT REQUEST NO. 4:**

All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to "meet competition," including all forms relating to "meeting competition."

**RESPONSE TO DOCUMENT REQUEST NO. 4:**

Fry's incorporates each of its general objections.  Fry's further objects on the grounds that the demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information; (vii) is grossly compound; (viii) is vague and ambiguous as to the terms and phrases "constituting," "reflecting," "discussing," "concerning," "training," and "meet competition;" (ix) seeks documents protected from disclosure by the attorney-client privilege and attorney work product doctrine; and (x) is duplicative.

**DOCUMENT REQUEST NO. 5:**

All DOCUMENTS constituting, reflecting, or discussing E-CAP funds.

**RESPONSE TO DOCUMENT REQUEST NO. 5:**

Fry's incorporates each of its general objections.  Fry's further objects on the grounds that the demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and

- 5 -

proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information; (vii) is compound; (viii) is vague and ambiguous as to the terms and phrases "constituting," "reflecting," "discussing," "E-CAP funds;" (ix) seeks documents protected from disclosure by the attorney-client privilege and attorney work product doctrine.

## DOCUMENT REQUEST NO. 6:

All documents constituting or discussing any past or present contractual relationship between you and AMD or INTEL, including, but not limited to, all advertising, marketing or promotional agreements and all communications with AMD or INTEL regarding the terms of any such contractual relationship.

## RESPONSE TO DOCUMENT REQUEST NO. 6:

Fry's incorporates each of its general objections. Fry's further objects on the grounds that the demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information; (vii) is compound; (viii) is vague and ambiguous as to the terms and phrases "constituting," "reflecting," "discussing," "contractual relationship," "advertising," "marketing," promotional agreements;" (ix) seeks documents protected from disclosure by the attorney-client privilege and attorney work product doctrine; (x) is duplicative.

## Purchase and Sales History

## DOCUMENT REQUEST NO. 7:

DOCUMENTS sufficient to show:

a)    the aggregate amount by month of the FINANCIAL INDUCEMENTS provided by INTEL to your COMPANY, broken down by type as regularly recorded in your accounting systems, in connection with your COMPANY'S purchases of COMPUTER SYSTEMS (by month) since January 1,2000.

b)    your COMPANY'S use of FINANCIAL INDUCEMENTS provided by INTEL

-6-

1    including, without limitation, for advertising, newspapers circulars, in-store

2    promotions, and sales personnel training since January 1, 2000.

3    c)    your COMPANY purchases of COMPUTER SYSTEMS for resale on a monthly basis

4    since January 1, 2000, broken down by (i) the SKU; (ii) the number of units purchased;

5    (iii) the purchase price; (iv) the original equipment manufacturer or other source of the

6    purchase; (y) computer specification(s) (including (he type of MICROPROCESSOR,

7    type of operating system, type of memory, type of hard drive, type of monitor, and any

8    software, other hardware, or warranties factored into the total-price of the computer)

9    and (vi) (he amount paid for each computer specification.

10    d)    your COMPANY'S purchases of COMPUTER SYSTEMS for use in your business on a

11    monthly basis since January 1, 2000, broken down by (i) the SKU; (ii) the number of

12    units purchased; (iii) the purchase price; (iv) the original equipment manufacturer or

13    other source of the purchase; (v) computer specifications) (including (he type of

14    MICROPROCESSOR, type of operating system, type of memory, type of hard drive,

15    type of monitor, and any software, other hardware, or warranties factored into the total

16    price of the computer) and (vi) the amount paid for each Computer specification.

17    **RESPONSE TO DOCUMENT REQUEST NO. 7:**

18    Fry's incorporates each of its general objections. Fry's further objects on the grounds that the

19    demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is

20    neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and

21    proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information;

22    (vii) is compound; (viii) is vague and ambiguous in its entirety; (ix) seeks documents protected from

23    disclosure by the attorney-client privilege and attorney work product doctrine; (x) is duplicative.

24

25    **DOCUMENT REQUEST NO. 8:**

26    DOCUMENTS sufficient to show:

27    a)    your COMPANY'S unit and dollar volume of retail sales arid/or leases of COMPUTER

28    SYSTEMS on a monthly basis since January 1, 2000 broken down by (i) the SKUs sold

or leased; (ii) COMPUTER SYSTEM specification (including the type of MICROPROCESSOR, type of operating system, type of memory, type of hard drive, type of monitor, and, any software, other hardware, or warranties factored into the total price of the computer); (iii) the number of units sold or leased; (iv) the price of each sale or lease; (v) the amount paid for each COMPUTER SYSTEM specification in each sale or lease; (vi) the revenue generated by that sale or lease; (vii) the name and address of the customer to whom the sale or lease was made; (viii) the ship (o zip code and the zip code of the store location that made the sale or lease; and (ix) the date of the sale or lease.

## RESPONSE TO DOCUMENT REQUEST NO. 8:

Fry's incorporates each of its general objections. Fry's further objects on the grounds that the demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information; (vii) is compound; (viii) is vague and ambiguous in its entirety;" (ix) seeks documents protected from disclosure by the attorney-client privilege and attorney work product doctrine; (x) is duplicative.

## DOCUMENT REQUEST NO. 9:

DOCUMENTS sufficient to describe the name, scope, financial and other terms, conditions and effective dates of any rebate, marketing, other promotional program that you have offered purchasers of your COMPUTER SYSTEMS using x86 microprocessors.

## RESPONSE TO DOCUMENT REQUEST NO. 9:

Fry's incorporates each of its general objections. Fry's further objects on the grounds that the demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information; (vii) is compound; (viii) is vague and ambiguous as to the terms and phrases "describe the name," "scope," "financial and other terms," "conditions and effective dates of any rebate," "marketing,"

- 8 -

other promotional program that you have offered purchasers," "your COMPUTER SYSTEMS using x86 microprocessors;" (ix) assumes facts not in evidence; (x) is argumentative' (xi) seeks documents protected from disclosure by the attorney-client privilege and attorney work product doctrine; (xii) is duplicative.

## DOCUMENT REQUEST NO. 10:

With regard to payments made under the programs identified in response to Request No. 9 above, DOCUMENTS sufficient to show: (I) the program under which, the payment was made; (2) (be amounts that you paid; (3) the zip code where you sent the payment; (4) the store number and/or store location, identified by zip code, to which the payment was attributed or assigned; (5) the SKU to which the payment relates; (6) the date of the payment; and (7) the dale of the purchase to which the payment relates.

## RESPONSE TO DOCUMENT REQUEST NO. 10:

Fry's incorporates each of its general objections. Fry's further objects on the grounds that the demand: (i) is unintelligible; (ii) is grossly compound; (iii) is overbroad and unduly burdensome; (iv) seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence; (v) seeks confidential and proprietary business information; (vi) is harassing and oppressive; (vii) seeks trade secret information; (viii) is vague and ambiguous in its entirety.

## Miscellaneous

## DOCUMENT REQUEST NO. 11:

All DOCUMENTS constituting, reflecting or discussing any product defects involving INTEL MICROPROCESSORS or INTEL'S inability to deliver or timely deliver an adequate supply of MICROPROCESSORS to your COMPANY.

