# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

RESEARCH IN MOTION LIMITED,

    Plaintiff Counter-defendant,

    v.

GOOD TECHNOLOGY, INC.,

    Defendant Counter-claimant.

Civil Action Nos. 02-556-JJF, 02-1236-JJF, and 02-1338-JJF

## PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 26(c) and good cause appearing,

IT IS HEREBY ORDERED as follows:

## APPLICABILITY OF PROTECTIVE ORDER

1.    All documents, materials, items and testimony produced to or for any of the Parties, including copies or extracts therefrom, compilations or summaries thereof, and the information contained therein, shall be governed by this Protective Order.

2.    The terms of this Protective Order shall apply to all manner and means of discovery permitted by the Federal Rules of Civil Procedure.

3.    For purposes of this Protective Order, the term "Patenting" shall mean:

    (a)    preparing and/or prosecuting any application for a Party for a utility patent (or portion thereof), either in the United States or abroad (and including applications filed under the Patent Cooperation Treaty) relating to any fields to which U.S. Patents Nos. 6,219,694, 5,590,800, 5,715,387, 6,396,482 or 5,802,312 (collectively the "Patents in Issue") relate;

    (b)    preparing patent claims for a Party relating to any fields to which the Patents in Issue relate;

1

(c)    providing advice or assistance to a Party regarding specific claim scope, claim language, embodiments for claim coverage, claims for prosecution, or products or processes for coverage by claims relating to any fields to which the Patents in Issue relate; and or

(d)    advising, assisting, or supervising anyone for the purpose of doing any of the foregoing.

4.    For purposes of this Protective Order, the term "Party" shall mean Research in Motion Limited and Good Technology, Inc., and their affiliates, parents, subsidiaries, and other entities which are under common ownership and control.  For purposes of this Protective Order, the term "Parties" shall mean both Research in Motion Limited and Good Technology, Inc.

## CONFIDENTIAL DESIGNATION

5.    Documents, materials, items and testimony produced by any Party or non-party in these actions may be designated by such producing Party or non-party as "Confidential" pursuant to the procedures set forth in Paragraph 12, *infra*.  In designating information as Confidential, a Party or non-party will make such designation only as to information which that Party or non-party in good faith believes constitutes information used by it in, or pertaining to, its business, which information is not generally known and/or which the Party or non-party would normally not reveal to third parties or would cause third parties to maintain in confidence.  Absent a specific order by this Court, such information, once designated as Confidential shall be used by the persons to whom such information is communicated solely for purposes of these actions, including any appeals, and shall not be used  for any business, Patenting, or other purpose or function,  and such information shall not be disclosed to anyone except as provided in this Protective Order.

2

o.    Confidential information may be communicated only to the following persons:

(a)    Retained counsel of record to any Party to this litigation, and attorneys, legal assistants, stenographic and clerical employees employed by their law firms and working under the supervision of such counsel;

(b)    In-house counsel for any Party, and legal assistants, stenographic and clerical employees working under the supervision of such counsel;

(c)    Consultants or technical experts and their staffs to the extent cleared by the Parties pursuant to this Protective Order and who have signed a Consent form, in the form attached as Exhibit A;

(d)    Any fact witness of whom testimony is taken, where such person was the author or a recipient of the Confidential information or where counsel for the Party or non-party designating the information as Confidential has approved of the communication of such information to that fact witness;

(e)    The Court and Court personnel, including appellate courts and appellate court personnel;

(f)    Litigation support services, including independent document copiers, graphic artists and jury consultants who have an obligation to keep such information confidential;

(g)    Any named Party to this litigation, including any present or former employee thereof to whom it is necessary that the Confidential information be communicated for purposes of this litigation; and

(h)    Any other person as to whom the Party or non-party designating the information as Confidential approves the disclosure in writing or in a transcribed proceeding.

