**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE:<br>INTEL CORP. MICROPROCESSOR<br>ANTITRUST LITIGATION )<br>)<br>)<br>) | MDL Docket No. 05-1717-JJF |
| PHIL PAUL, on behalf of himself<br>and all others similarly situated, )<br>)<br>) | |
| Plaintiffs, )<br>v. )<br>) | Civil Action No. 05-485-JJF |
| INTEL CORPORATION, )<br>)<br>Defendant. )<br>) | CONSOLIDATED ACTION |

**DECLARATION OF RICHARD M. VOLIN**

Dated:  April 23, 2007

## DECLARATION OF RICHARD M. VOLIN

I, Richard M. Volin, declare that I am an attorney admitted to practice in the District of Columbia and the State of Maryland. I am a partner at the law firm of Finkelstein Thompson LLP, which represents Class Plaintiffs in this action. The following statements describe the negotiations with Fry's Electronics, Inc. ("Fry's") that occurred after March 29, 2007, when Class Plaintiffs filed a letter brief with this Court seeking to compel production of Fry's transactional data responsive to Class Plaintiffs' subpoena served on June 23, 2006. This declaration also responds to certain post-motion representations made by Fry's in correspondence, declarations and its opposing letter brief ("Opp. Brief"). The statements contained herein are based upon my personal knowledge, and if called as a witness I could testify competently thereto. For convenience, the declaration is organized by topic.

<u>The Motion to Compel Is Ripe</u>

1.    Fry's states that, in the course of negotiations, "Class Plaintiffs refused to explain the relevance of the requested transactional data despite Fry's repeated requests ..." Opp. Brief at 2. This statement is incorrect. The parties explained the relevance of Fry's data on more than one occasion, most notably in the February 23, 2007 letter that I sent to Brian Henri, Fry's in-house counsel who handled the pre-motion negotiations. The letter is attached to the Certification of Richard M. Volin in Support of Class Plaintiffs' Request to Compel Fry's Electronics, Inc. ("Volin Cert.") as Exhibit H.   The letter explains that the requested data are relevant to "damages theories and calculations, pass-on analysis and any effect that rebates or marketing may have upon pricing." *Id.* at 3. The letter also states that "Fry's profit margins, market development funds and vendor rebate information are relevant, or likely to lead to information relevant, to these and other aspects of the litigation." *Id.* Explanation as to the

relevance of the requested data was also provided in the March 12, 2007 letter to Fry's, attached to the Volin Certification as Exhibit K, at page 5, which describes the data as relevant to "typicality and predominance inquiries under Federal Rule 23, exclusion of AMD from the microprocessor market, and expert analysis of damages."

2.    Class Plaintiffs' Request to Compel Fry's Electronics, Inc. ("Motion") also articulates the relevance of Fry's data. However, in post-motion negotiations, Fry's has neither disputed the data's relevance nor been willing to make a reasonable offer to produce data, challenging only the timing of Class Plaintiffs' explanations. Opp. Brief at 2.

3.    Fry's asserts in its opposition that Class Plaintiffs have refused to identify any class representative that purchased products at Fry's. Opp. Brief at 2. This statement is misleading and incomplete. The parties have repeatedly told Fry's that the issue of whether a named class representative made such purchases has no relevance to Fry's obligation to produce data. *See, e.g.,* Jan. 25, 2007 Letter from R. Volin to B. Henri, attached to Volin Cert. as Exhibit E. Nonetheless, Class Counsel investigated this issue and determined that at least one of the 95 class representatives had purchased a relevant product from Fry's, and so advised Mr. Henri in an email on March 14, 2007, over a month before Fry's filed its letter brief. *See* March 14, 2007 Email from R. Volin to B. Henri, a true and correct copy of which is attached hereto as Exhibit A.

4.    Fry's accuses Class Plaintiffs of refusing to state "if and how they would pay for the production." Opp. Brief at 2. But the parties on multiple occasions offered to share costs with Fry's. *See, e.g.,* March 12, 2007 Letter from R. Volin to B. Henri at 2 ("We have offered to discuss costs with an eye toward a reasonable cost-sharing of reasonable out-of-pocket expenses incurred by Fry's"). The parties made clear, however, that they would not sign a blank check,

2

and therefore asked Fry's to first provide an estimate of production costs. *Id.* Fry's has never done so. In addition, the parties suggested to Fry's that it could produce a small data sample for nominal cost, which would permit the parties to refine their data request, *id.*, but Fry's has not produced such a sample.

5.    Fry's cites Class Plaintiffs' November 2006 letter for the proposition that Class Plaintiffs had decided not to seek production of *documents* from Fry's and would not share in the costs of production of such documents. Opp. Brief at 2. Fry's ignores the rest of the letter, however, which states that, "[o]ur position as to transactional data is different from our position, stated above, regarding documents. We still seek production of the transactional data requested in our subpoena and will continue to negotiate with you concerning production of that data." *See* November 16, 2006 Letter from S. Fimmel to B. Henri, attached to the Declaration of Michael D. Powell ("Powell Decl.") as Exhibit B. The letter did not withdraw any portion of the subpoena, but merely stated that Class Plaintiffs had decided not to seek to enforce the subpoena as to documents "at this time" and would not participate in document negotiations "until further notice." *Id.*

6.    Fry's claims that it has spent "considerable time trying to narrow the focus and scope of the requested transactional information" and that it offered to produce "a sample set of the requested information in spreadsheet form provided that the Court enter[s] a modified protective order ...." Opp. Brief at 2. However, Fry's made no such efforts or offers, regardless of scope, prior to the filing of the instant motion. Moreover, even to date, Fry's has not produced what the parties have long requested and what would most meaningfully permit the parties to

narrow their data request: a tiny sample of its transactional data.[1]  In addition, as described in

Class Plaintiffs' reply, the production Fry's did offer is meaningless.

       7.      Fry's wrongly asserts that "Class Plaintiffs had incorrectly told Fry's that no non-

parties had even requested to produce a sampling of the data."  Opp. Br. at 5 n.5.  Fry's makes

the same incorrect assertion in an April 16, 2007 letter, which claims: "You indicated that none

of the other non-parties had argued for production of a sampling as opposed to full transactional

data . . . ." *See* April 16, 2007 Letter from M. Powell to R. Volin, attached to Powell Decl. as

Exhibit L.[2]  Class Plaintiffs made no such statement.

