IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:<br>INTEL CORP. MICROPROCESSSOR<br>ANTITRUST LITIGATION | )<br>)<br>)<br>)<br>) | MDL Docket No. 05-1717 (JJF) |
| PHIL PAUL, on behalf of himself and all<br>others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>INTEL CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 05-485 (JJF)<br><br>CONSOLIDATED |

## APPENDIX OF EXHIBITS TO LETTER TO
## SPECIAL MASTER VINCENT J. POPPITI
## FROM MARY B. GRAHAM

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Mary B. Graham (#2256)
Richard J. Bauer (#4828)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
302.658.9200

*Attorneys for Nonparty Fry's Electronics, Inc.*

*OF COUNSEL:*

Robert W. Stone
Michael D. Powell
Quinn Emanuel Urquhart Oliver
& Hedges, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
650.801.5000

May 2, 2007

## TABLE OF EXHIBITS

| DESCRIPTION | EXHIBIT |
|---|:---:|
| Protective Order Governing Confidential Information, March 1, 2006<br>C.A. No.'s 03-120; 02-1512; 05-340; 05-360 (KAJ) | A |
| Impax Laboratories Inc. letter to Judge Jordan<br>November 21, 2006, C.A. No. 03-120 (KAJ) | B |
| Abbott Laboratories letter to Judge Jordan<br>November 24, 2006, C.A. No. 03-120 (KAJ) | C |
| Impax Laboratories Inc. reply letter to Judge Jordan<br>November 30, 2006,  C.A. No. 03-120 (KAJ) | D |
| Transcript, December 1, 2006, C.A. No. 03-120 (KAJ) | E |
| *Pitney Bowes Inc. v. Stamps.com Inc.,*<br>C.A. No. 99-381 (JJF), slip op. at 2 (D. Del. Dec. 13, 2001) | F |
| Notice of Hearing re: D.I. 109, June 2, 2006 | G |
| Letter to third parties re: hearing on protective order, June 9, 2006 | H |

817102.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 2, 2007, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that on May 2, 2007 true and correct copies of the foregoing were caused to be served upon the following parties in the manner indicated:

**VIA HAND DELIVERY (in triplicate):**

Vincent J. Poppiti
BLANK ROME LLP
1201 North Market Street, Suite 800
Wilmington, DE  19801-4226

**VIA E-MAIL:**

Vincent J. Poppiti
BLANK ROME LLP
**poppiti@blankrome.com**

WITH A COPY TO:

Dale R. Dube
BLANK ROME LLP
**dube@blankrome.com**

Mary Levan
BLANK ROME LLP
**levan@blankrome.com**

Carrie David
BLANK ROME LLP
**david-c@blankrome.com**

**VIA E-MAIL:**

J. Clayton Athey
PRICKETT, JONES & ELLIOTT, P.A.
**jcathey@prickett.com**

*/s/ Mary B. Graham (#2256)*
_____

Mary B. Graham (#2256)

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ABBOTT LABORATORIES, an Illinois          )
corporation, FOURNIER INDUSTRIE           )
ET SANTÉ, a French corporation, and       )
LABORATOIRES FOURNIER S.A., a             )
French corporation,                       )
                Plaintiffs,              )
       v.                       )          C.A. No. 02-1512 (KAJ)
                                      )
TEVA PHARMACEUTICALS USA, INC.,            )          CONSOLIDATED
a Delaware corporation,                    )
                                      )
              Defendant,                )
                                      )

_____ )

TEVA PHARMACEUTICALS USA, Inc.,            )
a Delaware corporation, and TEVA          )
PHARMACEUTICAL INDUSTRIES                  )
LTD., an Israeli corporation,              )
                                      )
         Counterclaim Plaintiffs,      )
       v.                       )
                                      )
ABBOTT LABORATORIES, an Illinois          )
corporation, FOURNIER INDUSTRIE           )
ET SANTÉ, a French corporation, and       )
LABORATOIRES FOURNIER S.A., a             )
French corporation,                       )
                                      )
        Counterclaim Defendants,       )

_____ )

ABBOTT LABORATORIES, an Illinois          )
corporation, FOURNIER INDUSTRIE           )
ET SANTÉ, a French corporation, and       )
LABORATOIRES FOURNIER S.A., a             )
French corporation,                       )
                                      )
            Plaintiffs,                )
       v.                       )          C.A. No. 03-120 (KAJ)
                                      )
IMPAX LABORATORIES, INC., a               )          CONSOLIDATED
Delaware corporation,                      )
                                      )
              Defendant.                )

| | | |
|---|---|---|
| IN RE TRICOR DIRECT PURCHASER ANTITRUST LITIGATION | ) ) ) | |
| | ) | C.A. No. 05-340 (KAJ) |
| | ) | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) ) ) | CONSOLIDATED |
| | ) | |
| IN RE TRICOR INDIRECT PURCHASER ANTITRUST LITIGATION | ) ) ) | |
| | ) | C.A. No. 05-360 (KAJ) |
| | ) | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) ) ) | CONSOLIDATED |
| | ) | |

## PROTECTIVE ORDER GOVERNING CONFIDENTIAL INFORMATION

Pursuant to Fed. R. Civ. P. 26(c), by agreement of Abbott Laboratories, including its successors-in-interest, subsidiaries and predecessors ("Abbott"), Fournier Industrie et Santé and Laboratoires Fournier S.A, including their successors-in-interest, subsidiaries and predecessors (collectively, "Fournier"), Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd., including their successors-in-interest, subsidiaries and predecessors (collectively, "Teva"), Impax Laboratories, Inc., including its successors-in-interest, subsidiaries and predecessors ("Impax"), and all plaintiffs in the actions consolidated and/or coordinated in In re Tricor Direct Purchaser Antitrust Litig., No. 1:05-cv-00340-KAJ (D. Del) (collectively, "Direct Purchasers") and In re Tricor Indirect Purchaser Antitrust Litig., No. 1:05-cv-00360-KAJ (D. Del.) (collectively, "Indirect Purchasers") (all individually, a "party", or collectively, "parties"), the Court finds that good cause exists for entry of this Protective Order to prevent unauthorized disclosure and use of the parties' trade secrets and other confidential information during and after the course of the above-captioned litigations (collectively, the "Action"). Accordingly, IT IS HEREBY ORDERED THAT:

A.    **Definitions**

For purposes of this Protective Order, the following definitions shall apply:

1.    The term "Designated Material" shall include all information, documents and other materials revealed or disclosed during the proceedings of the above matter that are designated as "Confidential Material," "Highly Confidential Material" and/or "Restricted Pricing Material" in the manner set forth in Section C of this Protective Order, including without limitation any records, exhibits, reports, samples, transcripts, oral testimony, video or audio recordings, affidavits, briefs, summaries, notes, abstracts, drawings, databases, communications, correspondence, letters, emails and attachments thereto, answers to interrogatories, responses to requests for admissions, or motions, including copies or computer-stored versions of any of the foregoing.

2.    The term "Disclosing Party" shall mean any party or non-party who is requested to produce or produces Material through discovery in these actions.

3.    The term "Confidential Material" shall mean material that is, in the normal course of business, maintained as confidential, and expressly includes material previously produced to Abbott and Fournier and designated as "Confidential Information" under the Confidentiality Agreement dated September 20, 2002, between Abbott, Fournier, and Teva as well as ANDA No. 76-433 ("Teva's ANDA").

4.    The term "Highly Confidential Material" shall mean customer information, current (not more than three years old) financial and marketing information (including past information indicative of current practices), information relating to research, development, testing of, and plans for, a party's existing fenofibrate products (including products referenced in any NDA or ANDA that have received tentative or final approval as of October 30, 2005), information relating to the processes, apparatus, or analytical techniques used by a party in its

- 3 -

present or proposed commercial production of such products, information relating to pending or abandoned patent applications which have not been made available to the public, personal medical or financial information, and any other information that the disclosing party believes in good faith could be used by a competitor to harm its business.

     **5.**     The term "Restricted Pricing Material" shall mean materials or information that contain contract terms or pricing, sales, or profit information concerning one or more individual customers or suppliers identified specifically by name or reference in the document.

     **6.**     The term "Competitive Fenofibrate Activities" means (i) competitive decision making activities (e.g., advising on decisions concerning marketing, pricing and design) relating to any fenofibrate product and (ii) any involvement in the prosecution of patent applications relating to fenofibrate. "Competitive decision making" activities also include competitive decision making related to the preparation of any (a) NDA or ANDA or "paper" NDA (21 U.S.C § 355(b)(2)) relating to fenofibrate or (b) Paragraph III or IV certification letters referencing any Abbott NDA relating to fenofibrate.

**B.**    **Applicability of this Protective Order**

     **1.**     Except as specifically authorized by this Court, Designated Material shall not be disclosed or revealed to anyone not authorized by this Protective Order to receive such material. *Further, Designated Material shall be used only for the purpose of this Action and not for any other purpose or function, including without limitation any other litigation not part of this Action or any Competitive Fenofibrate Activity or business, patent prosecution, competitive or governmental purpose or function.* The terms of this Protective Order shall apply to all manner and means of discovery. All persons to whom Designated Material is disclosed shall be informed of and shown a copy of this Protective Order.

C.    **Designating Material**

       If, in the course of this Action, a Disclosing Party discloses material that the Disclosing Party contends is Confidential or Highly Confidential or Restricted Pricing, that Disclosing Party may so designate such material by applying to that material the appropriate confidentiality marking.

       **1.**    **Designating "Confidential Material":**  Any document produced by a party in this litigation may be designated as Confidential Material by marking it "CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER" or a similar label on the face of the document at or prior to the time of production.

       **2.**    **Designating "Highly Confidential Material":**  Any document produced by a party in this litigation may be designated as Highly Confidential Material by marking it "HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER" or a similar label on the face of the document at or prior to the time of production.

       **3.**    **Designating "Restricted Pricing Material":** Any document produced by a party in this litigation may be designated as Restricted Pricing Material by marking it "RESTRICTED PRICING MATERIAL: SUBJECT TO PROTECTIVE ORDER" or a similar label on the face of the document at or prior to the time of production.

       **4.**    **Designating Material that Cannot Easily Be Marked:**  If any Confidential or Highly Confidential or Restricted Pricing Material cannot easily be labeled with the appropriate Confidentiality marking, it shall be placed in a sealed envelope or other suitable container that is in turn marked with the appropriate Confidentiality marking, or otherwise designated in a manner agreed upon by the parties.

       **5.**    **Designating Depositions:**  Any person giving deposition testimony in this litigation as a representative of a party may designate any or all of the testimony as Confidential

Material or Highly Confidential or Restricted Pricing Material. The person desiring to designate any portion of a deposition as Confidential Material or Highly Confidential or Restricted Pricing Material may do so on the record while the deposition is being taken, either personally or through counsel. Alternatively, the transcript of the deposition (or of any other testimony) may be designated as containing Confidential Material or Highly Confidential or Restricted Pricing Material by notifying the opposing party in writing, within ten (10) business days of receipt of the transcript that it contains Confidential Material or Highly Confidential or Restricted Pricing Material. Notwithstanding the foregoing, any deposition transcript shall be subject to a safe-harbor wherein the transcript will be treated as Highly Confidential Material for a period not to exceed ten (10) business days after the official transcript is received. Any portion of any deposition testimony that is not designated as Confidential Material or Highly Confidential or Restricted Pricing Material in accordance with Section C herein, within that ten (10) business day safe-harbor period, shall not be entitled to the protections afforded under this Protective Order.

   **6.    Designating Deposition Exhibits:**  An exhibit to a deposition that has been produced (i.e., has a bates number) shall be treated in accordance with the confidentiality designation already given to it. If the exhibit has not been previously produced and has no preexisting designation ("New Exhibit"), then the exhibit shall be treated in accordance with the confidentiality designation given to it on the record at the time of the deposition and that confidentiality designation shall be noted on the first page of the exhibit. If no confidentiality designation is made for a New Exhibit at the deposition, it shall be treated as Highly Confidential Material for a period not to exceed ten (10) business days after the New Exhibit's initial disclosure. Any New Exhibit that is not designated as Confidential or Highly Confidential or

Restricted Pricing Material in accordance with Section C herein, within that ten (10) business day safe-harbor period, shall not be entitled to the protections afforded under this Protective Order.

7.    **Non-Party Designations:**  A non-party to this action that produces materials to any party in connection with this Action, whether pursuant to a subpoena or otherwise, may avail itself of the protections afforded by this Protective Order, by placing the appropriate Confidentiality marking on such materials.

8.    **Safe-Harbor for Inadvertent Failure to Designate:**  If a party or non-party inadvertently fails to designate material as Confidential or Highly Confidential or Restricted Pricing such failure shall not constitute a waiver of the Disclosing Party's right to so designate such material, provided the Disclosing Party so notifies, in writing, the parties known to have received the material in question and provide same with an appropriately marked substitute copy of the affected material.  Upon receiving notification of an inadvertent failure to designate, all parties in receipt of the affected material must (i) destroy all copies of the incorrectly marked material, and (ii) retrieve all copies of the incorrectly marked material from all persons to whom that material was disclosed and destroy all such copies.  In addition, the affected parties must inform the Disclosing Party, in writing, of the identity of any person not authorized under Section D to whom such affected material was disclosed and whether such party has returned that material.  Such identifications shall not waive any attorney work product or attorney-client privileges.

**D.     Persons Authorized to Access Confidential or Highly Confidential or Restricted Pricing Material and the Authorized Use of Such Material**

      **1.     Persons Authorized to Access Confidential Material Shall Be Limited to:**

           (a)     Outside counsel of record, who have been admitted in the United States District Court for the District of Delaware either directly or *pro hac vice* for this Action, for the respective parties to this litigation ("Outside Counsel") and attorneys and regular employees **within the same law firm** of said Outside Counsel, who are assisting in the prosecution or defense of this litigation ("Outside Counsel Employees"). Outside Counsel shall have the duty of informing Outside Counsel Employees in the same law firm who receive Designated Material of the applicable provisions of this Protective Order and ensuring compliance with its terms. For the purpose of clarification, Designated Material may not be disclosed by the receiving party to any attorney or employee at a law firm, law office, professional corporation or similar entity that does not employ at least one attorney who has been admitted *pro hac vice* to this Action;

           (b)     Up to three in-house counsel or directors of legal affairs for Abbott, Fournier, Teva and Impax and up to one in-house counsel for each other named party provided that the identified counsel or directors of legal affairs are not engaged in Competitive Fenofibrate Activities, and support and clerical staff supporting said counsel. The in-house counsel or directors of legal affairs shall be identified in accordance with Section D.4 below. The parties may substitute an inside counsel for one identified in accordance with Section D.4 by notifying the other parties of the withdrawal and identifying the new inside counsel in accordance with Section D.4. The withdrawing inside counsel remains subject to all terms and conditions of this Protective Order;

(c)    No more than two employees per Abbott, Fournier, Teva and Impax, who are not involved in Competitive Fenofibrate Activities and who are identified by the proposing party in the matter outlined below in Section D.5;

(d)    Outside experts and consultants (and their employees or clerical assistants) who are employed, retained or otherwise consulted by outside counsel of record to assist in any way in the preparation and trial of this litigation. Outside experts and consultants may not be engaged in Competitive Fenofibrate Activities on behalf of any entity during the pendency of this litigation. For purposes of this Protective Order, the phrase "outside experts and consultants" shall not include any officer, director or employee of any party. Outside experts and consultants shall be identified in accordance with Section D.4 below;

(e)    The Court, its staff, and other authorized Court personnel;

(f)    Qualified persons taking testimony involving Confidential or Highly Confidential or Restricted Pricing Material and necessary stenographic, videographic, and clerical personnel thereof;

(g)    Duplicating services, and auxiliary services of a like nature, routinely engaged by counsel;

(h)    The Federal Trade Commission in connection with its investigation identified as Abbott Laboratories File 005-0124;

(i)    Authors and recipients of the particular Material; and

(j)    employees, officers or experts of a producing party.

**2.    Persons Authorized to Access Highly Confidential Material:** shall be limited to the persons identified in (a)-(b) and (d)-(j) in Section D.1. above. Persons identified in (c) of Section D.1 above ARE NOT AUTHORIZED to access Highly Confidential Information.

3.       **Persons Authorized to Access Restricted Pricing Material:**  shall be limited to
the persons identified in (a) and (d)-(j) in Section D.1 above, and the following additional
persons: one in-house counsel at each of Abbott, Fournier, Teva, and Impax, who (i) has no role
in marketing or formulating marketing strategies concerning any drug products, except that the
in-house counsel may render Marketing Legal Advice (as defined below); (ii) has no role in
pricing, or formulating pricing strategies, or drafting or negotiating contracts concerning any
drug products, (iii) has no role in drafting, negotiating, or otherwise communicating with
customers or suppliers concerning pricing or contracts for the sale of any drug products, except
that the in-house counsel may render legal advice concerning breach or potential breach of
contracts (for Abbott and Fournier, such advice is limited to non-generic products), and  (iv)
agrees to be bound by Order of this Court that s/he shall undertake no activities  prohibited in
subsections (i), (ii), and (iii) of this provision for a period of two (2) years  after entry of a final
judgment from which no appeal can be taken in this action.  Such persons shall be identified in
accordance with Section D.4 below.  If any of Abbott, Fournier, Teva, or Impax does not have an
in-house counsel who satisfies the requirements of this provision, that party (or those parties)
shall be limited to disclosing Restricted Pricing Material to the persons identified in (a) and (d)-
(j) in Section D.1 above.  Persons identified in (b) and (c) of Section D.1 above ARE NOT
AUTHORIZED to access Restricted Pricing Material, except that an in-house counsel for
Abbott, Fournier, Teva, or Impax designated in (b) of Section D.1 may also be designated
hereunder to access Restricted Pricing Material provided that the in-house counsel independently
satisfies the requirements of both (b) and this provision.  "Marketing Legal Advice" shall mean
the provision of legal opinions, analysis or advice on marketing plans and strategies (for Abbott
and Fournier, this advice is limited to non-generic products) on issues concerning regulatory and

statutory compliance, fraud, false advertising and litigations relating to the marketing plans and strategies.

4.    **Certain Authorized Persons Must First Agree to Be Bound to the Terms of This Protective Order Before Gaining Access to Confidential or Highly Confidential or Restricted Pricing Materials:**    Confidential or Highly Confidential Material shall not be disclosed to any authorized person identified in (b) or (d) in Section D.1. above and Restricted Pricing Materials shall not be disclosed to any authorized person identified in (d) in Section D.1 or in Section D.3 above, unless and until such person has agreed in writing to be bound by the terms of this Protective Order.  The requirement of obtaining such written agreement shall be satisfied by obtaining the signature of each such person on the Confidentiality Agreement attached hereto as Exhibit A.  In addition to the foregoing, before disclosing Confidential or Highly Confidential Material to any authorized person identified in (b) in Section D.1. above or Restricted Pricing Material to any authorized person identified in Section D.3, the party seeking to make such disclosure shall first give five (5) business days prior written notice to counsel for the producing party of the name, job title and job description of the in-house attorney or director of legal affairs to whom disclosure is to be made and an executed copy of the Confidentiality Agreement attached as Exhibit A.  Before disclosing Confidential or Highly Confidential or Restricted Pricing Material to any authorized person identified in (d) in Section D.1. above, the party seeking to make such disclosure shall first give five (5) business days prior written notice to counsel for the producing party of the name and address of the person to whom disclosure is to be made, including a current resume disclosing such person's prior or present relationship, if any, with the parties and any involvement that the person has had in Competitive Fenofibrate Activities and an executed copy of the Confidentiality Agreement attached as Exhibit A.  If the

producing party reasonably believes it would be harmed by the disclosure of any Highly Confidential or Restricted Pricing Material any person proposed above, it may object in writing to such disclosure within five (5) business days after receipt of the notice. In the event of an objection, the parties shall promptly confer to attempt to resolve the concerns giving rise to the objection. If the parties are unable to reach agreement regarding such disclosure, the party objecting to disclosure may, prior to the time of the intended disclosure, request this Court to issue an order prohibiting the disclosure. No disclosure shall be made pending the ruling of the Court. The Court may impose additional restrictions on such disclosure as a condition of issuing such order. The parties hereby agree that any expert who submitted an expert report in connection with C.A. No. 02-1512 (KAJ) or 03-120 (KAJ) cannot be objected to and need only execute the Confidentiality Agreement in Exhibit A.

5.      **Employee Access To Confidential Information Is Limited to Two Persons Identified by the Proposing Party:**

Confidential Material shall not be disclosed to any authorized person identified in (c) in Section D.1. above, unless and until such person has agreed in writing to be bound by the terms of this Protective Order. The requirement of obtaining such written agreement shall be satisfied by obtaining the signature of each such person on the Confidentiality Agreement attached hereto as Exhibit A. In addition to the foregoing, before disclosing Confidential Material to any authorized person identified in (c) in Section D.1. above, the party seeking to make such disclosure to any person not previously identified to the parties shall first give five (5) business days prior written notice to counsel for the producing party of the name and address of the person to whom disclosure is to be made, including a current resume disclosing such person's prior or present relationship, if any, with the parties and an executed copy of the Confidentiality

Agreement attached as Exhibit A. If the producing party reasonably believes it would be harmed by the disclosure of any Confidential Material to the proposed person, it may object in writing to such disclosure within five (5) business days after receipt of the notice. In the event of an objection, the parties shall promptly confer to attempt to resolve the concerns giving rise to the objection. If the parties are unable to reach agreement regarding such disclosure, the party objecting to disclosure may, prior to the time of the intended disclosure, request this Court to issue an order prohibiting the disclosure. No disclosure shall be made pending the ruling of the Court. The Court may impose additional restrictions on such disclosure as a condition of issuing such order.

6.    **Persons Accessing Confidential or Highly Confidential Information Pursuant to Section D.1. (b) and (c) above Shall Not Engage in Competitive Fenofibrate Activities for a period of Two (2) Years After Termination of this Action.**

7.    **Use Limited to this Action:** Designated Material may only be used in the course of any hearings or trial of this Action. Counsel will address in the Pretrial Order how they propose to handle the use and disclosure at trial of Designated Material.

E.    **Filing Under Seal**

1.    **Procedure:** Designated Material may be used or submitted to the Court in connection with any filing or proceeding in this Action, but the party using such material shall cause an original and one copy to be filed separately under seal with the Clerk of the Court. All papers that contain Confidential Material which are submitted to or filed with the Court shall be submitted or filed in a sealed envelope bearing the following legend clearly written on the face of the envelope under the relevant case caption for this Action:

> **CONFIDENTIAL – FILED UNDER SEAL
> PURSUANT TO COURT ORDER**

All papers that contain Highly Confidential Material which are submitted to or filed with the Court shall be submitted or filed in a sealed envelope bearing the following legend clearly written on the face of the envelope under the relevant case caption for this Action:

> **HIGHLY CONFIDENTIAL – FILED UNDER SEAL
> PURSUANT TO COURT ORDER**

All papers that contain Restricted Pricing Material which are submitted to or filed with the Court shall be submitted or filed in a sealed envelope bearing the following legend clearly written on the face of the envelope under the relevant case caption for this Action:

> **RESTRICTED PRICING MATERIAL/HIGHLY
> CONFIDENTIAL – FILED UNDER SEAL
> PURSUANT TO COURT ORDER**

      **2.**    **Public Versions of Documents Filed Under Seal:** A party submitting or filing papers under seal with the Court shall also submit or file a public version of such papers. Such public version shall redact any Designated Material. Prior to submitting or filing a public version of documents filed under seal, the party making such filing shall give the Disclosing Party an opportunity to review the proposed public version to ensure that all Designated Material has been properly redacted.

      **3.**    **No Summaries:** Designated materials shall not be disclosed or summarized, either in writing or orally, to anyone other than persons permitted to have access to such

- 14 -

information under this Protective Order. Notwithstanding the foregoing, nothing in this Protective Order prohibits outside counsel for any party from advising their respective clients of the presence or absence of evidence supporting or refuting the claims or defenses in this Action.

**F.    Challenging Designations**

**1.    Designation Not Conclusive:** Nothing in this Protective Order shall be construed as a finding that any Designated Material actually constitutes or contains proprietary or confidential information or trade secrets. For purposes of this order, proprietary or confidential information or trade secrets shall not include information or material that:

(a)    was, is or becomes public knowledge in a manner other than by violation of this Order;

(b)    is acquired by the non-designating party from a third-party, except if the non-designating party knows that the third-party does not have a right to disclose such information or material;

(c)    was possessed by the non-designating party prior to the entry of this Order by the Court, except if the non-designating party knows that it possessed the information or material unlawfully. For the purpose of clarification, any materials produced by Abbott, Fournier, Teva or Impax pursuant to earlier protective orders in C.A. Nos. 02-1512 (KAJ) or 03-120 (KAJ) shall be entitled to continued protection under both the prior applicable protective order and this Protective Order; or

(d)    was developed by the non-designating party independent of the information produced under the protective order.

**2.    Challenge Need Not Be Contemporaneous With Designation:** There shall be no obligation to challenge a Confidential or Highly Confidential or Restricted Pricing designation when made and failure to do so shall not preclude a subsequent challenge. If a party

objects to the designation of any material as Confidential or Highly Confidential Material or Restricted Pricing, it may apply to this Court for a ruling that the information or material shall not be so designated.  The burden shall be on the party arguing that the information should be treated as Confidential or Highly Confidential or Restricted Material to establish, based upon a showing of good cause, that the material constitutes or contains proprietary or confidential information or trade secrets.  Until the Court rules upon the designation, the affected material shall continue to be treated in the manner the pre-challenge designation would ordinarily require.

G.    **Non-Party or Governmental Requests on Non-Disclosing Parties to Produce Material Designated as Confidential or Highly Confidential**

In the event any of the parties is (i) subpoenaed in another action, or (ii) served with a demand in another action to which it is a party, or (iii) served with any other legal process and is requested to produce or otherwise disclose information that was designated as Designated Material by the producing party in this action, the party subpoenaed or otherwise served as referred to in this paragraph shall object to production of the material and shall give prompt written notice to the producing party to this litigation with sufficient time to afford the producing party to this litigation an opportunity to intervene.  The notice shall include a copy of any such subpoena, demand, or other process.  Should the person seeking access to the Designated Material take action against the party covered by this Protective Order to enforce such a subpoena, demand or other legal process, it shall respond by setting forth the existence of this Protective Order.  Notwithstanding the foregoing, any document produced in this Litigation is subject to review by the Federal Trade Commission in connection with its investigation identified as Abbott Laboratories File 005-0124.

**H.    Confidentiality Interests of Third-Parties**

      **1.    Limitations on the Right to Refuse Production of Third-Party Materials:** A party may temporarily withhold production of otherwise discoverable information (whether by subpoena, deposition question, or discovery request), if the party is under an obligation to a third-party not to disclose such information. In such an event, such party shall:

      (a)    Promptly provide to the third-party whose confidentiality interests are implicated (i) notice of the party's obligation to disclose the information in question, and (ii) a copy of this Protective Order; and

      (b)    Within thirty (30) business days, produce the requested information in question in compliance with this Order, unless that third-party, within that time, moves for or obtains from this Court a protective order precluding such disclosure.

**I.    Limitations of this Protective Order**

      **1.    Advice of Counsel:** Nothing in this Protective Order shall bar or otherwise restrict any attorney for the parties from rendering advice to his or her client with respect to this litigation. In the course of doing so, said attorney may generally refer to or rely upon his or her examination of Designated Material, but shall not disclose the specific contents of Designated Material to persons not authorized to receive such Designated Material pursuant to this Protective Order.

      **2.    No Waiver of Rights:** Nothing in this Order shall be deemed a waiver of any right any party otherwise might have under the Federal Rules or the doctrines of attorney-client, attorney work product, or any other applicable privileges, including without limitation (i) the right of a party or non-party to object to any discovery request on any ground; (ii) the right of a party to seek an order compelling discovery with respect to any discovery request; (iii) the right of a party to object to the admission of evidence on any ground; (iv) the right of a party or non-

- 17 -

party to use its own materials within its own discretion; (v) the right of a party or non-party to seek additional protection for certain materials or information. With respect to a request for additional protection, the entity seeking such protection shall first confer with the parties to reach agreement with respect to such additional protection. If the parties are unable to reach agreement, the entity seeking such additional protection may, within 10 business days of receipt of a request for such information, file a motion with this Court for an additional protective order.

