# EXHIBIT A

RLF1-3151749-1

# EXHIBIT A

## DESCRIPTION OF MATTERS ON WHICH EXAMINATION IS REQUESTED

### I.

### DEFINITIONS

1. "Intel" shall mean and refer collectively to defendants Intel Corporation and Intel Kabushiki Kaisha, including their respective past and present officers, directors, agents, attorneys, employees, consultants, or other persons acting on either of their behalf.

2. This "Litigation" means and refers to the litigation in which this Notice of Taking Deposition has been served.

3. "Intel Custodians" means and refers to the approximately 1,027 individuals identified by Intel on its Custodian List served on June 1, 2006, pursuant to the Stipulation and Order Regarding Document Production entered by the Court in this Litigation.

4. "Litigation Hold Notices" means and refers to the means by which Intel communicated its preservation obligations to Intel employees, including all oral, written or electronic notices, reminders, or other communications by Intel to Intel Custodians or other Intel employees.

5. "Weekly Backup Tapes" means and refers to the backup tapes described by Intel in its March 5, 2007 Letter Brief filed with the Court.

6. "Complaint Freeze Tapes" means and refers to tapes generated by the "one time company-wide snapshot of email and other electronic documents that were stored on Intel's servers, including Exchange servers that store emails" as described by Intel in its March 5, 2007 Letter Brief filed with the Court.

7. "Intel's Remediation Plan" refers to the plan that Intel submitted on April 23, 2007, pursuant to the Special Master's Modified Order, filed April 13, 2007.

## II.

## SUBJECT MATTER

1. The bases, rationale, and justifications for, and assumptions underlying, the terms and proposals set forth in Intel's Remediation Plan.

2. The design and development of Intel's Remediation Plan, including specifically and without limitation (i) the details, projected costs, and perceived benefits of all options, alternatives, suggestions or proposals received and/or considered, (ii) the identity of all persons involved in designing, developing, preparing, proposing or considering such options, alternatives, suggestions or proposals; and (iii) the specific considerations or reasons that led to the adoption or rejection of such options, alternatives, suggestions, or proposals.

3. The implementation, execution and monitoring of Intel's Remediation Plan, including specifically and without limitation (i) the identity of all persons involved in these activities; (ii) the nature of any technical problems, obstacles, or impediments encountered or anticipated in connection with these activities; (iii) the anticipated timing and costs associated with these activities; (iv) the nature of all audit steps or precautions being taken in connection with these activities; and (v) any procedures implemented or proposed for identifying problems, gaps, deficits, or lapses in Intel's Remediation Plan.

4. The nature of all evidence preservation efforts being undertaken by Intel related to or associated with its Remediation Plan, including specifically and without limitation: (i) the suspension of the email "auto-delete" function; (ii) migration of mailboxes to Exchange servers; (iii) settings used in migrating mailboxes to dedicated Exchange servers; (iv) details about Intel's Exchange environment and how .pst files are stored; (v) EMC's email archive system; (vi) efforts to recover deleted items from Exchange "Deleted Items" folders, hard drives, .pst files or any other sources; and (vii) details of the proposed backup and "complaint freeze" tape collection and restoration processes.

5. Details concerning the specific features of Intel's Remediation Plan, including specifically and without limitation Intel's re-issuance of Litigation Hold Notices, its follow-up with Intel Custodians regarding evidence preservation, its handling and preserving of the hard drives of departing Intel employees, and any information concerning individual Intel Custodians' document retention practices and/or data loss that Intel has discovered to date.

6. Details concerning any currently known or suspected data loss, deletion, corruption or gaps in Intel Custodian data, including specifically and without limitation (i) missing .pst files; (ii) missing emails; (iii) missing backup tapes; (iv) missing hard drives; (v) missing complaint freeze tapes, and (vi) missing disaster recovery tapes.

7. Intel's efforts to determine whether any data, tapes, email or .pst files proposed to be used or reviewed in connection with Intel's Remediation Plan are corrupted, unrecoverable, unreadable or otherwise unusable, and the results of those efforts.

8. Details concerning Intel's harvest of Intel Custodians' data, including the harvest instructions, protocols and electronic harvesting tools employed, the type of data extracted or harvested, the identity of those individuals principally involved in developing and executing such instructions, protocols and data harvesting, the preservation of hard drives post-harvest and any hard drive imaging performed as part of Intel's data collection.

9. The schedule for completion of Intel's Remediation Plan.

# EXHIBIT B

RLF1-3151749-1

# EXHIBIT B

### CATEGORIES OF
### DOCUMENTS AND TANGIBLE THINGS
### REQUESTED FOR PRODUCTION
### DEFINITIONS

1. "Intel" shall mean and refer collectively to defendants Intel Corporation and Intel Kabushiki Kaisha, including their respective past and present officers, directors, agents, attorneys, employees, consultants, or other persons acting on either of their behalf.

2. This "Litigation" means and refers to the litigation in which this Notice of Taking Deposition and request for Production of Documents and Tangible Things has been served.

3. "Intel Custodians" means and refers to the approximately 1,027 individuals identified by Intel on its Custodian List served on June 1, 2006, pursuant to the Stipulation and Order Regarding Document Production entered by the Court in this Litigation.

4. "Litigation Hold Notices" means and refers to the means by which Intel communicated its preservation obligations to Intel employees, including all oral or written notices, reminders, or other communications by Intel to Intel Custodians or other Intel employees.

