## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE<br>INTEL CORPORATION<br>MICROPROCESSOR ANTITRUST<br>LITIGATION | MDL No. 05-1717-JJF |
| PHIL PAUL, on behalf of himself<br>and all others similarly situated, | C.A. No. 05-485-JJF |
| Plaintiffs, | CONSOLIDATED ACTION |
| v. | |
| INTEL CORPORATION, | |
| Defendant. | |

## DEFENDANT INTEL CORPORATION'S ANSWER TO
## PLAINTIFFS' FIRST AMENDED CONSOLIDATED COMPLAINT

Defendant Intel Corporation ("Intel"), by and through its undersigned attorneys, hereby files its Answer to plaintiffs' First Amended Consolidated Complaint ("FACC") dated May 26, 2006, admitting, denying, and otherwise alleging as follows (the numbered paragraphs correspond to those in the FACC):

1.      Intel admits that it sells general-purpose microprocessors, but denies that there exists a separate market for x86 microprocessors.  Intel further states that its success in its microprocessor business is attributable to competition on the merits and reflects Intel's technological leadership in microprocessor design and manufacturing, its willingness to incur risks to sustain that leadership, and its reputation as a reliable supplier.  Intel denies plaintiffs' allegations regarding its market share and anticompetitive acts.  Except as otherwise expressly admitted, Intel denies the allegations of paragraph 1.

2.      Intel states that many companies in the computer industry do have a preference for Intel microprocessors due to the price, performance, quality, reliability, and

innovativeness of Intel's products, the strength of Intel's roadmap of planned future product offerings, Intel's superiority as a technology company, and Intel's reliability as a microprocessor vendor. Intel has developed its relationships with its customers over many years. Such relationships do not arise quickly or as the result of one or two short term successes. Intel further states that it has engaged in vigorous, lawful competition with AMD and others in a manner that has benefited consumers. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 2.

3.    Intel denies that it has coerced customers to cause them to exclude AMD or others or that it has avoided competition on the merits. Each of the third parties named in paragraph 3 of the FACC is a major supplier or distributor of AMD-based products. The decision whether to purchase from AMD or others, and in what quantity, is made by these customers without coercion or anticompetitive conditions. Intel denies that its conduct has damaged purchasers of microprocessors and computers or has eliminated competition as to either quality or price. Intel denies the remaining allegations of paragraph 3.

4.    Intel admits that AMD introduced Opteron in 2003, and that both Opteron and Athlon64 are 64-bit processors compatible with 32-bit software. Intel specifically denies that AMD has achieved technological leadership. In the 3 1/2 years since AMD introduced Opteron (2004-2007), Intel microprocessors have been used, on average, in 60.6%, or 303, of the world's top 500 supercomputers. By contrast, over that same time period, on average, only 12.6%, or 63, of those systems used AMD microprocessors. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 4.

5.    Intel denies the allegations of paragraph 5. As AMD's own statements reveal, AMD made a conscious choice to forego expenditures on capacity expansion. That choice capacity-constrained AMD until the end of 2006, and AMD bears the responsibility for the consequences of that condition. Intel also specifically denies the existence of any monopoly pricing or economic coercion within the semiconductor industry. At best, plaintiffs can only allege a pattern of price reductions and incentives offered by Intel to its customers which, if

2

accepted, contribute to an overall lower price for Intel products than would be the case without such incentives. Customers are perfectly free to purchase products from Intel, from AMD, or from others based on each customer's own evaluation of the overall strengths and benefits of the products offered. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 5.

6.     Intel denies the allegations of paragraph 6. Intel specifically denies plaintiffs' illogical claim that consumers pay higher prices because Intel competes by charging lower prices. Intel further denies plaintiffs' characterization of the Japan Fair Trade Commission ("JFTC") proceedings. Intel admits that the JFTC issued a recommendation decision based on **an** interpretation of Japanese law on March 8, 2005, and that Intel agreed not to contest the recommendation for purposes of that proceeding only. Intel did dispute the substance of the charges made by the JFTC and has stated publicly that it does not agree with the facts underlying the JFTC's allegations and the application of law in the recommendation decision. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 6.

7.     Intel denies that plaintiffs (or any member of any alleged nationwide indirect purchaser class or subclass) have suffered injury to business or property resulting from Intel's conduct. Intel denies its conduct is unlawful or anticompetitive. Intel denies the remaining allegations of paragraph 7.

8.     To the extent that paragraph 8 purports to state a legal conclusion, Intel is not required to respond. Intel otherwise denies the allegations contained in paragraph 8, including, in particular, the allegation that this Court has subject matter jurisdiction under the Sherman Act over the entirely foreign commerce that is alleged repeatedly throughout plaintiffs' FACC. Indeed, the Court has already ruled that it lacks such subject matter jurisdiction.

9.     To the extent that paragraph 9 purports to state a legal conclusion, Intel is not required to respond.

10.     Intel denies the allegations of paragraph 10. Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 10 regarding the fact or details

3

of any plaintiff's purchase of an Intel x86 microprocessor or computer containing an Intel x86 microprocessor, and on that basis denies the allegations. Intel further denies that any plaintiff suffered injury as a result of Intel's conduct.

11.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 11 and on that basis denies them.

12.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 12 and on that basis denies them.

13.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 13 and on that basis denies them.

14.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 14 and on that basis denies them.

15.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 15 and on that basis denies them.

16.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 16 and on that basis denies them.

17.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 17 and on that basis denies them.

18.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 18 and on that basis denies them.

19.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 19 and on that basis denies them.

20.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 20 and on that basis denies them.

21.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 21 and on that basis denies them.

22.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 22 and on that basis denies them.

23.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 23 and on that basis denies them.

24.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 24 and on that basis denies them.

25.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 25 and on that basis denies them.

26.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 26 and on that basis denies them.

27.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 27 and on that basis denies them.

28.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 28 and on that basis denies them.

29.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 29 and on that basis denies them.

30.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 30 and on that basis denies them.

31.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 31 and on that basis denies them.

32.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 32 and on that basis denies them.

33.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 33 and on that basis denies them.

34.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 34 and on that basis denies them.

35.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 35 and on that basis denies them.

36.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 36 and on that basis denies them.

37.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 37 and on that basis denies them.

38.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 38 and on that basis denies them.

39.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 39 and on that basis denies them.

40.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 40 and on that basis denies them.

41.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 41 and on that basis denies them.

42.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 42 and on that basis denies them.

43.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 43 and on that basis denies them.

44.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 44 and on that basis denies them.

45.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 45 and on that basis denies them.

46.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 46 and on that basis denies them.

47.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 47 and on that basis denies them.

48.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 48 and on that basis denies them.

49.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 49 and on that basis denies them.

50.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 50 and on that basis denies them.

51.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 51 and on that basis denies them.

52.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 52 and on that basis denies them.

53.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 53 and on that basis denies them.

54.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 54 and on that basis denies them.

55.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 55 and on that basis denies them.

56.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 56 and on that basis denies them.

57.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 57 and on that basis denies them.

58.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 58 and on that basis denies them.

59.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 59 and on that basis denies them.

60.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 60 and on that basis denies them.

61.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 61 and on that basis denies them.

62.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 62 and on that basis denies them.

63.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 63 and on that basis denies them.

64.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 64 and on that basis denies them.

65.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 65 and on that basis denies them.

66.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 66 and on that basis denies them.

67.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 67 and on that basis denies them.

68.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 68 and on that basis denies them.

69.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 69 and on that basis denies them.

70.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 70 and on that basis denies them.

71.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 71 and on that basis denies them.

72.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 72 and on that basis denies them.

73.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 73 and on that basis denies them.

74.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 74 and on that basis denies them.

75.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 75 and on that basis denies them.

76.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 76 and on that basis denies them.

77.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 77 and on that basis denies them.

78.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 78 and on that basis denies them.

79.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 79 and on that basis denies them.

80.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 80 and on that basis denies them.

81.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 81 and on that basis denies them.

82.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 82 and on that basis denies them.

83.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 83 and on that basis denies them.

84.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 84 and on that basis denies them.

85.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 85 and on that basis denies them.

86.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 86 and on that basis denies them.

87.     Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 87 and on that basis denies them.

88.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 88 and on that basis denies them.

89.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 89 and on that basis denies them.

90.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 90 and on that basis denies them.

91.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 91 and on that basis denies them.

92.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 92 and on that basis denies them.

93.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 93 and on that basis denies them.

94.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 94 and on that basis denies them.

95.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 95 and on that basis denies them.

96.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 96 and on that basis denies them.

97.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 97 and on that basis denies them.

98.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 98 and on that basis denies them.

99.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 99 and on that basis denies them.

100.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 100 and on that basis denies them.

101.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 101 and on that basis denies them.

102.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 102 and on that basis denies them.

103.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 103 and on that basis denies them.

104.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 104 and on that basis denies them.

105.    Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 105 and on that basis denies them.

106.    To the extent that paragraph 106 purports to state a legal conclusion, Intel is not required to respond.  Intel denies that any such class exists or is appropriate to certify.

107.    To the extent that paragraph 107 purports to state a legal conclusion, Intel is not required to respond.   Intel denies that any such class or subclass exists or is appropriate to certify.

108.    To the extent that paragraph 108 purports to state a legal conclusion, Intel is not required to respond.  Intel denies that any such subclass exists or is appropriate to certify.

