IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:<br>INTEL CORP. MICROPROCESSSOR<br>ANTITRUST LITIGATION | ) ) ) ) | MDL Docket No. 05-1717 (JJF) |
| PHIL PAUL, on behalf of himself and all<br>others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>INTEL CORPORATION,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 05-485 (JJF)<br><br>CONSOLIDATED |

**NONPARTY FRY'S ELECTRONICS, INC.'S RESPONSE TO
CLASS PLAINTIFFS' OCTOBER 9, 2007 SUPPLEMENTAL LETTER BRIEF
REGARDING ALLOCATION OF THE SPECIAL MASTER'S COSTS**

# DM5

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
302.658.9200

OF COUNSEL:

*Attorneys for Nonparty Fry's Electronics, Inc.*

Robert W. Stone
Michael D. Powell
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
650.801.5000

Dated: October 19, 2007
1283221

1.

Dear Judge Poppiti:

## I.    INTRODUCTION

Federal Rule of Civil Procedure ("FRCP") 53 requires that a special master's fees be allocated "among the parties." Accordingly, the present dispute boils down to a single question -- does the term "party" in FRCP 53 include a "nonparty" forced to respond to a motion to compel discovery. For the reasons set forth herein and in Fry's July 10, 2007 Letter Brief, Fry's respectfully submits that Rule 53 does not permit allocation of any portion of a special master's fees to a nonparty.

Ignoring Rule 53, Class Plaintiffs' argue, for the first time, that the Court should use its inherent powers to allocate a portion of the Special Master's fees to Fry's because of Fry's "bad faith and unreasonable conduct" in resolving the instant discovery dispute. Class Plaintiffs' latest position, however, is nothing less than a concession that Rule 53 does not permit the allocation of a Special Master's fees to a nonparty such as Fry's. Accordingly, because FRCP 53 provides the only basis for allocating such fees in this case, Class Plaintiffs' request should be denied.

Moreover, although Class Plaintiffs attempt to divert the Court's attention from FRCP 53 with allegations of Fry's alleged bad faith, such efforts lack merit. As a preliminary matter, Class Plaintiffs expressly disavowed any intention to seek sanctions at the September 27, 2007 hearing. Moreover, the record demonstrates that Fry's has acted with the utmost good faith and in accordance with the Federal Rules of Civil Procedure. Indeed, Class Plaintiffs have repeatedly and contemporaneously remarked -- at transcribed hearings before the Special Master -- that Fry's acted in good faith throughout the protracted negotiations. As a result, Class Plaintiffs' request for "sanctions" should be rejected as procedurally improper and substantively deficient.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The fees in question were incurred by the Special Master in presiding over a discovery dispute initiated by Class Plaintiffs' to compel nonparty Fry's Electronics, Inc. to produce certain trade secret sales transaction data. On May 25, 2007, Fry's received an invoice from the Special Master indicating that a portion of the Special Master fees had been allocated to Fry's. Declaration of Michael D. Powell ("Powell Decl.," filed herewith), Ex. 1 [May 25, 2007 Invoice]. On June 11, 2007, Fry's emailed the Special Master asking whether the allocation to Fry's was in error. Powell Decl., Ex. 2 [June 11 Email]. In response, the Special Master invited the Class Plaintiffs' to respond. Powell Decl., Ex. 3 [June 13 Email from Special Master].

Thereafter, on June 25, 2007, Class Plaintiffs submitted a letter brief to the Special Master in support of their position that half of the Special Master's fees should be allocated to Fry's. Powell Decl., Ex. 4. In its July 10, 2007 response, Fry's explained that none of the cases relied upon by Class Plaintiffs were applicable to the allocation of a master's fees under Rule 53 to a nonparty. Powell Decl., Ex. 5 at 3-4. Unable to present any legal authority in support its position, Class Plaintiffs tortuously argued that the term "party" must include a "nonparty." Ex. 4 at 2. In its response, Fry's pointed out that such a construction of "party" would render FRCP 53's use of the term "nonparty" superfluous -- in contravention of the rules of statutory construction. Ex. 5 at 3.

2.

