IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br>INTEL CORP. MICROPROCESSSOR<br>ANTITRUST LITIGATION | MDL Docket No. 05-1717 (JJF) |
| PHIL PAUL, on behalf of himself and all others similarly situated,<br><br>　　　　　　Plaintiffs,<br>　v.<br>INTEL CORPORATION,<br><br>　　　　　　Defendant. | C.A. No. 05-485 (JJF)<br><br>CONSOLIDATED<br><br>**REDACTED**<br>**PUBLIC VERSION** |

**OBJECTION TO AND REQUEST TO MODIFY SPECIAL MASTER'S
SEPTEMBER 28, 2007 REPORT AND RECOMMENDATION
<u>RE DISCOVERY MATTER NO. 5</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

OF COUNSEL:

Robert W. Stone                                          *Attorneys for Nonparty Fry's Electronics, Inc.*
Michael D. Powell
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94065
650.801.5000

Original Filing Date:  October 19, 2007
Redacted Filing Date: October 25, 2007
1279776

i.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ........................................................................................................................1

    I.     RELIEF REQUESTED.............................................................................................2

    II.    FACTUAL AND PROCEDURAL BACKGROUND..............................................2

    III.   LEGAL STANDARD APPLICABLE TO MOTION TO COMPEL
           TRADE SECRETS .................................................................................................5

    IV.   CLASS PLAINTIFFS HAVE FAILED TO REBUT FRY'S
           PRIMA FACIE SHOWING THAT THE SALES TRANSACTION
           DATA SOUGHT TO BE PRODUCED IS TRADE SECRET
           INFORMATION........................................................................................................6

    V.    CLASS PLAINTIFFS HAVE NOT MADE A
           PARTICULARIZED SHOWING OF NEED FOR ANY DATA IN
           EXCESS OF FRY'S PROPOSAL............................................................................9

           A.    Fry's Proposal Exceeds 10% of Fry's Total Computer
                  System Sales ................................................................................................10

           B.    Fry's Proposal Meets The Criteria Set Forth In Class
                  Plaintiffs' Expert Declaration ...................................................................11

    VI.   THE SPECIAL MASTER'S ORDER EXCEEDED THE SCOPE
           OF CLASS PLAINTIFFS' JULY 18 PROPOSAL .............................................12

CONCLUSION...........................................................................................................................13

# TABLE OF AUTHORITIES

Case(s)                                                                                                    Page(s)

*Courtesy Temporary Serv. Inc. v. Camacho*
    (1990) 222 Cal. App. 3d 1278 ..................................................................................7

*Cytodyne Techs., Inc. v. Biogenic Techs., Inc.*,
    216 F.R.D. 533 (M.D. Fla. 2003)..............................................................................9

*Dart Indus. Co. v. Westwood Chem. Co.*,
    649 F.2d 646 (9th Cir. 1980) ....................................................................................6

*In re: Indep. Serv. Orgs. Antitrust Litig.*,
    162 F.R.D. 355 (D. Kan. 1995).................................................................................5

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.*,
    206 F.R.D. 525 (D. Del. 2002) .................................................................................6

*Richardson v. Suzuki Motor Co.*,
    868 F.2d 1226 (Fed. Cir. 1989).................................................................................8

*SI Handling Sys., Inc. v. Heisley*,
    753 F.2d 1244 (3d Cir. 1985)....................................................................................7

Rule(s)

Federal Rule of Civil Procedure 53(g)(2) ........................................................................1

1.

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 53(g)(2), Nonparty Fry's Electronics objects to the Special Master's September 28, 2007 Report and Recommendation on Motion to Compel Fry's Electronics, Inc. (DM No. 5) ("September 28 Report") on the basis that the Special Master applied an incorrect legal standard in ruling on Class Plaintiffs' motion to compel production of Fry's trade secret data. Notwithstanding the Special Master's finding in his May 18 Report that the data sought by Class Plaintiffs constituted trade secret information, the Special Master concluded in the September 28 Report: "(a) that the data are subject to production in this litigation if they are relevant and not unduly burdensome to produce; (b) that this standard applies here regardless of whether, as Fry's contends, the data are trade secret; and (c) that because Fry's data are adequately protected by the Protective Order, the stricter standard that can govern whether trade secrets must be produced does not apply here." *See* Declaration of Michael D. Powell dated October 18, 2007 and filed concurrently herewith ("Powell Decl."), Ex. 1 at 3 [September 28 Report – D.I. 482].

