IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:<br>INTEL CORP. MICROPROCESSSOR<br>ANTITRUST LITIGATION | ) ) ) ) ) | MDL Docket No. 05-1717 (JJF) |
| PHIL PAUL, on behalf of himself and all others similarly situated,<br><br>           Plaintiffs,<br>    v.<br><br>INTEL CORPORATION,<br><br>           Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 05-485 (JJF)<br><br>CONSOLIDATED |

**NONPARTY FRY'S ELECTRONICS, INC.'S REPLY
IN SUPPORT OF ITS OBJECTION TO AND REQUEST TO
<u>MODIFY SPECIAL MASTER'S SEPTEMBER 28, 2007 REPORT</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
OF COUNSEL:                       Wilmington, DE  19899-1347
                                  302.658.9200
Robert W. Stone
Michael D. Powell                 *Attorneys for Nonparty Fry's Electronics, Inc.*
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94065
650.801.5000

Dated:  November 13, 2007

1.

## INTRODUCTION

Nonparty Fry's Electronics, Inc. ("Fry's") respectfully requests leave to file this reply in response to Class Plaintiffs' November 6, 2007 opposition to Fry's objection to the Special Master's discovery report and recommendation, which report was signed on September 27, 2007 and entered by the clerk on September 28, 2007 ("Special Master's Recommendation"). Fry's objected to the Special Master's Recommendation on the grounds that the Special Master applied an incorrect legal standard in determining which of Fry's confidential and trade secret information must be produced -- having chosen to apply a straight "relevance" standard as opposed to the heightened "particularized need" standard applicable to production of trade secret and other confidential and sensitive commercial information. Fry's is not arguing that it should not have to produce <u>any</u> of the requested information; rather, Fry's asserts that it should be compelled to produce only so much sales transaction and financial incentive data as Class Plaintiffs have shown is necessary to meet their burden of proof on their "pass-through" allegations in the underlying antitrust litigation.

It is axiomatic that unrestricted disclosure of a trade secret destroys the trade secret. Therefore, compelled production of trade secret and other confidential materials must always be conditioned upon entry of a satisfactory order to protect the secrecy of the information being produced. And when a document request seeks production of trade secret materials, the requesting party must make a particularized showing of necessity regardless of whether a protective order has been entered. If the law were as Class Plaintiffs contend -- that once a protective order is in place there is no requirement for a requesting party to make such a particularized showing of necessity -- then entry of a protective order would be the exception that completely swallows the rule since unrestricted production and disclosure of a trade secret (*i.e.*, without a protective order) would destroy its very trade secret status.

2.

For the reasons set forth herein and in Fry's objection, Fry's submits that Class Plaintiffs have failed to make the required showing of necessity with respect to all of the information ordered produced in the Special Masters' Recommendation. Accordingly, Fry's respectfully requests that it only be ordered to produce those materials identified in Fry's August 20 Proposal as set forth in its objection.

I. ENTRY OF A PROTECTIVE ORDER WHICH LIMITS TO WHOM CONFIDENTIAL DISCOVERY MATERIAL MAY BE DISCLOSED DOES NOT ELIMINATE THE NEED TO MAKE A PARTICULARIZED SHOWING OF NECESSITY WITH RESPECT TO THE PRODUCTION OF TRADE SECRET OR CONFIDENTIAL INFORMATION FROM A NONPARTY

Class Plaintiffs' principle argument is that "the stricter [necessity] standard that can apply to discovery of trade secrets [does] not apply here because Fry's data were adequately protected by the Protective Order." Opp'n at 9. This argument, however, goes directly against this Court's precedent. In *Mannington Mills, Inc. v. Armstrong World Industries, Inc.*, this Court held that "[a] protective order which limits to whom information may be disclosed does not eliminate the requirement of relevance and need." *Mannington Mills*, 206 F.R.D. 525, 531 (D. Del. 2002) (quoting *Coca-Cola Bottling Co. v. Coca Cola Co.*, 107 F.R.D. 288, 293 (D. Del. 1985)). "If the information sought is confidential and its disclosure might be harmful, then 'the burden shifts to the party seeking discovery to establish that disclosure of trade secrets and confidential information is relevant and necessary to its case.'" *Mannington Mills* at 528 (*quoting Am. Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987)). Moreover, when a nonparty is being asked to produce confidential, proprietary or other sensitive information, there is an even higher showing of necessity required prior to compelled disclosure. *See, e.g.*, *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (quoting *Collins & Aikman Corp. v. J. P. Stevens & Co., Inc.*, 51 F.R.D. 219, 221 (D.S.C. 1971)) ("There appear to

3.

be quite strong considerations indicating that discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents.").

