FREDERICK L. COTTRELL, III
DIRECTOR

**RICHARDS, LAYTON & FINGER**
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX: (302) 651-7701
WWW.RLF.COM

DIRECT DIAL
(302) 651-7509
COTTRELL@RLF.COM

December 28, 2007

**VIA ELECTRONIC MAIL & HAND DELIVERY**
The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 North Market Street
Wilmington, DE  19801-4226

   Re: *Advanced Micro Devices, Inc., et al. v. Intel Corporation, et al.*, C.A. No. 05-441-JJF; *In re Intel Corporation*, C.A. No. 05-MD-1717-JJF; and *Phil Paul, et al. v. Intel Corporation*, C.A. 05-484-JJF, Discovery Matter No. _____

Dear Judge Poppiti:

  Advanced Micro Devices, Inc., AMD International Sales & Service, Ltd., and Class Plaintiffs (collectively, "Plaintiffs") hereby move for an Order compelling Intel Corporation and Intel Kabushiki Kaisha (collectively, "Intel") to produce documents and Rule 30(b)(6) testimony relating to Intel's document preservation practices in prior cases, and specifically whether in the past it has turned off the email "auto delete" function that was allowed to continue to purge messages relevant to this case for nearly two years after its commencement.  *See* AMD's Notice of Taking Deposition and Request for Production,  Deposition Topic Nos. 1 and 2, Request Nos. 1 and 2 (Apr. 10, 2007) (D.I. 312 in Docket 05-441-JJF and attached hereto as Exhibit A).

  **I. Preliminary Statement.**  At the outset of this litigation, citing impracticability, Intel decided not to suspend its "auto-deletion" of employee email notwithstanding Plaintiffs' expressed concerns.  Instead, it assured Plaintiffs that its ongoing automatic deletion of emails would not interfere with its preservation obligations because (1) it had instructed all custodians to preserve all relevant e-mails and would continue to do so, and (2) it would move all custodians to a group of dedicated Exchange servers that would be backed up on a regular weekly cycle, and would preserve the weekly backup tapes.[1]  Intel did neither.  It neglected to send litigation hold notices to hundreds

---

[1] Intel made these representations in a letter dated October 14, 2005, authored by attorney John J. Rosenthal of the Howrey firm.  Because Mr. Rosenthal has asserted that his letter was "off the record" (a point Plaintiffs disputed at the time and continue to dispute) we have elected not to attach it to this brief in the expectation that Intel will do so in its response so that Your Honor has all of the pertinent facts.

RLF1-3239135-1

of employees (more than a third of its custodians) and neglected to migrate the mailboxes of an even larger number of custodians to the dedicated backup servers. Intel's Report and Proposed Remediation Plan, at 21-22, 26-27 (Apr. 23, 2007) (D.I. 321) ("Intel's Report"). And even after Intel discovered in the Fall of 2006 that many of its most important custodians were not complying with its litigation hold notice, and that its backup system had failed as well, Intel inexplicably kept the auto-delete email shredder running. After it eventually made disclosure of its preservation lapses to Plaintiffs in February 2007—and only in the face of a threat by Plaintiffs to seek a Court Order if it didn't—Intel finally did exactly what it claims was impossible for it to have done at the outset of litigation in 2005: it disabled the auto-delete function.

On April 10 and 11, 2007, Plaintiffs served discovery requests seeking, *inter alia*, documents and testimony concerning: (1) any standard Intel corporate evidence preservation policies and practices applied in connection with actual or threatened litigation, and/or governmental or internal investigations, and any deviation from such policies in the past ten years; and (2) the operation, purpose and application of Intel's automatic deletion policies and practices applied to email or other electronic data, and any deviation from those policies over the past ten years. *See* D.I. 312 at Deposition Topic Nos. 1 and 2, Document Request Nos. 1 and 2. *See also* Stipulation and Order Bifurcating Discovery into Intel's Evidence Preservation Issues (June 20, 2007) (D.I. 382) ("Bifurcation Order") ("Plaintiffs shall complete Causation/Culpability Discovery prior to responding to Intel's assertions as to its evidence preservation program, how its various evidence preservation lapses occurred, and Intel's culpability for those lapses, as discussed at pages 1-30 of Intel's Remediation Plan."). Intel has refused to comply with Plaintiffs' requests, asserting that the practices Intel followed in other litigations are privileged and beyond the scope of the discovery contemplated by the Special Master's Order. *See* Intel's Supplemental Responses and Objections to Plaintiffs' Notice of Taking Deposition and Request for Production of Documents, at 6-8, 22-23 (Oct. 4, 2007), attached hereto as Exhibit B. The parties have repeatedly met and conferred to resolve this issue but are at impasse.

