O'MELVENY & MYERS LLP
Richard Levy, Esq., November 8, 2007 - Page 2

Some of that lack of clarity is due to what we find to be a rather indecipherable web of cross-references to other documents, undefined qualifiers, and inconsistent representations. In other instances, the responses are drafted in a manner that makes it difficult or impossible to discern whether Intel has promised a complete production in response to our requests -- or precisely what its response is. And there are areas of disagreement on which the parties appear to now be at impasse.

I set forth below AMD's position on all outstanding issues with respect to Intel's Supplemental Response. I begin with general issues of concern, and then turn to specific Deposition Topics, Document Requests and Intel's responses. We ask that Intel respond in writing to each issue identified so that neither party will have to guess at the other's position, we can resolve disputes if possible, and submit the remainder to the Special Master for decision.

**General Issues and Defects in Intel's Supplemental Response**

1. **Intel's "Retention Custodians" and Representation of Complete Responses**

AMD has requested Intel to represent that it will provide a complete and comprehensive production in response to AMD's Document Requests as drafted. Intel's representations are too caveated, modified and unclear to provide the assurance required. We raise two issues on this topic.

The first is Intel's restriction of document production to certain "Retention Custodians." As we have said, a custodian-based document production is acceptable, so long as Intel represents in writing that such a production will be comprehensive. We are in no position to make an independent assessment as to the nature of custodians' preserved materials, the completeness of their files, or their document retention practices. In its General Response to our Document Requests, however, Intel unilaterally has selected -- and states that it will produce documents from -- 17 "Retention Custodians" listed on the Supplemental Response's Exhibit A. Intel says it "believes" that 7 of those Retention Custodians had "the most significant roles with respect to the creation and/or implementation of Intel's *retention plan* . . . ." (Supplemental Response at 5.) Intel indicates that the other 10 Retention Custodians are "the individuals in the legal and IT departments of Intel whom Intel has identified *to include the key players* in the creation and implementation of the *retention plan* . . . ." (*Id.* at n.1.)

Intel appears to be using these modifiers to limit its production obligations. AMD's document requests -- and Pages 1 through 30 of Intel's Report and Proposed Remediation Plan to which AMD must respond -- cover topics far beyond Intel's original "retention plan." *See, e.g.*, Intel's Report and Proposed Remediation Plan, at 19 ("In the Fall of 2006, Intel discovered some lapses in the implementation of the *document retention program* it developed after this action was filed. *These errors were independent of the plan itself* . . . ."). Likewise, Intel's statement that the 10 employees "include the key players" in creation and implementation of the "retention plan" is not a representation that all relevant custodians with responsive documents are included; instead, Intel expressly states that they are not. (*See* Supplemental Response, n.1 at 5.)

O'MELVENY & MYERS LLP

Richard Levy, Esq., November 8, 2007 - Page 3

In addition to "retention plan" issues, the discovery that AMD seeks, and to which it is entitled, includes, among other things, information as to who discovered Intel's preservation lapses, when that discovery was made, what data was lost, and what Intel did after discovering its preservation lapses. Intel's designated "Retention Custodians" must, therefore, include the individuals who discovered and investigated the lapses in Intel's preservation scheme. And the production of documents from the custodians must constitute a comprehensive response to all of the requests as drafted, not as modified by these undefined terms Intel has used.

The second issue on this topic is Intel's self-adopted time limitations. In Exhibit A, Intel states that it will restrict its search and production of documents to specific time periods, but fails to provide any representation that all documents responsive to AMD's Document Requests were sent, received or created within the specified time periods. Notably, Intel did *not* provide such date restrictions for Eva Almirantearena, Winston Kiang, Roy Batista, Daiji Toya, or Kelly Wright, other than to specify that Ms. Almirantearena's and Mr. Batista's productions will include documents created only through March 2007. The remainder of the custodians *are* date-restricted, most of them to two time periods of collectively 9 months over three years.[1] These unexplained temporal limitations unaccompanied by a representation that all responsive documents were sent, received or created within Intel's self-selected time windows are not acceptable.

If Intel's intent is, in fact, to provide a comprehensive production in response to AMD's Document Requests, we assume it is prepared to make a clear representation to that effect. Failing appropriate representations as to the custodians whom Intel has unilaterally selected, we cannot be expected to accept Intel's custodian-based production as sufficient. Please consider making the following representation: "Intel believes in good faith after reasonable and diligent investigation that the 'Retention Custodians' identified on Exhibit A: (1) are the most important custodians with knowledge of, and documents responsive to, the information sought by AMD's 'Causation/ Culpability' Document Requests; (2) are believed to have the most documents responsive to AMD's 'Causation/Culpability' Document Requests; (3) are in possession of all of the documents which, taken together, constitute a comprehensive response to AMD's 'Causation/Culpability' Document Requests; and (4) sent, received or created all documents responsive to AMD's 'Causation/Culpability' Document Requests within the time frames specified by Intel in Exhibit A."

