# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| INTEL CORP. MICROPROCESSOR | ) | MDL Docket No. 05-1717-JJF |
| ANTITRUST LITIGATION | ) | (Re: D.I. 300) |
| ———————————————— | ) | |
| | ) | |
| PHIL PAUL, on behalf of himself and all | ) | |
| others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. N o. 05-485-JJF |
| | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## DM 5

### SPECIAL MASTER'S REPORT AND RECOMMENDATIONS REGARDING ALLOCATION OF THE SPECIAL MASTER'S COMPENSATION AND COSTS AS A SANCTION AGAINST NONPARTY FRY'S ELECTRONICS, INC.

## BACKGROUND

These are antitrust actions brought against Intel Corporation ("Intel") as the manufacturer of microprocessors that run the Microsoft Windows and Linux families of operating systems (the "x86 Microprocessor Market"). Intel is alleged to hold worldwide market share measured as 80% of the market in units and 90% of the market in revenues.

The 05-485 action is brought on behalf of a class of consumers who allege economic injury resulting from Intel's alleged anticompetitive and monopolistic practices. The 05-485 action has been consolidated with over 70 other consumer-related actions (collectively, the "Class Litigation") by the Judicial Panel on Multidistrict Litigation, which has and assigned said action to this Court as MDL Docket No. 05-1717. As used herein, the term "Class Plaintiffs" refers to the plaintiffs in the Class Litigation.

## INTRODUCTION

The matter *sub judice* comes before me, as Special Master, out of a proposed allocation of Special Master compensation resulting from a discovery dispute ("DM 5") following litigation between the Class Plaintiffs (D.I. 422 in Case No. 05-1717) and Fry's Electronics, Inc. ("Fry's"). DM 5 ensued as a result of the Class Plaintiffs' motion to produce certain transactional data, pursuant to a documents-only subpoena issued on June 22, 2006. The proposed allocation was made in conjunction with Invoice No. 868401, sent to the parties on May 25, 2007. The Special Master's cover letter to the Class Plaintiffs and Fry's, dated May 25, 2007, stated that the total compensation due to the Special Master relating to DM 5 should be split equally between the Class Plaintiffs and Fry's.[1] Fry's objected to this proposed allocation by e-mail from its local

---

[1] Upon reviewing Fry's Electronics, Inc.'s October 19, 2007 Response to Class Plaintiffs' October 9, 2007 Supplemental Letter Brief Regarding Allocation of Special Master's Cost, it appears that Fry's misapprehends the outstanding balance of unpaid invoices as of August 31, 2007, referenced in the Special Master's letter to counsel of September 11, 2007. In its brief, Fry's characterizes the award sought by Class Plaintiffs as sanctions "in excess of

2

counsel, Mary Graham, dated June 13, 2007.  (See D.I. 628, Declaration of Michael Powell in Support of Fry's Opposition Brief, at Exhs. 2, 5.)  After a teleconference on this issue, Class Plaintiffs filed a Supplemental Letter Brief in support of this allocation.  (D.I. 610.)  Fry's submitted an opposition, and a response to same was submitted by Class Plaintiffs.  (D.I. 628; 632.)  Class Plaintiffs have argued that the Federal Rules of Civil Procedure permit the proposed allocation, or, alternatively, that the Special Master may impose a sanction upon Fry's for its conduct in conjunction with the litigation of DM 5.

For the reasons discussed herein, the Special Master concludes that Fry's conduct resulted in unnecessary delays to the Discovery Litigation, and while Fry's conduct suggest a finding of bad faith, the Special Master, under the Court's inherent power to sanction, need not make a finding of bad faith in order to impose sanctions on Fry's actions.  The Special Master concludes, therefore, that Fry's should be sanctioned for its vexatious conduct, which caused the Class Plaintiffs to incur additional expenses in an amount equal to one-half of the Special Master's compensation for the litigation of DM 5, including the matter *sub judice*.

## DISCUSSION

### A.   Rule 53

A threshold issue to be addressed is whether Federal Rule of Civil Procedure 53 provides a mechanism by which a Special Master may allocate Special Master compensation and costs to a litigant in a situation where, as here, the litigant is involved in a discovery dispute but is a stranger – a non-party to the underlying litigation.  Rule 53 instructs the Special Master to allocate fees among the "parties" or "from a fund or subject matter of the action within the

---

$50,000."  (D.I. 627 at 2, n.2.  See also D.I. 627 at 3 (referring to $100,000 in Special Master fees for this discovery dispute).)  The total balance as of August 31, 2007 for the Discovery Litigation is $50,556.92.  Were there to be an allocation of one-half of the August 31, 2007 balance to Fry's, the amount of the allocation would be $25,278.46.

3

court's control." Fed. R. Civ. P. 53(h)(2)(B).

Class Plaintiffs argue that the term "party" could be read to mean a party to the discovery matter, concluding therefore that it is not limited to a party to the underlying litigation. (See D.I. 520, Class Plaintiffs' Letter of June 25, 2007.) Alternatively, Class Plaintiffs assert that Fry's assets are a "fund or subject matter of the action within the court's control." (Id.) Fry's disagrees, arguing that the Federal Rules expressly define the term "party" to be a party named in the lawsuit, which definition necessarily encompasses Rule 53's use of "party." (D.I. 627 at 3 (citing Fed. R. Civ. P. 10).) Fry's also argues that because Fed. R. Civ. P. 53(c)(2) references both "a party" and "a nonparty," the plain language of Rule 53 necessarily distinguishes between the two terms. Therefore, when Fed. R. Civ. P. 53(h) expressly states that compensation must be paid by "a party or parties," it means just that and does not include nonparties. Further, Fry's argues that there is no "fund or subject matter of the action within the court's control." (Id.) Accordingly, Fry's argues that the Special Master's fees for DM 5 can only be allocated pursuant to Fed. R. Civ. P. 53(h) among "the parties -- Class Plaintiffs, AMD and Intel, " and not to itself, a nonparty. (Id.) While Fry's arguments on this issue are persuasive, for reasons discussed below, the Special Master need not reach this question.

**B.**    **Sanctions**

1.    The Court's Inherent Power to Sanction[2]

There can be no dispute that Federal courts have inherent power to impose sanctions for a party's misconduct. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). Although many statues and rules provide for the imposition of sanctions, the court is not limited to imposing sanctions based on the rules. Id. at 43. Rather, the court retains "certain implied powers," and "the power

---

[2] Except to say that Class Plaintiffs request that the Special Master utilize the inherent authority of the Court to sanction comes too late, Fry's did not address the principle of the Court's inherent authority in its papers.

4

to punish for contempts is inherent in all courts." Id. at 44. This power "extends to a full range of litigation abuses" to "fill in the interstices." Id. at 46. Therefore, "if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." Id. at 50. See also Republic of Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 73 (3d Cir. 1995).

There can also be no dispute that a court's inherent powers "are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers, 501 U.S. at 43. Federal courts may exercise their inherent power "to impose sanctions on both litigants and attorneys to regulate their docket, to promote judicial efficiency, and to deter abuse of judicial process." Quiroga v. Hasbro, Inc., 934 F.2d 497, 505 (3d Cir. 1991). A court's inherent authority to sanction extends to the conduct of a nonparty. Corder v. Howard Johnson & Co., 53 F.3d 225, 232 (9th Cir. 1994) ("[E]ven in the absence of statutory authority, a court may impose attorney's fees against a non-party as an exercise of the court's inherent power to impose sanctions to curb abusive litigation practices.") (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980); SECO Nevada v. McMordie (In re Holloway), 884 F.2d 476, 477 (9th Cir. 1989); Moten v. Bricklayers, Masons and Plasterers International Union of America, 543 F.2d 224 (D.C. Cir. 1976)).

When exercising discretion under its inherent sanction powers, a court is guided by the considerations set forth in the Federal Rules of Civil Procedure. Westinghouse, 43 F.3d at 74. Factors to consider include:

1. The nature and quality of the conduct at issue;

2. Whether the attorney or the client is responsible for the culpable conduct;

3. Whether there was a pattern of wrongdoing requiring a stiffer sanction;

5

4. The sanctioned party's ability to pay;

5. Whether the wrongdoing actually prejudiced the wrongdoer's opponent or hindered the administration of justice; and,

6. The existence of mitigating factors.

Id. The Supreme Court also stated that this inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." Chambers, 501 U.S. at 42. Therefore, "a district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified." Westinghouse, 43 F.3d at 74.

In the end, the Supreme Court in Chambers, stated that a court may exercise its authority to impose sanctions

> when a party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons.". . .  The imposition of sanctions in [the proper] instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicating judicial authority without resort to more drastic sanctions available for contempt of court and making the prevailing pay whole for expenses caused by [the] opponent's obstinacy."

Id. at 46 (internal citations omitted).

2.    Fry's Conduct is Sanctionable Under the Court's Inherent Power

Class Plaintiffs have detailed a plethora of actions by Fry's that have assertedly precipitated, and then extended and expanded the discovery proceedings before the Special Master, resulting in unnecessary expense and delay of the Special Master's issuance of the September 27, 2007 Report and Recommendation.  (D.I. 610 at 2-4; D.I. 422, Class Plaintiffs' Letter Briefs of March 29, 2007; D.I 440 April 23, 2007 in Support of Motion to Compel.)

6

Fry's makes no attempt to respond to any specific allegation made by Class Plaintiffs except for the allegation that it did not, in so many words, participate in meaningful good faith dialogue. In this regard Fry's relies on examples of comments made by counsel for Class Plaintiffs during one phase of the process. The Special Master repeats Fry's examples here:

- At the May 17 Conference, Class Plaintiffs' counsel Dan Small commented: "We met … yesterday … [i]t was a very full conversation, a good faith conversation, and a productive one." Powell Decl., Ex. 8 at 4:1-7 [May 17, 2007 Transcript].

- At the May 24 Status Conference, Mr. Small reported: "Some real quick history, just to put in context recent progress made … We reported back to Your Honor … and we reported that we had made very substantial progress, both in terms of understanding the data and in trying to resolve the dispute … In any event, we had a brief call with Fry's today in which they made that counter-proposal … it does appear at first blush to be a good-faith counteroffer." Powell Decl., Ex. 9 at 3:4-5 [May 24, 2007 Transcript].

- At the June 6 Conference, Mr. Small remarked: "The proposal appears to represent very significant progress, and I actually say, with some caution, that we may be close to an agreement." Powell Decl., Ex. 10 at 6:13-16 [June 6, 2007 Transcript].

- And at the July 20 Conference, Mr. Small indicated: "we have continued to work hard … I believe that we are very close to an agreement." Powell Decl., Ex. 11 [July 20, 2007 Transcript].

While the Special Master must accept the plain meaning of Mr. Small's own statements, they are accepted for what they were, statements made during discrete phases of the process.

At the same time, in the Special Master's view, many of the Class Plaintiffs' allegations go without a meaningful answer. The Special Master adopts certain of the Class Plaintiffs' characterizations of "Fry's Pre-Motion Conduct," which in the Special Master's view, necessitated the filing of DM 5, and "Fry's Conduct in Conjunction with Proceedings Before the Special Master," which in the Special Master's view resulted in the unnecessary protraction of the process and the commensurate increase of Special Master compensation and costs.

### "Fry's Pre-Motion Conduct"

1.   Taking the position that its data is a trade secret and shall not be produced, while

7

maintaining that they are easily obtained from the sources." (Certification of Richard M. Volin in Support of Class Plaintiffs' Request to Compel Fry's Electronics, Inc. dated March 29, 2007 ("Volin Certification") Ex. G at 1, Ex. J at 2.)

The Special Master concludes that Fry's positions are not consistent, resulting in a waste of time.

2.      Refusing to comply with the subpoena until it was narrowed, while at the same time refusing to provide either a data sample or a description of the data fields in question. (Volin Certification Ex. G at 2, Ex. H at 1, Ex. J at 2 and Declaration of Richard M. Volin dated April 23, 2007 ("Volin Declaration") at ¶6.)

The Special Master concludes that Fry's positions are neither consistent nor reasonable, resulting in a waste of time.

3.      Taking the position that the Class Plaintiffs had to "verify" whether any of them had purchased a Intel based computer from Fry's. (Volin Certification Ex. G at 1, Ex. J at 1 and Volin Declaration at ¶3, Ex. A.)

The Special Master concludes that Fry's position has no legal basis in law and, therefore, did not otherwise obviate its obligation to produce, which resulted in a waste of time.

4.      Participating in the process that led to the entry of the Protective Order that was entered in this case (Special Master Report and Recommendation of May 18, 2006 at 15; Volin Declaration at ¶18), invoking the protection of the Protective Order for its meet and confer correspondence (Volin Certification at ¶9, Ex. G at 1, 3) and then taking the position that the Protective Order did not apply to the production of Fry's data (Volin Certification at ¶12, Ex. J at 2; Volin Declaration at ¶19).

The Special Master concludes that Fry's positions are inconsistent, resulting in a

8

waste of time.

5.     Taking the position that it did not have to produce the data because the Class Plaintiffs were seeking the same data from other nonparties.  (Volin Certification Ex. J, Ex. K at 4.)

The Special Master concludes that Fry's position has no basis in law and did not obviate its obligation to produce, which resulted in a waste of time.

Regarding Fry's Pre-Motion Intransigence, the Special Master adopts the Class Plaintiffs' view of the world.

6.     The Special Master is also mindful that Fry's claim of burden has never been demonstrated.  In this regard, the Special Master is aware of the claims of Class Plaintiffs and AMD, as outlined in correspondence from the Class Plaintiffs' counsel to Fry's in-house counsel dated March 12, 2007, that:

- [The parties] offered to discuss costs with an eye toward a reasonable cost-sharing of reasonable out-of-pocket expenses incurred by Fry's;

- The parties have explained that cost estimates are not necessary for the initial sample database, which will likely result in only nominal costs, and will inform all involved of potential future costs of the production;

- The parties have nevertheless offered to review and discuss a cost estimate on the initial sample database – an estimate that would need to come from Fry's;

- The parties have suggested that additional costs discussions take place after the initial sample database is produced and reviewed.  The initial sample database will be used to narrow the parties' requests and lower the cost of the full production; and,

- The [parties] assert that a request for cost estimates was made during the December 13th conference with Fry's.  However, regardless of whether such a request was communicated by the parties or heard by Fry's, [Fry's] now claim that [it is] unable to offer a cost estimate.  Ironically, the logic that Fry's now offers as to why it cannot provide cost estimates is the same logic offered by the parties as to why the initial production of a sample database would help inform the cost issue.  (See March 8, 2007 letter from Brian Henri to Richard Volin (questioning, "how could Fry's provide such an estimate without knowing how the parties will limit the requests?").)

9

(Volin Certification Ex. K at 2.)

The Special Master concludes that Fry's failed to do much, if anything, resulting in a waste of time. The Special Master is also mindful that Fry's claim of burden of production was never demonstrated.

In sum, the Special Master concludes that the record prior to the filing of DM 5 supports the finding that the goal of Fry's was to avoid the timely production of relevant data, which production was not unduly burdensome and which was adequately safeguarded by the provisions of the Protective Order. The Special Master further concludes that Fry's intransigence prior to the filing of the instant motion represents its vexatious efforts to avoid compliance with the subpoena resulting in the Class Plaintiffs' filing of DM 5 with the Special Master. The Special Master adopts the Class Plaintiffs' language which properly characterizes Fry's conduct:

> Before the motion to compel was filed, Fry's had shown no willingness to produce data and thwarted efforts to make progress on negotiating the scope of production. After seven months of negotiation, the parties have gotten nowhere with Fry's. No production has been made; no production has been offered; and no data sample has been provided or offered. . . .

(Volin Certification Ex. J.)

### "Fry's Post Motion Positions and Conduct"

The Special Master adopts certain of the Class Plaintiffs' characterizations of Fry's Post Motion Positions and Conduct which resulted in the further protraction of the process and the commensurate increase of Special Master compensation and costs.

1.      Fry's again insisted that the Protective Order did not sufficiently protect their claimed trade secrets and therefore argued the Protective Order be modified as a prerequisite to any production.

The Special Master, and ultimately the Court in adopting the Special Master's Report and

10

Recommendations by Order dated June 14, 2007, rejected Fry's position, concluding in part that, "Fry's present concerns with respect to the existing Protective Order were previously raised in the context of third party objections. Its concerns were specifically considered in the Protective Order Report and Recommendations and addressed either through revisions or rejected." (See D.I. 221 pp. 39-40, 44, 48-49, 81-82, 90, 96-97, Special Master's Report and Recommendations Regarding Threshold Issue Raised By Class Plaintiffs' Motion to Compel and Other Issues – DM 5, May 18, 2007 at 15 and see pp. 9-23.)

The Special Master concludes that Fry's conduct in this regard completely lacked merit, resulting in a waste of time.

2.     Fry's took the position in its April 17, 2007 letter brief in opposition to the Motion to Compel that Class Plaintiffs had failed to adequately meet and confer as required by Federal Rule of Civil Procedure 37(a)(1).

The Special Master is mindful that it was Fry's in-house counsel, in correspondence dated March 8, 2007 to Class Plaintiffs', who stated, "Accordingly I cannot see there is anything left to discuss." (Volin Certification Ex. J at 3.)  In any event, the Special Master ruled during the hearing on DM 5 that: "I'm satisfied that were the premise of any meet and confer, was there had to be an agreement with respect to [changes] in [the] protective order; that premise, because it was a non-starter for the Class Plaintiffs, that here was a sufficient meet and confer before the filing of the instant motion." (May 1, 2007, Transcript at 78, 1-7.)

The Special Master concludes that Fry's claim on the inadequacy of the meet and confer was in no way attributable to the Class Plaintiffs, but instead was a result of its own position regarding the protective order. The Special Master further concludes that this compounded the resulting waste of time.

11

3.     Fry's took the position that Class Plaintiffs had not adequately identified the data that it sought to compel.  The position was taken against the backdrop of Fry's having also asserted that it did not have data in the form that Class Plaintiffs sought, representing it "does not maintain data relating to individual transactions."  (May 1, 2007, Transcript 85:12-14.)  The Special Master is satisfied that Fry's refused to comply with the Class Plaintiffs' request for a sample of its data or a description of its data fields which in turn would have permitted Class Plaintiffs "[to further target the] requests with regard to a complete transactional data production."  (Volin Certification H at 1.)  Fry's position in this regard resulted in the Special Master deferring a ruling on DM 5 and the ordering of a further meet and confer for the purpose of Fry's describing its data to the Class Plaintiffs – something that Fry's should have accomplished before DM 5 was filed.

In the Special Master's view, the position that Class Plaintiffs found themselves in after the pre-Motion meet and confer was untenable, leaving the Special Master unable to make a decision at that point.  During the hearing on the Motion, the Special Master stated:

> Well, the dilemma that I have is I'm not convinced at this juncture, have read everything you've submitted, that I can make a judgment on paper on these papers.  I mean, it seems to me that the only way that I can have some degree of comfort with any judgment that I would make is for there to be some opportunity to have someone describe under oath the data system and react to that by testimony under oath.  Because I'm not convinced I can do it on these cold papers.
>
> Now, I understand that it is the applicant's burden, but that doesn't make this application go away if I'm not convinced that I understand the nature of what we're looking for here, and if I don't see it rising out of the meet and confers.  And I'm not sure that I do.
>
> So . . . I think I have two alternatives here, a little bit different from the way Mr. Small describes it.
>
> And that one of the alternatives is to say you all go back to your

12

> respective places and drill down on precisely what we're talking about here and forge at least an understanding, if you will, almost by stipulation that we understand that this is what this system is. This is what this system does. And as a result of that, this is what we're asking for.
>
> And if that can't be accomplished, I don't see any way I can deal with this sort of hearing. Not argument, if you will.

(May 1, 2007, Transcript 94:3-24; 95:1-9.)

Pursuant to the Special Master's May 4, 2007 Stipulation and Order, Class Plaintiffs and Fry's conducted a telephonic meet and confer on May 14, 2007. (D.I. 459.) Also pursuant to the referenced Order, Fry's made one of its IT personnel available, "who was most knowledgeable about [Fry's] database and datasets who shall use their best efforts to assist Class Plaintiffs in understanding the data in such databases and/or datasets." (Id. at 1.) As a result of the information provided by Fry's IT personnel, the Class Plaintiffs learned that:

> Fry's maintains at least two databases in addition to the Merchant Master database. At least one for purchases and at least one for sales. These are centralized databases that form daily uploads of data from Fry's individual stores and it appears from the information Fry's was willing and able to provide ... that both databases are maintained at a transactional level.

(D.I. 560, Smalls Declaration at ¶5.)

The Special Master concludes that the Fry's positions regarding its data base/bases was inconsistent, resulting in a waste of time.

In sum, the Special Master concludes it is clear from the record that Fry's vexatious positions and conduct hindered the administration of justice in delaying this aspect of the litigation, resulting in increased costs to the Class Plaintiffs in the form of increased Special Master compensation and costs. The Special Master is of the view that Fry's should not be able to precipitate such delays and then receive a "free ride" in the allocation of costs. In this regard, the Special Master concludes that the use of the Court's inherent power to sanction in this case:

13

transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of 'vindicat[ing] judicial authority without resort[ing] to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.'

Chambers, 501 U.S. at 46 (quoting Hutto v. Finney, 437 U.S. 678, 689 n. 14 (1978)).  The

imposition of costs upon Fry's also comports with the idea that "the cost of a master should be

borne by the party or parties whose conduct necessitated the reference to the master."

Pennsylvania v. Local Union 542, Int'l Union of Operating Eng'r, 507 F. Supp. 1146, 1163 (E.D.

Pa 1980), aff'd without opinion, 648 F.2d 923 (3d Cir. 1981), rev'd on other grounds, 458 U.S.

375 (1982).

## SANCTION

    a.    <u>Under the Inherent Power of the Court the Special Master Need Not Make a Finding of Contempt to Sanction Fry's</u>

Fry's argues that it cannot be subject to sanctions without a finding of contempt. (D.I.

627 at 5.) The Special Master concludes otherwise.  Rule 53(c)(2) of the Federal Rules states:

> *Sanctions.* The master may by order impose on a party any noncontempt sanction provided by Rule 37 or 45, and may recommend a contempt sanction against a party and *sanctions against a nonparty.* (Emphasis added).

The Special Master is satisfied that a plain reading of this section shows that a finding of

contempt is not necessary, as the Rule provides for sanctions against a nonparty without an

express mention of "contempt sanctions."  Thus, sanctions by a Special Master may fall under

the heading of contempt sanctions, or may be sanctions for improper conduct.  The case relied

upon by Fry's for the proposition that contempt is required for sanctions, Pennwalt Corp. v.

