IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:<br>INTEL CORP. MICROPROCESSSOR<br>ANTITRUST LITIGATION | ) ) ) ) ) | MDL Docket No. 05-1717 (JJF) |
| PHIL PAUL, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br>v.<br>INTEL CORPORATION,<br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 05-485 (JJF)<br><br>CONSOLIDATED |

**FRY'S ELECTRONICS' REPLY IN SUPPORT OF ITS OBJECTION TO
AND REQUEST TO MODIFY SPECIAL MASTER'S REPORT
<u>AND RECOMMENDATIONS REGARDING ALLOCATION OF FEES</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
302.658.9200

*Attorneys for Nonparty Fry's Electronics, Inc.*

OF COUNSEL:

Robert W. Stone
Michael D. Powell
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
650.801.5000
Dated: February 4, 2008

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    NO CASE HAS IMPOSED SANCTIONS ON A NONPARTY DEPONENT UNDER THESE CIRCUMSTANCES PRESENTED ......................2

    II.    EACH INSTANCE OF CONDUCT CHRONICLED IN CLASS PLAINTIFFS' OPPOSITION HAD A LEGITIMATE PURPOSE ........................3

CONCLUSION .................................................................................................................................7

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*In re Corrugated Container Antitrust Litigation*,
    662 F.2d 875 (D.C. Cir. 1981) ................................................................................................. 3

*In re Flat Glass Antitrust Litigation*,
    288 F.3d 83 (3d Cir. 2002) ...................................................................................................... 3

*In re Sunrise Securities Litigation*,
    130 F.R.D. 560 (E.D. Penn. 1989) ........................................................................................... 3

**FEDERAL STATUTES**

28 U.S.C. § 1407(b) ........................................................................................................................ 3

INTRODUCTION

Nonparty Fry's Electronics, Inc. ("Fry's") respectfully requests leave to file this reply in response to Class Plaintiffs' January 24, 2008 opposition to Fry's objection to the Special Master's report and recommendation regarding the allocation of fees. In their opposition to Fry's objection to the Special Master's report regarding the allocation of fees, Class Plaintiffs (1) do not dispute that the materials being sought from Fry's constitute trade secrets, and (2) never introduced evidence to rebut the prima facie evidentiary showing of trade secret status made by Fry's. Throughout this lengthy dispute, Fry's has consistently argued that where trade secrets are sought in discovery from a nonparty, the requesting party must make a particularized showing of necessity to justify production of the materials requested. This heightened standard of proof is necessary to protect the nonparty's substantial property rights in its trade secrets.

In protecting its property rights, Fry's has sought to compel Class Plaintiffs to identify the minimum amount of trade secret transactional data their experts would require in order to meet their burden of proof for class certification or otherwise. Although initially refusing to limit the scope of the requested data, Class Plaintiffs ultimately yielded and agreed to production of a subset of the total data. This process, like nearly all discovery disputes, took time -- more time than anyone could have anticipated at the beginning of these proceedings. Fry's, however, should not be singled out as the sole cause for the delay in reaching a resolution of this dispute; rather, that burden is equally borne by all participants in these proceedings (which at times included AMD and Intel as well), and each participant has accordingly been ordered to pay its own attorneys fees and costs. Concerning the Special Master's fees, however, that cost is properly borne by the parties to the underlying litigation who had an opportunity to consent or object to the appointment of a special master.

Fry's, therefore, respectfully requests that the Court sustain its objection and order that the Special Master's fees be allocated entirely to Class Plaintiffs or solely among the true parties (Class Plaintiffs, AMD and Intel) to the underlying antitrust litigation.

