**PRICKETT, JONES & ELLIOTT**
A PROFESSIONAL ASSOCIATION
**1310 KING STREET, BOX 1328**
**WILMINGTON, DELAWARE 19899**
TEL: (302) 888-6500
FAX: (302) 658-8111
http://www.prickett.com

Writer's Direct Dial:
(302)888-6509
Writer's Telecopy Number::
(302)888-6333
Writer's E-Mail Address:
JLHolzman@prickett.com

Dover Office:
11 NORTH STATE STREET
DOVER, DELAWARE 19901
TEL: (302) 674-3841
FAX: (302) 674-5864

March 20, 2008

*Via eFiling and Hand Delivery*

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 North Market Street
Wilmington, DE 19801

    Re:    **DM No. _____**
              *In re Intel Corp. Microprocessor Antitrust Litigation,* MDL No. 05-1717-JJF;
              *Phil Paul v. Intel Corp.*, Cons. C.A. No. 05-485-JJF

Dear Judge Poppiti:

    Non-party Fujitsu Computer System Corporation ("Fujitsu U.S.") has collected certain sales data responsive to subpoenas served in this litigation.[1] Although counsel for Fujitsu U.S. has explained that these data are sitting on her desk and could be labeled and produced within one or two days, she has refused to produce the data in an effort to gain negotiating leverage for her other client, Fujitsu Ltd. ("Fujitsu Japan"). Because this is not a legitimate reason for Fujitsu U.S. to withhold production, Class Plaintiffs seek an order compelling production of these data immediately.

    The U.S. transactional sales data already collected by Fujitsu U.S. are highly probative of the anticompetitive effects of Intel's challenged conduct on the prices paid for computers and the extent to which Intel's overcharges were passed on to members of the proposed class. Initially, Class Plaintiffs intend to use the data to address how impact and damages can be demonstrated on a class-wide basis.

    Class Plaintiffs and the other Parties have engaged in extensive negotiations with Fujitsu U.S. and other third parties from which they sought similar data.[2] Class Plaintiffs learned

---

[1] Fujitsu U.S. received subpoenas from Class Plaintiffs, AMD, and Intel (collectively, "the Parties"). A copy of Class Plaintiffs' June 23, 2006 subpoena is attached hereto as Exhibit A. The data relevant to this motion to compel is responsive to Request 8(a), which seeks transactional sales data for each computer system containing an x86 microprocessor that Fujitsu U.S. has sold in the United States.

[2] Class Plaintiffs wrote to Fujitsu U.S. on November 16, 2006 to state that they would not be pursuing the production of any documents (*i.e.*, custodian documents) from any Fujitsu entity, but would limit their focus to transactional data. *See* November 16, 2006 letter from Judith A. Zahid to Jill D. Neiman, Exhibit B. On December 6, 2006, Class Plaintiffs sent another letter (Exhibit C), which further narrowed the scope of the subpoena and specifically described five categories of transactional data sought by the Parties, including the sales data relevant here.

Hon. Vincent J. Poppiti
March 20, 2008
Page 2

recently that several months ago, and as early as last April 2007, Fujitsu U.S. collected the U.S. transactional sales data requested and negotiated by the Parties and sent it to the office of Jill D. Neiman, counsel for both Fujitsu U.S. and its corporate parent, Fujitsu Japan. Nevertheless, Fujitsu U.S. has refused to produce the collected data. Now, with the class certification motion imminent, Class Plaintiffs seek immediate relief.

**I.      Factual Background.**

      **A.      The Scope of the U.S. Transactional Data Sought by the Class Plaintiffs from Fujitsu U.S.**

Class Plaintiffs and the other Parties negotiated with Fujitsu U.S. for almost two years. In April 2007, the Parties reviewed samples of transactional sales data from Fujitsu U.S. Following discussions to clarify the nature of the data, the Parties approved the quality and substance of the samples in approximately June 2007. Furthermore, in June and July 2007, the Parties finalized an oral agreement as to the substance and scope of what Ms. Neiman proffered to be the only available U.S. transactional "rebate" data, maintained by a third party. Class Plaintiffs do not know if the rebate data has already been collected by the third party and provided to Fujitsu U.S.'s counsel.[3]

Class Plaintiffs have learned that Fujitsu U.S. has apparently redacted the names and addresses of its customers, including its retailers and other resellers. Class Plaintiffs believe that these redactions are inappropriate and intend to continue negotiating with Fujitsu U.S. to obtain the identities of the retailer/reseller customers, but we now move to compel production of the U.S. sales data in its current redacted form since even that information may be important to class certification issues.

