IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE<br>INTEL CORPORATION<br>MICROPROCESSOR ANTITRUST<br>LITIGATION | MDL No. 05-1717-JJF |
| ADVANCED MICRO DEVICES, INC., a Delaware corporation, and AMD INTERNATIONAL SALES & SERVICES, LTD., a Delaware corporation,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>INTEL CORPORATION, a Delaware corporation, and INTEL KABUSHIKI KAISHA, a Japanese corporation,<br><br>　　　　　　　Defendants. | C.A. No. 05-441-JJF |
| PHIL PAUL, on behalf of himself and all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>INTEL CORPORATION,<br><br>　　　　　　　Defendants. | C.A. No. 05-485-JJF<br><br>CONSOLIDATED ACTION |

## DECLARATION OF JAMES S. VENIT

OF COUNSEL:

Robert E. Cooper
Daniel S. Floyd
GIBSON, DUNN & CRUTCHER LLP

Peter E. Moll
Darren B. Bernhard
HOWREY LLP

Richard A. Ripley
BINGHAM McCUTCHEN LLP

David M. Balabanian
BINGHAM McCUTCHEN LLP

Dated: May 6, 2008

863120 29282

Richard L. Horwitz (#2246)
W. Harding Drane, Jr. (#1023)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
wdrane@potteranderson.com

*Attorneys for Defendant*
*Intel Corporation and Intel Kabushiki Kaisha*

## DECLARATION OF JAMES S. VENIT

I, James S. Venit, make the following declaration.

1. I make this declaration upon personal knowledge and I am competent to testify to the facts set forth herein. This declaration is based on my understanding of the status of the European Commission's investigation of Intel Corporation ("Intel") and my background in, and familiarity with, European Commission ("Commission" or "EC") procedures. The statements and opinions expressed herein are made in good faith on the basis of my understanding of the relevant facts and law.

2. I am a partner at Skadden, Arps, Slate, Meagher & Flom and practice EU competition law out of the firm's Brussels office, which I joined in June 2000.

3. I am admitted to the Bar of New York and am registered on the "B" list of the Brussels Bar.

4. I have been practicing EU competition law in Brussels since October 1980, first as an associate at Cleary, Gottlieb, Steen & Hamilton from October 1980 until April 1984, then as an associate and then partner at SG Archibald from April 1984 until December 1989, and then as a partner with Wilmer, Cutler and Pickering (now Wilmer, Hale) from January 1990 until June 2000. During my nearly 28 years in Brussels, I have represented numerous firms before the European Commission in, *inter alia*, competition cases under both Articles 81 and 82 of the EU Treaty. I am familiar with the competition laws of the European Community and the procedural rules of the European Commission.

5. Since February 2005 I have been representing Intel and assisting its legal team in the proceedings before the European Commission in Case 37990 (the "AMD complaint"). I am also assisting Intel in Case 39493 (the "Retail Investigation").

6. I make this declaration in support of Intel and in response to the declaration of Mr. Vincent Smith, following the hearing before Special Master Poppiti in this matter on 22 April 2008, in which submissions were requested concerning the need for urgent consideration of the motion filed on behalf of Union Federale des Consommateurs Que Choisir ("QC") to intervene for the limited purpose of seeking modification of the Confidentiality Agreement and Protective Orders and its application pursuant to 28 U.S.C. § 1782 to provide access to documents (collectively "QC's Motion") to enable QC to participate "efficiently" in the EU proceedings and in the consumer damages actions that it anticipates will follow those proceedings.

7. QC bases its motion on its interest in using the documents in the EC proceedings in Case 37990 against Intel, in any separate continuing investigation of Intel's relationships with certain computer resellers located in Europe, and eventually in damage actions to be brought at some point in the future against Intel in EU Member State courts. (QC Brief at page 20). In its Brief, QC further explains that its goal in intervening in this procedure is to "influence the outcome of the EC proceedings" and to "seek, via subsequent and related judicial proceedings, compensation for consumers who have been overcharged due to Intel's alleged monopolistic conduct." (QC Brief at page 2).

8. In the following paragraphs, I first address the status of the EC proceedings in Case 37990 and the possibility for further interventions by QC in that Case in order to influence the proceedings.

