# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: INTEL CORPORATION MICROPROCESSOR ANTITRUST LITIGATION | ) ) ) ) )   MDL No. 05-1717-JJF |
| PHIL PAUL, on behalf of himself and all others similarly situated, | ) ) ) ) |
| Plaintiffs, | )   Civil Action No. 05-485-JJF ) |
| v. | )   CONSOLIDATED ACTION ) |
| INTEL CORPORATION, | ) ) |
| Defendant. | ) |

## COMPENDIUM OF UNREPORTED OPINIONS TO MEMORANDUM IN SUPPORT OF CLASS PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

PRICKETT JONES & ELLIOTT, P.A.
James L. Holzman (#663)
J. Clayton Athey (#4378)
Laina M. Herbert (#4717)
Melissa N. Donimirski (#4701)
1310 King Street
P.O. Box 1328
Wilmington, DE 19899
(302) 888-6500
jlholzman@prickett.com
jcathey@prickett.com
lmherbert@prickett.com
mndonimirski@prickett.com
Interim Liaison Counsel and Attorneys for
Phil Paul, on behalf of himself and all others
similarly situated

Date: May 16, 2008

Of Counsel:

Michael D. Hausfeld
Daniel A. Small
Brent W. Landau
COHEN, MILSTEIN, HAUSFELD
     & TOLL, P.L.L.C.
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC 20005

Michael P. Lehmann
Jon T. King
COHEN, MILSTEIN, HAUSFELD
     & TOLL, P.L.L.C.
One Embarcadero Center
Suite 2440
San Francisco, CA 94111

Steve W. Berman
Anthony D. Shapiro
Erin K. Flory
Steve W. Fimmel
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Guido Saveri
R. Alexander Saveri
Lisa Saveri
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111

Craig Corbitt
Judith A. Zahid
ZELLE, HOFMANN, VOELBEL, MASON
     & GETTE LLP
44 Montgomery St., Suite 3400
San Francisco, CA 94104

## Index

Tab #

*Hopkins v. De Beers Centenary AG*, No. CGC04-432954, Order Certifying Plaintiff Class (Cal. Super. Ct. Apr. 18, 2005) ........................................................... 1

*In re Mass. Smokeless Tobacco Litig.*, No. 03-5038 BLS, Memorandum and Order (Suffolk Cty. Super. Ct. Dec. 7, 2004) ......................................................... 2

*Feuerabend v. UST, Inc.*, No. 2002CV007124, Decision and Order Granting Plaintiff's Motion for Class Certification (Wis. Cir. Ct. May 10, 2004).............. 3

*Smokeless Tobacco Cases I-IV*, J.C.C.P. Nos. 4250, 4258, 4259 & 4262, Order Granting Motion for Class Certification (Cal. Super. Ct. Jan. 29, 2004) ........... 4

*Chance v. United States Tobacco Co.,* No. 02-C-12, Journal Entry (Kan. Dist. Ct. July 29, 2003). .................................................................................. 5

*In re Automotive Refinishing Paint Cases*, J.C.C.P. No. 4199, Order Granting Motion of Plaintiffs for Class Certification (Cal. Super. Ct. Jun. 17, 2004) ....... 6

*Charles I. Friedman, P.C. v. Microsoft Corp.*, No. CV2000-000722, Minute Entry (Ariz. Super. Ct. Nov. 15, 2000) ......................................................... 7

*Microsoft I-V Cases*, J.C.C.P. No. 4106, 2000-2 Trade Cas. ¶ 73,013 (Cal. Super. Ct. Aug. 29, 2000);.......................................................................... 8

*In re N.M. Indirect Purchasers Microsoft Corp. Antitrust Litig.*, No. D-0101-CV-2000-1697, Decision and Order on Motion for Class Certification (N.M. Dist. Ct. Oct. 2, 2002) .................................................... 9

*Sherwood v. Microsoft Corp.*, No. 99C-3562, Memorandum and Order (Tenn. Cir. Ct. Dec. 20, 2002.............................................................................. 10

*Pharmaceutical Cases I, II, and III*, J.C.C.P. Nos. 2969, 2971 & 2972, Order Certifying Consumer Class (Cal. Super. Ct. Aug. 16, 1995).......................... 11

Darrell Dunn, *The PC Replacement Decision*, InformationWeek (June 20, 2005) ....... 12

*In re Wells Fargo Overtime Pay Litig.*, MDL No. 06-1770, Mem. & Order Re: Nationwide Plaintiffs' Motion to Certify a Class and Collective Action, (N.D. Cal. Oct. 18, 2007) ...................................................................... 13

*In re Lorazepam & Clorazepate Antitrust Litig.*, Misc. No. 99mc0276, Jury Instructions (D.D.C.) ............................................................................. 14

*Friedman v. Microsoft Corp.*, No. CV-2000-000722, Minute Entry (Az. Dist. Ct., Maricopa Cty., Nov. 15, 2000)................................................................. 15

*In re Scrap Metal Antitrust Litigation*, No. 06-4511, Slip. Op. (6th Cir. May 15, 2008) ............................................................................................................ 16

*Kristensen v. Great Spring Waters of America,* No. 302774, Order (Cal. Super. Ct., San Francisco Cty., June 29, 2003),.......................................................... 17

*Lethbridge v. Johnson & Johnson,* No. B105754 (Cal. Ct. App., 2d App. Dist., Nov. 10, 1997) ............................................................................................... 18

*Aguilar v. Atlantic Richfield Corp.,* 1998-1 Trade Cas. (CCH) ¶72,080 at 81,496-97 (Cal. Super. Ct., San Diego Cty., May 1, 1997) ............................. 19

*Pharmaceutical Cases I, II, and III,* J.C.C.P. Nos. 2969, 2971 & 2972, Orders (Cal. Super. Ct., San Francisco Cty., June 23 & Aug. 16, 1995) .................... 20

*In re Reformulated Gasoline (RFG) Antitrust & Patent Litig.,* No. CV-05-01671 Order Granting Plaintiffs' Motion for Class Certification (VBKx) (C.D. Cal. March 27, 2007) ...................................................................................... 21

*Anderson Contr., Inc. v. Bayer AG*, No. CL 95959, Ruling on Plaintiff's Motion for Class Certification (Ia. Dist. Ct., Polk Cty., March 16, 2007)...................... 22

*Premier Pork, Inc. v. Rhone Poulenc, S.A.*, No. 00 C 3, Memorandum Decision (Kan. Dist. Ct. May 1, 2004) ........................................................................ 23

*Todd v. F. Hoffman- La Roche, Ltd.,* No. 98-C-4574, Journal Entry (Kan. Dist. Ct. March 3, 2006) ............................................................................................. 24

*Smith v. Philip Morris Cos., Inc.,* No. 00-CV-26, Order (Kan. Dist. Ct. Nov. 15, 2001) ................................................................................................. 25

*Donelan v. Abbott Labs., Inc.* No. 94-C-709, Order (Kan. Dist. Ct., Sedgwick Cty., Nov. 3, 1995) ........................................................................................ 26

*In re Massachusetts Smokeless Tobacco Litig.*, No. 03-3038 BLS, Memorandum and Order (Mass. Super. Ct., Suffolk Cty., Dec. 7, 2004) ............................... 27

*Hagemann v. Abbott Labs., Inc.*, No. 94-221 Order Granting Class Certification (S.D. Cir. Ct., Hughes Cty., Nov. 21, 1995),.................................................... 28

*Capp v. Microsoft Corp.,* No. 00-CV-0637, Order Certifying Class Action (Wis. Cir. Ct., Dane Cty., July 25, 2001) ...................................................................... 29

*Carlson v. Abbott Labs., Inc.,* No. 94 CV 002608, Order (Wis. Cir. Ct., Milwaukee Cty., March 23, 1995) ............................................................... 30

Tab 1

COPY

1  William Bernstein (State Bar No. 065200)
   Joseph R. Saveri (State Bar No. 130064)
2  Eric B. Fastiff (State Bar No. 182260)
   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
3  Embarcadero Center West
   275 Battery Street, 30th Floor
4  San Francisco, CA 94111-3339
   Telephone:  (415) 956-1000
5  Facsimile:  (415) 956-1008

