**Tab 22**

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| ANDERSON CONTRACTING, INC.,<br><br>        **Plaintiff,**<br>**vs.**<br><br>**BAYER AG; BAYER POLYMERS, LLC n/k/a BAYER MATERIALSCIENCE, LLC; BAYER CORPORATION; CROMPTON CORPORATION; UNIROYAL CHEMICAL CORPORATION, INC. n/k/a CROMPTON MANUFACTURING COMPANY, INC.; THE DOW CHEMICAL COMPANY; EI DUPONT DE NEMOURS & COMPANY; DUPONT DOW ELASTOMERS LLC; DSM COPOLYMERS, INC.; DSM ELASTOMERS EUROPE B.V.; and EXXON MOBIL CHEMICAL CORPORATION d/b/a EXXON MOBIL, INC.,**<br><br>        **Defendants.** | **Case No. CL 95959**<br><br><br>**RULING ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

   The Court held a contested hearing on Plaintiff's Motion for Class Certification on December 1, 2006. Defendants Chemtura Corporation (f/k/a Crompton), Uniroyal Chemical Company, Inc., DSM Copolymer, Inc., and ExxonMobil Chemical Company submitted a combined resistance to Plaintiff's motion. All parties appeared through their respective counsel. After carefully considering the documents and evidence filed by the parties, this Court enters the following ruling:

CLERK DISTRICT COURT
2007 MAR 19 PM 4: 13
POLK COUNTY, IA.
FILED

1

## RULING

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Anderson Contracting, Inc. is an Iowa corporation, engaged in contract roofing work in the State of Iowa. Defendants are numerous business entities incorporated in various states and countries. During the relevant time period, Defendants manufactured, marketed and/or distributed a synthetic rubber, known as ethylene propylene diene monomer ("EPDM"), throughout the United States. EPDM is one of several dozen synthetic rubbers that are similar in appearance. Direct purchasers of EPDM typically process the EPDM into a variety of value-added products which they then resell. EPDM is used extensively in the automobile and roofing industries, but is found in a multiplicity of other products.

Plaintiff was an indirect purchaser of various products containing EPDM, during the period of January 1, 1994 to December 2002. In its Second Amended and Substituted Class Action Petition,[1] Plaintiff alleges Defendants engaged in a conspiracy to fix the price of EPDM sold in the United States and elsewhere. Specifically, Plaintiff asserts that Defendants regularly increased prices for EPDM in a coordinated manner close in time and amounts.

Plaintiff argues that Defendants' actions violated chapter 553 of the Iowa Code, the Iowa Competition Law. Plaintiff alleges that Defendants and co-conspirators effectuated their conspiracy by participating in meetings and conversations to discuss the prices of EPDM and EPDM customers and/or markets, agreeing during those meetings and conversations to charge prices at certain levels and otherwise increase or maintain prices of EPDM sold in the United States and elsewhere, and allocating markets and

---

[1] On May 2, 2005, this Court granted Plaintiff's Motion to File Second Amended and Substituted Petition.

2

customers for the sale of EPDM pursuant to the agreements. As a result of this alleged

conspiracy, Plaintiff contends it paid substantially higher prices for products containing

EPDM than it would have paid absent the alleged conspiracy and restraint. Plaintiff filed

a request for class action certification, which would allow it to represent other individuals

presently unknown to Plaintiff who have been similarly harmed by Defendants' alleged

price fixing.

Additional relevant facts will be addressed below as necessary.

## STANDARD OF REVIEW

District Courts are vested with broad discretion in determining whether to grant

class certification. *Stone v. Pirelli Armstrong Tire Corp.*, 497 N.W.2d 843, 845 (Iowa

1993). Iowa Rules of Civil Procedure governing class actions should be liberally

construed and "the policy should favor the maintenance of class actions." *Lucas v.

Pioneer, Inc.*, 256 N.W.2d 167, 176 (Iowa 1977) (citations omitted); *see also* Iowa R.

Civ. P. 1.261-1.279; *Comes v. Microsoft Corp.*, 696 N.W.2d 318, 320 (Iowa 2005)

(hereinafter "*Comes II*"). Nevertheless, the representative party or the named plaintiff

has the burden of proving all the prerequisites to certify a class action. *Stone*, 497

N.W.2d at 846. "A failure of proof on any one of the prerequisites is fatal to a class

action certification." *Id.* "Except where the facts underlying the class are merely

speculative, however, the proponent's burden is light." *City of Dubuque v. Iowa Trust*,

519 N.W.2d 786, 791 (Iowa 1994). After a class has been certified, the district court may

decertify it if circumstances so require. *Comes II*, 696 N.W.2d at 320 (citing *Vos v. Farm

Bureau Life Ins. Co.*, 667 N.W.2d 36, 46 (Iowa 2003)).

3

## CONCLUSIONS OF LAW AND ANALYSIS

Plaintiff is requesting that this Court certify a class consisting of persons who were indirect purchasers of EPDM in Iowa. Indirect purchasers are those parties to whom Defendants did not directly sell their products, but who ultimately obtained the products through the stream of commerce. *Comes II*, 696 N.W.2d at 320. Plaintiffs seek to define the class as "[a]ll persons who indirectly purchased Defendants' EPDM in the State of Iowa, other than for resale, from January 1994 through December 2002." *Plaintiff's Brief*, p. 7. Specifically excluded from the proposed class are "Defendants; any entity in which Defendants have a controlling interest; any employees, officers or directors of Defendants; legal representatives, successors or assigns of Defendants; any judicial officer who may hear the case and such judicial officer's related persons; any juror or such juror's related persons." *Id.* Plaintiffs do not seek to establish any subclasses and only seek class certification on their claim under Iowa Code section 553.

According to the Iowa Rules of Civil Procedure:

> The court may certify an action as a class action, if it finds all of the following:
> (a) The requirements of rule 1.261 have been satisfied.
> (b) A class action should be permitted for the fair and efficient adjudication of the controversy.
> (c) The representative parties fairly and adequately will protect the interests of the class.

Iowa R. Civ. P. 1.262(2). Therefore, the mandatory prerequisites for class certification are as follows: (1) the requirements of rule 1.261 (numerosity and commonality); (2) the certification would allow for *fair and efficient adjudication of the controversy*, which is determined by examining the several factors encompassed in Iowa R. Civ. P. 1.263; and (3) the representative parties *fairly and adequately will protect the interests of the class.*

4

*See id.* 1.261-1.263. It is important to recognize, however, that the Court's determination on class certification will not be influenced by strength of the merits underlying the Plaintiff's claims. *See Martin v. Amana Refrigeration, Inc.*, 435 N.W.2d 364, 367 (Iowa 1989) (citing *Vignaroli v. Blue Cross of Iowa*, 360 N.W.2d 741, 745 (Iowa 1985)).

## 1.   *Iowa Rule 1.261 Requirements*

First, the requirements set out in rule 1.261 must be met. Specifically, rule 1.261 requires: (1) the class be "so numerous or so constituted that joinder of all the members, whether or not otherwise required or permitted, is impracticable;" and (2) "[t]here is a question of law or fact common to the class." Iowa R. Civ. P. 1.261(1)-(2).

### A. *Impracticability Based on Numerosity*

Generally, Iowa has adopted the rule that numbers alone may be dispositive to show impracticability. *See City of Dubuque*, 519 N.W.2d at 792 (citations omitted). "Forty or more class members has been recognized as the range within which impracticability of joinder has been presumed." *Id.* (citations omitted). "Any doubts regarding joinder impracticability should be resolved in favor of upholding the class." *Id.* (citation omitted). It is important to note, however, that the sole inquiry on this fact is whether the class is so numerous that joinder is impracticable; not whether the class definition is too broad.

In the case at bar, Plaintiff believes that the class consists of thousands of members. Defendants have conceded that the numerosity requirement has been met in this case. Therefore, the Court will not belabor its analysis and finds Plaintiffs have met their burden in establishing impracticability of joinder.

### B. *Commonality*

This prerequisite requires that there be a common question of law or fact to the class. Iowa R. Civ. P. 1.261(2). "It is not necessary that the individual claims be carbon copies of each other." *Vignaroli*, 360 N.W.2d at 745. Despite variations of individual claims, a class action may nevertheless proceed where the theories include common issue of fact and law. *Id.* Again, Defendants in the present action do not contest that this requirement has been shown and it is clear that all class members would have a common question of law as to whether Defendants' alleged conduct amounted to a violation of the Iowa Competition Law. These circumstances fulfill the commonality requirement of rule 1.261(2). Therefore, Plaintiffs have satisfied all the requirements of rule 1.261.

### 2.    *Fair and Efficient Adjudication*

Rule 1.262(2)(b) requires the Court to find that a class action will promote a fair and efficient adjudication of the controversy. Such a nebulous requirement finds direction under rule 1.263. According to rule 1.263, "[i]n determining whether the class action should be permitted for the fair and efficient adjudication of the controversy . . . the court shall consider, and give appropriate weight to, the following and other relevant factors . . . ." Iowa R. Civ. P. 1.263(1) (listing thirteen factors to be considered).

> [T]he criteria to be considered have two broad considerations: achieving judicial economy by encouraging class litigation while preserving, as much as possible, the rights of litigants—both those presently in court and those who are only potential litigants. No weight is required by the rule to be assigned by the trial court to any criteria listed, further evidencing an intent to grant considerable discretion to the trial court.

*Vignaroli*, 360 N.W.2d at 744. "'In most cases some of the thirteen factors [regarding the fair-and-efficient-administration-of-justice test] will weigh against certification and some will weigh in favor.'" *Comes II*, 696 N.W.2d at 322 (quoting *Howe v. Microsoft Corp.*, 656 N.W.2d 285, 289 (N.D. 2003)).

6

There is no set number of factors which must weigh in one direction or another. It is this Court's duty to weigh those competing factors and determine whether a class action will provide a fair and efficient adjudication of the controversy. *Id.* (citation omitted). This analysis may, for instance, allow two factors to outweigh the remaining eleven depending on their relevancy to the case. The Court is not required to make written findings under rule 1.263. The rule only requires that the Court weigh and consider the factors and come to a reasoned conclusion as to whether a class action should be permitted for a fair adjudication of the controversy. *City of Dubuque*, 519 N.W.2d at 791. Nonetheless, the Court believes it necessary to address the relevant factors of rule 1.263 below.

A.    *Joint or Common Interest.*

The Court has already established through its analysis in Part 1B that there are some areas in which common questions of law or fact exist. *See supra* Part 1.B. The Court believes this determination also supports the factor of whether a joint or common interest exists among the members of the class. *See* Iowa R. Civ. P. 1.263(1)(a). Furthermore, all parties concede that this factor weighs in favor of a fair and efficient adjudication.

B.    *Risk of Inconsistent or Varying Adjudications.*

The Court does not foresee the prosecution of separate actions creating a risk of inconsistent or varying adjudications with respect to individual Plaintiffs. *See id.* 1.263(1)(b). "Inconsistent or varying adjudications" do not include the simple case where two individuals sue the same defendant for the same relief and one wins and the other loses. Rather, it is where two individuals are suing the same defendants for

7

different and incompatible relief. *Trecker v. Manning Implement, Inc.*, 73 F.R.D. 554, 560 (N.D. Iowa 1976) (interpreting identical language under the Federal Rules of Civil Procedure). Thus, in order for there to be a risk of varying adjudications, there must be different parties attempting to impose different standards of conduct upon the party opposing the class. Under the circumstances as they currently exist, the Court sees no danger of this occurring, and the parties have not pointed to any other similar cases pending in the State of Iowa.

C.    *Whether Individual Adjudications Would Affect Other Members Interests.*

The Court also does not perceive potential adjudications of individual claims as impairing or impeding other plaintiffs' abilities to protect their interests. *See id.* 1.263(1)(c). Common situations where impairment may occur are where individual suits against a defendant or fund will deplete the assets as to other plaintiffs, where injunctions secured by one members of a class may disable an opposing party from performing claimed duties toward other members, or where adjudications would estop other plaintiffs from protecting their interests. The potential plaintiffs in this case appear not associated, nor are their grounds for relief contingent upon the other class members. Furthermore, it does not appear that individual plaintiffs would be precluded from being awarded damages from Defendants based on prior individual litigation. While the Court confers little weight to this factor, it does weigh in favor of denying certification.

