## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION, | MDL No. 05-1717-JJF |
| PHIL PAUL, on behalf of himself and all others similarly situated, | C.A. No. 05-485-JJF |
| Plaintiffs, | CONSOLIDATED ACTION |
| v. | |
| INTEL CORPORATION, | |
| Defendants. | |

## DEFENDANT INTEL CORPORATION'S MOTION TO EXTEND TARGET DATES FOR CLASS CERTIFICATION BRIEFING

Defendant Intel Corporation ("Intel") respectfully requests that the Court extend the date set for its Opposition to Class Plaintiffs' Motion for Class Certification and the associated Expert Report from July 31, 2008 to November 21, 2008. As explained below, this extension is required to complete the collection and analysis of the third-party discovery requested by Class Plaintiffs, necessary to Intel's defense of the class certification motion, essential to this Court's Rule 23 analysis, and formed the basis for Class Plaintiffs' five requested extensions.

### I. INTRODUCTION

By any reasonable measure, discovery in this multidistrict litigation has been massive and labor-intensive. To date, Intel has produced the equivalent of at least 145 million electronic pages of documents. *See* Ripley Decl., ¶ 2. Intel, the Class Plaintiffs, and AMD (the "Parties") have also collectively served over eighty subpoenas on OEMs, distributors and retailers, the vast majority of which requested data relevant to the sale of x86 microprocessors. *See id.*, ¶ 6.

To deal with the immense discovery burden, the Class Plaintiffs and Intel adopted "target" dates for class certification. These targets were intended to be benchmarks for measuring progress rather than rigid deadlines. In each prior instance, the Parties treated them as such. The Class Plaintiffs requested no fewer than five extensions over the past two years to accommodate the reasonable time demands of requisite discovery and Intel agreed to those requests. The Class Plaintiffs have now changed the process. They filed their Motion for Class Certification, and oppose Intel's request that the briefing schedule be extended due to pending third-party discovery.

A review of the Class Plaintiffs' motion demonstrates that it is premature. Although Intel and the Class Plaintiffs, under the watchful eye of Special Master Poppiti, have achieved significant progress in collecting the evidence that is critical to the Court's assessment of the Class Plaintiffs' class certification request, critical portions of the evidence have not been produced or analyzed. This third-party discovery bears directly on the Class Plaintiffs' claim that their case is suitable for class treatment, including their counterintuitive overcharge pass-through theory of damages. The Class Plaintiffs concede as much, in that their class expert, at numerous points in his report, emphasizes that his analysis is either preliminary or incomplete, and expressly reserves the right to modify or supplement his analysis and conclusion after receiving and analyzing the third-party discovery at issue, some of which the Class Plaintiffs first sought less than three weeks before filing their motion.

Based on Intel's best current estimates, this outstanding third-party discovery will not be completed until mid- to late-July. In order to permit the Class Plaintiffs' class expert sufficient time to review this discovery so that Intel can examine him on conclusions that are neither preliminary or incomplete; to permit Intel and its class expert sufficient time to analyze the

2

information and the Class Plaintiffs' class expert's fully-informed conclusions; and to permit Intel to properly incorporate this discovery into its Opposition, Intel respectfully requests that the Court extend the target date for its Opposition and rebuttal class expert report until November 21, 2008.

## II.    FACTUAL BACKGROUND

### A.    History of the Parties' Class Certification Target Dates

Throughout the more than two years since discovery commenced, Intel has consistently maintained that the Class Plaintiffs' claim that the consumer actions are suitable for class treatment must rely heavily on information and sales data that reside nowhere but in the files of third parties. The Class Plaintiffs agreed. They not only recognized the importance of third-party data to their indirect purchaser claims, but have sought five prior extensions based on the need to complete third-party discovery.

