UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION, | MDL No. 05-1717-JJF |
| PHIL PAUL, on behalf of himself and all others similarly situated,<br><br>                        Plaintiffs,<br><br>    v.<br><br>INTEL CORPORATION,<br><br>                        Defendants. | C.A. No. 05-485-JJF<br><br>CONSOLIDATED ACTION |

DECLARATION OF RICHARD A. RIPLEY

I, Richard A. Ripley declares as follows:

1. I am a partner at Bingham McCutchen LLP, counsel of record for Intel Corporation in the above-styled actions. I am over the age of 18 and competent to give testimony if called as a witness, I would testify under oath to the facts stated below.

2. Through a series of agreements and stipulations, Intel has worked with AMD and the Class Plaintiffs ("the Parties") to coordinate Intel's production of documents responsive to those parties' respective discovery requests. To date, Intel has produced the equivalent of over 145 million electronic pages of documents.

3. In the spring of 2006, shortly after the last of the member cases asserting class claims were transferred to this Court by the Judicial Panel on Multidistrict Litigation, Intel and the Class Plaintiffs, at the Court's instruction, conferred with respect to a tentative class

certification schedule. In light of the theory of recovery that the Class Plaintiffs articulated in their consolidated Complaint, Intel believed that the sales data of third parties would play a critical role in the evaluation of the Class Plaintiffs' motion for class certification. Throughout my discussions with Interim Class Counsel, I made clear that any class certification target dates would be dependant on the completion of the third party data and deposition discovery.

4.  At the May 2006 status conference, the Parties submitted a proposed class certification schedule. Based on the Court's statements during that conference, Intel understood that the dates contained in the class certification schedule represented "target" dates as opposed to formal deadlines.

5.  Following that first status conference, the Parties spent considerable time determining which third parties would receive discovery subpoenas. The Parties also coordinated and exchanged draft categories of information to ensure that the subpoenas would be complete and coordinated. The first wave of subpoenas went to over 65 companies on or about June 22, 2006.

6.  In connection with class discovery and merits discovery in these actions, the Parties collectively, have served document subpoenas on over 80 third parties, primarily original equipment manufacturers (OEMs), distributors, and retailers. Those subpoenas sought from each of the third parties documents and data relevant to their purchase and sale of x86 microprocessors, as well as products containing x86 microprocessors.

7.  Virtually every third party objected to the subpoenas. As a consequence, the Parties embarked on a lengthy negotiation process that commenced in the summer of 2006 with each objecting party. The negotiations were generally divided into data and non-data discussions. With respect to the data negotiations, I have been involved in every third party

negotiation for sales data with the exception of Fujitsu North America. These data negotiations were multi-dimensional. Many times the Parties needed to reach a consensus on a particular aspect of the scope of data requested in order to make some progress with a third party by presenting a unified position. Parties were generally able to reach such a consensus; although there were some instances where negotiations with some third parties were slowed down because of disagreements over data that was not material to the class certification issues, such as the Class Plaintiffs' and AMD's demand for sales data relating to non-U.S. sales.

8.  I am the attorney representing Intel primarily responsible for the negotiations regarding each extension of time that the parties sought regarding the class certification schedule. In each of those discussions for the five extensions that the Parties successfully obtained from the Court, the extension was based on the fact that the discovery record was not complete. In each instance, Intel's agreement to the new proposed target dates was contingent on the completion of the third party discovery.

9.  In late 2006, Interim Class Counsel made an informal request for information regarding the identity of the Intel databases that tracked Intel's sales of x86 microprocessors, and the data fields it contained within those databases. Intel provided that information informally in early 2007, including data samples in March 2007. After the production of the data samples, I hosted numerous teleconferences with Interim Class Counsel, counsel for AMD, and the respective consultants during which I answered follow-up questions that the consultants had about the particulars of the data samples. The complex negotiations on the Intel and AMD data production continued throughout 2007 and were finally concluded in December 26, 2007. The product of these negotiations was two separate letter agreements: one between the Intel and Class Plaintiffs/AMD, which set forth the terms and scope of Intel's sales data production; and

the second between Intel and AMD which set forth the conditions and parameters of AMD's production. Pursuant to that December 26, 2007 letter agreement, Intel agreed to produce certain data fields relating to every x86 microprocessor and chipset sales from January 2000 through December 2006. Intel began producing its sales data to the Class Plaintiffs and AMD on a rolling basis on the very next day, December 27, 2007, and by February 14, 2008 had produced more than 25 million transaction records. Since then, I have been working with Class Plaintiff and AMD consultants to informally answer follow-up questions regarding the data. Based on my conversations with Interim Class Counsel, I expect that these questions will continue into the summer of 2008.

