IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: INTEL CORPORATION MICROPROCESSOR ANTITRUST LITIGATION | ) ) MDL No. 05-1717-JJF ) ) |
| PHIL PAUL, on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>INTEL CORPORATION,<br><br>　　　　　Defendant. | ) ) ) ) ) ) Civil Action No. 05-485-JJF ) ) CONSOLIDATED ACTION ) ) ) ) |

**CLASS PLAINTIFFS' OPPOSITION TO DEFENDANT INTEL CORPORATION'S
MOTION TO EXTEND CLASS CERTIFICATION BRIEFING SCHEDULE**

**I.　INTRODUCTION**

　　Defendant Intel Corporation ("Intel") seeks to extend the class certification briefing schedule by three and one-half months. Under almost any circumstance, such a lengthy delay would be inconsistent with Rule 23's requirement that the Court decide the class issue at "an *early* practicable time." Fed. R. Civ. P. 23(c)(1)(A) (emphasis added). Under the particular circumstances here, where it is questionable whether the *current* schedule permits the Court to rule at an early practicable time, it is clear that Intel's request for more delay should be rejected. This case commenced nearly *three years* ago; the third party data that Intel seeks was subpoenaed nearly *two years* ago; the parties originally contemplated that Intel's class opposition would be filed *over a year* ago; and the class certification schedule has already been extended *five* times for a total of *fourteen months*.

　　Moreover, the amount of additional time Intel requests is based on its unrealistic assumption that third party data discovery will be completed by mid- to late-July. If the Court

were to defer Intel's opposition until after such discovery is completed, more likely than not, Intel would not file its opposition until early 2009.

Not only is more delay incompatible with the Court's Rule 23 obligations, Intel's reason for wanting the delay is incompatible with the parties' Rule 23 burdens under Third Circuit law. Remarkably, Intel's brief cites to no Third Circuit case — though Third Circuit class certification standards are set out in many cases, several of which are cited in Class Plaintiffs' earlier-filed class certification brief — and relies instead on wholly different class certification standards adopted by some other circuits. Under Third Circuit standards, "the merits of disputed facts are not reached at the class certification stage." *Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 183 n.5 (3d Cir. 2006) (internal quotation marks omitted); *see In re ML-Lee Acquisition Fund II, L.P. and M-L Lee Acquisition Fund (Retirement Accounts) II, L.P. Sec. Litig.*, 848 F. Supp. 527, 562 (D. Del. 1994) ("The court is not willing to delve into what could be a protracted inquiry to settle. . . contested issue[s] of fact at the class certification stage."). Rather, "[c]lass certification is concerned primarily with the *nature* of the proof plaintiffs may offer, not its quantity or sufficiency. . . ." *In re Hydrogen Peroxide Antitrust Litig.*, 240 F.R.D. 163, 170 (E.D. Pa. 2007) (emphasis added).

In the merits phase of this litigation, Class Plaintiffs will use third-party purchase and sales data to prove how much of Intel's overcharge was passed on to end-user purchasers of Intel-powered computers. At the class certification stage, however, Class Plaintiffs need not actually prove pass-on. Rather, they simply need to show that the evidence they will later use to demonstrate and quantify pass-on is class-wide in nature. In opposition to class certification, Intel undoubtedly will attempt to show that pass-on cannot be proved with class-wide evidence. Thus, the debate will focus on whether a class-wide method exists and whether the data necessary to implement that method will be available. Neither side needs to complete non-party data discovery to address the feasibility of class-wide proof of pass-on. Accordingly, Intel has offered no valid reason for further delaying resolution of the class issues in this case.

For these reasons, as more fully set forth below, Class Plaintiffs respectfully urge the Court to deny Intel's request for an extension so that the parties may proceed under the current class certification briefing schedule.

## II. ARGUMENT

### A. Sufficient Third-Party Data Has Been Obtained to Brief Class Certification.

Intel wants to further delay resolution of the class issue to get data that it does not need for class certification under Third Circuit standards. Intel argues that it will not have a fair opportunity to oppose Class Plaintiffs' class certification motion until it has received and analyzed all third-party discovery. Apparently recognizing that its argument is not supported by Third Circuit law, Intel relies exclusively on decisions from other circuits that have adopted very different class certification standards. *See* Defendant Intel Corporation's Motion to Extend Target Dates for Class Certification Briefing (hereinafter "Intel Motion") at 13-14 (citing solely to opinions from the First, Second, Fourth, Fifth and Seventh Circuits).

