

Potter
Anderson
Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027  Direct Phone
302 658-1192  Fax

June 5, 2008

**VIA ELECTRONIC MAIL AND BY HAND**

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 North Market Street
Wilmington, DE  19801

   Re:   *Advanced Micro Devices, Inc., et al. v. Intel Corporation, et al.*,
         C.A. No. 05-441-JJF;
         *In re Intel Corp.*, C.A. No. 05-1717-JJF; and
         *Phil Paul v. Intel Corporation (Consolidated)*, C. A. No. 05-485 (JJF)

Dear Judge Poppiti:

   Intel was very disappointed to see AMD's letter of late June 3, 2008, which was offensive, contained inaccurate information and made unwarranted and inflammatory accusations.  Contrary to AMD's accusations, Intel has undertaken a truly massive and unprecedented remediation effort which has proven exhausting to Intel's lawyers and Intel's outside vendors.  The details underlying this effort are complex, however, and unexpected issues inevitably occur.  When they do, we have tried our best to understand them and then inform the parties and the Special Master and experts.  Accordingly Intel is providing this letter as a further update on the issues raised in Intel's May 30 and June 3, 2008 letters, and at the hearing before Your Honor yesterday.

   Based on the information available to Intel and estimates provided to Intel by its vendor, Electronic Evidence Discovery ("EED"), Intel believes that any non-duplicative responsive documents located from the .pst files described in the letters and at the hearing can be produced to AMD within thirty days.  Intel will produce the documents on a rolling basis, giving priority to the Custodians currently scheduled for deposition.  To date, there are only two pending depositions set by AMD -- Jon Omer and Neil Green.  Once Intel receives the list from AMD as to the first 15-20 Intel witnesses that AMD intends to depose over the next four months during Phase I of the proposed discovery plan, Intel will prioritize, to the extent possible, those names.

   Set forth below is some additional information regarding the document production issues. First, with respect to the "empty" .pst issue previously described, Intel's vendor EED has now

determined that there is one less "empty" .pst file for which a replacement is needed. (This is because EED informed Intel yesterday that for one of the .pst files identified in the May 30 letter, EED already had loaded a replacement .pst file prior to February 15, 2008.) Therefore, there are only 545 "empty" .pst files from the Weekly Backup Tapes (out of over 24,500) for which EED had not yet loaded a replacement .pst file prior to February 15, 2006. Yesterday, Intel provided a list to Your Honor and AMD of the Custodians whose .pst files were impacted.

During the hearing Intel informed Your Honor that for Custodian Jon Omer there were no non-duplicative responsive emails to be produced from the "empty" .pst files of Omer. This was based on information received from Intel's vendor EED, on an expedited basis, shortly before the hearing. Later in the day yesterday, EED informed Intel that it had given that information in error by looking at the wrong spreadsheet. Intel has now confirmed that there are 29 emails (some with attachments) that are non-duplicative and responsive from those "empty" .pst files. Intel will provide AMD with a copy of these 29 emails and associated attachment today and will produce a standard production in the next few days. With respect to any emails from the "empty" .pst files of other Custodians for repopulation as to Mr. Omer, Intel will produce those prior to the deposition.

With respect to timing issues, under the operative stipulations and orders, June 1, 2006 was the cut-off date for documents to be produced as to Intel-designated Custodians by February 15, 2008. The majority of the Custodians with the "empty" .pst files described above are Intel-designated and the overwhelming majority of the "empty" .pst files are for the period that post-dates the June 1, 2006 cut-off date. As indicated during the hearing yesterday, Intel's vendors are working expeditiously to have their review completed as soon as possible, including a de-duplication process, after which the de-duplicated materials will be produced.

As indicated in Intel's May 30 letter, Intel has become aware of approximately 14 .pst files for which EED received a .pst file with greater than ten emails, but for which there appears to be replacement .pst files with a larger volume of data. Set forth below is a description of the manner in which these 14 .pst files were identified.

Step 1: A standard deviation was prepared as to each Custodian. So, for example, if Custodian X had 2,000 emails in week 1, then 2,200 emails the next week, then 2,200 emails the next week and 2,400 emails the next week, the standard deviation for Custodian X would equal 200 (and the average would be 2,000).

Step 2: Using this information, any .pst files that were determined to be two standard deviation points from the average were identified . So, for Custodian X, any .pst files with fewer than 1,800 emails was identified (Average 2,000 minus two standard deviations of 400 = 1,800). As a result of this review, approximately 1,100 .pst files fell below the two standard deviation points.

Step 3: Next, a comparison was made between the item counts in the identified .pst files from Intel's vendor First Advantage ("FADV") and the item counts that had been loaded into the

global database by EED. The volume for all but 14 of the .pst files matched -- that is, the message count on the FADV .pst files matched with the message count in the EED global database, except for 14.

Step 4: Intel's vendors are working on processing the new data and plan to provide a report within the next few days of the volume of non-duplicative data from these 14 replacement .pst files that then needs to be reviewed for potential relevance.

As further investigation into the issue of the differential for these 14 replacement .pst files, Intel randomly selected 11 files out of the 1,100 "standard deviation" files for further review by FADV. For 10 of the .pst files, there was no additional data at FADV from the data that had been loaded into the global database by EED. For one of the .pst files (for Andy Bryant), there were some questions raised yesterday. Last night, Intel's vendor FADV determined that there were 27 additional items in the FADV .pst file as compared with the item count in the EED global database. (Rather than the original count of 1941 items, the further restoration process resulted in 1968 items.) Intel will determine whether any of these are non-duplicative and responsive, and will produce them if appropriate. It appears that the differential is the result of an issue with "spanned tapes" (a single backup date contained on multiple tapes). Based on these results, Intel believes that any further efforts on the spanned set issue are unlikely to yield significant volumes of non-duplicative, responsive emails. Additionally, undertaking such efforts not only would be extremely costly, but would take an inordinate amount of time. Nonetheless, Intel remains ready to engage in this process should the Special Master deem it necessary.

One additional issue involves a small set of data from removable media from seven Custodians that was located and loaded after February 15, 2008. Only three of these Custodians have been designated for production. The non-duplicative, responsive data for these Custodians (David She, John Wong, Kevin Rusche, Lilian Kalousdian, Tonatiuh Garza, Vipul Shah and Stijn Derache). Based on the estimates provided by Intel's vendor EED, Intel believe it can produce any non-duplicative, responsive emails from these removable media within thirty days.

Intel has done everything it can on as fast a pace as possible. Intel has tried to be very transparent about the process. In light of the overwhelming nature of the document production in this case, the incredible volume of materials and Intel's ambitious remediation plan, for which Intel has spent approximately tens of millions of dollars to implement (exclusive of attorneys fees and costs), Intel believes that it has been very successful with respect to the production. It is Intel's belief, based on the information available to it to date, and the estimates provided by its vendors, that the volume of materials described in this letter will result in less than a half of a percent of the volume of materials already produced -- and a very small percentage of the ongoing Deposition Reharvest productions contemplated by the parties and the Court to be ongoing during the deposition process. Because the deposition reharvest process already contemplated potentially significant additional productions by both sides, when witnesses are designated for deposition, the minor potential additional productions discussed in this letter should not effect the proposed deposition schedule.

The Honorable Vincent J. Poppiti
June 5, 2008
Page 4

                          Respectfully,

                          Richard L. Horwitz (#2246)

RLH/msb
867896 / 29282

cc:    Clerk of Court (via Hand Delivery)
        Counsel of Record (via CM/ECF & Electronic Mail)
        Eric Friedberg