# ANNEX A

## ANNEX A: PROPOSED CLASS REPRESENTATIVES

### Index of Proposed Representatives by State

| State[1] | Proposed Representative(s) | Page |
|---|---|---|
| Arizona | Napoly Salloum | 21 |
| | Dressed to Kill Custom Draperies, LLC | 8 |
| California | Michael Brauch | 3 |
| | Gabriella Herroeder-Perras | 12 |
| | David Lipton | 17 |
| | Andrew Meimes | 17 |
| | Stewart Munson | 18 |
| | Ian Walker | 25 |
| | Law Offices of Kwasi Aseidu | 16 |
| | Law Offices of Laurel Stanley | 16 |
| | Trotter-Vogel Realty, Inc. | 24 |
| Delaware* | Matthew Kravitz | 15 |
| District of Columbia | Carrol Cowan | 6 |
| Florida | Maria Prohias | 20 |
| | Paul Ramos | 20 |
| | HP Consulting Services, Inc. | 14 |
| Idaho | Seiniger Law Offices, P.A. | 22 |
| Iowa | Jason Hoenshell | 13 |
| Illinois* | Patrick Hewson | 12 |
| Kansas | Marvin Chance, Jr. | 4 |

---

[1]    States not included in the proposed subclass are marked with an asterisk.

| State[1] | Proposed Representative(s) | Page |
|---|---|---|
| Maine | Carl Cunningham | 7 |
| Massachusetts | Dana Thibedeau | 24 |
| Michigan | Michael Hetzel | 12 |
| Minnesota | Bergerson & Associates, Inc. | 3 |
| | Fairmont Orthopedics & Sports Medicine, P.A. | 9 |
| Mississippi | Judy Cowgill | 6 |
| Nebraska | Beth Fink | 10 |
| New Hampshire | Ron Hooper | 13 |
| New Jersey* | Phil Paul | 20 |
| | Francis Slattery | 23 |
| New Mexico | Mary Annabelle Candelaria | 4 |
| | United Food and Commercial Workers' Union, Local 1564 | 25 |
| New York | Raphael Allison | 1 |
| | Jay Salpeter | 21 |
| North Carolina | Joseph Samuel Cone | 5 |
| North Dakota | Melinda Harr, D.D.S., P.C. | 10 |
| Ohio* | Ronald Konieczka | 15 |
| Rhode Island | Raymond Pacia | 19 |
| South Carolina* | Kelly Cannon | 1 |
| South Dakota | Chad Ohlrogge | 19 |
| Tennessee | Nancy Herring | 11 |
| Texas* | William Cronin | 7 |
| Utah* | Mark Helm | 11 |

| State[1] | Proposed Representative(s) | Page |
|---|---|---|
| Vermont | Russell Dennis | 8 |
| | FICRO Acquisition Co. | 9 |
| Washington* | Kevin Stoltz | 23 |
| West Virginia | Tracey Kinder | 15 |
| Wisconsin | Elizabeth Baran | 2 |
| | Peter Jon Naigow | 18 |
| | Robin Weeth | 26 |

**Raphael Allison** is a resident of Brooklyn, New York. King Decl. Ex. 56, Deposition of Raphael Allison ("Allison Dep."), Jan. 18, 2008, at 5:6-10; 6:3-4. He holds a PhD. in English from New York University and currently serves as the assistant director of the freshman writing program at Princeton University. *Id.* at 7:1-17, 8:18-9:5, 152:15-153:3. Dr. Allison purchased a Sony Vaio Desktop with an Intel Pentium processor from J&R Computer World in New York City in the fall of 2001. King Decl. Ex. 57, Pls.' Responses to Def.'s 1st Set of Interrogatories ("Interrog. Resp."), Sept. 14, 2007, Attachment at 1; Allison Dep. at 29:16-30:1, 31:1-12, 40:22-41:3, 43:19-44:12, 120:19-121:14. He later purchased a Toshiba Satellite M55 Laptop computer with an Intel x86 Processor on March 28, 2006, also from J&R Computer World. Interrog. Resp., Attachment at 1; Allison Dep. at 62:2-12, 69:10-12, 120:19-121:14, 136:21-138:9, 154:15-16, 156:4-11.

Dr. Allison's central motivation in seeking to be a class representative is his frustration with unfair business practices, which he views as an ethical issue – he is not seeking a windfall, just compensation for overcharges. *Id.* at 116:22-120:18. While he does not expect to receive any compensation from serving as a class representative, he understands his responsibilities as a class representative to hire counsel that he trusts, keep informed about the matter, act in the best interests of the class, and insure that he does not have interests that would make his representation of the class problematic. *Id.* at 11:19-12:4, 13:1-16:22, 152:1-14. He also understands the basic allegations of the complaint and the mechanism by which Intel is alleged to have artificially inflated the price of microprocessors. *Id.* at 163:2-166:4, 167:6-15.

**Elizabeth Baran**, a resident of Wauwatosa, Wisconsin, owns and runs a business that provides foreign language interpreters. King Decl. Ex. 58, Deposition of Elizabeth Bruderle-Baran ("Baran Dep."), Feb. 19, 2008, at 4:13-16, 9:5-10:2. She has a Master's degree in French from the University of Wisconsin and a law degree from Marquette University and is a member of the Wisconsin state bar, though she has never practiced law. *Id.* at 10:21-12:18. Ms. Baran purchased six computers relevant to this action: (1) a Sony Vaio RX550 desktop computer with an Intel Pentium 4 processor purchased from CompUSA in Brookfield, Wisconsin on November 17, 2001; (2) a Gateway 3018GZ Notebook with an Intel Celeron M350, 1.3 GHz processor purchased from Best Buy in Wauwatosa, Wisconsin on March 29, 2005; (3) a Dell Latitude D620 computer with a 20 GHz Intel Core Duo T2500 processor purchased from Dell.com on July 17, 2006; (4) a Dell Inspiron 640M with a 1.73 GHz Intel Pentium Dual-Core Processor T2060 purchased on May 19, 2007 from Dell.com; and (5 and 6) two Dell Latitude D630 computers purchased from Dell.com on September 8, 2007, one with a 1.8 GHz Intel Core 2 Duo T7100 processor and one with a 2.2 GHz Intel Core 2 Duo T7500 processor. King Decl. Ex. 59, Interrog. Resp., Attachment at 2-3; King Decl. Ex. 60, Pls.' 3d Supplemental Responses to Def.'s 1st Set of Interrogatories ("3d Supp. Interrog. Resp."), Feb. 18, 2008, Attachment at 1-2; Baran Dep. at 18:15-19:8, 21:18-23:21, 29:14-22, 50:18-51:6, 53:14-16, 88:1-88:15, 94:5-9, 106:17-22.

Ms. Baran became a class representative because she believes she was unfairly overcharged for her computers due to Intel's actions. Baran Dep. at 7:8-15. She does not expect to receive any compensation as a result of serving as a class representative in this case. *Id.* at 7:4-7. Ms. Baran understands that one of her responsibilities is to act in the best interests of class members. *Id.* at 86:8-14. She has read the

2

complaints in the case, understands the allegations in the complaint to claim that she was overcharged for her computers due to Intel's actions in inflating the price of microprocessors, and understands the basic mechanisms used by Intel to exclude others from the market and thus raise prices. *Id.* at 68:2-6, 70:1-7, 70:18-71:7, 78:7-20.

**Bergerson & Associates** was an IT consulting company located in Burnsville, Minnesota, owned by Steven Bergerson. King Decl. Ex. 61, Deposition of Steven Bergerson ("Bergerson Dep."), Mar. 19, 2008, at 4:18-5:10, 18:14-15, 19:20-21:8. Bergerson & Associates has not been a class representative prior to this case. *Id.* at 7:17-18. Mr. Bergerson does not expect to be compensated for serving as a representative plaintiff, and he understands that Bergerson & Associates is required to act in the best interests of the class. *Id.* at 11:1-11, 78:13-16. Bergerson & Associates purchased a Dell Dimension 300 Series computer with a 2.8 GHz Intel Pentium 4 process from Dell.com on February 3, 2005. King Decl. Ex. 62, Interrog. Resp., Attachment at 37; Bergerson Dep. at 23:21-24:5, 27:22-29:11, 34:4-7, 34:14-35:4.

**Michael Brauch** is a resident of San Francisco, California. King Decl. Ex. 63, Deposition of Michael Brauch ("Brauch Dep."), Jan. 31, 2008, at 5:13-19. A graduate of University of California-Berkeley, he works as a senior manager of business development for an online advertising company. *Id.* at 10:14-11:14. Mr. Brauch purchased a Dell Dimension 4700 desktop computer with an Intel Pentium 4 520 2.8 GHz processor from Dell.com on January 19, 2005. King Decl. Ex. 64, Interrog. Resp., Attachment at 4; Brauch Dep. at 12:7-13:6, 14:5-9, 18:15-21:20.

Mr. Brauch became a class representative because he felt that an injustice had been committed on people like him, because as a result of Intel's unfair he was

3

charged more than he should have been for his computer. Brauch Dep. at 7:22-9:7, 88:4-89:9, 89:17-90:1, 91:7-92:2.    Mr. Brauch understands that one of his responsibilities is to act in the best interests of the class. *Id.* at 86:8-11. He read the complaint before it was filed and has read it since. *Id.* at 75:9-14. Mr. Brauch does not expect to be compensated for serving as a class representative. *Id.* at 7:18-21.

**Mary Candelaria** is a resident of Albuquerque, New Mexico. King Decl. Ex. 65, Deposition of Mary Candelaria ("Candelaria Dep."), April 10, 2008, at 3:14-4:1.  Ms. Candelaria is a pharmacist with a doctorate in pharmacy, and is currently employed at the San Juan Medical Regional Center. *Id.* at 7:13-9:16.  She purchased three computers relevant to this action: (1) a Dell Dimension 4600 series desktop computer with an Intel Pentium 4 processor from Dell.com, purchased October 30, 2003 at Dell.com; (2) a Dell Dimension 2400 Series desktop computer with an Intel Pentium 4 Processor, purchased November 12, 2003 at Dell.com; and (3) a Hewlett-Packard DV1156 Pavilion Notebook with an Intel Centrino Processor, purchased at Costco in Albuquerque, New Mexico on February 12, 2005.    King Decl. Ex. 66, Pls.' 4th Supplemental Interrogatory Responses ("4th Supp. Interrog. Resp."), April 3, 2008, Attachment at 1-2; Candelaria Dep. at 12:14-14:15, 50:12-51:7, 52:15-17, 53:1-54:19, 56:3-22, 71:20-72:5, 72:20-73:2, 87:1-19, 88:10-16.  Ms. Candelaria, who has not been a class representative before, understands that one of her responsibilities is to act in the best interests of the class. Candelaria Dep. at 4:21-5:1, 110:7-18. She does not expect to be compensated for serving as a class representative. *Id.* at 5:22-6:3.

**Kelly Cannon** is a resident of Columbia, South Carolina. FACC ¶ 23.  She purchased a Dell Dimension 2350 Series computer with a 1.80 GHz Intel Pentium 4 Processor from Dell.com on January 10, 2003. King Decl. Ex. 67, Interrog. Resp., Attachment at 5.

4

**Marvin Chance Jr.**, a resident of Kansas, purchased three custom-built computers from Professional Business Systems between June 2005 and November 2006. King Decl. Ex. 68, Interrog. Resp., Attachment at 5-6. One computer had an Intel Core 2 Duo 2.93 GHz Processor, and the other two computers had Intel Pentium 4 3.0 GHz Processors. *Id.* Mr. Chance has no expectation of being compensated for serving as a class representative. King Decl. Ex. 69, Deposition of Marvin Chance, Jr. ("Chance Dep."), Mar. 7, 2008, at 12:3-7. Mr. Chance is serving as a class representative because he feels that someone honest needs to represent the state of Kansas, "to do what's right" so that unfair competition is not allowed. *Id.* at 12:8-13:2. Mr. Chance understands that it is his duty as a class representative to act in the best interest of the class. *Id.* at 158:11-15.

**Joseph Samuel Cone** was formerly a resident of North Carolina and is now a law student living in New York City. King Decl. Ex. 70, Deposition of Joseph Samuel Cone ("Cone Dep."), Apr. 11, 2008, at 4:8-22; 11:3-14. While living in North Carolina, Mr. Cone purchased a Dell Inspiron 700m laptop computer with a 1.6 GHz Pentium M 725 processor on May 25, 2005 from Dell; he also purchased other computers with Intel chips in North Carolina and California. King Decl. Ex. 71, Interrog. Resp., Attachment at 6; Cone Dep. at 19:22-23:14, 30:8-34:18, 38:16-42:9, 54:21-55:2, 56:19-57:7, 60:4-61:6. Mr. Cone, who has not been a class representative before, seeks to serve as one in this case because he believes people should be entitled to recover for injuries caused by Intel's exclusionary practices, including higher prices for their computers. Cone Dep. at 6:20-22, 8:10-9:13, 25:17-26:7, 121:9-14, 123:9-18. Mr. Cone understands that one of his responsibilities is to act in the best interests of the class. *Id.* at 111:19-113:8. He also understands that as a class representative, he will receive only the compensation he would receive as a class member. *Id.* at 8:1-9.

**Carrol Cowan** is a resident of Washington, D.C.  King Decl. Ex. 72, Deposition of Carrol Anne Cowan ("Cowan Dep."), Feb. 12, 2008, at 6:16-7:3.  Ms. Cowan purchased a Dell Inspiron 600 laptop computer with a 1.5 GHz Pentium M Processor 715A from Dell.com on March 8, 2005. King Decl. Ex. 73, Interrog. Resp., Attachment at 6-7; Cowan Dep. at 27:5-17, 39:21-40:5, 48:18-49:6, 50:1-6, 53:22-55:1, 57:18-58:18, 130:15-131:1.  She had previously purchased a Dell Dimension 8100 Series desktop computer with a 1.3GHz Pentium 4 processor on July 9, 2001 from Dell.com. King Decl. Ex. 74, 4th Supp. Interrog. Resp., Attachment at 3; Cowan Dep. at 40:8-10. Ms. Cowan, who has a B.A. in business administration, is employed by the B'nai B'rith Retirement Plan as a pension administrator.  Cowan Dep. at 11: 9-15, 14:12-16.

Ms. Cowan seeks to serve as a class representative because she believes people who were overcharged should be compensated and that the anticompetitive practices outlined in the complaint should be stopped.  *Id.* at 25:17-26:2, 30:2-6.  Ms. Cowan understands that her role as a representative is to represent all class members and to seek fair compensation for the injury caused by the improper conduct alleged.  *Id.* at 120:19-121:22, 125:12-17.  However, she does not expect to be compensated for serving as a representative plaintiff.  *Id.* at 25:12-16.  She understands and believes the allegations of the complaint, which includes an understanding of monopoly power, the effects of monopoly power on price and competition, and that monopoly power was misused by Intel.  *Id.* at 20:2-22, 28:16-29:15, 30:7-33:19, 36:4-39:11, 106:20-110:17, 116:7-22.

**Judy Cowgill** is a grandmother from Mississippi.  King Decl. Ex. 75, Deposition of Judy Cowgill ("Cowgill Dep."), Mar. 19, 2008, at 5:14-6:1, 28:14-29:18. Ms. Cowgill purchased a Dell Dimension 2400 Series desktop computer with a 2.53 GHz Pentium 4 processor from Dell.com on February 17, 2004.  King Decl. Ex. 76,

Interrog. Resp., Attachment at 7-8; Cowgill Dep. at 14:5-17:26, 20:5-12. Ms. Cowgill became involved in this case because she believes she and a number of other people paid too much for their computers with Intel chips. Cowgill Dep. at 8:11-17, 47:11-48:10, 65:5-16, 70:10-13. She understands that she will receive no compensation for serving as a class representative and that she must act in the best interests of the class. *Id.* at 8:5-10, 62:11-65:4.

**William Cronin**, of Dallas, Texas, is President of Knight Capital Group, a trading company with offices in New Jersey and Dallas. King Decl. Ex. 77, Deposition of William Cronin ("Cronin Dep."), Apr. 25, 2008, at 4:9-16, 9:1-15. Mr. Cronin purchased two computers with Intel processors during the proposed Class Period: a Dell laptop in August 2007 from Dell.com and an iMac desktop from the Apple store in Dallas, Texas in December 2007. *Id.* at 15:20-17:8, 21:12-20, 22:11-23:1, 23:7-12; 35:13-36:2, 36:13-37:2, 43:8-11, 48:6-9. Mr. Cronin has not been a class representative before. *Id.* at 6:22-7:2. He understands that one of his responsibilities is to act in the best interests of the class. *Id.* at 76:17-20. He does not expect to receive any compensation for serving as a class representative. *Id.* at 76:21-77:2.

