**PRICKETT, JONES & ELLIOTT**
A PROFESSIONAL ASSOCIATION

Writer's Direct Dial:
(302)888-6509
Writer's Telecopy Number::
(302)888-6333
Writer's E-Mail Address:
JLHolzman@prickett.com

**1310 KING STREET, BOX 1328**
**WILMINGTON, DELAWARE 19899**
TEL: (302) 888-6500
FAX: (302) 658-8111
http://www.prickett.com

Dover Office:
11 NORTH STATE STREET
DOVER, DELAWARE 19901
TEL: (302) 674-3841
FAX: (302) 674-5864

June 25, 2008

*Via eFiling and Hand Delivery*

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 North Market Street
Wilmington, DE 19801

    Re:    *In re Intel Corp. Microprocessor Antitrust Litig.*, D. Del., MDL No. 05-1717-JJF;
             *Phil Paul v. Intel Corp.*, D. Del., Cons. C.A. No. 05-485-JJF

Dear Judge Poppiti:

    Class Plaintiffs respectfully request that the Court order that the disclosure of data to Intel be on terms that are fair to all parties. Importantly, the issue is not whether Intel is entitled to a copy of the data produced by Fry's or the backup data considered by Professor Leffler, as there is no dispute that Intel is so entitled. It remains to be decided, however, whether Intel should be allowed to receive the Fry's data without bearing any of the expense incurred by Class Plaintiffs in obtaining it, and whether Intel should be afforded an unfair advantage in the amount of time it has to analyze Professor Leffler's backup data to prepare for his deposition.

    1.    <u>Intel Should Bear Its Share of the Cost of Obtaining the Fry's Data</u>

    It cost Class Plaintiffs $39,618.21 in Special Master fees and costs to obtain the Fry's data, not including considerable attorney time spent negotiating with Fry's and briefing and arguing the motion to compel. Having sat by while Class Plaintiffs litigated the motion, Intel now demands that it receive a copy of the data produced by Fry's without bearing *any* part of Class Plaintiffs' out-of-pocket costs. Intel should not be permitted to free-ride in the manner it suggests.

    Again, no one disputes Intel's entitlement to a copy of Fry's data. But entitlement is beside the point. After all, Class Plaintiffs were *entitled* to production of data from Fry's in response to their subpoena, yet still were required to spend considerable sums to obtain it. *See* D.I. 680,[1] at 10 ("The Special Master further concludes that Fry's intransigence prior to the filing of the instant motion represents its vexatious efforts to avoid compliance with the subpoena resulting in the Class Plaintiffs' filing of DM 5 with the Special Master.").

---

[1] Cites to "D.I. __" are to docket items in MDL No. 05-1717-JJF.

19684.1\372742v1

The Honorable Vincent J. Poppiti
June 25, 2008
Page 2

The situation might be different if Intel had never sought data from Fry's in the first place. In fact, Intel served its own subpoena on Fry's in June 2006, *see* D.I. 172, Ex. 26, and participated in joint negotiations with Fry's prior to the filing of the motion to compel. Significantly, these negotiations included discussions about cost-sharing. *See, e.g.*, D.I. 422, Ex. 2H, at 3 (letter sent to Fry's on behalf of Class Plaintiffs, AMD, and Intel, noting that "[i]n December [2006], the parties requested an estimate of the costs that you anticipate"). Having come that far, Intel should not be able to avoid paying its fair share of what it ultimately cost to get the data.

Thus, the Court should require Intel to pay one-third of the out-of-pocket costs Class Plaintiffs incurred in obtaining the Fry's data. This would be consistent with the parties' practice of sharing such costs equally in negotiations with other third parties for their transactional data, and with the presumption that the Special Master's costs would be borne equally by the parties. *See* May 11, 2006 Order Appointing Special Master, D.I. 73, ¶ 10 ("The compensation and expenses of the Special Master shall, unless otherwise ordered by the Special Master, be shared equally by the parties."). A contrary ruling would encourage free-riding and unfairly allow Intel to enjoy the benefits of using the Fry's data without having expended anything to obtain it.

    2.    <u>Expert Backup Data Should Be Produced on an Equitable Schedule</u>

At Intel's request, Class Plaintiffs agreed to a two-month extension, until September 30, 2008, of the deadline for Intel to file its opposition to class certification. *See* D.I. 967. Now, Intel seeks to use the new schedule to gain an unfair advantage in the amount of time it has to analyze Professor Leffler's backup data to prepare for his deposition. As with the Fry's data, there is no dispute that Intel is entitled to the backup data – the issue for the Court concerns only the timing of the production of these materials.

Until last Friday, Class Plaintiffs were engaged in a dialogue with Intel about a protocol for the disclosure of materials considered by each side's class certification experts. (An agreed protocol makes sense, since by its terms Rule 26(a)(2) applies only to the disclosure of expert testimony for use at trial, not to submissions in connection with motions.) Class Plaintiffs proposed a procedure under which each side would have about the same amount of time to review backup materials before the expert's deposition. Intel rejected this proposal out of hand. *See* Ex. A.

Under the protocol proposed by Class Plaintiffs, the party proffering an expert in support of or in opposition to the motion for class certification would produce all documents and backup data used or considered by the expert in forming his or her opinions on or before the earliest date set in the parties' stipulation for the deposition of that expert. This would give Intel 73 days to review these materials and take Professor Leffler's deposition, and would give Class Plaintiffs 68 days to review materials considered by Intel's experts and take their depositions. (Intel said Friday that it may use two class certification experts. *See* June 20, 2008 Tr. at 9:18-22.) Intel, however, wants to have 96 days compared to Class Plaintiffs' 68 days, which Class Plaintiffs submit is unfair.

19684.1\372742v1

The Honorable Vincent J. Poppiti
June 25, 2008
Page 3

      Because the length of time given to each party to take expert depositions remained essentially unchanged in the new schedule, tying the disclosure of backup materials to this period would be fair to both sides. The prior schedule, to which Intel stipulated, would have given Intel 72 days after Class Plaintiffs filed their motion to review Professor Leffler's backup materials and take his deposition. If that amount of time was sufficient for Intel before, it should be sufficient now.

      There should be a level playing field when it comes to preparing for depositions of the parties' class certification experts. The only way to achieve this is to ensure that no party has significantly more time than the other to work with an opposing expert's backup data.

      For the foregoing reasons, Class Plaintiffs request that the Court order (1) that Intel pay $13,206.07, one-third of the out-of-pocket costs incurred by Class Plaintiffs in obtaining the Fry's data and (2) that Class Plaintiffs produce Professor Leffler's backup data on or before July 18, 2008, the first day of the period for taking his deposition.

Respectfully submitted,

James L. Holzman
(DE Bar #663)

JLH/sam

cc:    Clerk of the Court (*by electronic filing*)
       Richard L. Horwitz, Esq. (*by electronic filing and email*)
       Frederick L. Cottrell, III, Esq. (*by electronic filing and email*)

19684.1\372742v1