IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION | ) ) ) | MDL No. 05-1717-JJF |
| | ) | |
| ADVANCED MICRO DEVICES, INC., a Delaware corporation, and AMD INTERNATIONAL SALES & SERVICE, LTD., a Delaware corporation, | ) ) ) ) ) | Civil Action No. 05-441-JJF |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| INTEL CORPORATION, a Delaware corporation, and INTEL KABUSHIKI KAISHA, a Japanese corporation, | ) ) ) ) | |
| Defendants. | ) ) | |
| PHIL PAUL, on behalf of himself and al others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 05-485-JJF |
| v. | ) ) | |
| INTEL CORPORATION, | ) ) | CONSOLIDATED ACTION |
| Defendant. | ) | |

**DECLARATION OF MING WANG IN SUPPORT OF:**

**ACER AMERICA CORPORATION'S OPPOSITION TO (1)UNION FEDERALE DES CONSOMMATEURS – QUE CHOISIR'S MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF SEEKING MODIFICATION TO PROTECTIVE ORDERS; AND (2) APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR AN ORDER REQUIRING INTEL AND THIRD PARTIES TO PROVIDE ACCESS TO DOCUMENTS AND DEPOSITION TESTIMONY FOR USE IN FOREIGN PROCEEDINGS**

I, Ming Wang, declare as follows:

1. I am the Chief Financial Officer ("CFO") of Non-Party Acer America Corporation ("AAC"). I make this declaration in support of "Acer America Corporation's Opposition To Union Federale Des Consommateurs – Que Choisir's ("UFCQC") Motion To Intervene For The Limited Purpose Of Seeking Modification To Protective Orders; And (2) Application Pursuant To 28 U.S.C. § 1782 For An Order Requiring Intel And Third Parties To Provide Access To Documents And Deposition Testimony For Use In Foreign Proceedings." ("Opposition"). I have personal knowledge of the facts set forth herein, and, if called upon to testify thereto, I am competent to do so and would do so.

2. In my capacity as the CFO of AAC, I have been involved with AAC's production of discovery materials in the above-captioned cases. In addition, in my position, I frequently correspond with other entities which bear the "Acer" name, and I am generally aware of the European Commission's investigation into Intel.

3. In my capacity, I have become aware that several years ago the European Commission conducted a dawn raid at several industry related companies, including the offices of Acer Europe Services s.r.l. ("Acer Europe") and gathered documents and electronic information from Acer Europe.

4. I am aware that on or about December 15, 2005, the European Commission served a "Request for Information" on Acer Europe.

5. I am aware that representatives of Acer Europe answered questions propounded by the European Commission, and produced some documentary and electronic information that was not seized in the dawn raid.

6. I am aware that on several occasions since the European Commission launched its investigation into Intel, Acer Europe personnel and representatives have been interviewed and have answered questions propounded by Case Officers for the European Commission.

7. I am aware that representatives of Acer Europe have provided supplemental responses to the European Commission after Acer Europe gathered additional materials requested by the European Commission and that have become available through Acer Europe's efforts to cooperate.

8. I am informed and believe that Acer Europe's productions to the European Commission have largely included "Confidential" materials which contain "Business Secrets."

9. I can unequivocally state that in considering whether or not to produce electronic information and transactional data to AMD, Intel, and the Class Plaintiffs – AAC has heavily relied on the protections listed in the Protective Order in place in this matter, especially the prohibition against the Parties sharing AAC's information with third parties. This is because the data contains sales and cost data, pricing information, discount information, product and technical information, marketing materials, and highly sensitive communications between senior level executives and customers. This is among the most highly confidential information that AAC possesses.

10. As result, it is completely unacceptable to AAC, that UFCQC obtain access to the data that it has produced – and is proposed to be produced in the future.

11. As the CFO of AAC, I am gravely concerned about the enforceability of the Protective Order against UFCQC. Moreover, I believe that it will be extremely burdensome

and expensive for AAC to monitor possible future European litigations to ensure compliance with the Protective Order.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 26, 2008.

_____
Ming Wang