IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE<br>INTEL CORPORATION<br>MICROPROCESSOR ANTITRUST<br>LITIGATION | ) MDL No. 05-1717-JJF<br>)<br>)<br>)<br>)<br>) **(DM 12)** |
| ADVANCED MICRO DEVICES, INC. a<br>Delaware corporation, and AMD<br>INTERNATIONAL SALES & SERVICE, LTD.,<br>a Delaware corporation,<br><br>     Plaintiffs,<br><br>     v.<br><br>INTEL CORPORATION, a Delaware corporation,<br>and INTEL KABUSHIKI KAISHA, a Japanese<br>corporation,<br><br>     Defendants. | )<br>)<br>)<br>) C. A. No. 05-441 (JJF)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| PHIL PAUL, on behalf of himself<br>and all others similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>INTEL CORPORATION,<br><br>     Defendant. | )<br>)<br>)<br>) C.A. No. 05-485-JJF<br>)<br>) CONSOLIDATED ACTION<br>)<br>)<br>)<br>) |

## DECLARATION OF JAMES S. VENIT

OF COUNSEL:

Robert E. Cooper
Daniel S. Floyd
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000

Michael L. Denger
Joseph Kattan, PC
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave. N.W.
Washington, D.C. 20036-5306
(202) 955-8500

Darren B. Bernhard
Howrey LLP
1299 Pennsylvania Avenue
N.W. Washington, DC 20004
(202) 783-0800

Dated: July 3, 2008

872671 / 29282

Richard L. Horwitz (#2246)
W. Harding Drane, Jr. (#1023)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
(302) 984-6000

rhorwitz@potteranderson.com
wdrane@potteranderson.com

*Attorneys for Defendants
Intel Corporation and Intel Kabushiki Kaisha*

## DECLARATION OF JAMES S. VENIT

I, James S. Venit, make the following declaration.

1. I make this declaration upon personal knowledge and I am competent to testify to the facts and matters set forth herein. This declaration is based on my understanding of the status of the European Commission's investigation of Intel Corporation ("Intel") and my background in, and familiarity with, European Commission ("Commission" or "EC") procedures. The statements and opinions expressed herein are made in good faith on the basis of my understanding of the relevant facts and law.

2. I am a partner at Skadden, Arps, Slate, Meagher & Flom and practice European Union ("EU") competition law out of the firm's Brussels office, which I joined in June 2000.

3. I am admitted to the Bar of New York and am registered on the "B" list of the Brussels Bar.

4. I have been practicing EU competition law in Brussels since October 1980, first as an associate at Cleary, Gottlieb, Steen & Hamilton from October 1980 until April 1984, then as an associate and later a partner at SG Archibald from April 1984 until December 1989, and then as a partner with Wilmer, Cutler and Pickering (now Wilmer, Hale) from January 1990 until June 2000. During my nearly 28 years in Brussels, I have represented numerous firms before the European Commission in, *inter alia*, competition cases under both Articles 81 and 82 of the EU Treaty. I am familiar with the competition laws of the European Community and the procedural rules of the European Commission.

5. Since February 2005 I have been representing Intel and assisting its legal team in the proceedings before the Commission in Case 37990 (the "AMD complaint"). I am also assisting Intel in Case 39493 (the "Retail Investigation").

6. I make this declaration in support of Intel and in response to the declaration of Mr. John T. King in support of the motion filed on behalf of Union Federale des Consommateurs Que Choisir ("QC") to intervene for the limited purpose of seeking modification of the Confidentiality Agreement and Protective Orders and its application pursuant to 28 U.S.C. § 1782 to provide access to documents (collectively "QC Brief") to enable QC to participate "efficiently" in the EU proceedings and in the consumer damages actions that it anticipates will follow those proceedings.

7. QC bases its motion on its interest in using the documents in the EC proceedings in Case 37990 against Intel, in any separate continuing investigation of Intel's relationships with certain

2

computer resellers located in Europe, and eventually in damage actions to be brought at some point in the future against Intel in EU Member State courts. (QC Brief at page 20). In its Brief, QC further explains that its goal in intervening in this procedure is to "influence the outcome of the EC proceedings" and to "seek, via subsequent and related judicial proceedings, compensation for consumers who have been overcharged due to Intel's alleged monopolistic conduct." (QC Brief at page 2).

