# EXHIBIT 1

4.1.2003 ┃ EN ┃ Official Journal of the European Communities ┃ L 1/1

I

*(Acts whose publication is obligatory)*

**COUNCIL REGULATION (EC) No 1/2003**

**of 16 December 2002**

**on the implementation of the rules on competition laid down in Articles 81 and 82 of the Treaty**

(Text with EEA relevance)

THE COUNCIL OF THE EUROPEAN UNION,

Having regard to the Treaty establishing the European Community, and in particular Article 83 thereof,

Having regard to the proposal from the Commission (¹),

Having regard to the opinion of the European Parliament (²),

Having regard to the opinion of the European Economic and Social Committee (³),

Whereas:

(1) In order to establish a system which ensures that competition in the common market is not distorted, Articles 81 and 82 of the Treaty must be applied effectively and uniformly in the Community. Council Regulation No 17 of 6 February 1962, First Regulation implementing Articles 81 and 82 (⁴) of the Treaty, has allowed a Community competition policy to develop that has helped to disseminate a competition culture within the Community. In the light of experience, however, that Regulation should now be replaced by legislation designed to meet the challenges of an integrated market and a future enlargement of the Community.

(2) In particular, there is a need to rethink the arrangements for applying the exception from the prohibition on agreements, which restrict competition, laid down in Article 81(3) of the Treaty. Under Article 83(2)(b) of the Treaty, account must be taken in this regard of the need to ensure effective supervision, on the one hand, and to simplify administration to the greatest possible extent, on the other.

(3) The centralised scheme set up by Regulation No 17 no longer secures a balance between those two objectives. It hampers application of the Community competition rules by the courts and competition authorities of the Member States, and the system of notification it involves prevents the Commission from concentrating its resources on curbing the most serious infringements. It also imposes considerable costs on undertakings.

(4) The present system should therefore be replaced by a directly applicable exception system in which the competition authorities and courts of the Member States have the power to apply not only Article 81(1) and Article 82 of the Treaty, which have direct applicability by virtue of the case-law of the Court of Justice of the European Communities, but also Article 81(3) of the Treaty.

---

(¹) OJ C 365 E, 19.12.2000, p. 284.
(²) OJ C 72 E, 21.3.2002, p. 305.
(³) OJ C 155, 29.5.2001, p. 73.
(⁴) The title of Regulation No 17 has been adjusted to take account of the renumbering of the Articles of the EC Treaty, in accordance with Article 12 of the Treaty of Amsterdam; the original reference was to Articles 85 and 86 of the Treaty.
(⁵) OJ 13, 21.2.1962, p. 204/62. Regulation as last amended by Regulation (EC) No 1216/1999 (OJ L 148, 15.6.1999, p. 5).

(5) In order to ensure an effective enforcement of the Community competition rules and at the same time the respect of fundamental rights of defence, this Regulation should regulate the burden of proof under Articles 81 and 82 of the Treaty. It should be for the party or the authority alleging an infringement of Article 81(1) and Article 82 of the Treaty to prove the existence thereof to the required legal standard. It should be for the undertaking or association of undertakings invoking the benefit of a defence against a finding of an infringement to demonstrate to the required legal standard that the conditions for applying such defence are satisfied. This Regulation affects neither national rules on the standard of proof nor obligations of competition authorities and courts of the Member States to ascertain the relevant facts of a case, provided that such rules and obligations are compatible with general principles of Community law.

(6) In order to ensure that the Community competition rules are applied effectively, the competition authorities of the Member States should be associated more closely with their application. To this end, they should be empowered to apply Community law.

(7) National courts have an essential part to play in applying the Community competition rules. When deciding disputes between private individuals, they protect the subjective rights under Community law, for example by awarding damages to the victims of infringements. The role of the national courts here complements that of the competition authorities of the Member States. They should therefore be allowed to apply Articles 81 and 82 of the Treaty in full.

(8) In order to ensure the effective enforcement of the Community competition rules and the proper functioning of the cooperation mechanisms contained in this Regulation, it is necessary to oblige the competition authorities and courts of the Member States to also apply Articles 81 and 82 of the Treaty where they apply national competition law to agreements and practices which may affect trade between Member States. In order to create a level playing field for agreements, decisions by associations of undertakings and concerted practices within the internal market, it is also necessary to determine pursuant to Article 83(2)(e) of the Treaty the relationship between national laws and Community competition law. To that effect it is necessary to provide that the application of national competition laws to agreements, decisions or concerted practices within the meaning of Article 81(1) of the Treaty may not lead to the prohibition of such agreements, decisions and concerted practices if they are not also prohibited under Community competition law. The notions of agreements, decisions and concerted practices are autonomous concepts of Community competition law covering the coordination of behaviour of undertakings on the market as interpreted by the Community Courts. Member States should not under this Regulation be precluded from adopting and applying on their territory stricter national competition laws which prohibit or impose sanctions on unilateral conduct engaged in by undertakings. These stricter national laws may include provisions which prohibit or impose sanctions on abusive behaviour toward economically dependent undertakings. Furthermore, this Regulation does not apply to national laws which impose criminal sanctions on natural persons except to the extent that such sanctions are the means whereby competition rules applying to undertakings are enforced.

(9) Articles 81 and 82 of the Treaty have as their objective the protection of competition on the market. This Regulation, which is adopted for the implementation of these Treaty provisions, does not preclude Member States from implementing on their territory national legislation, which protects other legitimate interests provided that such legislation is compatible with general principles and other provisions of Community law. In so far as such national legislation pursues predominantly an objective different from that of protecting competition on the market, the competition authorities and courts of the Member States may apply such legislation on their territory. Accordingly, Member States may under this Regulation implement on their territory national legislation that prohibits or imposes sanctions on acts of unfair trading practice, be they unilateral or contractual. Such legislation pursues a specific objective, irrespective of the actual or presumed effects of such acts on competition on the market. This is particularly the case of legislation which prohibits undertakings from imposing on their trading partners, obtaining or attempting to obtain from them terms and conditions that are unjustified, disproportionate or without consideration.

(10) Regulations such as 19/65/EEC (¹), (EEC) No 2821/71 (²), (EEC) No 3976/87 (³), (EEC) No 1534/91 (⁴), or (EEC) No 479/92 (⁵) empower the Commission to apply Article 81(3) of the Treaty by Regulation to certain categories of agreements, decisions by associations of undertakings and concerted practices. In the areas defined by such Regulations, the Commission has adopted and may continue to adopt so called 'block' exemption Regulations by which it declares Article 81(1) of the Treaty inapplicable to categories of agreements, decisions and concerted practices. Where agreements, decisions and concerted practices to which such Regulations apply nonetheless have effects that are incompatible with Article 81(3) of the Treaty, the Commission and the competition authorities of the Member States should have the power to withdraw in a particular case the benefit of the block exemption Regulation.

(11) For it to ensure that the provisions of the Treaty are applied, the Commission should be able to address decisions to undertakings or associations of undertakings for the purpose of bringing to an end infringements of Articles 81 and 82 of the Treaty. Provided there is a legitimate interest in doing so, the Commission should also be able to adopt decisions which find that an infringement has been committed in the past even if it does not impose a fine. This Regulation should also make explicit provision for the Commission's power to adopt decisions ordering interim measures, which has been acknowledged by the Court of Justice.

(12) This Regulation should make explicit provision for the Commission's power to impose any remedy, whether behavioural or structural, which is necessary to bring the infringement effectively to an end, having regard to the principle of proportionality. Structural remedies should only be imposed either where there is no equally effective behavioural remedy or where any equally effective behavioural remedy would be more burdensome for the undertaking concerned than the structural remedy. Changes to the structure of an undertaking as it existed before the infringement was committed would only be proportionate where there is a substantial risk of a lasting or repeated infringement that derives from the very structure of the undertaking.

(13) Where, in the course of proceedings which might lead to an agreement or practice being prohibited, undertakings offer the Commission commitments such as to meet its concerns, the Commission should be able to adopt decisions which make those commitments binding on the undertaking concerned. Commitment decisions should find that there are no longer grounds for action by the Commission without concluding whether or not there has been or still is an infringement. Commitment decisions are without prejudice to the powers of competition authorities and courts of the Member States to make such a finding and decide upon the case. Commitment decisions are not appropriate in cases where the Commission intends to impose a fine.

(¹) Council Regulation No 19/65/EEC of 2 March 1965 on the application of Article 81(3) (The titles of the Regulations have been adjusted to take account of the renumbering of the Articles of the EC Treaty, in accordance with Article 12 of the Treaty of Amsterdam; the original reference was to Article 85(3) of the Treaty) of the Treaty to certain categories of agreements and concerted practices (OJ 36, 6.3.1965, p. 533). Regulation as last amended by Regulation (EC) No 1215/1999 (OJ L 148, 15.6.1999, p. 1).
(²) Council Regulation (EEC) No 2821/71 of 20 December 1971 on the application of Article 81(3) (The titles of the Regulations have been adjusted to take account of the renumbering of the Articles of the EC Treaty, in accordance with Article 12 of the Treaty of Amsterdam; the original reference was to Article 85(3) of the Treaty) of the Treaty to categories of agreements, decisions and concerted practices (OJ L 285, 29.12.1971, p. 46). Regulation as last amended by the Act of Accession of 1994.
(³) Council Regulation (EEC) No 3976/87 of 14 December 1987 on the application of Article 81(3) (The titles of the Regulations have been adjusted to take account of the renumbering of the Articles of the EC Treaty, in accordance with Article 12 of the Treaty of Amsterdam; the original reference was to Article 85(3) of the Treaty) of the Treaty to certain categories of agreements and concerted practices in the air transport sector (OJ L 374, 31.12.1987, p. 9). Regulation as last amended by the Act of Accession of 1994.
(⁴) Council Regulation (EEC) No 1534/91 of 31 May 1991 on the application of Article 81(3) (The titles of the Regulations have been adjusted to take account of the renumbering of the Articles of the EC Treaty, in accordance with Article 12 of the Treaty of Amsterdam; the original reference was to Article 85(3) of the Treaty) of the Treaty to certain categories of agreements, decisions and concerted practices in the insurance sector (OJ L 143, 7.6.1991, p. 1).
(⁵) Council Regulation (EEC) No 479/92 of 25 February 1992 on the application of Article 81(3) (The titles of the Regulations have been adjusted to take account of the renumbering of the Articles of the EC Treaty, in accordance with Article 12 of the Treaty of Amsterdam; the original reference was to Article 85(3) of the Treaty) of the Treaty to certain categories of agreements, decisions and concerted practices between liner shipping companies (Consortia) (OJ L 55, 29.2.1992, p. 3). Regulation amended by the Act of Accession of 1994.

(14) In exceptional cases where the public interest of the Community so requires, it may also be expedient for the Commission to adopt a decision of a declaratory nature finding that the prohibition in Article 81 or Article 82 of the Treaty does not apply, with a view to clarifying the law and ensuring its consistent application throughout the Community, in particular with regard to new types of agreements or practices that have not been settled in the existing case-law and administrative practice.

(15) The Commission and the competition authorities of the Member States should form together a network of public authorities applying the Community competition rules in close cooperation. For that purpose it is necessary to set up arrangements for information and consultation. Further modalities for the cooperation within the network will be laid down and revised by the Commission, in close cooperation with the Member States.

(16) Notwithstanding any national provision to the contrary, the exchange of information and the use of such information in evidence should be allowed between the members of the network even where the information is confidential. This information may be used for the application of Articles 81 and 82 of the Treaty as well as for the parallel application of national competition law, provided that the latter application relates to the same case and does not lead to a different outcome. When the information exchanged is used by the receiving authority to impose sanctions on undertakings, there should be no other limit to the use of the information than the obligation to use it for the purpose for which it was collected given the fact that the sanctions imposed on undertakings are of the same type in all systems. The rights of defence enjoyed by undertakings in the various systems can be considered as sufficiently equivalent. However, as regards natural persons, they may be subject to substantially different types of sanctions across the various systems. Where that is the case, it is necessary to ensure that information can only be used if it has been collected in a way which respects the same level of protection of the rights of defence of natural persons as provided for under the national rules of the receiving authority.

(17) If the competition rules are to be applied consistently and, at the same time, the network is to be managed in the best possible way, it is essential to retain the rule that the competition authorities of the Member States are automatically relieved of their competence if the Commission initiates its own proceedings. Where a competition authority of a Member State is already acting on a case and the Commission intends to initiate proceedings, it should endeavour to do so as soon as possible. Before initiating proceedings, the Commission should consult the national authority concerned.

(18) To ensure that cases are dealt with by the most appropriate authorities within the network, a general provision should be laid down allowing a competition authority to suspend or close a case on the ground that another authority is dealing with it or has already dealt with it, the objective being that each case should be handled by a single authority. This provision should not prevent the Commission from rejecting a complaint for lack of Community interest, as the case-law of the Court of Justice has acknowledged it may do, even if no other competition authority has indicated its intention of dealing with the case.

(19) The Advisory Committee on Restrictive Practices and Dominant Positions set up by Regulation No 17 has functioned in a very satisfactory manner. It will fit well into the new system of decentralised application. It is necessary, therefore, to build upon the rules laid down by Regulation No 17, while improving the effectiveness of the organisational arrangements. To this end, it would be expedient to allow opinions to be delivered by written procedure. The Advisory Committee should also be able to act as a forum for discussing cases that are being handled by the competition authorities of the Member States, so as to help safeguard the consistent application of the Community competition rules.

(20) The Advisory Committee should be composed of representatives of the competition authorities of the Member States. For meetings in which general issues are being discussed, Member States should be able to appoint an additional representative. This is without prejudice to members of the Committee being assisted by other experts from the Member States.

