# Exhibit [29]

---

**Brief of amicus curiae The Republic of France in support of the petitioners in Societe Nationale Industrielle Aerospatiale v. United States Dist. Court, 482 U.S. 522 (1987)**

---

LEXSEE 1986 U.S. S CT BRIEFS LEXIS 998

Go to Supreme Court Opinion     Go to Oral Argument Transcript

SOCIETE NATIONALE INDUSTRIELLE AEROSPATIALE AND SOCIETE DE CONSTRUCTION D'AVIONS DE TOURISME, *Petitioners*, v. UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IOWA, *Respondent.* (DENNIS JONES, JOHN and ROSA GEORGE, REAL PARTIES IN INTEREST)

No. 85-1695

SUPREME COURT OF THE UNITED STATES

1985 U.S. Briefs 1695; 1986 U.S. S. Ct. Briefs LEXIS 998

October Term, 1985

August 22, 1986

[*1]

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

BRIEF OF *AMICUS CURIAE* THE REPUBLIC OF FRANCE IN SUPPORT OF PETITIONERS

**COUNSEL:** CLEARY, GOTTLIEB, STEEN & HAMILTON, One State Street Plaza, New York, NY 10004, (212) 344-0600, PETER S. PAINE, JR., GEORGE J. GRUMBACH, JR. *, MITCHELL A. LOWENTHAL, JESSICA SPORN TAVAKOLI

* Counsel of Record

CLEARY, GOTTLIEB, STEEN & HAMILTON, 41, Avenue de Friedland, 75008 Paris, France, (1)45 63 14 94, WILLIAM B. McGURN, III, MARTIN GDANSKI, Attorneys for *Amicus Curiae*

View Table of Authorities

**INTERESTS:** INTEREST OF THE REPUBLIC OF FRANCE AS *AMICUS CURIAE*

The Republic of France submits this brief *amicus curiae* upon the consent of the parties to this proceeding. The Republic of France is a party to the multilateral Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, *opened for signature* March 18, 1970, 28 U.S.C. § 1781 (Supp. 1986), 23 U.S.T. 2555, T.I.A.S. No. 7444 (the "Hague Convention" or the "Convention"), a treaty to which the United States and sixteen other sovereign nations are also signatories. The Convention sets forth procedures for the taking of evidence in one signatory country for use in civil proceedings in another. The court below erroneously affirmed an order permitting United States litigants seeking evidence situated in France to disregard Convention procedures so long as the persons from whom the discovery is sought are parties to the litigation and subject to the American court's *in personam* jurisdiction. In order to so hold, the

1985 U.S. Briefs 1695; 1986 U.S. S. Ct. Briefs LEXIS 998, *1

court below impermissibly read into the Convention a crucial limitation that is unsupported by the language or the negotiating history of that agreement. The lower court's holding also undermines one of the essential purposes of the Convention, the prevention of conflicts between different judicial systems with overlapping sovereignty.

The Republic of France has an evident interest in regulating actions taken on French territory to carry out foreign discovery demands. Moreover, French law makes it a criminal offense for persons subject to French jurisdiction to comply with foreign evidentiary demands unless they are consistent with the provisions of a treaty such as the Hague Convention. The lower court's decision is directly in conflict with French law, as well as with the French sovereign interests that it expresses.

The Republic of France is a signatory to the Hague Convention, and its citizens are engaged in substantial international commerce and attendant litigation. It is a close trading partner and long-standing ally of the United States, with which it shares a long and proud tradition of democratic government and justice under law. It is also the nation whose sovereign interests will be directly and materially infringed by any attempt to implement the discovery program upheld by the lower court. The Republic of France thus has a substantial interest in the outcome of this appeal.

TITLE: BRIEF OF *AMICUS CURIAE* THE REPUBLIC OF FRANCE IN SUPPORT OF PETITIONERS

SUMMARY OF ARGUMENT

The delegates to the Hague Convention, who represented nations with different judicial systems that had all embraced different, yet effective, methods for the trial of civil and commercial matters, recognized that there is no judicial system of universal applicability. Thus, the Convention was not intended to codify one nation's rules. Instead, the drafters sought to find a common ground to resolve the international friction caused by one nation's application of its domestic discovery [*8] rules in another's territory. The Convention was designed to enable litigants engaged in the broad panoply of civil litigation to obtain evidence admissible in the forum state without violating the sovereign interests of the nation from whose territory the evidence was to be collected.

The Republic of France ratified the Hague Convention intending it to provide the sole means by which discovery demands emanating from other signatory countries would be carried out on French soil. The French Code of Civil Procedure was extensively amended in order to make the Convention procedures an integral part of domestic French law. French criminal law was correspondingly revised to prohibit French nationals from complying with foreign demands for evidence situated in France except where the demand is issued in accordance with the Hague Convention or another treaty to which France is a party.

The court below upheld a discovery demand aimed at the collection of evidence located in France that openly flouts Hague Convention procedures. In so doing, the court confronted the French parties controlling the evidence with equally unacceptable alternatives: defy French criminal law or risk sanctions [*9] in the United States proceeding. The lower court's rationale -- that the Convention does not apply if the target of the discovery demand is itself a party to the litigation -- is at odds with the language and negotiating history of the Convention. The holding below frustrates the Convention's objective of reducing tensions between nations with different judicial systems precisely in those cases where the potential for conflict is greatest: evidence situated abroad is invariably at issue where, as here, one or more of the parties is a foreigner with no ties to the United States other than participation in commerce.

The lower court's decision to disregard the Hague Convention is unwise from the viewpoint of international judicial relations. It is also entirely unnecessary to the effective gathering of evidence in this or similar cases. Contrary to the lower court's suggestion, Hague Convention procedures do not impose undue burdens or restrictions on American litigants seeking evidence in France. In most cases, voluntary compliance by the recipient of the demand results in discovery coextensive with that available under traditional American rules, with no significant delays or [*10] incremental costs imposed on either party. In the isolated instances where the party from whom discovery is sought

1985 U.S. Briefs 1695; 1986 U.S. S. Ct. Briefs LEXIS 998, *10

declines to cooperate voluntarily, French courts possess evidence-gathering powers that can be used effectively in aid of the American request. The Republic of France will continue to make use of those powers whenever so required under the Convention. Moreover, in the single area where the Convention leaves implementation up to the discretion of France -- Article 23 concerning pre-trial discovery of documents -- the Republic of France will use its compulsory powers to require production if the demand is formulated pursuant to the Convention, and meets minimum standards of relevance and specificity.

For the foregoing reasons, the decision of the lower court should be reversed, and this action remanded with instructions that demands for evidence situated in France be made in accordance with Hague Convention procedures.

ARGUMENT

POINT I

THE HAGUE CONVENTION IS THE EXCLUSIVE MEANS OF DISCOVERY IN TRANSNATIONAL LITIGATION AMONG THE CONVENTION'S SIGNATORIES UNLESS THE SOVEREIGN ON WHOSE TERRITORY DISCOVERY IS TO OCCUR CHOOSES OTHERWISE

A. The Negotiating [*11] History And Language Of The Convention Mandate Its Use

The Republic of France, the United States and the other signatory nations to the Hague Convention intended to provide a mechanism to define and ease discovery among parties engaged in international commercial activities. n1 The treaty was designed primarily to reconcile the procedural differences between common law discovery procedures, particularly those of the United States, and the systems of civil law nations in order to "improve mutual judicial co-operation in civil or commercial matters." Preamble to the Hague Convention, *reprinted in* 28 U.S.C. § 1781 (Supp. 1986). n2 As Secretary of State Rogers explained in his letter submitting the Convention to President Nixon:

The substantial increase in litigation with foreign aspects arising, in part, from the unparalleled expansion of international trade and travel in recent decades had intensified the need for an effective international agreement to set up a model system to bridge differences between the common law and civil law approaches to the taking of evidence abroad.

