# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION | ) ) ) | MDL No. 05-1717-JJF |
| | ) | |
| ADVANCED MICRO DEVICES, INC., a Delaware corporation, and AMD INTERNATIONAL SALES & SERVICE, LTD., a Delaware corporation, | ) ) ) ) ) | Civil Action No. 05-441-JJF |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| INTEL CORPORATION, a Delaware corporation, and INTEL KABUSHIKI KAISHA, a Japanese corporation, | ) ) ) ) | |
| Defendants. | ) ) | |
| PHIL PAUL, on behalf of himself and al others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 05-485-JJF |
| v. | ) ) | |
| INTEL CORPORATION, | ) ) | CONSOLIDATED ACTION |
| Defendant. | ) ) | |

**ACER AMERICA CORPORATION'S SUPPLEMENTAL OPPOSITION TO: (1)UNION FEDERALE DES CONSOMMATEURS – QUE CHOISIR'S MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF SEEKING MODIFICATION TO PROTECTIVE ORDERS; AND (2) APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR AN ORDER REQUIRING INTEL AND THIRD PARTIES TO PROVIDE ACCESS TO DOCUMENTS AND DEPOSITION TESTIMONY FOR USE IN FOREIGN PROCEEDINGS**

J. Travis Laster (# 3514)
John M. Seaman (# 3868)
ABRAMS & LASTER LLP
20 Montchanin Road, Suite 200
Wilmington, DE  19807
302.778.1000
laster@abramslaster.com
seaman@abramslaster.com

*Attorneys for Non-Party*
*Acer America Corporation*

Dated: August 18, 2008

## TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................1

ARGUMENT............................................................................................................1

    A.    The Premature Nature Of QC's Application Deprives This Court Of Its Ability To Prudently Exercise Its Discretion. ........................................1

    B.    QC Has Not Demonstrated That AAC "Resides" Or Can Be "Found" In This Judicial District........................................................................3

    C.    If The Present Application Was Directed To AAC, AAC Would Not Be Required To Produce The Documents Of Its Parent. ..............................4

    D.    AAC's Heavy Reliance On The Terms Of The Protective Order Should Preclude QC's Access To AAC's Documents. ......................................5

CONCLUSION ........................................................................................................7

## TABLE OF AUTHORITIES

**Page**

*Four Pillars Enterprises Co., Ltd. v. Avery Dennison Corp.,*
    308 F.3d 1075 (9th Cir. 2002) ................................................................. 4

*Kestrel Coal Pty. Ltd. v. Joy Global Inc.,*
    362 F.3d 401 (7th Cir. 2004) ................................................................. 5

*Intel Corp. v. Advanced Micro Devices, Inc.,*
    542 U.S. 241 258 (2004) ....................................................................... 2

*In Re Application of Sarrio, S.A.,*
    119 F.3d 143 (2d Cir. 1997) ................................................................. 5

*In Re: Godfrey,*
    526 F.Supp.2d 417 (S.D.N.Y. 2007) ................................................... 3-4

*Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada,*
    384 F.Supp.2d 45 (D.D.C. 2005)..................................................... 1, 2, 5

*Pansy v. Borough of Stroudsburg,*
    23 F.3d 772 (3d Cir. 1994) ................................................................... 5

**Statutes**

28 U.S.C. § 1782 ..........................................................................*passim*

## I.     **INTRODUCTION**

When distilled to its naked form – QC's request is as follows: "Since our attorneys are also the attorneys that have current access to the hundreds of millions of documents in the *AMD v. Intel* matter – can't we just let them use the documents to file other lawsuits in England, or Portugal, or somewhere else they may decide?"

AAC has joined the other Third Parties' Supplemental Opposition. However, AAC submits its own Supplemental Opposition to emphasize certain deficiencies and to flesh out additional deficiencies with QC's Application - particularly as those deficiencies apply to AAC. In filing this Supplemental Opposition, AAC does not intend to waive any of its objections to this Court's jurisdiction over AAC with respect to any of the issues present in this litigation. Indeed, AAC hereby expressly reserves all of its rights.

