IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE<br>INTEL CORPORATION<br>MICROPROCESSOR ANTITRUST LITIGATION | MDL Docket No. 05-1717 (JJF) |
| ADVANCED MICRO DEVICES, INC., a Delaware corporation, and<br>AMD INTERNATIONAL SALES & SERVICE, LTD., a Delaware corporation,<br><br>        Plaintiffs,<br><br>   v.<br><br>INTEL CORPORATION, a Delaware corporation, and INTEL KABUSHIKI KAISHA, a Japanese corporation<br><br>        Defendants. | C.A. No. 05-441 (JJF) |
| PHIL PAUL, on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>INTEL CORPORATION,<br><br>        Defendant. | C.A. No. 05-485-JJF<br><br>CONSOLIDATED ACTION<br><br>DM 36 |

## SPECIAL REPORT AND RECOMMENDATION (DM 36)

The matter is presently before the Special Master on defendants Intel Corporation and Intel Kabushiki Kaisha's ("Intel") Motion to Compel documents and testimony from Glover Park Group ("Glover Park"), a consultant for Plaintiffs, Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. ("AMD") ("Motion to Compel") (D.I. 1551).

Having read and considered the papers submitted by the parties and having heard and considered the parties' oral arguments made before the Special Master at telephonic hearings on

July 20, 2009 and August 6, 2009, the Special Master recommends that Intel's Motion to Compel be DENIED, and that Intel's Request For Production of a Privilege Log by AMD be GRANTED.

## BACKGROUND

On May 30, 2007, Intel served a Subpoena Duces Tecum upon Glover Park (the "First Subpoena") requesting a number of items, including "[a]ll documents concerning or relating to any communication with AMD, the law firm of O'Melveny & Myers LLP, and/or any other persons acting on AMD's behalf, concerning or related to any litigation proposed or contemplated by AMD against Intel", and "[a]ll documents concerning or relating to any communications with AMD, the law firm of O'Melveny & Meyers, LLP, and/or other persons acting on AMD's behalf, concerning or relating to any possible or actual investigation of Intel by the United States or a governmental entity." (D.I. 355). On June 18, 2007, AMD filed Objections of Third Party Glover Park Group and of Plaintiffs AMD to the First Subpoena (D.I. 381). AMD objected to the First Subpoena on a number of grounds, including that the documents requested were protected by the attorney-client privilege and attorney work-product doctrine. Glover Park did not produce any documents in response to the First Subpoena.

Intel and AMD attempted to reach agreement regarding AMD's Objections via correspondence dated September 14, 2007 and September 27, 2007, but were unable to do so. (D.I. 1553, Exhs. "E", "F"). Intel requested that AMD provide "(1) the date range of otherwise responsive documents for which the privilege or work product protection is being claimed; (2) in general the purpose and scope of Glover Park's retention; and (3) the identity of the retaining party" in order to evaluate AMD's claims of privilege and work product. (D.I. 1553, Exh. "E"). On September 27, 2009, AMD responded that "Glover Park was retained by O'Melveny & Myers LLP as of January 1, 2005; (2) AMD is asserting privilege with respect to documents from November 1, 2004, when Glover Park began working on AMD's behalf, through the present; and (3) the general purpose and scope of Glover Park's retention is to provide such services as O'Melveny & Myers may require, including assisting in the testing of development

2

of litigation and jury themes, preparing both AMD's legal and company spokespeople and written materials concerning the litigation; and providing expertise to help make this dispute understandable to legal and non-legal audiences." (D.I. 1553, Exh. "F").

In November 2008, AMD asked that the First Subpoena be withdrawn in exchange for the representation that "(1) O'Melveny hired Glover Park in early 2005, and (2) that Glover [Park] had no documents dated prior to its retention by O'Melveny concerning litigation by AMD against Intel." (D.I. 1553, Exhs. "G" and "H"). AMD, however, only agreed to represent that "all Glover Park's activities during the relevant timeframe were in relation to AMD's activities designed to influence government or agency action, or are otherwise covered by privilege or attorney work product." (D.I. 1553, Exh. "I").

Intel served a second Subpoena Duces Tecum upon Glover Park (the "Second Subpoena") on April 8, 2009, this time requesting a deposition of Glover Park regarding any services provided by Glover Park to AMD from July 1, 2004 to February 28, 2005, and Glover Park's knowledge of any facts that form the basis of any claims against Intel from July 1, 2004 through February 28, 2005. (D.I. 1334). According to Intel, it learned facts during discovery that contradict AMD's representations about the nature and timing of Glover Park's work, and also when AMD reasonably anticipated litigation. (D.I. 1553, Exh. "N"). In the Objections of Glover Park and AMD to the Second Subpoena, AMD asserts, in part, that the Second Subpoena violates the provisions and requirements of the December 17, 2007 Stipulation (the "Stipulation") entered into by the parties, which, if applicable, would preclude the discovery of certain requested documents. (D.I. 1370).

