

**Potter Anderson & Corroon** LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone
302 658-1192 Facsimile

March 18, 2010

**BY HAND DELIVERY AND
ELECTRONIC FILING**

The Honorable Vincent J. Poppiti
Fox Rothschild LLP
Citizens Bank Center, Suite 800
919 N. Market Street
Wilmington, DE 19899-2323

    Re:  **In re Intel Corporation, C.A. No. 05-MD-1717-JJF;
            Phil Paul v. Intel Corp., Cons. C.A. No. 05-485-JJF**

Dear Judge Poppiti:

    I am writing to bring to your attention a recent decision that is relevant to the question of whether to certify this action as a joint trial of 26 statewide classes as proposed by plaintiffs.

    In *Tyler v. Alltel Corp.*, 2010 WL 670119 (E.D. Ark.), a copy of which is attached, the plaintiff alleged that Alltel violated the consumer protection and unjust enrichment laws of Arkansas and 24 other states by charging and collecting an early disconnect penalty from its customers. One of the classes plaintiff sought to certify was a nationwide class under Federal Rule of Civil Procedure Rule 23(b)(3) of Alltel customers who paid the penalty. *Id.* at *1, 3. Although the putative class members resided in twenty-five different states, the plaintiff contended that the court should apply Arkansas' consumer protection and unjust enrichment laws to the claims of the members of each class. *Id.* at *2, 4.

    After noting that both state consumer protection and unjust enrichment laws contain outcome-determinative differences and vary considerably, the Court found that the relevant choice of law principles dictated that it apply the laws of the states in which each putative class member resided. *Id.* at *4-10. As a result, certifying the classes would have required the application of twenty-five states' laws at trial. *Id.* at *10. The Court found that this outcome was fatal to the certification of the class. With respect to the proposed 23(b)(3) class, the court held that "[a]pplying twenty-five states' laws to [the] class, even if divided into twenty-

Page Two
The Honorable Vincent J. Poppiti
March 18, 2010

five different sub-classes, would present the Court with an unmanageable situation at trial." *Id.* at *12. Further, the Court held that the outcome-determinative conflicts between the states' laws prevented "the satisfaction of Rule 23(b)(3)'s commonality and predominance requirements." *Id.*

                                Respectfully,

                                */s/ Richard L. Horwitz*

                                Richard L. Horwitz (#2246)

RLH:cet
Enclosure
cc: Clerk of the Court (By CM/ECF)
     Counsel of Record (By CM/ECF)

957821/29282

Westlaw

--- F.R.D. ----, 2010 WL 670119 (E.D.Ark.)
(Cite as: 2010 WL 670119 (E.D.Ark.))

Only the Westlaw citation is currently available.

United States District Court,
E.D. Arkansas,
Western Division.
Heather **TYLER**, Individually and on Behalf of All Other Persons Similarly Situated, Plaintiff
v.
**ALLTEL** CORPORATION and Alltel Communications, Inc., Defendants.
No. 4:07CV00019 JLH.

Feb. 23, 2010.

**Background:** Customer brought putative class action against wireless telecommunications company, alleging claims for unjust enrichment and unfair and deceptive business practices arising from early disconnect penalty charged and collected by company. Customer moved for class certification.

**Holdings:** The District Court, J. Leon Holmes, J., held that:
(1) material differences existed among unjust enrichment and consumer protection laws of states of putative class members;
(2) choice-of-law provision in contracts for wireless telecommunications services was enforceable;
(3) general contract choice-of-law principles required application of laws of each member's home state;
(4) tort choice-of-law principles dictated application of law of each member's home state;
(5) conflicts between consumer protection statutes and unjust enrichment laws of home states of penalty-payor class members and that of forum state predominated over common issues; and
(6) conflicts were fatal to cohesion of current-subscriber class members.

Motion denied.

West Headnotes

[1] Telecommunications 372 ☞1032

372 Telecommunications
   372IV Wireless and Mobile Communications
      372k1032 k. What Law Governs. Most Cited Cases
Material differences existed among unjust enrichment and consumer protection laws of states of putative class members, and Arkansas district court was thus required to conduct choice-of-law analysis to determine whether Arkansas law applied to claims of all of the putative class members, including those who resided in states other than Arkansas, in customer's action against wireless telecommunications company arising from company's early disconnect penalty.

[2] Contracts 95 ☞129(1)

95 Contracts
   95I Requisites and Validity
      95I(F) Legality of Object and of Consideration
         95k129 Obstructing or Perverting Administration of Justice
            95k129(1) k. Agreements Relating to Actions and Other Proceedings in General. Most Cited Cases
Under Arkansas law, choice-of-law provision in contracts for wireless telecommunications services was enforceable in customer's putative class action, which provision required application of laws of each putative class member's home state to any contractual claims arising from wireless telecommunications company's early disconnect penalty; action involved thousands of individual transactions originating in members' home states, and although company had its home offices in Arkansas, reasonable relationship existed between transactions and members' home states because company had presence in and conducted business in each member's home state. Ark.Code Ann. § 4-1-301(1).

[3] Contracts 95 ☞144

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

--- F.R.D. ----, 2010 WL 670119 (E.D.Ark.)
(Cite as: 2010 WL 670119 (E.D.Ark.))

95 Contracts
   95II Construction and Operation
      95II(A) General Rules of Construction
         95k144 k. What Law Governs. Most Cited Cases
Under Arkansas law, in a dispute in an action arising in contract where the law of more than one state might apply, a court must first look to see if there has been an effective choice of law before conducting the most-significant-relationship test.

[4] Telecommunications 372 €—1032

372 Telecommunications
   372IV Wireless and Mobile Communications
      372k1032 k. What Law Governs. Most Cited Cases
Under Arkansas law, most-significant-relationship test required application of law of each putative class members' home state, rather than Arkansas law, to any contractual claims in action arising from wireless telecommunications company's early disconnect penalty to which members were subject as wireless telecommunications services customers; place of contracting for wireless telecommunications services was primarily in each member's home state, contracts were performed in members' home states, company conducted business in each member's home state although company was incorporated in Arkansas, and while location of subject matter of contract for wireless service was difficulty to define, it was reasonable to assume that members used their wireless telephones primarily in their home states.

[5] Contracts 95 €—144

95 Contracts
   95II Construction and Operation
      95II(A) General Rules of Construction
         95k144 k. What Law Governs. Most Cited Cases
Under "most-significant-relationship test" applicable under Arkansas law to determine which state's laws apply when there is no effective choice of law by the parties in a cause of action arising in contract, court must assess the nature and quantity of each state's contacts with the transaction at issue by considering: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties.

[6] Torts 379 €—103

379 Torts
   379I In General
      379k103 k. What Law Governs. Most Cited Cases
Under Arkansas tort choice-of-law principles, court must consider lex loci delicti rule within the framework of five "Leflar factors" to determine which state's law applies to tort claim: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law.

