

# Potter Anderson & Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

**W. Harding Drane, Jr.**
Partner
Attorney at Law
wdrane@potteranderson.com
302 984-6019  Direct Phone
302 658-1192  Facsimile

April 8, 2010

**BY HAND DELIVERY AND
ELECTRONIC FILING**

The Honorable Vincent J. Poppiti
Fox Rothschild LLP
Citizens Bank Center, Suite 800
919 N. Market Street
Wilmington, DE 19899-2323

> Re:  **In re Intel Corporation, C.A. No. 05-MD-1717-JJF;
> Phil Paul v. Intel Corp., Cons. C.A. No. 05-485-JJF**

Dear Judge Poppiti:

We write in response to plaintiffs' letter setting forth their interpretation of the decision of the U.S. District Court for the Northern District of California in *In Re TFT-LCD (Flat Panel) Antitrust Litigation.*

Simply put, that decision does not support class certification in this case.

First, the California court applied the standards of the Ninth Circuit, rather than those announced by the Third Circuit in *In re Hydrogen Peroxide Antitrust Litigation*—a decision it does not even mention. The California court deemed it sufficient for the plaintiffs to offer a "plausible" method of proving impact (at 32:2) and, quoting from *In re Ethhylene Propylene Diene Monomer (EPDM) Antitrust Litig.* 256 F.R.D. 82, 100 (D. Conn. 2009), determined that "the issue at class certification is not which expert is the most credible, or the most accurate modeler. . . ." (at 32:2 and 29:7-9)

In contrast, *Hydrogen Peroxide* held that "the question at class certification stage is whether, if such impact is plausible in theory, it is also susceptible to proof at trial through available evidence common to the class. When the latter issue is genuinely disputed, the district court must resolve it after considering all relevant evidence." 552 F.3d 305, 325 (3d Cir. 2008). The Circuit also held that "[w]eighing conflicting expert testimony at the certification stage is not only permissible; it may be integral to the rigorous analysis Rule 23 demands" and that "[r]esolving expert disputes in order to determine whether a class certification requirement has been met is always a task for the court—no matter whether a dispute might appear to implicate the 'credibility' of one or more experts." *Id.* at 323-324. Your Honor emphasized both of these points in the order of January 12, 2010 prescribing a further round of briefing in light of the

*Hydrogen Peroxide* decision. Amended Order Requiring Pre-Hearing Order, D.I. 2274, 1/12/10, at 1-2.

The key assumptions on which the California court proceeded were thus wholly inconsistent with the rules now applicable in this circuit.

The California court also showed an unwillingness to address issues that overlapped the merits of the plaintiffs' claims, (e.g. at 8:10 and 22:23-23:4). In contrast, *Hydrogen Peroxide*, requires the district court to "resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits." 552 F.3d at 307 Your Honor's January 12, 2010 order quoted that language as well.

Second, the California court found this Court's ruling on the FTAIA issue to be "factually distinguishable" from the case before it, making it clear that it did not regard this Court's ruling on that issue to be incorrect in any way. (21:7-22:5).

Third, the California court did not address, or apparently even consider, manageability issues such as those that preclude the certification of state classes in this case.

Fourth, the sole ascertainability issue the California court addressed was whether the plaintiffs could show that the products they purchased incorporated a panel manufactured by one of the defendants. (at 9:8-10:22). In the present case, the impossibility of establishing (a) which class members bought computers containing microprocessors purchased in a transaction excluded by this Court's FTAIA ruling and (b) which, if any, were impacted by Intel's alleged wrongful acts, eliminate any possibility of ascertaining which, if any, members of the putative class belong in it.

Fifth, the California court distinguished *In re Graphics Processing Units (GPUs) Antitrust Litigation*, 253 F.R.D. 478 (N.D. Cal. 2008), on the ground that GPUs, the products involved in that case, were "not fungible commodities." (at 30:8-13). As shown in our brief in opposition to class certification, the market for GPUs closely resembles that for CPUs, the products involved in this case.

Sixth, and most importantly, the California case involved straightforward price fixing by a cartel which set out to and did increase prices -- indeed, many of the defendants had already entered guilty pleas. (at 4:7). The California court found that "the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist," (at 11:7-8) and that the requirement of typicality was satisfied because the complaint alleged that all class members had been injured by the same "overarching scheme." (at 12:7-14). Indeed, the sole issue of antitrust impact the California court considered was whether the overcharges that defendants imposed on the direct purchasers were passed on to indirect purchasers as they "move[d] through the supply chain." (at 19:1-4).

Page 3
The Honorable Vincent J. Poppiti
April 8, 2010

The present case involves very different issues. As explained more fully in our brief opposing class certification, it is bottomed on plaintiffs' attempt to convert price *reductions* into *overcharges,* with all of the "twists and turns" this Court found such a conversion to entail in its FTAIA ruling. Memorandum Opinion, March 7, 2007 at 8.

Nor do plaintiffs claim that Intel targeted its customers for overcharges. Rather, they say that Intel's price cuts were directed against a third party, AMD, and that AMD's resulting enfeeblement caused Intel's prices to be higher than they would have been without the price cuts. The complexities, indeed the oddity, of this theory raise numerous issues, many of them irresolvable, that make it impossible to establish a causal chain between Intel's price cuts and any impact—common or otherwise—on the members of the putative class.

So profound are the differences between the California case and this one, as to both the law applied and the underlying case theory, that it is not too much to say that the reasoning of the California court more clearly undermines than supports the request of the present plaintiffs for class certification.

           Respectfully submitted,

           */s/ W. Harding Drane, Jr.*

           W. Harding Drane, Jr. (I.D. No. 1023)

WHD:cet
cc:  Clerk of the Court (By Electronic Filing and Hand Delivery)
   Counsel of Record (By Electronic Filing and E-Mail)

960940/29282