

Potter
Anderson
&Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

W. Harding Drane, Jr.
Partner
Attorney at Law
wdrane@potteranderson.com
302 984-6019  Direct Phone
302 658-1192  Facsimile

March 30, 2010

**BY HAND DELIVERY AND
ELECTRONIC FILING**

PUBLIC VERSION

The Honorable Vincent J. Poppiti
Fox Rothschild LLP
Citizens Bank Center
919 North Market Street, Suite 1300
Wilmington, DE 19899-2323

> Re:   **In re Intel Corporation, C.A. No. 05-MD-1717-JJF;
> Phil Paul v. Intel Corp., Cons. C.A. No. 05-485-JJF**

Dear Judge Poppiti:

Intel respectfully moves for an Order precluding plaintiffs and their expert, Dr. Keith Leffler, from introducing or relying on recently disclosed analyses to offer brand-new expert opinions at the upcoming class certification hearing.[1]

Plaintiffs have twice sought unsuccessfully to offer new opinions and analyses, presumably aimed at correcting the flaws in Leffler's existing opinions. Having failed in those attempts, plaintiffs now take a third tack. They sprinkled unsupported references to new, undisclosed expert analyses into their Response to Intel's Proposed Findings of Fact. After Intel raised the issue, plaintiffs confirmed that they seek to insert these new analyses—which foretell fundamental changes in Leffler's opinions—into the hearing in the guise of "rebuttal" testimony.

Intel has no objection to Leffler providing appropriate rebuttal testimony at the hearing to defend the analyses in his Reply Declaration against the critiques made by Intel's expert, David Kaplan. But plaintiffs plan to introduce these analyses for the improper purpose of adding to and modifying Leffler's prior opinions in highly prejudicial ways. Plaintiffs' third attempt to sandbag Intel should fare no better than their first two, and the new analyses should be excluded.

**I.   Background**

On January 26, 2010, plaintiffs sought leave to file a "Reply to Sur-reply" and another expert report. The Court properly denied the request as untimely, and noted that "Class Plaintiffs

---

[1]   Given the impending hearing, Intel respectfully requests a hearing on this motion by April 9. Intel asks that Plaintiffs' response be due on April 5 and Intel's reply on April 7. Intel tried unsuccessfully to resolve this motion and its briefing schedule informally.

Page 2
The Honorable Vincent J. Poppiti
March 30, 2010

will have adequate opportunity to present any rebuttal evidence/arguments at the Hearing for Class Certification to commence on April 15, 2010." February 2, 2010 Order (D.I. 2302), at 3

Plaintiffs next sought leave to introduce new expert testimony at the hearing through Dr. Roger Noll. The Court also properly denied this request, finding it a "willful" "attempt to circumvent the Special Master's Order...." Special Master's Report and Recommendations (D.I. 2382), at 7. The Court also noted that "to the extent Plaintiffs offer Prof. Noll to strengthen Dr. Leffler's analysis, this is not the proper scope of rebuttal testimony." *Id.* at n.3.

Intel nevertheless suspected plaintiffs planned to offer new analyses at the hearing after discovering several unsupported statements in their Response to Intel's Proposed Findings. In response to Intel's inquiry, plaintiffs stated that they intended to produce "backup ... for any analyses we will present at the hearing." *See* Exhibit A. On March 22, 23, and 27, 2010, four weeks after smuggling their new analyses, without citation, into the pleadings and three weeks before the hearing, plaintiffs produced the backup files.[2]

## II.   Wholesale Changes in Expert Opinion are not "Rebuttal"

These newly disclosed data are fundamental changes in Leffler's previous analyses and are not proper testimony in rebuttal to Intel's expert. They consist of *fifteen* new analyses, which generally fall into two categories: (1) completely new analyses without any precedent in Leffler's previous reports and (2) re-workings of analyses in Leffler's Reply Declaration that either materially change the specification of the analysis or use entirely different data sets to generate their results.[3] These materials were provided without an expert report or declaration, so Intel does not know what opinions Leffler has reached. Nor will Intel have the opportunity to depose Leffler about these new opinions.