## RESPONSE TO DOCUMENT REQUEST NO. 11:

Fry's incorporates each of its general objections. Fry's further objects on the grounds that the demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and

-9-

1  proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information;

2  (vii) is compound; (viii) is vague and ambiguous as to the terms and phrases "constituting,"

3  "reflecting or discussing," "product defects," "inability to deliver or timely deliver an adequate supply

4  of MICROPROCESSORS to your COMPANY;" (ix) seeks documents protected from disclosure by

5  the attorney-client privilege and attorney work product doctrine.

6

7  **DOCUMENT REQUEST NO. 12:**

8      All DOCUMENTS constituting, reflecting, or discussing any monthly or quarterly business

9  review by INTEL and/or between your COMPANY and INTEL.

10  **RESPONSE TO DOCUMENT REQUEST NO. 12:**

11      Fry's incorporates each of its general objections.  Fry's further objects on the grounds that the

12  demand: (i) is overbroad and unduly burdensome; (ii) seeks information that is neither relevant nor

13  likely to lead to the discovery of admissible evidence; (iii) seeks confidential and proprietary business

14  information; (iv) is harassing and oppressive; (v) seeks trade secret information; (vi) is compound;

15  (vii) is vague and ambiguous as to the terms and phrases "constituting," "reflecting or discussing,"

16  "business review;" (viii) seeks documents protected from disclosure by the attorney-client privilege

17  and attorney work product doctrine; (ix) seeks documents, such as newspaper advertisements, that are

18  equally available to the requesting party.

19

20  **DOCUMENT REQUEST NO. 13:**

21      All DOCUMENTS reflecting or concerning any evaluation by you whether to purchase

22  computers containing microprocessors from AMD or INTEL (including any evaluation relating to the

23  quantity or riming of such purchase), including, but not limited to, DOCUMENTS discussing or

24  concerning (a) the technical specifications or performance of AMD's pr INTEL'S microprocessors or

25  computer systems incorporating those microprocessors; (b) the quality or reliability of AMD's or

26  INTEL'S microprocessors or systems incorporating those microprocessors; (c) the reliability of

27  INTEL or AMD as suppliers, including, but, not limited to, your ability to obtain supply of computer

28  systems containing INTEL or AMD microprocessors; (d) the suitability of AMD's or INTEL'S

microprocessors for your business objectives; (e) the future roadmap of INTEL or AMD; (0 actual or expected consumer demand for systems incorporating AMD's or INTEL'S microprocessors; or(g) or any other reasons influencing your decision to purchase (or not purchase) computers containing microprocessors from AMD or INTEL.

**RESPONSE TO DOCUMENT REQUEST NO. 13:**

Fry's incorporates each of its general objections. Fry's further objects on the grounds that the demand: (i) unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and proprietary business information; (v) is harassing and oppressive; (v) seeks trade secret information; (vi) is compound; (vii) is hopelessly compound; (viii) is vague and ambiguous in its entirety; (viii) seeks documents protected from disclosure by the attorney-client privilege and attorney work product doctrine.

**DOCUMENT REQUEST NO. 14:**

All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or reliability of claims made by AMD or INTEL regarding the attributes of its microprocessors or computer systems incorporating its microprocessors.

**RESPONSE TO DOCUMENT REQUEST NO. 14:**

Fry's incorporates each of its general objections. Fry's further objects on the grounds that the demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information; (vii) is compound; (viii) is vague and ambiguous as to the terms and phrases "constituting," "reflecting," "discussing," "evaluation of the truthfulness or reliability," "claims made by AMD or INTEL ," "regarding the attributes of its microprocessors or computer systems incorporating its microprocessors;" (ix) seeks documents protected from disclosure by the attorney-client privilege and attorney work product doctrine.

//

- 11 -

**DOCUMENT REQUEST NO. 15:**

All DOCUMENTS constituting, reflecting or discussing communications with AMD or INTEL concerning product placement or the amount of your shelf space allocated to or to be allocated to computer systems containing INTEL or AMD microprocessors.

**RESPONSE TO DOCUMENT REQUEST NO. 15:**

Fry's incorporates each of its general objections. Fry's further objects on the grounds that the demand: (i) seeks documents protected from disclosure by the attorney-client privilege and attorney work product doctrine; (ii) is overbroad and unduly burdensome; (iii) seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information; (vii) is compound; (viii) is vague and ambiguous in its entirety.

**DOCUMENT REQUEST NO. 16:**

All DOCUMENTS constituting, reflecting or discussing communication's or negotiations with OEMs or other suppliers or distributors of computers concerning, any financial, advertising, marketing, promotional, training or technical support or payments by AMD or INTEL to you in connection with the purchase and/or resale of computer systems containing AMD or INTEL microprocessors.

**RESPONSE TO DOCUMENT REQUEST NO. 16:**

Fry's incorporates each of its general objections. Fry's further objects on the grounds that the demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information; (vii) is grossly compound; (viii) is vague and ambiguous in its entirety; (ix) seeks documents protected from disclosure by the attorney-client privilege and attorney work product doctrine.

**DOCUMENT REQUEST NO. 17:**

All DOCUMENTS constituting, reflecting or discussing communications with

- 12 -

1  AMD or INTEL concerning the above-captioned matter, *AMD v. Intel*, Civil Action No. 05-441

2  (D. Del.), or any of the allegations about you in AMD's Complaint in that matter, or any other

3  litigation involving AMD and INTEL, or any investigation relating to INTEL by the Fair Trade

4  Commission of Japan or the European Commission.

5  **RESPONSE TO DOCUMENT REQUEST NO. 17:**

6    Fry's incorporates each of its general objections.  Fry's further objects on the grounds that the

7  demand: (i) seeks documents protected from disclosure by the attorney-client privilege and attorney

8  work product doctrine; (ii) is unintelligible; (iii) is compound; (iv) seeks information that is neither

9  relevant nor likely to lead to the discovery of admissible evidence; (v) seeks confidential and

10  proprietary business information; (vi) is harassing and oppressive; (vii) seeks trade secret information;

11  (viii) seeks information equally available to requesting party.

12

13  **DOCUMENT REQUEST NO. 18:**

14    DOCUMENTS sufficient to show the zip code and store number of all your retail locations.

15  **RESPONSE TO DOCUMENT REQUEST NO. 18:**

16    Fry's incorporates each of its general objections.  Fry's further objects on the grounds that the

17  demand: (i) seeks public information equally available to the requesting party; (ii) is improper as to

18  form; (iii) seeks information that is neither relevant nor likely to lead to the discovery of admissible

19  evidence; (iv) seeks a compilation or summary.

20

21  **DOCUMENT REQUEST NO. 19:**

22    All DOCUMENTS sufficient to show the steps taken by your COMPANY to preserve

23  DOCUMENTS with respect to this litigation or related litigation or proceeding including, without

24  limitation, all DOCUMENTS that constitute, reflect or discuss your COMPANY'S DOCUMENT

25  retention policy or policies from January 1, 2000 to the present.