3

HIGHLY CONFIDENTIAL–OUTSIDE COUNSEL ONLY DESIGNATION

7.      Certain Confidential information may be designated by a Party or non-party as "Highly Confidential–Outside Counsel Only." This Highly Confidential–Outside Counsel Only designation shall be limited to Confidential information that the designating Party or non-party believes, in good faith, contains information the disclosure of which will harm the competitive position of the designating Party or non-party, and shall be limited to Confidential information which comprises highly sensitive technical information relating to research for and production of current products or services (including features initially developed for former products and services that are included in current products or services), technical, business and research information regarding future products or services, highly sensitive financial information, forecasts, and marketing plans, competitive or market analyses, customer lists, pricing data, cost data, customer orders, customer quotations, and any non-public pending or abandoned patent applications.

8.      Information designated Highly Confidential–Outside Counsel Only may be communicated only to the persons described in Paragraphs 6 (a), (c), (d), (e), (f), or (h), *supra*, who are permitted to receive Confidential information, and who for one year after the conclusion of this litigation, including any appeals, shall not participate in any Patenting for a Party, and may be communicated to persons described in Paragraph 6(c), *supra*, only pursuant to the procedures set forth in Paragraph 10, *infra*.

SOURCE CODE

9.      To the extent that either Party is required to produce source code in the above-captioned actions, it shall make such source code available on a reasonable basis to the other party, by placing that source code on a computer at its outside counsel's office and providing reasonable access to the other Party's retained counsel, as defined pursuant to paragraph 6(a),

4

and or its experts or consultants qualified pursuant to paragraph 6(c).  Through its retained
counsel and qualified experts or consultants, each Party shall be permitted to view, but not to
copy, edit, modify, or in any way change the other Party's source code.  As with any other form
of discovery material, either Party may designate the information contained in its source code as
"Confidential" or "Highly Confidential—Outside Counsel Only" pursuant to the terms of this
Protective Order.  Nothing in this Paragraph shall preclude this Court from placing additional
restrictions or protections by separate order on particular productions of source code.

## PROCEDURE FOR COMMUNICATING CONFIDENTIAL INFORMATION TO AUTHORIZED RECIPIENTS

10.     The procedure for communicating information designated Confidential or Highly
Confidential—Outside Counsel Only to the persons described in Paragraph 6(c), *supra*, shall be as
follows:

(a)     At least seven (7) Court days prior to such communication, the Party
seeking to communicate such information shall provide notice by facsimile or overnight courier
service to each Party and non-party who has designated the information as Confidential or
Highly Confidential—Outside Counsel Only.  Such notice shall consist of:

(i)     The name of the person to whom the communication is to be made;

(ii)     A copy of a Consent form signed by said person, in the form
attached as Exhibit A; and

(iii)     The person's current *curriculum vitae*, including a list of all current
clients in the wireless communications industry.

(b)     Within seven (7) Court days of receipt of a notice described in
subparagraph 10(a), *supra*, a Party or non-party receiving such notice may object to the
communication of Confidential or Highly Confidential—Outside Counsel Only information to the

proposed recipient. Any such objection is to be in writing and is to be served upon the Party or facsimile or overnight courier service. The Party giving the notice and the Party or non-party making the objection shall meet and confer to try to resolve the objection. In the event that the objection is not resolved, the Party seeking to communicate the Confidential or Highly Confidential–Outside Counsel Only information may file a motion that communication be permitted. Unless otherwise directed by the Court, said motion shall be filed by means of a letter brief not to exceed five (5) pages. Such motion *must* be filed and served by facsimile or overnight courier service within seven (7) Court days of receipt of service of the objection to communication, unless otherwise permitted by order of the Court. No communication of the information to the proposed recipient may be made pending the resolution of the objection or a ruling by the Court. Nothing herein shall alter the respective burdens of proof that would otherwise apply.

11.    Where the consent of a Party is required for disclosure under this Order and that consent has been refused, the Party refusing to consent will ensure that it has made a good faith attempt to reach an agreement, including redacting or otherwise limiting the disclosure wherever possible.