       8.      Fry's made a further misrepresentation in its April 16, 2007 letter by stating that

"[w]e also have reason to believe that no non-party has completed their production of

transactional data which is contrary to what you said during our telephone conferences last

week."  Powell Decl., Ex. L at 2 n.1.  Class Counsel represented that we have received requested

transactional data productions from other third parties, and that representation is accurate.  In

fact, ten third parties have produced full data sets that, subject to our follow-up questions and any

necessary corrections or modifications, are essentially complete.  Many other third parties have

been negotiating with the parties in good faith about their transactional data, including through

production of sample datasets, discussion of the available fields, and conference calls with

personnel at the companies responsible for maintaining the data – none of which Fry's has done

---

[1] The small transactional data sample requested by Class Plaintiffs is different in nature and purpose from the sample that Fry's has offered to produce.  The sample requested by Class Plaintiffs would consist of purchases and sales of a few SKUs for a few days, but would contain transaction level data.  The purpose of such a production is to allow the parties to see and understand the fields (*i.e.*, columns) of data that Fry's maintains, and to then be able to select a limited number of fields for which a full production would be made.  In contrast, the sample Fry's offers would contain no transactional data, but only highly aggregated data, and would be Fry's final production, not a means to determine the scope of final production.  Moreover, such a production would consist of aggregated data for only a subset of its SKUs.

[2] The April 16, 2007 letter attached as Exhibit L to the Powell Declaration is incorrectly dated April 11, 2007, and incorrectly cited in Fry's letter brief as Exhibit M to the Powell Declaration.

or expressed any willingness to do. Indeed, what makes Fry's nearly unique among the third parties is that, at least prior to Class Plaintiffs filing this motion to compel, it has refused to engage in any meaningful dialogue about production of the requested data.

Relief Requested

9.     Before the motion to compel was filed, Fry's had shown no willingness to produce data and thwarted efforts to make progress on negotiating the scope of production. After seven months of negotiations, the parties had gotten nowhere with Fry's: no production had been made; no production had been offered; and no data sample had been provided or offered. The only thing Fry's had provided were arguments as to why production was inappropriate. Moreover, Fry's stated in early March that, "I cannot see how there is anything left to discuss." Volin Cert., Ex. J.

10.     Class Plaintiffs thought that Fry's intransigence was due to its belief that it could avoid producing its data entirely. Giving Fry's the benefit of the doubt, Class Plaintiffs assumed that if Fry's were compelled to produce its data by a date certain, it would negotiate the scope and terms of production promptly and in good faith. However, the positions Fry's has taken since the filing of the motion suggest otherwise.

11.     After the motion to compel was filed, outside counsel retained by Fry's to handle the discovery dispute contacted me to ask Class Plaintiffs to extend the time to respond to the motion from April 5, 2007 to April 13, 2007. Class Plaintiffs agreed to the extension provided that Fry's agreed to furnish, by April 11, 2007, "a description of the responsive and available data in its possession as well as a proposal for the production of such data." *See* April 4, 2007 letter from J.C. Athey to Hon. Vincent J. Poppiti, a true and correct copy of which is attached hereto as Exhibit B.

12.     On April 11, 2007, Fry's offered to produce only "summary reports showing aggregate information for a sample of computer models provided that the Confidentiality Agreement and Protective Order entered by the Court is amended in accordance with our suggestions ...."  Letter from M. Powell to R. Volin, a true and correct copy of which is attached hereto as Exhibit C.  Fry's supplied a blank chart with column headings to identify the type of information it was prepared to produce.  *Id.*  It also attached its proposed modification of the protective order.  *Id.*

13.     After seven months of negotiation and the filing of a motion to compel, Class Plaintiffs expected a serious offer.  For the reasons discussed in Class Plaintiffs' reply brief and the Declaration of Jonathan Orszag, Fry's offer was not meaningful.  Accordingly, Class Plaintiffs have modified their request for relief to address Fry's ongoing intransigence.

14.     Fry's states that Class Plaintiffs refused Fry's request to determine the minimum number of transactions and model numbers needed for class certification purposes.  Powell Decl., Ex. L, at 1.  However, Class Plaintiffs did not rule out the possibility of a limited production for class certification purposes; rather, they asked whether – consistent with Fry's own logic for limiting such a production and despite the fact that discovery in this case had not been bifurcated – Fry's would agree to make two productions: a sample for class certification and a full production for merits if and when a class is certified.  Fry's counsel said that he would get back to Class Plaintiffs on that issue, but has yet to do so.

The Data Class Plaintiffs Seek from Fry's

15.     Document requests 7(c), 7(d), 8(a), 9 and 10 contained in Class Plaintiffs' subpoena served on Fry's specify the purchase and sales data at issue.  Document requests 7 and 8 seek only documents "sufficient to show" the matters specified in their subparts.  For example,

6

document request 7(c) asks for documents sufficient to show Fry's purchases of computer

systems for resale on a monthly basis since January 1, 2000, broken down in specified ways.

Thus, this request *permits* Fry's to produce data regarding its computer purchases by month if

they are kept that way or if it prefers to aggregate its transactional data by month. But the

request does not *require* monthly aggregation. Because it asks for documents "sufficient to

show" the described purchases, production of individual purchase transactions certainly would

be responsive because Class Plaintiffs themselves can aggregate the transactional data by month.

The subpoena, therefore, permits Fry's to produce transactional data as it exists in the ordinary

course of its business. In fact, Class Plaintiffs prefer production of transactional data, and

offered monthly averages only as an accommodation to those that might prefer to produce their

data in that form.[3]

      16.     In their negotiations and correspondence with Fry's, Class Plaintiffs repeatedly

described the data to be produced. The first correspondence to do so was an August 28, 2006

email from Steve Fimmel, counsel for Class Plaintiffs, to Brian Henri. The email stated:

> Under the subpoena, we are seeking the transactional, customer
> and product datasets related to each computer containing x86
> compatible chips that was purchased or sold by your company
> from January 2000 through the present, including information
> regarding rebates and discounts related to each purchase or sale.
> Such information is responsive to Requests 7C, 7D, 8A, 9 and 10.

Volin Cert., Ex. A. Subsequently, in a letter to Fry's dated January 25, 2007, the parties

provided a list of database fields for Fry's convenience and use in running an initial sample

report. Volin Cert., Ex. E.[4] Class Plaintiffs would have used this sample report, had Fry's

provided it, to further narrow the fields for full production. On February 23, 2007, the parties

---

[3] I also note that Fry's transaction level data are specifically sought by Requests 18-20 in Intel's subpoena to Fry's dated June 21, 2006, a true and correct copy of which is attached hereto as Exhibit D.