**J.      Inadvertent Disclosure of Designated Materials**

Should any material designated as Confidential or Highly Confidential or Restricted Pricing be disclosed, through inadvertence or otherwise, in violation of this order, then the party responsible for such disclosure shall use its best efforts to retrieve from such persons all copies of the affected material and bind those receiving the disclosure to the terms of this Protective Order, by (i) promptly informing such persons of the provisions of this Protective Order and (ii) requesting that such persons sign the Confidentiality Agreement attached as Exhibit A. In addition, the affected parties must inform the Disclosing Party, in writing, of (i) the identity of any person not authorized under Section D to whom such affected material was disclosed, (ii) the identity of the material disclosed to that person, and (iii) whether such party has returned that material. Such identifications shall not waive any attorney work product or attorney-client privileges.

**K.      Inadvertent Disclosure of Privileged Documents**

1.      **No Waiver:** The production or disclosure of any discovery material made in connection with this Action which a producing party claims was inadvertent and should not have been produced or disclosed because of a privilege will not be deemed to be a waiver of any privilege to which the producing party would have been entitled had the affected material not

inadvertently been disclosed. In the event of such claimed inadvertent disclosure, the following procedures shall be followed:

      (a)    The producing party may request, in writing, the return of any such discovery material by specifically identifying the affected material; and

      (b)    If a producing party requests the return, pursuant to this paragraph, of any such discovery material from another party, the party to whom the request is made shall return immediately to the producing party all copies of the affected material within its possession, custody, or control—including all copies in the possession of experts, consultants, or others to whom the affected material was provided. Notwithstanding the foregoing, if a receiving party wishes to challenge the recall of a document on the grounds that it does not contain or reflect privileged material, it may keep one copy of the challenged document for a period not exceeding ten (10) business days after receiving a return request pursuant to Section K(1)(a), to submit to the Court for *in camera* review. If the challenged document is not submitted to the Court prior to the end of the ten (10) business day period, then the document must immediately be returned to the disclosing party. In the event that only portions of the discovery material contain privileged subject matter, the producing party shall substitute a redacted version of the discovery material at the time of making the request for the return of the requested discovery material. Until such materials are returned, such materials and the information contained therein shall be treated as Highly Confidential Material.

## L.   **Other Proceedings**

      By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated "Confidential Material,"

"Highly Confidential Material," or "Restricted Pricing Material" pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

**M.    Destruction or Return of Designated Materials at Conclusion of Action**

1.    **Destruction or Return by Parties and Other Authorized Persons:**  Upon the final conclusion of this Action, all persons to whom Designated Material has been disclosed shall, without demand, either (a) destroy, or (b) return to the party that originally produced it, all Designated Material (and all copies of such material) and all other documents containing information taken from the Designated Material, except that each party's outside counsel may retain one copy of (i) materials created during the course of the Action; (ii) work product of non-testifying consultants/experts; (iii) materials made part of the Court record; (iv) all deposition and Court transcripts, including exhibits; and (v) deposition summaries.  Such file copy must be maintained subject to the terms of this Protective Order.  All recipients of Designated Material shall certify in writing within sixty (60) days of the entry of settlement or final judgment that they have complied with the provisions of this paragraph.

2.    **Return by the Court:**  Upon the final conclusion of this litigation:

(a)    any Designated Material produced hereunder that has been submitted for identification or in evidence at any hearing or trial in this Action may be withdrawn by counsel for the person who so offered or originally produced such Designated Material; and

(b)    the courtroom clerk and other Court staff are authorized to deliver said Designated Material to said counsel.

**N.    Modification, Relief, and Post-Termination Effect of This Protective Order**

This Protective Order shall survive the final termination of this Action (whether by settlement or by final judgment) and continue in full force and effect, unless modified by an

order of the Court or by written stipulation by the parties filed with the Court. The parties reserve all rights to apply to the Court at any time, before or after termination of this Action, for an order (i) modifying this Protective Order, or (ii) seeking further protection against discovery of use of Designated Material or other information. Without limiting the foregoing, this Court shall retain jurisdiction to enforce the terms of this Protective Order after the final termination of this Action.

SO ORDERED this 1st day of March, 2006.

U.S.D.J.

507151

- 21 -

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABBOTT LABORATORIES, an Illinois corporation, FOURNIER INDUSTRIE ET SANTÉ, a French corporation, and LABORATOIRES FOURNIER S.A., a French corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 02-1512 (KAJ) |
| | ) | |
| TEVA PHARMACEUTICALS USA, INC., a Delaware corporation, | ) ) ) | CONSOLIDATED |
| Defendant, | ) ) ) | |
| | ) | |
| TEVA PHARMACEUTICALS USA, Inc., a Delaware corporation, and TEVA PHARMACEUTICAL INDUSTRIES LTD., an Israeli corporation, | ) ) ) ) ) | |
| Counterclaim Plaintiffs, | ) | |
| v. | ) ) | |
| ABBOTT LABORATORIES, an Illinois corporation, FOURNIER INDUSTRIE ET SANTÉ, a French corporation, and LABORATOIRES FOURNIER S.A., a French corporation, | ) ) ) ) ) | |
| Counterclaim Defendants, | ) ) | |
| | ) | |
| ABBOTT LABORATORIES, an Illinois corporation, FOURNIER INDUSTRIE ET SANTÉ, a French corporation, and LABORATOIRES FOURNIER S.A., a French corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 03-120 (KAJ) |
| | ) | |
| IMPAX LABORATORIES, INC., a Delaware corporation, | ) ) ) | CONSOLIDATED |
| Defendant. | ) ) | |

| | | |
|---|---|---|
| IN RE TRICOR DIRECT PURCHASER ANTITRUST LITIGATION | ) ) ) | |
| | ) | C.A. No. 05-340 (KAJ) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) ) ) | CONSOLIDATED |
| | ) | |
| IN RE TRICOR INDIRECT PURCHASER ANTITRUST LITIGATION | ) ) ) | |
| | ) | C.A. No. 05-360 (KAJ) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) ) ) ) | CONSOLIDATED |

## **CONFIDENTIALITY AGREEMENT**

The undersigned hereby acknowledges that (s)he has read the Protective Order entered on _____, in the above-captioned action, and understands the terms thereof, and agrees, upon threat of penalty of contempt, to be bound by such terms of each paragraph of the Protective Order. **In particular, the undersigned understands that the terms of said Protective Order obligate him/her to use Confidential or Highly Confidential or Restricted Pricing Material solely for the purposes of this Litigation and to not disclose any such Confidential or Highly Confidential or Restricted Pricing Material to any other person, firm or entity**, except that there will be no restriction on documents that are used as exhibits in Court, unless such exhibits were filed under seal, and there will be no restriction on information disclosed in open Court, unless the Courtroom is sealed at the time of such disclosure. Further, for the purpose of enforcing this Confidentiality Agreement the undersigned hereby subjects himself/herself to the jurisdiction of this Court.

_____          _____
Date                                              Signature

EXHIBIT B

# MORRIS, JAMES, HITCHENS & WILLIAMS LLP

222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801-1621
(302) 888-6800
Facsimile (302) 571-1750
www.morrisjames.com

Mary B. Matterer
(302) 888-6960
mmatterer@morrisjames.com

Mailing Address
P.O. Box 2306
Wilmington, DE 19899-2306

November 21, 2006

**VIA EFILING & HAND DELIVERY**
The Honorable Kent A. Jordan
USDC for the District of Delaware
844 King Street
Wilmington, DE 19801

Re:    *Abbott Labs., et al. v. Impax Labs., Inc.,* C. A. No. 03-120 KAJ (consolidated)

Your Honor:

Pursuant to the Court's order, Impax has negotiated in good faith regarding an outside counsel only tier to the protective order that would provide adequate protection for its sensitive business information that the Court ordered produced at the hearing on November 14, including Impax's company-wide manufacturing and sales models and strategic plans that go well beyond fenofibrate.[1]   After several meet and confer sessions,[2] the parties have narrowed the issues on which they disagree to one point: whether to require that counsel receiving the outside counsel only information be admitted pro hac vice to this Court and limit dissemination of the information to a reasonable number of non-lawyers in outside counsel firms.  A proposed order, agreed to in all respects except Impax's proposed requirements for outside counsel and staff who receive outside counsel only information, is attached as Exhibit A.

Impax's proposal would require that to receive outside counsel only information, counsel must appear on the record in this case, either as a member of the District of Delaware bar or as counsel *pro hac vice.*  Impax's proposal further requires any such counsel to limit dissemination of outside counsel only information to a reasonable number of non-lawyer staff in his/her law firm who sign the undertaking in the protective order.  Neither the undertakings of staff nor the identity of staff who sign them need be disclosed.

---

[1]  In a follow up meet and confer, counsel for Fournier has requested that Impax produce 57,000 pages of material in unredacted form, plus all company wide monthly status reports, all monthly manufacturing reports, all monthly sales and marketing reports, and all strategic plans.  This information goes to the heart of Impax's business, its product line, and its business model.

[2]  Abbott's counsel did not participate in the meet and confer on this issue; thus, this letter refers to Fournier's positions.  Fournier was presumably representing Abbott's interests here.

The Honorable Kent A. Jordan                    MORRIS, JAMES, HITCHENS & WILLIAMS LLP
November 21, 2006
Page 2

     Abbott and Fournier have articulated the dangers of unlimited dissemination of highly sensitive information, even within outside counsel firms.  In a motion for protective order that the Court granted, they noted: "the risk of inadvertent disclosure is particularly high given the number of outside counsel. . . . Here, approximately twenty-five law firms represent plaintiffs as outside counsel," plus, of course, the five law firms representing Abbott and Fournier. Ex. B, Letter from Mary Graham, Esq. to Hon. Kent Jordan, Nov. 14, 2005, at 3; *see also* Ex. C, Hearing Transcript, Nov. 15, 2005, at 17:19-18:18.  Thus, Abbott and Fournier even objected to providing information about future products to counsel of record—something Impax does not seek to limit, in light of the Court's order.  They went on to add that if not limited to counsel of record, outside counsel would include:

> hundreds of individuals, many of whom would never be disclosed to Abbott or Fournier, be given access to Abbott's and Fournier's most valuable information. When dealing with such a large group of people, the likelihood of even an inadvertent disclosure is substantial.  Moreover, after the information is disclosed, there is no way to 'put the genie back in the bottle.'

Ex. B, at 3, n.2.  In view of these dangers that Abbott and Fournier articulated, Impax's proposed requirements for counsel's accessing only the most highly sensitive outside counsel only information is not unreasonable.

     There's no dispute that the information Impax would provide is precisely the type of sensitive information Abbott and Fournier were concerned about disclosing.  Abbott's counsel noted that a pharmaceutical company's product pipeline is the "key[] to the kingdom." Ex. C, at 18:7-9.  The information that Fournier has asked for in light of the Court's order includes strategic plans that would discuss Impax's product plans, monthly company reports that would discuss the company's products across the board, and unredacted forecast spreadsheets that would cover all the company's products, including pipeline products that were not yet launched but included in the forecasts.  These documents are the keys to the kingdom for Impax, and the restrictions Impax suggests are reasonable in light of the information's sensitivity.

     Fournier's response in meet and confer was that these restrictions would create practical problems because, for example, contract attorneys receiving this information would not be admitted *pro hac vice* and requiring staff members to sign an undertaking would be burdensome because law firm staff changes.[3]  Those burdens do not outweigh the risk of inadvertent disclosure of Impax's most sensitive information, which, if inadvertently disclosed, comes "out of the bottle" forever.  If anything, the transience of contract attorneys and staff is precisely why

---

[3] Impax's proposal provides that five staff members may receive outside counsel only information.  In meet and confer, Impax offered to increase that number by a reasonable amount if Fournier's counsel did not feel that five was enough.  Fournier was unwilling to offer a counter-proposal regarding the number of staff it would want to be able to receive this information.  Impax is not wedded to a particular number of staff people, but rather seeks a reasonable limit and that staff be required to sign the protective order undertaking.

The Honorable Kent A. Jordan                    MORRIS, JAMES, HITCHENS & WILLIAMS LLP
November 21, 2006
Page 3

the restrictions Impax proposes are necessary—so that this information does not end up in the
hands of the hundreds of unidentified individuals that Abbott's counsel referred to when seeking
protection of her own client's sensitive information.  The risk of inadvertent disclosure with such
wide dissemination is too high.

        Furthermore, the fact that the existing protective order does not include the requirements
that Impax proposes is of no moment here.  The existing order was negotiated as to a much
narrower category of information, not the highly sensitive non-fenofibrate information that
Abbott and Fournier now seek.  Moreover, the Court ordered the parties to negotiate this new
category precisely because the old ones were inadequate to protect the information at issue.

                                        Respectfully,

                                        Mary Matterer

                                        Mary B. Matterer

cc:     All counsel (via e-mail)

A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TEVA PHARMACEUTICALS USA, INC., <br> TEVA PHARMACEUTICAL INDUSTRIES LTD., <br> and NOVOPHARM, LTD., | ) <br> ) <br> ) <br> ) | |
| Counterclaim Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | C.A. No. 02-1512 (KAJ) |
| ABBOTT LABORATORIES, <br> FOURNIER INDUSTRIE ET SANTÉ, and <br> LABORATOIRES FOURNIER S.A., | ) <br> ) <br> ) <br> ) | CONSOLIDATED |
| Counterclaim Defendants. | ) <br> ) <br> ) | |
| IMPAX LABORATORIES, INC., | ) <br> ) | |
| Counterclaim Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | |
| ABBOTT LABORATORIES, <br> FOURNIER INDUSTRIE ET SANTÉ, and <br> LABORATOIRES FOURNIER S.A., | ) <br> ) <br> ) | C.A. No. 03-120 (KAJ) <br><br> CONSOLIDATED |
| Counterclaim Defendants. | ) <br> ) <br> ) | |
| IN RE TRICOR DIRECT PURCHASER <br> ANTITRUST LITIGATION | ) <br> ) <br> ) | C.A. No. 05-340 (KAJ) |
| THIS DOCUMENT RELATES TO: <br> ALL ACTIONS | ) <br> ) <br> ) | CONSOLIDATED |
| IN RE TRICOR INDIRECT PURCHASER <br> ANTITRUST LITIGATION | ) <br> ) <br> ) | C.A. No. 05-360 (KAJ) |
| THIS DOCUMENT RELATES TO: <br> ALL ACTIONS | ) <br> ) <br> ) | CONSOLIDATED |

**AMENDMENT TO THE STIPULATED MARCH 1, 2006 PROTECTIVE ORDER**
**GOVERNING CONFIDENTIAL INFORMATION**

Pursuant to Fed. R. Civ. P. 26(c), by agreement of Abbott Laboratories, including

its successors-in-interest, subsidiaries and predecessors ("Abbott"), Fournier Industrie et Santé

and Laboratoires Fournier S.A, including their successors-in-interest, subsidiaries and

predecessors (collectively, "Fournier"), Teva Pharmaceuticals USA, Inc. and Teva

Pharmaceutical Industries Ltd., including their successors-in-interest, subsidiaries and

predecessors (collectively, "Teva"), Impax Laboratories, Inc., including its successors-in-

interest, subsidiaries and predecessors ("Impax"), and all plaintiffs in the actions consolidated

and/or coordinated in In re Tricor Direct Purchaser Antitrust Litig., No. 1:05-cv-00340-KAJ (D.

Del) (collectively, "Direct Purchasers") and In re Tricor Indirect Purchaser Antitrust Litig., No.

1:05-cv-00360-KAJ (D. Del.) (collectively, "Indirect Purchasers") (all individually, a "party", or

collectively, "parties"), the Court, finding good cause existed therefor, entered a Protective Order

on March 1, 2006 to prevent unauthorized disclosure and use of the parties' trade secrets and

other confidential information during and after the course of the above-captioned litigations

(collectively, the "Action").    IT IS HEREBY ORDERED THAT said Protective Order be

amended as follows.

This Amendment adds an "Outside Counsel Only" designation to cover materials

or information that ordinarily would be designated as "Highly Confidential" or "Restricted

Pricing Material" but that is so competitively sensitive that the "Highly Confidential" and

"Restricted Pricing Material" designations as defined in the Protective Order are inadequate to

protect against the possibility of competitive harm.

Persons authorized to access "Outside Counsel Only" designated materials shall be limited to:

1.     Outside counsel of record, who have been admitted in the United States District Court for the District of Delaware either directly or pro hac vice for this Action, for the respective parties to this litigation ("Outside Counsel"), and no more than five (5) staff members within the same law firm of said Outside Counsel. Staff members are required to sign the undertaking in Exhibit A and the law firm must maintain these undertakings, but neither the undertakings nor the staff members' identities need be disclosed;

2.     Persons identified in items (d)-(j) of Section D, Subsection 1 of the Protective Order.

Further, counsel shall provide Outside Counsel Only materials and information to an authorized person identified in paragraph (d) of Section D, Subsection 1 of the Protective Order, (1) only to the extent counsel reasonably believes such information may be necessary to that person's analysis; and (2) only after that person has signed the undertaking attached to this Amendment that specifically references Outside Counsel Only material and that undertaking has been disclosed to counsel for all parties.

SO ORDERED this ____ day of November 2006.

_____
U.S.D.J.

EXHIBIT A [revised as per Amendment]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TEVA PHARMACEUTICALS USA, INC.,
TEVA PHARMACEUTICAL INDUSTRIES LTD.,
and NOVOPHARM, LTD.,

        Counterclaim Plaintiffs,

        v.

ABBOTT LABORATORIES,
FOURNIER INDUSTRIE ET SANTÉ, and
LABORATOIRES FOURNIER S.A.,

        Counterclaim Defendants.

C.A. No. 02-1512 (KAJ)

CONSOLIDATED

IMPAX LABORATORIES, INC.,

        Counterclaim Plaintiff,
    v.

ABBOTT LABORATORIES,
FOURNIER INDUSTRIE ET SANTÉ, and
LABORATOIRES FOURNIER S.A.,

        Counterclaim Defendants.

C.A. No. 03-120 (KAJ)

CONSOLIDATED

IN RE TRICOR DIRECT PURCHASER
ANTITRUST LITIGATION

THIS DOCUMENT RELATES TO:
ALL ACTIONS

C.A. No. 05-340 (KAJ)

CONSOLIDATED

IN RE TRICOR INDIRECT PURCHASER
ANTITRUST LITIGATION

THIS DOCUMENT RELATES TO:
ALL ACTIONS

)
)
)
)
)
)
)
)

C.A. No. 05-360 (KAJ)

CONSOLIDATED

## CONFIDENTIALITY AGREEMENT

       The undersigned hereby acknowledges that (s)he has read the Protective Order

entered on March 1, 2006, and the November 2006 amendment thereto, in the above-captioned

action, and understands the terms thereof, and agrees, upon threat of penalty of contempt, to be

bound by such terms of each paragraph of the Protective Order. In particular, the undersigned

understands that the terms of said Protective Order obligate him/her to use Confidential or

Highly Confidential or Restricted Pricing Material or Outside Counsel Only material solely for

the purposes of this Litigation and to not disclose any such Confidential or Highly Confidential

or Restricted Pricing Material or Outside Counsel Only to any other person, firm or entity,

except that there will be no restriction on documents that are used as exhibits in Court, unless

such exhibits were filed under seal, and there will be no restriction on information disclosed in

open Court, unless the Courtroom is sealed at the time of such disclosure. Further, for the

purpose of enforcing this Confidentiality Agreement the undersigned hereby subjects

himself/herself to the jurisdiction of this Court.

_____
Date

_____
Signature

-2-

B

MORRIS, NICHOLS, ARSHT & TUNNELL

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

MARY B. GRAHAM
(302) 575-7287
mgraham@mnat.com

November 14, 2005

The Honorable Kent A. Jordan          **BY EFILING & HAND DELIVERY**
United States District Court
For the District of Delaware
844 King Street
Wilmington, DE  19801

Re:    In re TriCor® Antitrust Litigations: C.A. Nos. 02-1512, 03-120,
       05-340 and 05-360 (KAJ)

Dear Judge Jordan:

       I write on behalf of Abbott Laboratories, Fournier Industrie et Santé, and Laboratoires Fournier S.A. in opposition to plaintiffs' demands for access to information concerning the specific details of Abbott's or Fournier's confidential future business plans regarding TriCor®.

       Plaintiffs' request should be considered in context. Plaintiffs, which number almost twenty, include Teva and Impax, whose business model is to make identical copies of branded drugs as quickly as possible. The competitive sensitivity of specific information about Abbott's or Fournier's on-going research into next generation products is even greater than is ordinarily the case between competitors.[1] This is not a case where redactions mask a "smoking gun" about past conduct that is the true subject of plaintiffs' claims. As plaintiffs themselves acknowledge, that Abbott or Fournier are developing new products is known. It is the highly confidential details of the R&D, regulatory and commercial strategies of future products or "pipeline" products still in development (none of which have been approved by the FDA) that Abbott and Fournier have redacted.

       Plaintiffs' conclusory assertions that future plans are relevant either to their claims of an overall scheme or their request for injunctive relief do not withstand scrutiny. Plaintiffs allege that Abbott's and Fournier's past conduct was anticompetitive. Future conduct, especially future development plans so nebulous that FDA approval has not been obtained and has no guarantee of being obtained, has no legitimate place in this litigation. The documents plaintiffs cite serve only to underscore that it is the general fact of the existence of these future plans that is arguably relevant to their "overall scheme" claim, and that general fact has been set out in documents produced to plaintiffs. The fact that Abbott and Fournier are continuing to study the development of new products does not provide insight into plaintiffs' claims about the manner of past product introductions. In addition, discovery as to the scope of an injunction is extraordinarily premature. Plaintiffs fail to describe any circumstances that could conceivably warrant barring Abbott or

---

[1]  Abbott's and Fournier's redactions are not a knee-jerk unwillingness to allow discovery, but are instead  limited in number and calibrated to the numbers and identities of the recipients. These concerns did not exist when Abbott and Fournier produced unredacted documents to the Federal Trade Commission under strict assurances of confidentiality.

The Honorable Kent A. Jordan
Page 2
November 14, 2005

Fournier from continuing to research new products and indications or prosecuting New Drug Applications with the FDA. Any potentially adverse impact on plaintiffs as a result of these research efforts could occur only in the future if new products are ever launched and depending on the manner of new product introduction or as a result of what plaintiffs falsely characterize as "market destruction" conduct, both of which are premature and speculative at this time.

The scope of permissible discovery under Rule 26(b), while broad, is not unbounded. Discovery should be denied where, as here, (a) the discovery sought is highly confidential, (b) disclosure would harm the producing party and (c) the discovery is irrelevant and unnecessary to the requesting party's case. *See American Standard v. Pfizer*, 828 F.2d 734, 740-44 (Fed. Cir. 1987).

A.    Abbott's and Fournier's Future Plans are Highly Confidential

The details of on-going development by Abbott or Fournier are highly proprietary. Courts have routinely viewed this kind of information, which includes such sensitive information as product formulas, marketing plans and market entry decisions, as confidential. *See American Standard*, 828 F.2d at 740 (collecting cases); *Serono Laboratories, Inc. v. Shalala*, 35 F. Supp. 2d 1, 2 (D.D.C. 1999) ("In a field as competitive and technical as the pharmaceutical industry, success or failure will turn in large measure on innovation and the members of the industry justifiably hoard their trade secrets as jealously as a miser hoards his gold.").

New product innovation (and the ability to keep such information confidential) is critical to the success of any pharmaceutical company. *See* Ex. A, Declaration of Michael A. Jones, ¶¶ 5-6; Ex. B., Declaration of Pierre Diebolt, ¶¶ 5-7. While general information concerning the type of products that the companies are researching is disclosed for the benefit of shareholders, the companies limit the detailed information that the plaintiffs are seeking to high-level executives and staff working on the TriCor® brand who have a need to know. *See* Jones Decl., ¶¶ 8-11; Diebolt Decl., ¶ 4.

To further demonstrate the sensitivity and irrelevance of the business and product plans sought by plaintiffs, under separate letter, Abbott and Fournier are submitting a few examples of the documents at issue for *in camera* review.

B.    Disclosure of Abbott's and Fournier's Future Plans Would Cause Them Significant Harm

As Messrs. Jones and Diebolt describe in their declarations, even inadvertent disclosure of confidential future business plans would cause significant harm to Abbott and Fournier. *See* Jones Decl., ¶ 9; Diebolt Decl., ¶ 7. Moreover, unique circumstances in this case significantly increase the risk of such disclosure, even under a protective order limiting disclosure to outside counsel only.

First, as noted previously, two of the plaintiffs are direct competitors of Abbott. Each has obtained FDA approval to make generic versions of the prior two generations of TriCor® products, and Teva is asking this Court to grant it a compulsory license to Abbott's and Fournier's patents covering its current generation TriCor® products. Not only are Teva and Impax competitors of Abbott, they routinely engage in strategic alliances to market generic drugs. It is well established that "disclosure to a competitor is more harmful than disclosure to a noncompetitor," id. at 741, and that "[c]ompetitive disadvantage is a type of harm cognizable under Rule 26." *Zenith Radio Corp. v. Matushita Elec. Indus. Co.*, 529 F. Supp. 866, 890 (E.D. Pa. 1981); *Neill Corp. v. John Paul Mitchell Sys.*, Civ. A. No. 92-2157, 1995 WL 217480, at *5 (E.D. La. Apr. 12, 1995) (citation omitted) ("the denial of a discovery request for confidential information is particularly appropriate" when the disclosure is to a competitor). In this case, the potential harm is even greater as the generics' business model is simply to copy defendants' products.

The Honorable Kent A. Jordan
Page 3
November 14, 2005

Second, the risk of inadvertent disclosure is particularly high given the number of outside counsel.[2] In a case such as this, "[t]he critical inquiry is whether the attorney[s] in question [are] in a position that creates a high risk of inadvertent disclosure of highly confidential information." *Commissariat A L'Energie v. Dell Computer Corp.*, No. Civ. A. 03-484-KAJ, 2004 WL 1196965, at *2 (D. Del. May 25, 2004) (internal quotation omitted). Here, approximately twenty-five law firms represent plaintiffs as outside counsel, with at least three representing Teva on an ongoing basis.

C.    Abbott's and Fournier's Future Plans Are Irrelevant and Unnecessary to Plaintiffs' Actions

Because plaintiffs seek the disclosure of highly sensitive and confidential information, they must demonstrate that Abbott's and Fournier's future plans are "relevant and necessary to the action." *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 107 F.R.D. 288, 292-93 (D. Del. 1985) (citation omitted). In this case, plaintiffs can show neither.

Information concerning Abbott's and Fournier's future plans is irrelevant to plaintiffs' claims. Here, the plaintiffs are asserting various antitrust and unfair competition claims based on allegations of misconduct by Abbott and Fournier surrounding introductions of new fenofibrate products in 2001 and 2004 and concurrent "market destruction" activities. There is no count in any of the Amended Complaints that concerns, either directly or indirectly, Abbott's and Fournier's future actions. Abbott's and Fournier's *future plans*, including drug pipeline development, have no bearing on the *past wrongs* alleged in these actions. In addition, because past conduct is the only conduct implicated by the claims in this case, plaintiffs cannot contend that this information is necessary for them to "to prepare [their] case[s] for trial." *Id.* at 293.

Plaintiffs' argument that revealing planning and deliberations on new product efforts is relevant to their allegations of "motive, knowledge and intent in executing past conversions," "the anticompetitive effects" and a "continuous and ongoing pattern of anticompetitive conduct" does not stand up to analysis. Proprietary information on future product development is not relevant to supposed past motives or to the anticompetitive effects of precisely how existing products were commercially launched. One has nothing to do with the other. Attempting to link possible future products with existing products under the banner of "ongoing conduct" similarly fails. No harm can come to a competitor or to competition from research or planning on possible new products. Even under plaintiffs' expansive theory, the alleged harm only occurs when a new product is actually approved by the FDA and is introduced into the market.

Respectfully,

/s/ Mary B. Graham (#2256)

Mary B. Graham

cc:    Clerk of Court (by hand) (with enclosures)
       (all record counsel)

---

[2]    In the protective order plaintiffs propose, "Outside Attorneys' Eyes Only" includes (i) approximately 70 counsel of record, (ii) employees of those firms (a group of countless unidentified individuals), and (iii) experts or consultants and their staff. Thus, the "attorneys' eyes only" designation is a misnomer. In fact, plaintiffs propose that hundreds of individuals, many of whom would never be disclosed to Abbott or Fournier, be given access to Abbott's and Fournier's most valuable information. When dealing with such a large group of people, the likelihood of even an inadvertent disclosure is substantial. Moreover, after the information is disclosed, there is no way to "put the genie back in the bottle."