5. "Weekly Backup Tapes" means and refers to the backup tapes described by Intel in its March 5, 2007 Letter Brief filed with the Court.

6. "Complaint Freeze Tapes" means and refers to tapes generated by the "one time company-wide snapshot of email and other electronic documents that were stored on Intel's servers, including Exchange servers that store e-mails" as described by Intel in its March 5, 2007 Letter Brief filed with the Court.

7. "Intel's Remediation Plan" refers to the plan that Intel submitted on April 23, 2007, pursuant to the Special Master's Modified Order, filed April 13, 2007.

8. "Documents" shall mean and include all "writings," "recordings" or "photographs" as those terms are defined in Rule 1001 of the Federal Rules of Evidence.

Without limiting the generality of the foregoing, the term "documents" includes both hard copy documents as well as electronically stored data-files including email, instant messaging, shared network files, and databases.  With respect to electronically stored data, "documents" also includes, without limitation, any data on magnetic or optical storage media (e.g., servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

## INSTRUCTIONS

1.      These requests call for the production of all responsive documents that are within the possession, custody or control of Intel, including its officers, directors, agents, attorneys, employees, and other persons acting on Intel's behalf.

2.      If any document covered by these requests is withheld by reason of a claim of attorney-client privilege, attorney work product protection, or any other privilege or protection, please furnish a log providing the following information with respect to each such withheld document: date; author; recipients; general subject matter; and legal basis upon which the document has been withheld.

3.      These requests shall be deemed continuing so as to require further and supplemental production in accordance with F.R.C.P. 26(e).

## REQUESTS

1.      All documents that support, form the bases of, or are cited or referred to in Intel's Remediation Plan, including specifically and without limitation, all documents that concern the bases, rationale and justifications for, and assumptions underlying, the terms and proposals set forth in Intel's Remediation Plan.  This request shall not include documents relating solely to when and how Intel learned of preservation issues.

2.      Intel's Litigation Hold Notices.

3.  All documents that evidence, discuss, identify or concern the preservation lapses or document losses that the Remediation Plan is intended to remediate.

4.  All documents concerning the design and development of Intel's Remediation Plan, including specifically and without limitation, all documents concerning or relating to the details, projected costs, and perceived benefits of all remediation options, alternatives, suggestions or proposals received and/or considered and the specific considerations or reasons that led to their adoption or rejection.

5.  Documents sufficient to fully show and evidence the identity of those persons involved in designing, developing, preparing, proposing or considering remediation options, alternatives, suggestions or proposals.

6.  All documents concerning the implementation, execution and monitoring of Intel's Remediation Plan.  This request includes specifically and without limitation all documents concerning or reflecting all audit steps or precautions being taken in connection with these activities and any procedures implemented or proposed for identifying problems, gaps, deficits, or lapses in Intel's Remediation Plan.

7.  All documents concerning or relating to any evidence preservation efforts being undertaken by Intel related to or associated with its Remediation Plan, including specifically and without limitation, (i) the suspension of the email "auto-delete" function; (ii) migration of mailboxes to Exchange servers; (iii) EMC's email archive system; and (iv) details of the proposed backup and "complaint freeze" tape collection and restoration processes.

8.  Documents sufficient to fully show or evidence the costs of each specific component of Intel's Remediation Plan, including specifically and without limitation, the costs of suspending the email "auto-delete" function, costs of migrating Intel employees' mailboxes to "a set of consolidated Exchange servers ("Storage Group 3" or "SG3" servers)," costs of acquiring and implementing the EMC e-mail archiving system or "the Archive," costs of restoring the "Complaint Freeze Tapes" and the "Weekly Backup Tapes," and any other remediation-related cost Intel believes or contends is material.

9. All documents concerning the specific features of Intel's Remediation Plan, including specifically and without limitation Intel's re-issuance of Litigation Hold Notices, its follow-up with Intel Custodians regarding evidence preservation, Intel's processes for handling and preserving the hard drives of departing Intel employees, and individual Intel Custodians' document retention practices and/or data loss that Intel has discovered to date.

10. All documents concerning, recording or reflecting information provided by individual Intel Custodians to Intel, or otherwise discovered by Intel, concerning evidence retention problems, preservation practices, preservation lapses and/or preservation deficiencies.

11. All documents that reflect or catalog the nature and known or estimated volume of lost or missing data for an Intel Custodian, including specifically and without limitation documents reflecting any estimates of volumes of lost or missing data on an individual custodian basis and/or any estimates of total lost or missing data to be recovered under the Intel Remediation Plan for an Intel Custodian.

12. All documents evidencing, referring, cataloging or relating to any known or suspected data loss, deletion, corruption or gaps in Intel Custodian data. This request includes, without limitation, all documents evidencing referring, cataloging or relating to any corrupted, unreadable or unusable data, and to any: (i) missing .pst files; (ii) missing emails; (iii) missing backup tapes; (iv) missing hard drives; (v) missing complaint freeze tapes, and (vi) missing disaster recovery tapes.

13. Documents sufficient to fully show and evidence Intel's data harvest instructions, protocols and electronic harvesting tools employed; the type of data extracted or harvested; the identity of those individuals principally responsible for developing and executing such instructions, protocols and data harvesting; and Intel's efforts, if any, to preserve hard drives post-harvest.