109.    To the extent that paragraph 109 purports to state a legal conclusion, Intel is not required to respond.  Intel denies that any such class or subclass exists or is appropriate to certify.  Intel denies it has exclusive control over information relating to the exact number of members of any such class or subclass.

110.    To the extent that paragraph 110 purports to state a legal conclusion, Intel is not required to respond.  Intel denies that there are questions of law and fact common to the purported class or subclass.  Intel denies plaintiffs' definition of the relevant market, that it has monopoly power, that it has engaged in anticompetitive activity, that it has charged supra-competitive prices, and that any plaintiff, class member, or subclass member has been damaged. Intel denies it has violated Section 2 of the Sherman Act, Sections 16720 and 17200 of the

11

California Business and Professions Code, or the antitrust, unfair competition, or consumer protection laws alleged by plaintiffs. Intel denies the remaining allegations of paragraph 110.

111.   To the extent that paragraph 111 purports to state a legal conclusion, Intel is not required to respond. Intel denies that any such class or subclass exists or is appropriate to certify.

112.   To the extent that paragraph 112 purports to state a legal conclusion, Intel is not required to respond. Intel denies that any such class or subclass exists or is appropriate to certify. Intel denies that any plaintiff, class member, or subclass member suffered injuries caused by Intel's conduct.

113.   To the extent that paragraph 113 purports to state a legal conclusion, Intel is not required to respond. Intel denies that any such class or subclass exists or is appropriate to certify.

114.   To the extent that paragraph 114 purports to state a legal conclusion, Intel is not required to respond. Intel denies that any such class or subclass exists or is appropriate to certify. Intel denies that any injunctive relief or declaratory relief is appropriate as to any plaintiff, class member, or subclass member.

115.   To the extent that paragraph 115 purports to state a legal conclusion, Intel is not required to respond. Intel denies that any such class or subclass exists or is appropriate to certify. Intel denies that any plaintiff, class member, or subclass member suffered any damages caused by Intel's actions.

116.   Intel admits that a general-purpose microprocessor is the brain of every computer and that the microprocessor is an integrated circuit capable of executing instructions and performing mathematical computations at very high speeds. Intel admits that different microprocessors may support different instruction sets, which represent the machine language instructions that each microprocessor understands. Intel admits that early microprocessors processed 4 bits and 8 bits at a time and that later microprocessors were capable of handling 16, 32, and 64 bits of data at a time, respectively. Intel admits that 32-bit microprocessors were

capable of operating with Windows. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 116.

117.    Intel admits that IBM designed a personal computer in the early 1980s and introduced the IBM PC in 1981, that IBM selected Intel's microprocessors over competing microprocessors, that Intel's microprocessors used an instruction set that was sometimes referred to as the "x86 instruction set," and that the IBM PC used Microsoft's DOS operating system. Intel further admits that, in 1981, Intel asked AMD to be a second source for certain Intel microprocessors, pursuant to the terms, conditions, and limitations of a Technology Sharing Agreement executed in 1982. Intel lacks sufficient information or belief to admit or deny the allegations in paragraph 117 regarding the state of mind of third parties and on that basis denies them. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 117.

118.    Intel denies that it engaged in any anticompetitive conduct in connection with the 1982 Technology Sharing Agreement. Intel further states that, among other findings, the arbitrator concluded that AMD was not the "victim" of Intel's alleged plan, but was "victimized by its own inability to adjust to what it knew to be reality," and, with respect to AMD's delay in the development of competitive products, that "Intel's actions had very little to do with AMD's conduct." The arbitrator thus concluded that AMD's own strategic decisions and its execution of those decisions in the marketplace – rather than any alleged misconduct by Intel – were responsible for AMD's business performance, a fact that remains equally true today. Intel further states that the claims made in paragraph 118 of the FACC were the subject of a prior antitrust suit brought by AMD against Intel, which AMD agreed to dismiss with prejudice in 1995 as part of a settlement in which AMD paid damages to Intel. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 118.

119.    Intel denies the allegations of paragraph 119. Intel further states that the claims in paragraph 119 were the subject of a prior antitrust suit brought by AMD against Intel, which AMD agreed to dismiss with prejudice in 1995 as part of a settlement in which AMD paid damages to Intel.

120.    Intel admits that in 1987 AMD petitioned to compel arbitration with respect to the 1982 Technology Sharing Agreement and that paragraph 120 contains a quotation from the arbitrator's decision. However, Intel denies that it engaged in any anticompetitive conduct in connection with the 1982 Technology Sharing Agreement. Intel further states that among other findings, the arbitrator concluded that AMD was not the "victim" of Intel's alleged plan, but was "victimized by its own inability to adjust to what it knew to be reality," and, with respect to AMD's delay in the development of competitive products, that "Intel's actions had very little to do with AMD's conduct." The arbitrator thus concluded that AMD's own strategic decisions and its execution of those decisions in the marketplace – rather than any alleged misconduct by Intel – were responsible for AMD's business performance, a fact that remains equally true today. Intel further states that the claims made in paragraph 120 were the subject of a prior antitrust suit brought by AMD against Intel, which AMD agreed to dismiss with prejudice in 1995 as part of a settlement in which AMD paid damages to Intel. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 120.

121.    Intel admits that in 1992 the arbitrator awarded AMD the remedies recited in paragraph 121 of the FACC, including a financial award of less than 1% of the amount sought by AMD, which was substantially less than the cost of litigation. Intel admits that the litigation lasted five years and that in conclusion the arbitrator found that: "most of the many claims which AMD has made have come to naught" and that AMD's claims (many of which are repeated in the FACC) had a "big problem, [namely] that AMD assumes a somewhat romanticized factual situation which, like Camelot, never existed . . . ." Intel further admits that the arbitrator's award was confirmed, and that paragraph 121 contains a partial quotation from the arbitrator's decision. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 121.

122.    Intel admits that in 1995 Intel and AMD settled all the outstanding legal disputes that were then pending between the companies. However, Intel denies plaintiffs' characterization of the 1995 settlement. The agreement in fact resulted in AMD paying Intel $58 million in damages for AMD's improper use of Intel's intellectual property. Intel further states

that, as part of the 1995 settlement, AMD dismissed with prejudice all of the antitrust claims that it had asserted against Intel and agreed not to sue Intel for any claims based on conduct that occurred before January 6, 1995. Intel admits that AMD introduced the Athlon microprocessor in 1999, but specifically denies plaintiffs' characterization of that product. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 122.

123.     Intel admits that AMD introduced Opteron in 2003, and that Opteron and Athlon64 are 64 bit-processors that are compatible with 32-bit software. Intel also admits that the Itanium processor executes an instruction set that is not x86-compatible, but states that the Itanium processor was designed to execute x86 instructions as well as its own advanced instruction set. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 123.

124.     Intel admits that Microsoft has announced that Windows would support both AMD's and Intel's 64-bit instruction sets. Intel specifically denies that it copied AMD's 64-bit instruction set and that AMD holds a technology lead over Intel. Intel lacks sufficient information or belief to admit or deny the purported quotation from Infoworld and on that basis denies it. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 124.

125.     Intel specifically denies that AMD has seized technological leadership in the microprocessor industry. Intel lacks sufficient information or belief to admit or deny the allegation regarding the alleged extension of "AMD64 technology" to AMD's entire product line and on that basis denies it. Intel also lacks sufficient information or belief to admit or deny how many technology awards AMD has "won" or what those purported awards signify, and on that basis denies those allegations. Intel states that it is responsible for a myriad of technological and manufacturing innovations in the microprocessor industry over its history and in the past several years, and that these innovations have benefited consumers and competition. Intel invented the microprocessor in 1971, and has been a technology leader at all times since. Its innovations include, among many others, the first dynamic random access memory (DRAM) chips (1970); the first microprocessor (1971); the first electrically programmable read-only memory (EPROM)

chip (1971); the first digital signal processor (1979); the first math co-processor (1980); the first

large-scale integration Ethernet adapter (1982); the first high-volume general-purpose 32-bit

processor (1985); the first single-chip cache memory controller (1985); the first general-purpose

microprocessor supporting graphics rendering (1989); the first microprocessor for portable PCs

(1990); the first microprocessor for notebook PCs (1992); the first microprocessor running at a

multiple of its external clock speed (1992); the first superscalar microprocessor with on-board

cache (1993); the first microprocessor supporting "glueless" multiprocessor support (1994); the

first flash memory capable of storing two bits per cell (1997); the first supercomputer to attain

more than 1 teraflop performance (1997); the first chipset to integrate core logic and graphics

acceleration (1999); the first mobile microprocessor to change voltage to achieve power-saving

(2000); the first server-optimized microprocessor to operate at a 1 GHz speed (2000); the first

microprocessor to perform arithmetic functions in half clock cycle (2000); the first multithreaded

microarchitecture process (2001); the first microprocessor to operate at under 1 volt (2001); the

first single-chip Gigabit Ethernet controller (2001); the first microprocessor to attain the 2 GHz

barrier (2001); the first microprocessor to attain the 3 GHz barrier (2002); the first

microprocessor designed from the ground up for mobile applications (2003); the first

microprocessor for client systems with a 1 MB cache (2003); the first high-volume

manufacturing of strained silicon (2003); the first microprocessor for client systems with a 2 MB

cache (2004); and the first dual-core microprocessors for client systems (2005). All of these

innovations together have transformed computing to the benefit of consumers.