In their more recent submission, Class Plaintiffs cite ten separate cases -- none of which hold that a court may allocate a master's fees to a nonparty. In fact, all ten cases (with the exception of the *In the Matter of Halloway* case) deal with sanctions requests directed to conduct by a party (or its counsel) or to a nonparty that acted to direct or control the underlying litigation in situations found to be an abuse of judicial process.[1]

At no time during the pendency of the motion-to-compel proceedings did Class Plaintiffs' move for sanctions. Moreover, just days ago at a hearing before the Special Master on September 27, 2007, Class Plaintiffs were asked point blank by the Special Master: "[D]o you see your request [to allocate half of the Special Master's fees to Fry's] being in the nature of a Rule 37 request [for sanctions]?" Powell Decl., Ex. 7 at 9:13-14 [September 27, 2007 Hearing Transcript]. To which Class Plaintiffs' counsel answered: "I would not actually think it would be handled under Rule 37." *Id.* at lines 15-18 (indicating the fee allocation is to be governed by FRCP 45 and 53). Despite this clear disavowal of any request for sanctions, Class Plaintiffs now come before the Special Master seeking an award in excess of $50,000[2] as sanctions arguing that Fry's has acted in bad faith by demanding that Class Plaintiffs make a required showing of need before production of its trade secret sales and financial data could be compelled.

III.   STANDARD APPLICABLE TO THE APPORTIONMENT OF SPECIAL MASTER'S FEES

Federal Rule of Civil Procedure 53 governs the appointment of a special master.3 Rule 53(h) sets forth the compensation scheme for special masters and provides in pertinent part:

> **(h) Compensation.**
>
> **(1) Fixing Compensation.**   The court must fix the master's compensation before or after judgment on the basis and terms stated in the order of appointment, but the court may set a new basis and terms after notice and an opportunity to be heard.
>
> **(2) Payment.**   The compensation fixed under Rule 53(h)(1) must be paid either:

---

[1]   The *In the Matter of Halloway* case dealt with a court reporter's failure to comply with a court order and therefore has no bearing on the issues presented here.

[2]   *See* Powell Decl., Ex. 6 [September 11, 2007 Letter from Special Master to Mary Graham] (estimating Fry's portion of the Special Master's fees at $50,556.92).

[3]   If the Court is inclined to find that the term "party" as used in FRCP 53 includes a "nonparty" such as Fry's, then Fry's respectfully submits that the fee allocation should be apportioned equally among (1) Class Plaintiffs, (2) AMD, (3) Intel and (4) Fry's. As Class Plaintiffs noted in their June 26, 2007 Letter Brief, "AMD and Intel, as a condition of receiving the data [produced by Fry's], should reimburse Class Plaintiffs for an appropriate portion of the cost Class Plaintiffs incurred in obtaining the data." June 26 Letter Brief at 3, n.1.

> (A) by a party or parties; or
>
> (B) from a fund or subject matter of the action within the court's control.
>
> **(3) Allocation.**  The <u>court must allocate payment</u> of the master's compensation <u>among the parties</u> after **considering** the nature and amount of the controversy, the means of the parties, and the extent to which any party is more responsible that other parties for the reference to a master.  An interim allocation may be amended to reflect a decision on the merits.

Fed. R. Civ. P. 53(h) (emphasis added).  The rule requires payment of a special master's compensation by the <u>parties</u> except under circumstances where the fees may be satisfied from a "fund or subject matter of the action within the court's control."[4]  Because this very limited exception has no applicability to the present case, the Special Master's fees must be apportioned among the <u>parties</u> -- Class Plaintiffs, AMD, and Intel -- as further required pursuant to the May 11, 2006 Order Appointing Special Master.[5]

## IV.    THE COURT HAS BEEN PRESENTED WITH NO AUTHORITY TO ALLOCATE ANY PORTION OF THE SPECIAL MASTER'S FEES TO NONPARTY FRY'S

Importantly, no case has ever held that FRCP 53 authorizes a Court to allocate a portion of a master's fees to a nonparty without the nonparty's consent.  This makes good sense considering that a nonparty deponent would never be afforded a fair opportunity to object to the appointment of a private master.  Because special master fees can be substantial (exceeding $100,000 for this discovery dispute alone), allocation of a master's fees to a nonparty who is involuntarily called into court though it has no interest in the underlying litigation would raise serious constitutional due process concerns.[6]

---

[4]  This exception typically applies in connection with litigation seeking to establish a common fund.  *See e.g., In re Emex Corp. Secs. Litig.*, 2004 WL 444538 (S.D.N.Y. 2004) (trial court held that special master would be paid from the Settlement Fund rather than by the parties).  The 2003 Advisory Committee Notes regarding subdivision (h) explain that "[p]ayment of the master's fees must be allocated among the parties and any property or subject-matter within the court's control."