Fry's respectfully submits that the Special Master's conclusion is in error. Where a non-party objects to disclosure of its information on the basis that the information is trade secret, confidential, and protected by the right of privacy, the burden shifts to the requesting party to make a "particularized showing" that the "confidential information is relevant and necessary to its case." And because Fry's is a privately held company, none of its financial information is publicly disclosed, which gives Fry's a unique competitive advantage over the larger, publicly traded computer retailers. Because the Class Plaintiffs failed to meet their burden of showing substantial need for all of the data sought by Class Plaintiffs' proposal and subsequently ordered produced by the Special Master in the September 28 Report, Fry's requests

2.

that the Court reject the Special Master's September 28 Report and enter a new order in accordance with Fry's proposal as set forth herein.

I. RELIEF REQUESTED

Fry's requests that the Court: (1) reject the Special Master's September 28, 2007 Report; and (2) order Fry's to produce, in accordance with its August 20 Proposal set forth below, monthly purchase and sales transaction and annual aggregate financial inducement data for Gateway, eMachines, and Toshiba brands, in addition to monthly financial inducements received by Fry's directly from Intel, in full satisfaction of Fry's obligations under the subpoena.

In the alternative, if the Court orders production in accordance with Class Plaintiffs' July 18 Proposal (set forth below), Fry's submits that paragraph 1.c. of the September 28 Report be limited to the following:

> c. By OEM, yearly aggregate totals of all incentive payments received from HP, Compaq, Toshiba and Gateway for the years 2000-2006, inclusive, limited to incentives received for computer purchases as opposed to other products Fry's may buy from these vendors.

II. FACTUAL AND PROCEDURAL BACKGROUND

On June 23, 2006, Class Plaintiffs served on nonparty Fry's Electronics, Inc. a subpoena for the production of documents. Powell Decl., Ex. 2 [Subpoena]. Fry's is a privately held business and a relatively small outlet for retail sales of computer systems at issue in the underlying antitrust litigation. As a privately held company, Fry's does not publicly disclose any of its financial information, including the sales and transaction information sought by Class Plaintiffs. The subpoena was extremely broad, seeking production of nearly every document in Fry's possession related to its computer sales business. Fry's timely served written objections to the subpoena. Powell Decl., Ex. 3 [Objections]. On March 29, 2007, following a lengthy meet-

and-confer period characterized by Class Plaintiffs' unwillingness to limit the scope of their subpoena in any meaningful way, Class Plaintiffs moved to compel production of nearly seven years worth of detailed, nonpublic sales and financial data from Fry's concerning its computer sales. Powell Decl., Ex. 4 [Class Plaintiffs' Opening Brief]. In response, Fry's asserted *inter alia*: (1) that the trade secret data sought by Class Plaintiffs could only be ordered produced upon a particularized showing of substantial need and that the Class Plaintiffs had failed to make such a showing; and (2) that Fry's was entitled to a modification of the Court's September 26, 2006 Protective Order restricting dissemination of any trade secret data to outside counsel and previously identified experts. Powell Decl., Ex. 5 [Fry's Opposition Brief dated April 17, 2007 – D.I. 323].

A hearing on Class Plaintiffs' motion was held May 1, 2007. Powell Decl., Ex. 6 [May 1, 2007 Transcript]. On May 18, 2007, the Special Master issued a Report and Recommendation ("May 18 Report") that concluded: (1) the Court has the power to enforce the subpoena; (2) Fry's had not shown good cause to modify the September 26, 2006 Protective Order; and (3) "Fry's commercial or trade secrets are adequately protected under the [existing] Protective Order." Powell Decl., Ex. 7 [May 18 Report – D.I. 367]. The remaining issues raised by Class Plaintiffs' motion were taken off calendar to provide Fry's and the Class Plaintiffs an opportunity to further meet and confer.