In view of this precedent, the Special Master was required to determine whether or not Class Plaintiffs had made a particularized showing of substantial need for all of the data ordered produced. Nonetheless, the Special Master's Recommendation expressly states that the Special Master applied only a relevance standard and made no findings as to whether Class Plaintiffs made the required showing of necessity. Fry's objection should therefore be sustained.

Class Plaintiffs' further argument on this point -- that Fry's cannot make a showing of harm since the Court-ordered protective order limits disclosure of confidential material to attorneys, consultants and in-house counsel -- has likewise been rejected by this Court. *Mannington Mills* at 530-31; *see also In re: Indep. Serv. Orgs. Antitrust Litig.*, 162 F.R.D. 355, 357-58 (D. Kan. 1995) (denying motion to compel disclosure of trade secret from defendant despite a showing of relevance and the entry of a protective order limiting disclosure to attorneys' eyes only). Moreover, Class Plaintiffs themselves recognize that the protections in the Court-ordered protective order are not adequate for all types of discovery materials. Just two days after filing its opposition to Fry's objection, Class Plaintiffs submitted a letter to this Court on November 8, 2007 asking for additional protections regarding the production of their confidential fee agreements because "these fee agreements are highly sensitive and we are extremely reluctant to disclose them to Intel or AMD, even subject to a 'confidential' designation pursuant to Your Honor's September 26, 2006 Protective Order." (D.I. 643.) Class Plaintiffs should not be heard to impose a standard on nonparty Fry's which they themselves are not willing to live by.

4.

## II. FRY'S HAS MADE A PRIMA FACIE SHOWING THAT THE DATA TO BE PRODUCED IS A TRADE SECRET

Class Plaintiffs also argue that Fry's has not demonstrated the trade secret nature of the requested data. Class Plaintiffs are wrong. In its initial opposition to Class Plaintiffs' motion to compel production of sales transaction data, Fry's made a prima facie showing that the requested discovery constituted a protectible trade secret. Subsequently, Class Plaintiffs have failed to rebut this showing with any admissible evidence.

### A. The Data Ordered Produced Is A Trade Secret

Class Plaintiffs set forth the statutory definition of a trade secret under Delaware law: "Information . . . that: a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Opp'n at 13.

In the April 17, 2007 Declaration of Rajesh Seth, Fry's established that the aggregate sales and incentive data maintained in its proprietary Merchant Master system meets this statutory definition as it is "not generally disclosed to vendors, manufacturers, or the public" and because disclosure of the "pricing, profit margins, inventories, marketing development funds" to Fry's competitors or to manufacturers would cause Fry's to "lose its bargaining power" because competitors could use the information "to negotiate similar pricing arrangements with the manufacturers or to more effectively price their products to consumers." *See* Declaration of Michael D. Powell in Support of Fry's Objection ("Powell Decl."), Ex. 15 at ¶ 5 [Declaration Rajesh Seth]. With regard to financial inducements from Intel and AMD, Mr. Seth declares that the amounts paid by these competitors are "closely guarded secrets" which if publicly disclosed would enable Intel or AMD to use "the information to negotiate lower incentives once it learned

that the other was paying a lower rate." *Id.* at ¶ 6. With respect to both sets of information -- transaction data and financial incentives -- Mr. Seth confirms that Fry's takes considerable steps to ensure the secrecy of this information by restricting access to this information to authorized employees only. *Id.* at ¶¶ 4-6.

Pursuant to Mr. Seth's declaration, Fry's sales transaction and financial incentive data meets the statutory definition of a trade secret because: (1) Fry's takes appropriate measures to maintain the secrecy of the data which is not readily ascertainable by proper means and (2) Fry's retail competitors and vendors could use the secret information to obtain an economic benefit by negotiating similar pricing arrangements and/or similar incentives, thereby destroying Fry's competitive advantage. Accordingly, Class Plaintiffs' suggestion to the contrary should be rejected.

> B.  Because The Data Ordered Produced Will Necessarily Disclose Fry's Pricing, Inventory, Marketing and Profitability Methodologies, Class Plaintiffs' Argument That Much Of The Data Is Obsolete Must Be Rejected.