**II. Discussion.**

**a. Relevance.** Intel's relevance objection to AMD's discovery into its prior practices is pure makeweight. Whether Intel has turned off its auto-delete system in connection with other cases is clearly germane to the question whether doing so would have been possible or practical in 2005, at the outset of this case. *Mosaid Technologies Inc. v. Samsung Electronics Co., Ltd.*, 348 F. Supp. 2d 332 (D.N.J. 2004), is directly on point. In *Mosaid*, the defendant knew it had a duty to preserve potentially discoverable evidence, including emails. But it never shut off its email auto-delete policy, and, unchecked, the system "allowed e-mails to be deleted, or at least to become inaccessible, on a rolling basis." 348 F. Supp. 2d at 333. The court found that the defendant's actions warranted the sanction of a spoliation inference because, in part, "Samsung also *knew how to institute a 'litigation hold' and stop the spoliation of e-mails, having done so in one of its divisions in another litigation beginning in 2002*. And yet, Samsung failed to institute a 'litigation hold' when this litigation began." *Id.* at 338 (emphasis added). In upholding the magistrate judge's imposition of a spoliation inference jury instruction, the court concluded, "When the duty to preserve is triggered, it cannot be a defense to a spoliation claim that the party inadvertently failed to place a 'litigation hold' or 'off switch' on its document retention policy to stop the destruction of that evidence." *Id.* at 339.

2

Intel's intentional decision to leave auto-delete running will be evaluated by the Court alongside the many other failings Intel claims were simply the result of "human error." Particularly if Intel had disabled auto-delete in the past, the fateful decision to keep it running, standing alone, is highly suspect and raises serious questions about Intel's commitment to preserving documents in this case. *See* Fed. R. Civ. P. 37(f) advisory committee's note (2006) ("The good faith requirement of Rule 37(f) means that a party is not permitted to exploit the routine operation of an information system to thwart discovery obligations by allowing that operation to continue in order to destroy specific stored information that it is required to preserve."); *Peskoff v. Faber*, 244 F.R.D. 54, 60 (D.D.C. 2007) ("The Advisory Committee comments to amended Rule 37(f) make it clear that any automatic deletion feature should be turned off and a litigation hold imposed once litigation can be reasonably anticipated."). *See also Disability Rights Council of Greater Washington v. Washington Metropolitan Transit Authority*, 242 F.R.D. 139, 146 (D.D.C. 2007) (defendant's failure to disable its email system's automatic deletion feature during the course of the litigation was "indefensible").

Intel's prior practices are also factually relevant and central to Plaintiffs' response to "Intel's assertions as to its evidence preservation program, how its various evidence preservation lapses occurred, and Intel's culpability for those lapses, as discussed at pages 1-30 of Intel's Remediation Plan." Bifurcation Order, at ¶ 5. Intel told the Court that it reached the good faith and reasonable conclusion that the automatic deletion function on its custodians' mailboxes could not be turned off. *See* Intel's Report, at 14 ("Intel concluded that the aging limitations on all Exchange mailboxes could not, as a practical matter, be turned off as part of the preservation effort."). Intel maintains (1) that suspending auto-delete was too expensive and would have posed a risk to its servers[2]; (2) that its preservation measures were reasonable and "exemplified best practices"[3]; and (3) that its actions were consistent with procedures taken during prior litigations. *See* Letter from Richard L. Horwitz to the Honorable Joseph J. Farnan, Jr., at 2 (Mar. 5, 2007) (D.I. 293) ("Intel also sent litigation hold notices to hundreds of employees . . . . The basic form of notice had been used in previous Intel litigation."). For Plaintiffs to adequately respond to and test these three assertions, Plaintiffs must examine and understand Intel's prior practices in other litigations.