2.   **Limited Document Production From Certain Retention Custodians**

Intel states that, as to 10 of the Retention Custodians, it will produce only "those documents that are most likely to contain material, non-duplicative information regarding the 'Causation/Culpability' requests." (Supplemental Response, at 5.) There is either a typographical error in this sentence, or it seems obfuscatory. What does this mean? If it is

---

[1] Intel also states that it will produce documents outside the specified time periods that contain the phrase "SO3." (Supplemental Response, at 59.) It thus appears that Intel is using search terms on the corpus of custodian documents, rather than reviewing them all, and plans to withhold otherwise responsive documents merely because they do not contain that phrase. This is unacceptable, at least without explanation as to why we should accept this.

O'MELVENY & MYERS LLP
Richard Levy, Esq., November 8, 2007 - Page 4

intended to signal that Intel is not conducting a comprehensive review of these ten custodians' files and then producing all responsive materials found in them, we cannot accept this.[2] Please explain. In all events, AMD neither agrees with Intel's proposed limitation on the production from these 10 Retention Custodians, nor understands how Intel could possibly know without reviewing all the documents which are "most likely" to contain responsive information.

3.   **Intel's "Contemporaneously-Created" Production Limitation**

In the majority of its responses to specific requests, Intel identifies those Retention Custodians it believes to have an appreciable quantity of "*contemporaneously-created* relevant documents," and states that it "has produced and/or will produce additional *contemporaneously-created*, non-privileged responsive documents" obtained from those Custodians. We do not understand what Intel means by this, nor why any such limitation is appropriate. From all appearances, we have to assume that this limitation has been inserted in order to justify withholding responsive documents solely on the basis that they were *not* "contemporaneously created," or to avoid producing responsive documents from Intel personnel who are in possession of them but did not generate or receive them "contemporaneously." In either case, this limitation is unacceptable without sufficient explanation and justification.

4.   **Intel's Use of the Term "Collection" to Limit its Response Obligation**

We are unable to ascertain from Intel's Supplemental Response whether and to what extent Intel is producing only those responsive documents located in the "Collection" (also known as the "Investigation Documents"), or whether Intel has conducted a diligent search for *all* documents responsive to each request, whether or not they comprise part of the "Collection" compiled by Intel during the investigation into its retention issues. The Supplemental Response repeatedly interjects this ambiguity in its Exhibit A and in response to particular requests, leading us to believe that Intel is intentionally limiting its production to only these "Collection" documents that were gathered before AMD's Document Requests were even served and which were not collected with AMD's requests in mind.

Two examples will illustrate the problem this poses. First, AMD's Document Request No. 8 requests production of "Documents sufficient to show the 'basic form of notice that had been used in previous Intel litigation,' as referenced on page 2 of Intel's March 5, 2007 letter to the Court." Intel originally responded that it would produce responsive documents from the "Collection." Its Supplemental Response incorporates the original response by reference but goes on to identify certain custodians who possess responsive documents. The problem with all of this is that, based on what you have told us and what we have seen, there do not appear to be *any* responsive documents produced to us from the "Collection" and, indeed, you stated at our September 25 meet and confer session that Intel will *not* produce those documents. And Intel has responded to AMD's Deposition Topic No. 10 -- which seeks information about Intel's

---

[2] Specifically, if it is intended to signal that Intel is relying entirely on the use of search terms to identify responsive materials in the Custodians' files and disclaiming its production responsibilities otherwise, we do not accept this without further explanation and details.

O'MELVENY & MYERS LLP

Richard Levy, Esq., November 8, 2007 - Page 5

litigation hold practices in other cases -- by refusing to produce a witness to testify. We are left, therefore, with a response that might or might not be read as promising compliance, while everything else you have written or said refuses it. Please clarify.[3] If Intel does not intend to comply with this request, as we take to be the case and as it has thus far failed to do, we are entitled to a clear statement to that effect, rather than promises of compliance from a particular source that contains nothing responsive.

Second, Intel's Supplemental Response to Document Request No. 4 -- which seeks documents sufficient to describe Intel's "tiered" retention process -- expressly states that Intel will produce documents only from the "Collection." We see no basis for such a limitation, and are left wondering whether that limitation is intended to avoid providing us a full and complete response, especially since no Retention Custodians are identified.