Durand-Wayland, Inc., 708 F.2d 492 (9th Cir. 1983), is unpersuasive.  Pennwalt deals chiefly

14

with sanctions for attorney's fees for a nonparty, and Fry's cites it for its discussion of Rule 45, which governs the imposition of sanctions against a nonparty for failure to comply with a *subpoena duces tecum.* (See D.I. 627 at 5 (citing Pennwalt, 708 F.2d at 494).) Pennwalt discussed the Court's inherent power to sanction as independent of its power to issue contempt sanctions. Id.; see also Chambers, 501 U.S. at 46 (differentiating between contempt sanctions and sanctions pursuant to court's inherent authority).

The Third Circuit has ruled that federal courts retain the inherent power "to sanction errant attorneys financially both for contempt and for conduct not rising to the level of contempt." Eash v. Riggins Trucking, Inc., 757 F.2d 557, 566 (3d Cir. 1985) (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 765 (1980)). The Eash court elaborated:

> [T]he Supreme Court [has] stat[ed] that the "inherent power" to sanction an attorney was "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." If a court's inherent powers include the ability to do whatever is reasonably necessary to deter abuse of the judicial process, courts must be able to impose reasonable sanctions for conduct by lawyers that falls short of contempt of court.

Id. at 567 (citations omitted).

      b.    **While Fry's Actions Support a Finding of Bad Faith, the Special Master Need Not Make a Finding of Bad Faith to Sanction Fry's Under Its Inherent Power**

The Pennwalt court concluded that it could not use such inherent sanctioning power absent a finding of bad faith conduct. Pennwalt, 708 F.2d at 494. A finding of bad faith means that a party or counsel acted "vexatiously, wantonly or for oppressive reasons." Chambers, 501 U.S. at 45-46. Bad faith "does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or *mala fides*, the assertion of a colorable claim will not bar assessment of attorneys' fees." Mark Indus.,

15

Chambers, 501 U.S. at 45-46, 111 S.Ct. at 2133. As Justice Scalia pointed out in his dissent, however, the fact that fee-shifting as a sanction requires a finding of bad faith "in no way means that all sanctions imposed under the courts' inherent authority require a finding of bad faith." Id. at 59, 111 S.Ct. at 2140. Thus, a court need not always find bad faith before sanctioning under its inherent powers: "[s]ince necessity does not depend upon a litigant's state of mind, the inherent sanctioning power must extend to situations involving less than bad faith." Id.

c.   Class Plaintiffs Have Not Waived Their Argument for Sanctions

Fry's assertion that Class Plaintiffs implicitly waived an argument for sanctions in the September 27, 2007 hearing is unpersuasive. (See D.I. 627 at 2.) Class Plaintiffs did state that their support of an allocation of costs to Fry's was not in the nature of a Rule 37 request for sanctions, as Rule 37 only applies to parties and deponents, not to third parties. (See D.I. 632 at 3, n.4 (citing Fed. R. Civ. P. 37(a)(2)).) Class Plaintiffs, though, properly rest their arguments on the authority of the Special Master under Fed. R. Civ. P. 53 read in conjunction with the Court's inherent power.

d.   The Special Master's Ability to Sanction Fry's is Not Precluded by Fry's Lack of Ability to Oppose the Special Master's Appointment

Fry's also argues that an allocation of fees cannot be made to a nonparty to the underlying litigation, where the nonparty has not had an opportunity to object to the appointment of a Special Master. (D.I. 627 at 3-4, n.6.) Fry's argument unsupported by any authority simply misses the mark. Under the court's inherent powers, a sanction consisting of the allocation of the Special Master's compensation and costs is in the Special Master's view an appropriate way to tailor the sanction to address the harm identified. Westinghouse, 43 F.3d at 74.

17

Ltd. v. Sea Captain's Choice, Inc., 50 F.3d 730, 732 (9th Cir. 1995) (internal quotation marks and citations omitted). To find bad faith, a court must find "some indication of an intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay." Ford v. Temple Hosp., 790 F.2d 342, 347 (3d Cir. 1986). The Special Master concludes that Fry's actions demonstrate it intentionally undertook dilatory conduct resulting in a waste of time and increased financial costs associated with discovery of its information.

At the same time, the Special Master is satisfied that a finding of bad faith by Fry's is unnecessary in order to impose sanctions pursuant to the Court's inherent power. (D.I. 610 at 4 (citing Westinghouse, 43 F.3d at 74); see also Unigard Sec. Ins. Co. v. Lakewood Eng'g Mfg. Corp., 982 F.2d 363, 368 n.2 (9th Cir. 1992) ("This court has . . . confirmed the power of the district court to sanction under its inherent powers not only for bad faith, but also for willfulness or fault by the offending party."); Fink v. Gomez, 239 F.3d 989, 993-94 (9th Cir. 2001) (sanctions under court's inherent authority require bad faith or "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose"). In Westinghouse, the Third Circuit expressly retreated from requiring a finding of bad faith for the imposition of sanctions in cases not involving fee shifting. Westinghouse, 43 F.3d 74 at n.11. The Court in Westinghouse held that:

> Although we stated in Landon v. Hunt, 938 F.2d 450 (3d Cir. 1991), that "a prerequisite for the exercise of the district court's inherent power to sanction is a finding of bad faith conduct" ( id. at 454), that statement should not be read to require a finding of bad faith in every case, regardless of the sanction contemplated. Landon addressed the propriety of assessing attorneys' fees against a litigant; thus, we followed the Supreme Court's decision in Chambers, which also involved assessment of attorneys' fees. Landon, 938 F.2d at 454. Under the American Rule, attorneys' fees ordinarily may not be shifted to a losing party. However, the Court in Chambers had relied on an exception to that rule allowing fees to be shifted when the losing party exhibited "bad faith."

16

e.   A Consideration of the Factors in Westinghouse Warrants
the Recommended Sanctions

1.   The Nature and Quality of the Conduct at Issue.

Fry's conduct described herein is in the Special Master's view nothing short of unreasonable, if not vexatious designed to delay the production of relevant data, which production was not demonstrated to be burdensome and which production is adequately protected by the Protective Order in this case.

2.   Whether the Attorney or the Client is Responsible for the Culpable Conduct.

The position taken by Fry's counsel after the filing of DM 5 were mirror images of the positions taken by Fry's through its in-house counsel prior to its filing. The Special Master is satisfied that Fry's is responsible for the culpable conduct.

3.   Whether There is a Pattern of Wrongdoing Requiring a Stiffer Sanction.

While not applicable here, the Special Master is satisfied that Fry's conduct would warrant an allocation of an ever greater share of the Special Master's compensation and costs.

4.   The Sanctioned Party's Inability to Pay.

Fry's has raised no issue in this regard.

5.   Whether the Wrongdoing Actually Prejudiced the Wrongdoers' Opponent or Hindered the Administration of Justice

The Special Master is satisfied that Fry's conduct did both.

6.   The Existence of Mitigating Factors.

The Special Master is mindful that the process leading up to the filing of DM 5 and the resulting order are a result of some good faith dialogue as suggested by counsel for Class Plaintiffs which ultimately resulted in impasse. See herein at p. 7.

In sum, the Special Master concludes that the proposed sanction is tailored to address the

18

harm to the Class Plaintiffs resulting from Fry's conduct. The Special Master further concludes it would be unfair in light of Fry's conduct to expect that the Class Plaintiffs should shoulder the entire added burden of the Special Master's compensation and costs.

## CONCLUSION

For the reasons set forth above, the Special Master RECOMMENDS that:

1.    Fry's should be sanctioned, by requiring it to pay one-half of the Special Master compensation and costs associated with DM 5 as well as one-half of the Special Master compensation and costs associated with the instant dispute. The total costs associated with the dispute is $79,236.42. Half of the Special Master's fees and costs, to be allocated to Fry's, is $39,618.21.

2.    Fry's shall be required to pay the share so allocated not later than 10 days from the date this Report and Recommendation is entered.

**In accordance with the Court's Order dated May 7, 2007 (D.I. 465), a party may file objections to, or a motion to adopt or modify, the Special Master's Order, Report or Recommendation on any issues related to the Motion to Compel no later than 5 days from the time the Special Master's Order, Report or Recommendation is served.**

ENTERED this
13th day of December, 2007

_____
Vincent J. Poppiti  (DSBA No. 100614)
Special Master

19

EXHIBIT 2



BLANK ■ ROME LLP
COUNSELORS AT LAW

Phone:     (302) 425-6410
Fax:       (302) 428-5132
Email:     Poppiti@BlankRome.com

May 25, 2007

Frederick L. Cottrell, III, Esquire
Richards Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, DE 19801

James L. Holzman, Esquire
Prickett Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899

Richard L. Horwitz, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
P.O. Box 951
Wilmington, DE 19801

Mary B. Graham, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

**Re:    In re Intel Corporation Microprocessor Antitrust Litigation,
         MDL No. 05-1717-JJF**

Dear Counsel:

Enclosed is Invoice No. 868401 for legal services rendered and disbursements made in the above matter through April 30, 2007.

Please be advised that pursuant to paragraph 10 of the Order Appointing Special Master dated May 11, 2006 signed by Judge Farnan the Special Master finds that all matters relating to DM 5 (Fry's Electronics) should be split equally between the Class Plaintiffs and third party, Fry's Electronics. All other time will be split among AMD, Intel and the Class Plaintiffs equally.

Accordingly, the invoice is split as follows:

    Class Plaintiffs' share is $8,660.05
    Fry's Electronic's share is $7,605.50
    AMD's share is $1,054.55
    Intel's share is $1,054.55

Please don't hesitate to contact me should you have any questions in this regard.

Yours very truly,

Vincent J. Poppiti
Special Master

VJP:mcl
Enclosures

# BLANK ROME LLP

CHASE MANHATTAN CENTRE
1201 MARKET STREET, SUITE 800
WILMINGTON, DE 19801-2535
302-425-6400 FAX: 302-425-6464
FEDERAL TAX ID NO. 23-1311874


JAMES L. HOLZMAN, ESQ.                INVOICE DATE: MAY 23, 2007
PRICKETT, JONES & ELLIOTT, P.A.       MATTER NO.  062038-00615  02319
1310 KING STREET                      INVOICE NO. 868401
PO BOX 1328
WILMINGTON, DE  19899


RICHARD HORWITZ, ESQ.
POTTER ANDERSON & CORROON LLP
1313 NORTH MARKET STREET
PO BOX 951
WILMINGTON, DE  19801


REGARDING: SPECIAL MASTER APPOINTMENT BY THE
           U. S. DISTRICT COURT
           INTEL CORPORATION, C.A. NO. 05-1717-JJF -
           APPOINTMENT AS SPECIAL MASTER BY
           THE HONORABLE JOSEPH J. FARNAN

---

FOR LEGAL SERVICES RENDERED THROUGH 04/30/07      $17,779.50
FOR DISBURSEMENTS ADVANCED THROUGH 04/30/07          595.15
                                                 ------------

CURRENT INVOICE TOTAL                             $18,374.65
                                                 ------------

TOTAL AMOUNT DUE                                  $18,374.65


***R E M I T T A N C E   C O P Y***


PENNSYLVANIA  NEW YORK  NEW JERSEY  DELAWARE  MARYLAND  WASHINGTON, DC  FLORIDA  OHIO

EXHIBIT 3

## Mike Powell

| | |
|---|---|
| **From:** | Graham, Mary [MGraham@MNAT.com] |
| **Sent:** | Monday, June 11, 2007 11:18 AM |
| **To:** | Poppiti, Vincent J. |
| **Cc:** | LeVan, Mary; David, Carrie; Carickhoff, David; Athey, J. Clayton; Cottrell, Frederick; Shandler, Chad; Horwitz, Richard L.; Drane, Jr. W. Harding; Holzman, James L. |
| **Subject:** | In re Intel: Apportionment of fees to Fry's |
| **Attachments:** | 052507 Intel Special Master Invoice 868401.pdf |

Dear Judge Poppiti:

We are in receipt of the attached invoice dated May 25, 2007 which allocates a portion of the Special Master's fees and costs for April 2007 to nonparty Fry's Electronics. Is it possible that this apportionment is in error? Our understanding of Rule 53 is that it does not permit apportionment of a special master's fees and costs to a nonparty, and we have found no Third Circuit authority to the contrary.

Your consideration of this matter is greatly appreciated.

Respectfully,

Mary Graham

<<052507 Intel Special Master Invoice 868401.pdf>>

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

# EXHIBIT 4

## Mike Powell

| | |
|---|---|
| **From:** | Poppiti, Vincent J. [Poppiti@BlankRome.com] |
| **Sent:** | Wednesday, June 13, 2007 10:11 AM |
| **To:** | Graham, Mary |
| **Cc:** | LeVan, Mary; David, Carrie; Carickhoff, David; Athey, J. Clayton; Cottrell, Frederick; Shandler, Chad; Horwitz, Richard L.; Drane, Jr. W. Harding; Holzman, James L. |

**Subject:** RE: In re Intel: Apportionment of fees to Fry's

Dear Ms. Graham,
   Thank you for your email questioning the apportionment of fees in my invoice of May 25, 2007. I will wait to hear from counsel for the Class before responding.
Yours very truly- vjp


**Vincent J. Poppiti | Partner | Blank Rome LLP**
Chase Manhattan Centre, 1201 Market Street, Suite 800 | Wilmington, DE 19801
Phone: (302)425-6410 | Fax: (302)428-5132 | Email: Poppiti@BlankRome.com


**From:** Graham, Mary [mailto:MGraham@MNAT.com]
**Sent:** Monday, June 11, 2007 2:18 PM
**To:** Poppiti, Vincent J.
**Cc:** LeVan, Mary; David, Carrie; Carickhoff, David; Athey, J. Clayton; Cottrell, Frederick; Shandler, Chad; Horwitz, Richard L.; Drane, Jr. W. Harding; Holzman, James L.
**Subject:** In re Intel: Apportionment of fees to Fry's

Dear Judge Poppiti:

We are in receipt of the attached invoice dated May 25, 2007 which allocates a portion of the Special Master's fees and costs for April 2007 to nonparty Fry's Electronics. Is it possible that this apportionment is in error? Our understanding of Rule 53 is that it does not permit apportionment of a special master's fees and costs to a nonparty, and we have found no Third Circuit authority to the contrary.

Your consideration of this matter is greatly appreciated.
Respectfully,
Mary Graham


<<052507 Intel Special Master Invoice 868401.pdf>>

---

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that

10/17/2007

In re Intel: Apportionment of fees to Fry's

the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

..................................................................................................................

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

..................................................................................................................

Any Federal tax advice contained herein is not intended or written to be used, and cannot be used by you or any other person, for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Code. This disclosure is made in accordance with the rules of Treasury Department Circular 230 governing standards of practice before the Internal Revenue Service. Any written statement contained herein relating to any Federal tax transaction or matter may not be used by any person without the express prior written permission in each instance of a partner of this firm to support the promotion or marketing of or to recommend any Federal tax transaction(s) or matter(s) addressed herein.

*****************************************************************************

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

EXHIBIT 5

# PRICKETT, JONES & ELLIOTT
### A PROFESSIONAL ASSOCIATION
## 1310 KING STREET, BOX 1328
## WILMINGTON, DELAWARE 19899
### TEL: (302) 888-6500
### FAX: (302) 658-8111
### http://www.prickett.com

Writer's Direct Dial:
(302)888-6507
Writer's Telecopy Number:
(302)658-8111
Writer's E-Mail Address:
JCAthey@prickett.com

Dover Office:
11 NORTH STATE STREET
DOVER, DELAWARE 19901
TEL: (302) 674-3841
FAX: (302) 674-5864

June 25, 2007

**VIA HAND AND EMAIL**

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 N. Market Street
Wilmington, DE 19801-4226

> Re:     *DM 5;*
> *In re Intel Corp. Microprocessor Antitrust Litigation, MDL No. 05-1717-JJF;*
> *Advanced Micro Devices, Inc., et al. v. Intel Corp., et al., C.A. No. 05-441-JJF;*
> *Phil Paul v. Intel Corp., Consolidated C.A. No. 05-485-JJF*

Dear Judge Poppiti:

I write on behalf of Class Plaintiffs concerning Fry's objection to the allocation of the Special Master's fees in respect of Discovery Matter 5 ("DM 5") as between Class Plaintiffs and Fry's Electronics, Inc. ("Fry's"), as detailed in Your Honor's letter to counsel of May 25, 2007. Class Plaintiffs believe that the Special Master has authority to allocate a portion of his compensation to third parties, and that in this discovery matter to date, he properly exercised his discretion in apportioning one-half of his time to Fry's. Fry's has provided no persuasive reason to change this allocation.

The Special Master is not powerless to require third parties to share in costs generated by their conduct. Where the actions of a nonparty have led to a discovery dispute or increased the cost of a special master's involvement in the dispute, the assessment of special master compensation to that nonparty is appropriate. *See Nebraska v. Wyoming and Colorado,* 504 U.S. 982, 982 (1992) (assessing special master's fees and expenses on nonparty *amici*); *United States v. Duke Energy Corp.,* 2006 WL 2547986, at *2 (D.D.C. Aug. 31, 2006) (on motion to compel nonparty's compliance with subpoena, nonparty responsible for payment of special master's fees and costs) (Ex. A); *see also EEOC v. Int'l Union of Elec., Radio and Mach. Workers,* 631 F.2d 81 (6th Cir. 1980) (assessing Special Master fees against nominal defendants despite their argument that no relief was sought against them in the litigation).

Nothing in Federal Rule of Civil Procedure 53 bars the Special Master, when appropriate, from including a third party in an allocation of costs. To the contrary, Rule 53 expressly permits the district court to require payment of the Special Master's compensation "from a fund or subject matter of the action within the court's control." Fed. R. Civ. P. 53(h)(2)(B). As long as the court has jurisdiction over a third party, the Special Master can reach the nonparty's assets, which in that situation are "a fund or subject matter of the action within the court's control."

19684.1\337648v1

The Honorable Vincent J. Poppiti
June 25, 2007
Page 2

Here, the Court has concluded that it has jurisdiction to enforce the subpoena served on Fry's, and as an integral part of that jurisdiction, can require Fry's to pay its share of the cost of adjudicating Fry's obligations under the subpoena. Moreover, the Special Master may allocate his compensation to a nonparty as a sanction under Rule 53(c) (authorizing master to recommend "sanctions against a nonparty") or Rule 45(e) (providing that failure to comply with subpoena "without adequate excuse" "may be deemed a contempt of court").

The Court's May 11, 2006 Order Appointing Special Master ("Special Master Order") also permits the Special Master to allocate a portion of the obligation to pay his compensation to third parties. The Special Master Order provides that the Special Master's compensation and expenses shall be shared equally by "the parties" "unless otherwise ordered by the Special Master." Special Master Order ¶10, D.I. 73 in 05-MD-1717. A "party" may be assessed a disproportionate share of the Special Master's compensation and expense if it "engages in behavior that hinders the efficient resolution" of the discovery dispute. *Id.*

In the context of a Discovery Matter before the Special Master, the term "party" should be properly read to mean a party to the Discovery Matter, not just a party to the underlying litigation. This is so for at least two reasons. First, the Special Master is authorized "to regulate *all* proceedings and take all measures necessary to manage electronic discovery production ...." *Id.* ¶ 2 (emphasis added). It was clear when the Special Master Order was entered that this case would involve substantial electronic discovery from third parties, and the Special Master subsequently has in fact presided over proceedings involving third parties. Surely it was contemplated when the Special Master Order was entered that third parties might appear before the Special Master on a discovery dispute. Second, the Special Master's authority to specially apportion his charges based on a party's conduct can be appropriately discharged only if he can take account of the behavior of all those before him in a discovery matter – including any third parties acting unreasonably. *See Pennsylvania v. Operating Eng'rs*, 507 F.Supp. 1146, 1163 (E.D.Pa. 1980) ("the cost of a master should be borne by the party or parties whose conduct necessitated the reference to the master"), *aff'd without opinion*, 648 F.2d 923 (3d Cir. 1981), *rev'd on other grounds*, 458 U.S. 375 (1982). Thus, common sense and fairness dictate that Fry's be considered a party as that term is used in paragraph 10 of the Special Master Order, because it is a party in DM 5. As such, Fry's is subject to the Special Master's authority to apportion his compensation and expenses.

The Special Master's allocation of a portion of his fees and expenses to Fry's is appropriate in light of Fry's conduct in failing to produce the transactional data called for by the subpoenas served by Class Plaintiffs, AMD and Intel. Fry's intransigence required the Special Master's intervention in the first place, and its insistence that the protective order in this litigation be amended and that this Court lacked jurisdiction multiplied the time the Special Master has needed to devote to this discovery matter. In particular, Fry's effort to modify the protective order – raising the same issues that had been raised, considered and decided on a full record a year before – generated expense that Fry's should bear. The cost of a special master should be borne by those whose conduct necessitated the special master's involvement. Because

The Honorable Vincent J. Poppiti
June 25, 2007
Page 3

of Fry's responsibility for the time the Special Master expended on DM 5, it is appropriate that Fry's bear at least half of the costs for the Special Master's efforts.

For the foregoing reasons, Class Plaintiffs believe that the Special Master has authority to allocate a portion of his compensation for time spent on DM 5 to Fry's and that Fry's challenge to the Special Master's authority should be rejected.[1]

Respectfully,

J. Clayton Athey

JLH/sam

cc:    Frederick L. Cottrell, III, Esq.
       Richard L. Horwitz, Esq.

---

[1] Class Plaintiffs reserve the right to request under Rule 53 or 45 that Fry's bear a greater share of the costs once all matters related to DM 5 have been decided. We also note in the event that Fry's produces data to Class Plaintiffs, that AMD and Intel, as a condition of receiving the data, should reimburse Class Plaintiffs for an appropriate portion of the cost Class Plaintiffs incurred in obtaining the data.

19684.1\337648v1



Westlaw.

Slip Copy                                                                 Page 1

Slip Copy, 2006 WL 2547986 (D.D.C.)
(Cite as: Slip Copy)

**H**
U.S. v. Duke Energy Corp.
D.D.C.,2006.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
UNITED STATES OF America, et al., Plaintiffs,
v.
DUKE ENERGY CORPORATION, Defendant.
United States of America, et al., Plaintiffs,
v.
Ohio Edison Company, et al., Defendants.
United States of America, et al., Plaintiffs,
v.
Southern Indiana Gas and Electric Company,
Defendant.
United States of America, et al., Plaintiffs,
v.
Cinergy Corporation, PSI Energy, Incorporated,
Cincinnati Gas & Electrical Company, Defendants.
United States of America, et al., Plaintiffs,
andState of New York, et al., Plaintiff-Intervenors,
v.
American Electrical Power Service Corporation, et
al., Defendants.
Civil Action Nos. 1:00 CV 1262, C2-99-1181,
IP99-1692-C-M/F, IP99-1693 C-M/S 1:00 CV,
C2-99-1182; C2-99-1250.
Miscellaneous Nos. 02-0480 (PLF/AK), 04-0065
(PLF/AK).