ARGUMENT

I. NO CASE HAS IMPOSED SANCTIONS ON A NONPARTY DEPONENT UNDER THESE CIRCUMSTANCES PRESENTED

Requiring nonparty Fry's to pay a portion of the Special Master's fees as a sanction under the circumstances presented here is unprecedented. As was previously demonstrated, in each of the cases relied upon by the Special Master and Class Plaintiffs, sanctions were ordered to punish either a party who was directly responsible for abusing the judicial process (*i.e.*, a direct participant in the underlying litigation) or a nonparty who clearly was in control of the underlying litigation which was viewed as an abuse of judicial process. Not one case cited holds that sanctions are appropriate where a nonparty deponent such as Fry's asserts in good faith trade secret and other objections in an effort to narrow the scope of a subpoena and limit its production to only those trade secret materials which are necessary to meet the requesting party's burden of proof and thereby limit potential harm to the producing nonparty.

The cases relied upon by the Class Plaintiffs and the Special Master demonstrate that sanctions against a nonparty are warranted only in circumstances where that nonparty is controlling the underlying litigation. In these situations, courts reason that the nonparty is properly treated as a party to the underlying litigation. The distinction here is that Fry's is merely a nonparty deponent and has no interest in the underlying antitrust litigation. Fry's is not seeking to intervene in the underlying antitrust action as in the *Moten v. Bricklayers, Masons and*

- 2 -

*Plasterer's Int'l Union of America* case, has not violated a court order as in the *SECO Nevada v. McMordie* case, and the *Roadway Express, Inc. v. Piper* case is inapplicable here because it involved misconduct by the plaintiff's counsel in the underlying litigation.[1]

    II.    EACH INSTANCE OF CONDUCT CHRONICLED IN CLASS PLAINTIFFS' OPPOSITION HAD A LEGITIMATE PURPOSE

Class Plaintiffs take Fry's to task in their opposition for failing to respond to the "parade of horribles" set forth in prior briefing to the Special Master and now presented to this Court. Class Plaintiffs, however, fail to present the whole story. The particular conduct complained of is objectively reasonable, particularly considering the favorable results achieved by Fry's. Moreover, Fry's conduct was substantially justified and does not rise to the level of an abuse of the judicial process outlined in the cases relied upon by the Special Master.

In their opposition, Class Plaintiffs present a series of rhetorical questions concerning Fry's pre-motion conduct, each of which Fry's addresses as follows:

---

[1] Class Plaintiffs assert that Third Circuit law applies to this proceeding as the law of the transferee Circuit. Pursuant to the seminal case in this area, however, the law of the Ninth Circuit applies to this proceeding which is based on a subpoena issued from the District Court for the Northern District of California. *See In re Corrugated Container Antitrust Litig.*, 662 F.2d 875 (D.C. Cir. 1981); *see also In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 90 (3d Cir. 2002) (citing *In re Corrugated*); *accord In re Sunrise Sec. Litig.*, 130 F.R.D. 560, 585-86 (E.D. Penn. 1989). As explained in *Corrugated Container*, 28 U.S.C. § 1407(b) grants to the judges who have been assigned multidistrict litigation the powers of a district judge in other districts in order to supervise depositions being conducted in those other districts. 622 F.2d at 880. "The deposition proceedings remain anchored in the courts of the districts where they are being conducted." *Id.* In *Corrugated Container*, the D.C. Circuit held that the judge in the transferee district (S.D. Tex.) acted as a district judge presiding in the District of Columbia because that was the location of the deponent. *Id.* at 881 ("[S.D. Tex. Judge] was bound by the rules and procedures of the District of Columbia District Court and although as a temporary judge thereof he had the power to adjudge the deponent in contempt and set a penalty, any execution of that penalty would have to be in accord with the rules and procedures of the District Court for the District of Columbia."). Accordingly, the Special Master and this Court are bound by the "rules and procedures" of the District Court for the Northern District of California and any appeal from any order in this proceeding is appealable to the Ninth Circuit.