      **B.      The Meet and Confer Process.**

Class Plaintiffs have negotiated for months in good faith with Fujitsu U.S.'s counsel. Collectively with the other Parties, by July 2007, Class Plaintiffs had negotiated a verbal agreement with Fujitsu U.S. as to all of the details of the U.S. data production.[4] Although Fujitsu U.S. failed to produce U.S. sales and rebate data, the Parties continued to negotiate to obtain data from Fujitsu Japan, which is represented by the same counsel. The negotiation with Fujitsu Japan has not yet concluded.

On February 28, 2008, Class Plaintiffs wrote to Fujitsu's counsel confirming the request for immediate production of U.S. sales data (Exhibit D). Class Plaintiffs rejected Ms. Neiman's explanation as to why the U.S. data could not be produced—since it rested almost entirely on the rationale that production of the U.S. data might hinder negotiations with the Japanese parent.

---

[3] If the U.S. "rebate" data also has been fully-collected and is in the possession of Fujitsu U.S.'s counsel, Class Plaintiffs seek its immediate production as well.
[4] The exception, as discussed above, is the pending issue as to the redacted identities of the retailer/reseller customers.

Hon. Vincent J. Poppiti
March 20, 2008
Page 3

Class Plaintiffs do not believe that an attempt to gain negotiating leverage on behalf of one client is a legitimate reason to withhold data that has been collected by a separate client, especially in light of Class Plaintiffs' imminent class certification motion. Indeed, Class Plaintiffs intend to continue to negotiate in good faith with Fujitsu Japan regarding that separate subpoena.

Since Class Plaintiffs' February 28, 2008 letter, further attempts to secure the data have been unavailing. Finally, on March 19, 2008, counsel to Fujitsu Japan and Fujitsu U.S. stated that no production of the U.S. sales data would be forthcoming until the Parties have finalized an agreement on Fujitsu Japan's data. With the class certification deadline fast approaching, Class Plaintiffs now seek an order compelling production.

**II.     Discussion.**

      **A.     Fujitsu U.S.'s Data Are Highly Relevant and Urgently Required.**

"The non-party witness is subject to the same scope of discovery under [Rule 45] as that person would be as a party to whom a request is addressed pursuant to Rule 34." Fed. R. Civ. P. 45, advisory committee's notes to 1991 amendment. A request for production submitted to a non-party thus meets the standard of relevance so long as it seeks documents "relevant to the claim or defense of any party" or if it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see United States ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002).

Fujitsu U.S. does not dispute the relevance of its data to Class Plaintiffs' claims. Indeed, because Fujitsu U.S. is one of world's eight largest computer system manufacturers, its transactional data, which shows the sale prices downstream of computer systems containing x86 microprocessors, is critical information for Class Plaintiffs' motion for class certification, which is due May 16, 2008. Nor can there be any argument as to burden, as the data sought by this motion has already been collected by Fujitsu U.S. and could be produced promptly.

      **B.     Fujitsu U.S. Has No Legitimate Basis to Withhold the Collected Data.**

Fujitsu U.S. has collected relevant data pursuant to lengthy negotiations with Class Plaintiffs and the other Parties. Yet these data sit on the desk of outside counsel for Fujitsu U.S. in an attempt to gain leverage in separate negotiations with her other client, Fujitsu Japan. This is simply inappropriate. Where a third party has already collected relevant and responsive information, and that information would be immediately useful in the litigation, it should be compelled to produce that information even though negotiations continue with another third party about its own data. Indeed, even though the collected data has certain information redacted, it would still be useful to Class Plaintiffs as they prepare their motion for class certification, and should be ordered to be produced immediately.

Hon. Vincent J. Poppiti
March 20, 2008
Page 4

### III.   Conclusion.

Despite substantial efforts to negotiate the prompt production of this discrete set of already-collected transactional data, Fujitsu U.S. has resisted making any production at all, based on grounds that are wholly without merit. Accordingly, an order compelling Fujitsu U.S. to produce the transactional data within three days is necessary and appropriate.

> Respectfully submitted,
>
> /s/ *James L. Holzman*
>
> James L. Holzman
> (DE Bar #663)

Enclosures

cc:   Clerk of the Court (*by electronic filing*)
      Richard L. Horwitz, Esq. (*by electronic filing and hand delivery*)
      Frederick L. Cottrell, III, Esq. (*by electronic filing and hand delivery*)
      J. Clayton Athey, Esq. (*office*)
      Jill D. Neiman, Esq. (*by email, overnight delivery and First Class mail*)