**There Is No Basis for Urgent Treatment of Que Choisir's 28 U.S.C. § 1782 Application in Connection with Case 37990 (the "AMD Complaint").**

**Nature of the EC Proceedings in Case 37990**

**Phases of the Proceeding**

9. By way of background, the Commission's proceedings in a competition case pursuant to Regulation 1/2003[1] (such as Case 37990) may be divided into three distinct phases (without prejudice to the possibility of re-opening a previous phase). These are: (i) the investigatory phase; (ii) the defence/contentious phase; and (iii) the decision-making phase.

(i).  **Investigatory Phase.** During this phase, the Commission uses its investigatory powers under Articles 17-21 of Regulation 1/2003 to gather information and documents by conducting on-site inspections and/or requesting the provision of documents and information. The investigatory phase concludes either with a decision not to proceed further, in which case the file is closed,[2] or the issuance of a Statement of Objections (the "SO") which is addressed to the defendant firm(s) (in this case, Intel) and which sets forth the factual and legal arguments supporting the Commission's preliminary conclusion that EU competition law has been infringed.

(ii).  **Defence/Contentious Phase.** The second phase, the defence (or contentious phase), begins with the issuance of the SO to the defendant (otherwise known as the addressee of the SO) who is then given an opportunity to respond in writing and orally to the allegations contained in the SO. As part of this phase, the addressee of the SO is also afforded access to the Commission's file. With the issuance of the SO, the factual record is closed. Although new evidence may be introduced subsequently by the Commission, as Mr. Smith notes in paragraph 10 of his declaration, should the new evidence result in a substantial change in the European Commission's objections, a supplementary SO would be required. The defence/contentious phase terminates with the Oral Hearing. After this point third parties no longer have any statutory right to make further submissions.

(iii).  **Decision-Making Phase.** Following the Oral Hearing, the Commission enters the decision-making phase during which the staff of DG Competition consult internally and with the Commissioner responsible for Competition, the Commission's Legal Service, and the Member States through the Advisory Committee. This phase of the Commission's procedure is governed by Articles 14 and 30 of Regulation 1/2003 and the Commission's non-public internal regulations. Neither the addressee of the SO nor third parties have any statutory rights to make submissions during this phase of the proceedings. At the end of this

---

[1] A true and correct copy of Regulation 1/2003 is attached hereto as Exhibit 1.

[2] If the investigation was opened in response to the filing of a formal complaint, pursuant to Article 5 of Regulation 773/2004, the complainant has a limited right of access to the file once it has been informed that the Commission proposes formally to reject the complaint. *See* Article 8 of Regulation 773/2004.

phase the Commission will either adopt a decision or formally decide to close the file and/or reject a complaint if the investigation was opened in response to a formal complaint. The defendant has the right to appeal the Commission's decision to the Court of First Instance within two months.

### Rights of Interveners

10. The rights of a third party intervener, such as QC, are substantially more limited than those of a defendant in an EU proceeding. In particular, the Commission Notice on Handling of Complaints, Official Journal C 101, 27/04/2004,[3] expressly states, with respect to the rights of a complainant (and thus, *a fortiori*, those of a third party intervener) that "proceedings of the Commission in competition cases do not constitute adversarial proceedings between the complainant on the one hand and the companies which are the subject of the investigation on the other hand. Accordingly, the procedural rights of complainants are less far-reaching than the right to a fair hearing of the companies which are the subject of an infringement procedure."[4]

11. Regulation 773/2004 defines the right of *any* person to participate in an ongoing EU proceeding.[5] This regulation provides that third party interveners will be informed in writing of the nature and the subject matter of the proceeding, will have a time limit within which they may make known their views in writing, and may be invited to develop their arguments at the Oral Hearing. (Article 13 of Regulation 773/2004). Absent an express invitation from the Hearing Officer, QC, as a third party intervener in Case 37990, has no right under EU law to make submissions about the factual record *after* the Hearing. However, "[w]here appropriate, in view of the need to ensure the right to be heard, the hearing officer, after consulting the Director responsible, may afford persons, undertakings, and associations of persons or undertakings the opportunity of submitting further written comments after the oral hearing. The hearing officer shall fix a date by which such submissions may be made. The Commission shall not be obliged to take into account written comments received *after* that date." *See* Commission Decision 2001/462 of 23 May 2001, on the terms of reference of hearing officers in certain competition proceedings, Official Journal L 162, 19.06.2001, p. 21, Article 12(4) (emphasis added).[6] According to Mr. Smith's declaration, QC was given until 26 March 2008 by the Hearing Officer to make a submission relating *solely* to matters raised at the hearing (and not to introduce *any* new evidentiary material). (Smith Decl., Para. 8 and

---

[3] A true and correct copy of the Commission Notice on Handling of Complaints is attached hereto as Exhibit 2.