6  Attorneys for Individual and Representative Plaintiff



ENDORSED
FILED
San Francisco County Superior Court

APR 18 2005

GORDON PARK-LI, Clerk
BY: ANDREA CARNEY
Deputy Clerk

7

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   COUNTY OF SAN FRANCISCO

10

11  THOMAS G. HOPKINS, on behalf of          Case No.  CGC-04-432954
    himself and all others similarly situated,
12                                           **CLASS ACTION**
                   Plaintiffs,
13                                           [PROPOSED] ORDER CERTIFYING
    v.                                       PLAINTIFF CLASS
14
    DE BEERS CENTENARY AG, DB                Dept.:  304
15  INVESTMENTS, INC., DE BEERS S.A.,        Judge:  The Honorable Richard A. Kramer
    DB BEERS CONSOLIDATED MINES,
16  LTD., CSO VALUATIONS, and DOES 1-
    200,
17
                   Defendants.
18

19

20          Plaintiff Thomas G. Hopkins ("Representative Plaintiff") filed a motion for

21  certification of an opt-out Plaintiff Class defined as:

22          All natural persons, who are residents of the State of California and
            who were California residents at the time of purchase, who
23          purchased one or more diamonds in the State of California from
            January 1, 1994 to December 31, 2004 (the "class period").
24          Excluded from the class are persons who have a California resale
            certificate and/or a seller's permit and resold diamonds during the
25          class period; persons who bought diamonds directly from De Beers
            Centenary AG, DB Investments, Inc., De Beers S.A., De Beers
26          Consolidated Mines, Ltd., and CSO Valuations ("Defendants"); the
            Defendants; their parents, predecessors, successors, subsidiaries,
27          units, divisions, employees, officers, and co-conspirators;
28

423488.2                               - 1 -

                  [PROPOSED] ORDER CERTIFYING PLAINTIFF CLASS

                                                    EXHIBIT A

1    government entities; and any and all judges and justices (and members of their immediate families) assigned to hear any aspect
2    of this case.

3    　　On April 12, 2005, the Court heard argument on Plaintiff's Motion. Eric B.

4    Fastiff, of the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP, appeared as counsel on

5    behalf of the Plaintiff. Defendants have not appeared, and were not represented at the hearing.

6    The Court has reviewed the evidence in light of the argument of counsel and the applicable law.

7    The Court rules as follows:

8    　　The Motion of Plaintiffs for Class Certification is Granted. (Code of Civ. Proc.

9    § 382; *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429.)

10    　　Representative Plaintiff alleges that Defendants entered into a classic trust to

11    monopolize the market for diamonds sold throughout the entire United States, including

12    California, and to restrain competition and increase the prices of diamonds to supra-competitive

13    levels. Plaintiff seeks compensatory damages and injunctive relief in the form of disgorgement or

14    restitution.

15    　　Plaintiff asserts four causes of action in his Complaint: (1) violation of the

16    Cartwright Act, Bus. & Prof. Code, §§ 16720, *et seq.* ("Cartwright Act"); (2) violation of the

17    Unfair Competition Law ("UCL"), Bus. & Prof. Code, §§ 17200, *et seq.* ("17200"); (3) common

18    law monopolization; and (4) common law attempted monopolization. Plaintiff Thomas G.

19    Hopkins asserts each of these four causes of action on behalf of the proposed class.

20    　　Courts have recognized the propriety of class certification of such claims. (*See In*

21    *re Cipro Cases I and II* (2004) 121 Cal.App.4th 402, 410-414 (affirming class certification of

22    indirect purchaser Cartwright Act, Unfair Competition Act, and common law monopolization

23    claims); *B.W.I. Custom Kitchen v. Owens-Illinois, Inc.* (1987) 191 Cal.App.3d 1341 (reversing

24    denial of class certification of Cartwright Act claims based on allegations that defendant engaged

25    in horizontal restraints); *Mass. Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th

26    1282 (affirming class certification of consumer fraud claims brought pursuant to § 17200 based

27    on defendant's concealment of material information).)

28

423488.2                                     - 2 -

1    There is a readily ascertainable class of consumers who purchased diamonds

2    during the Class period, and a well-defined community of interest among all members of the

3    Class. Accordingly, the Class satisfies the prerequisites for certification under the Code of Civil

4    Procedure § 382, and Plaintiff's motion shall be granted.

5    **LEGAL STANDARD**

6    Section 382 of the Code of Civil Procedure provides: "when the question is one of

7    a common or general interest, of many persons, or when the parties are numerous, and it is

8    impracticable to bring them all before the court, one or more may sue or defend for the benefit of

9    all." Code Civ. Proc. § 382. Class certification is appropriate under section 382 where there is an

10   ascertainable class and a well-defined community of interest. (*Linder*, 23 Cal.4th at 435.) "The

11   community of interest requirement involves three factors: '(1) predominant common questions of

12   law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class

13   representatives who can adequately represent the class.'" (*Id.* (quoting *Richmond v. Dart Indus.,*

14   *Inc.* (1981) 29 Cal.3d 462, 470); *see also Mass. Mutual,* 97 Cal.App.4th at 1287.)

15   California law and policy favor the fullest and most flexible use of the class action

16   device. (*Richmond*, 29 Cal.3d at 469-473.) This is particularly true in the field of consumer

17   protection litigation. (*La Sala v. American Sav. & L. Assn.* (1971) 5 Cal.3d 864, 877; *Vasquez v.*

18   *Superior Court* (1971) 4 Cal.3d 800, 807-809.) The California Supreme Court directed the courts

19   of this state to use the class action device to fashion "'an effective and inclusive group remedy,'"

20   *Vasquez*, 4 Cal.3d at 807 (quoting Kalven and Rosenfeld, *Function of Class Suit*, 8 U. Chi. L.Rev.

21   684, 686 (1941)), where "numerous consumers are exposed to the same dubious practice by the

22   same sellers so that proof of the prevalence of the practice as to one consumer would provide

23   proof for all." (*Vasquez*, 4 Cal.3d at 808.) Any doubt as to the appropriateness of class treatment

24   should be resolved in favor of class certification, subject to later modification if necessary.

25   (*Richmond*, 29 Cal.3d at 473-75.) Finally, the court may not consider the merits of Plaintiff's

26   claims at the certification stage. (*Linder*, 23 Cal.4th at 443.)

27

28

1   <u>**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON CERTIFICATION**</u>

2           The Court finds the requirements of Section 382 are satisfied by the circumstances

3   of the instant action.  Specifically, the allegations of Plaintiff's operative complaint present

4   common questions of law and fact, the parties are numerous, and it is impracticable to bring them

5   all before the Court.  In addition, the Court finds the nature of the action infers class-wide

6   evidence of impact or actual injury. (*Cipro,* 121 Cal.App.4th 402; *B.W.I. Custom Kitchen,*

7   191 Cal.App.3d 1341; *Rosack v. Volvo of America Corp.* (1982) 131 Cal.App.3d 741, *cert. den.*

8   (1983) 460 U.S. 1012.)  The presence of individual damage issues cannot bar class certification.

9   (*Cipro,* 121 Cal.App.4th at 417; *B.W.I. Custom Kitchen,* 191 Cal.App.3d at 1354.)

10          The Court is satisfied that Plaintiff has established all of the prerequisites for class

11  certification under California law.  It is inappropriate to address the legal and factual merits of

12  Plaintiff's claims. "[T]he question of certification [i]s essentially a procedural one that does not

13  ask whether an action is legally or factually meritorious." (*Linder,* 23 Cal.4th at 439-40.)

14          <u>Ascertainability and Numerosity</u>

15          Whether a class is ascertainable is determined by examining:  (1) the class

16  definition; (2) the size of the class; and (3) the means available for identifying class members.

17  (*Vasquez,* 4 Cal.3d at 821-22; *Reyes v. Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1271.)

18  An ascertainable class requires only that the right of each individual to recover may not be based

19  on a separate set of facts applicable only to them.  (*Vasquez,* 4 Cal.3d at 809.)  As the California

20  Supreme Court explained: "If the existence of an ascertainable class has been shown, there is no

21  need to identify its individual members in order to bind all members by the judgment.  The fact

22  that the class members are unidentifiable at this point will not preclude a complete determination

23  of the issues affecting the class." (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 706.)

24          Here, the Class is composed of an easily ascertainable, self-identifying set of

25  individuals who purchased diamonds.  Class members can be ascertained (and can identify

26  themselves) based upon the purchase of diamonds during the Class period.  The Class satisfies the

27  ascertainability requirement.