D.    *Party Opposing the Class Acted on Grounds Generally Applicable to the Class, Making Relief Appropriate with Respect to the Class as a Whole.*

Both parties agree that this factor is not applicable or relevant to the Court's analysis in this case. Accordingly, the Court gives no weight to this factor either in support or opposition of class certification.

E.    *Whether Common Questions of Law or Fact Predominate Over Any Questions Affecting Only Individual Members.*

The Court has previously determined that some common questions of law and fact exist in this case. However, the Court must also look to whether those common questions predominate over any questions affecting only individual members. Iowa R. Civ. P. 1.263(1)(e).  *Comes II* made clear that this predominance factor is not a condition precedent and is merely one of the thirteen factors for the court to consider. *Comes II*, 696 N.W.2d at 322.    Moreover, "predominant" is not necessarily equated with "determinative" or "significant." *Vignaroli*, 360 N.W.2d at 745.  In fact, a claim will satisfy the predominance requirement when generalized evidence exists, which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position.  *Vos*, 667 N.W.2d at 45 (citation omitted).  Ultimately, the objective is to avoid trials that, as class actions, "would spend more time delving into individual questions of fact . . . than examining questions common to the entire class." *Id.* at 54-55.

In the present case, it is clear that while there are obvious factual differences in the way potential plaintiffs acquired products containing EPDM, the claims asserted are not individualized based on the underlying premise of the claim, which is price-fixing. Similar to *Comes II*, Plaintiffs must prove that Defendants violated the Iowa antitrust law, and this violation caused class members to suffer identifiable harm and damages. *See* IOWA CODE § 553.12 (requiring: (1) the existence of an antitrust conspiracy; (2) injury to the plaintiff that flows from the unlawful conduct; and (3) an amount of damages).  In addition, to bypass the statute of limitations, Plaintiffs must prove that the defendants fraudulently concealed the alleged conspiracy.  It is not required, however, that as a class

plaintiffs "show there will be common proof on each element of the claim. Rather, [the Iowa Supreme Court has] repeatedly noted that the existence of individual issues is not necessarily fatal to class certification." *Comes II*, 696 N.W.2d at 322 (citing *Howe*, 656 N.W.2d at 289).

The most contentious elements of Plaintiff's antitrust claim are injury-in-fact and damages. The proposed methods of proving injury-in-fact on a class-wide basis are based on economic theories and models of the Plaintiff's expert. Foremost, the Court wants to make clear that it will not engage in deciding a "battle of the experts" at this stage in the litigation. *See Howe*, 656 N.W.2d at 293. To do so would be making a class certification ruling based on the merits of the case. *See Comes II*, 696 N.W.2d at 325 (rejecting approach that would lead to a class certification decision based on merits of the litigation). The appropriate inquiry is not the strength of each class member's claim, but instead an inquiry into whether they are common complaints and which issues predominate. So long as the Court has sufficient information to form a reasonable judgment on the certification issue, it need not inquire further into the facts supporting the Plaintiffs' petition. *Comes II*, 696 N.W.2d at 324 (citing *City of Dubuque v. Iowa Trust*, 510 N.W.2d 786, 791 (Iowa 1994)). Only in cases where the facts underlying the class are merely speculative will the proponent's burden be more than light. *City of Dubuque*, 519 N.W.2d at 791. An approach of limiting examination of the merits of a case is supported by rule 1.262(1), which provides that courts should determine class certification issues "as soon as practicable after the commencement of a class action." In addition, "a safety net is provided for cases in which certification is improvidently

granted: the court may decertify the class at a later time." *Comes II*, 696 N.W.2d at 324 (citing *Vos*, 667 N.W.2d at 46).

Defendants' primary arguments in resistance to Plaintiff's showing on this factor are that the "class definition is so broad that neither Anderson nor its expert economist can begin to estimate the number of different end products that might be at issue" and that "there is no practical way for Anderson or anyone else to identify the members of the proposed class, let alone propose some common method by which it could be shown on a classwide basis how these members were injured . . . ." *Defendants' Brief*, p. 2. Specific to the factor of predominance, Defendants claim that because there are "'no mathematical calculations or formulate that can be used to determine each putative class member's damages,'" the individual damage determinations will overwhelm the common issues of damages in this case. *Defendants' Brief*, p. 38 (quoting *Keating v. Philip Morris, Inc.*, 417 N.W.2d 132, 137 (Minn. 1987)). How Plaintiffs seek to prove injury and damages is undoubtedly an issue which the court looks to when deciding whether individual questions predominate over common questions. However, Defendants ignore that fact that there remains a dispute among the parties' experts about whether a formula can be constructed in this case to produce a valid representation of passed-on costs and damages to end-users.

Defendants point to Plaintiff's expert, Dr. Conner, who concedes that no formula could determine the pass-on rate for individual customers because there would be too many variables involved. *See* Conner Tr. 195:25-196:5. The Court also acknowledges that determining what prices were paid by end-users is arguably a difficult task due to the variety of sales contracts for EPDM in different forms, grades, amounts, and with rebates

11

or discounts. The present case involves five EPDM manufacturers, hundreds of EPDM direct purchasers, thousands of distributors, retailers and other intermediaries, each of which had its own independent pricing polices and practices. Additionally, negotiated prices for EPDM vary even more when the product for which it is used has other non-EPDM substitutes. However, these again are some of the same circumstances and arguments faced in *Comes II* when looking to Microsoft products. Those products were bundled with computers, possibly included rebates, or volume discounts to the direct purchaser.

One of the characteristics of this case not present to the same extent in *Comes II* is that EPDM is typically sold throughout the stream of commerce after being incorporated into another product, not to mention the large number of products in which EPDM is used. *See, e.g., In re Methionine Antitrust Litig.*, 204 F.R.D. 161, 165 (N.D. Cal. 2001) (observing that when a product is incorporated into other products, the factfinder must determine how much the price of the resold product was a result of an anti-competitive overcharge and how much was the result of other costs). These characteristics make the analysis of injury and damages more individualized than *Comes II*. Even so, the Court does not agree that the issues of this case "will require the presentation of individualized evidence regarding each plaintiff's circumstances." *Defendants' Brief*, p. 4.

Plaintiffs have asserted that their expert, Dr. Connor, is prepared to offer "common, expert testimony" regarding the impact on and injuries of the class as a whole. Defendants contest, however, how Dr. Connor will be able to illustrate the many variables which go into a product. This is a challenge to Dr. Connor's methods and not proper for determination at the class certification stage. *See Howe*, 656 N.W.2d at 293;

12

*Comes II*, 696 N.W.2d at 325.   In fact, arguments by Microsoft in *Comes II* are strikingly

similar to those in this case.  The *Comes II* court stated:

> Microsoft also attacks Professor MacKie-Mason's analysis, theories, and
> methodology, claiming that his economic methodology will not produce
> an accurate measure of harm and, consequently, that the plaintiffs have
> failed to present "real world" evidence to establish damages.   Microsoft
> argues that the plaintiffs' proof is insufficient, claim that Professor
> MacKie-Mason's theories are inaccurate as a matter of fact and that the
> district court should have engaged in a rigorous analysis of this evidence
> to uncover its flaws.   Specifically, it complains that the court abused its
> discretion because it
>
> > did not require plaintiffs to show that their proposed methods for
> > proving with classwide evidence that *each class member actually
> > paid some portion of a passed-on overcharge-and the amount
> > passed on*-were workable in light of the real world facts Microsoft
> > presented.
>
> . . .
>
> Microsoft's argument fails because, in effect, it asks the court to make a
> class-certification ruling based on the merits of the case, something we
> have uniformly rejected.   *See, e.g., Kramersmeier v. R.G. Dickinson &
> Co.*, 440 N.W.2d 873, 879 (Iowa 1989) ("[A] reversal of the trial court's
> certification order for failure of proof of reliance would be tantamount to
> requiring proof of plaintiffs' ability to 'win on the merits,' a showing
> clearly not contemplated by [the rules] or prior decisions of this court.").
> This court has instead consistently held that class certification does not
> involve an inquiry into the merits of a case.

*Comes II*, 696 N.W.2d at 324-25.  The *Comes II* court held that the district court's

findings on the first three of five common questions would have justified a finding of

predominate issues.   Those common questions were:   (1) whether Microsoft was a

monopolist; (2) whether Microsoft engaged in anticompetitive conduct; and (3) whether

Microsoft's conduct violated the Iowa Competition Law.  *Comes II*, 696 N.W.2d at 323.

Similar questions involving the Defendants alleged price-fixing conduct are present here.

13

Class certification is a procedural question and does not ask whether an action is legally or factually meritorious. *Luttenegger v. Conseco Fin. Serv. Corp.*, 671 N.W.2d 425, 438 (Iowa 2003); *Martin*, 435 N.W.2d at 367-68. Defendants' contradicting evidence is noted by the court, "but it is inappropriate at the certification stage to resolve battles between experts." *Comes II*, 696 N.W.2d at 325 (citing *Howe*, 656 N.W.2d at 293). At this point the Court is only concerned with ensuring that the basis of the expert opinion is not so flawed that it would be inadmissible as a matter of law. *Id.* Based on the exhibits submitted to the court, and this jurisdiction's liberal rules on the admission of expert testimony, the Court is convinced that the expert opinions in this case do not fall within that sphere. The district court in *Comes II* concluded that the plaintiff's proposed methods of proving injury-in-fact on a class-wide basis were based on sound and accepted economic theory and presented viable methods for establishing the differences in prices. *Comes II*, 696 N.W.2d at 323. Similar methods, while possibly less detailed at this stage in the litigation, are similar economic theories.

Understandably, there are inherent difficulties in proving injury and damages in an indirect purchaser case. However, the Court does not find, as the Defendants do, that this burden is an impossible one. Clearly there are a multitude of factors that go into the ultimate pricing of a product containing EPDM. However, the ability or likelihood of proving an inflated price throughout the various streams of commerce is an argument attacking the merits of the case and not the issue before the Court. An increased difficulty in proving damages is not a basis on which this Court can deny Plaintiffs motion for class certification. Whether a formula can be developed, which encompasses the alleged price inflation through the various distribution levels, is a factual issue for the

14

jury to determine based on expert testimony. If the Plaintiffs' expert is incapable, as Defendants claim, of fabricating a method to demonstrate the alleged price fixing's effect, it is possible to be addressed in a summary judgment motion or on a motion for directed verdict at trial. At this stage the Court is more concerned with identifying class members and characterizing the types of issues involved. Moreover, Defendants do not dispute that their alleged price-fixing conduct would be a common issue among the potential plaintiffs in this case.

The Court is satisfied that common questions in this case are predominant and this determination weighs in favor of finding that certification would permit a full and fair adjudication of this case. *See Vos*, 667 N.W.2d at 54-55 (ensuring that at trial would not "spend more time delving into individual question of fact . . . than examining questions common to the entire class"). Despite the Court's determination on this factor, it remains merely a factor in the overall analysis conducted in this case.

F.    *Whether Other Means of Adjudicating the Claims Are Impracticable or Inefficient.*

Whether the means of adjudication provides the most efficiency and practicability are also important to class certification decisions. Iowa R. Civ. P. 1.263(1)(f). Based on the nature of the product at issue in this case and the multitude of products and streams of commerce to which it has traveled, individual claims for the potential class members would be an unbelievably arduous task. The Court does not turn a blind eye to the potential logistics of a class action involving so many different end-products and problematic identification of products containing EPDM. Nevertheless, the Court agrees that this factor weighs in favor of a fair and efficient adjudication.

G.    *Is a Class Action the Most Appropriate Means to Adjudicate the Case?*

15

With similar concerns to factor (f), the Court believes class certification would offer the most appropriate means of adjudicating potential plaintiffs' claims. *See id.* 1.263(1)(g). If ascertaining members of the class requires individualized hearings into the chemical makeup and circumstances of each purchase, class action proceedings may no longer provide an adequate way to adjudicate this matter. However, individual cases would also require such determinations and conducting hearings on particular products would certainly consolidate many of those determinations, if necessary to determine the existence of EPDM. Again, the Court believes this factor weighs in favor of a fair and efficient adjudication.