On April 20 and again on May 4, 2006, the Parties held a pretrial conference in accordance with Federal Rule of Civil Procedure 26(f). *See* (C.A. No. 05-1717, D.I. 79; C.A. No. 05-485, D.I. 25) (May 16, 2006 Case Management Order) at 2. Soon after, on May 16, 2006, the Parties submitted a proposed Case Management Order ("First CMO"), ultimately adopted by this Court, that governs discovery for all the cases in MDL 1717. *See id.* In the First CMO, Intel and Interim Class Counsel agreed to a tentative class certification schedule, with opening briefs scheduled to be filed on March 16, 2007. *See id.* at 4. The Parties always understood that this schedule comprised "target" dates that were dependent on the timely completion of discovery. *See id.* Of particular concern was the production of third-party data from OEMs, distributors and retailers, who were outside the control of the Parties and required subpoenas. *See* Ripley Decl., ¶ 3. This understanding was reflected in the First CMO, which states that "the achievability of these target dates is dependent on the timing of the production of

third-party data and testimony that Intel believes is essential to its class certification defense."
First CMO at 4.

As the Parties expected, obtaining the necessary third-party data has turned out to be a massive undertaking. The Parties first spent considerable time determining which third parties to subpoena and for which categories of information, ultimately deciding on a list of over sixty-five companies, which were then subpoenaed on June 22, 2006. *See* Ripley Decl., ¶ 5.   The subpoenas generally sought two types of information:  Documents and communications relating to the purchase, marketing and sale of x86 microprocessors (and the products that contain them); and transactional sales data showing the cost at which x86 microprocessors (and the products that contain them) were purchased and sold.  The transactional data would be necessary to support the Class Plaintiffs' theory that alleged overcharges to Intel's direct purchasers were "passed through" to consumers.

Nearly every third party objected to the Parties' subpoenas. *See id.*, ¶ 7.  As a result, Intel and the Class Plaintiffs (along with AMD) were forced to negotiate the scope with each objecting third party. *See id.*  These negotiations were multidimensional; progress with the third parties' objections often required negotiations among the Parties to present a generally unified position on scope. For example, progress with some third parties has been slowed down because of disagreements over data with no material relevance to class issues, such as a third parties' documents and sales data relating to its non-US sales. *See id.*

The complexity of this third party (and Party) document and data discovery has repeatedly bested the Parties' thoughtful, but ultimately optimistic, target dates.  Prior to the September 27, 2006 scheduling conference, the Parties filed a joint status report and proposed agenda asking the Court to re-set the target dates for the class certification so that briefing would

begin on July 6, 2007. *See* (C.A. No. 05-1717, D.I. 274; C.A. No. 05-485, D.I. 198) (Joint Status

Conference Report and Proposed Agenda for September 27, 2006 Status/Scheduling Conference)

at 3. The Parties agreed the extension was necessary because of delays in the Rule 34 document

exchange between Intel and AMD, which in turn set back the start of third-party discovery. *Id.*

The status report also recognized that third-party discovery "remains an open issue with

negotiations ongoing." *Id.* at 4. The Court accepted the extension of the target dates, noting that

amendment to the Rule 34 document exchange between AMD and Intel would cause some "push

back" on the class certification schedule. *See* (C.A. No. 05-1717, D.I. 287) (September 27, 2006

Case Management Conference Transcript) at 40:18-21.

The Parties again proposed new target dates for class certification in the March 7, 2007

status conference, this time pushing back the briefing to September 7, 2007. *See* (C.A. No. 05-

1717, D.I. 406; C.A. No. 05-485, D.I. 297) (Joint Proposed Status Conference Report And

Agenda For March 7, 2007 Status Conference) at 2-3.[1] Again, in the status conference report,

Intel reiterated that its agreement to the new dates was based on the assumption that third-party

discovery would be complete by March 31, 2007. *Id.* at 2.

The class certification target dates were pushed back jointly three more times before

reaching the current schedule.[2] Although not explicitly reiterated in the later stipulations filed by

---

[1] These dates were ultimately stipulated to and placed into a proposed order adopted by the Court on March 16, 2007. *See* (C.A. No. 05-1717, D.I. 410; C.A. No. 05-485, D.I. 301) (Stipulation And Order Regarding Class Certification Briefing And Discovery).