10. Although the parties have made significant progress in obtaining the necessary data from third parties, there is still a large amount of sales data that has to be produced, particularly from the largest OEMs: Hewlett Packard; Dell; and IBM/Lenovo US.

11. With respect to the distributor and retailer data, I estimate that production will be substantially complete by June 15, 2008. With respect to one retailer, Fry's Electronics, Intel has not yet received a set of that company's data. Class Plaintiffs successfully compelled the production of that data in early 2008, and in April 2008, I asked Interim Class Counsel for a set of the Fry's Electronics' data. Interim Class Counsel requested that Intel first agree to pay a portion of the Special Master costs related to the Class Plaintiffs' Motion to Compel. The resolution of this issue is still pending.

12. On May 2, 2008, Class Plaintiffs issued subpoenas to 16 additional third parties, most of them smaller OEMs and distributors. I understand in my conversations with Interim Class Counsel that many of these 16 companies have objected to producing the data, and it is not clear when this information will be produced for use in this action.

13. On or around May 14, 2008, I informed Interim Class Counsel that if Class Plaintiffs intended to file their class certification motion on May 16, Intel would need an extension of time for its opposition brief and rebuttal expert reports, consistent with its previously stated need for third party discovery. I asked Interim Class Counsel for Class Plaintiffs' position on an extension until November 21, 2008. Interim Class Counsel advised me that he would discuss the request with his colleagues and report back to me.

14. On May 19, 2008, Interim Class Counsel advised me that the Class Plaintiffs would oppose Intel's requested extension. He gave four reasons for Class Plaintiffs' position. First, that any further extensions would be contrary to the language in Rule 23 of the Federal Rules of Civil Procedure, which states that class certification should be considered at an "early practicable time" after the filing of the complaint. Second, that the Class Plaintiffs believed that they had sufficient third party discovery for class certification purposes. Third, Class Plaintiffs believed that the extension would make it impossible for the Court to resolve the class certification motion prior to the trial date in the AMD case. Lastly, Class Plaintiffs believe that if Intel had a need for the data that it should not have let the negotiations drag out as long as they have.

I declare under penalties of perjury that the foregoing is true and accurate to the best of my knowledge.

Dated: May 20, 2008

*Richard A. Ripley*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, W. Harding Drane, hereby certify that on May 22, 2008, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

| | |
|---|---|
| James L. Holzman<br>J. Clayton Athey<br>Prickett, Jones & Elliott, P.A.<br>1310 King Street<br>P.O. Box 1328<br>Wilmington, DE 19899 | Jesse A. Finkelstein<br>Frederick L. Cottrell, III<br>Chad M. Shandler<br>Steven J. Fineman<br>Richards, Layton & Finger<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801 |

I hereby certify that on May 22, 2008, I have Electronically Mailed the attached document to the following non-registered participants:

| | |
|---|---|
| Michael D. Hausfeld<br>Daniel A. Small<br>Brent W. Landau<br>Cohen, Milstein, Hausfeld & Toll, P.L.L.C.<br>1100 New York Avenue, N.W.<br>Suite 500, West Tower<br>Washington, D.C. 20005<br>mhausfeld@cmht.com<br>dsmall@cmht.com<br>blandau@cmht.com | Michael P. Lehman<br>Cohen, Milstein, Hausfeld & Toll, P.L.L.C.<br>One Embarcadero Center, Suite 526<br>San Francisco, CA 94111<br>mlehmann@cmht.com |
| Thomas P. Dove<br>Alex C. Turan<br>The Furth Firm LLP<br>225 Bush Street, 15th Floor<br>San Francisco, CA 94104<br>tdove@furth.com<br>aturan@furth.com | Steve W. Berman<br>Anthony D. Shapiro<br>Hagens Berman Sobol Shapiro, LLP<br>1301 Fifth Avenue, Suite 2900<br>Seattle, WA 98101<br>steve@hbsslaw.com<br>tony@hbsslaw.com |

Guido Saveri
R. Alexander Saveri
Saveri & Saveri, Inc.
111 Pine Street, Suite 1700
San Francisco, CA 94111
guido@saveri.com
rick@saveri.com

By: /s/ W. Harding Drane, Jr.
    Richard L. Horwitz (#2246)
    W. Harding Drane, Jr. (#1023)
    POTTER ANDERSON & CORROON LLP
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P.O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    wdrane@potteranderson.com

728761 / 29282