In the Third Circuit, however, "it is not necessary for the plaintiffs to establish the merits of their case at the class certification stage, and . . . in determining whether a class will be certified, the substantive allegations of the complaint must be taken as true." *Chiang v. Veneman*, 385 F.3d 256, 262 (3d Cir. 2004). Thus, "the merits of disputed facts are not reached at the class certification stage." *Wachtel*, 453 F.3d at 183 n.5 (internal quotation marks omitted); *see also In re ML-Lee Acquisition Fund II*, 848 F. Supp. at 562 ("The court is not willing to delve into what could be a protracted inquiry to settle . . . contested issue[s] of fact at the class certification stage."). At most, only "a *preliminary* inquiry into the merits is sometimes necessary." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 168 (3d Cir. 2001) (emphasis added).

A preliminary inquiry, if it is appropriate at all, necessarily is less than a full and final merits inquiry and can be made with less than all the evidence that would be used for the merits. Indeed, in reliance on the limited nature of the inquiry appropriate on class certification in the

Third Circuit, Class Plaintiffs filed their class motion based on the existing record, which includes substantial but far from complete third-party discovery.[1] Specifically, Class Plaintiffs filed their motion with the understanding that it would be evaluated based on "the nature of the proof plaintiffs will offer, not its quantity or sufficiency. . . ." *In re Hydrogen Peroxide*, 240 F.R.D. at 170. "So long as plaintiffs demonstrate their intention to prove a significant portion of their case [through] factual evidence and legal arguments common to all class members, that will now suffice." *Id.* Class Plaintiffs believe they have done just that—and more importantly for this motion, that Intel has a sufficient evidentiary basis to attempt to prove otherwise.

Further, the additional third-party data Intel seeks will be used in the merits phase to quantify the pass-on rate, which is one of the two basic components of Class Plaintiffs' proof of damages (the other being the measurement of Intel's overcharge). Even if it were true that Intel needed the additional third-party data to attempt to show that pass-on cannot be proved with class-wide evidence, Intel still could not use that data to defeat class certification. Class certification cannot be defeated simply by showing that proof of damages involves individual issues. "[I]t has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3rd Cir. 1977); *see also, In re Wellbutrin Sr Direct Purchaser Antitrust Litig.*, No. 04-5525, 2008 WL 1946848, at *7 (E.D. Pa. May 2, 2008) ("the necessity of an individualized calculation of damages will not defeat Rule 23(b)(3) certification if the predominance requirement otherwise is met."); *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 220 (E.D. Pa. 2001) ("Even though individual issues may arise in calculating damages, this fact does not defeat class certification").

---

[1] Intel complains that Class Plaintiffs filed their class motion prematurely. That is a strange argument for Intel to make. As the parties with the burden of proof on class certification, Class Plaintiffs would suffer the consequences of filing their motion prematurely. Intel's argument provides no reason for further delaying class certification proceedings.

B.  **A Further Extension of the Briefing Schedule Would Preclude This Court From Deciding the Class Issue at an Early Practicable Time.**

1.  **Intel Was Obliged to Compel Prompt Production of Third-Party Discovery If It Believed Such Discovery Was Necessary for Class Certification.**

Intel's brief reads as if Intel were a mere bystander to the timing and conduct of third-party discovery. The truth is that nothing prevented Intel from advising the third parties back in June of 2006, when it subpoenaed their data, that under the then-governing scheduling order, the May 16, 2006 Case Management Order No. 1 (D.I. 79),[2] the target date for Intel's class brief was May 18, 2007, and that Intel needed their data produced by March 1, 2007, and then, if necessary, moving to compel production by that date. Intel took no such action in June of 2006, nor at any of the five times that the class certification schedule was extended. Intel should not be permitted to agree, as it did, to six class certification schedules and then make no effort to obtain the data, that it alone believed was necessary for class certification, in time for it to comply with the agreed-upon due dates.

To be sure, Intel has stated that the class certification briefing schedule should be contingent on completion of third-party data production. But Intel's unilateral contingency — to which neither the Court nor Class Plaintiffs ever subscribed — should not be used as a self-granted license to let third-party discovery drag out for over two years.

Intel's attempt to portray its own contingency as the consensus view of the parties, *see* Intel Motion at 3-4, should be rejected. Beginning with Case Management Order No. 1 in May 2006, it was clear that the contingency was Intel's alone. That order reads: "*Intel* notes that the achievability of these target[3] dates is dependent on the timing of the production of third party

---

[2] Cites to "D.I. __" are to docket items in MDL No. 05-1717 unless otherwise noted.