**Carl Cunningham**, a resident of Maine, purchased a Dell Dimension 2400 Series desktop with a 2.0 GHz Intel Pentium 4 Processor on September 10, 2003. King Decl. Ex. 78, Pls.' 2d Supplement to Interrogatory Responses ("2d Supp. Interrog. Resp."), Jan. 8, 2008, Attachment at 1. Mr. Cunningham has no expectation of being compensated for serving as a class representative. King Decl. Ex. 79, Deposition of Carl Cunningham ("Cunningham Dep."), Mar. 13, 2008, at 10:2-4. Mr. Cunningham is serving as a class representative because he feels that everyone should be equal and he is willing to represent the other people in the class. *Id.* at 10:12-14. Mr.

7

Cunningham understands that, as a class representative, it is his duty to act in the best interests of the class. *Id.* at 42:10-13.

   **Russell Dennis** was formerly a student at the University of Vermont but is now an environmental scientist living in Ambler, Pennsylvania. King Decl. Ex. 80, Deposition of Russell Dennis ("Dennis Dep."), April 26, 2008, at 4:14-19, 6:14-19. On November 5, 2003, while a student in Vermont, Mr. Dennis purchased a Dell Latitude D600 laptop computer with a 1.4 GHz Pentium M processor from the University of Vermont Microcomputer Services. King Decl. Ex. 81, Interrog. Resp., Attachment at 9; Dennis Dep. at 7:5-10, 15:7-22:4, 28:8-19, 35:15-36:8. Mr. Dennis seeks to be a class representative because he understands that the market in which Intel operates is not operating fairly and, as a result, people are paying more for computers than they should. Dennis Dep. at 8:11-14, 60:20-64:18. He understands that one of his responsibilities is to act in the best interests of the class. *Id.* at 58:21-60:1. He also understands that as a class representative he will receive only the compensation he would receive as a class member. *Id.* at 9:5-19.

   **Dressed to Kill Custom Draperies, LLC** ("Dressed to Kill") is a custom drapery wholesaler owned by Arizona resident Russell Sepulveda. King Decl. Ex. 82, Deposition of Russell Sepulveda ("Sepulveda Dep."), Feb. 8, 2008, at 5:2-6:5; 18:1-20:5. Dressed to Kill purchased a custom-built desktop computer with a 2.4 GHz Intel Pentium 4 processor from Best Buy on August 23, 2002. King Decl. Ex. 83, Interrog. Resp., Attachment at 37-38; Sepulveda Dep. at 35:1-36:19, 37:12-39:3. Sepulveda understands that Dressed to Kill must act in the best interests of the class. Sepulveda Dep. at 71:8-74:5. He also understands that he is to be familiar with and follow the case to represent the class. *Id.* at 12:15-20. Mr. Sepulveda does not expect his

8

company to receive any compensation for serving as a class representative beyond its share in any recovery. *Id.* at 10:9-12:14.

**Fairmont Orthopedics & Sports Medicine, P.A.** ("Fairmont") is a Fairmont, Minnesota orthopedic general surgery group with sixty employees. King Decl. Ex. 84, Deposition of Cynthia Roberts, Apr. 8, 2008 ("Roberts Dep."), at 3:9-4:2, 17:5-14. Fairmont acquired many of its more than sixty computers, all with Intel processors, through a computer consulting firm, Bevcomm, between July 2002 and November 2004. King Decl. Ex. 85 & 86, Interrog. Resp., Attachment at 38 & Exhibit 1; Roberts Dep. at 18:3-8, 19:15-20:18, 21:1-23:13, 25:8-28:1, 30:19-31:4, 48:7-49:1. Fairmont understands that one of its responsibilities is to act in the best interests of the class. Roberts Dep. at 43:4-7. It does not expect to receive any compensation as a result of serving as a class representative in this action. *Id.* at 11:1-9.

**FICRO Acquisition Co.** ("FICRO") is a company doing business as Mills & Greer Sports, a seller of sporting equipment in South Burlington, Vermont. King Decl. Ex. 87, Deposition of Thomas Patrick Fitzgerald ("Fitzgerald Dep."), Mar. 14, 2008, at 21:9-17, 24:4-20. FICRO purchased at least the following computers during the proposed Class Period: (1) an Acer 5570-2758 Aspire 5570Z with an Intel T2060 1.6 GHz processor, purchased on February 12, 2007; (2) an HP Pavilion A350N Desktop with an Intel Pentium 4 2.4 GHz processor, purchased on January 9, 2004; and (3) a Dell Dimension 4600 Series with an Intel Pentium 4 2.4 GHz processor, purchased on June 14, 2003. King Decl. Ex. 88, Pls.' 1st Supplement to Interrogatory Responses ("1st Supp. Interrog. Resp."), Nov. 14, 2007, Attachment at 5; Fitzgerald Dep. at 4:13-6:10. FICRO has never been a class representative before, and it has no expectation of being compensated other than whatever it is entitled to simply as being a member of the class. *Id.* at 10:18, 12:18-13:14. It is serving as a class representative because it

9

believes it paid too much for its computers over the years. *Id.* at 13:15-13:22. FICRO understands its responsibilities as a class representative: it must monitor the case through its lawyers and act in the best interests of the class. *Id.* at 14:5-14:12.

**Beth Fink**, a resident of Omaha, Nebraska, is a middle school principal in the Millard Public School system. King Decl. Ex. 89, Deposition of Beth Fink ("Fink Dep."), May 2, 2008, at 3:9-14, 5:17-6:16. Ms. Fink purchased a Toshiba Satellite A75 PSA70U laptop computer with a 3066 GHz Intel x86 processor on July 3, 2004, at the Nebraska Furniture Mart in Omaha, Nebraska. King Decl. Ex. 90, 3d Supp. Interrog. Resp., Attachment at 3; Fink Dep. at 15:1-19:21, 22:22-23:7, 23:17-24:11. She has not served as a class representative before. Fink Dep. at 12:18-14:4. While Ms. Fink does not expect to receive any compensation for serving as a class representative other than what she would receive as a member of the class, she decided to serve as a class representative because she believes it is important for consumers to be treated fairly and that they not be charged more for their computers because of Intel's actions. *Id.* at 9:5-19, 12:8-17, 43:21-44:10. She understands that her role as class representative involves following the progress of the litigation, consulting with attorneys, and pursuing the litigation in the best interests of the class. *Id.* at 13:11-14:16, 42:22-43:16.

**Melinda Harr, D.D.S., P.C.** is a dental practice in Fargo, North Dakota. King Decl. Ex. 91, Deposition of Curtis Harr ("Harr Dep."), Mar. 21, 2008, at 5:2-15; 6:2-8. It purchased a number of computers during the proposed Class Period, including seven Dell Dimension desktop computers, all with Intel Pentium 4 Processors, from Dell.com; the orders for these computers were placed April 3, 2004, September 11, 2004, March 10, 2005, and May 4, 2005. King Decl. Ex. 92, Interrog. Resp., Attachment at 42; Harr Dep. at 16:14-21:4, 22:1-25:4, 31:7-9, 31:16-32:13, 34:7-9,

10

36:19-39:12, 41:5-15, 43:13-15, 44:11-46:13, 48:8-18, 51:9-52:15, 53:1-11, 56:21-59:21, 60:9-20.

Curtis Harr, the office manager for the practice, testified that it brought the case to provide a remedy for an overcharge that he believed was imposed on a large number of North Dakota citizens who purchased x86 chips. Harr Dep. at 12:19-13:1, 15:13-16:13, 74:8-17, 74:21-75:12. Mr. Harr understands that part of the duty of a class representative is to act in the best interests of the class. *Id.* at 85:15-86:11. The practice does not expect to be compensated for serving as a class representative. *Id.* at 12:11-18.

**Mark Helm** is a resident of Salt Lake City, Utah. FACC ¶ 47. He purchased a Dell Dimension 8300 computer with an Intel Pentium 4 Processor from Dell.com on May 21, 2003. King Decl. Ex. 93, 1st Supp. Interrog. Resp., Attachment at 2.

**Nancy Herring** is a housewife from Memphis, Tennessee. King Decl. Ex. 94, Deposition of Nancy Herring ("Herring Dep."), Mar. 18, 2008, at 5:13-6:5, 10:1-5. Ms. Herring purchased a Gateway 500S computer with a 2.0 GHz Intel Pentium 4 Processor from a Gateway store in Bartlett, Tennessee on November 2, 2002. King Decl. Ex. 95, Interrog. Resp., Attachment at 13-14; Herring Dep. at 14:6-15:3, 25:5-11, 31:14-32:2, 32:15-19, 37:8-19. While she understands that she is not to be compensated for serving as a class representative, Herring Dep. at 8:12-15, Ms. Herring wanted to become part of a lawsuit that might help everyone who paid more than they should have paid for computers *Id.* at 8:2-11, 8:16-19, 56:3-7, 65:9- 66:1. Ms. Herring understands that one of her responsibilities as a class representative is to act in the best interests of the class. *Id.* at 54:19-55:8.

11

**Michael Hetzel**, a resident of Michigan, purchased an Acer Aspire 3613WLCi laptop with an Intel Processor on September 24, 2005. King Decl. Ex. 96, 1st Supp. Interrog. Resp., Attachment at 2. Mr. Hetzel seeks to serve as a class representative because he wants to hold Intel accountable for its monopolistic behavior. King Decl. Ex. 97, Deposition of Michael Hetzel ("Hetzel Dep."), Mar. 24, 2008, at 6:16 - 6:20. Although he has never served as a class representative before, Mr. Hetzel understands that it is his duty to act in the best interest of the class. *Id.* at 5:14-16, 60:12-15.

**Gabriella Herroeder-Perras** is a resident of Vista, California. King Decl. Ex. 98, Deposition of Gabriella Herroeder-Perras ("Perras Dep."), Jan. 23, 2008, at 5:20-6:7, 13:19-21. Ms. Herroeder-Perras purchased a Dell Dimension 8400 Series desktop computer with a 3 GHz Intel Pentium 4 Processor 630 from Dell via phone on March 2, 2005. King Decl. Ex. 99, Interrog. Resp., Attachment at 14; Perras Dep. at 19:7-11, 21:16-20, 28:18-29:17, 38:12-19. She monitors media reports regarding the case and consults with her counsel to determine the truth of these reports, which she sees as one of her duties as a representative plaintiff. Perras Dep. at 9:22-10:10. Ms. Herroeder-Perras has read the complaint, believes the allegations to be true, and understands that the complaint alleges that a lack of competition inflated the price of microprocessors. *Id.* at 52:2-16, 57:12-59:4. Further, she understands her responsibility as a representative plaintiff to act on behalf of other class members. *Id.* at 11:4-9. Ms. Herroeder-Perras does not expect to be compensated for serving as a representative plaintiff, believing that a purpose of the case is to stop future wrongful conduct by Intel. *Id.* at 10:14-22.

**Patrick Hewson** is a lawyer residing in Carbondale, Illinois. King Decl. Ex. 100, Deposition of Patrick Hewson ("Hewson Dep."), Apr. 22, 2008, at 4:10-22, 7:14-8:8. Mr. Hewson purchased a Dell Inspiron 5150 laptop computer with a 3.06 GHz

Pentium 4 processor from Dell.com on August 27, 2004.  King Decl. Ex. 101, Interrog. Resp., Attachment at 15; Hewson Dep. at 23:10-25:15, 26:5-28:15, 30:20-31:8, 31:20-32:10.  He has not served as a class representative before.  Hewson Dep. at 12:18-20. While Mr. Hewson does not expect to receive any compensation for serving as a class representative, he decided to seek to become one because he believes that class actions are important tools for making corporations like Intel accountable for their actions and to pay for their misconduct when the effect on any particular consumer may be small.  *Id.* at 15:2-16:7, 21:5-15.   He understands his role as class representative to pursue the litigation, cooperate in discovery, and act in the best interests of the class.  *Id.* at 21:16-23:2.

**Jason Hoenshell**, a resident of Des Moines, Iowa, is a senior principal software consultant with Oracle.  King Decl. Ex. 102, Deposition of Jason Hoenshell ("Hoenshell Dep."), Apr. 19, 2008, at 4:3-16, 18:14-19:6, 27:9-15, 28:1-29:2.   Mr. Hoenshell purchased a Sony VAIO laptop computer with an Intel Centrino Pentium M 725 processor from CircuitCity.com on August 27, 2004.  King Decl. Ex. 103, Interrog. Resp., Attachment at 15-16; Hoenshell Dep. at 12:1-13:2, 17:21-18:9, 29:3-30:17, 32:21-33:5, 33:16-34:18.  Mr. Hoenshell understands that one of his responsibilities is to act in the best interests of the class.  Hoenshell Dep. at 25:1-5.  He does not expect to receive any compensation for serving as a class representative.  *Id.* at 8:19-21.

**Ronald Hooper** is a resident of New Hampshire.  King Decl. Ex. 104, Deposition of Ronald Hooper ("Hooper Dep."), Mar. 31, 2008, at 4:12-4:14.  Mr. Hooper purchased a Dell Inspiron laptop with an Intel Celeron 2.2 GHz processor on February 26, 2005. King Decl. Ex. 105, Interrog. Resp, Attachment at 16.  Although Mr. Hooper has never been a class representative before, he understands that one of his duties is to act in

the best interests of the class. Hooper Dep. at 6:1-6:9, 85:2-85:5. Mr. Hooper has no expectation of being compensated for serving as a class representative other than what he would be entitled to as a member of the proposed class. *Id.* at 7:12-7:17. He is serving as a class representative in this case because he feels that the class was "unjustly overcharged for a product, and [he] feel[s] it's [his] duty as a citizen to represent as many people as [he] can in the case." *Id.* at 7:18-8:2.

**HP Consulting Services, Inc.** ("HP") is a retail security consulting firm owned and operated by Florida resident Howard Golin and located in West Palm Beach, Florida. King Decl. Ex. 106, Deposition of Howard Golin ("Golin Dep."), Mar. 11, 2008, at 4:8-11, 8:22-9:18, 14:10-15:7, 16:2-19:3. Mr. Golin retired from a job as a vice president of operations at a retail pharmacy chain before starting his company. *Id.* at 29:11-18, 62:13-18, 63:7-9. HP purchased a Dell Inspiron 1200 laptop computer with a 1.2GHz Intel Celeron processor on April 25, 2005 and a Dell Dimension 4400 Series desktop computer with a 2.0 GHz Pentium 4 processor on April 4, 2002, both from Dell. King Decl. Ex. 107, Interrog. Resp., Attachment at 38-39; Golin Dep. at 18:22-20:4, 50:3-53:14, 60:6-61:1, 62:9-12, 63:12-64:16, 75:5-18, 81:14-82:11, 85:16- 89:6, 89:21-91:19.

HP seeks to be a class representative because Mr. Golin believed that Intel was overcharging for its processors by pressuring customers to use only Intel chips. Golin Dep. at 27:13-22, 117:15-118:4, 118:20-120:19. Mr. Golin does not expect his company to receive any compensation for service as a class representative in this case. *Id.* at 49:6-12. He understands the duties of a class representative as putting the needs of the class before his personal needs, reviewing relevant materials, and testifying if needed. *Id.* at 49:13-50:2.

14

**Tracey Kinder** is a resident of West Virginia who works as a sales and service director for a security company. King Decl. Ex. 108, Deposition of Tracey Kinder ("Kinder Dep."), Feb. 13, 2008, at 6:11-7:7, 12:8-16, 58:4-10. Mr. Kinder purchased a Dell Dimension 4100 Series Computer with an Intel Pentium III Processor on August 2, 2001, and a Dell Dimension 4600 computer with a 2.8 GHz Intel Pentium 4 Processor on July 4, 2004, both from Dell.com. King Decl. Ex. 109, Interrog. Resp., Attachment at 19; Kinder Dep. at 18:2-21, 19:21-20:13, 21:13-22:1, 25:17-21, 28:2-21, 50:20-51:13, 53:10-12, 54:4-18, 56:9-19, 101:12-102:7.

Mr. Kinder understands that his responsibilities as a representative plaintiff involve representing all class members and acting in the best interests of the class. Kinder Dep. at 126:12-16; 137:11-138:12. He is pursuing the case because he wants to stop Intel's anticompetitive conduct, the basics of which he understands. *Id.* at 94:11-96:13; 129:5-130:5. He does not expect compensation for serving as a class representative. *Id.* at 108:14-109:12.