8.  In the following paragraphs, I first address the status of the EC proceedings in Case 37990 and the possibility for further interventions by QC in that Case in order to influence the proceedings.

**QC currently has no further statutory right to be heard or to make submissions to the Commission in Connection With Case 37990 (the "AMD Complaint")**

**Nature of the EC Proceedings in Case 37990**

**Phases of the Proceeding**

9.  By way of background, the Commission's proceedings in a competition case pursuant to Regulation 1/2003[1] (such as Case 37990) may be divided into three distinct phases (without prejudice to the possibility of re-opening a previous phase). These are: (i) the investigatory phase; (ii) the defence/contentious phase; and (iii) the decision-making phase.

(i) **Investigatory Phase.** During this phase, the Commission uses its investigatory powers under Articles 17-21 of Regulation 1/2003 to gather information and documents by conducting on-site inspections and/or requesting the provision of documents and information. The investigatory phase concludes either with a determination not to proceed further, in which case the file is closed,[2] or the issuance of a Statement of Objections (the "SO") which is addressed to the defendant firm(s) (in this case, Intel) and which sets forth the factual

---

[1] A true and correct copy of Regulation 1/2003 is attached hereto as Exhibit 1.

[2] If the investigation was opened in response to the filing of a formal complaint, pursuant to Article 5 of Regulation 773/2004, the complainant has a limited right of access to the file once it has been informed that the Commission proposes formally to reject the complaint. *See* Article 8 of Regulation 773/2004.

3

and legal arguments supporting the Commission's preliminary conclusion that EU competition law has been infringed.

(ii) **Defence/Contentious Phase.** The second phase, the defence (or contentious phase), begins with the issuance of the SO to the defendant (otherwise known as the addressee of the SO) who is then given an opportunity to respond in writing and orally to the allegations contained in the SO. As part of this phase, the addressee of the SO is also afforded access to the Commission's file. With the issuance of the SO, the factual record is closed. Although new evidence may be introduced subsequently by the Commission, should the new evidence result in a substantial change in the Commission's objections, a supplementary SO will be required. The defence/contentious phase terminates with the Oral Hearing. After this point third parties no longer have any statutory right to make further submissions.

(iii) **Decision-Making Phase.** Following the Oral Hearing, the Commission enters the decision-making phase during which the staff of DG Competition consult internally and with the Commissioner responsible for Competition, the Commission's Legal Service, and the Member States through the Advisory Committee. This phase of the Commission's procedure is governed by Articles 14 and 30 of Regulation 1/2003 and the Commission's non-public internal regulations. Neither the addressee of the SO nor third parties have any statutory rights to make submissions during this phase of the proceedings. At the end of this phase, the Commission will either adopt a decision addressed to the defendant or formally decide to close the file and/or reject a complaint if the investigation was opened in response to a formal complaint. The defendant has the right to appeal the Commission's decision to the Court of First Instance within two months.

**Rights of Interveners**

10. The rights of a third party intervener, such as QC, are substantially more limited than those of a defendant in an EU proceeding. In particular, paragraph 59 of the Commission Notice on Handling of Complaints, Official Journal C 101, 27/04/2004,[3] expressly states, with respect to the rights of a complainant (and thus, *a fortiori*, those of a third party intervener) that "proceedings of the Commission in competition cases do not constitute adversarial proceedings between the complainant on the one hand and the companies which are the subject of the investigation on the other hand. Accordingly, the procedural rights of complainants are less far-

---

[3] A true and correct copy of the Commission Notice on Handling of Complaints is attached hereto as Exhibit 2.

4

reaching than the right to a fair hearing of the companies which are the subject of an infringement procedure."[4]

11. The rights of a third party intervener, such as QC, are also more limited than those of a complainant in an EU proceeding because, unlike complainants, third party interveners cannot be heard or submit information as a matter of right. Article 27(1) of Regulation 1/2003 provides that "[c]omplainants shall be associated closely with the proceeding." A third party intervener, by contrast, is heard solely at the discretion of the Commission. Article 27(3) of Regulation 1/2003 states that "If the Commission considers it necessary, it may also hear other legal or natural persons. Applications to be heard on the part of such persons shall, where they show a sufficient interest, be granted."