(21)  Consistency in the application of the competition rules also requires that arrangements be established for cooperation between the courts of the Member States and the Commission. This is relevant for all courts of the Member States that apply Articles 81 and 82 of the Treaty, whether applying these rules in lawsuits between private parties, acting as public enforcers or as review courts. In particular, national courts should be able to ask the Commission for information or for its opinion on points concerning the application of Community competition law. The Commission and the competition authorities of the Member States should also be able to submit written or oral observations to courts called upon to apply Article 81 or Article 82 of the Treaty. These observations should be submitted within the framework of national procedural rules and practices including those safeguarding the rights of the parties. Steps should therefore be taken to ensure that the Commission and the competition authorities of the Member States are kept sufficiently well informed of proceedings before national courts.

(22)  In order to ensure compliance with the principles of legal certainty and the uniform application of the Community competition rules in a system of parallel powers, conflicting decisions must be avoided. It is therefore necessary to clarify, in accordance with the case-law of the Court of Justice, the effects of Commission decisions and proceedings on courts and competition authorities of the Member States. Commitment decisions adopted by the Commission do not affect the power of the courts and the competition authorities of the Member States to apply Articles 81 and 82 of the Treaty.

(23)  The Commission should be empowered throughout the Community to require such information to be supplied as is necessary to detect any agreement, decision or concerted practice prohibited by Article 81 of the Treaty or any abuse of a dominant position prohibited by Article 82 of the Treaty. When complying with a decision of the Commission, undertakings cannot be forced to admit that they have committed an infringement, but they are in any event obliged to answer factual questions and to provide documents, even if this information may be used to establish against them or against another undertaking the existence of an infringement.

(24)  The Commission should also be empowered to undertake such inspections as are necessary to detect any agreement, decision or concerted practice prohibited by Article 81 of the Treaty or any abuse of a dominant position prohibited by Article 82 of the Treaty. The competition authorities of the Member States should cooperate actively in the exercise of these powers.

(25)  The detection of infringements of the competition rules is growing ever more difficult, and, in order to protect competition effectively, the Commission's powers of investigation need to be supplemented. The Commission should in particular be empowered to interview any persons who may be in possession of useful information and to record the statements made. In the course of an inspection, officials authorised by the Commission should be empowered to affix seals for the period of time necessary for the inspection. Seals should normally not be affixed for more than 72 hours. Officials authorised by the Commission should also be empowered to ask for any information relevant to the subject matter and purpose of the inspection.

(26)  Experience has shown that there are cases where business records are kept in the homes of directors or other people working for an undertaking. In order to safeguard the effectiveness of inspections, therefore, officials and other persons authorised by the Commission should be empowered to enter any premises where business records may be kept, including private homes. However, the exercise of this latter power should be subject to the authorisation of the judicial authority.

(27)  Without prejudice to the case-law of the Court of Justice, it is useful to set out the scope of the control that the national judicial authority may carry out when it authorises, as foreseen by national law including as a precautionary measure, assistance from law enforcement authorities in order to overcome possible opposition on the part of the undertaking or the execution of the decision to carry out inspections in non-business premises. It results from the case-law that the national judicial authority may in particular ask the Commission for further information which it needs to carry out its control and in the absence of which it could refuse the authorisation. The case-law also confirms the competence of the national courts to control the application of national rules governing the implementation of coercive measures.

(28)  In order to help the competition authorities of the Member States to apply Articles 81 and 82 of the Treaty effectively, it is expedient to enable them to assist one another by carrying out inspections and other fact-finding measures.

(29)  Compliance with Articles 81 and 82 of the Treaty and the fulfilment of the obligations imposed on undertakings and associations of undertakings under this Regulation should be enforceable by means of fines and periodic penalty payments. To that end, appropriate levels of fine should also be laid down for infringements of the procedural rules.

(30)  In order to ensure effective recovery of fines imposed on associations of undertakings for infringements that they have committed, it is necessary to lay down the conditions on which the Commission may require payment of the fine from the members of the association where the association is not solvent. In doing so, the Commission should have regard to the relative size of the undertakings belonging to the association and in particular to the situation of small and medium-sized enterprises. Payment of the fine by one or several members of an association is without prejudice to rules of national law that provide for recovery of the amount paid from other members of the association.

(31)  The rules on periods of limitation for the imposition of fines and periodic penalty payments were laid down in Council Regulation (EEC) No 2988/74 (¹), which also concerns penalties in the field of transport. In a system of parallel powers, the acts, which may interrupt a limitation period, should include procedural steps taken independently by the competition authority of a Member State. To clarify the legal framework, Regulation (EEC) No 2988/74 should therefore be amended to prevent it applying to matters covered by this Regulation, and this Regulation should include provisions on periods of limitation.

(32)  The undertakings concerned should be accorded the right to be heard by the Commission, third parties whose interests may be affected by a decision should be given the opportunity of submitting their observations beforehand, and the decisions taken should be widely publicised. While ensuring the rights of defence of the undertakings concerned, in particular, the right of access to the file, it is essential that business secrets be protected. The confidentiality of information exchanged in the network should likewise be safeguarded.

(33)  Since all decisions taken by the Commission under this Regulation are subject to review by the Court of Justice in accordance with the Treaty, the Court of Justice should, in accordance with Article 229 thereof be given unlimited jurisdiction in respect of decisions by which the Commission imposes fines or periodic penalty payments.

(34)  The principles laid down in Articles 81 and 82 of the Treaty, as they have been applied by Regulation No 17, have given a central role to the Community bodies. This central role should be retained, whilst associating the Member States more closely with the application of the Community competition rules. In accordance with the principles of subsidiarity and proportionality as set out in Article 5 of the Treaty, this Regulation does not go beyond what is necessary in order to achieve its objective, which is to allow the Community competition rules to be applied effectively.

(35)  In order to attain a proper enforcement of Community competition law, Member States should designate and empower authorities to apply Articles 81 and 82 of the Treaty as public enforcers. They should be able to designate administrative as well as judicial authorities to carry out the various functions conferred upon competition authorities in this Regulation. This Regulation recognises the wide variation which exists in the public enforcement systems of Member States. The effects of Article 11(6) of this Regulation should apply to all competition authorities. As an exception to this general rule, where a prosecuting authority brings a case before a separate judicial

(¹) Council Regulation (EEC) No 2988/74 of 26 November 1974 concerning limitation periods in proceedings and the enforcement of sanctions under the rules of the European Economic Community relating to transport and competition (OJ L 319, 29.11.1974, p. 1).

authority, Article 11(6) should apply to the prosecuting authority subject to the conditions in Article 35(4) of this Regulation. Where these conditions are not fulfilled, the general rule should apply. In any case, Article 11(6) should not apply to courts insofar as they are acting as review courts.

(36) As the case-law has made it clear that the competition rules apply to transport, that sector should be made subject to the procedural provisions of this Regulation. Council Regulation No 141 of 26 November 1962 exempting transport from the application of Regulation No 17 (¹) should therefore be repealed and Regulations (EEC) No 1017/68 (²), (EEC) No 4056/86 (³) and (EEC) No 3975/87 (⁴) should be amended in order to delete the specific procedural provisions they contain.

(37) This Regulation respects the fundamental rights and observes the principles recognised in particular by the Charter of Fundamental Rights of the European Union. Accordingly, this Regulation should be interpreted and applied with respect to those rights and principles.

(38) Legal certainty for undertakings operating under the Community competition rules contributes to the promotion of innovation and investment. Where cases give rise to genuine uncertainty because they present novel or unresolved questions for the application of these rules, individual undertakings may wish to seek informal guidance from the Commission. This Regulation is without prejudice to the ability of the Commission to issue such informal guidance,

HAS ADOPTED THIS REGULATION:

CHAPTER I

PRINCIPLES

*Article 1*

**Application of Articles 81 and 82 of the Treaty**

1.   Agreements, decisions and concerted practices caught by Article 81(1) of the Treaty which do not satisfy the conditions of Article 81(3) of the Treaty shall be prohibited, no prior decision to that effect being required.

2.   Agreements, decisions and concerted practices caught by Article 81(1) of the Treaty which satisfy the conditions of Article 81(3) of the Treaty shall not be prohibited, no prior decision to that effect being required.

3.   The abuse of a dominant position referred to in Article 82 of the Treaty shall be prohibited, no prior decision to that effect being required.

---

(¹) OJ 124, 28.11.1962, p. 2751/62; Regulation as last amended by Regulation No 1002/67/EEC (OJ 306, 16.12.1967, p. 1).
(²) Council Regulation (EEC) No 1017/68 of 19 July 1968 applying rules of competition to transport by rail, road and inland waterway (OJ L 175, 23.7.1968, p. 1). Regulation as last amended by the Act of Accession of 1994.
(³) Council Regulation (EEC) No 4056/86 of 22 December 1986 laying down detailed rules for the application of Articles 81 and 82 (The title of the Regulation has been adjusted to take account of the renumbering of the Articles of the EC Treaty, in accordance with Article 12 of the Treaty of Amsterdam; the original reference was to Articles 85 and 86 of the Treaty) to maritime transport (OJ L 378, 31.12.1986, p. 4). Regulation as last amended by the Act of Accession of 1994.
(⁴) Council Regulation (EEC) No 3975/87 of 14 December 1987 laying down the procedure for the application of the rules on competition to undertakings in the air transport sector (OJ L 374, 31.12.1987, p. 1). Regulation as last amended by Regulation (EEC) No 2410/92 (OJ L 240, 24.8.1992, p. 18).

## Article 2

### Burden of proof

In any national or Community proceedings for the application of Articles 81 and 82 of the Treaty, the burden of proving an infringement of Article 81(1) or of Article 82 of the Treaty shall rest on the party or the authority alleging the infringement. The undertaking or association of undertakings claiming the benefit of Article 81(3) of the Treaty shall bear the burden of proving that the conditions of that paragraph are fulfilled.

## Article 3

### Relationship between Articles 81 and 82 of the Treaty and national competition laws

1.    Where the competition authorities of the Member States or national courts apply national competition law to agreements, decisions by associations of undertakings or concerted practices within the meaning of Article 81(1) of the Treaty which may affect trade between Member States within the meaning of that provision, they shall also apply Article 81 of the Treaty to such agreements, decisions or concerted practices. Where the competition authorities of the Member States or national courts apply national competition law to any abuse prohibited by Article 82 of the Treaty, they shall also apply Article 82 of the Treaty.

2.    The application of national competition law may not lead to the prohibition of agreements, decisions by associations of undertakings or concerted practices which may affect trade between Member States but which do not restrict competition within the meaning of Article 81(1) of the Treaty, or which fulfil the conditions of Article 81(3) of the Treaty or which are covered by a Regulation for the application of Article 81(3) of the Treaty. Member States shall not under this Regulation be precluded from adopting and applying on their territory stricter national laws which prohibit or sanction unilateral conduct engaged in by undertakings.

3.    Without prejudice to general principles and other provisions of Community law, paragraphs 1 and 2 do not apply when the competition authorities and the courts of the Member States apply national merger control laws nor do they preclude the application of provisions of national law that predominantly pursue an objective different from that pursued by Articles 81 and 82 of the Treaty.

### CHAPTER II

### POWERS

## Article 4

### Powers of the Commission

For the purpose of applying Articles 81 and 82 of the Treaty, the Commission shall have the powers provided for by this Regulation.

## Article 5

### Powers of the competition authorities of the Member States

The competition authorities of the Member States shall have the power to apply Articles 81 and 82 of the Treaty in individual cases. For this purpose, acting on their own initiative or on a complaint, they may take the following decisions:

— requiring that an infringement be brought to an end,

— ordering interim measures,

— accepting commitments,

— imposing fines, periodic penalty payments or any other penalty provided for in their national law.

Where on the basis of the information in their possession the conditions for prohibition are not met they may likewise decide that there are no grounds for action on their part.

## Article 6

### Powers of the national courts

National courts shall have the power to apply Articles 81 and 82 of the Treaty.

## CHAPTER III

## COMMISSION DECISIONS

## Article 7

### Finding and termination of infringement

1. Where the Commission, acting on a complaint or on its own initiative, finds that there is an infringement of Article 81 or of Article 82 of the Treaty, it may by decision require the undertakings and associations of undertakings concerned to bring such infringement to an end. For this purpose, it may impose on them any behavioural or structural remedies which are proportionate to the infringement committed and necessary to bring the infringement effectively to an end. Structural remedies can only be imposed either where there is no equally effective behavioural remedy or where any equally effective behavioural remedy would be more burdensome for the undertaking concerned than the structural remedy. If the Commission has a legitimate interest in doing so, it may also find that an infringement has been committed in the past.

2. Those entitled to lodge a complaint for the purposes of paragraph 1 are natural or legal persons who can show a legitimate interest and Member States.

## Article 8

### Interim measures

1. In cases of urgency due to the risk of serious and irreparable damage to competition, the Commission, acting on its own initiative may by decision, on the basis of a *prima facie* finding of infringement, order interim measures.

2. A decision under paragraph 1 shall apply for a specified period of time and may be renewed in so far this is necessary and appropriate.

## Article 9

### Commitments

1. Where the Commission intends to adopt a decision requiring that an infringement be brought to an end and the undertakings concerned offer commitments to meet the concerns expressed to them by the Commission in its preliminary assessment, the Commission may by decision make those commitments binding on the undertakings. Such a decision may be adopted for a specified period and shall conclude that there are no longer grounds for action by the Commission.

2. The Commission may, upon request or on its own initiative, reopen the proceedings:

(a) where there has been a material change in any of the facts on which the decision was based;

(b) where the undertakings concerned act contrary to their commitments; or

(c) where the decision was based on incomplete, incorrect or misleading information provided by the parties.

## Article 10

### Finding of inapplicability

Where the Community public interest relating to the application of Articles 81 and 82 of the Treaty so requires, the Commission, acting on its own initiative, may by decision find that Article 81 of the Treaty is not applicable to an agreement, a decision by an association of undertakings or a concerted practice, either because the conditions of Article 81(1) of the Treaty are not fulfilled, or because the conditions of Article 81(3) of the Treaty are satisfied.