Rogers Letter, *supra* p. 4, at 324 (1973). In recognition of these [*12] differences, and accepting that no one system can have worldwide applicability, the drafters of the Convention sought to establish methods for discovery both "tolerable" to the authorities of the state where evidence is located, and "utilizable" in the forum where the action would be tried. *See* Report of the United States Delegation to Eleventh Session of Hague Conference on Private International Law, *reprinted in* 8 Int'l Legal Materials 785, 806 (1969) (hereinafter cited as the "1969 U.S. Delegation Report"). n3 The Convention is thus best understood as a conscious compromise negotiated between representatives of judicial systems with very different approaches to obtaining evidence for trial.

n1 *See* Message From the President of the United States Transmitting the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, S. Exec. Doc. No. A, 92d Cong., 2d Sess. (1972), *reprinted in* 12 Int'l Legal Materials 323 (1973) (hereinafter cited as the "Message from the President"); Letter Of Submittal From Secretary of State William P. Rogers to the President Regarding the Evidence Convention, S. Exec. Doc. No. A.1, 92d Cong., 2d Sess. (1972), *reprinted in* 12 Int'l Legal Materials 324 (1973) (hereinafter cited as the "Rogers Letter"); Senate Comm. on Foreign Relations, Evidence Convention, S. Exec. Rep. No. 92-25, 92d Cong., 2d Sess. 1-2 (1972).

n2 To a lesser extent, the Convention also harmonized conflicting notions of discovery in various common

1985 U.S. Briefs 1695; 1986 U.S. S. Ct. Briefs LEXIS 998, *12

law countries. Thus, for example, discovery in the United Kingdom is not as broad as that permitted in the United States. *See e.g.,* Wilmarth, *Lawyers and the Practice of Law in England: One American Visitor's Observation, Part II,* 14 Int'l Lawyer 171 (1980).

n3 In particular, the drafters were cognizant of and seriously concerned with addressing civil law countries' considerations of sovereignty. *Id.;* Rogers Letter, *supra* p. 4, at 324.

[*13]

This compromise was necessary to overcome the sharp differences, and consequent conflict, between the procedural rules governing discovery in civil law nations and the United States. Indeed, absent the Convention, application of the rules usually employed in French domestic litigation would frequently stymie American discovery.

In domestic actions, French law, like the laws of most civil law jurisdictions, n4 vests in the judge rather than the parties responsibility for the discovery of evidence. All requests by parties for the production of written evidence are made to the judge, who thereafter orders production of such evidence. Nouveau Code de Procedure Civile ("Nouv. C. Pr. Civ.") arts. 132-142 (78th ed. Petits Codes Dalloz 1986). The judge decides whether to order oral testimony by the parties, Nouv. C. Pr. Civ. arts. 184, 185, and non-party witnesses, Nouv. C. Pr. Civ. art. 222; *Enquete, Temoins, Attestations,* Encyclopedie Dalloz de Procedure Civile (1979), par. 94, and conducts the taking of such testimony, Nouv. C. Pr. Civ. arts. 184-231. Although parties and their counsel may be present when testimony is taken of other parties, Nouv. C. Pr. Civ. arts. 189, 192, [*14] or of witnesses, Nouv. C. Pr. Civ. arts. 208, 209, and may submit lists of questions to the judge to be asked orally of the parties or witnesses, the judge decides whether such questions will be asked, Nouv. C. Pr. Civ. arts. 193, 214. Direct interrogation of a party or non-party witness by the party's counsel is not permitted. Nouv. C. Pr. Civ. art. 214. *See* E. Blanc, *Nouveau Code de Procedure Civile Commente dans l'Ordre des Articles* (1985) (hereinafter cited as "Blanc"), discussion under art. 193. n5 *See generally* Borel & Boyd, *Opportunities for and Obstacles to Obtaining Evidence in France for Use in Litigation in the United States,* 13 Int'l Law. 35 (1979).

n4 For discussions of the discovery rules of other civil law nations see, J. Merryman, *The Civil Law Tradition,* 120-131 (1969); *International Cooperation in Litigation: Europe* (H. Smit ed. 1965). *See also* Collins, *Opportunities for and Obstacles to Obtaining Evidence in England for Use in Litigation in the United States,* 13 Int'l Law. 27 (1979) (discovery in the United Kingdom is more narrow than that in the United States). Because there are over 350 jurisdictions in the world, O'Kane & O'Kane, *Taking Depositions Abroad: The Problems Still Remain,* 31 Fed'n Ins. Couns. Q. 343 (1981), numerous differences exist among approaches for evidencegathering.

n5 The scholarly opinions of legal commentators carry great weight in France and are highly regarded as persuasive authority in the French legal system. Decided case law is not controlling in French jurisprudence, in contrast to the principle of *stare decisis* in the United States. *See generally, Amos and Walton's Introduction to French Law* (3d ed. 1967).

[*15]

In contrast, discovery in the United States is managed primarily by the parties to an action. In the pre-trial stage, the judge rarely questions witnesses directly or examines documents, except to resolve disputes when party-managed discovery breaks down or in connection with substantive motions. *See, e.g.,* C. Wright and A. Miller, *Federal Practice and Procedure* §§ 2207, 2214, 2285 (1970).

The sovereignty of the Republic of France requires that the taking of evidence on French territory remain the prerogative of the French judiciary. In response to a questionnaire circulated in 1967 to participating governments prior to the Hague Conference on Private International Law, the Republic of France stated that the French conception of sovereignty and "ordre public" implies that the collection of evidence on French territory may be undertaken only by French judicial authorities. *See Reponses des Gouvernements au Questionnaire sur la Reception des Depositions a*

*l'Etranger,* Conference de La Haye de Droit International Prive, *IV Actes et Documents de la Onzieme Session, Obtention des Preuves a l'Etranger* 21, 33 (Bureau Permanent de la Conference ed. 1970). n6 Discovery [*16] requests in accordance with American rules by American litigants and, *a fortiori,* discovery orders by American courts directly to French nationals in France, undermine the sovereignty of the Republic of France by usurping the powers and duties of the French judiciary in the discovery process.

> n6 *See also* Oxman, *The Choice Between Direct Discovery and Other Means of Obtaining Evidence Abroad: The Impact of the Hague Convention,* 37 Univ. Miami L. Rev. 733, 764 (1983) ("The term 'judicial sovereignty' implies respect for the exclusivity of governmental organs within their own territories -- the monopoly of governmental power that lies at the heart of territorial sovereignty.").

The Convention reconciles the different methods used by its signatories to gather evidence through the use of simplified procedures for letters of request, n7 and methods for taking evidence by diplomatic officers, consular agents and commissioners. n8 These procedures provide for the involvement or consent of the sovereign on whose territory evidence is to be obtained, while obligating that sovereign to permit, or where compulsion is required to enforce, a discovery request in litigation pending [*17] in another forum.

> n7 Letters of request from the judicial authorities in one sovereign state to those in another allow the requesting state's courts to enlist the assistance of the foreign state to obtain evidence or perform some other judicial act in a judicial proceeding. Hague Convention art. 1. The Convention requires the foreign authority to "follow a request of the requesting authority that a special method or procedure be followed, unless [it] is incompatible with" the internal law or procedures of the state of execution. Hague Convention art. 9. In revising its own civil procedure code to be consistent with Hague Convention procedures, France deliberately denied to its courts the right to refuse execution of letters of request on such grounds of incompatibility. *See infra* pp. 19-20. Absent a request that a special procedure be followed, the judicial authority to which the request is made "shall apply its own law as to the methods and procedures to be followed." Hague Convention art. 9. Article 10 requires the authorities in the state executing a letter of request to apply the same measures of compulsion to ensure compliance with the foreign request as are available to ensure the execution of domestic orders. The enforcement measures that may be imposed by a French judge include: ordering the disclosure and production of documents, Nouv. C. Pr. Civ. arts. 133, 139, 142; imposing a daily fine for non-compliance with an order to produce documents, Nouv. C. Pr. Civ. arts. 134, 139; ordering the personal appearance of a party or witness to testify, Nouv. C. Pr. Civ. arts. 184-186, 222, *et seq.;* drawing adverse inferences from the failure to produce evidence or appear when ordered, Nouv. C. Pr. Civ. art. 198; or assessing a fine against a person who refuses to testify when ordered, Nouv. C. Pr. Civ. art. 207.