## II.     **ARGUMENT**

### A.     **The Premature Nature Of QC's Application Deprives This Court Of Its Ability To Prudently Exercise Its Discretion.**

Although eloquently discussed in other Third Parties' Supplemental Oppositions, AAC wishes to emphasize that there are two closely intertwined and equally glaring problems with QC's Application – its stunning prematurity and its massive overbreadth. This Court should be "wary of granting discovery under § 1782 when it appears that the party seeking discovery may be using the United States statutes and federal court system to 'jump the gun' on discovery in the underlying foreign suit." *Norex Petroleum Ltd.* v. *Chubb Ins. Co. of Canada*, 384 F.Supp.2d 45, 54 (D.D.C. 2005).

In response to the heavy criticism by Intel and the Third Parties that QC's Application was grossly premature, QC has apparently narrowed its target forums to England or Portugal, and has indicated that it intends to bring proceedings against Intel "as soon as possible after the EC has reached an expected adverse decision in the case against Intel." *See* Reply, 7-10 (D.I. 1080).[1] However, under the facts and circumstances of this case – such promised forum "narrowing" does little to affect the still premature application nor does it

---

[1] Unless otherwise cited, the Docket Items cited herein shall only refer to the docket in Case No. 05-md-1717.

explain the need *for such a vast number of documents.* The fact remains that QC has still not chosen a particular forum, it has still not indicated the date that it intends to file its proceedings, and it still cannot articulate a need for the documents.

Indeed, the premature nature of QC's present request strips the Court of its ability to properly analyze the factors articulated by the Supreme Court, and thus appropriately exercise its discretion, to wit:

- The need for the federal court's assistance. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). [*Since there is no case anywhere*[2] *– we do not know whether a foreign tribunal will have trouble ordering the production of necessary information on the issues presented in that forum. Indeed, we do not even know the issues.*].

- The receptivity of the foreign tribunal to federal court assistance. *Id.* [*Since there is no present case – we have no idea.*].

- The scope of the discovery sought (including its intrusiveness). *Id.*, at 265. [*Again, at this time there is no way to know what is appropriate. If anything, given the fact that liability will be sewn up by the "expected adverse decision against Intel", the scope of such litigation should be very narrow – so there will be no need for the 100's of millions of pages of documents present in this case.*]

The bottom line is that this Court should not exercise its discretion to permit access to AAC's documents – without having the salient facts upon which to render such an informed decision. *See Norex, supra*, 384 F.Supp.2d at 54.[3]

---

[2] AAC is mindful of the Supreme Court's guidance that there is no blanket requirement that proceedings be "pending." *Intel*, 542 U.S. at 258. Rather, AAC's point is that under the circumstances of this case – and considering the breadth of the present request – the Court cannot properly exercise its discretion.

[3] In its consideration of the *Intel* factors, the *Norex* Court found: "This Court has no information on the "receptivity of the Canadian court to U.S. Federal Court judicial assistance…and as a consequence does not know whether the Canadian court would find the requested discovery necessary or even useful. Similarly, the Court has no information on whether the Canadian court maintains 'proof-gathering

The premature granting of access to AAC's documents at this time essentially deprives AAC of its rights and remedies under the Federal Rules of Civil Procedure.[4]   The Parties in the related cases before this Court attempted to serve subpoenas on AAC, which requested various documents arguably relevant to lawsuits that had been filed and were pending in various courts around the United States.  AAC objected to those subpoenas based upon the parameters of the present lawsuits – and the laws of the United States.  If in the present case, AAC were to refuse to produce documents, the Parties could bring motions to compel, and AAC would have the opportunity to demonstrate the validity of its objections based upon the scope of the present lawsuits.