According to Intel's August 11, 2009 submission, as a compromise, Intel has withdrawn its request for a deposition and now only seeks "documents related to Glover Park's acts in support of public relations campaigns against Intel and other efforts to influence non-governmental actors."[1] (D.I. 1676). Accordingly, the Special Master will only address whether

---

[1] Thus, Intel currently requests information pursuant to its supplemental document requests 5-8. (D.I. 1334, Exh. "C"). Supplemental Document Requests 5-8 provide as follows:

3

Intel is entitled to the documents specified in Intel's August 11, 2009 submission.[2]

## DISCUSSION AND CONCLUSIONS

After review of the final submittals of the parties on August 11 and August 13, 2009, the Special Master concludes that the only question for the Special Master to answer is: do the supplemental documents requested pursuant to the Second Subpoena, which comprise Supplemental Document Requests 5 through 8, fall within the Stipulation entered into by the parties based upon the plain language of the Stipulation?

For reasons stated herein, the Special Master concludes that the answer is yes.

### I.  Glover Park Is A "Similar Consulting Firm" Within Paragraph 5 Of The Stipulation.

Pursuant to the Stipulation, Intel and AMD agreed to withdraw Subpoenas Duces Tecum directed to three consulting firms (the "consulting firm subpoenas") engaged to render services on behalf of AMD; namely, Potomac Counsel, LLC ("Potomac Counsel"), DC Navigators, LLC ("DC Navigators"), and Public Strategies, Inc. ("Public Strategies") for a variety of reasons. These reasons included the fact that AMD's relationship with Public Strategies ended prior to the date it first reasonably anticipated litigation, and AMD did not retain Potomac Counsel until

> All documents concerning or relating to any Services provided by Glover Park for or on behalf of AMD, including without limitation Services related to public relations, strategic messaging and/or communications.

**Supplemental Document Request 6:**

> All documents concerning or relating to any Services provided by Glover Park for or on behalf of O'Melveny and Myers LLP, including without limitation Services related to AMD and/or Intel.

**Supplemental Document Request 7:**

> All documents concerning or relating to Intel's conduct in the market for x86 Microprocessors.

**Supplemental Document Request 8:**

> All documents concerning or relating to fair and open competition in the market for x86 Microprocessors.
>
> Id.

---

[2] AMD employee Mark Warshawsky testified that, aside from lobbying, Glover Park performed standard functional public relations services. (D.I. 1553, Exh. "Q", Dep. Tr. of Marc Warshawsky at 200, 4-12). However, Intel no longer seeks "standard" public relations material from Glover Park designed to promote AMD's brand, but not targeted at Intel, or to "influence government or agency action." Therefore, the Special Master does not address whether Intel is entitled to such information.

4

after it commenced litigation against Intel. (D.I. 472, Exh. "L" at third Whereas clause). The Stipulation also provides that the consulting firm subpoenas were withdrawn in so far as they requested the production of documents relating to "efforts by AMD to influence a government agency, *including, but not limited to*, any contracting or procurement officers of such agency, to adopt certain specifications in Requests for Proposal ("RFP") or Requests for Quotation ('RFQ')." Id. at second Whereas clause (emphasis added). In this regard, AMD represented that "its lawsuit does not allege as a claim or part of the factual allegations supporting a claim Intel's conduct to influence any public contracting or procurement agency to adopt technical specifications in Requests for Proposal ('RFP') or Requests for Quotation ('RFQ') favoring Intel over AMD and will not introduce evidence of such conduct in the case." Id. at fourth Whereas clause.

The sum and substance of the agreement between the parties is found in the Stipulation's final Whereas clause, which states:

> WHEREAS, both parties agree not to serve or enforce subpoenas *on any similar consulting firm* retained by or on behalf of the other calling for the production of documents or testimony *related to activities designed to influence government or agency action.*

(D.I. 472, Exh. "L" at fifth Whereas clause) (emphasis added).