[7] Telecommunications 372 €—1032

372 Telecommunications
   372IV Wireless and Mobile Communications
      372k1032 k. What Law Governs. Most Cited Cases
Under Arkansas tort choice-of-law principles, lex loci delicti dictated application of law of each putative class member's home state, rather than Arkansas law, to claims arising from wireless telecommunications company's early disconnect penalty to which members were subject as wireless telecommunications services customers; despite contention that conduct in Arkansas caused injuries in other states because company had office in Arkansas, claims of each member were based on what disclosures were or were not made and to what terms and conditions the member actually agreed at the point of sale of the wireless telecommunications services.

[8] Telecommunications 372 €—1032

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 670119 (E.D.Ark.)
(Cite as: 2010 WL 670119 (E.D.Ark.))

372 Telecommunications
   372IV Wireless and Mobile Communications
      372k1032 k. What Law Governs. Most Cited Cases
Under Arkansas tort choice-of-law principles, predictability of results favored application of law of each putative class member's home state, rather than Arkansas law, to claims arising from wireless telecommunications company's early disconnect penalty, to which members were subject as wireless telecommunications service customers; customer and company would reasonably expect any issues arising from the transaction for wireless service to be governed by the laws of customer's home state, rather than some foreign state the laws of which the customer was likely to be ignorant, and although company's corporate headquarter's in Arkansas allegedly ignored the fact that its sales representatives were failing to disclose penalty, any failure to disclose nevertheless occurred at point of sale where customer spoke with local sales representatives.

[9] Telecommunications 372 &#9901;&rarr;1032

372 Telecommunications
   372IV Wireless and Mobile Communications
      372k1032 k. What Law Governs. Most Cited Cases
Under Arkansas tort choice-of-law principles, maintenance of interstate order of results favored application of law of each putative class member's home state, rather than Arkansas law, to claims arising from wireless telecommunications company's early disconnect penalty, to which members were subject as wireless telecommunications service customers; Arkansas did not have a more significant relationship to non-Arkansas customers than their respective home states, and interstate order would not be maintained by applying Arkansas law to consumer transactions into which the parties entered in states other than Arkansas, especially where the service contracts specified that the transactions would be governed by the laws of the states where the customers received bills from company.

[10] Torts 379 &#9901;&rarr;103

379 Torts
   379I In General
      379k103 k. What Law Governs. Most Cited Cases
Under Arkansas tort choice-of-law principles, simplification of the judicial task is not a paramount consideration, because the law at issue does not exist for the convenience of the court that administers it, but for society and its members, and when the law of a state other than Arkansas is outcome-determinative and easy to apply, there is no good reason not to consider importing it as the law governing the case.

[11] Telecommunications 372 &#9901;&rarr;1032

372 Telecommunications
   372IV Wireless and Mobile Communications
      372k1032 k. What Law Governs. Most Cited Cases
Under Arkansas tort choice-of-law principles, when individually considering underlying transactions for wireless telecommunications service, simplification of the judicial task favored application of neither Arkansas law to all putative class member's claims nor application of law of each member's home state to his or her respective claims, in action arising from wireless telecommunications company's early disconnect penalty, to which members were subject as wireless service customers.

[12] Telecommunications 372 &#9901;&rarr;1032

372 Telecommunications
   372IV Wireless and Mobile Communications
      372k1032 k. What Law Governs. Most Cited Cases
Under Arkansas tort choice-of-law principles, advancement of the forum's governmental interests did not favor application of Arkansas law, rather than law of each putative class member's home state, to claims arising from wireless telecommunications company's early disconnect penalty, to which members were subject as wireless telecom-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

munications service customers; although company was headquartered in Arkansas and Arkansas had an interest in policing its corporations, other twenty-four states in which members resided had an equal or greater interest in policing the disclosures and representations made about penalty by company's local sales representatives to customers conducting consumer transactions in their states.

[13] Telecommunications 372 🗝1032

372 Telecommunications
   372IV Wireless and Mobile Communications
      372k1032 k. What Law Governs. Most Cited Cases

Under Arkansas tort choice-of-law principles, application of the better rule of law did not favor application of Arkansas law, rather than law of each putative class member's home state, to claims arising from wireless telecommunications company's early disconnect penalty, to which members were subject as wireless telecommunications service customers, where there was no evidence that application of the laws of members' home states might prevent members from obtaining redress.

[14] Contracts 95 🗝129(1)

95 Contracts
   95I Requisites and Validity
      95I(F) Legality of Object and of Consideration
         95k129 Obstructing or Perverting Administration of Justice
            95k129(1) k. Agreements Relating to Actions and Other Proceedings in General. Most Cited Cases

Telecommunications 372 🗝1032

372 Telecommunications
   372IV Wireless and Mobile Communications
      372k1032 k. What Law Governs. Most Cited Cases

Regardless of which set of choice-of-law principle applied under Arkansas law, certifying class of wireless telecommunications service customers would require application of the laws of twenty-five states where members resided, in action arising from wireless telecommunications company's early disconnect penalty, to which members were subject as wireless service customers; Arkansas law would not apply to transactions between company and customers in other states under choice-of-law provision in contract for wireless service, general contract choice-of-law principles, or tort choice-of-law principles.

[15] Federal Civil Procedure 170A 🗝182.5

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases

Outcome-determinative conflicts between consumer protection statutes and unjust enrichment laws of putative class members' home states and that of forum state predominated over common issues in action against wireless telecommunications company arising from company's early disconnect penalty, which members paid when they terminated their wireless service; claims would require application of the laws of twenty-five states, which would present an unmanageable situation at trial. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

[16] Federal Civil Procedure 170A 🗝182.5

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases

Outcome-determinative conflicts between consumer protection statutes of putative class of current wireless telecommunications service customers' home states and that of forum state was fatal to cohesion

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 670119 (E.D.Ark.)
(Cite as: 2010 WL 670119 (E.D.Ark.))

required for certification of class in action seeking injunction preventing wireless telecommunications company from charging early disconnect penalty to customers who terminated service. Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

Christopher D. Jennings, Scott E. Poynter, Gina M. Dougherty, Jack Thomas Patterson, II, Emerson Poynter LLP, Little Rock, AR, Daniel Odell Turner, Todd Martin Turner, Arnold, Batson, Turner & Turner, P.A., Arkadelphia, AR, David Pastor, Gilman and Pastor, LLP, Boston, MA, John G. Emerson, Jr., Emerson Poynter LLP, Houston, TX, Kermit Roosevelt, University of Pennsylvania Law School, Philadelphia, PA, Terry M. Poynter, Terry M. Poynter, P.A., Mountain Home, AR, for Plaintiff.