These analyses set the stage for fundamental changes in Leffler's opinions at the hearing. They change the way plaintiffs determine Intel's prices to the OEMs. They reject Leffler's prior finding that mobile microprocessors did not experience a price decline in 2006 and substitute an opinion that they did. They purport to eliminate 80% of Intel's sales during the benchmark period as not "Relevant for Competitive Analysis." None of these material, thirteenth hour changes to Leffler's opinions falls remotely within the scope of proper rebuttal testimony.

*The Completely New Analyses.* The first category includes six new analyses that lack any precedent in Leffler's previous reports. For example, two of Leffler's new analyses purport to match prices in the Intel sales database with cost information in the Dell purchases database. Leffler did not attempt any such price-cost matching, though the same data was available. To the contrary,

---

[2]   Plaintiffs still have not produced files and programs that would be required to replicate and test their new results with respect to "price-cost matching" and the "Overcharge Regression," discussed below. Two statements in Plaintiffs' Response to Intel's Proposed Findings— paragraphs 198 and 200, concerning limiting SKU-specific pass-on regressions to SKUs with significant volume—still appear unsupported by the newly-produced data, or any other evidence.
[3]   A brief description of each of the new analyses is attached as Exhibit B.

Page 3
The Honorable Vincent J. Poppiti
March 30, 2010

Leffler has now changed his mind and wants to offer new opinions based on what he previously represented could not be done, and in any event did not do. That is not proper rebuttal to Kaplan's opinion.

All of these new analyses could have (and, to be admissible, must have) been included in Leffler's Reply Declaration. Fact discovery closed six weeks before Leffler issued his Reply Declaration. All of the data that Leffler used to conduct the new analyses were available to him then. Nor are these analyses aimed at defending Leffler's previously disclosed opinions against Kaplan's critiques. Instead, plaintiffs' "rebuttal" case is calculated to ambush Intel with entirely new expert opinions for which Intel would have no reasonable opportunity to prepare.

An expert cannot include in his rebuttal testimony analyses that he "could have performed . . . in a timely fashion." *Palmer v. Asarco Inc.*, 2007 U.S. Dist. LEXIS 56969, *16 (N.D. Okla.); *see also In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 501 (N.D. Cal. 2008). *GPU* is directly on point. There, plaintiffs' expert filed an initial report that included regression analyses aimed at showing that pass-on was susceptible to common proof. 253 F.R.D. at 504. She filed a rebuttal report that, in addition to addressing the criticisms of her initial regressions, also introduced five new regressions. *Id.* at 501. The court struck the new regressions as improper rebuttal because the data for those analyses was available at time of the initial report.

The same is true here. All of the analyses that plaintiffs seek to introduce at the hearing could have been conducted and included in Leffler's Reply Declaration, allowing him to be deposed on them. Leffler chose not to conduct these analyses the first time, and plaintiffs' attempt to introduce them under the guise of "rebuttal" is improper.

*The Re-working of Prior Analyses.* The second category includes nine analyses in which Leffler re-does almost all of the pricing analyses in his Reply Declaration to gerrymandered data sets. These also are an improper attempt to introduce new expert opinion.

For example, the Overcharge Regression that Leffler advanced in his Reply Declaration—a cornerstone of plaintiffs' class certification motion—intentionally omitted all mobile microprocessors. Leffler Reply Decl., n. 107. Leffler testified that he excluded them because ⎸                                      ⎹ during his competitive benchmark period. Leffler Depo. II, 651:10-16. One of the new analyses, however, consists of an entirely new regression model that does include mobile microprocessors.

Leffler also expands the "3 out of 125" pricing analysis reported in footnote 115 of his original report, attempting to, *inter alia*, differentiate between transactions that are "Relevant for Competitive Analysis in 2006" and those that are not. Intel does not know (and apparently won't learn until the hearing) why Leffler deems some processors not "relevant," but significantly, his new analysis suggests that all sales to Dell -- the largest OEM -- are now considered "irrelevant."[4] All of Leffler's prior analysis of 2006 pricing included sales to Dell.