26  **RESPONSE TO DOCUMENT REQUEST NO. 19:**

27    Fry's incorporates each of its general objections.  Fry's further objects on the grounds that the

28  demand: (i) seeks documents protected from disclosure by the attorney-client privilege and attorney

- 13 -

work product doctrine; (x) seeks an improper compilation or summary; (iii) is overbroad and unduly

burdensome; (iv) seeks information that is neither relevant nor likely to lead to the discovery of

admissible evidence; (v) seeks confidential and proprietary business information; (vi) is harassing and

oppressive; (vii) seeks trade secret information; (viii) is compound; (ix) is vague and ambiguous.


DATED: July 7, 2006


                                        FRY'S ELECTRONICS, INC.


                              By: _____
                                    Brian D. Henri
                                    Legal Counsel


- 14 -

Case Name:    Phil Paul, et al. v. Intel Corp.
Case Number: USDC - District of Delaware-Proceeding No.: 05-485-JJF

## PROOF OF SERVICE BY OVERNIGHT COURIER

I, the under signed, declare and state that I am over 18 years of age, employed in the City of San Jose, County of Santa Clara, California, and not a party to this action. My business address is 600 E. Brokaw Road, San Jose, CA 95112. I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service.

On July 7, 2006, at my place of business following ordinary business practice, I served **NON-PARTY FRY'S ELECTRONICS, INC.'S OBJECTIONS TO PHIL PAUL SUBPOENA** by placing a true and correct copy thereof in a sealed envelope(s) and depositing such envelope(s) in a box or other facility regularly maintained by **Golden State Overnight Delivery** an express service carrier providing overnight delivery, or delivering it to an authorized courier or driver authorized by the express service carrier to receive document, in an envelope or package designated by the express service carrier, with overnight delivery fees paid or provided for, clearly labeled to identify the person being served at the address indicated below:

R. Alexander Saveri, Esq.
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, California 94111

I declare under penalty of perjury that the forgoing is true and correct.

DATED:  7/7/06

STEVEN DELANEY

---

**PROOF OF SERVICE - OVERNIGHT COURIER - NON-PARTY FRY'S ELECTRONICS, INC.'S OBJECTIONS TO PHIL PAUL SUBPOEN**

EXHIBIT B



STEVE FIMMEL
DIRECT • 2062689362
STEVEF@HBSSLAW.COM

**HAGENS BERMAN**
**SOBOL SHAPIRO LLP**

November 16, 2006

*Via U.S. Mail*
*Via E-Mail*
Brian D. Henri, Esq.
Corporate Counsel
Fry's Electronics
Legal Department
600 E. Brokaw Road
San Jose, CA  95112

       Re:    Paul v. Intel Corporation 05-md-0485-JJF

Dear Mr. Henri:

       I write to advise you of Class Plaintiffs' position regarding production of documents and production of transactional data from Fry's Electronics. If you have any questions, please do not hesitate to contact me.

       We have decided not to seek production of any documents from Fry's Electronics at this time. Until further notice, we no longer will participate in negotiations regarding production of your documents, and we will not share in any of the costs of production of your documents.

       If we later seek production of any of your documents, we agree to be bound by the scope of production previously agreed upon by you, AMD and Intel or previously ordered by the Court. That is, if at the time we seek production of any of your documents, a production agreement or court order exists governing the scope of your production to AMD and Intel, we will not seek production outside the scope of that agreement or order. Moreover, if we later seek production of any of the documents that you have already produced to AMD and Intel, we will seek their production from one of those companies and not from Fry's Electronics.

       However, we must reserve our rights as to any documents that you do not produce to AMD and Intel on the basis of the Foreign Trade Antitrust Improvements Act. If those documents are subject to production in the class actions, we reserve our right to seek and

ATTORNEYS AT LAW                         SEATTLE   LOS ANGELES   CAMBRIDGE   PHOENIX   CHICAGO
T 206.623.7292   F 206.623.0594
1301 FIFTH AVENUE   SUITE 2900   SEATTLE, WASHINGTON 98101
www.hagens-berman.com

001438-11 140927 V1

November 16, 2006
Page 2

obtain their production from you in our cases, even though they are not produced to
AMD and Intel.

Our position as to transactional data is different from our position, stated above,
regarding documents. We still seek production of the transactional data requested in our
subpoena and will continue to negotiate with you concerning production of that data. (If
you have not been contacted by class counsel yet regarding your data, you should expect
a letter from us shortly on that topic).

I trust this makes our positions clear regarding production of your documents and
production of your transactional data.

Best regards,

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve Fimmel

SWF:LL

EXHIBIT C

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL: (650) 801-5000  FAX: (650) 801-5100

WRITER'S DIRECT DIAL NO.
**(650) 801-5001**

WRITER'S INTERNET ADDRESS
**robertstone@quinnemanuel.com**

April 11, 2007

<u>VIA E-MAIL</u>

Richard M. Volin, Esq.
FINKELSTEIN THOMPSON LLP
1050 30th Street, NW
Washington, DC 20007

Re:   *In re Intel Corp. Microprocessor Antitrust Litigation*, MDL No. 05-1717-JF;
      *Advanced Micro Devices, Inc., et al. v. Intel Corp., et al.*, C.A. No. 05-441-JJF;
      *Phil Paul v. Intel Corp.*, Consolidated C.A. No. 05-485-JJF

Dear Mr. Volin:

As you know, Class Plaintiffs served a documents-only subpoena on Fry's Electronics, Inc. ("Fry's") on or about June 23, 2006, that contained nineteen enumerated document requests seeking documents regarding nearly every facet of Fry's computer sales business for a period of more than six years. Given the extreme breadth of the document requests and the sensitive nature of the information being sought, Fry's served written objections to the document requests on July 7, 2006.

Beginning in August, 2006, the parties have engaged in discussions and exchanged correspondence regarding the proper scope of the subpoena and the need for the requested documents in view of Fry's acknowledged trade secret rights in its private financial and business information. From Fry's perspective, Class Plaintiffs have been unable to make a particularized showing of need for the broad range of documents and information sought in the subpoena, particularly in light of the fact that no class has yet been certified and that Class Plaintiffs have been unwilling or unable to identify whether any purported class representative purchased products at Fry's. Moreover, Class Plaintiffs have refused to expressly state if and how they would pay for the production. Indeed, in a letter dated November 16, 2006, Class Plaintiffs stated that they would not pay for the production of any documents. Nevertheless, Fry's has in

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL (213) 443-3000  FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL (415) 875-6600  FAX (415) 875-6700

good faith sought to reach a compromise with Class Plaintiffs in order to avoid law and motion practice on these issues. Despite these efforts, Class Plaintiffs filed a motion to compel on March 29, 2007, wrongfully asserting that Fry's has refused to produce any data "at all." In truth, Fry's has been and remains willing to produce responsive documents provided that (i) Class Plaintiffs make the required showing of need balanced against Fry's important trade secret interests, (ii) adequate protections are in place to ensure that the information is not disseminated to any competitor of Fry's or to AMD or Intel, and (iii) the requests are narrowly tailored and not unduly burdensome or duplicative of information sought from other parties and nonparties.