## PROCEDURE FOR DESIGNATING MATERIALS PRODUCED

12.    Any Party or non-party wishing to invoke the provisions of this Protective Order shall designate any information that they consider Confidential or Highly Confidential–Outside Counsel Only at the time such information is disclosed, or as soon thereafter as the Party or non-party seeking protection becomes aware of the nature of the information disclosed. With respect to documents for which the provisions of this Protective Order are invoked, the documents must be marked Confidential or Highly Confidential–Outside Counsel Only on all pages by the producing Party or non-party. In the case of information stored on magnetic or optical media for

6

NYI-2040553v2

which the provisions of this Protective Order are invoked, the items shall be clearly marked

the electronic media if possible. If it is not possible to mark such electronic media, such items

may be produced in a sealed envelope or other suitable enclosure that is appropriately marked

## DEPOSITION TESTIMONY

13.    The Parties and deponents, at any time during a deposition or within thirty (30)

days of receipt of the deposition transcript, may designate portions of the deposition for

protection under this Protective Order.  Pending expiration of this designation period, the entire

deposition transcript (with the exception of the exhibits to the transcript, discussed *infra*) shall be

treated as Highly Confidential–Outside Counsel Only, unless counsel agree otherwise on the

record or in writing.  Exhibits to the deposition transcript will be treated in accordance with

whatever designation was given those materials as produced or, if not previously produced, at the

time of the deposition.  Information within the deposition transcript shall be designated by

having the court reporter mark the pages containing such information as Confidential or Highly

Confidential–Outside Counsel Only or by providing written identification of such pages and their

designations to counsel for the Parties and to any other person known to have a copy of the

transcript.

14.    If any information designated as Confidential or Highly Confidential–Outside

Counsel Only pursuant to this Protective Order is used during the course of a deposition, each

portion of the deposition transcript reflecting such information shall be marked with the

appropriate designation, as set forth in Paragraph 13, *supra*, and access thereto shall be limited

pursuant to the terms of this Protective Order.

15.    A witness may be shown information designated as Confidential or Highly

Confidential–Outside Counsel Only, by an attorney bound by this Protective Order, under the

following conditions:

7

(a)    if the individual is identified as having been a signatory, author, addressee or recipient of a copy of the document prior to its production in this litigation or by virtue of other testimony or circumstances had access to the contents of the document prior to its production in this litigation; or

(b)    if the individual is a current officer, director or employee of the Party or non-party that designated the information as Confidential or Highly Confidential–Outside Counsel Only; or

(c)    if the individual is a Federal Rule of Civil Procedure 30(b)(6) witness of the Party or non-party that designated the information as Confidential or Highly Confidential–Outside Counsel Only; or

(d)    if the individual is a former officer, director or employee of the Party or non-party that designated the document as Confidential or Highly Confidential–Outside Counsel Only, *and* either (i) it appears from the face of the document that the individual previously had access to the information while an officer, director or employee of the designating Party or non-party, or (ii) counsel for the designating Party or non-party agrees to permit access; or

(e)    if the individual is a testifying expert who has complied with the provisions of Paragraph 10(a)(i)-(iii), *supra*.

16.    Nothing herein shall restrict the use by a Party or non-party of its own Confidential or Highly Confidential–Outside Counsel Only information. Under no circumstances, however, shall the use of such designated information by such producing Party or non-party during a deposition or trial constitute a waiver of the designated status of the information.

17.    Any information that has been designated as Confidential or Highly Confidential–Outside Counsel Only and that is included with, or the contents of which are in any way

8

disclosed in, any pleading, motion, deposition transcript, or other papers filed with the Clerk of the Court shall be filed in a sealed envelope marked with the notation:

CONFIDENTIAL INFORMATION
(or HIGHLY CONFIDENTIAL INFORMATION)
SUBJECT TO PROTECTIVE ORDER
Civil Action Nos. 02-556-JJF, 02-1286-JJF, and 02-1338-JJF

THIS ENVELOPE IS NOT TO BE OPENED NOR THE CONTENTS DISPLAYED. COPIED OR REVEALED EXCEPT BY COURT ORDER OR BY WRITTEN AGREEMENT OF THE PARTIES.