[4] The date on the letter is mistakenly listed as January 25, 2006, rather than 2007.

further narrowed the fields for Fry's to use in preparing the initial sample dataset and divided

them into three categories: Sales Transactions Data, Cost/Purchase Related Transaction Data

and Marketing Fund Data. Volin Cert, Ex. H. In addition, for Fry's convenience, the parties

requested certain lookup tables in order to greatly reduce the volume of data to be produced by

allowing certain fields to be produced once rather than for each transaction. *Id.*

17.    Class Plaintiffs' initial letter brief also describes the data they seek. The brief

states that "Class Plaintiffs, AMD and Intel have each subpoenaed Fry's for electronic records of

its transactions in buying and selling computers containing x86 microprocessors and re-selling

those same computers . . . . Prompt production of the data is important . . ." Motion at 1.

Protective Order

18.    As the Court knows, the parties prepared a proposed form of Protective Order

that, pursuant to direction of the Special Master, was served on all then-subpoenaed third parties

for their comments and objections. Several third parties submitted responses in May 2006,

including Fry's. *See* Volin Cert., Ex. 3. Fry's argued in its submission, just as it does now, for a

second tier to be added to the Protective Order for highly confidential information. *Id.* at 2. On

September 26, 2006, the Court accepted in full the Special Master's recommendations and

proposed form of order, which did not accept Fry's two-tier approach. *See* September 26, 2006

Memorandum Order, a true and correct copy of which is attached hereto as Exhibit E. Nothing

has changed since May 2006 (when Fry's filed its objections to the proposed form of protective

order). The data that the parties seek from Fry's now are similar to the data requested by the

subpoena AMD served on Fry's in October 2005. *See* AMD Subpoena dated October 4, 2005, a

true and correct copy of which is attached hereto as Exhibit F. Thus, Fry's was just as aware in

May 2006 when it filed its protective order objections as it is today that the parties seek
production of its transactional data.

19.     Before the motion to compel was filed, Fry's never asked that the protective order
entered by the Court be modified.  Rather, it took the position that the protective order did not
apply to it, a position it now has abandoned.  In its March 8, 2007 letter, Fry's asserted that the
protective order "would not apply to Fry's," Volin Cert., Ex. J – a position inconsistent with its
prior correspondence, which Fry's transmitted under protection of that order.  *Id.*, Ex. G.  Before
the motion to compel was filed, Fry's never stated what confidentiality terms it would require for
production of its data or that certain terms of the existing protective order were unsatisfactory in
its view.

20.     Fry's proposed modification to the Protective Order would permit Fry's and other
third-parties (but not parties) to designate Confidential Discovery Material that they believed to
be "extremely confidential and/or sensitive in nature or a 'trade secret'" ("highly confidential
material") for a higher level of protection.  *See* Attachment to April 11, 2007 Letter from R.
Stone to R. Volin, attached to Powell Decl. as Exhibit C.  Highly confidential documents would
be subject to substantial additional restrictions on their dissemination.  Two such restrictions
would significantly limit the parties' ability to work and communicate with testifying experts and
non-testifying consultants (collectively, "experts").  Under one restriction, highly confidential
documents could be shown to only one expert per party.  *Id.*  Under the other, the parties would
be required to disclose to the third party all of that expert's "past and present employment and/or
consulting relationships."  *Id.*

21.     Class Plaintiffs have retained multiple experts who are or will be (directly and/or
through their staff) working with transactional data produced by parties and non-parties.  Some

of these experts may be designated to testify in this case and some are retained solely as consultants. Class Plaintiffs expect at least two testifying experts to rely on transactional data for their opinions in the case. Moreover, it would be highly inefficient for a potential testifying expert to do all the work regarding possibly several databases given his or her billing rate, assuming he or she even had the time to do so.

22.    I have been advised that multiple experts retained by Class Plaintiffs have current and/or former consulting relationships that are confidential and could not be disclosed without breaching a confidentiality agreement.

23.    Fry's proposed modifications to the Protective Order also would effectively prohibit use of highly confidential discovery material at depositions, because the modifications prohibit court reporters and employees of the producing party from having access to such material. For example, under Fry's proposal, Fry's IT personnel could not be deposed on Fry's own data.

24.    To date, seventeen third parties (ten making full productions and seven producing samples) have produced transactional data under the existing protective order.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. This declaration was executed on April 23, 2007, in the District of Columbia.

Richard M. Volin

Filed on this 23rd day of April, 2007 by:

PRICKETT, JONES & ELLIOTT, P.A.

By: _____
James L. Holzman (#663)
J. Clayton Athey (#4378)
Laina M. Herbert (#4717)
1310 King Street
P.O. Box 1328
Wilmington, DE 19899
(302) 888-6500
jlholzman@prickett.com
jcathey@prickett.com
lmherbert@prickett.com

*Interim Liaison Counsel for Plaintiffs*

**11**

Exhibit A

| | |
|---|---|
| **From:** | Richard M. Volin [RVolin@finkelsteinthompson.com] |
| **Sent:** | Wednesday, March 14, 2007 3:01 PM |
| **To:** | bdh@i.frys.com |
| **Cc:** | BLandau@CMHT.com |
| **Subject:** | INTEL: Fry's Subpoena |

Brian,

As a follow-up to my letter, I have now been informed that at least one class representative has purchased a relevant product from Fry's during the Class Period.

Rich Volin

Richard M. Volin, Esq.
FINKELSTEIN THOMPSON LLP
1050 30th Street, NW
Washington, DC 20007
(202) 337-8000
(202) 337-8090 (fax)
www.finkelsteinthompson.com

CONFIDENTIALITY NOTE: This e-mail message contains information belonging to the law firm of Finkelstein Thompson LLP, which may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the individual or entity named above. If you think that you have received this message in error, please e-mail the sender. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited.