C

1

1        IN THE UNITED STATES DISTRICT COURT

2        IN AND FOR THE DISTRICT OF DELAWARE

3                      - - -

4    ------------------------------------
                                      :
5    IN RE: TRICOR DIRECT PURCHASER     :    CIVIL ACTION
     ANTITRUST LITIGATION               :
6    ------------------------------------  :    NO. 05-340 (KAJ)

7                                      :
     THIS DOCUMENT RELATES TO:          :    (Consolidated)
8                                      :
     ALL ACTIONS                        :
9    ------------------------------------  :
10   ------------------------------------       -and-
                                      :
11   IN RE: TRICOR INDIRECT PURCHASER   :
     ANTITRUST LITIGATION               :
12                                     :    NO. 05-360 (KAJ)
     ------------------------------------
13                                     :
     THIS DOCUMENT RELATES TO:          :    (Consolidated)
14                                     :
     ALL ACTIONS                        :
15   ------------------------------------  :

16                      - - -

17
                    Wilmington, Delaware
18       Tuesday, November 15, 2005 at 10:00 o'clock, a.m.
                    TELEPHONE CONFERENCE
19                      - - -

20
     BEFORE:        HONORABLE KENT A. JORDAN, U.S.D.C.J.
21                      - - -

22
     APPEARANCES: (Listed on page two)
23

24

25                        Brian P. Gaffigan
                          Registered Merit Reporter

1    of Abbott and Fournier.  But that is the point that I want

2    to stress.  What we're discussing here and what we proposed

3    here is not disclosure to a competitor.  The protective

4    order that we have submitted to Abbott and Fournier, we're

5    talking about disclosure on an outside counsel basis.  That

6    is the point.  And as this Court knows from the antecedent

7    patent litigation, there was a protective order in place

8    covering sensitive information and that worked just fine.

9    These are outside counsel who know how to protect this

10   information.

11           We do not see any risk of competitive harm on

12   an outside counsel only basis.  And, similarly, Abbott and

13   Fournier have not cited a case which holds that a court was

14   going to refuse to disclose relevant information to outside

15   counsel only on the basis of competitive harm.  So to the

16   extent that there is a concern about the number of outside

17   counsel, then I would suggest that the more appropriate

18   approach would be for the parties to engage in a discussion

19   that deals with that issue rather than simply saying that

20   relevant information can be withheld entirely.

21           THE COURT:  All right.  Mr. Cavanaugh.

22           MR. CAVANAUGH:  Thank you, Your Honor.  Your

23   Honor, counsel for plaintiffs say "Abbott and Fournier are

24   controlling the market and poisoning the market."  Those

25   are actual steps taken in the marketplace:  ongoing research

1    and development, technical assessments of possible new

2    indications for treatments, analyses of where the market is

3    going and where Abbott and Fournier might be able to best

4    serve patient needs with developments of new innovative

5    products has nothing to do with actual market effects.

6    Actual market effects, even under the plaintiff's expansive

7    theory about controlling the market and poisoning the

8    market, only occurs when the Food and Drug Administration

9    actually approves the product and you begin selling it and

10   then you look at what are the market effects of this new

11   product that has been introduced into the market.

12           That is not what we're talking about here.

13   Their case is based upon product introduction that have

14   occurred that have had an impact on the market, and we're

15   going to, both sides will argue about what the effects

16   have been.  We think they have been pro-competitive.  We

17   think we've introduced innovative new products that the

18   marketplace was looking for.  They allege it was part of a

19   scheme.  That is fine.

20           But we're talking about what has actually been

21   taking place in the marketplace.  That is what is relevant

22   in this case.  And to take us down the road of having to

23   produce highly proprietary information on new products that

24   may never see the light of day ... for the FDA may approve

25   them, they may not approve them.  They may approve them with

1    certain indications.  Our hopes and aspirations as to what

2    those indications may be, what the success of those products

3    may be, when the FDA may approve them, strikes us as, you

4    know, fairly speculative but certainly of no relevance to

5    this case.  I have no problem with full discovery as to

6    our existing products.  We think that is what this case is

7    about.

8             Your Honor raised the point or counsel raised

9    the point about injunctive relief.  The issue of the scope

10   of an injunction is, from our perspective, certainly

11   premature, but I think more importantly, Your Honor, I

12   think it's inconceivable there could be an injunction that

13   would say "you can't introduce new products.  You have to

14   stop your research and development."  One, that is not what

15   this case is about and, two, it's frankly we think legally

16   inconceivable that there could be an injunction along those

17   lines, if we ever reach the stage of having a discussion

18   with the Court about an injunction.

19            So turning to the question of harm.  I think

20   Your Honor hit the nail on the head when you said, is

21   there a greater harm when 70 people have access?  Well,

22   Your Honor, it's not just 70 people.  Those are only the

23   attorneys who have filed pro hacs.  So far, it's 25

24   different law firms.  It's the paralegals, the other

25   associates.  It's the experts.  It's the consultants working

1   with all of these different law firms.

2          This is a group that includes competitors.  It

3   includes purchasers.  It includes third-party payors.  It

4   includes people who made no sense of the value of this

5   information.  And as we've set forth in the declarations,

6   this is, you know, your product pipeline is for any pharma-

7   ceutical company.  It's the keys to the kingdom.  This is

8   what is among the most valuable trade secrets out of the

9   company.

10         Now, the plaintiff cites the Coca-Cola case.

11  And the Coca-Cola case, the trade secret was an essential

12  element of that case.  That was a contract dispute as

13  to whether the product was within the scope of the trade

14  secret.  Here, the information they're seeking really has

15  no relevance here.  And I think the best that they can

16  come up with is some marginal or possible future relevance.

17         I don't think those arguments favor producing

18  what we think is highly proprietary information for which

19  given the nature of this case, the harm of disclosure would

20  be significant and the number of parties involved, the risk

21  of disclosure we think is enhanced.  Plaintiffs will take

22  extensive discovery of our existing products which is what

23  this case is about.  At this point, we think that should be

24  the appropriate scope of discovery in the case, Your Honor.

25         THE COURT:  All right.  Mr. Steinfeld or

EXHIBIT C

# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347

302 658 9200
302 658 3989 Fax

Mary B. Graham
302.351.9199
mgraham@mnat.com

November 24, 2006

The Honorable Kent A. Jordan                    VIA ELECTRONIC FILING
United States District Court
844 King Street
Wilmington, DE  19801

       Re:    *Abbott Laboratories, et al v. Impax Laboratories*
               C.A. No. 03-120 (KAJ)

Dear Judge Jordan:

       We are counsel for Abbott Laboratories and are writing in connection with the November 21, 2006 letters of Richards, Layton & Finger and of Morris, James, Hitchens & Williams LLP concerning revisions to the March 1, 2006 "Protection Order Governing Confidential Information" (the "Order"). Abbott respectfully submits that the Order's existing definition of "Restricted Pricing Material" should be expanded to cover the information to be produced by Impax in response to the Court's order on November 14.

       Contrary to the November 21 joint submission of Abbott and Fournier, upon further reflection, Abbott believes there is no need to create a fourth category under the Order for "Outside Counsel Only." (Fournier does not join in this letter and does not oppose an "Outside Counsel Only" category.) If Impax's information is given the protections of the existing "Restricted Pricing Material" designation, that information cannot be disclosed to any non-legal employees of Abbott and can be disclosed to only one in-house counsel (who cannot be involved in the business activities itemized in paragraph D.3 of the Order). In essence, that in-house counsel is an "outside" litigation counsel. Such a limited revision of the Order protects Impax while allowing one in-house counsel to participate fully in the preparation of Abbott's defense.

       Abbott's in-house counsel develop and execute litigation strategy with Abbott's outside counsel, and Abbott consistently opposes exclusion of its in-house counsel from access to information produced in discovery. The counsel for Abbott who participated in the November 14 telephone conference should have raised this point during the November 14 conference call and in a separate letter on November 21, and we apologize for raising it now. The issue, however, is a very important one. The documents to be produced by Impax are relevant to the billions of dollars of damages claimed by Impax, by the proposed Direct Purchaser and End-Payor classes and by the individual plaintiffs. The information will have a significant role in building Abbott's defense to the various plaintiffs' damages claims. We submit that an Abbott

The Honorable Kent A. Jordan
November 24, 2006
Page 2

in-house litigation counsel should not be excluded from the preparation of Abbott's defense to the damages claim.

An Abbott in-house litigation counsel can be allowed access to the information to be produced by Impax without harming Impax. The Order currently provides three tiers of protection for confidential information ("Confidential Material," "Highly Confidential Material" and "Restricted Pricing Material"). The "Restricted Pricing Material" category is the most restrictive category. The existing three-tier approach appropriately balances disclosure of a party's sensitive business information and an opposing party's participation in formulating the party's legal strategy.

The "Restricted Pricing Material" category anticipates the type of information to be disclosed by Impax. As Impax explains in its November 21 letter, Impax will disclose information about drug products that are not fenofibrates. Accordingly, that information should not be disclosed to in-house counsel if that counsel is involved in certain business decisions involving any type of drug product. If in-house counsel is not involved in such decisions, there should not be a prohibition on disclosure to that counsel.

As set forth in the Order, "Restricted Pricing Material" information cannot be seen by in-house counsel unless (with certain defined exceptions) that counsel has (1) no role in marketing or formulating marketing strategies "concerning any drug products;" (2) no role in pricing or formulating pricing strategies "concerning any drug products;" and (3) no role in communicating with customers or suppliers concerning pricing or contracts for "any drug product." Thus, to the extent Impax will be producing documents that concern drug products other than fenofibrates, the "Restricted Price Material" category already ensures that the in-house counsel who has access to such information has no involvement in marketing and pricing any drug product.

The Order was drafted by the parties to allow access to information by specific types of in-house counsel who could not inadvertently use that information for competitive purposes. Although the plaintiffs initially proposed an "Outside Counsel Only" category, they agreed to eliminate that category when the parties negotiated, for example, the definition of "Competitive Fenofibrate Activities." *See* Order at paragraph A.6. Abbott respectfully submits that the information now to be disclosed by Impax does not require a fourth tier that was not required as of March 2006 – especially in view of the strict limitations on the in-house counsel who has access to "Restricted Pricing Material."

The case law vigorously supports the conclusion that in-house counsel are not second-class lawyers who cannot be trusted with sensitive information. *See, e.g., Brown Bag v. Symantec Corp.,* 960 F.2d 1465, 1470 (9th Cir. 1992); *U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1468 (Fed. Cir. 1984). *See also Matsushita Elec. Industrial Co., Ltd. v. United States,* 929 F.2d 1577, 1579 (Fed. Cir. 1991). When restrictions must be placed on in-house attorneys, the restrictions are based on a counsel's duties – not the counsel's status as in-house counsel. *Sullivan Mktg., Inc. v. Valassis Communications, Inc.,* No. 93 Civ. 6350, 1994 WL 177795, at *2 (S.D.N.Y. May 5, 1994). The Delaware court routinely allows under the highest tier of a protective order at least one in-house counsel, where there are assurances that counsel's duties do not put the information at risk from "competitive decision making" or the like. *See, e.g., Affymetrix, Inc. v. Illumina, Inc.,* C.A. No. 04-901-JJF, 2005 U.S. Dist. LEXIS 15482 (7/28/05) (Citing *U.S. Steel,* Court allowed access by four lawyers of plaintiff's in-house "Litigation Unit"

The Honorable Kent A. Jordan
November 24, 2006
Page 3

to "highly confidential" information because there were "numerous safeguards" to protect the information and the lawyers did not assume a role in management or "competitive decision-making activities of the company."); *Mobius v. Acartus,* C.A. No. 05-346-SLR (letter from Court to counsel, 3/14/06) ("I allow in every case one in-house representative to view the most confidential of documents.") (Exhibit A); *BTG Int'l., Inc. v. Amazon.com,* C.A. No. 04-1264-SLR (Order 1/25/05) (While taking into account the nature of the employee's duties, "I always allow at least one employee of a party to have access to all information, including the most confidential information.") (Exhibit B).

The Order's existing provisions follow the bright line drawn by the cases between in-house counsel who are engaged in competitive decision making and in-house counsel who are not. The types of activities that are not allowed for an in-house counsel given access to "Restricted Pricing Materials" are the types of activities itemized by the courts. *See, e.g, U.S. Steel,* 730 F.2d at 1468, n.3 (which focuses on counsel's involvement in decisions relating to "pricing, product design, etc.").

Where in-house counsel are not involved in competitive decision making, courts have regularly refused to bar in-house counsel access to confidential discovery materials. *See, e.g., In re Plastics Additives Antitrust Litig.,* 2005 U.S. Dist. LEXIS 23771, at *11-12 (E.D. Pa. Aug 24, 2005) (granting in-house counsel access where no involvement in "competitive decision making"); *Caterpillar Inc. v. Detroit Diesel Corp.,* 1996 U.S. Dist. LEXIS 20575, at *8-*9 (N.D. Ill. Jan. 5, 1996) (same); *Amgen, Inc. v. Elanex Pharm. Inc.,* 160 F.R.D. 134, 139 (E.D. Wash. 1994) (denying motion for protective order excluding confidential materials from in-house counsel where counsel was not involved in competitive decision making); *Fluke Corp. v. Fine Instruments, Corp.,* 32 U.S.P.Q. 2d 1789, 1793 (W.D. Wash. 1994) (permitting access and noting that designated counsel "is not involved in competitive decision making"); *Safe Flight Instrument Corp. v. Sunstrand Data Control, Inc.,* 682 F.Supp. 20 (D. Del. 1988) (noting that a blanket ban on in-house counsel's access to confidential information is inappropriate). Abbott has successfully opposed attempts to preclude access by its in-house counsel in two recent cases, *The Rockefeller University and Chiron Corp. v. Centocor, Inc. and Abbott Laboratories,* C.A. No. 2-04CV-168 (JTW) (W.D. Pa.) and *Therasense, Inc. and Abbott Laboratories v. Becton, Dickinson & Co.,* C.A. No. C04-2123 (MJJ) (N.D. Cal.).

The "Restricted Pricing Material" category already strikes the appropriate balance between protecting the information to be produced by Impax and avoiding impairment of Abbott's full participation in its own defense. Abbott therefore respectfully submits that the Order should be revised to include in the "Restricted Pricing Material" category the documents that will be produced by Impax pursuant to the Court's November 14 order.

Respectfully,

*/s/ Mary B. Graham*

Mary B. Graham (#2256)

MBG/dam
cc:    Clerk of the Court (via hand delivery and electronic filing)
       All Counsel of Record (via e-mail)
546822

A

## UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

**CHAMBERS OF**
**SUE L. ROBINSON**
**CHIEF JUDGE**

**LOCKBOX 31**
**844 KING STREET**
**U.S.COURTHOUSE**
**WILMINGTON, DELAWARE 19801**

March 14, 2006

Kurt Michael Heyman, Esq.
Proctor Heyman LLP
1116 West Street
Wilmington, DE 19801

Mary B. Graham, Esq.
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

> **Re: Mobius Management Systems, Inc. V. Acartus, Inc.,**
> **Civ. No. 05-346-SLR**

Dear Counsel:

I am in receipt of the February 7, 2006 letter sent by
plaintiff concerning the protective order. I allow in every case
one in-house representative to view the most confidential of
documents. If the parties to this case cannot agree on the
individuals to have such access, I will schedule a hearing to
have the proposed individuals come to court and answer inquiries,
under oath, about their ability and intent to abide by the
protective order.

The appropriate response to this letter, if the parties are
unable to resolve their dispute, is an email to my civil account
requesting a hearing.

Cordially,

Sue L. Robinson

cc: Clerk of Court

B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BTG INTERNATIONAL, INC.,      )
                              )
          Plaintiff,          )
                              )
     v.                       )   Civ. No. 04-1264-SLR
                              )
AMAZON.COM, et al.,           )
                              )
          Defendants.         )

O R D E R

At Wilmington this 25th day of January, 2005, having reviewed the proposed protective order and the parties' submissions relating to it (attached hereto as exhibits);

IT IS ORDERED that:

1. **Access to confidential information by employees.** I always allow at least one employee of a party to have access to all information, including the most confidential information. I am not comfortable, however, with the employees identified by plaintiff, at least without a hearing and more information. Therefore, unless the parties can agree on one BTG employee (usually an employee who does not prosecute patents and who is not a business or technical employee), I will conduct an evidentiary hearing on **Tuesday, February 1, 2005 at 3:00 p.m.** in courtroom 6B of the Federal Building, to hear from the designated

employees in order to determine their suitability to have the access requested. Each party shall have forty-five minutes to conduct their respective examinations.

      2.  **Access to source code.**  Absent agreement among the parties, the following procedures shall apply to ensure secure access to source code:

      a.  A single electronic copy of source code or executable code shall be made available for inspection on a stand-alone computer.

      b.  The stand-alone computer shall be password protected and supplied by the source code provider.

      c.  The stand-alone computer shall be located with an independent escrow agent, with the costs of such to be shared by the parties.  If the parties cannot agree on such an agent, each party shall submit to the court the name and qualifications of their proposed agents for the court to choose.

      d.  Access to the stand-alone computer shall be permitted, after notice to the provider and an opportunity to object, to two (2) outside counsel representing the requesting party and two (2) experts retained by the requesting party, all of whom have been approved under the protective order in place. No one from the provider shall have further access to the computer during the remainder of discovery.

      e.  Source code may not be printed or copied

without the agreement of the producing party or further order of
the court.


_____
United States District Judge

EXHIBIT D

# Morris James LLP

Mary B. Matterer
302.888.6960
mmatterer@morrisjames.com

November 30, 2006

**VIA E-FILING & HAND DELIVERY**

The Honorable Kent A. Jordan
USDC for the District of Delaware
844 King Street
Wilmington, DE  19801

Re:     *Abbott Labs., et al. v. Impax Labs., Inc.*, C. A. No. 03-120 KAJ (consolidated)

Your Honor:

    We are writing on behalf of Impax Laboratories in response to the belated submission by Abbott Laboratories on November 24, 2006 relating to revisions to the protective order ordered by the Court on November 14 regarding protecting Impax's highly competitively sensitive information.

**A.     Abbott has twice foregone the chances to challenge an Outside Counsel Only Category and cannot object to it now.**

    When the Court ordered the creation of a true outside counsel only category at the November 14 hearing, Abbott's counsel were present by phone and had the opportunity to object to that category.  They did not, nor had they ever addressed this issue previously.  The existence of an outside counsel only category is an issue the Court has already decided.  Abbott is seeking reconsideration on an issue where it raised no prior objection.

    Moreover, after the hearing, counsel for Impax and Fournier had extensive meet and confers and worked in good faith to resolve several areas of disagreement, leaving just one issue for the Court to address.  Abbott chose not to participate in those meet and confers, leaving the impression that Fournier had the proxy to act for Abbott on this issue.

    That impression was confirmed when Abbott *joined* the letter sent in by Fournier's counsel on Tuesday, Nov. 21 regarding the dispute on the scope of the outside counsel only category.  Nothing in this letter suggested that Abbott objected to a true outside counsel only category.  To the contrary, by joining that letter, which addresses the scope of an outside counsel category without disputing the need for the category, Abbott again gave up—for a second time— the right to challenge an outside counsel only category.  Abbott first raised its concern about having a true outside counsel only category in a Nov. 24 letter—the Friday after Thanksgiving— 10 days after the Court's original ruling on this issue.

Morris James LLP

**B.    The Restricted Pricing Materials category does not adequately protect the type of Impax confidential information the Court ordered produced at the Nov. 14 hearing.**

The nature of the information to be produced is described in Impax's Nov. 21 letter; it includes sensitive data about present and future products other than fenofibrate, strategic plans, and the company's business model generally.  This is the type of information that Abbott's counsel has referred to as the "keys to the kingdom."

The restrictive pricing materials category was never intended to cover information that sensitive. Rather, it is a limited category intended to protect price (and related marketing) information.  In-house counsel could qualify to receive material covered by the restricted pricing information category *while still being involved in strategic decisions*—e.g. whether to make a product, how much to make, or to replace it—about products that compete with the ones discussed in the documents Impax will produce.  Indeed, part of what Impax will produce involves 1-year and 5-year manufacturing plans across all products and has nothing to do with pricing or marketing.  The restrictive pricing materials category was not intended to and will not adequately protect that information.[1]

Indeed, the order from Judge Robinson that Abbott cites itself provides for a true outside counsel only category, contrary to Abbott's suggestion. In the order attached as Exhibit B to Abbott's letter, Judge Robinson ordered that source code could be disclosed only to outside counsel or retained experts of the requesting party.  The information regarding Impax's present and planned products that Abbott and Fournier seek is as sensitive to a pharmaceutical company as source code is for an internet company.  In another order, Judge McKelvie ordered an outside counsel only category for source code as well.  Ex. A, at 7.  Furthermore, Judge McKelvie's order also provides for an outside counsel category for other materials, where the producing party makes a showing that such protection is necessary.  Ex. A, at 6.  Here, the Court has already determined that outside counsel only protection is appropriate for the narrow category of materials that will provide information about Impax products other than fenofibrate.

For all these reasons, Impax respectfully requests that the Court not modify its November 14 ruling requiring an outside counsel only category, if Impax is—as the Court has ordered—required to produce information about non-fenofibrate products.

Respectfully,

*Mary Matterer*

Mary B. Matterer

cc:    All counsel (via e-mail)

---

[1] The cases cited by Abbott that dealt with in-house counsel not involved in competitive decision making are inapposite. As explained above, the restricted pricing materials category does allow counsel involved in competitive decision making to receive the information, just not counsel involved in marketing, pricing, or communicating with customers regarding pricing or contracts.

A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RECEIVED
JAN 14 2002
B.R.C.M. LLP

NCR CORPORATION,                    )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Civil Action No. 01-0169-RRM
                                    )
PALM, INC. and HANDSPRING, INC.,    )
                                    )
            Defendants.             )

## PROTECTIVE ORDER

Whereas, the parties in the above-captioned action believe that discovery may involve the disclosure of confidential, trade secret, proprietary, technical, scientific, business, or financial information of a party or of a non-party;

Whereas, the parties desire to establish a mechanism to protect the disclosure of such information in this section;

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, IT IS HEREBY ORDERED THAT:

1.    **Definitions:** For purposes of this Protective Order, the following definitions shall apply:

(a)    The term "DOCUMENT" shall include without limitation any records, exhibits, reports, samples, transcripts, video or audio recordings, affidavits, briefs, summaries, notes, abstracts, drawings, company records and reports, answers to Interrogatories, responses to requests for admissions, or motions, including copies or computer-stored versions of any of the foregoing.

(b)    The term "DISCLOSING PARTY" is defined herein as any party or non-party who is requested to produce or produces documents or testimony containing confidential information.

(c)    The term "CONFIDENTIAL INFORMATION" is defined herein as information that the disclosing party in good faith believes is information not publicly known that would be valuable to the disclosing party's actual and potential competitors and that the

disclosing party would not normally reveal to third parties without an agreement to maintain it in confidence.

(d)     The term "HIGHLY CONFIDENTIAL INFORMATION" is defined herein as information the disclosure of which the disclosing party in good faith believes would cause harm to the competitive position of the disclosing party.

(e)     "CONFIDENTIALITY LEGEND" is defined herein as a label placed upon material that contains either confidential or highly confidential information and clearly designates the information as such, pursuant to the provisions of this Order.

(f)     "COURT" is defined herein as encompassing the trial court that issued this Order and any appellate court that hears this action on appeal.

(g)     "OUTSIDE COUNSEL" is defined herein as being limited to outside counsel who have been retained by a party to this Order as counsel of record in this litigation, including attorneys employed by their law firms, and who are not in-house employees of any party to this Order.

(h)     "SUPPORT STAFF" is defined herein as permanent employees of counsel for the parties, including paralegals, clerical personnel and secretarial personnel.

(i)     "LITIGATION   SUPPORT   SERVICES"   is   defined   herein   as encompassing without limitation copy services, document production services, exhibit-making services, translation services, coding services, scanning services, animation services, jury consultants and mock jurors.

(j)     "IN-HOUSE COUNSEL" is defined herein as including any attorneys, paralegals or other legal professionals that are in-house employees of a party, whether on a salary, hourly, contract or other basis.

2.     **Designating Information**: If, in the course of this litigation, a party to this Order undertakes to disclose or is caused to disclose what the disclosing party in good faith contends is confidential or highly confidential information, that party may designate such information as such by applying to the material that contains the information the appropriate confidentiality legend. Any information so designated shall thereafter be treated pursuant to the appropriate terms of this Order.

2

(a) **Designating Confidential Information.** If the disclosing party contends in good faith that the information to be disclosed is confidential information, then the following confidentiality legend shall be affixed:

CONFIDENTIAL

(b) **Designating Highly Confidential Information:** If the disclosing party contends in good faith that the information to be disclosed is highly confidential information, then the following confidentiality legend shall be affixed:

HIGHLY CONFIDENTIAL

(c) If any confidential or highly confidential information cannot be labeled with the appropriate confidentiality legend, it shall be placed in a sealed envelope or other container that is in turn marked with the appropriate confidentiality legend, or else designated as "confidential information" or "highly confidential information" in a manner agreed upon by the disclosing and requesting parties.

(d) **Initial Inspections of Materials:** In the event materials are to be subject to an initial inspection, e.g., in order for the requesting party to decide whether to copy all or only parts of a production, the materials shall be treated as containing "highly confidential information" for purposes of the initial inspection, thereby limiting those who may conduct such an initial inspection to those permitted by Paragraph 4 to view highly confidential information. After the initial inspection, the disclosing party may designate the inspected materials as "confidential information" or "highly confidential information," with the appropriate confidentiality legend.

(e) **Inspections of Property, etc.:** If a disclosing party believes in good faith that the inspection, measuring, testing, sampling, or photographing of its processes, products, equipment, premises, or other property, pursuant to Federal Rule of Civil Procedure 34, will reveal or disclose confidential or highly confidential information, then the disclosing party shall advise the requesting party that the inspection, measuring, testing, sampling, or photographing will be permitted only on a confidential or highly confidential basis, as appropriate. In such an event, the inspection, measuring, testing, sampling, or photographing may only be performed by those permitted to have access to confidential or highly confidential information, as appropriate, under this Order, and information derived from such activities shall be treated as confidential or highly confidential information, as appropriate.

3

(f)     **Depositions:** All deposition testimony will be considered as being initially designated as "CONFIDENTIAL" unless, during the deposition, counsel for the deponent or for the party designates a portion of the deposition "HIGHLY CONFIDENTIAL." Accordingly, other than the deponent, only those persons authorized to have access to "CONFIDENTIAL" information under this Protective Order shall be permitted to be in attendance at any deposition and only those authorized to have access to "HIGHLY CONFIDENTIAL" information shall be permitted to attend the portions of the deposition designated as "HIGHLY CONFIDENTIAL." Subsequent to the expiration of thirty (30) calendar days following receipt by counsel of record for each party of the transcript of any deposition, said transcript shall be automatically reclassified and re-designated as being "CONFIDENTIAL" (but not "HIGHLY CONFIDENTIAL"), except as to such sections of the deposition transcript that the deponent, counsel for the deponent or counsel for a party designates in writing to all counsel of record within said thirty (30) day period as being "HIGHLY CONFIDENTIAL" or de-designates from being "CONFIDENTIAL." A party so designating a portion of the testimony may also request that the affected portions be bound separately from the rest of the transcript.

(g)     **Deposition Exhibits:** An exhibit to a deposition shall be treated in accordance with the confidentiality designation already given to it or, if the exhibit has not been previously produced, given to it on the record at the time of the deposition. An exhibit to a deposition shall not lose its confidentiality designation upon the expiration of the thirty (30) day period from the receipt of the deposition transcript, except as otherwise provided by this Order. Notwithstanding the foregoing, nothing prevents a party to this Order or the deponent within thirty (30) days from the receipt of the deposition transcript from designating an exhibit as "confidential" or "highly confidential," in accordance with the terms of this Order.

(h)     **Inadvertent Failure to Designate:** If a party to this Order inadvertently fails to designate information as "confidential" or "highly confidential" such failure shall not constitute a waiver of the disclosing party's right to so designate such information. In the event that such an inadvertent failure occurs, the disclosing party shall upon discovery of the inadvertent failure promptly notify in writing to all parties known to have received the information in question, and provide them with appropriately marked substitute copies of the affected information. Until a receiving party receives such notification, any disclosure made by that party of the information to those not permitted by this Order to have access to the

4

information shall not constitute a violation of this Order. However, upon receiving such notification, the receiving party shall request all parties to whom the information was disclosed by the receiving party but who are not permitted to have access to such information under the terms of this Order to return the information to the producing party, and/or request that such parties sign a Declaration and Acknowledgement with this Order (attached hereto as Exhibit A), depending upon the designation. The receiving party shall also destroy all copies of the incorrectly labeled information and replace them with the substitute copies provided by the disclosing party.