   Intel also remains the semiconductor manufacturing leader. It was an early

adopter of each new semiconductor process technology generation including, but not limited to,

0.50p, 0.35p, 0.25p, 0.18p, 0.13p, and 90-nm technologies, and is in the advanced stages of

implementing the next-generation 65-nm technology in its factories, while AMD has just

completed its conversion to 90-nm technology. Intel was also an early adopter of 12-inch (300-

mm) wafers in its factories and enjoys tremendous efficiencies from this technology. Intel

converted most of its microprocessors to 12-inch wafers by the end of 2004, while AMD still

produces all of its microprocessors on 8-inch wafers that yield less than half as many chips per wafer.

Intel has continued its technological leadership. In 2003, Intel introduced the Pentium M processor, which was the first microprocessor ever to be designed from the ground up as a mobile microprocessor, and which has been the most successful mobile microprocessor in history. It took AMD two years after that to introduce its first processor that was designed as a mobile processor. Intel was the first company to deliver dual-core microprocessors to the desktop market segment, and is on track to be the first to deliver dual-core microprocessors to the mobile segment. Further, contrary to plaintiffs' claim of AMD's technological leadership in the server segment, Intel's leadership is demonstrated by the fact that since the introduction of Opteron in 2003, over 60% of the world's 500 fastest supercomputers use Intel microprocessors, five times more than use AMD chips, notwithstanding AMD's introduction of the Opteron chip in 2003. Except as expressly admitted, Intel denies the allegations of paragraph 125.

126.    Intel denies the allegations of paragraph 126. Intel possesses no monopoly and its success is due to its own innovation, sound management, and risk-taking. AMD's successes and failures have been determined entirely by AMD's ability or inability to offer innovative products with reliable manufacturing. Intel specifically denies plaintiffs' claim of AMD's "technical leadership." Intel lacks sufficient information or belief with which to admit or deny plaintiffs' assertion that AMD's market share has not "kept pace" with its so-called "technical leadership," and on that basis denies it. However, to the extent that plaintiffs' statement is accurate in any respect, Intel states that this is not the result of any misconduct by Intel, but rather of a marketplace perception created by AMD's sustained record of poor product performance, manufacturing problems, and unreliability as a supplier over a period of many years. Except as expressly admitted, Intel denies the allegations of paragraph 126.

127.    Intel admits that Windows runs on x86 processors. It states that Linux runs on multiple microprocessor architectures, including both x86 and non-x86 architectures. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 127.

128.    Intel denies the allegations of paragraph 128.

129.    Intel admits that the relevant geographic market is the world but denies that the relevant market is a market for x86 microprocessors. Intel denies the remaining allegations in paragraph 129.

130.    Intel denies that a separate market exists for x86 microprocessors. Intel lacks sufficient information or belief as to the source of the information contained in the chart in paragraph 130 and on that basis denies the allegations contained in that chart. Intel denies all of the other allegations of paragraph 130. Intel further states that one or more of these market share claims is inconsistent with statements made by AMD to investors in company press releases.

131.    Intel admits that Cyrix no longer manufactures microprocessors; however, both Cyrix and IDT, another microprocessor maker, have been acquired by VIA Technologies, which does make microprocessors. Intel lacks sufficient information or belief to evaluate VIA's "prospects" and on that basis denies the allegations related to it. As of August 6, 2007, VIA's web site states that it "offers a range of power efficient processors for the x86 Personal Electronics and embedded device markets." Intel admits that Transmeta has realigned its business from manufacturing microprocessors to licensing its microprocessor technology. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 131.

132.    Intel admits that construction of a chip fabrication plant may cost $2.5 billion or more. Intel specifically denies that the costs of a fab shield Intel from new competition. AMD recently completed construction of a new fab in Dresden, Germany, with the aid of a subsidy of more than half a billion dollars from German governmental authorities. Further, in July 2007, the European Commission authorized state aid in the amount of approximately $360 million to assist AMD's planned conversion and extension of its existing microprocessor wafer plants in Dresden. Intel further denies that any new entrant or a party seeking to expand its capacity to manufacture microprocessors would be required to build a new chip fabrication plant. Except where otherwise expressly admitted, Intel denies the allegations of paragraph 132.

133.    Intel admits that the consumption of x86 microprocessors is growing. Intel admits that microprocessors for servers currently command the highest prices. Intel lacks sufficient information or belief as to the specific percentage of AMD's overall microprocessor sales that are made to customers in the U.S. and on that basis denies that allegation. Intel further states that the FACC's allegations attribute the majority of both AMD's actual microprocessor sales and the sales that it allegedly lost due to the conduct alleged in the FACC to foreign commerce that lacks a sufficient nexus to U.S. commerce to support jurisdiction under the Sherman Act. In fact, this Court has already so held that it does not have subject matter jurisdiction over such conduct. Except as otherwise expressly admitted, Intel denies the allegations in paragraph 133.

134.    Intel admits that the companies set forth in paragraph 134 are all significant companies that purchase microprocessors, based on their own individual competitive considerations and evaluation of the competing products. Intel further admits that HP and Dell are the largest OEMs based in the United States, that HP now owns Compaq, that IBM sold its PC business but not its server business to Lenovo, that Fujitsu-Siemens is a Europe-based joint venture, that IBM and Gateway/eMachines are based in the U.S., that Toshiba, Acer, NEC, and Sony are significant competitors in the notebook market segment, and that HP, Dell, IBM, and Sony have some U.S. manufacturing operations. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 134.

135.    Intel lacks sufficient information or belief as to the source of the information contained in paragraph 135 and on that basis denies the allegations contained in that paragraph.

136.    Intel lacks sufficient information or belief as to what portion of AMD's sales is made through distributors, and on that basis denies that allegation. Intel admits that some portion of the production of microprocessors is sold to system builders and to independent distributors that sell to OEMs, computer assemblers, and other distributors. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 136.

137.    Intel denies that Dell is the only OEM that markets its products only through the direct distribution channel.  Intel admits the remaining allegations of paragraph 137.

138.    Intel admits that it offers market development funds to OEMs that promote the Intel Inside and Centrino Mobile Technology brands to consumers.  Except as otherwise expressly admitted, Intel denies the allegations of paragraph 138.

139.    Intel denies the allegations of paragraph 139.  Intel denies that it has engaged or is engaging in coercion and states that customers benefit from, and are not coerced by, price reductions.

140.    Intel denies the allegations of paragraph 140.  Intel further states that it offers certain discounts and other financial incentives that reduce the price of microprocessors to meet competition from AMD and to expand the demand for Intel microprocessors and the products containing those microprocessors.  Intel further states that AMD seeks to stifle Intel's ability to meet competition and compete on the merits through lower pricing.

141.    Intel denies the allegations of paragraph 141.  Intel further states that any competitive advantages that Intel possesses are due to the price, performance, quality, reliability, and innovativeness of Intel's products, the strength of Intel's roadmap of planned future product offerings, Intel's superiority as a technology company, Intel's reliability as a microprocessor vendor, and end-user customers' preference for Intel products.  Intel further states that AMD's capacity constraints belie plaintiffs' claims of customer coercion, as the constraints show that AMD is able to sell all the microprocessors that it makes and that plaintiffs' real complaint is that Intel is engaged in price competition.

142.    Because this paragraph simply purports to characterize the remaining allegations as "examples," Intel incorporates by reference its responses to the remaining allegations of the FACC.  To the extent that paragraph 142 requires a response, Intel denies the allegations of paragraph 142.

143.     Intel states that Dell has evaluated AMD processors on many occasions and that Dell has been free and remains free to purchase AMD processors. Intel further states that Dell's decision to offer Intel-based solutions has contributed to Dell's success in the marketplace. In addition, at least as of November 2005 – six months prior to plaintiffs filing their FACC – Dell offered AMD microprocessors for sale through the Dell website. In May 2006 – again, prior to the filing of plaintiffs' FACC – Dell began selling servers with an AMD microprocessor. Finally, Dell began selling AMD-powered desktops and laptops in September and October 2006, respectively. According to industry reports, as of February 2007, Dell was one of AMD's "biggest customers." Intel admits that plaintiffs have purported to include a partial quotation attributed to Dell CEO Kevin Rollins, but lacks sufficient information or belief as to the accuracy of the quotation and on that basis denies the allegation. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 143.

144.     Intel states that Dell has evaluated AMD processors on many occasions and that Dell has been free and remains free to purchase AMD processors. Intel further states that Dell purchases from Intel based on the price, performance, quality, reliability, and innovativeness of Intel's products and the strength of Intel's roadmap of planned future product offerings, and that Dell has been very successful by offering Intel-based solutions. Except as otherwise expressly admitted, Intel denies the remaining allegations of paragraph 144.

145.     The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 145, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

146.     The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 146, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

147.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 147, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

148.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 148, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

149.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 149, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

150.    Intel admits that in 2001 Gateway elected to use only Intel microprocessors in its PCs, but denies that it offered Gateway "large sums not to deal with AMD." Intel states that Gateway selected Intel microprocessors because of the price, performance, quality, reliability, and innovativeness of Intel's products and the strength of Intel's roadmap of planned future product offerings. Intel lacks information or belief to admit or deny any statement or representation of state of mind attributed by plaintiffs to a third party and on that basis denies them. Intel further denies the conduct attributed to it by any purported third-party statement alleged in paragraph 150. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 150.