[5]  The Federal Rules expressly define the term "party" to mean any plaintiff or defendant named in a complaint.  *See* Fed. R. Civ. P. 10 (requiring that the complaint identify each "party" to the lawsuit).  Therefore, a person not named in the complaint cannot be a "party" under the Federal Rules.  Moreover, Rule 53(b)(1) requires that the "parties" must be given notice and an opportunity to be heard before appointing a master.  Obviously, a nonparty is not going to be provided notice and an opportunity to be heard regarding the appointment of a special master, and no such notice or opportunity was provided Fry's in this case.

[6]  On May 11, 2006, the Court appointed a special master to preside over pre-trial discovery disputes.  Fry's was served with a subpoena for the production of documents on June 23,

(Continued . . .)

4.

V.    FRY'S HAS ACTED IN GOOD FAITH IN PROTECTING ITS TRADE
      SECRET SALES AND FINANCIAL DATA

In support of their "sanctions" argument, Class Plaintiffs now argue that Fry's acted
unreasonably and in bad faith during the Class Plaintiffs' and Fry's negotiations.  Such
allegations, however, stand in stark contrast to Class Plaintiffs' repeated, contemporaneous
statements to the Special Master that Fry's was proceeding in "good faith" during the
negotiations and that the Class Plaintiffs and Fry's discussions were "productive," and that they
had been working "hard" and making "substantial progress" at every step of the way.  The
following are but a few examples:

- At the May 17 Conference, Class Plaintiffs' counsel Dan Small commented:  "We
  met ... yesterday ... [i]t was a very full conversation, a good faith conversation, and a
  productive one."  Powell Decl., Ex. 8 at 4:1-7 [May 17, 2007 Transcript].

- At the May 24 Status Conference, Mr. Small reported:  "Some real quick history, just
  to put in context recent progress we made ... We reported back to Your Honor ... and
  we reported that we had made very substantial progress, both in terms of
  understanding the data and in trying to resolve the dispute ... In any event, we had a
  brief call with Fry's today in which they made that counter-proposal ... it does appear
  at first blush to be a good-faith counteroffer."  Powell Decl., Ex. 9 at 3:4-5 [May 24,
  2007 Transcript].

- At the June 6 Conference, Mr. Small remarked: "The proposal appears to represent
  very significant progress, and I actually say, with some caution, that we may be close
  to an agreement."  Powell Decl., Ex. 10 at 6:13-16 [June 6, 2007 Transcript].

- And at the July 20 Conference, Mr. Small indicated:  "we have continued to work
  hard ... I believe that we are very close to an agreement."  Powell Decl., Ex. 11 [July
  20, 2007 Transcript].

As the preceding excerpts make clear, Class Plaintiffs repeatedly acknowledged throughout Fry's
and Class Plaintiffs' lengthy negotiations that Fry's was proceeding in good faith.  And now that
the underlying discovery dispute has been resolved by the Special Master, and Fry's has been
ordered to produce documents responsive to only 2 of the 19 original document requests in full
and complete satisfaction of the subpoena, it is readily apparent that Fry's acted in good faith to
protect its legitimate trade secret concerns.  Accordingly, Class Plaintiffs' efforts at revisionist
history should be acknowledged as such, and rejected.

Finally, Fry's conduct was not in bad faith as it was expressly authorized by the Federal Rules of
Civil Procedure.  Pursuant to FRCP 45, a nonparty served with a subpoena is excused from
complying with the subpoena upon timely service of objections.  FRCP 45(c)(2)(B).  Fry's

---

(. . . continued)
      2006.  Thus, Fry's was not afforded an opportunity to object to the appointment of a
      special master.