On July 18, 2007, following several weeks of negotiations, Class Plaintiffs proposed that Fry's produce monthly purchase and sales transaction and annual aggregate financial inducement data for Gateway, Compaq, HP and Toshiba brands, in addition to monthly financial inducements received by Fry's directly from Intel, in full satisfaction of Fry's obligations under the subpoena ("Class Plaintiffs' July 18 Proposal"). September 28, 2007

4.

Report, D.I. 482 at 2. In response, Fry's proposed on July 26, 2007, that it produce monthly purchase and sales transaction and annual aggregate financial inducement data for Gateway, Compaq and Toshiba brands, in addition to monthly financial inducements received by Fry's directly from Intel, in full satisfaction of Fry's obligations under the subpoena ("Fry's July 26 Proposal"). *Id.*

Thereafter, pursuant to a Stipulation and Order entered by the Court on August 6, 2007 (August 6 Stipulation & Order), Fry's and Class Plaintiffs agreed, and the Court ordered, that the issue to be decided by the Court on the motion to compel would be limited to whether (a) Class Plaintiffs' July 18 Proposal, (b) Fry's July 26 Proposal, or (c) any new position proposed to the Court in good faith by Fry's or Class Plaintiffs as falling between the other two proposals, should be accepted by the Court as the most appropriate resolution of the motion to compel. Powell Decl., Ex. 8 [August 6 Stipulation & Order – D.I. 427]. Class Plaintiffs and Fry's submitted briefing to the Special Master in accordance with the August 6 Stipulation & Order. Powell Decl., Exs. 9 [Class Plaintiffs' Opening Brief dated August 10, 2007 – D.I. 437]; 10 [Fry's Opposition dated August 20, 2007 – D.I. 452]; 11 [Class Plaintiffs' Reply dated August 27, 2007 – D.I. 459]. Pursuant to provision (c) of the August 6 Stipulation & Order, Fry's proposed in its August 20, 2007 brief to produce monthly purchase and sales transaction and annual aggregate financial inducement data for Gateway, eMachines, and Toshiba brands, in addition to monthly financial inducements received by Fry's directly from Intel, in full satisfaction of Fry's obligations under the subpoena ("August 20 Proposal").

A hearing was held on September 11, 2007, following nearly six months of protracted negotiations, wherein the Special Master was to choose which of the three proposals -- Class Plaintiffs July 18 Proposal, Fry's July 26 Proposal or Fry's August 20 Proposal -- would be

5.

deemed to be in full satisfaction of the Class Plaintiffs' subpoena based upon the evidentiary record presented by Fry's and the Class Plaintiffs. Powell Decl., Ex. 12 [September 11 Transcript]. This proceeding reflected an accommodation reached by Fry's and Class Plaintiffs following months of negotiations. At the hearing, the Special Master concluded that a "relevance" standard applied, as opposed to the "substantial need" standard argued for by Fry's. September 11 Transcript at 30:17-18. Applying the relevance standard, the Special Master ordered Fry's to produce data in accordance with Class Plaintiffs' proposal. *Id*. at 31:1-4. The Special Master also went beyond the scope of Class Plaintiffs' proposal by ordering: "as to incentive payments received from HP after its acquisition of Compaq in 2002, Fry's must produce either data based on a proper allocation of the incentive payments to Fry's purchases of HP-brand computers alone, or documents and/or data sufficient for Class Plaintiffs to perform such allocation; and as to incentive payments received from Gateway, Inc. after its acquisition of eMachines in 2004, Fry's must produce either data based on a proper allocation of the inventive payments to Fry's purchases of Gateway-brand computers alone, or documents and/or data sufficient for Class Plaintiffs to perform such allocation." September 28 Report, D.I. 482 at ¶ 1.c.