Class Plaintiffs also assert that the data ordered produced is not trade secret because it "almost entirely concerns competitively obsolete transactions that occurred as early as 2000." Opp'n at 13. Once again, Class Plaintiffs miss the point and fail to counter the evidence presented by Fry's. In his April 17, 2007 declaration, Mr. Seth asserts that "disclosure of such information would allow manufacturers and other retailers [to] more effectively compete with Fry's because it would disclose Fry's methodologies regarding pricing, inventories, marketing, profitability." Seth Decl. at ¶ 5. The fact that certain computer models have short life cycles is of no consequence since historical sales and incentive data will reveal Fry's proprietary methodologies. Class Plaintiffs' argument on this ground must also be rejected.

5.

6.

        C.        **Class Plaintiffs' Argument That It Originally Sought Transaction Level Data Is A Red Herring.**

Class Plaintiffs argue that Fry's evidence should be disregarded because at the time Fry's submitted Mr. Seth's declaration, Class Plaintiffs were only seeking "transaction level data for all computers purchased and sold by Fry's" whereas the Special Master's Recommendation concerns production of "aggregated" monthly and annual data for a "subset of Fry's computer purchases and sales." Opp'n at 13. This argument is unfounded for at least two reasons. <u>First</u>, Class Plaintiffs mischaracterize their own document requests as their subpoena seeks exactly the type of aggregated data that the Special Master has ordered produced. Document request 7(c) seeks "your COMPANY'S purchases of COMPUTER SYSTEMS for resale **on a monthly basis**." *See* Powell Decl., Ex. 2. In its original opposition to Class Plaintiffs' motion to compel, Fry's made a prima facie showing that this "aggregated" monthly sales data was a protectible trade secret. <u>Second</u>, the fact that a subset of trade secret data is to be produced does not alter the simple fact that the data (all or a portion of it) is a trade secret.

The April 17, 2007 Declaration of Rajesh Seth sets forth a prima facie showing of trade secret status for the "aggregated" data maintained in its proprietary Merchant Master database. Class Plaintiffs have presented no admissible evidence to the contrary. Accordingly, Fry's objection should be sustained.

7.

## CONCLUSION

For the foregoing reasons, Fry's objection to the Special Master's Recommendation should be sustained. Class Plaintiffs' proposal requires production of more data than is reasonably necessary for Class Plaintiffs to meet their burden of proof. By contrast, Fry's August 20 Proposal presents the most balanced resolution of the current discovery dispute as it requires production of the minimum amount of trade-secret data that meets Class Plaintiffs own criteria, thus accommodating both parties concerns. Because Class Plaintiffs have failed to make the requisite showing of need for production of any data in excess of 10% of the total sales transactions, the Court should enter an order in accordance with Fry's offer to produce monthly sales transaction and annual aggregate financial inducement data for Gateway, eMachines and Toshiba brands, in addition to monthly financial inducements received by Fry's directly from Intel. This production will be in full and complete satisfaction of Class Plaintiffs June 23, 2006 Subpoena.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ James W. Parrett, Jr. (#4292)*
_____
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
302.658.9200

*Attorneys for Nonparty Fry's Electronics, Inc.*

OF COUNSEL:

Robert W. Stone
Michael D. Powell
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
650.801.5000

Dated: November 13, 2007
1313065

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 13, 2007, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that on November 13, 2007 true and correct copies of the foregoing were caused to be served upon the following parties in the manner indicated:

**VIA HAND DELIVERY (in triplicate):**

Vincent J. Poppiti
BLANK ROME LLP
1201 North Market Street, Suite 800
Wilmington, DE  19801-4226

**VIA E-MAIL:**

Vincent J. Poppiti
BLANK ROME LLP
**poppiti@blankrome.com**

WITH A COPY TO:

Elizabeth Oestreich
BLANK ROME LLP
**oestreich@blankrome.com**

Mary Levan
BLANK ROME LLP
**levan@blankrome.com**

Carrie David
BLANK ROME LLP
**david-c@blankrome.com**

**VIA E-MAIL:**

J. Clayton Athey
PRICKETT, JONES & ELLIOTT, P.A.
**jcathey@prickett.com**

James L. Holzman
PRICKETT, JONES & ELLIOTT, P.A.
**jlholzman@prickett.com**

Frederick L. Cottrell, III
RICHARDS, LAYTON & FINGER, P.A.
**cottrell@rlf.com**

Richard L. Horwitz
POTTER ANDERSON & CORROON LLP
**rhorwitz@potteranderson.com**

*/s/ James W. Parrett, Jr. (#4292)*
_____
James W. Parrett, Jr. (#4292)

1313065