Intel has repeatedly stated that turning off the auto-delete system for "*all*" of its Exchange mailboxes would have posed an unacceptable business risk and expense. Even if that were so, Intel has been notably silent on the question of why it could not simply have suspended the automatic purge for *only* its relevant employees. Preliminary evidence shows not only that it was technically feasible to selectively suspend auto-delete, but that doing so would have initially cost no more than $55,000. *See* Plaintiffs' Response to Pages 30-39 of Intel's Proposed Remediation Plan, at Ex. B-4 (Sept. 11, 2007) (D.I. 425). If Intel suspended auto-delete for selected custodians in prior cases,

---

[2] *See* Intel's Reply to Plaintiffs' Response to Pages 30-39 of Intel's Proposed Remediation Plan, at 22 & n.50 (Sept. 25, 2007) (D.I. 434) ("Intel's Reply").

[3] *See* Letter from Richard L. Horwitz to the Hon. Joseph J. Farnan, Jr., at 3 (Mar. 5, 2007) (D.I. 293) ("From a process standpoint, Intel acted promptly to set up a reasonable and thorough tiered process that exemplified best practices in such a massive case. . . . Intel's objective was to go beyond the standard of reasonableness . . . .").

why could it not have done so here?  And if it could, how can it claim here that it acted in good faith?

Evidence of Intel's past practices also speaks directly to Intel's assertion that it was employing "best practices" in this case.  To the extent that Intel has suspended auto-delete in other litigation, Intel's conduct here would demonstrate a deviation from procedures that were likely designed to effectively preserve all relevant evidence.  *See, e.g., Koons v. Aventis Pharmaceuticals, Inc.*, 367 F.3d 768, 780 (8th Cir. 2004) (fact that defendant's loss of relevant documents contravened its own document retention policy is evidence suggesting bad faith).  *See also M.P.G. Transport, Ltd. v. N.L.R.B.*, C.A. Nos. 94-6651, 95-51161, 1996 WL 400185 at *5 (6th Cir. July 15, 1996) (in employment discrimination case, employer's deviation from past practices was evidence on which a reasonable inference of discriminatory motive could be made); *E.E.O.C. v. Sears Roebuck & Co.*, No. Civ. A. 04-4245, 2006 WL 1084219, at *7 (D.N.J. Apr. 24, 2006) (same); *Anderson v. Siemen's Westinghouse Power Corp.*, No. 01-4121-SAC, 2002 WL 31928492, at *3-5 (D. Kan. Dec. 30, 2002) (in personal injury suit, testimony about defendant's past practices was evidence of what could and should have been done, and of what a reasonable person would have done); *Powell v. Compucom Systems, Inc.*, No. Civ. 95-665-FR, 1996 WL 146035, at *5-6 (D. Or. Mar. 28, 1996) (in suit alleging Fair Labor Standards Act violation, court granted motion to compel documents regarding defendant's past practices because that information was relevant to defendant's "good faith" defense and plaintiff's allegation of willfulness).

Finally, Intel claims that its plan to preserve documents was consistent with what it has done in the past.  *See* Intel's Report, at 2.  Even if discovery into Intel's prior practices were not a relevant inquiry on its own merit—which it most certainly is—Intel has opened the door by defending itself on this basis.  How can Plaintiffs possibly respond to Intel's past-practices representation without knowing what they were?

**b. Attorney-Client and Work Product Privileges.**  Plaintiffs' requests do not implicate the attorney-client or work product privileges.  Plaintiffs only want to know what actions Intel has previously taken to preserve documents and to determine Intel's ability to take specific retention measures, such as suspending the email auto-delete function.  Put simply, Plaintiffs seek facts, not privileged communications or work product.  *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994) ("Facts are discoverable, the legal conclusions regarding those facts are not.  A litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer.").  To be clear, Plaintiffs do not seek the deliberations regarding auto-delete in other cases, simply the fact as to whether Intel has ever suspended the feature.  There is nothing privileged or protectible about this fact.  If Intel has suspended that feature in other litigations, it is a fact the Court needs to know to determine if Intel acted as reasonably and laudably as it contends.

For the reasons stated herein, the Court should order Intel to produce documents responsive to Plaintiffs' Request Nos. 1 and 2, and a witness to testify on Deposition Topic Nos. 1 and 2.

4

>Respectfully,
>
>*/s/ Frederick L. Cottrell, III*
>
>Frederick L. Cottrell, III (#2555)
>cottrell@rlf.com

FLC,III/afg
Attachments

cc:    Richard L. Horwitz, Esq. (via Electronic Mail)
        James L. Holzman, Esq. (via Electronic Mail)