This problem is pervasive. Intel's original responses promising a "Collection" production are incorporated by reference in Intel's Supplemental Responses to AMD's Document Request Nos. 4, 5, 7, 8, 9,10, 19, 20, 21, 22, 24, 26, 30, 31, 32, 34, 35, 36, 37, 38, 39 and 42. We have been provided with no representations that would justify limiting Intel's production to materials contained in the "Collection," especially now that we have seen that it is far less than advertised. Perhaps this is a non-issue. To assure that is so, we request that Intel clarify, on a request by request basis if necessary, that it has searched all potentially responsive files of the Retention Custodians, has produced all responsive documents located in those files, and has not limited its production to responsive documents found in the "Collection."

### 5. Intel's Failure to Identify Custodians and Interjection of New Custodians

Two issues: First, in contrast to most of its Supplemental Responses, Intel did not identify the individuals who possess the documents responsive to Document Request No. 4 (concerning Intel's "tiered process to identify and preserve potentially relevant paper and electronic records"), Document Request No. 33 (concerning steps taken by Intel after discovering its failure to timely provide Litigation Hold Notices), and Document Request No. 38 (concerning when and how Intel learned of each of the "inadvertent mistakes in implementation" of its "tiered preservation process"). We request that Intel do so.

Second, we appreciate that, in response to particular requests, Intel has identified document custodians in addition to those "Retention Custodians" it lists in Exhibit A. Those responses and new custodians are: (1) Document Request No. 26, Steve Owen (Intel states that it will produce one responsive document); (2) Document Request No. 30, Georg Fisch and Bernd Sprank; (3) Document Request Nos. 35, 26 and 37, Mark Friedman, Benoit Philippe, Francis Dulce, Jim Jeffs and May Wong; and (4) Document Request Nos. 25, 27 and 45, as to which Intel promises production from "other IT sources" not yet identified to us.

---

[3] Intel's response to Document Request No. 7 is similar. Intel originally promised production from the "Collection" and to produce a "list of each Custodian who received each [Litigation Hold] notice." The Supplemental Response incorporates that response and then promises a custodian-based production. We cannot discern, and therefore request that Intel clarify, what documents will be produced in response to Document Request No. 7.

O'MELVENY & MYERS LLP
Richard Levy, Esq., November 8, 2007 - Page 6

We cannot tell what Intel will produce from these custodians and sources or who they are. Accordingly, please state whether Intel intends to produce all responsive documents from the files of these eight, specifically-named custodians. Please also identify the "other IT sources" Intel refers to and what the production will consist of from those sources.[4] We also would appreciate Intel providing a description of these individuals' jobs and role in Intel's evidence preservation problems as it has done for the Retention Custodians in Exhibit A.

6. **Document Production Deadline**

We have asked when Intel intends to complete its production of documents responsive to AMD's "Causation/Culpability" Document Requests. At our meet and confer on September 25, we agreed not to hold you to the court-ordered September 28 production deadline based on your assurance that all responsive documents would be shortly forthcoming. You later said Intel's production would be completed by October 12. Subsequently, you again pushed back your expected completion date, this time to October 31. *See* Email from Richard Levy to James Pearl and David Herron (Oct. 19, 2007 2:20 PM). Most recently, you indicated that your production will not be complete until sometime in December. *See* Letter from Richard Levy to Mark Samuels (Nov. 7, 2007). While we appreciate Intel's re-review of its productions in light of the improper redactions it made, we do not think another month of delay is warranted or appropriate under the circumstances. We ask that the production be completed no later than Novmeber 15, 2007. That represents a six week extension of a negotiated court-ordered completion date.

7. **Intel's Privilege Logs**

Just to confirm, Intel has now agreed to provide a privilege log of all the Investigation and Causation/Culpability documents it fully withheld from its productions. *See* Letter from Richard Levy to James Pearl (Nov. 5, 2007); Letter from Richard Levy to Mark Samuels (Nov. 7, 2007). For documents that it produced in redacted form, Intel promised to provide the "header" information so that the senders, recipients, dates, and subject matters would be available. These limitations are acceptable to us, and we appreciate your efforts in this regard. Please let us know when we can expect to receive the privilege logs.

---

[4] Please also identify the AMD Document Requests to which the documents of Tom Cunin, Marc Foster and Alan Stainer are responsive, since none of those "Retention Custodians" are mentioned in Intel's specific responses.

O'MELVENY & MYERS LLP

Richard Levy, Esq., November 8, 2007 - Page 7

**Issues Concerning Intel's Specific Responses to Document Requests and Deposition Topics**

1.    **Intel's Responses to Document Requests**

The following are Document Requests over which the parties have been negotiating in good faith for the past several months, but as to which we appear to be at an impasse. We believe it appropriate to bring these issues to the attention of the Special Master at the earliest available opportunity.