Aug. 31, 2006.

Jason A. Dunn, Thomas L. Sansonetti, U.S.
Department of Justice, Mark E. Nagle, Roscoe
Howard, Jr., Troutman Sanders, LLP, William
Rakestraw Cowden, U.S. Attorney's Office,
Washington, DC, for Plaintiffs.
Bradley Joseph Bondi, Kirkland & Ellis LLP, John
Joseph Buckley, Jr., Williams & Connolly, Lydia
Kay Griggsby, U.S. Senate Office, Washington,
DC, for Movant.

*MEMORANDUM OPINION AND ORDER*

PAUL L. FRIEDMAN, District Judge.
**\*1** This matter is before the Court in these
consolidated cases for consideration of Magistrate
Judge Alan Kay's Report and Recommendation
[Docket No. 57 in ms02-480] of March 30, 2005.[FN1]
The United States objected to the March 30,
2005 Report on April 18, 2005[58]. Non-party
Utility Air Regulatory Group ("UARG") responded
to the government's objections [59], and the
government replied [60].

> FN1. Unless otherwise noted, all docket
> document number citations herein refer to
> the docket in *United States v. Duke Energy*,
> Misc. Case No. 02-0480 (PLF/AK), rather
> than the docket in the consolidated case of
> *United States v. Cinergy Corp.*, Misc. Case
> No.04-0065 (PLF/AK).

Under 28 U.S.C. § 636(b)(1), Rule 72(a) of the
Federal Rules of Civil Procedure and Local Civil
Rule 72.3(b), an aggrieved party may file objections
to or seek reconsideration of a magistrate judge's
ruling or report and recommendation regarding
non-dispositive matters within ten days of the
issuance thereof. Upon consideration of such
objections, the district court may modify or set
aside any portion of the magistrate judge's order or
recommendation if it is "clearly erroneous or
contrary to law." Rule 72(a), Fed.R.Civ.P.; *see also*
LCvR 72.2(c); *In re United Mine Workers of
America Employee Benefit Plans Litigation*, 159
F.R.D. 307, 308 (D.D.C.1994); *FSLIC v.
Commonwealth Land Title Insurance Co.*, 130
F.R.D. 507, 508 (D.D.C.1990).

In his earlier Reports and Recommendations,
Magistrate Judge Kay set out a procedure for
review of assertedly privileged documents by a
Special Master. This Court adopted the previous
Reports from Magistrate Judge Kay on January 3,
2005[55]. The documents were then reviewed by a
Special Master who was agreed on by the parties,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 2

Slip Copy, 2006 WL 2547986 (D.D.C.)
(Cite as: Slip Copy)

Judge Richard A. Levie (Retired). The Special Master prepared a report dated March 7, 2005, which was reviewed *in camera* by Magistrate Judge Kay. As a result of this review, Magistrate Judge Kay recommends in his March 30 Report that: (1) the Special Master's Report and Recommendation be adopted by this Court and the privilege be upheld with respect to the documents withheld from production; (2) the Special Master's Report be unsealed and turned over to the parties since it does not disclose the actual substance of and communications deemed to be privileged or protected; and (3) the Government's motion to compel [Docket No. 1 in Duke Energy and Docket No. 1 in Cinergy] be denied, with the government and UARG each to bear their own costs.

Upon careful consideration of the Report and Recommendation of Magistrate Judge Kay, a review of Judge Levie's report, and the entire record in this matter, it is hereby

ORDERED that the Report and Recommendation [57] of Magistrate Judge Alan Kay is ADOPTED and APPROVED: it is

FURTHER ORDERED that the report of the Special Master be unsealed and made available to the parties; it is

FURTHER ORDERED that the Special Master's Report and Recommendation is adopted by this Court; it is

FURTHER ORDERED that the United States' motions to compel compliance with subpoenas [Docket # 1 in ms02-0480; Docket # 1 in ms04-0065] are DENIED; and it is

FURTHER ORDERED that all other pending motions are DENIED as moot.

SO ORDERED.
ALAN KAY, Magistrate Judge.

### *REPORT AND RECOMMENDATION*

**\*2** The above-captioned cases were initially referred to the undersigned for a report and

recommendation on Plaintiff United States' pending motions to compel non-party Utility Air Regulatory Group's compliance with subpoenas, and UARG's oppositions thereto and motions to quash the subpoenas. The undersigned issued a June 9, 2003 Report and Recommendation, an October 22, 2003 Supplemental Report and Recommendation [addressing the parties' objections and request for clarification of the first Report and Recommendation], and a November 23, 2004 Report and Recommendation [recommending that second miscellaneous action be treated in a consistent manner with the first miscellaneous action.] *See* Reports and Recommendations docketed at [27] and [41] in the *Duke Energy* case, and at [9] in the *Cinergy Corp.* case. Because of the number of contested documents at issue, and the fact that no privilege log had been produced by UARG, the undersigned's first Report and Recommendation recommended that the trial court " appoint a Special Master for the purpose of reviewing between six and ten documents from each of the twenty boxes of contested documents, with the exact number to be determined by the Special Master and the documents to be randomly selected by the Special Master." June 9, 2003 Report and Recommendation at 14. The undersigned further recommended that UARG be held responsible for payment of the Special Master's fees and costs relating to his initial review of the contested documents, with the costs of any further review to be divided between UARG and the Government. *Id.* at 15.

On January 3, 2005, the trial court issued a Memorandum Opinion and Order adopting and approving all three Reports and Recommendations, and directing the undersigned to appoint a Special Master under the procedures and pursuant to the rulings and guidelines set forth in the June 9, 2003 Report and Recommendation, as clarified and supplemented by the Supplemental Report and Recommendation dated October 22, 2003. On February 9, 2005, the undersigned ordered the appointment of a mutually agreed-upon individual, Judge Richard A. Levie (Retired), to act as Special Master. The Special Master was charged with performing an initial review of documents *in camera* to determine the applicability of UARG's privilege

Slip Copy                                                                                                    Page 3

Slip Copy, 2006 WL 2547986 (D.D.C.)
(Cite as: Slip Copy)

claims. The Special Master's fees and reasonable costs were to be borne by UARG. *See* February 9, 2005 Order Appointing Special Master.

On March 7, 2005, the Special Master filed his Report and Recommendation, indicating that he had reviewed a random sampling of the documents provided by UARG.[FN1] The Special Master recommended that UARG's claim of privilege be sustained on almost every document, with the exception of a few "groups of documents," noting however that, as a practical matter, the Court might decline to order production of those groups of documents on grounds that the time and resources needed to separate such documents exceeds the value of such documents. Report at 5.[FN2] The Special Master further explained that there were several specific documents of the 200 reviewed where he disagreed with the claims of privilege but many of those documents are "publicly available documents attached to documents for which there is a recommendation that the bulk of the document be found protected...." Report at 6. He reiterated his conclusion that there is a practical question whether the Government's need for such documents outweighs the time and resources needed to cull out and disclose those documents. Report at 7. The Special Master then engaged in a thorough legal analysis of the attorney-client privilege and work product protection claims and his Report concluded with a document-by-document analysis and suggested ruling on UARG's claims.

FN1. Following the random selection of 227 documents, 27 documents were found to be subject to privilege rulings by other courts and were therefore excluded from the Special Master's review. For the remaining 200 documents, UARG provided the Government with a privilege log indicating its privilege claims.

FN2. Such groups of documents include lists of UARG meetings, facsimile cover sheets, meeting attendance sheets.

### RECOMMENDATION

*3 Based upon the Special Master's conclusions that the vast majority of UARG documents are privileged, with a limited number of insignificant exceptions, the undersigned recommends that the Special Master's Report and Recommendation be adopted by the trial court and the privilege be upheld with respect to the documents withheld from production. The undersigned recommends that the Special Master's Report be unsealed and turned over to the parties since it does not disclose the actual substance of any communications deemed to be privileged or protected. The undersigned further recommends that if the Special Master's Report and Recommendation is adopted by the trial court, the Government's motions to compel, docketed at [1] [ *Duke Energy* ] and [1] [*Cinergy* ] be denied, and UARG's motions to quash, docketed at [6] [*Duke Energy* ] and [3] [*Cinergy* ] be granted, with the Government and UARG to bear their own costs associated with filing such motions.

### REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985). If this Report and Recommendation is served on the parties by mail, calculation of the time period for filing written objections is as follows: 10 business days (excluding weekends and holidays) plus three calendar days (including weekends and holidays). *See CNPq-Conselho Nacional De Desenvolvimento Cientifico E Technological v. Inter-Trade, Inc.*, 50 F.3d 56, 58 (D.C.Cir.1995) (per curiam).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                              Page 4

Slip Copy, 2006 WL 2547986 (D.D.C.)
(Cite as: Slip Copy)


D.D.C.,2006.
U.S. v. Duke Energy Corp.
Slip Copy, 2006 WL 2547986 (D.D.C.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 6

# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

MARY B. GRAHAM
(302) 351-9199
mgraham@mnat.com

**DM5**

July 10, 2007

**VIA HAND DELIVERY AND EMAIL**

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
Wilmington, DE 19801-4226

Re:   *Phil Paul v. Intel Corporation*, C.A. No. 05-485 (JJF) Consolidated;
      *Intel Corp. Microprocessor Antitrust Litigation*, MDL Docket No. 05-1717 (JJF)

Dear Judge Poppiti:

Fry's respectfully submits this response to Class Plaintiffs' letter dated June 25, 2007 concerning the allocation of a portion of the Special Master's fees to nonparty Fry's Electronics, Inc.

## Compensation of Special Master

Federal Rule of Civil Procedure 53 governs the appointment of a special master. Rule 53(h) sets forth the compensation scheme for special masters and provides in pertinent part:

(h)     **Compensation.**

(1)     **Fixing Compensation.** The court must fix the master's compensation before or after judgment on the basis and terms stated in the order of appointment, but the court may set a new basis and terms after notice and an opportunity to be heard.

(2)     **Payment.** The compensation fixed under Rule 53(h)(1) must be paid either:

The Honorable Vincent J. Poppiti
July 10, 2007
Page 2

        (A)    by a party or parties; or

        (B)    from a fund or subject matter of the action within the court's control.

        **(3)**    **Allocation.**    The <u>court must allocate payment</u> of the master's compensation <u>among the parties</u> after considering the nature and amount of the controversy, the means of the parties, and the extent to which any party is more responsible that other parties for the reference to a master.  An interim allocation may be amended to reflect a decision on the merits.

Fed. R. Civ. P. 53(h) (emphasis added).

        The language of the rule expressly requires payment of a special master's compensation by the <u>parties</u> except under circumstances where the fees may be satisfied from a "fund or subject matter of the action within the court's control."[1]  Because this very limited exception has no applicability to the present case, the Special Master's fees must be apportioned among the <u>parties</u> -- Class Plaintiffs, AMD, and Intel.[2]

        Consistent with the mandate of Rule 53, the Court's May 11, 2006 Order Appointing Special Master requires that the Special Master's fees be "shared equally be [sic] the parties." May 11, 2006 Order, ¶10.  The May 11, 2006 Order further specifies that "the Special Master shall send statements for services and expenses directly to counsel for the parties on a monthly basis, and shall receive payment directly from counsel for the parties in a timely fashion." <u>Id</u>.  Moreover, the September 15, 2004 Order establishing a Special Master Panel (referenced in the May 11, 2006 Order), requires that "the compensation, costs and expenses of a Special Master shall be allocated equally among the parties unless otherwise ordered by the Court upon recommendation by the Special Master." September 15, 2004 Order, ¶4(b).

        Rule 53 -- as well as the relevant Court Orders -- dictates that the Special Master's fees are to be born entirely by the parties (<u>i.e.</u>, plaintiffs and defendants).  Class Plaintiffs' argument that the term "party" as it is used in the Federal Rules and in the Court's

---

[1]    This exception typically applies in connection with litigation seeking to establish a common fund.  <u>See</u> <u>e.g.</u>, In re Emex Corp. Secs. Litigation, 2004 WL 444538 (D.C.N.Y. 2004) (trial court held that special master would be paid from the Settlement Fund rather than by the parties).

[2]    The Federal Rules expressly define the term "party" to mean any plaintiff or defendant named in a complaint.  <u>See</u> Fed. R. Civ. P. 10 (requiring that the complaint identify each "party" to the lawsuit).  Therefore, a person not named in the complaint cannot be a "party" under the Federal Rules.

The Honorable Vincent J. Poppiti
July 10, 2007
Page 3

May 11, 2006 Order should be construed to include a "nonparty" subject to a motion to compel is not supported by any authority whatsoever and would render Rule 53's use of the term "nonparty" superfluous.  See, e.g., Fed. R. Civ. P. 53(c) ("The master . . . may recommend a contempt sanction against a party and sanctions against a nonparty.").   Such a tortured construction is not only contrary to the basic rules of statutory construction, it also raises serious due process concerns.

## Discussion Of The Cases Cited By Class Plaintiffs

None of the authorities cited by Class Plaintiffs stands for the proposition that a nonparty such as Fry's may be apportioned a percentage of a special master's fees where the nonparty has been involuntarily haled into court on a motion to compel discovery.   Indeed, neither Class Plaintiffs nor Fry's has been able to locate a single decision wherein the Court has construed Rule 53(h) to permit a special master to apportion special master fees to a nonparty.  In the absence of such authority, Class Plaintiffs' request that Fry's bear some portion of the Special Master's fees should be denied.

Each of the cases relied upon by Class Plaintiffs is readily distinguishable from the present case -- either because the nonparties consented to the apportionment or the case involved apportionment to a named plaintiff or defendant.   For example, in Nebraska v. Wyoming, a special master appointed by the United States Supreme Court (acting as trial court in an action between states) imposed a portion of a special master's fee on various proposed intervenors/amici.   The Court permitted the parties and the proposed intervenors/amici to comment on the suggestion from the special master that the intervenors/amici be assessed a portion of the fees.   The opinion approving the order specifically found that "no party or the proposed intervenor/amicus has objected to the propriety of including nonobjecting amici in the assessment."  Nebraska v. Wyoming, 504 U.S. 982, 982 (1992).  As a result, the Court did "not reach the issue, deeming the parties to have agreed with the procedure."  Id.  Notably, Justice Stevens dissented, finding that the Court has no authority to assess costs against nonparties.  Id. at 983.   Nonetheless, because the majority holding involved an intervening amici who voluntarily chose to take part in the proceedings and did not object to the apportionment of fees (and, as proposed intervenors, were seeking "party" status), it is distinguishable from the present case.   Similarly, in United States v. Duke Energy Corp., also relied upon by Class Plaintiffs, the nonparty which was ordered to bear a portion of the special master's fees did not object and thus the issue of whether a district court has the authority to impose fees under Rule 53 was not decided.   United States v. Duke Energy Corp., 2006 WL 2547986 at *1 (D.D.C.) (objections to special master's report filed by plaintiff United States, not by nonparty UARG).

Class Plaintiffs' reliance on EEOC v. Int'l Union Elec., Radio and Mach. Workers is wholly misplaced as that decision permitted the allocation of a portion of the special master's fees to a "party" to the action, namely a nominal defendant who had actively participated in the litigation and filed a motion to be realigned as a plaintiff.  EEOC v. Int'l Union Elec., Radio and Mach. Workers, 631 F.2d 81, 82 (6th Cir. 1980).  Such allocation, unlike that requested here, was entirely consistent with Rule 53.

The Honorable Vincent J. Poppiti
July 10, 2007
Page 4

Finally, Class Plaintiffs argue -- without citation to any authority -- that Fry's should be ordered to pay a portion of the Special Master's fees as a de facto sanction for objecting to the subpoena thereby "requir[ing] the Special Master's intervention in the first place . . . ." See Class Plaintiffs' letter, dated June 25, 2007 at 2. This is simply not the law. To the contrary, the law is clear that a nonparty may not be sanctioned unless it violates a court order. See Cruz v. Meachum, 159 F.R.D. 366, 368 (D. Conn. 1994); 24 Hour Fitness U.S.A., Inc. v. 24/7 Tribeca Fitness, L.L.C., 2006 WL 1881763, *2 (S.D.N.Y. Jul 06, 2006); Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc., 2007 WL 852521, *7+ (D. Kan. Mar 16, 2007); Taylor v. Hart, 2007 WL 1959211, *1 (S.D. Ohio Jun 29, 2007). Accordingly, because there was no court order to produce the subpoenaed documents, Fry's cannot be sanctioned.

**Conclusion**

Fry's has been anything but intransigent in its dealings with Class Plaintiffs. Fry's is merely a third party that has been brought into this action by subpoena. Fry's has spent countless hours and incurred substantial attorneys' fees and other costs explaining its information systems and negotiating in good faith with Class Plaintiffs, AMD, and Intel in the hopes of reaching a solution to this dispute that provides the parties with legitimate discovery and that minimizes Fry's acknowledged trade secret concerns. It is the lack of particularity and the extreme breadth of Class Plaintiffs' subpoena that is the true source of the present dispute -- not nonparty Fry's conduct. Accordingly, the expenses incurred by the Special Master are therefore appropriately born by the parties.

In view of the clear mandate of Rule 53(h) that the Special Master's fees "must" be apportioned "among the parties," Fry's respectfully requests that the Special Master reissue the May 25, 2007 invoice and apportion his fees among Class Plaintiffs, AMD, and Intel.

Respectfully,

*/s/ Mary B. Graham*

Mary B. Graham

MBG/lm
cc:    Clerk of the Court (via efiling and hand delivery)
       J. Clayton Athey, Esq. (via email)
       James L. Holzman, Esq. (via email)
       Frederick L. Cottrell, III, Esq. (via email)
       Richard L. Horwitz, Esq. (via email)
       Dale R. Dube (via email)
       Carrie David (via email)
       Mary Levan (via email)

949798

# EXHIBIT 7

CONFIDENTIAL EXHIBIT

# EXHIBIT 8

Hearing

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ADVANCED MICRO DEVICES,           )
                                  )
        Plaintiffs,               )    Civil Action No.
                                  )    05-441-JJF
v.                                )
                                  )
INTEL CORPORATION,                )
                                  )
        Defendant.                )

        Teleconference in above matter taken pursuant to
notice before Renee A. Meyers, Certified Realtime
Reporter and Notary Public, in the offices of BLANK
ROME, LLP, 1201 North Market Street, Wilmington,
Delaware, on Thursday, September 27, 2007, beginning at
approximately 11:30 a.m., there being present:


BEFORE:

    THE HONORABLE VINCENT J. POPPITI, ESQ., SPECIAL MASTER

APPEARANCES:

        O'MELVENY & MYERS
        MARK SAMUELS, ESQ.
           1999 Avenue of the Stars
           Los Angeles, California  90067
        for AMD



                    CORBETT & WILCOX
               Registered Professional Reporters
        230 North Market Street     Wilmington, DE 19899
                    (302) 571-0510
                   www.corbettreporting.com
           Corbett & Associates is not affiliated
           With Wilcox & Fetzer, Court Reporters

Hearing

2 (Pages 2 to 5)

Page 2

```
1   APPEARANCES (Continued):
2
3       RICHARDS, LAYTON & FINGER
        FREDERICK L. COTTRELL, III, ESQ.
4       One Rodney Square
        Wilmington, DE 19899
5       for AMD
6   POTTER, ANDERSON & CORROON
        W. HARDING DRANE, JR, ESQ.
7       1313 North Market Street, 6th Floor
        Wilmington, DE 19899
8       for Intel
9   MORRIS, NICHOLS, ARSHT & TUNNELL
        MARY B. GRAHAM, ESQ.
10      1201 North Market Street
        Wilmington, Delaware 19899
11      for Frys Electronics
12  QUINN EMANUEL
        MICHAEL POWELL, ESQ.
13      365 S. Figueroa Street, 10th Floor
        Los Angeles, California 90017
14      for Frys Electronics
15  PRICKETT, JONES & ELLIOTT
        J. CLAYTON ATHEY, ESQ.
16      1310 King Street
        Wilmington, DE 19801
17      for Class
18  COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
        DANIEL SMALL, ESQ.
19      1100 New York Avenue, N.W.
        Suite 500, West Tower
20      Washington, D.C. 20005
        for Class
21  FINKELSTEIN THOMPSON & LOUGHRAN
        RICHARD VOLEN, ESQ.
22      235 Pine Street, 15th Floor
        San Francisco, California 94104
23      for Class
24
```

Page 3

```
1       SPECIAL MASTER POPPITI: If we could begin
2   with a roll call, please. From the Class?
3       MR. VOLEN: Richard Volen, Your Honor, and I
4   believe that Dan Small and Clay Athey will be joining as
5   well.
6       MR. SMALL: Your Honor, this is Dan Small.
7   I am on, too.
8       SPECIAL MASTER POPPITI: Thank you.
9       From Frys, please? Anyone from Frys on yet?
10  I think I heard Fred Cottrell's voice?
11      MR. COTTRELL: Yes, Your Honor, Fred
12  Cottrell for AMD.
13      SPECIAL MASTER POPPITI: Thank you. Any
14  idea as to who else will be joining us? Will somebody
15  be coming on other than --
16      MR. COTTRELL: I think, today, for AMD, it's
17  just me, Your Honor, because my understanding is it's
18  more of the Class/Frys issue.
19      SPECIAL MASTER POPPITI: Okay. That's good.
20      MS. GRAHAM: Hi. This is Mary. Is Mike
21  Powell on? I am not 100 percent sure that he knows this
22  is at 11:30 and not a little later, like at 12:00. I
23  spoke with him last afternoon and, you know, I was
24  talking about, you know, 12:00, but then when I looked
```

Page 4

```
1   back at the e-mail from your assistant, it sounded like
2   maybe you would want to be finished by 12 so then I
3   e-mailed back to her.
4       SPECIAL MASTER POPPITI: I was wanting to
5   accommodate your respective schedules. I was pretty
6   good today.
7       MS. GRAHAM: Okay. Well, if he doesn't get
8   on, I am pretty confident that he would be available,
9   you know, within the next half hour, but he is the one
10  that's really going to need to respond, I think, to your
11  questions.
12      SPECIAL MASTER POPPITI: Okay.
13      MS. GRAHAM: Hopefully, you know, I called
14  his office and his cell and I had e-mailed him this
15  morning.
16      SPECIAL MASTER POPPITI: And not heard back?
17      MS. GRAHAM: And I haven't heard back, and I
18  asked him to confirm that he was aware it was at 11:30.
19      SPECIAL MASTER POPPITI: Okay. Does anyone
20  have a problem with reconvening at 12:00?
21      MR. SAMUELS: Your Honor, that would be no
22  problem for me.
23      SPECIAL MASTER POPPITI: Maybe what I should
24  do is just tell you, between now and then, the reason
```

Page 5

```
1   for my call so you will be able to even have
2   conversation while we are waiting.
3       My question, quite simply, is focused on the
4   issue of allocation of costs and fees. And my question
5   is against the backdrop of wanting to make sure that
6   whatever I have or whatever I will have, and I think
7   it's really the latter than what I have presently, is an
8   appropriate record for the Court to have were there to
9   be any exceptions taken from whatever I do.
10      And part of that question is I am not sure,
11  based on what I have received, whether the term of the
12  recommendation and -- the recommendation that Class has
13  filed is in the nature of an application, and if it's
14  considered to be in the nature of an application, to
15  look at costs and fees more consistent with a Rule 37.
16  I am concerned that I don't have a record that Judge
17  Farnan could ultimately look at were there to be an
18  exception, and that even if Judge Farnan looked at it a
19  certain way, a record that could be taken to the
20  Circuit.
21      That's what I am going to want to be talking
22  to you about, and what I intend to do, when everyone
23  reconvenes, is, I think it's even fair to give you all
24  some inclination as to what I am inclined to do so that
```

Hearing

Page 6

1  everyone can measure whether you want to gear it up for
2  discussion and battle or whether it doesn't make sense
3  in terms of my inclination.
4       MR. SAMUELS: I appreciate that, Your Honor,
5  giving us the heads up, what the issue will be. I can
6  try to get ahold from someone from Frys so they also
7  have the benefit of the preview before they get on the
8  call at noon.
9       MS. GRAHAM: I am on the phone, Dan. I
10  appreciate your offer.
11       MR. SMALL: Okay.
12       SPECIAL MASTER POPPITI: So we will redo at
13  12:00?
14       MS. GRAHAM: Yes. Thank you very much. I
15  appreciate the accommodation.
16       (Recess taken.)
17       SPECIAL MASTER POPPITI: I would expect that
18  perhaps Mary Graham gave you a preview of what I wanted
19  to discuss?
20       MR. POWELL: She tried to, Your Honor. It
21  was -- we didn't have much time to talk. I had to make
22  a few calls, so I would appreciate, actually, if maybe
23  if Your Honor could explain, you know, the nature of the
24  inquiry and what it is we are addressing.