| | |
|---|---|
| Question: | "How could Fry's claim trade secret status protection for data that it maintains are easily obtained from other sources, and refuse to produce such 'trade secret' data on the basis that requests to other parties for similar data were pending." |
| Fry's Response: | The reality is that the totality of Fry's sales transaction data is not available from any other source whereas certain portions may be available from its vendors. The point of Fry's position was to urge Class Plaintiffs to make the required showing of necessity as to only that data which they could not obtain elsewhere. |
| Question: | "Why did Fry's request that the subpoena be narrowed, but then prevent the parties from complying with the request by refusing to supply such basic information as a data sample or a description of the data fields it maintains." |
| Fry's Response: | Fry's submitted a declaration establishing that its Merchant Master data tracking system is itself a trade secret. Fry's expressed concern with disclosing information about what data it tracks in its proprietary system. Ultimately, after the parties agreed to a protocol to protect the trade secret status of the information, Fry's did provide Class Plaintiffs and their experts with a sample data report and confidentially disclosed information about how its Merchant Master system works. |
| Question: | "Why did Fry's premise continued negotiations upon the wholly irrelevant condition that Class Plaintiffs verify whether any named plaintiff purchased a computer form Fry's?" |
| Fry's Response: | No case has been presented which indicates that such a showing would not be relevant to Class Plaintiffs' required showing of necessity to justify production of Fry's trade secrets. Moreover, no class has yet been certified; therefore, the scope of discovery in this proceeding is limited to the claims of the named plaintiffs. |
| Question: | "How could Fry's refuse production based on burden grounds, when the parties had indicated on several occasions their willingness to discuss reasonable cost reimbursement, and when Fry's was unwilling or unable to provide any cost estimate?" |
| Fry's Response: | First, Class Plaintiffs refused to pay <u>all</u> of Fry's out-of-pocket costs and expenses as is typical in the context of a non-party |

|                    |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                      |
|--------------------|------|

                                  subpoena -- instead offering only to share in the costs. Second, Class Plaintiffs repeatedly told Fry's that they only wanted the data in the manner in which it was maintained by Fry's. Fry's explained to Class Plaintiffs that it did not maintain the data in a manner that was consistent with the requests. Fry's asserted a burdensome objection because the production of data in accordance with Class Plaintiffs' requests would have required Fry's to write a new software program to mine the data and generate a table or report with the requested data. Fry's burden objection was therefore well founded. Moreover, given the nature of the work to be done to extract the data in the manner requested, a cost estimate was difficult to make until the parties finally agreed on what data was to be provided.

Question:     "Why did Fry's insist that the Protective Order entered in this case does not apply to the production of its data, even though Fry's participated in the process that led to that Order's entry and even invoked the protections of that Order for its meet and confer correspondence?"

Fry's Response:   Fry's position concerning the protective order is set forth in the briefing before the Special Master. The Special Master permitted an informal opportunity to allow non-party deponents to make suggestions concerning the protective order to be used in the antitrust litigation. Although Fry's participated minimally in the informal process, its suggestions were ultimately rejected. Fry's asserts it has a due process right to seek additional safeguards to protect its trade secret sales transaction data. Moreover, Class Plaintiffs ultimately agreed to provide the very protections Fry's had been seeking (provided the protections were limited to Fry's production).

Question:     "Why did Fry's claim that it does not maintain the transactional data sought by the parties when Fry's IT personnel revealed the existence of sales and purchase databases, in addition to the Merchant Master database, that keep transaction level data?"

Fry's Response:   Fry's Merchant Master system is the primary user interface to its sales data. Merchant Master maintains a limited set of data covering a very short period of time. Throughout these proceedings, Class Plaintiffs repeatedly told Fry's that they only wanted the data in the manner in which it was maintained by Fry's. Fry's explained to Class Plaintiffs that it did not maintain the data in a manner that was consistent with the requests. New software would have had to be written in order to extract the

>           monthly sales transaction data sought by Class Plaintiffs from all the various disparate source of purchase and sales data.

Opp'n at 5.