[4] *See also* Case T-65/96, *Kish Glass & Co. Ltd. v. Commission* (judgment of 30 March 2000), in which the Court held that "an investigation does not constitute an adversary procedure as between the undertakings concerned but a procedure commenced by the Commission, upon its own initiative or upon application, in fulfillment of its duty to ensure that the rules on competition are observed. It follows that the companies which are the object of the investigation and those which have submitted an application under Article 3 of Regulation No 17, having shown that they have a legitimate interest in seeking an end to the alleged infringement, are not in the same procedural situation and that the latter cannot invoke the right to be heard as defined in the cases relied on." A true and correct copy of Case T-65/96 is attached hereto as Exhibit 3.

[5] A true and correct copy of Regulation 773/2004 is attached hereto as Exhibit 4.

[6] A true and correct copy of Commission Decision 2001/462 is attached hereto as Exhibit 5.

Exhibit 2).[7] Thus, QC has no further right to be heard or to make submissions to the Commission.

### Rights of Third Parties to Conduct Discovery

12. Commission proceedings under Regulation 1/2003 are not adversarial as concerns the addressees of the SO and third parties, be they complainants or interveners.[8] The Commission has described the practical significance of this aspect of its proceedings in a brief submitted in opposition to the use of § 1782 by a defendant when it noted that "the laws of the European Community embody a deliberate decision not to authorize private parties to conduct their own discovery."[9] Rather, a private party seeking additional discovery for a Commission competition proceeding must first ask the Commission to obtain the documents.[10] The Commission's decision on whether or not to grant the request is then subject to appellate court review.[11] The Commission's analysis was set forth in the context of an attempt by Microsoft, a defendant who was the addressee of an SO, to use § 1782 to obtain discovery. It would appear *a fortiori*, therefore, that a third party, such as QC, would, at least, have to respect the procedure required of a defendant, given that under EU law, defendants have far greater procedural rights than complainants or interveners. To Intel's knowledge, however, QC has not complied with this required procedure in its quest to obtain the Delaware documents. In my view, QC's apparent attempt to circumvent EC law by directly approaching this Court negates any basis for expedited treatment of its application: QC has itself not adhered to the appropriate procedures, and such being the case, it appears likely that the Commission would refuse any information submitted by QC should its § 1782 application succeed.

### Current Status of Case 37990

13. Insofar as Intel is concerned, the status of Case 37990, and the procedures that remain are essentially as described in paragraphs 6-12 of Mr. Smith's declaration: the investigatory and defence/contentious phases of the Commission's procedures have been concluded, and the Commission is now engaged in its internal decision-making process. In essence this means that, unless the Commission were to decide to reopen its investigation in

---

[7] Intel, as the defendant in Case 37990, was granted the opportunity by the Hearing Officer to make a post-Hearing submission, pursuant to the Hearing Officer's mandate to grant leave to do so to persons or undertakings in limited circumstances. However, it was made clear to Intel that this submission should be brief and should concern only matters covered at the Hearing as to which Intel had not, in its view, had the opportunity to respond to adequately. Thus, the permission to make a supplemental submission did not extend to the submission of new arguments or new documents.

[8] *See* Case T-65/96, *Kish Glass & Co. Ltd. v. Commission*, note 4 *supra*.

[9] Brief of the Commission of the European Communities in Opposition to Microsoft Corporation's Objections to Magistrate's Order at 10, *In re Application of Microsoft Corp.*, Case No. 06-80038 JF (PVT) (Apr. 17, 2006) (N.D.Cal.) [hereinafter Comm'n Sun Brief]; *see also* Reply Brief of the Commission of the European Communities in Support of Novell, Inc.'s Motion to Quash at 2-3, In re Application of Microsoft Corp., C.A. 06-MBD-10061 (MLW) (Apr. 12, 2006) (D. Mass) [hereinafter Comm'n Novell Reply Brief]. True and correct copies of the Comm'n Sun Brief and the Comm'n Novell Reply Brief are attached hereto as Exhibits 6 and 7, respectively.