28

423488.2                          **- 4 -**

1    Both section 382 and Federal Rule 23(a)(1) require that the individual joinder of

2 all plaintiffs be impracticable. "[A]s few as 40 class members should raise a presumption that

3 joinder is impracticable." (1 *Newberg on Class Actions* § 3.5 at 247 (4th ed. 2002).) Diamonds

4 are the most popular precious stone. Diamonds, of course, are the traditional stone used in

5 engagement rings. Virtually half of every adult California couple has purchased a diamond, a

6 number totaling over a million. At the same time, the class is not so numerous as to pose

7 manageability problems and is well within the range of many other classes that have previously

8 been certified. (*See Clothesrigger*, 191 Cal.App.3d at 618 ("[T]he mere size of the proposed class

9 numbering over a million persons does not make a nationwide class action unmanageable"), and

10 cases cited in footnote 7, *infra*.) The numerosity requirement is satisfied.

11    <u>Community of Interest</u>

12    In order to sustain a class action, there must also be a "well defined community of

13 interest in the questions of law and fact involved." (*Daar*, 67 Cal.2d at 704.)

14    To establish a community of interest, three factors must be shown:
15 "(1) predominate common questions of law or fact; (2) class
   representatives with claims or defenses typical the class; and
16 (3) class representatives who can adequately represent the class."

17 (*Cipro*, 121 Cal.App.4th at 410 (quoting *Richmond*, 29 Cal.3d at 470).)

18    Claims can be brought on behalf of a class where they arise from the same set of

19 facts. (*Richmond*, 29 Cal.3d at 470.) Although common questions of law or fact must

20 predominate, the law does not require plaintiffs to prove the complete absence of individual

21 issues. (*Daar*, 67 Cal.2d at 709.) "Common issues may predominate when liability can be

22 determined on a classwide basis, even when there are some individualized damage issues."

23 (2 *Newberg*, § 4.25 at 159.) At this juncture, Plaintiff need only show that the common issues

24 involved in proving these elements on a classwide basis predominate over any individual ones.

25 Plaintiff meets this requirement as to the Cartwright Act, common law, and UCL causes of action.

26    <u>Predominance of Common Issues</u>

27    With respect to Plaintiff's Cartwright Act claim, Plaintiff alleges that all Class

28 members paid supra-competitive prices for diamonds as a direct and proximate result of the De

423488.2                                    - 5 -

1   Beers defendants' alleged combination and trust to restrain trade and monopolize the market.

2   When a horizontal market allocation agreement or illegal monopoly has been alleged, common

3   questions predominate over any questions affecting only individual class members. (*See Cipro*,

4   121 Cal.App.4th at 411; *B.W.I. Custom Kitchen*, 191 Cal.App.3d at 1349 ("It seems more likely

5   that the evidence proving the existence of a conspiracy will concentrate upon the relationship

6   among the alleged conspirators and the scope of the conspiracy without regard to the business

7   relationship between the conspirators and any individual class member."); *Rosack*,

8   131 Cal.App.3d at 752 (1982) ("The existence of the . . . conspiracy is the predominant common

9   issue determinative of liability to all class members.".)

10          In *B.W.I. Custom Kitchen*, the Court of Appeal on a writ petition reversed the trial

11   court's denial of class certification and ordered it to certify the class. In so ordering, the Court

12   acknowledged the legion of cases certifying cases alleging horizontal agreements as class actions.

13   (191 Cal.App.3d at 1348-49; *see also Cipro*, 121 Cal.App.4th at 411; *Rosack*, 131 Cal.App.3d at

14   752; *Classen v. Weller* (1983) 145 Cal.App.3d 27, 47; *In re NASDAQ Market-Makers Antitrust*

15   *Litig.* (S.D.N.Y. 1996) 169 F.R.D. 493, 518 ("Since a single conspiracy is alleged, the relevant

16   proof of this will not vary among class members, and clearly presents a common question

17   fundamental to all class members."); *In re Brand Name Prescription Drugs Antitrust Litig.* (N.D.

18   Ill. Nov. 18, 1994) 1994 WL 663590, at *3 ("As we see it, the factual variations in plaintiffs'

19   methods of business operation does not dilute the typicality of their common claim of a

20   conspiracy to fix, and/or stabilize the price of brand-name prescription drugs in violation of

21   antitrust laws.").)

22          State and federal court alike have recognized that common issues
23          usually predominate in cases where the defendants are alleged to
            have engaged in collusive, anti-competitive conduct resulting in
24          artificially high market-wide prices for a product. In such cases, the
            existence of the conspiracy and its legality generally present
25          common questions of law and fact that are predominate over any
            questions affecting only individual class members.

26   (*Cipro*, 121 Cal.App.4th at 411 (citing cases).) That is exactly what Plaintiff here alleged. He

27   alleges that De Beers engaged in a collusive trust. Whether or not the trust existed and if so

28   whether it was illegal, as the *Cipro* court explained, are common questions of law and fact that

423482.2

- 6 -

1   predominate. In each of the above cases, the courts found that class members stood in identical

2   positions because of the common questions of whether there had been an illegal trust, and

3   whether prices were actually inflated as a result.

4        Similarly, fact of injury or impact may be demonstrated on a class-wide basis if the

5   common proof of conspiracy demonstrates at least some damage to the class. (*B.W.I. Custom*

6   *Kitchen*, 191 Cal.App.3d at 1350 n.7.) Where, as here, Plaintiff alleges a market-wide restraint of

7   trade, fact-of-injury is assumed for class certification purposes. Injury to plaintiffs "is ordinarily

8   a permissible assumption in cases where consumers have purchased products in an anti-

9   competitive market, even if some consumers did not actually have to pay the overcharge because

10  of their individual circumstances." (*Cipro*, 121 Cal.App.4th at 413; *see also B.W.I. Custom*

11  *Kitchen*, 191 Cal.App.3d at 1350 ("Courts have shown no hesitancy in ruling that when a

12  conspiracy to fix prices has been proven and plaintiffs have established they purchased the price-

13  fixed goods or services, the jury can *infer* plaintiffs were damaged.") (emphasis in original).)

14       That proof of impact can be shown by common proof is further demonstrated by

15  the expert Declaration of John Pisarkiewicz, Ph.D. in Support of Plaintiff's Motion for Class

16  Certification ("Pisarkiewicz Decl."). If diamonds would, but for the trust, have sold for less than

17  they did during the Class Period, all class members who would have bought diamonds were

18  injured. (*See* Pisarkiewicz Decl., ¶¶ 28-29.)

19       A defendant's monopoly power is also a common question. This requires proof of

20  the defendant's market share and sometimes also proof of barriers to entry. Such proof applies to

21  the claims of all class members. Because this inquiry focuses on the position of the seller, not

22  that of individual buyers, it "is readily susceptible to proof in a class action." *Hill v. A-T-O, Inc.*,

23  80 F.R.D. 68, 69 (E.D.N.Y. 1978). *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D.

24  12, 29 (D.D.C. 2001); (certifying Sherman Act § 2 monopolization claims arising out of

25  exclusion of generic competition); *In re Ampicillin Antitrust Litig.*, 55 F.R.D. 269, 273 (D.D.C.

26  1972) (certifying Sherman Act § 2 claims arising out of sale of ampicillin and synthetic

27  penicillin).

28

1    Common issues also predominate with respect to Plaintiff's section 17200 claim.

2    Plaintiff's fundamental allegation with respect to the section 17200 claims is that Defendants'

3    trust was anticompetitive, unfair, and violated state antitrust and the common laws, and by so

4    doing, committed unfair and unlawful acts in violation of section 17200. Proof of Defendants'

5    alleged antitrust violations will be common to all Class members, and satisfies the predominance

6    requirement. *Mass. Mutual, supra,* is instructive. There, the Court of Appeal affirmed

7    certification of a class of insurance policyholders asserting claims under section 17200 based

8    upon the insurer's failure to disclose material information regarding policy rates. The Court

9    found that plaintiffs' allegation of nondisclosure of material information presented "common

10   legal and factual issues which were plainly suitable for treatment as a class action."

11   (97 Cal.App.4th at 1292.)

12   As Plaintiff notes, at some point it will be necessary to determine the amount of

13   damages to which Class members are entitled. However, "[i]t has been repeatedly held . . . that

14   the presence of individual damage issues cannot bar certification. ... [I]n almost every class

15   action, factual determinations of damages to individual class members must be made. Still, we

16   know of no case where this has prevented a court from aiding the class to obtain its just

17   restitution. Indeed, to decertify a class on the issue of damages or restitution may well be

18   effectively to sound the death-knell of the class action device." (*B.W.I. Custom Kitchen,*

19   191 Cal.App.3d at 1354 (citations and quotations omitted); *see also Rosack,* 131 Cal.App.3d at

20   753 ("[A] jury can infer the fact of injury when a conspiracy to fix prices has been established

21   and plaintiffs have established that they purchased the affected goods or services. This inference

22   eliminates the need for each class member to prove individually the consequences of the

23   defendants' actions to him or her. Accordingly, impact can be treated as a common question for

24   certification purposes.") (citation omitted); *Wershba v. Apple Computer, Inc.* (2001)

25   91 Cal.App.4th 224, 238 ("Differences in individual class members' proof of damages is not fatal

26   to class certification.").)