H.    *Have Other Class Members Demonstrated They Want to Control the Litigation?*

Neither party has shown that any other members of the proposed class have sought or will seek to control this litigation. Iowa R. Civ. P. 1.263(1)(h). The Court views this factor as weighing in favor of finding a fair and efficient adjudication. However, the Court gives little weight to this factor.

I.    *Whether the Class Action Involves a Claim That Is or Has Been the Subject of a Class Action, a Government Action, or Other Proceeding.*

Plaintiff asserts that "[t]he government has successfully brought criminal actions against most of the Defendants. Other class actions have been filed in other states as well." *Plaintiff's Brief*, p. 16. In addition, both parties acknowledged during oral argument that the actions of the Defendants had been investigated by the federal authorities, but yielded no further action. Despite these actions in other jurisdictions, the rule asks whether the claim has been addressed in another proceeding. The Court finds no basis to conclude that Plaintiff's claim for antitrust violations under Iowa Code

16

chapter 553 have previously been the subject of another such proceeding. Accordingly, this factor weighs in favor of finding certification to further a fair and efficient adjudication.

J.    *Whether it is Desirable to Bring the Class Action in Another Forum?*

Neither party makes an argument that Plaintiffs, who are from the State of Iowa, should bring their antitrust actions in a state other than Iowa. Similarly, as much as it might like to do so, the Court can find no basis for such a finding. The Court views this less significant factor as indicating the likelihood of fair and efficient adjudication.

K.    *Will Management of this Class Action Pose Unusual Difficulties?*

One of the most glaring factors in this case asks whether management of the class poses unusual difficulties. *See id.* 1.263(1)(k). Plaintiffs' definition of the proposed class is quite broad. *See Plaintiff's Brief*, p. 7 ("All persons who indirectly purchased Defendants' EPDM in the State of Iowa, other than for resale, from January 1994 through December 2002."). This definition coupled with the uncertainty in identifying the products containing EPDM, indicates many potential problems in managing this class. These problems could ultimately be insurmountable. *See* Moore's Federal Practice § 23.46[2][e][i] (2006); *see also In re Phenylpropanolamine (PPA) Prods. Liability Litig.*, 214 F.R.D. 614, 619-20 (W.D. Wash. 2003).

Similar to the circumstances of *In re Phenylpropanolamine*, there will be many instances where class members' right to recover is not readily ascertainable and would require an individualized hearing. *In re Phenylpropanolamine*, 214 F.R.D. at 618. Therefore, the task of determining whether each alleged class member had in fact purchased a product containing EPDM could result in numerous mini-trials within the

17

larger class action to determine eligibility.  There are also issues as to whether the potential plaintiffs are an end-user, or whether they were even the purchaser if they do not have proof of purchase. These determinations pose enormous manageability hurdles and could potentially overwhelm even experienced class action attorneys, or overwhelm the court's resources and defeat the judicial economy obtained from class certification.

While the Plaintiffs are correct that under Iowa law there is no requirement that the members of the class all be identified at this point, the ability to identify the class does weigh on the manageability factor. Additionally, manageability issues should not necessarily be equated with issues of complexity. Plaintiff's claims involve both complex legal concepts as well as a huge number of potential plaintiffs and effected products. However, it is the large number of potential plaintiffs and a yet unknown number of end-products that pervades the Court's analysis. This factor is also one that the Court gives significant weight. These potential difficulties leads the Court find that this factor weighs against a fair and efficient adjudication in this case.

L.     *Whether Any Conflict of Laws Issues Pose Unusual Difficulties.*

Plaintiffs have only asserted claims under Iowa law and the proposed class members are limited to individuals in the State of Iowa. Therefore, at the present time, there is nothing in the record that demonstrates to the Court that any conflict of laws issues would dissuade this Court from finding certification appropriate.

M.     *Whether Individual Class Member Claims Would Be Insufficient In the Amounts or Interests Involved to Afford Significant Relief to the Members of the Class.*

Plaintiffs assert that the present case is "tailor-made" for a class action, based on the alleged small damage to each class member and the potential for an enormous amount

18

of class members. While the Court will not speculate as to specific amounts of damage that may be recoverable in this case, it is indicative through the allegations that EPDM is typically a small portion of a larger item such as a car or is a larger portion of less expensive items like weather stripping. Consequently, there is a strong likelihood that the amount of damage to individual plaintiffs would be relatively small. This determination weighs in favor of finding that certification should be permitted for the fair and efficient adjudication of this case.

N.    *Conclusion Regarding Rule 1.263 Factors.*

*Comes II* has made clear that

> [i]n most cases some of the thirteen factors will weigh against certification and some will weigh in favor. It is for the trail court, employing its broad discretion, to weigh the competing factors and determine whether a class action will provide fair and efficient adjudication of the controversy. Thus, even if [Defendants are] correct in [their] assertion four of the factors weigh against certification, that does not preclude the court from certifying the class action if, in its opinion, those factors are outweighed by other factors supporting certification.

*Comes II*, 696 N.W.2d at 289. A determination of the thirteen factors in this case is certainly a close call. However, based on the record before the Court and in light of this jurisdictions deference to certification, the Court concludes that certification would permit the "fair and efficient adjudication of the controversy." Iowa R. Civ. P. 1.262(2)(b), 1.263(1).

**3.    *Fairly and Adequately Protect the Interests of the Class***

The last issue is whether the representative parties will fairly and adequately protect the interests of the class. Iowa R. Civ. P. 1.262(2)(c). Rule 1.263(2) states that the court must find all of the following:

a.    The attorney for the representative parties will adequately

19

> > represent the interests of the class.
> >
> > b.  The representative parties do not have a conflict of interest in the maintenance of the class action.
> >
> > c.  The representative parties have or can acquire adequate financial resources, considering rule 1.276, to ensure that the interests of the class will not be harmed.

According to the pleadings, as well as the written and oral arguments of the parties, Anderson Contracting did purchase items containing EPDM as an end-user and would, therefore, be a member of the proposed class despite also being an intermediary for other products containing EPDM.

A.  *Adequate Attorney for the Class*

Plaintiffs' counsel has prior experience in antitrust class action litigation and neither party disputes the adequacy of Plaintiffs' counsel in this case. Therefore, this requirement is met.

B.  *Representative Parties Do Not Have Conflicts of Interest In Maintenance of Class Action.*

Defendants maintain that Anderson Contracting does not have a sufficient interest in the litigation to create an incentive to be diligent in providing discovery materials or prosecuting the case. Additionally, Defendants claim that Anderson Contracting's status as a reseller of products containing EPDM directly conflicts with the interests of the putative class, which consists of purchasers who are end-users of products containing EPDM. If both intermediate purchasers and end-users were part of the proposed class the Court would agree with Defendants' characterization. However, Anderson Contracting is asserting their antitrust claims as an end-user. Therefore, the Court finds no conflict which would prevent Anderson Contracting from maintaining the class action.

20

The Court is aware of the potential for a less than rigorous representation of the class when a proposed representative of the class has a small personal stake in the litigation, as appears to the be the case with Anderson Contracting. Moreover, Defendants have already called Anderson Contracting's commitment into question following minimal discovery responses. Nevertheless, a small end-user appears to be typical of the proposed class and was not considered to be an issue in *Comes II.* In addition, a significant portion of the discovery in this case has yet to be conducted. The Court is, therefore, unwilling to find Anderson Contracting to be lacking as a representative based on one alleged substandard discovery response.

C.    *Representatives Have or Can Acquire Adequate Financial Resources.*

In light of the provision for advancement of costs in this case, the Court finds Plaintiffs have adequately shown their ability to provide financial resources. *See Comes II,* 696 N.W.2d at 327 ("In this case, the plaintiffs' attorneys requested that the court issue an order under 1.276 approving their fee arrangement and their willingness to advance all costs."). Moreover, Defendants have not offered any rebuttal to this requirement. The Court finds that Plaintiff has sufficiently established their ability to provide financial resources.

4.    *Conclusion*

As previously stated, the "representative party or the named plaintiff has the burden of proving all the prerequisites" to certify a class action. *Stone,* 497 N.W.2d at 846. "A failure of proof on any one of the prerequisites is fatal to a class action certification." *Id.* Finding none of the requirements to be lacking at this time, the Court is under the obligation to conclude that class certification is appropriate in this case.

21

However, the Court reserves this issue for further examination as is permitted under the Iowa Rules of Civil Procedure. *See* Iowa R. Civ. P. 1.265. Rule 1.265(1) states:

> The court may amend the certification order at any time before entry of judgment on the merits. The amendment may do the following:
>     a. Establish subclasses.
>     b. Eliminate from the class any member who was included in the class as certified.
>     c. Provide for an adjudication limited to certain claims or issues.
>     d. Change the relief sought.
>     e. Make any other appropriate change in the order.

The trial court's duty to ensure compliance with the class action rules continues after certification of the class, and the court may decertify the class after the initial certification if appropriate. *Vos*, 667 N.W.2d at 46. The court remains free to modify the order in light of subsequent developments in the litigation. *Id.* Based on the characteristics of this litigation, including the potential for individual questions to supplant common questions and problems ascertaining class members, the Court will modify this order if appropriate.

## ORDER

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Class Certification is **GRANTED**.

SO ORDERED this 16th day of March, 2007.

RICHARD G. BLANE II,
District Judge, Fifth Judicial District of Iowa

Clerk: ___ J __V/C__ ) U ___ X

22

COPIES TO:

All Counsel of Record

**[If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your ADA Coordinator at 515-286-3394. (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942.)]**

**Tab 23**

IN THE DISTRICT COURT OF SCOTT COUNTY, KANSAS

| | | |
|---|---|---|
| PREMIER PORK, INC., on behalf of itself, and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 00 C 3 |
| RHONE-POULENC, S.A., et al, | ) ) | |
| Defendants. | ) ) ) | |

# MEMORANDUM DECISION AND JOURNAL ENTRY
# ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

This case comes before the Court on Plaintiff's Amended Motion for Class Certification. The Plaintiff has filed its brief in support thereof and the Defendants have filed their responses, pleadings, and briefs. All parties have had an opportunity to present oral arguments to the Court.

Plaintiff is requesting that this Court certify a class consisting of persons and firms who were indirect purchasers of methionine in Kansas. Plaintiff claims that the Defendants have conspired among themselves to fix, maintain, raise, or stabilize the price of methionine that has been sold in Kansas. Plaintiff claims that Defendants' conspiracy increased the price of methionine and that this increase was passed on through the distribution chain from the Defendants to their direct purchasers, then to feed resellers and ultimately to the end user who

were Kansas livestock producers. Plaintiff alleges that the Defendants have violated the Kansas antitrust law, K.S.A. 50-101, et seq.

Before certifying a class of indirect purchasers, the Plaintiff must meet the four requirements established by K.S.A. 60-223 (a). The Plaintiff in this case seeks to establish a class pursuant to K.S.A. 60-223(b)(3).

The class action statutes of Kansas, K.S.A. 60-223, et seq., are patterned after the Federal Rules of Civil Procedure 23 and the decisions of the federal court interpreting that rule are traditionally followed in this jurisdiction (*Steele v. Security Benefit and Life Insurance Company*, 226 Kan. 631 and *Brueck v. Krings*, 6 Kan. App. 2d, 622).

The courts in determining if a matter is suitable to be maintained as a class action generally take the allegations of the Plaintiff's Petition as true, and the courts apply their common sense to those allegations.

The determination of a class action is procedural in nature and has nothing to do with whether or not a party will prevail upon the merits (*Winters v. Kansas Hospital Services Assocation, Inc.*, 1 Kan. App. 2d 64).

The first requirement for a class certification is that "the class is so numerous that joinder of all members is impracticable," K.S.A. 20-223(a)(1). Plaintiffs are not required to prove the exact size of the proposed class but only that the number is exceedingly large. (*Rex v. Owens*, 585 F. 2d 432)(10th Cir. 1978). Plaintiff alleges that the members of the class are so numerous that joinder is impracticable, and that although the exact number of Plaintiff's class members is presently known, the class will number in the thousands. The class members are

geographically dispersed throughout the state of Kansas in a state which is dominated by agriculture and livestock production. The Defendants do not seriously contest numerosity, and the Court finds that Plaintiff has satisfied this requirement.