[2] This was accomplished through stipulations filed with the Court on August 16, 2007, November 21, 2007, and February 29, 2008. *See* Docket Items 571, 661, and 772. A primary driver for some of these extensions was the Parties' negotiations concerning the production of Intel and AMD sales data. The scope, size, and complexity of the data led to on-going negotiations and production that lasted from January 2007 until December 26, 2007, when the parties formalized their understandings regarding the scope and format of Intel's and AMD's respective sales data productions. Intel began its sales data production on December 27, 2007 and completed the production of 25,000,000 transaction records around February 14, 2008. As

the Parties, Intel made clear to Interim Class Counsel that Intel's agreement to, and ability to meet, each new target date was contingent upon completion of third-party discovery. *See* Ripley Decl., ¶ 8.

**B.    Current State of Third-Party Discovery**

With the assistance of the Special Master, the Parties have obtained data and documents from numerous third parties. Nevertheless, discovery from a significant number of third parties remains outstanding, as outlined in the Parties' March 10, 2008 report to the Special Master. *See* (C.A. No. 05-1717, D.I. 808; C.A. No. 05-485, D.I. 662) (Joint Report). Each of the third parties listed below continues to negotiate meaningfully, but the dynamics for that process, as described above, have taken longer than anticipated.

**Dell**.    Dell has provided a data sample of one day per year – days that it chose – so the Parties could observe the data fields that Dell tracks from its consumer sales; in other words 0.2% of the sales at issue in the Class Plaintiffs' claims. The Class Plaintiffs have been trying – without success as of yet – to design a sampling methodology that is random and structured in a manner to reflect adequately the universe of data observations that it intends to represent. Dell has informed the Parties that it could take some time to complete a data extract once the scope is determined. In addition, while Dell has made an initial installment of its document production, it is now running an additional set of search terms for an additional installment.

**Hewlett Packard**.    HP had a data extract that it had produced for another litigation, which the Parties first thought would satisfy this matter's data needs as well. However, the Parties later determined that the data was insufficient. HP has produced a data sample for review, and the Parties have proposed a sampling methodology based on HP's description of its

---

part of the negotiations and the productions, there have been a series of question and answer conferences relating to the data, which Intel anticipates will continue into the summer. *See* Ripley Decl., ¶ 9.

database, but, to date, no data beyond the sample has been produced. After extended negotiations for custodial data, HP has collected approximately 388,000 documents for internal review and is conducting word searches as agreed to by the Parties; some of those word searches are still being negotiated. Document production is expected to begin once the word search issues have been resolved and review by HP is complete.

**IBM/Lenovo (US)**. The Parties have not yet received consumer sales data for several years in the middle of the Class Plaintiffs' alleged damage period, which corresponds to IBM's sale of its consumer computer business to Lenovo. IBM and Lenovo are trying to determine which company possesses the data. Further, with respect to Lenovo sales data post-IBM; the parties have just negotiated a data sample from Lenovo, which the Parties expect in the next two weeks. With respect to custodial information, IBM's production is substantially complete; the Parties are waiting for Lenovo's final production, which should occur this month.

**Fujitsu North America**. Fujitsu North America has produced a small data sample for review, but the Parties are still negotiating the scope of that production. The Parties are awaiting Fujitsu North America's estimated completion date for its production of custodial information.

**Sony Electronics Ltd**. The Parties and Sony Electronics have agreed to the scope of the data production; Intel estimates that the data production will run through June on a rolling basis.

The data for Dell, HP, and IBM/Lenovo described above represents an estimated 36 percent of the Intel-based computers sold in the United States during the alleged damage period. Moreover, 38 of the named representatives purchased either a Dell or HP computer. The Parties also expect that additional third parties will be providing needed data over the next few months.

With respect to the Distributor and Retailer data, it is expected that its production will be substantially complete by June 15, 2008. Intel notes, however, that Interim Class Counsel has refused to provide Intel a set of the Fry's Electronics' data, the production of which Interim Class Counsel successfully compelled on January 28, 2008, and on which their class expert relies. *See* (C.A. No. 05-1717, D.I. 720; C.A. No. 05-485, D.I. 583) (Memorandum Order granting motion to compel data from Fry's Electronics); (C.A. No. 05-1717, D.I. 920; C.A. No. 05-485, D.I. 756). (Declaration of Keith B. Leffler) ("Leffler Report"), ¶ 103; Ripley Decl., ¶ 11. The Class Plaintiffs' continuing refusal to provide this data may further delay Intel's ability to analyze the third-party data needed for its Opposition.