[3] Intel's assertion that each class certification briefing schedule ordered by this Court set only "target" dates is simply inaccurate. The initial briefing schedule in the May 16, 2006 Case Management Order No. 1 and the first revised schedule in the September 25, 2006 Joint Status Conference Report and Proposed Agenda for September 27, 2006 Status/Scheduling Conference (D.I. 274) referred to the deadlines as "target" dates. But all subsequent schedules ordered by the Court, in 2007 and 2008, contained actual due dates. *See* March 5, 2007 Joint Proposed Status Conference Report and Agenda for March 7, 2007 Status Conference (D.I. 406); August 16, 2007 Stipulation and Order Regarding Class Certification Briefing and Discovery (D.I. 571); November 21, 2007 Stipulation and Order Regarding Class Certification Briefing and Discovery (D.I. 661); and February 29, 2008 Stipulation and

data[4] and testimony that *Intel* believes is essential to its class certification defense." Case Management Order No. 1, at 4 (emphasis added). Class Plaintiffs never subscribed to that contingency, and consistently so advised Intel's counsel. *See* Small Decl. ¶ 1. In fact, when the parties agreed in March 2007 to extend the class certification briefing dates, Class Plaintiffs added the following language to the proposed stipulation and order: "Class Plaintiffs' agreement is not contingent, and they believe that absent unforeseen circumstances, no further extension of the class certification schedule would be appropriate." March 7, 2007 Joint Proposed Status Conference Report (D.I. 406), at 2; Small Decl. ¶ 2.

Not only did Intel fail to take any action to induce or compel third parties to produce their data promptly, it has actually contributed to the delay in Dell's data production. From the beginning, one of Dell's principal concerns has been how to limit the scope of the subpoenas to account for the large volume of Dell's transactional sales data. *See* Declaration of Judith A. Zahid ("Zahid Decl.") ¶ 4. Dell's direct-to-consumer sales model, which generates a large number of small transactions, results in a large volume of transactional data, more than other large OEMs (e.g., HP and Lenovo), which rely more on bulk sales to retailers and distributors. *See id.* To address Dell's volume concerns, the parties and their consultants jointly worked to propose a sampling method. *See id.* After a year of working through the details of a proposal, in March of this year, Intel changed its position and announced that it would no longer agree to such a method. *See id.* Intel told the parties that it needed to take a 30(b)(6) deposition of Dell in an effort to identify a means other than sampling for limiting the size of the data production. *See id.* In the following two months, despite urgings from the Class Plaintiffs, Intel has not yet served a deposition subpoena. *See id.* The parties continue to wait for Intel to move the

---

Order Regarding Class Certification Briefing and Discovery (D.I. 772). *See also* Declaration of Daniel A. Small ("Small Decl.") ¶ 2.

[4] Intel raises for the first time in this motion its asserted need for full production of third-party *documents*, in addition to third-party data, before it can oppose the class motion. Previously, it only referred to its asserted need for third-party data. *See* Small Decl. ¶ 3. Now, without any explanation, Intel adds tens of thousands of pages of third-party documents to the pile of what it claims it must receive and analyze prior to filing its opposition brief.

negotiation forward. Intel should not be allowed to unreasonably impede the progress of the Dell negotiations and then use the status of those negotiations as a reason to further delay class certification briefing.

Intel's dilatory conduct is not limited to its dealings with Dell. For example, Intel claims to need Rule 30(b)(6) depositions of each third party on its data production. Beginning in early 2007 and continuing through the rest of that year, the parties received full data productions from eight large, nationwide retailers, distributors, and value added resellers. *See* Zahid Decl. ¶ 3. Yet, in the subsequent months, Intel has failed to subpoena a single one of them for deposition.

Intel offers no reason for its failure to obtain — in time to comply with any of the six briefing schedules to which it agreed — the additional third-party discovery that it alone claims to need for class certification. Intel's inaction and, in the case of Dell and other third parties, its own delay cannot be the basis for a further extension of the class briefing schedule. This is especially so when additional delay would contravene Rule 23's command to decide the class motion at an early practicable time.[5]

---

[5] Intel mischaracterizes the history of extensions to the class certification briefing schedule. *See* Intel Motion at 2. Despite Intel's suggestion that the prior extensions were solely for Class Plaintiffs' benefit, in fact, they benefited Intel and Class Plaintiffs equally. Both received more time to obtain and analyze party and third-party discovery. Similarly, Class Plaintiffs' position is not simply that Intel does not need more time for third party discovery, but rather that neither side needs additional third party discovery for class certification.