**Ronald Konieczka** is a resident of Cincinnati, Ohio.   FACC ¶ 58.   He purchased two computers during the proposed Class Period: (1) a Gateway 310 PC with a 2.6 GHz Intel Pentium 4 processor, purchased from Gateway on August 22, 2003; and (2) a Gateway 500X PC with a 2.6 GHz Intel Pentium 4 Processor, purchased from Gateway on December 4, 2002. King Decl. Ex. 110, Interrog. Resp., Attachment at 20.

**Matthew Kravitz**, a resident of Delaware, purchased a Toshiba Satellite P15 Model S409 computer with a 2.8 GHz Intel Processor on December 15, 2003. King Decl. Ex. 111, Interrog. Resp., Attachment at 21. Mr. Kravitz has no expectation of being compensated for being a class representative. King Decl. Ex. 112, Deposition of Matthew Kravitz ("Kravitz Dep."), Mar. 14, 2008, at 25:4-20. Mr. Kravitz understands

15

his responsibilities as a class representative: "I need to retain good counsel; be a member of the class, which, by purchasing an x86 Intel processor, makes me a part of the class." *Id.* at 48:3-7.   Mr. Kravitz also realizes that his duties include acting in the best interest of the class. *Id.* at 48:17-21. He is serving as a class representative because of this personal interest in the claims of the case. *Id.* at 30:11-31:3.

**Law Offices of Kwasi Asiedu** is the Torrence, California firm of attorney Kwasi Asideu.  King Decl. Ex. 113, Deposition of Kwasi Asiedu ("Asiedu Dep."), Feb. 20, 2008, at 4:10-19, 7:8-8:2.   Mr. Asiedu, for his law practice, purchased a desktop computer with a 2.8 GHz Intel Pentium 4 processor on March 24, 2005 from Aaircom Communications and Computer Services in Marina Del Rey, California. King Decl. Ex. 114, Interrog. Resp., Attachment at 40; Asiedu Dep. at 18:1-19:10, 23:1-4, 24:19-26:18, 36:11-18.   Mr. Asiedu read the complaint before it was filed, Asideu Dep.at 13:5-7; 44:1-7, and believes that absent the anticompetitive actions alleged in the complaint, his firm would have paid less for the computer it purchased. *Id.* at 45:10-46:2. He understands that as a representative plaintiff his firm must act in the best interests of the class. *Id.* at 55:11-56:7.

**Law Offices of Laurel Stanley** is the Lafayette, California firm of attorney Laurel Stanley. King Decl. Ex. 115, Deposition of Laurel Stanley ("Stanley Dep."), Feb. 5, 2008, at 4:15-5:9, 9:7-10:18. Ms. Stanley purchased a number of computers from Dell.com for her law practice, including (1) a Dell Dimension 2350 Series desktop computer with a 1.8 GHz Intel Pentium 4 Processor, purchased on January 2, 2003; (2) a Dell Dimension 2350 Series desktop computer with an Intel Pentium 4 Processor, purchased on June 25, 2003; and (3) a Dell Dimension 2400 desktop computer with a 2.66 GHz Pentium 4 processor, purchased on June 6, 2004. King Decl. Ex. 116,

16

Interrog. Resp., Attachment at 40-42; Stanley Dep. at 7:1-2, 14:3-16:4, 16:17-17:17, 21:10-15, 22:1-18, 25:2-26:1, 28:2-29:1, 35:7-14, 41:11-17.

Ms. Stanley read the initial complaint before it was filed, read the first amended complaint, and understands the theory of the claims as the case has been explained to her. Stanley Dep. at 80:13-18, 81:5-82:7. She understands that a representative plaintiff is required to act in the best interests of the class, based upon the advice of counsel, and she does not expect her firm to be compensated for serving as a representative plaintiff other than the compensation it might receive as a class member as a result of its claims in this case. *Id.* at 7:6-14, 85:6-86:9.

**David Lipton** is a California resident who has been certified as a veterinary ophthalmologist since 1972. King Decl. Ex. 117, Deposition of David Lipton ("Lipton Dep."), Jan. 28, 2008, at 5:13-6:2, 6:22-7:1, 16:21-18:10, 24:2-14. Mr. Lipton purchased a Dell Dimension XPS Series computer with a 3.4 GHz Intel Pentium Processor 650 from Dell.com on February 22, 2005. King Decl. Ex. 118, Interrog. Resp., Attachment at 21-22; Lipton Dep. at 23:16-24:21, 57:10-58:18, 59:5-12. The lack of choice and lack of competition in the computer market bothered Mr. Lipton because he believes that it leads to higher prices and slower improvements in products, so he became involved in this litigation to help give consumers a voice. Lipton Dep. at 11:7-12:22. He understands that it is his duty to act in the best interests of the class and does not expect to receive any compensation for serving as a representative plaintiff in this case, *id.* at 10:15-11:6, 86:3-6.

**Andrew Meimes**, a California resident, is a product manager for Visa, Inc. King Decl. Ex. 119, Deposition of Andrew Meimes ("Meimes Dep."), Jan. 28, 2008, at 5:10-15, 17:3-16, 25:17-26:7. Mr. Meimes has two MBAs, one from the University of California-Berkeley with a focus in International Studies and the other from Columbia

17

University with a focus in finance. *Id.* at 16:15-16:21. He purchased a Dell Latitude C640 computer with a 1.8 GHz Intel Pentium 4 Processor at Dell.com on April 10, 2005. King Decl. Ex. 120, Interrog. Resp., Attachment at 22; Meimes Dep. at 18:12-20. Mr. Meimes understands that as a class representative he must act in the best interests of the class. Meimes Dep. at 59:5-60:1. In serving as a class representative, he expects to receive only the same type of compensation for his claims as other class members. *Id.* at 7:8-16.

**Stewart Munson** of San Rafael, California, is a retailer of aviation materials. King Decl. Ex. 121, Deposition of Stewart Munson ("Munson Dep."), Mar. 11, 2008, at 5:9- 15, 10:21-17:21. Mr. Munson purchased an Acer Travelmate ZLI 2300 Series laptop computer with an Intel Centrino processor from Wesley Malespino, a computer designer and builder in Cotati, California, on April 11, 2005. King Decl. Ex. 122, Interrog. Resp., Attachment at 23-24; Munson Dep. at 20:16-19, 24:18-27:22 27:4-11, 33:4-10. Mr. Munson understands that as a representative plaintiff he must act in the best interests of the class, and intends to make sure he is available to fulfill his responsibilities. Munson Dep. at 59:5-60:4. He believes that pursuing this litigation is in the best interests of his business and the class because it can help to foster competition and result in damages. *Id.* at 60:2-16, 63:19-64:5. Mr. Munson does not expect any compensation for his service as a representative plaintiff. *Id.* at 8:1-4.

**Peter Jon Naigow** is a resident of Brown Deer, Wisconsin. King Decl. Ex. 123, Deposition of Peter Jon Naigow ("Naigow Dep."), Feb. 20, 2008, at 4:7-11, 5:7-10. Mr. Naigow purchased an Emachines T2862 computer with an 2.66 GHz Intel Celeron D processor in December 2005 from Circuit City in Milwaukee, Wisconsin. King Decl. Ex. 124, Interrog. Resp., Attachment at 25; Naigow Dep. at 4:12-5:5, 10:10-16, 15:6-14, 17:2-18:2. He seeks to represent people who were overcharged for Intel processors

18

and intends to act in the best interests of the class. Naigow Dep. at 7:9-14, 39:15-40:10, 42:16-18, 50:15-51:2. He expects to receive a refund of what he was overcharged, but does not expect any other compensation as a result of serving as a representative plaintiff in this case. *Id.* at 6:18-7:8.

**Chad Ohlrogge** is a resident of South Dakota. King Decl. Ex. 125, Deposition of Chad Ohlrogge ("Ohlroge Dep."), Mar. 18, 2008, at 5:12-6:8. Mr. Ohlrogge purchased a Dell Dimension 8400 desktop computer with a 3.2 GHz Intel Pentium 4 processor from Dell.com on March 2, 2005. King Decl. Ex. 126, Interrog. Resp., Attachment at 26; Ohlrogge Dep. at 22:11-12, 30:20-31:10, 33:11-21, 52:14-53:5. He does not expect to be compensated for serving as a representative plaintiff in this case, and is serving as a representative to represent the interests of South Dakotans in pursuing claims against Intel for higher prices of the computers they purchased. Ohlrogge Dep. at 8:15-22, 8:22-10:8, 82:3-86:12, 92:10-14, 110:10-17, 117:18-118:21, 120:15-18. Mr. Ohlrogge understands that he is to represent the best interests of the class. *Id.* at 79:17-80:5.

**Raymond A. Pacia**, a resident of Rhode Island, purchased a Dell Dimension XPS 400 desktop, with a 3.0 GHz Pentium 83D Processor with Dual Core Technology, on December 19, 2005. Mr. Pacia is serving as a class representative because he feels that he is qualified to do so, because he wants to pursue rightful claims that need to be pursued, and because he believes that people would not bring cases individually because of the relative size of the individual claims involved. King Decl. Ex. 127, Deposition of Raymond Pacia, Mar. 11, 2008, at 8:12-9:2. Although he has never served as a class representative before, Mr. Pacia understands that it is his responsibility to act in the best interest of the class. *Id.* at 6:21-7:1, 54:11-54:14.

**Phil Paul**, a resident of New Jersey, purchased three computers during the proposed Class Period, all from Dell.com: (1) a Dell Dimension 8200 Series desktop with a 2.0 GHz Intel Pentium 4 Processor, purchased on May 2, 2002; (2) a Dell Inspiron 9300 laptop with a 1.73 GHz Intel Pentium M Processor, on December 11, 2005; and (3) a Dell Inspiron laptop with an Intel Pentium processor, in Summer 2007. King Decl. Ex. 128, Interrog. Resp., Attachment at 26-27; King Decl. Ex. 129, Deposition of Philip H. Paul ("Paul Dep."), Mar. 6, 2008, at 22:9-11, 35:7-21. Mr. Paul became a class representative because he wants to represent himself and everyone else in the country who was taken advantage of by Intel. Paul Dep. at 13:12-13:16. Although Mr. Paul has never been a class representative before, he understands that one of his duties is to act in the best interest of the class. *Id.* at 12:18-20, 65:10-13.

**Maria Prohias**, a resident of Florida, purchased a Sony Vaio PCV-RX682 with a 2.2 GHz Intel Pentium 4 Processor in June 2002. King Decl. Ex. 130, Interrog. Resp., Attachment at 27. Other than the damages claimed in her lawsuit, Ms. Prohias has no expectation of being compensated for serving as a class representative. King Decl. Ex. 131, Deposition of Maria Prohias, Mar. 12, 2008, at 18:6 - 19:5. Ms. Prohias seeks to serve as a class representative because she believes that she and many other people overpaid for their computers because Intel kept the prices of the microprocessors artificially high. *Id.* at 19:6-19:19. Ms. Prohias understands that her responsibilities as a class representative are to ensure that she represents other people like herself who overpaid for their computers due to Intel's misconduct and staying involved in the litigation. *Id.* at 20:22-21:15.

**Paul Ramos**, a resident of Florida, purchased two Sager Laptops with Intel Pentium III-650 Processors in November 2001. King Decl. Ex. 132, Interrog. Resp., Attachment at 28-29. Mr. Ramos seeks to serve as a class representative because he

wants to correct the wrongs that Intel has done and continues to do by bullying the competition and not allowing the free market to function properly, resulting in artificially high prices. King Decl. Ex. 133, Deposition of Paul Ramos, Mar. 13, 2008, at 19:18-20:20. Although Mr. Ramos has never served as a class representative before, he understands that his responsibilities as a class representative include keeping apprised of the case and making himself available for a deposition and trial. *Id.* at 18:3-5, 91:16-22.

**Napoly Salloum** is a resident of Arizona. King Decl. Ex. 134, Deposition of Napoly Salloum ("Salloum Dep."), Mar. 28, 2008, at 5:8-17. Mr. Salloum purchased an eMachines Model T1840 desktop computer with an Intel Celeron 1.8 GHz processor on November 11, 2002. King Decl. Ex. 135, Interrog. Resp., Attachment at 30. Although Mr. Salloum has never been a class representative before, Salloum Dep. at 8:17-8:19, he understands that it his duty as a class representative to stay actively involved in the case, to represent absent class members, and to act in the best interests of the class. *Id.* at 11:6-13, 53:16-19. He has no expectation of being compensated for serving as a class representative. *Id.* at 10:5-10:18. Mr. Salloum decided to serve as a class representative because he believes that he was financially harmed after being overcharged for his processor, and because he doesn't "want to see something going on like that over and over again." *Id.* at 10:19-11:5.

**Jay Salpeter**, a resident of New York, purchased a Dell Inspiron 5150 laptop with a 3.06 GHz Pentium 4 processor on May 17, 2004. King Decl. Ex. 136, Interrog. Resp., Attachment at 31. Mr. Salpeter decided to be a class representative because he thought what Intel had done – creating a monopoly, giving kickbacks, and threatening other companies – was wrong. King Decl. Ex. 137, Deposition of Jay Salpeter, Feb. 29, 2008, at 21:16-22:3. Although Mr. Salpeter has never been a class representative

before, he understands that he is acting as a representative of other people who purchased computers and must make himself available for depositions and cooperate in whatever fashion necessary to help the Court render a decision. *Id.* at 8:11-13, 103:7-21.

**Seiniger Law Offices, P.A.** ("SLO") of Boise, Idaho is the law firm of attorney William Seiniger. King Decl. Ex. 138, Deposition of Andrew Marsh (" Marsh Dep."), Apr. 7, 2008, at 4:9-5:9; King Decl. Ex. 139, Deposition of  William Breck Seiniger ("Seiniger Dep."), Apr. 7, 2008, at 4:9-17, 12:10-13:6.   At various times between October 11, 2001 and December 31, 2004, SLO purchased nine computers from Dell.com, including  (1) three Dell Dimension 4300 Series computers, each with a 1.6 GHz Intel Pentium 4 Processor, purchased October 16, 2001; (2) a Dell Dimension desktop computer with a 2.0 GHz Intel Pentium 4 Processor, purchased March 3, 2002; (3) two Dell Dimension 4400 Series desktop computers, each with a 1.6 GHz Intel Pentium 4 Processor, purchased on March 26, 2002; (4) a Dell Dimension 2400 Series desktop computer with a 2.66 GHz Intel Pentium 4, purchased on April 7, 2004; (5) a Dell Latitude D800 laptop computer with a 1.60GHz Intel Pentium M processor, purchased on June 21, 2004; and (6) a Dell Dimension 3000 Series desktop computer with a 2.8 GHz Intel Pentium 4 processor, purchased on December 31, 2004.  King Decl. Ex. 140, 4th Supp. Interrog. Resp., Attachment at 4-7; Marsh Dep. at 14:12-16:11, 16:22-17:4, 17:17-18:2, 30:6-16, 31:11-21, 32:12-33:2, 39:11-40:9, 51:11-53:1, 54:16-21; Seiniger Dep. at 15:5-20:10, 21:19-22:2, 25:12-19, 45:15-46:14, 48:12-50:7.  SLO is acting as a class representative because the type of action involved here cannot be undertaken by individual plaintiffs.  Seininger Dep. at 8:17-9:6.  It understands that it is required to act in the best interests of the class.  *Id.* at 65:10-67:6.

**Frank Slattery** is a resident of Audubon, New Jersey. King Decl. Ex. 141, Deposition of Francis Slattery ("Slattery Dep."), March 7, 2008, at 5:10-17. Mr. Slattery is a CPA and owns a landscaping firm. *Id.* at 9:3-13:5. Mr. Slattery owns several computers, including a custom-built desktop computer with an Intel Pentium 2.1 GHz processor that he purchased by phone from Base 2 Technologies in North Wales, Pennsylvania on June 3, 2004. King Decl. Ex. 142, Interrog. Resp., Attachment at 34; Slattery Dep. at 18:9-19:13, 19:22-22:13, 24:20-25:5, 27:1-28:1, 58:11-59:3, 61:11-62:8. Mr. Slattery seeks to serve as a class representative because he understands that his individual damages alone would not be enough to bring a lawsuit. Slattery Dep. at 17:22-18:8, 86:15-88:5. He understands that one of his responsibilities is to act in the best interests of the class. *Id.* at 98:10-99:2.