12. If a third party is permitted to intervene by the Commission, Regulation 773/2004 provides that the third party will be informed in writing of the nature and the subject matter of the proceeding, will have a time limit within which it may make known their views in writing, and may be invited to develop its arguments at the Oral Hearing. (Article 13 of Regulation 773/2004).[5]

13. The March 6, 2008 letter from the Hearing Officer to QC stated that QC had "shown a sufficient interest to be heard as a third party under Article 27(3) of Council Regulation No. 1/2003." The letter further stated, however, that: "the fact that [QC's] stated purpose to possibly demand in [QC's] own name before national courts in the future . . . is of itself no reason to participate in the Hearing."

---

[4] See also Case T-65/96, *Kish Glass & Co. Ltd. v. Commission* (judgment of 30 March 2000), in which the Court held (in paragraph 33) that "an investigation does not constitute an adversary procedure as between the undertakings concerned but a procedure commenced by the Commission, upon its own initiative or upon application, in fulfillment of its duty to ensure that the rules on competition are observed. It follows that the companies which are the object of the investigation and those which have submitted an application under Article 3 of Regulation No 17, having shown that they have a legitimate interest in seeking an end to the alleged infringement, are not in the same procedural situation and that the latter cannot invoke the right to be heard as defined in the cases relied on." A true and correct copy of Case T-65/96 is attached hereto as Exhibit 3.

[5] A true and correct copy of Regulation 773/2004 is attached hereto as Exhibit 4.

5

14. Absent an express invitation from the Hearing Officer, as a third-party intervener in Case 37990, QC has no right under EU law to make submissions about the factual record *after* the Hearing. However,

> "[w]here appropriate, in view of the need to ensure the right to be heard, the hearing officer, after consulting the Director responsible, may afford persons, undertakings, and associations of persons or undertakings the opportunity of submitting further written comments after the oral hearing. The hearing officer shall fix a date by which such submissions may be made. The Commission shall not be obliged to take into account written comments received *after* that date."

*See* Article 12 of Commission Decision 2001/462 of 23 May 2001, on the terms of reference of hearing officers in certain competition proceedings, Official Journal L 162, 19.06.2001, p. 23, Article 12(4) (emphasis added).[6] QC was given until 26 March 2008 by the Hearing Officer to make a submission relating *solely* to matters raised at the hearing (and not to introduce *any* new evidentiary material). (Declaration of Vincent N. Smith in Support of QC's Letter Brief re Establishing Briefing Schedule, ¶ 8 and Exh. 2).[7] Thus, QC has no further right to be heard or to make submissions to the Commission on the current Statement of Objections.

**Rights of Third Parties to Conduct Discovery**

15. Commission proceedings under Regulation 1/2003 are not adversarial as concerns the addressees of the SO and third parties, be they complainants or interveners.[8] The Commission has described the practical significance of this aspect of its proceedings in a brief submitted in opposition to the use of § 1782 by a defendant when it noted that "the laws of the European

---

[6] A true and correct copy of Commission Decision 2001/462 is attached hereto as Exhibit 5.

[7] Intel, as the defendant in Case 37990, was granted the opportunity by the Hearing Officer to make a post-Hearing submission, pursuant to the Hearing Officer's mandate to grant leave to do so to persons or undertakings in limited circumstances. However, it was made clear to Intel that this submission should be brief and should concern only matters covered at the Hearing as to which Intel had not, in its view, had the opportunity to respond to adequately. Thus, the permission to make a supplemental submission did not extend to the submission of new arguments or new documents.

[8] *See* Case T-65/96, *Kish Glass & Co. Ltd. v. Commission*, note 4 *supra*.