The Commission may likewise make such a finding with reference to Article 82 of the Treaty.

## CHAPTER IV

## COOPERATION

## Article 11

### Cooperation between the Commission and the competition authorities of the Member States

1. The Commission and the competition authorities of the Member States shall apply the Community competition rules in close cooperation.

2. The Commission shall transmit to the competition authorities of the Member States copies of the most important documents it has collected with a view to applying Articles 7, 8, 9, 10 and Article 29(1). At the request of the competition authority of a Member State, the Commission shall provide it with a copy of other existing documents necessary for the assessment of the case.

3. The competition authorities of the Member States shall, when acting under Article 81 or Article 82 of the Treaty, inform the Commission in writing before or without delay after commencing the first formal investigative measure. This information may also be made available to the competition authorities of the other Member States.

4. No later than 30 days before the adoption of a decision requiring that an infringement be brought to an end, accepting commitments or withdrawing the benefit of a block exemption Regulation, the competition authorities of the Member States shall inform the Commission. To that effect, they shall provide the Commission with a summary of the case, the envisaged decision or, in the absence thereof, any other document indicating the proposed course of action. This information may also be made available to the competition authorities of the other Member States. At the request of the Commission, the acting competition authority shall make available to the Commission other documents it holds which are necessary for the assessment of the case. The information supplied to the Commission may be made available to the competition authorities of the other Member States. National competition authorities may also exchange between themselves information necessary for the assessment of a case that they are dealing with under Article 81 or Article 82 of the Treaty.

5. The competition authorities of the Member States may consult the Commission on any case involving the application of Community law.

6. The initiation by the Commission of proceedings for the adoption of a decision under Chapter III shall relieve the competition authorities of the Member States of their competence to apply Articles 81 and 82 of the Treaty. If a competition authority of a Member State is already acting on a case, the Commission shall only initiate proceedings after consulting with that national competition authority.

## Article 12

### Exchange of information

1. For the purpose of applying Articles 81 and 82 of the Treaty the Commission and the competition authorities of the Member States shall have the power to provide one another with and use in evidence any matter of fact or of law, including confidential information.

2. Information exchanged shall only be used in evidence for the purpose of applying Article 81 or Article 82 of the Treaty and in respect of the subject-matter for which it was collected by the transmitting authority. However, where national competition law is applied in the same case and in parallel to Community competition law and does not lead to a different outcome, information exchanged under this Article may also be used for the application of national competition law.

3. Information exchanged pursuant to paragraph 1 can only be used in evidence to impose sanctions on natural persons where:

— the law of the transmitting authority foresees sanctions of a similar kind in relation to an infringement of Article 81 or Article 82 of the Treaty or, in the absence thereof,

— the information has been collected in a way which respects the same level of protection of the rights of defence of natural persons as provided for under the national rules of the receiving authority. However, in this case, the information exchanged cannot be used by the receiving authority to impose custodial sanctions.

## Article 13

### Suspension or termination of proceedings

1. Where competition authorities of two or more Member States have received a complaint or are acting on their own initiative under Article 81 or Article 82 of the Treaty against the same agreement, decision of an association or practice, the fact that one authority is dealing with the case shall be sufficient grounds for the others to suspend the proceedings before them or to reject the complaint. The Commission may likewise reject a complaint on the ground that a competition authority of a Member State is dealing with the case.

2. Where a competition authority of a Member State or the Commission has received a complaint against an agreement, decision of an association or practice which has already been dealt with by another competition authority, it may reject it.

## Article 14

### Advisory Committee

1. The Commission shall consult an Advisory Committee on Restrictive Practices and Dominant Positions prior to the taking of any decision under Articles 7, 8, 9, 10, 23, Article 24(2) and Article 29(1).

2. For the discussion of individual cases, the Advisory Committee shall be composed of representatives of the competition authorities of the Member States. For meetings in which issues other than individual cases are being discussed, an additional Member State representative competent in competition matters may be appointed. Representatives may, if unable to attend, be replaced by other representatives.

3.    The consultation may take place at a meeting convened and chaired by the Commission, held not earlier than 14 days after dispatch of the notice convening it, together with a summary of the case, an indication of the most important documents and a preliminary draft decision. In respect of decisions pursuant to Article 8, the meeting may be held seven days after the dispatch of the operative part of a draft decision. Where the Commission dispatches a notice convening the meeting which gives a shorter period of notice than those specified above, the meeting may take place on the proposed date in the absence of an objection by any Member State. The Advisory Committee shall deliver a written opinion on the Commission's preliminary draft decision. It may deliver an opinion even if some members are absent and are not represented. At the request of one or several members, the positions stated in the opinion shall be reasoned.

4.    Consultation may also take place by written procedure. However, if any Member State so requests, the Commission shall convene a meeting. In case of written procedure, the Commission shall determine a time-limit of not less than 14 days within which the Member States are to put forward their observations for circulation to all other Member States. In case of decisions to be taken pursuant to Article 8, the time-limit of 14 days is replaced by seven days. Where the Commission determines a time-limit for the written procedure which is shorter than those specified above, the proposed time-limit shall be applicable in the absence of an objection by any Member State.

5.    The Commission shall take the utmost account of the opinion delivered by the Advisory Committee. It shall inform the Committee of the manner in which its opinion has been taken into account.

6.    Where the Advisory Committee delivers a written opinion, this opinion shall be appended to the draft decision. If the Advisory Committee recommends publication of the opinion, the Commission shall carry out such publication taking into account the legitimate interest of undertakings in the protection of their business secrets.

7.    At the request of a competition authority of a Member State, the Commission shall include on the agenda of the Advisory Committee cases that are being dealt with by a competition authority of a Member State under Article 81 or Article 82 of the Treaty. The Commission may also do so on its own initiative. In either case, the Commission shall inform the competition authority concerned.

A request may in particular be made by a competition authority of a Member State in respect of a case where the Commission intends to initiate proceedings with the effect of Article 11(6).

The Advisory Committee shall not issue opinions on cases dealt with by competition authorities of the Member States. The Advisory Committee may also discuss general issues of Community competition law.

### Article 15

#### Cooperation with national courts

1.    In proceedings for the application of Article 81 or Article 82 of the Treaty, courts of the Member States may ask the Commission to transmit to them information in its possession or its opinion on questions concerning the application of the Community competition rules.

2.    Member States shall forward to the Commission a copy of any written judgment of national courts deciding on the application of Article 81 or Article 82 of the Treaty. Such copy shall be forwarded without delay after the full written judgment is notified to the parties.

3.    Competition authorities of the Member States, acting on their own initiative, may submit written observations to the national courts of their Member State on issues relating to the application of Article 81 or Article 82 of the Treaty. With the permission of the court in question, they may also submit oral observations to the national courts of their Member State. Where the coherent application of Article 81 or Article 82 of the Treaty so requires, the Commission, acting on its own initiative, may submit written observations to courts of the Member States. With the permission of the court in question, it may also make oral observations.

For the purpose of the preparation of their observations only, the competition authorities of the Member States and the Commission may request the relevant court of the Member State to transmit or ensure the transmission to them of any documents necessary for the assessment of the case.

4.   This Article is without prejudice to wider powers to make observations before courts conferred on competition authorities of the Member States under the law of their Member State.

## Article 16

### Uniform application of Community competition law

1.   When national courts rule on agreements, decisions or practices under Article 81 or Article 82 of the Treaty which are already the subject of a Commission decision, they cannot take decisions running counter to the decision adopted by the Commission. They must also avoid giving decisions which would conflict with a decision contemplated by the Commission in proceedings it has initiated. To that effect, the national court may assess whether it is necessary to stay its proceedings. This obligation is without prejudice to the rights and obligations under Article 234 of the Treaty.

2.   When competition authorities of the Member States rule on agreements, decisions or practices under Article 81 or Article 82 of the Treaty which are already the subject of a Commission decision, they cannot take decisions which would run counter to the decision adopted by the Commission.

## CHAPTER V

### POWERS OF INVESTIGATION

## Article 17

### Investigations into sectors of the economy and into types of agreements

1.   Where the trend of trade between Member States, the rigidity of prices or other circumstances suggest that competition may be restricted or distorted within the common market, the Commission may conduct its inquiry into a particular sector of the economy or into a particular type of agreements across various sectors. In the course of that inquiry, the Commission may request the undertakings or associations of undertakings concerned to supply the information necessary for giving effect to Articles 81 and 82 of the Treaty and may carry out any inspections necessary for that purpose.

The Commission may in particular request the undertakings or associations of undertakings concerned to communicate to it all agreements, decisions and concerted practices.

The Commission may publish a report on the results of its inquiry into particular sectors of the economy or particular types of agreements across various sectors and invite comments from interested parties.

2.   Articles 14, 18, 19, 20, 22, 23 and 24 shall apply mutatis mutandis.

## Article 18

### Requests for information

1.   In order to carry out the duties assigned to it by this Regulation, the Commission may, by simple request or by decision, require undertakings and associations of undertakings to provide all necessary information.

2.   When sending a simple request for information to an undertaking or association of undertakings, the Commission shall state the legal basis and the purpose of the request, specify what information is required and fix the time-limit within which the information is to be provided, and the penalties provided for in Article 23 for supplying incorrect or misleading information.

3.    Where the Commission requires undertakings and associations of undertakings to supply information by decision, it shall state the legal basis and the purpose of the request, specify what information is required and fix the time-limit within which it is to be provided. It shall also indicate the penalties provided for in Article 23 and indicate or impose the penalties provided for in Article 24. It shall further indicate the right to have the decision reviewed by the Court of Justice.

4.    The owners of the undertakings or their representatives and, in the case of legal persons, companies or firms, or associations having no legal personality, the persons authorised to represent them by law or by their constitution shall supply the information requested on behalf of the undertaking or the association of undertakings concerned. Lawyers duly authorised to act may supply the information on behalf of their clients. The latter shall remain fully responsible if the information supplied is incomplete, incorrect or misleading.

5.    The Commission shall without delay forward a copy of the simple request or of the decision to the competition authority of the Member State in whose territory the seat of the undertaking or association of undertakings is situated and the competition authority of the Member State whose territory is affected.

6.    At the request of the Commission the governments and competition authorities of the Member States shall provide the Commission with all necessary information to carry out the duties assigned to it by this Regulation.

### Article 19

### Power to take statements

1.    In order to carry out the duties assigned to it by this Regulation, the Commission may interview any natural or legal person who consents to be interviewed for the purpose of collecting information relating to the subject-matter of an investigation.

2.    Where an interview pursuant to paragraph 1 is conducted in the premises of an undertaking, the Commission shall inform the competition authority of the Member State in whose territory the interview takes place. If so requested by the competition authority of that Member State, its officials may assist the officials and other accompanying persons authorised by the Commission to conduct the interview.

### Article 20

### The Commission's powers of inspection

1.    In order to carry out the duties assigned to it by this Regulation, the Commission may conduct all necessary inspections of undertakings and associations of undertakings.

2.    The officials and other accompanying persons authorised by the Commission to conduct an inspection are empowered:

(a) to enter any premises, land and means of transport of undertakings and associations of undertakings;

(b) to examine the books and other records related to the business, irrespective of the medium on which they are stored;

(c) to take or obtain in any form copies of or extracts from such books or records;

(d) to seal any business premises and books or records for the period and to the extent necessary for the inspection;

(e) to ask any representative or member of staff of the undertaking or association of undertakings for explanations on facts or documents relating to the subject-matter and purpose of the inspection and to record the answers.

3.    The officials and other accompanying persons authorised by the Commission to conduct an inspection shall exercise their powers upon production of a written authorisation specifying the subject matter and purpose of the inspection and the penalties provided for in Article 23 in case the production of the required books or other records related to the business is incomplete or where the answers to questions asked under paragraph 2 of the present Article are incorrect or misleading. In good time before the inspection, the Commission shall give notice of the inspection to the competition authority of the Member State in whose territory it is to be conducted.

4.    Undertakings and associations of undertakings are required to submit to inspections ordered by decision of the Commission. The decision shall specify the subject matter and purpose of the inspection, appoint the date on which it is to begin and indicate the penalties provided for in Articles 23 and 24 and the right to have the decision reviewed by the Court of Justice. The Commission shall take such decisions after consulting the competition authority of the Member State in whose territory the inspection is to be conducted.

5.    Officials of as well as those authorised or appointed by the competition authority of the Member State in whose territory the inspection is to be conducted shall, at the request of that authority or of the Commission, actively assist the officials and other accompanying persons authorised by the Commission. To this end, they shall enjoy the powers specified in paragraph 2.

6.    Where the officials and other accompanying persons authorised by the Commission find that an undertaking opposes an inspection ordered pursuant to this Article, the Member State concerned shall afford them the necessary assistance, requesting where appropriate the assistance of the police or of an equivalent enforcement authority, so as to enable them to conduct their inspection.

7.    If the assistance provided for in paragraph 6 requires authorisation from a judicial authority according to national rules, such authorisation shall be applied for. Such authorisation may also be applied for as a precautionary measure.

8.    Where authorisation as referred to in paragraph 7 is applied for, the national judicial authority shall control that the Commission decision is authentic and that the coercive measures envisaged are neither arbitrary nor excessive having regard to the subject matter of the inspection. In its control of the proportionality of the coercive measures, the national judicial authority may ask the Commission, directly or through the Member State competition authority, for detailed explanations in particular on the grounds the Commission has for suspecting infringement of Articles 81 and 82 of the Treaty, as well as on the seriousness of the suspected infringement and on the nature of the involvement of the undertaking concerned. However, the national judicial authority may not call into question the necessity for the inspection nor demand that it be provided with the information in the Commission's file. The lawfulness of the Commission decision shall be subject to review only by the Court of Justice.