> n8 Hague Convention arts. 15-17. Parties in an American litigation may obtain evidence from American parties in France by addressing themselves directly to an American diplomatic or consular official without going through French judicial channels. *See infra* pp. 24-25. Where evidence is sought from a French national or other non-American, discovery before such an official must be, and is as a matter of routine, authorized by the Civil Division of International Judicial Assistance of the Ministry of Justice. The available evidentiary procedures are virtually identical to those that may be carried out if discovery were to occur in the United States: depositions, written interrogatories, and production and inspection of documents or other physical items. Article 17 authorizes the appointment of a commissioner who has been approved by the appropriate authority in the state where discovery is to occur. If permitted by American law, a French or American lawyer could be appointed as a commissioner and conduct evidence-gathering procedures in France. Borel & Boyd, *supra* p. 6, at 42.

[*18]

The Republic of France strongly believes that the language and negotiating history of the Convention demonstrate

that it sets forth mandatory procedures by which evidence located abroad may alone be sought, unless the foreign sovereign permits otherwise. Article 27 provides, in pertinent part:

The provisions of the present Convention shall not prevent a Contracting State from . . .

(b) permitting, by internal law or practice, any act provided for in this Convention to be performed upon less restrictive conditions;

(c) permitting, by internal law or practice, methods of taking evidence other than those provided for in this Convention.

The negative wording of Article 27 indicates that discovery by procedures not set forth in the Convention may occur only upon the consent of the state in which the evidence or witness is located. n9 *See also* Hague Convention art. 28 (a Contracting State may ease its procedures in separate bilateral or multilateral agreements). Procedures for seeking evidence not expressly detailed by the Convention or by the laws of the state wherein evidence is sought are not permitted. n10

n9 The first time that the Solicitor General of the United States was asked to advise this Court of the executive branch's views on the Hague Convention, he stated that it "deals comprehensively with the methods available to United States courts and litigants to obtain proceedings abroad for taking evidence" and that "parties to the Convention contemplated that proceedings not authorized by the Convention would not be permitted." Brief for the United States as *amicus curiae* at 5-7, *Volkswagenwerk A.G. v. Falzon*, 465 U.S. 1014 (1984), *reprinted in* 23 Int'l Legal Materials 412, 414 (1984). *But see subsequent* Brief for the United States as *amicus curiae, Club Mediterranee S.A. v. Dorin*, 105 S. Ct. 286 (1984) (Hague Convention not exclusive) *reprinted in* 23 Int'l Legal Materials 1332 (1984); Brief for the United States as *amicus curiae, Anschuetz & Co., GmbH v. Mississippi River Bridge Authority*, 106 S. Ct. 52 (1985) (Hague Convention not exclusive).

n10 *See also* Heck, *U.S. Misinterpretation of the Hague Evidence Convention*, 24 Colum. J. Transnat'l L. 231 (1986) (American courts breach United States international obligations by evading mandates of Convention); Radvan, *The Hague Convention on Taking of Evidence Abroad in Civil or Commercial Matters: Several Notes Concerning its Scope, Methods and Compulsion*, 16 N.Y.U. J. Int'l L. & Pol. 1031 (1984) (American litigants must follow Convention's binding provisions); Augustine, *Obtaining International Judicial Assistance Under the Federal Rules and the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters: An Exposition of the Procedures and a Practical Example: In re Westinghouse Uranium Contract Litigation*, 10 Ga. J. Int'l & Comp. L. 101 (1980) (Convention provides standardized framework replacing all previous methods for seeking evidence in transnational litigation); Comment, *The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters: The Exclusive and Mandatory Procedures for Discovery Abroad*, 132 U. Pa. L. Rev. 1461 (1984) (minimum standards established by Convention preempt all other forms of discovery); Note, *Gathering Evidence Abroad: The Hague Evidence Convention Revisited*, 16 L. & Pol'y in Int'l Bus. 963 (1984) (same).

[*19]

While Article 27 prohibits a court from requesting discovery abroad by procedures not set forth in the Convention, that provision allows states in which evidence is located discretion to provide to a requesting court broader discovery procedures than those prescribed by the Convention. Philip W. Amram, official *rapporteur* of the Hague Convention and United States representative to the committee that drafted the treaty, indicated in his Report n11 that Article 27 was designed to permit a Contracting State to provide "broader, more generous and less restrictive rules of international cooperation in the taking of evidence for the benefit of foreign courts and litigants." Explanatory Report on the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, S. Exec. Doc. No. A.1, 92nd Cong., 2d Sess. (1972), *reprinted in* 12 Int'l Legal Materials 327, 341 (1973) (hereinafter cited as the "Explanatory Report"). n12

1985 U.S. Briefs 1695; 1986 U.S. S. Ct. Briefs LEXIS 998, *19

Indeed, the negotiating history of the Convention is replete with statements that the Convention establishes minimum standards to which signatory nations must adhere, with the limited exception that a state with more liberal local law may make it available [*20] to the requesting court. n13

> n11 "[W]hen the meaning of a treaty is not clear, recourse may be had to the negotiations, preparatory works, and diplomatic correspondence of the contracting parties to establish its meaning." *Arizona v. California*, 292 U.S. 341, 359-60 (1934) (citations omitted).

> n12 *See also* Conference de La Haye de Droit International Prive, *IV Actes et Documents de la Onzieme Session, Obtention des Preuves a l'Etranger* 189 (Bureau Permanent de la Conference ed. 1970) (a state becoming a party to the Convention has freedom to offer unilaterally to any other state, with or without reciprocity, judicial assistance wider than the minimum presented in the Convention).

> n13 *See, e.g.*, 1969 U.S. Delegation Report, *supra* p. 5, at 808; Rogers Letter, *supra* p. 4, at 324 (1973). According to well settled principles of treaty interpretation, the meaning American negotiators have attributed to the treaty should carry great weight. *See Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961).

Civil law nations participating in the treaty agreed to procedures for securing evidence within their borders which required their courts [*21] to use common law practices alien to them. Article 9, which "impose[s] obligations on civil law courts to take evidence 'common-law style,'" n14 and Articles 15-17, which permit discovery to be conducted before a consular official or commissioner instead of a judge, n15 represented large and unprecedented concessions by civil law countries to the United States' desire to have American-style discovery enforced abroad. As noted by President Nixon upon recommending the Convention to the United States Senate, "ratification of the convention will require many other countries, particularly civil law countries, to make important changes in their judicial assistance practice." Message from the President, *supra* p. 4, at 323. The Republic of France and the other civil law signatories would have had little incentive to agree to these American-style innovations unless the Convention defined and limited the scope of procedures by which American litigants seek discovery abroad. *See* Oxman, *supra* p. 7, at 767. n16 The Convention should not be interpreted as if it merely gave the United States new and unilateral privileges without imposing upon it any concomitant obligation of restraint. [*22] To the contrary, the Convention should be recognized as a carefully negotiated compromise embodying reciprocal concessions by the United States and civil law countries.

> n14 Notes & Comments, *United States Ratification of the Hague Convention on the Taking of Evidence Abroad*, 67 Am. J. Int'l L. 104, 105 (1973).

> n15 Articles 15-17 introduce "into the civil law world on a limited basis the concept of taking of evidence by [private] commissioners." *Id.*, at 106. *See also* Explanatory Report, *supra* p. 10, at 337-9, and 1969 U.S. Delegation Report, *supra* p. 5 at 807 (the taking of evidence by commissioners or consular officials raises serious questions of intrusion on sovereignty of civil law countries).

> n16 Notwithstanding the plain language of Article 27 and the clear history of the article, some American courts have surprisingly interpreted that provision not only to permit a signatory nation to allow more liberal discovery within its borders, but also to permit an American court to order discovery abroad by methods broader than those allowed by the Convention. *See, e.g., Lasky v. Continental Products Corp.*, 569 F. Supp. 1227 (E.D. Pa. 1983). Such an interpretation renders the Convention meaningless and unjustifiably implies that the major concessions made by France and other signatories were unnecessary and useless gestures.