However, under the present § 1782 Application, AAC will never get such an opportunity.  Indeed, *this proceeding* is its only opportunity.  But how can AAC particularize its objections against a non-existent case, in a non-existent forum, with non-existent issues.  How can AAC argue that a particular class of documents – or even a particular document – is inappropriate for production?  It cannot.  Conversely, how can QC argue that such a class of documents or particular document relevant or otherwise needed?  It cannot either.  *A fortiori*, this Court cannot exercise prudent discretion at this time.  As a result, QC's Application should be denied.

**B.    QC Has Not Demonstrated That AAC "Resides" Or Can Be "Found" In This Judicial District.**

AAC does not "reside" and cannot be "found" within this judicial district as required by § 1782, because it is not incorporated in the judicial district, it is not headquartered here, nor does it engage in a systematic and continuous activities here.  *In Re: Godfrey*, 526

---

restrictions' that would adversely impact Norex's discovery ambitions...the Canadian litigation may not event be at a stage in which discovery would be appropriate....Finally, whether Norex's specific requests are 'unduly intrusive or burdensome' is not central to the Court's present inquiry into whether permitting discovery pursuant to § 1782 is appropriate in principle."  The Court in the present case should similarly consider the limitation on its ability to wisely exercise its discretion.

[4] Section 1782 provides that "[t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure."  28 U.S.C. § 1782(a).

F.Supp.2d 417 (S.D.N.Y. 2007). Despite its conclusory hearsay laden argument (to which AAC hereby objects) that AAC can be "found" within this Court's jurisdiction, QC has failed to meet its burden to establish with admissible evidence that AAC meets the requirements of § 1782. Indeed, Exhibit 8 to Mr. King's Supplemental Declaration (D.I. 1081) specifically demonstrates that AAC does not have corporate ties to Delaware. Moreover, hearsay Exhibit 6 to Mr. King's Supplemental Declaration shows only that AAC has a so-called "re-seller" in Bear, Delaware. That certainly does not demonstrate that AAC can be "found" in this Court's jurisdiction for purposes of § 1782. In addition, QC completely fails to explain how the fact that AAC's parent has a website stating that its products can be purchased online through various partners establishes that AAC can be found here. Indeed, QC's attempt to treat a parent and its subsidiaries as a single entity has been soundly rejected by the courts when considering § 1782 applications. *See* Section C below.

Apparently conceding that it has failed to meet the requirements of § 1782, QC declares that the "technical requirements of 28 U.S.C. § 1782…are in no way applicable to a motion to intervene to modify the protective order." *See* Reply, 11-13. But that argument is specious. As it relates to QC's Application, the two motions are inextricably intertwined. Without meeting the threshold requirements of § 1782, QC cannot obtain access to the documents. Indeed, the mere fact that under Rule 24, parties may intervene – does not mean that this Court should exercise its discretion to allow QC to do so – especially since QC cannot meet the threshold requirements of § 1782. QC does not explain how it would not be an abuse of this Court's discretion to modify the Protective Order where there would be no reason to do so. As a result, QC's Application should be denied as to AAC.

### C.    If The Present Application Was Directed To AAC, AAC Would Not Be Required To Produce The Documents Of Its Parent.

As QC's Application applies to AAC, the Court should consider that if this were a straight § 1782 request to AAC, it would be clear that AAC would not be required to produce the documents of its parent Acer, Inc. *Four Pillars Enters. Co., Ltd. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002) (affirming district court's refusal to order production of

documents located in Taiwan and China); *In Re Application of Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997) (warning that § 1782 should not be used to reach evidence abroad lest U.S. Courts would become "clearing houses" for litigation around the world). *Norex, supra*, at 54 ("BP America is not a party to the foreign proceeding, and as such is not subject to the jurisdiction of the Canadian Court for discovery purposes.); *Kestrel Coal Pty. Ltd. v. Joy Global Inc.*, 362 F.3d 401 (7th Cir. 2004) (holding the district court abused its discretion in ordering seller's parent to retrieve documents). Similarly, QC should not be able to shortcut normal § 1782 procedures and limitations simply because its counsel may in the future (as it applies to AAC) happen to have access to the documents.