Although AMD argues that it was the intent of the parties to include Glover Park within the Stipulation at the time the Stipulation was originally drafted, the Special Master declines to address this argument, concluding that the plain language of the Stipulation controls.[3]

The term "similar consulting firm" is not defined in the Stipulation. However, based

---

[3] AMD argues that Intel "agreed" that Glover Park was included within the Stipulation based on Daniel S. Floyd's email, stating that

> I don't seem to have a stip focused on Glover Park in particular, so it may very well have been since you had objections pending we just dropped it . . . I don't see why we would have had an entirely separate stip on that issue during the same time frame we were dealing with these other subpoenas. I can't be 100% sure, that's the best I can piece together. (D.I. 1600, Declaration of Charles P. Diamond, Exh. "A").

5

upon the record, and Intel advancing no argument to the contrary, the Special Master concludes that Glover Park is a "similar consulting firm" as contemplated by the Stipulation.

An analysis of the strategy to be employed by Public Strategies in its Project Dude,[4] in the Special Master's view, demonstrates that Glover Park is a public relations consultant having similar goals and objectives with AMD. AMD describes Glover Park as a "Washington, DC corporate communications firm" retained to develop AMD's "'fair and open competition' messaging" and to channel "those messages to global competition authorities and government officials and opinion thought-leaders who influence them." (D.I. 1600, Declaration of Charles P. Diamond at ¶ 2). Project Dude defined its goals inter alia as "demonstrating the public cost of Intel's monopoly" and, in turn, "compel[ling] policy makers to carry the issue and change Intel's behavior." (D.I. 1553, Exh. "N" at 3). Project Dude lists attorneys general, congressional leadership, international regulators and trade associations, and policy making organizations as entities "who could make a difference." (D.I. 1553, Exh. N at 18).

AMD presented no evidence which demonstrates that Glover Park is a consulting firm somehow different from Public Strategies.

## II. The Language Of The Stipulation Is Broad And Includes Efforts To Influence Non-Governmental Actors.

The Stipulation by its clear terms governs documents or testimony "related to activities designed to influence government or agency action." Id. Intel views the Stipulation narrowly as only relating to "lobbying,"[5] while AMD views the Stipulation as covering both direct and indirect activities designed to influence government or agency action.

The first observation that should be made is that the Stipulation does not use the term lobbying. The Special Master concludes that to the extent the activity of lobbying is limited to a certain set of defined activities, the Stipulation by its own language is not so limited.

---

[4] (D.I. 1553, Declaration of Donn P. Pickett, Exh. "N" at 17).

[5] Intel made no attempt to define the term "lobbying." "Lobbying" may be defined as "the practice of influencing decisions made by government for the benefit of its citizens (in groups or individually). It includes all attempts to influence legislators and officials, whether by other legislators, constituents, or organized groups." See http://en.wikipedia.org/wiki/Lobbying (last visited Aug. 19, 2009).

Moreover, the only term of limitation in the Stipulation is the word "related", which is defined as "being connected either logically or causally or by shared characteristics." See http://www.thefreedictionary.com/related (last visited Aug. 22, 2009). Simply stated, there is no language in the Stipulation which limits the meaning of the phrase "related to activities" to direct communication with governments and their agencies. Indeed, the drumbeat of public opinion, spontaneous and/or managed and manipulated by consultants supporting a particular cause frequently translates into the heart of governmental action. Evidence the recent public debate over health care with public officials in town hall settings (direct) or with Sunday morning panel pundits (indirect), both of which activities are certainly designed to influence government action.

In the Special Master's view, a presentation given by Public Strategies to AMD regarding Project Dude illustrates a strategy of progressive layers of activities that all lead to one ultimate target or "bullseye" of AMD's efforts to reach policy makers. (D.I. 1553, Exh. N at 17). The clearly-demonstrated goal of Project Dude was to first create public awareness and concern, to next uncover Intel's alleged strong arm tactics in order to generate news coverage, which would in turn create an outcry by political constituents, and eventually allow AMD to reach its primary target – policy makers. Id. Such a strategy was certainly designed to initially target non-governmental players such as the public, the media, and political constituents – the preliminary or indirect targets – who could in turn directly influence policy makers – the bullseye.

The Special Master concludes that although each of these activities, if conducted by Glover Park, does not directly influence government or agency action, they are nonetheless "related to activities designed to influence government or agency action."

In light of the above, the Special Master turns to a consideration of Intel's request for documents related to Project Slingshot. AMD employee, Robert Melendres, describes Project Slingshot as follows:

> Slingshot was an attempt to level the playing field involved and reenergize some of the government regulation activities to get

7

> greater awareness of the monopolistic position and monopolistic activities of Intel and so that we would have a level playing field. So Slingshot was an effort . . . to try and fight Intel's monopoly and the project was an attempt at organizing and get the people within AMD around that effort and getting buy in from the appropriate levels to engage with the government regulators to level the playing field.