Henry Weissmann, Munger, Tolles & Olsen LLP, Los Angeles, CA, Hojoon Hwang, Jerome C. Roth, Lee S. Taylor, Munger, Tolles & Olsen LLP, San Francisco, CA, Jim L. Julian, Chisenhall, Nestrud & Julian, P.A., Little Rock, AR, for Defendants.

*OPINION AND ORDER*

J. LEON HOLMES, District Judge.

*1 Heather Tyler commenced this action against Alltel Corporation and Alltel Communications, Inc. (collectively, "Alltel"), seeking to represent nationwide classes consisting of persons who were charged an early disconnect fee and persons who were enrolled in a roadside assistance program without their consent. Pending before the Court are the following motions: Tyler's motion for leave to file a second amended complaint; Alltel's motion to strike Tyler's class allegations; Tyler's separate motions for class certification of the "Mr. Rescue Automatic Charge Class" [FN1] and the "Early Disconnect Penalty Classes"; and Tyler's motion to strike the expert testimony of Prof. Jerry Hausman. Tyler's motions for class certification were filed on May 8, 2009, and a class certification hearing was held on July 31, 2009. For the following reasons, Tyler's motion for certification of the early disconnect penalty class is denied. Tyler's motion to strike the expert testimony of Hausman, Tyler's motion for leave to file a second amended complaint, and Alltel's motion to strike Tyler's class allegations are denied as moot.

I.

Tyler's complaint alleges that she and other similarly situated plaintiffs were injured by Alltel forcing them to pay an early disconnect penalty.

Alltel was a wireless telecommunications company. [FN2] According to Tyler's complaint, Alltel offered its customers various service plans, some of which were "post-pay" plans and some of which were "pre-paid" plans. Under the pre-paid plans, customers were committed to their respective plans for a certain period of time and were obligated to pay an early disconnect penalty if they terminated their contract before the end of its term. The early disconnect penalty for early termination was typically $200. The contract term and early disconnect penalty were stated in the written contract. Alltel asserts that its contract conspicuously displayed the contract start date, the contract end date, and the early disconnect penalty amount. Alltel also asserts that customers had to sign the contract, acknowledging that they understood and accepted its terms and conditions, including the early disconnect penalty, and that customers were provided a copy of the contract.

In November 2003, Tyler purchased a telephone and wireless service plan from Alltel. In March 2006, she cancelled her service with Alltel prior to the completion of her contract term, and Alltel imposed the $200 early disconnect penalty. Tyler says that she never signed a contract or otherwise agreed to pay the early disconnect penalty. She says that Alltel has been unable to produce the written contract that she supposedly signed or other evidence indicating that she agreed to a two-year service agreement. After Tyler contested the validity of the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 670119 (E.D.Ark.)
(Cite as: 2010 WL 670119 (E.D.Ark.))

early disconnect penalty, Alltel imposed a late payment fee in addition to the penalty. Tyler contacted both the Better Business Bureau of Arkansas and the Arkansas Attorney General's office. Alltel continued to add late fees and taxes, and Tyler says that Alltel threatened to retain an outside collection agency to collect the penalty and late fees. In July 2006, Tyler paid under protest the balance of the penalty and the related charges.

*2 Tyler stated in deposition testimony, and she reiterated in her testimony at the class certification hearing, that she did not recall the details of her interactions with an Alltel sales representative when she entered into the contract; that she does not remember whether she initiated service at an Alltel store or through a kiosk; that she does not recall whether she was given or signed any documents at that time; and that she otherwise has no recollection of what she was and was not told when she initiated service in May 2003. In September 2004, Tyler upgraded her wireless device, which Alltel says resulted in a twenty-four month contract extension. Alltel says that the twenty-four month contract extension resulted in her being able to purchase the upgraded wireless device at a deep discount.

In August 2006, Alltel began supplementing its wireless contracts with a document called "My Info," which prominently displayed the contract length, contract start date, contract end date, and the early disconnect penalty in a section called "Contract Summary." Alltel says that its sales representatives were trained to review key features, the contract length, and the early disconnect penalty with all of Alltel's customers. Alltel says it trained its representatives, provided them with checklists, and monitored their representatives to ensure that all proper disclosures were being made to the customers. Starting in May 2005, customers no longer signed contracts because Alltel transitioned to a paperless contract system that included the My Info disclosures as well as a "Welcome Guide," which explained the various features and the early disconnect penalty.

II.

Tyler's complaint asserts claims based on three legal theories: unjust enrichment, unfair and deceptive business practices in violation of the Arkansas Deceptive Trade Practices Act, and unfair and deceptive business practices in violation of other class jurisdictions' consumer protection statutes. The putative class members reside in the following twenty-five states: Alabama, Arizona, Arkansas, Colorado, Florida, Georgia, Kansas, Kentucky, Louisiana, Michigan, Mississippi, Missouri, Nebraska, New Mexico, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, West Virginia, and Wisconsin. Tyler alleges that Alltel violated the consumer protection laws of Arkansas and the other class jurisdictions [FN3] by charging and collecting an early disconnect penalty from its customers.[FN4] Tyler says that the early disconnect penalty is designed to penalize and hold its customers hostage; is assessed without a justifiable basis; is assessed without adequate disclosure of all its applicable material terms and conditions; and is excessive for any actual damage experienced by Alltel when a customer cancels service.

Tyler moves for certification of the early disconnect penalty payor class under Federal Rule of Civil Procedure 23(a) and (b)(3), and for certification of the early disconnect penalty current subscriber class under Rule 23(a) and (b)(2).

*3 Tyler defines the proposed classes as follows:

*Early Disconnect Penalty Payor Class.*

All Alltel wireless and/or communication services customers who subscribed to and activated an Alltel service plan, and who have been charged for and paid charges associated with Alltel's "early disconnect penalty" and/or "early termination fee" within the past five years immediately preceding the date of the filing of this action to present. Excluded from this class are: (1)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 670119 (E.D.Ark.)
(Cite as: 2010 WL 670119 (E.D.Ark.))

any person, firm, trust, corporation or other entity related to or affiliated with Alltel; (2) all currently serving federal district court judges, their current spouses, and all persons (and their current spouses) within the third degree of consanguinity to such federal district court judges and spouses; (3) claims by any person or entity who timely opts out of this proceeding; and (4) any person who has given a valid release concerning the claims asserted in this suit. Hereafter, this class will be referred to as the "early disconnect penalty payor class."

*Early Disconnect Penalty Current Subscriber Class.*

All current Alltel wireless and/or communication services customers who subscribed to and activated an Alltel service plan, and who will be charged for Alltel's "early disconnect penalty." Excluded from this class are: (1) any person, firm, trust, corporation or other entity related to or affiliated with Alltel; (2) all currently serving federal district court judges, their current spouses, and all persons (and their current spouses) within the third degree of consanguinity to such federal district court judges and spouses; (3) claims by any person or entity who timely opts out of this proceeding; and (4) any person who has given a valid release concerning the claims asserted in this suit. Hereafter, this class will be referred to as the "early disconnect penalty current subscriber class."