---

[4]  *See* Customer-MM Pricing Analysis - DT (032210).xlsx, n.2 (attached as Exhibit C). This new analysis suggests that 80% of Intel's sales should now be deemed "irrelevant."

Page 4
The Honorable Vincent J. Poppiti
March 30, 2010

Changing the entire scope of the signature Overcharge Regression and suddenly and mysteriously eliminating all sales to Dell as irrelevant are major, substantive changes to Leffler's analysis far outside the proper scope of rebuttal testimony. *See Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006) (holding that rebuttal expert testimony "that states additional opinions or rationales" is improper); *see also* D.I. 2382, at n.3 (effort to "strengthen Dr. Leffler's analysis … is not the proper scope of rebuttal testimony.").

### III.   Allowing Plaintiffs to Introduce Brand New Analysis and Expert Opinion at the Class Certification Hearing Would Be Highly Prejudicial to Intel.

The purpose of limiting rebuttal testimony is to ensure the other party is not prejudiced. A court cannot "consider these [new analyses]" when the "defendant has had no opportunity to determine the basis for these studies through deposition or other discovery methods." *Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 645 (N.D. Cal. 2007). Late submissions are "a clear-cut form of sandbagging" that is "simply unfair." *GPU*, 253 F.R.D. at 501.

As Intel noted in its motion to exclude Noll's testimony, a court should examine the "following 'basic considerations'" in determining whether to exclude expert testimony:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order. *Coalition To Save Our Children v. Bd. of Educ. of the State of Del.*, 90 F.3d 752, 789-90 (3rd Cir. 1996) (quotation omitted).

Plaintiffs' new analyses, if admitted, would be highly prejudicial to Intel. Intel does not know why Leffler decided to conduct these new data analyses, or what opinions he reached from them. Plaintiffs intend that Intel will not learn Leffler's new opinions until he testifies at the hearing. That is the very definition of "unfair" "sandbagging."

Without an expert report or deposition, Intel will be forced to hypothesize and respond to every possible new opinion that Leffler might have. That cannot be accomplished just three weeks before the hearing, especially given the scope of the new analyses, which represent fundamental changes to nearly every analysis in Leffler's Reply Declaration. Even assuming Leffler did not start the new analysis until he received Kaplan's report, it still took him over ten weeks to complete his work, whereas Intel is expected to respond—without the benefit of an expert report—at a hearing less than three weeks away.

The lateness of these submissions also prevents any possible cure of the prejudice to Intel, and would disrupt the hearing. Intel has only seven hours for its presentation, and should not have to spend substantial amounts of it trying to anticipate and respond to undisclosed and improper last minute changes to Leffler's opinions. Plaintiffs' tactic is particularly egregious in light of their two prior attempts to expand improperly their expert opinions. This third attempt should fare no better. Intel submits that plaintiffs' attempt to introduce new opinions is another willful attempt to circumvent the Court's prior Order.

Page 5
The Honorable Vincent J. Poppiti
March 30, 2010

                              Sincerely,

                              /s/ W. Harding Drane, Jr.

                              W. Harding Drane, Jr.

WHD:cet
cc:  Clerk of the Court (By CM/ECF)
     Counsel of Record (By Electronic Mail)
959420/29282

     PUBLIC VERSION
     April 12, 2010

# EXHIBIT A



## COHEN MILSTEIN

Daniel A. Small
(202) 408-4610
dsmall@cohenmilstein.com

March 12, 2010

**VIA E-MAIL (GREGORY.WELLS@BINGHAM.COM)**

Gregory F. Wells, Esq.
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 20006-1806

Re:   *In re Intel Corp. Microprocessor Antitrust Litigation*, MDL No. 1717

Dear Greg:

I write in response to your March 10, 2010 letter concerning certain statements made in Plaintiffs' Response to Intel's Proposed Findings of Fact and Conclusions of Law. We have been working to respond at the upcoming class certification hearing to Intel's surreply papers, including Mr. Kaplan's reply report. We intend to produce our backup by the end of next week for any analyses we will present at the hearing in response to those papers and that report.