In order to respond to Class Plaintiffs' motion, Fry's has been compelled to retain Quinn Emanuel as outside counsel, and since that time we have diligently endeavored to determine exactly what documents responsive to the June 23, 2006, subpoena are being sought in Class Plaintiffs' motion to compel in hopes of being able to reach a compromise and forego the need for law and motion practice. Based on our teleconference on April 9, 2007, and the specific documents requested in the subpoena, Fry's has prepared a template report that provides the information available from its internal and proprietary information management system that is called for in Document Request Nos. 7(c) and 8(a) in the subpoena -- which requests (in combination) seek a summary of Fry's purchases and sales of computer systems that include a x86 microprocessor, including a description of each x86-based product purchased or sold, the identification number for each product, the number of units of each product that were purchased or sold and the revenue received by Fry's from the sales of the products. Fry's information management system does not maintain historical data on a monthly basis as is requested in the subpoena. A copy of Fry's proposed template is enclosed for your review.

Fry's is willing to provide summary reports showing aggregate information for a sample of computer models provided that the Confidentiality Agreement and Protective Order entered by the Court is amended in accordance with our suggestions as discussed during our teleconference on April 9th. I enclose a sample "insert" that we believe addresses Fry's legitimate concerns regarding the protection of its highly sensitive business information that is contained in the summary reports being requested by Class Plaintiffs.

If these conditions are acceptable to Class Plaintiffs, Fry's requests that Class Plaintiffs prepare a form of stipulation and proposed order to amend the Confidentiality Agreement and Protective Order in accordance with the enclosed insert. Fry's is prepared to negotiate the sample size and to produce the summary reports within seven days of entry of an Amended Confidentiality Agreement and Protective Order incorporating these suggestions.

Very truly yours,

for Robert W. Stone

Enclosures

2

cc:    Brian Henri (Via E-Mail)
       Brent Landau (Via E-Mail)
       J. Clayton Athey (Via E-Mail)

51216/2099719.1

| SAMPLE | | | | | |
|--------|-------------|----------------------------|------|------------------------|-------------------|
| Item # | Description | Number of Units Purchased | Cost | Number of Units Sold | Gross Revenue |
| | | | | | |
| | | | | | |
| | | | | | |

Special Designation for Use by Third Parties

31.    Any Confidential Discovery Material which a Third Party believes to be extremely confidential and/or sensitive in nature or a "trade secret" (as that term is used in Federal Rule of Civil Procedure 26(c)(7) and 45(c)(3)(B)(i)), may be designated by the Third Party at the time of disclosure as "CONFIDENTIAL -- OUTSIDE COUNSEL ONLY." Confidential Discovery Material designated as CONFIDENTIAL -- OUTSIDE COUNSEL ONLY may, without further leave of court, be disclosed only to those persons identified in Paragraphs 6(a), 6(b), and 6(d); provided however, that at least ten days before disclosure of any Confidential Discovery Material designated as CONFIDENTIAL -- OUTSIDE COUNSEL ONLY to a person described in Paragraph 6(b), the Party seeking such disclosure shall notify the Third Party who made the designation of the Party's intent to disclose materials designated CONFIDENTIAL -- OUTSIDE COUNSEL ONLY to such person.  The notice shall include a signed Acknowledgement of Protective Order form and shall identify the person's title, job responsibilities and affiliation(s) with any Party.  In addition, a copy of the person's most recent curriculum vitae, which shall include an identification of all such person's past and present employment and/or consulting relationships, shall accompany the notice.  Each Party may designate only one person or the type described in Paragraph 6(b) who is authorized to received materials designated CONFIDENTIAL -- OUTSIDE COUNSEL ONLY.

32.    If the Third Party objects to the disclosure of materials designated CONFIDENTIAL -- OUTSIDE COUNSEL ONLY to such person, the Third Party shall notify the counsel of record for the Party seeking disclosure in writing of the Third Party's objection(s) to such disclosure prior to the date on which the disclosure is intended to be made.  Should the Party seeking disclosure disagree with the basis for the objection(s), the Party seeking disclosure and the objecting Third Party must first attempt to resolve the objection(s) informally.  If the informal efforts do not resolve the dispute within ten business days, the Party seeking disclosure may file a motion requesting that the objection(s) be quashed after that ten-day period has passed.  The Party seeking disclosure shall have the burden of proof by a preponderance of the evidence on the issue of the sufficiency of the objection.  Pending a ruling by the Court upon any such objection(s), the materials designated CONFIDENTIAL -- OUTSIDE COUNSEL ONLY shall not be disclosed to the person objected to by the Third Party.

EXHIBIT D

## Mike Powell

| | |
|---|---|
| **From:** | Richard M. Volin [RVolin@finkelsteinthompson.com] |
| **Sent:** | Thursday, April 12, 2007 1:12 PM |
| **To:** | Mike Powell |
| **Cc:** | Small, Daniel; Landau, Brent |
| **Subject:** | Intel: Fry's opposition |

Mike,

Based on your client's position with regard to the protective order, it doesn't seem like further extensions are appropriate.  Thus, we'll look forward to your opposition tomorrow.  With regard to the hearing, I wanted to confirm that Fry's and the Class would only be presenting oral argument and would not be presenting any evidence. Please let me know.

Regards,

Richard M. Volin, Esq.
FINKELSTEIN THOMPSON LLP
1050 30th Street, NW
Washington, DC 20007
(202) 337-8000
(202) 337-8090 (fax)
www.finkelsteinthompson.com

CONFIDENTIALITY NOTE: This e-mail message contains information belonging to the law firm of Finkelstein Thompson LLP, which may be privileged, confidential and/or protected from disclosure.  The information is intended only for the use of the individual or entity named above. If you think that you have received this message in error, please e-mail the sender.  If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited.

EXHIBIT E

Special Designation for Use by Third Parties

31.     Any Confidential Discovery Material which a Third Party believes to be extremely confidential and/or sensitive in nature or a "trade secret" (as that term is used in Federal Rule of Civil Procedure 26(c)(7) and 45(c)(3)(B)(i)), may be designated by the Third Party at the time of disclosure as "CONFIDENTIAL -- OUTSIDE COUNSEL ONLY." Confidential Discovery Material designated as CONFIDENTIAL -- OUTSIDE COUNSEL ONLY may, without further leave of court, be disclosed only to those persons identified in Paragraphs 6(a), 6(b), and 6(d); provided however, that at least ten days before disclosure of any Confidential Discovery Material designated as CONFIDENTIAL -- OUTSIDE COUNSEL ONLY to a person described in Paragraph 6(b), the Party seeking such disclosure shall notify the Third Party who made the designation of the Party's intent to disclose materials designated CONFIDENTIAL -- OUTSIDE COUNSEL ONLY to such person. The notice shall include a signed Acknowledgement of Protective Order form and shall identify the person's title, job responsibilities and affiliation(s) with any Party. In addition, a copy of the person's most recent curriculum vitae, which shall include an identification of all such person's past and present employment and/or consulting relationships, shall accompany the notice. Each Party may designate only one person or the type described in Paragraph 6(b) who is authorized to received materials designated CONFIDENTIAL -- OUTSIDE COUNSEL ONLY.