## NON-PARTY DESIGNATIONS

18.    Where a discovery request calls for the disclosure of discoverable information that is held by a Party under an obligation of confidentiality owed to another, and the Party objects to the disclosure of such information on that ground, the following procedure shall apply:

(a)    The objecting Party shall promptly identify to the requesting Party the name and address of each entity whose confidentiality interests are implicated by the disclosure request.

(b)    The objecting Party shall promptly provide to each entity whose confidentiality interests are implicated:

(i)    notice of its intention to disclose information held under an obligation of confidentiality; and

(ii)    a copy of this Protective Order.

(c)    Within ten (10) Court days of the objection, the objecting Party shall disclose the information in compliance with this Protective Order, unless the entity to whom it has provided notice moves for a protective order in this Court within that time.

(d)    In the case of a subpoena or deposition question directed to a non-party who refuses to disclose information on the grounds that it implicates a confidentiality obligation

9

owed to another, such discovery shall not be had unless and until the Party propounding such request shall obtain an order compelling disclosure of such information from a court of competent jurisdiction.

## STORING CONFIDENTIAL DOCUMENTS

19.    Confidential information and Highly Confidential–Outside Counsel Only information may be stored only at:  (a) offices of someone permitted to have access to such information; (b) a site where a deposition relating to the information is taken; (c) the Court; and (d) any intermediate location reasonably necessary for the transport of such information.

20.    Copies of Confidential information and Highly Confidential–Outside Counsel Only information may be made only to the extent reasonably necessary to prepare work product or conduct proceedings in this litigation.

21.    Any Party receiving discovery material produced in electronic format, shall Bates number all copies of documents printed, maintain a log of all such printed documents, and mark all such printed documents with the designation Highly Confidential–Outside Counsel Only.  No such printed document may be used in any deposition unless a copy of the printed document is provided to retained counsel of record for all Parties at or before the time of its use.

## DISCLOSURE OF INFORMATION TO MOCK JURORS

22.    Materials designated Confidential or Highly Confidential–Outside Counsel Only may be disclosed to mock jurors engaged by any consultant in preparation for trial, provided that:

      (a)    Such mock jurors are not officers, directors or employees of any Party;

      (b)    Such mock jurors first agree in writing to be bound by this Protective Order (by signing a Consent form, in the form attached as Exhibit A); and

      (c)    The signed Consent form is retained under the control of counsel of record

10

until conclusion of this litigation. including any appeals. Upon conclusion of this litigation and

upon the written request of any entity whose Confidential or Highly Confidential–Outside

Counsel Only information was disclosed to the mock-jurors. all such executed Consent forms by

mock jurors shall be provided to the requesting entity. If any person to whom Confidential or

Highly Confidential–Outside Counsel Only information is communicated under this provision

fails to comply with this Protective Order, the Party who communicated the Confidential or

Highly Confidential–Outside Counsel Only information shall indemnify the producing Party or

non-party for any losses, including reasonable attorneys' fees and costs, which the producing

Party or non-party may incur by reason of that failure.

### INADVERTENT FAILURE TO DESIGNATE AND/OR INADVERTENT DISCLOSURE

23.    A Party or non-party that inadvertently fails to designate information as

Confidential or Highly Confidential-Outside Counsel Only at the time of the production of such

information may thereafter make a designation by serving notice thereof in writing, accompanied

by substitute copies of appropriately marked information. Those individuals who had access to

the information prior to notice of the inadvertent failure to designate shall return or destroy all

copies of the misdesignated documents and shall honor, to the extent reasonably practicable. the

provisions of this Protective Order with respect to the use and disclosure of information

contained in the misdesignated documents.