Exhibit B

PRICKETT, JONES & ELLIOTT
A PROFESSIONAL ASSOCIATION
**1310 KING STREET, BOX 1328**
**WILMINGTON, DELAWARE 19899**
TEL: (302) 888-6500
FAX: (302) 658-8111
http://www.prickett.com

Writer's Direct Dial:
(302)888-6507
Writer's Telecopy Number::
(302)658-8111
Writer's E-Mail Address:
JCATHEY@prickett.com

Dover Office:
11 NORTH STATE STREET
DOVER, DELAWARE 19901
TEL: (302) 674-3841
FAX: (302) 674-5864

April 4, 2007

**VIA eFILING AND HAND DELIVERY**

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 N. Market Street
Wilmington, DE 19801-4226

Re:    DM No. 5
*In re Intel Corp. Microprocessor Antitrust Litigation*, MDL No. 05-1717-JJF;
*Advanced Micro Devices, Inc., et al. v. Intel Corp., et al.*, C.A. No. 05-441-JJF;
*Phil Paul v. Intel Corp.*, Consolidated C.A. No. 05-485-JJF

Dear Judge Poppiti:

Class Plaintiffs have been contacted by recently-retained outside counsel for Fry's Electronics, Inc. ("Fry's"), which has requested relief from this Thursday's deadline for submitting its opposition to the pending motion to compel. In exchange for Class Counsel's agreement to request that Your Honor extend Fry's opposition deadline to next Friday, April 13, Fry's counsel has agreed to submit - by next Wednesday, April 11 - a description of the responsive and available data in its possession as well as a proposal for the production of such data. Depending on the scope and responsiveness of Fry's submission next Wednesday, Class Plaintiffs may be willing to discuss an additional extension with Fry's.

Counsel therefore requests that Your Honor approve the above-described extension and defer setting a hearing date for the motion to compel until at least next Friday, April 13 to provide Class Plaintiffs with an opportunity to review Fry's submission.

Respectfully submitted,

J. Clayton Athey
(DE Bar # 4378)

JCA/sam

cc:    Clerk of Court (By electronic filing)
        Frederick L. Cottrell, III, Esquire (By electronic filing)
        Richard L. Horwitz, Esquire (By electronic filing)
        Michael D. Powell, Esquire (By email and facsimile)

19684.1\330977v1

Exhibit C

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL: (650) 801-5000 FAX: (650) 801-5100

WRITER'S DIRECT DIAL NO.
**(650) 801-5001**

WRITER'S INTERNET ADDRESS
**robertstone@quinnemanuel.com**

April 11, 2007

<u>VIA E-MAIL</u>

Richard M. Volin, Esq.
FINKELSTEIN THOMPSON LLP
1050 30th Street, NW
Washington, DC 20007

Re:    *In re Intel Corp. Microprocessor Antitrust Litigation*, MDL No. 05-1717-JF;
       *Advanced Micro Devices, Inc., et al. v. Intel Corp., et al.*, C.A. No. 05-441-JJF;
       *Phil Paul v. Intel Corp.*, Consolidated C.A. No. 05-485-JJF

Dear Mr. Volin:

As you know, Class Plaintiffs served a documents-only subpoena on Fry's Electronics, Inc. ("Fry's") on or about June 23, 2006, that contained nineteen enumerated document requests seeking documents regarding nearly every facet of Fry's computer sales business for a period of more than six years. Given the extreme breadth of the document requests and the sensitive nature of the information being sought, Fry's served written objections to the document requests on July 7, 2006.

Beginning in August, 2006, the parties have engaged in discussions and exchanged correspondence regarding the proper scope of the subpoena and the need for the requested documents in view of Fry's acknowledged trade secret rights in its private financial and business information. From Fry's perspective, Class Plaintiffs have been unable to make a particularized showing of need for the broad range of documents and information sought in the subpoena, particularly in light of the fact that no class has yet been certified and that Class Plaintiffs have been unwilling or unable to identify whether any purported class representative purchased products at Fry's. Moreover, Class Plaintiffs have refused to expressly state if and how they would pay for the production. Indeed, in a letter dated November 16, 2006, Class Plaintiffs stated that they would not pay for the production of any documents. Nevertheless, Fry's has in

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL (213) 443-3000 FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL (415) 875-6600 FAX (415) 875-6700

good faith sought to reach a compromise with Class Plaintiffs in order to avoid law and motion practice on these issues. Despite these efforts, Class Plaintiffs filed a motion to compel on March 29, 2007, wrongfully asserting that Fry's has refused to produce any data "at all." In truth, Fry's has been and remains willing to produce responsive documents provided that (i) Class Plaintiffs make the required showing of need balanced against Fry's important trade secret interests, (ii) adequate protections are in place to ensure that the information is not disseminated to any competitor of Fry's or to AMD or Intel, and (iii) the requests are narrowly tailored and not unduly burdensome or duplicative of information sought from other parties and nonparties.

In order to respond to Class Plaintiffs' motion, Fry's has been compelled to retain Quinn Emanuel as outside counsel, and since that time we have diligently endeavored to determine exactly what documents responsive to the June 23, 2006, subpoena are being sought in Class Plaintiffs' motion to compel in hopes of being able to reach a compromise and forego the need for law and motion practice. Based on our teleconference on April 9, 2007, and the specific documents requested in the subpoena, Fry's has prepared a template report that provides the information available from its internal and proprietary information management system that is called for in Document Request Nos. 7(c) and 8(a) in the subpoena -- which requests (in combination) seek a summary of Fry's purchases and sales of computer systems that include a x86 microprocessor, including a description of each x86-based product purchased or sold, the identification number for each product, the number of units of each product that were purchased or sold and the revenue received by Fry's from the sales of the products. Fry's information management system does not maintain historical data on a monthly basis as is requested in the subpoena. A copy of Fry's proposed template is enclosed for your review.

Fry's is willing to provide summary reports showing aggregate information for a sample of computer models provided that the Confidentiality Agreement and Protective Order entered by the Court is amended in accordance with our suggestions as discussed during our teleconference on April 9th. I enclose a sample "insert" that we believe addresses Fry's legitimate concerns regarding the protection of its highly sensitive business information that is contained in the summary reports being requested by Class Plaintiffs.

If these conditions are acceptable to Class Plaintiffs, Fry's requests that Class Plaintiffs prepare a form of stipulation and proposed order to amend the Confidentiality Agreement and Protective Order in accordance with the enclosed insert. Fry's is prepared to negotiate the sample size and to produce the summary reports within seven days of entry of an Amended Confidentiality Agreement and Protective Order incorporating these suggestions.