3.   **Persons Permitted to Access Confidential Information:** Access to information that has been designated as "confidential information" shall be limited to the following persons:

(1)   The Court and its support staff and other authorized Court personnel;

(2)   Outside counsel representing a party to this Order and their support staff;

(3)   No more than four (4) in-house attorneys of a party to this Order who have primary litigation management responsibility for this case, and their support staff, such in-house attorneys of a party shall be identified to the other parties in this litigation prior to their access to Confidential Information;

(4)   Stenographers and videographers who take, record or transcribe testimony in this litigation, either at deposition or at a hearing or trial, to the extent necessary to carry out their services, provided that they first sign the Certificate of Confidentiality (attached hereto as Exhibit B);

(5)   Litigation support services, as defined in paragraph 1, to the extent necessary to carry out their services, provided that they first sign the Certificate of Confidentiality (attached hereto as Exhibit B);

(6)   Witnesses, either at trial or at deposition, provided that they first sign the Declaration attached hereto as Exhibit A;

(7)   Independent experts or consultants retained by outside counsel for assistance in connection with this litigation who qualify under the requirements of paragraph 9 below, and their support staff.

4.   **Persons Permitted to Access Highly Confidential Information:** Access to information that has been designated as "highly confidential information" shall be limited to those referenced in paragraph 3 above, except that such "highly confidential information" will be restricted to no more than two (2) in-house attorneys of a party to this Order, who have primary

litigation management responsibility for this case. Such in-house attorneys of a party shall be identified to other parties in this litigation prior to their access to Highly Confidential Information.

5.    In addition, any individual may be shown a given document that contains confidential or highly confidential information, provided:

(1)    The document indicates that the individual is either an author or unauthorized recipient of the document;

(2)    The individual is a current officer, director, employee of the same disclosing party that designated the document as confidential or highly confidential;

(3)    The individual has been designated as a witness, pursuant to Federal Rule of Civil Procedure 30(b)(6), by the same party that designated the document as confidential or highly confidential; or

(4)    The individual is a former officer, director or employee of the same party that designated the document as confidential or highly confidential, and it appears from the face of the document or from other proof that the individual had access either to the document or to the information it contains, at the time of his or her employment.

6.    **Highly Confidential and Restricted Information**

In the event the disclosing party contends in good faith that a document (excluding Restricted Electronic Media as defined in paragraph 7 below), is of such a highly confidential nature that it cannot be disclosed to in-house attorneys for a party to this Order ("Highly Confidential and Restricted Information"), the disclosing party shall produce the document containing the allegedly Highly Confidential and Restricted Information; however, access to the document shall be limited to those individuals identified in paragraph 3(1), (2), (4), (5), (6) and (7). Unless the disclosing party moves the Court for a protective Order seeking to maintain the information as "Highly Confidential and Restricted" within five (5) days of its production, the document allegedly containing the Highly Confidential and Restricted Information shall become "Highly Confidential Information," with its access governed by paragraphs 4 and 5, above. The burden of proof shall be on the disclosing party to show that the Highly Confidential and Restricted Information designation is appropriate. Until the matter is resolved by the parties or the Court, the information in question shall continue to be treated as Highly Confidential and Restricted Information.

7.    **Source code:** A party or non-party may specially designate source code and other similar highly sensitive source-code materials (whether in electronic or hardcopy form) as "Highly Confidential Restricted Electronic Media" ("Restricted Electronic Media"). Such materials shall be treated as being "Highly Confidential" information and shall also be subject to the following additional restrictions on access, copying, and use:

(a)    Access to Restricted Electronic Media shall be limited to those individuals identified in Paragraph 3(1), (2), (4), (5), (6), and (7) ("Authorized Individuals");

(b)    The Authorized Individuals for the requesting party may use a total of no more than two copies of each Restricted Electronic Media produced to the requesting party;

(c)    The Authorized Individuals for the requesting party shall not make any additional copies of any Restricted Electronic Media produced to the requesting party;

(d)    The Authorized Individuals for the requesting party may use each Restricted Electronic Media produced to the requesting party on no more than two stand alone, non-networked, locked PCs at any one time;

(e)    All copies of the Restricted Electronic Media shall be kept in a locked room or file cabinet when not in use;

(f)    Use of the software provided on the Restricted Electronic Media shall be password protected;

(g)    The Authorized Individuals for the requesting party shall inform any of its employees having access to the Restricted Electronic Media of its limitations, duties, and obligations regarding nondisclosure and limiting copying thereof and shall obtain or have obtained such employees' written agreement to comply with such limitations, duties, and obligations;

(h)    The requesting party shall notify the disclosing party in writing of the identities of any authorized individual who has accessed the Restricted Electronic Media, and shall maintain a log of which of the two copies of the Restricted Electronic Media such authorized individual has accessed, together with copies of each such authorized individual's written agreement to comply with the terms;

(i)    Upon reasonable notice, the disclosing party may request such records;

(j)    The source code will be used only for purposes of this particular litigation and not for any other purpose;

(k)    The independent experts or consultants who access the source code shall execute an undertaking of Exhibit C;

(l)    The requesting party may not produce the source code received from one producing party to the other party;

(m)    Any hard copy made of the source code shall be marked "Highly Confidential – Restricted Electronic Media; and

(n)    No portion of the source code may be copied onto a removable electronic media.

**8.    Handling of Documents Produced Prior to Entry of This Order:**

**(a)    Documents Previously Designated As Confidential:**

All documents designated prior to the date of entry of this Order as "Confidential" shall become "Confidential Information," and access to such information shall be governed by paragraph 3, above.

**(b)    Documents Previously Designated As Highly Confidential:**

All documents designated prior to the date of entry of this Order in accordance with Local Rule 26.2 of the District Court for the District of Delaware or otherwise restricted to Outside Counsel only shall become "Highly Confidential Information," and access to such information shall be governed by paragraph 4, above, unless the disclosing party moves the Court for a protective order seeking to designate the information as "Highly Confidential and Restricted" within five (5) days of the date of entry of this Order. Pursuant to paragraph 6, above, the burden of proof shall be on the disclosing party to show that the Highly Confidential and Restricted Information designation is appropriate. Until the matter is resolved by the parties or the Court, the information in question shall continue to be treated as Highly Confidential and Restricted Information.

**9.    Procedure for Qualifying Independent Experts and Consultants:** In order for an independent expert or consultant to be permitted access to confidential or highly confidential information, the counsel of the party employing the expert or consultant must notify by facsimile the disclosing party or parties, at least ten (10) days before allowing such access.

**(a)    Contents of the Written Notification:** Such written notice shall include the following:

(1)　　The name of the expert or consultant;

(2)　　The present employer and title of the expert or consultant;

(3)　　A copy of a declaration (attached hereto as Exhibit A) signed by the expert or consultant that states that the expert or consultant has read and understood the terms of this Order and agrees to be bound but its terms;

(4)　　For technical experts and consultants, a current curriculum vitae that lists all employers and clients to whom the expert or consultant has provided services in the past five (5) years.

(b)　　**Objections by Disclosing Parties:** Before the ten (10) day period from the receipt of the written notification has expired, a disclosing party may object by facsimile to the disclosure of confidential or highly confidential information to the expert or Consultant in question. Should a disclosing party so object, no confidential or highly confidential information shall be disclosed to the expert or consultant in question until the objection has been resolved by the parties or by the Court.

10.　　**Storage and Custody:**

(a)　　**Storage and Custody of Confidential and Highly Confidential Information:** Counsel for each party to this Protective Order shall take reasonable precautions to prevent the unauthorized or inadvertent disclosure of any information designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" under this Protective Order.

11.　　**Copying Designated Information:** Copies of confidential and highly confidential information may be made only to the extent reasonably necessary to prepare work product or conduct proceedings in this litigation. This includes, but is not limited to, such things as making photocopies, and storing digital images of the documents in a reasonably secure manner and the coding and retrieval of the same.

12.　　**Information in the Public Domain:** A disclosing party shall use reasonable care to avoid designating any information as "confidential" or "highly confidential" that is generally available to the public, for example:

(1)　　Information in the public domain at the time of disclosure;

(2)　　Information that becomes part of the public domain through no fault of the receiving party;

(3)　　Information that was lawfully in the possession of the receiving party at the time of the disclosure;

9

(4)     Information that is at any time lawfully disclosed to the receiving party by a third party having the right to make such disclosure under no obligation of secrecy; or

(5)     Information that is at any time independently developed by the receiving party without use of or reliance upon any information designated as either confidential or highly confidential.

13.     **Disclosure of Designated Information at Hearings and Trials:** Nothing in the Protective Order shall prevent a party from using any document or information designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" during a hearing. However, such use of such document or information shall be made in camera and the document, information and transcript of that portion of the proceeding during which such use is made shall be maintained by the Clerk under seal with access thereto limited to persons entitled to access by this Protective Order. Counsel will address in the Pretrial Order how they propose to handle the use and disclosure at trial of information designated "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL."

14.     **Filing Under Seal:** Any information designated as "confidential information" or "highly confidential information" that is included with, or its contents are in any way disclosed in, any pleading, motion, deposition transcript, or other papers filed with the Clerk of the Court shall be filed in sealed envelopes, or other appropriately sealed containers, prominently marked with the following notations:

(1)     The style of the action and case number (Civil Action No. 01-169-RRM);

(2)     The name of the filing party;

(3)     An indication of the filing's contents, such as the title of the filing; and

(4)     A statement substantially similar to the following:

[HIGHLY] CONFIDENTIAL INFORMATION

SUBJECT TO COURT ORDER

THIS ENVELOPE IS NOT TO BE OPENED NOR THE CONTENTS DISPLAYED, COPIED OR REVEALED EXCEPT BY COURT ORDER OR BY THE WRITTEN AGREEMENT OF THE PARTIES

15.     **No Summaries:** Designated information shall not be disclosed or summarized, either in writing or orally, to anyone other than persons permitted to have access to such information under this Order.

10

16. **Challenging a Designation:** At any time, a party to this Order may challenge the designation of information as "confidential" or "highly confidential" by notifying the disclosing party in writing of the designation that the challenging party in good faith believes should not have been given the information in question. The parties shall then confer within five (5) business days to try to resolve the matter, and if unable to resolve the matter, may thereafter seek the Court's assistance. The burden of proof shall be on the disclosing party to show that the designation is appropriate under this Order. Until the matter is resolved by the parties or the Court, the information in question shall continue to be treated according to its designation under the terms of this Order. By failing to object to the designation of information upon its production, a party does not waive its right to object at a future time to that designation.

17. **Designation by Non-Parties:** A non-party to this litigation that produces information to any party to this litigation in connection with this litigation, whether or not pursuant to a subpoena, may avail itself of the protections afforded by this Order, provided that the non-party signs a Declaration and Acknowledgement (attached thereto as Exhibit A) stating that the non-party has read and understood this Order and agrees to be bound by its terms.

18. **Confidentiality Interests of Third Parties:** A party may refuse to produce otherwise discoverable information pursuant to a subpoena, deposition question, or discovery request, if the party is under an obligation to a third party not to disclose such information. In such an event, the objecting party shall:

(1) Promptly identify to the requesting party the name and address of each person or entity whose confidentiality interests are implicated by the discovery request;

(2) Promptly provide to the person or entity whose confidentiality interests are implicated (i) notice of its intention to disclose the information in question and (ii) a copy of this Order; and

(3) Within fourteen (14) days, produce the requested information in question in compliance with this Order, unless the person or entity whose confidentiality interests are implicated moves for or obtains a protective order in this Court within that time.

19. **No Waiver of Rights:** This Order shall not be deemed (a) a waiver of any party's or producing entity's right to object to any discovery requests on any ground; (b) a waiver of any party's right to seek an order compelling discovery with respect to any discovery requests; (c) a waiver of any party's right to object to the admission of evidence on any ground; (d) a waiver of any party's or producing entity's right to use its own documents, testimony, transcripts, and/or

11

other materials or things within its own discretion; or (e) any waiver of the attorney-client privilege or protection of the work product doctrine.

20. **Disclosure Beyond the Terms of this Order:** Nothing shall prevent disclosure beyond the terms of this Protective Order if the party designating the information as confidential consents to such disclosure in writing or on the record, or if the Court, after notice to all affected parties, orders such disclosure.

21. **Restriction on Use of Documents in Prosecution of Patent Applications**: From the date of entry of this Order or the production of confidential documents or confidential information in this litigation, whichever occurs first, until the conclusion of this litigation, no individual attorney, paralegal, expert, consultant, or patent counsel retained on behalf of a Party shall use "confidential information" or "highly confidential information" disclosed by the other Party to prosecute patent applications related to handheld computers, personal digital assistants, or smart cards. As used herein, an individual attorney or patent counsel "prosecute[s] patent applications" when that individual attorney or patent counsel drafts, amends, or revises patents or patent applications, or assists or advises in the drafting, amending, or revising of patent claims.

22. **Inadvertent Disclosure:** Should any designated information be disclosed, through inadvertence or otherwise, to any person or party in violation of this Order, then the party responsible for the inadvertent disclosure shall use its best efforts to bind such person to the terms of this Order, and shall (a) promptly inform such person of all the provisions of this Order, (b) request such person to sign the agreement in the form attached hereto as Exhibit A; and (c) identify such person immediately to the disclosing party that designated the document as confidential. The executed agreement shall promptly be served upon the disclosing party.

23. **No Effect upon State and Federal Confidentiality Laws:** The purpose of this order is to facilitate discovery in this litigation, and in no manner shall it affect the application of any state or federal law regarding confidentiality of information.

24. **Disclosure of a Party's Own Information:** The terms of this Order shall in no way affect a disclosing party's right (a) to withhold information on grounds of immunity from discovery such as, for example, the attorney/client privilege or the work product doctrine, or (b) to reveal or disclose to anyone any documents or information designated by that party as "confidential information" or "highly confidential information."

12

25.   **Final Disposition:**

(a)   **Designated Information:** Unless counsel agree otherwise in writing, within sixty (60) days of the final disposition of this action, the attorneys for the parties shall return promptly to the disclosing party or witness from whom they were obtained, all documents, other than attorney work-product, that have been designated "confidential information" or "highly confidential information," or destroy same; and return or destroy all copies made thereof, including all documents or copies provided by a receiving party to any other person. Notwithstanding the foregoing, counsel for the parties shall be permitted to retain one file copy of (1) materials created during the course of the litigation, including attorney annotations and other work product; (2) work product of non-testifying consultants/experts; (3) materials made part of the Court record, or which have been filed under seal] with the Clerk of the Court; (4) all depositions and Court transcripts, including exhibits; and (5) summaries of depositions. Such file copies must be maintained subject to the terms of this Order. A party that destroys rather than returns the documents to the producing party, shall certify in writing that the documents have been destroyed in compliance with the Order.

(b)   **Filings under Seal:** Papers filed with the Court under seal pursuant to this Order shall remain under seal with the Court for sixty (60) days after the final disposition of this action, during which period the disclosing party whose information is disclosed in the papers may retrieve the papers. After this sixty (60) day period expires, the sealed papers shall become publicly accessible.

26.   **Other Proceedings:** By entering this Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this Order that may be subject to a motion to disclose another party's information designated confidential pursuant to this Order, shall promptly notify that party of the motion so that it may have an opportunity to appear and to be heard on whether that information should be disclosed.

27.   **Retention of Jurisdiction:** This Order will remain in full force and effect unless modified by an order of the Court or by the written stipulation of the parties hereto filed with the Court. The disclosing parties reserve all rights to apply to the Court at any time, before or after termination of this action, for an order: (i) modifying this Protective Order, (ii) seeking further

protection against discovery or use of designated information, or other documents or information, or (iii) seeking further production, discovery, disclosure, or use of claimed designated information or other documents or information. Without limiting the foregoing, this Order survive and remain in full force and effect, and this Court shall retain jurisdiction to enforce all provisions of this Order, after termination of this litigation.

28.    **Inadvertent Disclosure of Privileged Information:**    If a disclosing party inadvertently discloses information that is privileged or otherwise immune from discovery, the disclosing party shall promptly upon discovery of the disclosure so advise the receiving party in writing and request that the item or items of information be returned, and if that request is made, no party to this action shall thereafter assert that the disclosure waived any privilege or immunity, It is further agreed that the receiving party will return or destroy the inadvertently produced item or items of information, and all copies and derivations, within five (5) days of the receiving party's receipt of a written request for the return of the information. The party having returned the inadvertently produced item or items of information may thereafter seek production of the information in accordance with the Federal Rules of Civil Procedure.

29.    **No Liability for Innocent Disclosures:** It is understood that no person or party shall incur liability with respect to any disclosure by the receiving party of confidential or highly confidential information that was inadvertently disclosed without proper designation by the disclosing party, provided the disclosure by the receiving party occurred prior to the receipt by the receiving party of a notice of the inadvertent disclosure without proper designation.

30.    **No Admissions Intended:** Unless the parties stipulate otherwise, evidence of the existence or nonexistence of a designation under this Protective Order shall not be admissible for any purpose, nor shall the designation or acceptance of any information designated pursuant to this Protective Order constitute an admission or acknowledgment that the material so designated is in fact proprietary, confidential or a trade secret.

31.    This Protective Order is being entered without prejudice to the right of any party or other person to move the Court for modification of or relief from any of its terms.

32.    Nothing in this Order precludes any party or producing entity from seeking a further Protective Order for any particularly sensitive information as to which such party or producing entity believes this Protective Order insufficiently protects. Nothing in this Protective Order precludes any party or producing entity from seeking relief as to this Protective Order or

14

portions thereof for good cause shown. All parties are subject to the continuing jurisdiction of this Court to modify and interpret this Order.

33.     **No Waiver of Claim or Defense:** Neither the taking of any action in accordance with the provisions of this Order nor the failure to object to such action shall be construed as a waiver of any claim or defense in this action.

34.     **Retroactive Effect:** All materials produced pursuant to Delaware Local Rule 26.2 prior to entry of this Order shall be redesignated in a manner consistent with this Order within 10 (ten) court days of receipt hereto, unless such materials have already been designated in a manner consistent with this Order.

SO ORDERED this ___ day of ~~December, 2001~~. January, 2002

_____
United States District Judge

499920

15

EXHIBIT E

```
 1                 IN THE UNITED STATES DISTRICT COURT
 2                 IN AND FOR THE DISTRICT OF DELAWARE
 3                              - - -
 4   ABBOTT LABORATORIES, an Illinois  :  CIVIL ACTION
     corporation, FOURNIER INDUSTRIE   :
 5   ET SANTE, a French corporation,   :
     and LABORATORIES FOURNIER S.A.,   :
 6   a French corporation,             :
                                       :
 7                   Plaintiffs,       :
                                       :
 8            v.                       :
                                       :
 9   IMPAX LABORATORIES, INC., a       :
     Delaware corporation,             :
10                                     :  NO. 03-120 (KAJ)
                     Defendant.        :  (Consolidated)
11
                              - - -
12
                         Wilmington, Delaware
13          Friday, December 1, 2006 at 3:06 o'clock, p.m.
                       TELEPHONE CONFERENCE
14
                              - - -
15
     BEFORE:         HONORABLE KENT A. JORDAN, U.S.D.C.J.
16
                              - - -
17   APPEARANCES:
18
               MORRIS, NICHOLS, ARSHT & TUNNELL
19             BY:  MARY B. GRAHAM, ESQ.
20                  -and-
21             PATTERSON, BELKNAP, WEBB & TYLER, LLP
               BY:  THOMAS W. PIPPERT, ESQ.
22                  (New York, New York)
23                     Counsel for Abbott Laboratories
24
                              Brian P. Gaffigan
25                            Registered Merit Reporter
```

Page 2

1  APPEARANCES: (Continued)
2
3       RICHARDS LAYTON & FINGER
4       BY:  ANNE SHEA GAZA, ESQ.
            -and-
5  CADWALADER, WICKERSHAM & TAFT, LLP
        BY:  STEVEN C. SUNSHINE, ESQ., and
6           MATTHEW HENDRICKSON, ESQ.
            (Washington, District of Columbia)
7
                Counsel for Fournier Industrie et
8           Sante, and Laboratories Fournier S.A.
9
    YOUNG CONAWAY STARGATT & TAYLOR
10      BY:  JOSY W. INGERSOLL, ESQ.
            -and-
11
12  GOODWIN PROCTER LLP
        BY:  CHRISTOPHER HOLDING, ESQ.
13          (Boston, Massachusetts)
14              Counsel for Teva Pharmaceuticals
                USA, Inc.
15
16  MORRIS JAMES HITCHENS & WILLIAMS, LLP
        BY:  MARY MATTERER, ESQ.
17
            -and-
18
    KEKER & VAN NEST, LLP
19      BY:  ASIM BHANSALI, ESQ.
            (San Francisco, California)
20
                Counsel for Impax Laboratories
21
22  MURPHY SPADARO & LANDON
        BY:  JONATHAN PARSHALL, ESQ.
23          (Houston, Texas)
24              Counsel on behalf of PacifiCare Health
                Systems
25

Page 3

1  APPEARANCES: (Continued)
2
3  CHIMICLES & TIKELLIS
        BY:  A. ZACHARY NAYLOR, ESQ.
4           -and-
5  MILLER FAUCHER & CAFFERTY
        BY:  PATRICK E. CAFFERTY, ESQ.
6           (Ann Arbor, Michigan)
7               Counsel for indirect purchaser
                plaintiffs, Painters District,
8               Council No. 30, Health and Welfare
                Fund and Richard Wild
9
10  ROSENTHAL MONHAIT & GODDESS, P.A.
        BY:  JEFFREY S. GODDESS, ESQ.
11
            -and-
12
    ODOM & DES ROCHES, LLP
13      BY:  STUART DES ROCHES, ESQ.
            (New Orleans, Louisiana)
14
                Counsel for direct purchaser class
15
16  PRICKETT JONES & ELLIOTT
        BY:  ELIZABETH M. McGEEVER, ESQ.
17
            -and-
18
    HANGLEY ARONCHICK
19      BY:  JOSEPH T. LUKENS, ESQ.
            (Philadelphia, Pennsylvania)
20
                Counsel on behalf of CVS - Rite Aid
21
22              - oOo -
23        P R O C E E D I N G S
24  (REPORTER'S NOTE:  The following telephone
25  conference was held in chambers, beginning at 3:06 p.m.)

Page 4

1       THE COURT:  Hi, this is Judge Jordan.  Who do I
2  have on the line?
3       MS. GAZA:  Good afternoon, Your Honor.  This
4  is Anne Gaza on behalf of Fournier from Richards Layton &
5  Finger.  With me are I believe Steve Sunshine and Matt
6  Hendrickson.
7       THE COURT:  Okay.
8       MS. GRAHAM:  Good afternoon, Your Honor.  This
9  is Mary Graham on behalf of Abbott.  And with me on the line
10 this afternoon is Tom Pippert from Patterson Belknap in New
11 York.
12      MS. INGERSOLL:  Good afternoon, Your Honor.
13 It's Josy Ingersoll on behalf of Teva; and on the line is
14 Chris Holding from Goodwin Procter.  He is out in Chicago in
15 the blizzard.
16      MS. MATTERER:  Good afternoon, Your Honor.  This
17 is Mary Matterer on behalf of Impax; and on the line with
18 me is Asim Bhansali from the Keker and Van Nest firm in San
19 Francisco.
20      MS. McGEEVER:  Your Honor, this is Betsy
21 McGeever for certain direct purchasers.  With me is Joseph
22 Lukens who represents Rite-Aid and CVS.
23      MR. GODDESS:  Your Honor, Jeff Goddess for the
24 direct purchaser class.  With me is Stewart Des Roche.
25      MR. NAYLOR:  Your Honor, good morning.  Zack

Page 5

1  Naylor for the indirect purchaser plaintiff.  And I'm joined
2  by Pat Cafferty of Miller Faucher & Cafferty.
3       MR. PARSHALL:  Good afternoon, Your Honor.
4  Jonathan Parshall from Murphy Spadaro & Landon for
5  PacifiCare.
6       THE COURT:  Is there anybody else?
7       (Pause.)
8       THE COURT:  Okay.  Well, here we are again.
9  This time we're trying to deal with the disputes about this
10 protective order.  And the last letter I got was the one
11 that came in yesterday from Ms. Matterer.  And I guess I
12 should ask in the first instance whether counsel for Abbott
13 has anything they want to say in response to that letter.
14 And I'm turning to Abbott first.  You guys straighten me
15 out if I'm wrong but I understand that we've got a slightly
16 different position from Abbott and Fournier going into
17 this dispute and so I'll give Ms. Graham or Mr. Pippert
18 the chance to take a crack at the last submission that
19 came in and tell me why you think your position is right.
20      MR. PIPPERT:  Your Honor, this is Tom Pippert
21 speaking.  Thank you for allowing us to go forward.
22      I would like to start with an apology.  It
23 was my personal mistake this issue was not raised when we
24 were last together or in the first round of letters to
25 Your Honor.  It is my oversight not to have known Abbott's

Page 6

1    policies are about the involvement of their in-house
2    attorneys essentially function as outside counsel.
3          We do oppose the outside-counsel-only tier
4    because a party should be able to see all the documents and
5    we respectfully submit that an in-house counsel who acts
6    like an outside litigation counsel is the right person to be
7    that representative of the party.  The case law that we have
8    cited in our November 24th letter to Your Honor establishes
9    that the in-house counsel who essentially functions like
10   outside litigation counsel are entitled to the same types
11   of documents that outside litigation counsel see and none of
12   the other parties have submitted case law to the contrary.
13         Speaking specifically about Abbott's situation,
14   Abbott, I have learned now, relied very heavily on the
15   advice of its in-house counsel for its litigation strategy.
16   The documents that Impax is going to be producing are very
17   relevant to the damages claims not just of Impax, also the
18   direct purchasers damages, the end payers damages and the
19   damages of some of the individual plaintiffs like CVS.  And
20   Abbott needed to have one of its in-house counsel to be able
21   to understand the documents and participate in litigation
22   strategy concerning damages.
23         THE COURT:  Stop there, Mr. Pippert, because
24   that's the point you need to address for me.
25         MR. PIPPERT:  All right.

Page 7

1          THE COURT:  What is it that makes this
2    information -- and, in fact, why don't you tell me what it
3    is that you think this category or this type of information
4    is that we're talking about?
5          MR. PIPPERT:  When we were last with Your Honor,
6    it was explained that it was expected that this information
7    is going to have a significant relevance to the damage case
8    that is being asserted against Abbott because when Impax
9    produces these documents, they're going to learn whether
10   it could have supplied the market, and if it could, at what
11   level it could have supplied the market with fenofibrate.
12   That is going to have a cascading effect on the damage
13   claims of all of the plaintiffs.  It obviously affects
14   the Impax damages if it couldn't have supplied the market.
15   It wouldn't have had sales volume.
16         THE COURT:  All right.  Let me stop you again.
17   I just want to make sure we're all on the same page.
18         Counsel for Impax, who is speaking for Impax on
19   this call?
20         MR. BHANSALI:  Asim Bhansali, Your Honor.
21         THE COURT:  One more time, please.
22         MR. BHANSALI:  Asim Bhansali.
23         THE COURT:  Spell that for me.
24         MR. BHANSALI:  Yes, sir.  First name, A-S-I-M.
25   Last name, B-H-A-N-S-A-L-I.

Page 8

1          THE COURT:  Okay.  Mr. Bhansali; I hope I'm
2    saying your name right, sir; you tell me what is it that
3    your opponents have asked for, this category of documents,
4    that is so sensitive that it should be reserved to outside
5    counsel?  What is this slice of the world we're talking
6    about?  Tell me that with precision and why it is so
7    sensitive.
8          MR. BHANSALI:  Sure.  Your Honor, this refers
9    back to our conversation obviously that we had a few weeks
10   ago.  It is a set of documents that includes all of our
11   manufacturing production and production plans across all
12   of the company's products, not just fenofibrate.  So, for
13   instance, it would -- I mean some of the documents that
14   we're right now preparing to produce in response to the
15   Court's order of the 14th are manufacturing plans, one year
16   and five year manufacturing plans that cover all of our
17   products and ones that Teva or Abbott or Fournier may be
18   competing with.  And it's not just current products.  It
19   would also include anticipated future products.  And as
20   a result of that, the information is among the most
21   competitively sensitive information that my client has.
22         THE COURT:  All right.  Now, Mr. Pippert,
23   you have before you I hope the November 30 letter that
24   Ms. Matterer sent to me?
25         MR. PIPPERT:  I do, Your Honor.