151.    Intel lacks information or belief as to the state of mind of Supermicro, and on that basis denies the allegation that Supermicro "feared" Intel's retaliation. Intel further denies any conduct attributed to it by any purported third-party statements alleged in paragraph 151. Intel admits that, prior to the introduction of the Opteron-based server, Supermicro voluntarily purchased solely Intel microprocessors, based on the price, performance, quality, reliability, and innovativeness of Intel's products and the strength of Intel's roadmap of planned

future product offerings. Intel further states that it did not receive advance knowledge of Supermicro's release of the Opteron-based server, that it did not forbid Supermicro from publicizing the product, and that it has made no threats and engaged in no retaliation for Supermicro's use of AMD processors. Intel lacks sufficient information or belief as to how Supermicro has marketed the Opteron-based server to admit or deny those allegations, and on that basis denies them. Intel further alleges that Supermicro's decisions as to when and how to promote an AMD product are entirely its own. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 151.

152.    Intel states that it competes vigorously to sell its microprocessors for use in commercial desktop systems and that it has been successful in its efforts to sell into this market segment. Intel further states that corporate customers generally specify Intel microprocessors for desktop systems based on the price, performance, quality, reliability, and innovativeness of Intel's products, the strength of Intel's roadmap of planned future product offerings, Intel's superiority as a technology company, and Intel's reliability as a microprocessor vendor, and that OEM customers seek to satisfy the needs of their customers by using Intel processors. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 152.

153.    Intel denies that it pressured or coerced HP into withdrawing the AMD offering from its "Evo" brand or into withholding the AMD-powered computer from HP's network of independent value-added resellers. Intel states that to the extent that HP made decisions to use Intel processors in the place of AMD processors in commercial desktop products, HP made those decisions on the basis of the price, performance, quality, reliability, and innovativeness of Intel's products and the strength of Intel's roadmap of planned future product offerings. Intel lacks information or belief to admit or deny any statement or representation of state of mind attributed by plaintiffs to a third party and on that basis denies them. Intel further denies the conduct attributed to it by any purported third-party statement alleged in paragraph 153. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 153.

154.    Intel admits that HP was very successful with its offering of an Intel-powered DV 1000 notebook, incorporating the Quick Play feature. Intel states that HP brought this innovative product to market as a result of a joint Intel-HP development effort, including Intel's investment in the DV 1000 platform. Intel further states that HP did offer an AMD-powered PC with the DV 1000 feature. Except as otherwise expressly admitted, Intel denies the remaining allegations of paragraph 154.

155.    Intel admits that, as of the date of the filing of this Answer, Gateway offers at least five AMD-based computers that are sold at Circuit City. Intel lacks information or belief about AMD's alleged renewed sales efforts with regard to Gateway after Gateway's merger with eMachines to admit or deny those allegations and on that basis denies them. Intel lacks information or belief to admit or deny any statement or representation of state of mind attributed by plaintiffs to a third party and on that basis denies them. Intel further denies the conduct attributed to it by any purported third-party statement alleged in paragraph 155. Except as otherwise expressly admitted, Intel denies the remaining allegations of paragraph 155.

156.    Intel lacks information or belief regarding the nature of AMD's negotiations with IBM to admit or deny those allegations, and on that basis denies them. Intel lacks information or belief to admit or deny any statement or representation of state of mind attributed by plaintiffs to a third party and on that basis denies them. Intel further denies the conduct attributed to it by any purported third-party statement alleged in paragraph 156. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 156.

157.    Intel admits that IBM supported AMD's Opteron launch, and that IBM marketed an Opteron-based server model that was targeted for a high performance and technical computing segment. Intel lacks information or belief to admit or deny any statement or representation of state of mind attributed by plaintiffs to a third party and on that basis denies them. Intel further denies the conduct attributed to it by any purported third-party statement alleged in paragraph 157. Except as otherwise expressly admitted, Intel denies the allegations of

paragraph 157, including in particular the allegation that it paid IBM to halt further Opteron plans or development efforts.

158.    Intel denies that it "purchased IBM exclusivity" for its ThinkCentre desktop PCs. Intel lacks sufficient information or belief to admit or deny any statement or representation of state of mind attributed by plaintiffs to a third party and on that basis denies them. Intel further denies the conduct attributed to it by any purported third-party statement alleged in paragraph 158. Except as otherwise expressly admitted, Intel denies the remaining allegations of paragraph 158.

159.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 159, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

160.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 160, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

161.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 161, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

162.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 162, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

163.    Intel denies the allegations of paragraph 163. Intel states that it offers a wide range of discounts without regard to the level of each customer's purchases of Intel microprocessors and that plaintiffs' claims that AMD has been foreclosed from competing for a

meaningful share of the market by Intel's conduct is contradicted by plaintiffs' allegation that AMD has been capacity-constrained.

164.    Intel denies the allegations of paragraph 164.

165.    The majority of paragraph 165 is hypothetical and not factual in nature and therefore requires no response. Intel denies the allegations of paragraph 165 to the extent that the paragraph purports to state any facts.

166.    The majority of paragraph 166 is hypothetical and not factual in nature and therefore requires no response. Intel denies the allegations of paragraph 166 to the extent that the paragraph purports to state any facts.

167.    Intel admits that most major OEMs prefer to purchase Intel processors. Intel further states that some OEMs purchase the majority of their microprocessors from AMD. Intel states that most OEMs purchase from Intel based on the price, performance, quality, reliability, and innovativeness of Intel's products and the strength of Intel's roadmap of planned future product offerings, as well as corporate purchasers' preference for Intel processors and the expectation that Intel will maintain reliable microprocessor specifications. Intel further states that plaintiffs' allegation that AMD is capacity-constrained shows that the constraint on AMD's growth is not any allegedly exclusionary conduct by Intel but, rather, AMD's own decisions regarding investments in manufacturing capacity. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 167.

168.    Intel lacks sufficient information or belief to admit or deny the allegations regarding AMD's share of HP's U.S. consumer sales in the fourth quarter of 2004 and on that basis denies them. Intel further states that plaintiffs' claim that AMD had captured a 60% share of HP's retail business is inconsistent with their claim that Intel uses discounts to prevent customers from using AMD processors or to limit customers' use of AMD processors. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 168.

169.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 169, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

170.    Intel denies the allegations of paragraph 170.

171.    Intel denies the allegations of paragraph 171. Intel further states that Intel's discounting and rebates promote competition and result in more affordable computers for consumers.

172.    The majority of paragraph 172 is hypothetical and not factual in nature and therefore requires no response. Intel denies the allegations of paragraph 172 to the extent that the paragraph purports to state any facts.

173.    Paragraph 173 is hypothetical and not factual in nature and therefore requires no response. Intel denies the allegations of paragraph 173 to the extent that the paragraph purports to state any facts. Intel further states that it does not sell below cost and that plaintiffs have expressly disavowed a predatory pricing claim. *See* Plaintiffs' Opposition Brief, 05-485, Docket Item 271 at 37. Plaintiffs are complaining about AMD and others having to compete on price and have predicated their claim on fanciful hypothetical recitals instead of facts.

174.    Paragraph 174 is hypothetical and not factual in nature and therefore requires no response. To the extent that a response is required, Intel denies the allegations of paragraph 174. Intel further states that plaintiffs are complaining that discounts that result in above-cost prices for every unit sold are predatory in nature, which demonstrates that plaintiffs' true complaint is that AMD and others must compete with Intel on price.

175.    Intel admits that OEMs incur expenses in designing and engineering new computers, and that they only make investment decisions that they believe to be economically justified. Except as otherwise expressly admitted, Intel denies the remaining allegations of paragraph 175.

176.    Much of paragraph 176 is hypothetical and not factual in nature and therefore requires no response. Plaintiffs' FACC seems to allege both that granting discounts, rebates, or market development funds is unlawful and anticompetitive, and that the refusal to grant such discounts, rebates, or market development funds is unlawful and anticompetitive. To the extent that a response is required, Intel denies the allegations of paragraph 176.

177.    Intel lacks sufficient information or belief to admit or deny any statement or representation of state of mind attributed by plaintiffs to a third party and on that basis denies them. Intel further denies the conduct attributed to it by any purported third-party statement alleged in paragraph 177. Except as expressly admitted, Intel denies the remaining allegations of paragraph 177.

178.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 178, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

179.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 179, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

180.    Intel lacks sufficient information or belief to admit or deny any statement or representation of state of mind attributed by plaintiffs to a third party, or as to the status of AMD's alleged negotiations with third parties, and on that basis denies them. Intel further denies the conduct attributed to it by any purported third-party statement alleged in paragraph 180. Intel denies the remaining allegations in paragraph 180.

181.    Intel lacks sufficient information or belief as to "the key" to AMD's ability to gain "quick market acceptance" of a new microprocessor to admit or deny those allegations and on that basis denies them. Intel further denies that the success or failure of a microprocessor is based on "a successful and impressive 'launch'" and states that the success or

28

failure of a microprocessor among computer professionals is based on its performance, reliability, and value, and on the reputation of its supplier for quality, reliability, and innovativeness. Except as expressly admitted, Intel denies the remaining allegations of paragraph 181.