5.

timely served objections and was therefore excused from producing any documents absent a court order.[7]  At no time did the Court enter an order compelling Fry's to produce any documents. Moreover, under controlling Ninth Circuit law, there is no authority for an award of monetary sanctions against a nonparty absent a finding of contempt. *Pennwalt Corp. v. Duran-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) ("Having objected, [person served with document subpoena] was not obligated to produce the subpoenaed documents, or even to search for them, until [requesting party] obtained an order directing compliance."). And contempt under Rule 45 may be shown only where the responding person violates a court order. *Id.* There has been no violation of a court order in these proceedings; therefore, there can be no contempt.

As demonstrated above, the complete record of these proceedings unquestionably shows that Fry's has acted reasonably and in good faith throughout these proceedings and negotiations. Tellingly, the relief ultimately ordered by the Special Master in the September 28 Report is based on competing proposals submitted by each side and represents only a small fraction of the documents and materials originally requested either in Class Plaintiffs' subpoena or their March 29, 2007 motion to compel. These important facts demonstrate that Fry's objections were entirely legitimate and made in a good-faith effort to protect its important trade secret interests.

## VI.    CONCLUSION

Fry's has spent countless hours and incurred substantial attorneys' fees and other costs explaining its information systems and negotiating in good faith with Class Plaintiffs, AMD, and Intel in the hopes of reaching a solution to this dispute that provides the parties with legitimate discovery and that minimizes Fry's acknowledged trade secret concerns.  It is the lack of particularity and the extreme breadth of Class Plaintiffs' subpoena that was the true source of the present dispute -- not nonparty Fry's conduct. Accordingly, the expenses incurred by the Special Master are therefore appropriately born by Class Plaintiffs and the other "parties."

In this case, Class Plaintiffs voluntarily initiated the present litigation against Intel with full knowledge of their burden of proof and the need to seek sales transaction data from nonparty deponents. Class Plaintiffs, as parties to the action, were given an opportunity to object to the appointment of a special master. Fry's, on the other hand, was involuntarily brought under the jurisdiction of the Court and provided no opportunity to object to the appointment of a private master and the attendant imposition of substantial fees.  The cost of the Special Master is therefore properly born by Class Plaintiffs and the other "parties" that were afforded a fair opportunity to object to the appointment of the Special Master.

In view of the mandate of Rule 53(h) that the Special Master's fees "must" be apportioned "among the parties," Fry's respectfully requests that the Special Master reissue his invoices and apportion his fees among Class Plaintiffs, AMD, and Intel.

---

[7]    In fact, FRCP 53(b)(2)(B) provides that "[s]uch an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded."  Ordering a nonparty to pay master's fees of $50,000 would seem to undermine the letter and spirit of this statutory protection for nonparties facing discovery demands.

6.

Respectfully,

*/s/ James W. Parrett, Jr.*

James W. Parrett, Jr. (#4292)

cc:    Counsel of Record (per attached Certificate of Service)

1283221

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 19, 2007, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that on October 19, 2007 true and correct copies of the foregoing were caused to be served upon the following parties in the manner indicated:

**VIA HAND DELIVERY (in triplicate):**

Vincent J. Poppiti
BLANK ROME LLP
1201 North Market Street, Suite 800
Wilmington, DE  19801-4226

**VIA E-MAIL:**

Vincent J. Poppiti
BLANK ROME LLP
**poppiti@blankrome.com**

WITH A COPY TO:
Elizabeth Oestreich
BLANK ROME LLP
**oestreich@blankrome.com**

Mary Levan
BLANK ROME LLP
**levan@blankrome.com**

Carrie David
BLANK ROME LLP
**david-c@blankrome.com**

J. Clayton Athey
PRICKETT, JONES & ELLIOTT, P.A.
**jcathey@prickett.com**

James L. Holzman
PRICKETT, JONES & ELLIOTT, P.A.
**jlholzman@prickett.com**

**VIA HAND AND E-MAIL:**

Frederick L. Cottrell, III
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801-4426
**cottrell@rlf.com**

Richard L. Horwitz
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Wilmington, DE 19899-0951
**rhorwitz@potteranderson.com**

/s/ James W. Parrett, Jr.
James W. Parrett, Jr. (#4292)

1283221