III.  LEGAL STANDARD APPLICABLE TO MOTION TO COMPEL TRADE SECRETS

Where, as here, a non-party objects to disclosure of its information on the basis that the information is trade secret, confidential, and protected by the right of privacy, the burden shifts to the requesting party to make a "particularized showing" that the "confidential information is relevant and necessary to its case." *In re: Indep. Serv. Orgs. Antitrust Litig.*, 162 F.R.D. 355, 358 (D. Kan. 1995) ("Close examination of Xerox's arguments as to need reveal primarily supposition, rather than a particularized showing of substantial need."). Furthermore,

6.

"even if the information sought is relevant, discovery [from a nonparty] is *not* allowed where no need is shown or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (emphasis added); *accord Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980).

IV.    CLASS PLAINTIFFS HAVE FAILED TO REBUT FRY'S PRIMA FACIE SHOWING THAT THE SALES TRANSACTION DATA SOUGHT TO BE PRODUCED IS TRADE SECRET INFORMATION

Fry's is a privately held business and a relatively small outlet for retail sales of computer systems at issue in the underlying antitrust litigation. As a privately held company, Fry's does not publicly disclose any of its financial information, including the sales and transaction information sought by Class Plaintiffs. As a result, Fry's enjoys a competitive advantage over the larger, publicly traded retailers as it is able to prevent its competitors from learning what volume of sales Fry's has at any given point in time, or from determining what pricing and incentives Fry's is able to negotiate from the computer manufacturers.

In their original opening brief, Class Plaintiffs did not dispute that Fry's transactional data is "trade secret." Powell Decl., Ex. 4 [March 29, 2007 Opening Brief]. In fact, at the original hearing on Class Plaintiffs' motion, the Special Master specifically asked Class Plaintiffs if they disputed the trade secret status of the data requested from Fry's. Powell Decl., Ex. 6 at 19:21-20:10 [May 1 Transcript]. Class Plaintiffs' counsel initially indicated that Class Plaintiffs' "partially" disputed Fry's assertion of trade secret privilege but opted not to present any evidence or argument on that issue during the hearing despite repeated statements by Fry's counsel concerning the "undisputed" trade secret status of the data being requested. *Id*. at 20:7-8, 22:2-7, 40:20-41:1; 79:11-18, 83:6-12. As set forth in the Declarations of Rajesh Seth

7.

and Jerry Payne, and unrebutted by Class Plaintiffs, Fry's takes substantial measures to ensure the secrecy of its pricing information, inventories, marketing incentives, and profit margins. Furthermore, it is axiomatic that such information is trade secret. *See e.g.*, *Courtesy Temporary Serv. Inc. v. Camacho*, (1990) 222 Cal. App. 3d 1278; *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244 (3d Cir. 1985).

Although Class Plaintiffs did not dispute the trade secret status of Fry's information in their earlier reply in support of their motion to compel, they belatedly argued without evidentiary support of any kind that Fry's data "is not confidential, not known only to Fry's" and that Fry's declarations fail to demonstrate that it has a trade secret interest in its actual data. Powell Decl, Ex. 13 [Class Plaintiffs' Letter Brief dated May 7, 2007 – D.I. 352]. This argument should be rejected as too late. Fry's submitted its declarations in its April 17 response to the motion to compel, and if Class Plaintiffs had wanted to argue that the declarations were insufficient, it should have done so in its reply and before the hearing, so that Fry's could have a fair opportunity to respond, and if appropriate, adduce evidence at the hearing. Powell Decl., Ex. 14 [Fry's Letter Brief dated May 9, 2007 – D.I. 354].