- **Document Request Nos. 1, 2, 3, 40 and 41**: Intel has refused to comply with Document Request No. 1 (concerning Intel's standard corporate evidence preservation policies and practices); Document Request No. 2 (concerning Intel's automatic deletion policies and practices); Document Request No. 3 (concerning how Intel's automatic deletion policies and practices have operated with respect to the email of each Intel Custodian); Document Request No. 40 (concerning the nature, timing and details of Intel's "preliminary review"); and Document Request No. 41 (concerning the nature, purpose and timing of the investigation reflected in Intel's February 22, 2007 draft spreadsheet).

AMD believes that Intel should comply fully with these document requests, all of which are directly relevant to Intel's document preservation lapses. Intel itself has put these matters directly at issue. *See, e.g.,* Intel's Report and Proposed Remediation Plan, at 4 ("Intel's intentions and plans were ambitious and laudable. Its missteps were the result of human error in attempting a challenging task . . . ."); Letter from Richard Horwitz to the Hon. Joseph Farnan, at 2 (Mar. 5, 2007) ("Intel also sent litigation hold notices to hundreds of employees . . . instructing them to retain all relevant documents, broadly defined, including email. . . . *The basic form of notice had been used in previous Intel litigation.*"). Thus, contrary to Intel's assertions, this information is well within the scope of both the Order Regarding Intel's Evidence Preservation Issues, entered on March 16, 2007, and the Stipulation and Order Bifurcating Discovery into Intel's Evidence Preservation Issues, entered on June 20, 2007 (which states that AMD is entitled to "discovery as to other matters related to Intel's evidence preservation issues, including that which will enable plaintiffs to respond to the assertions made by Intel at pages 1-30 of its Remediation Plan.").

We also consider the date restrictions that Intel proposes on its production of documents concerning Intel's auto-delete policies (Document Request Nos. 2 and 3) improper. Intel's prior practices, not just those in this litigation, are relevant to determining whether Intel's preservation plan was as responsible and "laudable" as Intel proclaimed in pages 1-30 of its Report and Proposed Remediation Plan. Moreover, in response to Document Request No. 3, Intel states that it will provide in summary form the known mailbox retention policies *as of May 2005* for each Intel custodian. Documents Intel has produced show that Intel's IT Department altered mailbox retention policies for Custodians *after* the filing of the Complaint, a fact that is relevant (and potentially a contributor) to Intel's preservation issues. Thus, AMD does not agree to Intel's proposed date restrictions.

O'MELVENY & MYERS LLP
Richard Levy, Esq., November 8, 2007 - Page 8

With respect to Document Requests Nos. 40 (concerning the nature, timing and details of Intel's "preliminary review") and 41 (concerning the nature, purpose and timing of the investigation reflected in Intel's Feb. 22, 2007 draft spreadsheet), Intel has refused to produce any responsive documents on grounds of privilege. In my September 13, 2007 letter to you, however, we offered to accept summaries in the form of interrogatory responses for these requests. This would allow Intel to provide only the facts concerning Intel's discovery and investigation of its document preservation issues, which are not privileged, while withholding protected attorney-client communications and core work product. *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994) ("Facts are discoverable, the legal conclusions regarding those facts are not. A litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer."). Disclosure of this information is expressly required by the Court's March 16, 2007 Order, which states, "AMD and the Class Plaintiffs have requested Intel to voluntarily disclose the date(s) on which Intel or its counsel learned of the preservation lapses, failures or deficiencies identified in response to Paragraphs 6, 7 and 8 with respect to each Intel custodian. The parties shall meet & confer to establish a timetable for Intel disclosure, and whether Intel will do so voluntarily or through discovery." We therefore renew our request that Intel provide factual summaries in response to these requests.

We seek clarification on Intel's responses to the following Document Requests.

- **Document Request No. 7**: As noted above, Intel's original response stated that Intel will produce a list of each Custodian who received each Litigation Hold notice. Please tell us whether or not Intel intends to do so now.

- **Document Request No. 16**: Intel's original response, incorporated by its Supplemental Response, promises both a written summary or document production and states that "Intel continues to search for non-duplicative relevant documents." We take this to mean that both a summary (which would be helpful) and documents will be produced. Please confirm, and identify from or in what source additional relevant documents have been located, if any.

- **Document Request No. 27**: This request seeks documents concerning Intel's disaster recovery backup systems protocols and procedures, "including backup tape structure and design, backup tape rotation schedules and protocols, backup tape retention polices and practices, and backup tape restoration protocols." Intel's proposed time limitation to 2005 and 2006 is acceptable. But Intel recharacterizes this request in a way that appears to be intended to narrow its scope and thus avoid production of the materials sought. Please state whether and to what extent Intel is refusing to produce the documents requested and, if so, on what ground.

- **Document Request No. 45**: Intel has responded to this request in the same manner as it did in response to Document Request No. 27: By restating the request in an apparent effort to narrow its scope and, thus, its response burden. Please state whether Intel is refusing to produce all responsive documents and, if so, on what ground.