Page 7

1       SPECIAL MASTER POPPITI: The only thing that
2  I want to address is the issue dealing with fees and
3  expenses that come as a result of my work.
4       MR. POWELL: Okay.
5       SPECIAL MASTER POPPITI: And my question is
6  really against the backdrop of wanting to make sure that
7  whatever record there is, it is a record that is
8  appropriate for any work that either of you ask, either
9  side ask Judge Farnan to accomplish after I do my work
10  on that particular issue.
11       MR. POWELL: Okay.
12       SPECIAL MASTER POPPITI: And I said earlier
13  that I am not sure that I have that record at this
14  juncture because what I see is certainly competing
15  language in your respective forms of the proposed
16  findings of the proposed -- proposed report and
17  recommendation.
18       I don't know whether the language in the
19  submittal represents, in their view, a Rule 37
20  application or whether it just represents where they
21  would like to be after a meet and confer, if you will.
22       I don't think it's appropriate for me to
23  simply pick one or the other because I do expect that
24  there needs to be some development of the record if

Page 8

1  there is, in fact, a dispute that needs to be played
2  out, if you will.
3       I don't think we are in the same position
4  that we were in when I originally, back in an invoice
5  some time ago, the fees were beyond that because now we
6  are at conclusion of the application to require the
7  discovery be produced. I think we are in a little bit
8  of a different posture at this point, and I'd like to
9  hear whether the Class thinks that the record needs to
10  be developed further, and if the Class agrees with me,
11  how you would intend to do that so that I have a full
12  record with respect to this issue.
13       I might add that notwithstanding whatever I
14  do with respect to those costs and fees, and even if I
15  have to take some more time to look at that, I certainly
16  intend to turn to the more important aspect of the order
17  before the weekend.
18       MR. SMALL: Your Honor, this is Dan Small
19  for the Class plaintiffs. You anticipated exactly where
20  I was going to start, which is to say the issue of what
21  portion of Your Honor's costs should be shared by Frys,
22  if any, is a discrete issue that can be separated, I
23  believe, from all the other issues that are covered by
24  the proposed report and recommendation.

Page 9

1       So we would agree, absolutely, that it would
2  make sense to have Your Honor enter a report and
3  recommendation that deals with all of the other issues,
4  and then as to the specific issue of Your Honor's costs
5  and expenses, we could provide additional submissions on
6  that.
7       I think it does make sense because it was
8  about three months ago, I believe, that we last
9  addressed this and a lot has happened since then, and I
10  believe it is appropriate to bring the Court up-to-date
11  on that so that you have the best record possible on
12  which to make a ruling.
13       SPECIAL MASTER POPPITI: And do you see you
14  request being in the nature of a Rule 37 request?
15       MR. SMALL: Your Honor, I would not actually
16  think it would be handled under Rule 37. You may
17  recall, when we addressed this issue before, back in
18  June, we did cite to you various case law. We cited to
19  Rule 53 and we cited to Rule 45. And I believe, subject
20  to any additional research that might uncover other
21  bases, that those would be the grounds for requiring
22  Frys to share in Your Honor's costs and expenses.
23       SPECIAL MASTER POPPITI: Does Frys have
24  anything to offer or --

Hearing

4 (Pages 10 to 13)

---

**Page 10**

1    MR. POWELL: Your Honor, if I might, I mean,
2  I think Frys would be prepared to revisit the briefing
3  that we put in previously on this issue. I think the
4  way the issue was teed up a while back, and then it got
5  tabled because we continued our negotiations, the way it
6  got teed up was simply whether or not the Court could
7  impose Special Master fees upon a non-party pursuant to
8  enforcement of a subpoena. And, you know, we felt that
9  the law clearly supported Frys' position was that, you
10  know, in a normal circumstance, Your Honor, Frys would
11  have been in front of a district judge in Northern
12  District of California, and I think it would be
13  unprecedented for such a situation to involve a Special
14  Master.
15    Now, this case is unique. It's an MDL
16  proceeding, and, obviously, it has some special
17  considerations.
18    We feel, though, that the Federal Rules
19  still don't permit the judge to award Special Master
20  fees or impose Special Master fees on a non-party. We
21  weren't provided the opportunity to object to the
22  appointment of a Special Master. And I think those
23  issues were addressed previously.
24    If Your Honor feels that they weren't

---

**Page 11**

1  addressed sufficiently, then I think Frys would go along
2  with some further submission on that issue separately
3  from what we think the Court can recommend to Farnan at
4  this juncture based on the parties' stipulation.
5    SPECIAL MASTER POPPITI: Well, then, it will
6  come down to whether the Class wants to be doing
7  anything to supplement the submittals that have already
8  been filed, and I think I heard that there is interest
9  in doing that; is that correct?
10    MR. SMALL: That is correct, Your Honor.
11  Dan Small for the Class. I don't think it has to be
12  anything particularly elaborate or extensive, but I
13  think there are particular materials and arguments,
14  particularly based on more recent events since June that
15  are appropriately brought to Your Honor's attention, and
16  I would suggest we set up a relatively quick briefing
17  schedule to have us, you know, first submit our
18  additional information and argument, have Frys respond
19  to it, and then we do a short reply and then it should
20  be ready for Your Honor's consideration.
21    SPECIAL MASTER POPPITI: Why don't you
22  propose some date, if you would, please.
23    MR. SMALL: I would think ten days for our
24  opening brief, ten days for Frys' reply, and then seven

---

**Page 12**

1  days for our response to that.
2    SPECIAL MASTER POPPITI: Calendar days?
3    MR. SMALL: Yes, Your Honor. Maybe, because
4  of the weekend, October 8th for our opening brief, the
5  18th for Frys' opposition, and the 25th for our reply.
6    SPECIAL MASTER POPPITI: Any comment from
7  Frys, please?
8    MR. POWELL: Your Honor, if you will, I am
9  checking my calendar right now. I know that Robert
10  Stone, who is the partner on this case, is out of the
11  country all next week, but let me just see what my
12  calendar looks like following the 18th. Just one
13  moment.
14    SPECIAL MASTER POPPITI: Okay.
15    MR. POWELL: I think the schedule proposed
16  is fine.
17    SPECIAL MASTER POPPITI: Okay. Then let's
18  do that. Do I need to establish a page limit? Because,
19  I agree with you, it doesn't need to be a lengthy
20  discussion.
21    MR. SMALL: Your Honor, I think, in the
22  past, something like five pages for the first two briefs
23  and three for the third brief would work.
24    MR. POWELL: That's fine with Frys.

---

**Page 13**

1    SPECIAL MASTER POPPITI: That's fine as well
2  with me. Let's operate with those dates, and I will get
3  something out with respect to the rest of the order
4  before the end of the day tomorrow.
5    MS. GRAHAM: What's the date for their
6  reply? Ours is due the 18th and then when is theirs
7  due?
8    MR. SMALL: The 25th, Mary.
9    MS. GRAHAM: Thank you.
10    MR. POWELL: Your Honor, would there be an
11  opportunity for us to request a hearing once we have the
12  briefing?
13    SPECIAL MASTER POPPITI: If there is a need
14  for that, please do that, yes, and I would expect that
15  that would not be lengthy either.
16    MR. POWELL: Okay.
17    SPECIAL MASTER POPPITI: Anything else,
18  then, please? I really appreciate your accommodating my
19  request and have a safe trip back to New York, sir.
20    MR. POWELL: You are welcome. Thank you.
21    MR. SMALL: Thank you, Your Honor.
22    (The hearing was concluded at 12:13 p.m.)
23
24

---

Hearing

Page 14

```
 1         CERTIFICATE
 2   STATE OF DELAWARE:
 
 3   NEW CASTLE COUNTY:
 4        I, Renee A. Meyers, a Registered Professional
 5   Reporter, within and for the County and State aforesaid,
 6   do hereby certify that the foregoing teleconference was
 7   taken before me, pursuant to notice, at the time and
 8   place indicated; that the teleconference was correctly
 9   recorded in machine shorthand by me and thereafter
10   transcribed under my supervision with computer-aided
11   transcription; that the foregoing teleconference is a
12   true record; and that I am neither of counsel nor kin to
13   any party in said action, nor interested in the outcome
14   thereof.
15        WITNESS my hand this 27th day of September A.D.
16   2007.
17
18
19        RENEE A. MEYERS
          REGISTERED PROFESSIONAL REPORTER
20        CERTIFICATION NO. 106-RPR
          (Expires January 31, 2008)
21
22
23
24
```

www.corbettreporting.com

Hearing

| A | | | | |
|---|---|---|---|---|
| able 5:1 | 7:8,22 9:10 | briefs 12:22 | concluded 13:22 | 2:10 14:2 |
| absolutely 9:1 | appropriately | bring 9:10 | conclusion 8:6 | developed 8:10 |
| accommodate | 11:15 | brought 11:15 | confer 7:21 | development |
| 4:5 | approximately | | confident 4:8 | 7:24 |
| accommodating | 1:11 | C | confirm 4:18 | DEVICES 1:3 |
| 13:18 | argument 11:18 | C 14:1,1 | consideration | different 8:8 |
| accommodation | arguments | calendar 12:2,9 | 11:20 | discovery 8:7 |
| 6:15 | 11:13 | 12:12 | considerations | discrete 8:22 |
| accomplish 7:9 | ARSHT 2:8 | California 1:17, | 10:17 | discuss 6:19 |
| action 1:4 14:13 | asked 4:18 | 2:13,22 10:12 | considered 5:14 | discussion 6:2 |
| add 8:13 | aspect 8:16 | call 3:2 5:1 6:8 | consistent 5:15 | 12:20 |
| additional 9:5 | assistant 4:1 | called 4:13 | continued 2:1 | dispute 8:1 |
| 9:20 11:18 | Associates 1:23 | calls 6:22 | 10:5 | district 1:1,2 |
| address 7:2 | Athey 2:15 3:4 | case 9:18 10:15 | conversation 5:2 | 10:11,12 |
| addressed 9:9 | attention 11:15 | 12:10 | Corbett 1:20,23 | doing 11:6,9 |
| 9:17 10:23 | available 4:8 | CASTLE 14:3 | CORPORATI... | DRANE 2:6 |
| 11:1 | Avenue 1:16 | cell 4:14 | 1:6 | due 13:6,7 |
| addressing 6:24 | 2:18 | certain 5:19 | correct 11:9,10 | D.C 2:19 |
| ADVANCED | award 10:19 | certainly 7:14 | correctly 14:8 | |
| 1:3 | aware 4:18 | 8:15 | CORROON 2:5 | E |
| affiliated 1:23 | A.D 14:15 | CERTIFICA... | costs 5:4,15 8:14 | E 14:1,1 |
| aforesaid 14:5 | a.m 1:11 | 14:20 | 8:21 9:4,22 | earlier 7:12 |
| afternoon 3:23 | | Certified 1:9 | Cottrell 2:3 3:11 | either 7:8,8 |
| ago 8:5 9:8 | B | certify 14:6 | 3:12,16 | 13:15 |
| agree 9:1 12:19 | B 2:9 | checking 12:9 | Cottrell's 3:10 | elaborate 11:12 |
| agrees 8:10 | back 4:1,3,16,17 | Circuit 5:20 | counsel 14:12 | Electronics 2:10 |
| ahold 6:6 | 8:4 9:17 10:4 | circumstance | country 12:11 | 2:13 |
| allocation 5:4 | 13:19 | 10:10 | County 14:3,5 | ELLIOTT 2:14 |
| AMD 1:17 2:4 | backdrop 5:5 | cite 9:18 | Court 1:1,23 5:8 | EMANUEL |
| 3:12,16 | 7:6 | cited 9:18,19 | 9:10 10:6 11:3 | 2:11 |
| ANDERSON | based 5:11 11:4 | Civil 1:4 | covered 8:23 | enforcement |
| 2:5 | 11:14 | Class 2:16,20,23 | | 10:8 |
| Angeles 1:17 | bases 9:21 | 3:2 5:12 8:9,10 | D | enter 9:2 |
| 2:13 | battle 6:2 | 8:19 11:6,11 | Dan 3:4,6 6:9 | ESQ 1:13,16 2:3 |
| anticipated 8:19 | beginning 1:10 | Class/Frys 3:18 | 8:18 11:11 | 2:6,9,12,15,18 |
| APPEARANC... | believe 3:4 8:23 | Clay 3:4 | DANIEL 2:18 | 2:21 |
| 1:14 2:1 | 9:8,10,19 | CLAYTON 2:15 | date 11:22 13:5 | establish 12:18 |
| application 5:13 | benefit 6:7 | clearly 10:9 | dates 13:2 | events 11:14 |
| 5:14 7:20 8:6 | best 9:11 | COHEN 2:17 | day 13:4 14:15 | exactly 8:19 |
| appointment | beyond 8:5 | come 7:3 11:6 | days 11:23,24 | exception 5:18 |
| 10:22 | bit 8:7 | coming 3:15 | 12:1,2 | exceptions 5:9 |
| appreciate 6:4 | BLANK 1:9 | comment 12:6 | DE 1:21 2:4,7,16 | expect 6:17 7:23 |
| 6:10,15,22 | brief 11:24 12:4 | competing 7:14 | dealing 7:2 | 13:14 |
| 13:18 | 12:23 | computer-aided | deals 9:3 | expenses 7:3 9:5 |
| appropriate 5:8 | briefing 10:2 | 14:10 | Defendant 1:7 | 9:22 |
| | 11:16 13:12 | concerned 5:16 | Delaware 1:2,10 | Expires 14:20 |

Hearing

Page 2

| | | | | |
|---|---|---|---|---|
| explain 6:23 | 12:24 | **I** | **L** | **MICRO** 1:3 |
| extensive 11:12 | full 8:11 | idea 3:14 | **L** 2:3 | Mike 3:20 |
| e-mail 4:1 | further 8:10 | III 2:3 | language 7:15 | **MILSTEIN** |
| e-mailed 4:3,14 | 11:2 | important 8:16 | 7:18 | 2:17 |
| | | impose 10:7,20 | law 9:18 10:9 | moment 12:13 |
| **F** | **G** | inclination 5:24 | **LAYTON** 2:2 | months 9:8 |
| F 14:1 | gear 6:1 | 6:3 | lengthy 12:19 | morning 4:15 |
| fact 8:1 | give 5:23 | inclined 5:24 | 13:15 | **MORRIS** 2:8 |
| fair 5:23 | giving 6:5 | indicated 14:8 | let's 12:17 13:2 | **MYERS** 1:15 |
| Farnan 5:17,18 | go 11:1 | information | limit 12:18 | |
| 7:9 11:3 | going 4:10 5:21 | 11:18 | little 3:22 8:7 | **N** |
| Federal 10:18 | 8:20 | inquiry 6:24 | **LLP** 1:10 | nature 5:13,14 |
| feel 10:18 | good 3:19 4:6 | Intel 1:6 2:7 | look 5:15,17 | 6:23 9:14 |
| feels 10:24 | Graham 2:9 | intend 5:22 8:11 | 8:15 | need 4:10 12:18 |
| fees 5:4,15 7:2 | 3:20 4:7,13,17 | 8:16 | looked 3:24 5:18 | 12:19 13:13 |
| 8:5,14 10:7,20 | 6:9,14,18 13:5 | interest 11:8 | looks 12:12 | needs 7:24 8:1,9 |
| 10:20 | 13:9 | interested 14:13 | Los 1:17 2:13 | negotiations |
| felt 10:8 | grounds 9:21 | invoice 8:4 | lot 9:9 | 10:5 |
| Fetzer 1:23 | | involve 10:13 | **LOUGHRAN** | neither 14:12 |
| Figueroa 2:12 | **H** | issue 3:18 5:4 | 2:21 | New 2:18 13:19 |
| filed 5:13 11:8 | half 4:9 | 6:5 7:2,10 8:12 | | 14:3 |
| findings 7:16 | hand 14:15 | 8:20,22 9:4,17 | **M** | **NICHOLS** 2:8 |
| fine 12:16,24 | handled 9:16 | 10:3,4 11:2 | machine 14:9 | non-party 10:7 |
| 13:1 | happened 9:9 | issues 8:23 9:3 | **MARK** 1:16 | 10:20 |
| **FINGER** 2:2 | **HARDING** 2:6 | 10:23 | Market 1:10,21 | noon 6:8 |
| finished 4:2 | **HAUSFELD** | | 2:6,9 | normal 10:10 |
| **FINKELSTEIN** | 2:17 | **J** | Mary 2:9 3:20 | North 1:10,21 |
| 2:21 | heads 6:5 | J 1:13 2:15 | 6:18 13:8 | 2:6,9 |
| first 11:17 12:22 | hear 8:9 | January 14:20 | Master 1:13 3:1 | Northern 10:11 |
| five 12:22 | heard 3:10 4:16 | joining 3:4,14 | 3:8,13,19 4:4 | Notary 1:9 |
| Floor 2:6,12,22 | 4:17 11:8 | **JONES** 2:14 | 4:12,16,19,23 | notice 1:9 14:7 |
| focused 5:3 | hearing 13:11 | JR 2:6 | 6:12,17 7:1,5 | notwithstandi... |
| following 12:12 | 13:22 | judge 5:16,18 | 7:12 9:13,23 | 8:13 |
| foregoing 14:6 | Hi 3:20 | 7:9 10:11,19 | 10:7,14,19,20 | N.W 2:18 |
| 14:11 | Honor 3:3,6,11 | juncture 7:14 | 10:22 11:5,21 | |
| forms 7:15 | 3:17 4:21 6:4 | 11:4 | 12:2,6,14,17 | **O** |
| Francisco 2:22 | 6:20,23 8:18 | June 9:18 11:14 | 13:1,13,17 | object 10:21 |
| Fred 3:10,11 | 9:2,15 10:1,10 | | materials 11:13 | obviously 10:16 |
| **FREDERICK** | 10:24 11:10 | **K** | matter 1:8 | October 12:4 |
| 2:3 | 12:3,8,21 | kin 14:12 | **MDL** 10:15 | offer 6:10 9:24 |
| front 10:11 | 13:10,21 | King 2:15 | mean 10:1 | office 4:14 |
| Frys 2:10,13 3:9 | **HONORABLE** | know 3:23,24 | measure 6:1 | offices 1:9 |
| 3:9 6:6 8:21 | 1:13 | 4:9,13 6:23 | meet 7:21 | Okay 3:19 4:7 |
| 9:22,23 10:2,9 | Honor's 8:21 9:4 | 7:18 10:8,10 | Meyers 1:9 14:4 | 4:12,19 6:11 |
| 10:10 11:1,18 | 9:22 11:15,20 | 11:17 12:9 | 14:19 | 7:4,11 12:14 |
| 11:24 12:5,7 | Hopefully 4:13 | knows 3:24 | **MICHAEL** 2:12 | 12:17 13:16 |
| | hour 4:9 | | | once 13:11 |

Hearing

opening 11:24
  12:4
operate 13:2
opportunity
  10:21 13:11
opposition 12:5
order 8:16 13:3
originally 8:4
outcome 14:13
O'MELVENY
  1:15

**P**

page 12:18
pages 12:22
part 5:10
particular 7:10
  11:13
particularly
  11:12,14
parties 11:4
partner 12:10
party 14:13
percent 3:21
permit 10:19
phone 6:9
pick 7:23
Pine 2:22
place 14:8
plaintiffs 1:4
  8:19
played 8:1
please 3:2,9
  11:22 12:7
  13:14,18
point 8:8
POPPITI 1:13
  3:1,8,13,19 4:4
  4:12,16,19,23
  6:12,17 7:1,5
  7:12 9:13,23
  11:5,21 12:2,6
  12:14,17 13:1
  13:13,17
portion 8:21
position 8:3 10:9

possible 9:11
posture 8:8
POTTER 2:5
Powell 2:12 3:21
  6:20
prepared 10:2
present 1:11
presently 5:7
pretty 4:5,8
preview 6:7,18
previously 10:3
  10:23
PRICKETT
  2:14
problem 4:20,22
proceeding
  10:16
produced 8:7
Professional
  1:21 14:4,19
propose 11:22
proposed 7:15
  7:16,16 8:24
  12:15
provide 9:5
provided 10:21
Public 1:9
pursuant 1:8
  10:7 14:7
put 10:3
P.L.L.C 2:17
p.m 13:22
POWELL 7:4,11
  10:1 12:8,15
  12:24 13:10,16
  13:20