Class Plaintiffs also point to three instances of post-motion conduct, which Fry's also addresses:

> Conduct: "Demanding as a prerequisite to any production the modification of the highly negotiated and highly litigated Protective Order, which was entered after Fry's 'concerns were specifically considered in the Protective Order Report and Recommendations and addressed either through revision or rejected.'"
>
> Fry's Response: As set forth above, Fry's participation in the informal process was not a waiver of its right to seek addition protections for its trade secret materials. The precise nature and scope of materials to be produced was not known to Fry's during the informal proceedings.
>
> Conduct: "Asserting that Class Plaintiffs 'had failed to adequately meet and confer' even though 'it was Fry's in-house counsel . . . who stated, 'Accordingly I cannot see there is anything left to discuss.'"
>
> Fry's Response: Fry's asserted Class Plaintiffs had failed to adequately identify the specific data it required to meet its burden of proof on class certification or otherwise. Nevertheless, Class Plaintiffs' moved to compel production of unknown "sales transaction data" without even specifying which document requests it was seeking to enforce. Fry's believed further meet and confer could have narrowed and clarified the issues to be resolved by the Special Master.
>
> Conduct: "Arguing that Class Plaintiffs 'had not adequately identified the data that it sought to compel,' and that Fry's 'did not have data in the form that Class Plaintiffs sought' (i.e., 'relating to individual sales transactions'), even though Class Plaintiffs could have further targeted their requests had Fry's provided a data sample or data field descriptions."
>
> Fry's Response: Fry's legitimately sought confidentiality restrictions concerning any sample data set as outlined above. Moreover, Class Plaintiffs did not back off their unfounded requests for individual sales transaction data (which was not even called for

- 6 -

> in the subpoena) until the motion to compel proceedings had progressed substantially. Fry's does not maintain its sales transaction data in the manner requested by Class Plaintiffs and special software would need to be created to extract it either on a transaction-by-transaction basis or on a monthly basis as requested in the subpoena.

Opp'n at 5.

## CONCLUSION

There is nothing unusual or unjustified about a nonparty deponent seeking protection for its trade secret materials which are being sought for production in one of the largest antitrust cases in U.S. history. As shown by declarations presented to the Special Master in these proceedings, the risk of harm to Fry's from its trade secret transaction data being leaked to AMD or Intel is substantial. Each of Fry's objections was substantially justified and Fry's conduct in protecting its legitimate property rights cannot be a basis for the imposition of sanctions of nearly $40,000.

For the foregoing reasons, Fry's respectfully requests that the Court sustain its objection and order that the Special Master's fees be allocated entirely to Class Plaintiffs or solely among the true parties (Class Plaintiffs, AMD and Intel) to the underlying antitrust litigation.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ James W. Parrett, Jr.*
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
302.658.9200

*Attorneys for Nonparty Fry's Electronics, Inc.*

OF COUNSEL:

Robert W. Stone
Michael D. Powell
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94065
650.801.5000

Dated:  February 4, 2008
1450271

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 4, 2008, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that on February 4, 2008 true and correct copies of the foregoing were caused to be served upon the following parties in the manner indicated:

**VIA HAND DELIVERY (in triplicate):**

Vincent J. Poppiti
BLANK ROME LLP
1201 North Market Street, Suite 800
Wilmington, DE  19801-4226

| **VIA E-MAIL:** | **VIA E-MAIL:** |
| --- | --- |
| Vincent J. Poppiti<br>BLANK ROME LLP<br>**poppiti@blankrome.com** | J. Clayton Athey<br>PRICKETT, JONES & ELLIOTT, P.A.<br>**jcathey@prickett.com** |
| WITH A COPY TO: | James L. Holzman<br>PRICKETT, JONES & ELLIOTT, P.A.<br>**jlholzman@prickett.com** |
| Elizabeth Oestreich<br>BLANK ROME LLP<br>**oestreich@blankrome.com** | Frederick L. Cottrell, III<br>RICHARDS, LAYTON & FINGER, P.A.<br>**cottrell@rlf.com** |
| Mary Levan<br>BLANK ROME LLP<br>**levan@blankrome.com** | Richard L. Horwitz<br>POTTER ANDERSON & CORROON LLP<br>**rhorwitz@potteranderson.com** |
| Carrie David<br>BLANK ROME LLP<br>**david-c@blankrome.com** | |

                                            */s/ James W. Parrett, Jr.*
                                            James W. Parrett, Jr. (#4292)

802096