[10] Comm'n Sun Brief at 10.

[11] *Id.*; Comm'n Novell Reply Brief at 2-3.

4

Case 37990, with the consequences noted by Mr. Smith in paragraph 10 of his declaration, the investigatory and contentious portion of the Commission's administrative proceedings are now closed as is the factual record on which the Commission will have to rely should it eventually adopt a decision in Case 37990 establishing the existence of an infringement. Thus, as Mr. Smith notes in paragraph 10 of his declaration, unless the Commission chooses to reopen the investigatory phase (which would then entail a subsequent re-opening of the defence phase), the record in Case 37990 is in essence closed as concerns the further submission of new evidence.

14. As concerns QC, whose rights as a third-party intervener are narrowly circumscribed, QC has no further statutory right to be heard or to make submissions to the Commission now that Case 37990 has entered the decision-making phase.[12]

### The EC Procedural Options Going Forward (Postulated By Mr. Smith)

15. In paragraph 13 of his declaration Mr. Smith suggests that the Commission currently has three options following the on-site inspection visits it conducted in February of Intel's premises in Germany and of various retailers in, Intel believes, France, the UK and Germany.[13] These retail inspections were conducted under a new file number, Case 39493 (the "Retail Investigation"). The first option, according to Mr. Smith, is to open a new file for the Retail Investigation (which the EC did); the second is to expand and re-issue the existing SO in Case 37990 to include the evidence the Commission has obtained in respect of the Retail Investigation;[14] and the third is to combine both approaches – *i.e.*, proceed to a decision in Case 37990 on the basis of the existing record and in parallel issue a new SO relating to the Retail Investigation. In reality these options boil down to a choice between (i) issuing an infringement decision in Case 37990 based on the *existing* record or (ii) seeking to expand the SO in Case 37990 to include evidence from the Retail Investigation. This is because the first and third options would both involve the adoption of an infringement decision solely on the basis of the current evidence on file in Case 37990.

16. As explained below, it is my view that there is no need to consider QC's motion on an expedited basis under any of these three options. However, even before reaching these considerations two preliminary points effectively preclude, in my view, any need for expedited treatment of QC's Motion: First, Intel has itself not been formally informed by the Commission that it is considering the three options outlined by Mr. Smith in his declaration. Thus, insofar as Intel is aware, the Commission is only considering whether to issue an infringement decision or close the file in Case 37990.[15] Second, even if the Commission

---

[12] See paragraph 12 above.

[13] Mr. Smith's declaration (paragraph 13) refers to inspections of Intel's German offices and of the French retailer PPR. Press reports indicate that the Commission also visited the premises of Media Markt in Germany and Dixons (DSK) in the UK. See "Intel, Retailers Hit By EU Raids," The Wall Street Journal, February 13, 2008; "EU regulators raid Intel offices," The Financial Times, February 12, 2008. True and correct copies of these articles are attached hereto as Exhibit 8.

[14] Procedurally this may mean that should the Commission wish to include evidence from the retail inspections in Case 37990 it would have to combine evidence from Case 37990 and Case 39493 under a new case number.

[15] Since Intel has not itself been informed by the Commission as to what options it may or may not be considering, Mr. Smith's submission on the options facing the Commission may well be purely speculative.

5

were considering the options identified by Mr. Smith, it would still remain the case, as explained in paragraph 12, that QC has not complied with, and indeed is seeking to circumvent, the appropriate EU procedures described by the Commission in its Sun and Novell Reply briefs.

### There Is No Urgent Need to Consider QC's Motion in Connection with an Infringement Decision on the Basis of the Record in Case 37990 (with or without a Parallel Proceeding Involving the Retail Investigation).

17. Given the current status of Case 37990, and assuming that the Commission does indeed intend to adopt a decision establishing the existence of an infringement (or to dismiss AMD's complaint) without reopening its investigation, there is no need to consider QC's Motion on an urgent basis. This results from the fact that any such Commission decision must, by definition, be based exclusively on the evidentiary record as it currently exists and from the fact that, procedurally, there is no possibility at this stage of the proceedings for QC or indeed any third party to introduce further evidence unless the Commission wishes to re-open its investigation. (*See* paragraph 13 above and Mr. Smith's Declaration at paragraphs 10 and 13.) Since any decision to re-open the investigation in Case 37990 would only be taken *after* the Commission had decided, on the basis of the evidence before it, *not* to adopt an infringement decision in Case 37990, there is thus no need to consider QC's motion to introduce new evidence into Case 37990 on an urgent basis.