27   California law does not require individualized proof of damages as a prerequisite

28   to class certification. "In a class action, the court may address any individual damages issues by

423488.2                                    - 8 -

1   devising remedial procedures to make determinations pertaining to each class member's right to

2   recovery." (*Cipro*, 121 Cal.App.4th at 417.) As the *Cipro* court held:

3       If the defendant in a class action is found liable, and there is a
        finding at trial as to the amount of class-wide damages, each class
4       member's individual entitlement to damages may be litigated in a
        non-adversary administrative claims procedure with a lowered
5       standard of proof. . . . In such a claims procedure, the allocation of
        the total sum of damages among the individual class members is an
6       internal accounting question that does not directly concern the
        defendant. . . . (quotations and citations omitted).

7

8   (*Id.*)

9           Here, if they prevail on their causes of action, Class members' damages for their

10  purchase of diamonds can be calculated on an aggregate basis. Plaintiff has submitted a

11  declaration from expert economist Dr. John Pisarkiewicz, who opined that it is possible to

12  calculate aggregate measured damages accruing to the Class through the use of class-wide

13  common data and analysis. (*See* Pisarkiewicz Decl., ¶ 30.) Dr. Pisarkiewicz's declaration

14  satisfies Plaintiff's obligations at this stage.

15          **Typicality**

16          The typicality requirement is met when the claims of the representative plaintiff

17  arises from the same course of conduct that gives rise to the claims of the other class members,

18  and where the claims are based upon a similarity of legal theories. (*See Classen*, 145 Cal.App.3d

19  at 46 ("[t]he only requirements are that common questions of law and fact *predominate* and that

20  the class representative be *similarly* situated." (emphasis in original).) It has long been

21  established that class certification under section 382 does not require simultaneous or identical

22  injuries. (*Classen*, 145 Cal.App.3d at 46.)

23          The claims of the Representative Plaintiff here are typical of the Class as a whole.

24  Plaintiff, Mr. Hopkins, like all Class members, alleges that he paid inflated prices for diamonds as

25  a result of Defendants' anti-competitive activity. Like all Class members, Mr. Hopkins alleges

26  that he suffered relatively modest, purely economic, damages as a result of the alleged

27  misconduct. Mr. Hopkins is similarly situated vis-à-vis the Class, and the typicality requirement

28  is satisfied.

### Adequacy

The adequacy of representation requirement is met by fulfilling two conditions: (1) plaintiff must be represented by counsel qualified to conduct the litigation; and (2) plaintiff's interests cannot be antagonistic to those of the class. (*McGhee v. Bank of America* (1976) 60 Cal.App.3d 442, 451.) Plaintiff here meets both of these requirements.

As to the first requirement, the Court is satisfied that Plaintiff's counsel have extensive experience in prosecuting complex antitrust class actions such as this one. Class counsel are clearly qualified, experienced, and generally able to conduct the proposed litigation. (*See* the Declaration of Eric B. Fastiff submitted in support of the class certification motion.)

Second, Plaintiff's interests are coextensive with those of the Class, as the Representative Plaintiff and each Class member alleges injury caused by De Beers in the same manner, and the Representative Plaintiff seeks relief that is identical to that which would be sought by members of the Class. In a declaration before the Court, Mr. Hopkins has demonstrated his commitment to representing the Class. Nothing more is required. (*McGhee*, 60 Cal.App.3d at 451.)

### Superiority

It is well-established that the class action device is superior to other available methods for the fair and efficient adjudication of a controversy affecting large numbers of purchasers of products or services, who have been overcharged as the result of an antitrust violation. (*Rosack*, 131 Cal.App.3d at 760-63.) The California Supreme Court recognized that, absent class treatment, similarly situated consumers with relatively small but nevertheless meritorious claims for damages would, as a practical matter, have no means of redress because of the time, effort and expense required to prosecute individual actions. "Not only do class actions offer consumers a means of recovery for modest individual damages, but such actions often produce 'several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims.'" (*Linder*, 23 Cal.4th at 445 (quoting *Vasquez*, 4 Cal.3d at 808).)

1    This action is just such a class action. Few of the present Class members could

2    afford to undertake individual litigation against De Beers to recover the damages at issue here.

3    But the failure to recover such damages is a real hardship to people of average means. If the class

4    device were unavailable here, an economic injustice would result: the Class members would, as a

5    practical matter, have no meaningful redress against De Beers, and De Beers would be unjustly

6    enriched by the revenues it obtained from its alleged misconduct. Because use of the class device

7    will allow the parties and the courts to conserve valuable resources, and because this class action

8    is perhaps the only vehicle for this Class of consumers to vindicate their legal rights, a class

9    action is the most efficient and fair means for the adjudication of this matter.

10    **ORDER**

11    Pursuant to Code of Civil Procedure § 382, the Court concludes that Plaintiff has

12    satisfied the requirements for class certification. Accordingly, the Court ORDERS:

13    1.    The following Class is certified for purposes of litigation and trial:

14    All natural persons, who are residents of the State of California and
15    who were California residents at the time of purchase, who
      purchased one or more diamonds in the State of California from
16    January 1, 1994 to December 31, 2004 (the "class period").
      Excluded from the class are persons who have a California resale
17    certificate and/or a seller's permit and resold diamonds during the
      class period; persons who bought diamonds directly from De Beers
18    Centenary AG, DB Investments, Inc., De Beers S.A., De Beers
      Consolidated Mines, Ltd., and CSO Valuations ("Defendants"); the
19    Defendants; their parents, predecessors, successors, subsidiaries,
      units, divisions, employees, officers, and co-conspirators;
20    government entities; and any and all judges and justices (and
      members of their immediate families) assigned to hear any aspect
21    of this case.

22    2.    Representative Plaintiff Thomas G. Hopkins is designated and appointed as
23
24    representative for the Class on all claims asserted on behalf of the Class.

25    3.    The following law firm is designated and appointed as Lead Class Counsel:
26    Lieff, Cabraser, Heimann & Bernstein, LLP. That firm may request the Court deem other firms
27    to serve as Co-Class Counsel.
28

423488.2                          - 11 -

1        4.     Lead Class Counsel shall submit a proposed notice plan to this Court

2    within thirty (30) days after entry of this Order.

3        For good cause shown, IT IS SO ORDERED.

4

5

6    RICHARD A. KRAMER

7    Dated: 4-15-05 _____    The Honorable Richard A. Kramer
    San Francisco Superior Court Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Tab 2**



COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 03-5038 BLS
(Judge van Gestel)

IN RE:  MASSACHUSETTS SMOKELESS
TOBACCO LITIGATION

MEMORANDUM AND ORDER
ON MOTION FOR CLASS CERTIFICATION

This matter is before the Court on a motion by the plaintiff seeking certification of a

class, (Paper #43).  The request for certification is pursuant to G.L. c. 93A.  The motion is

opposed.

The Court will take its guidance from the recent decision of the Supreme Judicial Court

("SJC") in Aspinall v. Philip Morris Companies, Inc., 442 Mass. 381 (2004).  Aspinall is a class

action brought pursuant to G.L. c. 93A against what was then called the Philip Morris

Companies, claiming that the defendants misled the public into buying "Marlboro Lights"

cigarettes believing that those cigarettes would deliver lower levels of tar and nicotine.  In fact, it

is alleged, that the defendant companies had intentionally designed the product so that most

smokers would receive as much or more tar and nicotine than if they had smoked regular

cigarettes.

In Aspinall the plaintiffs filed a motion for class certification, alleging that the market

price of Marlboro Lights was higher than it would have been had the cigarettes been honestly

advertised and, therefore, all purchasers of the product paid more because of the deception.  In

the Superior Court, a class was certified consisting of all purchasers of Marlboro Lights in

Massachusetts during the four years preceding the filing of the complaint.