The next issue is to determine whether "there are questions of law or fact common to the class," K.S.A. 60-223(a)(2). There need only be a single issue common to all members of the class (*Shutts v. Phillips Petroleum Company*, 235 Kan. 195). Either a common question of law or common question of fact will be deemed sufficient. Factual differences in the claims of the class members should not result in a denial of class certification when common questions of law or fact exist. Every member of the class need not be in a situation identical to that of the named Plaintiff (*Ritch v. Martin Marietta Corp.*, 522 F. 2d 333) (10th Cir. 1975). The commonality requirement is to be liberally construed (*Gray v. Amoco*, 1 Kan. App. 2d 338). The commonality requirement permits varied factual situations among individual class members so long as the claims of the named Plaintiff and other class members are based on the same legal "remedial theory" (*Realmonte v. Reeves*, 169 F.3d 1280) (10th Cir. 1999.)

Plaintiff seeks to prosecute this action on behalf of all indirect purchasers in the State of Kansas who bought methionine for end use as an animal feed additive indirectly from any of the defendants.

It is clear that the same legal theory would apply to a right of recovery for all proposed class members if proven. The legal theory, which encompasses common factual questions, that is common to all class members is whether or not the Defendants, or any of them, entered into

3

a conspiracy, which was effectuated, to fix, maintain, stabilize or control the price of methionine that they manufactured and sold for ultimate consumption by the end user.

The Court finds that Plaintiff has satisfied the commonality requirement.

The third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," K.S.A. 60-223(a)(3).

A Plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to a claim of other class members, and his or her claims are based on the same legal theory (*Stuart v. Rubin*, 948 F. Supp. 1077). The law does not require a named Plaintiff to be the perfect class member, or even the best available (*Helmley v. Ashland Oil, Inc.*, 1 Kan. App. 2d, 532). That case also stands for the proposition that for the named class representatives position to be atypical, the Defendants must show that a conflict exists which goes to the very subject matter of the litigation. The standard for meeting the typicality requirement is not "identical" or "perfectly typical."  The typicality criterion focuses on whether there exists a relationship between the Plaintiff's claim and the claims alleged on behalf of the class. As with the commonality requirement, the claims or defenses need not be identical (*In Re Aluminum Phosphide Antitrust Litigation*, 160 F.R.D. 609) (D. Kan. 1995). Differences in the methods of purchase, kinds of products purchased among class members, differences in price, varying competitive environments, differences in the distribution chain, all of which are asserted by Defendants, have not been held to bar a finding of typicality (*In Re Catfish Antitrust Litigation*, 826 F. Supp. 1019 ) (N.D. Mis. 1993).  Plaintiff claims it is typical if it arises from the same event or practice or course of conduct that gives rise to the

4

claims of the other class members and that his or her claim is based on the same legal theory. The purpose of the typicality requirement is to ensure that the named Plaintiff's interests are aligned with those of the proposed class, and in pursuing their own claims, the named Plaintiff will also advance the interest of the class (*Emig v. American Tobacco Company, Inc.*, 184 F.R.D. 379) (D. Kan. 1998). What is important as far as typicality is concerned is that the named Plaintiff and the rest of the class members "shared common objectives and legal or factual positions" (*Shutts*, 235 Kan., at 208). The overriding consideration typifying many antitrust claims are the need to prove that there is a conspiracy to fix prices in violation of the antitrust laws, that the prices are fixed pursuant thereto, and that the plaintiffs purchased products at prices which, as a result of the conspiracy, were higher than they should have been (*In Re Aluminum Phosphide*, 160 F.R.D. at 613).

Plaintiff does not have claims antagonist to other proposed class members. All indirect purchasers rely on the same theories of liability against the Defendants. The evidence and testimony offered by Plaintiff to attempt to prove the Defendants engaged in illegal conduct and a conspiracy will be the same for every claim.

Plaintiff has satisfied the typicality requirement.

The fourth requirement is that "the representative party will fairly and adequately protect the interests of the class," K.S.A. 60-223(a)(4).

Whether this requirement has been met depends on the answer to the following two questions: (1) Does the class representative have any kind of material conflict of interest with the class with respect to the common questions involved, and, (2) Will counsel vigorously

prosecute the action on behalf of the class? (*Olenhouse v. Commodity Credit Corp*, 136 F.R.D. 672) (D. Kan. 1991); (*Zapata v. IBP, Inc.*, 167 F.R.D. 147) (D. Kan. 1996).  A single Plaintiff may represent the entire class, no matter how small his claim may be, if other factors indicate that he will fairly and adequately protect the interests of the class," (*Epstein v. Weiss*, 50 F.R.D. 387).

There is no evidence that Plaintiff has any interests which are antagonistic to those of the proposed class members with respect to the claims asserted.  In proving its own claims, Plaintiff must necessarily prove the claims of the other members of the class.

The statute also requires that the class be adequately represented by counsel and that counsel pursue a vigorous prosecution of the case.  It is clear that counsel for Plaintiff are experienced attorneys in handling complex, class action litigation.  They are aggressively prosecuting this action and appear competent to adequately represent the Plaintiff and the class.

In addition to satisfying the requirements of numerosity, commonality, typicality, and adequacy of representation under K.S.A.60-223(a), Plaintiff must also demonstrate that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for fair and efficient adjudication of their claims.  K.S.A. 60-223(b)(3).

One of the fundamental objectives of the class action litigation is to allow numerous small claimants to join together and sue as one when prosecution of their individual claims would otherwise be impractical.

Where there is a central or overriding issue for a common nucleus of operative facts, the predominance test is satisfied (*Esplin v. Hirschi*, 402 F.2d 94) (10th Cir. 1968). The issues of conspiracy, monopolization, and conspiracy to monopolize have been viewed as central issues which satisfy the predominance requirement. (See *Gold Strike Stamp Company v. Christensen*, 436 F.2d 791) (10th Cir. 1970). Individual damage questions do not ordinarily preclude a (b)(3) class action when the issue of liability is common to the class (*Commander Properties Corp. v. Beech Aircraft Corp.*, 164 F.R.D. 529) (D. Kan. 1995). Courts have repeatedly focused on the liability issues, in contrast to damage questions, and, if they found issues were common to the class, have held that the requirements of (b)(3) are satisfied.

Plaintiff's expert, Dr. Keith Leffler, Ph.D., is of the opinion that if the Plaintiff is successful in proving a conspiracy to fix prices and allocate markets, then basic economic principles will show that the proposed class members paid higher prices during the class period for methionine and for feed products containing methionine as a result of that price-fixing conspiracy. He goes on to say that a basic economic principle shows that prices will be higher when costs are higher, and that all of the proposed class members would have been affected. Dr. Leffler has consulted a report that Dr. Deramus used in the federal direct purchaser case to calculate the overcharges to those direct purchasers. Dr. Leffler intends to use a standard statistical approach known as regression analysis to determine the relationship among variables; e.g., one variable in this case is the impact on the price to end users (the dependent variable) from the changes in the price of methionine (an independent variable).

7

Defendants' expert, Dr. Robert W. McLeod, vigorously challenges every facet of Dr. Leffler's declaration.  Dr. McLeod asserts that Dr. Leffler's methods are inappropriate because of the diverse distribution chain to end users of methionine in Kansas, the possibility that a price-fixed increase was not passed to the end user, but absorbed by some party in the distribution chain, that perhaps the feed market industry is not as competitive as assumed by Plaintiff, that there are naturally occurring amino acids that compete with methionine making it impossible to determine whether or not and in what amount price-fixed methionine may have been used; and, finally, that it will simply be impossible to determine whether a class member was injured, and if so, to what extent. This last allegation goes to the protestations of the Defendant that they will be denied their right to a jury trial by each class member to determine whether or not that class member had, in fact, been injured and if so, to what extent. At class certification, Plaintiff is not required to prove its case (*Eisen*, 399 F.2d at 566; *In Re Catfish Antitrust Litigation*, 826 F. Supp. at 1042).  Class certification is not the time to resolve a battle of experts, and Plaintiff need only make a threshold showing that antitrust violations, if proven at trial, has a common impact on the class. The Court has decided for the purposes of establishing a class that Plaintiff has made the required threshold showing. The Court is convinced at this stage of the proceeding that Plaintiff's claim can be evaluated without being overwhelmed by so many individual issues that certifying a class status would be completely impracticable.

The Court must consider whether or not a class action would be superior to any other form of action to resolve the controversies at hand. Because of the number of potential class

members, the Court finds that none of the alternative types of actions are feasible. An individual claimant's damage may be so small and the cost of litigating a claim of this type so large as to prevent any practical person from bringing an action except as a member of the class. The superiority of class action litigation under these circumstances is obvious. There are no other practical alternatives. Failure to certify the class would likely result in no remedy for plaintiff and the persons whom it represents.

The Court has heard and construed the class action requirement liberally and resolved all doubts in favor of the class certification (*Arch v. American Tobacco Company*, 175 F.R.D. 469) (E.D. DA 1997).

The Court finds that as a matter of law that plaintiff has satisfied the requirements of K.S.A. 60-223(a) of numerosity, commonality, typicality, and adequate representation and the requirements of K.S.A. 60-223(b)(3) of predominance and superiority, and, therefore, it is the finding and order of this Court that the Motion for Class Certification shall be and is hereby granted.

It is, therefore, ordered, adjudged and decreed that Plaintiff's Motion for Class Certification pursuant to K.S.A. 60-223 is sustained and the class is defined as follows: "All persons and entities (excluding all government entities, defendants, and other manufacturers of methionine and their respective subsidiaries, affiliates, officers and directors who purchased methionine in the State of Kansas or intend to use as an animal feed additive (excluding test feed for dogs, cats, birds and fish) indirectly from any of the Defendants at any time during the period January 1, 1985, through the end of 1998."

9

IT IS FURTHER ORDERED that Plaintiff give notice of this class certification to all interested parties in the manner and as provided by law.

IT IS SO ORDERED.


_____
THOMAS F. RICHARDSON
District Judge

## Certificate of Mailing

I, Nancy S. Swanson, Official Court Reporter, hereby certify that I filed the original of the above and foregoing Order with the Clerk of the District Court of Scott County, Kansas, and that I served a true and correct copy of the above and foregoing Order by depositing same in the United States mail, first class postage prepaid, on the 1st day of May, 2004, to:

David J. Rebein
Rebein Bangerter PA
810 Frontview
P.O. Box 1147
Dodge City, KS 67801

Isaac L. Diel
Diel & Seelman, PC
4121 West 83rd Street, Suite 254
Prairie Village, KS 66208

Todd R. Seelman
Diel & Seelman, PC
Wells Fargo Center
1700 Lincoln Street, Suite 3900
Denver, CO 80203

Keen Brantley
Wallace, Brantley & Shirley
325 Main Street
P.O. Box 605
Scott City, KS 67871

Melissa Nandi
Michelle Fischer
Geoffrey Brown
Halle Butler
Jones Day
Northpoint
901 Lakeside Avenue
Cleveland, OH 44114-1190

John Majoras
Jones Day
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113

Trammell Newton
Jones Day
500 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3542

Steven A. Kanner
Douglas A. Miller
Much, Shelist, Freed, Dennenberg,
Ament, Rubenstein & Bell
200 N. LaSalle, Suite 2200
Chicago, IL 60601

Joel C. Meredith
Steven J. Greenfogel
Krishna Narne
Meredith, Cohen, Greenfogel & Skirnick
Architects Building, 22nd Floor
17th & Sansom Streets
Philadelphia, PA 19103

Rex A. Sharp
Gunderson, Sharp & Walke, P.C.
4121 West 83rd Streeet, Suite 256
Prairie Village, KS 66208

Daniel R. Karon
Law Office of Daniel Karon
1422 Euclid Avenue, Suite 150
Cleveland, OH 44115

Anthony Rupp
Amy E. Morgan
Shughart, Thompson & Kilroy, P.C.
9225 Indian Creek Parkway, Suite 1100
Overland Park, KS 66210

Sutton Keany
Bryan R. Dunlap
Andrew M. Behrman
Winthrop, Stimson, Putnam & Roberts
One Battery Plaza
New York, NY 10004-1490

Jeffrey A. LeVee
Peter G. McAllen
Emma Killick
Jones Day
555 West Fifth Street, Suite 4600
Los Angeles, CA 90013-1025