Once the document and data discovery described above is completed, Intel expects that it will need limited deposition discovery of selected third parties to understand the information that has been provided.

Class Plaintiffs' recent discovery admits the relevance of the third-party discovery to their motion. In addition to the outstanding issues with the existing third-party production, on May 2, 2008, the Class Plaintiffs issued subpoenas to another sixteen companies. *See* Ripley Decl., ¶ 12. Subpoenas were sent to following companies: ABS Computer Technologies, Inc., Ann Arbor Computer Systems, Inc., Ateck Computers, Inc., Central Computer Systems, ClickAway Corporation, Computer Essentials, Computer Help, Inc., The Computer Place, Inc., ESYS, Flextronics, Premio, Inc., RV's Computers, Inc., Southgate Computers, Inc., Systemax Inc., Vertex Computer International Corp., ZT Systems. The Class Plaintiffs' class expert has stated that he intends to rely on this data for part of his analysis. *See* Leffler Report, ¶¶ 109-110. At this point, it is not clear when this information will be produced to the Parties.

Finally, despite the fact that the Parties spent significant time negotiating the scope and structure of Intel's sales data production, the Class Plaintiffs for the first time this month issued a document request asking for sales and cost data for Intel's other product lines, including network microprocessors, controllers, non-x86 architecture microprocessors, and flash memory. *See* (C.A. No. 05-1717, D.I. 869; C.A. No. 05-485, D.I. 711) (Plaintiffs' Second Request for the Production of Documents). The Class Plaintiffs' class expert, again, has stated in his report that he intends to analyze these sales as potential benchmarks from which to estimate the Class Plaintiffs' purported damages. Leffler Report, ¶¶ 73-78.

## III. INTEL'S REQUESTED EXTENSION IS JUSTIFIED IN LIGHT OF THE STATE OF THIRD-PARTY DISCOVERY AND THE NON-FINAL STATUS OF THE CLASS PLAINTIFFS' CERTIFICATION ANALYSIS

Intel seeks an extension of slightly less than four months from the current target date within which to file its Opposition Brief and Rebuttal Class Expert Report. This request is a direct result of the Class Plaintiffs' premature filing of their class certification motion, supported by a class expert report that is preliminary and incomplete on nearly every material conclusion reached in support of the expert's opinion that this case is suitable for class treatment. In turn, every instance of preliminary findings or incomplete analysis is the result of the unfinished data discovery as described above. The requested extension will permit the Parties to complete the collection of the necessary third-party data and to analyze that data. It will also provide the Class Plaintiffs' class expert an opportunity to review the data so that when Intel deposes that expert, the lack of data will not be a basis for him to decline opining on critical class issues. Finally, it will allow Intel to incorporate all of this needed information into its opposition brief.

A.    **The Class Certification "Target Dates" Were Intended To Be
      Flexible And Depended On The Completion of Third-Party
      Discovery**

The class certification target dates in this case always have been targets, rather than rigid

deadlines.  Indeed, the Parties explicitly referred to those dates as "targets" for that very reason,

and have agreed to previous extensions of the class schedule since to accommodate the gathering

of relevant evidence.  *See supra* at 4-5.  In keeping with the Parties' understanding, both the

Class Plaintiffs and Intel have consistently and jointly requested such extensions in order to cope

with the enormous scope of discovery in this case.[3]

The Court has shared the Parties' view that the target dates should be flexible.  At the

first pretrial conference on May 4, 2006, the Court made its preferences clear:

> I'm a fan of target dates, understanding that human beings
> sometimes move off the goal.  I would like you to have a kind of a
> target date which doesn't mean it's the appropriate date but it gives
> you a benchmark to shoot for.  And I can guarantee that unless
> there is some dilatory action by either side a reasonable request for
> a reasonable extension in the circumstances presented will be
> granted.