In its brief, Intel also misstates Class Plaintiffs' position regarding the data they successfully compelled from Fry's Electronics. Plaintiffs have not, as Intel states, refused to provide it with a copy of the compelled data. *See* Intel Motion at 8. As Intel's counsel acknowledges in his declaration, *see* Ripley Decl. ¶ 11, and as the attached declaration of Daniel Small states, *see* Small Decl. ¶ 6, Class Plaintiffs told Intel that they would share the Fry's data with it as long as Intel paid for its fair share of the out-of-pocket cost of obtaining the data. Intel never responded to Class Plaintiffs' proposal. Class Plaintiffs incurred significant expense obtaining the Fry's data, and there is no justification for Intel not paying its fair share—and it has offered no such reason. *See id.* Moreover, Intel cannot base its requested extension on its failure to date to get the Fry's data, because it chose not to join Class Plaintiffs' motion to compel or to file its own motion, indicating that it was prepared to do without the data in the litigation. Likewise, Intel cannot base its request for more time on Class Plaintiffs' new subpoenas to 16 small OEMs and retailers. Intel cannot claim to need that data to oppose class certification because it never subpoenaed such data.

      **2.     It Is Highly Improbable That All Third-Party Discovery Will Be Completed Within the Next Six Weeks To Accommodate Intel's Proposed Schedule.**

Despite asking for so much time to oppose class certification, Intel also seeks to make its proposed deadline conditional on "data production and the related deposition discovery [being] complete by mid-July." Intel Motion at 15. By making its request conditional, Intel implicitly acknowledges the possibility that third-party data production and related depositions will not be complete just six weeks from now.

What Intel fails to admit, however, is that completing such discovery by mid-July is highly improbable. The parties are far from finalizing several of the large OEM data production agreements. *See* Zahid Decl. ¶¶ 3-8. For example, as mentioned above, the parties are still waiting for Intel to depose Dell and propose an alternative to sampling. After that is accomplished, the plaintiffs and Dell must determine whether Intel's proposal is acceptable and negotiate a resolution if it is not. Even then, Dell has repeatedly warned the parties that it may need significant time to gather and produce the agreed-upon data. *See id.* ¶ 4. Similarly, the parties are not near finalizing data production agreements with Acer, HP, Lenovo, MPC, or NEC U.S.A. *See id.* ¶¶ 3, 5-8. In particular, Lenovo has only produced samples from its sales database. *See id.* ¶ 6. Thus, the parties and Lenovo must still work through all the details for producing the other categories of data requested by the subpoenas, such as cost, rebate and financial-incentives data. *See id.*

Intel's request for a three and one-half month extension is far too long, for the reasons discussed above. But in reality, its request is for an even longer, indeterminate extension. Intel does not want to file its opposition until (a) all third parties have produced their documents and data, (b) Intel takes 30(b)(6) depositions on the third-party data, (c) Intel deposes Dr. Leffler on his report and the new data, and (d) Intel has time to analyze the completed third-party discovery. With all of these prerequisites, it is no wonder that, when asked, Intel would not commit that this would be its last request for an extension. *See* Small Decl. ¶ 4. The Court should reject Intel's request for what is, in reality, an extremely lengthy and indeterminate extension.

## III. CONCLUSION

Under the current schedule, class certification briefing will not be completed until October of this year. The current schedule, Class Plaintiffs submit, is already pushing the limits of what constitutes an early practicable time to rule on the class motion. Moreover, two years since it served its third-party subpoenas is sufficient time for Intel, if it had been diligent, to have obtained the discovery it claims to need for class certification. In any event, Intel's entire motion rests on the false premise that it needs additional third-party discovery for class certification. Class Plaintiffs, therefore, respectfully urge the Court to deny Intel's motion.

Dated: May 30, 2008

                                                                **PRICKETT, JONES & ELLIOTT, P.A.**

                                                                By: /s/ James L. Holzman
                                                                James L. Holzman (#663)
                                                                J. Clayton Athey (#4378)
                                                                Laina M. Herbert (#4717)
                                                                Melissa N. Donimirski (#4701)
                                                                1310 King Street
                                                                P.O. Box 1328
                                                                Wilmington, DE  19899
                                                                (302) 888-6500
                                                                jlholzman@prickett.com
                                                                jcathey@prickett.com
                                                                lmherbert@prickett.com
                                                                mndonimirski@prickett.com
                                                                *Interim Liaison Counsel and Attorneys for*
                                                                *Phil Paul, on behalf of himself and all*
                                                                *others similarly situated*

Of Counsel:

Michael D. Hausfeld
Daniel A. Small
Brent W. Landau
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC 20005

9

Michael P. Lehmann
Jon T. King
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
One Embarcadero Center
Suite 2440
San Francisco, CA 94111

Steve W. Berman
Anthony D. Shapiro
Erin K. Flory
Steve W. Fimmel
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Guido Saveri
R. Alexander Saveri
Lisa Saveri
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111

Craig C. Corbitt
Judith A. Zahid
ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP
44 Montgomery St., Suite 3400
San Francisco, CA 94104