**Kevin Stoltz** is a computer consultant residing in Washington state. King Decl. Ex. 143, Deposition of Kevin Stoltz ("Stoltz Dep."), Mar. 24, 2008, at 5:3-6:2, 9:8-10:6, 17:12-20:2. Mr. Stoltz purchased an IBM Thinkpad x40 notebook computer with a 1.2 GHz Pentium M processor on June 17, 2004 from Buy.com and a A30 IBM Thinpad with a 1 GHz Pentium III-M processor from CDW online on February 12, 2002. King Decl. Ex. 144, Interrog. Resp., Attachment at 35; Stoltz Dep. at 21:7-25:7; 26:11-20; 28:2-6; 30:21-31:4; 41:1-10. He seeks to serve as a class representative because he believes in fair competition and that such fair competition was not occurring in the microprocessor market. Stoltz Dep. at 12:2-21, 59:18-60:6. Mr. Stoltz understands that his responsibilities as a class representative include staying informed about the case, having competent counsel to prosecute the case, and acting in the best interests of the class. *Id.* at 12:22-13:7, 63:2-64:6. He does not expect to receive any compensation for serving as a representative plaintiff in this action. *Id.* at 11:13-12:1.

**Dana Thibedeau** is a resident of Massachusetts. King Decl. Ex. 145, Deposition of Dana Thibedeau ("Thibedeau Dep."), Apr. 1, 2008, at 4:11-4:20. Mr. Thibedeau purchased a Gateway 200ARC laptop computer with an Intel Pentium M Centrino 1.5 GHz processor on April 14, 2004. King Decl. Ex. 146, Interrog. Resp., Attachment at 35. Although Mr. Thibedeau has never been a class representative before, he understands that one of his duties as a class representative is to act in the best interests of the class. Thibedeau Dep. at 6:2-4, 65:2-65:5.

**Trotter-Vogel Realty, Inc.** ("TVR"), a company doing business under the name of Prudential Realty, is a real estate brokerage run by John Gieseker, a California real estate agent. King Decl. Ex. 147, Deposition of John Gieseker ("Gieseker Dep."), Feb. 8, 2008, at 5:9-14, 6:9-7:11, 19:17-20:12, 21:12-22:22. TVR purchased the following computers purchased from Dell during the proposed Class Period: (1) one Dimension 4700 series computer, (2) twelve Dimension 4600 Series computers; (3) four Dimension 4550 series computers; (4) one Dimension 440 series computer; (5) four Dimension 4300 series computers; (6) one Dimension 3000 series computers; (7) one Inspiron 4100 series computer; (8) thirteen se Inspiron 4000 series computers; (9) four Inspiron 1150 series computers; (10) one Inspiron 600m computer; (11) one OptiPlex GX620 series computer; (12) one OptiPlex GX520 series computer; (13) one OptiPlex BX280 series computer; (14) four OptiPlex GX280 series computers; and (15) one Latitutde D505 computer. King Decl. Ex. 148, Interrog. Resp., Exhibit 2; Gieseker Dep. at 23:20-24:8, 27:11-28:20, 33:9-34:7, 49:16-53:11, 66:10-13. TVR also purchased three computers during this period from Jeff Roberts & Associates: two OptiPlex GX620 computers and one Optiplex GX520 computer. All of these are Dell computers with Intel microprocessors. Interrog. Resp., Exhibit 2; Gieseker Dep., pp. 76:16-78:18; 79:10-20.

TVR is serving as a class representative not for financial gain, but because it believes that representing a group of other purchasers is the right thing to do. Gieseker Dep. at 12:2-13:1.    Mr. Gieseker understands that TVR, as a class representative, must act in the best interests of the class. *Id.* at 95:5-9.

**United Food and Commercial Workers Union, Local 1564** ("UCFW") is located in Albuquerque, New Mexico.    King Decl. Ex. 149, Deposition of Janet Samuelman ("Samuelman Dep."), Apr. 9, 2008, at 3:14-4:14.    It acquired several computers during the relevant period, including three Dell Optiplex desktop computers, each with an Intel Pentium 4 processor, via lease agreement with Dell Financial Services dated November 12, 2004.    King Decl. Ex. 150, 3d Supp. Interrog. Resp., Attachment at 4-5; Samuelman Dep. 21:7-23:13, 25:11-26:1, 32:8-36:3, 37:17-19, 38:3-21.    While the UCFW does not expect to receive any compensation for serving as a class representative – other than what it would receive as a class member – it decided to serve as a class representative because it believes it was overcharged from computer products due to Intel's actions.    Samuelman Dep. at 6:11-22, 7:1-7, 11:13-18, 18:8-13.    UCFW understands that as a class representative, it must act in the best interests of the class. *Id.* at 17:16-18:2.

**Ian Walker**, a San Francisco, California resident, is a health educator and education and community participant coordinator and artistic director of a theater company.    King Decl. Ex. 151, Deposition of Ian Walker ("Walker Dep."), Feb. 1, 2008, at 5:12-17, 7:4-8, 12:19-13:20.    Mr. Walker purchased a Hewlett-Packard Pavilion DV1000 laptop computer with a 1.4 GHz Intel Celeron M Processor in 2005 from CompUSA in San Francisco, California. King Decl. Ex. 152, Interrog. Resp., Attachment at 35-36; Walker Dep. at 10:9-14, 14:20-15:17, 16:16-17:5, 24:6-13, 46:22-47:6.    He understands that he is to act in the best interests of the class and will

consult with his attorneys in determining what is in the best interests of the class. Walker Dep. at 75:20-77:10. He does not expect to be paid for serving as a class representative in this action. *Id.* at 7:10-14.

**Robin Weeth** is a resident of Madison, Wisconsin. King Decl. Ex. 153, Deposition of Robin Weeth ("Weeth Dep."), Feb. 20, 2008, at 4:7-17. Mr. Weeth is a former marine who currently is a graduate student in social work at the University of Wisconsin and works with veterans with severe and persistent mental illnesses. *Id.* at 4:15-5:4, 13:21-14:22. Mr. Weeth purchased two computers with Intel chips during the proposed Class Period from Dell.com: (1) A Dell Dimension 2350 Series desktop computer with a 1.8 GHz Intel Celeron processor, purchased on April 8, 2003; and (2) a Dell Inspiron 6000 laptop computer with a 1.73 GHz Pentium M Processor 740, purchased on December 3, 2005. King Decl. Ex. 154, Interrog. Resp., Attachment at 36; King Decl. Ex. 155, 3d Supp. Interrog. Resp., Attachment at 6-7; Weeth Dep. at 27:4-29:1, 30:22-31:6, 37:17-19, 40:18-41:4, 49:17-51:10, 53:1-2, 60:10-61:2, 62:9-64:1, 69:21-22, 73:11-74:6.

Mr. Weeth seeks to serve as a class representative because he believes the actions alleged in the complaint were improper business practices. *Id.* at 10:18-11:3. He understands that one of his responsibilities is to act in the best interests of the class – people who bought computers with an Intel chip. *Id.* at 76:13-16. He does not expect to receive any compensation for serving as a class representative other than that he would receive as a member of the class. *Id.* at 9:22-10:17.

# ANNEX B

# ANNEX B

## Summary of Relevant State Antitrust Statutes

### A.    Monopolization States

| JURISDICTION | MONOPOLIZATION STATUTE | HARMONIZATION WITH FEDERAL LAW | OTHER SUBSTANTIVE ISSUES | STATUE OF LIMITATIONS |
|---|---|---|---|---|
| Arizona | "The establishment, maintenance or use of a monopoly or an attempt to establish a monopoly of trade or commerce, any part of which is within this state, by any person for the purpose of excluding competition or controlling, fixing or maintaining prices is unlawful." A.R.S. § 44-1403. | Yes. "[W]e analyze the requirements necessary to prove a violation of section 44-1403 under federal case law interpreting § 2 of the [federal] Sherman Act." *Pasco Industries, Inc. v. Talco Recycling, Inc.*, 985 P.2d 535, 542 (Ariz. Ct. App. 1998) *review denied* Sept. 21, 1999 | Treble Damages:  "If the trier of fact finds that the violation is flagrant, it shall increase recovery to an amount not in excess of three times the damages sustained." A.R.S. § 44-1408(B). "Flagrant" means "conduct which is shocking, outrageous, or outstandingly bad." *Western Waste Serv. Sys. v. Superior Court*, 584 P.2 554, 556 (Ariz. 1978). Trebling is not mandatory; a jury can award a sum less than treble damages "thereby suggesting that some things may be more or less flagrant than others." *Id.* | 4 years – A.R.S. § 44-1410(B). |
| District of Columbia | "It shall be unlawful for any person to monopolize, attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of trade or commerce, all or part of which is within the District of Columbia." D.C. Code § 28-4503. | Yes. "[A] court of competent jurisdiction may use as a guide interpretations given by federal courts to comparable antitrust statutes." D.C. Code § 28-4515. | None | 4 years – D.C. Code Ann. § 28-4511(b) |
| Iowa | "A person shall not attempt to establish or establish, maintain, or use a monopoly of trade or commerce in a relevant market for the purpose of excluding competition or of controlling, fixing, or maintaining prices." Iowa Code § 553.5.  "'Relevant market' means the geographical area of actual or potential competition in a line of commerce, all or any part of which is within this state." Iowa Code § 553.3. | Yes. "This chapter shall be construed to complement and be harmonized with the applied laws of the United States which have the same or similar purpose as this chapter. This construction shall not be made in such a way as to constitute a delegation of state authority to the federal government, but shall be made to achieve uniform application of the state and federal laws prohibiting restraints of economic activity and monopolistic practices." Iowa Code § 553.2. | Treble Damages:  "Recover, at the court's discretion, exemplary damages which do not exceed twice the actual damages awarded under subsection 2, from a person other than a city or county or legal entity created by a city or county, if:  a. The trier of fact determines that the prohibited conduct is willful or flagrant." Iowa Code § 553.12(3). | 4 years – Iowa Code § 553.16(2) |

| JURISDICTION | MONOPOLIZATION STATUTE | HARMONIZATION WITH FEDERAL LAW | OTHER SUBSTANTIVE ISSUES | STATUE OF LIMITATIONS |
|---|---|---|---|---|
| | | "When interpreting Iowa antitrust statutes, Iowa courts are required by section 553.2 to give considerable weight to federal cases construing similar sections of the Sherman Act. [citations omitted]. Section 553.5's prohibition against attempts to monopolize and monopolization closely resemble the Sherman Act, Section 2's, prohibition against attempts to monopolize and monopolization." *Davies v. Genesis Medical Center Anesthesia & Analgesia, P.C.,* 994 F.Supp. 1078, 1103 (S.D.Iowa 1998) | | |
| Maine | "Whoever shall monopolize or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of the trade or commerce of this State shall be guilty of a Class C crime." Me. Rev. Stat. Ann. title 10, § 1102<br><br>"Any person, including the State or any political subdivision of the State, injured directly or indirectly in its business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by section 1101, 1102 or 1102-A, may sue for the injury in a civil action.." Me. Rev. Stat. Ann. title 10, § 1104. | Yes.  "Maine antitrust law parallels the Sherman Act." *Tri-State Rubish, Inc. v. Waste Mgmnt., Inc.,* 875 F. Supp. 8 (D. Me. 1994). | None | 6 years – Me. Rev. Stat. Ann. title 14, § 752 |
| Michigan | "The establishment, maintenance, or use of a monopoly, or any attempt to establish a monopoly, of trade or commerce in a relevant market by any person, for the purpose of excluding or limiting competition or controlling, fixing, or maintaining prices, is unlawful." Mich. Comp. Laws Ann. § 445.773. | Yes. "The Michigan antitrust laws were patterned after the Sherman Anti-Trust Act, 15 U.S.C. § 1 et seq." *ETT Ambulance Service Corp. v. Rockford Ambulance, Inc.,* 516 N.W.2d 498, 500 (Mich.. App. 1994) | Treble Damages:<br><br>"If the trier of fact finds that the violation is flagrant, it may increase recovery to an amount not in excess of 3 times the actual damages sustained by reason of a violation of this act." Mich. Comp. Laws Ann. . § 445.778(2).<br><br>"Although flagrant conduct always is willful, shocking, or outrageous, there are degrees of flagrancy. *Western Waste Service Systems, Inc. v. Superior Court,* 120 Ariz. 90, 584 P.2d 554 (1978) (In Bank). The | 4 years – Mich. Comp. Laws Ann. § 445.781(2) |

| JURISDICTION | MONOPOLIZATION STATUTE | HARMONIZATION WITH FEDERAL LAW | OTHER SUBSTANTIVE ISSUES | STATUE OF LIMITATIONS |
|---|---|---|---|---|
| | | | intent is to allow the trier of fact to provide a punishment commensurate with the degree of guilt rather than a bludgeon which strikes with equally devastating force in both clear and doubtful cases." Uniform State Antitrust Act Comment, 2002 Main Volume. | |
| Minnesota | "The establishment, maintenance, or use of, or any attempt to establish, maintain, or use monopoly power over any part of trade or commerce by any person or persons for the purpose of affecting competition or controlling, fixing, or maintaining prices is unlawful." Minn. Stat. § 325D.52 | Yes. "Minnesota's antitrust laws are generally interpreted consistently with federal courts' construction of federal antitrust laws." *Minnesota Twins P'ship v. State*, 592 N.W.3d 847, 851 (Minn. 1999) | None. | 4 years – Minn. Stat. § 325D.64 |
| Mississippi | Unlawful to "monopolize or attempt to monopolize the production, control or sale of any commodity, or the prosecution, management or control of any kind, class or description of business . . ." Miss. Code § 75-21-3(b). | Yes. Mississippi antitrust statute patterned after Sherman Act and Mississippi Supreme Court has "been influenced by the decisions of [the United States Supreme] in interpreting and applying [the Sherman Act]." *National Ass'n for Advancement of Colored People v. Claiborne Hardware Co.*, 393 So.2d 1290, 1301 (Miss. 1980) (subsequent procedural history omitted). | "Any person, natural or artificial, injured or damaged by a trust and combine as herein defined, or by its effects direct or indirect, may recover all damages of every kind sustained by him or it and in addition a penalty of five hundred dollars ($500.00), by suit in any court of competent jurisdiction. Said suit may be brought against one or more of the parties to the trust or combine and one or more of the officers and representatives of any corporation a party to the same, or one or more of either. Such penalty may be recovered in each instance of injury. All recoveries herein provided for may be sued for in one suit." Miss. Code. § 75-21-9. | 3 years. Mississippi does not have a specific antitrust limitations period. As a result, Miss. Code Ann. § 15-1-49 governs. |
| Nebraska | "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce, within this state, shall be deemed guilty of a Class IV felony." Neb. Rev. Stat. § 59-802.<br><br>"Any person who is injured in his or her business or property by any other person or persons by a violation of sections 59-801 to 59-831, whether such injured person dealt directly with or indirectly with the defendant, may bring a civil action in the district | "When any provision of sections 59-801 to 59-831 and sections 84-211 to 84-214 or any provision of Chapter 59 is the same as or similar to the language of a federal antitrust law, the courts of this state in construing such sections or chapter shall follow the construction given to the federal law by the federal courts." Neb. Rev. Stat. § 59-829/ | Only single damages available. *See* Neb. Rev. Stat. § 59-821. | 4 years – Neb. Rev. Stat. § 59-1612. |

| JURISDICTION | MONOPOLIZATION STATUTE | HARMONIZATION WITH FEDERAL LAW | OTHER SUBSTANTIVE ISSUES | STATUE OF LIMITATIONS |
|---|---|---|---|---|
| | court in the county in which the defendant or defendants reside or are found . . ." Neb. Rev. Stat. § 59-821. | | | |
| Nevada | "Unlawful to conduct any part of [the following] activity in this state: . . . (3) Monopolization of trade or commerce in this state, including, without limitation, attempting to monopolize or otherwise combining or conspiring to monopolize trade or commerce in this state." Nev. Rev. Stat. § 598A.060. | Yes. "The provisions of this chapter shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes." Nev. Rev. Stat. § 598A.050. | None. | 4 years – Nev. Rev. Stat. § 598A.220(2). |
| New Mexico | "It is hereby declared to be unlawful for any person to monopolize or attempt to monopolize, or combine or conspire with any other person or persons to monopolize, trade or commerce, any part of which trade or commerce is within this state." N.M. Stat. Ann. § 57-1-2. | Yes. "Unless otherwise provided in the Antitrust Act, the Antitrust Act shall be construed in harmony with judicial interpretations of the federal antitrust laws. This construction shall be made to achieve uniform application of the state and federal laws prohibiting restraints of trade and monopolistic practices." N.M. Stat. Ann. § 57-1-15. | Treble Damages: Injured parties "may bring an action for appropriate injunctive relief, up to threefold the damages sustained and costs and reasonable attorneys' fees. If the trier of fact finds that the facts so justify, damages may be awarded in an amount less than that requested, but not less than the damages actually sustained." N.M. Stat. Ann. . § 57-1-3. "Although no reported decisions address Section 57-1-3(A), which permits less than treble damages, it contemplates that a jury, as factfinder, would be informed of the treble-damage provision." ABA Section of Antitrust Law, State Antitrust Practice and Statutes (3d ed. 2004). | 4 years – N.M. Stat. Ann. § 57-1-12. |
| North Carolina | "It is unlawful for any person to monopolize, or attempt to monopolize, or combine or conspire with any other person or persons to monopolize, any part of trade or commerce in the State of North Carolina." N.C. Gen. Stat. § 75.2.1. | Yes. North Carolina courts look to federal law to interpret state antitrust law provisions that are analogous to Sherman Act provisions. *See Rose v. Vulcan Materials Co.*, 194 S.E. 2d 521, 530 (N.C. 1973). | None | 4 years – N.C. Gen. Stat. § 75-16.2 |
| North Dakota | "The establishment, maintenance, or use of a monopoly, or an attempt to establish a monopoly, of trade or commerce in a relevant market by any person, for the purpose of excluding competition or controlling, fixing, or maintaining prices, is unlawful." N.D. Cent. | Yes. North Dakota has limited case law interpreting its antitrust statutes. The North Dakota Attorney General has issued an opinion relying on federal caselaw interpreting the Sherman Act in the absence of case law | Treble Damages: "If the trier of fact finds that the violation is flagrant, it may increase recovery to an amount not in excess of three times the damages sustained." N.D. Cent. Code § 51-08.1-08(2). | 4 years – N.D. Cent. Code § 51.08.1-10(2). |