6

Community embody a deliberate decision *not* to authorize private parties to conduct their own discovery."[9] Rather, a private party seeking additional discovery for a Commission competition proceeding must first ask the Commission to obtain the documents.[10] The Commission's decision on whether or not to grant the request is then subject to appellate court review.[11] The Commission's analysis was set forth in the context of an attempt by Microsoft, a defendant who was the addressee of an SO, to use § 1782 to obtain discovery. It would appear *a fortiori*, therefore, that a third party, such as QC, would, at least, have to respect the procedure required of a defendant, given that under EU law, defendants have far greater procedural rights than complainants or interveners. To Intel's knowledge, however, QC has not complied with this required procedure in its quest to obtain the Delaware documents. In my view, QC's apparent attempt to circumvent EC law by directly approaching this Court, rather than adhering to the appropriate EC procedures to obtain such information, makes it likely that the Commission would refuse any information submitted by QC should its § 1782 application succeed.

**Current Status of Case 37990**

16. The investigatory and defence/contentious phases of the Commission's proceedings in Case 37990 have been concluded, and the Commission is now engaged in its internal decision-making process. In essence this means that, unless the Commission were to decide to reopen its investigation, the investigatory and contentious portion of the Commission's administrative proceedings are now closed as is the factual record on which the Commission will have to rely should it eventually adopt a decision in Case 37990 establishing the existence of an infringement. Thus, unless the Commission chooses to reopen the investigatory phase (which would then entail a subsequent re-opening of the defence phase), the record in Case 37990 is in essence closed as concerns the further submission of new evidence.

---

[9] Brief of the Commission of the European Communities in Opposition to Microsoft Corporation's Objections to Magistrate's Order at 10, *In re Application of Microsoft Corp.*, Case No. 06-80038 JF (PVT) (Apr. 17, 2006) (N.D.Cal.) (emphasis added) [hereinafter Comm'n Sun Brief]; *see also* Reply Brief of the Commission of the European Communities in Support of Novell, Inc.'s Motion to Quash at 2-3, In re Application of Microsoft Corp., C.A. 06-MBD-10061 (MLW) (Apr. 12, 2006) (D. Mass) [hereinafter Comm'n Novell Reply Brief]. True and correct copies of the Comm'n Sun Brief and the Comm'n Novell Reply Brief are attached hereto as Exhibits 6 and 7, respectively.

[10] Comm'n Sun Brief at 10.

[11] *Id.*; Comm'n Novell Reply Brief at 2-3.

17.     As concerns QC, whose rights as a third-party intervener are narrowly circumscribed, QC has no further statutory right to be heard or to make submissions to the Commission now that Case 37990 has entered the decision-making phase.

**There is No Basis For QC to Obtain Discovery Via 28 U.S.C. § 1782 in Connection with Case 37990.**

18.     I understand that the US Supreme Court in *Intel v. AMD*[12] identified key factors for purposes of assessing a § 1782 motion, which include (a) whether a foreign tribunal can itself order the discovery sought; (b) the receptivity of the foreign tribunal to US federal court assistance; (c) whether the § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."; and (d) whether the request is unduly burdensome or intrusive. In my view none of these factors suggest QC's application should be granted given the facts and status of Case 37990, and the position taken by the Commission in prior, similar cases.

18.     In fact, I consider it unlikely, especially at this stage of the EC proceedings in Case 37990, that the Commission would accept information submitted by QC should its § 1782 application succeed. QC's § 1782 application, if granted, is thus unlikely to allow QC to reach its stated goal, which is to "influence the outcome of the EC proceedings." (QC Brief at 2.)

**Factor No. 1: The Commission Has The Power to Obtain All the Information it Needs**

19.     Intel is a party to the proceeding and any information in Intel's possession has been readily available to the Commission. The "Commission has the legal power, under Article 18 of Council Regulation No. 1/2003, to 'require undertakings to provide all necessary information' whether or not they are the target of an investigation or suspected of an infringement of the competition rules." Brief for the Commission of the European Communities in Support of Novell, Inc's Motion to Quash, *In re Application of Microsoft Corp.*, 2006 U.S. Dist. LEXIS 32577 (Apr. 17, 2006) at 10 [hereinafter Commission Novell Brief].)[13]

20.     The Commission has already exercised its investigatory powers to seek and obtain information from Intel it believes is necessary with respect to the proceeding in Case 37990.

---

[12]  542 US 241.

[13]  A true and correct copy of the Commission Novell Brief is attached hereto as Exhibit 8.