*Article 21*

Inspection of other premises

1.    If a reasonable suspicion exists that books or other records related to the business and to the subject-matter of the inspection, which may be relevant to prove a serious violation of Article 81 or Article 82 of the Treaty, are being kept in any other premises, land and means of transport, including the homes of directors, managers and other members of staff of the undertakings and associations of undertakings concerned, the Commission can by decision order an inspection to be conducted in such other premises, land and means of transport.

2.    The decision shall specify the subject matter and purpose of the inspection, appoint the date on which it is to begin and indicate the right to have the decision reviewed by the Court of Justice. It shall in particular state the reasons that have led the Commission to conclude that a suspicion in the sense of paragraph 1 exists. The Commission shall take such decisions after consulting the competition authority of the Member State in whose territory the inspection is to be conducted.

3.    A decision adopted pursuant to paragraph 1 cannot be executed without prior authorisation from the national judicial authority of the Member State concerned. The national judicial authority shall control that the Commission decision is authentic and that the coercive measures envisaged are neither arbitrary nor excessive having regard in particular to the seriousness of the suspected infringement, to the importance of the evidence sought, to the involvement of the undertaking concerned and to the reasonable likelihood that business books and records relating to the subject matter of the inspection are kept in the premises for which the authorisation is requested. The national judicial authority may ask the Commission, directly or through the Member State competition authority, for detailed explanations on those elements which are necessary to allow its control of the proportionality of the coercive measures envisaged.

However, the national judicial authority may not call into question the necessity for the inspection nor demand that it be provided with information in the Commission's file. The lawfulness of the Commission decision shall be subject to review only by the Court of Justice.

4.    The officials and other accompanying persons authorised by the Commission to conduct an inspection ordered in accordance with paragraph 1 of this Article shall have the powers set out in Article 20(2)(a), (b) and (c). Article 20(5) and (6) shall apply *mutatis mutandis*.

### Article 22

### Investigations by competition authorities of Member States

1.    The competition authority of a Member State may in its own territory carry out any inspection or other fact-finding measure under its national law on behalf and for the account of the competition authority of another Member State in order to establish whether there has been an infringement of Article 81 or Article 82 of the Treaty. Any exchange and use of the information collected shall be carried out in accordance with Article 12.

2.    At the request of the Commission, the competition authorities of the Member States shall undertake the inspections which the Commission considers to be necessary under Article 20(1) or which it has ordered by decision pursuant to Article 20(4). The officials of the competition authorities of the Member States who are responsible for conducting these inspections as well as those authorised or appointed by them shall exercise their powers in accordance with their national law.

If so requested by the Commission or by the competition authority of the Member State in whose territory the inspection is to be conducted, officials and other accompanying persons authorised by the Commission may assist the officials of the authority concerned.

### CHAPTER VI

### PENALTIES

### Article 23

### Fines

1.    The Commission may by decision impose on undertakings and associations of undertakings fines not exceeding 1 % of the total turnover in the preceding business year where, intentionally or negligently:

(a) they supply incorrect or misleading information in response to a request made pursuant to Article 17 or Article 18(2);

(b) in response to a request made by decision adopted pursuant to Article 17 or Article 18(3), they supply incorrect, incomplete or misleading information or do not supply information within the required time-limit;

(c) they produce the required books or other records related to the business in incomplete form during inspections under Article 20 or refuse to submit to inspections ordered by a decision adopted pursuant to Article 20(4);

(d) in response to a question asked in accordance with Article 20(2)(e),

— they give an incorrect or misleading answer,

— they fail to rectify within a time-limit set by the Commission an incorrect, incomplete or misleading answer given by a member of staff, or

— they fail or refuse to provide a complete answer on facts relating to the subject-matter and purpose of an inspection ordered by a decision adopted pursuant to Article 20(4);

(e) seals affixed in accordance with Article 20(2)(d) by officials or other accompanying persons authorised by the Commission have been broken.

2.    The Commission may by decision impose fines on undertakings and associations of undertakings where, either intentionally or negligently:

(a) they infringe Article 81 or Article 82 of the Treaty; or

(b) they contravene a decision ordering interim measures under Article 8; or

(c) they fail to comply with a commitment made binding by a decision pursuant to Article 9.

For each undertaking and association of undertakings participating in the infringement, the fine shall not exceed 10 % of its total turnover in the preceding business year.

Where the infringement of an association relates to the activities of its members, the fine shall not exceed 10 % of the sum of the total turnover of each member active on the market affected by the infringement of the association.

3.    In fixing the amount of the fine, regard shall be had both to the gravity and to the duration of the infringement.

4.    When a fine is imposed on an association of undertakings taking account of the turnover of its members and the association is not solvent, the association is obliged to call for contributions from its members to cover the amount of the fine.

Where such contributions have not been made to the association within a time-limit fixed by the Commission, the Commission may require payment of the fine directly by any of the undertakings whose representatives were members of the decision-making bodies concerned of the association.

After the Commission has required payment under the second subparagraph, where necessary to ensure full payment of the fine, the Commission may require payment of the balance by any of the members of the association which were active on the market on which the infringement occurred.

However, the Commission shall not require payment under the second or the third subparagraph from undertakings which show that they have not implemented the infringing decision of the association and either were not aware of its existence or have actively distanced themselves from it before the Commission started investigating the case.

The financial liability of each undertaking in respect of the payment of the fine shall not exceed 10 % of its total turnover in the preceding business year.

5.    Decisions taken pursuant to paragraphs 1 and 2 shall not be of a criminal law nature.

### Article 24

### Periodic penalty payments

1.    The Commission may, by decision, impose on undertakings or associations of undertakings periodic penalty payments not exceeding 5 % of the average daily turnover in the preceding business year per day and calculated from the date appointed by the decision, in order to compel them:

(a) to put an end to an infringement of Article 81 or Article 82 of the Treaty, in accordance with a decision taken pursuant to Article 7;

(b) to comply with a decision ordering interim measures taken pursuant to Article 8;

(c) to comply with a commitment made binding by a decision pursuant to Article 9;

(d) to supply complete and correct information which it has requested by decision taken pursuant to Article 17 or Article 18(3);

(e) to submit to an inspection which it has ordered by decision taken pursuant to Article 20(4).

2.    Where the undertakings or associations of undertakings have satisfied the obligation which the periodic penalty payment was intended to enforce, the Commission may fix the definitive amount of the periodic penalty payment at a figure lower than that which would arise under the original decision. Article 23(4) shall apply correspondingly.

CHAPTER VII

LIMITATION PERIODS

*Article 25*

**Limitation periods for the imposition of penalties**

1.    The powers conferred on the Commission by Articles 23 and 24 shall be subject to the following limitation periods:

(a) three years in the case of infringements of provisions concerning requests for information or the conduct of inspections;

(b) five years in the case of all other infringements.

2.    Time shall begin to run on the day on which the infringement is committed. However, in the case of continuing or repeated infringements, time shall begin to run on the day on which the infringement ceases.

3.    Any action taken by the Commission or by the competition authority of a Member State for the purpose of the investigation or proceedings in respect of an infringement shall interrupt the limitation period for the imposition of fines or periodic penalty payments. The limitation period shall be interrupted with effect from the date on which the action is notified to at least one undertaking or association of undertakings which has participated in the infringement. Actions which interrupt the running of the period shall include in particular the following:

(a) written requests for information by the Commission or by the competition authority of a Member State;

(b) written authorisations to conduct inspections issued to its officials by the Commission or by the competition authority of a Member State;

(c) the initiation of proceedings by the Commission or by the competition authority of a Member State;

(d) notification of the statement of objections of the Commission or of the competition authority of a Member State.

4.    The interruption of the limitation period shall apply for all the undertakings or associations of undertakings which have participated in the infringement.

5.    Each interruption shall start time running afresh. However, the limitation period shall expire at the latest on the day on which a period equal to twice the limitation period has elapsed without the Commission having imposed a fine or a periodic penalty payment. That period shall be extended by the time during which limitation is suspended pursuant to paragraph 6.

6.    The limitation period for the imposition of fines or periodic penalty payments shall be suspended for as long as the decision of the Commission is the subject of proceedings pending before the Court of Justice.

### Article 26

#### Limitation period for the enforcement of penalties

1.    The power of the Commission to enforce decisions taken pursuant to Articles 23 and 24 shall be subject to a limitation period of five years.

2.    Time shall begin to run on the day on which the decision becomes final.

3.    The limitation period for the enforcement of penalties shall be interrupted:

(a) by notification of a decision varying the original amount of the fine or periodic penalty payment or refusing an application for variation;

(b) by any action of the Commission or of a Member State, acting at the request of the Commission, designed to enforce payment of the fine or periodic penalty payment.

4.    Each interruption shall start time running afresh.

5.    The limitation period for the enforcement of penalties shall be suspended for so long as:

(a) time to pay is allowed;

(b) enforcement of payment is suspended pursuant to a decision of the Court of Justice.


CHAPTER VIII

HEARINGS AND PROFESSIONAL SECRECY


### Article 27

#### Hearing of the parties, complainants and others

1.    Before taking decisions as provided for in Articles 7, 8, 23 and Article 24(2), the Commission shall give the undertakings or associations of undertakings which are the subject of the proceedings conducted by the Commission the opportunity of being heard on the matters to which the Commission has taken objection. The Commission shall base its decisions only on objections on which the parties concerned have been able to comment. Complainants shall be associated closely with the proceedings.

2.    The rights of defence of the parties concerned shall be fully respected in the proceedings. They shall be entitled to have access to the Commission's file, subject to the legitimate interest of undertakings in the protection of their business secrets. The right of access to the file shall not extend to confidential information and internal documents of the Commission or the competition authorities of the Member States. In particular, the right of access shall not extend to correspondence between the Commission and the competition authorities of the Member States, or between the latter, including documents drawn up pursuant to Articles 11 and 14. Nothing in this paragraph shall prevent the Commission from disclosing and using information necessary to prove an infringement.

3.    If the Commission considers it necessary, it may also hear other natural or legal persons. Applications to be heard on the part of such persons shall, where they show a sufficient interest, be granted. The competition authorities of the Member States may also ask the Commission to hear other natural or legal persons.

4.    Where the Commission intends to adopt a decision pursuant to Article 9 or Article 10, it shall publish a concise summary of the case and the main content of the commitments or of the proposed course of action. Interested third parties may submit their observations within a time limit which is fixed by the Commission in its publication and which may not be less than one month. Publication shall have regard to the legitimate interest of undertakings in the protection of their business secrets.

### Article 28

### Professional secrecy

1.    Without prejudice to Articles 12 and 15, information collected pursuant to Articles 17 to 22 shall be used only for the purpose for which it was acquired.

2.    Without prejudice to the exchange and to the use of information foreseen in Articles 11, 12, 14, 15 and 27, the Commission and the competition authorities of the Member States, their officials, servants and other persons working under the supervision of these authorities as well as officials and civil servants of other authorities of the Member States shall not disclose information acquired or exchanged by them pursuant to this Regulation and of the kind covered by the obligation of professional secrecy. This obligation also applies to all representatives and experts of Member States attending meetings of the Advisory Committee pursuant to Article 14.

### CHAPTER IX

### EXEMPTION REGULATIONS

### Article 29

### Withdrawal in individual cases

1.    Where the Commission, empowered by a Council Regulation, such as Regulations 19/65/EEC, (EEC) No 2821/71, (EEC) No 3976/87, (EEC) No 1534/91 or (EEC) No 479/92, to apply Article 81(3) of the Treaty by regulation, has declared Article 81(1) of the Treaty inapplicable to certain categories of agreements, decisions by associations of undertakings or concerted practices, it may, acting on its own initiative or on a complaint, withdraw the benefit of such an exemption Regulation when it finds that in any particular case an agreement, decision or concerted practice to which the exemption Regulation applies has certain effects which are incompatible with Article 81(3) of the Treaty.

2.    Where, in any particular case, agreements, decisions by associations of undertakings or concerted practices to which a Commission Regulation referred to in paragraph 1 applies have effects which are incompatible with Article 81(3) of the Treaty in the territory of a Member State, or in a part thereof, which has all the characteristics of a distinct geographic market, the competition authority of that Member State may withdraw the benefit of the Regulation in question in respect of that territory.

### CHAPTER X

### GENERAL PROVISIONS

### Article 30

### Publication of decisions

1.    The Commission shall publish the decisions, which it takes pursuant to Articles 7 to 10, 23 and 24.

2.    The publication shall state the names of the parties and the main content of the decision, including any penalties imposed. It shall have regard to the legitimate interest of undertakings in the protection of their business secrets.

### Article 31

### Review by the Court of Justice

The Court of Justice shall have unlimited jurisdiction to review decisions whereby the Commission has fixed a fine or periodic penalty payment. It may cancel, reduce or increase the fine or periodic penalty payment imposed.

## Article 32

### Exclusions

This Regulation shall not apply to:

(a) international tramp vessel services as defined in Article 1(3)(a) of Regulation (EEC) No 4056/86;

(b) a maritime transport service that takes place exclusively between ports in one and the same Member State as foreseen in Article 1(2) of Regulation (EEC) No 4056/86;

(c) air transport between Community airports and third countries.

## Article 33

### Implementing provisions

1.    The Commission shall be authorised to take such measures as may be appropriate in order to apply this Regulation. The measures may concern, inter alia:

(a) the form, content and other details of complaints lodged pursuant to Article 7 and the procedure for rejecting complaints;

(b) the practical arrangements for the exchange of information and consultations provided for in Article 11;

(c) the practical arrangements for the hearings provided for in Article 27.

2.    Before the adoption of any measures pursuant to paragraph 1, the Commission shall publish a draft thereof and invite all interested parties to submit their comments within the time-limit it lays down, which may not be less than one month. Before publishing a draft measure and before adopting it, the Commission shall consult the Advisory Committee on Restrictive Practices and Dominant Positions.