[*23]

B. Under French Law, The Hague Convention Is The Exclusive Means Of Discovery In Litigation Involving Parties From Different Countries

Although both the Republic of France and the United States were original signatories to the Hague Convention, its procedures were quickly disregarded by many United States litigants, who instead sought to require French persons to submit to discovery in France based solely on American discovery rules. American lawyers practiced "legal tourism" and "fishing expeditions" in France, demanding documents and oral testimony from French citizens without regard to French procedures or the United States' international obligations. *See* Borel & Boyd, *supra* p. 6, at 35. In order to insure the respect of French sovereignty and to underscore the required exclusive use of the Hague Convention procedures, in 1980 France enacted Law No. 80-538, 1980 J.O., 1799, 1980 D.S.L. 285 (the "1980 Law").

Article 1-*bis* of the 1980 Law n17 provides that:

[s]ubject to any treaties or international agreements and the laws and regulations in force, it is prohibited for any person to request, to investigate or to communicate in writing, orally or by any [*24] other means, documents or information relating to economic, commercial, industrial, financial or technical matters leading to the establishment of proof with a view to foreign administrative or judicial proceedings or as a part of such proceedings. n18

The 1980 Law imposes criminal penalties against persons and entities requesting or disclosing evidence by procedures not expressly permitted by the Hague Convention, other international treaties or French law. Law No. 80-538, art. 3. n19 The 1980 Law provides for the imposition of significant fines on parties complying with such discovery requests, and in the case of individuals, up to six months' imprisonment, or both. Thus, in the case of corporate parties such as the petitioners, the corporation may be liable for fines and any employee who fulfills a discovery request may be subject to fines or imprisonment as well.

n17 Article 1 of the 1980 Law prohibits communication of documents or information of an economic, technical, financial, commercial or industrial nature, where such communication would threaten French sovereign or security interests. It is not at issue here.

n18 *Reprinted and translated in* Toms, *The French Response to the Extraterritorial Application of United States Antitrust Laws,* 15 Int'l Law. 585, 611 (1981).

n19 *Id.* at 609 (French original), 611 (English translation).

[*25]

The principal purpose of the 1980 Law was to require observance in France of:

[t]he rules which define the procedures for obtaining evidence abroad. These procedures result from . . . the provisions of the New Code of Civil Procedure . . . and those of the Hague Convention of March 18, 1970 . . ., together with the declaration made by the French government at the time of its ratification. . . . The procedures thus defined are aimed at giving full effect to our international relations for judicial cooperation by permitting the carrying out on our territory of letters rogatory . . ., as well as the putting into effect . . . of the procedure for obtaining evidence by commissioners. . . .

Response of the Minister of Justice to Question on Article 1-*bis* of Law No. 80-538 in the National Assembly, 1981 J.O.-Deb. Ass. Nat. (Questions), January 26, 1981 at p. 373 (no. 35893), *reprinted and translated in* Toms, *supra* p. 13, at 612 (French original), 614 (English translation). n20

n20 Under the French constitution, members of the French Parliament may submit written or oral questions to government ministers. Const. art. 48. *See also Reglement de l'Assemblee* Nationale, 133-139 (1982); *Reglement du Senat,* arts. 74-82 (1982).

[*26]

1985 U.S. Briefs 1695; 1986 U.S. S. Ct. Briefs LEXIS 998, *26

C. The Eighth Circuit's Decision Erroneously Assumes That The Discovery At Issue Will Not Infringe Upon French Sovereignty Or Violate French Law

The decision of the Eighth Circuit, which holds that an American litigant may disregard the Convention, is based on two fundamental misconceptions. First, the court relied on an artificial and untenable distinction between acts "preparatory" to compliance with a discovery order, and "actual" compliance with such an order, mistakenly concluding that "preparatory" acts do not offend French sovereignty. Second, the court erroneously assumed that the prohibitions of the 1980 Law can be waived.

The court below found that "when the district court has jurisdiction over a foreign litigant the Hague Convention does not apply to the production of evidence in that litigant's possession, even though the documents and information sought may physically be located within the territory of a foreign signatory to the Convention." 782 F.2d at 124. The court based this determination on an artificial distinction between matters "preparatory" to compliance with discovery orders, such as identifying documents and gathering information, [*27] and the "actual" production of documents or interrogatory answers in the United States. Id. at 124-125. The court concluded that because "preparatory" acts do not require foreign attorneys actually to appear in France, French sovereignty was not infringed and the 1980 Law was not violated. Id.

The Eighth Circuit's reasoning and holding misconceive the 1980 Law, defy settled notions of international law and significantly offend the sovereignty of the Republic of France. The court below erroneously assumed that the powers flowing from its in personam jurisdiction relieved the court of any obligation to respect the territorial integrity and sovereignty of foreign states. The theory that the jurisdiction of a court over a witness places all of the witnesses' property and information, wherever located, under the control of that court without regard to the interest of the discovered party's sovereign transgresses the most elementary notions of international comity. n21 As one American commentator has noted: "The notion that jurisdiction to command appearance before the court 'domesticates' the witness or party for all purposes relevant to the litigation is [*28] fallacious." Oxman, supra p. 7, at 741.

n21 See Brief for the United States as amicus curiae at 7, n.3, Volkswagenwerk A.G. v. Falzon, supra p. 9, at 415: "The fact that a state court has personal jurisdiction over a private party . . . does not mean that treaty limits on proceedings for the taking of evidence abroad somehow do not apply to discovery orders addressed to such parties. The Evidence Convention protects the judicial sovereignty of the country in which evidence is taken, not the interests of the parties to the suit. Accordingly, its strictures apply regardless of the existence of personal jurisdiction." See also Oxman, supra p. 7, at 740: "The most cursory reading of International Shoe Co. v. Washington and its progeny should suggest the supremacy of context over rigid preconceived jurisdictional conclusions. Shaffer v. Heitner, which requires that the standards for establishing in personam jurisdiction apply even where the defendant's property is located within the forum state, is stood on its head by the proposition that in personam jurisdiction places all property wherever located under the control of a court that once purported to assert jurisdiction only over that property located within the state."

[*29]

It is a basic tenet of international law that each state has sovereignty over all activities taking place within its territory. See The Schooner Exchange v. McFaddon, 11 U.S. (7 Cranch) 116 (1812). A nation may not, therefore, conduct official activities in the territory of another nation without the latter's consent. Id. n22

n22 This principle of sovereign equality has been described by the United Nations General Assembly as including the following elements: "(a) States are juridically equal; (b) Each State enjoys the rights inherent in full sovereignty; (c) Each State has the duty to respect the personality of other States; (d) The territorial integrity and political independence of the State are inviolable. . . ." Declaration On Principles of International Law Concerning Friendly Relations and Co-operation Among States in Accordance with the Charter of the United

Nations, G.A. Res. 2625, 25 U.S. GAOR Supp. (No. 28) at 21, U.N. Doc. A/8028 (1970), *reprinted in* 9 Int'l Legal Materials 1292 (1970).

The discovery demanded by the court below clearly requires activities to be conducted on French territory, even accepting the court's contrived distinction [*30] between "preparatory" acts and the physical production in the United States of evidence. Documents must be identified, sorted and assembled in France, answers to interrogatories must be developed and sworn to based on information situated in France, and the end result must be forwarded to the United States. n23 International law requires that United States courts refrain from ordering such activities without the consent of the Republic of France.

n23 While the court below did not discuss whether a party who is subject to an American court's jurisdiction but is a non-resident of the United States may be ordered not only to produce documents solely pursuant to American rules, but also to appear in the United States for a deposition, the Fifth Circuit has addressed this question. In *In re Messerschmitt Bolkow Blohm GmbH*, 757 F.2d 729 (5th Cir. 1985), *cert. granted sub nom. Messerschmitt Bolkow Blohm GmbH v. Walker*, 106 S. Ct. 1633 (1986), the court stated that "[b]ecause the depositions will in fact be taken in the United States, they are not governed by the Hague Convention." *Id.* at 732. *See also Wilson v. Stillman & Hoag*, 121 Misc. 2d 374, 467 N.Y.S.2d 764 (Sup. Ct. N.Y.Co. 1983). This conclusion, that ordering a person to travel for a deposition from one nation to the United States does not order an activity to be conducted in the territory of that nation, elevates the geographic fiction of "preparatory acts" to an absurdity.