**D.    AAC's Heavy Reliance On The Terms Of The Protective Order Should Preclude QC's Access To AAC's Documents.**

The extent to AAC relied upon the terms of the Protective Order (D.I. 275) in this matter should be carefully considered by this Court. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 790 (3d Cir. 1994) ("one of the factors the court should consider in determining whether to modify the order is the reliance by the original parties on the confidentiality order.").

By virtue of the *AMD v. Intel* matter, Class Plaintiffs' counsel has gained access to the worldwide x86 microprocessor industry's most highly sensitive documents. This feat was possible only because AAC and the world's other corporations relied on the integrity of this Court's Protective Order. That AAC and the other Third Parties relied on the current form of the Protective Order is beyond question because – with this Court's invitation - the other Third Parties and AAC helped draft the Order.

As it relates to the issue at bar, that participation is very significant. Indeed, one of the issues before the Court at the time of the drafting of the Protective Order was "*whether discovery materials produced in this litigation – especially materials designated as Confidential Discovery Materials – may be used for purposes of the Japan Litigation, the California Class Litigation, and other unidentified litigations and/or investigations.*" D.I. 221, at 110. Despite the fact that there were *known* parties in *known* forums, which were actively

being pursued at the time – the Special Master recommended (and this Court agreed) against permitting use of the documents for other matters. AAC (and its parent) relied on that decision by the Court to make subsequent business decisions.

QC's "Reply" brushes aside AAC's reliance (or for that matter the other Third Parties') on the terms of the Protective Order – and the aforementioned consideration and rejection by the Court of the access and use of the documents – by arguing that the Special Master alerted to the Third Parties to the "staleness" issue and the possibility of a future 28 U.S.C. 1782 application. *See* Reply, at 4, 18-20. However, the argument is hollow. The fact that certain procedural mechanisms existed at the time the Protective Order was issued which may ultimately result in some of the documents being later discoverable is meaningless. Otherwise, all Protective Orders would be vacant of substance, and the Third Circuit's explanation that "reliance" should be a key factor considered by the courts would be vacant as well.

The simple fact is that reliance for AAC was crucial. Indeed, AAC has been asked to produce the documents of its parent corporation Acer, Inc. However, such documents are beyond the custody and control of AAC, beyond the jurisdiction of this Court, and most notably for the present motion - beyond the reach of 28 U.S.C. § 1782. As with the other Third Parties, who are major customers of AMD and Intel, AAC (and its parent and affiliates) find themselves caught on the worldwide battlefield in this war between AMD and Intel. With the Protective Order in place - business decisions were made to *voluntarily* produce documents from custodians that were/are located in Taiwan. Although such documents have not yet been produced in the Untied States, the decision to permit them to ultimately be brought here was made based on the perceived integrity of the Protective Order. A decision by this Court to grant access to an entity such as QC, when there is no pending case, with no readily apparent need for such documents, and with no clear ability to have the terms of the Protective Order enforced – may forever erode a litigant's confidence in the integrity of Protective Orders issued by the United States' court system. Indeed, the decision of this Court on this issue may undermine the future confidence of domestic and foreign corporations in the integrity of

protective orders issued by U.S. courts - period. That seems a very high price to pay for no pressing or even identifiable reason.

**III.     CONCLUSION**

AAC respectfully requests that the Court deny QC's Application. As stated in the other Third Parties' Oppositions and Supplemental Oppositions, AAC's Opposition and in this Supplemental Opposition, QC has not met the requirements of Section 1782, and thus its motion to intervene in the present case should be denied. More importantly, however, in the event that the Court grants QC's motion to intervene, the Court should nonetheless deny QC's ability to access any of AAC's (or its subsidiaries', parent's, or affiliate's) discovery materials.

Respectfully submitted,

J. Travis Laster (# 3514)
John M. Seaman (# 3868)
ABRAMS & LASTER LLP
20 Montchanin Road, Suite 200
Wilmington, DE  19807
302.778.1000
laster@abramslaster.com
seaman@abramslaster.com

*Attorneys for Non-Party*
*Acer America Corporation*

DATED: August 18, 2008