(D.I. 1553, Exh. "Q", Dep. Tr. of Robert Melendres at 18:05-18:06); (D.I. 1598, Declaration of Thomas M. McCoy at ¶ 2) ("[t]he initial thrust of Project Slingshot was to bring Intel's monopoly maintenance business practices to the attention of government agencies in various countries in an effort to open public sector procurement markets to AMD and to encourage government investigation of Intel's business practices"). Marc Warshawsky ("Warshawsky"), another AMD employee, testified that Glover Park "helped AMD develop messaging in support of the Slingshot program." (D.I. 1553, Exh. "Q", Dep. Tr. of Marc Warshawsky at 200:17-18).

On this record, the Special Master concludes that the language of the Stipulation encompasses Glover Park's activities and documents related to Project Slingshot. Glover Park should therefore not be required to produce documents with respect to Project Slingshot.

### III. Privilege Log

The Special Master declines to address the attorney-client privilege and attorney work product doctrine as the instant Report and Recommendations is fully informed by an analysis of the language of the Stipulation itself. However, the Special Master will address Intel's request that Glover Park and/or AMD produce a privilege log for any documents withheld on the basis of the attorney-client privilege, and/or work product doctrine.

AMD has taken the position that all documents responsive to the Second Subpoena are protected by the attorney-client privilege. See In re: New York Renu With MoistureLoc Product Liability Litig., 2008 WL 2338552, at *9 (D.S.C. May 8, 2008) (recognizing attorney-client privilege in narrow circumstance where the non-lawyer consultants' services are absolutely necessary to effectuate the lawyer's legal services). Since AMD agreed to produce a privilege log for any documents that do not relate to activities designed to influence government

8

or agency action in a prior offer to Intel,[6] the only issue then presented is the time period covered by the privilege log.

Intel asserts that AMD reasonably anticipated litigation prior to April 2005, and requests the production of a privilege log of documents responsive to the Second Subpoena for the time period from November 1, 2004 through March 31, 2005, being the entire term of Glover Park's retention. It appears that Intel is not seeking testimony or documents pursuant to Fed. R. Civ. P. 30 and Fed. R. Civ. P. 34, but simply a privilege log in order to ascertain when AMD's communications with Glover Park in anticipation of litigation began.

According to AMD, services Glover Park provided to AMD as of January 1, 2005, included "assisting in the testing and development of litigation and jury themes, preparing both AMD's legal and company spokespeople and written materials concerning the litigation; and providing expertise to help make this dispute understandable to legal and non-legal audiences." (D.I. 1553, Declaration of Donn P. Pickett, Exh. "F"). AMD therefore seeks to limit production of a privilege log to the time period from January 1, 2005 to March 31, 2005. AMD asserts that anticipation of litigation did not begin until April 2005, after Glover Park began serving O'Melveny & Myers LLP, and thus a privilege log prior to January 2005 is unnecessary.

AMD also asserts that production of the standard fields of a privilege log will reveal privileged communications. The Special Master concludes that AMD seeks to impose artificial time limits on the period covered by the privilege log, and is not convinced that the standard fields of a privilege log will reveal privileged communications. Intel has the right to test AMD's assertion and explore its own theory about when AMD anticipated litigation.

---

[6] (D.I. 355, Exh. "A").

The Special Master therefore concludes that AMD should be required to produce a privilege log for documents responsive to the Second Subpoena for the time period November 1, 2004 through March 31, 2005.

## CONCLUSION

For the reasons set forth above, the Special Master concludes that Intel's Motion to Compel should be DENIED, and that Intel's Request For Production of a Privilege Log by AMD should be GRANTED.

IT IS THEREFORE HEREBY RECOMMENDED THAT:

1. The Motion to Compel be Denied; and
2. AMD produce a privilege log consistent with this Order within fifteen (15) days or at a time mutually agreed upon by the parties.

THE SPECIAL MASTER'S OPINION AND ORDER WILL BECOME A FINAL ORDER OF THE COURT UNLESS OBJECTION IS TAKEN IN ACCORDANCE WITH THE ANTICIPATED ORDER OF THE COURT WHICH SHORTENS THE TIME WITHIN WHICH AN APPLICATION MAY BE FILED PURSUANT TO FED. R. CIV. P. 53(f)(2).

**SO ORDERED** this 28th day of August, 2009.

_____
Vincent J. Poppiti (DSBA No. 100614)
Special Master