In both her original and amended complaints, Tyler included a carve-out provision that excluded from her class allegations "any person included in the class defined in the case of *Peter Rosenow v. Alltel, et al.,* Saline County Circuit Court, Third Division, Case No. Civ.2006-182 (other Arkansas residents who have been charged fees associated with Alltel's 'early disconnect penalty' or 'early termination fee.')." After the Saline County Circuit Court denied certification in *Rosenow,* Tyler filed a motion for leave to file a second amended complaint, in which the carve-out provision for Arkansas residents is removed. Tyler's motion for class certification defines the early disconnect penalty payor class as if the Court will grant her motion for leave to amend, as her class definition does not contain the carve-out provision. [FN5]

III.

When a putative class consists of persons from numerous states pursuing common law claims, a court must conduct a choice-of-law analysis before considering the requirements of Rule 23.

Unlike a federal question case (where diversity of the parties does not matter), when class certification is sought in a case based on common law claims, the question of which law governs is crucial in making a class certification determination. Not only must the choice-of-law issue be addressed at the class certification stage-it must be tackled at the front end since it pervades every element of [Rule] 23.

*4 [Rule] 23 makes no reference to choice-of-law issues, but, in nationwide class actions, choice-of-law constraints are constitutionally mandated because a party has a right to have her claims governed by the state law applicable to her particular case. Therefore, choice-of-law issues may be present in any number of [Rule] 23's subsections....

... [W]here multi-state plaintiffs pursue common law causes of action under both 23(b)(2) and (b)(3)[,] the choice-of-law determination affects every aspect of class certification. Plaintiffs' common law claims are not insulated from the choice-of-law analysis simply because they are grouped under 23(b)(2). Accordingly, [p]laintiffs must show, prior to class certification, that the differences in state laws within each of their groupings are nonmaterial as to both their 23(b)(3) *and* 23(b)(2) classes.

*In re Prempro,* 230 F.R.D. 555, 561-62

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 670119 (E.D.Ark.)
(Cite as: 2010 WL 670119 (E.D.Ark.))

Page 8

(E.D.Ark.2005) (internal citations omitted).

## A. CONFLICT OF LAWS

[1] In both briefing and oral arguments, counsel for Tyler has admitted that state consumer protection laws contain outcome-determinative differences and vary considerably. That admission follows Eighth Circuit precedent. In *In re St. Jude Medical, Inc.*, 425 F.3d 1116 (8th Cir.2005), the Eighth Circuit noted that "[s]tate consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules." *In re St. Jude*, 425 F.3d at 1120 (quoting *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir.2002)); *see also Mooney v. Allianz Life Ins. Co. of N. Am.*, 244 F.R.D. 531, 534-35 (D.Minn.2007) (finding that outcome-determinative conflicts existed between various states' consumer protection statutes). Tyler, however, contends that the Court should apply the Arkansas Deceptive Trade Practices Act to her class claims, including the claims of putative class members from other states.

Although Tyler agrees that the consumer protection laws of the states are materially different, she denies that the law of unjust enrichment is substantially different in different states. In support of that argument, Tyler relies almost solely on *In re Mercedes-Benz Tele Aid Contract Litigation*, 257 F.R.D. 46 (D.N.J.2009). There, the District of New Jersey held that there are minor variations in the elements of states' unjust enrichment laws, but "those differences are not material and do not create an actual conflict." *In re Mercedes-Benz*, 257 F.R.D. at 58. In reaching that conclusion, the district court relied on another case from the District of New Jersey and a case from the Eastern District of Pennsylvania. The *Mercedes* court thus determined that no material conflict of law existed, so it applied New Jersey law to the nationwide class. [FN6] *Id.*

Tyler acknowledges that other courts have held that the law of unjust enrichment varies materially from state to state. *See Mooney*, 244 F.R.D. at 534 ("Because of the outcome of the choice-of-law analysis below, it is unnecessary to determine the precise number of outcome-determinative conflicts ... between Minnesota unjust enrichment law and unjust enrichment law in other jurisdictions. It is sufficient to recognize that conflicts exist."); *In re Baycol Products Litigation*, 218 F.R.D. 197, 214 (D.Minn.2003) ( "Plaintiffs have not provided the Court sufficient information for it to conclude that the laws concerning unjust enrichment ... are not significantly or materially different. Plaintiffs have thus failed to demonstrate that common issues of law predominate."). Tyler urges the Court to adopt the reasoning found in *In re Mercedes-Benz* and hold that any differences are not material and thus do not create actual conflict.

*5 Tyler's argument is contrary to two decisions of this Court: *In re Prempro* and *Thompson v. Bayer Corp.*, 2009 WL 362982 (E.D.Ark. Feb.12, 2009). In *Thompson,* the court compared Arkansas's unjust enrichment law with other states. After considering case law from around the country on unjust enrichment, the court concluded that there are material conflicts between the law of unjust enrichment in Arkansas and the law of unjust enrichment in other states with respect to whether a wrongful act is required on the part of the party unjustly enriched, whether the enrichment must have come directly from the plaintiff to the defendant, and whether an unjust enrichment claim can survive if the plaintiff has an adequate remedy at law. *Thompson,* 2009 WL 362982, at *4-6 (collecting cases). Because of the material conflicts in states' unjust enrichment laws, the court found that the plaintiff failed to satisfy the requirements of superiority and predominance. *Id.* at * 8. Likewise, in *In re Prempro,* the district court found that the law of unjust enrichment varied significantly from state to state. *In re Prempro,* 230 F.R.D. at 563 (citing *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 501 (S.D.Ill.1999) ("The actual definition of 'unjust enrichment' varies from state to state."); *In re Baycol,* 218 F.R.D.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 9

--- F.R.D. ----, 2010 WL 670119 (E.D.Ark.)
(Cite as: 2010 WL 670119 (E.D.Ark.))

at 214 ("Plaintiffs have not provided the Court sufficient information for it to conclude that the laws concerning unjust enrichment ... are not significantly or materially different."). For the proposition that the law of unjust enrichment varies materially, see also *In re Conagra Peanut Butter Products Liability Litigation*, 251 F.R.D. 689, 697 (N.D.Ga.2008) ("This morass is useful to establish not only the lack of uniformity of unjust enrichment claims across the country, but also the inferiority of class-wide resolution due to discerning the many differing legal standards."); *Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 533-34 (N.D.Ill.2008) ("[A]s noted by the significant weight of authority detailed above, the differences in the unjust enrichment laws are sufficiently substantive to preclude class certification."); *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 501 (S.D.Ill.1999) (because "variances exist in state common laws of unjust enrichment," "the claim of unjust enrichment is packed with individual issues and would be unmanageable").