Sincerely,

*Dan Small / cw fw*

Daniel A. Small

DAS/cw

785865.1 1

**EXHIBIT B**

## New Analyses

| New Leffler Analysis | Relevant Files |
|---|---|
| Comparison of Intel and Dell Databases | Comparison of Intel and Dell Datasets (031910).xlsx<br>Comparison of Intel and Dell.do<br>Dell Lookup.do<br>Intel Dell Data Matching.do<br>Intel Dell Match Compile.do<br><br>**NOTE**: Intel has been unable to replicate this analysis as plaintiffs have not produced three required files: "dell_purchase_clean_10_days.dta", "dell_purchase_data_2000 - 2006_ew.dta", and "dell_purchase_data_2000 - 2006.dta". |
| Pricing Analysis for so-called "Legacy" Products | Legacy Pricing (032210).do<br>Legacy Pricing Regs (032110).xlsx<br>Legacy Pricing Results (032210).xlsx |
| Analysis of Pentium 4-600 Series Microprocessors | P4 600 versus Other P4s.do<br>P4 600 Series vs Other P4s - Chart (031910).xlsx |
| SKU-specific Pass-on Regressions | SKU Reg Results (031910).xlsx<br>sku_regs (031910).do |
| Analysis of Transaction-Specific Rebates to Dell in Intel Database | Intel Rebate Summary (031910).xlsx<br>Dell Rebates.do |
| Pentium 4 and Celeron Brand Pricing Analysis | Brand Pricing Analysis (032110).xlsx |

1

## Reformulation of Existing Analyses

| New Leffler Analysis | Relevant Files |
|---|---|
| New Overcharge Regression Analysis for Mobile Microprocessors and to Conduct New Brand and OEM Regressions | AMD Share of Mobile PCs - Gartner (031910).xlsx<br>Summary of Overcharge Results (032110).xlsx<br>Summary of Overcharge Results (032210).xlsx<br>OC Results by OEM (032210).log<br>Overcharge_Final_Hearing.do<br>Overcharge_Final_Hearing_(032210).do<br>Overcharge_MBL_(032210).do<br><br>**NOTE:** Plaintiffs have not produced program that generates the new brand analysis |
| Redoing Overcharge Regression to Include Fewer Processor Brands | Summary of Overcharge Results (032110).xlsx<br><br>**NOTE:** Plaintiffs have not produced program that generates this analysis |
| Redoing CDW Regression to Eliminate Rebates from Cost Calculation | Analysis_CDW_(031910).do<br>CDW Results (032110).log |
| Redoing Dell Pass-on Regressions to Not Average Price and Cost Data | Analysis_Dell_2006_Final_(032110).do<br>Dell 2006 Output.log |
| Redoing "3 out of 125" Pricing Analysis to Include All Brands, Segregate Sales by Customer-Processor Pairs, and Eliminate Transactions not "Relevant for Competitive Analysis in 2006" | Customer-MM Pricing Analysis - DT (032210).xlsx<br>Customer-MM_Pricing_DT_(032210).do |
| Redoing "3 out of 125" Pricing Analysis Based on Fewer Processors | MM Pricing Analysis (031910).xlsx<br>MM_Pricing_2006_(Kaplan Pars 49-50) (031910).do |
| Redoing Table 16 Damages Analysis to Redefine Price Data and Include Different Overcharge Estimate | Damages Table 16.do<br>Table 16 (Damages) (031910).xlsx |
| Redoing Mann-Whitney Test Without Transactions not "Relevant for Competitive Analysis in 2006" | Mann-Whitney Results (032610).xlsx<br>Stat_test_hearing_(032610).do |
| Redoing Table 4 Analysis by Brand and Customer-Processor Pairs | Table 4 - Revised (031910).xlsx<br>Table 4.do |

2

**EXHIBIT C**

# Exhibit C has been redacted in its entirety

Customer-MM Pricing Analysis - DT (032210).xlsx