32.     If the Third Party objects to the disclosure of materials designated CONFIDENTIAL -- OUTSIDE COUNSEL ONLY to such person, the Third Party shall notify the counsel of record for the Party seeking disclosure in writing of the Third Party's objection(s) to such disclosure prior to the date on which the disclosure is intended to be made. Should the Party seeking disclosure disagree with the basis for the objection(s), the Party seeking disclosure and the objecting Third Party must first attempt to resolve the objection(s) informally. If the informal efforts do not resolve the dispute within ten business days, the Party seeking disclosure may file a motion requesting that the objection(s) be quashed after that ten-day period has passed. The Party seeking disclosure shall have the burden of proof by a preponderance of the evidence on the issue of the sufficiency of the objection. Pending a ruling by the Court upon any such objection(s), the materials designated CONFIDENTIAL -- OUTSIDE COUNSEL ONLY shall not be disclosed to the person objected to by the Third Party.

EXHIBIT F

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  | No. C |
| Plaintiff, | STIPULATED PROTECTIVE ORDER |
| v. |  |
| Defendant. |  |

1. PURPOSES AND LIMITATIONS

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation would be warranted.   Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order.   The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords extends only to the limited information or items that are entitled under the applicable legal principles to treatment as confidential.   The parties further acknowledge, as set forth in Section 10, below, that this Stipulated Protective Order creates no entitlement to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and reflects the standards that will be applied when a party seeks permission from the court to file material under seal.

1

2. <u>DEFINITIONS</u>

    2.1   <u>Party</u>: any party to this action, including all of its officers, directors, employees, consultants, retained experts, and outside counsel (and their support staff).

    2.2   <u>Disclosure or Discovery Material</u>: all items or information, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things) that are produced or generated in disclosures or responses to discovery in this matter.

    2.3   <u>"Confidential" Information or Items</u>: information (regardless of how generated, stored or maintained) or tangible things that qualify for protection under standards developed under F.R.Civ.P. 26(c).

    2.4   <u>"Highly Confidential – Attorneys' Eyes Only" Information or Items</u>: extremely sensitive "Confidential Information or Items" whose disclosure to another Party or non-party would create a substantial risk of serious injury that could not be avoided by less restrictive means.

    2.5   <u>Receiving Party</u>: a Party that receives Disclosure or Discovery Material from a Producing Party.

    2.6   <u>Producing Party</u>: a Party or non-party that produces Disclosure or Discovery Material in this action.

    2.7.   <u>Designating Party</u>: a Party or non-party that designates information or items that it produces in disclosures or in responses to discovery as "Confidential" or "Highly Confidential — Attorneys' Eyes Only."

    2.8   <u>Protected Material</u>: any Disclosure or Discovery Material that is designated as "Confidential" or as "Highly Confidential – Attorneys' Eyes Only."

    2.9.   <u>Outside Counsel</u>:  attorneys who are not employees of a Party but who are retained to represent or advise a Party in this action.

    2.10   <u>House Counsel</u>:  attorneys who are employees of a Party.

    2.11   <u>Counsel</u> (without qualifier): Outside Counsel and House Counsel (as well as their support staffs).

2.12    <u>Expert</u>: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action and who is not a past or a current employee of a Party or of a competitor of a Party's and who, at the time of retention, is not anticipated to become an employee of a Party or a competitor of a Party's.   This definition includes a professional jury or trial consultant retained in connection with this litigation.

2.13    <u>Professional Vendors</u>: persons or entities that provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors.

3. <u>SCOPE</u>

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by parties or counsel to or in court or in other settings that might reveal Protected Material.

4. <u>DURATION</u>

Even after the termination of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.

5. <u>DESIGNATING PROTECTED MATERIAL</u>

5.1 <u>Exercise of Restraint and Care in Designating Material for Protection</u>.  Each Party or non-party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.  A Designating Party must take care to designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material,

1  documents, items, or communications for which protection is not warranted are not swept

2  unjustifiably within the ambit of this Order.

3  Mass, indiscriminate, or routinized designations are prohibited. Designations that are

4  shown to be clearly unjustified, or that have been made for an improper purpose (e.g., to

5  unnecessarily encumber or retard the case development process, or to impose unnecessary expenses

6  and burdens on other parties), expose the Designating Party to sanctions.

7  If it comes to a Party's or a non-party's attention that information or items that it

8  designated for protection do not qualify for protection at all, or do not qualify for the level of

9  protection initially asserted, that Party or non-party must promptly notify all other parties that it is

10  withdrawing the mistaken designation.

11  5.2 <u>Manner and Timing of Designations</u>.  Except as otherwise provided in this Order

12  (see, e.g., second paragraph of section 5.2(a), below), or as otherwise stipulated or ordered, material

13  that qualifies for protection under this Order must be clearly so designated before the material is

14  disclosed or produced.

15  Designation in conformity with this Order requires:

16  (a) <u>for information in documentary form</u> (apart from transcripts of depositions

17  or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL"

18  or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" at the top of each page that

19  contains protected material.  If only a portion or portions of the material on a page qualifies for

20  protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making

21  appropriate markings in the margins) and must specify, for each portion, the level of protection being

22  asserted (either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

23  ONLY").

24  A Party or non-party that makes original documents or materials available for

25  inspection need not designate them for protection until after the inspecting Party has indicated which

26  material it would like copied and produced.   During the inspection and before the designation, all of

27  the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL –

28  ATTORNEYS' EYES ONLY."   After the inspecting Party has identified the documents it wants

copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order, then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY") at the top of each page that contains Protected Material.  If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted (either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY").

(b) for testimony given in deposition or in other pretrial or trial proceedings, that the Party or non-party offering or sponsoring the testimony identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony, and further specify any portions of the testimony that qualify as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  When it is impractical to identify separately each portion of testimony that is entitled to protection, and when it appears that substantial portions of the testimony may qualify for protection, the Party or non-party that sponsors, offers, or gives the testimony may invoke on the record (before the deposition or proceeding is concluded) a right to have up to 20 days to identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being asserted ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY").  Only those portions of the testimony that are appropriately designated for protection within the 20 days shall be covered by the provisions of this Stipulated Protective Order.

Transcript pages containing Protected Material must be separately bound by the court reporter, who must affix to the top of each such page the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," as instructed by the Party or non-party offering or sponsoring the witness or presenting the testimony.

(c) for information produced in some form other than documentary, and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."   If only portions of the information

1  or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected

2  portions, specifying whether they qualify as "Confidential" or as "Highly Confidential – Attorneys'

3  Eyes Only."

4          5.3 <u>Inadvertent Failures to Designate</u>.  If timely corrected, an inadvertent failure to

5  designate qualified information or items as "Confidential" or "Highly Confidential – Attorneys' Eyes

6  Only" does not, standing alone, waive the Designating Party's right to secure protection under this

7  Order for such material.  If material is appropriately designated as "Confidential" or "Highly

8  Confidential – Attorneys' Eyes Only" after the material was initially produced, the Receiving Party,

9  on timely notification of the designation, must make reasonable efforts to assure that the material is

10  treated in accordance with the provisions of this Order.