24.    In the event that information designated as Confidential or Highly Confidential–

Outside Counsel Only is communicated to any person not authorized by this Protective Order to

receive such information, the Party responsible for this communication must immediately bring

all pertinent facts relating to such communication to the attention of all interested Parties and

non-parties, and without prejudice to other rights and remedies of the producing entity, shall

11

make every reasonable effort to prevent further communication by the person who was the recipient of such information.

25.    A Party that inadvertently fails at the time of production to assert a claim of attorney-client privilege or work product immunity, shall not be deemed to have waived a privilege or immunity claim, provided that the Party makes a good-faith representation that such production was inadvertent and takes remedial action to withdraw the disclosure. Assertion of the privilege or claim of immunity shall be made as soon as practicable after learning of the inadvertent disclosure. Request shall be made for the return of such information, and a Party receiving such request shall return all copies of such inadvertently produced material, forthwith, provided that the cost, if any, for excising such discovery material from microfilm or microfiche shall be borne by the producing Party. In addition, at the request of the producing Party, the receiving Party shall destroy all summaries of, or notes relating to, such inadvertently produced information and shall certify in writing that such destruction has occurred. A Party may, by motion, after conferring with opposing counsel in an effort in good faith to resolve by agreement any dispute regarding the producing Party's assertion of attorney-client privilege or work product immunity, contest the producing Party's claims of privilege or work product. The determination of those claims will be made by the Court without regard to the fact that such discovery material has been produced. Any Party receiving material that it reasonably believes contains material protected by the attorney-client privilege or work product immunity shall promptly notify the producing Party of the production of such material upon becoming aware that the material may be privileged or protected.

## RECLASSIFICATION OF CONFIDENTIALITY DESIGNATIONS

26.    The Parties acknowledge that it may be impractical to assess the confidentiality of all information in documents, testimony, transcripts, and other materials and things produced in

12

the course of this litigation. Therefore, if a Party wishes to challenge the Confidential or Highly Confidential–Outside Counsel Only designation of any such information, the Party shall in good faith narrowly limit such efforts solely to those items (or portions thereof) for which reclassification reasonably appears to be appropriate. A Party or non-party who designated the information at issue shall, within five (5) Court days after receiving a request for reclassification, make a good faith determination as to whether the information at issue should be reclassified and shall notify the requesting Party of its determination.

27.    If after utilizing the procedure set forth in Paragraph 26, *supra*, agreement cannot be reached on whether certain information should be reclassified, a Party may serve a notice of objection on all Parties and other affected entities, identifying with particularity the items as to which the designation is challenged, stating the basis for each challenge, and proposing a new designation for each item. If the designating Party or non-party does not redesignate the material within five (5) Court days after service of such objections, the objecting Party may file and serve a motion for an order that the material be redesignated.

28.    The Parties shall not be obligated to challenge the propriety of any designation of information as Confidential or Highly Confidential–Outside Counsel Only at the time such information is produced or so designated, or thereafter. Any failure to request reclassification of such information shall not operate as an acquiescence in such designation or a waiver of a Party's right to request later reclassification of such information.

## USE OF CONFIDENTIAL INFORMATION AT HEARING OR TRIAL

29.    Counsel of record shall refrain from referring in open court to any information designated Confidential or Highly Confidential–Outside Counsel Only, except under such conditions and safeguards that the Court employs to protect against disclosure of such confidential information. Such confidential information may be referred to or offered in

13

NYI-2040553v2

evidence at trial only after first providing notice reasonable under the circumstances to the Court and to the producing Party or non-party of the intended disclosure of such confidential information. Nothing herein shall operate as a waiver or relinquishment of a Confidential or Highly Confidential–Outside Counsel Only designation, should such materials be disclosed at a Court hearing or other proceeding where the general public is not excluded.