Very truly yours,

for Robert W. Stone

Enclosures

cc:     Brian Henri (Via E-Mail)
        Brent Landau (Via E-Mail)
        J. Clayton Athey (Via E-Mail)

51216/2099719.1

| SAMPLE | | | | | |
|---|---|---|---|---|---|
| Item # | Description | Number of Units Purchased | Cost | Number of Units Sold | Gross Revenue |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Special Designation for Use by Third Parties

31.    Any Confidential Discovery Material which a Third Party believes to be extremely confidential and/or sensitive in nature or a "trade secret" (as that term is used in Federal Rule of Civil Procedure 26(c)(7) and 45(c)(3)(B)(i)), may be designated by the Third Party at the time of disclosure as "CONFIDENTIAL -- OUTSIDE COUNSEL ONLY." Confidential Discovery Material designated as CONFIDENTIAL -- OUTSIDE COUNSEL ONLY may, without further leave of court, be disclosed only to those persons identified in Paragraphs 6(a), 6(b), and 6(d); provided however, that at least ten days before disclosure of any Confidential Discovery Material designated as CONFIDENTIAL -- OUTSIDE COUNSEL ONLY to a person described in Paragraph 6(b), the Party seeking such disclosure shall notify the Third Party who made the designation of the Party's intent to disclose materials designated CONFIDENTIAL -- OUTSIDE COUNSEL ONLY to such person. The notice shall include a signed Acknowledgement of Protective Order form and shall identify the person's title, job responsibilities and affiliation(s) with any Party. In addition, a copy of the person's most recent curriculum vitae, which shall include an identification of all such person's past and present employment and/or consulting relationships, shall accompany the notice. Each Party may designate only one person or the type described in Paragraph 6(b) who is authorized to received materials designated CONFIDENTIAL -- OUTSIDE COUNSEL ONLY.

32.    If the Third Party objects to the disclosure of materials designated CONFIDENTIAL -- OUTSIDE COUNSEL ONLY to such person, the Third Party shall notify the counsel of record for the Party seeking disclosure in writing of the Third Party's objection(s) to such disclosure prior to the date on which the disclosure is intended to be made. Should the Party seeking disclosure disagree with the basis for the objection(s), the Party seeking disclosure and the objecting Third Party must first attempt to resolve the objection(s) informally. If the informal efforts do not resolve the dispute within ten business days, the Party seeking disclosure may file a motion requesting that the objection(s) be quashed after that ten-day period has passed. The Party seeking disclosure shall have the burden of proof by a preponderance of the evidence on the issue of the sufficiency of the objection. Pending a ruling by the Court upon any such objection(s), the materials designated CONFIDENTIAL -- OUTSIDE COUNSEL ONLY shall not be disclosed to the person objected to by the Third Party.



OAO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

Advanced Micro Devices, Inc. and AMD
International Sales & Services, Ltd.

v.

Intel Corporation and Intel Kabushiki Kaisha

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    05-441-JJF
United States District Court,
District of Delaware

TO:    Fry's Electronics, Inc.
600 East Brokaw Road
San Jose, California 95112

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

### See Schedule A attached hereto

| PLACE | DATE AND TIME |
|---|---|
| Gibson, Dunn & Crutcher LLP 1881 Page Mill Road, Palo Alto, California 94304 | August 7, 2006 |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6)

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Robert E. Cooper    Attorney for Defendants | June 21, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Robert E. Cooper
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071
(213) 229-7000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number

AO88  (Rev  1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)  (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)  (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,
(ii)   requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)   subjects a person to undue burden.

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)   requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any discovery request.

1.   The term "AMD" means Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd., and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd.

2.   The term "Intel" means Intel Corporation and Intel Kabushiki Kaisha and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Intel Corporation and Intel Kabushiki Kaisha.

3.   The term "COMMUNICATION" means the transmittal of information and encompasses every medium of information transmittal, including, but not limited to, oral, written, graphic and electronic communication.

4.   The term "CONSIDERATION" means discount, rebate, lump sum payment, market development funds, cooperative advertising payment, advertising allowances, promotional payment, seed money, free microprocessors, securities (whether voting or non-voting), options, warrants, or other payment or other compensation or payment.

5.   The term "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy constitutes a separate document within the meaning of the term.

6.  "YOU" or "YOUR" means Fry's Electronics, Inc. and its predecessors, present and former divisions, subsidiaries, parents, branches and affiliates, authorized agents, employees, officers, directors, and representatives.

7.  "PRODUCT TYPE" means the following platforms: (1) desktop ; (2) laptop; (3) workstation; and/or (4) server.

8.  "X86 COMPUTER PRODUCT" means a computer system that contains one or more x86 microprocessors.

9.  "SKU" means Stock Keeping Unit.

## INSTRUCTIONS

1.  Documents to be produced include documents in your possession, custody, or control wherever located.

2.  Unless otherwise specifically stated herein, the time period covered by each of these requests is from January 1, 2000 to the date this subpoena was issued.

3.  Documents must be produced as they are kept in the usual course of business, or must be organized and labeled to correspond to the document requests by number.

4.  To the extent that you withhold from production any responsive document on the grounds of a claim of privilege or attorney work product, please provide the total number of responsive documents withheld from production. You are not required to provide at the time of production a privilege log or other description of the nature of any such documents. Intel expressly reserves its right to seek a privilege log at a later date.

## DOCUMENT REQUESTS

1.  All DOCUMENTS constituting, reflecting or discussing advertising, marketing or promotional support or payments provided or offered to be provided by AMD to YOU, including,

but not limited to, all offers or proposals made by AMD, all COMMUNICATIONS with AMD concerning such support or funds, and any actual or proposed conditions or limitations on the receipt or use of such support or funds.

2.  All DOCUMENTS constituting, reflecting or discussing actual or proposed sales incentives, bonuses or rebates from AMD to YOU, including, but not limited to, the criteria or requirements to qualify for any such incentives, bonuses or rebates and all COMMUNICATIONS with AMD concerning any such sales incentives, bonuses or rebates.

3.  All DOCUMENTS constituting or discussing any past or present contractual relationship between YOU and AMD, including, but not limited to, all advertising, marketing or promotional agreements and all COMMUNICATIONS with AMD regarding the terms of any such contractual relationship.

4.  All DOCUMENTS discussing or concerning the training of YOUR sales personnel by AMD or Intel, including, but not limited to, all written training materials.

5.  All DOCUMENTS constituting, reflecting or discussing COMMUNICATIONS with AMD concerning product placement or the amount of YOUR shelf space allocated or to be allocated to computer systems containing Intel or AMD microprocessors.

6.  All DOCUMENTS constituting, reflecting or discussing COMMUNICATIONS with OEMs concerning the promotion or marketing by YOU of computer systems containing Intel or AMD microprocessors.