Page 9

1          THE COURT:  And the second page of that talks
2    about why the restricted pricing material category does not
3    adequately protect the type of confidential information
4    that is anticipated being produced.  And you have heard
5    what Mr. Bhansali described here.  You need to talk to me
6    about two things.  One, why you think they're wrong in what
7    they're telling me about with the previous category for
8    restricted pricing materials was meant to cover and not
9    cover and, two, what it is that makes you say that without
10   somebody inside Abbott knowing this stuff, they just can't
11   defend this case.
12         MR. PIPPERT:  All right.  Your Honor, Impax is
13   wrong because if there is anything that needs to be tinkered
14   with the existing protective order, it would be putting more
15   restrictions on in-house counsel, not completely eliminating
16   in-house counsel.  But I would submit that that tinkering
17   is not even needed because the restricted pricing material
18   category lays out what the in-house attorney can do and not
19   do and they cannot do affecting all of the sorts of interest
20   that Mr. Bhansali was just speaking about.  As you walk
21   through page 10 of the existing protective order, you see
22   that in-house counsel cannot be involved, for any drug,
23   marketing or formulating marketing strategies, cannot be
24   involved in pricing or formulating pricing strategies
25   for any drug, cannot communicate with any customers or

Page 10

1  suppliers -- cases or sales -- of any drug. What they
2  can do is to give legal advice in order to give advice on
3  regulatory violations --
4        THE COURT: Hold on, Mr. Pippert. Do you have
5  me on speaker?
6        MR. PIPPERT: Yes, I do, sir.
7        THE COURT: You are going to have to speak up
8  for two reasons. One, it makes it difficult to interrupt
9  if I need to, but more to the point, your speakerphone is
10  cutting out occasionally and it's making it difficult for
11  the court reporter to pick you up, so please pick up the
12  handset.
13        MR. PIPPERT: I picked it up already. I
14  apologize. Would you like me to start again?
15        THE COURT: Well, why don't you go back to the
16  start of the last point you were making.
17        MR. PIPPERT: Okay. I was itemizing from page
18  10 of the existing protective order, what is the list of
19  things that the in-house attorney cannot do who will see
20  restricted price material, and that in-house attorney
21  cannot, for any drug product, not just fenofibrates but any
22  drug product, cannot be involved in marketing or formulating
23  marketing strategies, cannot be involved in pricing or
24  formulating pricing strategies and cannot be involved in
25  communicating with customers or suppliers with regards to

Page 11

1  prices or sales contracts.
2        What they can do is spelled out in the existing
3  protective order at pages 10 to 11. They can give legal
4  advice in order to advise their client on regulatory
5  violations that might arise in the marketing context;
6  statutory violations in the marketing context; fraud, false
7  advertising in the marketing context. Between what the
8  existing order says that in-house attorney cannot do and
9  what they can do, these limited things they can do. The
10  interests that Impax is talking about are fully protected.
11        In the letter that Your Honor referred me to,
12  the functions that are described are things that
13  attorneys don't do. Impax says they are concerned that an
14  attorney might be involved in how much product to actually
15  manufacture. We already eliminated with the existing
16  protective order the business people who make those sorts
17  of decisions. They're never going to see restricted pricing
18  material information.
19        THE COURT: Well, here is what I take their
20  concern to be. I take their concern to be no matter how
21  good your people are, this is information which is of such
22  an extraordinarily sensitive nature, their business plans
23  across all their product lines over a five-year time
24  horizon, that just nobody inside the company ought to have
25  the benefit of seeing it. Nobody from your shop ought to

Page 12

1  have the benefit of seeing it. That if there is information
2  in that that is genuinely relevant or important to the
3  defense of the case, that it can be somehow dealt with on a
4  basis that doesn't involve showing that raw data from inside
5  Impax to anybody inside Abbott. What is wrong with that
6  thinking? What is the logical flaw?
7        MR. PIPPERT: The logical flaw is it goes
8  against the grain of all the cases we've cited that somehow
9  you can treat in-house attorneys as if they were second
10  class citizens and were less reliable than I or Ms. Graham
11  are. Because whatever concern you would have that that
12  information could be used inappropriately by business people
13  is just as applicable to me as it is the Abbott in-house
14  attorney. The case law says we should not create second
15  class citizens of in-house attorneys.
16        THE COURT: What about the assertion --
17        MR. PIPPERT: That, Your Honor, I would submit
18  is the flaw.
19        THE COURT: How about this as a distinction with
20  a meaningful difference? That you and Ms. Graham, while you
21  get fees from Abbott, are not dependent on your livelihood
22  for Abbott. That you don't have an office next to a
23  businessperson at Abbott. That you don't run into them
24  daily at Abbott. That they don't walk by your desk at
25  Abbott? And that, accordingly, it's not a question of

Page 13

1  first class and second class citizens. It's a question of
2  human beings in entirely different settings and that those
3  settings and the distinction between the settings are
4  such that when you come talking about the most sensitive
5  information a company has got, the setting can't be ignored.
6        Now, I'm speaking in the way I understand the
7  letter from Impax to be couched in terms of this is the "key
8  to the kingdom" and I'll give them a chance to speak for
9  themselves, but given the time and the limitations that I
10  have on my time, I'm trying to shorten this up a little bit.
11  Do you have something for me that addresses that line of
12  argument and thinking which is what I understand their tact
13  to be?
14        MR. PIPPERT: Well, Your Honor, I have all of
15  the cases that are cited in our November 24th letter. The
16  cases obviously don't indicate every argument that was made
17  by the parties seeking outside-counsel's-eyes only, but I
18  think the factual distinctions Your Honor has just drawn
19  would exist in all environments and where the courts have
20  come out is that as Officers of the Court, as people who
21  have their ethical obligations, are members of the bar and
22  who signed whatever orders are required by the Court in
23  which litigation is pending, the concern that Your Honor
24  raised about passing people in the hallway are overcome
25  by the respect held for attorneys who take their ethical

Page 14

1  obligations seriously and sign the Court's protective
2  orders.
3        THE COURT: And, of course, they cite things
4  back to you from language that you put to me about -- and
5  now I'm looking at the November 21 letter, not the
6  November 30 letter, from Ms. Matterer about the dangers to
7  Abbott and Fournier. So go ahead and tell me why. Do you
8  see what I'm talking about?
9        MR. PIPPERT: I do, Your Honor. And the issue
10  is now that we've established this is relevant information,
11  that was what was established in our last telephone call, I
12  think this cuts to Your Honor's next question, why doesn't
13  and does an Abbott person have to see this relevant
14  information? And I may have been on the speakerphone before
15  when I was speaking about the cascade effect of this
16  information.
17        This will, depending on what the information
18  shows, it could cripple Impax's damages claim. The models
19  of the other plaintiffs in this case, based on what their
20  experts have said in class certification discovery, depends
21  very much on there being two or more generic products in
22  the marketplace to affect the overall price structure. If
23  Impax could not have been the second generic product in
24  the marketplace, this will have an impact on the direct
25  purchasers damage claims, on the end payers damage claims,

Page 15

1  as well as the CVS and Rite-Aid damage claims.
2        THE COURT: And the point you are making is that
3  unless somebody from inside Abbott sees that and can comment
4  on it, you folks won't be able to address that evidence?
5        MR. PIPPERT: Well, Your Honor, we won't be
6  able to describe the nature of that evidence in any detail.
7  We're the only people who can see it and can only give
8  Abbott -- no person in Abbott can know why we're giving the
9  advice we're giving. We are seeking to have one in-house
10  attorney to be able to understand why we would be giving
11  the advice we're giving on a damage strategy.
12        THE COURT: All right. Go ahead, Mr. Bhansali,
13  if you would, and you take the other side.
14        MR. BHANSALI: Okay, Your Honor. I think it
15  probably makes sense to start with the last point. Then I
16  can address the other points and would ask the Court to, if
17  it has further questions, I'd be happy to answer.
18        With respect to the last point, I think that
19  it's just not the case that the client can't be advised. I
20  think it's important to remember the argument that was made
21  for the relevance of this information, which is to say that
22  the argument was, well, we need this information about the
23  other products to understand Impax's manufacturing capacity
24  and whether the existence of these other products would
25  eliminate its ability to manufacture fenofibrate and not

Page 16

1  impact the damages model. To put all those pieces
2  together is, in all likelihood, going to require analysis
3  by counsel as well as by experts who -- and, in fact, I
4  think Ms. Reinhart is on the phone today, made the very
5  point that their experts need this information to make a
6  determination about, to offer an opinion about Impax's
7  ability to manufacture the fenofibrate. Counsel can
8  certainly advise their client about the opinions that
9  experts form or the conclusions of counsel without
10  identifying the specific products that are described in
11  these documents. And, again, I'm not trying to suggest how
12  Abbott's outside counsel should advise the in-house lawyers,
13  but simply that there is a way to provide the advice that
14  we're talking about as it relates to the relevance of these
15  documents without disclosing the actual documents themselves
16  to in-house counsel.
17        Furthermore, Your Honor, in terms of the prior
18  statements by Abbott, with all due respect, I don't think
19  those have been addressed. I mean when Abbott and Fournier
20  sought the relief not to have certain information produced
21  at all in this case, they very strongly emphasized the point
22  of the risk of disclosure even when the documents only went
23  to outside counsel. And it's very similar information. I
24  mean it's information about future products and pipelines
25  and so forth. And so, again, I think that their own

Page 17

1  position, when they were on the other side of the stick,
2  as it were, should inform the decision here.
3        THE COURT: All right. Let me hear from folks
4  for Fournier, and then I'll hear from others on the call.
5  Do you have anything you want to say in this regard?
6        MR. HENDRICKSON: Yes, Your Honor. This is Matt
7  Hendrickson from Cadwalader for Fournier, Your Honor.
8        Our position is regardless how you come out on
9  this dispute, we don't think you need any more protection
10  than is provided by outside-counsel-only designation. I
11  think the additional burdens that Impax has suggested are
12  appropriate, are unnecessary and will add difficulty for the
13  defense of our case without really providing any more
14  meaningful protection for them.
15        THE COURT: Well, what additional burdens do you
16  see them asking for? They're asking for outside counsel
17  review, and I hear Fournier saying you could live with that.
18  What are you worried about besides that?
19        MR. HENDRICKSON: Well, they're also suggesting
20  that we need to limit the number of staff inside our law
21  firm who can have any access to the document. That could
22  include secretary, night secretary, word processing people,
23  who they proposed only five people.
24        THE COURT: Oh, I'm with you. Okay. I
25  understand. Thanks.

Page 18

1    MR. HENDRICKSON: We also proposed every lawyer
2  has to be admitted pro hac and counsel of record.
3    THE COURT: Right. I understand.
4    All right. Ms. Ingersoll or whoever else is
5  speaking for Teva?
6    MR. HOLDING: Your Honor, this is Chris Holding
7  on behalf of Teva. With respect to the argument of what
8  the layer of confidentiality should be, I'm happy to rest
9  it with what Mr. Bhansali has said. After you've decided
10  that, there is a very quick and discrete follow-on issue
11  that flows from that decision that has arisen between
12  Mr. Peterman and me in the last two days, but I would like
13  to come to that only quickly and briefly after you finished
14  with this.
15    MR. PIPPERT: Your Honor, this is Tom Pippert.
16  I think we might bring up Mr. Holding's issue now, I would
17  respectfully submit, because it may affect Your Honor's
18  decision.
19    THE COURT: Go ahead.
20    MR. HOLDING: Tom, I can do that, if you would
21  like.
22    MR. PIPPERT: Okay.
23    MR. HOLDING: Your Honor, this is Chris Holding.
24  Teva has also been asked to produce documents
25  that are similar in nature to what Impax has been ordered

Page 19

1  to produce and that bear the same sensitivity, documents
2  that include our projections for the scores and literally
3  hundreds of different documents that we make. And our
4  position that is --
5    THE COURT: Hundreds of different drugs, you
6  mean?
7    MR. HOLDING: Different drugs, yes, Your Honor.
8    THE COURT: All right.
9    MR. HOLDING: And our position is if the Court
10  is going to allow a layer of production for Impax, the same
11  level of protection ought to be equally applicable to the
12  same sorts of documents that Teva is producing and, thus
13  far, Abbott has been unwilling to agree to that.
14    The second related point is this. Once this
15  issue arose and we recognized that the documents were going
16  to be responsive, we have in fact already produced some, and
17  we took the position we knew this was coming and we would
18  produce them, and given the state of the protective order
19  as it existed, we believed the only ethical choice we had
20  was to produce them on a highly confidential basis because
21  they don't fall within the language of restricted pricing
22  material. Now that we've gotten to the point where they
23  have it and we're deciding this issue, we believe it's
24  appropriate that in whatever designation you decide is
25  proper here, that we be entitled to go back to these

Page 20

1  documents that we've produced in the last few weeks and
2  redesignate them accordingly. Thus far, Abbott has told
3  us they're unwilling to allow us to do that.
4    THE COURT: Yes, you're right. We can handle
5  that pretty quick.
6    MR. HOLDING: Thanks.
7    THE COURT: I'm not undoing what has been done.
8  So if it's out there in one category, it can stay in that
9  category. But that says nothing about protection going
10  forward. We'll take that up in a moment.
11    All right. Ms. McGeever or whoever else is
12  speaking on behalf of your client, do you have a dog in this
13  fight?
14    MR. LUKENS: Your Honor, this is Joe Lukens.
15    We don't really have a dog in the fight other
16  than our concern will stem from what occurs after this
17  with subsequent production of any documents. Our position
18  relates more, Your Honor, to the schedule and our position
19  should be that if documents are produced even going forward,
20  that the schedule hold, and that means that the expert
21  reports stay when they're due both for the opening reports
22  and any responsive reports. Other than that, we don't have
23  much of a dog in the fight.
24    THE COURT: All right. Mr. Goddess or whoever
25  else is speaking on behalf of your client?

Page 21

1    MR. DES ROCHE: Good afternoon, Your Honor.
2  Stuart Des Roche. I just echo the same comments that
3  Mr. Lukens made.
4    THE COURT: Okay. Now, I know I have forgotten
5  somebody here and I apologize. It's Mr. Parshall, I
6  believe, and anybody else on behalf of your client.
7    MR. PARSHALL: Your Honor, this is Jonathan
8  Parshall. I would simply join in Mr. Lukens comments.
9    THE COURT: Okay.
10    MR. CAFFERTY: Your Honor, this is Patrick
11  Cafferty for the indirect purchaser plaintiff. And we also
12  join in those comments.
13    THE COURT: All right. Thank you very much. Is
14  there anybody else that needs to speak before I turn back to
15  Mr. Pippert?
16    MR. BHANSALI: Your Honor, this is Asim
17  Bhansali. I'm not sure of the order of these things. I
18  would like to address Mr. Hendrickson's comments about the
19  scope of the outside counsel category, but I can do that
20  whenever the Court is ready.
21    THE COURT: Well, no. I'll give you a chance
22  right now. Go ahead.
23    MR. BHANSALI: Okay, Your Honor. I just want
24  to be clear in terms of the staff issue, our position was,
25  in our meet and confer, we suggested to Fournier that if the

Page 22

1  number of staff people we proposed to allow disclosures,
2  this very limited category of material, to is insufficient,
3  that we would be happy to discuss with them a different
4  number that they would feel would sufficiently allow them
5  to do what they need to do and they never made any counter-
6  proposal. Our only concern is that we want to make sure
7  that people who are receiving just this one category of
8  information understand its sensitivity and have signed on
9  to the protective order if they're staff, and if they're
10  attorneys, that they've been admitted pro hac vice and
11  agree to be bound by the local rules and orders of the
12  Court. I think we laid that out in the letter. And I think
13  the statements that Abbott and Fournier made about the sort
14  of a risk of the secrets getting out if it's disclosed to
15  a large number of people back a year ago when they were
16  seeking protection are applicable to that issue as well.
17          THE COURT: Well, I will give you the last word,
18  Mr. Pippert, because you folks are the ones who are trying
19  to shift this off the place where we were before, so go
20  ahead.
21          MR. PIPPERT: Okay. Your Honor, I think that
22  the existing protection cover what Impax is concerned
23  about or that anyone else is concerned about and that the
24  information is not materially different from what has been
25  recognized in the legion of cases we cited. All of these

Page 23

1  parties got through the underlying patent litigations
2  without there being an outside-counsel-eyes category. The
3  case in front of Your Honor, the case in the Northern
4  District of Illinois got by without there any need for this
5  category. And what we need to do is to recognize that one
6  in-house person can honor all of the concerns that have been
7  raised by Impax.
8          And this is a different argument than the one
9  Abbott and Fournier made that were successful on the
10  relevance on what was being sought at that time by the
11  plaintiffs. Here, we're past the relevance threshold. We
12  want one person who is going to sign whatever the Court
13  requires to see these documents. And if there is any
14  tinkering that needs to be done with the existing protective
15  order, it should be in describing what that in-house
16  attorney can and cannot do in the present and the future.
17  It shouldn't be to eliminate them entirely.
18          THE COURT: All right.
19          MR. HENDRICKSON: Your Honor, this is Matt
20  Hendrickson. Would you like me to address Mr. Bhansali's
21  comments?
22          THE COURT: Let's see. No, I think I've got
23  everybody's positions pretty well in mind here.
24          Now, let me start by noting I spent five
25  years as an in-house counsel myself so I have a whole

Page 24

1  lot of respect for folks who work in the in-house legal
2  departments. But at the end of the day, Mr. Pippert, I
3  just disagree with your position. Maybe that puts me on the
4  other side of legions of cases, but I'm satisfied when you
5  ask for the most sensitive documents you can possibly get
6  from a company, you ought to expect they're not going to
7  want anybody from inside the company, no matter what title
8  they carry, to see it if it's not absolutely necessary.
9  That is not an unreasonable position.
10          And, you haven't persuaded me that it's
11  absolutely necessary for anybody inside Abbott to see this
12  set of documents, which sounds to me like it is indeed the
13  most sensitive documents that a pharmaceutical company has
14  it would expose and which indeed, by the statements that
15  Abbott and Fournier themselves made in previous conferences
16  with the Court, are the "keys to the kingdom." I think it's
17  ironic that those are indeed the words you guys put out there
18  in a not terribly dissimilar situation. There is nothing
19  magic about "the relevance threshold" when we're talking
20  about right now how sensitive stuff is. That has to do with
21  whether you get it at all, et cetera, but it doesn't mean
22  anything about how sensitive something is. So you guys
23  recognized this before as the ultimate in sensitive kind of
24  documentation so you're poorly positioned to say, yeah, but
25  it's not really that sensitive when it's theirs, that one

Page 25

1  of our own people can't take a look at it.
2          I think they've made an apt analogy when they
3  say it's a little like giving away the source code for a
4  software company. There is not something a lot more
5  sensitive I wouldn't think for a pharmaceutical company than
6  a layout of their product development pipeline in detail.
7  And you wanted it, I'm making them give it up, but I'm not
8  making them give it to anybody inside Abbott. You are going
9  to have apple opportunity to advise your client through the
10  conclusions of the experts that are appropriately scrubbed,
11  through your own commentary to your client, appropriately
12  scrubbed. This all is rooted in your desire to say, hey,
13  there is not manufacturing capacity so nobody in Abbott
14  needs to know what the pipeline contains with specificity
15  for you to comment to them about capacity.
16          So that's where we are. There will be an
17  outside-counsel only category for this set of documents.
18  Now, as to what that outside-counsel category ought to have
19  in the way of additional restrictions, look, I think there
20  is only one thing that Impax has said in this regard that
21  has merit, and that is if there is to be outside counsel
22  getting ahold of this, the only people that are going to get
23  ahold of this are outside counsel who are admitted pro hac
24  vice in this case so that they are clearly under my power to
25  enforce the protective order against and to impose sanctions

Page 26

1  on, should I determine that somebody acted in a way that is
2  sanctionable and people who have signed appropriate
3  undertakings who are not already working for those counsel.
4       So you don't have to make staff people sign
5  undertakings.  I'm not agreeing that that is necessary.  If
6  they're working in your firm, then presumably you've got
7  the control over them and you will recognize that if they
8  do something, you're on the hook and I think that is an
9  adequate safeguard.  If they're experts, there is already a
10 provision for them to sign an appropriate undertaking.  So
11 that is good enough for me and that is how it will stand.
12 So the one thing Impax said in this regard that I think has
13 merit is the fact that they're outside counsel alone isn't
14 enough.  They have to be outside counsel admitted in this
15 case so that if there is a problem, I can reach out and
16 touch them.
17      Okay.  Now, I think that addresses everything
18 that we needed to address today as to the folks at Teva.  I
19 agree with you if you are doing the same kind of documents,
20 you will get the same kind of protection but there is no
21 clawback.  If you gave it before, it stays in the category
22 you gave it up at.
23      And I, of course, will rely on Abbott and
24 Fournier to make sure that stuff isn't being overdesignated
25 and I'll direct Impax and Teva as expressly and implicitly

Page 27

1  and as emphatically as I can, you better make darn sure you
2  are not putting stuff in this category that doesn't belong
3  because I don't want to have to spend time parsing this and
4  arguing over things like this.  So unless you really have a
5  "keys to the kingdom" kind of document you are turning over,
6  don't designate it outside-counsel only.
7       Okay.  Does everybody understand the rulings
8  I've made with respect to this dispute?  Mr. Pippert, are
9  you on board?
10      MR. PIPPERT:  Absolutely, Your Honor.  And thank
11 you for listening to our argument on the merits.
12      THE COURT:  All right.  Mr. Bhansali, do you
13 understand?
14      MR. BHANSALI:  Yes, Your Honor.  We do.
15      THE COURT:  Okay.  Does anybody else have a
16 question or concern?
17      (Pause.)
18      THE COURT:  Hearing nothing, thanks for your
19 time.  We're done.
20      (The attorneys respond "Thank you, Your Honor.")
21      (Telephone conference ends at 3:41 p.m.)
22
23
24
25

## A

**Abbott** 1:4,23 4:9 5:12
5:14,16 6:14,20 7:8
8:17 9:10 12:5,13,21
12:22,23,24,25 14:7
14:13 15:3,8,8 16:18
16:19 19:13 20:2
22:13 23:9 24:11,15
25:8,13 26:23
**Abbott's** 5:25 6:13
16:12
**ability** 15:25 16:7
**able** 6:4,20 15:4,6,10
**absolutely** 24:8,11
27:10
**access** 17:21
**acted** 26:1
**ACTION** 1:4
**acts** 6:5
**actual** 16:15
**add** 17:12
**additional** 17:11,15
25:19
**address** 6:24 15:4,16
21:18 23:20 26:18
**addressed** 16:19
**addresses** 13:11 26:17
**adequate** 26:9
**adequately** 9:3
**admitted** 18:2 22:10
25:23 26:14
**advertising** 11:7
**advice** 6:15 10:2,2 11:4
15:9,11 16:13
**advise** 11:4 16:8,12
25:9
**advised** 15:19
**affect** 14:22 18:17
**afternoon** 4:3,8,10,12
4:16 5:3 21:1
**ago** 8:10 22:15
**agree** 19:13 22:11
26:19
**agreeing** 26:5
**ahead** 14:7 15:12 18:19
21:22 22:20
**ahold** 25:22,23
**Aid** 3:20
**allow** 19:10 20:3 22:1,4
**allowing** 5:21
**analogy** 25:2
**analysis** 16:2
**Ann** 3:6
**Anne** 2:3 4:4
**answer** 15:17
**anticipated** 8:19 9:4
**anybody** 5:6 12:5 21:6
21:14 24:7,11 25:8
27:15
**apologize** 10:14 21:5
**apology** 5:22

## B

**APPEARANCES** 1:17
2:1 3:1
**apple** 25:9
**applicable** 12:13 19:11
22:16
**appropriate** 17:12
19:24 26:2,10
**appropriately** 25:10,11
**apt** 25:2
**Arbor** 3:6
**arguing** 27:4
**argument** 13:12,16
15:20,22 18:7 23:8
27:11
**arisen** 18:11
**ARONCHICK** 3:18
**arose** 19:15
**ARSHT** 1:18
**Asim** 2:19 4:18 7:20,22
21:16
**asked** 8:3 18:24
**asking** 17:16,16
**asserted** 7:8
**assertion** 12:16
**attorney** 9:18 10:19,20
11:8,14 12:14 15:10
23:16
**attorneys** 6:2 11:13
12:9,15 13:25 22:10
27:20
**A-S-I-M** 7:24

## B

**B** 1:19
**back** 8:9 10:15 14:4
19:25 21:14 22:15
**bar** 13:21
**based** 14:19
**basis** 12:4 19:20
**bear** 19:1
**beginning** 3:25
**behalf** 2:24 3:20 4:4,9
4:13,17 18:7 20:12
20:25 21:6
**beings** 13:2
**believe** 4:5 19:23 21:6
**believed** 19:19
**Belknap** 1:21 4:10
**belong** 27:2
**benefit** 11:25 12:1
**Betsy** 4:20
**better** 27:1
**Bhansali** 2:19 4:18
7:20,20,22,22,24 8:1
8:8 9:5,20 15:12,14
18:9 21:16,17,23
27:12,14
**Bhansali's** 23:20
**bit** 13:10
**blizzard** 4:15
**board** 27:9

**Boston** 2:13
**bound** 22:11
**Brian** 1:24
**briefly** 18:13
**bring** 18:16
**burdens** 17:11,15
**business** 11:16,22
12:12
**businessperson** 12:23
**B-H-A-N-S-A-L-I** 7:25

## C

**C** 2:5 3:23
**Cadwalader** 2:5 17:7
**Cafferty** 3:5,5 5:2,2
21:10,11
**California** 2:19
**call** 7:19 14:11 17:4
**capacity** 15:23 25:13
25:15
**carry** 24:8
**cascade** 14:15
**cascading** 7:12
**case** 6:7,12 7:7 9:11
12:3,14 14:19 15:19
16:21 17:13 23:3,3
25:24 26:15
**cases** 10:1 12:8 13:15
13:16 22:25 24:4
**category** 7:3 8:3 9:2,7
9:18 20:8,9 21:19
22:2,7 23:2,5 25:17
25:18 26:21 27:2
**certain** 4:21 16:20
**certainly** 16:8
**certification** 14:20
**cetera** 24:21
**chambers** 3:25
**chance** 5:18 13:8 21:21
**Chicago** 4:14
**CHIMICLES** 3:2
**choice** 19:19
**Chris** 4:14 18:6,23
**CHRISTOPHER** 2:12
**cite** 14:3
**cited** 6:8 12:8 13:15
22:25
**citizens** 12:10,15 13:1
**CIVIL** 1:4
**claim** 14:18
**claims** 6:17 7:13 14:25
14:25 15:1
**class** 3:14 4:24 12:10
12:15 13:1,1 14:20
**clawback** 26:21
**clear** 21:24
**clearly** 25:24
**client** 8:21 11:4 15:19
16:8 20:12,25 21:6
25:9,11
**code** 25:3

**Columbia** 2:6
**come** 13:4,20 17:8
18:13
**coming** 19:17
**comment** 15:3 25:15
**commentary** 25:11
**comments** 21:2,8,12,18
23:21
**communicate** 9:25
**communicating** 10:25
**company** 11:24 13:5
24:6,7,13 25:4,5
**company's** 8:12
**competing** 8:18
**competitively** 8:21
**completely** 9:15
**CONAWAY** 2:9
**concern** 11:20,20 12:11
13:23 20:16 22:6
27:16
**concerned** 11:13 22:22
22:23
**concerning** 6:22
**concerns** 23:6
**conclusions** 16:9 25:10
**confer** 21:25
**conference** 1:13 3:25
27:21
**conferences** 24:15
**confidential** 9:3 19:20
**confidentiality** 18:8
**Consolidated** 1:10
**contains** 25:14
**context** 11:5,6,7
**Continued** 2:1 3:1
**contracts** 11:1
**contrary** 6:12
**control** 26:7
**conversation** 8:9
**corporation** 1:4,5,6,9
**couched** 13:7
**Council** 3:8
**counsel** 1:23 2:7,14,20
2:24 3:7,14,20 5:12
6:2,5,6,9,10,11,15,20
7:18 8:5 9:15,16,22
16:3,7,9,12,16,23
17:16 18:2 21:19
23:25 25:21,23 26:3
26:13,14
**counter** 22:5
**course** 14:3 26:23
**court** 1:1 4:1,7 5:6,8
6:23 7:1,16,21,23 8:1
8:22 9:1 10:4,7,11,15
11:19 12:16,19 13:20
13:22 14:3 15:2,12
15:16 17:3,15,24
18:3,19 19:5,8,9 20:4
20:7,24 21:4,9,13,20
21:21 22:12,17 23:12