182.    Intel denies the allegations in paragraph 182, and incorporates its responses to the paragraphs below with respect to the alleged examples.

183.    Intel denies the allegations of paragraph 183 that purport to describe Intel's conduct, including, in particular, that it engaged in any anticompetitive conduct or efforts to induce Acer from supporting AMD's product launch. Intel further states that Acer's Chairman and CEO, Stan Shih, has publicly stated that his conversation with Mr. Barrett, contrary to plaintiffs' allegations, focused entirely on industry development and technology trends. He further stated that Acer has continued to do business with AMD. Except as expressly admitted, Intel denies the remaining allegations of paragraph 183.

184.    Intel lacks sufficient information or belief to admit or deny any statement or representation of state of mind attributed by plaintiffs to a third party and on that basis denies them. Intel further denies the conduct attributed to it by any purported third-party statement alleged in paragraph 184.

185.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 185, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

186.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 186, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

187.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 187, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

188.    Intel lacks sufficient information or belief to admit or deny any statement or representation of state of mind attributed by plaintiffs to a third party and on that basis denies them. Intel further denies the conduct attributed to it by any purported third-party statement alleged in paragraph 188. Intel denies that it is engaged in a relentless campaign to undermine AMD's marketing efforts and further denies that AMD is Intel's one remaining competitor (an allegation which is, in any event, inconsistent with plaintiffs' references throughout the FACC to Intel's "rivals"). Intel denies that it offered any AMD customers money to pull AMD systems from their booths at the 2004 Super Computing Show. Intel further states that the Fujitsu-Siemens booth at the CeBit show was funded in part by promotional support from Intel and that AMD has no right to have its promotions funded by Intel. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 188.

189.    Intel admits that nVidia and VIA are among its many competitors in the supply of core logic chipsets. Intel denies that ATI is an independent supplier, as ATI is now owned by AMD. Intel further denies that AMD does not sell chipsets, as AMD now owns ATI, which does sell chipsets. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 189.

190.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 190, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

191.    Paragraph 191 is pure conclusory legal argument. To the extent that a response is required, Intel denies the allegations of paragraph 191. Discounting represents the essence of competition, and it is plaintiffs' (and AMD's) attempt to use the antitrust laws to stifle price competition that lacks a procompetitive justification.

192.    Intel denies the allegations of paragraph 192. Intel further states that it has no "exclusive deal" with Synnex and that Synnex purchases Intel products based on their price, performance, quality, reliability, and innovativeness and the strength of Intel's roadmap of planned future product offerings.

193.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 193, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

194.    Intel denies the allegations in paragraph 194, including, in particular, that it has "bribed" distributors not to do business with AMD. Intel further states that, over time, it has implemented various programs to assist its authorized distributors in promoting and selling Intel products, and that its programs enhance competition. Intel denies that any such programs require exclusivity on the part of a distributor. Intel lacks information or belief to admit or deny any statement or representation of state of mind attributed by plaintiffs to a third party and on that basis denies them. Intel further denies the conduct attributed to it by any purported third-party statement alleged in paragraph 194.

195.    Intel denies the allegations in paragraph 195. Plaintiffs appear to be claiming that Intel punishes distributors by reducing its prices to them and coerces them to avoid doing business with AMD through purported threats that it never makes. Intel states that these allegations make it clear that plaintiffs' real (and nonsensical) complaint is that Intel is providing discounts to its customers.

196.    Intel lacks sufficient information or belief to admit or deny any statement or representation of state of mind attributed by plaintiffs to a third party and on that basis denies them. Intel specifically denies the allegations of paragraph 196 that purport to describe Intel's conduct.

197.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 197, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

198.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 198, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

199.    Paragraph 199 is pure conclusory legal argument. To the extent that a response is required, Intel denies the allegations of paragraph 199. Discounting represents the essence of competition, and it is plaintiffs' (and AMD's) attempt to use the antitrust laws to stifle price competition that lacks a procompetitive justification.

200.    Intel admits that a substantial portion of desktop and notebook computers is sold in retail stores both in the United States and internationally. Intel admits that the retailers named in paragraph 200 sell personal computers. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 200.

201.    Intel admits that many PCs are sold during buying seasons that correspond to events on the calendar, but denies that paragraph 201 correctly describes those buying seasons. Intel admits that microprocessor suppliers market their products both to OEMs and to retailers. Intel further admits that many retailers demand market development funds for shelf space and that market development funds support cooperative advertising and other activities that promote the products of companies that pay these funds. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 201.

202.    Intel admits that it has enjoyed an advantage over AMD and other competitors because of, among other things, its reputation for superior performance, quality, innovativeness, and reliability.  Except as otherwise expressly admitted, Intel denies the allegations of paragraph 202.

203.    Intel lacks sufficient information or belief to admit or deny any statement or representation of state of mind attributed by plaintiffs to a third party and on that basis denies them.  Intel specifically denies the allegations of paragraph 203 that purport to describe its conduct.  Intel denies the remaining allegations of paragraph 203.

204.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 204, and accordingly has stricken them.  *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8.  Therefore, no response to this paragraph is required.

205.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 205, and accordingly has stricken them.  *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8.  Therefore, no response to this paragraph is required.

206.    Intel lacks sufficient information or belief as to the source of the purported data cited in paragraph 206 and on that basis denies plaintiffs' allegations.  Intel further states that AMD-based systems are readily available at retail accounts and are heavily advertised and promoted by major retailers.  Except as expressly admitted, Intel denies the remaining allegations of paragraph 206.

207.    Intel denies the allegations of paragraph 207.  Intel denies that it has entered into any agreements or made any payments to keep AMD from retailers' shelf space or that it has entered into agreements to limit the share of revenues that retailers derive from AMD-based systems.

208.    Intel denies the allegations of paragraph 208. Intel further states that AMD's share of sales at Circuit City stores has increased to a degree that contradicts plaintiffs' claims that Intel has prevented Circuit City from devoting more than 20% of its PC sales to AMD-based systems. As of August 6, 2007, Circuit City offered for sale, at its website, 18 desktop PC models and 20 laptop models with AMD processors, or 32% of its desktop and laptop product offerings.

209.    Paragraph 209 is hypothetical and not factual in nature and therefore requires no response. Intel denies the allegations of paragraph 209 to the extent that the paragraph purports to state any facts. Indeed, AMD's increased share at Circuit City contradicts the inference that plaintiffs have attempted to create in paragraph 209.

210.    The Court has concluded that it lacks subject matter jurisdiction over the foreign conduct allegations in paragraph 210, and accordingly has stricken them. *See* March 7, 2007 Memorandum Opinion, Docket Item 299, at 8. Therefore, no response to this paragraph is required.

211.    Paragraph 211 is pure conclusory legal argument. To the extent that a response is required, Intel denies the allegations of paragraph 211. Intel further states that its dealings with retailers are procompetitive, and are intended to assist retailers to expand their markets through, among other things, promotions and consumer education.

212.    Intel admits that companies within the computer industry cooperate from time to time in the development of standards or specifications. Intel admits that standards are essential for some computer-related products. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 212.

213.    Intel admits that both Intel and AMD develop and manufacture memory controllers, that Intel's memory controller hub is separate from the microprocessor, and that AMD's memory controller is incorporated into AMD's microprocessor. Intel denies that AMD's approach is superior. Intel admits that a microprocessor designer needs to understand the memory technologies with which its microprocessors work. Intel further states that AMD has

received access to technical information regarding memory standards far in advance of the release of standards-compliant memory devices in a manner that has put it on equal footing with Intel in designing future products. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 213.

214.    Intel admits that JEDEC is one of the organizations that has developed standards for memory chips. Intel admits that it participated in the Advanced DRAM Technology (ADT) group, but denies that the group was a "secret committee" or that participation in this group was inconsistent with JEDEC's efforts. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 214.

215.    Intel admits that the ADT group had different membership tiers, based on the participants' consensus on the most effective organizational structure, and that the number of companies engaged in actual development of the technology was limited in order to enable the group to reach decisions efficiently. Intel further states that the ADT group extended an invitation to AMD to join ADT as a "co-developer" with intellectual property rights equivalent to those of the highest tier, called "developers," as well as immediate access to the results of technical meetings. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 215.

216.    Intel denies that AMD "desperately" needed access to a memory specification that was never adopted by any company, as was the case with ADT. Intel further states that the ADT group extended an invitation to AMD to join ADT as a "co-developer" with intellectual property rights equivalent to those of the highest tier, called "developers," as well as with immediate access to the results of technical meetings. Intel denies that it opposed allowing AMD to participate at the higher "developer" level. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 216.

217.    Intel denies the allegations of paragraph 217. Intel states that AMD could not have suffered any disadvantage because, among other things, the ADT group never developed any standard. Intel further states that the ADT group extended an invitation to AMD

to join ADT as a "co-developer" with intellectual property rights equivalent to those of the highest tier, called "developers," as well as with immediate access to the results of technical meetings, which belies plaintiffs' claims of secrecy or manipulation of industry standards.