Notwithstanding the complete lack of evidence to rebut Fry's evidentiary showing, Class Plaintiffs' arguments are further deficient as they ignore well established trade secret law. The fact that information consists of an aggregation of many pieces of information, each of which individually might be public, does not negate trade secret status if the aggregation is not readily ascertainable. Class Plaintiffs do not explain how all the individual sales data could be transformed in any readily ascertainable way into the aggregation in Fry's possession. The Federal Circuit, for example, has noted that "Ninth Circuit law upholds trade secret status even had the same information been obtainable from other sources" and that "trade secrecy is not

8.

negated because defendant by an expenditure of effort might have collected the same information from sources available to the public." *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1243-44 (Fed. Cir. 1989) (*citing Clark v. Bunker*, 453 F.2d 1006 (9th Cir. 1972)); *see also*, *Franklin Fibre-Lamitex Corp. v. Marvec Mfg., Inc.*, No. 12782, 1997 WL 153825 (Del. Ch. Mar. 26, 1997) (observing that, because "it took years for plaintiff to acquire this information [relating to customer purchasing needs and the prices customers paid]," it could reasonably be inferred that the information could not easily be obtained by random "cold calling.")

Moreover, Class Plaintiffs present no evidence or authority in support of the notion that all of the individual pieces of underlying data are public. Their mere attorney argument cannot counter the actual evidence that Fry's put in the record. The declaration of Rajesh Seth dated April 17, 2007 avers that Fry's information about "pricing, profit margins, inventories, marketing development funds" is not publicly known (and its disclosure to Fry's competitors or to manufacturers would cause Fry's serious harm, for example, from loss of bargaining power). Powell Decl., Ex. 15 [Seth Declaration dated April 17, 2007 – D.I. 325]. He also avers that "Fry's methodologies regarding pricing, inventories, marketing, profitability" are not public and that the disclosure of this information would allow its competitors more effectively to compete against Fry's. *Id*. Ultimately, the Special Master concluded that "Fry's commercial or trade secrets are adequately protected under the [existing] Protective Order." May 18 Report, D.I. 367 at 22. And during the September 11, 2007 hearing, the Special Master confirmed that the trade secret status of the information being requested had already been decided:

> MR. STONE: Thank you, Your Honor, Just briefly on the trade secret point, frankly, we were surprised by the way Class had raised the issue just because we thought it was an issue that had

9.

>already been resolved and that Your Honor had previously addressed in the context of the protective order.
>
>SPECIAL MASTER POPPITI: Exactly.

September 11, 2007 Transcript at 29:3-9. The trade secret status of this information has never seriously been contested during these proceedings, and Class Plaintiffs cannot now be heard to complain on this issue.

V. **CLASS PLAINTIFFS HAVE NOT MADE A PARTICULARIZED SHOWING OF NEED FOR ANY DATA IN EXCESS OF FRY'S PROPOSAL**

Class Plaintiffs have -- throughout this proceeding -- failed to meet their burden of showing substantial need for any sales transaction data let alone all of the data sought by Class Plaintiffs' July 18 Proposal. As set forth in Fry's April 17, 2007 Letter Brief, Class Plaintiffs have presented the Court with no legal authority to support its assertions that empirical sales transaction data is necessary to establish class certification or otherwise. *See* Powell Decl., Ex. 5 at 3-4 [Fry's April 17, 2007 Letter Brief]. Nevertheless, even assuming Class Plaintiffs could meet their burden of showing substantial need for some amount of sales transaction data, the Court must weigh the need against the potential for competitive harm to Fry's in determining how much of Fry's trade secret sales transaction and financial inducement data should be ordered produced. *See e.g., Cytodyne Techs., Inc. v. Biogenic Techs., Inc.*, 216 F.R.D. 533 (M.D. Fla. 2003).

Therefore, based on the showing made by Class Plaintiffs, the Special Master should have adopted Fry's proposal to produce monthly sales transaction data and annual aggregate financial inducement data for Toshiba, Gateway and eMachines for two compelling reasons: (1) combined, the data represents **Redacted**

10.

**Redacted**

and (2) the data is, according to Class Plaintiffs' own expert, sufficiently diverse to achieve statistical significance.