**Q**

question 5:3,4
  5:10 7:5
questions 4:11
quick 11:16
QUINN 2:11
quite 5:3

**R**

R 14:1

ready 11:20
really 4:10 5:7
  7:6 13:18
Realtime 1:9
reason 4:24
recall 9:17
received 5:11
Recess 6:16
recommend
  11:3
recommendati...
  5:12,12 7:17
  8:24 9:3
reconvenes 5:23
reconvening
  4:20
record 5:8,16,19
  7:7,7,13,24 8:9
  8:12 9:11
  14:12
recorded 14:9
redo 6:12
Registered 1:21
  14:4,19
relatively 11:16
Renee 1:9 14:4
  14:19
reply 11:19,24
  12:5 13:6
report 7:16 8:24
  9:2
Reporter 1:9
  14:5,19
Reporters 1:21
  1:23
represents 7:19
  7:20
request 9:14,14
  13:11,19
require 8:6
requiring 9:21
research 9:20
respect 8:12,14
  13:3
respective 4:5
  7:15

respond 4:10
  11:18
response 12:1
rest 13:3
result 7:3
revisit 10:2
Richard 2:21
  3:3
RICHARDS 2:2
right 12:9
Robert 12:9
Rodney 2:3
roll 3:2
ROME 1:10
Rule 5:15 7:19
  9:14,16,19,19
Rules 10:18
ruling 9:12

**S**

S 2:12
safe 13:19
SAMUELS 1:16
  4:21 6:4
San 2:22
schedule 11:17
  12:15
schedules 4:5
see 7:14 9:13
  12:11
sense 6:2 9:2,7
separated 8:22
separately 11:2
September 1:10
  14:15
set 11:16
seven 11:24
share 9:22
shared 8:21
short 11:19
shorthand 14:9
side 7:9
simply 5:3 7:23
  10:6
sir 13:19
situation 10:13

Small 2:18 3:4,6
  3:6 6:11 8:18
  8:18 9:15
  11:10,11,23
  12:3,21 13:8
  13:21
somebody 3:14
sounded 4:1
special 1:13 3:1
  3:8,13,19 4:4
  4:12,16,19,23
  6:12,17 7:1,5
  7:12 9:13,23
  10:7,13,16,19
  10:20,22 11:5
  11:21 12:2,6
  12:14,17 13:1
  13:13,17
specific 9:4
spoke 3:23
Square 2:3
Stars 1:16
start 8:20
State 14:2,5
STATES 1:1
stipulation 11:4
Stone 12:10
Street 1:10,21
  2:6,9,12,15,22
  subject 9:19
submission 11:2
submissions 9:5
submit 11:17
submittal 7:19
submittals 11:7
subpoena 10:8
sufficiently 11:1
suggest 11:16
Suite 2:19
supervision
  14:10
supplement 11:7
supported 10:9
sure 3:21 5:5,10
  7:6,13

Hearing

Page 4

| | | | |
|---|---|---|---|
| **T** | trip 13:19 | 2:10,16 | 302 1:22 |
| T 14:1,1 | true 14:12 | **WITNESS** | 31 14:20 |
| tabled 10:5 | try 6:6 | 14:15 | 375:15 7:19 |
| take 8:15 | TUNNELL 2:8 | work 7:3,8,9 | 9:14,16 |
| taken 1:8 5:9,19 | turn 8:16 | 12:23 | |
| 6:16 14:7 | two 12:22 | www.corbettr... | **4** |
| talk 6:21 | | 1:22 | 45 9:19 |
| talking 3:24 | **U** | | |
| 5:21 | ultimately 5:17 | **Y** | **5** |
| teed 10:4,6 | uncover 9:20 | York 2:18 13:19 | 500 2:19 |
| teleconference | understanding | | 53 9:19 |
| 1:8 14:6,8,11 | 3:17 | **0** | 571-0510 1:22 |
| tell 4:24 | unique 10:15 | 05-441-JJF 1:5 | |
| ten 11:23,24 | UNITED 1:1 | | **6** |
| term 5:11 | unprecedented | **1** | 6th 2:6 |
| terms 6:3 | 10:13 | 10th 2:12 | |
| Thank 3:8,13 | up-to-date 9:10 | 100 3:21 | **8** |
| 6:14 13:9,20 | | 106-RPR 14:20 | 8th 12:4 |
| 13:21 | **V** | 11:30 1:11 3:22 | 865 2:12 |
| theirs 13:6 | v 1:5 | 4:18 | |
| thereof 14:14 | various 9:18 | 1100 2:18 | **9** |
| thing 7:1 | view 7:19 | 12 4:2 | 90017 2:13 |
| think 3:10,16 | VINCENT 1:13 | 12:00 3:22,24 | 90067 1:17 |
| 4:10 5:6,23 | voice 3:10 | 4:20 6:13 | 94104 2:22 |
| 7:22 8:3,7 9:7 | Volen 2:21 3:3,3 | 12:13 13:22 | |
| 9:16 10:2,3,12 | | 1201 1:10 2:9 | |
| 10:22 11:1,3,23 | **W** | 1310 2:15 | |
| 11:11,13,23 | W 2:6 | 1313 2:6 | |
| 12:15,21 | waiting 5:2 | 15th 2:22 | |
| thinks 8:9 | want 4:2 5:21 | 18th 12:5,12 | |
| third 12:23 | 6:1 7:2 | 13:6 | |
| THOMPSON | wanted 6:18 | 1980 12:16 | |
| 2:21 | wanting 4:4 5:5 | 19899 1:21 2:4,7 | |
| three 9:8 12:23 | 7:6 | 2:10 | |
| Thursday 1:10 | wants 11:6 | 1999 1:16 | |
| time 6:21 8:5,15 | Washington | | |
| 14:7 | 2:19 | **2** | |
| today 3:16 4:6 | way 5:19 10:4,5 | 2000 5 2:19 | |
| TOLL 2:17 | week 12:11 | 2007 1:10 14:16 | |
| tomorrow 13:4 | weekend 8:17 | 2008 14:20 | |
| Tower 2:19 | 12:4 | 230 1:21 | |
| transcribed | welcome 13:20 | 235 2:22 | |
| 14:10 | weren't 10:21,24 | 25th 12:5 13:8 | |
| transcription | West 2:19 | 27th 14:15 | |
| 14:11 | Wilcox 1:20,23 | | |
| tried 6:20 | Wilmington | **3** | |
| | 1:10,21 2:4,7 | 30 1:10 | |

EXHIBIT 9

CONFIDENTIAL EXHIBIT

EXHIBIT 10

Hearing

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF DELAWARE
 2

     ADVANCED MICRO DEVICES, INC., :
 3   a Delaware corporation, and   :
     AMD INTERNATIONAL SALES &      :
 4   SERVICE, LTD., a Delaware      :
     corporation,                   :
 5                                  : Civil Action
             Plaintiffs,            : No. 05-441-JJF
 6                                  :
 7              vs.                 :
                                    :
     INTEL CORPORATION, a Delaware  :
 8   corporation, and INTEL         :
     KABUSHIKI KAISHA, a Japanese   :
 9   corporation,                   :
                                    :
10           Defendants.            :
                                    :    MDL NO. 05-1717-JJF
11   IN RE INTEL CORPORATION        :
     MICROPROCESSOR ANTITRUST       :
12   LITIGATION                     :
                                    :
13   PHIL PAUL, on behalf of        :
     himself and all other         :
14   similarly situated,            :
                                    : Civil Action
15           Plaintiffs,            : No. 05-485-JJF
                                    :
16              vs.                 :
                                    :
17   INTEL CORPORATION,             :
                                    :
18           Defendant.             :
19              A status conference was taken
     before The Honorable Vincent J. Poppiti on Tuesday,
20   May 15, 2007, beginning at approximately 3:00 p.m.
21          Gail Inghram Verbano, CSR, RMR, CLR
                     CORBETT & WILCOX
22   230 N. Market Street - Wilmington, Delaware 19801
                     (302) 571-0510
23
             Corbett & Wilcox is not affiliated with
24            Wilcox & Fetzer, Court Reporters
```

www.corbettreporting.com

Electronically signed by Gail Inghram (001-290-921-8178)                    8ab3dd5b-a1ec-436f-bdbd-b3221cf7dab9

Hearing

Page 2

1  Attorneys for the Class Plaintiff:
2      Clayton Athey, Esq.
        PRICKETT JONES & ELLIOTT
3
       Daniel Small, Esq.
4      COHEN, MILSTEIN, HAUSFELD & TOLL
5      Richard Bolan, Esq.
       FINKELSTEIN, THOMPSON, LLP
6
   Attorneys for AMD:
7
       Frederick L. Cottrell, III, Esq.
8      Chad Shandler, Esq.
       RICHARDS LAYTON & FINGER
9
       Linda Smith, Esq.
10     O'MELVENY & MYERS
11 Attorneys for Fry's Electronics:
12     Mary B. Graham, Esq.
       Robert Stone, Esq.
13     MORRIS, NICHOLS, ARSHT & TUNNELL
14 Attorneys for Intel:
15     Richard L. Horwitz, Esq.
       POTTER ANDERSON & CORROON LLP
16
       Richard Ripley, Esq.
17     BINGHAM, McCUTCHEN
18 ALSO PRESENT:
19     Christopher Merrick
20
21
22
23
24

Page 3

1                - - -
2           JUDGE POPPITI:  Okay.  We had this
3  call scheduled from the last time that we had a
4  telecon.  And I expect -- not having seen, at least I
5  hope I'm not to have seen -- any documents in advance
6  of the call, that the call is meant to be primarily
7  status.  Is that accurate?
8           MR. SMALL:  Yes, your Honor.  This
9  is Dan Small for the class plaintiffs.  This is to
10 report on the meeting that Fry's and class counsel on
11 which AMD had yesterday to -- for class plaintiffs
12 and AMD to get a better understanding of what data
13 Fry's had that would be responsive to our subpoenas.
14 And I can report on that, if your Honor would like.
15          JUDGE POPPITI:  And have you had
16 some discussions with opposing counsel with respect
17 to your report?
18          MR. SMALL:  Yes.
19          JUDGE POPPITI:  Good.
20          MR. SMALL:  We actually spoke
21 earlier today, and I think we have an understanding
22 as to how we will report to the Court.
23          JUDGE POPPITI:  Great.  Then I'd
24 like to hear that very much.  Thank you.

Page 4

1           MR. SMALL:  We met, as the Court
2  had ordered, yesterday with Fry's.  We actually did
3  it by phone with counsel for Fry's, with an IT person
4  for Fry's, and then counsel for class plaintiffs and
5  AMD.
6           It was a very full conversation, a
7  good-faith conversation, and a productive one.
8           JUDGE POPPITI:  Good.
9           MR. SMALL:  We believe that we have
10 a much better understanding of the responsive
11 transactional and other data that Fry's keeps, and so
12 we're much further along the learning curve than we
13 were before the call.
14          JUDGE POPPITI:  Good.
15          MR. SMALL:  We also took the
16 opportunity to discuss a possible resolution of the
17 underlying dispute with Fry's, and we made very
18 substantial headway in that regard as well.
19          JUDGE POPPITI:  Okay.  Good.
20          MR. SMALL:  We're not there yet.
21 There still is a substantive dispute and maybe some
22 more minor issues that we have to work through as
23 well, but I do have some reason to be optimistic.
24          But we believe that the more

Page 5

1  substantive issue that still separates us is a very
2  important one, I think, from both sides.  And we
3  would like the opportunity, your Honor, with your
4  permission, to take a couple more days to try and
5  work through this and, if your calendar would permit,
6  to report back to you on Friday with hopefully either
7  final resolution, if we're able to work out the
8  dispute, or at least with a clear statement of where
9  we're at.
10          So that would be our proposal, your
11 Honor.
12          JUDGE POPPITI:  Okay.  May I hear
13 Fry's position, please.
14          MR. STONE:  We agree with the
15 proposal that counsel for the class has just made.
16 We too believe that the discussions were fruitful,
17 and we also remain optimistic that we can reach some
18 resolution.
19          JUDGE POPPITI:  Great.  Well, then
20 let's do this.  I think in terms of Friday, are we
21 looking to convene a teleconference, or will you
22 report to me in some other fashion?
23          MR. SMALL:  Your Honor, I think it
24 would be a good idea to reserve time for the

2 (Pages 2 to 5)

Electronically signed by Gail Inghram (001-290-921-8178)                    8ab3dd5b-a1ec-436f-bdbd-b3221cf7dab9

Hearing

Page 6

1  telephone conference. If it turns out that we work
2  out a deal with Fry's, then probably we could just
3  report that in some other method that would be more
4  efficient for your Honor. But if we have the time
5  set up, then if we haven't worked things out, at
6  least we have that available.
7           MR. STONE: And that's acceptable
8  to Fry's.
9           JUDGE POPPITI: Okay. If you will
10 all give me just a moment, I neglected to bring my
11 calendar into the conference room, so just give me a
12 moment. I think I can get it quickly.
13          MR. STONE: Sure.
14          JUDGE POPPITI: Thank you. I'm
15 going to put you on hold.
16          (Brief recess.)
17          JUDGE POPPITI: Counsel, thank you
18 for your patience.
19          On Friday, any time other than
20 between 11:00 and about 1:30. So we can do it either
21 before or, accommodating our friends on the West
22 Coast, we can do it later.
23          MR. SMALL: Your Honor, would it be
24 possible to do it about 4:30?

Page 7

1           JUDGE POPPITI: 4:30, yep.
2           MR. STONE: That would be a good
3  time for me, your Honor.
4           JUDGE POPPITI: Does that --
5  everyone else is more or less observing with a great
6  deal of interest, so I would expect or hope that 4:30
7  works for everyone.
8           And I wouldn't anticipate that
9  we're looking at more than -- what? -- a half hour or
10 45 minutes, if that?
11          MR. SMALL: I think that's correct,
12 your Honor.
13          MR. STONE: Fry's agrees.
14          JUDGE POPPITI: Then let's reserve
15 4:30 on Friday.
16          I sincerely appreciate the work
17 that was accomplished yesterday and hope that you can
18 move forward and obviate virtually everything by
19 Friday. If not, we'll attend to it.
20          MR. COTTRELL: Your Honor, it's
21 Fred Cottrell. If we are finished on this issue, I
22 have one very minor issue, if I could bring it up.
23          JUDGE POPPITI: Please.
24          MR. COTTRELL: Assuming we're done.

Page 8

1  I didn't mean to interrupt Mary, or were we done on
2  that issue?
3           MS. GRAHAM: I think so.
4           MR. COTTRELL: Your Honor, this
5  issue is, I saw some correspondence about the
6  transcripts being lodged, and at least one was
7  partially redacted, and that's fine.
8           It's an issue that Mr. Shandler
9  agrees with Mr. Horwitz about making sure that the
10 parties, within five days after a confidential
11 filing, make a public redaction and file it with the
12 Court.
13          And I think we had pointed out
14 that, Rich, the remediation plan of Intel -- that it
15 was at least in part filed under seal and no public
16 version has been filed.
17          It's nothing pressing for today,
18 but I just thought we could, going forward, have
19 everyone comply with that five-day rule.
20          JUDGE POPPITI: You know, I think
21 it makes sense. And perhaps it would make sense even
22 to memorialize that, if you all agree that that's
23 wise to do that by stipulation.
24          MR. HORWITZ: Your Honor, this is

Page 9

1  Rich Horwitz, if I could just respond.
2           We are looking into the request
3  from AMD. But I would say that technically I think
4  we are in compliance, because there is a public
5  version of the report that's available. The exhibits
6  are redacted, and I think everybody on this call
7  knows that that's traditionally the way that it is
8  done --
9           JUDGE POPPITI: Right.
10          MR. HORWITZ: -- in this court.
11          We are looking at the issue of
12 further redactions of the exhibits, which is unusual
13 and not the typical way it's done in this court. And
14 we will get back to AMD when we can on that issue.
15          I think the rules are what the
16 rules are, and I don't think we need to reiterate
17 them in a stipulation. But if your Honor feels
18 differently --
19          JUDGE POPPITI: Well, no, I guess
20 my concern was if there was an expectation that we
21 were going to be doing something more significant
22 than the rule contemplates.
23          MR. COTTRELL: Your Honor, my point
24 was, I think a few of the exhibits, anyway, were

3 (Pages 6 to 9)

Electronically signed by Gail Inghram (001-290-921-8178)                                        8ab3dd5b-a1ec-436f-bdbd-b3221cf7dab9

Hearing

Page 10

1  completely redacted and we just had assumed that
2  public versions of those exhibits would be filed, and
3  that was the point.  It wasn't that there wasn't
4  something on file:  There is.
5          But it was this sort of wholesale
6  redaction of the entirety of certain of the exhibits,
7  and we just assumed within five days we would see a
8  public version of those.
9          MR. HORWITZ:  And my only point, to
10 reiterate, your Honor, is that is typical.  That is
11 not atypical at all, and we are looking into doing
12 more than what is typical in this Court.
13         JUDGE POPPITI:  Okay.  Then let's
14 leave full discussion for another day.  Should we
15 agenda it for a regular Thursday status?
16         MR. COTTRELL:  That would be fine
17 with AMD, your Honor.
18         JUDGE POPPITI:  Why don't we put it
19 on for the next -- I expect that would be -- is it
20 next week?
21         MR. HORWITZ:  I don't know that
22 anything else has been discussed as being on.  But I
23 think it's this week, not next week.
24         JUDGE POPPITI:  It is this week?

Page 11

1          MR. COTTRELL:  I believe that's
2  right, your Honor.
3          JUDGE POPPITI:  Well, if you don't
4  have anything else on and this week is too soon, then
5  I'm happy to let it be agenda'd for the next time we
6  are scheduled for status.
7          MR. HORWITZ:  We will talk --
8          JUDGE POPPITI:  And then let me
9  know.
10         MR. HORWITZ:  -- and let you know
11 by sometime tomorrow --
12         JUDGE POPPITI:  That's fine.
13         MR. HORWITZ:  -- about an overall
14 schedule for Thursday.
15         JUDGE POPPITI:  All right.  That's
16 fine.
17         Any other matters then, please?
18         All right.  Thank you all very
19 much.
20
21
22
23
24

Page 12

CERTIFICATE OF SHORTHAND REPORTER

1
2
3          I, Gail Inghram Verbano, CSR, RMR,
4  the officer before whom the foregoing proceedings
5  were taken, do hereby certify that the foregoing
6  transcript is a true and correct record of the
7  proceedings; that said proceedings were taken by me
8  stenographically and thereafter reduced to
9  typewriting under my supervision; and that I am
10 neither counsel for, related to, nor employed by any
11 of the parties to this case and have no interest,
12 financial or otherwise, in its outcome.
13
14
15
16
        _____
17      Gail Inghram Verbano, CSR, RMR
       CSR No. 8835
18     Certification No. 220
       (Expires 1-31-2008)
19
20
21
22
23
24

PRELIMINARY CERTIFICATE
This was electronically signed
E-Transcript
using legal technology.

4 (Pages 10 to 12)

Electronically signed by Gail Inghram (001-290-921-8178)          8ab3dd5b-a1ec-436f-bdbd-b3221cf7dab9

Hearing

| A | | | |
|---|---|---|---|
| **able** 5:7 | **CLR** 1:21 | 2:15,16 | 11:2 |
| **acceptable** 6:7 | **Coast** 6:22 | **everybody** 9:6 | **Honorable** 1:19 |
| **accommodating** 6:21 | **COHEN** 2:4 | **exhibits** 9:5,12,24 10:2 | **hope** 3:5 7:6,17 |
| **accomplished** 7:17 | **completely** 10:1 | 10:6 | **hopefully** 5:6 |
| **accurate** 3:7 | **compliance** 9:4 | **expect** 3:4 7:6 10:19 | **Horwitz** 2:15 8:9,24 |
| **Action** 1:5,14 | **comply** 8:19 | **expectation** 9:20 | 9:1,10 10:9,21 11:7 |
| **advance** 3:5 | **concern** 9:20 | **Expires** 12:18 | 11:10,13 |
| **ADVANCED** 1:2 | **conference** 1:19 6:1,11 | | **hour** 7:9 |
| **affiliated** 1:23 | **confidential** 8:10 | **F** | |
| **agenda** 10:15 | **contemplates** 9:22 | **fashion** 5:22 | **I** |
| **agenda'd** 11:5 | **convene** 5:21 | **feels** 9:17 | **idea** 5:24 |
| **agree** 5:14 8:22 | **conversation** 4:6,7 | **Fetzer** 1:24 | **III** 2:7 |
| **agrees** 7:13 8:9 | **Corbett** 1:21,23 | **file** 8:11 10:4 | **important** 5:2 |
| **AMD** 1:3 2:6 3:11,12 | **corporation** 1:3,4,7,8,9 | **filed** 8:15,16 10:2 | **Inghram** 1:21 12:3,16 |
| 4:5 9:3,14 10:17 | 1:11,17 | **filing** 8:11 | **Intel** 1:7,8,11,17 2:14 |
| **ANDERSON** 2:15 | **correct** 7:11 12:6 | **final** 5:7 | 8:14 |
| **anticipate** 7:8 | **correspondence** 8:5 | **financial** 12:12 | **interest** 7:6 12:11 |
| **ANTITRUST** 1:11 | **CORROON** 2:15 | **fine** 8:7 10:16 11:12,16 | **INTERNATIONAL** |
| **anyway** 9:24 | **Cottrell** 2:7 7:20,21,24 | **FINGER** 2:8 | 1:3 |
| **appreciate** 7:16 | 8:4 9:23 10:16 11:1 | **finished** 7:21 | **interrupt** 8:1 |
| **approximately** 1:20 | **counsel** 3:10,16 4:3,4 | **five** 8:10 10:7 | **issue** 5:1 7:21,22 8:2,5 |
| **ARSHT** 2:13 | 5:15 6:17 12:10 | **five-day** 8:19 | 8:8 9:11,14 |
| **assumed** 10:1,7 | **couple** 5:4 | **foregoing** 12:4,5 | **issues** 4:22 |
| **Assuming** 7:24 | **court** 1:1,24 3:22 4:1 | **forward** 7:18 8:18 | |
| **Athey** 2:2 | 8:12 9:10,13 10:12 | **Fred** 7:21 | **J** |
| **attend** 7:19 | **CSR** 1:21 12:3,16,17 | **Frederick** 2:7 | **J** 1:19 |
| **Attorneys** 2:1,6,11,14 | **curve** 4:12 | **Friday** 5:6,20 6:19 7:15 | **Japanese** 1:8 |
| **atypical** 10:11 | | 7:19 | **JONES** 2:2 |
| **available** 6:6 9:5 | **D** | **friends** 4:23 | **JUDGE** 3:2,15,19,23 |
| | **Dan** 3:9 | **fruitful** 5:16 | 4:8,14,19 5:12,19 6:9 |
| **B** | **Daniel** 2:3 | **Fry's** 2:11 3:10,13 4:2 | 6:14,17 7:1,4,14,23 |
| **B** 2:12 | **data** 3:12 4:11 | 4:3,4,11,17 5:13 6:2,8 | 8:20 9:9,19 10:13,18 |
| **back** 5:6 9:14 | **day** 10:14 | 7:13 | 10:24 11:3,8,12,15 |
| **beginning** 1:20 | **days** 5:4 8:10 10:7 | **full** 4:6 10:14 | |
| **behalf** 1:13 | **deal** 6:2 7:6 | **further** 4:12 9:12 | **K** |
| **believe** 4:9,24 5:16 11:1 | **Defendant** 1:18 | | **KABUSHIKI** 1:8 |
| **better** 3:12 4:10 | **Defendants** 1:10 | **G** | **KAISHA** 1:8 |
| **BINGHAM** 2:17 | **Delaware** 1:1,3,4,7,22 | **Gail** 1:21 12:3,16 | **keeps** 4:11 |
| **Bolan** 2:5 | **DEVICES** 1:2 | **give** 6:10,11 | **know** 8:20 10:21 11:9 |
| **Brief** 6:16 | **differently** 9:18 | **going** 6:15 8:18 9:21 | 11:10 |
| **bring** 6:10 7:22 | **discuss** 4:16 | **good** 3:19 4:8,14,19 | **knows** 9:7 |
| | **discussed** 10:22 | 5:24 7:2 | |
| **C** | **discussion** 10:14 | **good-faith** 4:7 | **L** |
| **calendar** 5:5 6:11 | **discussions** 3:16 5:16 | **Graham** 2:12 8:3 | **L** 2:7,15 |
| **call** 3:3,6,6 4:13 9:6 | **dispute** 4:17,21 5:8 | **great** 3:23 5:19 7:5 | **LAYTON** 2:8 |
| **case** 12:11 | **DISTRICT** 1:1,1 | **guess** 9:19 | **learning** 4:12 |
| **certain** 10:6 | **documents** 3:5 | | **leave** 10:14 |
| **CERTIFICATE** 12:1 | **doing** 9:21 10:11 | **H** | **let's** 5:20 7:14 10:13 |
| **Certification** 12:17 | | **half** 7:9 | **Linda** 2:9 |
| **certify** 12:5 | **E** | **happy** 11:5 | **LITIGATION** 1:12 |
| **Chad** 2:8 | **earlier** 3:21 | **HAUSFELD** 2:4 | **LLP** 2:5,15 |
| **Christopher** 2:19 | **efficient** 6:4 | **headway** 4:18 | **lodged** 8:6 |
| **Civil** 1:5,14 | **either** 5:6 6:20 | **hear** 3:24 5:12 | **looking** 5:21 7:9 9:2,11 |
| **class** 2:1 3:9,10,11 4:4 | **Electronics** 2:11 | **hold** 6:15 | 10:11 |
| 5:15 | **ELLIOTT** 2:2 | **Honor** 3:8,14 5:3,11,23 | |
| **Clayton** 2:2 | **employed** 12:10 | 6:4,23 7:3,12,20 8:4 | **M** |
| **clear** 5:8 | **entirety** 10:6 | 8:24 9:17,23 10:10,17 | **making** 8:9 |
| | **Esq** 2:2,3,5,7,8,9,12,12 | | **Market** 1:22 |

| | |
|---|---|
| **Mary** 2:12 8:1 | |
| **matters** 11:17 | |
| **McCUTCHEN** 2:17 | |
| **MDL** 1:10 | |
| **mean** 8:1 | |
| **meant** 3:6 | |
| **meeting** 3:10 | |
| **memorialize** 8:22 | |
| **Merrick** 2:19 | |
| **met** 4:1 | |
| **method** 6:3 | |
| **MICRO** 1:2 | |
| **MICROPROCESSOR** | |
| 1:11 | |
| **MILSTEIN** 2:4 | |
| **minor** 4:22 7:22 | |
| **minutes** 7:10 | |
| **moment** 6:10,12 | |
| **MORRIS** 2:13 | |
| **move** 7:18 | |
| **MYERS** 2:10 | |

| N | |
|---|---|
| **N** 1:22 | |
| **need** 9:16 | |
| **neglected** 6:10 | |
| **neither** 12:10 | |
| **NICHOLS** 2:13 | |

| O | |
|---|---|
| **observing** 7:5 | |
| **obviate** 7:18 | |
| **officer** 12:4 | |
| **Okay** 3:2 4:19 5:12 6:9 | |
| 10:13 | |
| **opportunity** 4:16 5:3 | |
| **opposing** 3:16 | |
| **optimistic** 4:23 5:17 | |
| **ordered** 4:2 | |
| **outcome** 12:12 | |
| **overall** 11:13 | |
| **O'MELVENY** 2:10 | |

| P | |
|---|---|
| **part** 8:15 | |
| **partially** 8:7 | |
| **parties** 8:10 12:11 | |
| **patience** 6:18 | |
| **PAUL** 1:13 | |
| **permission** 5:4 | |
| **permit** 5:5 | |
| **person** 4:3 | |
| **PHIL** 1:13 | |
| **phone** 4:3 | |
| **Plaintiff** 2:1 | |
| **plaintiffs** 1:5,15 3:9,11 | |
| 4:4 | |
| **plan** 8:14 | |

Hearing

please 5:13 7:23 11:17
point 9:23 10:3,9
pointed 8:13
Poppiti 1:19 3:2,15,19
  3:23 4:8,14,19 5:12
  5:19 6:9,14,17 7:1,4
  7:14,23 8:20 9:9,19
  10:13,18,24 11:3,8,12
  11:15
position 5:13
possible 4:16 6:24
POTTER 2:15
PRESENT 2:18
pressing 8:17
PRICKETT 2:2
primarily 3:6
probably 6:2
proceedings 12:4,7,7
productive 4:7
proposal 5:10,15
public 8:11,15 9:4 10:2
  10:8
put 6:15 10:18
p.m 1:20

_____Q_____
quickly 6:12

_____R_____
reach 5:17
reason 4:23
recess 6:16
record 12:6
redacted 8:7 9:6 10:1
redaction 8:11 10:6
redactions 9:12
reduced 12:8
regard 4:18
regular 10:15
reiterate 9:16 10:10
related 12:10
remain 5:17
remediation 8:14
report 3:10,14,17,22
  5:6,22 6:3 9:5
REPORTER 12:1
Reporters 1:24
request 9:2
reserve 5:24 7:14
resolution 4:16 5:7,18
respect 3:16
respond 9:1
responsive 3:13 4:10
Rich 8:14 9:1
Richard 2:5,15,16
RICHARDS 2:8
right 9:9 11:2,15,18
Ripley 2:16

RMR 1:21 12:3,16
Robert 2:12
room 6:11
rule 8:19 9:22
rules 9:15,16

_____S_____
SALES 1:3
saw 8:5
schedule 11:14
scheduled 3:3 11:6
seal 8:15
see 10:7
seen 3:4,5
sense 8:21,21
separates 5:1
SERVICE 1:4
set 6:5
Shandler 2:8 8:8
SHORTHAND 12:1
sides 5:2
significant 9:21
similarly 1:14
sincerely 7:16
situated 1:14
Small 2:3 3:8,9,18,20
  4:1,9,15,20 5:23 6:23
  7:11
Smith 2:9
soon 11:4
sort 10:5
spoke 3:20
statement 5:8
STATES 1:1
status 1:19 3:7 10:15
  11:6
stenographically 12:8
stipulation 8:23 9:17
Stone 2:12 5:14 6:7,13
  7:2,13
Street 1:22
subpoenas 3:13
substantial 4:18
substantive 4:21 5:1
supervision 12:9
sure 6:13 8:9

_____T_____
take 5:4
taken 1:19 12:5,7
talk 11:7
technically 9:3
telecon 3:4
teleconference 5:21
telephone 6:1
terms 5:20
thank 3:24 6:14,17
  11:18

things 6:5
think 3:21 5:2,20,23
  6:12 7:11 8:3,13,20
  9:3,6,15,16,24 10:23
THOMPSON 2:5
thought 8:18
Thursday 10:15 11:14
time 3:3 5:24 6:4,19 7:3
  11:5
today 3:21 8:17
TOLL 2:4
tomorrow 11:11
traditionally 9:7
transactional 4:11
transcript 12:6
transcripts 8:6
true 12:6
try 5:4
Tuesday 1:19
TUNNELL 2:13
turns 6:1
typewriting 12:9
typical 9:13 10:10,12

_____U_____
underlying 4:17
understanding 3:12,21
  4:10
UNITED 1:1
unusual 9:12

_____V_____
Verbano 1:21 12:3,16
version 8:16 9:5 10:8
versions 10:2
Vincent 1:19
virtually 7:18
vs 1:6,16

_____W_____
wasn't 10:3,3
way 9:7,13
week 10:20,23,23,24
  11:4
West 6:21
we'll 7:19
we're 4:12,20 5:7,9 7:9
  7:24
wholesale 10:5
Wilcox 1:21,23,24
Wilmington 1:22
wise 8:23
work 4:22 5:5,7 6:1
  7:16
worked 6:5
works 7:7
wouldn't 7:8

_____Y_____
yep 7:1
yesterday 3:11 4:2 7:17

_____0_____
05-1717-JJF 1:10
05-441-JJF 1:5
05-485-JJF 1:15

_____1_____
1-31-2008 12:18
1:30 6:20
11:00 6:20
15 1:20
19801 1:22

_____2_____
2007 1:20
220 12:17
230 1:22

_____3_____
3:00 1:20
302 1:22

_____4_____
4:30 6:24 7:1,6,15
45 7:10

_____5_____
571-0510 1:22

_____8_____
8635 12:17

EXHIBIT 11

Conference

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF DELAWARE
 2

    ADVANCED MICRO DEVICES, INC., :
 3  a Delaware corporation, and   :
    AMD INTERNATIONAL SALES &      :
 4  SERVICE, LTD., a Delaware      :
    corporation,                   :
 5                                 : Civil Action
          Plaintiffs,             : No. 05-441-JJF
 6                                 :
 7              vs.                :
 8  INTEL CORPORATION, a Delaware  :
    corporation, and INTEL         :
 9  KABUSHIKI KAISHA, a Japanese   :
    corporation,                   :
                                   :
10          Defendants.            :
                                   :   MDL NO. 05-1717-JJF
11  IN RE INTEL CORPORATION        :
    MICROPROCESSOR ANTITRUST       :
12  LITIGATION                     :
                                   :
13  PHIL PAUL, on behalf of        :
    himself and all other          :
14  similarly situated,            :
                                   : Civil Action
15        Plaintiffs,             : No. 05-485-JJF
                                   :
16              vs.                :
                                   :
17  INTEL CORPORATION,             :
                                   :
18          Defendant.             :
19              A status conference was taken
    before The Honorable Vincent J. Poppiti on Thursday,
20  May 24, 2007, beginning at approximately 5:00 p.m.
21          Gail Inghram Verbano, CSR, RMR, CLR
                    CORBETT & WILCOX
22    230 N. Market Street - Wilmington, Delaware 19801
                    (302) 571-0510
23
            Corbett & Wilcox is not affiliated with
24          Wilcox & Fetzer, Court Reporters
```