18. Several other considerations also strongly suggest that there is no urgent need to consider QC's Motion from the standpoint of Case 37990.

   a. First, Intel is a party to the proceeding and any information in Intel's possession has been readily available to the Commission. The "Commission has the legal power, under Article 18 of Council Regulation No. 1/2003, to 'require undertakings to provide all necessary information' whether or not they are the target of an investigation or suspected of an infringement of the competition rules." Brief for the Commission of the European Communities in Support of Novell, Inc's Motion to Quash, *In re Application of Microsoft Corp.*, 2006 U.S. Dist. LEXIS 32577 (Apr. 17, 2006) at 10 [hereinafter Commission Novell Brief].)[16] The Commission has already exercised its investigatory powers to gather all the information from Intel it believes is necessary with respect to the proceeding in Case 37990.

   b. Second, the Commission has also exercised its authority under Article 18 to compel third party OEMs which, I understand, have also produced (or are in the process of producing) documents in response to subpoenas in the Delaware litigation, to provide information the Commission deemed necessary in Case 37990. Through Article 18 Requests, the Commission has already collected the information needed from third parties for purposes of deciding Case 37990. In particular, the Commission has received documents and information from a large number of third parties, including all of the key OEMs whose files have been produced in the Delaware litigation. Thus, the Commission clearly not only has the power, but has already taken the measures required to collect and use what it deems to be necessary and relevant information from these third parties.

---

[16] A true and correct copy of the Commission Novell Brief is attached hereto as Exhibit 9.

c.  Third, there is no basis to believe that the Commission's power to compel information from Intel or third parties is inadequate. As the Commission has stated "[i]f the parties or third parties do not provide the requested information, the Commission can order and has many times in the past ordered production and imposed heavy fines, under Article 23 of Regulation 1/2003 . . . in order to induce compliance." Commission Novell Brief at 11. The Commission "has all the power to request any information from . . . any other third company at any time that is relevant to the proceedings. . . ." *Ibid.*

d.  Fourth, the Commission, if it had decided it needed to obtain information located in the United States, could have itself invoked 28 U.S.C. § 1782 pursuant to the Agreement Between the Government of the United States of America and the Commission of the European Communities Regarding the Application of their Competition Laws, 1995 O.J. (L 95) 47, *as amended by* Exchange of Letters Dates 31 May 1995 and 31 July 1995, 1995 O.J. (L 132) 38, and the Agreement Between the Government of the United States of America and the European Communities on the Application of Positive Comity Principles in the Enforcement of Their Competition Laws, 1998 O.J. (L 173) 28. Brief for the Commission of the European Communities as Amicus Curiae Supporting Reversal, *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) at 12 and n.13 [hereinafter Commission Intel Brief].[17]

e.  The Commission has not elected to make use of § 1782 in Case 37990, and, in fact, has consistently maintained the position that the US courts should deny discovery requests pursuant to 28 U.S.C. § 1782 for use in Commission competition proceedings. (*See, e.g.*, Commission Intel Brief; Commission Novell Brief). In various briefs, the Commission has expressed the view that the granting of such discovery requests would "interfere [] with law enforcement and sovereign policy choices in the handling of competition law proceedings in the European Community." Commission Novell Brief at 17-18.

### There Is No Urgency to QC's Motion in the Event the Commission Elects to Re-Open the Investigation in Case 37990 to Include Evidence Derived from the Retail Investigation.

19. In paragraph 13 of his Declaration, Mr. Smith acknowledges that the option to re-open would involve a significant extension of the usual six to nine month time frame for the adoption of an infringement decision. This is because, as Mr. Smith correctly notes, "significantly" changing the objections against Intel in the current proceeding would require issuance of a new SO in the "revised" case. There are two significant considerations here for the assessment of QC's request for expedited treatment of its Motion. First, it would appear that any Commission decision to expand the current SO to include the Retail Investigation would have to be made on the basis of the evidence the Commission has already obtained from the inspections conducted in February and whatever other evidence exists in the file in Case 37990. Thus, the evidence that QC might wish to introduce were the Court to grant its § 1782 request does not appear to be manifestly relevant to the Commission's decision to expand Case 37990 to include the retail inquiry. Second, given, as Mr. Smith has correctly noted, that under this option, the proceedings in Case 37990 would be greatly "expanded," there is no need for expedited consideration of QC's motion since there will be adequate time

---

[17] A true and correct copy of the Commission Intel Brief is attached hereto as Exhibit 10.

in the expanded, revised proceeding for QC to submit new evidence if the Court grants its § 1782 request.[18]

20. In summary, there is no need for expedited consideration of QC's motion under either of the two hypothesis advanced by QC in its brief and by Mr. Smith in his declaration.