Arguing that successful prosecution of the case would require proof that the alleged deceptive advertising caused each member of the class actual harm, which, in turn, would require individual proof of the smoking habits of each class member, the defendants in Aspinall convinced a Single Justice of the Appeals Court to decertify the class. Thereafter, on leave to appeal the Single Justice's decision, the SJC, *sua sponte*, transferred the case to it.

The SJC affirmed the Superior Court's order for class certification. The SJC reasoned that if the allegations in the plaintiffs' complaint are true, then there is no question that sales of Marlboro Lights occurred under circumstances that made the sales deceptive under G.L. c. 93A. The court concluded that a class action was an appropriate method (indeed, the only practical method) whereby purchasers of Marlboro Lights in Massachusetts could seek redress for the alleged deception.[1]

There is remarkable similarity between the facts in Aspinall and the facts here. The plaintiff here, and the class he seeks to represent, are Massachusetts consumers of moist snuff tobacco products in the Commonwealth. The plaintiff alleges that the defendants engaged in specific unfair methods of competition and unfair and deceptive acts, including unlawfully attempting to maintain a near monopoly over the moist snuff smokeless tobacco business. As a result of the defendants' conduct, the plaintiff, and the purported class, are alleged to have paid more for moist snuff smokeless tobacco and were denied choices for such products, including lower-priced choices, and also had product choices limited.

---

[1] Further, the SJC observed that should the plaintiffs fail in their proof that the class paid more for the product because of the deception, the class members would still be entitled to statutory compensation under G.L. c. 93A, sec. 9(3) for their injury suffered when they purchased (and smoked) a product that was not, as they were misled into believing, lower in tar and nicotine.

Having reviewed the several filings, affidavits and memoranda, and having considered the parties' oral arguments, this Court finds that the plaintiff, on behalf of the class he seeks to have certified, has provided information sufficient to enable the Court to form a reasonable judgment that: the use or employment by the defendants of the unfair or deceptive acts or practices alleged has caused similar injury to numerous other persons similarly situated; the putative class representative adequately and fairly represents such other persons; the putative class representative brings the action on behalf of himself and such other similarly injured and situated persons; and, therefore, the certification requirements are met. Aspinall, supra, 442 Mass. at 391-392. See also Weld v. GlaxoWellcome, Inc., 434 Mass. 81, 87 (2001); Baldassari v. Public Fin. Trust, 369 Mass. 33, 40 (1975).

ORDER

For the foregoing reasons, this Court certifies this case as a class action pursuant to G.L. c. 93A, and defines the class as follows:

> All similarly situated consumer purchasers residing in the Commonwealth of Massachusetts (excluding governmental entities, defendants, and subsidiaries and affiliates of defendants) who, in Massachusetts, indirectly purchased from the defendants, for their own use and not for resale, moist snuff tobacco products between January 1, 1990 and the present and were overcharged or otherwise suffered similar injury as a result of the defendants' unfair methods of competition and unfair and deceptive acts and practices.

Allan van Gestel
Justice of the Superior Court

DATED:       December 7, 2004

3

**Tab 3**

1391

RECEIVED

MAY 1 1 2004
9972
THE FURTH FIRM LLP
MILWAUKEE COUNTY

STATE OF WISCONSIN    :    CIRCUIT COURT    :

- - - - - - - - - - - - - - - - - - - - - - - - - -

JASON FEUERABEND, a Wisconsin resident,
on behalf of himself and all others similarly situated,

          Plaintiff,

    vs.                    Case No. 2002CV007124

UST, INC., U. S. SMOKELESS TOBACCO
BRANDS INC., U.S. SMOKELESS TOBACCO
CO., U.S. SMOKELESS TOBACCO
MANUFACTURING LIMITED PARTNERSHIP,
and DOES 1-20, inclusive,

          Defendants.



FILED

06  MAY 1 0 2004  06

JOHN BARRETT
Clerk of Circuit Court

- - - - - - - - - - - - - - - - - - - - - - - - - -

## DECISION AND ORDER GRANTING PLAINTIFF'S MOTION
## FOR CLASS CERTIFICATION

- - - - - - - - - - - - - - - - - - - - - - - - - -

          Plaintiff is a consumer of smokeless chewing tobacco. Defendant is the

largest manufacturer of smokeless chewing tobacco in the United States. Plaintiff claims

Defendant is engaged in monopolistic, anticompetitive practices violating Wis. Stat. §

133.03(2) causing plaintiff to incur higher prices for smokeless chewing tobacco

purchased in Wisconsin. In this motion Plaintiff seeks to certify a class of consumers.

The proposed class that plaintiff wishes certified is defined as:

> "All persons who purchased defendant's moist snuff smokeless
> tobacco products in Wisconsin for personal use and not for resale
> from January 1990 to the date of certification."

This court finds that the three principal requirements for class certification have

been met, namely; 1) Common interest shared by all members of the class; 2) Named

parties fairly representing the class, and 3) the impracticality of joinder of all class

members. Additionally, the court has determined that the proposed class would be manageable because the plaintiff has offered through his expert, Dr. Kamien, a reasonable methodology of common proof of causation and damages for the class. Accordingly, this court grants certification to this class.

## FACTUAL BACKGROUND

This court has previously granted part of plaintiff's partial summary judgment motion precluding relitigation of some of the liability issues based on the decision of the federal district court in Kentucky in *Conwood Co. L.P., et.al. v. United States Tobacco Co, et. al.,* 290 F.3rd 768 (6th Cir. 2002) *Cert. Denied* 537 US 1148. In the *Conwood* case, a jury found that UST engaged in monopolistic practices violating the Sherman Act causing damages to plaintiff, a competitor manufacturer. In this case, the consumer plaintiff sought summary judgment on the liability verdicts of the *Conwood* jury. This Court partially granted plaintiff's summary judgment motion and ruled on September 9, 2003, that:

1. The relevant market is all moist snuff brands sold in the United States.

2. UST possessed monopolistic power in the relevant market for the time period 1990 through 1997.

3. UST willfully maintained its monopolistic power through exclusionary or restrictive conduct.

In the Court's September 9 ruling, the Court found that plaintiff still needed to prove:

1. That UST's monopolistic practices between 1990 and 1997 had a significant impact on trade in Wisconsin; and

2

2. For the time period 1998 through the present, plaintiff was put to their proof on all issues; and

3. That the anticompetitive practices actually caused plaintiff injury; and

4. The amount of damages.

Subsequent to the Court's September 9, 2003, ruling, plaintiffs filed a motion for class certification. The parties have briefed it including numerous exhibits and compendia of cases. They have presented oral argument to the Court on 5/4/04 and have each filed short letter briefs on 5/5/04 and 5/6/04 which the court has considered. Courts in Kansas and California have granted class certification in indirect purchaser cases against UST involving the same conduct at issue in this case. *Smokeless Tobacco Cases I – IV,* J.C.C.P. No. 4250, 4258, 4259 & 4262 (Cal. Sup. Ct. Dec. 9 2003); *Chance v. USTCo.* Case No. 02-C-12 (Kan. District Ct July 29, 2003).

## CLASS ACTION LAW IN WISCONSIN

Wis. Stat.§ 03.08 permits certification of a class of plaintiffs in Wisconsin. It states that when a question is of a common or general interest, or when the parties are very numerous, and it may be impractical to bring them all together, one or more may sue for the whole. There are three principal requirements for class certification:

1. Common or general interest shared by all members of the class.

2. Named parties must fairly represent the interests involved.

3. It is impractical to bring all the parties before the court. *(See Schlosser v. Allis-Chalmers*, 65 Wis.2d 153 (1974); *Cruz v. All Saints*, 242 Wis.2d 432 (CA. 2001).

3

The first principal requirement for class certification is the common interest. The test is whether all members desire the same outcome of the lawsuit. *(Mercury Records v. Economic Consultants,* 91 Wis.2d 482 (1979). It is not necessary that the position of each member of the class be identical, just that there is a community of interest *(K-S Pharmacies v. Abbott Labs,* 1996 WL 33323859 (Wis. Cir. Ct. May 17, 1996) (Dane County). In this case, the named consumer plaintiff seeks a determination that UST's monopolistic practices violated Wisconsin's antitrust law causing him to be overcharged by the defendant. The proposed members of the class, all being consumer purchasers, desire the same outcome. Accordingly, the Court finds there is a commonality of interest among the members of the proposed class in this case.

The second principal requirement for class certification is representation. The test here is whether plaintiff's or counsel's interests are antagonistic to those of the absent class members and whether plaintiff's counsel is qualified, experienced, and able to conduct litigation *(Cruz).* In this case there is no antagonistic interest between the named plaintiff and the proposed class, and counsel for plaintiff is ably qualified and experienced to conduct the litigation. Accordingly, the Court finds this second requirement has been satisfied in this case.