11

Christopher S. Maynard
Jones Day
2727 North Harwood Street
Dallas, TX 75266-0623

Tim J. Moore
Morris, Laing, Evans, Brock & Kennedy,
  Chartered
200 West Douglas, 4th Floor
Wichita, KS 67202-3084

Craig H. Millet
Jeffrey T. Thomas
Kevin Roosevelt
J. Fred Neuman
David Segal
Gibson, Dunn & Crutcher LLP
Four Park Plaza, Suite 1400
Irvine, CA 92614-8557

Thomas V. Murray
Barber, Emerson, Springer, Zinn&
  Murray
1211 Massachusetts Street
P.O. Box 667
Lawrence, KS 66044-0667

David Balabanian
Hollly A. House
Joy K. Fuyuno
Colin West
David Fallek
Tyler Theis
Susanne Caballero
Vitoria Wong
Bringham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067

Donald C. Klawiter
Peter Halle
Tara L. Reinhart
John C. Truong
Corinne Richardson
Gregory Wells
Gayle Grabow-Wallace
Vu Bui
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004

James A. Walker
Jerald W. Rogers
Triplett, Woolf & Garretson, LLC
2959 North Rock Road, Suite 300
Wichita, KS 67226

NANCY S. SWANSON
Official Court Reporter

**Tab 24**

**IN THE DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS** FILED
**CIVIL COURT DIVISION**

|  |  |
|---|---|
| IN RE VITAMIN ANTITRUST LITIGATION | ) |
|  | ) |
|  | ) |
| CANDACE TODD, on behalf of herself and all others similarly situated, | ) |
|  | ) |
| Plaintiffs, | ) |
| v. | ) |
| F. HOFFMAN-La ROCHE, LTD., et al., | ) |
|  | ) |
| Defendants. | ) |

2006 MAR 10 PM 4: 16

CLERK DISTRICT COURT
WYANDOTTE COUNTY KANSAS

BY                DEPUTY

Master Case No. 98-C-4574
Honorable Ernest L. Johnson
Division 5

Relates to the following class cases:
*Beef Belt Feeders, Inc., et al. v. F. Hoffman-LaRoche, et al.*, CV-00-C-01 (Scott County)
*Premier Pork, Inc. v. F. Hoffman-LaRoche*, CV-00-C-04 (Scott County)
*Grain Sorghum Hogs, Inc. v. Lonza Inc., et al.*, CV-00-C-21 (Scott County)
*Premier Pork, Inc. v. Nepra Inc., et al.*, CV-00-C-14 (Scott County)

### JOURNAL ENTRY FOR CLASS CERTIFICATION OF A CHOLINE CHLORIDE CLASS AGAINST DEFENDANTS DUCOA AND DCV

On March 2, 2006, Plaintiffs' motion for class certification filed January 9, 2006,

came on for a hearing by agreement of the parties. Robb King appeared on behalf of

Defendants DCV, Inc. and DuCoa, L.P. (hereafter "Defendants"). Rex A. Sharp

appeared on behalf of Plaintiffs. Over Defendants' objection, the Court finds that,

pursuant to K.S.A. 60-223, class certification is appropriate.

Specifically, the Court finds and concludes for purposes of class certification as

follows:

1. <u>Class Definition</u>: The certified class shall be defined as:

> All natural persons and business entities (whether as sole
> proprietorships, partnerships, corporations or other business
> organizations) in the State of Kansas who indirectly
> purchased, not for resale, choline chloride or products

> containing choline chloride in the State of Kansas to use as
> an animal feed additive (excluding pet food) from 1988 and
> to the December 31, 1998 ("the Class Period").

Choline chloride products means (1) B4 (choline chloride); (2) choline chloride animal

feed premixes containing and/or incorporating such choline chloride; and (3) other

choline chloride products containing and/or incorporating such choline chlorides sold to

Plaintiffs and other purchasers in the State of Kansas.

2. <u>Numerosity</u>: Under K.S.A. 60-223(a)(1), the Class members are so numerous and

dispersed throughout the State that joinder of all members in one lawsuit would be

impractical. Kansas law suggests that 20-30 class members, especially if dispersed

throughout the State, is sufficient for numerosity. <u>Shupbach v. Continental Oil Co.</u>, 193

Kan. 401, 394 P.2d 1, 5(1964) (allegation of 23 class members sufficient); <u>Shutts v.</u>

<u>Phillips Petro. Co.</u>, 222 Kan. 527, 567 P.2d 1292, 1315(1977) (<u>Shutts I</u>) (citing a case for

certification with less than 30 participating members); <u>Sternberger v. Marathon Oil Co.</u>,

257 Kan. 315, 894 P.2d 778, 807 (1995) (38 subclass members). "A reasonable estimate

of the number of class members who may be involved is sufficient. .... A court can use

its common sense to reach its determination." <u>Bellinder v. Microsoft Corp.</u>, 2001 WL

1397995, *1 (Sept. 7, 2001) (citations omitted). The Class, with membership numbering

in the hundreds of feedlots, easily fulfills the numerosity requirement.

3. <u>Commonality</u>: Under K.S.A. 60-223(a)(2), there are questions of law and/or questions

of fact which are common to the Class and the class members if the case were tried

individually by class members. "There need only be a single issue common to all

members of the class." Bellinder, 2001 WL 1397995 at *2 (citing <u>Shutts v. Phillips</u>

<u>Petroleum Co.</u>, 235 Kan. 195, 212, 679 P.2d 1159 (1984) (<u>Shutts II</u>) ("couched in the

disjunctive: common question of fact **or** law.  It does not, therefore, require the presence of both a common question of fact and a common question of law.")). "The commonality requirement permits varying factual situations among individual members of the class so long as the claims of the named plaintiffs and other class members are based on the same legal or remedial theory." Id. at *2.  Class members would assert the same Kansas antitrust legal theory. In addition, courts have almost uniformly embraced the position that price fixing conspiracy cases allege claims unquestionably common to all putative class members.  In re Corrugated Container Antitrust Litigation, 80 F.R.D. 244, 247 (S.D. Tex. 1978).

In this case, evidence regarding the following issues is common to all members of the Class; (1) whether Defendants agreed to fix and raise prices for choline chloride products; (2) whether proof of the first issue in prior criminal or civil suits constitutes collateral estoppel in this case, and (3) whether those higher prices impacted the prices paid by class members. While the liability question of (1) alone is usually sufficient to certify the class, there are other common issues in this case. This requirement is plainly satisfied.

3.  Typicality: Under K.S.A. 60-223(a)(3), the Plaintiffs' claims are typical of the claims of the Class.

> The typicality criterion focuses on whether there exists a relationship between the Plaintiffs' claims and the claims alleged on behalf of the class. As with the commonality requirement, the claims or defenses need not be identical. In re Aluminum Phosphide Antitrust Litigation, 160 F.R.D. 609, 613 (D.Kan.1995). Differences in the methods of purchase, kinds of products purchased among class members, and difference in price, as Microsoft asserts here, have been held not to bar a finding of typicality, Id.; In re Catfish Antitrust Litigation, 826 F.Supp. 1019, 1036-1037 (N.D.Miss.1993). A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other

3

> class members, and his or her claims are based on the same legal theory.... What is important as far as typicality is concerned is that the named Plaintiffs and the rest of the class members "share common objectives and legal or factual positions." _Shutts, 235 Kan. at 208, 679 P.2d 1159_. The overriding considerations typifying many antitrust claims are the need to prove that there is a conspiracy to fix prices in violation of the antitrust laws, that the prices are fixed pursuant thereto, and that the Plaintiffs purchased products at prices which, as a result of the conspiracy, were higher than they should have been.

Bellinder, 2001 WL 1397995 at *3-4 (citations omitted). The typicality requirement focuses on the class representative's claims..., not on the defendant's defenses against the class representative. Id. at *3 (citation omitted).  The factual and legal claims of Plaintiffs are the same as for the Class. Both will have to prove that a price fixing conspiracy existed, that Defendants were part of it, and that the conspiracy was effective in raising Kansas prices for choline chloride.

4.  Adequacy: Under K.S.A. 60-223(a)(4),  Plaintiffs, Premier Pork, Inc.[1], Grain Sorghum Hogs Inc., and Beef Belt Feeders, Inc., are adequate class representatives for the Class. "The law does not require a named plaintiff be the perfect class member, or even the best available." Helmley v. Ashland Oil, Inc., 1 Kan. App.2d 532, 537, 571 P.2d 345 (1977). A "plaintiff cannot be an adequate representative if he or she has a conflict of interest with class members [that goes] to the heart of the litigation.... Conflicts which have resulted in a finding of inadequacy include competition between class members and the existence of business negotiations between class members and the defendant." Bellinder, 2001 WL 1397995 at *4. No such conflicts have been shown here. Plaintiffs' Lead Counsel, Gunderson, Sharp & Walke, LLP and The Law Offices of

---

[1] Premier Pork, Inc. has been found adequate before in the Kansas antitrust class action involving methionine, which after class certification and extensive discovery, was settled and payment made to class members.

4

Isaac L. Diel, are adequate class counsel. Indeed, they are responsible for half of the

contested class certification orders under Kansas antitrust law, as well as a few of the

settled classes. Adequacy is met.

5. Predominance: Under K.S.A. 60-223(b)(3), common questions of law and/or fact for

the Class predominate over any questions affecting only individual Class members.

> Where there is a central or overriding issue or a common nucleus of
> operative facts, the predominance test is satisfied…Again, the issues of
> conspiracy, monopolization and conspiracy to monopolize have been
> viewed as central issues which satisfy the predominance requirement…
> [2]Individual damage questions do not ordinarily preclude a (b)(3) class
> action when the issue of liability is common to the class… Courts have
> repeatedly focused on the liability issues, in contrast to damage questions,
> and, if they found issues were common to the class, have held that the
> requirements of (b)(3) are satisfied.

Bellinder, 2001 WL 1397995 at *5 (citations omitted).

But here, not only will the liability issue be predominantly, if not exclusively,

common, but so will proving causation/impact. In Bellinder, the same expert as here

proposed using a common proof method to prove impact of the higher prices on the class:

> Plaintiffs' expert, Dr. Keith B. Leffler, Ph.D., opines the fact and amount
> of antitrust injury can be proved as to each individual class member
> utilizing common proof, and that any overcharge paid by class members
> can be accurately estimated using basic economic principles. Leffler
> Affidavit at ¶ 5. For instance, Dr. Leffler cites to economic literature for
> the proposition that in a market with no close substitutes (as Plaintiffs
> contend here with the operating system market), some increase in price or
> overcharge is almost always passed on to the end-user. Leffler Affidavit at
> ¶ 8. Therefore, Plaintiffs claim that at least the *fact* of injury can be shown
> with some certainty.

Id. at *6. Dr. Leffler proposes to do the same thing in this case. His methodology and

---

[2] "[P]redominance [of common issues] is a test readily met in certain cases . . . involving
violations of antitrust laws." Amchem, 521 U.S. at 625. See also Newberg on Class
Actions § 18.28 at 18-98, 99 ("As a rule, the allegation of a price-fixing conspiracy is
sufficient to establish predominance").

economic analysis for class certification was also relied on by the court in Premier Pork, Inc. v. Rhone-Poulenc, S.A., et al., Case No. 00-CV-3, Scott County District Court (Judge Tom Richardson certified a contested class of indirect purchasers of methionine, an amino acid in livestock feed). His method is more than sufficient.

Finally, though not necessary for class certification, id. at *7, Dr. Leffler also proposes to use common proof to show the amount of damages to the Class, much as he did in Bellinder and Premier Pork:

> Dr. Leffler concludes that the *amount* of antitrust injury can be calculated using standard, yardstick methodologies. He proposes doing this by measuring the difference between the price a Kansas end-user paid for Microsoft's WINDOWS software and the price they would have paid absent Microsoft's alleged unlawful conduct. Leffler Affidavit at ¶ 12. This "but-for" price can be ascertained by using any one of three yardsticks: the comparable market yardstick, the competitive margin yardstick, and the violation-free-period yardstick. Leffler Affidavit at ¶ 12. Under the comparable market yardstick, one would compare the prices charged for WINDOWS to the price of products from a comparable market not affected by anticompetitive activity. …By subtracting the price the Kansas consumer paid for WINDOWS from the but-for price, Leffler is able to calculate the amount of any overcharge; and consequently, the amount of antitrust injury.
> Next, Leffler proposes using the competitive margin yardstick. Using this method, one compares the margins earned by sellers in a comparable market free from antitrust violations to the margins earned by sellers in the alleged anticompetitive market. …
> Finally, Leffler proposes using the violation-free-period yardstick. Under this theory, one compares the price of WINDOWS being charged during the alleged anti-competitive time period with the price of WINDOWS being charged during a period free of anti-competitive conduct.