*See* (C.A. No. 05-1717, D.I. 78) (May 4, 2006 Transcript of Case Management Conference) at

22:16-18.

Intel has always recognized the challenges posed by third-party discovery and has

steadfastly voiced its concerns to the Class Plaintiffs.  For example, Intel expressly noted in the

First CMO that "the achievability of these target dates is dependent on the timing of the

production of third-party data and testimony that Intel believes is essential to its class

certification defense."  First CMO at 4.  At the next status conference, Intel again expressed its

---

[3]    For example, in the September 27, 2006 status conference, the Class Plaintiffs asked
the Court to push back the target dates to accommodate delays in Rule 34 document production
from AMD and Intel. *See* (C.A. No. 05-1717, D.I. 287 (September 27, 2006 Case Management
Conference Transcript) at 40:8-21.

need for third-party discovery to be complete before certification briefing, as it agreed to new target dates "based on the assumption that third-party deposition discovery on class issues can commence as of May 1, 2007." (C.A. No. 05-1717, D.I. 274; C.A. No. 05-485, D.I. 198) (Joint Status Conference Report and Proposed Agenda for September 27, 2006 Status/Scheduling Conference) at 3. Since depositions on questions relating to the data cannot begin until after data discovery is complete, this agreement was effectively contingent on the completion of third-party data discovery. Finally, in the Parties' March 5, 2007 Status Conference Report, Intel again based its agreement to the new "target dates" on the assumption that "third-party data production will be completed by March 31, 2007."[4] *See* (C.A. No. 05-1717, D.I. 406; C.A. No. 05-485, D.I. 297) (Joint Status Report and Agenda for March 7, 2007 Status Conference) at 2.

Although the Parties have made substantial progress, third-party discovery is not finished. The Class Plaintiffs have observed as recently as this month that "the written record has not yet been fully assembled . . . [k]ey OEMs have yet to begin producing documents (or producing them in substantial numbers) . . . [while other] OEMs are in the process of supplementing their production." (C.A. No. 05-1717, D.I. 872; C.A. No. 05-485, D.I. 714) (Plaintiffs' Joint Preliminary Case Statement) at 91. The Class Plaintiffs' expert report confirmed this assessment, noting the Parties are still waiting for data from several OEMs, distributors, and retailers. Leffler Report, ¶¶ 103-110. As described above, it is evident that a vast amount of third party data, material to the class certification analysis, remains to be produced.

---

[4] The final three extensions of the target dates were completed by stipulations filed with the court on August 16 and November 21, 2007 and February 29, 2008. Although not explicitly reiterated in the later stipulations filed by the Parties, Intel understood the new briefing dates, like the prior ones, were contingent upon completion of third-party discovery. *See* Ripley Decl., ¶ 8.

Notwithstanding, the Class Plaintiffs chose to file their motion at this time. Interim Class Counsel advised Intel's Counsel that they were filing now because they did not need the outstanding third-party discovery. *See* Ripley Decl., ¶14. However, their expert's report, fraught with preliminary conclusions and incomplete analyses because of this yet-to-be produced data, belies that statement. Further, even if that statement were true, it has no impact on Intel's need for this third party data. The flexible nature of these target dates is intended to accommodate just such a request.

Before coming to the Court with this Motion, Intel in fact requested an identical extension from the Class Plaintiffs. *See* Ripley Decl., ¶ 13. Interim Class Counsel rejected the request on May 19, 2008. *See id.* at ¶ 14. To justify their refusal – despite having requested and received several extensions of their own –   Interim Class Counsel stated that (1) class certification should be considered at an "early practicable time" after the filing of a complaint and that there have already been several extensions, (2) an extension would make it impossible to distribute class notices before the AMD trial date, (3) Intel should have moved to compel third-party discovery, and (4) in any event, there is suddenly sufficient third-party discovery for class certification purposes. *See id.*

None of these contentions has merit. While the schedule has indeed been previously extended, as described above, such flexibility was the Parties' express intent. As for class notice, there is no reason why that issue must be decided prior to the AMD trial. The Class Plaintiffs' argument that Intel should have moved to compel third-party discovery is a non-starter: there is ample evidence that Intel has been negotiating diligently and successfully with the third parties, as evidenced by the fact that, aside from Fry's Electronics, no third party has refused to comply and thus necessitated a motion to compel. The negotiations have been complex, but progress

continues to be made. Finally, Intel describes in further detail below why complete third-party discovery is in fact relevant to the class certification analysis.