| JURISDICTION | MONOPOLIZATION STATUTE | HARMONIZATION WITH FEDERAL LAW | OTHER SUBSTANTIVE ISSUES | STATUE OF LIMITATIONS |
|---|---|---|---|---|
| | Code § 51-08.1-03 | under the North Dakota statutory scheme. *See* 35 Op. N.D. Att'y Gen. 76,108 (D.N.D. 1981) | | |
| **South Dakota** | "The monopolization by any person, or an attempt to monopolize, or combine, or conspire with any other person or persons, to monopolize any of the trade or commerce within this state shall be unlawful." S.D. Codified Laws § 37-1-3.2 | Yes. "It is the intent of the Legislature that in construing this chapter, the courts may use as a guide interpretations given by the federal or state courts to comparable antitrust statutes." S.D. Codified Laws § 37-1-22. | None | 4 years – S.D. Codified Laws § 37-1-14.4 |
| **West Virgina** | "The establishment, maintenance or use of a monopoly or an attempt to establish a monopoly of trade or commerce, any part of which is within this State, by any persons for the purpose of excluding competition or controlling, fixing or maintaining prices is unlawful." W. Va. Code § 47-18-4. | Yes. "This article shall be construed liberally and in harmony with ruling judicial interpretations of comparable federal antitrust statutes." W. Va. Code § 47-18-16. | None. | 4 years – W. Va. Code § 47-18-11. |
| **Wisconsin** | "Every person who monopolizes, or attempts to monopolize, or combines or conspires with any other person or persons to monopolize any part of trade or commerce is guilty of a Class H felony . . ." Wis. Stat. Ann. § 133.03 | Yes. Section 133.03 (formerly Section 133.01) was intended to parallel the first two sections of the Sherman Act. *See Grams v. Boss*, 294 N.W. 2d 473, 480 (Wisc. 1980). | None. | 6 years -- Wis. Stat. Ann. § 133.18(2) |

## B.     Unreasonable Restraint of Trade States

| JURISDICTION | ANTITRUST STATUTE | HARMONIZATION WITH FEDERAL LAW | OTHER SUBSTANTIVE ISSUES | STATUE OF LIMITATIONS |
|---|---|---|---|---|
| **California** | California's antitrust statutes do not specifically prohibit monopolization, and require concerted actions by two or more persons. *See* Cal. Bus. & Prof. Code § 16720 ("A trust is a combination of capital, skill or acts by two or more persons for any of the following purposes . . ."). "The Cartwright Act bans combinations but does not have any parallel to Sherman Act section 2's anti-monopoly | Yes. "Though not always directly probative of the Cartwright Act drafters' intent, judicial interpretations of the Sherman Act are, nevertheless, often helpful because of the similarity in language and purpose between the federal and state statutes." *Morrison v. Viacom, Inc.*, 66 Cal.App.4th 534, 541 (Cal. App. 1998) | None | 4 years – Cal. Bus. & Prof. Code § 16750.1 |

5

| JURISDICTION | ANTITRUST STATUTE | HARMONIZATION WITH FEDERAL LAW | OTHER SUBSTANTIVE ISSUES | STATUE OF LIMITATIONS |
|---|---|---|---|---|
| | provisions." *See Freeman v. San Diego Ass'n of Realtors*, 77 Cal.App.4th 171, 200-01 (1999).<br><br>"Combinations to monopolize would appear to fall within the general prohibitions of the Cartwright Act, Cal. Bus. & Prof. Code § 16720." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986)<br><br>Proof will conform to the following statutory language: "A trust is a combination of capital, skill or acts by two or more persons for any of the following purposes:<br><br>(a) To create or carry out restrictions in trade or commerce.<br><br>(b) To limit or reduce the production, or increase the price of merchandise or of any commodity.<br><br>(c) To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity . . . ." Cal. Cal. Bus. & Prof. Code § 16720 | | | |
| Kansas | Kansas' antitrust statutes do not specifically prohibit unilateral monopolization, and require concerted action. *See* Kan. Stat. Ann. § 50-132 ("No person, servant, agent or employee of any person doing business within the state of Kansas shall conspire or combine with any other persons, within or without the state for the purpose of monopolizing any line of business . . .")<br><br>The other following statutory provisions are relevant:<br><br>"A trust is a combination of capital, skill, or acts, by two or more persons, for either, any or all of the | Yes. Federal Sherman Act cases "may be persuasive authority for any state court interpreting its antitrust laws, [but] such authority is not binding upon any court in Kansas interpreting Kansas antitrust laws." *Bergstrom v. Noah*, 974 P.2d 520, 530-31 (Kan. 1999) | **Full Consideration Damages:**<br><br>"[A]ny person injured or damaged by any such arrangement, contract, agreement, trust or combination, described in K.S.A. 50-112 and 50-113, and amendments thereto, may sue for and recover in any court of competent jurisdiction in this state, of any person, the full consideration or sum paid by such person for any goods, wares, merchandise and articles included in or advanced or controlled in price by such combination . . ." Kan. Stat. Ann. § 50-115. | 3 years. The Kansas antitrust laws do not contain a statute of limitations. Kan. Stat. Ann. § 60-512 provides a 3 year limitations period for "an action upon a liability created by a statute other than a penalty or forfeiture." In *Four B Corp. v. Daicel Chem. Indus.*, 253 F. Supp. 2d 1147, 1154-56 (D. Kan. 2003), the court held that § 60-512 was applicable to antitrust claims. |

| JURISDICTION | ANTITRUST STATUTE | HARMONIZATION WITH FEDERAL LAW | OTHER SUBSTANTIVE ISSUES | STATUE OF LIMITATIONS |
|---|---|---|---|---|
| | following purposes:<br><br>First. To create or carry out restrictions in trade or commerce, or aids to commerce, or to carry out restrictions in the full and free pursuit of any business authorized or permitted by the laws of this state.<br><br>Second. To increase or reduce the price of merchandise, produce or commodities, or to control the cost or rates of insurance.<br><br>Third. To prevent competition in the manufacture, making, transportation, sale or purchase of merchandise, produce or commodities, or to prevent competition in aids to commerce.<br><br>Fourth. To fix any standard or figure, whereby such person's price to the public shall be, in any manner, controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, use or consumption in this state.<br><br>. . ." Kan. Stat. Ann. § 50-101.<br><br>"All arrangements, contracts, agreements, trusts, or combinations between persons made with a view or which tend to prevent full and free competition in the importation, transportation or sale of articles imported into this state, or in the product, manufacture or sale of articles of domestic growth . . . and all arrangements, contracts, agreements, trusts or combinations between persons, designed or which tend to advance, reduce or control the price or the cost to the producer or to the consumer of any such products or articles . | | | |

| JURISDICTION | ANTITRUST STATUTE | HARMONIZATION WITH FEDERAL LAW | OTHER SUBSTANTIVE ISSUES | STATUE OF LIMITATIONS |
|---|---|---|---|---|
| | . . are hereby declared to be against public policy, unlawful and void." Kan. Stat. Ann. § 50-112.<br><br>*In Bellinder v. Microsoft Corp.*, No. 00-C-0855, 2001 WL 1397995, at *1 (Kan. Dist. Ct. Sept. 7, 2001), Plaintiffs alleged violations of, among other things, K.S.A. 50-101, 50-112, 50-132 , treble damages under K.S.A. 50-801, *et seq.* and "filed a petition alleging that Microsoft abused its monopoly power and contracted, combined or conspired to fix the price of the Windows Operating System ("WINDOWS") in Kansas above competitive levels . . ." The court certified a class of indirect purchasers of the Windows Operating System. | | | |
| Tennessee | No express statutory provision against monopolization. Conspiracies to monopolize fall within scope of the following statute:<br><br>"All arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this state, or in the manufacture or sale of articles of domestic growth or of domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article, are declared to be against public policy, unlawful, and void." Tenn. Code Ann. § 47-25-101 | Yes. "The State antitrust statute . . . is quite similar to the Sherman Antitrust Act" and the "[a]uthorities which define the character of private damage suits under the federal antitrust statutes, particularly the Sherman Act, are [therefore] most persuasive." *Tennessee ex rel. Leech v. Levi Strauss & Co.*, 1980-2 Trade Cas. (CCH) ¶ 63,558 (Tenn. Ch. Ct. 1980). | Full Consideration Damages:<br><br>"Any person who may be injured or damaged by any such arrangement, contract, agreement, trust, or combination described in this part may sue for and recover, in any court of competent jurisdiction, from any person operating such trust or combination, the full consideration or sum paid by the person for any goods, wares, merchandise, or articles, the sale of which is controlled by such combination or trust." Tenn. Code Ann. § 47-25-106. | 3 years.  Tennessee's antitrust laws do not contain a limitations period.  In *State ex rel. Leech v. Levi Strauss & Co.*, 1980 WL 4696, (Tenn. Ch. Sept. 25, 1980), the court held that the 3 year tort statute of limitations applied. |

| JURISDICTION | ANTITRUST STATUTE | HARMONIZATION WITH FEDERAL LAW | OTHER SUBSTANTIVE ISSUES | STATUE OF LIMITATIONS |
|---|---|---|---|---|
| | *See State ex rel. Cates v. Standard Oil Co. of Kentucky,* 110 S.W. 565 (Tenn. 1907), *aff'd* 217 US 413 (1910) (holding supplier's agreement to give 300 gallon of fuel oil to certain customers in return for revocation of order from rival supplier violated predecessor statute of Section 47-25-101 because arrangement had purpose and effect of lessening competition) | | | |

# ANNEX C

# ANNEX C:  Part 1

## Types Of Conduct Prohibited By The Consumer Protection Laws At Issue On Class Certification

|  | Deceptive Conduct | Unconscionable Conduct | Unfair Methods Of Competition/Violations of Federal Law (including violations of FTC Act's prohibition of anticompetitive conduct) | Unfair Conduct |
|---|---|---|---|---|
| Arkansas | AR ST §4-88-107(a); 4-88-108 | AR ST §4-88-107(a)(10) | | |
| California | Cal. Bus. & Prof. Code §17200 | | Cal. Bus. & Prof. Code §17200 | Cal. Bus. & Prof. Code §17200 |
| District of Columbia | D.C. Code §28-3904(e)(f) | | | |
| Florida | FL ST §501.204(1) | FL ST §501.204(1) | FL ST §501.204(1); FL ST §501.203(3) | FL ST § 501.204(1) |
| Idaho | Id. Code §48-603(17) | Id. Code §§48-603(18); §48-603C(2)(d) | Id. Code §§48-604(1); §48-618 | |
| Kansas | KS ST §§50-626(a); 50-626(b)(3) | KS ST §50-627(a) | | |
| Maine | 5 ME ST §207 | | 5 ME ST §207 | 5 ME ST §207 |
| Massachusetts | Mass. Gen. Laws ch. 93A §2(a) | | Mass. Gen. Laws ch. 93A §2(a) | Mass. Gen. Laws ch. 93A §2(a) |
| Nebraska | NE ST §59-1602. | | NE ST §59-1602. | NE ST §59-1602 |
| Nevada | NV ST §§598.0915(5) 598.0915(7) 598.0915(15); 598.0923(2) | | NV ST §598.0923(3) | |
| New Hampshire | N.H. ST §§358-A:2 | | N.H. ST §§358-A:2(XIV); 358-A:13 | N.H. ST §358:A-2 |
| New Mexico | N.M. Stat. §§57-12-3; 57-12-2(D); N.M. ST §57-12-2(D)(14) | N.M. Stat. §§57-12-3; 57-12-2(E) | N.M. Stat. §57-12-4 | |
| New York | N.Y. GBL § 349(a) | | | |
| North Carolina | N.C. Gen. Stat. §75-1.1(a). | | N.C. Gen. Stat. §75-1.1(a). | N.C. ST §75-1.1(a) |
| Rhode Island | R.I. ST §§6-13.1-1(6)(viii); 6-13.1-1(6)(xiv) | | R.I. ST §§6-13.1-1; 6-13.1-3 | R.I. ST §6-13.1-1(6)(xiii) |
| Vermont | 9 VT ST § 2453(a) | | 9 VT ST §§2453(a); 2453(a) | 9 VT ST § 2453(a) |
| West Virginia | W.V. Code §§46A-6-104; 46A-6-102(7)(L) | | W.V. Code §§46A-6-104; 46A-6-101(1) | W.V. Code §§46A-6-104; 46A-6-102(7) |
| Wisconsin | | | WI ST §100.20(1) | WI ST §100.20(1) |

**ANNEX C: Part 2**

**Summary Of Relevant Consumer Protection Statutes In The Subclass States**

| JURISDICTION AND ELEMENTS OF CONSUMER PROTECTION CLAIM | HARMONIZATION WITH FEDERAL LAW | RIGHT OF SUIT AND DAMAGES | STATUTE OF LIMITATIONS |
|---|---|---|---|
| **Arkansas**<br><br>AR ST §§4-88-101 et seq.<br><br>(a) Deceptive and unconscionable trade practices made unlawful and prohibited by this chapter include, but are not limited to, the following:<br><br>(1) Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model;<br><br>(2) Disparaging the goods, services, or business of another by false or misleading representation of fact;<br><br>***<br><br>(10) Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade.<br><br>AR ST §4-88-107 | | Any person who suffers actual damage or injury as a result of an offense or violation as defined in this chapter has a cause of action to recover actual damages, if appropriate, and reasonable attorney's fees.<br><br>AR ST §4-88-113(f).<br><br>See also AR ST § 4-88-102 (5) ("Person" means an individual, organization, group, association, partnership, corporation, or any combination of them.) | Any civil action brought to enforce the provisions of this chapter may be brought in any court of competent jurisdiction in this state during period of five (5) years commencing on the date of the occurrence of the violation or the date upon which the cause of action arises<br><br>AR ST §4-88-115 |
| **California**<br><br>Cal. Bus. & Prof. Code §§17200 et seq.<br><br>As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.<br><br>Cal. Bus. & Prof. Code §17200. | No. However, California's Unfair Business Practices Act serves as the functional equivalent to the FTC Act since any violation of the FTC Act is a violation of the Unfair Business Practices Act.<br><br>An "unlawful act," for purpose of California's unfair competition statute, is one forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.<br><br>In re Pomona Valley Medical Group, Inc., 476 F.3d 665, 674 (9th Cir. 2007). | Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state.<br><br>Cal. Bus. & Prof. Code §17203.<br><br>§17204 grants standing to "any person who has suffered | Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this section shall be revived by its enactment.<br><br>Cal. Bus. & Prof. Code §17208. |