8

Most recently, on May 21, 2008, the Commission served Article 18 discovery requests on Intel asking it to produce all documents authored or received by Intel employees that were quoted or referred to in (i) Intel's Preliminary Pretrial Statement filed in the Delaware Action; (ii) the Plaintiffs' Joint Preliminary Case Statement; (iii) Intel's Response to the Plaintiffs' Joint Preliminary Case Statement; and (iv) Plaintiffs' Joint Response to Intel's Preliminary Pretrial Statement.[14] Intel complied with these requests.

21.  QC has asserted that its use of § 1782 is warranted because "the numerous third parties that have produced documents in the present case are *not* participants in the EC proceedings." (QC Brief at 27). QC's assertion ignores the Commission's powers to request any information from any party and to obtain information located in the United States, either through a EU-based subsidiary or voluntary compliance.

22.  Through Article 18 Requests, the Commission has already collected information it deemed necessary from third parties for purposes of Case 37990. In particular, the Commission has received documents and information from a large number of third parties, including the key OEMs whose files have been produced in the Delaware litigation. Thus, the Commission clearly not only has the power, but has already taken the measures required, to collect and use what it deems to be necessary and relevant information from these third parties.

23.  It should also be noted that the Commission's Requests for Information state that "Article 18 empowers the Commission to require undertakings and associations of undertakings to provide all necessary information whether or not they are suspected of any infringement of the competition rules." The Request for information further states: "*In particular, I wish to draw your attention to the penalties that may be imposed on any undertaking or association of undertakings that produces incorrect or misleading information in response to this request for information.*" (emphasis in original). Those penalties include "fines not exceeding 1% of the total turnover in the preceding business year where, intentionally or negligently : (a) they supply incorrect or misleading information in response to a request made pursuant to (...) Article 18(2)." *See* Exh. 9 at 1 and Annex I.

24.  There is no basis to believe that the Commission's power to compel information from Intel or third parties is inadequate. As the Commission has stated "[i]f the parties or third parties do not provide the requested information, the Commission can order and has many times in the past ordered production and imposed heavy fines, under Article 23 of Regulation 1/2003 . . . in order to induce compliance." Commission Novell Brief at 11. The Commission "has all the

---

[14] A true and correct copy of the Commission's 21 May 2008 Article 18 Requests is attached hereto as Exhibit 9.

9

power to request any information from . . . any other third company at any time that is relevant to the proceedings. . . ." *Ibid.*

25.  QC has not identified any type or category of documents that would be relevant to the EC's investigation, which is beyond the EC's reach, but within this Court's reach.

26.  If it were the case that some relevant documents were beyond the EC's direct reach, the Commission can itself invoke 28 U.S.C. § 1782 to obtain information located in the United States pursuant to the Agreement Between the Government of the United States of America and the Commission of the European Communities Regarding the Application of their Competition Laws, 1995 O.J. (L 95) 47, *as amended by* Exchange of Letters Dates 31 May 1995 and 31 July 1995, 1995 O.J. (L 132) 38, and the Agreement Between the Government of the United States of America and the European Communities on the Application of Positive Comity Principles in the Enforcement of Their Competition Laws, 1998 O.J. (L 173) 28. Brief for the Commission of the European Communities as Amicus Curiae Supporting Reversal, *Intel Corp. v. Advanced Micro Devices, Inc.* 542 U.S. 241 (2004) at 12 and n.13 [hereinafter Commission Intel Brief].[15]

27.  The Commission has expressed its "clear preference . . . to rely on the formal mechanisms that it has carefully negotiated with the United States specifically for the purpose of cooperation in competition law enforcement.: *Id.* at 12.

**Factor No. 2: The Commission is Not Receptive to U.S. Judicial Assistance in Connection with Private Applications Under § 1782**

28.  QC has represented to the court that "there is no . . . opposition by the EC" to its application for discovery under § 1782. QC Brief at 27. This misrepresentation of the Commission's position is unfounded. In fact, the Commission has taken the consistent position that the US courts should deny discovery requests pursuant to 28 U.S.C. § 1782 for use in Commission competition proceedings. *See, e.g.,* Commission Intel Brief; Commission Novell Brief at 1; Commission Sun Brief at 10. QC has not identified a single instance in which the EC has indicated that it is receptive to judicial assistance involving a private application under § 1782.