## CHAPTER XI

### TRANSITIONAL, AMENDING AND FINAL PROVISIONS

## Article 34

### Transitional provisions

1.    Applications made to the Commission under Article 2 of Regulation No 17, notifications made under Articles 4 and 5 of that Regulation and the corresponding applications and notifications made under Regulations (EEC) No 1017/68, (EEC) No 4056/86 and (EEC) No 3975/87 shall lapse as from the date of application of this Regulation.

2.    Procedural steps taken under Regulation No 17 and Regulations (EEC) No 1017/68, (EEC) No 4056/86 and (EEC) No 3975/87 shall continue to have effect for the purposes of applying this Regulation.

## Article 35

### Designation of competition authorities of Member States

1.    The Member States shall designate the competition authority or authorities responsible for the application of Articles 81 and 82 of the Treaty in such a way that the provisions of this regulation are effectively complied with. The measures necessary to empower those authorities to apply those Articles shall be taken before 1 May 2004. The authorities designated may include courts.

2.    When enforcement of Community competition law is entrusted to national administrative and judicial authorities, the Member States may allocate different powers and functions to those different national authorities, whether administrative or judicial.

3.    The effects of Article 11(6) apply to the authorities designated by the Member States including courts that exercise functions regarding the preparation and the adoption of the types of decisions foreseen in Article 5. The effects of Article 11(6) do not extend to courts insofar as they act as review courts in respect of the types of decisions foreseen in Article 5.

4.    Notwithstanding paragraph 3, in the Member States where, for the adoption of certain types of decisions foreseen in Article 5, an authority brings an action before a judicial authority that is separate and different from the prosecuting authority and provided that the terms of this paragraph are complied with, the effects of Article 11(6) shall be limited to the authority prosecuting the case which shall withdraw its claim before the judicial authority when the Commission opens proceedings and this withdrawal shall bring the national proceedings effectively to an end.

### Article 36

### Amendment of Regulation (EEC) No 1017/68

Regulation (EEC) No 1017/68 is amended as follows:

1. Article 2 is repealed;

2. in Article 3(1), the words 'The prohibition laid down in Article 2' are replaced by the words 'The prohibition in Article 81(1) of the Treaty';

3. Article 4 is amended as follows:

   (a) in paragraph 1, the words 'The agreements, decisions and concerted practices referred to in Article 2' are replaced by the words 'Agreements, decisions and concerted practices pursuant to Article 81(1) of the Treaty';

   (b) Paragraph 2 is replaced by the following:

   '2.    If the implementation of any agreement, decision or concerted practice covered by paragraph 1 has, in a given case, effects which are incompatible with the requirements of Article 81(3) of the Treaty, undertakings or associations of undertakings may be required to make such effects cease.'

4. Articles 5 to 29 are repealed with the exception of Article 13(3) which continues to apply to decisions adopted pursuant to Article 5 of Regulation (EEC) No 1017/68 prior to the date of application of this Regulation until the date of expiration of those decisions;

5. in Article 30, paragraphs 2, 3 and 4 are deleted.

### Article 37

### Amendment of Regulation (EEC) No 2988/74

In Regulation (EEC) No 2988/74, the following Article is inserted:

'Article 7a

**Exclusion**

This Regulation shall not apply to measures taken under Council Regulation (EC) No 1/2003 of 16 December 2002 on the implementation of the rules on competition laid down in Articles 81 and 82 of the Treaty (*).

(*) OJ L 1, 4.1.2003, p. 1.'

*Article 38*

**Amendment of Regulation (EEC) No 4056/86**

Regulation (EEC) No 4056/86 is amended as follows:

1. Article 7 is amended as follows:

   (a) Paragraph 1 is replaced by the following:

   '1. *Breach of an obligation*

   Where the persons concerned are in breach of an obligation which, pursuant to Article 5, attaches to the exemption provided for in Article 3, the Commission may, in order to put an end to such breach and under the conditions laid down in Council Regulation (EC) No 1/2003 of 16 December 2002 on the implementation of the rules on competition laid down in Articles 81 and 82 of the Treaty (*) adopt a decision that either prohibits them from carrying out or requires them to perform certain specific acts, or withdraws the benefit of the block exemption which they enjoyed.

   (*) OJ L 1, 4.1.2003, p. 1.'

   (b) Paragraph 2 is amended as follows:

      (i) In point (a), the words 'under the conditions laid down in Section II' are replaced by the words 'under the conditions laid down in Regulation (EC) No 1/2003';

      (ii) The second sentence of the second subparagraph of point (c)(i) is replaced by the following:

      'At the same time it shall decide, in accordance with Article 9 of Regulation (EC) No 1/2003, whether to accept commitments offered by the undertakings concerned with a view, inter alia, to obtaining access to the market for non-conference lines.'

2. Article 8 is amended as follows:

   (a) Paragraph 1 is deleted.

   (b) In paragraph 2 the words 'pursuant to Article 10' are replaced by the words 'pursuant to Regulation (EC) No 1/2003'.

   (c) Paragraph 3 is deleted;

3. Article 9 is amended as follows:

   (a) In paragraph 1, the words 'Advisory Committee referred to in Article 15' are replaced by the words 'Advisory Committee referred to in Article 14 of Regulation (EC) No 1/2003';

   (b) In paragraph 2, the words 'Advisory Committee as referred to in Article 15' are replaced by the words 'Advisory Committee referred to in Article 14 of Regulation (EC) No 1/2003';

4. Articles 10 to 25 are repealed with the exception of Article 13(3) which continues to apply to decisions adopted pursuant to Article 81(3) of the Treaty prior to the date of application of this Regulation until the date of expiration of those decisions;

5. In Article 26, the words 'the form, content and other details of complaints pursuant to Article 10, applications pursuant to Article 12 and the hearings provided for in Article 23(1) and (2)' are deleted.

*Article 39*

**Amendment of Regulation (EEC) No 3975/87**

Articles 3 to 19 of Regulation (EEC) No 3975/87 are repealed with the exception of Article 6(3) which continues to apply to decisions adopted pursuant to Article 81(3) of the Treaty prior to the date of application of this Regulation until the date of expiration of those decisions.

*Article 40*

**Amendment of Regulations No 19/65/EEC, (EEC) No 2821/71 and (EEC) No 1534/91**

Article 7 of Regulation No 19/65/EEC, Article 7 of Regulation (EEC) No 2821/71 and Article 7 of Regulation (EEC) No 1534/91 are repealed.

*Article 41*

**Amendment of Regulation (EEC) No 3976/87**

Regulation (EEC) No 3976/87 is amended as follows:

1. Article 6 is replaced by the following:

'*Article 6*

The Commission shall consult the Advisory Committee referred to in Article 14 of Council Regulation (EC) No 1/2003 of 16 December 2002 on the implementation of the rules on competition laid down in Articles 81 and 82 of the Treaty (*) before publishing a draft Regulation and before adopting a Regulation.

(*) OJ L 1, 4.1.2003, p. 1.'

2. Article 7 is repealed.

*Article 42*

**Amendment of Regulation (EEC) No 479/92**

Regulation (EEC) No 479/92 is amended as follows:

1. Article 5 is replaced by the following:

'*Article 5*

Before publishing the draft Regulation and before adopting the Regulation, the Commission shall consult the Advisory Committee referred to in Article 14 of Council Regulation (EC) No 1/2003 of 16 December 2002 on the implementation of the rules on competition laid down in Articles 81 and 82 of the Treaty (*).

(*) OJ L 1, 4.1.2003, p. 1.'

2. Article 6 is repealed.

*Article 43*

**Repeal of Regulations No 17 and No 141**

1. Regulation No 17 is repealed with the exception of Article 8(3) which continues to apply to decisions adopted pursuant to Article 81(3) of the Treaty prior to the date of application of this Regulation until the date of expiration of those decisions.

2. Regulation No 141 is repealed.

3. References to the repealed Regulations shall be construed as references to this Regulation.

*Article 44*

**Report on the application of the present Regulation**

Five years from the date of application of this Regulation, the Commission shall report to the European Parliament and the Council on the functioning of this Regulation, in particular on the application of Article 11(6) and Article 17.

On the basis of this report, the Commission shall assess whether it is appropriate to propose to the Council a revision of this Regulation.

4.1.2003    [EN]    Official Journal of the European Communities    L 1/25

*Article 45*

**Entry into force**

This Regulation shall enter into force on the 20th day following that of its publication in the *Official Journal of the European Communities*.

It shall apply from 1 May 2004.

This Regulation shall be binding in its entirety and directly applicable in all Member States.

Done at Brussels, 16 December 2002.

*For the Council*
*The President*
M. FISCHER BOEL

# EXHIBIT 2

27.4.2004     EN     Official Journal of the European Union     C 101/65

**Commission Notice on the handling of complaints by the Commission under Articles 81 and 82 of the EC Treaty**

(2004/C 101/05)

(Text with EEA relevance)

### I. INTRODUCTION AND SUBJECT-MATTER OF THE NOTICE

1. Regulation 1/2003 [1] establishes a system of parallel competence for the application of Articles 81 and 82 of the EC Treaty by the Commission and the Member States' competition authorities and courts. The Regulation recognises in particular the complementary functions of the Commission and Member States' competition authorities acting as public enforcers and the Member States' courts that rule on private lawsuits in order to safeguard the rights of individuals deriving from Articles 81 and 82 [2].

2. Under Regulation 1/2003, the public enforcers may focus their action on the investigation of serious infringements of Articles 81 and 82 which are often difficult to detect. For their enforcement activity, they benefit from information supplied by undertakings and by consumers in the market.

3. The Commission therefore wishes to encourage citizens and undertakings to address themselves to the public enforcers to inform them about suspected infringements of the competition rules. At the level of the Commission, there are two ways to do this, one is by lodging a complaint pursuant to Article 7(2) of Regulation 1/2003. Under Articles 5 to 9 of Regulation 773/2004 [3], such complaints must fulfil certain requirements.

4. The other way is the provision of market information that does not have to comply with the requirements for complaints pursuant to Article 7(2) of Regulation 1/2003. For this purpose, the Commission has created a special website to collect information from citizens and undertakings and their associations who wish to inform the Commission about suspected infringements of Articles 81 and 82. Such information can be the starting point for an investigation by the Commission [4]. Information about suspected infringements can be supplied to the following address:

http://europa.eu.int/dgcomp/info-on-anti-competitive-practices

or to:

Commission européenne/Europese Commissie
Competition DG
B-1049 Bruxelles/Brussel

5. Without prejudice to the interpretation of Regulation 1/2003 and of Commission Regulation 773/2004 by the Community Courts, the present Notice intends to provide guidance to citizens and undertakings that are seeking relief from suspected infringements of the competition rules. The Notice contains two main parts:

— Part II gives indications about the choice between complaining to the Commission or bringing a lawsuit before a national court. Moreover, it recalls the principles related to the work-sharing between the Commission and the national competition authorities in the enforcement system established by Regulation 1/2003 that are explained in the Notice on cooperation within the network of competition authorities [5].

— Part III explains the procedure for the treatment of complaints pursuant to Article 7(2) of Regulation 1/2003 by the Commission.

6. This Notice does not address the following situations:

— complaints lodged by Member States pursuant to Article 7(2) of Regulation 1/2003,

— complaints that ask the Commission to take action against a Member State pursuant to Article 86(3) in conjunction with Articles 81 or 82 of the Treaty,

— complaints relating to Article 87 of the Treaty on state aids,

— complaints relating to infringements by Member States that the Commission may pursue in the framework of Article 226 of the Treaty [6].

### II. DIFFERENT POSSIBILITIES FOR LODGING COMPLAINTS ABOUT SUSPECTED INFRINGEMENTS OF ARTICLES 81 OR 82

A. COMPLAINTS IN THE NEW ENFORCEMENT SYSTEM ESTABLISHED BY REGULATION 1/2003

7. Depending on the nature of the complaint, a complainant may bring his complaint either to a national court or to a competition authority that acts as public enforcer. The present chapter of this Notice intends to help potential complainants to make an informed choice about whether to address themselves to the Commission, to one of the Member States' competition authorities or to a national court.

8. While national courts are called upon to safeguard the rights of individuals and are thus bound to rule on cases brought before them, public enforcers cannot investigate all complaints, but must set priorities in their treatment of cases. The Court of Justice has held that the Commission, entrusted by Article 85(1) of the EC Treaty with the task of ensuring application of the principles laid down in Articles 81 and 82 of the Treaty, is responsible for defining and implementing the orientation of Community competition policy and that, in order to perform that task effectively, it is entitled to give differing degrees of priority to the complaints brought before it [7].

9. Regulation 1/2003 empowers Member States' courts and Member States' competition authorities to apply Articles 81 and 82 in their entirety alongside the Commission. Regulation 1/2003 pursues as one principal objective that Member States' courts and competition authorities should participate effectively in the enforcement of Articles 81 and 82 [8].

10. Moreover, Article 3 of Regulation 1/2003 provides that Member States' courts and competition authorities have to apply Articles 81 and 82 to all cases of agreements or conduct that are capable of affecting trade between Member States to which they apply their national competition laws. In addition, Articles 11 and 15 of the Regulation create a range of mechanisms by which Member States' courts and competition authorities cooperate with the Commission in the enforcement of Articles 81 and 82.

11. In this new legislative framework, the Commission intends to refocus its enforcement resources along the following lines:

— enforce the EC competition rules in cases for which it is well placed to act [9], concentrating its resources on the most serious infringements [10];

— handle cases in relation to which the Commission should act with a view to define Community competition policy and/or to ensure coherent application of Articles 81 or 82.

B. THE COMPLEMENTARY ROLES OF PRIVATE AND PUBLIC ENFORCEMENT

12. It has been consistently held by the Community Courts that national courts are called upon to safeguard the rights of individuals created by the direct effect of Articles 81(1) and 82 [11].