[*31]

In the instant case, no such consent has been given. To the contrary, the Republic of France has made a determination consistent with international law and French international obligations that, except in accordance with the Hague Convention, a person may not "communicate in writing, orally or by any other means, documents or information . . . leading to the establishment of proof with a view to foreign . . . judicial proceedings. . . ." 1980 Law art. 1-*bis*. Absent compliance with the procedures of the Hague Convention -- under which all of the information sought by respondents could effectively be gathered -- a French person providing such evidence is clearly subject to the 1980 Law's criminal penalties.

Moreover, contrary to the assumption implicit in the lower court's decision, the 1980 Law does not empower the executive branch of the French government to grant waivers from the law's prohibitions against transnational discovery conducted outside the Hague Convention procedures. Indeed, no mechanism for obtaining such waivers exists. n24 The conclusion of the Eighth Circuit that French sovereignty is not offended by the discovery order below, which mandates the violation [*32] of the 1980 Law, improperly questions the importance of that law to the Republic of France. n25 For a United States court to require violation of the 1980 Law, and to determine that French sovereignty is not thereby infringed, gravely offends French sovereignty.

n24 The requirement that some American courts have sought to impose, under threat of sanctions, that a French witness seek a waiver of the 1980 Law is regarded by the Republic of France as a significant infringement or attempted infringement of its sovereignty and a material interference with its national interests. *See e.g., Graco, Inc. v. Kremlin, Inc.*, 101 F.R.D. 503 (N.D. Ill. 1984); *Wilson v. Stillman & Hoag, Inc.*, 121 Misc. 2d 374, 467 N.Y.S.2d 764 (Sup. Ct. N.Y. Co. 1983). *See also* Jacobs, *Extraterritorial Application of Competition Laws: An English View*, 13 Int'l Law. 645 (1979). No such waiver has ever been granted despite the contrary assumption of United States courts.

n25 *Cf. Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 432 (1964) ("[T]he concept of territorial sovereignty is so deep seated, [that] any state may resent the refusal of the courts of another sovereign to accord validity to acts within its territorial borders.").

1985 U.S. Briefs 1695; 1986 U.S. S. Ct. Briefs LEXIS 998, *33

[*33]

The Hague Convention was intended to harmonize situations, such as the instant one, where two nations have jurisdiction over a witness in a manner that recognizes both the power of the court before which the litigation is pending and the interests of the foreign witness' sovereign. The Eighth Circuit's view that the Convention does not apply to parties to an action belittles the achievement of its framers, suggesting that they deliberately declined to address the principal sources of conflict in transnational civil litigation. That view is at odds with the language of the Convention, which draws no distinction between parties and non-party witnesses. It is also directly contradicted by the negotiating history of the treaty, which demonstrates that the Convention was intended to provide a comprehensive, far-reaching solution to the evidentiary problems posed by international civil litigation. If that laudable objective is to be achieved, and if the Convention is to be rescued from irrelevance, the Eighth Circuit's order must be reversed. n26

> n26 In this connection, the Republic of France naturally rejects the Eighth Circuit's conclusion that a first resort to the Hague Convention would somehow be more offensive to French sovereignty than complete disregard of the treaty.

[*34]

POINT II

THE HAGUE CONVENTION PROCEDURES PROVIDE AMERICAN LITIGANTS WITH A FAIR AND REASONABLE OPPORTUNITY TO GATHER EVIDENCE

A. Compulsory Discovery Is Available Pursuant To Letters Of Request

1. The French government has revised its code of civil procedure to accommodate compulsory discovery pursuant to the Hague Convention

The French procedural rules described in Point I(A), *supra*, at one time precluded such basic American evidentiary procedures as direct and cross-examination of witnesses in the context of letters of request to be executed in France. *See, e.g.*, Gavalda, *Les Commissions Rogatoires Internationales en Matiere Civile et Commerciale* (hereinafter cited as "Gavalda"), 53 Revue Critique de Droit International Prive, 15, 37 (1964). Accordingly, following ratification of the Hague Convention, the French government included a special set of provisions on international letters of request as part of a revision of the French code of civil procedure. Articles 733 through 748 of the Nouveau Code de Procedure Civil create an exception to French procedural rules in the case of foreign litigants using Hague Convention procedures, n27 and radically [*35] depart from traditional French rules by opening the Republic of France's borders to United States-style discovery. As one French author has put it, the new articles were adopted in order

> to harmonize [French] rules of procedure with those of the main international treaties in force, especially with the provisions of the [Hague Convention] in order to establish a framework for execution of letters rogatory both "tolerable in the State of execution and utilizable by the court before which the case is being argued," and to confer, therefore, full efficiency on [French] relations of mutual international cooperation.

Chatin, *Regime des Commissions Rogatoires Internationales de Droit Prive*, 66 Revue Critique de Droit International Prive 611 (1977) (translation supplied) *quoting from* Amram, *Rapport Explicatif sur La Convention de La Haye du 18 Mars 1970 sur l'Obtention des Preuves a l'Etranger en Matiere Civile ou Commerciale*. So long as foreign litigants comply with the Hague Convention, French courts will make available their coercive powers to enforce compliance with these newly adopted procedures.

> n27 Articles 733 through 748 are translated into English in H. DeVries, N. Galston & R. Loening, *French Law -- Constitution and Selective Legislation* (1986).

[*36]

As a general matter, Article 739 provides that: "The rogatory commission is executed in accordance with French law unless the foreign court has requested that a special form of procedure be followed." Article 739 adopts the text of Article 9 of the Hague Convention but deliberately denies to French courts the option, permitted under Article 9, of refusing to honor the foreign court's request if the "special procedures" are incompatible with local law. Blanc, *supra* p. 6 at discussion under art. 739. Thus, a procedure requested by an American court must ordinarily be followed.

Article 739 further provides that, upon request of a party, a full transcript or recording will be made of any oral examination. This procedure was designed to replace the previous system under which only a summary was prepared, which often turned out to be inadmissible as testimony in proceedings in countries such as the United States. *See* Gavalda, *supra* p. 19, at 37. Allowing oral examinations to be transcribed was not mandated by the Convention; the provisions of the new procedural rules thus go beyond what is required by the Convention and evidence the Republic of France's good faith in [*37] promoting effective international judicial cooperation.

Article 740 provides that the parties and their counsel may, upon authorization of the French judge, question the witness directly, provided that such questions and answers are translated into French. French law thus specifically allows for both direct and cross-examination of witnesses in Hague Convention proceedings, in contrast to the usual domestic rule, *see supra* p. 6, providing that questions may only be asked by the French judge. Chatin, *supra* p. 19, at 619. n28 Moreover, Article 740 expressly permits counsel conducting such direct and cross-examination to be "foreign", *i.e.,* to participate despite lack of admission to any French bar. n29 American litigants may therefore be accompanied and represented by their American counsel in obtaining evidence pursuant to international letters of request. n30

  n28 Although certain French courts had permitted cross-examination of witnesses pursuant to international letters of request prior to adoption of Articles 736-748, those cases were qualified as "exceptional." *Commission Rogatoire (Matiere Civile),* Encyclopedie Dalloz de Droit International, P40 (1969).

  n29 In this regard, French law appears to go beyond American practice, which would normally permit questioning only by a member of a United States bar, and, indeed, sometimes only by a member of the bar of the state in which the examination is conducted. *See e.g.,* Rule 2(a), General, Civil, Criminal, Admiralty & Magistrate Proceedings in the United States District Courts for the Southern and Eastern Districts of New York; N.Y. Jud. Law § 478 (Consol. 1983); Cal. Bus. & Prof. Code § 6125 (1974).

  n30 The French public prosecutors are responsible for insuring that the witnesses' fundamental due process rights are respected in all of the aforementioned proceedings. Nouv. C. Pr. Civ. art. 744.