The Court is convinced by the reasoning found in *Mooney, In re Prempro*, and *Thompson.* The law of unjust enrichment varies from state to state in material respects. As noted, Tyler does not dispute that other states' consumer protection laws contain material differences. Therefore, the Court concludes that the laws of the states in which putative class members reside differ materially. Therefore, the Court must decide whether Arkansas law would apply to the claims of all of the putative class members, including those who reside in states other than Arkansas.

B. CHOICE-OF-LAW ANALYSIS

*6 Federal courts sitting in diversity apply the forum state's choice-of-law rules. *See Mooney*, 244 F.R.D. at 535 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)); *see also Simpson v. Liberty Mut. Ins. Co.*, 28 F.3d 763, 764 (8th Cir.1994) ( "Federal district courts must apply the choice-of-law rules of the state in which they sit when jurisdiction is based on diversity of citizenship.").

At the outset, the parties disagree as to what choice-of-law analysis the Court should employ. Tyler argues that the Court should apply the familiar Leflar choice-influencing factors to its claims, which she says are essentially tort claims. Alltel, however, counters with three points: (1) Alltel's service agreements contain a controlling choice-of-law provision; (2) even if the contractual provision does not control, Tyler's claims are essentially contractual in nature, meaning that the Court should apply Arkansas's "most significant relationship" test; and (3) even if tort choice-of-law principles should apply, those principles dictate that Arkansas does not apply to the claims of non-Arkansas putative class members.

Whether Tyler's claims sound in contract or tort, the result is the same. If her claims sound in contract, then both the choice-of-law provision in the contract and general contract choice-of-law principles require that consumer transactions be governed by the law of the state in which the transaction occurred or the state in which the consumer's billing address is located. If her claims sound in tort, then under Arkansas's tort choice-of-law principles-including *lex loci delicti* and the Leflar choice influencing factors-the laws of twenty-five different states would still apply because the claims arise out of consumer transactions that occurred in different states.

1. Contractual Choice-of-Law Provision

[2] Attached as an exhibit to Tyler's original complaint is a copy of Alltel's terms and conditions agreement.[FN7] The agreement contains the following section on applicable law:

Applicable Law

Your Agreement and Alltel's provision of Services to you are subject to (a) the laws of the state identified in the billing address that you

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 670119 (E.D.Ark.)
(Cite as: 2010 WL 670119 (E.D.Ark.))

have provided us and (b) any applicable federal or state laws.

[3] Under Arkansas law, in a dispute in an action arising in contract where the law of more than one state might apply, a court must first look to see if there has been an effective choice of law before conducting the most significant relationship test. *Crisler v. Unum Ins. Co. of Am.*, 366 Ark. 130, 133, 233 S.W.3d 658, 660 (2006). Tyler argues that her claims arise in tort, not in contract, so any contractual choice-of-law provision is irrelevant. Alltel says that this choice-of-law provision shows that customers have agreed that disputes arising out of the terms and conditions agreement are governed by the laws of the state identified in the provided billing address.

*7 The Arkansas Commercial Code provides:

> Except as provided in this section, when a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this subtitle applies to transactions bearing an appropriate relation to this state.

ARK.CODE ANN. § 4-1-301(1). Relying on the Arkansas Commercial Code, the Arkansas Supreme Court in *Evans v. Harry Robinson Pontiac-Buick, Inc.*, held that a retail installment contract that stated that the contract would be "governed by the law of the State of Texas" was governed by the State of Texas because a reasonable relationship existed between the transaction and Texas. [FN8] The court said that in determining whether a reasonable relationship exists a court should consider where the transaction originated, where payments were sent, and where the contracting parties were located in the contract. *Evans v. Harry Robinson Pontiac-Buick, Inc.*, 336 Ark. 155, 163, 983 S.W.2d 946, 950 (1999).

At the heart of this case are thousands of individual consumer transactions originating in the respective home states of the individual putative class members. Although Alltel had its home offices in Arkansas, it had a presence in and conducted business in each of the states in which putative class members reside, so both contracting parties were located in the respective state in which each transaction originated. By virtue of the choice-of-law provision in the agreement, Alltel and its customers agreed that their agreement would be governed by the laws of the state of the customer's billing address.[FN9] Because there is a reasonable relationship between the transaction and the state of the customer's billing address, that choice-of-law provision is enforceable.

**2. Contract Choice-of-Law Principles**

[4] Alltel argues that, even if the contractual choice-of-law provision is not enforceable, Arkansas courts would apply the most significant relationship test to Tyler's claims because they really arise in contract. Again, Tyler disagrees and asserts that her claims arise in tort, not contract, so the Court should apply Leflar's choice-influencing factors as found in *Wallis v. Mrs. Smith's Pie Co.*, 261 Ark. 622, 629, 550 S.W.2d 453, 456 (1977). *Wallis*, which involved an action sounding in tort, does not apply to actions arising *ex contractu*. See *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1321 (8th Cir.1991).

[5] Where there is no effective choice of law by the parties in a cause of action arising in contract, Arkansas courts employ the "most significant relationship" test to determine which state's laws to apply. *Crisler*, 366 Ark. at 133, 233 S.W.3d at 660. Under that test, a court must consider "the nature and quantity of each state's 'contacts' with the transaction at issue." *Snow v. Admiral Ins. Co.*, 612 F.Supp. 206, 209 (W.D.Ark.1985). The following factors are relevant: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 670119 (E.D.Ark.)
(Cite as: 2010 WL 670119 (E.D.Ark.))

residence, nationality, place of incorporation and place of business of the parties. *Id.* (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971)). In this case, for the most part, the place of contracting would have been each customer's respective home state.[FN10] The contract negotiations would have occurred, for the most part, in each customer's respective home state. The contracts were performed in each customer's respective home state. Although it may be difficult to define the location of the subject matter of a contract for wireless service, it is reasonable to assume that customers use their wireless telephones primarily in the states in which they reside. Finally, although Alltel is incorporated in Arkansas, it conducted business in each of the twenty-five states in which the putative class members reside. Therefore, consideration of the five factors in the most significant relationship test supports the conclusion that the Court should apply the laws of the states in which each respective customer resided, which would mean that the laws of twenty-five states would be applicable to the class claims.