11

12      6. <u>CHALLENGING CONFIDENTIALITY DESIGNATIONS</u>

13          6.1 <u>Timing of Challenges</u>.  Unless a prompt challenge to a Designating Party's

14  confidentiality designation is necessary to avoid foreseeable substantial unfairness, unnecessary

15  economic burdens, or a later significant disruption or delay of the litigation, a Party does not waive its

16  right to challenge a confidentiality designation by electing not to mount a challenge promptly after the

17  original designation is disclosed.

18          6.2 <u>Meet and Confer.</u>  A Party that elects to initiate a challenge to a Designating

19  Party's confidentiality designation must do so in good faith and must begin the process by conferring

20  directly (in voice to voice dialogue; other forms of communication are not sufficient) with counsel for

21  the Designating Party.  In conferring, the challenging Party must explain the basis for its belief that

22  the confidentiality designation was not proper and must give the Designating Party an opportunity to

23  review the designated material, to reconsider the circumstances, and, if no change in designation is

24  offered, to explain the basis for the chosen designation.  A challenging Party may proceed to the next

25  stage of the challenge process only if it has engaged in this meet and confer process first.

26

27          6.3 <u>Judicial Intervention</u>.  A Party that elects to press a challenge to a confidentiality

28  designation after considering the justification offered by the Designating Party may file and serve a

motion under Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) that identifies the challenged material and sets forth in detail the basis for the challenge.  Each such motion must be accompanied by a competent declaration that affirms that the movant has complied with the meet and confer requirements imposed in the preceding paragraph and that sets forth with specificity the justification for the confidentiality designation that was given by the Designating Party in the meet and confer dialogue.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party.   Until the court rules on the challenge, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation.

## 7. ACCESS TO AND USE OF PROTECTED MATERIAL

7.1 Basic Principles.  A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a non-party in connection with this case only for prosecuting, defending, or attempting to settle this litigation.   Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order.  When the litigation has been terminated, a Receiving Party must comply with the provisions of section 11, below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2   Disclosure of "CONFIDENTIAL" Information or Items.  Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated CONFIDENTIAL only to:

(a) the Receiving Party's Outside Counsel of record in this action, as well as employees of said Counsel to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Agreement to Be Bound by Protective Order" that is attached hereto as Exhibit A;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed

7

the "Agreement to Be Bound by Protective Order" (Exhibit A);

(c) experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by Protective Order" (Exhibit A);

(d) the Court and its personnel;

(e) court reporters, their staffs, and professional vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by Protective Order" (Exhibit A);

(f) during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Agreement to Be Bound by Protective Order" (Exhibit A). Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order.

(g) the author of the document or the original source of the information.

7.3 <u>Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items</u>.  Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

(a) the Receiving Party's Outside Counsel of record in this action, as well as employees of said Counsel to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Agreement to Be Bound by Protective Order" that is attached hereto as Exhibit A;

[(b) – *Optional – as deemed appropriate in case-specific circumstances*: House Counsel of a Receiving Party (1) who has no involvement in competitive decision-making or in patent prosecutions involving _____ [specify subject matter areas], (2) to whom disclosure is reasonably necessary for this litigation,  and (3) who has signed the "Agreement to Be Bound by Protective Order" (Exhibit A);

(c) Experts (as defined in this Order) (1) to whom disclosure is reasonably

8

necessary for this litigation, (2) who have signed the "Agreement to Be Bound by Protective Order" (Exhibit A), [*Optional*: and (3) as to whom the procedures set forth in paragraph 7.4, below, have been followed];

(d) the Court and its personnel;

(e) court reporters, their staffs, and professional vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by Protective Order" (Exhibit A); and

(f) the author of the document or the original source of the information.

[ *Optional*: 7.4 <u>Procedures for Approving Disclosure of "HIGHLY CONFIDENTIAL –</u> <u>ATTORNEYS' EYES ONLY" Information or Items to "Experts"</u>

(a) Unless otherwise ordered by the court or agreed in writing by the Designating Party, a Party that seeks to disclose to an "Expert" (as defined in this Order) any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" first must make a written request to the Designating Party that (1) identifies the specific HIGHLY CONFIDENTIAL information that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5) identifies each person or entity from whom the Expert has received compensation for work in his or her areas of expertise or to whom the expert has provided professional services at any time during the preceding five years, and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has provided any professional services during the preceding five years.

(b) A Party that makes a request and provides the information specified in the preceding paragraph may disclose the subject Protected Material to the identified Expert unless, within seven court days of delivering the request, the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based.

(c) A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by

agreement.  If no agreement is reached, the Party seeking to make the disclosure to the Expert may file a motion as provided in Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) seeking permission from the court to do so.   Any such motion must describe the circumstances with specificity, set forth in detail the reasons for which the disclosure to the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail and suggest any additional means that might be used to reduce that risk.  In addition, any such motion must be accompanied by a competent declaration in which the movant describes the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and sets forth the reasons advanced by the Designating Party for its refusal to approve the disclosure.

In any such proceeding the Party opposing disclosure to the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert.

8. <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>.

If a Receiving Party is served with a subpoena or an order issued in other litigation that would compel disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," the Receiving Party must so notify the Designating Party, in writing (by fax, if possible) immediately and in no event more than three court days after receiving the subpoena or order.  Such notification must include a copy of the subpoena or court order.

The Receiving Party also must immediately inform in writing the Party who caused the subpoena or order to issue in the other litigation that some or all the material covered by the subpoena or order is the subject of this Protective Order.   In addition, the Receiving Party must deliver a copy of this Stipulated Protective Order promptly to the Party in the other action that caused the subpoena or order to issue.

The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the Designating Party in this case an opportunity to try to

protect its confidentiality interests in the court from which the subpoena or order issued.  The Designating Party shall bear the burdens and the expenses of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

9. <u>UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL</u>

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

10. <u>FILING PROTECTED MATERIAL.</u>  Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material.  A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5.

11. <u>FINAL DISPOSITION.</u>  Unless otherwise ordered or agreed in writing by the Producing Party, within sixty days after the final termination of this action, each Receiving Party must return all Protected Material to the Producing Party.  As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries or any other form of reproducing or capturing any of the Protected Material.  With permission in writing from the Designating Party, the Receiving Party may destroy some or all of the Protected Material instead of returning it.   Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the sixty day deadline that identifies (by category, where appropriate) all the Protected Material that was returned

11

or destroyed and that affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or other forms of reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product, even if such materials contain Protected Material.  Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION), above.

   12. <u>MISCELLANEOUS</u>

      12.1   <u>Right to Further Relief</u>.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

      12.2   <u>Right to Assert Other Objections</u>.  By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order.   Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: _____     _____
                                                          Attorneys for Plaintiff

DATED: _____     _____
                                                          Attorneys for Defendant

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: _____     _____
                                                          [name of judge]
                                                          United States District/Magistrate Judge

# EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Northern District of California on [date] in the case of _____ **[insert formal name of the case and the number and initials assigned to it by the court]**.   I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt.   I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I  further agree to submit to the jurisdiction of the United States District Court for the Northern District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.


Date: _____

City and State where sworn and signed: _____

Printed name: _____
                              [printed name]

Signature: _____
                            [signature]

EXHIBIT G



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MERCK & CO., INC.,

        Plaintiff,

    v.