## MISCELLANEOUS

30.    Unless the Parties stipulate otherwise, evidence of the existence or nonexistence of a designation under this Protective Order shall not be admissible for any purpose, nor shall the designation or acceptance of any information designated pursuant to this Protective Order constitute an admission or acknowledgment that the material so designated is in fact proprietary, confidential or a trade secret.

31.    Within 30 days after the conclusion of this litigation, including any appeals, all persons, including experts, client representatives and outside counsel of record (except the Court and its personnel) shall destroy or return to the Party or non-party claiming confidentiality, the original and all copies of Confidential and Highly Confidential–Outside Counsel Only information, including notes, summaries, digests, and machine readable embodiments of such confidential information. However, each Party may retain one archival copy of each deposition or hearing transcript, and each Party's retained counsel of record may retain one complete set of pleadings; deposition transcripts and their exhibits; and trial transcripts and their exhibits.

32.    The terms of this Protective Order shall survive termination of this litigation and continue in full force and effect, and the Court shall retain jurisdiction to enforce this Protective Order.

33.    This Protective Order is being entered without prejudice to the right of any Party or other person to move the Court for modification of or relief from any of its terms.

14

34.    This Protective Order shall not be deemed: (a) a waiver of any Party's or non-party's right to object to any discovery request on any ground; (b) a waiver of any Party's right to seek an order compelling discovery with respect to any discovery request; (c) a waiver of any Party's right to object to the admission of evidence on any ground; (d) a waiver of any Party's or non-party's right to use its own documents, testimony, transcripts, or other materials or things within its own discretion; or (e) a waiver of the attorney-client privilege or protection of the work product doctrine.

35.    Nothing in this Protective Order precludes any Party or non-party from seeking a further Protective Order for any particularly sensitive information as to which such Party or non-party believes this Protective Order is insufficient.  Nothing in this Protective Order precludes any Party or producing entity from seeking relief as to this Protective Order or portions thereof for good cause shown.  All Parties are subject to the continuing jurisdiction of this Court to modify and interpret this Protective Order.

36.    Nothing in this Protective Order shall bar counsel from rendering advice to their client with respect to this litigation, and in the course thereof, relying upon any Confidential information or Highly Confidential–Outside Counsel Only information, provided counsel does not disclose such information in a manner not specifically authorized under this Protective Order.

37.    All materials produced pursuant to Delaware Local Rule 26.2 prior to entry of this Protective Order shall be governed by this Protective Order.

38.    If a non-party, another court or an administrative agency subpoenas or orders production of information designated for protection under this Protective Order, which a Party has obtained under the terms of this Protective Order, such Party shall promptly notify the Party or non-party who designated the information of the pendency of such subpoena or order and shall object to its production.  Nothing herein, however, shall be construed as requiring anyone

NYI-2040553v2

covered by this Protective Order to disobey any court order, subject itself to any penalties for noncompliance with any order, or seek any relief from this Court.

39.    This Protective Order applies only to this litigation, except as otherwise agreed in writing by the Parties.  In the event these actions are consolidated with any other action, this Protective Order will remain in effect as to Confidential and Highly Confidential–Outside Counsel Only information already disclosed in these actions, but will be of no effect with regard to information not yet disclosed as of the date of such consolidation.

IT IS SO ORDERED.

Dated: _Feb. 15, 2003_

_Edward N. Cahn_
_____
The Honorable Edward N. Cahn
Special Master

16

EXHIBIT K



April 16, 2007

<u>**VIA FACSIMILE AND ELECTRONIC MAIL**</u>

Michael D. Powell, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
Direct: (650) 801-5010
Main Phone: (650) 801-5000
Main Fax: (650) 801-5100
E-mail: mikepowell@quinnemanuel.com

RE:     *In re Intel Corp. Microprocessor Antitrust Litigation* (MDL No. 1717-JJF)
        *Phil Paul v. Intel Corp.* (C.A. No. 05-485-JJF)

Dear Mr. Powell:

I am writing to memorialize Class Plaintiffs' efforts last week to reach a compromise with Fry's Electronics, Inc. ("Fry's") regarding its production obligations under the June 23, 2006 subpoena. As you know, Class Plaintiffs filed a letter brief in support of their request to compel Fry's to produce transactional data in response to this subpoena and Class Plaintiffs agreed to Fry's request for an extension until April 13th to file its opposition to the letter brief. In exchange for the extension, Fry's agreed to submit to Class Plaintiffs by Wednesday, April 11th, a description of the responsive and available data in its possession as well as a proposal for the production of such data.