7.  All DOCUMENTS constituting, reflecting or discussing COMMUNICATIONS or negotiations with OEMs or other suppliers or distributors of computers concerning any financial, advertising, marketing, promotional, training or technical support or payments by AMD to YOU

in connection with the purchase and/or resale of computer systems containing AMD microprocessors.

8. All DOCUMENTS reflecting or discussing actual or proposed credit terms from AMD to YOU, including, but not limited to, COMMUNICATIONS concerning any credit lines provided by AMD.

9. All DOCUMENTS constituting, reflecting or discussing marketing or promotional plans for computer systems containing AMD microprocessors.

10. All DOCUMENTS reflecting or concerning any evaluation by YOU whether to purchase computers containing microprocessors from AMD or Intel (including any evaluation relating to the quantity or timing of such purchase), including, but not limited to, DOCUMENTS discussing or concerning (a) the technical specifications or performance of AMD's or Intel's microprocessors or computer systems incorporating those microprocessors; (b) the quality or reliability of AMD's or Intel's microprocessors or systems incorporating those microprocessors; (c) the reliability of Intel or AMD as suppliers, including, but not limited to, YOUR ability to obtain supply of computer systems containing Intel or AMD microprocessors; (d) the suitability of AMD's or Intel's microprocessors for YOUR business objectives; (e) the future roadmap of Intel or AMD; (f) actual or expected consumer demand for systems incorporating AMD's or Intel's microprocessors; or (g) or any other reasons influencing YOUR decision to purchase (or not purchase) computers containing microprocessors from AMD or Intel.

11. All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or reliability of claims made by AMD regarding the attributes of its microprocessors or computer systems incorporating its microprocessors.

12. All DOCUMENTS constituting or reflecting any advertisement or promotion by YOU referencing AMD.

13. All DOCUMENTS constituting, reflecting or discussing COMMUNICATIONS with AMD concerning any advertising or promotion by YOU referencing AMD or Intel.

14. All DOCUMENTS constituting, reflecting or discussing COMMUNICATIONS with AMD concerning product roadmaps of Intel or AMD products.

15. All DOCUMENTS constituting, reflecting or discussing COMMUNICATIONS with AMD concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D. Del.), or any of the allegations about YOU in AMD's Complaint in that matter, or any other litigation involving AMD and Intel, or any investigation relating to Intel by the Japan Fair Trade Commission or the European Commission.

16. DOCUMENTS sufficient to identify the (1) PRODUCT TYPE; (2) brand; (3) model; (4) components (e.g., CPU, Keyboard, Monitor); and (5) SKUs of x86 COMPUTER PRODUCTS that YOU sell.

17. DOCUMENTS sufficient to show the Zip Code and store number of all YOUR retail locations.

18. For each purchase for resale of a x86 COMPUTER PRODUCT identified in response to Request No. 16 above, DOCUMENTS sufficient to show: (1) the SKU; (2) the number of units purchased; (3) the purchase price; (4) the source of the purchase; and (5) the date of the purchase.

19. For each purchase of a x86 COMPUTER PRODUCT for use in YOUR business, DOCUMENTS sufficient to show: (1) the SKU; (2) the number of units purchased; (3) the dollars paid; (4) the source of the purchase; and (5) the date of the purchase.

20.  For each sale or lease of a x86 COMPUTER PRODUCT by YOU, DOCUMENTS sufficient to show: (1) the SKU(s) sold or leased; (2) the number of units sold or leased; (3) the revenue generated by that sale or lease; (4) the ship to Zip Code or Store Location/Store Number that made the sale or lease; and (5) the date of the sale or lease.

21.  With respect to any monetary CONSIDERATION (rebates, lump sum discounts, Market Development Funds, etc.) that YOU received in connection with YOUR purchase of an x86 COMPUTER PRODUCT for resale, DOCUMENTS sufficient to show: (1) the type of CONSIDERATION; (2) the payer; (3) the amount of CONSIDERATION; (4) how YOU used the CONSIDERATION; and (5) the date YOU received the CONSIDERATION.

22.  DOCUMENTS sufficient to show, on a monthly basis, by SKU, PRODUCT TYPE, and x86 COMPUTER PRODUCT, YOUR gross profit and operating margins.

23.  DOCUMENTS sufficient to describe the name, scope, financial and other terms, conditions and effective dates of any rebate, marketing, other promotional program that YOU have offered purchasers of YOUR x86 COMPUTER PRODUCTS.

24.  With regard to payments made under the programs identified in response to Specification 23 above, DOCUMENTS sufficient to show: (1) the program under which the payment was made; (2) the amounts that YOU paid; (3) the Zip Code where YOU sent the payment; (4) the Store Number or Location to which the payment was attributed or assigned; (5) the SKU to which the payment relates; and (6) the date of the payment.

25.  DOCUMENTS sufficient to show the percentage of x86 COMPUTER PRODUCTS that YOU sold that were part of a part of a package that included other products (e.g., a printer, scanner, digital camera, etc.) that was sold at a single package price.

26. DOCUMENTS sufficient to identify and describe YOUR competitive actions, strategic plans, marketing plans, competitive reviews or market analyses regarding the retail market for YOUR x86 COMPUTER PRODUCTS.

Exhibit E

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE:                          :
                                :
INTEL CORP. MICROPROCESSOR      :     MDL Docket No. 05-1717-JJF
ANTITRUST LITIGATION,           :
                                :
                                :

### MEMORANDUM ORDER

Pending before the Court is the Qualified Rule 53(g) Objection To The Special Master's Report And Recommendations Regarding Proposed Protective Order (D.I. 232) filed by Plaintiff Advanced Microdevices, Inc., AMD International Sales & Services, Ltd. ("AMD") and the Class Plaintiffs. Specifically, AMD and the Class Plaintiffs contend that the proposed Protective Order should expressly require parties wishing to maintain a confidentiality designation to show that disclosure would cause it "clearly defined and serious injury" as set forth by the Court of Appeals for the Third Circuit in Shingara v. Skiles, 420 F.3d 301, 306 (3d Cir. 2005) and Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994). AMD and the Class Plaintiffs contend that as currently written the proposed Protective Order would allow parties to claim confidentiality forever over documents falling within provisions R.1 through R.8 without ever having to make any showing of harm. Thus, AMD and the Class Plaintiffs seek to add the following italicized language to Paragraph 16(c) of the proposed Protective Order:

> In any proceeding on such an application, the Producing Party will bear the burden to demonstrate that the designated Discovery Material qualifies as Confidential Discovery Material under Paragraph R *and that its disclosure would cause it clearly defined and serious injury.*

Alternatively, AMD contends that the preamble to Paragraph M could be amended to add the following italicized language:

> "Confidential Discovery Material" means any Discovery Material *the disclosure of which would cause the Producing Party cleared defined and serious injury* consisting of or containing information falling into any of the following categories . . .