23:18,22 24:16 27:12
27:15,18
**courts** 13:19
**Court's** 8:15 14:1
**cover** 8:16 9:8,9 22:22
**crack** 5:18
**create** 12:14
**cripple** 14:18
**current** 8:18
**customers** 9:25 10:25
**cuts** 14:12
**cutting** 10:10
**CVS** 3:20 4:22 6:19
15:1

## D

**D** 3:23
**daily** 12:24
**damage** 7:7,12 14:25
14:25 15:1,11
**damages** 6:17,18,18,19
6:22 7:14 14:18 16:1
**dangers** 14:6
**darn** 27:1
**data** 12:4
**day** 24:2
**days** 18:12
**deal** 5:9
**dealt** 12:3
**December** 1:13
**decide** 19:24
**decided** 18:9
**deciding** 19:23
**decision** 17:2 18:11,18
**decisions** 11:17
**defend** 9:11
**Defendant** 1:10
**defense** 12:3 17:13
**Delaware** 1:2,9,12
**departments** 24:2
**dependent** 12:21
**depending** 14:17
**depends** 14:20
**Des** 3:12,13 4:24 21:1,2
**describe** 15:6
**described** 9:5 11:12
16:10
**describing** 23:15
**designate** 27:6
**designation** 17:10
19:24
**desire** 25:12
**desk** 12:24
**detail** 15:6 25:6
**determination** 16:6
**determine** 26:1
**development** 25:6
**difference** 12:20
**different** 5:16 13:2
19:3,5,7 22:3,24 23:8
**difficult** 10:8,10

**difficulty** 17:12
**direct** 3:14 4:21,24
    6:18 14:24 26:25
**disagree** 24:3
**disclosed** 22:14
**disclosing** 16:15
**disclosure** 16:22
**disclosures** 22:1
**discovery** 14:20
**discrete** 18:10
**discuss** 22:3
**dispute** 5:17 17:9 27:8
**disputes** 5:9
**dissimilar** 24:18
**distinction** 12:19 13:3
**distinctions** 13:18
**District** 1:1,2 2:6 3:7
    23:4
**document** 17:21 27:5
**documentation** 24:24
**documents** 6:4,11,16
    6:21 7:9 8:3,10,13
    16:11,15,15,22 18:24
    19:1,3,12,15 20:1,17
    20:19 23:13 24:5,12
    24:13 25:17 26:19
**dog** 20:12,15,23
**doing** 26:19
**drawn** 13:18
**drug** 9:22,25 10:1,21
    10:22
**drugs** 19:5,7
**due** 16:18 20:21

**E**

**E** 3:5,23,23
**echo** 21:2
**effect** 7:12 14:15
**eliminate** 15:25 23:17
**eliminated** 11:15
**eliminating** 9:15
**ELIZABETH** 3:16
**ELLIOTT** 3:16
**emphasized** 16:21
**emphatically** 27:1
**ends** 27:21
**enforce** 25:25
**entirely** 13:2 23:17
**entitled** 6:10 19:25
**environments** 13:19
**equally** 19:11
**ESQ** 1:19,21 2:3,5,6,10
    2:12,16,19,22 3:3,5
    3:10,13,16,19
**essentially** 6:2,9
**established** 14:10,11
**establishes** 6:8
**et** 1:5 2:7 24:21
**ethical** 13:21,25 19:19
**everybody** 27:7
**everybody's** 23:23

**evidence** 15:4,6
**exist** 13:19
**existed** 19:19
**existence** 15:24
**existing** 9:14,21 10:18
    11:2,8,15 22:22
    23:14
**expect** 24:6
**expected** 7:6
**expert** 20:20
**experts** 14:20 16:3,5,9
    25:10 26:9
**explained** 7:6
**expose** 24:14
**expressly** 26:25
**extraordinarily** 11:22

**F**

**fact** 7:2 16:3 19:16
    26:13
**factual** 13:18
**fall** 19:21
**false** 11:6
**far** 19:13 20:2
**Faucher** 3:5 5:2
**feel** 22:4
**fees** 12:21
**fenofibrate** 7:11 8:12
    15:25 16:7
**fenofibrates** 10:21
**fight** 20:13,15,23
**Finger** 2:2 4:5
**finished** 18:13
**firm** 4:18 17:21 26:6
**first** 5:12,14,24 7:24
    13:1
**five** 8:16 17:23 23:24
**five-year** 11:23
**flaw** 12:6,7,18
**flows** 18:11
**folks** 15:4 17:3 22:18
    24:1 26:18
**following** 3:24
**follow-on** 18:10
**forgotten** 21:4
**form** 16:9
**formulating** 9:23,24
    10:22,24
**forth** 16:25
**forward** 5:21 20:10,19
**Fournier** 1:4,5 2:7,8
    4:4 5:16 8:17 14:7
    16:19 17:4,7,17
    21:25 22:13 23:9
    24:15 26:24
**Francisco** 2:19 4:19
**fraud** 11:6
**French** 1:5,6
**Friday** 1:13
**front** 23:3
**fully** 11:10

**function** 6:2
**functions** 6:9 11:12
**Fund** 3:8
**further** 15:17
**Furthermore** 16:17
**future** 8:19 16:24
    23:16

**G**

**G** 3:23
**Gaffigan** 1:24
**Gaza** 2:3 4:3,4
**generic** 14:21,23
**genuinely** 12:2
**getting** 22:14 25:22
**give** 5:17 10:2,2 11:3
    13:8 15:7 21:21
    22:17 25:7,8
**given** 13:9 19:18
**giving** 15:8,9,10,11
    25:3
**go** 5:21 10:15 14:7
    15:12 18:19 19:25
    21:22 22:19
**Goddess** 3:10,10 4:23
    4:23 20:24
**goes** 12:7
**going** 5:16 6:16 7:7,9
    7:12 10:7 11:17 16:2
    19:10,15 20:9,19
    23:12 24:6 25:8,22
**good** 4:3,8,12,16,25 5:3
    5:11 21:1 26:11
**Goodwin** 2:12 4:14
**gotten** 19:22
**Graham** 1:19 4:8,9
    5:17 12:10,20
**grain** 12:8
**guess** 5:11
**guys** 5:14 24:17,22

**H**

**hac** 18:2 22:10 25:23
**hallway** 13:24
**handle** 20:4
**handset** 10:12
**HANGLEY** 3:18
**happy** 15:17 18:8 22:3
**Health** 2:24 3:8
**hear** 17:3,4,17
**heard** 9:4
**Hearing** 27:18
**heavily** 6:14
**held** 3:25 13:25
**Hendrickson** 2:6 4:6
    17:6,7,19 18:1 23:19
    23:20
**Hendrickson's** 21:18
**hey** 25:12
**Hi** 4:1
**highly** 19:20

**HITCHENS** 2:16
**hold** 10:4 20:20
**Holding** 2:12 4:14 18:6
    18:6,20,23,23 19:7,9
    20:6
**Holding's** 18:16
**honor** 4:3,8,12,16,20
    4:23,25 5:3,20,25 6:8
    7:5,20 8:8,25 9:12
    11:11 12:17 13:14,18
    13:23 14:9 15:5,14
    16:17 17:6,7 18:6,15
    18:23 19:7 20:14,18
    21:1,7,10,16,23
    22:21 23:3,6,19
    27:10,14,20
**HONORABLE** 1:15
**Honor's** 14:12 18:17
**hook** 26:8
**hope** 8:1,23
**horizon** 11:24
**Houston** 2:23
**human** 3:12
**hundreds** 19:3,5

**I**

**identifying** 16:10
**ignored** 13:5
**Illinois** 1:4 23:4
**impact** 14:24 16:1
**Impax** 1:9 2:20 4:17
    6:16,17 7:8,14,18,18
    9:12 11:10,13 12:5
    13:7 14:23 17:11
    18:25 19:10 22:22
    23:7 25:20 26:12,25
**Impax's** 14:18 15:23
    16:6
**implicitly** 26:25
**important** 12:2 15:20
**impose** 25:25
**inappropriately** 12:12
**include** 8:19 17:22 19:2
**includes** 8:10
**indicate** 13:16
**indirect** 3:7 5:1 21:11
**individual** 6:19
**Industrie** 1:4 2:7
**inform** 17:2
**information** 7:2,3,6
    8:20,21 9:3 11:18,21
    12:1,12 13:5 14:10
    14:14,16,17 15:21,22
    16:5,20,23,24 22:8
    22:24
**Ingersoll** 2:10 4:12,13
    18:4
**inside** 9:10 11:24 12:4
    12:5 15:3 17:20 24:7
    24:11 25:8
**instance** 5:12 8:13

**insufficient** 22:2
**interest** 9:19
**interests** 11:10
**interrupt** 10:8
**involve** 12:4
**involved** 9:22,24 10:22
    10:23,24 11:14
**involvement** 6:1
**in-house** 6:1,5,9,15,20
    9:15,16,18,22 10:19
    10:20 11:8 12:9,13
    12:15 15:9 16:12,16
    23:6,15,25 24:1
**ironic** 24:17
**issue** 5:23 14:9 18:10
    18:16 19:15,23 21:24
    22:16
**itemizing** 10:17

**J**

**JAMES** 2:16
**Jeff** 4:23
**JEFFREY** 3:10
**Joe** 20:14
**join** 21:8,12
**joined** 5:1
**Jonathan** 2:22 5:4 21:7
**JONES** 3:16
**Jordan** 1:15 4:1
**Joseph** 3:19 4:21
**Josy** 2:10 4:13
**Judge** 4:1

**K**

**KAJ** 1:10
**Keker** 2:18 4:18
**KENT** 1:15
**key** 13:7
**keys** 24:16 27:5
**kind** 24:23 26:19,20
    27:5
**kingdom** 13:8 24:16
    27:5
**knew** 19:17
**know** 15:8 21:4 25:14
**knowing** 9:10
**known** 5:25

**L**

**Laboratories** 1:4,5,9
    1:23 2:8,20
**laid** 25:5
**Landon** 2:22 5:4
**language** 14:4 19:21
**large** 22:15
**law** 6:7,12 12:14 17:20
**lawyer** 18:1
**lawyers** 16:12
**layer** 18:8 19:10
**layout** 25:6
**lays** 9:18

**Layton** 2:2 4:4
**learn** 7:9
**learned** 6:14
**legal** 10:2 11:3 24:1
**legion** 22:25
**legions** 24:4
**letter** 5:10,13 6:8 8:23
11:11 13:7,15 14:5,6
22:12
**letters** 5:24
**Let's** 23:22
**level** 7:11 19:11
**likelihood** 16:2
**limit** 17:20
**limitations** 13:9
**limited** 11:9 22:2
**line** 4:2,9,13,17 13:11
**lines** 11:23
**list** 10:18
**listening** 27:11
**literally** 19:2
**litigation** 6:6,10,11,15
6:21 13:23
**litigations** 23:1
**little** 13:10 25:3
**live** 17:17
**livelihood** 12:21
**LLP** 1:21 2:5,12,16,18
3:12
**local** 22:11
**logical** 12:6,7
**look** 25:1,19
**looking** 14:5
**lot** 24:1 25:4
**Louisiana** 3:13
**Lukens** 3:19 4:22 20:14
20:14 21:3,8

**M**

**M** 3:16
**magic** 24:19
**making** 10:10,16 15:2
25:7,8
**manufacture** 11:15
15:25 16:7
**manufacturing** 8:11,15
8:16 15:23 25:13
**market** 7:10,11,14
**marketing** 9:23,23
10:22,23 11:5,6,7
**marketplace** 14:22,24
**Mary** 1:19 2:16 4:9,17
**Massachusetts** 2:13
**material** 9:2,17 10:20
11:18 19:22 22:2
**materially** 22:24
**materials** 9:8
**Matt** 4:5 17:6 23:19
**matter** 11:20 24:7
**Matterer** 2:16 4:16,17
5:11 8:24 14:6

**MATTHEW** 2:6
**McGEEVER** 3:16 4:20
4:21 20:11
**mean** 8:13 16:19,24
19:6 24:21
**meaningful** 12:20
17:14
**means** 20:20
**meant** 9:8
**meet** 21:25
**members** 13:21
**merit** 1:25 25:21 26:13
**merits** 27:11
**Michigan** 3:6
**Miller** 3:5 5:2
**mind** 23:23
**mistake** 5:23
**model** 16:1
**models** 14:18
**moment** 20:10
**MONHAIT** 3:10
**morning** 4:25
**MORRIS** 1:18 2:16
**Murphy** 2:22 5:4

**N**

**N** 3:23
**name** 7:24,25 8:2
**nature** 11:22 15:6
18:25
**Naylor** 3:3 4:25 5:1
**necessary** 24:8,11 26:5
**need** 6:24 9:5 10:9
15:22 16:5 17:9,20
22:5 23:4,5
**needed** 6:20 9:17 26:18
**needs** 9:13 21:14 23:14
25:14
**Nest** 2:18 4:18
**never** 11:17 22:5
**New** 1:22,22 3:13 4:10
**NICHOLS** 1:18
**night** 17:22
**Northern** 23:3
**NOTE** 3:24
**noting** 23:24
**November** 6:8 8:23
13:15 14:5,6
**number** 17:20 22:1,4
22:15

**O**

**O** 3:23
**obligations** 13:21 14:1
**obviously** 7:13 8:9
13:16
**occasionally** 10:10
**occurs** 20:16
**ODOM** 3:12
**offer** 16:6
**office** 12:22

**Officers** 13:20
**Oh** 17:24
**Okay** 4:7 5:8 8:1 10:17
15:14 17:24 18:22
21:4,9,23 22:21
26:17 27:7,15
**Once** 19:14
**ones** 8:17 22:18
**oOo** 3:22
**opening** 20:21
**opinion** 16:6
**opinions** 16:8
**opponents** 8:3
**opportunity** 25:9
**oppose** 6:3
**order** 5:10 8:15 9:14,21
10:2,18 11:3,4,8,16
19:18 21:17 22:9
23:15 25:25
**ordered** 18:25
**orders** 13:22 14:2
22:11
**Orleans** 3:13
**ought** 11:24,25 19:11
24:6 25:18
**outside** 6:2,6,10,11 8:4
16:12,23 17:16 21:19
25:21,23 26:13,14
**outside-counsel** 25:17
25:18 27:6
**outside-counsel's-eyes**
13:17
**outside-counsel-eyes**
23:2
**outside-counsel-only**
6:3 17:10
**overall** 14:22
**overcome** 13:24
**overdesignated** 26:24
**oversight** 5:25
**o'clock** 1:13

**P**

**P** 1:24 3:23
**PacifiCare** 2:24 5:5
**page** 7:17 9:1,21 10:17
**pages** 11:3
**Painters** 3:7
**Parshall** 2:22 5:3,4
21:5,7,8
**parsing** 27:3
**participate** 6:21
**parties** 6:12 13:17 23:1
**party** 6:4,7
**passing** 13:24
**Pat** 5:2
**patent** 3:1
**Patrick** 3:5 21:10
**Patterson** 1:21 4:10
**Pause** 5:7 27:17
**payers** 6:18 14:25

**pending** 13:23
**Pennsylvania** 3:19
**people** 11:16,21 12:12
13:20,24 15:7 17:22
17:23 22:1,7,15 25:1
25:22 26:2,4
**person** 6:6 14:13 15:8
23:6,12
**personal** 5:23
**persuaded** 24:10
**Peterman** 18:12
**pharmaceutical** 24:13
25:5
**Pharmaceuticals** 2:14
**Philadelphia** 3:19
**phone** 16:4
**pick** 10:11,11
**picked** 10:13
**pieces** 16:1
**pipeline** 25:6,14
**pipelines** 16:24
**Pippert** 1:21 4:10 5:17
5:20,20 6:23,25 7:5
8:22,25 9:12 10:4,6
10:13,17 12:7,17
13:14 14:9 15:5
18:15,15,22 21:15
22:18,21 24:2 27:8
27:10
**place** 22:19
**plaintiff** 5:1 21:11
**plaintiffs** 1:7 3:7 6:19
7:13 14:19 23:11
**plans** 8:11,15,16 11:22
**please** 7:21 10:11
**point** 6:24 10:9,16 15:2
15:15,18 16:5,21
19:14,22
**points** 15:16
**policies** 6:1
**poorly** 24:24
**position** 5:16,19 17:1,8
19:4,9,17 20:17,18
21:24 24:3,9
**positioned** 24:24
**positions** 23:23
**possibly** 24:5
**power** 25:24
**precision** 8:6
**preparing** 8:14
**present** 23:16
**presumably** 26:6
**pretty** 20:5 23:23
**previous** 9:7 24:15
**price** 10:20 14:22
**prices** 11:1
**pricing** 9:2,8,17,24,24
10:23,24 11:17 19:21
**PRICKETT** 3:16
**prior** 16:17
**pro** 18:2 22:10 25:23

**probably** 15:15
**problem** 26:15
**processing** 17:22
**Procter** 4:14
**PROCTOR** 2:12
**produce** 8:14 18:24
19:1,18,20
**produced** 9:4 16:20
19:16 20:1,19
**produces** 7:9
**producing** 6:16 19:12
**product** 10:21,22 11:14
11:23 14:23 25:6
**production** 8:11,11
19:10 20:17
**products** 8:12,17,18,19
14:21 15:23,24 16:10
16:24
**projections** 19:2
**proper** 19:25
**proposal** 22:6
**proposed** 17:23 18:1
22:1
**protect** 9:3
**protected** 11:10
**protection** 17:9,14
19:11 20:9 22:16,22
26:20
**protective** 5:10 9:14,21
10:18 11:3,16 14:1
19:18 22:9 23:14
25:25
**provide** 16:13
**provided** 17:10
**providing** 17:13
**provision** 26:10
**purchaser** 3:7,14 4:24
5:1 21:11
**purchasers** 4:21 6:18
14:25
**put** 14:4 16:1 24:17
**puts** 24:3
**putting** 9:14 27:2
**P.A** 3:10
**p.m** 1:13 3:25 27:21

**Q**

**question** 12:25 13:1
14:12 27:16
**questions** 15:17
**quick** 18:10 20:5
**quickly** 18:13

**R**

**R** 3:23
**raised** 5:23 13:24 23:7
**raw** 12:4
**reach** 26:15
**ready** 21:20
**really** 17:13 20:15
24:25 27:4

**reasons** 10:8
**receiving** 22:7
**recognize** 23:5 26:7
**recognized** 19:15 22:25
  24:23
**record** 18:2
**redesignate** 20:2
**referred** 11:11
**refers** 8:8
**regard** 17:5 25:20
  26:12
**regardless** 17:8
**regards** 10:25
**Registered** 1:25
**regulatory** 10:3 11:4
**Reinhart** 16:4
**related** 19:14
**relates** 16:14 20:18
**relevance** 7:7 15:21
  16:14 23:10,11 24:19
**relevant** 6:17 12:2
  14:10,13
**reliable** 12:10
**relied** 6:14
**relief** 16:20
**rely** 26:23
**remember** 15:20
**reporter** 1:25 10:11
**REPORTER'S** 3:24
**reports** 20:21,21,22
**representative** 6:7
**represents** 4:22
**require** 16:2
**required** 13:22
**requires** 23:13
**reserved** 8:4
**respect** 13:25 15:18
  16:18 18:7 24:1 27:8
**respectfully** 6:5 18:17
**respond** 27:20
**response** 5:13 8:14
**responsive** 19:16 20:22
**rest** 18:8
**restricted** 9:2,8,17
  10:20 11:17 19:21
**restrictions** 9:15 25:19
**result** 8:20
**review** 17:17
**Richard** 3:8
**Richards** 2:2 4:4
**right** 5:19 6:6,25 7:16
  8:2,14,22 9:12 15:12
  17:3 18:3,4 19:8 20:4
  20:11,24 21:13,22
  23:18 24:20 27:12
**risk** 16:22 22:14
**Rite** 3:20
**Rite-Aid** 4:22 15:1
**Roche** 4:24 21:1,2
**ROCHES** 3:12,13
**rooted** 25:12

**ROSENTHAL** 3:10
**round** 5:24
**rules** 22:11
**rulings** 27:7
**run** 12:23

_____ S _____

**S** 3:10,23
**safeguard** 26:9
**sales** 7:15 10:1 11:1
**San** 2:19 4:18
**sanctionable** 26:2
**sanctions** 25:25
**Sante** 1:5 2:8
**satisfied** 24:4
**saying** 8:2 17:17
**says** 11:8,13 12:14 20:9
**schedule** 20:18,20
**scope** 21:19
**scores** 19:2
**scrubbed** 25:10,12
**second** 9:1 12:9,14 13:1
  14:23 19:14
**secretary** 17:22,22
**secrets** 22:14
**see** 6:4,11 9:21 10:19
  11:17 14:8,13 15:7
  17:16 23:13,22 24:8
  24:11
**seeing** 11:25 12:1
**seeking** 13:17 15:9
  22:16
**sees** 15:3
**sense** 15:15
**sensitive** 8:4,7,21 11:22
  13:4 24:5,13,20,22
  24:23,25 25:5
**sensitivity** 19:1 22:8
**sent** 8:24
**seriously** 14:1
**set** 8:10 24:12 25:17
**setting** 13:5
**settings** 13:2,3,3
**SHEA** 2:3
**shift** 22:19
**shop** 11:25
**shorten** 13:10
**showing** 12:4
**shows** 14:18
**side** 15:13 17:1 24:4
**sign** 14:1 23:12 26:4,10
**signed** 13:22 22:8 26:2
**significant** 7:7
**similar** 16:23 18:25
**simply** 16:13 21:8
**sir** 7:24 8:2 10:6
**situation** 6:13 24:18
**slice** 8:5
**slightly** 5:15
**software** 25:4
**somebody** 9:10 15:3

**21:5 26:1
**sort** 22:13
**sorts** 9:19 11:16 19:12
**sought** 16:20 23:10
**sounds** 24:12
**source** 25:3
**Spadaro** 2:22 5:4
**speak** 10:7 13:8 21:14
**speaker** 10:5
**speakerphone** 10:9
  14:14
**speaking** 5:21 6:13
  7:18 9:20 13:6 14:15
  18:5 20:12,25
**specific** 16:10
**specifically** 6:13
**specificity** 25:14
**Spell** 7:23
**spelled** 11:2
**spend** 27:3
**spent** 23:24
**staff** 17:20 21:24 22:1
  22:9 26:4
**stand** 26:11
**STARGATT** 2:9
**start** 5:22 10:14,16
  15:15 23:24
**state** 19:18
**statements** 16:18 22:13
  24:14
**STATES** 1:1
**statutory** 11:6
**stay** 20:8,21
**stays** 26:21
**stem** 20:16
**Steve** 4:5
**STEVEN** 2:5
**Stewart** 4:24
**stick** 17:1
**stop** 6:23 7:16
**straighten** 5:14
**strategies** 9:23,24
  10:23,24
**strategy** 6:15,22 15:11
**strongly** 16:21
**structure** 14:22
**Stuart** 3:13 21:2
**stuff** 9:10 24:20 26:24
  27:2
**submission** 5:18
**submit** 6:5 9:16 12:17
  18:17
**submitted** 6:12
**subsequent** 20:17
**successful** 23:9
**sufficiently** 22:4
**suggest** 16:11
**suggested** 17:11 21:25
**suggesting** 17:19
**Sunshine** 2:5 4:5
**supplied** 7:10,11,14

**suppliers** 10:1,25
**sure** 7:17 8:8 21:17
  22:6 26:24 27:1
**Systems** 2:24
**S.A** 1:5 2:8

_____ T _____

**T** 3:19
**tact** 13:12
**TAFT** 2:5
**take** 5:18 11:19,20
  13:25 15:13 20:10
  25:1
**talk** 9:5
**talking** 7:4 8:5 11:10
  13:4 14:8 16:14
  24:19
**talks** 9:1
**TAYLOR** 2:9
**telephone** 1:13 3:24
  14:11 27:21
**tell** 5:19 7:2 8:2,6 14:7
**telling** 9:7
**terms** 13:7 16:17 21:24
**terribly** 24:18
**Teva** 2:14 4:13 8:17
  18:5,7,24 19:12
  26:18,25
**Texas** 2:23
**thank** 5:21 21:13 27:10
  27:20
**thanks** 17:25 20:6
  27:18
**theirs** 24:25
**thing** 25:20 26:12
**things** 9:6 10:19 11:9
  11:12 14:3 21:17
  27:4
**think** 5:19 7:3 9:6
  13:18 14:12 15:14,18
  15:20 16:4,18,25
  17:9,11 18:16 22:12
  22:12,21 23:22 24:16
  25:2,5,19 26:8,12,17
**thinking** 12:6 13:12
**THOMAS** 1:21
**threshold** 23:11 24:19
**tier** 6:3
**TIKELLIS** 3:2
**time** 5:9 7:21 11:23
  13:9,10 23:10 27:3
  27:19
**tinkered** 9:13
**tinkering** 9:16 23:14
**title** 24:7
**today** 16:4 26:18
**told** 20:2
**Tom** 4:10 5:20 18:15
  18:20
**touch** 26:16
**treat** 12:9

**trying** 5:9 13:10 16:11
  22:18
**TUNNELL** 1:18
**turn** 21:14
**turning** 5:14 27:5
**two** 9:6,9 10:8 14:21
  18:12
**TYLER** 1:21
**type** 7:3 9:3
**types** 6:10

_____ U _____

**ultimate** 24:23
**underlying** 23:1
**understand** 5:15 6:21
  13:6,12 15:10,23
  17:25 18:3 22:8 27:7
  27:13
**undertaking** 26:10
**undertakings** 26:3,5
**undoing** 20:7
**UNITED** 1:1
**unnecessary** 17:12
**unreasonable** 24:9
**unwilling** 19:13 20:3
**USA** 2:14
**U.S.D.C.J** 1:15

_____ V _____

**v** 1:8
**Van** 2:18 4:18
**vice** 22:10 25:24
**violations** 10:3 11:5,6
**volume** 7:15

_____ W _____

**W** 1:21 2:10
**walk** 9:20 12:24
**want** 5:13 7:17 17:5
  21:23 22:6 23:12
  24:7 27:3
**wanted** 25:7
**Washington** 2:6
**way** 13:6 16:13 25:19
  26:1
**WEBB** 1:21
**weeks** 8:9 20:1
**Welfare** 3:8
**went** 16:22
**We'll** 20:10
**we're** 5:9 7:4,17 8:5,14
  15:7,8,9,11 16:14
  19:23 23:11 24:19
  27:19
**we've** 5:15 12:8 14:10
  19:22 20:1
**WICKERSHAM** 2:5
**Wild** 3:8
**WILLIAMS** 2:16
**Wilmington** 1:12
**word** 17:22 22:17

**words** 24:17
**work** 24:1
**working** 26:3,6
**world** 8:5
**worried** 17:18
**wouldn't** 7:15 25:5
**wrong** 5:15 9:6,13 12:5

_____
**Y**
**yeah** 24:24
**year** 8:15,16 22:15
**years** 23:25
**yesterday** 5:11
**York** 1:22,22 4:11
**YOUNG** 2:9

_____
**Z**
**ZACHARY** 3:3
**Zack** 4:25

_____
**0**
**03-120** 1:10

_____
**1**
**1** 1:13
**10** 9:21 10:18 11:3
**11** 11:3
**14th** 8:15

_____
**2**
**2006** 1:13
**21** 14:5
**24th** 6:8 13:15

_____
**3**
**3:06** 1:13 3:25
**3:41** 27:21
**30** 3:8 8:23 14:6

EXHIBIT F

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PITNEY BOWES INC., a Delaware            :
Corporation,                             :
              Plaintiff,           :
                             :
     v.                                :    Civil Action No. 99-381-JJF
                             :
STAMPS.COM INC., a Delaware              :
Corporation,                             :
              Defendant.           :

## MEMORANDUM ORDER

Plaintiff, Pitney Bowes, has filed a Motion to Compel Defendant to Produce Source Code in Machine Readable Form (D.I. 86). In support of its motion, Plaintiff cites decisions by Judges Robinson and McKelvie of this Court asserting that these decisions set forth Plaintiff's entitlement to an appropriate method of production of Defendant's source code in machine readable form.

Defendant, Stamps.com, agrees that its source code as requested in machine readable form by Plaintiff is discoverable but argues that greater protection than that available under the protective order entered in this case should be required for technology information as valuable as a litigant's source code. To resolve the issue, Defendant proposes the use of a software escrow agent which Plaintiff objects to for various reasons. Plaintiff argues that the sanctions available under the protective order upon any violation are more than sufficient to address the concerns of the Defendant.

I agree with the decisions of Judges Robinson and McKelvie with some modification to comport with the facts presented here.