218.    Intel denies the allegations of paragraph 218. Intel further states that its research and development work with memory producers and others in the industry is procompetitive and has furthered, and is continuing to further, innovation. Intel states that it has entered into nondisclosure agreements to protect trade secrets and other valuable intellectual property belonging to Intel. Intel further states that its nondisclosure agreements do not and cannot affect AMD's ability to design microprocessor products that comply with applicable industry standards in a timely manner, as all standards development work has been conducted through the procedures of the JEDEC organization. The rules of JEDEC provide all participants, including AMD, with a full opportunity to participate in the standards development process, propose any aspect of each standard, comment on any proposed standard, and suggest changes to any proposed standard before a standard is adopted. Plaintiffs' objection appears to be to the fact that Intel is engaged in exploratory research to identify memory technologies that may be suitable to support its future product needs.

219.    Intel denies the allegations of paragraph 219. The only "scheme" that plaintiffs have identified is a scheme to promote technical progress.

220.    Intel denies the allegations of paragraph 220. Intel states that it has contributed a great deal of its technology to the industry as a whole, including AMD, to the benefit of consumers. For example, Intel developed the Universal Serial Bus (USB) Specification, which is used on virtually every desktop and notebook computer today (including AMD-based systems) to enable a simple and easy connection of peripheral devices to PCs. Intel has licensed its intellectual property related to USB on a royalty-free basis. Intel has done likewise with other industry specifications.

221.    Intel admits the allegations of paragraph 221.

222.     Intel admits that it initially proposed a pin definition for DDR3 memory modules similar to that used for DDR2 memory modules. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 222.

223.     Intel admits that it proposed a different pin definition for DDR3 laptop memory modules than for desktop memory modules in order to improve signal integrity in mobile systems. Intel denies that it made its proposal in order to disadvantage AMD. Intel states that it made its proposal to improve signal integrity in mobile systems. Intel further states that when AMD objected to Intel's proposal on the ground that it had already begun designing some of its products based on the DDR2 pin configuration, Intel readily acceded to AMD's wishes and withdrew its alternative proposal. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 223.

224.     Intel denies the allegations of paragraph 224. Intel states that it made its proposal to improve signal integrity in mobile systems.

225.     Intel denies the allegations of paragraph 225. Intel further states that it withdrew its proposal for improving signal integrity in order to render the pin configuration compatible with AMD's microprocessor designs in progress and not because the proposal lacked technical merit.

226.     Intel denies the allegations of paragraph 226.

227.     Intel admits that many independent software vendors write software in high-level languages and that compilers translate the instructions of those languages to machine-readable instructions. Intel admits that other software vendors supply compilers for various operating systems and computer languages, and that Intel is one of the many companies that supply compilers for various operating systems and computer languages. Intel further states that it possesses a low share of the sale or licensing of compilers, and that users have a wealth of non-Intel compilers from which to choose. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 227.

228.    Intel admits that its compilers contain optimizations for programs that rely on floating point calculations or vector computations. Intel further states that its compilers contain optimizations to optimize performance on all microprocessors on which programs compiled by its compilers may be run. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 228.

229.    Intel denies the allegations of paragraph 229. Intel further states that alternative code paths permit software to be run on systems using a variety of microprocessors and thereby optimize performance regardless of the system on which a program is run. Intel denies that its compilers are programmed to cause AMD microprocessors to crash. It further states that its compilers do not use the CPUID instruction to generate a code path that is specifically reserved for AMD processors. Intel further states that its compilers produce such excellent performance on AMD processors that AMD has regularly elected to use Intel compilers (instead of the many competing compilers available in the marketplace) for benchmarking the performance of its microprocessors. AMD has also publicly posted benchmark results that reflect its choice of Intel compilers as the compilers that provide the best results on AMD microprocessors. Intel further states that plaintiffs' claim that Intel compilers harm the performance of AMD processors is belied by the fact that AMD recommends the use of Intel compilers in a publication that it makes available to software designers.

230.    Intel admits that its compilers appeal to certain ISVs based on their merits. Intel denies that the performance of its compilers is designed to be degraded when run on an AMD microprocessor, and states that its compilers do not use any paths that are used by AMD but not Intel microprocessors. Intel further states that AMD's election to use Intel compilers regularly for benchmarking the performance of its microprocessors embodies a recognition that AMD processors perform better with Intel compilers than with the many competing compilers, and thus contradicts plaintiffs' claims. Except as otherwise expressly admitted, Intel denies the allegations of paragraph 230.

231.    Intel denies the allegations of paragraph 231. Intel further states that it has invested billions of dollars in innovation and manufacturing, which have helped expand the microprocessor market, dramatically increase the capabilities of microprocessors and computers, and lower the cost of technology to consumers. Intel states that it competes fairly and in a manner that benefits consumers.

232.    Intel denies the allegations of paragraph 232. Intel further states that this Court has held that it lacks subject matter jurisdiction over alleged conduct outside of the United States involving the sale or purchase of AMD microprocessors manufactured outside the United States or AMD's alleged exclusion from selling such microprocessors outside the United States, the manufacture of computer systems outside the United States, or the distribution, marketing, or retail sale of computer systems outside the United States. As the Court has held, such alleged conduct did not and could not have had a direct, substantial, and reasonably foreseeable effect (a) on United States trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or (b) on United States export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States, as, *inter alia,* AMD manufactures 100 percent of its microprocessors in Dresden, Germany.

233.    Intel denies that the alleged conduct has had or will continue to harm the businesses or property of plaintiffs or any member of the purported class. Intel states that plaintiffs' allegation that AMD's manufacturing facilities were capacity-constrained through the filing date of the FACC demonstrates that AMD has suffered no injury whatsoever and, therefore, neither have plaintiffs or any member of the purported class or subclass. Intel lacks sufficient information or belief as to the source of the purported data cited in paragraph 233 and on that basis denies plaintiffs' allegations regarding purported market shares. Intel admits that AMD introduced Opteron in 2003 but lacks sufficient information or belief to admit or deny plaintiffs' allegations regarding the purported reviews or testimonials regarding Opteron and on that basis denies them. Intel denies that it has engaged in exclusionary conduct to "box" AMD

out of the notebook market segment. Intel's success in the segment has been due to the superiority of its mobile offerings, and especially the Pentium M processor, which offered both extended battery life and superior computing performance as compared to AMD processors. As one major online technology journal observed, "the performance of the Pentium M represents a giant leap forward in low power, high performance mobile processing." Intel further denies plaintiffs' allegations regarding the reasons for AMD's lack of success in the commercial desktop segment. Intel states that it has been particularly successful in the commercial desktop segment because Chief Technology Officers and IT department managers who control PC purchasing at corporations value Intel's reputation for quality, innovativeness, and reliability, and the stable roadmap of future products that it offers. Intel further states that this reputation stands in marked contrast to AMD's reputation as an unreliable supplier. Except as otherwise expressly admitted, Intel denies the allegations in paragraph 233.

234.    Intel denies the allegations of paragraph 234. In particular, Intel denies that overcharges have occurred or have been passed on to plaintiffs or any member of the purported class or subclass in the form of higher prices for personal computers, workstations, and servers containing Intel x86 microprocessors. Intel states that plaintiffs' overcharge allegations contradict their previous allegations describing Intel's low pricing practices.

235.    Intel denies the allegations of paragraph 235. Intel denies that its prices are supracompetitive. Intel further denies that plaintiffs or any member of the purported class or subclass have paid artificially inflated prices. Intel denies that its actions are anticompetitive and denies that it has a monopoly.

236.    Intel hereby incorporates by reference its responses to the allegations contained in paragraphs 1-235 of the FACC as set forth above.

237.    Intel denies the allegations of paragraph 237.

238.    Intel admits that the relevant geographic market is the world but denies that the relevant market is a market for x86 microprocessors.

239.    Intel denies the allegations of paragraph 239.

240.     Intel denies the allegations of paragraph 240.

241.     Intel denies the allegations of paragraph 241. Intel further states that the conduct that is at the heart of plaintiffs' FACC – the granting of discounts in order to meet competitive offers – demonstrates that Intel lacks the power to control prices or exclude competition.

242.     Intel denies the allegations of paragraph 242. Intel further states that it has invested billions of dollars annually in R&D and new manufacturing facilities to propel innovation forward, dramatically increase the capabilities of microprocessors and computers, and lower the cost of technology to consumers. Intel states that it competes fairly and in a manner that benefits consumers, including plaintiffs.

243.     Intel denies the allegations of paragraph 243.

244.     Intel denies the allegations of paragraph 244. Intel further states that the granting of discounts in order to compete is entirely justified, as no microprocessor competitor, large or small, is immune from having to compete in a market economy and because discounts increase consumer welfare and total output.

245.     Intel denies the allegations of paragraph 245. In particular, Intel denies that plaintiffs or any member of the purported class or subclass have been injured in their business or property because of Intel's conduct. Intel further states that plaintiffs have filed their complaint on the heels of the most successful period in AMD's history as a microprocessor supplier. Only a few months before plaintiffs launched this unfounded antitrust action, AMD's Chairman and CEO Hector Ruiz told a leading business publication: "[t]his company is in the strongest position we've ever been in." Plaintiffs' claims of injury based on a weakened AMD are directly contradicted by the public pronouncements of AMD's own Chairman and CEO.

246.     Intel denies the allegations of paragraph 246. Neither plaintiffs nor any member of the purported class or any subclass are entitled to any relief.

247.     Intel hereby incorporates by reference its responses to the allegations contained in paragraphs 1-246 of the FACC as set forth above.