A. Fry's Proposal **Redacted** of Fry's Total Computer System Sales

From 2000 to the present, the combined sales of Toshiba, Gateway and eMachine brands represent more **Redacted** Fry's total computer system sales. Powell Decl., Ex. 16, ¶ 2 [Seth Declaration dated August 20, 2007 – D.I. 454]. Moreover, the brands selected for Fry's proposal are significant not only in terms of revenue but particularly in terms of number of units sold. For instance, in calendar years 2000 and 2001, eMachines was **Redacted** for 2000 and 2001. *Id*. In addition, Toshiba **Redacted** in each of years 2000 through 2007 and was **Redacted** in 2000 in terms of **Redacted** *Id*.

In contrast, the information requested by Class Plaintiffs (data for HP, Toshiba, Gateway, and Compaq) represents **Redacted** For example, in several years, the data for these four vendors would comprise **Redacted** and more than **Redacted** *Id*., ¶ 3. Class Plaintiffs and their expert have admitted that this amount of data is simply not necessary. *See* Powell Decl., Ex. 10 at Appendix A [Fry's Opposition dated August 20, 2007]; Ex. 9 at 2 [Class Plaintiffs' Opening Brief dated August 10, 2007]; and Ex. 17 [December 4, 2003 Article titled "Sample size and statistical significance"] (indicating that as a "rough rule of thumb," a sample size should be about "10%" of the universe of interest). Accordingly, Class Plaintiffs' proposal should have been disregarded as it is facially overbroad.

11.

    B.    Fry's Proposal Meets The Criteria Set Forth In Class Plaintiffs' Expert Declaration

Class Plaintiffs and their expert Jonathan M. Orszag state that an acceptable proposal must (1) **Redacted** and (2) **Redacted** **Redacted**

Powell Decl., Ex. 18 [Declaration of Jonathan Orszag dated August 10, 2007 – D.I. 437, Ex. 2]. Fry's August 20 Proposal -- which includes data for Toshiba, Gateway and eMachines -- includes both the requisite **Redacted** and **Redacted** criteria set forth by Class Plaintiffs. Class Plaintiffs concede that they need **Redacted**

*See* Powell Decl., Ex. 10 at Appendix A; Ex. 9 at 2; Ex. 19 [July 9, 2007 Email from M. Powell to D. Small]; Ex. 20 [July 17, 2007 Email from M. Powell to D. Small]; and Ex. 21 [Email Chain Including July 18, 2007 Response from M. Powell to D. Small].

Fry's proposal includes data for three separate and independent vendors (Toshiba, eMachines and Gateway). In 2004, Gateway acquired eMachines but continued to sell computer systems under the eMachines brand. For this period, 2004-2007, Fry's proposes to produce the total financial inducements received from Gateway for both the Gateway and eMachines brands. Class Plaintiffs acknowledge that such data is **Redacted**

*See* Powell Decl., Ex. 9 at 3, n.3 **Redacted**

12.

## VI. THE SPECIAL MASTER'S ORDER EXCEEDED THE SCOPE OF CLASS PLAINTIFFS' JULY 18 PROPOSAL

In their July 18 Proposal, Class Plaintiffs requested:

**Redacted**

Powell Decl., Ex. 22 [Email from Dan Small dated July 18, 2007]. In the August 6 Stipulation & Order, Fry's and Class Plaintiffs agreed, and the Court ordered, that the issue to be decided by the Court on the motion to compel would be limited to whether (a) Class Plaintiffs' July 18 Proposal, (b) Fry's July 26 Proposal, or (c) any new position, proposed to the Court in good faith by Fry's or Class Plaintiffs as falling between the other two proposals, should be accepted by the Court as the most appropriate resolution of the motion to compel. Powell Decl., Ex. 8 at 1-2.

Despite this agreed limitation, however, the Special Master went beyond the scope of Class Plaintiffs' proposal by ordering: "as to incentive payments received from HP after its acquisition of Compaq in 2002, Fry's must produce either data based on a proper allocation of the incentive payments to Fry's purchases of HP-brand computers alone, or

13.

documents and/or data sufficient for Class Plaintiffs to perform such allocation; and as to incentive payments received from Gateway, Inc. after its acquisition of eMachines in 2004, Fry's must produce either data based on a proper allocation of the inventive payments to Fry's purchases of Gateway-brand computers alone, or documents and/or data sufficient for Class Plaintiffs to perform such allocation." September 28 Report, D.I. 482 at ¶ 1.c.