Electronically signed by Gail Inghram (001-290-921-8178)                    1973d938-c05c-43a3-81b0-bef769f98a49

Conference

**Page 2**

1  Attorneys for the Class Plaintiff:
2      Daniel Small, Esq.
       COHEN, MILSTEIN, HAUSFELD & TOLL
3
       Clayton Athey, Esq.
4      PRICKETT JONES & ELLIOTT
5      Richard Bolan, Esq.
       FINKELSTEIN, THOMPSON, LLP
6
   Attorneys for AMD:
7
       Chad Shandler, Esq.
8      RICHARDS LAYTON & FINGER
9      Linda Smith, Esq.
       Jennifer Laser, Esq.
10     O'MELVENY & MYERS
11  Attorneys for Intel:
12     W. Harding Drane, Esq.
       POTTER ANDERSON & CORROON LLP
13
       Richard A. Ripley, Esq.
14     BINGHAM, McCUTCHEN
15  Attorneys for Fry's Electronics:
16     Mary Graham, Esq.
       Michael Powell, Esq.
17     MORRIS, NICHOLS, ARSHT & TUNNELL
18
19
20
21
22
23
24

**Page 3**

1          JUDGE POPPITI:  Are we dealing with
2  status today?
3          MR. SMALL:  Dan Small for the class
4  plaintiffs.  Some real quick history, just to put in
5  context recent progress we've made.
6          We originally met with Fry's back
7  on May 14th, pursuant to Your Honor's order to meet
8  and confer, both to understand their transactional
9  data better, and other data, as well as to try and
10  make progress on the underlying dispute.
11         We reported back to Your Honor the
12  next day on May 15th, and we reported that we had
13  made very substantial progress, both in terms of
14  understanding the data and in trying to resolve the
15  dispute.
16         Now, later that week -- and we did
17  mention, though, that we had one significant issue
18  that still separated us.  And later that week we made
19  a proposal to Fry's to try and deal with that one
20  last issue.
21         JUDGE POPPITI:  Okay.
22         MR. SMALL:  Now, some period of
23  time went by until actually this afternoon, when we
24  got a counter-proposal from Fry's.  Apparently there

**Page 4**

1  were some extenuating circumstances that made it
2  difficult for Fry's to get back to us before today.
3          In any event, we had a brief call
4  with Fry's today in which they made that
5  counter-proposal.
6          We haven't had much of a chance,
7  obviously, yet to study it and consider it, but it
8  does appear at first blush to be a good-faith
9  counteroffer.
10         So what we've done, subject to Your
11  Honor's permission, is set up a call with Fry's for
12  next week on Tuesday, at which time we'll give Fry's
13  our questions about their counter-proposal and have a
14  discussion about that.
15         We may also send Fry's some
16  questions in advance if we're able to do that, with
17  the goal of spending some time next week trying to
18  resolve this last major issue that separates us.  And
19  we would propose, jointly with Fry's and AMD, that we
20  set up another call to report to Your Honor on Friday
21  of next week.  We were suggesting maybe 4 o'clock
22  your time to try to do that.
23         JUDGE POPPITI:  Okay.  Mr. Powell?
24         MR. POWELL:  Yes, Fry's is in

**Page 5**

1  agreement.  Mr. Small has accurately reflected the
2  status of the discussions, and we are agreeable to a
3  call next Friday.
4          JUDGE POPPITI:  Okay.  Well, that
5  sounds like it's excellent progress.  Let's then
6  schedule the call for -- excuse me just a moment.
7          (Discussion off the record.)
8          JUDGE POPPITI:  Did you say
9  4 o'clock next week?
10         MR. SMALL:  Yeah, that works for
11  the parties, obviously subject to your calendar, Your
12  Honor.
13         JUDGE POPPITI:  4 o'clock will work
14  for next Friday.  So if there's nothing else to do
15  today, I wish you all a good and safe long Memorial
16  weekend, and I look forward to talking with you next
17  Friday at 4:00 p.m.
18         MR. SMALL:  Thank you, Your Honor.
19         MR. POWELL:  Thank you, Your Honor.
20         JUDGE POPPITI:  Thank you all.
21
22
23
24

2 (Pages 2 to 5)

Electronically signed by Gail Inghram (001-290-921-8178)                    1973d938-c05c-43a3-81b0-bef769f98a49

Conference



Page 6

CERTIFICATE OF SHORTHAND REPORTER

1
2
3          I, Gail Inghram Verbano, CSR, RMR,
4    the officer before whom the foregoing proceedings
5    were taken, do hereby certify that the foregoing
6    transcript is a true and correct record of the
7    proceedings; that said proceedings were taken by me
8    stenographically and thereafter reduced to
9    typewriting under my supervision; and that I am
10   neither counsel for, related to, nor employed by any
11   of the parties to this case and have no interest,
12   financial or otherwise, in its outcome.
13
14
15
16
      _____
17    Gail Inghram Verbano, CSR, RMR
      CSR No. 8635
      Certification No. 220
18    (Expires 1-31-2008)
19
20
21
22
23
24

3 (Page 6)

Electronically signed by Gail Inghram (001-290-921-8178)          1973d938-c05c-43a3-81b0-bef769f98a49

Conference

**A**

able 4:16
accurately 5:1
Action 1:5,14
advance 4:16
ADVANCED 1:2
affiliated 1:23
afternoon 3:23
agreeable 5:2
agreement 5:1
AMD 1:3 2:6 4:19
ANDERSON 2:12
ANTITRUST 1:11
Apparently 3:24
appear 4:8
approximately 1:20
ARSHT 2:17
Athey 2:3
Attorneys 2:1,6,11,15

**B**

back 3:6,11 4:2
beginning 1:20
behalf 1:13
better 3:9
BINGHAM 2:14
blush 4:8
Bolan 2:5
brief 4:3

**C**

calendar 5:11
call 4:3,11,20 5:3,6
case 6:11
CERTIFICATE 6:1
Certification 6:17
certify 6:5
Chad 2:7
chance 4:6
circumstances 4:1
Civil 1:5,14
class 2:1 3:3
Clayton 2:3
CLR 1:21
COHEN 2:2
confer 3:8
conference 1:19
consider 4:7
context 3:5
Corbett 1:21,23
corporation 1:3,4,7,8,9
1:11,17
correct 6:6
CORROON 2:12
counsel 6:10
counteroffer 4:9
counter-proposal 3:24
4:5,13

**D**

Court 1:1,24
CSR 1:21 6:3,16,17

**D**

Dan 3:3
Daniel 2:2
data 3:9,9,14
day 3:12
deal 3:19
dealing 3:1
Defendant 1:18
Defendants 1:10
Delaware 1:1,3,4,7,22
DEVICES 1:2
difficult 4:2
discussion 4:14 5:7
discussions 5:2
dispute 3:10,15
DISTRICT 1:1,1
Drane 2:12

**E**

Electronics 2:15
ELLIOTT 2:4
employed 6:10
Esq 2:2,3,5,7,9,9,12,13
2:16,16
event 4:3
excellent 5:5
excuse 5:6
Expires 6:18
extenuating 4:1

**F**

Fetzer 1:24
financial 6:12
FINGER 2:8
FINKELSTEIN 2:5
first 4:8
foregoing 6:4,5
forward 5:16
Friday 4:20 5:3,14,17
Fry's 2:15 3:6,19,24
4:2,4,11,12,15,19,24

**G**

Gail 1:21 6:3,16
give 4:12
goal 4:17
good 5:15
good-faith 4:8
Graham 2:16

**H**

Harding 2:12
HAUSFELD 2:2
history 3:4
Honor 3:11 4:20 5:12

5:18,19
Honorable 1:19
Honor's 3:7 4:11

**I**

Inghram 1:21 6:3,16
Intel 1:7,8,11,17 2:11
interest 6:11
INTERNATIONAL
1:3
issue 3:17,20 4:18

**J**

J 1:19
Japanese 1:8
Jennifer 2:9
jointly 4:19
JONES 2:4
JUDGE 3:1,21 4:23 5:4
5:8,13,20

**K**

KABUSHIKI 1:8
KAISHA 1:8

**L**

Laser 2:9
LAYTON 2:8
Let's 5:5
Linda 2:9
LITIGATION 1:12
LLP 2:5,12
long 5:15
look 5:16

**M**

major 4:18
Market 1:22
Mary 2:16
McCUTCHEN 2:14
MDL 1:10
meet 3:7
Memorial 5:15
mention 3:17
met 3:6
Michael 2:16
MICRO 1:2
MICROPROCESSOR
1:11
MILSTEIN 2:2
moment 5:6
MORRIS 2:17
MYERS 2:10

**N**

N 1:22
neither 6:10
NICHOLS 2:17

**O**

obviously 4:7 5:11
officer 6:4
Okay 3:21 4:23 5:4
order 3:7
originally 3:6
outcome 6:12
o'clock 4:21 5:9,13
O'MELVENY 2:10

**P**

parties 5:11 6:11
PAUL 1:13
period 3:22
permission 4:11
PHIL 1:13
Plaintiff 2:1
plaintiffs 1:5,15 3:4
Poppiti 1:19 3:1,21
4:23 5:4,8,13,20
POTTER 2:12
Powell 2:16 4:23,24
5:19
PRICKETT 2:4
proceedings 6:4,7,7
progress 3:5,10,13 5:5
proposal 3:19
propose 4:19
pursuant 3:7
put 3:4
p.m 1:20 5:17

**Q**

questions 4:13,16
quick 3:4

**R**

real 3:4
record 5:7 6:6
reduced 6:8
reflected 5:1
related 6:10
report 4:20
reported 3:11,12
REPORTER 6:1
Reporters 1:24
resolve 3:14 4:18
Richard 2:5,13
RICHARDS 2:8
Ripley 2:13
RMR 1:21 6:3,16

**S**

safe 5:15
SALES 1:5
schedule 5:6
send 4:15
separated 3:18

separates 4:18
SERVICE 1:4
set 4:11,20
Shandler 2:7
SHORTHAND 6:1
significant 3:17
similarly 1:14
situated 1:14
Small 2:2 3:3,3,22 5:1
5:10,18
Smith 2:9
sounds 5:5
spending 4:17
STATES 1:1
status 1:19 3:2 5:2
stenographically 6:8
Street 1:22
study 4:7
subject 4:10 5:11
substantial 3:13
suggesting 4:21
supervision 6:9

**T**

taken 1:19 6:5,7
talking 5:16
terms 3:13
Thank 5:18,19,20
THOMPSON 2:5
Thursday 1:19
time 3:23 4:12,17,22
today 3:2 4:2,4 5:15
TOLL 2:2
transactional 3:8
transcript 6:6
true 6:6
try 3:9,19 4:22
trying 3:14 4:17
Tuesday 4:12
TUNNELL 2:17
typewriting 6:9