21. First, QC has not followed the appropriate procedures for seeking the introduction of new evidence. (*See* paragraph 12)

22. Second, if the Commission intends to adopt an infringement decision based on the existing record in Case 37990, that decision will in all likelihood be taken without consideration for any new evidence that QC might seek to introduce. As a result, there is no urgent need to consider QC's motion for access to new evidence for purposes of the latter's introduction into the pending EC proceedings.

23. Third, if the Commission elects to expand the existing case to include material it has gathered in the course of its investigation of retailers, then as QC and Mr. Smith acknowledge, there is no need for urgent consideration of QC's motion since (i) that decision will be based on the evidence in respect of retailers that the Commission has *already* gathered, obviating any urgent need for QC to submit additional evidence; and (ii) if the Commission seeks to extend the scope of the existing case, the time frame of the pending case will be greatly expanded thus affording QC adequate opportunity to submit additional information should the Court accede to its § 1782 request.

### QC's "Urgent" Need with Respect to Case 37990 Is of Its Own Making.

24. QC has argued that it cannot be said to have "sat on it hands" throughout the Commission's proceedings in Case 37990 because, if its § 1782 motion is granted, QC intends to submit Class Plaintiff's expert report to the Commission and that expert report will not be filed until 16 May. In this connection, QC claims that "it could not have already presented the consumer impact report ... because Class Plaintiff's expert has not yet completed it"[19] and that "the EC could not have asked for and obtained something that does not yet exist in final form; and will not be filed in this case until May 16."[20] The fact that QC has not been able to submit a report that does not exist does not appear relevant to the question of whether *in the past* QC has availed itself fully of the opportunity to make timely submissions on the basis of evidence that did exist in an investigation which has been proceeding for more than eight years, and in which the transmission of a Statement of Objections to Intel was publicly announced on 27 July 2007.[21]

---

[18] There would also be no urgency if the Commission opts to pursue a Retailer Investigation in parallel since there will be adequate time for QC to make submissions in that proceeding.

[19] QC Letter Brief at page 3.

[20] *Ibid.*

[21] *See* European Commission's press release, MEMO/07/314 "Competition: Commission confirms sending of Statement of Objections to Intel", July 27, 2007. A true and correct copy of the Commission's press release is attached hereto as Exhibit 11.

25. The fact that the expert report will, according to QC, "be precisely the type of synthesized and concise material that will be of assistance to the EC, reducing the need for the EC to pore through millions of pages of documents on its own,"[22] appears irrelevant to the assessment of QC's claims that its § 1782 motion be considered on an urgent basis. As noted above, neither of the options the Commission is allegedly considering – adopting an infringement decision on the basis of the existing record in Case 37990 or extending its investigation to include new material concerning retailers – is dependent on the type of information (*i.e.*, information relating to common proof of US consumer injury *assuming* Intel has engaged in monopolization) that will be included in the expert's report. *See* Mr. Smith's Declaration at paragraph 9. Thus, the Commission will decide either to adopt an infringement decision on the basis of the existing record – and thus without need of the expert's report, or it will decide to expand its investigation – again without need for the expert's report in which case there will be ample time for QC to introduce that report in the event the Court accedes to its § 1782 request.

26. There are two additional considerations that militate against QC's request for urgent treatment of its motion to which I would like to call the Court's attention.

27. First, QC has already had every chance to exert its rights to intervene in the ongoing Commission proceedings but has failed to do so in a timely fashion. Indeed it now appears from QC's letter of 28 April that QC did not even avail itself of the exceptional opportunity to make a supplemental submission two weeks after the Oral Hearing. (*See* paragraph 11 *supra*.) As discussed above, QC has not followed the procedures the Commission requires for seeking additional discovery, and QC's Motion does not claim that the Commission is likely to be receptive to arguments to this effect at this stage in the EU proceedings.