The third principal requirement for class certification is that joinder of all of the members of the proposed class would be impractical. Plaintiff's brief states in one place that there may be tens of thousands of class members and in another place, possibly hundreds of thousands. Joinder of that number of plaintiffs would be impractical. To permit plaintiff to present the proposed class members' case in one action would be efficient and desirable provided that it's manageable. As to the third requirement, this

Court finds that joinder would be impractical, and, accordingly, class certification is warranted on this third requirement.

## MANAGEABILITY

The most difficult question in this case is whether certification of a class of this size will be manageable for this trial court in Milwaukee County, Wisconsin. Wisconsin law requires a trial court to determine whether the benefits of class certification outweigh the burdens *(Cruz)*. The question is whether common issues predominate over separate issues and can be presented in a manageable way *(Schlosser)*. Assuming the Court finds the three principal requirements have been met, the Court is to balance the public interest in certification against the problems of efficient case management. The Court is to begin with the presumption that it is in the public's interest to certify if the three requirements above have been satisfied. In this case the Court has found the three are satisfied and so begins with a presumption in favor of certification.

The court next turns to the issue of manageability. In order to calculate manageability, this Court needs to look at what plaintiff needs to prove in the case and his proposed methods of proof. If plaintiff can prove his case with common proof, then the class can be deemed manageable and be certified. At the trial in this case plaintiffs will have to establish for the time period 1990 through 2004: 1) Defendants violated Wis. Stat. §133.03(2); 2) causation and 3) the amount of damages. In proving a violation of Wis. Stat. § 133.03(2), plaintiffs have some assistance already in the Court's issue preclusion order of 9/9/03. But that only eliminates some liability matters from proof for the time period 1990 – 1997. Plaintiffs will still have substantial liability issues to prove.

The Court finds that because plaintiff's proof of defendants' violations of Wis. Stat. §133.03(2) focuses on the defendant's actions, it can be addressed with evidence common to the whole class of plaintiffs.

The harder question is whether common proof is authorized by Wisconsin law and available on the questions of causation and amount of damages. Given the size of this proposed class, only if: 1) common proof of causation and damages is available; and, 2) Wisconsin law does not require individualized amount of damages hearings, is this class action manageable. There is no question that a class of this size would be unmanageable if individualized causation and amount of damage hearings were required for each class member.

## PLAINTIFF'S MANAGEABILITY BURDEN GENERALLY

Plaintiff has the burden of showing that he has reasonable common proof for the trial in this matter that: 1) UST's anti-competitive practices caused injury to the whole class and 2) of the amount of damages to the class. He proposes to do this both through the testimony of his expert economist, Dr. Kamien. For this class certification motion Plaintiff has offered Dr. Kamien's Declaration, his trial testimony in the *Conwood* trial and his depositions. The Court must analyze Dr. Kamien's proposed testimony as it would an offer of proof. Plaintiff is not required to prove the case at this point. However, plaintiff must show that he has the *means to prove it* (*Derzon v Appleton Papers Inc., et. al.* 1998 WL 1031504 (Cir Ct 1998).

Relying on *Derzon* the defendants argue here that the class is unmanageable. In *Derzon*, Judge John Franke in Milwaukee County Circuit Court found that the proposed class of three different subgroups of plaintiffs would be unmanageable

and denied certification. However, the named plaintiff, a lawyer, presented no expert at all, but only promised to name one who would later offer some unspecified testimony on causation and damages. Judge Franke, quite properly found that that offer of proof failed to present a reasonable methodology of common proof and thus declined to certify that class.

In some states the courts have held the test of whether plaintiff has shown the a reasonable methodology of common proof is that the evidence must be not so insubstantial that it amounts to no method at all. *In Re Potash Antitrust Litigation,* 159 F.R.D. 682 (D. Minn 1995); *In Re South Dakota Microsoft Antitrust Litigation,* 657 N W. 2d 668 (SD 2003). Another test has been expressed as one which a reasonable fact finder would accept. *Bellinder  v. Microsoft Corp,* 2001 WL 1397995 (Kan Dist Ct 2001). Other cases hold that the court must weigh the offer of proof by a "rigorous analysis" test. Despite these slight differences, the cases are in agreement that it is inappropriate to decide the winner of the battle of the experts at the certification motion stage.

"The question at this stage is not whether the plaintiff will be able to carry their burden of proving that their experts analysis are reliable, but whether it appears that the differences between the experts can be intelligently presented and evaluated within the framework of a class action." *In Re NASDAQ Market-Maker Antitrust Litigation,* 169 F.R.D. 493 (S.D.N.Y. 1996)

This court believes the appropriate test is whether there's a sound basis in fact, after a rigorous analysis of the expert's testimony, to determine whether plaintiff has presented a reasonable methodology for determining impact and amount of damages.

## PLAINTIFF'S OFFER OF PROOF ON CAUSATION

Dr. Kamien's credentials show him to be a recognized expert economist. He was the recognized expert in the *Conwood* trial in federal district court in Kentucky and has testified in other UST smokeless tobacco litigation in California and Kansas. He relied on UST's own inner memos and testimony and included them in his depositions, testimony and declaration.

Dr. Kamien found, based on his study and review of UST's records for the Conwood trial, that UST's rack and tray practices preserved their monopolistic market share in an anti-competitive way. This is the conclusion the *Conwood* jury reached as well. These practices in turn caused an overcharge in the price of a can of snuff. He found that UST's list prices were uniform nationally, based on their own records. Therefore, he concluded that the entire class of consumers sustained injury in the form of the overcharge that was due solely to the anti-competitive practices. This is the common evidence that the plaintiff proposes for his burden of proving that UST's anti-competitive practices caused injury or impact to the class.

Having determined that UST's anti-competitive practices caused an overcharge in the list price, Dr. Kamien next offered testimony that the overcharge was embedded in the ultimate price for consumers and was therefore passed-on to class of consumers. Despite the intervention of distributors and retailers between the manufacturer's list price and the ultimate purchase by consumers, Dr. Kamien's opinion is that the overcharge is embedded in the price and unaffected by subsequent discounts or add-ons to the ultimate retail price. He based this on: 1) general theory (no retailer sells below cost); 2) Wisconsin law, (no retailer is permitted to sell below cost); 3) UST's data

reporting that all manufacturer list prices were passed onto retail;[1] 4) Dr. Burris'

Declaration, chart at Ex. 11 showing no wholesaler or retailer ever sold any of USTC'

moist snuff products below cost; and 5) his own study of UST practices in preparation for

the *Conwood* trial.

       While the defense does not attack Dr. Kamien's credentials and experience

and acknowledges his role as an expert in the *Conwood* trial as well as the snuff

consumer class actions brought in California and Kansas similar to this action, they do

attack his methodology. Generally the defense attacks his overcharge theory on the fact

that they claim it is based on assumption and conjecture only. He assumes that he can

calculate the amount of overcharge embedded in the list price and assumes it is

embedded, even though he did not empirical studies to test his theory. The defense

expert, Dr. Burtis did empirical studies for a brief window of the time involved in this

case and reached a contrary conclusion on embedding and pass-on. As to Dr. Kamien's

pass-on theory, the defense strongly attacks this and asserts the need for individualized

testimony from the 5,000 retailers and 25 distributors in Wisconsin as to what prices they

imposed.

## PLAINTIFF'S OFFER OF PROOF ON

## AMOUNT OF INJURY

       Dr. Kamien's testimony was that he then calculated the amount of the

overcharge by the method of benchmarks. Because UST never had a time period of non-

monopolistic market share, he was unable to use the benchmark of UST's own

---

[1] E.g. UST's letter of May 25, 1995 from Bob Novack to Mike Miceli stating that for the time period 6/29/92 to 5/25/95 all UST price increases had been passed along to "full impact at retail" within 12 weeks Exhibit AA to Affidavit of Jonathan Watkins attached to Plaintiff's Reply Brief)

competitive pricing. But he did use other industries for benchmarks, namely the cigarette industry and copier industry. While he did not fully explain the reasons that he chose these industries for comparison purposes, he did fully explain the methodology he used.

Dr. Kamien, using a "but for" test, compared the defendant's actual gross profit margins and their relationship to list price to the benchmark industry's gross profit margins and their relationship to list price. By using that ratio, he calculated the amount of overcharge. Additionally, in the *Conwood* trial he did a regression analysis on the amount of overcharge.