Bellinder, 2001 WL 1397995 at *6. The same common methods of proof can be used here. Indeed, it may be easier and more common in this case because Kansas allows the "full consideration" or "price paid" damages to be awarded for an antitrust violation. K.S.A. 50-115.

6

Often Defendants offer a counter-expert, but none was presented here. Had it been, it would have been of no consequence because class certification is not the place to resolve a "battle of the experts", rather that is for the jury to determine. Id. at *7. The common factual and/or common legal issue for the Class predominate over issues related only to individual to class members, if there are any.

6. Superiority:  Under K.S.A. 60-223(b)(3), a class action is a superior means for protecting the interests of all of the Class members and superior to all other available methods for the fair and efficient adjudication of this controversy. No other alternative to a class action has been suggested to actually determine these issues for the Class, and none appear to exist.  See Bellinder, 2001 WL 1397995 at *8 (finding that class member damages would be too small relative to the cost of pursuing an individual lawsuit that "as a practical matter no rational person would bring the action except as a member of a class").  A class action is the superior, if not the only, way to adjudicating the rights of the class members.

7. Kansas Class Certification Orders:  Kansas courts have certified *every contested* indirect purchaser class action brought to date.  Daric Smith v. Philip Morris et al., Case No. 00-CV-26, Seward County District Court (Judge Tom Smith certified a contested class of cigarette consumers from 1993-January 2002); Bellinder v. Microsoft Inc., 2001 WL 1397995, Case No. 99 CV 17089, Johnson County District Court (Judge Lawrence Sheppard certified a contested class of indirect purchasers of a Microsoft operating system); Donelan v. Abbott Laboratories, Inc., Case No. 94-C-709, Sedgwick County District Court (Judge Paul Buchanan certified a contested class of indirect purchasers of infant formula)(tried to a jury, defense verdict); Chance v. UST, (Judge Kim Schroeder

certified a contested class of indirect purchasers of moist snuff); <u>Hall v. Leegin Creative Leather Products</u>, Case No. 04-CV-1668, Sedgwick County District Court (Court certified a contested class of indirect purchasers of Brighton products); <u>Premier Pork, Inc. v. Rhone-Poulenc, S.A., et al.</u>, Case No. 00-CV-3, Scott County District Court (Judge Tom Richardson certified a contested class of indirect purchasers of methionine, an amino acid in livestock feed).[3]

IT IS HEREBY ORDERED that Plaintiffs satisfy the requirements of numerosity, commonality, typicality, adequate representation, predominance and superiority under K.S.A. 60-223 and that their motion for class certification should be and is granted.

IT IS FURTHER ORDERED that Plaintiffs shall give notice of this class certification to interested persons in the manner and as provided by law.

IT IS FURTHER ORDERED that pursuant to K.S.A. 60-216(b), counsel of record for Plaintiffs and Defendants convene a case management conference and prepare a case management order for the Court's approval. The court will reserve setting a date for trial until a discovery schedule has been established.

---

[3] Numerous other Kansas indirect purchaser cases have been certified as settlement classes. An example of this is the recent Sorbates Indirect Purchaser case of <u>Williams Foods v. Eastman Chemicals</u>, 2001 WL 1298887, Case No. 99C16680 District Court of Johnson County, Kansas (Aug. 8, 2001) (sorbates indirect purchaser class); <u>Premier Pork, Inc. v. Rhone-Poulenc, S.A., et al.</u>, Case No. 00-CV-3, Scott County District Court (Judge Robert J. Frederick, Jan. 31, 2006); and this case for various vitamin purchases on April 3, 2002. <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689, 710 (1997), holds that a settlement class certification and a contested class certification are the same except for "trial manageability" since with a settlement there is no trial. Trial manageability is not a problem here as the choline chloride antitrust case has already been tried to a jury in federal court. <u>See</u> verdict against DuCoa and DCV in <u>Animal Science Products Inc. v. Chinook Group, Ltd.</u>, MDL 1285 (June 13, 2003).

Ordered: March ___, 2006.

Ernest L. Johnson
District Court Judge

3/10/6

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of March, 2006, a true and correct copy of the above and foregoing was transmitted via e-mail or U.S. Mail, postage prepaid, to:

The original to:

Wyandotte County Clerk
Wyandotte County Courthouse
710 N. 7th St.
Kansas City, KS 66101

John W. Cowden
Baker Sterchi Cowden & Rice, L.L.C.
2400 Pershing Road, Ste. 500
Kansas City, MO 64108-2504
(816) 471-2121
(816) 472-0288, fax
*Attorneys for Defendant Bioproducts, Incorporated and Reilly Industries, Inc.*

Lynn S. McCreary
Bryan Cave LLP
7500 College Blvd., Ste 1100
Overland Park, KS 66210
(913) 338-7700
(913) 338-7777, fax
*Attorneys for Defendant Nepera, Inc.*

James D. Griffin
Blackwell Sanders Peper Martin LLP
2300 Main St., Ste. 1000
Kansas City, MO 64108
(816) 983-8000
(816) 983-8080, fax
*Attorneys for Defendant Lonza, Inc. and Lonza AG*

Gordon E. Wells, Jr.
Carrie E. Josserand
Lathrop & Gage L.C.
10851 Mastin Blvd.
Building 82, Suite 1000
Overland Park KS 66210
(913) 451-5100
(913) 451-0875, fax
*Attorneys for Defendant Chinook Group, Inc., and Chinook Group Limited*

W. Robert "Robb" King
Couch, Pierce, King & Hoffmeister
12 Corporate Woods, Ste 370
10975 Benson Drive
Overland Park, KS 66210
(913) 451-8430
(913) 451-8897, fax
*Attorneys for Defendant DuCoa L.P. and DCV, Inc.*

Rex A. Sharp

**Tab 25**

# IN THE DISTRICT COURT OF SEWARD COUNTY, KANSAS

DARIC SMITH, on behalf of himself,
and all others similarly situated,

Plaintiffs

vs.

Case No. 00-CV-26

PHILIP MORRIS COMPANIES, INC.,
PHILIP MORRIS INCORPORATED,
PHILIP MORRIS INTERNATIONAL INC.,
R.J. REYNOLDS TOBACCO COMPANY,
BRITISH AMERICAN TOBACCO CO. LTD.
BROWN & WILLIAMSON TOBACCO CORP.,
LORILLARD TOBACCO CO.,
LIGGETT GROUP, INC.,
BROOKE GROUP, LTD

Defendants

## JOURNAL ENTRY OF DECISION BY THE COURT UPON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

The Plaintiffs have filed their Motion and Brief herein requesting this Court to certify this case as a Class Action pursuant to K.S.A. 60-223.

The Defendants have filed their briefs in opposition to the Motion for Class Certification.

Both parties have had an opportunity to present their oral argument to the Court upon this issue.

The Plaintiff is requesting this Court certify a class consisting of persons who were indirect purchasers of cigarettes in Kansas. It is the claim of the Plaintiffs that the Defendants have conspired among themselves to fix, maintain, raise, or stabilize the prices of

cigarettes that have been sold in Kansas. The Plaintiff claims the Defendants by way of this conspiracy increased the price of cigarettes and this increase was passed on through the distribution of the cigarettes from the Defendants to their wholesalers, then to their jobbers or sub-jobbers and on down to the retailers so that upon purchase by Kansas consumers, the prices of the cigarettes were artificially increased, fixed or maintained.

The class that the Plaintiffs seek to certify is defined as follows.

"All natural persons who indirectly purchased cigarettes in the State of Kansas for consumption and not for resale from any of the Defendants, or any parent, subsidiary or affiliate thereof or their co-conspirators at any time from November 1, 1993 to the present."

The Plaintiffs allege that the Defendants have violated provisions of K.S.A. 50-101, 50-115, 50-132 and seek treble damages under K.S.A. 50-801.

This Court finds that before certifying a class of indirect purchasers, the Plaintiff must meet the four requirements established by K.S.A. 60-223(a) and the additional burden of predominance and superiority under K.S.A. 60-223(b)(3).

The class action statutes of Kansas, K.S.A. 60-223 et seq., are patterned after the Federal Rules of Civil Procedure 23 and the decisions of the federal courts interpreting that rule are traditionally followed in this jurisdiction. Brueck v. Krings, 6 Kan. App. 2d. 622.

In considering a matter for class action certification the Court has no authority to conduct a preliminary inquiry into the merits of a suit in order to determine as to whether or not it should be maintained as a class action. Eisen v. Carlisle and Jacqueling, 417 U.S. 156.

It is fundamental law that a trial court must be afforded substantial discretion in its decision making process as to whether or not to maintain an action as a class action. Connolly v. Frobenius, 2 Kan. App. 2d. 18.

Courts in determining if a matter is suitable to be maintained as a class action, generally take the allegations of the Plaintiffs' Petition as true, and the courts apply their common sense to those allegations.

The determination of a class action is procedural in nature and has nothing to do with whether or not a party will prevail upon the merits. Winters v. Kansas Hospital Service Association, Inc., 1 Kan. App. 2d. 64.

As to the first requirement, that being numerosity under K.S.A. 60-223(a), there can be no serious claim that this case is not certifiable as a class action for numerosity.

The party seeking class certification need not show the exact size of the class and the Court can use and rely upon its own common sense to reach a determination upon the requirement of numerosity.

The Plaintiff has satisfied this Court that the proposed class, those persons purchasing cigarettes in Kansas, are too numerous to join in a single action without class certification.

Likewise, to require each aggrieved person to prosecute individual actions against one or more of the Defendants would amount to an absurdity.

The requirement of commonality under K.S.A. 60-223(a)(2) requires a determination that there are questions of law or fact common to the class.

The commonality requirement permits varying factual situations among various individual members of the class, just so long as the claims of the named plaintiff and other class

Page 3

members are based upon the same legal theory. There need be only one common issue to all members of the class and either a common question of law or a common question of fact is sufficient. Shutts v. Phillips Petroleum Company, 235 Kan. 195.

The commonality requirement is to be liberally construed. Gray v. Amoco, 1 Kan. App. 2d. 338.

To justify a class action, the question must be one of common or general interest to the members of the proposed class and the cause of action must affect all parties attempted to be included as a class, and the proposed class member must have complaints and rights to relief common to all. Felten Truck Line, Inc. v. State Board of Tax Appeals, 183 Kan. 287.

It is the claim of the Plaintiffs that they are filing this action on behalf of all persons who indirectly purchase cigarettes in the state of Kansas for consumption and not for re-sale from any of the Defendants or their subsidiaries or affiliates.

It is clear that the same legal theory would apply to a right of recovery of all proposed class members if proven. The legal theory that is common to all class members is whether or not the Defendants entered into a conspiracy or agreement and, in fact, did fix, maintain, stabilize or control the price of cigarettes they manufactured and sold for ultimate resale to consumers. There is a common question of fact that is common to all members of the proposed class, that being whether or not the Defendants and their co-conspirators agreed to fix, maintain, raise or stabilize the prices of cigarettes that they manufactured for sale through various jobbers or wholesalers. Additionally, common issues of fact are whether or not the agreement was ever implemented by the parties, if, indeed, it existed, and whether or not the conspiracy restrained commerce in any manner in the State of Kansas. There are several other common questions of fact in this action that apply to all of the proposed class members.

The Defendants appear to claim that there is no common question of law or fact among the proposed class members.

The Defendants argue against class certification because they claim that each proposed class member that purchased cigarettes did so by paying different prices and, therefore, each member of the proposed class would be entitled to a different amount of relief from the Defendants.

The Plaintiff claims that the proposed class would be entitled to damages based upon the full consideration paid to retailers for cigarettes manufactured and placed in the stream of commerce by the Defendants.

It is this full consideration claim for damages that the Defendants' claim destroys the commonality of K.S.A. 60-223(a)(2) and also the predominance requirement under K.S.A. 60-223(b)(3).