**B.      Complete Third-Party Discovery Is Essential To The Class Plaintiffs' Rule 23 Analysis And Important To Intel's Defense Of The Class Plaintiffs' Certification Motion**

It is settled law that fact discovery plays an essential role in evaluating whether a case is suitable for class treatment under FED. R. CIV. P. 23. *See, e.g., In re New Motor Vehicles Canadian Export Antitrust Litigation*, 522 F.3d 6, 24 (1st Cir. 2008); *see also, e.g., Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.),* 471 F.3d 24, 33, 41 (2d Cir. 2006) (requiring a "definitive assessment of Rule 23 requirements," including the resolution of relevant factual disputes); *Unger v. Amedisys Inc.,* 401 F.3d 316, 321-22 (5th Cir. 2005) (requiring courts to find facts favoring class certification through the use of "rigorous, thorough preliminary, standards of proof"); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004) (requiring that "the factors spelled out in Rule 23 . . . be addressed through findings"); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001) (requiring "whatever factual and legal inquiries are necessary under Rule 23" to "resolve the disputes before deciding whether to certify the class"). The third-party data discovery that remains outstanding is a critical piece of the factual discovery relevant to the Class Plaintiffs' Rule 23 analysis.

A crucial element of the Class Plaintiffs' claims is that any price change in the cost of microprocessors was passed through to some extent in *every* computer sold to a class member. Under Rule 23, the Class Plaintiffs bear the burden to demonstrate that they can satisfy that element using general class-wide proof. *See, e.g., In re New Motor Vehicles*, 522 F.3d at 28 (holding that plaintiffs' theory of causation "must include some means of determining that each member of the class was in fact injured"). The third party sales data is an essential component to this part of the Rule 23 analysis.

The Class Plaintiffs are well aware of this reality. They have told the Court that they expect "some very significant discovery . . . from the third parties, not the least of which is transactional data that both the class plaintiffs and Intel want, so it would be very important to us to get production of that data and other materials. . . . so we can begin briefing class certification." (C.A. No. 05-1717, D.I. 287) (September 27, 2006 Case Management Conference Transcript) at 35:10-18. And as recently as this May 1 of this year, the Class Plaintiffs reiterated the importance of this third-party data:

> The third-party productions include documents and transactional data maintained by the various OEMs, system builders, parts distributors and computer retailers...[t]hese materials . . . provide a basic a basic understanding of the respective dealings between Intel and its customers . . . [t]his third-party data will also constitute part of the source material Plaintiffs' experts will use in analyzing the effect of Intel's exclusionary conduct.

(C.A. No. 05-1717, D.I. 872; C.A. No. 05-485, D.I. 714) (Plaintiffs' Joint Preliminary Case Statement) at 92-93.

The predictable result of filing for certification before completing relevant discovery is that the analysis in the Class Plaintiffs' class expert analysis is incomplete. The expert's report clearly states that all his analysis is "preliminary" and "subject to correction" because the data is "incomplete" and "subject to correction[s]." Leffler Report, ¶¶ 99, 101, 102, 104, 107-110. In fact, almost all of the expert's findings regarding the pass-on are mere "illustrations" or examples of how the analysis would work once the data is received. *Id.,* ¶¶ 99–104. As Intel has steadfastly maintained, the necessary analyses cannot be completed without the outstanding third party data.