| JURISDICTION AND ELEMENTS OF CONSUMER PROTECTION CLAIM | HARMONIZATION WITH FEDERAL LAW | RIGHT OF SUIT AND DAMAGES | STATUTE OF LIMITATIONS |
|---|---|---|---|
| **District of Columbia**<br><br>D.C. Code §§28-3901 *et seq.*<br><br>It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:<br><br>\*\*\*<br><br>(e) misrepresent as to a material fact which has a tendency to mislead;<br>(f) fail to state a material fact if such failure tends to mislead;<br>(g) disparage the goods, services, or business of another by false or misleading representations of material facts. | | injury in fact and has lost money or property as a result of the unfair competition."<br><br>§17201 defines person to "mean and include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons."<br><br>A person, whether acting for the interests of itself, its members, or the general public, may bring an action under this chapter in the Superior Court of the District of Columbia seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia and may recover or obtain the following remedies:<br><br>(A) treble damages, or \$1,500 per violation, whichever is greater, payable to the consumer;<br>(B) reasonable attorney's fees;<br>(C) punitive damages;<br>(D) an injunction against the use of the unlawful trade practice;<br>(E) in representative actions, additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice; or<br>(F) any other relief which the court deems proper.<br><br>D.C. Code §28-3905(k)(1).<br><br>"[P]erson" means an individual, firm, corporation, partnership, cooperative, association, or any other organization, legal entity, or group of individuals however organized. Consumer defined to include persons. D.C. Code §28-3901(a)(1) & (2).<br><br>Punitive damages may be awarded where there is clear and convincing evidence that the defendant's conduct was outrageous and evinced a willful disregard for the plaintiff's legal rights. *See Jackson v. Byrd* 2004 WL 3249693, \*2 (D.C.Super. June 30, 2004). | 3 year statute of limitation<br><br>D.C. Code §28-3905(a); D.C. Code §12-301(8) |
| **Florida** | Yes. | (1) Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of | No action may be brought by the |

| JURISDICTION AND ELEMENTS OF CONSUMER PROTECTION CLAIM | HARMONIZATION WITH FEDERAL LAW | RIGHT OF SUIT AND DAMAGES | STATUTE OF LIMITATIONS |
|---|---|---|---|
| FL ST §§501.201 et seq.<br><br>Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.<br><br>FL ST §501.204(1).<br><br>A violation of DUTPA may be based on any of the following:<br><br>(a) Any rules promulgated pursuant to the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 41 et seq.; (b) The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts; (c) Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive or unconscionable acts or practices.<br><br>FL ST §501.203(3). | FL ST §§501.202(3); 501.203(3)(a), (b); 501.204(2). | this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.<br><br>(2) In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105.<br><br>FL ST §501.211(1) and (2).<br><br>Business entities have standing. *Pepsico, Inc. v. Distribuidora La Managalpa, Inc.*, 510 F.Supp.2d 1110 (S.D. Fla. 2007). | enforcing authority under this section more than 4 years after the occurrence of a violation of this part or more than 2 years after the last payment in a transaction involved in a violation of this part, whichever is later.<br><br>FL ST §501.207(5) |
| **Idaho**<br><br>Id. Code §48-601 et seq.<br><br>The following unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful, where a person knows, or in the exercise of due care should know, that he has in the past, or is:<br><br>***<br><br>(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, connection, qualifications or license that he does not have;<br><br>***<br><br>(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;<br><br>(8) Disparaging the goods, services, or business of another by false or | Yes. See §§48-604(1) ("It is the intent of the legislature that in construing this act due consideration and great weight shall be given to the interpretation of the federal trade commission and the federal courts relating to section 5(a)(1) of the federal trade commission act (15 U.S.C. 45(a)(1)), as from time to time amended"); 48-618 ("This act is to be construed uniformly with federal law and regulations.") | Any person who purchases or leases goods or services and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by this act, may treat any agreement incident thereto as voidable or, in the alternative, may bring an action to recover actual damages or one thousand dollars ($1,000), whichever is the greater; provided, however, that in the case of a class action, the class may bring an action for actual damages or a total for the class that may not exceed one thousand dollars ($1,000), whichever is the greater. Any such person or class may also seek restitution, an order enjoining the use or employment of methods, acts or practices declared unlawful under this chapter and any other appropriate relief which the court in its discretion may deem just and necessary. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper in cases of repeated or flagrant violations.<br><br>Id. Code §48-608(1).<br><br>Id. Code §48-602(1) (definition of a person includes business entities). | No private action may be brought under this act more than two (2) years after the cause of action accrues.<br><br>Id. Code §48-619. |

| JURISDICTION AND ELEMENTS OF CONSUMER PROTECTION CLAIM | HARMONIZATION WITH FEDERAL LAW | RIGHT OF SUIT AND DAMAGES | STATUTE OF LIMITATIONS |
|---|---|---|---|
| misleading representation of fact;<br><br>(17) Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer;<br><br>***<br><br>(18) Engaging in any unconscionable method, act or practice in the conduct of trade or commerce, as provided in section 48-603C, Idaho Code<br><br>.....<br><br>Id. Code § 48-603.<br><br>See also Id. Code §48-603C.<br><br>(1) Any unconscionable method, act or practice in the conduct of any trade or commerce violates the provisions of this chapter whether it occurs before, during, or after the conduct of the trade or commerce.<br><br>(2) In determining whether a method, act or practice is unconscionable, the following circumstances shall be taken in consideration by the court:<br><br>(a) Whether the alleged violator knowingly or with reason to know, took advantage of a consumer reasonably unable to protect his interest because of physical infirmity, ignorance, illiteracy, inability to understand the language of the agreement or similar factor;<br><br>(b) Whether, at the time the consumer transaction was entered into, the alleged violator knew or had reason to know that the price grossly exceeded the price at which similar goods or services were readily available in similar transactions by similar persons, although price alone is insufficient to prove an unconscionable method, act or practice;<br><br>(c) Whether the alleged violator knowingly or with reason to know, induced the consumer to enter into a transaction that was excessively one-sided in favor of the alleged violator;<br><br>(d) Whether the sales conduct or pattern of sales conduct would outrage or offend the public conscience, as determined by the court.<br><br>**Kansas**<br><br>KS ST §§50-623 et seq.<br><br>(a) No supplier shall engage in any deceptive act or practice in connection with a consumer transaction.<br><br>(b) Deceptive acts and practices include, but are not limited to, the |  | (c) Whether a consumer seeks or is entitled to recover damages or has an adequate remedy at law, a consumer may bring a class action for declaratory judgment, an injunction and appropriate ancillary relief, except damages, against an act or practice that violates this act.<br><br>(d) A consumer who suffers loss as a result of a violation of this act may bring a class action for the damages caused | Under Kansas Consumer Protection Act, three-year statute of limitations, rather than fraud statute of limitations, applied to claim for actual damages....and one |

| JURISDICTION AND ELEMENTS OF CONSUMER PROTECTION CLAIM | HARMONIZATION WITH FEDERAL LAW | RIGHT OF SUIT AND DAMAGES | STATUTE OF LIMITATIONS |
|---|---|---|---|
| following, each of which is hereby declared to be a violation of this act, whether or not any consumer has in fact been misled:<br><br>(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact;<br><br>* * *<br><br>(4) disparaging the property, services or business of another by making, knowingly or with reason to know, false or misleading representations of material facts.<br><br>KS ST § 50-626.<br><br>(a) No supplier shall engage in any unconscionable act or practice in connection with a consumer transaction. An unconscionable act or practice violates this act whether it occurs before, during or after the transaction.<br><br>(b) The unconscionability of an act or practice is a question for the court. In determining whether an act or practice is unconscionable, the court shall consider circumstances of which the supplier knew or had reason to know, such as, but not limited to the following that:<br><br>(1) The supplier took advantage of the inability of the consumer reasonably to protect the consumer's interest because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor.<br><br>KS ST §50-627.<br><br>**Maine**<br><br>5 ME ST §205-A et seq.<br><br>Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful.<br><br>5 ME ST §207.<br><br>"To justify a finding of unfairness, the act or practice: (1) must cause, or be likely to cause, substantial injury to consumers; (2) that is not reasonably avoidable by consumers; and (3) that is not outweighed by any countervailing benefits to consumers or competition."<br><br>*State v. Weinschenk*, 868 A.2d 200, 206 (Me. 2005). | by an act or practice:<br><br>(1) Violating any of the acts or practices proscribed in K.S.A. 50-626, 50-627 and 50-640, and amendments thereto, or<br><br>* * *<br><br>KS ST § 50-626.<br><br>Yes.<br><br>5 ME ST § 207(1).<br><br>"In enacting the Unfair Trade Practices Act in 1969, the Maine Legislature sought to bring into Maine law the federal interpretations for 'unfair methods of competition and unfair or deceptive acts or practices' and envisioned the Maine Attorney General as being in position comparable to that of Federal Trade Commission with respect to | (e) Except for services performed by the office of the attorney general or the office of a county or district attorney, the court may award to the prevailing party reasonable attorney fees, including those on appeal, limited to the work reasonably performed if:<br><br>* * *<br><br>(1) The consumer complaining of the act or practice that violates this act has brought or maintained an action that is groundless and the consumer knew or should have known to be groundless; or a supplier has committed an act or practice that violates this act and the prevailing party is the consumer.<br><br>KS ST § 50-634.<br><br>"Consumer" is defined as "an individual or sole proprietor who seeks or acquires property or services for personal, family, household, business or agricultural purposes."<br><br>KS ST §50-624(b).<br><br>Any person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 207 or by any rule or regulation issued under section 207, subsection 2 may bring an action either in the Superior Court or District Court for actual damages, restitution and for such other equitable relief, including an injunction, as the court determines to be necessary and proper. There is a right to trial by jury in any action brought in Superior Court under this section.<br><br>5 ME ST §213(1). | year statute of limitations applied to claim for civil penalties, thus barring all claims when filed more than three years following commencement of the lease.<br><br>*Agristor Leasing v. Meuli*, 634 F.Supp. 1208, 1218 (D.Kan. 1986); see also KS ST §§60-512(2), 60-514(3).<br><br>Claims under Maine's Unfair Trade Practices Act are subject to Maine's general six-year statute of limitations period for civil actions.<br><br>*Campbell v. Machias Sav. Bank*, 865 F.Supp. 26, 34 (D.Me.1994), 14 ME ST §752. |

| JURISDICTION AND ELEMENTS OF CONSUMER PROTECTION CLAIM | HARMONIZATION WITH FEDERAL LAW | RIGHT OF SUIT AND DAMAGES | STATUTE OF LIMITATIONS |
|---|---|---|---|
| **Massachusetts**<br><br>Mass. Gen. Laws ch. 93A §§1 *et seq.*<br><br>Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.<br><br>Mass. Gen. Laws ch. 93A §2(a).<br><br>*Bartner v. Carter*, 405 A.2d 194, 199-200 (Me. 1979). | Yes.<br><br>Mass. Gen. Laws ch. 93A §2(b).<br><br>It is the intent of the legislature that in construing paragraph (a) of this section in actions brought under sections four, nine and eleven, the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended. | Massachusetts' consumer protection law provides a different damages scheme depending on whether the violation affected consumers or businesses:<br><br>Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two . . . may, as hereinafter provided, bring an action in the superior court . . . for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper.<br><br>***<br><br>If the court finds for the petitioner, recovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation of said section two. For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence regardless of the existence or nonexistence of insurance coverage available in payment of the claim. In addition, the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper.<br><br>Mass. Gen. Laws ch. 93A § 11.<br><br>Any person, other than a person entitled to bring action under section eleven of this chapter, who has been injured by another person's use or employment of any method, act | Actions arising on account of violations of any law intended for the protection of consumers, including but not limited to . . . chapter 93A . . . shall be commenced only within four years next after the cause of action accrues.<br><br>Mass. Gen. Laws ch. 260 §5A. |

| JURISDICTION AND ELEMENTS OF CONSUMER PROTECTION CLAIM | HARMONIZATION WITH FEDERAL LAW | RIGHT OF SUIT AND DAMAGES | STATUTE OF LIMITATIONS |
|---|---|---|---|
| | | or practice declared to be unlawful by section two or any rule or regulation issued thereunder . . . may bring an action in the superior court . . . for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper.<br><br>Mass. Gen. Laws ch. §9(1). | |
| **Nebraska**<br><br>NE ST §§59-1601 *et seq.*<br><br>NE ST §59-1602.<br><br>Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful. | | [I]f the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two. For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence, regardless of the existence or nonexistence of insurance coverage available in payment of the claim. In addition, the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper.<br><br>Mass. Gen. Laws ch. 93A §9(3).<br><br>Any person who is injured in his or her business or property by a violation of sections 59-1602 to 59-1606, whether such injured person dealt directly or indirectly with the defendant, or any person so injured because he or she refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of sections 59-1603 to 59-1606, may bring a civil action in the district court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee, and the court may in its discretion, increase the award of damages to an amount which bears a reasonable relation to the actual damages which have been sustained and which damages are not susceptible of measurement by ordinary pecuniary standards; except that such increased award for violation of section 59-1602 shall not exceed one thousand dollars. | Any action to enforce a claim for damages under section 59-1609 shall be forever barred unless commenced within four years after the cause of action accrues; PROVIDED, that whenever any action is brought by the Attorney General for a violation of sections 59-1602 to 59-1606, except actions for the recovery of a civil penalty for violation of or an injunction or actions under section 59-1609. |

| JURISDICTION AND ELEMENTS OF CONSUMER PROTECTION CLAIM | HARMONIZATION WITH FEDERAL LAW | RIGHT OF SUIT AND DAMAGES | STATUTE OF LIMITATIONS |
|---|---|---|---|
| **Nevada**<br><br>NV ST §§ 598.0903 et seq.<br><br>A person engages in a "deceptive trade practice" if, in the course of his business or occupation, he:<br><br>\* \* \*<br><br>8. Disparages the goods, services or business of another person by false or misleading representation of fact.<br><br>\* \* \*<br><br>15. Knowingly makes any other false representation in a transaction.<br><br>NV ST § 598.0915.<br><br>A person engages in a "deceptive trade practice" when in the course of his business or occupation he knowingly;<br><br>2. Fails to disclose a material fact in connection with the sale or lease of goods or services.<br><br>3. Violates a state or federal statute or regulation relating to the sale or lease of goods or services.<br><br>NV ST §598.0923. | | NE ST §1.609.<br><br>Businesses have standing to assert Consumer Protection Act claim; see, e.g., *Cutz, Inc. v. 4-L Manufacturing, Inc.*, 1999 WL 1063087, *13 -15 (Neb.App. Aug. 10, 1999).<br><br>\* \* \*<br><br>1. An action may be brought by any person who is a victim of consumer fraud.<br><br>2. As used in this section, "consumer fraud" means:<br><br>\* \* \*<br><br>(e) A deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive.<br><br>3. If the claimant is the prevailing party, the court shall award him:<br><br>(a) Any damages that he has sustained; and<br>(b) His costs in the action and reasonable attorney's fees.<br><br>NV ST § 41.600. | NE ST §59-1,612.<br><br>the running of such statute of limitations, with respect to every private right of action for damages under section 59-1609 which is based in whole or part on any matter complained of in the action by the Attorney General, shall be suspended during the pendency thereof.<br><br>4 year statute of limitations for an "action against a person alleged to have committed a deceptive trade practice in violation of NRS 598.0903 to 598.0909, inclusive, but the cause of action shall be deemed to accrue when the aggrieved party discovers, or by the exercise of due diligence should have discovered, the facts constituting the deceptive trade practice."<br><br>NV ST § 11.190(2)(d) |
| **North Carolina** | Yes. | If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed | Any civil action brought under this |

| JURISDICTION AND ELEMENTS OF CONSUMER PROTECTION CLAIM | HARMONIZATION WITH FEDERAL LAW | RIGHT OF SUIT AND DAMAGES | STATUTE OF LIMITATIONS |
|---|---|---|---|
| N.C. ST §§75-1.1 et seq.<br><br>Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.<br><br>N.C. ST §75-1.1(a). | Because of the similarity in language between G.S. 75-1.1 and Section 5(a)(1) of the FTC Act, 15 U.S.C. Section 45(a)(1), our courts may look to federal court decisions which interpret the FTC Act for guidance in construing G.S. 75-1.1.<br><br>Ken-Mar Finance v. Harvey, 368 S.E.2d 646, 649 (N.C.App. 1988). | or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.<br><br>N.C. ST §75-16. | Chapter to enforce the provisions thereof shall be barred unless commenced within four years after the cause of action accrues.<br><br>N.C. ST. §75-16.2. |
| **New Hampshire**<br><br>N.H. ST §§358-A:1 et seq.<br><br>It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state. Such unfair method of competition or unfair or deceptive act or practice shall include, but is not limited to, the following:<br><br>* * *<br><br>XIV. Pricing of goods or services in a manner that tends to create or maintain a monopoly, or otherwise harm competition.<br><br>N.H. ST §358-A:2. | Yes.<br><br>N.H. ST §358:A-13. | Any person injured by another's use of any method, act or practice declared unlawful under this chapter may bring an action for damages and for such equitable relief, including an injunction, as the court deems necessary and proper. If the court finds for the plaintiff, recovery shall be in the amount of actual damages or $1,000, whichever is greater. If the court finds that the use of the method of competition or the act or practice was a willful or knowing violation of this chapter, it shall award as much as 3 times, but not less than 2 times, such amount. In addition, a prevailing plaintiff shall be awarded the costs of the suit and reasonable attorney's fees, as determined by the court.<br><br>N.H. ST §358:A-10(I).<br><br>Persons entitled to bring an action under RSA 358-A:10 may, if the unlawful act or practice has caused similar injury to numerous other persons, institute an action as representative or representatives of a class of persons who are residents of this state or whose cause of action arose within this state against one or more defendants as individuals or as representatives of a class or against one or more such defendants having a principal place of business within this state, and the petition shall allege such facts as will show that these persons or the named defendants specifically named and served with process represent the whole class, to recover actual damages as provided for in RSA 358-A:10. The court may require the plaintiff to prove such allegations, unless all of the members of the class have entered their appearance, and the court may also determine that it shall not be sufficient | Three year statute of limitations running from discovery or the point in time when plaintiff should have known.<br><br>N.H. ST §358:A-3(IV-a). |