29.  The Commission has stated its view that § 1782 applications, such as QC's application:

---

[15] A true and correct copy of the Commission Intel Brief is attached hereto as Exhibit 10.

10

(1) "interfere [] with law enforcement and sovereign policy choices in the handling of competition law proceedings in the European Community." Commission Novell Brief at 17-18;

(2) "facilitate [ ] circumvention of the European Union's considered policies on access to information" (Intel Brief at 14);

(3) "seriously compromise the Commission's powers of investigation and competition law enforcement" (Novell Brief at 15);

(4) "undermine the Commission's right to preclude irrelevant information." (Letter from Philip Lowe, Director-General, European Commission, to Maurits Dolmans, Cleary Gottlieb Steen & Hamilton (Mar. 2006) at 4) (hereinafter "Commission Letter to Dolmans");[16] and

(5) "circumvent the procedures for and limitations on proof-gathering established by the laws of the European Community" (Comm'n Novell Reply Brief at 4).

**Factor No. 3: QC's Application Is An Attempt To Circumvent EC Procedure**

30.     QC's § 1782 application attempts to circumvent and undermine the Commission's carefully balanced disclosure policies in several respects.

31.     First, QC's § 1782 application seeks to circumvent the Commission's considered decisions regarding the materials it has chosen *not* to pursue in connection with its investigation of Intel. The Commission's investigation of Intel in Case 37990 has been underway for several years. During that time period, the Commission has used its powers to conduct extensive fact-finding targeted at Intel and third parties that is relevant to the issues at stake in its investigation. Some of the issues in the Delaware action have not been the focus of the Commission's investigation. By way of example, AMD's Complaint covers sales to US retailers, standard setting and compiler issues, and chipsets, none of which is at issue in Case 37990. Documents

---

[16]     A true and correct copy of the Commission Letter to Dolmans is attached hereto as Exhibit 11.

11

produced in the Delaware Action pertaining to these issues would have no relevance to the Commission's investigation.

32. The Commission has stated that its discovery procedures "are designed to provide access to evidence in a manner that is fair and transparent and to enable the Commission to maintain control over proof-gathering activity in the matters before it." Comm'n Sun Brief at 13. QC's § 1782 application is an attempt to wrest that control from the Commission, and burden it with millions of documents that have been produced in the U.S. litigation, many of which have little or no bearing on File No. 37990. It is particularly telling that the Commission has intentionally chosen *not* to issue a broad request for all Delaware documents but has so far limited its review to documents authored or received by Intel employees which are quoted or referred to in the briefs filed by Intel and AMD in the Delaware litigation in May 2008.

33. Second, as stated in paragraph 15, QC has not, to Intel's knowledge, asked the Commission to obtain the Delaware documents, as required by EC procedure. QC seeks through its § 1782 application to circumvent the EC's procedures, which do not authorize private parties to conduct their own discovery in connection with a Commission investigation. That is because unlike the U.S. judicial system, the Commission relies on the inquisitional process common to the civil law system.

34. Third, QC's § 1782 application circumvents the EC procedures designed to prevent it (as a third party) from gaining access to confidential materials to which EC rules would not otherwise afford QC access. The Commission already stated its position that the use of § 1782 is "an attempt to circumvent established rules on access to file in proceedings before the Commission." Comm'n Novell Brief at 10.

35. The EC strictly limits private entities' access to confidential documents; as a third party intervener, QC has no right of file access. Comm'n Intel Brief at 13 ("As a general rule, the Commission is bound by an obligation of confidentiality, as a result of which there are many elements of the Commission's files (including commercial information and business secrets) to which the complainant is denied access. The Court of Justice has mandated in no uncertain terms that "a third party who has submitted a complaint may not in any circumstances be given access to documents containing business secrets." ). If QC were to prevail in its § 1782 request, the documents of approximately 73 third-party corporations would be produced to another third party, QC, without the benefits of the Commission's measured standards and procedures.