13. National courts can decide upon the nullity or validity of contracts and only national courts can grant damages to an individual in case of an infringement of Articles 81 and 82. Under the case law of the Court of Justice, any individual can claim damages for loss caused to him by a contract or by conduct which restricts or distorts competition, in order to ensure the full effectiveness of the Community competition rules. Such actions for damages before the national courts can make a significant contribution to the maintenance of effective competition in the Community as they discourage undertakings from concluding or applying restrictive agreements or practices [12].

14. Regulation 1/2003 takes express account of the fact that national courts have an essential part to play in applying the EC competition rules [13]. By extending the power to apply Article 81(3) to national courts it removes the possibility for undertakings to delay national court proceedings by a notification to the Commission and thus eliminates an obstacle for private litigation that existed under Regulation No 17 [14].

15. Without prejudice to the right or obligation of national courts to address a preliminary question to the Court of Justice in accordance with Article 234 EC, Article 15(1) of Regulation 1/2003 provides expressly that national courts may ask for opinions or information from the Commission. This provision aims at facilitating the application of Articles 81 and 82 by national courts [15].

16. Action before national courts has the following advantages for complainants:

— National courts may award damages for loss suffered as a result of an infringement of Article 81 or 82.

— National courts may rule on claims for payment or contractual obligations based on an agreement that they examine under Article 81.

— It is for the national courts to apply the civil sanction of nullity of Article 81(2) in contractual relationships between individuals [16]. They can in particular assess, in the light of the applicable national law, the scope and consequences of the nullity of certain contractual provisions under Article 81(2), with particular regard to all the other matters covered by the agreement [17].

— National courts are usually better placed than the Commission to adopt interim measures [18].

27.4.2004          EN          Official Journal of the European Union          C 101/67

— Before national courts, it is possible to combine a claim under Community competition law with other claims under national law.

— Courts normally have the power to award legal costs to the successful applicant. This is never possible in an administrative procedure before the Commission.

17. The fact that a complainant can secure the protection of his rights by an action before a national court, is an important element that the Commission may take into account in its examination of the Community interest for investigating a complaint [19].

18. The Commission holds the view that the new enforcement system established by Regulation 1/2003 strengthens the possibilities for complainants to seek and obtain effective relief before national courts.

### C. WORK-SHARING BETWEEN THE PUBLIC ENFORCERS IN THE EUROPEAN COMMUNITY

19. Regulation 1/2003 creates a system of parallel competence for the application of Articles 81 and 82 by empowering Member States' competition authorities to apply Articles 81 and 82 in their entirety (Article 5). Decentralised enforcement by Member States' competition authorities is further encouraged by the possibility to exchange information (Article 12) and to provide each other assistance with investigations (Article 22).

20. The Regulation does not regulate the work-sharing between the Commission and the Member States' competition authorities but leaves the division of case work to the cooperation of the Commission and the Member States' competition authorities inside the European Competition Network (ECN). The Regulation pursues the objective of ensuring effective enforcement of Articles 81 and 82 through a flexible division of case work between the public enforcers in the Community.

21. Orientations for the work sharing between the Commission and the Member States' competition authorities are laid down in a separate Notice [20]. The guidance contained in that Notice, which concerns the relations between the public enforcers, will be of interest to complainants as it permits them to address a complaint to the authority most likely to be well placed to deal with their case.

22. The Notice on cooperation within the Network of Competition Authorities states in particular [21]:

'An authority can be considered to be well placed to deal with a case if the following three cumulative conditions are met:

— the agreement or practice has substantial direct actual or foreseeable effects on competition within its territory, is implemented within or originates from its territory;

— the authority is able effectively to bring to an end the entire infringement, i.e. it can adopt a cease-and desist order, the effect of which will be sufficient to bring an end to the infringement and it can, where appropriate, sanction the infringement adequately;

— it can gather, possibly with the assistance of other authorities, the evidence required to prove the infringement.

The above criteria indicate that a material link between the infringement and the territory of a Member State must exist in order for that Member State's competition authority to be considered well placed. It can be expected that in most cases the authorities of those Member States where competition is substantially affected by an infringement will be well placed provided they are capable of effectively bringing the infringement to an end through either single or parallel action unless the Commission is better placed to act (see below [...]).

It follows that a single NCA is usually well placed to deal with agreements or practices that substantially affect competition mainly within its territory [...].

Furthermore single action of an NCA might also be appropriate where, although more than one NCA can be regarded as well placed, the action of a single NCA is sufficient to bring the entire infringement to an end [...].

Parallel action by two or three NCAs may be appropriate where an agreement or practice has substantial effects on competition mainly in their respective territories and the action of only one NCA would not be sufficient to bring the entire infringement to an end and/or to sanction it adequately [...].

C 101/68    EN    Official Journal of the European Union    27.4.2004

The authorities dealing with a case in parallel action will endeavour to coordinate their action to the extent possible. To that effect, they may find it useful to designate one of them as a lead authority and to delegate tasks to the lead authority such as for example the coordination of investigative measures, while each authority remains responsible for conducting its own proceedings.

The Commission is particularly well placed if one or several agreement(s) or practice(s), including networks of similar agreements or practices, have effects on competition in more than three Member States (cross-border markets covering more than three Member States or several national markets) [. . .].

Moreover, the Commission is particularly well placed to deal with a case if it is closely linked to other Community provisions which may be exclusively or more effectively applied by the Commission, if the Community interest requires the adoption of a Commission decision to develop Community competition policy when a new competition issue arises or to ensure effective enforcement'.

23. Within the European Competition Network, information on cases that are being investigated following a complaint will be made available to the other members of the network before or without delay after commencing the first formal investigative measure [22]. Where the same complaint has been lodged with several authorities or where a case has not been lodged with an authority that is well placed, the members of the network will endeavour to determine within an indicative time-limit of two months which authority or authorities should be in charge of the case.

24. Complainants themselves have an important role to play in further reducing the potential need for reallocation of a case originating from their complaint by referring to the orientations on work sharing in the network set out in the present chapter when deciding on where to lodge their complaint. If nonetheless a case is reallocated within the network, the undertakings concerned and the complainant(s) are informed as soon as possible by the competition authorities involved [23].

25. The Commission may reject a complaint in accordance with Article 13 of Regulation 1/2003, on the grounds that a Member State competition authority is dealing or has dealt with the case. When doing so, the Commission must, in accordance with Article 9 of Regulation

773/2004, inform the complainant without delay of the national competition authority which is dealing or has already dealt with the case.

## III. THE COMMISSION'S HANDLING OF COMPLAINTS PURSUANT TO ARTICLE 7(2) OF REGULATION 1/2003

### A. GENERAL

26. According to Article 7(2) of Regulation 1/2003 natural or legal persons that can show a legitimate interest [24] are entitled to lodge a complaint to ask the Commission to find an infringement of Articles 81 and 82 EC and to require that the infringement be brought to an end in accordance with Article 7(1) of Regulation 1/2003. The present part of this Notice explains the requirements applicable to complaints based on Article 7(2) of Regulation 1/2003, their assessment and the procedure followed by the Commission.

27. The Commission, unlike civil courts, whose task is to safeguard the individual rights of private persons, is an administrative authority that must act in the public interest. It is an inherent feature of the Commission's task as public enforcer that it has a margin of discretion to set priorities in its enforcement activity [25].

28. The Commission is entitled to give different degrees of priority to complaints made to it and may refer to the Community interest presented by a case as a criterion of priority [26]. The Commission may reject a complaint when it considers that the case does not display a sufficient Community interest to justify further investigation. Where the Commission rejects a complaint, the complainant is entitled to a decision of the Commission [27] without prejudice to Article 7(3) of Regulation 773/2004.

### B. MAKING A COMPLAINT PURSUANT TO ARTICLE 7(2) OF REGULATION 1/2003

#### (a) Complaint form

29. A complaint pursuant to Article 7(2) of Regulation 1/2003 can only be made about an alleged infringement of Articles 81 or 82 with a view to the Commission taking action under Article 7(1) of Regulation 1/2003. A complaint under Article 7(2) of Regulation 1/2003 has to comply with Form C mentioned in Article 5(1) of Regulation 773/2004 and annexed to that Regulation.

30. Form C is available at http://europa.eu.int/dgcomp/ complaints-form and is also annexed to this Notice. The complaint must be submitted in three paper copies as well as, if possible, an electronic copy. In addition, the complainant must provide a non-confidential version of the complaint (Article 5(2) of Regulation 773/2004). Electronic transmission to the Commission is possible via the website indicated, the paper copies should be sent to the following address:

Commission européenne/Europese Commissie
Competition DG
B-1049 Bruxelles/Brussel

31. Form C requires complainants to submit comprehensive information in relation to their complaint. They should also provide copies of relevant supporting documentation reasonably available to them and, to the extent possible, provide indications as to where relevant information and documents that are unavailable to them could be obtained by the Commission. In particular cases, the Commission may dispense with the obligation to provide information in relation to part of the information required by Form C (Article 5(1) of Regulation 773/2004). The Commission holds the view that this possibility in particular play a role to facilitate complaints by consumer associations where they, in the context of an otherwise substantiated complaint, do not have access to specific pieces of information from the sphere of the undertakings complained of.

32. Correspondence to the Commission that does not comply with the requirements of Article 5 of Regulation 773/2004 and therefore does not constitute a complaint within the meaning of Article 7(2) of Regulation 1/2003 will be considered by the Commission as general information that, where it is useful, may lead to an own-initiative investigation (cf. point 4 above).

(b) Legitimate interest

33. The status of formal complainant under Article 7(2) of Regulation 1/2003 is reserved to legal and natural persons who can show a legitimate interest [28]. Member States are deemed to have a legitimate interest for all complaints they choose to lodge.

34. In the past practice of the Commission, the condition of legitimate interest was not often a matter of doubt as most complainants were in a position of being directly and adversely affected by the alleged infringement. However, there are situations where the condition of a 'legitimate interest' in Article 7(2) requires further analysis to conclude that it is fulfilled. Useful guidance can best be provided by a non-exhaustive set of examples.

35. The Court of First Instance has held that an association of undertakings may claim a legitimate interest in lodging a complaint regarding conduct concerning its members, even if it is not directly concerned, as an undertaking operating in the relevant market, by the conduct complained of, provided that, first, it is entitled to represent the interests of its members and secondly, the conduct complained of is liable to adversely affect the interests of its members [29]. Conversely, the Commission has been found to be entitled not to pursue the complaint of an association of undertakings whose members were not involved in the type of business transactions complained of [30].

36. From this case law, it can be inferred that undertakings (themselves or through associations that are entitled to represent their interests) can claim a legitimate interest where they are operating in the relevant market or where the conduct complained of is liable to directly and adversely affect their interests. This confirms the established practice of the Commission which has accepted that a legitimate interest can, for instance, be claimed by the parties to the agreement or practice which is the subject of the complaint, by competitors whose interests have allegedly been damaged by the behaviour complained of or by undertakings excluded from a distribution system.

37. Consumer associations can equally lodge complaints with the Commission [31]. The Commission moreover holds the view that individual consumers whose economic interests are directly and adversely affected insofar as they are the buyers of goods or services that are the object of an infringement can be in a position to show a legitimate interest [32].

38. However, the Commission does not consider as a legitimate interest within the meaning of Article 7(2) the interest of persons or organisations that wish to come forward on general interest considerations without showing that they or their members are liable to be directly and adversely affected by the infringement (pro bono publico).

39. Local or regional public authorities may be able to show a legitimate interest in their capacity as buyers or users of goods or services affected by the conduct complained of. Conversely, they cannot be considered as showing a legitimate interest within the meaning of Article 7(2) of Regulation 1/2003 to the extent that they bring to the attention of the Commission alleged infringements pro bono publico.

40. Complainants have to demonstrate their legitimate interest. Where a natural or legal person lodging a complaint is unable to demonstrate a legitimate interest, the Commission is entitled, without prejudice to its right to initiate proceedings of its own initiative, not to pursue the complaint. The Commission may ascertain whether this condition is met at any stage of the investigation [33].

C 101/70     **EN**     Official Journal of the European Union     27.4.2004

## C. ASSESSMENT OF COMPLAINTS

**(a) Community interest**

41. Under the settled case law of the Community Courts, the Commission is not required to conduct an investigation in each case [24] or, a fortiori, to take a decision within the meaning of Article 249 EC on the existence or non-existence of an infringement of Articles 81 or 82 [25], but is entitled to give differing degrees of priority to the complaints brought before it and refer to the Community interest in order to determine the degree of priority to be applied to the various complaints it receives [26]. The position is different only if the complaint falls within the exclusive competence of the Commission [27].

42. The Commission must however examine carefully the factual and legal elements brought to its attention by the complainant in order to assess the Community interest in further investigation of a case [28].

43. The assessment of the Community interest raised by a complaint depends on the circumstances of each individual case. Accordingly, the number of criteria of assessment to which the Commission may refer is not limited, nor is the Commission required to have recourse exclusively to certain criteria. As the factual and legal circumstances may differ considerably from case to case, it is permissible to apply new criteria which had not before been considered [29]. Where appropriate, the Commission may give priority to a single criterion for assessing the Community interest [30].

44. Among the criteria which have been held relevant in the case law for the assessment of the Community interest in the (further) investigation of a case are the following:

— The Commission can reject a complaint on the ground that the complainant can bring an action to assert its rights before national courts [31].

— The Commission may not regard certain situations as excluded in principle from its purview under the task entrusted to it by the Treaty but is required to assess in each case how serious the alleged infringements are and how persistent their consequences are. This means in particular that it must take into account the duration and the extent of the infringements complained of and their effect on the competition situation in the Community [32].

— The Commission may have to balance the significance of the alleged infringement as regards the functioning of the common market, the probability of establishing the existence of the infringement and the scope of the investigation required in order to fulfil its task of ensuring that Articles 81 and 82 of the Treaty are complied with [33].

— While the Commission's discretion does not depend on how advanced the investigation of a case is, the stage of the investigation forms part of the circumstances of the case which the Commission may have to take into consideration [34].