[*38]

The Republic of France has taken all necessary measures to insure the prompt and effective execution of international letters of request. Article 738 requires a judge to commence execution as soon as the letter of request is received. Article 742 adopts the provisions of Article 12 of the Hague Convention. Thus, execution of letters of request may not be refused solely because, under French law, the French courts would normally have exclusive jurisdiction over the subject matter, would not recognize the cause of action alleged, or would refuse to grant the relief sought. A French judge may refuse to execute international letters of request only where the request is outside his or her functions, *e.g.,* enforcing an administrative order or providing a legal opinion, or where French sovereignty or security would be prejudiced thereby. Nouv. C. Pr. Civ. art. 743; Hague Convention art. 12. n31

  n31 In the eleven years since the Hague Convention entered into force in France, there have been no reported cases in which this "sovereignty or security" exception has been raised.

Under the revised civil procedure code, American litigants seeking compulsory discovery pursuant to [*39] Hague Convention procedures may take discovery by methods comparable to those used in the United States. Documents may be examined, interrogatory answers may be compelled, and oral examinations of witnesses may be taken although they must proceed on French soil before a French judge. There are opportunities for direct and cross-examination and no undue constraints are imposed on the scope of questioning. In deciding that compliance with the Hague Convention would "delay and frustrate the discovery process," 782 F.2d at 125, the court below simply ignored the careful and comprehensive procedures adopted by the Republic of France to insure that letters of request will result in effective discovery for foreign litigants.

2. The declaration made by the Republic of France pursuant to Article 23 does not apply to reasonably specific requests for documents having a direct and clear nexus with the subject matter of the litigation

Parties to the Hague Convention may declare that they "will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries." Hague Convention art. 23. The Republic of France [*40] has made such a declaration.

In formulating its declaration under Article 23, the Republic of France intended to prohibit "legal tourism," *i.e.,* unfocused demands for documents by foreign lawyers acting without court supervision. n32 *See* Gougenheim, *Convention sur l'Obtention des Preuves a l'Etranger en Matiere Civile et Commerciale,* 96 Journal de Droit International 315, 319 (1969). As the Republic of France and the United States delegations to the Convention well understood, Article 23 was not intended to preclude American litigants from obtaining necessary evidence from abroad, but rather to prevent discovery in the nature of a "fishing expedition." *See* Report of the United States Delegation to the Special Commission on the Operation of the Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, *reprinted in* 17 Int'l Legal Materials 1417, 1421 (1978). The French declaration pursuant to Article 23 does not apply to letters of request seeking the discovery of documents, provided that the documents requested are enumerated in the letter of request and have a direct and clear nexus with the subject matter of the litigation. [*41] The request must, of course, also be consistent with the Convention's general requirements regarding the nature of the requesting authority and respect for the requested state's public policy. *See* August 19, 1986 Letter from the Minister of Justice to the Minister of Foreign Affairs, annexed hereto as Appendix B.

n32 Recent steps to curb abuses of United States discovery procedures -- even in wholly domestic cases -- anticipate a more active role for the trial judge in scrutinizing discovery requests. *See* Fed. R. Civ. P. 26(b)(1), 26(f), 26(g) and the 1983 advisory committee notes thereto. Moreover, the draft Restatement requires that

[b]efore issuing an order for production of documents, objects, or information located abroad, the court, or where authorized the agency, should scrutinize a discovery request more closely than it would scrutinize comparable requests for information located in the United States. Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, discovery (including requests for documents) may extend to any matter not privileged which is relevant to the subject matter of the action, even if the information sought would be inadmissible at trial, if it appears reasonably calculated to lead to the discovery of admissible evidence. However, the second paragraph of that Rule, added in 1983, calls for imposition by the court of limits on the extent of discovery comparable to those set out in Subsection 1(c). Given the degree of difficulty in obtaining compliance, and the amount of resistance that has developed in foreign states to discovery demands originating in the United States, it is ordinarily reasonable to limit foreign discovery to information necessary to the action (typically, evidence not otherwise readily obtainable) and directly relevant and material.

*Restatement of Foreign Relations Law of the United States (Revised)* § 437[420] comment a (Tent. Draft No. 7, 1986).

[*42]

1985 U.S. Briefs 1695; 1986 U.S. S. Ct. Briefs LEXIS 998, *42

The French declaration under Article 23 does not impede international judicial assistance. The curbs that it imposes on "fishing expeditions" will not result in an ineffective system of justice. As recognized by those American state courts that require discovery demands to specifically identify the evidence sought to be examined, n33 "fishing expeditions" are not essential to achieving justice even in common law systems.

n33 *E.g.*, N.Y. Civ. Prac. R. 3120 (McKinney 1970).

In any event, the Article 23 declaration of the Republic of France does not change the treaty from a mandatory to a permissive pact; the treaty contains no language permitting any such construction and evinces no such intent by its signatories. n34 To the contrary, Article 23 and the resulting curbs upon overseas "fishing expeditions" by a few overzealous American litigants should be recognized as a small price that the United States paid in exchange for the broad benefits conferred by the Convention on the vast majority of Americans involved in international litigation.

n34 Indeed, each of the signatories to the Convention, with the exception of the United States, Barbados, Israel and Czechoslovakia, exercised to some degree its right to make an Article 23 declaration.

[*43]

B. France Permits A French Party Or Witness To Comply Voluntarily With A Discovery Request Pursuant To The Hague Convention

Far more frequent and important in practice than compulsory discovery pursuant to letters of request is voluntary discovery in France pursuant to Articles 15-17 of the Hague Convention. The overwhelming majority of discovery requests by American litigants for evidence in France are satisfied willingly in accordance with procedures before consular officials and, occasionally, commissioners, and without the need for involvement by a French court or use of its coercive powers. Indeed, the United States Embassy in Paris will facilitate such requests to discover evidence and does so on a regular basis.

An information sheet prepared by the Office of American Services of the United States Embassy in Paris (the "Information Sheet"), which explains the elements of voluntary proceedings before consular officials or commissioners, n35 is readily available to the general public at the Embassy in Paris and has been available for years. (The current form is annexed as Appendix B hereto.) As explained therein, the United States court in which the action is pending [*44] initially issues an order designating any diplomatic or consular officer of the United States stationed in Paris to take evidence. Information Sheet at A6. Oral examination of American parties or witnesses may occur before such officers at the Embassy without any further steps. If evidence is sought from French nationals or other non-Americans, and in any case where a commissioner has been named pursuant to Article 17, the Civil Division of International Judicial Assistance of the Ministry of Justice (the "Civil Division") must authorize the discovery. Information Sheet at A6-7. While the Embassy will obtain authorization from the Civil Division at no charge for any party requesting it to do so, the Civil Division will also entertain requests made directly by an interested party or its counsel. Authorization is routinely granted and requests are handled in an expeditious manner; depending on the urgency of the request, authorization has been granted within one to two days. *See* Borel & Boyd, *supra* p. 6, at 42. n36

n35 The Information Sheet also describes the Hague Convention procedures for use of letters of request.

n36 While the Embassy is unable to arrange for court reporters, the parties are free to make such arrangements. The Embassy will provide to litigants wishing to make such arrangements a list of qualified stenographers and, if necessary, interpreters.

[*45]

Under the declarations of the Republic of France made pursuant to Articles 16 and 17, the texts of which are

1985 U.S. Briefs 1695; 1986 U.S. S. Ct. Briefs LEXIS 998, *45

reprinted in Appendix C hereto (the "Declarations"), such authorization is conditioned on the evidence being taken at the Embassy. In practice, this condition is easily satisfied since, as the Information Sheet points out, the Embassy will provide the use of a hearing room free of charge. n37 The Embassy itself notifies the parties and the Civil Division of the room, date and time for the oral examination.

> n37 While a United States statutory fee for the presence of a consular officer will be charged if the proceeding occurs under Articles 15 or 16, this is not true if a commissioner has been appointed pursuant to Article 17. Information Sheet at A7, 9.