### 3. Tort Choice-of-Law Principles

*8 [6] Even if the contract's choice-of-law provision were not broad enough to be controlling, and even if the Court should apply tort rather than contract choice-of-law principles, application of Arkansas tort choice-of-law principles would reach the same result. In *Wallis v. Mrs. Smith's Pie Co.*, 261 Ark. 622, 550 S.W.2d 453 (1977), the Arkansas Supreme Court adopted Professor Robert A. Leflar's five-factor approach to deciding tort choice-of-law questions. *See Miller v. Pilgrim's Pride Corp.*, 366 F.3d 672, 674 (8th Cir.2004). Those factors are: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Id.* Arkansas law has not, however, altogether discarded the traditional approach of *lex loci delicti*, so a court "must consider the *lex loci delicti* rule within the framework of the five Leflar factors." *Id.; see also Ganey v. Kawasaki Motors Corp., U.S.A.*, 366 Ark. 238, 251, 234 S.W.3d 838, 847 (2006) (noting that Arkansas choice-of-law analysis "ha[s] evolved from a simple application of the doctrine of *lex loci delicti* into a consideration of both that doctrine and Leflar's five choice-influencing factors"); *Gomez v. ITT Educ. Servs., Inc.*, 348 Ark. 69, 77, 71 S.W.3d 542, 546 (2002) (noting that "the adoption of the Leflar factors in *Wallis* and subsequent cases appears to be merely a softening of what previously had been a rigid formulaic application of the former rule of law").

#### i. *Lex loci delicti*

[7] Tyler argues that conduct in Arkansas has caused injuries in other states, so the laws of Arkansas should apply to the class claims. The claims of each putative class member, however, are based on what disclosures were or were not made and to what terms and conditions the customer actually agreed at the point of sale. Thus, as Tyler admits in her supplemental brief, a strict application of *lex loci delicti* would dictate that the law of the state in which the consumer transaction occurred would govern disputes arising out of that particular consumer transaction.

#### ii. Predictability of results

[8] The five Leflar factors also point toward application of each class jurisdiction's respective laws. First, predictability of results largely points towards application of the laws of the state in which the customer resides. Professor Leflar has explained:

> Predictability of results includes the ideal that parties to a consensual transaction should be able to know at the time they enter upon it that it will produce, by way of legal consequences, the same socioeconomic consequences (usually based upon the assumed validity of the transaction) regardless of where litigation occurs so that forum-shopping will benefit neither party. They should

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 670119 (E.D.Ark.)
(Cite as: 2010 WL 670119 (E.D.Ark.))

Page 12

be able to plan their transaction as one with predictable results. At least this is an ideal for some kinds of transactions.

*9 Protection of the justified expectations of parties to a transaction is achieved to the extent that the results are reasonably predictable in advance. A rule that permits parties to select at the time of their transaction the state whose law is to govern it serves this purpose....

ROBERT A. LEFLAR, LUTHER L. MCDOUGAL III, AND ROBERT L. FELIX, AMERICAN CONFLICTS LAW § 103 at 290 (4th ed.1986) (footnotes omitted). This factor, the predictability of results, "is most relevant when parties have expectations about the applicable law, such as in 'consensual transactions where people should know in advance what law will govern their act'...." *Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.*, 111 F.3d 1386, 1394 (8th Cir.1997) (quoting *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408, 412 (1973). A person who enters into a consumer transaction in his home state may reasonably expect any issues arising from the transaction to be governed by the laws of his home state. The choice-of-law provision in Alltel's contracts is consistent with this expectation, as it calls for application of the laws of the consumer's home state, rather than some foreign state the laws of which the consumer is likely to be ignorant. For the same reason, when Alltel entered into the consumer transaction at issue here, it could reasonably expect that the law of the consumer's home state would govern that transaction.

Tyler argues that predictability of results favors application of the law of the place of the defendant's conduct, rather than the place of the injury. The cases cited by Tyler are not on point. For example, in *In re Mercedes-Benz*, a company with its headquarters in New Jersey failed to disclose the impending obsolescence of an emergency response system, and it concocted a scheme at its New Jersey headquarters to continue marketing and promoting the system anyway. *In re Mercedes-Benz*, 257 F.R.D. at 50-53. Similarly, in *Mooney* the Minnesota company's fraudulent marketing activities emanated and were sent from Minnesota, so the district court found that predictability of results favored application of Minnesota law. *Mooney*, 244 F.R.D. at 536. In this case, although Tyler's complaint alleges that Alltel's corporate headquarters intentionally ignored the fact that its sales representatives were failing to disclose the early disconnect penalty, any failure to disclose or any fraudulent conduct nevertheless occurred at the point of sale where the consumer spoke personally with a local Alltel representative. As the Court has previously stated, a customer contracting for Alltel's services could reasonably expect that the law of his home state would govern claims relating to that transaction.

### iii. Maintenance of interstate order

[9] The next factor, maintenance of interstate order, favors application of the law of the state with the "more significant relationship to the parties." *Ganey*, 366 Ark. at 252, 234 S.W.3d at 847. In *Ganey*, an ATV was sold and acquired in Louisiana, the injured party resided in Louisiana, and the allegations supporting the causes of action occurred outside of Arkansas. The only relationship to Arkansas was that it was the location of the ATV accident. Therefore, the Arkansas Supreme Court held that Louisiana had a more significant relationship to the parties than did Arkansas. *Id.* at 251-52, 234 S.W.3d at 847. Here, Arkansas does not have a more significant relationship to the non-Arkansas customers than their respective home states. Interstate order would not be maintained by applying Arkansas law to consumer transactions into which the parties entered in states other than Arkansas, especially where the contracts specified that the transactions would be governed by the laws of the states where the consumers received bills from Alltel.

### iv. Simplification of the judicial task

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 13

--- F.R.D. ----, 2010 WL 670119 (E.D.Ark.)
(Cite as: 2010 WL 670119 (E.D.Ark.))

*10 [10][11] This factor "is not a paramount consideration, because the law at issue does not exist for the convenience of the court that administers it, but for society and its members." *Schubert v. Target Stores, Inc.*, 360 Ark. 404, 411, 201 S.W.3d 917, 922 (2005). When the law of a state other than Arkansas is outcome-determinative and easy to apply, "there is no good reason not to consider importing it as the law governing the case." *Id.* (citing *Gomez*, 348 Ark. at 78-79, 71 S.W.3d at 547). When each of the consumer transactions is considered individually, this factor favors neither Arkansas law nor the law of that state where the transaction occurred.

v. The forum's governmental interest

[12] On the fourth factor, advancement of the forum's governmental interests, Tyler argues that Arkansas has an interest in "policing its corporations so as to 'prevent[ ] the corporate form from becoming a shield for unfair business dealing.' " *See Mooney*, 244 F.R.D. at 537 (quoting *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 93, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987)). While that may be true, it is not the controlling consideration here. Arkansas does have an interest in policing its corporations, but the other twenty-four states have an equal or greater interest in policing the kinds of disclosures and representations made by persons conducting consumer transactions in their states. States tend to be jealous of their right to protect their own citizens in consumer transactions. The Wisconsin Consumer Act, for example, expressly invalidates choice-of-law clauses in consumer contracts specifying that the law of another state applies. WISCONSIN STAT. § 421.201(10)(a); *Coady v. Cross Country Bank*, 299 Wis.2d 420, 432, 729 N.W.2d 732, 738 (Wis.App.2007). Here, the forum's governmental interest does not justify applying Arkansas law to consumer transactions entered into in other states.