TEVA PHARMACEUTICALS USA, INC

        Defendant.

C.A. No. 01-048-JJF
(Consolidated)

## PROTECTIVE ORDER

WHEREAS the plaintiff to this action, Merck & Company, Inc. ("Plaintiff") and the defendant, Teva Pharmaceuticals USA, Inc. ("Defendant") possess confidential information which may be disclosed in providing initial disclosures, responding to discovery requests or otherwise in this action and which must be protected in order to preserve the legitimate business interests of the parties, and

WHEREAS Plaintiff and Defendant have, through counsel, stipulated to the entry of this Protective Order to prevent unnecessary dissemination or disclosure of such confidential information, and

WHEREAS the parties have established good cause for entry of this Order,

IT IS HEREBY ORDERED that:

1.    <u>Definitions</u>

    (a)    The term "Confidential Information" includes all information of a proprietary business or technical nature that might be of value to an actual or potential competitor of the designating party and that the designating party reasonably believes should be protected from disclosure.

(b)    The term "Highly Confidential Information" shall mean information that the designating party believes, in good faith, the disclosure of which may cause harm to the competitive position of the designating party.  Examples of such information may include without limitation:

(1)    Current and future business plans, including unpublished financial data and pricing information

(2)    Private product development and design information (for new, old, suspended and abandoned projects)

(3)    New business development (for new and old projects)

(4)    Trade secrets

(5)    Competitor market analysis

(6)    Customer lists

(7)    Distributor agreements and licenses

(8)    Agreements with sales representatives

(9)    Business relationships with third parties

(10)    Manufacturing processes for products currently offered or under development other than those for weekly alendronate formulations

(c)    The term "Protected Information" shall mean information designated as containing or comprising Confidential or Highly Confidential Information pursuant to the provisions of this Order.  It may include, without limitation, documents produced in this action, during formal discovery or otherwise; information produced by non-parties which the producing or designating party is under an obligation to maintain in confidence; answers to interrogatories and responses to requests for admission or other discovery requests; deposition, hearing or trial transcripts; and tangible things or objects that are designated as containing or comprising Confidential or Highly Confidential Information.  The information contained therein

and all copies, abstracts, excerpts, analyses or other writings that contain, reflect, reveal, suggest or otherwise disclose such information shall also be deemed Protected Information. Information originally designated as Protected Information shall not retain that status after any ruling by the Court denying such status to it.

(d)     The term "designating party" means the party designating documents or information as Protected Information under this Order.

(e)     The term "receiving party" shall mean the party to whom Protected Information is disclosed.

(f)     Notwithstanding anything to the contrary herein, the description Protected Information shall apply to all that information so designated by the designating party absent an order of the Court or subsequent written agreement of the designating party providing otherwise.

**Designation of Confidential or Highly Confidential Information as Protected Information**

2.     Each designating party who produces or discloses any material that it believes contains or comprises Confidential or Highly Confidential Information shall designate the same as Protected Information. In so designating the material the designating party shall mark "CONFIDENTIAL" on any document containing Confidential Information and "HIGHLY CONFIDENTIAL" on any document containing Highly Confidential Information. When documents or things are produced for inspection, the documents or things may be collectively designated as containing Confidential Information for purposes of the inspection, by letter or otherwise, without marking each document or thing "CONFIDENTIAL, " and such documents or things will be treated as Protected Information under this Order.

3.    If any Confidential or Highly Confidential Information is produced by a non-party to this litigation, such a non-party shall be considered a "designating party" within the meaning of that term as it is used in the context of this Order and both parties to this Order should be treated as receiving parties. The parties recognize that, during the course of this litigation, Confidential or Highly Confidential Information that originated with a non-party and for which there exists an obligation of confidentiality may be produced. Such information that the designating party believes originated with a non-party, but is subject to a confidentiality obligation may be designated as Protected Information and shall be subject to the restrictions on disclosure specified in Paragraph 5.

4.    In the event any designating party discovers, after it has produced information, that it has inadvertently produced Confidential or Highly Confidential Information that has not been correctly designated, the designating party may redesignate the information by a subsequent notice in writing specifically identifying the redesignated information, in which event the parties shall henceforth treat such information in accord with this Protective Order, and shall undertake reasonable efforts to correct any disclosure of such information contrary to the redesignation.

**Disclosure of the Protected Information**

5.    Information designated as Protected Information may be disclosed only to the following:

(a)    Attorneys, employees and staff affiliated with any of the law firms representing plaintiff or defendant in this action. At present, such firms are Howrey Simon Arnold & White, LLP; Morris, Nichols, Arsht & Tunnell; Kenyon & Kenyon; and Young

Conaway Stargatt & Taylor, LLP, but this provision shall include any other law firms whose attorneys enter an appearance;

(b)    Independent consultants or experts (and their staff) retained by the attorneys for the parties either as technical consultants or expert witnesses for the purposes of this litigation, as long as these personnel comply with the procedure of Paragraph 14 herein;

(c)    those persons described in Paragraph 16 herein;

(d)    the Court, Court personnel, and Official Court Reporters to the extent that Protected Information is disclosed at a deposition or court session which such reporter is transcribing;

(e)    information designated as "Confidential Information" may be disclosed to the following in-house counsel employed by plaintiff:

(1)    Paul Matukaitis, Esq., Edward Murray, Esq. and Gerard Devlin, Esq.

(f)    information designated as "Confidential Information" may be disclosed to the following in-house representatives employed by defendant:

(1)    Richard Egosi, Esq., General Counsel; and

(2)    Marc Goshko, Senior Director of Patents and Trademarks.

The foregoing list in this Paragraph 5 may be expanded by mutual agreement in writing by counsel for Plaintiff and Defendant. In addition, to the extent that any of the in-house counsel listed above is replaced during the course of this litigation, replacement counsel may be substituted in this Order.

### Use and Control of Protected Information

6.    Before an expert consultant is afforded access to another party's Protected Information, the identity, current resume or curriculum vitae of the expert, and a signed

Declaration of Compliance shall be furnished to all parties. The resume or curriculum vitae may be provided at any time after this Protective Order is signed by the parties. The parties will then have five (5) business days from the day of receipt of the name and resume or curriculum vitae of the expert to submit an objection, in writing, notifying the other parties that the party objects to such expert being shown Protected Information and explaining the basis for the objection. During this time period, Protected Information will not be disclosed to the expert. The parties will then have five (5) business days after an objection is raised during which they may agree on terms under which the expert may be given access to Protected Information. During this time period, no Protected Information may be disclosed to the expert. If they are unable to resolve their differences, the party objecting to the disclosure of Protected Information may apply to the Court for relief, and the burden is on that party to demonstrate good cause why Protected Information may not be shown to the designated expert. If no such application to the Court is made within five (5) business days of the notification of objection, the issue will be deemed waived, and the party seeking to provide Protected Information to an expert will be permitted to do so. In the event an application is made to the Court, however, the materials will continue to be treated as Protected Information in accordance with this Protective Order during the time the Court considers the application and will not be disclosed to the expert consultant.

7.    All information designated as Protected Information pursuant to this Order and disclosed in this litigation shall be used by a recipient thereof solely for the purposes of this litigation and not for any business or competitive purposes. It shall be the duty of each party and each individual having notice of this Protective Order to comply with this Order from the time of such notice.