Class Counsel made themselves available to Fry's on Monday, April 9th to discuss Fry's preparation of its April 11th submission. Class Counsel explained what they expected in the submission and what would warrant further stipulated extension of the opposition deadline: a detailed description of the data that Fry's was willing to produce and a definite timeline for such production.

During the April 9th call, Fry's again raised the issue of confidentiality – an issue that has been thoroughly debated and discussed in the correspondence leading up to Class Plaintiffs' letter brief. Class Counsel reiterated that the Court had solicited comment and argument regarding the content of the Protective Order, that Fry's had participated in that process, and that the Court had considered such comment and argument in crafting a final Protective Order. Nevertheless, Fry's asked whether Class Plaintiffs would consider certain modifications of the protections afforded in the Protective Order. Consistent with prior exchanges and correspondence, Class Counsel indicated their skepticism that the significant

1050 30TH STREET, NW • WASHINGTON, DC 20007 • PHONE: 202.337.8000 • FAX: 202.337.8090 • TOLL-FREE: 877.337.1050

601 MONTGOMERY STREET • SUITE 665 • SAN FRANCISCO, CA 94111 • PHONE: 415.398.8700 • FAX: 415.398.8704
WWW.FINKELSTEINTHOMPSON.COM



modifications suggested by Fry's would be acceptable to Class Plaintiffs and the other parties, but that we would consider the specific language proposed by Fry's in its submission.

In its April 11th submission, Fry's conditions its data production upon the entry of major modifications to the Court's Protective Order. Specifically, Fry's demands that an additional tier of protection and protocol be added with regard to production of "extremely" confidential or sensitive material or trade secrets. In addition, Fry's further conditions its production on the untenable guarantee that its data are not disseminated to AMD or Intel, which of course are parties in this litigation.

Class Plaintiffs and Fry's held further discussions on April 12th regarding the actual language in Fry's submission. We discussed the possibility of Fry's producing transactional data using the fields attached to Class Plaintiffs' February 23, 2007 letter, either by individual transaction (especially if customer redaction issues could be navigated) or aggregated monthly. You indicated your intent to pursue with your client these and related issues (e.g., inclusion of rebate and discount information, the scope of included product SKUs, and details as to Fry's information management systems), along with the confidentiality issues.

Confidentiality issues were also discussed on the April 12th call. Class Counsel explained that they were not prepared under the circumstances to propose modifications of the Protective Order, but expressed their willingness to explore a confidentiality agreement between the parties and Fry's in effort to satisfy Fry's concerns. On the call, you indicated that you would check with your client as to whether a confidentiality agreement might be acceptable.

You called me that afternoon to indicate that Fry's would only produce its data if the Protective Order were amended in accordance with its request. We advised you later that afternoon that we were not prepared to seek modifications to the Protective Order. If your client has any change of heart on the confidentiality issue or wishes to discuss any of these matters further, please contact me at your earliest convenience.

Very truly yours,

Richard M. Volin
FINKELSTEIN THOMPSON LLP
Counsel for the Class Plaintiffs

CC:    Daniel Small, Esq.
       Brent Landau, Esq.