In response, Defendants Intel Corporation and Intel Kabushiki Kaisha ("Intel") contend that an amendment to the proposed Protective Order is not required. (D.I. 235.) Intel points out that the parties and numerous third parties engaged in substantial negotiations and briefing concerning the proposed Protective Order culminating in a 117-page opinion by the Special Master which attempted to resolve the objections of the parties and non-parties and reach certain compromises. Intel contends that those third parties have not been afforded an opportunity to comment on AMD and the Class Plaintiffs' current objection. Because no specific document dispute has been presented to the Court, Intel also contends that any order interpreting the Special Master's intent and providing for future guidelines as to the application of the Protective Order would be an inappropriate advisory opinion.

In a letter dated July 11, 2006, the Special Master

2

considered AMD's concerns and stated that he did not read the

proposed Protective Order to create the situational difficulties

that AMD described.   The Special Master stated:

> The provisions of the proposed protective order would
> not permit a challenged document to be afforded
> confidential treatment "forever" merely because it
> comes within one of the "buckets" of definitions in
> former Paragraph R.   Rather, the provisions of both
> Paragraph 3 and 16 make clear that the Receiving Party
> may challenge a "confidential" designation, and that
> the Producing Party's initial designation may be
> altered by agreement of the parties or by Order of the
> Court, in accordance with then prevailing law.

(D.I. 226.)

The Court has considered the parties' arguments concerning

AMD and the Class Plaintiff's objection and concludes that a

modification of the proposed Protective Order is unwarranted.  As

Intel has noted, there is no particular confidentiality challenge

before the Court at this time, and the Court is persuaded that

any interpretation and/or modification of the proposed Protective

Order at this time would be premature, in the nature of an

advisory opinion, and fundamentally unfair to those third parties

who vigorously participated in the drafting of the proposed

Protective Order, and who at this time, have no means of

commenting on AMD and the Class Plaintiffs' objection.  As it now

stands, the proposed Protective Order provides a mechanism for

challenging confidential designations while preserving a flexible

approach to such challenges consistent with Third Circuit case

law, and the Court will not interfere with that flexibility by

3

making modifications or requiring certain interpretations in the absence of a specific and viable dispute.  <u>Shingara</u>, 420 F.3d at 306 (although "good cause" justifying a protective order requires a showing that disclosure will result in "clearly defined, specific and serious injury," that determination is based upon the balancing of numerous factors regarding the public interest and the interests of the parties).  Accordingly, the Court will overrule AMD and the Class Plaintiffs' Objection and adopt the proposed Protective Order as drafted by the Special Master.

NOW THEREFORE, IT IS HEREBY ORDERED that

1.   The Qualified Rule 53(g) Objection To The Special Master's Report And Recommendations Regarding Proposed Protective Order (D.I. 232) filed by Plaintiff Advanced Microdevices, Inc., AMD International Sales & Services, Ltd. is **<u>OVERRULED</u>**.

2.   The proposed Protective Order crafted by the Special Master is **<u>ADOPTED</u>** by the Court.

<u>September 2b, 2006</u>                         _____
        Date                         UNITED STATES DISTRICT JUDGE

4

Exhibit F

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Advanced Micro Devices, Inc., and<br>AMD International Sales & Services, Ltd.<br><br>v.<br><br>Intel Corporation and Intel Kabushiki Kaisha | **SUBPOENA IN A CIVIL CASE**<br><br>Case Number:[1]    05-441-JJF<br>United States District Court, District of Delaware |

TO:    Fry's Electronics, Inc.
        Attn: Brian Henri
        Legal Counsel
        600 East Brokaw Road
        San Jose, California  95112

☐    YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
### See Attached Schedule A

| PLACE<br>O'Melveny & Myers LLP<br>2765 Sand Hill Road<br>Menlo Park, CA  94025 | DATE AND TIME<br>November 1, 2005<br>5 p.m. (Pacific Standard Time) |
|---|---|

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>Attorney For Plaintiffs | DATE<br><br>October 4, 2005 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Charles P. Diamond
O'Melveny & Myers LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, CA  90067
(310) 553-6700

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1]  If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                              DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## Schedule A

### Definitions

1. For purposes of this document request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including email, instant messaging, shared network files, and databases created, accessed, modified or dated on or after January 1, 2000.

2. With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media (*e.g.*, servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

3. For purposes of this document request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, and Xeon).

4. For purposes of this document request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, E-CAP (exceptions to corporate approved pricing), MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

5. For purposes of this preservation request, "COMPUTER SYSTEM" means any product that utilizes a MICROPROCESSOR including, without limitation, desktop computers, notebook computers, and workstations.

6. For purposes of this document request, "COMPANY" refers to Fry's Electronics, Inc. and any of its controlled present or former subsidiaries, joint-ventures, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "INTEL" refers to Intel Corporation, Intel Kabushiki Kaisha, and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "AMD" refers to Advanced Micro Devices, Inc., AMD International Sales and Service Ltd., and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

7. For purposes of this document request, "MDF" refers to market development funds.

### Instructions

1. The time period, unless otherwise specified, covered by each request set forth below is from January 1, 2000 up to and including the present.

2. In responding to each request set forth below, please set forth each request in full before each response.

3. If any DOCUMENT covered by these requests is withheld by reason of a claim of privilege, please furnish a list at the time the DOCUMENTS are produced identifying any such DOCUMENT for which the privilege is claimed, together with the following information with respect to any such DOCUMENT withheld: author; recipient; sender; indicated or blind copies; date; general subject matter; basis upon which privilege is claimed and the paragraph of these requests to which such DOCUMENT relates. For each DOCUMENT withheld under a claim that it constitutes or contains attorney work product, also state whether COMPANY asserts that the DOCUMENT was prepared in anticipation of litigation or for trial.

4. If COMPANY objects to a request in part, please state specifically which part of the request COMPANY objects to and produce all DOCUMENTS responsive to all other parts of the request.