In resolving this dispute, I make the following findings:

1.    Plaintiff needs Defendant's source code to prove its claim of infringement.

2.    Defendant, like any litigant, should be afforded the utmost protection, within reason, when required to disclose proprietary material.

3.    Each such dispute is fact sensitive.  In this case, because computer technology is involved I believe, as the Defendant has argued, that there is a high risk of inadvertent acquisition or disclosure by and to third parties.

4.    Plaintiff's needs can be met by employing a software escrow agent with no undue hardship to Plaintiff, although perhaps some inconvenience.  In reaching this finding, I have considered the access to the source code required by Plaintiff's expert and find that the expert's work will not be impeded by the employment of an escrow agent.

In sum, I conclude that litigants are entitled to reasonable protection when required to produce proprietary material to an adversary in litigation.  The inquiry as to what is reasonable is fact sensitive and case specific requiring a court to protect the disclosure without undue hardship to the requestor.  In my view, these considerations will be balanced in this case by the production of the source code in machine readable form through an escrow agent.

NOW THEREFORE, FOR THE REASONS DISCUSSED, IT IS HEREBY ORDERED that Plaintiff's Motion to Compel Defendant to Produce Source Code in Machine Readable Form (D.I. 86) is **GRANTED**.  IT IS FURTHER ORDERED that the production by Defendant shall be through a software escrow agent.

_____                   _____
DATE                                       UNITED STATES DISTRICT JUDGE

EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ADVANCED MICRO DEVICES, INC.,<br>a Delaware corporation, and AMD<br>INTERNATIONAL SALES & SERVICE,<br>LTD., a Delaware corporation,<br><br>   Plaintiffs,<br><br>   v.<br><br>INTEL CORPORATION, a Delaware<br>corporation, and INTEL KABUSHIKA<br>KAISHA, a Japanese corporation,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 05-441-JJF |
| IN RE INTEL CORPORATION<br>MICROPROCESSOR ANTITRUST<br>LITIGATION | )<br>)<br>)<br>) | MDL No. 1717-JJF |
| Phil Paul, on behalf of himself and all other<br>similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>INTEL CORPORATION,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 05-485-JJF |

## <u>NOTICE OF HEARING RE: D.I. 109</u>

PLEASE TAKE NOTICE that the Special Master will conduct a hearing on Monday,

June 12, 2006 beginning at 10:00 a.m. to consider the Proposed Protective Order (D.I. 109) to be

entered in the above-captioned cases and the objections thereto of any party or third party

wishing to be heard.  The hearing will be conducted in Courtroom 2B of the J. Caleb Boggs

Courthouse, United States District Court for the District of Delaware, 844 N. King Street, Wilmington, Delaware 19801.  The objections of any party or third party unable to attend the hearing will be considered on their previously docketed submissions.

SO ORDERED this 2nd day of June, 2006.

_____
Vincent J. Poppiti (DSBA No. 100614)
Special Master

EXHIBIT H

Subject: Advanced Micro Devices, Inc. et al., v. Intel Corporation, et al., C.A. No. 05-441-JJF, In re Intel Corporation, C.A. No.
05-MD-1717-JJF, and Phil Paul, et al. v. Intel Corporation, C.A.
05-485-JJF
From:    "Stuhlman, Gregory E." <Stuhlman@RLF.com>
Date:    Fri, June 9, 2006 1:31 pm
To:      peter@mcmahonserepca.com
         danielkim@appro.com
         jgreen@fclaw.com
         epower@zuckerman.com
         jjjoyce@JonesDay.com
         jneiman@mofo.com
         pstern@mofo.com
         greg.call@gateway.com
         ggerst@kirkland.com
         wstreff@kirkland.com
         jhersey@sheppardmullin.com
         bpower@zuckerman.com
         mpaskin@cravath.com
         skesh@cravath.com
         mrhodes@cooley.com
         Clayton.James@Sun.com
         msundermeyer@wc.com
         pcollins@morrisjames.com
         aturan@furth.com
         john.schultz@morganlewis.com
         thoward@morganlewis.com
         robert.skitol@dbr.com
         "Alison S. Hightower" <ahightower@nossaman.com>
         "Michael P. Kelly" <mkelly@mccarter.com>
         "Karen H. Bromberg" <kbromberg@cohengresser.com>
         "Kelly K. Pierce" <kkpierce@rkmc.com>
         "Maria L. Koss" <maria.koss@bestbuy.com>
         "Brian J. Chapman" <bchapman@kentmcbride.com>
         "Howard Feller" <hfeller@mcguirewoods.com>
         "Ted Daniel" <tdaniel@jenkens.com>
         "Kathryn K. Conde" <kconde@nutter.com>
         "Brian Henri" <bdh@i.frys.com>
         "David Primack" <david.primack@dbr.com>
         "Michael J. Holston" <mholston@morganlewis.com>
         "Hayden J. Silver, III" <jaysilver@kilpatrickstockton.com>
         "J. Christopher Jackson" <jcjackson@kilpatrickstockton.com>
         "Dale A. Rice" <Dale.rice@hellerehrman.com>
         "R. Montgomery Donaldson" <rdonaldson@mmwr.com>
         "Brian T. Hansen" <bthansen@mpccorp.com>
         "Erika C. Birg" <ebirg@paulweiss.com>
         "Robert Parker" <Rparker@paulweiss.com>
         "Dean A. Morehous" <dam@thelenreid.com>
         "Heather Stern" <hstern@officedepot.com>

      "P. Benjamin Zuckerman" <zuckermanb@gtlaw.com>
      "Bill Garvey" <bgarvey@rackable.com>
      "Bruce C. Piontkowski" <bpiontkowski@ropers.com>
      "Craig Benson" <cbenson@paulweiss.com>
      "Jon Abramczyk" <jabramczyk@mnat.com>
      "Eric S. Adams" <eadams@shutts-law.com>
      "Kevin Teismann" <kevin.teismann@techdata.com>
      "George Paul" <gpaul@whitecase.com>
      "John D. Donaldson" <jdonaldson@whitecase.com>
      "Vernon Proctor" <vproctor@proctorheyman.com>
Cc:    jlholzman@prickett.com
      rhorwitz@potteranderson.com
-------------------------------------------------------------------------

<<Ltr with attachs.pdf>>

To Counsel for All Interested Third Parties:

      Re:  Advanced Micro Devices, Inc. et al., v. Intel Corporation, et al., C.A. No. 05-441-JJF, In re Intel Corporation, C.A.
No. 05-MD-1717-JJF, and Phil Paul, et al. v. Intel Corporation, C.A.
05-485-JJF

      In connection with Monday's hearing before Judge Poppiti, enclosed is a letter sent on behalf of counsel for the parties summarizing the procedures that Judge Poppiti wishes to be followed.
Also, please note that the hearing location has been changed to Courtroom 4B (Judge Farnan's courtroom).


Gregory E. Stuhlman
Richards, Layton & Finger
One Rodney Square
Wilmington, Delaware  19801
Tel: 302.651.7578
Fax: 302.498.7578


-----------------------------------------------------------
Richards, Layton and Finger, P.A. is not providing any advice with respect to any federal tax issue in connection with this matter.

The information contained in this e-mail message is intended only for the use of the individual or entity named above and may be privileged and/or confidential. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copying of this communication is strictly prohibited by law. If you have received this communication in error, please immediately notify us by return e-mail or telephone (302-651-7700) and destroy the original message. Thank you.

-----------------------------------------------------------

CHAD M. SHANDLER
DIRECTOR

**RICHARDS, LAYTON & FINGER**
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX: (302) 651-7701
WWW.RLF.COM

DIRECT DIAL
(302) 651-7836
SHANDLER@RLF.COM

June 9, 2006

**VIA ELECTRONIC MAIL**

**Re:**   ***Advanced Micro Devices, Inc., et al. v. Intel Corporation, et al.*** **C.A. No. 05-441-JJF,** ***In re Intel Corporation,*** **C.A. No. 05-MD-1717-JJF, and** ***Phil Paul, et al. v. Intel Corporation***, **C.A. 05-485-JJF**

To Counsel For All Interested Third Parties:

Special Master Vincent J. Poppiti has asked that we send this letter to you concerning the hearing on the Proposed Protective Order that will commence at 10:00AM on Monday, June 12, 2006.  While the hearing will still be held in the J. Caleb Boggs Federal Building, the room for the hearing has been changed to Courtroom 4B (Judge Farnan's Courtroom) to better accommodate those counsel who will be attending.  In addition, this is to inform you that participation by telephone will not be available.

In an effort to ensure that the hearing proceeds as efficiently as possible, the following procedure will be followed.  After all counsel have signed in and indicated which third party or parties they are representing, the Special Master has asked that counsel for the parties confer with third party counsel and prepare a chart indicating which provision(s) of the Proposed Protective Order each third party counsel wishes to address.  For your convenience, a list of provisions of the Proposed Protective Order triggering third-party objections is enclosed as Attachment A.

After the submission of third party objections, on May 31, AMD, Interim Class Counsel and Intel agreed upon and submitted a revised Proposed Protective Order that attempts to address certain of the objections received.  For your convenience, a redlined version of the revised Proposed Protective Order (that you were previously served with) is attached as Attachment B. To the extent that these revisions satisfy objections raised by third parties, this will also be indicated on the chart.  It would greatly facilitate matters if, when you arrive on Monday, you are prepared to indicate which specific provisions on Attachment A you wish to address.

Using the chart, the Special Master then proposes to proceed through each provision of

RLF1-3024519-1

June 9, 2006
Page 2

the Proposed Protective Order in the order listed on Attachment A and give each third party counsel who wishes to address that provision an opportunity to be heard.    After all third parties have been heard on a given provision, the Special Master will then hear any responses from AMD, Interim Class Counsel and Intel.

It is hoped that this process will provide some structure for the hearing and allow it to proceed efficiently, while, at the same time, giving each third party counsel an opportunity to be heard on any provisions of the revised Proposed Protective Order to which they object.

Very truly yours,

/s/ *Chad M. Shandler*

Chad M. Shandler

CS/afg
Attachments (2)

cc:     Richard L. Horwitz, Esquire (via e-mail)
        James L. Holzman, Esquire (via e-mail)

# ATTACHMENT A

## POTENTIAL ISSUES FOR PROTECTIVE ORDER HEARING

1.  Restrictions on In-House Counsel - Definition J

    a.  Adequacy of Parties' Proposed Expanded Definition

2.  Enumerated Categories of Confidential Material - Definition R

    a.  Consumer information carve-out of S and addition of Para. 6(i)

3.  Definition R.7 - Non-public Negotiations

    a.  Adequacy of Parties' Proposed Expanded Definition

4.  Definition R.10 - Trade Secrets

5.  Definition R.11 - Non-public information re: manufacturing, design or development

    a.  Adequacy of Parties' Proposed Expanded Definition

6.  Definition R.14 - Internet sites, databases and networks

    a.  Adequacy of Parties' Proposed Expanded Definition

7.  Catch-All Category/"Serious and Specific Harm" Standard - Definition R.16

8.  Sunset Provision - Definition S

9.  "Non-Public" - Definition U

    a.  Adequacy of Parties' Proposed Expanded Definition

10. Addition of Definition V

11. Use of Discovery Material - Paragraph 1

    a.  Use of Confidential Discovery Material in Japan Litigation

    b.  Use of Confidential Discovery Material in Federal Class and California Class Litigation

    c.  Use of Non-Confidential Discovery Material for Any Purpose

12. Affixing Case Number to Confidential Designation - Paragraph 4

13. Designation of Deposition Testimony - Paragraph 5

    a.  Adequacy of Parties' Proposed Revision

14. Separate Agreements - Paragraph 6 (and 15)

15. Disclosure to Experts and Consultants - Paragraph 6(b)

16. Disclosure to In-House Counsel - Paragraph 6(c)

    a.  Adequacy of Parties' Proposed Revision

17. Disclosure to Former Employees in Deposition - Paragraph 6(f)

18. Disclosure to Other Persons (based on reasonable and good faith belief) - Paragraph 6(g)

19. Production of Acknowledgement Forms to Third Parties - Paragraph 7

20. Restrictions on Attorneys (In-House and Outside Counsel) - Paragraph 8

    a.     Adequacy of Parties' Proposed Revision

21.    Storage of Confidential Discovery Material - Paragraph 9

22.    Procedure for Disclosure pursuant to Paragraph 6(f) and (g) - Paragraph 10

    a.     Adequacy of Parties' Proposed Revision

23.    Disclosure to Experts and Consultants - Paragraph 11

    a.     Adequacy of Parties' Proposed Revision

24.    Trial Exhibits - Paragraph 14

    a.     Adequacy of Parties' Proposed Revision

25.    Separate Agreements - Paragraph 15

26.    Designation Request Procedure - Paragraph 16(a)

    a.     Adequacy of Parties' Proposed Revision

27.    Application to the Court - Paragraph 16(b)

    a.     Adequacy of Parties' Proposed Revision

28.    Redaction Procedure - Paragraph 16(e)

29.    Designation of Other Parties' Confidential Material - Paragraph 17

    a.     Adequacy of Parties' Proposed Revision

30.    Production of Other Parties' Confidential Information - Paragraphs 18 and 19

    a.     Adequacy of Parties' Proposed Revision

31.    Notification of Producing Party when its Information is Requested - Paragraph 20

    a.     Adequacy of Parties' Proposed Revision

32.    Procedure for Use of Discovery Material in Japan Litigation - Paragraph 22

    a.     Adequacy of Parties' Proposed Revision

33.    Filing Confidential Discovery Material Under Seal - Paragraph 24

    a.     Adequacy of Parties' Proposed Revision (to Para. 14)

34.    Destruction Obligations upon Conclusion of Litigation - Paragraph 27

35.    Additional Protective Orders - Paragraph 31

    a.     Adequacy of Parties' Proposed Revision

36.    Inadvertent Production - Paragraphs 32 and 33

    a.     Adequacy of Parties' Proposed Revision

37.    Miscellaneous

    a.     Definition of "Disclose" - Definition T

    b.     Protection afforded Initial Designation - Paragraph 3

c.      Copying for "permitted uses" - Paragraph 12

d.      Reservation of Right to Object to Discovery

e.      Court's Retention of Jurisdiction

f.      Other

# ATTACHMENT B

**UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| ADVANCED MICRO DEVICES, INC., a Delaware corporation, and AMD INTERNATIONAL SALES & SERVICE, LTD., a Delaware corporation, | Civil Action No. 05-441-JJF |
| Plaintiffs, | |
| vs. | |
| INTEL CORPORATION, a Delaware corporation, and INTEL KABUSHIKI KAISHA, a Japanese corporation, | |
| Defendants. | |
| IN RE INTEL CORPORATION MICROPROCESSOR ANTITRUST LITIGATION | MDL No.1717-JJF |
| PHIL PAUL, on behalf of himself and all other similarly situated, | |
| Plaintiffs, | |
| vs. | |
| INTEL CORPORATION, | |
| Defendant. | |

**SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SANTA CLARA**

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE (Rule 1550(b)) | J.C.C.P. No. 4443 |
| INTEL X86 MICROPROCESSOR CASES | |

**STIPULATED CONFIDENTIALITY AGREEMENT AND [PROPOSED] PROTECTIVE
ORDER**

RLF1-3007754-1

RLF1-3019965-1

**WHEREAS**, plaintiffs Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd. and their subsidiaries, on the one hand, and defendants Intel Corporation and Intel Kabushiki Kaisha and their subsidiaries, on the other, compete in the development, manufacture and sale of microprocessors; and

**WHEREAS**, a number of third parties, many of whom are competitors in, *inter alia*, the manufacture and sale of computer systems, will be the subject of document and deposition discovery in these actions; and

**WHEREAS**, the preparation for trial of these actions may require the discovery and use of documents and other information which constitute or contain commercial or technical trade secrets, or other confidential information the disclosure of which would be competitively harmful to the producing party; and

**WHEREAS**, both party and third-party discovery will also be made available to various state and federal consumer plaintiffs who have filed putative class actions against the defendants and who have agreed to subscribe to this stipulation and order; and

**WHEREAS**, the parties anticipate that this case will involve the production of hundreds of millions of pages of documents among and between actual and potential competitors and their customers; and

**WHEREAS**, the parties agree that their interests, the interests of the customers of the corporate parties and of other non-parties that may be requested to provide discovery, and the public interest can be accommodated by a stipulation and order facilitating a timely production and appropriately limiting the use and dissemination of proprietary and competitively sensitive non-public discovery information entitled to confidential treatment;

2

**NOW THEREFORE,** the parties in the above-captioned cases, by and through their respective counsel, hereby stipulate, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, subject to approval and entry by the Court, that the following Stipulated Confidentiality Agreement and Protective Order ("Protective Order") shall govern the handling of all Discovery Material during the pendency of these litigations, as hereafter defined.

### DEFINITIONS

A.    The "AMD Litigation" means the litigation captioned *Advanced Micro Devices, Inc. et al. v. Intel Corporation et al.*, Civil Action No. 05-441-JLF, filed in the United States District Court for the District of Delaware, and all subsequent appellate or other review proceedings related thereto.

B.    The "Japan Litigation" means the litigations captioned *AMD Japan K.K. v. Intel K.K.*, Case No. Heisei 17 (Wa) No. 13151 (Tokyo Dist. Ct., 6/30/05), and *AMD Japan K.K. v. Intel K.K.*, Case No. Heisei 17 (Wa) No. 4 (Tokyo High Court, 6/30/05), and all subsequent appellate or other review proceedings related thereto.

C.    The "Class Litigation" means the various actions filed by or on behalf of putative classes of indirect purchasers of Intel microprocessors, including certain actions which have been or will be transferred to this Court by the Judicial Panel on Multidistrict Litigation under Docket No. 1717, together with all such actions originally filed in this Court.  When used to refer to proceedings in which Confidential Discovery Material subject to this order may be used, "Class Litigation" shall also include certain follow-on matters filed in various state courts asserting claims substantially the same as those asserted in the class actions comprising the MDL.

D.    The "California Class Litigation" means the actions filed by or on behalf of a putative California class of indirect purchasers of Intel microprocessors, including certain actions

3

RLF1-3007754-1

RLF1-3019965-1

which have been or will be transferred to the Honorable Jack Komar of the Santa Clara County

Superior Court by the Judicial Council for the State of California under JCCP 4443, together

with such actions originally filed in that Court.  These actions include: *Melkonians v. Intel Corp.*,

Santa Clara County Superior Court Case No. 1-05-CV-045077; *Macias v. Intel Corp.,* formerly in

the Los Angeles County Superior Court Case No. BC336897; *Toronto v. Intel Corp.,* formerly in

the San Diego County Superior Court Case No. GIC850053; *Gross v. Intel Corp.*, Santa Clara

County Superior Court Case No. 1-05-CV-053490; *Wangler v. Intel Corp.*, formerly in the Los

Angeles County Superior Court Case No. BC340460; *Pishvaee v. Intel Corp.*, Santa Clara

Superior Court Case No. 1-05-CV-053300; and any action that subsequently is made part of

JCCP 4443.

       E.     "Competition Investigation" means any investigation commenced by a duly

authorized federal, state or foreign governmental competition or antitrust agency into the

conduct of a Party prior to, or during the pendency of the AMD Litigation.

       F.     "Intel" means defendants Intel Corporation and Intel Kabushiki Kaisha, together

with their respective direct and indirect subsidiaries.

       G.     "AMD" means plaintiffs Advanced Micro Devices, Inc., and AMD International

Sales & Service, Ltd., together with their respective direct and indirect subsidiaries.

       H.     "Party" means Intel or AMD.  "Class Party" means any named plaintiff in the

Class Litigation.  "Parties" means Intel, AMD and all Class Parties.

       I.     "Outside Counsel" means the law firm(s) that are counsel of record for the

Parties in the AMD Litigation, the Japan Litigation, the Class Litigation, and the California Class

Litigation, and counsel for a Party in connection with any Competition Investigation, including

their associated attorneys, and other persons regularly employed by such law firm(s), and

temporary personnel retained by such law firm(s) to perform legal or clerical duties, or to provide

4

RLF1-3007754-1

RLF1-3019965-1

logistical litigation support; provided that no person who is or becomes a director, officer or employee of a Party shall be considered Outside Counsel.

J.     "In-House Litigation Counsel" means any attorney who is an employee in the legal department of a Party whose responsibilities consist of overseeing the AMD Litigation, the Class Litigation, the Japan Litigation, the California Class Litigation or any Competition Investigation and who shall not from the date of entry of this Protective Order through a period of one (1) year following the conclusion of the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation, whichever occurs later, be engaged in:  (a) the review and approval of competitive pricing or marketing programs; (b) the review of any aspect of microprocessor, or chipset manufacturing, (c) the filing or prosecution of patent applications, (d) the review or negotiation of any contract with a Producing Party related to the sale or marketing of microprocessors, (e) counseling in connection with PC or server manufacturing or operating system or software design or development, and (f) the licensing of Microsoft software or technology.

K.     "Japan Counsel" means the outside law firm(s) that are counsel of record for AMD or Intel in the Japan Litigation, including their associated attorneys and other persons regularly employed by such law firm(s), and temporary personnel retained by such law firm(s) to perform legal or clerical duties or to provide logistical litigation support; provided that no person who is or becomes a director, officer or employee of a Party shall be considered Japan Counsel.

L.     "Producing Party" means a Party, Class Party or Third Party that produced or intends to produce Discovery Material in the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation.  "Receiving Party" means any Party or Class Party furnished Discovery Material in the AMD Litigation, the Japan Litigation, the Class Litigation or the California Class Litigation.

| Deleted: any of the aforementioned |

| Deleted: or |
| Deleted: or |

| Deleted:  or |

5

RLF1-3007754-1

RLF1-3019965-1

M.    "Third Party" means any natural person, partnership, corporation, association, or other legal entity not named as a party to the AMD Litigation, the Japan Litigation, the Class Litigation or the California Class Litigation.

N.    "Expert/Consultant" means experts or other consultants (and their assistants and staff) who are retained to assist Outside Counsel.

O.    "Japan Expert/Consultant" means experts or other consultants (and their assistants and staff) who are retained to assist Japan Counsel in the Japan Litigation.

P.    "Document" shall have the meaning ascribed to it in Federal Rule of Civil Procedure 34(a) and shall include all "writings," "recordings" and "photographs" as those terms are defined in Rule 1001 of the Federal Rules of Evidence.  Without limiting the generality of the foregoing, "document" includes the complete original or a true, correct and complete copy and any non-identical copies of any written or graphic matter, no matter how produced, recorded, stored or reproduced, including, but not limited to, any writing, letter, envelope, telegram, meeting minute, memorandum, statement, affidavit, declaration, book, record, survey, map, study, handwritten note, working paper, chart, index, tabulation, graph, tape, data sheet, data processing card, printout, microfilm, index, computer readable media or other electronically stored data, appointment book, diary, diary entry, calendar, desk pad, telephone message slip, note of interview or communication or any other data compilation, including all drafts of all such documents.  "Document" also includes every writing, drawing, graph, chart, photograph, phono record, tape and other data compilations from which information can be obtained, and includes all drafts and all copies of every such writing or record that contain any commentary, note, or marking whatsoever not appearing on the original.

Q.    "Discovery Material" includes without limitation deposition testimony, deposition exhibits, interrogatory responses, admissions, affidavits, declarations, and Documents (whether

6

paper or electronic and whether generated or received by the party possessing them), including those produced pursuant to compulsory process or voluntarily in lieu thereof.

R.     "Confidential Discovery Material" means any Discovery Material consisting of or containing information falling into any of the following categories:

1.     Non-public pricing information;

2.     Non-public sales and marketing strategies, business plans and tactics, including product roadmaps and planned product introductions;

3.     Non-public data concerning sales, revenues, profits, margin and variances;

4.     Non-public contracts which by their terms are required to be maintained in confidence;

5.     Non-public sales budgets, forecasts, and projections;

6.     Non-public customer lists;

7.     Non-public negotiations relating to the purchase or sale of microprocessors, chipsets, PCs, servers, operating systems, software licensing agreements or any other product manufactured or sold by a Producing Party;

| | Deleted: with customers |

8.     Non-public strategic plans;

9.     Non-public data concerning costs, capacity and ROI or other similar benchmarks;

10.     Any invention, formula, pattern, compilation, program device, product design, method, technique, or process, and information relating to the same, that: (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its

RLF1-3007754-1

RLF1-3019965-1

disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy;

11.     Non-public information that concerns microprocessor, chipset, PC or server manufacturing, or operating system and software design and development, including capital expenditure plans, yields, capacity, costs, utilization, process and scale;

| Deleted: or |

12.     Non-public business or market research, whether acquired or generated internally;

13.     Confidential personnel information whether contained in HR records or otherwise;

14.     Information the disclosure of which could jeopardize the security of public or private Internet sites, confidential databases, networks or other sources of non-public information;

15.     Non-public financial information the public disclosure of which is prohibited by law or regulation or which could jeopardize the integrity of public trading of the Producing Party's securities;

16.     Other information or documents the disclosure of which the Producing Party can demonstrate would cause it serious and specific harm.

| Deleted: ¶ |

S.     In order to address potential issues relating to the passage of time on the continued confidentiality of documents, the parties agree that, except with respect to materials the disclosure of which would raise consumer privacy issues, for documents in categories R(1) though R(8) dated or prepared more than 24 months prior to a Designation Request under paragraph 16, the Producing Party must also satisfy the standard contained in paragraph R(16) for the documents to be maintained as confidential.  For purposes of this paragraph, undated materials or materials or deposition testimony relating to an indeterminate time period shall be deemed dated as of the date of their production or the date of the deposition.

8

T.     "Disclose" means producing any "Discovery Material" directly and providing any description of its contents or in any way revealing the contents of any "Discovery Material."

U.     "Non-public" documents and information are those (a) that the Producing Party maintains internally as confidential, (b) that are not disclosed to third-parties except under written agreements requiring that they be maintained in confidence, pursuant to a course of dealing whereby such communications are maintained in confidence, or under compulsory process or involuntary seizure, and (c) that the disclosure of which could damage the Producing Party competitively.

| Deleted: " |
| Deleted: " |
| Deleted: or |

V.     Time periods prescribed by this order shall be computed in accord with Federal Rule of Civil Procedure 6(a).

**TERMS AND CONDITIONS OF PROTECTIVE ORDER**

1.     Except as set forth in this Protective Order, Confidential Discovery Material, or information derived therefrom, shall be used solely by the Parties for purposes of the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation, and shall not be used for any other purpose, including, without limitation, any business or commercial purpose, or dissemination to the media.  Confidential Discovery Material that loses that designation, either by agreement of the Parties or the challenge process set out in Paragraph 16, may be used for any lawful purpose, unless such use is restricted by agreement or by the Court.

2.     Nothing in this Protective Order shall be deemed to grant or create discovery rights to any Party, Class Party or Third Party in the AMD Litigation, the Japan Litigation, the Class Litigation or the California Class Litigation in any other proceeding relating to or arising out of the subject-matter thereof, nor shall the Parties' agreement to this Protective Order

9

constitute a waiver of any rights to resist any discovery efforts that may be initiated in any other proceeding whether or not relating to or arising out of the same subject-matter.

Confidential Discovery Material

3.      Solely for the purposes of the efficient and timely production of documents, and to avoid the need for a detailed and expensive confidentiality examination of millions of Documents the disclosure of which is not likely to become an issue, a Producing Party may initially designate as "Confidential Discovery Material" any Non-public Discovery Material.  This designation shall control unless and until a Designation Request is made by a Receiving Party under Paragraph 16.

4.      Such a designation shall be made at the time of production by marking documents or other tangible Discovery Material by placing on or affixing, physically or electronically, in such manner as will not interfere with the legibility thereof, the notation "CONFIDENTIAL - MDL 1717/JCCP 4443."  Electronic or native documents or data shall be similarly marked where practicable, and where not practicable, written notification by a Producing Party that it is producing Discovery Material as Confidential Discovery Material shall suffice to require Confidential treatment.

5.      To facilitate discovery, all deposition testimony will be presumed to constitute, and all transcripts shall be treated as, Confidential Discovery Material, unless and until a Designation Request is made by a Receiving Party under Paragraph 16.  Accordingly, no deponent may refuse to answer a deposition question on the ground that the answer would disclose confidential information or information subject to a non-disclosure agreement.  Should a Receiving Party wish to disclose any deposition testimony to a person other than as permitted by Paragraph 6, it shall first make a Designation Request under the provisions of Paragraph 16.