248.    Intel denies the allegations of paragraph 248. In particular, Intel denies that all plaintiffs' claims can or should be brought under California law, regardless of California residency.

249.    Intel denies the allegations of paragraph 249. Intel denies that it has entered into a continuing unlawful trust with any entity. Intel denies that it has a monopoly and denies that its prices are supracompetitive.

250.    Intel denies the allegations of paragraph 250.

251.    Intel denies the allegations of paragraph 251.

252.    Intel denies the allegations of paragraph 252.

253.    Intel denies the allegations of paragraph 253. Intel states that plaintiffs' allegations contradict their other allegations that Intel engages in discounting and other price-cutting behavior. Intel denies that plaintiffs or any member of the purported class or subclass have been injured in any way, and denies that they are entitled to any recovery.

254.    The Court has dismissed plaintiffs' Third Claim for Relief for Violation of California's Tort Law Against Monopolization. *See* July 12, 2007 Memorandum Opinion, Docket Item 410, at 34. Therefore, no response to this paragraph is required.

255.    The Court has dismissed plaintiffs' Third Claim for Relief for Violation of California's Tort Law Against Monopolization. *See* July 12, 2007 Memorandum Opinion, Docket Item 410, at 34. Therefore, no response to this paragraph is required.

256.    The Court has dismissed plaintiffs' Third Claim for Relief for Violation of California's Tort Law Against Monopolization. *See* July 12, 2007 Memorandum Opinion, Docket Item 410, at 34. Therefore, no response to this paragraph is required.

257.    The Court has dismissed plaintiffs' Third Claim for Relief for Violation of California's Tort Law Against Monopolization. *See* July 12, 2007 Memorandum Opinion, Docket Item 410, at 34. Therefore, no response to this paragraph is required.

258.    The Court has dismissed plaintiffs' Third Claim for Relief for Violation of California's Tort Law Against Monopolization. *See* July 12, 2007 Memorandum Opinion, Docket Item 410, at 34. Therefore, no response to this paragraph is required.

259.    Intel hereby incorporates by reference its responses to the allegations contained in paragraphs 1-258 of the FACC as set forth above.

260.    Intel denies the allegations of paragraph 260. In particular, Intel denies that any plaintiff or member of the purported class or subclass who is not a California resident can bring a claim under California law.

261.    Intel denies the allegations of paragraph 261. Intel denies it has engaged in acts of unfair competition. Intel states that its conduct is procompetitive and benefits consumers.

262.    To the extent that paragraph 262 purports to state a legal conclusion or describe the law, Intel is not required to respond. To the extent a response is necessary, Intel denies the allegations of paragraph 262.

263.    Intel denies the allegations of paragraph 263. Intel denies it has engaged in unfair, unlawful, or fraudulent business practices. Intel further denies it has violated Section 2 of the Sherman Act or Section 16720, *et seq.*, of the California Business and Professions Code.

264.    Intel denies the allegations of paragraph 264. Intel denies that any plaintiff or any member of the purported class or subclass is entitled to any relief, including restitution or disgorgement. Intel denies that any plaintiff or any member of the purported class or subclass has conferred a benefit on Intel.

265.    Intel denies the allegations of paragraph 265.

266.    Intel denies the allegations of paragraph 266. Intel denies that its prices are supracompetitive or artificially inflated. Intel further denies that any plaintiff or any member of the purported class or subclass has lost money or property of any kind as a result of Intel's conduct.

267.    Intel denies the allegations of paragraph 267.  Intel denies that any plaintiff or any member of the purported class or subclass has conferred any benefit on Intel.

268.    The first sentence of paragraph 268 is a legal assertion that requires no response.  With respect to the remaining allegations in paragraph 268, Intel hereby incorporates by reference its responses to the allegations contained in paragraphs 1-267 of the FACC as set forth above.

269.    Intel denies the allegations of paragraph 269.

270.    Intel denies the allegations of paragraph 270.

271.    Intel denies the allegations of paragraph 271.

272.    Intel denies the allegations of paragraph 272.

273.    Intel denies the allegations of paragraph 273.

274.    Intel denies the allegations of paragraph 274.

275.    Intel denies the allegations of paragraph 275.

276.    Intel denies the allegations of paragraph 276.

277.    Intel denies the allegations of paragraph 277.

278.    Intel denies the allegations of paragraph 278.

279.    Intel denies the allegations of paragraph 279.

280.    Intel denies the allegations of paragraph 280.

281.    Intel denies the allegations of paragraph 281.

282.    The Court has dismissed plaintiffs' Fifth Claim for Relief for Violation of State Antitrust and Restraint of Trade Laws with respect to claims brought under New York's Donnelly Act.  *See* July 12, 2007 Memorandum Opinion, Docket Item 410, at 22.  Therefore, no response to this paragraph is required.

283.    Intel denies the allegations of paragraph 283.

284.    Intel denies the allegations of paragraph 284.

285.    Intel denies the allegations of paragraph 285.

286.    Intel denies the allegations of paragraph 286.

287.    Intel denies the allegations of paragraph 287.

288.    Intel denies the allegations of paragraph 288.

289.    Intel denies the allegations of paragraph 289.

290.    Intel denies the allegations of paragraph 290.  Intel denies that any plaintiff or any member of the purported class or subclass has been injured in its business or property as a result of Intel's conduct.

291.    The first sentence of paragraph 291 is a legal assertion that requires no response.  With respect to the remaining allegations in paragraph 291, Intel hereby incorporates by reference its responses to the allegations contained in paragraphs 1-290 of the FACC as set forth above.

292.    The Court has dismissed plaintiffs' Sixth Claim for Relief for Violations of State Consumer Protection and Unfair Competition laws with respect to claims brought under Alaska's consumer protection laws.  *See* July 12, 2007 Memorandum Opinion, Docket Item 410, at 26.  Therefore, no response to this paragraph is required.

293.    Intel denies the allegations of paragraph 293.

294.    Intel denies the allegations of paragraph 294.

295.    Intel denies the allegations of paragraph 295.

296.    Intel denies the allegations of paragraph 296.

297.    The Court has dismissed plaintiffs' Sixth Claim for Relief for Violations of State Consumer Protection and Unfair Competition laws with respect to claims brought under Georgia's consumer protection laws.  *See* July 12, 2007 Memorandum Opinion, Docket Item 410, at 26.  Therefore, no response to this paragraph is required.

298.    Intel denies the allegations of paragraph 298.

299.    Intel denies the allegations of paragraph 299.

300.    The Court has dismissed plaintiffs' Sixth Claim for Relief for Violations of State Consumer Protection and Unfair Competition laws with respect to claims brought under Louisiana's consumer protection laws. *See* July 12, 2007 Memorandum Opinion, Docket Item 410, at 26. Therefore, no response to this paragraph is required.

301.    Intel denies the allegations of paragraph 301.

302.    Intel denies the allegations of paragraph 302.

303.    The Court has dismissed plaintiffs' Sixth Claim for Relief for Violations of State Consumer Protection and Unfair Competition laws with respect to claims brought under Montana's consumer protection laws. *See* July 12, 2007 Memorandum Opinion, Docket Item 410, at 26. Therefore, no response to this paragraph is required.

304.    Intel denies the allegations of paragraph 304.

305.    Intel denies the allegations of paragraph 305.

306.    Intel denies the allegations of paragraph 306.

307.    Intel denies the allegations of paragraph 307.

308.    Intel denies the allegations of paragraph 308.

309.    Intel denies the allegations of paragraph 309.

310.    Intel denies the allegations of paragraph 310.

311.    Intel denies the allegations of paragraph 311.

312.    Intel denies the allegations of paragraph 312.

313.    Intel denies the allegations of paragraph 313.

314.    Intel denies the allegations of paragraph 314.

315.    Intel denies the allegations of paragraph 315. Intel denies that any plaintiff or any member of the purported class or subclass has been injured in its business or property as a result of Intel's conduct.

316.    The Court has dismissed plaintiffs' Seventh Claim for Relief for Unjust Enrichment and Disgorgement of Profits. *See* July 12, 2007 Memorandum Opinion, Docket Item 410, at 37. Therefore, no response to this paragraph is required.

317.    The Court has dismissed plaintiffs' Seventh Claim for Relief for Unjust Enrichment and Disgorgement of Profits. *See* July 12, 2007 Memorandum Opinion, Docket Item 410, at 37. Therefore, no response to this paragraph is required.

318.    The Court has dismissed plaintiffs' Seventh Claim for Relief for Unjust Enrichment and Disgorgement of Profits. *See* July 12, 2007 Memorandum Opinion, Docket Item 410, at 37. Therefore, no response to this paragraph is required.

319.    The Court has dismissed plaintiffs' Seventh Claim for Relief for Unjust Enrichment and Disgorgement of Profits. *See* July 12, 2007 Memorandum Opinion, Docket Item 410, at 37. Therefore, no response to this paragraph is required.

320.    The Court has dismissed plaintiffs' Seventh Claim for Relief for Unjust Enrichment and Disgorgement of Profits. *See* July 12, 2007 Memorandum Opinion, Docket Item 410, at 37. Therefore, no response to this paragraph is required.

321.    Intel demands trial by jury of all issues so triable under the law.

## SEPARATE AND ADDITIONAL DEFENSES

Without assuming any burden of proof that it would not otherwise bear, Intel asserts the following separate and additional defenses.