Fry's therefore objects to the September 28 Report on the grounds that the relief afforded to Class Plaintiffs is in excess of what was requested. In the event the Court orders production in accordance in Class Plaintiffs' July 18 Proposal, Fry's submits that the paragraph 1.c. of the September 28 Report should be limited to the following:

> c. By OEM, yearly aggregate totals of all incentive payments received from HP, Compaq, Toshiba and Gateway for the years 200-2006, inclusive, limited to incentives received for computer purchases as opposed to other products Fry's may buy from these vendors.

## CONCLUSION

Class Plaintiffs seek production of Fry's most sensitive commercial information including the price it pays manufacturers for the computer systems it then resells to consumers and its profit margins. Class Plaintiffs have not, however, made a particularized showing of need for all of the data sought by their proposal. In consideration of the extreme sensitivity of this information, Fry's has tried very hard and expended considerable financial resources to get Class Plaintiffs to reduce the amount of data requested to the minimum necessary for Class Plaintiffs to meet their burden of proof concerning their "pass-through" allegations. While Class Plaintiffs' demands continue to be a moving target, Class Plaintiffs have **Redacted**

Despite these admissions, Class Plaintiffs' proposal would **Redacted**

14.

**Redacted**     Class Plaintiffs' did not make a particularized showing of substantial need for this amount of sales transaction data.

Class Plaintiffs' proposal requires production of more data than is reasonably necessary for Class Plaintiffs to meet their burden of proof.  By contrast, Fry's August 20 Proposal presents the most balanced resolution of the current discovery dispute as it requires production of the minimum amount of trade-secret data that meets Class Plaintiffs own criteria, thus accommodating both parties concerns.  Because Class Plaintiffs have failed to make the requisite showing of need for production of any data **Redacted** sales transactions, the Court should adopt Fry's current offer to produce monthly sales transaction and annual aggregate financial inducement data for Gateway, eMachines and Toshiba brands, in addition to monthly financial inducements received by Fry's directly from Intel.  This production will be in full and complete satisfaction of Class Plaintiffs June 23, 2006 Subpoena.

                MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                */s/ James W. Parrett, Jr. (#4292)*
                _____
                Mary B. Graham (#2256)
                James W. Parrett, Jr. (#4292)
                1201 N. Market Street
                P.O. Box 1347
                Wilmington, DE  19899-1347
OF COUNSEL:          302.658.9200

Robert W. Stone         *Attorneys for Nonparty Fry's Electronics, Inc.*
Michael D. Powell
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94065
650.801.5000

Dated:  October 18, 2007
1279776

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 25, 2007, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that on October 25, 2007 true and correct copies of the foregoing were caused to be served upon the following parties in the manner indicated:

**VIA E-MAIL:**

Vincent J. Poppiti
BLANK ROME LLP
poppiti@blankrome.com

WITH A COPY TO:

Elizabeth Oestreich
BLANK ROME LLP
oestreich@blankrome.com

Mary Levan
BLANK ROME LLP
levan@blankrome.com

Carrie David
BLANK ROME LLP
david-c@blankrome.com

**VIA E-MAIL:**

J. Clayton Athey
PRICKETT, JONES & ELLIOTT, P.A.
jcathey@prickett.com

James L. Holzman
PRICKETT, JONES & ELLIOTT, P.A.
jlholzman@prickett.com

Frederick L. Cottrell, III
RICHARDS, LAYTON & FINGER, P.A.
cottrell@rlf.com

Richard L. Horwitz
POTTER ANDERSON & CORROON LLP
rhorwitz@potteranderson.com

/s/ *James W. Parrett, Jr.*
_____
James W. Parrett, Jr. (#4292)

802096