**U**

underlying 3:10
understand 3:8
understanding 3:14
UNITED 1:1

**V**

Verbano 1:21 6:3,16
Vincent 1:19
vs 1:6,16

**W**

W 2:12
week 3:16,18 4:12,17
4:21 5:9
weekend 5:16

Conference

went 3:23
we'll 4:12
we're 4:16
we've 4:10
Wilcox 1:21,23,24
Wilmington 1:22
wish 5:15
work 5:13
works 5:10

**Y**

Yeah 5:10

**0**

05-1717-JJF 1:10
05-441-JJF 1:5
05-485-JJF 1:15

**1**

1-31-2008 6:18
14th 3:7
15th 3:12
19801 1:22

**2**

2007 1:20
220 6:17
230 1:22
24 1:20

**3**

302 1:22

**4**

4 4:21 5:9,13
4:00 5:17

**5**

5:00 1:20
571-0510 1:22

**8**

8635 6:17

EXHIBIT 12

Teleconference

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF DELAWARE
 3
      ADVANCED MICRO          )
 4    DEVICES, INC., a        )
      Delaware                )
 5    corporation, and AMD    )   Civil Action No.
      INTERNATIONAL SALES     )   05-441- JJF
 6    & SERVICE, LTD., a      )
      Delaware                )
 7    corporation,            )
                              )
 8          Plaintiff,        )
                              )
 9    v.                      )
                              )
10    INTEL CORPORATION, a    )
      Delaware                )
11    corporation, and        )
      INTEL KABUSHIKI         )
12    KAISHA, a Japanese      )
      corporation,            )
13          Defendants.       )
14    _____
15    IN RE:                  )
      INTEL CORP.             )
16    MICROPROCESSOR          )
      ANTITRUST LITIGATION    )   Civil Action No.
17    PHIL PAUL, on behalf    )   05-MD-1717-JJF
      of himself and all      )
18    others similarly        )   Civil Action
      situated,               )   No. 05-485-JJF
19                            )
            Plaintiffs,       )   CONSOLIDATED ACTION
20                            )
      v.                      )
21                            )
      INTEL CORPORATION,      )
22                            )
            Defendant.        )
23
24    Reporter:  ELLEN CORBETT HANNUM, RMR, CMRS, CLR
```

www.corbettreporting.com

Electronically signed by Ellen Corbett Hannum (601-396-460-1954)

Teleconference

Page 2

```
 1              CORBETT & WILCOX
                Registered Professional Reporters
 2         The Parcels Building - 230 N. Market Street
                    Wilmington, DE 19801
 3                    (302) 571-0510
                   www.corbettreporting.com
 4    Corbett & Wilcox is not affiliated with Wilcox & Fetzer,
                     Court Reporters
 5         - - - - -
 6         A teleconference was taken pursuant to notice
      before Ellen Corbett Hannum, Registered Merit Reporter,
 7    in the law offices of Blank Rome, LLP, 1201 N. Market
      Street, Suite 800, Wilmington, Delaware, on Wednesday,
 8    June 6, 2007, beginning at approximately 4:00 p.m., there
      being present:
 9
10    BEFORE: THE SPECIAL MASTER VINCENT J. POPPITI, JR.
11    ALSO PRESENT: DAVID W. CARICKHOFF, ESQUIRE
12    APPEARANCES:
13
              RICHARDS, LAYTON & FINGER, P.A.
14.           BY: FREDERICK COTTRELL, ESQ.
                        and
15            O'MELVENY AND MYERS
              BY: LINDA SMITH, ESQ.
16               JENNIFER LASER, ESQ.
17            (Los Angeles, California)
18
              Attorneys for Advanced Micro
19            Devices, Inc. and AMD International
              Sales & Service, Ltd.
20
21            POTTER ANDERSON & CORROON
              BY: HARDING DRANE, ESQ.
22                      and
              BRINGHAM McCUTCHEN LLP
23            BY: RICHARD A. RIPLEY, ESQ.
24            Attorneys for Intel Corporation
              and Intel Kabushiki Kaisha
```

Page 3

```
 1    APPEARANCES (CONTINUED):
 2
              PRICKETT, JONES & ELLIOTT
 3            BY: J. CLAYTON ATHEY, ESQUIRE
                        and
 4            COHEN, MILSTEIN, HAUSFELD & TOLL,
              P.L.L.C.
 5            BY: DANIEL A. SMALL, ESQ.
              (Washington, D.C.)
 6                      and
              FINKELSTEIN THOMPSON LLP
 7            BY: RICHARD M. VOLIN, ESQUIRE
 8            Attorneys for the Class
              Plaintiffs
 9
10            MORRIS, NICHOLS, ARSHT & TUNNEL
              BY: MARY B. GRAHAM, ESQUIRE
11            BY: MIKE POWELL, ESQUIRE
12            Attorneys on behalf of Fry's
              Electronics
13
14
15         - - - - -
16         THE SPECIAL MASTER: Hello all. I don't
17    know whether everyone is on yet. I understand that Fred
18    Cottrell is on, Mary Graham, Richard Volin and Dan Small.
19    David just walked in.
20         MR. ATHEY: Clayton Athey. Good
21    afternoon, Your Honor.
22         THE SPECIAL MASTER: Good afternoon.
23         MR. DRANE: Harding Drane.
24         THE SPECIAL MASTER: Thank you very
```

Page 4

```
 1    much.
 2              MR. POWELL: Mike Powell representing
 3    Fry's.
 4              THE SPECIAL MASTER: Thank you very
 5    much.
 6              Are we expecting anyone else? Does
 7    anyone know?
 8              MR. SMALL: I don't believe there will
 9    be anyone for the class plaintiffs, Your Honor.
10              MR. POWELL: There won't be anyone else
11    for Fry's.
12              MR. DRANE: Your Honor, I don't know if
13    Richard Ripley is on for Intel, I expect him to
14    participate.
15              THE SPECIAL MASTER: I did not hear
16    Mr. Ripley.
17              MR. COTTRELL: Your Honor, Fred Cottrell
18    for AMD, I am expecting one or two from O'Melveny, I
19    don't know whether they joined yet.
20              MS. SMITH: Your Honor, Linda Smith.
21              THE SPECIAL MASTER: Hello.
22              Let's go back and do a roll call when
23    everyone is on.
24              MR. SMALL: This is Dan Small for the
```

Page 5

```
 1    class plaintiffs.
 2              THE SPECIAL MASTER: Thank you,
 3    Mr. Small.
 4              MR. ATHEY: Clay Athey for the class
 5    plaintiffs.
 6              MR. VOLIN: Richard Volin for the class
 7    plaintiffs.
 8              THE SPECIAL MASTER: Thank you.
 9              MR. POWELL: Mike Powell.
10              THE SPECIAL MASTER: Thanks.
11              MS. GRAHAM: Mary Graham for Fry's.
12              THE SPECIAL MASTER: Thank you.
13              MS. SMITH: Linda Smith and Jennifer
14    Laser for AMD.
15              MR. COTTRELL: And, Your Honor, Fred
16    Cottrell in Wilmington for AMD.
17              THE SPECIAL MASTER: Thank you.
18              MR. DRANE: This is Harding Drane in
19    Wilmington for Intel.
20              THE SPECIAL MASTER: Okay. Please.
21              MR. DRANE: And I believe I heard
22    Richard Ripley.
23              MR. RIPLEY: Yes.
24              THE SPECIAL MASTER: You did.
```

2 (Pages 2 to 5)

Electronically signed by Ellen Corbett Hannum (601-396-460-1954)                    d8796c69-cf7c-4cdf-a75c-f5ab142d4128

Teleconference

Page 6

1    MR. SMALL:  Your Honor, this is Dan
2  small.
3        Would you like me to proceed with our
4  negotiations?
5        THE SPECIAL MASTER:  Yes, if you would.
6        MR. SMALL:  We were originally supposed
7  to talk last Friday, but at Fry's' request we put off the
8  conference until today so that Fry's would have an
9  opportunity to consider the outstanding proposal we had
10  made to try and bring our negotiations to a close and
11  reach agreement on the data that Fry's would produce to
12  us and other parties in the case.
13        And we did receive a counter proposal
14  from Fry's very late last night.  The proposal appears to
15  represent very significant progress, and I actually say,
16  with some caution, that we may be close to an agreement.
17        THE SPECIAL MASTER:  Good.
18        MR. SMALL:  We had a call earlier today,
19  just actually about an hour or so ago with Fry's, to ask
20  some questions about the latest proposal, make sure we
21  understand exactly what it entails.  Fry's' counsel was
22  not able to answer all our questions at that point,
23  although he helped advance the ball, but we did have some
24  additional questions that Fry's is going to go back to

Page 7

1  whomever it needs to talk to to get answers.
2        And we have scheduled a call for
3  tomorrow so, hopefully, get answers to those questions
4  and see if we can bring conclusion, at least to reach an
5  agreement in principle as to the date of production.
6        If we do reach an agreement in
7  principle, we talked about the idea that it would make
8  sense to reduce that to writing.  And it's our hope that
9  we can accomplish all of that by mid-week next week.
10        THE SPECIAL MASTER:  Okay.
11        MR. SMALL:  With that in mind we also
12  think, Your Honor, if you have time on your calendar that
13  it would make sense to reserve a short amount of time for
14  next Wednesday so that we can either report back to you
15  that we reached agreement at that point or if we haven't
16  to notify you of whatever the outstanding issues may be.
17        THE SPECIAL MASTER:  Okay.  May I hear
18  from Fry's, please.
19        MR. POWELL:  This is Mike Powell from
20  Fry's.  I agree with what Mr. Small reported.  And we are
21  in agreement in having a hearing reserved for next
22  Wednesday or so.
23        THE SPECIAL MASTER:  Okay.  And the
24  purpose of the hearing -- you used the word hearing, it

Page 8

1  will just be, again, a status conference.
2        MR. SMALL:  Yes, that's certainly our
3  contemplation for the class plaintiffs that it would just
4  be to report to Your Honor either that we reached
5  agreement with Fry's or that we have open issues that we
6  were not able to reach agreement on and talk about how to
7  proceed, if that is the case.
8        THE SPECIAL MASTER:  Okay.  Good.
9        MR. POWELL:  Fry's is in agreement with
10  it.
11        THE SPECIAL MASTER:  Good.  Then I can
12  -- just give me one moment, please.
13        If this time slot or even later works
14  for everyone on the 13th, then we can do that.  It would
15  be 4:30 on the 13th; if it needs to be later on your end,
16  then it can be later on my end as well.
17        MR. POWELL:  This is Mike Powell for
18  Fry's.  4:30 works fine for us.
19        MR. SMALL:  That's fine for us.
20        MS. SMITH:  It's fine for AMD.
21        MR. RIPLEY:  This is Richard Ripley.
22        Harding, can you make that because I
23  will actually be on an airplane.  But if you can make it
24  we should just go ahead.

Page 9

1        MR. DRANE:  I can make it.
2        THE SPECIAL MASTER:  Good.  Then we will
3  book 4:30 on June the 13th.  And we have got a regularly
4  scheduled conference, in any event, tomorrow, do we not?
5  At least I think we do.
6        MS. SMITH:  I am not sure if that's --
7        THE SPECIAL MASTER:  We had last
8  Thursday and that was cancelled.  And I don't remember
9  whether we are expecting to confer tomorrow, as I'm
10  sitting here.
11        MR. SMALL:  For what it's worth, Your
12  Honor, I don't have that on my calendar.
13        MS. SMITH:  Fred, do you know?
14        MR. COTTRELL:  Yes.  Your Honor, Fred
15  Cottrell.  The next one I have is for the 14th.
16        THE SPECIAL MASTER:  Okay.  All right.
17  Then I will look forward to the date we just set and then
18  the 14th.
19        (Discussion off the record.)
20        THE SPECIAL MASTER:  In light of the
21  time that we set for the Thursday, do you want to simply
22  use that time?
23        MR. SMALL:  If that's more convenient
24  for Your Honor.

3 (Pages 6 to 9)

Electronically signed by Ellen Corbett Hannum (601-396-460-1954)

d8796c69-cf7c-4cdf-a75c-f5ab142d4128

Teleconference

Page 10

1  THE SPECIAL MASTER:  It matters not to
2  me.
3  MR. SMALL:  I am indifferent, Your
4  Honor, which day we do it.  I think either would work
5  just fine.
6  MR. POWELL:  What time is the matter on
7  Thursday?
8  THE SPECIAL MASTER:  11:00, I believe.
9  MR. COTTRELL:  That's correct, Your
10  Honor.
11  MR. POWELL:  It's a bit early for us
12  West Coasters.
13  THE SPECIAL MASTER:  Okay.  We can keep
14  the 4:30.
15  MS. SMITH:  This is Linda Smith.  I
16  think that's a good idea anyway, one of the things I'm
17  not sure we mentioned is -- and maybe this isn't the
18  case:  If we are able to reach a complete agreement
19  between now and then, we may collectively send the Court
20  an e-mail saying that there is no need for the call.
21  THE SPECIAL MASTER:  If it comes to
22  that, that's fine.
23  MS. SMITH:  Okay.  And if we haven't
24  reached an agreement, this could be a substantive call on

Page 11

1  Fry's part.  And I think we have plenty on our plate with
2  whatever may be necessary to discuss on the 14th.  So I
3  think it would be a good solution.
4  THE SPECIAL MASTER:  The only caution
5  that I have with anything substantive, if you are going
6  to be serving up the remaining issue paper, if you will,
7  I'm not sure I'm going to be able to have the time at the
8  4:30 slot to deal with that in light of other commitments
9  that I have.
10  So it may be that 4:30 becomes the
11  advice that there are substantive issues left to be dealt
12  with and I may not be able to schedule that until the
13  next week.
14  MR. SMALL:  This is Dan small, Your
15  Honor.
16  I think it would be fine for us to maybe
17  preview for Your Honor what the problems are, if there
18  are any, and then we can set up a procedure for handling
19  those.
20  THE SPECIAL MASTER:  Okay.  All right.
21  Then I would look forward either to an email saying that
22  there is no need for the 4:30 call or we will use the
23  4:30 call in the fashion you just suggested.
24  Anything else?

Page 12

1  MR. SMALL:  Not at this time, Your
2  Honor.
3  MS. SMITH:  Thank you, Your Honor.
4  MR. POWELL:  Thank you, Your Honor.
5  (The hearing concluded at 4:50 p.m.)

Page 13

1  C E R T I F I C A T E
2
3  STATE OF DELAWARE:
4  NEW CASTLE COUNTY:
5  I, Ellen Corbett Hannum, a Notary Public within and
6  for the County and State aforesaid, do hereby certify
7  that the foregoing teleconference was taken before me,
8  pursuant to notice, at the time and place indicated; that
9  the statements of participants were correctly recorded in
10  machine shorthand by me and thereafter transcribed under
11  my supervision with computer-aided transcription; that
12  the transcript is a true record of the statements given
13  by the participants; and that I am neither of counsel nor
14  kin to any party in said action, nor interested in the
15  outcome thereof.
16  WITNESS my hand and official seal this 12th day of
17  June A.D. 2007.
18
19  Ellen Corbett Hannum, RMR, CMRS
     Notary Public -- Reporter
20  Delaware Certified Shorthand Reporter
     Certification No. 118-RPR
21
22
23
24

4 (Pages 10 to 13)

Electronically signed by Ellen Corbett Hannum (601-396-460-1954)                    d8796c69-cf7c-4cdf-a75c-f5ab142d4128

Teleconference

## A

able 6:22 8:6 10:18
  11:7,12
accomplish 7:9
action 1:5,16,18,19
  13:14
additional 6:24
advance 6:23
Advanced 1:3 2:18
advice 11:11
affiliated 2:4
aforesaid 13:6
afternoon 3:21,22
ago 6:19
agree 7:20
agreement 6:11,16 7:5
  7:6,15,21 8:5,6,9
  10:18,24
ahead 8:24
airplane 8:23
AMD 1:5 2:19 4:18
  5:14,16 8:20
amount 7:13
ANDERSON 2:21
Angeles 2:17
answer 6:22
answers 7:1,3
ANTITRUST 1:16
anyway 10:16
APPEARANCES 2:12
  3:1
appears 6:14
approximately 2:8
ARSHT 3:10
Athey 3:3,20,20 5:4,4
Attorneys 2:18,24 3:8
  3:12
A.D 13:17

## B

B 3:10
back 4:22 6:24 7:14
ball 6:23
beginning 2:8
behalf 1:17 3:12
believe 4:8 5:21 10:8
bit 10:11
Blank 2:7
book 9:3
bring 6:10 7:4
BRINGHAM 2:22
Building 2:2

## C

C 13:1,1
calendar 7:12 9:12
California 2:17
call 4:22 6:18 7:2 10:20
10:24 11:22,23
cancelled 9:8
CARICKHOFF 2:11
case 6:12 8:7 10:18
CASTLE 13:4
caution 6:16 11:4
certainly 8:2
Certification 13:20
Certified 13:20
certify 13:6
Civil 1:5,16,18
class 3:8 4:9 5:1,4,6 8:3
Clay 5:4
Clayton 3:3,20
close 6:10,16
CLR 1:24
CMRS 1:24 13:19
Coasters 10:12
COHEN 3:4
collectively 10:19
comes 10:21
commitments 11:8
complete 10:18
computer-aided 13:11
concluded 12:5
conclusion 7:4
confer 9:9
conference 6:8 8:1 9:4
consider 6:9
CONSOLIDATED
  1:19
contemplation 8:3
CONTINUED 3:1
convenient 9:23
Corbett 1:24 2:1,4,6
  13:5,19
CORP 1:15
corporation 1:5,7,10
  1:11,12,21 2:24
correct 10:9
correctly 13:9
CORROON 2:21
Cottrell 2:14 3:18 4:17
  4:17 5:15,16 9:14,15
  10:9
counsel 6:21 13:13
counter 6:13
County 13:4,6
Court 1:1 2:4 10:19

## D

Dan 3:18 4:24 6:1
  11:14
DANIEL 3:5
data 6:11
date 7:5 9:17
David 2:11 3:19
day 10:4 13:16

## DE

DE 2:2
deal 11:8
dealt 11:11
Defendant 1:22
Defendants 1:13
Delaware 1:2,4,6,10
  2:7 13:3,20
Devices 1:4 2:19
discuss 11:2
Discussion 9:19
DISTRICT 1:1,2
Drane 2:21 3:23,23
  4:12 5:18,18,21 9:1
D.C 3:5

## E

E 13:1,1
earlier 6:18
early 10:11
either 7:14 8:4 10:4
  11:21
Electronics 3:12
Ellen 1:24 2:6 13:5,19
ELLIOTT 3:2
email 11:21
entails 6:21
ESQ 2:14,15,16,21,23
  3:5
ESQUIRE 2:11 3:3,7
  3:10,11
event 9:4
exactly 6:21
expect 4:13
expecting 4:6,18 9:9
e-mail 10:20

## F

F 13:1
fashion 11:23
Fetzer 2:4
fine 8:18,19,20 10:5,22
  11:16
FINGER 2:13
FINKELSTEIN 3:6
foregoing 13:7
forward 9:17 11:21
Fred 3:17 4:17 5:15
  9:13,14
FREDERICK 2:14
Friday 6:7
Fry's 3:12 4:3,11 5:11
  6:7,8,11,14,19,21,24
  7:18,20 8:5,9,18 11:1

## G

give 8:12
given 13:12
go 4:22 6:24 8:24

## going

going 6:24 11:5,7
good 3:20,22 6:17 8:8
  8:11 9:2 10:16 11:3
Graham 3:10,18 5:11
  5:11

## H

hand 13:16
handling 11:18
Hannum 1:24 2:6 13:5
  13:19
Harding 2:21 3:23 5:18
  8:22
HAUSFELD 3:4
hear 4:15 7:17
heard 5:21
hearing 7:21,24,24
  12:5
Hello 3:16 4:21
helped 6:23
Honor 3:21 4:9,12,17
  4:20 5:15 6:1 7:12
  8:4 9:12,14,24 10:4
  10:10 11:15,17 12:2,3
  12:4
hope 7:8
hopefully 7:3
hour 6:19

## I

idea 7:7 10:16
indicated 13:8
indifferent 10:3
Intel 1:10,11,15,21
  2:24,24 4:13 5:19
interested 13:14
International 1:5 2:19
issue 11:6
issues 7:16 8:5 11:11

## J

J 2:10 3:3
Japanese 1:12
Jennifer 2:16 5:13
JJF 1:5
joined 4:19
JONES 3:2
JR 2:10
June 2:8 9:3 13:17

## K

Kabushiki 1:11 2:24
Kaisha 1:12 2:24
keep 10:13
kin 13:14
know 3:17 4:7,12,19
  9:13

## L

Laser 2:16 5:14
late 6:14
latest 6:20
law 2:7
LAYTON 2:13
left 11:11
Let's 4:22
light 9:20 11:8
Linda 2:15 4:20 5:13
  10:15
LITIGATION 1:16
LLP 2:7,22 3:6
look 9:17 11:21
Los 2:17

## M

M 3:7
machine 13:10
Market 2:2,7
Mary 3:10,18 5:11
MASTER 2:10 3:16,22
  3:24 4:4,15,21 5:2,8
  5:10,12,17,20,24 6:5
  6:17 7:10,17,23 8:8
  8:11 9:2,7,16,20 10:1
  10:8,13,21 11:4,20
matter 10:6
matters 10:1
McCUTCHEN 2:22
mentioned 10:17
Merit 2:6
Micro 1:3 2:18
MICROPROCESSOR
  1:16
mid-week 7:9
Mike 3:11 4:2 5:9 7:19
  8:17
MILSTEIN 3:4
mind 7:11
moment 8:12
MORRIS 3:10
MYERS 2:15

## N

N 2:2,7
necessary 11:2
need 10:20 11:22
needs 7:1 8:15
negotiations 6:4,10
neither 13:13
NEW 13:4
NICHOLS 3:10
night 6:14
Notary 13:5,19
notice 2:6 13:8
notify 7:16

Teleconference

Page 2

**O**

offices 2:7
official 3:18
Okay 5:20 7:10,17,23
  8:8 9:16 10:13,23
  11:20
open 8:5
opportunity 6:9
originally 6:6
outcome 13:15
outstanding 6:9 7:16
O'Melveny 2:15 4:18

**P**

paper 11:6
Parcels 2:2
part 11:1
participants 13:9,13
participate 4:14
parties 6:12
party 13:14
PAUL 1:17
PHIL 1:17
place 13:8
Plaintiff 1:8
plaintiffs 1:19 3:8 4:9
  5:1,5,7 8:3
plate 11:1
please 5:20 7:18 8:12
plenty 11:1
point 6:22 7:15
POPPITI 2:10
POTTER 2:21
Powell 3:11 4:2,2,10
  5:9,9 7:19,19 8:9,17
  8:17 10:6,11 12:4
present 2:8,11
preview 11:17
PRICKETT 3:2
principle 7:5,7
problems 11:17
procedure 11:18
proceed 6:3 8:7
produce 6:11
production 7:5
Professional 2:1
progress 6:15
proposal 6:9,13,14,20
Public 13:5,19
purpose 7:24
pursuant 2:6 13:8
put 6:7
P.A 2:13
P.L.L.C 3:4
p.m 2:8 12:5

**Q**

questions 6:20,22,24

7:3

**R**

R 13:1
reach 6:11 7:4,6 8:6
  10:18
reached 7:15 8:4 10:24
receive 6:13
record 9:19 13:12
recorded 13:9
reduce 7:8
Registered 2:1,6
regularly 9:3
remaining 11:6
remember 9:8
report 7:14 8:4
reported 7:20
Reporter 1:24 2:6
  13:19,20
Reporters 2:1,4
represent 6:15
representing 4:2
request 6:7
reserve 7:13
reserved 7:21
Richard 2:23 3:7,18
  4:13 5:6,22 8:21
RICHARDS 2:13
right 9:16 11:20
Ripley 2:23 4:13,16
  5:22,23 8:21,21
RMR 1:24 13:19
roll 4:22
Rome 2:7

**S**

Sales 1:5 2:19
saying 10:20 11:21
schedule 11:12
scheduled 7:2 9:4
seal 13:16
see 7:4
send 10:19
sense 7:8,13
Service 1:6 2:19
serving 11:6
set 9:17,21 11:18
short 7:13
shorthand 13:10,20
significant 6:15
similarly 1:18
simply 9:21
sitting 9:10
situated 1:18
slot 8:13 11:8
small 3:5,18 4:8,24,24
  5:3 6:1,2,6,18 7:11,20
  8:2,19 9:11,23 10:3

11:14,14 12:1
Smith 2:15 4:20,20
  5:13,13 8:20 9:6,13
  10:15,15,23 12:3
solution 11:3
SPECIAL 2:10 3:16,22
  3:24 4:4,15,21 5:2,8
  5:10,12,17,20,24 6:5
  6:17 7:10,17,23 8:8
  8:11 9:2,7,16,20 10:1
  10:8,13,21 11:4,20
State 13:3,6
statements 13:9,12
STATES 1:1
status 8:1
Street 2:2,7
substantive 10:24 11:5
  11:11
suggested 11:23
Suite 2:7
supervision 13:11
supposed 6:6
sure 6:20 9:6 10:17
  11:7

**T**

T 13:1,1
taken 2:6 13:7
talk 6:7 7:1 8:6
talked 7:7
teleconference 2:6 13:7
Thank 3:24 4:4 5:2,8
  5:12,17 12:3,4
Thanks 5:10
thereof 13:15
things 10:16
think 7:12 9:5 10:4,16
  11:1,3,16
THOMPSON 3:6
Thursday 9:8,21 10:7
time 7:12,13 8:13 9:21
  9:22 10:6 11:7 12:1
  13:8
today 6:8,18
TOLL 3:4
tomorrow 7:3 9:4,9
transcribed 13:10
transcript 13:12
transcription 13:11
true 13:12
try 6:10
TUNNEL 3:10
two 4:18

**U**

understand 3:17 6:21
UNITED 1:1
use 9:22 11:22

**V**

v 1:9,20
VINCENT 2:10
Volin 3:7,18 5:6,6

**W**

W 2:11
walked 3:19
want 9:21
Washington 3:5
Wednesday 2:7 7:14,22
week 7:9 11:13
West 10:12
Wilcox 2:1,4,4
Wilmington 2:2,7 5:16
  5:19
WITNESS 13:16
word 7:24
work 10:4
works 8:13,18
worth 9:11
writing 7:8
www.corbettreporti...
  2:3

**0**

05-MD-1717-JJF 1:17
05-441 1:5
05-485-JJF 1:18

**1**

11:00 10:8
118-RPR 13:20
12th 13:16
1201 2:7
13th 8:14,15 9:3
14th 9:15,18 11:2
19801 2:2

**2**

2007 2:8 13:17
230 2:2

**3**

302 2:3

**4**

4:00 2:8
4:30 8:15,18 9:3 10:14
  11:8,10,22,23
4:50 12:5

**5**

571-0510 2:3

**6**

6 2:8

**8**

800 2:7

EXHIBIT 13

Page 1

1                IN THE UNITED STATES DISTRICT COURT
2                   FOR THE DISTRICT OF DELAWARE
3

ADVANCED MICRO DEVICES,          )
4                                )
          Plaintiffs,            )   Civil Action No.
5                                )   05-441-JJF
     v.                          )
6                                )
INTEL CORPORATION,               )
7                                )
          Defendant.             )
8

9           Teleconference in above matter taken pursuant to
     notice before Renee A. Meyers, Registered Professional
     Reporter and Notary Public, in the offices of Blank
10   Rome, LLP, 1201 North Market Street, Wilmington,
     Delaware, on Friday, July 20, 2007, beginning at
11   approximately 4:00 p.m., there being present:
12

BEFORE:
13

     THE HONOROABLE VINCENT J. POPPITI, SPECIAL MASTER
14

APPEARANCES:
15

          O'MELVENY & MYERS
16        LINDA SMITH, ESQ.
             1999 Avenue of the Stars
17           Los Angeles, California  90067
          for AMD
18
19
20                    CORBETT & WILCOX
                Registered Professional Reporters
21        230 North Market Street      Wilmington, DE 19899
                        (302) 571-0510
22               www.corbettreporting.com
            Corbett & Wilcox is not affiliated
23          With Wilcox & Fetzer, Court Reporters
24

Electronically signed by Renee Meyers (501-013-560-4865)                    15d2c465-b082-4413-a6aa-3138c0f0020b

Page 2