28. Information concerning the Commission's investigation has been reported by the press and even formally announced by the Commission at different points in time since the beginning of the investigation. As part of its investigation, the Commission conducted inspections at Intel's premises in Germany, the UK, Spain and Italy on 12-13 July 2005, which were widely reported in the press.[23] On 26 July 2007 the Commission addressed an SO to Intel, thereby formally initiating proceedings with a view to adopting a decision pursuant to Chapter III of Regulation 1/2003.[24] The transmission of the SO was announced publicly and the SO's principal allegations were summarized in a Commission press statement on 27 July 2007.[25]

29. Despite this publicly available information, QC only requested leave to intervene in the EU proceedings on 26 February 2008. QC was granted permission to intervene by the Hearing Officer's decision of 6 March. QC was also invited to attend the Oral Hearing and

---

[22] QC Letter Brief at page 3.

[23] *See* CNet, "EU antitrust officials raid Intel", July 12, 2005; The Register "EC officials raid Intel offices", July 12, 2005. True and correct copies of these articles are attached hereto as Exhibit 12.

[24] *See* Article 2(1) of Regulation 773/2004 relating to the conduct of proceedings by the Commission pursuant to Articles 81 and 82 of the EC Treaty.

[25] *See* European Commission's press release, MEMO/07/314 "Competition: Commission confirms sending of Statement of Objections to Intel", July 27, 2007.

was afforded the opportunity to make a formal presentation. As part of its presentation on the second day of the Hearing, 12 March 2008, QC distributed written materials to all the Hearing participants and announced that it intended to initiate a class action suit against Intel to have the confidentiality order lifted in the Delaware litigation.

30. QC's claim for urgent consideration of its motion in relation to the application of 28 U.S.C. § 1782 at what is effectively the eleventh hour is compromised both by its tardy intervention as concerns the EC proceedings and the fact that it has already been given the opportunity to exert its rights to the fullest extent possible in those proceedings.

31. Second, as noted in paragraph 18e above, the Commission has consistently and uniformly taken the position that it is opposed to the use of § 1782 as a discovery mechanism.[26] Given the likelihood that the Commission will maintain that position, QC cannot claim any urgency for its 28 U.S.C. § 1782 Application as a mechanism to seek to influence the ongoing EC proceedings.[27]

**There Is No Urgent Need for Expedited Consideration in Connection with the Prospective QC Action for Damages.**

32. QC's submission of 28 April does not touch on the second reason it has proffered for expedited consideration of its § 1782 request – QC's intention to commence national damage actions. I address this point below simply for the sake of completeness.

33. First, QC has to date has not initiated any damages actions under any of the EU Member State laws. In the absence of any pending national court proceedings, there can be no urgency to QC's 28 U.S.C. § 1782 Application.

34. Second, in the EU such actions are normally brought *after* the Commission has adopted a decision establishing an infringement *and* that decision has been rendered final on appeal or by the expiration of the time period within which to bring an appeal. QC has indicated that this is how it intends to proceed. (QC Brief at page 2). This process is likely to take another five to seven years if the Commission adopts a decision and if Intel appeals it to both the Court of First Instance and the Court of Justice.

35. Absent a final Commission decision finding that Intel has infringed Article 82 EC Treaty, there is no need to treat QC's Motion on an expedited basis because of QC's intention to initiate actions for damages in an unidentified EU member state court.

---

[26] *See* Commission Briefs cited in Para. 18e above; *see also* Letter from Philip Lowe, Director-General, European Commission, to Maurits Dolmans, Cleary Gottlieb Steen & Hamilton (Mar. 2006). A true and correct copy of the Commission Letter to Dolmans is attached hereto as Exhibit 13.

[27] According to the Commission, granting such § 1782 requests would "seriously compromise the Commission's powers of investigation and competition law enforcement." Commission Novell Brief at 15. The Commission explained to the United States Supreme Court that it "[o]bjects to the potential subversion of limits that the European Union has imposed, in the exercise of its sovereign regulatory powers, on access by an antitrust complainant to the information that the Commission gathers in its investigation, including confidential business information of the target company." Commission Intel Brief at 13 (quoting Case 53/85, *AZKO Chemie BV v. Comm'n of the European Communities*, 1986 E.C.R. 1965, ¶ 28).

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge and belief, the foregoing is true and correct.

_____
James S. Venit

Dated: 5 May, 2008