The defense challenges the use of benchmarks altogether, as opposed to actual empirical studies. Additionally the defense challenges the suitability of the benchmarks chosen. And the defense most strenuously objects to Dr. Kamien's opinion of the embedded overcharge being passed-on to consumers through the chain of distributors and retailers. The defense points out the Dr. Kamien's proposed testimony makes no distinctions for geographic differences and time of sale differences.

### DR. KAMIEN'S PROPOSED TESIMONY PRESENTS A REASONABLE METHODOLOGY FOR PROVING CAUSATION AND AMOUNT OF DAMAGE

The Court finds that the plaintiff's offer of proof through the testimony of Dr. Kamien presents a reasonable methodology of common proof of causation and amount of damages. This is not the same as determining that plaintiff has won the battle of the experts. The defense has certainly presented arguments in this record rebutting and undercutting some of Dr. Kamien's testimony. But that's for the trier of fact to weigh and

decide. Dr. Kamien is an admitted expert in his field, other courts have recognized him as such on these very issues, and he's articulated opinions and given the bases for his opinions. The defense will have a full opportunity to attack and impeach his testimony in discovery and at trial. The jury may or may not buy his opinions. But this court cannot state on this record that his opinions lack a proper basis. They are not insubstantial. His methodology is at least, reasonable.

As to the defense's specific attacks on his proposed methodology, the court finds that his proposed testimony is not just based on assumptions and theory. This court has read his *Conwood* trial testimony, his depositions and his Certification. Despite a defense argument to the contrary, he has relied on actual studies of the UST industry. He's specifically noted his reliance on UST's own internal data and memoranda. He's supported his theoretical statements with facts.

And as to his use of benchmarks, this court finds that theoretical comparisons are a proper method of calculating unknowns. The benchmarks chosen can be attacked by the defense as to their suitability. But they are no so facially disparate from the snuff tobacco industry as to be unreasonable.

And as to pass-ons of improper overcharge through distributors and retailers, Dr. Kamien's proposed testimony is at least reasonable. If his factual premises of uniform national list prices and method of calculating the improper overcharge hold up in the jury's eyes, then a reasonable jury may find that the actions of the distributors and retailers did not affect the overcharge and it was passed-on to the consumer.

It is true that Dr. Kamien's methodology does not analyze precise sales data at different geographical location within the state of Wisconsin. Nor does it examine retailer

and distributor price differences. But that's because his methodological premise is that the overcharge is embedded and the list prices uniform nationally. Hence the differences are not significant. This is a reasonable methodology and can be attacked by the defense expert at trial.

Additionally, Dr. Kamien does not specifically break down the amount of overcharge by year. However, the methodology expressed by Dr. Kamien could certainly be adapted to provide an annual breakdown of the amount of overcharge to create a more wieldy method of determining damages the individual plaintiffs may be entitled to later.

### WISCONSIN LAW DOES NOT REQUIRE THAT THE JURY DETERMINE EACH CLASS MEMBER'S INDIVIDUALIZED DAMAGE AMOUNT

Besides attacking the methodology used by Dr. Kamien, the defense asserts that under Wisconsin law the jury must determine each class member's individual damage amount. Defense counsel articulates this question this way in their 5/5/04 letter brief:

> "The question is not whether Wisconsin law requires a jury trial on the damage claim of each individual consumer. The question is whether Wisconsin law permits a jury to award a lump-sum damage to a class, when the evidence shows that each class member was not injured in a uniform amount.

First of all, this court has found herein that Dr. Kamien's proposed testimony presents a reasonable methodology of proving that each class member was injured in a uniform amount. We don't have the jury instructions worked out at this stage of the proceedings. At this juncture, reasonable proposed evidence is the only test. Now, if at trial, the defense impeaches Dr. Kamien and the record no longer supports certification or the jury isn't persuaded that the class was injured in a uniform amount,

the Court will deal with that either through motions at trial, motions after verdicts or motion for decertification.

Secondly, Wisconsin law does not require a jury trial on the damage claim of each individual consumer. Perhaps the defense is conceding this point above. But in earlier argument, this court thought the defense was asserting that Wis. Stat. 805.09 (Wisconsin's 5/6ths verdict rule) was an impediment to class resolution of the amount of damages. Plaintiff had argued that the jury would be asked to find the aggregate amount of damages for the class and then an administrative claims process would be established to divide the aggregate damages up among the class members.

Wis. Stat. 805.09 was part of the Civil Procedure Revision started in 1973 and passed by the Legislature in 1975, becoming effective 1/1/76. The statute requires the same 5/6 of the jurors must agree on any questions put to them on a claim. It does not require that each class member's amount of damages be put to the jury.

In *Schlosser*[2] the Court found acceptable the very type of post-jury claims process envisioned here by the plaintiff. And in subsequent Wisconsin class actions (*Cruz*) the courts have apparently used the same type of damage process. The court notes in *Schlosser*, that the division of the aggregate class damages can be relatively easily accomplished through the class member's insurance records. In this case, that may be somewhat harder to do because it's unlikely that the consumers have kept their "Quick-Mart" receipts from ten years back. However, if the jury is persuaded that the class has been uniformly impacted, then each class member can presumably claim their share by affidavit or other method of establishing the number of cans bought in this state and

---

[2] Decided by the trial court in 1973 and the appeals court in 1974, before the passage of 805.09 but while the petition for it's passage was pending)

multiplying the number of cans times the amount of overcharge per can. This would not be unmanageable. The court could appoint a special master to oversee this claims process.

Wis. Stat. §133.01 expressly states that the intent of our Wisconsin Legislature was to safeguard the public against monopolistic practices and encourage competition. Courts are expressly advised to give the most liberal construction to Chap. 133 to encourage competition. Wis. Stat. 133.18 expressly authorizes indirect purchasers to pursue private enforcement actions and as an additional incentive, awards treble damages to a successful action. The only way this Court can see effectuating Chapter 133 and Wis. Stat. 803.08 is to permit post-verdict individualized class member damage claims hearings. To require the jury to determine individualized damages would defeat both Wisconsin's monopoly law and class action law.

## ORDER

For all of the foregoing reasons, IT IS ORDERED:

1. The court certifies the below described class:

   All persons who purchased UST's moist snuff smokeless tobacco products in Wisconsin for personal use and not for resale from January 1990 to the 5/7/04.

2. Plaintiff's Motion for Class Certification is granted.

3. A Scheduling Conference will be held 6/24/04 at 9:30 A.M. The parties may appear by phone. Plaintiff will initiate the call.

Dated this 10th day of May 2004 at Milwaukee, Wisconsin.

BY THE COURT:

/S/    KITTY K. BRENNAN

Hon. Kitty K. Brennan



FILED

MAY 1 0 2004

JOHN BARRETT
Clerk of Circuit Court

15

Tab 4

1389

1  GUIDO SAVERI (22349)
   R. ALEXANDER SAVERI (173102)
2  GEOFFREY C. RUSHING (126910)
   CADIO ZIRPOLI (179108).
3  SAVERI & SAVERI, INC.
   111 Pine Street, Suite 1700
4  San Francisco, California  94111
   Telephone (415) 217-6810
5  Facsimile (415) 217-6813

**RECEIVED**

FEB 0 2 2004

**THE FURTH FIRM LLP**

6  Co-Liaison Counsel for Plaintiff

7

8              **SUPERIOR COURT OF CALIFORNIA**

9                 **COUNTY OF SAN FRANCISCO**

10

11  Coordination Proceeding              J.C.C.P. No. 4250, 4258, 4259 and 4262
    Special Title (Rule 1550(b))
12  **SMOKELESS TOBACCO CASES I-IV**     Hon. Richard A. Kramer
                                         Coordination Trial Judge
13  Consolidated with:

14  *Kelly v. U.S. Smokeless Tobacco, Co, et al.,*   **NOTICE OF ENTRY OF ORDER**
    SFSC Case No. CGC-02-412861                      **GRANTING MOTION FOR CLASS**
15                                                    **CERTIFICATION**

16  This Document Relates To:

17      All Actions

18

19  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

20      PLEASE TAKE NOTICE that on January 29, 2004, The Honorable Richard A. Kramer

21  entered the attached Order Granting Motion for Class Certification.