This Court considers the full consideration paid for the cigarettes at retail to be a measure of damage and not a common question of law or fact as to whether or not the Defendants entered into a conspiracy to fix, raise, or maintain the price of the cigarettes they manufactured and sold to their distributors.

The common claim that is common to the class representative and the proposed class members is that there was a conspiracy by the Defendants to fix, raise, or stabilize the price of cigarettes in violation of Kansas Anti-Trust Laws. Proof of a conspiracy and its affect are the same upon the class representative as the proposed class members.

The requirement under K.S.A. 60-223(a)(3) is that of typicality. The question here becomes whether or not the claims of the class representative are typical of the claims of the proposed class.

It is clear to this Court, and there seems to be no serious question in this proceeding, that the claims of the class representative are typical of that of the proposed class members. The Plaintiff's claim is typical if it arises from the same event or practice of conduct that would give rise to the claims of the other class members and if those claims are based on the same legal theory. A conspiracy to raise, fix or maintain the price of goods in commerce, when that conspiracy acts to raise, fix, or maintain the price of those goods when purchased at retail creates typicality between class representative and the members of the proposed class.

The class representative is a person who claims that he has purchased cigarettes in the State of Kansas for consumption and not for resale from one or more of the Defendants or their subsidiaries or affiliates.

Clearly, the claims of the class representative are typical of those of the proposed class members.

There is no showing by the Defendants that a conflict exists between the position of the class representative and the proposed class themselves. Hemley v. Ashland Oil, 1 Kan. App. 2d. 532.

The adequacy of representation under K.S.A. 60-223(a)(4) requires a determination as to whether the representative plaintiff will fairly and adequately protect the interest of the proposed class.

Adequacy means whether or not the class representatives have interests that conflict with the other members of the proposed class or not and whether the class representative's legal counsel are qualified to prosecute the action.

What constitutes adequate representation in a class action is a question of fact to be determined by the trial court based upon the circumstances of each case. Shutts v. Phillips Petroleum Company, 235 Kan. 195.

The Court has reviewed the submissions by the Plaintiff and counsel for the Plaintiff and finds that the Plaintiff has no interests which are antagonistic to the proposed class with respects to the claims that are asserted in this case. Furthermore, the Court finds that counsel for the Plaintiffs are experienced and qualified to prosecute this litigation.

The affidavit submitted by counsel for the Plaintiff have been reviewed by the Court and the Court is convinced of the adequacy of representation.

This Court finds that all of the requirements of K.S.A. 60-223(a)(1 through 4) have been met by the Plaintiff in this proceeding.

It is the further claim of the Plaintiffs in this proceeding that the requirements of K.S.A. 60-223(b)(3) have been met.

The Defendants dispute the claim of the Plaintiffs that the Plaintiffs have made in meeting the requirements of K.S.A. 60-223(b)(3).

The Defendants stress to the Court that there is a unique complexity in the business of the Defendants that makes it impossible for the Plaintiffs to satisfy the requirements of the predominance of common questions of fact or law to the members of the class that predominate over questions affecting only individual members of the class.

It is the requirement of K.S.A. 60-223(b)(3) that before class certification can be granted, the court must find that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Page 7

The Defendants show to the court that it is the business of these Defendants to manufacture cigarettes which in turn they sell to wholesalers or jobbers who in turn sell to sub-jobbers, who in turn sell the same cigarettes to the retailers from whence they are purchased by the consumers who are the proposed members in this proceeding.

The Defendants point out that there are many things in their industry which are unique in the method of sales from the Defendant manufacturers to the next level for the distribution of cigarettes.

There are sales considerations, promotions, price reductions based on volume, which are in turn passed on by the first level of wholesaler to the next level and at each succeeding level down to the retailers who often pass on or do not pass on, whatever the case may be, these promotions or discounts to the consumers.

It is the primary argument of the Defendants that consumers pay a variety of prices for the cigarettes they have purchased and consumed in Kansas.

The Defendants point out that during the class period the prices paid by the proposed class members for cigarettes have varied widely. The retail prices differ depending on what discounts or promotions were affecting the price of the cigarettes at any particular time.

The Defendants claim, and the Plaintiffs do not dispute, that the Defendants did not and could not control the retail pricing of cigarettes offered by the retailers because of the price competition engaged in by retailers.

In the Defendant's proposition to this Court that the questions of law or fact common to the members of the class do not predominate over questions affecting only individual members is premised upon the claim by the Defendants that since each consumer or each

member of the proposed class could have paid a different price for the cigarettes consumed, the questions affecting only individual members predominate over those of the class members.

The Court does not accept this proposition.

What the Defendants are talking about are damages.

The very existence of a conspiracy is an issue that is common to all members of the proposed plaintiff class. In other words, this Court finds that if a conspiracy to control pricing by the Defendants that had the affect of increasing, stabilizing or maintaining the price that the Defendant sold their cigarettes to in the initial step of placing the product into commerce for later and ultimate purchase and consumption by the proposed class is proven then that is a common issue to each class member.

There is but a single conspiracy claimed by the Plaintiffs in this case and if it is proven, it affects all of the proposed class members equally.

In addition to proving the conspiracy existed, the proof will necessitate that of implementation of the conspiracy.

The damages the Plaintiffs will be bound to prove is that damage was inflicted upon the class by the price fixing conspiracy.

As to the damages, it is not required at class certification that the Plaintiff prove their case, but only present a logical, reasonable method for determining the damages of the entire class.

This Court finds that the requirements of K.S.A. 60-223(b)(3) are clearly satisfied by the submissions of the Plaintiffs. The Court is convinced that the questions of law or fact that are common to the member of the class predominate over any questions of law or fact affecting

only individual members and that a class action is clearly superior as a method of adjudicating the fair and efficient controversy that exists.

This Court finds as a matter of law that the Plaintiff has satisfied the requirements of K.S.A. 60-223(a) of numerosity, commonality, typicality and adequate representation and the requirements of K.S.A. 60-223(b)(3) of predominance and superiority and, therefore, it is the finding and order of this Court that the motion for class certification shall be and is hereby granted.

IT IS, THEREFORE, ordered, adjudged, and decreed that the Plaintiff's Motion for Class Certification pursuant to K.S.A. 60-223 is sustained and the class is defined as follows:

"All natural persons who indirectly purchased cigarettes in the State of Kansas for consumption and not for resale from any of the Defendants, or any parent, subsidiary or affiliate thereof or their co-conspirators at any time from November 1, 1993 to the present."

IT IS FURTHER ORDERED that the Plaintiff shall give notice of this class certification to all interested parties in the manner as provided by law.

IT IS SO ORDERED.

Dated this _15d_ of November, 2001.

Tom R. Smith, District Court Judge

Page 10

# CERTIFICATE OF SERVICE

I, Renata McCulloch, hereby certify that I mailed a true and correct copy of the above Journal Entry by United States mail, postage prepaid and properly addressed on the _15th_ day of November, 2001 to:

Kerry McQueen
Attorney at Law
P.O. Box 2619
Liberal, KS 67905-2619

Rex A. Sharp
Attorney at Law
4121 W. 83rd St., Ste. 256
Prairie Village, KS 66208

Larry B. Spikes
Attorney at Law
100 N. Broadway, Ste. 500
Wichita, KS 67202-2205

Jeff P. DeGraffenreid
Attorney at Law
100 N. Broadway, Ste. 700
Wichita, KS 67202

James A. Walker
Attorney at Law
2959 N. Rock Road, Ste. 300
Wichita, KS 67226

Isaac L. Diel
Attorney at Law
1600 Genessee Street, Ste. 356
Kansas City, MO 64102

Debra Egli James
Attorney at Law
P.O. Box 1247
Salina, KS 67402-1247

Daniel H. Diepenbrock
Attorney at Law
P.O. Box 2677
Liberal, KS 67905-2677

David J. Rebein
Attorney at Law
P.O. Box 1147
Dodge City, KS 67801

James R. Eiszner
Attorney at Law
1200 Main Street, 42nd Floor
Kansas City, MO 64105-2118

and the original to:

Rhonda Truhlar
Clerk of the District Court
415 N. Washington, Ste. 103
Liberal, KS 67901

Renata McCulloch, Admin. Asst.

Page 6

**Tab 26**

TRIPLETT, WOOLF & GARRETSON
151 North Main, Suite 800
Wichita, KS  67202-1409
(316) 265-5700

FILED
A.B.P.C. DOCKET NO. _____

MAY 3  3 13 PM '95

CLERK OF THE DISTRICT COURT
18TH JUDICIAL DISTRICT
SEDGWICK COUNTY KAS
BY _____

IN THE EIGHTEENTH JUDICIAL DISTRICT
DISTRICT COURT, SEDGWICK COUNTY, KANSAS
CIVIL DEPARTMENT

CHERYL DONELAN, on her own          )
behalf and on behalf of all         )
others similarly situated           )
within the State of Kansas,         )
                                    )
            Plaintiff,              )
                                    )
    vs.                             )       Case No. 94 C 709
                                    )
ABBOTT LABORATORIES, INC.           )
BRISTOL-MYERS SQUIBB CO.,           )
and MEAD JOHNSON & CO.,             )
                                    )
            Defendants.             )
_____)
Pursuant to Chapter 60,
Kansas Statutes Annotated

## ORDER OF CLASS CERTIFICATION

NOW on this 1st day of March, 1995, this matter comes regularly on for hearing on plaintiff's Motion for an Order pursuant to K.S.A. § 60-223(c)(1) determining that this case may be maintained as a class action on behalf of the class defined in paragraph seventeen (17) of her Petition.  Plaintiff appears personally, and by and through her respective counsel of record. Defendants appear by and through their respective counsel of record.

THEREUPON, plaintiff makes her opening statement by and through her counsel of record and, thereafter, defendants make their opening statements by and through counsel of record.

1995 0001; 093 2458

THEREUPON, plaintiff introduces her evidence and rests.

THEREUPON, defendants introduce their evidence and rest.

THEREUPON, after hearing the evidence, reading the briefs filed herein, reviewing the Court file, hearing arguments of counsel and being otherwise fully and duly advised in the premises, the Court makes the following findings and orders:

1.    THE COURT FINDS that the proposed class is defined and described as follows:

> All persons who indirectly purchased one or more brands of infant formula manufactured by ABBOTT, ROSS, BRISTOL-MYERS, and/or MEAD JOHNSON, except for infant formula sold under the Gerber brand name in the State of Kansas during the period January 1, 1980, to December 31, 1992.[1]

2.    THE COURT FURTHER FINDS that the proposed class satisfies the four (4) prerequisites of K.S.A. § 60-223(a) and the requirements of K.S.A. § 60-223(b)(3).

3.    THE COURT FURTHER FINDS that, as is appropriate and timely during the course of these proceedings, pursuant to K.S.A. § 60-223(d), it should enter further appropriate orders in the conduct of this action, as a class action, including, without limitation, orders relating to the notice to be provided to the plaintiff class, which by this Order the Court has now certified.

IT IS THEREFORE ORDERED, DECREED AND ADJUDGED that this action is to be maintained as a class action by the named plain-

---

[1]    The parties agree that parents who received infant formula through the Kansas Special Supplemental Food Program for Women, Infants and Children ("WIC") program did not "purchase" the formula; and, therefore, such consumers are not a part of the class plaintiff represents.

tiff, individually, and on behalf of all others similarly situated,
which class consists of those persons described above.

_Paul Buchanan_

THE HONORABLE PAUL BUCHANAN
DISTRICT COURT JUDGE

APPROVED:
Michael D. Hausfeld
Daniel A. Small
COHEN, MILSTEIN, HAUSFELD & TOLL
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005-3934
        and
Samuel D. Heins
Kent Williams
HEINS, MILLS & OLSON
700 Northstar East
608 Second Avenue South
Minneapolis, MN  55402
        and
FLEESON, GOOING, COULSON & KITCH, LLC

By _Richard I. Stephenson_
    Richard I. Stephenson, #06273
    Attorneys for Plaintiff


Todd A. Gale
KIRKLAND & ELLIS
300 South Grand Avenue
Los Angeles, CA  90071
        and
MORRIS, LAING, EVANS, BROCK
 & KENNEDY, CHARTERED

By _Joseph W. Kennedy_
    Joseph W. Kennedy, #05466
    Attorneys for Defendant Abbott
        Laboratories

Paul R. Vardeman
Cathy J. Dean
POLSINELLI, WHITE, VARDEMAN & SHALTON
700 West 47th Street, Suite 1000
Kansas City, MO  64112
        and

1995  0001   093 2460

Max R. Shulman
Bradley J. Kurkowski
CRAVATH, SWAINE & MOORE
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019
    and
TRIPLETT, WOOLF & GARRETSON, LLP

By   _____
    James A. Walker, #09037
    Attorneys for Defendants
    Bristol-Myers Squibb Co. and
    Mead Johnson & Co.