The Class Plaintiffs' decision to file without this discovery is perplexing, especially in light of Intel's pending request that the date of its Opposition be extended because the third-party discovery is not yet complete. It cannot be a simple matter of an existing deadline, as they have

already sought five extensions. And it cannot be because they have all the information needed; to the contrary, they are on record as stating that it would be "very important" to have this data, and that the data will "constitute part of the source material" their expert will use.[5]

Intel does not have the luxury of filing incomplete and preliminary expert reports and opposition briefs. Further, Intel is entitled to have the Class Plaintiffs' completed and final class analysis to rebut, not a moving target of preliminary conclusions that will likely be modified once the third-party discovery is complete. The more prudent and equitable course is to allow the Parties to complete the relevant pending third-party discovery. This course not only comports with the original, flexible system set up by the Parties and the Court, but it will avoid wasting the enormous resources already expended to obtain this very information.

Intel estimates that if the data production and the related deposition discovery is complete by mid-July, it can complete the necessary analysis by mid-November. This schedule allows Intel sufficient time to analyze the data, depose Class Plaintiffs' experts on complete opinions and respond. Given the tasks left to accomplish, and the Parties' intention and practice of providing additional time to complete these tasks, Intel respectfully asks the Court for an extension to November 21, 2008 to file its Opposition and Expert Report.

---

[5] The inadvisability of the current schedule is highlighted by this likely scenario: Intel is required to complete its Opposition and Class Expert Report before the third-party discovery is complete, but the Class Plaintiffs are able to use that finalized discovery in their Reply. This would almost certainly require Intel to file a Surreply, in addition to taking the Class Plaintiffs' expert's deposition again -- an unnecessary waste of time and effort for all Parties and the Court.

## IV.   CONCLUSION

For the reasons set forth above, the Court should grant Intel's Request.

OF COUNSEL:

David M. Balabanian
Donn P. Pickett
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA  94111-4067
(415) 393-2000

Richard A. Ripley
BINGHAM McCUTCHEN LLP
2020 K Street, N.W.
Washington, D.C.  20006
(202) 373-6000

Dated:  May 22, 2008

865864/29282

POTTER ANDERSON & CORROON LLP


By:  */s/ W. Harding Drane, Jr.*
      Richard L. Horwitz (#2246)
      W. Harding Drane, Jr. (#1023)
      Hercules Plaza, 6th Floor
      1313 North Market Street
      P.O. Box 951
      Wilmington, DE 19899-0951
      (302) 984-6000
      rhorwitz@potteranderson.com
      wdrane@potteranderson.com

      Attorneys for Defendant
      INTEL CORPORATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, W. Harding Drane, hereby certify that on May 22, 2008, the attached document

was hand delivered to the following persons and was electronically filed with the Clerk of

the Court using CM/ECF which will send notification of such filing(s) to the following

and the document is available for viewing and downloading from CM/ECF:

James L. Holzman
J. Clayton Athey
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899

Jesse A. Finkelstein
Frederick L. Cottrell, III
Chad M. Shandler
Steven J. Fineman
Richards, Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19801

I hereby certify that on May 22, 2008, I have Electronically Mailed the attached

document to the following non-registered participants:

Michael D. Hausfeld
Daniel A. Small
Brent W. Landau
Cohen, Milstein, Hausfeld & Toll,
P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
mhausfeld@cmht.com
dsmall@cmht.com
blandau@cmht.com

Michael P. Lehman
Cohen, Milstein, Hausfeld & Toll , P.L.L.C.
One Embarcadero Center, Suite 526
San Francisco, CA 94111
mlehmann@cmht.com

Thomas P. Dove
Alex C. Turan
The Furth Firm LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
tdove@furth.com
aturan@furth.com

Steve W. Berman
Anthony D. Shapiro
Hagens Berman Sobol Shapiro, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
steve@hbsslaw.com
tony@hbsslaw.com

Guido Saveri
R. Alexander Saveri
Saveri & Saveri, Inc.
111 Pine Street, Suite 1700
San Francisco, CA 94111
guido@saveri.com
rick@saveri.com

By: <u>/s/ W. Harding Drane, Jr.</u>
    Richard L. Horwitz (#2246)
    W. Harding Drane, Jr. (#1023)
    POTTER ANDERSON & CORROON LLP
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P.O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    wdrane@potteranderson.com

728761 / 29282