| JURISDICTION AND ELEMENTS OF CONSUMER PROTECTION CLAIM | HARMONIZATION WITH FEDERAL LAW | RIGHT OF SUIT AND DAMAGES | STATUTE OF LIMITATIONS |
|---|---|---|---|
| **New Mexico**<br><br>N.M. ST §§57-12-1 *et seq.*<br><br>Unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful.<br><br>N.M. ST §57-12-3.<br><br>"[U]nfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person and includes:<br><br>*** <br><br>(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;<br><br>*** <br><br>(7) representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another;<br><br>(8) disparaging the goods, services or business of another by false or misleading representations;<br><br>*** | Yes.<br><br>N.M. ST § 57-12-4 (It is the intent of the legislature that in construing Section 3 of the Unfair Practices Act the courts to the extent possible will be guided by the interpretations given by the federal trade commission and the federal courts.). | Any person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater. Where the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has willfully engaged in the trade practice, the court may award up to three times actual damages or three hundred dollars ($300), whichever is greater, to the party complaining of the practice.<br><br>N.M. ST §57-12-10(B).<br><br>New Mexico law has a damages limitation for class actions:<br><br>In any class action filed under this section, the court may award damages to the named plaintiffs as provided in Subsection B of this section and may award members of the class such actual damages as were suffered by each member of the class as a result of the unlawful method, act or practice.<br><br>N.M. ST §57-12-10(E).<br><br>Corporations have standing to bring an action.<br>N.M. ST §57-12-2. | 4 year statute of limitations.<br><br>*Nance v. L.J. Dolloff Associates, Inc.*, 126 P.3d 1215 (N.M. App. 2005), N.M. Stat. § 37-1-4. |
|  |  | to prove such facts by the admissions of the defendants who have entered their appearance. In any action brought under this section, the court may order, in addition to actual damages, injunctive or other equitable relief and reasonable attorney's fees.<br><br>See N.H. ST §358:A-10-a.<br><br>Corporate entities have standing. *Transmedia Restaurant Co., Inc. v. Devereaux*, 821 A.2d 983, 987 (N.H. 2003). |  |

| JURISDICTION AND ELEMENTS OF CONSUMER PROTECTION CLAIM | HARMONIZATION WITH FEDERAL LAW | RIGHT OF SUIT AND DAMAGES | STATUTE OF LIMITATIONS |
|---|---|---|---|
| (14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive;<br><br>"[U]nconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts which to a person's detriment:<br><br>(1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or<br><br>(2) results in a gross disparity between the value received by a person and the price paid.<br><br>N.M. ST §57-12-2(D).<br><br>*See* N.M. ST §57-12-2(E). | | | |
| **New York**<br><br>N.Y. GBL §349.<br><br>Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.<br><br>N.Y. GBL § 349(a).<br><br>A cause of action under General Business Law § 349 is stated by plaintiffs' allegations that Microsoft engaged in purposeful, deceptive monopolistic business practices, including entering into secret agreements with computer manufacturers and distributors to inhibit competition and technological development, and creating an "applications barrier" in its Windows software that, unbeknownst to consumers, rejected competitors' Intel-compatible PC operating systems, and that such practices resulted in artificially inflated prices for defendant's products and denial of consumer access to competitors' innovations, services and products. *Cox v. Microsoft Corp.*, 8 A.D. 3d 39; 778 N.Y.S.2d 147 (2004). | Yes.<br><br>Interpretations of Federal Trade Commission Act are useful in determining state law claims of deceptive business practices and false advertising. *See People ex rel. Spitzer v. Applied Card Systems, Inc*, 27 A.D.3d 104 (N.Y. 2005). | In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if it finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.<br><br>N.Y. GBL §349(h).<br><br>New York statute prohibiting class actions for certain categories of litigation absent specific statutory authorization did not bar class certification of consumers' claims for deceptive acts or practices under consumer protection act, where plaintiffs agreed to waive their right to recover treble damages for willful or knowing violations. *Leider v. Ralfe*, 387 F.Supp.2d 283, 293 (S.D.N.Y. 2005). | Actions under New York consumer protection statute are subject to three-year statute of limitations which begins to run when injury occurs. *Shield of New Jersey, Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 178 F.Supp.2d 198, 271 (E.D.N.Y. 2001), *reversed on other grounds*. |
| **Rhode Island**<br><br>R.I. ST §§6-13.1-1 *et seq*.<br><br>Unfair methods of competition and unfair or deceptive acts or practices in | Yes.<br><br>It is the intent of the legislature that in construing §§ 6-13.1-1 | (a) Any person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or | The DTPA does not have its own statute of limitations. However, the Rhode Island |

| JURISDICTION AND ELEMENTS OF CONSUMER PROTECTION CLAIM | HARMONIZATION WITH FEDERAL LAW | RIGHT OF SUIT AND DAMAGES | STATUTE OF LIMITATIONS |
|---|---|---|---|
| the conduct of any trade or commerce are declared unlawful.<br><br>***<br><br>(6) "Unfair methods of competition and unfair or deceptive acts or practices" means any one or more of the following:<br><br>***<br><br>(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;<br><br>***<br><br>(vii) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;<br><br>***<br><br>(viii) Disparaging the goods, services, or business of another by false or misleading representation of fact;<br><br>***<br><br>(xi) Engaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding;<br><br>(xiii) Engaging in any act or practice that is unfair or deceptive to the consumer;<br><br>(xiv) Using any other methods, acts or practices which mislead or deceive members of the public in a material respect.<br><br>R.I. ST §6-13.1-1. | and 6-13.1-2 due consideration and great weight shall be given to the interpretations of the federal trade commission and the federal courts relating to § 5(a) of the Federal Trade Commission Act. 15 U.S.C. § 45(a)(1), as from time to time amended.<br><br>R.I. ST §6-13.1-3. | employment by another person of a method, act, or practice declared unlawful by § 6-13.1-2, may bring an action under Rules of Civil Procedure in the superior court of the county in which the seller or lessor resides, is found, has his or her principal place of business, or is doing business, or in the superior court of the county as is otherwise provided by law, to recover actual damages or two hundred dollars ($200), whichever is greater. The court may, in its discretion, award punitive damages and may provide other equitable relief that it deems necessary or proper.<br><br>(b) Persons entitled to bring an action under subsection (a) of this section may, if the unlawful method, act, or practice has caused similar injury to numerous other persons similarly situated and if they adequately represent the similarly situated persons, bring an action on behalf of themselves and other similarly injured and situated persons to recover damages as provided for in subsection (a) of this section. In any action brought under this section, the court may in its discretion order, in addition to damages, injunctive or other equitable relief.<br><br>R.I. ST §6-13.1-5.2.<br><br>§6-13.1-5.2 does not provide a private right of action for business persons or entities. *Scully Signal Co. v. Joyal*, 881 F. Supp. 727, 741 (D.R.I. 1995) | Supreme Court has held that the period of limitations for DTPA claims depends on the underlying nature of the claim itself. *See Paul v. City of Woonsocket*, 745 A.2d 169 (R.I. 2000) (holding that courts must look to the limitations period of analogous cause of action).<br><br>10 year statute of limitations for all civil actions not otherwise limited. R.I. ST §9-1-13A.<br><br>*See* R.I. ST §6-36-23 Antitrust Law violations have 4 year limitation. |
| **Vermont**<br><br>9 VT ST §§2451 *et seq.*<br><br>Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful.<br><br>9 VT ST §2453(a). | Yes.<br><br>It is the intent of the legislature that in construing subsection (a) of this section, the courts of this state will be guided by the construction of similar terms contained in Section 5(a)(1) of the Federal Trade Commission | Any person who sustains damages or injury as a result of any violation of state antitrust laws, including section 2453 of this title, may sue and recover from the violator the amount of his or her damages, or the consideration or the value of the consideration given by the aggrieved person, reasonable attorney's fees and exemplary damages, not exceeding three times the value of the consideration given or damages sustained by the aggrieved person. | The 6 year general limitation for civil actions apparently applies.<br><br>12 VT ST §511. |

| JURISDICTION AND ELEMENTS OF CONSUMER PROTECTION CLAIM | HARMONIZATION WITH FEDERAL LAW | RIGHT OF SUIT AND DAMAGES | STATUTE OF LIMITATIONS |
|---|---|---|---|
| To establish a "deceptive act or practice" under the Vermont Consumer Fraud Act, a consumer must prove three elements: (1) there must be a representation, omission, or practice likely to mislead consumers; (2) consumer must be interpreting the message reasonably under the circumstances; and (3) misleading effects must be material, that is, likely to affect the consumer's conduct or decision regarding the product.<br><br>*Carter v. Gugliuzzi*, 716 A.2d 17, 23 (Vt. 1998). | Act as from time to time amended by the Federal Trade Commission and the courts of the United States.<br><br>9 VT ST §2453(a). | 9 VT ST §2465(a).<br><br>(b) Any consumer who contracts for goods or services in reliance upon false or fraudulent representations or practices prohibited by section 2453 of this title, or who sustains damages or injury as a result of any false or fraudulent representations or practices prohibited by section 2453 of this title, or prohibited by any rule or regulation made pursuant to section 2453 of this title may sue for appropriate equitable relief and may sue and recover from the seller, solicitor or other violator the amount of his damages, or the consideration or the value of the consideration given by the consumer, reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by the consumer. Any language, written or oral, used by a seller or solicitor, which attempts to exclude or modify recovery of the penalty or reasonable attorney's fees shall be unenforceable.<br><br>(c) Any person alleged to have violated the terms of subsection (b) of this section shall be entitled to a trial by jury, unless waived according to law.<br><br>9 VT ST §2461(b), (c).<br><br>*Ascension Technology Corp. v. McDonald Investments, Inc.*, 327 F.Supp.2d 271, 276 (D.Vt. 2003) (business entities can recover). | |
| **West Virginia**<br><br>W.V. Code §§46A-6-101 *et seq.*<br><br>Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.<br><br>W.V. Code §46A-6-104.<br><br>"Unfair methods of competition and unfair or deceptive acts or practices" means and includes, but is not limited to, any one or more of the following: | Yes.<br><br>The legislature hereby declares that the purpose of this article is to complement the body of federal law governing unfair competition and unfair, deceptive and fraudulent acts or practices in order to protect the public and foster fair and honest competition. It is the intent of the legislature that, in construing this article, the | Any person who purchases or leases goods or services and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice prohibited or declared to be unlawful by the provisions of this article may bring an action in the circuit court of the county in which the seller or lessor resides or has his principal place of business or is doing business, or as provided for in sections one and two, article one, chapter fifty-six of this code, to recover actual damages or two hundred dollars, whichever is greater. The court may, in its discretion, provide such equitable relief as it deems necessary or proper. | W.V. Code §55-2-12 sets a two year limitation for personal actions not otherwise provided for. |

| JURISDICTION AND ELEMENTS OF CONSUMER PROTECTION CLAIM | HARMONIZATION WITH FEDERAL LAW | RIGHT OF SUIT AND DAMAGES | STATUTE OF LIMITATIONS |
|---|---|---|---|
| ***<br><br>(E) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;<br><br>***<br><br>(H) Disparaging the goods, services or business of another by false or misleading representation of fact;<br><br>***<br><br>(L) Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;<br><br>***<br><br>(M) The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby.<br><br>W.V. Code §46A-6-102(7). | courts be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters. To this end, this article shall be liberally construed so that its beneficial purposes may be served.<br><br>W.V. Code §46A-6-101(1). | W.V. Code §46A-6-106(a). | |
| **Wisconsin**<br><br>WI ST §100.20<br><br>Unfair methods of competition in business and unfair trade practices in business are hereby prohibited.<br><br>WI ST §100.20(1). | Yes.<br><br>See James D. Jeffries, Protection for Consumers Against Unfair and Deceptive Business, 57 Marq. L. Rev. 559, 572 (1974). | Any person suffering pecuniary loss because of a violation by any other person of any order issued under this section may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney's fee.<br><br>WI ST §100.20(5). | 6 year limitation for actions upon liability created by statute, when different limitation not proscribed.<br><br>WI ST §893.93(1)(a) |

# ANNEX D

# ANNEX D

**Sample Jury Instructions for Antitrust and Consumer Protection Claims for Purposes of Class Certification Brief**

## PHASE I:  LIABILITY, OVERCHARGES AND PASS ON

### GENERAL INSTRUCTION – INDIRECT PURCHASERS

The Plaintiffs and the class members they represent are individuals, businesses and institutions that purchased desktop and mobile personal computers containing Intel x86 microprocessors from sellers other than Intel for their own use and not for resale.  Because the class members did not buy the Intel x86 microprocessors from Intel directly, they are called "indirect purchasers."  Intel sells x86 microprocessors to computer manufacturers such as Dell, HP and Gateway, and to computer distributors such as [examples].  The computer manufacturers use the x86 microprocessors as a component of the personal computers they assemble, and the distributors sell the microprocessors primarily to other computer manufacturers for assembly into personal computers.  These personal computers containing the Intel x86 microprocessors are then sold directly or through other companies, such as Best Buy, Circuit City and other retailers, or value added resellers such as [examples], to the members of the class.

### GENERAL INSTRUCTION – PHASING OF TRIAL

The Plaintiffs contend that Intel violated the antitrust and consumer protection laws of numerous states.  If you find Intel liable for violating one or more of these antitrust and consumer protection laws in phase I of this trial, I will ask you to make a finding on a special verdict form as to whether class members sustained injury as result of Intel's alleged unlawful conduct.  If you find that the class members were injured, we will move to phase II of this trial.  If we get to phase II, you will then be presented with evidence concerning the amount of

damages sustained by the class members as a result of Intel's alleged unlawful conduct. At the end of any second phase, I will provide you with additional instructions and you will be asked to make additional findings. I will now instruct you regarding phase I of this case.

## GENERAL INSTRUCTION – ANTITRUST CLAIMS

The Plaintiffs claim that Defendant Intel violated the antitrust laws of various states by 1) monopolizing the market for x86 microprocessors, and 2) agreeing, combining, and conspiring with other companies to unreasonably restrain trade in that market. The Plaintiffs contend that Intel's actions lessened competition and thereby caused the class members to pay more for computers containing Intel's x86 microprocessors.

## GENERAL INSTRUCTION – ANTITRUST CLAIMS

The Class Plaintiffs have brought antitrust claims against Intel under the laws of 17 states and the District of Columbia. The antitrust laws of a majority of those states and the District of Columbia are modeled on their federal counterpart, the Sherman Act, and do not require the Plaintiffs to prove that Intel acted together with any other company to violate the law. In other words, Intel could have acted alone and still have violated the antitrust laws of those states. The antitrust laws of a few states require the Plaintiffs to prove that Intel acted together with at least one other company or organization. In this case, the Plaintiffs contend that Intel acted both alone, and with various computer manufacturers, to violate the antitrust laws.

With respect to 14 of the states and the District of Columbia, the Plaintiffs have brought antitrust claims for monopolization. Those states are: Arizona, Iowa, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, West Virginia, and Wisconsin. Those are the states, along with the District of Columbia, that do not require the Plaintiffs to prove that Intel acted together with any other

2

company.  With respect to the remaining 3 states, the Plaintiffs have brought antitrust claims contending that Intel combined, conspired, or agreed with one or more other companies to unlawfully restrain trade and lessen competition.  Those states are:  California, Kansas, and Tennessee.