36. Last, QC's § 1782 application is an attempt to circumvent or thwart Intel's rights of defense. Community competition law properly respects the "rights of defense and the right to be heard of potentially affected entities and individuals . . . ." Comm'n Novell Brief at 4. The Commission grants file access "to all adversely affected parties in proceedings before the Commission." *Id.* at 4. As a third party intervener, QC has no rights of file access. Nevertheless, QC is seeking under § 1782 massive access to millions of pages of documents outside the protections afforded to Intel and third parties by the Commission's procedures.

Granting § 1782 access in this matter would not only substantially interfere with the Commission's process, it also circumvents Intel's rights of defense [and the confidentiality protections provided for Commission file documents].

37. The use of § 1782 presents a serious risk that Intel's and third parties' documents will be used for improper purposes. The Commission employs procedures to ensure that documents obtained through access to file may only be used "'for the purposes of judicial and administrative procedures for the application of Articles 81 and 82 of the Treaty.'" Comm'n Novell Brief at 7. Use of such documents for other purposes is punishable by disciplinary action. *Id.*

38. The Commission's "objective for these provisions is to sanction unlawful use of the information obtained, in view of the public interest (efficient law enforcement) and the substantial economic interest at stake." *Id.* at 16. The Commission has warned that the use of § 1782 presents a "serious risk that the documents . . . may not be protected at all or not protected to the same extent by the rules applicable in other jurisdictions." *Id.*

**Factor No. 4: QC's § 1782 Application Is Vastly Overbroad and Unduly Burdensome**

39. The Commission has stated that the use of § 1782 in Commission competition investigations cases would lead the Commission "to waste precious time and resources . . . ." Comm'n Intel Brief at 14. The use of § 1782 would prove especially burdensome in the present case given that Intel alone has produced the electronic equivalent of 150 million pages in the Delaware case and third parties are in the process of producing tens of millions of additional pages. In my view, it is unlikely that the Commission would be receptive, especially at this stage of the proceedings, to receiving a large volume of additional documents covered by QC's application, inasmuch as the Commission has itself purposefully limited the scope of its request for Delaware documents.

40. If QC were to prevail in its § 1782 application, the Commission would be forced to review hundreds of millions of pages of additional documentation before deciding how to dispose of the new material. In making such decisions, the Commission would be forced to consider a plethora of factors such as relevance, Intel's rights of defense, confidentiality and file access.

**<u>QC's § 1782 Request Should Not Be Granted For Use in a Private Consumer Case in Europe</u>**

41. QC has to date has not initiated any damages actions under any of the EU Member State laws. In the EU such actions are normally brought *after* the Commission has adopted a decision establishing an infringement *and* that decision has been rendered final on appeal or by the expiration of the time period within which to bring an appeal. QC has indicated that this is how

13

it intends to proceed. (QC Brief at page 2). This process is likely to take another five to seven years if the Commission adopts a decision and if Intel appeals it to both the Court of First Instance and the Court of Justice.

42. In any event, to the extent that private antitrust litigation in EU member state courts has been contemplated, those proposals have sought to avoid the negative effects of overly broad and burdensome discovery. For instance, in its White Paper on Damages Actions for Breach of EC Antitrust Rules, the Commission has emphasized the need to "avoid the negative effects of overly broad and burdensome disclosure obligations, including the risk of abuses" in private antitrust litigation. Commission White Paper on Damages Actions for Breach of EC Antitrust Rules, at 5 COM (2008) 165 final (Apr. 2, 2008) ("White Paper").[17]

43. The White Paper recommends that access to evidence in a consumer case be limited to "precise categories of relevant evidence" and subject to "strict judicial control." White Paper at 5. This approach is well adapted to the European context in which national competition authorities and courts are bound by the findings made by the Commission in prohibition decisions.[18] Accordingly, full scale discovery is not needed in Europe to promote effective follow-on litigation.

44. The Commission has stressed that any changes to private antitrust litigation must be guided by the "principle that the legal framework for more effective antitrust damages actions should be based on a genuinely European approach." White Paper at 3. The White Paper's policy choices were therefore comprised of "balanced measures that are rooted in European legal culture and traditions." *Id.*

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge and belief, the foregoing is true and correct. Executed on July 2, 2008.

_____
James S. Venit

---

[17] A true and correct copy of the Commission White Paper is attached hereto as Exhibit 12.

[18] See Article 16 of Regulation 1/2003.

14