— The Commission may decide that it is not appropriate to investigate a complaint where the practices in question have ceased. However, for this purpose, the Commission will have to ascertain whether anti-competitive effects persist and if the seriousness of the infringements or the persistence of their effects does not give the complaint a Community interest [35].

— The Commission may also decide that it is not appropriate to investigate a complaint where the undertakings concerned agree to change their conduct in such a way that it can consider that there is no longer a sufficient Community interest to intervene [36].

45. Where it forms the view that a case does not display sufficient Community interest to justify (further) investigation, the Commission may reject the complaint on that ground. Such a decision can be taken either before commencing an investigation or after taking investigative measures [37]. However, the Commission is not obliged to set aside a complaint for lack of Community interest [38].

**(b) Assessment under Articles 81 and 82**

46. The examination of a complaint under Articles 81 and 82 involves two aspects, one relating to the facts to be established to prove an infringement of Articles 81 or 82 and the other relating to the legal assessment of the conduct complained of.

47. Where the complaint, while complying with the requirements of Article 5 of Regulation 773/2004 and Form C, does not sufficiently substantiate the allegations put forward, it may be rejected on that ground [39]. In order to reject a complaint on the ground that the conduct complained of does not infringe the EC competition rules or does not fall within their scope of application, the Commission is not obliged to take into account circumstances that have not been brought to its attention by the complainant and that it could only have uncovered by the investigation of the case [40].

48. The criteria for the legal assessment of agreements or practices under Articles 81 and 82 cannot be dealt with exhaustively in the present Notice. However, potential complainants should refer to the extensive guidance available from the Commission ([51]), in addition to other sources and in particular the case law of the Community Courts and the case practice of the Commission. Four specific issues are mentioned in the following points with indications on where to find further guidance.

49. Agreements and practices fall within the scope of application of Articles 81 and 82 where they are capable of affecting trade between Member States. Where an agreement or practice does not fulfil this condition, national competition law may apply, but not EC competition law. Extensive guidance on this subject can be found in the Notice on the effect on trade concept ([52]).

50. Agreements falling within the scope of Article 81 may be agreements of minor importance which are deemed not to restrict competition appreciably. Guidance on this issue can be found in the Commission's *de minimis* Notice ([53]).

51. Agreements that fulfil the conditions of a block exemption regulation are deemed to satisfy the conditions of Article 81(3) ([54]). For the Commission to withdraw the benefit of the block exemption pursuant to Article 29 of Regulation 1/2003, it must find that upon individual assessment an agreement to which the exemption regulation applies has certain effects which are incompatible with Article 81(3).

52. Agreements that restrict competition within the meaning of Article 81(1) EC may fulfil the conditions of Article 81(3) EC. Pursuant to Article 1(2) of Regulation 1/2003 and without a prior administrative decision being required, such agreements are not prohibited. Guidance on the conditions to be fulfilled by an agreement pursuant to Article 81(3) can be found in the Notice on Article 81(3) ([55]).

D. THE COMMISSION'S PROCEDURES WHEN DEALING WITH COMPLAINTS

(a) Overview

53. As recalled above, the Commission is not obliged to carry out an investigation on the basis of every complaint submitted with a view to establishing whether an infringement has been committed. However, the Commission is under a duty to consider carefully the factual and legal issues brought to its attention by the complainant, in order to assess whether those issues

indicate conduct which is liable to infringe Articles 81 and 82 ([56]).

54. In the Commission's procedure for dealing with complaints, different stages can be distinguished ([57]).

55. During the first stage, following the submission of the complaint, the Commission examines the complaint and may collect further information in order to decide what action it will take on the complaint. That stage may include an informal exchange of views between the Commission and the complainant with a view to clarifying the factual and legal issues with which the complaint is concerned. In this stage, the Commission may give an initial reaction to the complainant allowing the complainant an opportunity to expand on his allegations in the light of that initial reaction.

56. In the second stage, the Commission may investigate the case further with a view to initiating proceedings pursuant to Article 7(1) of Regulation 1/2003 against the undertakings complained of. Where the Commission considers that there are insufficient grounds for acting on the complaint, it will inform the complainant of its reasons and offer the complainant the opportunity to submit any further comments within a time-limit which it fixes (Article 7(1) of Regulation 773/2004).

57. If the complainant fails to make known its views within the time-limit set by the Commission, the complaint is deemed to have been withdrawn (Article 7(3) of Regulation 773/2004). In all other cases, in the third stage of the procedure, the Commission takes cognisance of the observations submitted by the complainant and either initiates a procedure against the subject of the complaint or adopts a decision rejecting the complaint ([58]).

58. Where the Commission rejects a complaint pursuant to Article 13 of Regulation 1/2003 on the grounds that another authority is dealing or has dealt with the case, the Commission proceeds in accordance with Article 9 of Regulation 773/2004.

59. Throughout the procedure, complainants benefit from a range of rights as provided in particular in Articles 6 to 8 of Regulation 773/2004. However, proceedings of the Commission in competition cases do not constitute adversarial proceedings between the complainant on the one hand and the companies which are the subject of the investigation on the other hand. Accordingly, the procedural rights of complainants are less far-reaching than the right to a fair hearing of the companies which are the subject of an infringement procedure ([59]).

(b) Indicative time limit for informing the complainant of the Commission's proposed action

60. The Commission is under an obligation to decide on complaints within a reasonable time [60]. What is a reasonable duration depends on the circumstances of each case and in particular, its context, the various procedural steps followed by the Commission, the conduct of the parties in the course of the procedure, the complexity of the case and its importance for the various parties involved [61].

61. The Commission will in principle endeavour to inform complainants of the action that it proposes to take on a complaint within an indicative time frame of four months from the reception of the complaint. Thus, subject to the circumstances of the individual case and in particular the possible need to request complementary information from the complainant or third parties, the Commission will in principle inform the complainant within four months whether or not it intends to investigate its case further. This time-limit does not constitute a binding statutory term.

62. Accordingly, within this four month period, the Commission may communicate its proposed course of action to the complainant as an initial reaction within the first phase of the procedure (see point 55 above). The Commission may also, where the examination of the complaint has progressed to the second stage (see point 56 above), directly proceed to informing the complainant about its provisional assessment by a letter pursuant to Article 7(1) of Regulation 773/2004.

63. To ensure the most expeditious treatment of their complaint, it is desirable that complainants cooperate diligently in the procedures [62], for example by informing the Commission of new developments.

(c) Procedural rights of the complainant

64. Where the Commission addresses a statement of objections to the companies complained of pursuant to Article 10(1) of Regulation 773/2004, the complainant is entitled to receive a copy of this document from which business secrets and other confidential information of the companies concerned have been removed (non-confidential version of the statement of objections; cf. Article 6(1) of Regulation 773/2004). The complainant is invited to comment in writing on the statement of objections. A time-limit will be set for such written comments.

65. Furthermore, the Commission may, where appropriate, afford complainants the opportunity of expressing their views at the oral hearing of the parties to which a statement of objections has been addressed, if the complainants so request in their written comments [63].

66. Complainants may submit, of their own initiative or following a request by the Commission, documents that contain business secrets or other confidential information. Confidential information will be protected by the Commission [64]. Under Article 16 of Regulation 773/2004, complainants are obliged to identify confidential information, give reasons why the information is considered confidential and submit a separate non-confidential version when they make their views known pursuant to Article 6(1) and 7(1) of Regulation 773/2004, as well as when they subsequently submit further information in the course of the same procedure. Moreover, the Commission may, in all other cases, request complainants which produce documents or statements to identify the documents or parts of the documents or statements which they consider to be confidential. It may in particular set a deadline for the complainant to specify why it considers a piece of information to be confidential and to provide a non-confidential version, including a concise description or non-confidential version of each piece of information deleted.

67. The qualification of information as confidential does not prevent the Commission from disclosing and using information where that is necessary to prove an infringement of Articles 81 or 82 [65]. Where business secrets and confidential information are necessary to prove an infringement, the Commission must assess for each individual document whether the need to disclose is greater than the harm which might result from disclosure.

68. Where the Commission takes the view that a complaint should not be further examined, because there is no sufficient Community interest in pursuing the case further or on other grounds, it will inform the complainant in the form of a letter which indicates its legal basis (Article 7(1) of Regulation 773/2004), sets out the reasons that have led the Commission to provisionally conclude in the sense indicated and provides the complainant with the opportunity to submit supplementary information or observations within a time-limit set by the Commission. The Commission will also indicate the consequences of not replying pursuant to Article 7(3) of Regulation 773/2004, as explained below.

69. Pursuant to Article 8(1) of Regulation 773/2004, the complainant has the right to access the information on which the Commission bases its preliminary view. Such access is normally provided by annexing to the letter a copy of the relevant documents.

70. The time-limit for observations by the complainant on the letter pursuant to Article 7(1) of Regulation 773/2004 will be set in accordance with the circumstances of the case. It will not be shorter than four weeks (Article 17(2) of Regulation 773/2004). If the complainant does not respond within the time-limit set, the complaint is deemed to have been withdrawn pursuant to Article 7(3) of Regulation 773/2004. Complainants are also entitled to withdraw their complaint at any time if they so wish.

71. The complainant may request an extension of the time-limit for the provision of comments. Depending on the circumstances of the case, the Commission may grant such an extension.

72. In that case, where the complainant submits supplementary observations, the Commission takes cognisance of those observations. Where they are of such a nature as to make the Commission change its previous course of action, it may initiate a procedure against the companies complained of. In this procedure, the complainant has the procedural rights explained above.

73. Where the observations of the complainant do not alter the Commission's proposed course of action, it rejects the complaint by decision (⁶⁶).

(d)  The Commission decision rejecting a complaint

74. Where the Commission rejects a complaint by decision pursuant to Article 7(2) of Regulation 773/2004, it must state the reasons in accordance with Article 253 EC, i.e. in a way that is appropriate to the act at issue and takes into account the circumstances of each case.

75. The statement of reasons must disclose in a clear and unequivocal fashion the reasoning followed by the Commission in such a way as to enable the complainant to ascertain the reasons for the decision and to enable the competent Community Court to exercise its power of review. However, the Commission is not obliged to adopt a position on all the arguments relied on by the complainant in support of its complaint. It only needs to set out the facts and legal considerations which are of decisive importance in the context of the decision (⁶⁷).

76. Where the Commission rejects a complaint in a case that also gives rise to a decision pursuant to Article 10 of Regulation 1/2003 (Finding of inapplicability of Articles 81 or 82) or Article 9 of Regulation 1/2003 (Commitments), the decision rejecting a complaint may refer to that other decision adopted on the basis of the provisions mentioned.

77. A decision to reject a complaint is subject to appeal before the Community Courts (⁶⁸).

78. A decision rejecting a complaint prevents complainants from requiring the reopening of the investigation unless they put forward significant new evidence. Accordingly, further correspondence on the same alleged infringement by former complainants cannot be regarded as a new complaint unless significant new evidence is brought to the attention of the Commission. However, the Commission may re-open a file under appropriate circumstances. ·

79. A decision to reject a complaint does not definitively rule on the question of whether or not there is an infringement of Articles 81 or 82, even where the Commission has assessed the facts on the basis of Articles 81 and 82. The assessments made by the Commission in a decision rejecting a complaint therefore do not prevent a Member State court or competition authority from applying Articles 81 and 82 to agreements and practices brought before it. The assessments made by the Commission in a decision rejecting a complaint constitute facts which Member States' courts or competition authorities may take into account in examining whether the agreements or conduct in question are in conformity with Articles 81 and 82 (⁶⁹).

(e)  Specific situations

80. According to Article 8 of Regulation 1/2003 the Commission may on its own initiative order interim measures where there is the risk of serious and irreparable damage to competition. Article 8 of Regulation 1/2003 makes it clear that interim measures cannot be applied for by complainants under Article 7(2) of Regulation 1/2003. Requests for interim measures by undertakings can be brought before Member States' courts which are well placed to decide on such measures (⁷⁰).

81. Some persons may wish to inform the Commission about suspected infringements of Articles 81 or 82 without having their identity revealed to the undertakings concerned by the allegations. These persons are welcome to contact the Commission. The Commission is bound to respect an informant's request for anonymity (⁷¹), unless the request to remain anonymous is manifestly unjustified.

C 101/74    EN    Official Journal of the European Union    27.4.2004

(¹) Council Regulation (EC) No 1/2003 of 16 December 2002 on the implementation of the rules on competition laid down in Articles 81 and 82 of the Treaty (OJ L 1, 4.1.2003, pages 1-25).

(²) Cf. in particular Recitals 3-7 and 35 of Regulation 1/2003.

(³) Commission Regulation (EC) No 773/2004 of 7 April 2004 relating to the conduct of proceedings by the Commission pursuant to Articles 81 and 82 of the EC Treaty (OJ C 123, 27.4.2004).

(⁴) The Commission handles correspondence from informants in accordance with its principles of good administrative practice.

(⁵) Notice on cooperation within the Network of competition authorities (p. 43).

(⁶) For the handling of such complaints, cf. Commission communication of 10 October 2002, COM(2002) 141.

(⁷) Case C-344/98, Masterfoods v HB Ice Cream, [2000] ECR I-11369, para 46; Case C-119/97 P, Union française de l'express (Ufex) and Others v Commission of the European Communities, [1999] ECR I-1341, para 88; Case T-24/90, Automec v Commission of the European Communities, [1992] ECR II-2223, paras 73-77,

(⁸) Cf. in particular Articles 5, 6, 11, 12, 15, 22, 29, 35 and Recitals 2 to 4 and 6 to 8 of Regulation 1/2003.

(⁹) Cf. Notice on cooperation within the network of competition authorities ..., points 5 ss.

(¹⁰) Cf. Recital 3 of Regulation 1/2003.

(¹¹) Settled case law, cf. Case 127/73, Belgische Radio en Televisie (BRT) v SABAM and Fonior, [1974] ECR 51, para 16; Case C-282/95 P, Guérin automobiles v Commission of the European Communities, [1997] ECR I-1503, para 39; Case C-453/99, Courage v Bernhard Crehan, [2001] ECR I-6297, para 23.