While the Information Sheet does not refer to requests for interrogatory answers or documents, it is the long-standing practice, approved of by both the Embassy and the Civil Division, to handle such requests in the same expeditious manner. Once a discovery request is authorized by the Civil Division, the documents or interrogatory answers are brought to the Embassy. There, a consular official supervises the packing [*46] and sealing of documents, takes the oath of the person answering the interrogatories, and arranges for the evidence to be sent by United States Armed Forces Mail to the court that issued the production order appointing the consular official or commissioner to take evidence. The United States judge then makes the documents or interrogatory answers available to the party requesting production. Under these well-settled procedures, the full panoply of American-style discovery devices are available and may promptly be obtained. n38

> n38 Appearance pursuant to Articles 16 and 17 is voluntary and, pursuant to the Declarations, non-American parties from whom discovery is sought must be informed in advance that failure to appear will not give rise to criminal proceedings in the state from which evidence is requested. However, as the Republic of France recognizes, French parties subject to a United States court's jurisdiction have a strong incentive to cooperate with American discovery requests pursuant to Articles 16 and 17; their own case could be hampered by imposition of the civil sanctions permitted under *Societe Internationale v. Rogers,* 357 U.S. 197 (1958), and its progeny if they do not make good faith efforts to comply with American discovery requests, since France provides mechanisms for such discovery to occur.

[*47]

The willingness of the Republic of France to cooperate in litigation involving parties from another country is sincere. France has taken substantial measures to accommodate the interests of United States litigants, even though permitting American-style discovery is alien to domestic litigation in France. Under the Hague Convention and the subsequent implementing legislation enacted in France, United States-style discovery is available on both a compulsory and voluntary basis. The lower court's decision ignores the effect of these significant accommodations and, unless reversed, destroys the principal achievement of the Hague Convention -- the establishment of comprehensive methods for international judicial cooperation that respect the sovereignty of the signatory nations.

CONCLUSION

The order of the Court of Appeals should be reversed and the case remanded to the district court with instructions that demands for evidence situated in France be in accordance with Hague Convention procedures.

*Respectfully submitted,*

CLEARY, GOTTLIEB, STEEN & HAMILTON, One State Street Plaza, New York, N.Y. 10004, (212) 344-0600, PETER S. PAINE, JR., GEORGE J. GRUMBACH, JR. *, MITCHELL [*48] A. LOWENTHAL, JESSICA SPORN TAVAKOLI

1985 U.S. Briefs 1695; 1986 U.S. S. Ct. Briefs LEXIS 998, *48

\* Counsel of Record

CLEARY, GOTTLIEB, STEEN & HAMILTON, 41, Avenue de Friedland, 75008 Paris, France, (1)45 63 14 94, WILLIAM B. McGURN, III, MARTIN GDANSKI, Attorneys for *Amicus Curiae*

APPENDICES

APPENDIX A

REPUBLIQUE FRANCAISE, MINISTERE DE LA JUSTICE, Direction des Affaires Civiles et du Sceau, 13, place Vendome, 75042 Paris Cedex 01, Tel. 261.80.22

19 Aout 1986

Le Garde des Sceaux, Ministre de la Justice a Monsieur le Ministre des Affaires Etrangeres, Direction des Affaires Juridiques, 37, quai d'Orsay, 75007 Paris

*OBJET:* Application de la Convention de la Haye du 18 mars 1970 sur l'obtention des preuves a l'etranger en matiere civile ou commerciale.

Vous avez bien voulu me faire part des difficultes que l'application de la reserve de l'article 23 souleve dans les relations avec certains Etats parties a la Convention de la Haye du 18 mars 1970 sur l'obtention des preuves a l'etranger en matiere civile et commerciale.

J'ai l'honneur de vous faire savoir que l'autorite centrale, designee conformement a l'article 2 de la Convention et qui releve du Ministere de la Justice, ne s'oppose pas a la transmission aupres [*49] de la juridiction francaise competente d'une commission rogatoire qui a pour objet la procedure de "pre-trial discovery of documents" lorsque celle-ci presente les garanties suivantes: les documents demandes sont enumeres dans la commission rogatoire et ont un lien direct et precis avec l'objet du litige. Il va de soi que les conditions prevues de maniere generale par la Convention en ce qui concerne la nature de l'Autorite requerante et le respect de l'ordre public de l'Etat requis doivent avoir ete observees.

Je vous suggere a cette occasion le depot par le gouvernement francais aupres du gouvernement des Pays-Bas, depositaire du traite, d'une declaration interpretative de la precedente dans le sens indique ci-dessus afin d'ameliorer la cooperation judiciaire internationale.

Pour le Garde des Sceaux, Ministre de la Justice

Pour le Directeur des Affaires Civiles et du Sceau

Le Sous-Directeur
Christian ROEHRICH

REPUBLIC OF FRANCE, MINISTRY OF JUSTICE, Office of Civil Affairs and of the Seal, 13, place Vendome, 75042 Paris Cedex 01, Tel. 261.80.22

August 19, 1986

*Le Garde des Sceaux,* Minister of Justice to The Minister of Foreign Affairs, Office of Legal Affairs, [*50] 37, quai d'Orsay, 75007 Paris

RE: Application of the Hague Convention of March 18, 1970 on the Taking of Evidence Abroad in Civil or

1985 U.S. Briefs 1695; 1986 U.S. S. Ct. Briefs LEXIS 998, *50

Commercial Matters.

You have informed me of the difficulties that the application of the reservation under article 23 raises with respect to relations with certain States that are signatories of the Hague Convention of March 18, 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters.

I have the honor of advising you that the Central Authority designated pursuant to article 2 of the Convention, which is under the jurisdiction of the Ministry of Justice, does not object to transmission to the competent French court of a letter of request whose purpose is "pre-trial discovery of documents" so long as such letter of request presents the following assurances: the requested documents must be enumerated in the letter of request and have a direct and clear nexus with the subject matter of the litigation. It goes without saying that the conditions generally provided in the Convention regarding the nature of the requesting authority and respect for the requested State's public policy must have been observed.

I suggest on this occasion that [*51] the French government deposit with the Dutch government, the depository of the treaty, a declaration interpreting the prior one as indicated above in order to improve international judicial cooperation.

For *le Garde des Sceaux,* Minister of Justice

For the Director of Civil Affairs and of the Seal

The Assistant Director
Christian ROEHRICH

APPENDIX B

INFORMATION CONCERNING DEPOSITIONS AND LETTERS ROGATORY IN FRANCE

Since October 1974 The Hague Convention of 1970 on Taking of Evidence Abroad in Civil and Commercial Matters has been in force in France. Arrangements to take evidence in France for use in civil cases before courts in the United States must therefore be made in accordance with the general provisions of that Convention, and subject to certain specific provisions established by the French Government.

The Convention of 1970 provides three means by which evidence may be taken:

1. *LETTERS ROGATORY.* By letters rogatory (letters of request) from a judicial authority in the United States to the competent authority in France requesting that authority to obtain evidence or to perform some other judicial act. (Article 1-14.) Such letters of request should [*52] be addressed by the court in the United States to the Bureau de l'Entraide Judiciaire Internationale, Direction des Affaires Civiles et du Sceau, Ministere de la Justice, 13, place Vendome, 75042 Paris, Cedex 01, France. *Letters of request must be written in French or accompanied by a translation into French.* A letter of request should specify:

(a) the authority requesting its execution and the authority requested to execute it (name of the court, or "the appropriate judicial authority of France");

(b) the names and addresses of the parties to the proceedings, and their representatives;

(c) the nature of the proceedings, and all necessary information pertaining to it;

(d) the evidence to be obtained;

(e) the names and addresses of the persons to be examined;

1985 U.S. Briefs 1695; 1986 U.S. S. Ct. Briefs LEXIS 998, *52

(f) the questions to be put to the witnesses or a statement of the subject matter on which they are to be examined;

(g) the documents or other property to be inspected;

(h) whether the evidence is to be given under oath or affirmation, and any specific form of oath that must be used;

(i) whether any special procedure or method should be followed in taking the evidence.

In the absence of special instructions [*53] under items (b) and (i), the French court executing the letter of request will follow its own normal procedures.