vi. The better rule of law

[13] Tyler argues that the final factor, application of the better rule of law, favors application of Arkansas law because it allows the plaintiffs their day in court, again citing to *Schubert* for support. In that case, Louisiana's workers' compensation laws barred a suit for negligence against a non-employer based on negligent conduct that occurred in Arkansas, so application of Louisiana law would deprive the injured person of his day in court. The Arkansas Supreme Court held that Arkansas law was the better rule of law because it did not deprive the injured person of his day in court. *Schubert*, 360 Ark. 411-12, 201 S.W.3d at 923. Tyler has not provided, and the Court has not found, examples of how application of the laws of other states might prevent residents of other states from obtaining redress in court. The better rule of law factor does not point to the application of the laws of Arkansas over the laws of the other states.

[14] The balance of the Leflar factors, when considered in the greater context of the *lex loci delicti* principle, leads to the conclusion that the law of each state where the consumer transaction occurred, or where the consumer lives, should govern that transaction. Thus, regardless of which set of choice-of-law principles is applied-the choice-of-law provision in the contract, general contract choice-of-law principles, or tort choice-of-law principles-the result is the same. Arkansas law will not apply to transactions between Alltel and customers in other states. Certifying the classes would require the application of the laws of twenty-five states.

C. RULE 23 CLASS CERTIFICATION STANDARD

*11 To obtain class certification, a plaintiff must meet all four requirements found in Federal Rule of Civil Procedure 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation. In addition to the four requirements found in Rule 23(a), a plaintiff must show that the proposed class action would satisfy one of the three elements in Rule 23(b).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 670119 (E.D.Ark.)
(Cite as: 2010 WL 670119 (E.D.Ark.))

Page 14

The party seeking class certification bears the burden of showing that certification is appropriate and the requirements of Rule 23 are met. *Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir.1994). Whether to certify a class action is left to the sound discretion of the district court. *See id.* at 259. When considering whether to certify a class, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974). "The determination that Arkansas law cannot apply to the claims of the entire class 'pervades every element of [Federal Rule of Civil Procedure] 23.' " *Thompson,* 2009 WL 362982, at *7 (quoting *In re Prempro,* 230 F.R.D. at 561).

1. Rule 23(b)(3)

[15] Tyler moves for certification of the early disconnect penalty payor class under Rule 23(b)(3). Rule 23(b)(3) requires that common issues predominate over individual issues and that a class action be superior to other available methods for the fair and efficient adjudication of the controversy. To show that common issues predominate, plaintiffs must show that their claims can be proven on a systematic, class-wide basis. *In re Prempro,* 230 F.R.D. at 566 (quoting *Blades v. Monsanto Co.,* 400 F.3d 562, 569 (8th Cir.2005)). This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997). In determining whether a class action is the superior method for adjudication, a court looks at four factors: (1) class members' interest in individually controlling their separate actions; (2) the extent and nature of existing litigation by class members concerning the same claims; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing the class definition. FED.R.CIV.P. 23(b)(3).

In *Thompson v. Bayer Corp.,* the Honorable James M. Moody denied certification of a nationwide class plagued with conflict-of-law issues similar to those here. The court first conducted an extensive analysis of the material conflicts between the unjust enrichment law of Arkansas and other states. *Thompson,* 2009 WL 362982, at *4-6. The court then held that the plaintiff's nationwide class claims did not meet the predominance or superiority requirements in Rule 23(b)(3):

*12 As explained in the discussion of conflicts of law, plaintiffs will be required to present different evidence to prove a prima facie case of unjust enrichment depending on their state of citizenship. Evidence regarding the Defendant's conduct, the direct or indirect benefit to the Defendant, and adequate remedies at law which may be available to the plaintiff cannot be presented on a systematic, class-wide basis.

\* \* \*

Although Plaintiff insists that the management of this class action is possible, the difficulties in protecting the "integrity of the law of each state" overwhelms any judicial economy which might be attained.

*Id.* at *7. Thus, based on the outcome-determinative conflicts in various states' laws, the court found that the superiority and predominance requirements of Rule 23(b)(3) were not satisfied. *Id.* at *8 (citing *In re Am. Medical Systems, Inc.,* 75 F.3d 1069, 1085 (6th Cir.1996) ("If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action.")). *See also Castano v. Am. Tobacco Co.,* 84 F.3d 734, 741 (5th Cir.1996) ("In a multistate class action, variations in state law may swamp any common issues and defeat predominance."); *In re Conagra,* 251 F.R.D. at 697 ("This morass is useful to establish not only the lack of uniformity of unjust enrichment claims across the country, but also the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 15

--- F.R.D. ----, 2010 WL 670119 (E.D.Ark.)
(Cite as: 2010 WL 670119 (E.D.Ark.))

inferiority of class-wide resolution due to discerning the many differing legal standards."); *Siegel v. Shell Oil. Co.,* 256 F.R.D. 580, 586 (N.D.Ill.2008) ("Because Plaintiffs allege that the false representations were the 'price at the pumps,' which is where consumers received and relied upon these representations, ... the place of each class member's gas purchase govern[s] that class member's claim. Thus, applying Illinois' choice-of-law rules leads to the application of each state's consumer protection laws. As a result, Plaintiffs have failed in their burden of establishing the requirements of commonality, superiority, and predominance...."); *Clay,* 188 F.R.D. at 501 ("claim of unjust enrichment is packed with individual issues and would be unmanageable").

As with its conflict of law analysis, this Court is persuaded by, and thus adopts, *Thompson's* reasoning on certification. Here, there are outcome-determinative conflicts in states' consumer protection statutes and unjust enrichment laws. The nature of Tyler's claims would require this Court to apply the laws of twenty-five states to the claims of the early disconnect penalty class. Applying twenty-five states' laws to Tyler's class, even if divided into twenty-five different sub-classes, would present the Court with an unmanageable situation at trial. *See In re Prempro,* 230 F.R.D. at 568 ("The difficulties likely to be encountered in the management of a class action are strongly considered when analyzing superiority.... It is well settled that the application of multiple state laws can render a case unmanageable.") (citing *Andrews v. Am. Tel. & Tel. Co.,* 95 F.3d 1014, 1024-25 (11th Cir.1996); *Castano,* 84 F.3d at 741-44) (internal quotes omitted). As in *Thompson* and the cases cited along with it, the outcome-determinative conflicts between states' unjust enrichment and consumer protection laws in this case are fatal to the satisfaction of Rule 23(b)(3)'s commonality and predominance requirements. The Court thus declines, in its discretion, to certify the early disconnect penalty payor class because the proposed class fails to meet the requirements of Rule 23(b)(3).