8.     All deposition testimony shall be marked Highly Confidential and shall be treated as containing Protected Information and subject to this Protective Order until a time twenty-five (25) calendar days after the official transcript of such testimony is received. After expiration of the twenty-five (25) day period, the Highly Confidential designation shall have no force and effect unless within twenty (20) calendar days of receipt of the official deposition transcript, the designating party notifies the receiving party in writing that Confidential or Highly Confidential Information is contained within the deposition testimony and specifies the specific pages and lines of the transcript on which such information is contained. If during a Court proceeding Confidential or Highly Confidential Information is likely to be revealed, any party may request that the proceeding be held <u>in camera</u>. If such request is granted by the Court, the transcript of such proceedings shall be treated as a deposition transcript for the purposes of this Order.

9.     All information subject to confidential treatment in accordance with the terms of this Protective Order that is filed with the Court, and any pleadings, motions or other papers filed with the Court disclosing any Protected Information, shall be filed under seal and kept under seal until further order of the Court. Where possible, only the protected portions of filings with the Court shall be filed under seal.

### Miscellaneous

10.     This Protective Order is intended to provide a mechanism for handling the disclosure or production of Confidential or Highly Confidential Information to which there is no objection other than confidentiality. Each party reserves the right to object to any disclosure of information or production of any documents it deems to contain Confidential or Highly Confidential Information on any other ground it may deem appropriate, and any party may move

-7-

for relief from, or general or particular modification of, the mechanism herein set forth or the application of this Order in any particular circumstance.

11.    This Protective Order may be amended with respect to specific documents or items of Protected Information by Court order, or by written agreement of the parties hereto. This Protective Order shall remain in force and effect indefinitely until modified, superseded or terminated by Order of this Court.

12.    Upon final termination of this action (including all appeals) with respect to any party receiving any Protected Information and at the option of the designating party, the receiving party shall, within thirty (30) days of such termination, either return to the designating party or destroy all Protected Information in its possession.  In either event, the receiving party shall specifically describe the materials returned or destroyed and certify their return or destruction, with the exception that one outside counsel for each party may retain one copy of each of:  the pleadings or other papers filed with the Court or served in the course of the litigation, the depositions, the deposition exhibits and the trial record.

13.    No party or person shall disclose or cause to be disclosed to anyone not specified in Paragraph 5 as being entitled to receive it, any information designated as Protected Information under this Protective Order without prior written consent of the designating party or an Order of this Court.  If the receiving party learns that Protected Information produced to it is disclosed to any person other than in the manner authorized by this Order, the receiving party learning of the disclosure must immediately inform the designating party of all pertinent facts relating to such disclosure and shall make every effort to prevent disclosure by each unauthorized person who received such information.

14.    No expert or consultant designated in accordance with Paragraph 5(b) above shall have access to Protected Information without first signing a Declaration of Compliance with the Protective Order (in the form attached as Exhibit 1 hereto). A file of all such original written Declarations shall be maintained by counsel for the party obtaining them.

15.    Nothing herein shall prevent any party or non-party from seeking additional relief from the Court not specified in this Order.

16.    Nothing herein shall prevent:  (a) any party from disclosing its own Protected Information in any manner that it considers appropriate;  (b) counsel for either party from showing or using Protected Information during examination, at deposition or trial, of any current or former officer, employee or retained expert of the party who designated the information confidential, or during examination of any other witness with knowledge relevant to the subject of the Protected Information;  (c) the disclosure of Protected Information to any person who either authored in whole or in part, or who received in the ordinary course of his or her work, the Protected Information, provided such person signs a Declaration of Compliance with this Protective Order prior to such disclosure.

17.    Nothing herein shall prevent a receiving party from contending (for the purposes of securing an order so providing from the Court) that any or all Protected Information is not confidential or otherwise not entitled to protection.  Any receiving party may at any time request that the designating party cancel or change the Protected Information designation with respect to any document, object or information.  Such request shall be written, shall be served on counsel for the designating party, and shall particularly identify the designated Protected Information that the receiving party contends is not confidential or highly confidential and the reasons supporting its contention.  If the designating party does not agree to remove or change

the Protected Information designation, then the party contending that such documents or information are not confidential shall file a motion to be relieved from the restrictions of this Order with respect to the document or information in question. Production of documents and things for purpose of inspection and copying shall not constitute a waiver of confidentiality, privilege or immunity from discovery as to such documents or any other information.

18.     All documents and things produced by a party for inspection by the other shall be retained by the party producing the same and, during the pendency of this litigation, shall be made available for reinspection for good cause pursuant to the terms of this Order on reasonable notice and at reasonable times upon request.

19.     The parties have agreed that inadvertent production of documents or information subject to the attorney-client privilege or work-product immunity (despite the parties' reasonable efforts to prescreen such documents and information prior to production) does not waive the attorney-client privilege or work product immunity if a request for return of such documents or information is made promptly after the producing party learns of its inadvertent production.

20.     All documents and things produced for inspection may be numbered by the producing party; all produced documents and things which are identified by counsel for the receiving party for copying or imaging at the request of opposing counsel shall be numbered by the producing party.

21.     Upon request, one copy or image of inspected documents or designated inspected documents, and where reasonably possible, inspected things, will be furnished by the party producing the same to the receiving party at the expense of the receiving party unless other arrangements have been made. Prior to copying or imaging, the parties to this Protective Order

shall agree upon a rate to be charged the receiving party for copies or images of documents and things requested.

22.    This Order shall continue in effect after termination of this action and continue to be binding upon all persons to whom Protected Information is disclosed hereunder.

IT IS HEREBY STIPULATED:

MORRIS, NICHOLS, ARSHT & TUNNELL        YOUNG CONAWAY STARGATT & TAYLOR, LLP


_____          _____
Mary B. Graham (#2256)                    Josy W. Ingersoll (#1088)
Maryellen Noreika(#3208)                  Rodney Square North, 11th Floor
1201 N. Market Street                     Wilmington, DE 19801
P.O. Box 1347                             (302) 571-6600
Wilmington, DE 19899                        Attorneys for Defendant
(302) 658-9200                              Teva Pharmaceuticals USA, Inc.
  Attorneys For Plaintiff
  Merck & Co., Inc.


IT IS HEREBY ORDERED:


_____
United States District Judge    4/8/02


281542

-11-

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MERCK & CO., INC.,

        Plaintiff,

   v.

TEVA PHARMACEUTICALS USA, INC

        Defendant.

C.A. No. 01-048-JJF
(Consolidated)

## DECLARATION OF COMPLIANCE

I, the undersigned, hereby acknowledge that I have read the Protective Order entered in this action, understand the terms thereof, agree to be bound by such terms, and agree to be subject to the jurisdiction of said Court in all matters relating to said Protective Order. I acknowledge that I will treat all information designated as "Confidential" and/or "Highly Confidential" strictly in accordance with the terms and conditions of this Protective Order, and that I understand that any unauthorized use of such material that I receive may constitute contempt of court.

Date: _____

Address:_____

_____
Signature

_____
Print Name

-12-