EXHIBIT L

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, Suite 560, Redwood Shores, California  94065 | TEL: (650) 801-5000  FAX: (650) 801-5100

WRITER'S DIRECT DIAL NO.
**(650) 801-5010**

WRITER'S INTERNET ADDRESS
**mikepowell@quinnemanuel.com**

April 11, 2007

<u>VIA E-MAIL</u>

Richard M. Volin
FINKELSTEIN THOMPSON LLP
1050 30th Street, NW
Washington, DC 20007

Re:    *In re Intel Corp. Microprocessor Antitrust Litigation*, MDL No. 05-1717-JF;
       *Advanced Micro Devices, Inc., et al. v. Intel Corp., et al.*, C.A. No. 05-441-JJF;
       *Phil Paul v. Intel Corp.*, Consolidated C.A. No. 05-485-JJF

Dear Mr. Volin:

I write to clarify a couple of points regarding our discussions last week and your letter to me today.

Your letter fails to mention that we discussed whether Class Plaintiffs would agree to the production of a sampling of data as opposed to six-plus years of transactional data as is currently being requested.  Fry's requested that Class Plaintiffs determine (with the assistance of their consultants) a minimum number of transactions and model numbers needed for class certification issues.  You refused to do so but failed to articulate any legal or other basis as to why six-plus years of data on all computer models sold by Fry's were necessary for class certification purposes.  Fry's explained that a statistically relevant sampling should be sufficient for class certification purposes and would greatly reduce the potential prejudice to Fry's in the event that the data produced were ever inadvertently provided to AMD or Intel or to any one of Fry's competitors.  You indicated that none of the other non-parties had argued for production of a sampling as opposed to full transactional data, although we now have reason to believe that other

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California  90017  | TEL (213) 443-3000  FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010  | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111  | TEL (415) 875-6600  FAX (415) 875-6700

non-parties are currently negotiating for production of sample data sets in lieu of complete transactional records for every computer system sold since January, 2000.[1]

In addition, Fry's was told that the primary reason Class Plaintiffs were not interested in petitioning the Court to modify the existing Confidentiality Agreement and Protective Order was because such a process would undoubtedly interfere with efforts to collect transactional data from other non-parties. You therefore suggested that the parties might execute an agreement (without Court approval) that Fry's data would not be provided to AMD's or Intel's in-house lawyers and that counsel for Class Plaintiffs would represent in writing that their consultants did not do work for any of Fry's competitors. You made it clear that Class Plaintiffs would not agree -- under any circumstances -- to petition the Court to modify the existing protective order. Given the sensitivity and importance of the requested information and its eventual use in expert reports, law and motion practice, and perhaps even at trial, Fry's simply cannot agree to anything less than a modified protective order signed by the Court. As a non-party, Fry's will simply not have sufficient opportunity to monitor the use and treatment of its information and therefore needs the direct supervision and enforcement power of the Court.

Finally, Class Plaintiffs made it clear that there was no need to discuss the scope of any potential production if the parties could not agree on the protective order issue. While Fry's remains willing to discuss the appropriate scope of production of transactional data in view of Fry's legitimate trade secret concerns and the limitations inherent in its information management system, your letter today confirms what you said to me previously -- that Class Plaintiffs would rather proceed with their motion to compel and are only willing to continue meet-and-confer discussions if Fry's has had a "change of hear on the confidentiality issue."

In view of the foregoing, Class Plaintiffs should withdraw their motion to compel until such time as they can make an evidentiary showing that other non-parties have agreed to produce, and have produced, all six-plus years of transactional data in its entirety for all computer models. The current record shows that Class Plaintiffs have conducted the meet-and-confer process in bad faith. Not only have they continued to press for the transactional data in its entirety without being able to make a particularized showing of need for all the data, they have misrepresented the nature and status of other non-party document productions in attempt to pressure Fry's into producing more of its trade secret information than is even necessary to suit Class Plaintiffs' purposes.

Very truly yours,

Michael D. Powell

---

[1]    We also have reason to believe that no non-party has completed their production of transactional data which is contrary to what you said during our telephone conferences last week.

2

cc:    Brian Henri (Via E-Mail)
       Daniel Small (Via E-Mail)
       Brent Landau (Via E-Mail)

51216/2102396.1