5. With respect to any DOCUMENT maintained or stored electronically, please harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

6. Please produce all DOCUMENTS maintained or stored electronically in native, electronic format with all relevant metadata intact and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive). Encrypted or password-protected DOCUMENTS should be produced in a form permitting them to be reviewed.

7. Please organize electronic DOCUMENTS produced for inspection in the same manner that the COMPANY stores them (e.g., if maintained by a custodian, such as email residing on an email server, please organize DOCUMENTS for production by custodian; if maintained in a subfolder of "My Documents" on a custodian's hard drive, please organize DOCUMENTS for production by custodian with path information preserved, etc.).

8. To the extent responsive DOCUMENTS reside on databases and other such systems and files, COMPANY shall either produce the relevant database in useable form and/or shall permit access for inspection, review, and extraction of responsive information.

9. At COMPANY'S election, DOCUMENTS maintained or stored in paper, hard-copy form can be produced as searchable .PDF (i.e., portable document format files with embedded text) and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive).

## DOCUMENTS TO BE PRODUCED

### Acquisition of Computer Systems

1. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning any FINANCIAL INDUCEMENT offered by INTEL to COMPANY in connection with the purchase or resale of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS.

2. All DOCUMENTS constituting, reflecting, or discussing any FINANCIAL INDUCEMENT offered by INTEL related to the exclusive purchase of COMPUTER SYSTEMS

containing INTEL MICROPROCESSORS, or the purchase of a minimum volume of
COMPUTER SYSTEMS containing INTEL MICROPROCESSORS, or the purchase of a
minimum percentage of COMPANY'S requirements of COMPUTER SYSTEMS containing
INTEL MICROPROCESSORS, whether total requirements or requirements for certain computer
platforms, computer models or computer types.

3.    All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or
other writings pertaining to any FINANCIAL INDUCEMENT offered by INTEL in connection
with the purchase or resale of COMPUTER SYSTEMS containing INTEL
MICROPROCESSORS or on any other INTEL product.

4.    All DOCUMENTS constituting, reflecting, or discussing payments, commissions, or
"spiffs" paid to salespeople based on their individual sales of COMPUTER SYSTEMS
containing INTEL and/or AMD MICROPROCESSORS.

5.    All DOCUMENTS constituting, reflecting, or discussing any suggestion by INTEL
that it will or might withdraw or withhold a FINANCIAL INDUCEMENT as a result of
COMPANY's sale of COMPUTER SYSTEMS containing AMD MICROPROCESSORS, or
COMPANY's purchases of COMPUTER SYSTEMS containing AMD MICROPROCESSORS
or of COMPANY's plan to stock or promote COMPUTER SYSTEMS containing AMD
MICROPROCESSORS.

6.    All DOCUMENTS constituting, reflecting, or discussing any FINANCIAL
INDUCEMENT provided by INTEL on the condition that COMPANY restrict or limit its
purchases, sales, or promotion of COMPUTER SYSTEMS containing AMD
MICROPROCESSORS.

7.    All DOCUMENTS constituting, reflecting, or discussing any FINANCIAL
INDUCEMENT provided by INTEL on the condition that COMPANY limit its percentage
revenue or SKUs for COMPUTER SYSTEMS containing AMD MICROPROCESSORS.

8.    All DOCUMENTS constituting, reflecting, or discussing any communications with
INTEL related to the allocation of shelf space and product placement in COMPANY's stores.

9.    All DOCUMENTS constituting, reflecting, or discussing any communications with
suppliers of COMPUTER SYSTEMS concerning any FINANCIAL INDUCEMENT provided
by INTEL to COMPANY in connection with the purchase or resale of COMPUTER SYSTEMS
containing INTEL MICROPROCESSORS.

10.    All DOCUMENTS constituting, reflecting, or discussing any non-financial
inducement, including without limitation any allocation preference, access to technical or
roadmap information, personnel support (engineering/technical/training) or any other non-cash
benefit, perquisite or other consideration offered by INTEL related to the purchase of
COMPUTER SYSTEMS containing INTEL MICROPROCESSORS, or any suggestion by
INTEL that it will or might withdraw or withhold any non-financial inducement as a result of

COMPANY's sale, purchase, or plans to stock or promote COMPUTER SYSTEMS containing AMD MICROPROCESSORS.

**Purchase History**

11. DOCUMENTS sufficient to show:

    a) the aggregate amount by quarter of the FINANCIAL INDUCEMENTS provided by INTEL to COMPANY, broken down by type as regularly recorded in your accounting systems, in connection with COMPANY's purchases of COMPUTER SYSTEMS (by quarter) since January 1, 2000.

    b) COMPANY's use of FINANCIAL INDUCEMENTS provided by INTEL including, without limitation, for advertising, newspaper circulars, FSI (Free Standing Inserts), in-store promotions, and sales personnel training since January 1, 2000.

    c) COMPANY's purchases of COMPUTER SYSTEMS on a monthly basis since January 1, 2000, broken down by original equipment manufacturer, model and type of MICROPROCESSOR.

    d) COMPANY's retail sell-through of COMPUTER SYSTEMS on a monthly basis since January 1, 2000, broken down by original equipment manufacturer, model and type of MICROPROCESSOR.

**Comparisons of INTEL and AMD MICROPROCESSORS**

12. All DOCUMENTS constituting or reflecting analyses, summaries, reports or studies prepared in connection with the consideration of the purchase or sale of COMPUTER SYSTEMS containing AMD and/or INTEL MICROPROCESSORS.

13. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings prepared comparing COMPUTER SYSTEMS with INTEL and AMD MICROPROCESSORS whether from a price, quality or other standpoint.

**Miscellaneous**

14. All DOCUMENTS constituting or reflecting consumer or customer feedback regarding (a) COMPANY's selection of COMPUTER SYSTEMS containing AMD or INTEL MICROPROCESSORS, or (b) COMPANY's advertising, marketing, promotion, or sale of COMPUTER SYSTEMS containing AMD and/or INTEL MICROPROCESSORS.

15. All DOCUMENTS constituting, reflecting, or discussing the destruction or disposal of documents related to INTEL, AMD, or MICROPROCESSOR procurement.

16. All DOCUMENTS sufficient to show the steps taken by COMPANY to preserve documents with respect to this litigation or related litigation or proceedings including, without

limitation, all DOCUMENTS that constitute, reflect or discuss the COMPANY'S DOCUMENT retention policy or policies from January 1, 2000, to the present.