**Deleted:** <#>Deposition testimony may be designated as Confidential Discovery Material by instructing the Court Reporter recording the testimony to designate portions of the transcript as "CONFIDENTIAL" during the deposition or within thirty (30) days after the deposition transcript is sent to the witness or his or her attorney.  Unless those attending a deposition agree at its conclusion that it may be treated as non-confidential, until the expiration of the thirty-day period, the transcript shall be treated as "CONFIDENTIAL" in its entirety under the terms of this Order unless specific designations are made earlier.  If a party claiming confidentiality makes no specific designations during the thirty-day period, no part of the deposition transcript will be considered to be subject to this Order. ¶

10

Such a request shall be made to the Party and/or Non-Party it reasonably concludes has the right to protect the information.  The provisions of Paragraph 16 shall thereafter apply.

       Access to Confidential Discovery Material

> **Formatted:** Indent: Left:  0", First line:  0.75", Tabs:  0.75", Left

     6.   Confidential Discovery Material shall not, directly or indirectly, be disclosed or otherwise provided to anyone except to:

    (a)   Outside Counsel;

    (b)   Experts/Consultants, subject to the provisions and limitations set forth in Paragraph 11 herein;

> **Deleted:** 10

> **Deleted:** opposing

    (c)   Two In-House Litigation Counsel identified to the Producing Party;

    (d)   The Court and other court personnel of any court having jurisdiction over any proceedings involving the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation.  However, with regard to documents used in the proceedings in Japan, Confidential Discovery Materials produced in the AMD Litigation, the Class Litigation, or the California Class Litigation may only be used if the Japan court institutes procedures to protect the confidentiality of the information at a level of protection comparable to that provided in this Order.  The Parties shall cooperate reasonably in seeking such protection.  The procedures to effectuate this provision shall be those the Japan Court deems appropriate;

    (e)   Court reporters, their staffs, and professional vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgement of Protective Order" attached hereto;

    (f)   During the deposition of any current employee, director, agent or Rule 30(b)(6) designee of the Producing Party, a Receiving Party may show the Producing Party's witness any document produced by the Producing Party; and it may show to any former employee of the Producing Party any document the Receiving Party's Outside Counsel reasonably and in good faith believes to have received the information or document, or to have become familiar with its contents, in the ordinary course of his or her business duties, consistent, however, with the provisions of paragraph 10;

> **Deleted:** an Opposing

    (g)   The author of a document containing Confidential Discovery Material or the original source of the information, as well as addressees, copyees or other persons whom the Receiving Party's Outside Counsel reasonably and in good faith believes to have received the information or document, or to have become familiar with its contents, in the ordinary course of his

or her business duties, consistent, however, with the provisions of
paragraph 10.

Deleted: and

(h)    Japan Counsel and Japan Experts/Consultants, subject to the provisions
and limitations set forth herein; and

Deleted: .

(i)    Any individual specifically retained for the preparation and dissemination
of class notices and/or the administration and/or settlement of class
plaintiffs' claims.

7.    Any person under the Control of a Party Disclosing Confidential Discovery

Material who is shown or given access to Confidential Discovery Material will execute or agree

to the terms of the "Acknowledgement of Protective Order" set forth and attached hereto.  The

Acknowledgements will not be exchanged, but will be maintained and made available to the

Court upon the Court's request.

8.    Any attorney (including In-House Litigation Counsel) for any Party or Class Party

who receives any technical document designated Confidential Discovery Material by a

Deleted: produced

Producing Party other than his or her client shall not participate in the preparation or prosecution

of any patent application or patent license relating to any aspect of microprocessors, chipsets,

Deleted: or

PCs, operating systems, software or servers discussed in any such technical document, from

the time of receipt of such information through and including one (1) year following the

conclusion of the AMD Litigation, the Japan Litigation, the Class Litigation, or the California

Class Litigation, whichever occurs later.

9.    Confidential Discovery Material must be stored and maintained by a Receiving

Party at a location and in a secure manner that ensures that access is limited to the persons

authorized under this Order.  In no event shall Confidential Discovery Material be stored at any

business premises of the Receiving Party, or be made accessible electronically to employees of

the Receiving Party, except that In-House Litigation Counsel may view, but not store,

Confidential Discovery Material at his or her normal workplace by electronically and remotely

accessing a Receiving Party's electronic document repository.  In-House Litigation Counsel

12

must implement and document reasonable precautions to prevent unauthorized persons from accessing or otherwise viewing Confidential Discovery Material.

10.     Upon disclosing Confidential Discovery Material pursuant to paragraphs 6(f) or 6(g), other than to a current employee, director, agent or Rule 30(b)(6) designee of the Producing Party, counsel shall inform the witness of the existence of this Order, the confidential status of the information disclosed, and the restriction that the information not be further disseminated or used for any purpose other than the litigation; and counsel shall request the witness to execute and agree to the terms of the Acknowledgment of Protective Order set forth and attached hereto.  A Party or Class Party shall not disclose Confidential Discovery Material to a witness over whom the Party or Class Party has control until the witness has executed and agreed to the terms of the Acknowledgement of Protective Order.  No copies of Confidential Discovery Material shall be provided to the witness other than for purposes of the deposition examination without the written consent of the Producing Party.  No Confidential Discovery Material shall be shown to a former employee of a Party employed by the opposing Party, except pursuant to separate written agreement.

**Deleted:** such

**Deleted:** party

**Deleted:** party

11.     Before any Confidential Discovery Material may be disclosed or otherwise provided, directly or indirectly, to an Expert/Consultant (or Japan Expert/Consultant), such person must execute and agree to the terms of the Acknowledgment of Protective Order set forth and attached hereto, and shall:

(a)     maintain such Confidential Discovery Material in a manner calculated to prevent its public disclosure;

(b)     return such Confidential Discovery Material to counsel for the Party or Class Party that retained such Expert/Consultant within ninety (90) days of the conclusion of the Expert/Consultant's assignment or retention, but in no event shall the expert retain documents beyond the period set out in paragraph 26 herein;

(c)     not disclose such Confidential Discovery Material to anyone, or use such Confidential Discovery Material, except as permitted by the Protective Order;

13

(d)     submit to the jurisdiction of this Court for purposes of enforcing the Protective Order; and

(e)     use such Confidential Discovery Material and the information contained therein solely for the purpose of rendering consulting services to a Party or Class Party to the AMD Litigation, the Japan Litigation or the Class Litigation, including providing testimony in any such proceeding.

Except with the consent of the Producing Party, however, Confidential Discovery Material shall not be disclosed to an expert or consultant who at the time of the intended disclosure is an officer or employee of a Party.

12.     Confidential Discovery Material shall not be copied or otherwise reproduced except to the extent such copying or reproduction is reasonably necessary for permitted uses, and all such copies or reproductions shall be subject to the terms of this Protective Order.  If the duplication process by which copies or reproductions of Confidential Discovery Material are made does not itself preserve the confidentiality designations that appear on the original documents, all such copies or reproductions shall be appropriately marked with those confidentiality designations.

13.     This Protective Order shall not apply to the disclosure or use by a Producing Party or its counsel of such Producing Party's Confidential Discovery Material.

14.     The Parties agree to meet and confer prior to the filing of final exhibit lists to evaluate, on a document by document basis, which of the proposed exhibits require confidential treatment for purposes of trial.  The confidentiality legend may be redacted by the Producing Party prior to trial for any use of the material at trial by any Party or Class Party.  The Parties further agree to meet and confer with any Third Party whose documents will or may be used at trial concerning their appropriate treatment and to afford such Third Parties sufficient advance notice of any such use such that they can move to have the materials received under seal. Should any material furnished by a Third Party and received under seal be the subject of a

**Deleted:** parties

**Deleted:** party.

14

motion to unseal, the Parties shall give sufficient notice to the Third Party so that it may oppose the motion.

<u>Third Parties</u>

15.     Any Third Party that produces documents or provides testimony in the AMD Litigation, the Class Litigation or the California Class Litigation, either voluntarily or by compulsory process, shall have the full benefits and protections of this Protective Order and may designate documents or deposition testimony as Confidential Discovery Material in the manner, and subject to the same protections, set forth above.  Nothing in this Order shall be construed to allow any Third Party to obtain access to any Confidential Discovery Material produced by any Party, Class Party, or other Third Party.

<u>Designation Requests and Resolving Disputed Designations</u>

16.     The parties anticipate designating all Non-public Discovery Material as Confidential Discovery Material under Paragraph 3.  Should a Receiving Party wish to disclose any such material to a person other than as permitted by Paragraph 6, it shall make a written Designation Request to the Producing Party, as set forth below:

(a)     Designation Request: The Receiving Party shall identify with specificity (*i.e.*, by document control numbers, deposition transcript page and line reference, or other means sufficient to easily locate such materials) the Discovery Material it intends to disclose and a representation that the material is probative of one or more material facts in this litigation.  A Designation Request will trigger an obligation on the part of the Producing Party to make a good faith determination of whether the Discovery Material is entitled to be treated as Confidential Discovery Materials under Paragraph R.  Except in the case of a Designation Request for more than 250 documents or more

| Deleted: massive |
| Deleted: as to which a prompt reply would be impractical |

RLF1-3007754-1

RLF1-3019965-1

than 250 pages of deposition testimony, within ten (10) days the Producing

Deleted: court

Party shall respond in writing to the Designation Request either agreeing to

the disclosure or designating the material as Confidential Discovery Material.

If a Designation Request entails more than 250 documents or more than 250

pages of deposition testimony, the Requesting Party and the Producing Party

shall meet and confer, in good faith, to establish a reasonable timeframe for

designation and response.

(b)     Court Determination:  If the Receiving Party disagrees with a Producing

Party's designation of material as Confidential Discovery Material, it shall

provide to the Producing Party a written objection.  Thereafter, the Producing

Party may make written application to the Court for protective treatment.

Except in the case of disputes involving massive numbers of documents, the

application will be made within twenty (20) days of receiving the Receiving

Deleted: ten (10) court

Party's written objection to the designation.  If the Producing Party fails to

make such timely application, the Producing Party's designation will be void.

(c)     In any proceeding on such an application, the Producing Party will bear the

burden to demonstrate that the designated Discovery Material qualifies as

Confidential Discovery Material under Paragraph R.  No presumption or

weight will attach to the initial designation of Discovery Material as

Confidential Discovery Material.

(d)     Pending a ruling, the Discovery Material shall continue to be treated as

Confidential Discovery Material under the terms of this Protective Order.

(e)     With respect to Discovery Material the Parties agree does not constitute

Confidential Discovery Material, or as to which the Producing Party does not

16

file a timely application, or which the Court orders not to be treated as Confidential Discovery Material, within ten (10) days of such agreement or order, the Producing Party shall produce a new version with the confidentiality legend redacted.

(f)    Nothing in this Protective Order shall be deemed to prevent a Producing Party from arguing during the determination process for limits on the use or manner of dissemination of Discovery Material that is found to no longer constitute Confidential Discovery Material.

<u>Disclosure Requested or Provided in Other Proceedings</u>

17.    In the event that any Party or Class Party gains access to Discovery Material of the other Party or a Third Party from another Producing Party or a U.S., state, or foreign governmental agency or court, that has not been designated as Confidential Discovery Material, the Receiving Party shall promptly notify, in writing, the party whose documents are implicated. The party whose documents are implicated shall be entitled, and shall be given a reasonable opportunity (not to exceed thirty (30) days following notice) prior to any non-confidential disclosure or use of such materials, to designate, as appropriate, such materials as Confidential Discovery Material pursuant to the terms of this Protective Order.  Such designation shall be subject to the terms set forth in Paragraph 16.  If any such Discovery Material has already been produced and designated as Confidential Discovery Material pursuant to the terms of this Order, then such material shall at all times be governed by the terms of this Protective Order even though also received from a Third Party or a U.S., state or foreign governmental agency or court.  Designation Requests regarding the Discovery Material described in this paragraph shall be made directly to the party whose documents are implicated, rather than the Third Party or U.S., state, or foreign governmental agency or court from whom the Receiving Party received the Discovery Material.  This paragraph shall not govern the use in connection with the

| Deleted: an |
| --- |

| Deleted: from |
| --- |

| Deleted:  the Producing Party |
| --- |

| Deleted: Producing Party |
| --- |

| Deleted: This paragraph shall not apply to materials freely furnished by the Producing Party to a Third Party or a U.S., state, or foreign governmental agency or court without any requested restriction on the recipient's use or disclosure of the materials or without otherwise identifying the confidential nature of the materials.  Nor shall it |
| --- |

| Formatted: Font: (Default) Arial, Font color: Auto |
| --- |

17

Japanese Litigation of materials produced in that Litigation, which instead will be controlled by the Japanese court.

18.    Except as provided in this paragraph, a Party, Class Party or Third Party who is otherwise required in the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation to disclose or produce documents shall not delay or refuse to do so on grounds that such documents contain information of another party (other than AMD and Intel) which is subject to obligations of confidentiality in favor of that party ("Originating Party"). Instead, the Party, Class Party or Third Party from whom discovery is sought shall promptly notify the "Originating Party" in writing of the required disclosure.  The Originating Party shall be given a reasonable opportunity (not to exceed thirty (30) days from the date of notice), prior to any production or disclosure of any such Discovery Material, to object to the production and until those objections are resolved, the Discovery Material will not be produced.  In the event that such Discovery Material is produced, the Discovery Material produced shall be deemed Confidential Discovery Material pursuant to Paragraph 3 and shall be marked by the Producing Party in accordance with the requirements of Paragraph 4.

19.    The production of documents designated as Confidential Discovery Material pursuant to this Protective Order by a Third Party in the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation shall not constitute a violation of the confidentiality provisions of any nondisclosure agreement ("NDA") between any party and AMD or Intel.  However such Third Party may consult, in a timely fashion, with AMD and/or Intel about the nature of the materials to be produced in advance of their production for the purpose of ensuring that the confidential materials are adequately protected from public disclosure.

20.    If another court or any U.S., state or foreign governmental agency should request, subpoena, or order the production of Confidential Discovery Materials from any Party that have been produced by any other Party or Third Party, the Party receiving such a request

18

**Deleted:** or other Discovery Material that may

**Deleted:** the Confidential Discovery Material

**Deleted:** Party, Class Party or Third Party ("Originating Party") shall not delay or refuse to do so on grounds that such documents or

**Deleted:** Discovery Material are held by the Party, Class Party or Third Party

**Deleted:** toward the

**Formatted:** Bullets and Numbering

shall promptly notify the Producing Party in writing.  Should the Producing Party object to the

production, it may seek appropriate relief from the appropriate court or agency, and pending

such a request and, if necessary, the entry of an appropriate stay order, the Party receiving the

request shall not produce the material in dispute so long as it may lawfully refuse.

**Deleted: party**

Provisions Related to the Japan Litigation

**Formatted: Bullets and Numbering**

21.    To the extent that discovery properly conducted and permitted in the AMD

Litigation, the Class Litigation, or the California Class Litigation is relevant to the issues pending

in the Japan Litigation, the Receiving Party may, subject to the terms and limitations of this

Protective Order, disclose the Confidential Discovery Material to its Japan Counsel and Japan

Experts/Consultants.  Nothing herein shall be deemed to create an independent discovery right

for purposes of the Japan Litigation, nor limit the rights of a Party or Class Party to object to

discovery propounded in the AMD Litigation, the Class Litigation, the Japan Litigation, or the

California Class Litigation.

22.    In the event that any Confidential Discovery Material is also made available for

use in the Japan Litigation (as contemplated by this Order), the material shall remain subject to

all terms of this Protective Order and the Party desiring to use or file papers containing such

information shall identify it to the appropriate Japanese Court as Confidential so that the

provisions of Paragraph 6(d) can be appropriately implemented.

**Deleted: , inform the Japanese Court**

**Deleted: information is subject to the terms**

**Deleted: this Protective Order entered by this Court, furnish a copy of the Protective Order to the Japanese Court, and request that the Japanese Court or other authority respect the terms of this Protective Order and maintain the confidentiality of the material so produced.**

23.    Prior to accessing Confidential Discovery Material (other than Discovery Material

produced in the Japanese Litigation), Japan Counsel and Japan Experts/Consultants shall

separately execute a copy of the Acknowledgment of Protective Order attached hereto, binding

each of them to the terms set forth therein and in this Protective Order.  Such Japan Counsel

and Japan Experts/Consultants agree to submit to the jurisdiction of the United States District

19

RLF1-3007754-1

RLF1-3019965-1

Court for the District of Delaware for the purpose of having the terms of the Protective Order

enforced.

<u>Filing Confidential Discovery Material with the Court</u>

24.     In the event that any Confidential Discovery Material is contained in any

pleading, motion, exhibit, or other paper (collectively "papers") filed or to be filed with the Clerk

of the Court, the Clerk shall be so informed by the Party or Class Party filing such papers, and

the Clerk shall keep such papers under seal until further order of the Court; provided, however,

that such papers shall be furnished to the Court and Outside Counsel of the Parties.  A Party or

Class Party submitting Confidential Discovery Material to the Santa Clara Superior Court in the

California Class Litigation under seal shall comply with the requirements of California Rule of

Court 243.2.

25.     Information filed under seal shall be placed in sealed envelopes on which shall

be written the title to this action, the words "FILED UNDER SEAL," and a statement

substantially in the following form:

> "This envelope is sealed pursuant to order of this Court and contains confidential
> information filed in this case by [name of party] and is not to be opened or the
> contents thereof to be displayed or revealed except by order of the Court."

26.     Parties shall produce and file redacted versions of any papers in the District

Court actions in accordance with the "Administrative Procedures Governing Filing and Service

by Electronic Means" as issued by the United States District Court for the District of Delaware,

such that there is no disclosure of any Confidential Discovery Material, or in accord with the

rules of the Santa Clara Superior Court in the case of Confidential Discovery Material filed with

that Court.

<u>Duties Upon Conclusion of Litigation</u>

20

27.    Within one hundred twenty (120) days of the conclusion of the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation, whichever occurs later, counsel for any Party or Class Party that has received Discovery Material shall return to the Producing Party, or destroy, all originals and copies of all documents and all notes, memoranda, or other papers containing Confidential Discovery Material, including any and all Confidential Discovery Material disseminated pursuant to the terms of this Protective Order. Notwithstanding this provision, Outside Counsel are entitled to retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product prepared or received in connection with the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation, even if such materials contain protected material.  Any such archival copies that contain or constitute protected material shall remain subject to this Order.

28.    Counsel of record shall certify their compliance with the terms of this paragraph and, not more than one hundred and twenty (120) days after the conclusion of the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation, whichever comes later, shall deliver the same to counsel for the Producing Party.

29.    The provisions of this Protective Order, insofar as they restrict the communication and use of Confidential Discovery Material by any Party, Class Party, counsel, or expert witness shall, without written permission of the Producing Party or further order of the Court, continue to be binding after the conclusion of the AMD Litigation, the Japan Litigation, the Class Litigation, and the California Class Litigation.

Remedies for Non-Compliance

30.    The Parties agree that any disclosure of Confidential Discovery Material contrary to the terms of this Order by a Party or Class Party or anyone acting on its, his or her behalf

21

RLF1-3007754-1

RLF1-3019965-1

constitutes a violation of the Order remediable by the Court, regardless of where the disclosure occurs.  However, the Santa Clara, California Superior Court shall have enforcement responsibility for any impermissible disclosure by plaintiffs, plaintiffs' witnesses, plaintiffs' counsel and employees, or any other person given access to Confidential Discovery Material by the plaintiffs in the California Class Litigation.

    31.    Nothing contained in this Protective Order shall diminish any attorney-client privilege or attorney work product claim, or obligate any person to provide any discovery to which it asserts objections.  Entry of the foregoing Protective Order is without prejudice to the right of the Parties or any Third Party, for good cause shown, to move for modification of this Protective Order, or to apply for other protective orders unrelated to the confidentiality of Discovery Material.

> **Deleted:** to apply for further protective orders regarding certain categories of information,
>
> **Deleted:** for modification of
>
> **Deleted:** provision of

Inadvertent Production.

    32.    In the event that a Producing Party discovers that it has failed to mark Confidential Discovery Material as required by Paragraphs 4 and 5, it may notify in writing the Receiving Party within a reasonable time of such discovery.  So long as the unmarked Discovery Material has not already been disclosed to persons other than as permitted by Paragraph 6 such that it has entered the public domain, the failure to mark such Confidential Discovery Materials shall not be deemed to be a waiver of the confidential status of the materials, and the Receiving Party shall return all copies of such material to the Producing Party to allow the materials to be appropriately marked.

> **Formatted:** Bullets and Numbering

    33.    The production or disclosure of any Discovery Material made after the entry of this Protective Order, which disclosure a Producing Party claims was inadvertent and should not have been produced or disclosed because of a privilege, will not be deemed to be a

RLF1-3007754-1

RLF1-3019965-1

waiver of any privilege to which the Producing Party would have been entitled had the

privileged Discovery Material not inadvertently been produced or disclosed.

23

Dated: _____          **POTTER ANDERSON & CORROON LLP**

                                         By:   _____
                                               Richard L. Horwitz (#2246)
                                               rhorwitz@potteranderson.com
                                               W. Harding Drane, Jr. (#1023)
                                               wdrane@potteranderson.com
                                               1313 North Market Street
                                               P.O. Box 951
                                               Wilmington, DE  198999-0951
                                               (302) 984-6027
                                               Attorneys for Intel Corporation and Intel
                                               Kabushiki Kaisha


Dated: _____          **GIBSON, DUNN & CRUTCHER LLP**

                                         By:   _____
                                               Daniel S. Floyd
                                               DFloyd@gibsondunn.com
                                               333 South Grand Avenue
                                               Los Angeles, CA 90071-3197
                                               (213) 229-7000
                                               Attorneys for Intel Corporation and Intel
                                               Kabushiki Kaisha


Dated: _____          **HOWREY LLP**

                                         By:   _____
                                               Darren B. Bernhard
                                               BernhardD@howrey.com
                                               1299 Pennsylvania Avenue, N.W.
                                               Washington, DC 20004-2402
                                               (202) 383-6774
                                               Attorneys for Intel Corporation and Intel
                                               Kabushiki Kaisha


24

RLF1-3007754-1

RLF1-3019965-1

Dated: _____          **RICHARDS, LAYTON & FINGER, P.A.**


By:    _____
           Frederick L. Cottrell (#2555)
           cottrell@rlf.com
           Richards, Layton & Finger
           One Rodney Square
           920 North King Street
           P.O. Box 551
           Wilmington, DE  19899
           (302) 651-7700
           Attorneys For Advanced Micro Devices,
           Inc. And AMD International Sales &
           Service, Ltd.


Dated: _____          **O'MELVENY & MYERS LLP**


By:    _____
           Charles B. Diamond                    Formatted: French (France)
           cdiamond@omm.com
           1999 Avenue of the Stars
           7th Floor
           Los Angeles, CA 90067-6035
           (310) 553-6700
           Attorneys for Advanced Micro Devices, Inc.
           And AMD International Sales & Service,
           Ltd.

25

Dated: _____          INTERIM CLASS COUNSEL

                                      **PRICKETT JONES & ELLIOTT, P.A.**

                                      By: _____
                                           James L. Holzman (#663)
                                           jlholzman@prickett.com
                                           J. Clayton Athey (#4378)
                                           jcathey@prickett.com
                                           Eric M. Andersen (#4376)
                                           emanderson@prickett.com
                                           1310 King Street
                                           P.O. Box 1328
                                           Wilmington, DE 19899
                                           (302) 888-6509
                                           Attorneys for Co-Lead and Interim Counsel
                                           for Plaintiffs

                                      **COHEN, MILSTEIN, HAUSFELD & TOLL
                                      PLLC**

                                      By: _____
                                           Michael D. Hausfeld
                                           mhausfeld@cmht.com
                                           Daniel A. Small
                                           dsmall@cmht.com
                                           Brent W. Landau
                                           blandau@cmht.com
                                           Allyson B. Baker
                                           abaker@cmht.com
                                           1100 New York Avenue, NW
                                           Suite 500, West Tower
                                           Washington, DC 20005
                                           Attorneys for Co-Lead and Interim Counsel
                                           for Plaintiffs

26

**THE FURTH FIRM, LLP**

By: _____
Michael P. Lehmann
mplehmann@furth.com
Thomas P. Dove
tdove@furth.com
Alex C. Turan
aturan@furth.com
225 Bush Street, 15th Floor
San Francisco, CA 94104
Attorneys for Co-Lead and Interim Counsel
for Plaintiffs

**HAGENS BERMAN SOBOL SHAPIRO, LLP**

By: _____
Steve W. Berman
steve@hbsslaw.com
Anthony Shapiro
tony@hbsslaw.com
Craig R. Spiegel
craig@hbsslaw.com
1301 Fifth Avenue
Suite 2900
Seattle, WA 98101
Attorneys for Co-Lead and Interim Counsel
for Plaintiffs

**SAVERI & SAVERI, INC.**

By: _____
Guido Saveri
guido@saveri.com
R.Alexander Saveri
rick@saveri.com
111 Pine Street, Suite 1700
San Francisco, CA 94111
Attorneys for Co-Lead and Interim Counsel
for Plaintiffs

27

Dated: _____                 **ALEXANDER HAWES & AUDET, LLP**

                                                By: _____
                                                Michael McShane
                                                152 North 3rd Street
                                                Suite 600
                                                San Jose, CA  95112
                                                (408) 289-1776

        IT IS SO ORDERED THIS _____ day of _____, 2006.


                                                _____
                                                United States District Judge

28

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| ADVANCED MICRO DEVICES, INC., a Delaware corporation, and AMD INTERNATIONAL SALES & SERVICE, LTD., a Delaware corporation, | Civil Action No. 05-441-JJF |
| Plaintiffs, | |
| vs. | |
| INTEL CORPORATION, a Delaware corporation, and INTEL KABUSHIKI KAISHA, a Japanese corporation, | |
| Defendants. | |
| IN RE INTEL CORPORATION MICROPROCESSOR ANTITRUST LITIGATION | MDL No.1717-JJF |

| | |
|---|---|
| PHIL PAUL, on behalf of himself and all other similarly situated, | |
| Plaintiffs, | |
| vs. | |
| INTEL CORPORATION, | |
| Defendant. | |

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF SANTA CLARA**

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE (Rule 1550(b)) | J.C.C.P. No. 4443 |
| INTEL X86 MICROPROCESSOR CASES | |

29

RLF1-3007754-1

RLF1-3019965-1

## ACKNOWLEDGMENT OF PROTECTIVE ORDER

I, _____, am a _____(employee, partner, associate, etc.) of _____, and I hereby acknowledge that:

1.     I have read the Protective Order entered in the action captioned above, understand the terms thereof, and agree to be bound by such terms;

2.     I will make only such copies or notes as are required to enable me to render assistance in connection with the matters for which I am engaged;

3.     I will not disclose Confidential Discovery Materials to any person not expressly entitled to receive it under the terms of the Protective Order;

4.     I will not use Confidential Discovery Materials for any purpose other than that authorized by the Protective Order; and

5.     I agree to submit to the jurisdiction of the United States District Court for the District of Delaware/Superior Court of the State of California, County of Santa Clara, for the sole purpose of having the terms of the Protective Order enforced.

Dated: _____

Signature:_____

30

RLF1-3007754-1

RLF1-3019965-1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| ADVANCED MICRO DEVICES, INC., a Delaware corporation, and AMD INTERNATIONAL SALES & SERVICE, LTD., a Delaware corporation,<br><br>                        Plaintiffs,<br><br>      vs.<br><br>INTEL CORPORATION, a Delaware corporation, and INTEL KABUSHIKI KAISHA, a Japanese corporation,<br><br>                        Defendants. | Civil Action No. 05-441-JJF |
| IN RE INTEL CORPORATION MICROPROCESSOR ANTITRUST LITIGATION | MDL No.1717-JJF |

**JAPAN COUNSEL AND JAPAN EXPERT/CONSULTANT**
**ACKNOWLEDGMENT OF PROTECTIVE ORDER**

        I, _____, am a _____(employee, partner, associate, etc.) of _____, and I hereby acknowledge that:

        1.      I have read the Protective Order entered in the action captioned above by the United States District Court for the District of Delaware, understand the terms thereof, and agree to be bound by such terms;

        2.      I will make only such copies or notes as are required to enable me to render assistance in connection with the matters for which I am engaged;

        3.      I will not disclose Confidential Discovery Material to any person not expressly entitled to receive it under the terms of the Protective Order;

        4.      I will not use Confidential Discovery Material for any purpose other than that authorized by the Protective Order; and

        5.      I agree to submit to the jurisdiction of the United States District Court for the District of Delaware for the sole purpose of having the terms of the Protective Order enforced.

Dated: _____

                                Signature:_____

31

RLF1-3007754-1

RLF1-3019965-1