### FIRST SEPARATE AND ADDITIONAL DEFENSE
### (Failure to State a Claim for Relief)

As a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that each of plaintiffs' claims fails to state facts sufficient to constitute a claim for relief against Intel.

### SECOND SEPARATE AND ADDITIONAL DEFENSE
### (Lack of Subject Matter Jurisdiction)

As a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that, pursuant to the Foreign Trade Antitrust Improvements Act of 1982 and principles of international comity, this Court lacks subject matter jurisdiction over claims based on alleged conduct affecting the sale or purchase of AMD microprocessors manufactured outside the United States or AMD's alleged exclusion from selling such microprocessors outside the

United States, the manufacture of computer systems outside the United States, or the distribution, marketing, or retail sale of computer systems outside the United States.  Such alleged conduct did not and could not have had a direct, substantial, and reasonably foreseeable effect (a) on United States trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or (b) on United States export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States, as, *inter alia*, AMD manufactures 100 percent of its microprocessors in Dresden, Germany.

### THIRD SEPARATE AND ADDITIONAL DEFENSE
#### (Privilege/Justification)

**As** a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that its actions were privileged or justified under applicable law, and that plaintiffs therefore should be barred from recovery.

### FOURTH SEPARATE AND ADDITIONAL DEFENSE
#### (Good Faith/Legitimate Business Justification)

As a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that its actions were undertaken in good faith to advance legitimate business interests and had the effect of promoting, encouraging, and increasing competition.

### FIFTH SEPARATE AND ADDITIONAL DEFENSE
#### (Meeting Competition)

As a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that its actions met competition and therefore each of plaintiffs' claims is barred by the meeting competition defense.

### SIXTH SEPARATE AND ADDITIONAL DEFENSE
#### (Statute of Limitations)

As a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that each of plaintiffs' claims is barred in whole or part by applicable statutes of limitations, including, but not limited to, 15 U.S.C. § 15(b) and California Code of Civil Procedure Sections 338(a), 339(1), and 340(a).

## SEVENTH SEPARATE AND ADDITIONAL DEFENSE
### (Pass-On)

As a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that all or part of the damages that Intel's alleged conduct purportedly caused were not passed on to plaintiffs, who are alleged indirect purchasers of Intel products. Therefore, each of plaintiffs' claims is barred by the pass-on defense.

## EIGHTH SEPARATE AND ADDITIONAL DEFENSE
### (Standing)

As a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that plaintiffs lack standing to assert some or all of the claims asserted therein.

## NINTH SEPARATE AND ADDITIONAL DEFENSE
### (Injury-In-Fact/Antitrust Injury)

As a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that plaintiffs have not suffered an injury-in-fact or antitrust injury as a result of Intel's challenged conduct.

## TENTH SEPARATE AND ADDITIONAL DEFENSE
### (Unjust Enrichment)

As a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that plaintiffs would be unjustly enriched were they allowed to recover any relief claimed to be due.

## ELEVENTH SEPARATE AND ADDITIONAL DEFENSE
### (Failure to Mitigate Damages)

As a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that plaintiffs have failed to mitigate their damages, if any, and that any recovery should be reduced or denied accordingly.

## TWELFTH SEPARATE AND ADDITIONAL DEFENSE
### (Commerce Clause)

As a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that plaintiffs' claims are barred in whole or in part because application of these

claims to wholly interstate or foreign commerce violates the Commerce Clause of the United States Constitution.

## THIRTEENTH SEPARATE AND ADDITIONAL DEFENSE
### (No Injury Suffered)

As a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that plaintiffs' claims are barred in whole or in part to the extent that either (1) plaintiffs are not the actual purchasers of the computers upon which their claims are based; (2) they did not purchase the computers upon which their claims are based for their own use; or (3) they suffered no cognizable harm.

## FOURTEENTH SEPARATE AND ADDITIONAL DEFENSE
### (Failure to Exhaust Remedies)

As a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that plaintiffs' claims are barred in whole or in part because plaintiffs are subject to mandatory arbitration, a remedy they have failed to exhaust.

## FIFTEENTH SEPARATE AND ADDITIONAL DEFENSE
### (Waiver)

As a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that plaintiffs' claims are barred in whole or in part by waiver.

## SIXTEENTH SEPARATE AND ADDITIONAL DEFENSE
### (Restitution Claim Improper)

As a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that plaintiffs' purported claims for restitution are barred in whole or in part because restitution is unrelated to any measurable harm to consumers.

## SEVENTEENTH SEPARATE AND ADDITIONAL DEFENSE
### (Constitutional Right to Separate Trials)

As a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that plaintiffs' claims are barred in whole or in part to the extent that certification of this action as a class action would violate Intel's constitutional right to separate trials.

### EIGHTEENTH SEPARATE AND ADDITIONAL DEFENSE
#### (Due Process)

As a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that plaintiffs' claims are barred in whole or in part to the extent that plaintiffs seek to deprive Intel of procedural and substantive safeguards, including, but not limited to, traditional defenses to liability, in violation of the Due Process Clause of the United States Constitution and the analogous provisions of any applicable State constitutions.

### NINETEENTH SEPARATE AND ADDITIONAL DEFENSE
#### (Duplicative Actions and Request for Damages)

As a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that this action is barred in part based upon the filing of a duplicative action currently pending in the Superior Court of the State of California, County of Santa Clara, J.C.C.P. No. 4443, seeking recovery on the same alleged conduct, based upon similar theories of recovery, and covering the same putative class of plaintiffs. It would violate principles of due process and comity to allow duplicative actions to proceed at the same time.

### TWENTIETH SEPARATE AND ADDITIONAL DEFENSE
#### (No Direct Benefit Conferred)

As a defense to plaintiffs' FACC, and each and every allegation contained therein, Intel alleges that plaintiffs' claims are barred in whole or in part because plaintiffs did not confer any direct benefit to Intel that is relevant to the claims asserted in the FACC.

### TWENTY-FIRST SEPARATE AND ADDITIONAL DEFENSE
#### (Reservation of Rights)

Intel currently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, defenses available. Intel expressly reserves its right to assert additional affirmative defenses in the event discovery indicates they would be appropriate.

WHEREFORE, Intel prays for judgment as follows:

1.    That plaintiffs, and members of the purported class and subclass on whose behalf they purport to sue, take nothing by reason of their First Amended Consolidated Complaint;

2.    That the Court offset the recovery, if any, by plaintiffs, and by members of the purported class and subclass on whose behalf they purport to sue, by any amounts paid by Intel, or other third parties, to them, in connection with claims relating to the subject matter of this lawsuit;

3.    That Intel recover its expenses, costs, and attorneys' fees in connection with this lawsuit; and

4.    That the Court grant Intel such further relief as it deems just and proper.


Respectfully submitted,

OF COUNSEL:                                POTTER ANDERSON & CORROON LLP

David M. Balabanian
James L. Hunt                              By:  */s/ W. Harding Drane, Jr.*
Christopher B. Hockett                          Richard L. Horwitz (#2246)
BINGHAM McCUTCHEN LLP                           W. Harding Drane, Jr. (#1023)
Three Embarcadero Center                        Hercules Plaza, 6th Floor
San Francisco, CA 94111-4067                    1313 N. Market Street
Telephone: (415) 393-2000                       P.O. Box 951
Facsimile: (415) 393-2286                       Wilmington, DE 19899-0951
                                                (302) 984-6000
Richard A. Ripley                               rhorwitz@potteranderson.com
BINGHAM McCUTCHEN LLP                           wdrane@potteranderson.com
2020 K Street, N.W.
Washington, D.C. 20006                     *Attorneys for Defendant*
Telephone: (202) 373-6000                  *Intel Corporation*

Dated:  August 9, 2007


811672 / 29282

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, W. Harding Drane, hereby certify that on August 9, 2007, the attached

document was hand delivered to the following persons and was electronically filed with

the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the

following and the document is available for viewing and downloading from CM/ECF:

James L. Holzman
J. Clayton Athey
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899


I hereby certify that on August 9, 2007, I have Electronically Mailed the attached

document to the following non-registered participants:

Michael D. Hausfeld
Daniel A. Small
Brent W. Landau
Allyson B. Baker
Cohen, Milstein, Hausfeld
  & Toll , P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
mhausfeld@cmht.com
dsmall@cmht.com
blandau@cmht.com
abaker@cmht.com

Michael P. Lehman
Thomas P. Dove
Alex C. Turan
The Furth Firm LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
mplehmann@furth.com
tdove@furth.com
aturan@furth.com

Steve W. Berman
Anthony D. Shapiro
Hagens Berman Sobol Shapiro, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
steve@hbsslaw.com
tony@hbsslaw.com

Guido Saveri
R. Alexander Saveri
Saveri & Saveri, Inc.
111 Pine Street, Suite 1700
San Francisco, CA 94111
guido@saveri.com
rick@saveri.com

By:   */s/ W. Harding Drane, Jr.*
          Richard L. Horwitz (#2246)
          W. Harding Drane, Jr. (#1023)
          POTTER ANDERSON & CORROON LLP
          Hercules Plaza, 6th Floor
          1313 N. Market Street
          P.O. Box 951
          Wilmington, DE 19899-0951
          (302) 984-6000
          rhorwitz@potteranderson.com
          wdrane@potteranderson.com

728761 / 29282