```
1  APPEARANCES (Continued):
2
3    RICHARDS, LAYTON & FINGER
     CHAD CHANDLER, ESQ.
     One Rodney Square
4    Wilmington, DE 19899
     for AMD
5
     POTTER, ANDERSON & CORROON
6    RICHARD L. HORWITZ, ESQ.
     1313 North Market Street, 6th Floor
7    Wilmington, DE 19899
8
     COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
9    DANIEL SMALL, ESQ.
     LANA HERBERT, ESQ.
10   1100 New York Avenue, N.W
     Suite 500, West Tower
11   Washington, D.C. 20005
     for Class
12
     FINKELSTEIN THOMPSON & LOUGHRAN
13   RICHARD VOLEN, ESQ.
     235 Pine Street, 15th Floor
14   San Francisco, California 94104
     for Class
15
16   BLANK ROME, LLP
     MARY MALONEY, ESQ.
17   1 Logan Square
     Philadelphia, Pennsylvania 19103
18   for Frys Electronics
19
     QUINN EMANUEL
20   MICHAEL POWELL, ESQ.
     865 S. Figueroa Street, 10th Floor
21   Los Angeles, California 90017
     for Frys Electronics
22
23
24
```

Page 3

```
1      SPECIAL MASTER POPPITI:  If we could start
2  with a roll call and if we could start with the Class
3  plaintiffs.
4      MR. SMALL:  Your Honor, this is Dan Small
5  with Cohen, Milstein for the Class plaintiffs.
6      SPECIAL MASTER POPPITI:  Thank you.
7      MS. HERBERT:  Lana Herbert for the Class
8  plaintiffs.
9      MR. VOLEN:  Richard Volen from Finkelstein
10 Thompson for the Class.
11     SPECIAL MASTER POPPITI:  Thank you.
12     MR. POWELL:  Mike Powell from Quinn Emanuel
13 for Frys Electronics.
14     SPECIAL MASTER POPPITI:  Thank you.
15     MS. GRAHAM:  And Mary Graham for Frys
16 Electronics.
17     MS. MALONEY:  And Mary Maloney from Blank
18 Rome.
19     MR. HORWITZ:  Rich Horwitz for Intel.
20     SPECIAL MASTER POPPITI:  Good afternoon.  I
21 think Rick Ripley from Bingham McCutchen is on for Intel
22 as well.
23     MR. RIPLEY:  Yes, I am, Your Honor.
24     SPECIAL MASTER POPPITI:  Thanks very much.
```

Page 4

```
1      MR. CHANDLER:  Your Honor, for AMD, it's
2  Chad Chandler, and we have, with us, Linda Smith and
3  perhaps others from O'Melveny.
4      SPECIAL MASTER POPPITI:  Linda, are you on?
5  It may be that Miss Smith is not on yet, your Honor.
6      MS. SMITH:  Your Honor, I am.
7      SPECIAL MASTER POPPITI:  Anyone else joining
8  you?
9      MS. SMITH:  Chad Chandler is supposed to be
10 on.  Is he on?
11     SPECIAL MASTER POPPITI:  Yes, he is on.
12     MS. SMITH:  I just got on the line.
13     SPECIAL MASTER POPPITI:  Thank you.  Why
14 don't we get started.
15     The purpose was my request for a status on
16 where we were with meet and confers, communication,
17 etcetera, with Frys.
18     MR. SMALL:  Dan Small, if I may address
19 that.
20     SPECIAL MASTER POPPITI:  Please.
21     MR. SMALL:  We have, as I am sure that you
22 are aware, been at this for a very long time negotiating
23 with Frys to try and work out with them an agreement for
24 them to produce data to us, and I would characterize the
```

Page 5

```
1  negotiations not only as long but difficult with a lot
2  of ups and downs.  We thought, several times, that we
3  were close to an agreement, where it turns out we really
4  weren't, and I think we have reported to you probably a
5  few times in the past that we thought we were close to
6  agreement, so we are now -- we have continued to work
7  hard.
8      There have been -- there has been a lot of
9  back and forth since the last time that we spoke with
10 you, and we are, I believe, in a different position
11 today than we have been in before.
12     I believe that we are very close to an
13 agreement.  There is a final proposal, I would
14 characterize it as a final proposal on the table --
15     SPECIAL MASTER POPPITI:  Okay.
16     MR. SMALL:  That has been presented, you
17 know, to all the relevant parties, and, in fact, I think
18 we would have known today whether we had a deal but for
19 the fact that a management person from Frys who has to
20 approve this is away on vacation and not reachable.
21     SPECIAL MASTER POPPITI:  Okay.
22     MR. SMALL:  And, so, what we have agreed to
23 with Frys, in light of that, is that they will commit to
24 telling us by Wednesday whether or not we have a deal,
```

2 (Pages 2 to 5)

Electronically signed by Renee Meyers (501-013-560-4865)

15d2c465-b082-4413-a6aa-3138c0f0020b

Page 6

1 and in either event, subject to Your Honor's
2 availability, to have another call with your Honor on
3 Wednesday so that we can report to you whether we have a
4 deal or whether we need to have further proceedings
5 before your Honor.
6        SPECIAL MASTER POPPITI:  Okay.  May I hear
7 from Frys' perspective, please.
8        MR. POWELL:  Yes, your Honor.  This is Mike
9 Powell with Quinn Emanuel.  Dan has accurately
10 reflected, I think, the status of events, and we are
11 agreeable to having Wednesday be the cutoff for our
12 response.
13        SPECIAL MASTER POPPITI:  And look, then, to
14 Wednesday for a touch base telecon as well?  Is that
15 something that you both want to do?
16        MR. SMALL:  Yes, your Honor.
17        MR. POWELL:  So if we could have it as late
18 in the day as possible on Wednesday, just because we are
19 on the West Coast, that's fine.
20        SPECIAL MASTER POPPITI:  Just give me one
21 moment, please.
22        Can we, then, on Wednesday, the 25th, let's
23 look at 4:30 if that works for everyone's schedule?
24        MR. SMALL:  That's fine with me, your Honor.

Page 7

1        SPECIAL MASTER POPPITI:  Okay.  Mr. Powell.
2        MR. POWELL:  Checking.  One moment.
3        SPECIAL MASTER POPPITI:  Thank you.
4        MR. POWELL:  4:30 is fine for me.
5        SPECIAL MASTER POPPITI:  Okay.  Are there
6 any other matters, then, that need to be dealt with
7 today?
8        MR. SMALL:  I don't think so, your Honor.
9        SPECIAL MASTER POPPITI:  Thank you all.
10        (The teleconference was concluded at 4:08
11 p.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 8

1          C E R T I F I C A T E.
2 STATE OF DELAWARE:
3 NEW CASTLE COUNTY:
4        I, Renee A. Meyers, a Registered Professional
5 Reporter, within and for the County and State aforesaid,
6 do hereby certify that the foregoing hearing was taken
7 before me, pursuant to notice, at the time and place
8 indicated; that the testimony was correctly recorded in
9 machine shorthand by me and thereafter transcribed under
10 my supervision with computer-aided transcription; that
11 the foregoing hearing is a true record of the testimony
12 given; and that I am neither of counsel nor kin to any
13 party in said action, nor interested in the outcome
14 thereof.
15        WITNESS my hand this 23rd day of July A.D. 2007.
16
17
18 _____
   RENEE A. MEYERS
19 REGISTERED PROFESSIONAL REPORTER
   CERTIFICATION NO. 106-RPR
20 (Expires January 31, 2008)
21
22
23
24

PROFESSIONALLY Really Certified E-Transcript Electronically Signed Technology.

3 (Pages 6 to 8)

Electronically signed by Renee Meyers (501-013-560-4865)          15d2c465-b082-4413-a6aa-3138c0f0020b



Page 1

**A**

accurately 6:9
action 1:4 8:13
address 4:18
ADVANCED 1:3
affiliated 1:22
aforesaid 8:5
afternoon 3:20
agreeable 6:11
agreed 5:22
agreement 4:23 5:3,6
  5:13
AMD 1:17 2:4 4:1
ANDERSON 2:5
Angeles 1:17 2:21
APPEARANCES 1:14
  2:1
approve 5:20
approximately 1:11
availability 6:2
Avenue 1:16 2:10
aware 4:22
A.D 8:15

**B**

back 5:9
base 6:14
beginning 1:10
believe 5:10,12
Bingham 3:21
Blank 1:9 2:16 3:17

**C**

C 8:1,1
California 1:17 2:14,21
call 3:2 6:2
CASTLE 8:3
CERTIFICATION
  8:19
certify 8:6
Chad 2:3 4:2,9
Chandler 2:3 4:1,2,9
characterize 4:24 5:14
Checking 7:2
Civil 1:4
Class 2:11,14 3:2,5,7
  3:10
close 5:3,5,12
Coast 6:19
Cohen 2:8 3:5
commit 5:23
communication 4:16
computer-aided 8:10
concluded 7:10
confers 4:16
continued 2:1 5:6
Corbett 1:20,22
CORPORATION 1:6
correctly 8:8

**CORROON** 2:5
counsel 8:12
County 8:3,5
Court 1:1,23
cutoff 6:11

**D**

Dan 3:4 4:18 6:9
DANIEL 2:9
data 4:24
day 6:18 8:15
DE 1:21 2:4,7
deal 5:18,24 6:4
dealt 7:6
Defendant 1:7
Delaware 1:2,10 8:2
DEVICES 1:3
different 5:10
difficult 5:1
DISTRICT 1:1,2
downs 5:2
D.C 2:11

**E**

E 8:1,1
either 6:1
Electronics 2:18,21
  3:13,16
Emanuel 2:19 3:12 6:9
ESQ 1:16 2:3,6,9,9,13
  2:16,20
etcetera 4:17
event 6:1
events 6:10
everyone's 6:23
Expires 8:19

**F**

F 8:1
fact 5:17,19
Fetzer 1:23
Figueroa 2:20
final 5:13,14
fine 6:19,24 7:4
FINGER 2:2
Finkelstein 2:12 3:9
Floor 2:6,13,20
foregoing 8:6,11
forth 5:9
Francisco 2:14
Friday 1:10
Frys 2:18,21 3:13,15
  4:17,23 5:19,23 6:7
further 6:4

**G**

give 6:20
given 8:12
Good 3:20
Graham 3:15,15

**H**

hand 8:15
hard 5:7
HAUSFELD 2:8
hear 6:6
hearing 8:6,11
Herbert 2:9 3:7,7
Honor 3:4,23 4:1,5,6
  6:2,5,8,16,24 7:8
HONORAABLE 1:13
Honor's 6:1
Horwitz 2:6 3:19,19

**I**

indicated 8:8
Intel 1:6 3:19,21
interested 8:13

**J**

J 1:13
January 3:19
joining 4:7
July 1:10 8:15

**K**

kin 8:12
know 5:17
known 5:18

**L**

L 2:6
Lana 2:9 3:7
late 6:17
LAYTON 2:2
let's 6:22
light 5:23
Linda 1:16 4:2,4
line 4:12
LLP 1:10 2:16
Logan 2:17
long 4:22 5:1
look 6:13,23
Los 1:17 2:21
lot 5:1,8
LOUGHRAN 2:12

**M**

machine 8:9
Maloney 2:16 3:17,17
management 5:19
Market 1:10,21 2:6
Mary 2:16 3:15,17
MASTER 1:13 3:1,6
  3:11,14,20,24 4:4,7
  4:11,13,20 5:15,21
  6:6,13,20 7:1,3,5,9
matter 1:8
matters 7:6
McCutchen 3:21

meet 4:16
Meyers 1:9 8:4,18
MICHAEL 2:20
MICRO 1:3
Mike 3:12 6:8
Milstein 2:8 3:5
moment 6:21 7:2
MYERS 1:15

**N**

need 6:4 7:6
negotiating 4:22
negotiations 5:1
neither 8:12
New 2:10 8:3
North 1:10,21 2:6
Notary 1:9
notice 1:9 8:7
N.W 2:10

**O**

offices 1:9
Okay 5:15,21 6:6 7:1,5
outcome 8:13
O'Melveny 1:15 4:3

**P**

parties 5:17
party 8:13
Pennsylvanie 2:17
person 5:19
perspective 6:7
Philadelphia 2:17
Pine 2:13
place 8:7
plaintiffs 1:4 3:3,5,8
please 4:20 6:7,21
POPPITI 1:13 3:1,6,11
  3:14,20,24 4:4,7,11
  4:13,20 5:15,21 6:6
  6:13,20 7:1,3,5,9
position 5:10
possible 6:18
POTTER 2:5
Powell 2:20 3:12,12 6:8
  6:9,17 7:1,2,4
present 1:11
presented 5:16
probably 5:4
proceedings 6:4
produce 4:24
Professional 1:9,20 8:4
  8:18
proposal 5:13,14
Public 1:9
purpose 4:15
pursuant 1:8 8:7
P.L.L.C 2:8
p.m 1:11 7:11

**Q**

Quinn 2:19 3:12 6:9

**R**

R 8:1
reachable 5:20
really 5:3
record 8:11
recorded 8:8
reflected 5:10
Registered 1:9,20 8:4
  8:18
relevant 5:17
Renee 1:9 8:4,18
report 6:3
reported 5:4
Reporter 1:9 8:5,18
Reporters 1:20,23
request 4:15
response 6:12
Rich 3:19
Richard 2:6,13 3:9
RICHARDS 2:2
Rick 3:21
Ripley 3:21,23
Rodney 2:3
roll 3:2
Rome 1:10 2:16 3:18

**S**

S 2:20
San 2:14
schedule 6:23
shorthand 8:9
Small 2:9 3:4,4 4:18,18
  4:21 5:16,22 6:16,24
  7:8
Smith 1:16 4:2,5,6,9,12
SPECIAL 1:13 3:1,6
  3:11,14,20,24 4:4,7
  4:11,13,20 5:15,21
  6:6,13,20 7:1,3,5,9
spoke 5:9
Square 2:3,17
Stars 1:16
start 3:1,2
started 4:14
State 8:2,5
STATES 1:1
status 4:15 6:10
Street 1:10,21 2:6,13
  2:20
subject 6:1
Suite 2:10
supervision 8:10
supposed 4:9
sure 4:21

**T**

| | |
|---|---|
| T 8:1,1 | 1 2:17 |
| table 5:14 | 10th 2:20 |
| taken 1:8 8:6 | 106-RPR 8:19 |
| telecon 6:14 | 1100 2:10 |
| teleconference 1:8 7:10 | 1201 1:10 |
| telling 5:24 | 1313 2:6 |
| testimony 8:8,11 | 15th 2:13 |
| Thank 3:6,11,14 4:13 | 19103 2:17 |
|   7:3,9 | 19899 1:21 2:4,7 |
| Thanks 3:24 | 1999 1:16 |
| thereof 8:14 | |
| think 3:21 5:4,17 6:10 | **2** |
|   7:8 | 20 1:10 |
| Thompson 2:12 3:10 | 20005 2:11 |
| thought 5:2,5 | 2007 1:10 8:15 |
| time 4:22 5:9 8:7 | 2008 8:19 |
| times 5:2,5 | 23rd 8:15 |
| today 5:11,18 7:7 | 230 1:21 |
| TOLL 2:8 | 235 2:13 |
| touch 6:14 | 25th 6:22 |
| Tower 2:10 | |
| transcribed 8:9 | **3** |
| transcription 8:10 | 302 1:21 |
| true 8:11 | 31 8:19 |
| try 4:23 | |
| turns 5:3 | **4** |
| | 4:00 1:11 |
| **U** | 4:08 7:10 |
| UNITED 1:1 | 4:30 6:23 7:4 |
| ups 5:2 | |
| | **5** |
| **V** | 500 2:10 |
| v 1:5 | 571-0510 1:21 |
| vacation 5:20 | |
| VINCENT 1:13 | **6** |
| Volen 2:13 3:9,9 | 6th 2:6 |
| | |
| **W** | **8** |
| want 6:15 | 865 2:20 |
| Washington 2:11 | |
| Wednesday 5:24 6:3,11 | **9** |
|   6:14,18,22 | 90017 2:21 |
| weren't 5:4 | 90067 1:17 |
| West 2:10 6:19 | 94104 2:14 |
| Wilcox 1:20,22,23 | |
| Wilmington 1:10,21 | |
|   2:4,7 | |
| WITNESS 8:15 | |
| work 4:23 5:6 | |
| works 6:23 | |
| www.corbettreporti... | |
|   1:22 | |
| | |
| **Y** | |
| York 2:10 | |
| | |
| **0** | |
| 05-441-JJF 1:5 | |
| | |
| **1** | |