22  Dated: January 29, 2004              Respectfully submitted,

23

24                              By:  *R. Alexander Saveri*
                                     ─────────────────────────
25                                   GUIDO SAVERI (22349)
                                     R. ALEXANDER SAVERI (173102)
26                                   GEOFFREY C. RUSHING (126910)
                                     CADIO ZIRPOLI (179108)
27                                   SAVERI & SAVERI, INC.
                                     111 Pine Street, Suite 1700
28                                   San Francisco, CA  94111
                                     Telephone: (415) 217-6810

snuff.096

1  Guido Saveri (22349)
   R. Alexander Saveri (173102)
2  Geoffrey C. Rushing (126102)
   Cadio Zirpoli (179108)
3  SAVERI & SAVERI, INC.
   111 Pine Street, Suite 1700
4  San Francisco, CA 94111
   Telephone: (415) 217-6810
5  Facsimile: (415) 217-6813

6  Daniel J. Mogin (95624)
   Lisa J. Frisella (216504)
7  THE MOGIN LAW FIRM, P.C.
   110 Juniper Street
8  San Diego, CA 92101-1502
   Telephone: (619) 687-6611
9  Facsimile: (619) 687-6610

10  Plaintiff Co-Liaison Counsel

11         SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                  COUNTY OF SAN FRANCISCO

13                    (UNLIMITED JURISDICTION)

14

15  COORDINATION PROCEEDING          ) J.C.C.P. Nos. 4250, 4258, 4259 & 4262
    SPECIAL TITLE [RULE 1550(b)]     )
16                                   ) Hon. Richard A. Kramer
    *SMOKELESS TOBACCO CASES I-IV*   ) Coordination Trial Judge
17                                   )
    Consolidated With:               )
18                                   )
    *Kelly v. U.S. Smokeless Tobacco, Co., et al.,* ) ORDER GRANTING  MOTION FOR
    SFSC Case No. CGC-02-412861      ) CLASS CERTIFICATION
19                                   )
                                     )
20  THIS DOCUMENT RELATES TO:        )
                                     )
21  ALL ACTIONS                      )
                                     )
22  _____)

23

24         Plaintiffs' motion for an Order certifying this action as a class action and certifying the

25  class of plaintiffs to be represented came on for hearing by regularly noticed motion on

26  December 9, 2003 before the Honorable Richard A. Kramer.

27         The Court has heard and considered all papers filed and all argument in support and in

28  opposition to said motion.

                                     1

FILED
San Francisco County Superior Court

JAN 29 2004

GORDON PARK-LI, Clerk
BY: _____
              Deputy Clerk

1      IT IS HEREBY ORDERED that plaintiffs' motion for class certification shall be and

2  hereby is GRANTED and the above-entitled consolidated actions are certified as a plaintiff class

3  action upon the findings and pursuant to the terms set forth below:

4      1.    An ascertainable and well-defined class exists which is comprised of:

5      All persons who purchased moist snuff products, indirectly from defendants, in the
      State of California from January 1, 1990, through the present ("Class Period") for

6      their own use and not for resale. Specifically excluded from the Plaintiff Class are the
      defendants herein; officers, directors, or employees of any defendants; any entity in

7      which any defendant has a controlling interest; the affiliates, legal representatives,
      attorneys, heirs or assigns of any defendant. Also excluded are any federal, state or

8      local governmental entity, and any judge, justice, or judicial officer presiding over
      this matter and the members of their immediate families and judicial staffs.

9

10      2.    The class sought by the plaintiffs satisfies the numerosity requirement in that there

11  are at least many thousands of individuals who purchased moist snuff tobacco products during

12  the defined Class Period.

13      3.    There is a well-defined community of interest among the members of the class.

14  Common questions of law and fact exist and such questions predominate over questions affecting

15  individual members of the class.  Some of the common class wide questions include the issue of

16  liability and consumer injury.

17      4.    The standard for the presentation of a method of proving generalized damages at

18  the class certification stage is that plaintiffs' proposed method must not be so insubstantial that it

19  amounts to no method at all.  The question is not whether the plaintiffs will be able to carry their

20  burden at a later stage in these proceedings, for example trial, but whether the differences

21  between the method presented and proposed by the plaintiffs' expert and the matters presented by

22  the defense expert can be intelligently presented and evaluated in the context of a class action, as

23  opposed to the context of individual claims for damages.  Plaintiffs have met this burden.

24      4.    Maintenance of the case as a class action is superior to any other method to

25  litigate the issues between the parties.

26      5.    Plaintiffs' claims are typical of the claims of the absent plaintiff class members.

27      6.    The named plaintiffs -- Samuel Abels, Kevin Beede, Tim Budd, Mario G.

28  Fernandez, Joe Garcia, Frank Gerencser, Shane Green, Kevin Hart, Craig Kelly, Thomas

1   Marquis, William D. Piculell, Bruce Saucier, Patrick Scannell and Scott Trulik -- shall serve as

2   Plaintiff Class Representatives.  They are members of the class and their claims are typical of the

3   claims of the other members of the class.

4        7.        The above named Plaintiffs' and their counsel will fairly and adequately represent

5   the class.

6

7   Dated: ___JAN 26, 2004___                    _____

8                                                Honorable Richard A. Kramer
                                                 Coordination Trial Judge

9   Approved as to form:

10

11  _____

12  Charles H. Samel (SBN 182019)
    HOWREY SIMON ARNOLD & WHITE, LLP

13  550 South Hope Street, Suite 1100
    Los Angeles, CA 90071

14
    Margaret M. Zwisler (admitted *pro hac vice*)

15  Marc G. Schildkraut (admitted *pro hac vice*)
    HOWREY SIMON ARNOLD & WHITE, LLP

16  1299 Pennsylvania Avenue, N.W.

17  Washington, DC  20004

18  Attorneys for Defendants

19

20                                       Other Plaintiff Counsel:

21                                       Michael P. Lehmann (77152)
                                         THE FURTH FIRM LLP

22                                       225 Bush Street, 15th Floor
                                         San Francisco, CA 94104

23

24                                       Craig C. Corbitt (83251)
                                         Christopher T. Micheletti (136446)

25                                       Jeffrey A Topor (195545)
                                         ZELLE, HOFFMAN, VOELBEL, MASON &

26                                       GETTE LLP

27                                       44 Montgomery Street, Suite 3400
                                         San Francisco, CA 94104

28

                                    3
                    ORDER GRANTING MOTION FOR CLASS CERTIFICATION

1   Marquis, William D. Piculell, Bruce Saucier, Patrick Scannell and Scott Trulik — shall serve as

2   Plaintiff Class Representatives. They are members of the class and their claims are typical of the

3   claims of the other members of the class.

4       7.      The above named Plaintiffs' and their counsel will fairly and adequately represent

5   the class.

6

7   Dated:_____                Honorable Richard A. Kramer
                                                  Coordination Trial Judge
8

9   Approved as to form:

10  _____

11
    Charles H. Samel (SBN 182019)
12  HOWREY SIMON ARNOLD & WHITE, LLP
13  550 South Hope Street, Suite 1100
    Los Angeles, CA 90071
14
    Margaret M. Zwisler (admitted *pro hac vice*)
15  Marc G. Schildkraut (admitted *pro hac vice*)
16  HOWREY SIMON ARNOLD & WHITE, LLP
    1299 Pennsylvania Avenue, N.W.
17  Washington, DC  20004

18  Attorneys for Defendants

19                                  Other Plaintiff Counsel:

20                                  Michael P. Lehmann (77152)
21                                  THE FURTH FIRM LLP
                                    225 Bush Street, 15th Floor
22                                  San Francisco, CA 94104

23                                  Craig C. Corbitt (83251)
24                                  Christopher T. Micheletti (136446)
                                    Jeffrey A Topor (195545)
25                                  ZELLE, HOFFMAN, VOELBEL, MASON &
26                                  GETTE LLP
                                    44 Montgomery Street, Suite 3400
27                                  San Francisco, CA 94104

28
                                    3
    ORDER GRANTING MOTION FOR CLASS CERTIFICATION

1

2
Bruce L. Simon (96241)
Steven N. Williams (175489)
3
Peter E. Borkon (212596)
COTCHETT, PITRE, SIMON & McCARTHY
4
840 Malcolm Road, Suite 200
Burlingame, CA 94010

5
Kevin P. Roddy (128283)
6
HAGENS BERMAN, LLP
700 South Flower St., Suite 2940
7
Los Angeles, CA 90017

8
David R. Markham (71814)
9
BLUMENTHAL AND MARKHAM
2255 Calle Clara
10
La Jolla, CA 92037

11
**Members of Plaintiffs' Executive Committee**

12

13

14   snuff.054

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING MOTION FOR CLASS CERTIFICATION