1995 0001   093 2461

66455.

    - 4 -

**Tab 27**



COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                        SUPERIOR COURT
                                                   CIVIL ACTION
                                                   NO. 03-5038 BLS
                                                   (Judge van Gestel)

IN RE:  MASSACHUSETTS SMOKELESS
TOBACCO LITIGATION

MEMORANDUM AND ORDER
ON MOTION FOR CLASS CERTIFICATION

This matter is before the Court on a motion by the plaintiff seeking certification of a

class, (Paper #43).  The request for certification is pursuant to G.L. c. 93A.  The motion is

opposed.

The Court will take its guidance from the recent decision of the Supreme Judicial Court

("SJC") in Aspinall v. Philip Morris Companies, Inc., 442 Mass. 381 (2004).  Aspinall is a class

action brought pursuant to G.L. c. 93A against what was then called the Philip Morris

Companies, claiming that the defendants misled the public into buying "Marlboro Lights"

cigarettes believing that those cigarettes would deliver lower levels of tar and nicotine.  In fact, it

is alleged, that the defendant companies had intentionally designed the product so that most

smokers would receive as much or more tar and nicotine than if they had smoked regular

cigarettes.

In Aspinall the plaintiffs filed a motion for class certification, alleging that the market

price of Marlboro Lights was higher than it would have been had the cigarettes been honestly

advertised and, therefore, all purchasers of the product paid more because of the deception.  In

the Superior Court, a class was certified consisting of all purchasers of Marlboro Lights in

Massachusetts during the four years preceding the filing of the complaint.

Arguing that successful prosecution of the case would require proof that the alleged deceptive advertising caused each member of the class actual harm, which, in turn, would require individual proof of the smoking habits of each class member, the defendants in Aspinall convinced a Single Justice of the Appeals Court to decertify the class. Thereafter, on leave to appeal the Single Justice's decision, the SJC, *sua sponte*, transferred the case to it.

The SJC affirmed the Superior Court's order for class certification. The SJC reasoned that if the allegations in the plaintiffs' complaint are true, then there is no question that sales of Marlboro Lights occurred under circumstances that made the sales deceptive under G.L. c. 93A. The court concluded that a class action was an appropriate method (indeed, the only practical method) whereby purchasers of Marlboro Lights in Massachusetts could seek redress for the alleged deception.[1]

There is remarkable similarity between the facts in Aspinall and the facts here. The plaintiff here, and the class he seeks to represent, are Massachusetts consumers of moist snuff tobacco products in the Commonwealth. The plaintiff alleges that the defendants engaged in specific unfair methods of competition and unfair and deceptive acts, including unlawfully attempting to maintain a near monopoly over the moist snuff smokeless tobacco business. As a result of the defendants' conduct, the plaintiff, and the purported class, are alleged to have paid more for moist snuff smokeless tobacco and were denied choices for such products, including lower-priced choices, and also had product choices limited.

---

[1] Further, the SJC observed that should the plaintiffs fail in their proof that the class paid more for the product because of the deception, the class members would still be entitled to statutory compensation under G.L. c. 93A, sec. 9(3) for their injury suffered when they purchased (and smoked) a product that was not, as they were misled into believing, lower in tar and nicotine.

2

Having reviewed the several filings, affidavits and memoranda, and having considered the parties' oral arguments, this Court finds that the plaintiff, on behalf of the class he seeks to have certified, has provided information sufficient to enable the Court to form a reasonable judgment that: the use or employment by the defendants of the unfair or deceptive acts or practices alleged has caused similar injury to numerous other persons similarly situated; the putative class representative adequately and fairly represents such other persons; the putative class representative brings the action on behalf of himself and such other similarly injured and situated persons; and, therefore, the certification requirements are met. Aspinall, supra, 442 Mass. at 391-392. See also Weld v. GlaxoWellcome, Inc., 434 Mass. 81, 87 (2001); Baldassari v. Public Fin. Trust, 369 Mass. 33, 40 (1975).

ORDER

For the foregoing reasons, this Court certifies this case as a class action pursuant to G.L. c. 93A, and defines the class as follows:

> All similarly situated consumer purchasers residing in the Commonwealth of Massachusetts (excluding governmental entities, defendants, and subsidiaries and affiliates of defendants) who, in Massachusetts, indirectly purchased from the defendants, for their own use and not for resale, moist snuff tobacco products between January 1, 1990 and the present and were overcharged or otherwise suffered similar injury as a result of the defendants' unfair methods of competition and unfair and deceptive acts and practices.

_____
Allan van Gestel
Justice of the Superior Court

DATED:        December 7, 2004

3

**Tab 28**

**RECEIVED**

OCT 21 2003

**THE FURTH FIRM LLP**

STATE OF SOUTH DAKOTA                                           IN CIRCUIT COURT

COUNTY OF HUGHES                                          SIXTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| VICKI HAGEMANN, | ) | CIV. NO. 94-221 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER GRANTING** |
| | ) | **CLASS CERTIFICATION** |
| ABBOTT LABORATORIES, INC., | ) | |
| BRISTOL-MYERS SQUIBB CO., and | ) | |
| MEADE JOHNSON & CO. | ) | |
| | ) | |
| Defendants. | ) | |

THIS MATTER having come before the Court on October 20, 1995 upon plaintiff's Motion

for Class Certification, the parties having submitted memoranda regarding same, and the Court having

considered the arguments of counsel, the legal memoranda and other pertinent documents and being

fully advised herein, now, finds, for reasons more fully stated in the Findings of Fact and Conclusions

of Law attached hereto, that the requirements of SDCL 15-6-23(a) and (b) have been satisfied and

that the class shall be certified.  Therefore,

IT IS HEREBY ORDERED that the class shall be certified as follows:

> All persons who, at any time from January 1, 1980 through December
> 31, 1992 purchased infant formula in the state of South Dakota
> indirectly from Abbott Laboratories, Bristol-Myers Squibb Co., and/or
> Mead Johnson & Co., except for infant formula sold under the Gerber
> brand name, for consumption by an infant and not for resale.

Further, IT IS ALSO ORDERED that Plaintiff Vicki Hagemann is a suitable representative

for the above-named class and shall be the Class Representative in this action.

Dated: _NOV. 21_, 1995

STATE OF SOUTH DAKOTA
CIRCUIT COURT, HUGHES CO.
**FILED**

NOV 21 1995

_____
JAMES W. ANDERSON
Circuit Court Judge

classcer.ord/kmg

_Mary L. Erickson_ CLERK

By_____ Deputy

**Tab 29**

STATE OF WISCONSIN        CIRCUIT COURT        DANE COUNTY
BRANCH 9

---

TOM CAPP,

        Plaintiff,

    v.

                                 Case No. 00 CV 0637

MICROSOFT CORPORATION,
a Washington corporation,

        Defendant.



F I L E
JUL 2 5 2001
CIRCUIT COURT DANE COUNTY, Wi

---

### ORDER CERTIFYING CLASS ACTION

The Plaintiff's Motion to Certify Action as Class Action (the "Class Certification Motion") filed on March 7, 2000, came on for hearing before this Court on June 29, 2001, at 9:00 a.m.; Plaintiff Tom Capp having appeared by his counsel, Turner & Massch, by Mark A. Maasch, of San Diego, California; Defendant Microsoft Corporation ("Microsoft") having appeared by its counsel, Quarles & Brady, by Stuart Parsons, of Milwaukee, Wisconsin, Sullivan & Cromwell, by Justin Daniels, of New York, New York, and Montgomery, McCracken, Walker & Rhoads, by Peter Breslauer, of Philadelphia, Pennsylvania; and the Court having thoroughly reviewed and considered the memoranda and materials submitted by the parties together with the statements and arguments of counsel and all of the records on file, and after doing so, finding and concluding, for the reasons more fully stated in my bench decision which has been transcribed, that the requirements of Wis. Stats. § 803.08 have been satisfied and that the class proposed in Plaintiffs' First Amended Complaint dated March 15, 2000, should be certified.

QBMKE\5089005.1

108—1

NOW, THEREFORE, IT IS HEREBY ORDERED, as follows:

1. That Microsoft's Motion to Compel and Motion for Evidentiary Hearing are denied;

2. That Plaintiffs' Motion to Certify Action as Class Action shall be and is GRANTED;

3. That the class certified shall be and is as follows:  All end user licensees of Windows 98 residing in the State of Wisconsin as to whom Microsoft has an electronic mail address that is computer-accessible by Microsoft;

4. That Tom Capp be certified as the class representative;

5. That John L. Cates and Mark A. Maasch be appointed as lead counsel for the class; and

6. That an appropriate notice be sent to the members of the class as soon as practicable after the class certification issue is decided in Milwaukee, and this Court has had an opportunity to consider consolidating actions within this state.

Dated this 25 day of July, 2001.

Hon. Gerald Nichol
Dane County Circuit Court Judge

2

**Tab 30**

STATE OF WISCONSIN    CIRCUIT COURT    MILWAUKEE COUNTY

RICHARD R. CARLSON AND
DIANE FRENCH, on behalf of
themselves and all others
similarly situated,

      Plaintiffs,

    v.

ABBOTT LABORATORIES, INC.,;

BRISTOL-MYERS SQUIBB CO.,; and

MEAD JOHNSON & CO.,

      Defendants.

RECEIVED

NOV 10 2003

THE FURTH FIRM LLP

CLASS ACTION
CASE NO. 94-CV-002608
CODE: 30301 Money Judgment

**FILED**

**22** MAR 2 3 1995 **22**

GARY J. BARCZAK
CLERK OF CIRCUIT COURT

---

ORDER

---

    A hearing having been held in this consolidated action on February 27, 1995 before the Honorable William J. Haese in his courtroom at the Milwaukee County Courthouse on the plaintiffs' motion for class certification, the Attorney General's motion to intervene, the defendants' motion for permission to file surreply brief in opposition to the Attorney General's motion to intervene, and the defendants' motion for summary judgment; plaintiff Richard Carlson having appeared by Beth J. Kushner of Gibbs, Roper, Loots & Williams, S.C., and by Kent Williams of Heins, Mills & Olson; plaintiff Diane French having appeared by Michael J. Cohen of Meissner & Tierney, S.C., and by Atty. Todd R. Seelman, Atty. Thomas H. Brill, and Atty. Isaac L. Diel; defendants Bristol-Myers Squibb and Mead Johnson having appeared by James Clark of Foley & Lardner; defendant Abbott Laboratories

having appeared by Dan Conley of Quarles & Brady; and the State of Wisconsin having appeared by Kevin O'Connor, Roy Korte and David J. Gilles, and the Court being well advised in the premises;

IT IS ORDERED:

1.   The Court finds that the requirements of Wis. Stat. § 803.08 have been satisfied and grants the plaintiffs' motion to certify this consolidated action as a class action on behalf of the following class of persons:

> All persons who currently reside in the State of Wisconsin and who, at any time between January 1, 1980 and December 31, 1992 indirectly purchased (other than for resale) one or more brands of infant formula for consumption by newborn infants in the State of Wisconsin from Abbott Laboratories, Inc., Ross Laboratories, Bristol-Myers Squibb Company, and/or Mead Johnson & Company, except for infant formula sold under the Gerber brand name.

2.   The Court appoints Richard Carlson and Diane French as class representatives, and Beth Kushner of Gibbs, Roper, Loots & Williams, S.C. as lead counsel for the class.

3.   The Court denies the Attorney General's motion to intervene in this action.

4.   The Court denies the defendants' motion to file a surreply brief in opposition to the Attorney General's motion to intervene on the grounds that such motion is moot.

5.   The Court denies the defendants' motion for summary judgment dismissing this action.

Dated this 23rd day of March, 1995.

                                BY THE COURT:

                                _____
                                William J. Haese
                                Circuit Court Judge