## MONOPOLIZATION – ELEMENTS

Pursuant to the laws of the states of Arizona, Iowa, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, West Virginia, and Wisconsin, as well as the District of Columbia, the Plaintiffs allege that indirect purchasers of Intel's x86 microprocessors in those states were injured by Intel's monopolization of a relevant market.  To win on their claims of monopolization against Intel, the Plaintiffs must have proved each of the following elements by a preponderance of the evidence:

**First**, that Intel possessed monopoly power in a relevant market;

**Second**, that the Defendants willfully acquired or maintained that power through anticompetitive conduct;

**Third**, that Intel's anticompetitive conduct occurred in or affected trade or commerce in the states of Arizona, Iowa, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, West Virginia, and/or Wisconsin, and/or the District of Columbia; and

**Fourth**, that indirect purchasers of Intel's x86 microprocessors in those states and/or the District of Columbia were injured in their business or property because of Intel's anticompetitive conduct.

If you find that the evidence is insufficient to prove any one or more of these elements, then you must find against the Plaintiffs on their monopolization claims.

3

**CALIFORNIA – PROHIBITIONS (Cal. Bus. & Prof. Code § 16720 *et seq.*)**

**KANSAS – PROHIBITIONS (Kan. Stat. Ann. § 50-101 *et seq.*)**

**TENNESSEE – PROHIBITIONS (Tenn. Code Ann. § 47-25-11 *et seq.*)**

The antitrust laws of California and Kansas prohibit combinations of capital, skill or acts by two or more persons for any or all of the following purposes: 1) to create or carry out restrictions in trade or commerce; 2) to limit or reduce the production, or increase the price of merchandise or of any commodity; or 3) to prevent competition in manufacturing, making, transportation, sale or purchase of merchandise or any commodity. The antitrust laws of Tennessee prohibit all arrangements, contracts, agreements, trust, or combinations between persons or corporations 1) made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into Tennessee; or 2) designed, or which tend to advance or control the price or the cost to the producer or the consumer of any such product or article.

**UNREASONABLE RESTRAINT OF TRADE – ELEMENTS**

**CALIFORNIA, KANSAS, AND TENNESSEE**

The Plaintiffs allege, under the laws of California, Kansas, and Tennessee, that Intel entered into unlawful agreements to unreasonably restrain trade in the relevant market. To win on these claims, the Plaintiffs must prove the following elements by a preponderance of the evidence:

**First**, that Intel and other companies entered into an agreement or agreements;

**Second**, that the agreement, or agreements, unreasonably restrained trade in an appropriately defined relevant market;

4

**Third**, that the restraint of trade affected commerce in California, Kansas, and Tennessee; and

**Fourth**, that indirect purchasers of Intel's x86 microprocessors in California, Kansas, and Tennessee were injured in their business or property because of the agreement or agreements.

## CONSUMER PROTECTION CLAIMS – GENERAL

I will now instruct you regarding the class members' consumer protection claims. Plaintiffs allege that the manner in which Intel sold its x86 microprocessors violated the consumer protection laws of certain states. The consumer protection laws in these states generally prohibit deceptive, unfair, and/or unconscionable conduct made in connection with a manufacturer's efforts to sell its goods. Some of these laws also prohibit unfair methods of competition. In the jury verdict form, you will be asked to decide whether Intel's conduct was deceptive, unfair, unconscionable, and/or constituted an unfair method of competition.

## CONSUMER PROTECTION CLAIMS – DECEPTIVE CONDUCT

Deceptive conduct means the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact. A material fact is one that would be considered important by a reasonable person.

## CONSUMER PROTECTION CLAIMS – UNCONSCIONABLE CONDUCT

Unconscionable conduct means conduct that (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid.

## CONSUMER PROTECTION CLAIMS – UNFAIR COMPETITION

An unfair method of competition is one that violates the Sherman Act.

## CONSUMER PROTECTION CLAIMS – UNFAIR CONDUCT

Unfair conduct means conduct that (1) causes, or is likely to cause, substantial injury to consumers; (2) that is not reasonably avoidable by consumers; and (3) that is not outweighed by any countervailing benefits to consumers or competition.

## INJURY – GENERALLY

If you find that Intel violated one or more antitrust or state consumer protection laws, then you will need to determine whether Intel's prices for x86 microprocessors included an overcharge, and if so, whether any of the overcharge was passed on to the class members through the chain of distribution. In this case, the overcharge is the amount, if any, by which Intel prices were higher as a result of its alleged unlawful conduct. The class members in this case suffered injury only if at least some of any Intel overcharge was "passed-on" to them through the chain of distribution. To meet their burden, the Plaintiffs must establish that class members were in fact injured as a result of Intel's unlawful conduct and that Intel's illegal conduct was a material cause of the class members' injury.

## INJURY IN FACT AS DISTINCT FROM DAMAGES

Plaintiffs are required to establish that class members were actually injured by Intel's conduct. Establishing fact of injury does not require Plaintiffs to prove the dollar value of class members' injuries. It requires only that Plaintiffs prove that the class members were harmed, however little or much, by Intel's alleged unlawful conduct. If you find that Plaintiffs have established that they were in fact injured, you will then consider the amount of the class members' damages in the next phase of the trial.

## TRIAL PHASING – GENERAL

At the conclusion of your deliberations, if you find that Intel violated one or more state antitrust and/or consumer protection laws, and you find that the class members were injured by Intel's allegedly unlawful conduct, we will then continue to Phase II of this trial. In Phase II, you will be presented with evidence concerning the amount of damages, if any, sustained by the class members as a result of Intel's alleged unlawful conduct. At the end of this second phase, I will provide you with additional instructions and you will be asked to make additional findings.

## PHASE II:  DAMAGES AND APPORTIONMENT OF DAMAGES

## TRIAL PHASING – GENERAL

In the first phase of this trial you decided that Intel violated certain state antitrust and/or consumer protection laws. You also determined that the class members were injured as a result of Intel's unlawful conduct. During this second phase of the trial, you will be asked to make specific damages findings for class members residing in each of the states at issue.

## DAMAGES – CONSUMER PROTECTION LAWS

The consumer protection laws of Arkansas, California, the District of Columbia, Idaho, Florida, Nebraska, North Carolina, Nevada, New Hampshire, New York, New Mexico, Vermont, and West Virginia, allow all indirect purchasers to recover damages, if any, that they sustained as a result of a violation of these laws. The consumer protection laws of Kansas, Maine, Massachusetts, and Rhode Island limit who may seek to recover damages for violations of those laws. In this case, the limitation applies to class members who made one or more relevant purchases in Kansas, Maine, Massachusetts or Rhode Island. Those class members may seek to recover damages for their relevant purchases in those states under the consumer protection laws

of those states only if they made such purchase or purchases for personal, family, or household purposes.

## DAMAGES – ESTIMATION

The class members are entitled to an award of damages that will fairly and reasonably compensate them for their injury. You are permitted to make reasonable estimates in calculating damages. It may be difficult for you to determine the precise amount of damages suffered by the class members. If Plaintiffs establish with reasonable probability the existence of an injury caused by the Intel's unlawful conduct, you are permitted to make a just and reasonable estimate of the damages. So long as there is a reasonable basis in the evidence for a damages award, class members should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty. The amount of damages must, however, be based on reasonable, non-speculative assumptions and estimates.

## DAMAGES – NOMINAL

If you find that you are not able to calculate monetary damages without resorting to pure speculation or guesswork you may award a nominal amount, say $1.00.

## PUNITIVE DAMAGES – CONSUMER PROTECTION CLAIMS

You decided in Phase I of the trial that Intel's conduct violated the consumer protection laws of the District of Columbia, Rhode Island, and Vermont and caused injury to class members. Therefore, you must now decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the class members and to discourage similar conduct in the future.

You may award punitive damages only if Plaintiffs prove by clear and convincing evidence that Intel engaged in that conduct willfully, wantonly, or recklessly.

8

If you decide to award punitive damages, you should consider all of the following in determining the amount:

(a) How reprehensible was Intel's conduct?

(b) Is there a reasonable relationship between the amount of punitive damages and the harm sustained by class members in making their relevant purchase or purchases in the District of Columbia, Rhode Island, and Vermont?

(c) In view of Intel's financial condition, what amount is necessary to punish it and discourage future wrongful conduct?

There is no fixed standard for determining the amount of punitive damages under the laws of the District of Columbia and Rhode Island, but they must bear a reasonable relationship to the harm caused. Under Vermont law, your award may not exceed three times the value of the consideration given in this case by class members who made one or more relevant purchases in Vermont or three times the damages sustained by them.

**CONSUMER PROTECTION AND ANTITRUST – NUMBER OF VIOLATIONS**

In phase I of the trial, you decided that Intel's conduct violated the laws of the District of Columbia, Massachusetts, Mississippi, New Hampshire, New Mexico, Rhode Island, and West Virginia, and caused injury to class members. Therefore, you will now need to determine the number of times that Intel violated the laws of those states. For Massachusetts and Rhode Island, you may not consider violations that caused harm in connection with purchases for business purposes.

**ANTITRUST – FLAGRANT CONDUCT**

You must determine whether Intel's violation of the antitrust laws of Arizona, Iowa, Michigan, and North Dakota was "flagrant." "Flagrant" means conduct which is shocking,

outrageous, or outstandingly bad. If you make a determination that Intel's conduct is flagrant, you have the discretion to award up to three times the damages sustained in Arizona, Michigan, and North Dakota. With respect to Iowa, you must determine whether Intel's conduct was flagrant, but you will not be asked to award any additional damages.

## ANTITRUST – NEW MEXICO

With respect to the New Mexico antitrust claim, if you find that the facts so justify, you may award up to three times the damages sustained by class members in making relevant purchases in New Mexico. New Mexico law does not require a finding that Intel's conduct was flagrant.

## ANTITRUST – KANSAS AND TENNESSEE

With respect to class members' purchases in Kansas and Tennessee, you are to determine the full consideration or sum paid by such persons for the goods at issue that they purchased. The class members in those states are entitled to an award of that full consideration or sum.

## STATUTES OF LIMITATIONS

Each state's laws provide for a specific time period for which a plaintiff can obtain damages. For example, in several states, a plaintiff can recover damages for harm that occurs up to four years prior to the time that it started its lawsuit. In a few states, that time is only two or three years. On the special verdict form, the dates will be noted for those states whose time periods are shorter than 4 years.

# ANNEX E

# ANNEX E

## Sample Special Verdict Form for Antitrust and Consumer Protection Claims for Purposes of Class Certification Brief

**FIRST PHASE – LIABILITY**

**I.    ANTITRUST CLAIMS – LIABILITY**

(a)    Did Intel willfully acquire or maintain monopoly power in the relevant market through anticompetitive conduct?

YES _____          NO _____

(b)    Did Intel combine, conspire, or agree to unreasonably restrain trade in the x86 microprocessor market?

YES _____          NO _____

If you answered yes to either of questions I (a) or I(b), then proceed to Section II to determine whether the class members are due any damages.  If you answered no to both questions I (a) and I(b), then your verdict on the antitrust claims is for Intel and proceed to Section III regarding the consumer protection claims.

**II.    ANTITRUST CLAIMS – INJURY**

(a)    Did class members suffer an injury caused by any violation that you found for question I(a) above (monopolization)?

YES _____          NO _____

(b)    As to their purchases in California, Kansas, and Tennessee, did class members suffer an injury caused by any violation that you found for question I(b) above (unreasonable restraint of trade)?

YES _____          NO _____

If you answered no for both Questions II(a) and Questions II(b), then your verdict on the antitrust claims is for Intel, and proceed to Section III regarding the consumer protection claims. If you answered yes to one or both questions, you will answer the overcharge questions in Section V.  But first, proceed to Section III regarding the consumer protection claims.

1

### III.    CONSUMER PROTECTION CLAIMS – LIABILITY

(a)    Do you find that Intel engaged in deceptive conduct in connection with the sale of x86 microprocessors?

YES    _____        NO    _____

(b)    Do you find that Intel engaged in unconscionable conduct in connection with the sale of x86 microprocessors?

YES    _____        NO    _____

(c)    Do you find that Intel engaged in unfair methods of competition in connection with the sale of x86 microprocessors?

YES    _____        NO    _____

(e)    Do you find that Intel engaged in unfair conduct in connection with the sale of x86 microprocessors?

YES    _____        NO    _____

If you answered no for all of the questions in this section, then your verdict on the consumer protection claims is for Intel. If you answered yes for any or all of the questions in this section, then proceed to the next section, Section IV.

### IV.    CONSUMER PROTECTION CLAIMS – INJURY

(a)    Did Intel's unlawful conduct cause injury to the class members?

YES    _____        NO    _____

If you answered no, then your verdict on the consumer protection claims is for Intel.

### SECOND PHASE:  DAMAGES AND APPORTIONMENT OF DAMAGES

### I.    ANTITRUST DAMAGES

What is the amount of damages to class members caused by Intel's violation of the antitrust laws of the following states?

Arizona:            $_____

California:          $_____

District of Columbia:    $_____

Iowa:    $_____

Maine:    $_____

Michigan:    $_____

Minnesota:    $_____

Mississippi:    $_____

Nebraska:    $_____

Nevada:    $_____

New Mexico:    $_____

North Carolina:    $_____

North Dakota:    $_____

South Dakota:    $_____

West Virginia:    $_____

Wisconsin:    $_____

## II.    ANTITRUST DAMAGES – KANSAS AND TENNESSEE FULL CONSIDERATION

(a)    With respect to class members' purchases in Kansas and Tennessee, what is the full consideration or sum paid by such persons for goods that you hereby award? (Note: For Kansas and Tennessee, the damages period begins on June 28, 2002).

Kansas    $_____

Tennessee    $_____

## III.    ANTITRUST DAMAGES – FLAGRANT CONDUCT

(a)    Was Intel's violation of the antitrust laws flagrant?

YES    _____        NO    _____

3

(b)     If you answered yes, what additional amount do you award to class members with purchases in Arizona, not to exceed three times any damages that you awarded in section I in connection with such purchases?

$_____

(c)     If you answered yes, what additional amount do you award to class members with purchases in Michigan, not to exceed three times any damages that you awarded in section I awarded in connection with such purchases?

$_____

(g)     If you answered yes, what additional amount do you award to class members with purchases in North Dakota, not to exceed three times any damages that you awarded in section I in connection with such purchases?

$_____

IV.    **ANTITRUST DAMAGES – NEW MEXICO**

(a)     Do you find that the facts of this case justify an additional award to class members with purchases in New Mexico based on Intel's violation of New Mexico antitrust law?

YES _____          NO _____

(b)     If you answered yes, what additional amount do you award, not to exceed three times any damages that you awarded in section I to class members in connection with their purchases in New Mexico?

$_____

V.    **ANTITRUST INSTANCES OF INJURY IN MISSISSIPPI**

(a)     With respect to the violation of Mississippi's antitrust law, how many instances of

injury occurred? (Note that for Mississippi, the damages period begins on June 28, 2002):

_____

4

## VI.    CONSUMER PROTECTION CLAIMS – DAMAGES

What is the amount of damages to class members caused by Intel's violation of the consumer protection laws of the following states? (Note that for Kansas, New Hampshire, and New York, the damages period begins on June 28, 2002, and for Idaho, it begins on June 28, 2003).

(a)    Arkansas:            $_____

(b)    District of Columbia: $_____

(c)    Florida:             $_____

(d)    Idaho:               $_____

(e)    Kansas:              $_____

(f)    Maine:               $_____

(g)    Nebraska:            $_____

(h)    Nevada:              $_____

(i)    New Hampshire:       $_____

(j)    New Mexico:          $_____

(k)    New York:            $_____

(l)    North Carolina:      $_____

(m)    Rhode Island:        $_____

(n)    Utah:                $_____

(o)    Vermont:             $_____

(p)    West Virginia:       $_____

## VI.    CONSUMER PROTECTION CLAIMS – PUNITIVE DAMAGES

(a)    Do you find by clear and convincing evidence that Intel's unlawful conduct was willful, wanton, or reckless?

YES    _____        NO    _____

5

(b)     If you answered yes, what amount of punitive damages do you award to the class members with purchases in the following places?

    (i)     District of Columbia:          $_____

    (ii)     Vermont (you may make an award not to exceed three times actual damages sustained by class members in connection with their purchases in Vermont or the consideration paid for those purchases):

$_____

## VII.    CONSUMER PROTECTION CLAIMS – NUMBER OF VIOLATIONS

(a)     In this case, on how many occasions did Intel violate the consumer protection laws of the following states? (Note that for New Hampshire, the damages period begins on June 28, 2002).

    (i)     District of Columbia:          _____

    (ii)     Massachusetts (you may not include violations that involved the purchase of personal computers for business purposes):

_____

    (iii)     New Hampshire:          _____

    (iv)     West Virginia:          _____

6