(¹²) Case C-453/99, Courage v Bernhard Crehan, [2001] ECR I-6297, paras 26 and 27; the power of national courts to grant damages is also underlined in Recital 7 of Regulation 1/2003.

(¹³) Cf. Articles 1, 6 and 15 as well as Recital 7 of Regulation 1/2003.

(¹⁴) Regulation No 17: First Regulation implementing Articles 85 and 86 of the Treaty; OJ P 13 of 21 February 1962, p. 204-211; English special edition: Series I Chapter 1959-1962 p. 87. Regulation No 17 is repealed by Article 43 of Regulation 1/2003 with effect from 1 May 2004.

(¹⁵) For more detailed explanations of this mechanism, cf. Notice on the co-operation between the Commission and the courts of the EU Member States in the application of Articles 81 and 82 EC ...

(¹⁶) Case T-24/90, Automec v Commission of the European Communities, [1992] ECR II-2223, para 93.

(¹⁷) Case C-230/96, Cabour and Nord Distribution Automobile v Arnor 'SOCO', [1998] ECR I-2055, para 51; Joined Cases T-185/96, T-189/96 and T-190/96, Dalmasso and Others v Commission of the European Communities, [1999] ECR II-93, para 50.

(¹⁸) Cf. Article 8 of Regulation 1/2003 and para 80 below. Depending on the case, Member States' competition authorities may equally be well placed to adopt interim measures.

(¹⁹) Cf. points 41 ss. below.

(²⁰) Notice on cooperation within the Network of competition authorities (p. 43).

(²¹) Notice on cooperation within the Network of competition authorities ..., points 8-15.

(²²) Article 11(2) and (3) of Regulation 1/2003; Notice on cooperation within the Network of Competition Authorities ..., points 16/17.

(²³) Notice on cooperation within the Network of Competition Authorities, ..., point 34.

(²⁴) For more extensive explanations on this notion in particular, cf. points 33 ss. below.

(²⁵) Case C-119/97 P, Union française de l'express (Ufex) and Others v Commission of the European Communities, [1999] ECR I-1341, para 88; Case T-24/90, Automec v Commission of the European Communities, [1992] ECR II-2223, paras 73-77 and 85.

(²⁶) Settled case law since Case T-24/90, Automec v Commission of the European Communities, [1992] ECR II-2223, para 85.

(²⁷) Case C-282/95 P, Guérin automobiles v Commission of the European Communities, [1997] ECR I-1503, para 36.

(²⁸) Cf. Article 5(1) of Regulation 773/2004.

(²⁹) Case T-114/92, Bureau Européen des Médias et de l'Industrie Musicale (BEMIM) v Commission of the European Communities, [1995] ECR II-147, para 28. Associations of undertakings were also the complainants in the cases underlying the judgments in Case 298/83, Comité des industries cinématographiques des Communautés européennes (CICCE) v Commission of the European Communities, [1985] ECR 1105 and Case T-319/99, Federación Nacional de Empresas (FENIN) v Commission of the European Communities, not yet published in [2003] ECR.

(³⁰) Joined Cases T-133/95 and T-204/95, International Express Carriers Conference (IECC) v Commission of the European Communities, [1998] ECR II-3645, paras 79-83.

(³¹) Case T-37/92, Bureau Européen des Unions des Consommateurs (BEUC) v Commission of the European Communities, [1994] ECR II-285, para 36.

(³²) This question is currently raised in a pending procedure before the Court of First Instance (Joined cases T-213 and 214/01). The Commission has also accepted as complainant an individual consumer in its Decision of 9 December 1998 in Case IV/D-2/34.466, Greek Ferries, OJ L 109/24 of 27 April 1999, para 1.

(³³) Joined Cases T-133/95 and T-204/95, International Express Carriers Conference (IECC) v Commission of the European Communities, [1998] ECR II-3645, para 79.

(³⁴) Case T-24/90, Automec v Commission of the European Communities, [1992] ECR II-2223, para 76; Case C-91/95 P, Roger Tremblay and Others v Commission of the European Communities, [1996] ECR I-5547, para 30.

(³⁵) Case 125/78, GEMA v Commission of the European Communities, [1979] ECR 3173, para 17; Case C-119/97/P, Union française de l'express (Ufex) and Others v Commission of the European Communities, [1999] ECR I-1341, para 87.

(³⁶) Settled case law since the Case T-24/90, Automec v Commission of the European Communities, [1992] ECR II-2223, paras 77 and 85; Recital 18 of Regulation 1/2003 expressly confirms this possibility.

(³⁷) Settled case law since Case T-24/90, Automec v Commission of the European Communities, [1992] ECR II-2223, para 75. Under Regulation 1/2003, this principle may only be relevant in the context of Article 29 of that Regulation.

(³⁸) Case 210/81, Oswald Schmidt, trading as Demo-Studio Schmidt v Commission of the European Communities, [1983] ECR 3045, para 19; Case C-119/97 P, Union française de l'express (Ufex) and Others v Commission of the European Communities, [1999] ECR I-1341, para 86.

(³⁹) Case C-119/97 P, Union française de l'express (Ufex) and Others v Commission of the European Communities, [1999] ECR I-1341, paras 79-80.

(⁴⁰) Case C-450/98 P, International Express Carriers Conference (IECC) v Commission of the European Communities, [2001] ECR I-3947, paras 57-59.

(⁴¹) Case T-24/90, Automec v Commission of the European Communities, [1992] ECR II-2223, paras 88ss.; Case T-5/93, Roger Tremblay and Others v Commission of the European Communities, [1995] ECR II-185, paras 65ss.; Case T-575/93, Casper Koelman v Commission of the European Communities, [1996] ECR II-1, paras 75-80; see also part II above where more detailed explanations concerning this situation are given.

(⁴²) Case C-119/97 P, Union française de l'express (Ufex) and Others v Commission of the European Communities, [1999] ECR I-1341, paras 92/93.

(⁴³) Settled case law since Case T-24/90, Automec v Commission of the European Communities, [1992] ECR II-2223, para 86.

(⁴⁴) Case C-449/98 P, International Express Carriers Conference (IECC) v Commission of the European Communities [2001] ECR I-3875, para 37.

(⁴⁵) Case T-77/95, Syndicat français de l'Express International and Others v Commission of the European Communities [1997] ECR II-1, para 57; Case C-119/97 P, Union française de l'express (Ufex) and Others v Commission of the European Communities, [1999] ECR I-1341, para 95. Cf. also Case T-37/92, Bureau Européen des Unions des Consommateurs (BEUC) v Commission of the European Communities, [1994] ECR II-285, para 113, where an unwritten commitment between a Member State and a third county outside the common commercial policy was held not to suffice to establish that the conduct complained of had ceased.

(⁴⁶) Case T-110/95, International Express Carriers (IECC) v Commission of the European Communities and Others, [1998] ECR II-3605, para 57, upheld by Case 449/98 P, International Express Carriers (IECC) v Commission of the European Communities and Others, [2001] ECR I-3875, paras 44-47.

(⁴⁷) Case C-449/98 P, International Express Carriers (IECC) v Commission of the European Communities e.a. [2001] ECR I-3875, para 37.

(⁴⁸) Cf. Case T-77/92, Parker Pen v Commission of the European Communities, [1994] ECR II-549, paras 64/65.

(⁴⁹) Case 298/83, Comité des industries cinématographiques des Communautés européennes (CICCE) v Commission of the European Communities, [1985] ECR 1105, paras 21-24; Case T-198/98, Micro Leader Business v Commission of the European Communities, [1999] ECR II-3989, paras 32-39.

(⁵⁰) Case T-319/99, Federación Nacional de Empresas (FENIN) v Commission of the European Communities, not yet published in [2003] ECR, para 43.

(⁵¹) Extensive guidance can be found on the Commission's website at http://europa.eu.int/comm/competition/index_en.html

(⁵²) Notice on the effect on trade: concept contained in Articles 81 and 82 of the Treaty (p. 81).

(⁵³) Commission Notice on agreements of minor importance which do not appreciably restrict competition under Article 81(1) of the Treaty establishing the European Community (de minimis), OJ C 368 of 22 December 2002, p. 13.

(⁵⁴) The texts of all block exemption regulations are available on the Commission's website at http://europa.eu.int/comm/competition/index_en.html

(⁵⁵) Commission Notice — Guidelines on the application of Article 81(3) of the Treaty (p. 97).

(⁵⁶) Case 210/81, Oswald Schmidt, trading as Demo-Studio Schmidt v Commission of the European Communities, [1983] ECR 3045, para 19; Case T-24/90, Automec v Commission of the European Communities, [1992] ECR II-2223, para 79.

(⁵⁷) Cf. Case T-64/89, Automec v Commission of the European Communities, [1990] ECR II-367, paras 45-47; Case T-37/92, Bureau Européen des Unions des Consommateurs (BEUC) v Commission of the European Communities, [1994] ECR II-285, para 29.

(³⁸) Case C-282/95 P, Guérin automobiles v Commission of the European Communities, [1997] ECR I-1503, para 36.

(³⁹) Joined Cases 142 and 156/84, British American Tobacco Company and R. J. Reynolds Industries v Commission of the European Communities [1987] ECR 249, paras 19/20.

(⁴⁰) Case C-282/95 P, Guérin automobiles v Commission of the European Communities, [1997] ECR I-1503, para 37.

(⁴¹) Joined Cases T-213/95 and T-18/96, Stichting Certificatie Kraanverhuurbedrijf (SCK) and Federatie van Nederlandse Kraanbedrijven (FNK) v Commission of the European Communities, [1997] ECR 1739, para 57.

(⁴²) The notion of 'diligence' on the part of the complainant is used by the Court of First Instance in Case T-77/94, Vereniging van Groothandelaren in Bloemkwekerijprodukten and Others v Commission of the European Communities, [1997] ECR II-759, para 75.

(⁴³) Article 6(2) of Commission Regulation 773/2004.

(⁴⁴) Article 287 EC, Article 28 of Regulation 1/2003 and Articles 15 and 16 of Regulation 773/2004.

(⁴⁵) Article 27(2) of Regulation 1/2003.

(⁴⁶) Article 7(2) of Regulation 773/2004; Case C-282/95 P, Guérin automobiles v Commission of the European Communities, [1997] ECR I-1503, para 36.

(⁴⁷) Settled case law, cf. i.a. Case T-114/92, Bureau Européen des Médias et de l'Industrie Musicale (BEMIM) v Commission of the European Communities, [1995] ECR II-147, para 41.

(⁴⁸) Settled case law since Case 210/81, Oswald Schmidt, trading as Demo-Studio Schmidt v Commission of the European Communities, [1983] ECR 3045.

(⁴⁹) Case T-575/93, Casper Koelman v Commission of the European Communities, [1996] ECR II-1, paras 41-43.

(⁵⁰) Depending on the case, Member States' competition authorities may equally be well placed to adopt interim measures.

(⁵¹) Case 145/83, Stanley George Adams v Commission of the European Communities, [1985] ECR 3539.

———

ANNEX

FORM C

Complaint pursuant to Article 7 of Regulation (EC) No 1/2003

**I. Information regarding the complainant and the undertaking(s) or association of undertakings giving rise to the complaint**

1. Give full details on the identity of the legal or natural person submitting the complaint. Where the complainant is an undertaking, identify the corporate group to which it belongs and provide a concise overview of the nature and scope of its business activities. Provide a contact person (with telephone number, postal and e-mail-address) from which supplementary explanations can be obtained.

2. Identify the undertaking(s) or association of undertakings whose conduct the complaint relates to, including, where applicable, all available information on the corporate group to which the undertaking(s) complained of belong and the nature and scope of the business activities pursued by them. Indicate the position of the complainant vis-à-vis the undertaking(s) or association of undertakings complained of (e.g. customer, competitor).

**II. Details of the alleged infringement and evidence**

3. Set out in detail the facts from which, in your opinion, it appears that there exists an infringement of Article 81 or 82 of the Treaty and/or Article 53 or 54 of the EEA agreement. Indicate in particular the nature of the products (goods or services) affected by the alleged infringements and explain, where necessary, the commercial relationships concerning these products. Provide all available details on the agreements or practices of the undertakings or associations of undertakings to which this complaint relates. Indicate, to the extent possible, the relative market positions of the undertakings concerned by the complaint.

4. Submit all documentation in your possession relating to or directly connected with the facts set out in the complaint (for example, texts of agreements, minutes of negotiations or meetings, terms of transactions, business documents, circulars, correspondence, notes of telephone conversations . . .). State the names and address of the persons able to testify to the facts set out in the complaint, and in particular of persons affected by the alleged infringement. Submit statistics or other data in your possession which relate to the facts set out, in particular where they show developments in the marketplace (for example information relating to prices and price trends, barriers to entry to the market for new suppliers etc.).

5. Set out your view about the geographical scope of the alleged infringement and explain, where that is not obvious, to what extent trade between Member States or between the Community and one or more EFTA States that are contracting parties of the EEA Agreement may be affected by the conduct complained of.

**III. Finding sought from the Commission and legitimate interest**

6. Explain what finding or action you are seeking as a result of proceedings brought by the Commission.

7. Set out the grounds on which you claim a legitimate interest as complainant pursuant to Article 7 of Regulation (EC) No 1/2003. State in particular how the conduct complained of affects you and explain how, in your view, intervention by the Commission would be liable to remedy the alleged grievance.

**IV. Proceedings before national competition authorities or national courts**

8. Provide full information about whether you have approached, concerning the same or closely related subject-matters, any other competition authority and/or whether a lawsuit has been brought before a national court. If so, provide full details about the administrative or judicial authority contacted and your submissions to such authority.

Declaration that the information given in this form and in the Annexes thereto is given entirely in good faith.

Date and signature