The court issuing the letter of request may request to be informed of the date and place of the proceedings, and parties to the case and their representatives may be present. Judges of the requesting court may also be present at the proceedings.

There are no fees required for the execution of letter [sic] of requests; however, the French court may require reimbursement for any fees paid to experts or interpreters, or expenses incurred as a result of use of special procedures requested by the U.S. court.

2. *DEPOSITIONS BEFORE A DIPLOMATIC OR CONSULAR OFFICER.* By deposition before a diplomatic or consular officer of the United States (Articles 15 and 16 of the Convention and Title 28 United States Code, Section 2072). Depositions may only be taken by commission issued by the competent court. The commission should be issued to "any consular officer of the United States stationed at Paris, France" rather than to any specific name or title of consular officer.

American consular officers may take depositions from witnesses of American nationality [*54] on Embassy premises without special restrictions. However, before evidence may be taken from French nationals or nationals of third countries, authorization must be obtained in advance from the Bureau de l'Entraide Judiciaire Internationale of the Ministry of Justice. The following specific provisions must be met:

(a) the deposition must be held on the Embassy premises;

(b) the hearing must be open to the public;

(c) the date and time of the hearing must be notified to the Ministry of Justice in advance;

(d) the witnesses must be summoned by written notice in French in advance of the hearing date (15 days advance notice). The written notice must include assurances that appearances are voluntary, that the witness may be represented by a lawyer, and that the parties to the case have consented to the deposition, or, if opposed, the reasons for their opposition.

The Embassy will obtain authorization from the Ministry of Justice. There is no charge for the use of the hearing room or for advance preparations. However, there is a statutory fee of $90.00 an hour for the deposition or fraction thereof. *The estimated fee must be deposited in advance* in the form of a certified [*55] check payable to the American Embassy, Paris, France. Any balance remaining after the service has been performed will be refunded.

The Embassy is unable to provide the service of stenographers or interpreters. It is therefore necessary for the interested parties to arrange for a court stenographer to take down the testimony and transcribe it, unless the answers are of the "Yes and No" type, and space is provided on the interrogatories for the witness to write in his own brief replies. If the testimony is to be taken in any language other than English, the interested parties must arrange for a court interpreter. A list of qualified stenographers and interpreters is attached. The Embassy will not act as agent in arranging for services of stenographers and interpreters.

1985 U.S. Briefs 1695; 1986 U.S. S. Ct. Briefs LEXIS 998, *55

*IMPORTANT - PLEASE NOTE:*

In all cases involving witness [sic] of French nationality or third country nationality, the Embassy must have the information or documents listed below *at least 45 days before the deposition* is to be held. This timing is necessary in order to allow sufficient time to obtain authorization from the Ministry of Justice and provide the required advance notice to witnesses. [*56]

(a) Commission to take deposition, referring to The Hague Convention, and precise information on name of court, name of judge or issuing authority, the names of parties to the case and their representatives;

(b) The names and addresses (telephone numbers, if available) of all witnesses to be summoned;

(c) The questions to be put to the witnesses or a statement of the subject matter on which they are to be examined;

(d) The names of any of the parties or their representatives who plan to attend the hearings;

(e) The name, address, and telephone number of the stenographer and interpreter who have been selected (if any);

(f) Whether the parties to the case have consented to the deposition, and if not, the reasons for any objection which has been made;

(g) A certified check for the estimated consular fee;

(h) A suggested date for the hearing (if there are preferences), not less than 45 days after Embassy receives the above information;

(i) All documents listed above must be accompanied by a translation in French, for the Ministry of Justice.

The Embassy will notify all parties planning to attend the hearing of the date set as soon as authorization has been received [*57] from the Ministry of Justice.

## 3. *DEPOSITIONS BEFORE A PERSON COMMISSIONED BY THE COURT*

Evidence may be taken in France by deposition before any competent person commissioned by a court in the United States. Authorization must be obtained in advance from the Bureau de l'Entraide Judiciaire Internationale of the Ministry of Justice. The hearing must be held within the Embassy property. All of the other provisions and the general procedure described above for depositions before a consular officer must be followed, except that there is no consular fee because the services of a consular officer are not required. In addition, the request for authorization from the Ministry of Justice must include:

(a) an explanation of the reasons for choosing this method of taking evidence, taking into account the judicial costs involved; and

(b) the criteria for designating the individual commissioned to take evidence.

The information required under (a) and (b) above must be supplied to the Embassy (along with the other information listed under 2, above) at least 45 days before the hearing will be held.

OAS/NOT Rev. Jan 86

APPENDIX C

Declarations of the Republic of France With [*58] Respect to the Hague Evidence Convention

1985 U.S. Briefs 1695; 1986 U.S. S. Ct. Briefs LEXIS 998, *58

In conformity with the provisions of Article 16, the Ministry of Justice, Civil Division of International Judicial Assistance, 13 Place Vendome, Paris (1er), is designated as the competent authority to give permission to diplomatic officers or consular agents of a Contracting State to take the evidence, without compulsion, of persons other than nationals of that State in aid of proceedings commenced in the courts of a State which they represent.

That permission, which shall be given to each specific case and shall be accompanied by special conditions when appropriate, shall be granted under the following general conditions:

1. Evidence shall be taken only within the confines of the Embassies or Consulates;

2. The date and time of taking the evidence shall be notified in due time to the Civil Division of International Judicial Assistance so that it may have the opportunity to be represented at the proceedings;

3. Evidence shall be taken in premises accessible to the public;

4. Persons requested to give evidence shall be served with an official instrument in French or accompanied by a translation into French, and that instrument [*59] shall mention:

a. That evidence is being taken in conformity with the provisions of The Hague Convention of March 18, 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters and relates to legal proceedings pending before a jurisdiction specifically designated by a Contracting State;

b. That appearance is voluntary and failure to appear will not give rise to criminal proceedings in the State of origin;

c. That the parties to the trial are consenting or, if not, the grounds of their objections;

d. That in the taking of evidence the person concerned may be legally represented;

e. That a person requested to give evidence may invoke a privilege or duty to refuse to give evidence.

A copy of these requests shall be transmitted to the Ministry of Justice.

5. The Civil Division of International Judicial Assistance shall be kept informed of any difficulty.

In conformity with the provisions of Article 17, the Ministry of Justice, Civil Division of International Judicial Assistance, 13 Place Vendome, Paris (1er), is appointed as the competent authority to give permission to persons duly appointed as commissioners to proceed, without compulsion, to take any [*60] evidence in aid of proceedings commenced in the courts of a Contracting State.

This permission, which shall be given for each specific case and shall be accompanied by special conditions when appropriate, shall be granted under the following general conditions:

1. Evidence shall be taken only within the Embassy confines;

2. The date and time of taking the evidence shall be notified in due time to the Civil Division of International Judicial Assistance so that it may have the opportunity to be represented at the proceedings;

3. Evidence shall be taken in premises accessible to the public;

4. Persons requested to give evidence shall be served with an official instrument in French or accompanied by a translation in French, and that instrument shall mention:

1985 U.S. Briefs 1695; 1986 U.S. S. Ct. Briefs LEXIS 998, *60

a. That evidence is being taken in conformity with the provisions of The Hague Convention of March 18, 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters and relates to legal proceedings pending before a jurisdiction specifically designated by a Contracting State;

b. That appearance is voluntary and failure to appear will not give rise to criminal proceedings in the State of origin;

c. That [*61] the parties to the trial are consenting and, if not, the grounds of their objections;

d. That in the taking of evidence the person concerned may be legally represented;

e. That a person requested to give evidence may invoke the privilege and duty to refuse to give evidence.

A copy of these requests shall be transmitted to the Ministry of Justice.

5. The Civil Division of International Judicial Assistance shall be kept informed of any difficulty.

The request for permission transmitted by the requesting authority to the Ministry of Justice shall specify:

1. The motives that led to choosing this method of taking evidence of preference to that of a Letter of Request, considering the judiciary costs incurred;

2. The criteria for appointing commissioners when the person appointed does not reside in France.