**2. Rule 23(b)(2)**

*13 [16] Tyler also moves for certification of an early disconnect penalty current subscriber class under Rule 23(b)(2). Rule 23(b)(2) allows for class actions where the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. FED.R.CIV.P. 23(b)(2). Tyler's motion for certification seeks an injunction to prevent Alltel from exacting its early disconnect penalty on any current subscribers.

Tyler's proposed Rule 23(b)(2) class was only a minor focus of the parties' significant briefing on the issues relating to certification of the early disconnect penalty classes.[FN11] Although Rule 23(b)(3)'s commonality and predominance requirements are not present in Rule 23(b)(2), "courts have held that class claims under 23(b)(2) must be cohesive." *In re Prempro,* 230 F.R.D. at 569 (citing *Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 142 (3rd Cir.1998) ("[T]he cohesiveness requirement enunciated by [ *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ] extends beyond Rule 23(b)(3) class actions. Indeed, a(b)(2) class may require more cohesiveness than a(b)(3) class."); *In re Baycol,* 218 F.R.D. at 211; *Thompson v. Am. Tobacco Co., Inc.,* 189 F.R.D. 544, 557 (D.Minn.1999)). "A class cannot be cohesive if the states' laws governing the class are notably different." *Id.*

The current subscriber Rule 23(b)(2) class fails for all the same reasons as Tyler's proposed Rule 23(b)(3) classes. There are outcome-determinative conflicts between the laws of Arkansas and the other twenty-four states, each of whose laws would apply to the customers in those respective states. The myriad of individual legal issues in Tyler's class claims is fatal to any possible cohesion in a Rule 23(b)(2) early disconnect penalty current subscriber class. *See In re Prempro,* 230 F.R.D. at 569 (denying certification because the proposed Rule 23(b)(2) class would require application of twenty-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 670119 (E.D.Ark.)
(Cite as: 2010 WL 670119 (E.D.Ark.))

four states' medical monitoring laws, which contained outcome-determinative conflicts).

## CONCLUSION

For the foregoing reasons, Tyler's renewed motion for certification of the early disconnect penalty classes is DENIED. Document # 109. Alltel's motion to strike Tyler's class allegations, and Tyler's motion to strike the expert testimony of Prof. Jerry Hausman, are DENIED as moot. Documents # 82 and # 141. Tyler has also filed a motion for leave to file a second amended complaint to remove the carve-out provision for Arkansas residents. That motion was filed after the Saline County Circuit Court denied certification of the nearly identical early disconnect penalty state court action, which the Arkansas Supreme Court recently reversed and remanded. Tyler has moved for class certification on the presumption that this Court would grant leave to amend, but whether the carve-out provision for Arkansas residents is included or removed from Tyler's proposed class definitions does not affect the Court's reasoning in denying class certification. Therefore, Tyler's motion for leave to amend is also DENIED as moot. Document # 76.

*14 IT IS SO ORDERED.

> FN1. Counsel has notified the Court that the parties have reached a settlement in principle of the claims related to the proposed Mr. Rescue class and will be filing a joint motion in the near future. Therefore, the Court will not address the motion to certify that class.
>
> FN2. Since the commencement of this action, Alltel has merged into Verizon Wireless.
>
> FN3. The complaint lists Michigan as one of the twenty-five states in which putative class members reside, but it does not list Michigan's consumer protection statute along with the other twenty-four states'

consumer protection laws.

FN4. In their respective arguments, both parties have also referred to the early disconnect penalty as an "early termination fee" or "ETF." The ETF or EDP label is not a determinative factor in the Court's decision, so the Court will hereinafter refer to an early disconnect penalty, as that is the label used in Tyler's proposed class definitions.

FN5. The Arkansas Supreme Court recently reversed the Saline County Circuit Court's denial of certification, holding that the circuit court abused its discretion by delving into the underlying merits of the case. *Rosenow v. Alltel*, 2010 Ark. 26, --- S.W.3d ----. The Supreme Court's decision does not control the dispositive issues in this case. Whereas *Rosenow* involved only an Arkansas class of plaintiffs, this case involves plaintiffs from twenty-five different states. The Supreme Court was not confronted with the conflicts of law issues that present themselves here. As explained below, those issues preclude class certification.

> Even apart from the choice-of-law issues presented here and not in *Rosenow*, *Rosenow* would not have preclusive effect. This Court's certification analysis under Federal Rule 23 would differ from the analysis required by the Arkansas Supreme Court. For an overview of the differences in application of Federal and Arkansas Rule 23, see *General Motors Corp. v. Bryant*, 374 Ark. 38, 42, 46-47, 285 S.W.3d 634, 638, 641 (2008); John J. Watkins, *A "Different" Top Ten List: Significant Differences Between State and Federal Procedural Rules*, THE ARKANSAS LAWYER, Winter 2010, at 14-15; F. Ehren Hartz, *Certify Now, Worry Later: Arkansas's Flawed Ap-*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 17

--- F.R.D. ----, 2010 WL 670119 (E.D.Ark.)
(Cite as: 2010 WL 670119 (E.D.Ark.))

*proach to Class Certification*, 61 ARK. L.REV. 707 (2009).

FN6. The district court also held that, even if states' unjust enrichment laws were in conflict, the relevant choice-of-law analyses would dictate application of New Jersey law to the nationwide claims.

FN7. Tyler says that she attached the agreement to her original complaint only as an example of the language upon which Alltel relied in charging its customers an early disconnect penalty, not as an example of a binding contract into which she and other Alltel customers entered.

FN8. At the time of the *Evans* opinion, this statutory language could be found at ARK.CODE ANN. § 4-1-105(1) (Supp.1997). The language in the 1997 and present versions is the same, but the Court has provided the most current citation.

FN9. There is little evidence in the record as to where payments were sent. A bill dated April 5, 2006, is attached to Tyler's complaint, and that bill shows that payments were to be sent to Lexington, Kentucky. The Court does not consider that factor to be significant in the context of this case.

FN10. We say "for the most part" because it is likely that some consumers purchased wireless service contracts in states where they did not reside, especially consumers living near a state boundary. Whether or not some of the consumers purchased their wireless services across a state boundary does not affect the analysis.

FN11. In Tyler's 62-page brief in support of her motion to certify the early disconnect penalty classes, she devoted only one page to arguing for certification of the current subscriber class under Rule 23(b)(2).

E.D.Ark.,2010.
Tyler v. Alltel Corp.
--- F.R.D. ----, 2010 WL 670119 (E.D.Ark.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.