
**Potter Anderson & Corroon LLP**

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

W. Harding Drane, Jr.
Partner
Attorney at Law
wdrane@potteranderson.com
302 984-6019 Direct Phone
302 658-1192 Facsimile

April 8, 2010

**BY HAND DELIVERY AND ELECTRONIC FILING**

PUBLIC VERSION

The Honorable Vincent J. Poppiti
Fox Rothschild LLP
Citizens Bank Center
919 North Market Street, Suite 1300
Wilmington, DE 19899-2323

    Re:    **In re Intel Corporation, C.A. No. 05-MD-1717-JJF;**
            **Phil Paul v. Intel Corp., Cons. C.A. No. 05-485-JJF**

Dear Judge Poppiti:

    Plaintiffs concede proper rebuttal cannot "change or replace" Leffler's prior opinions, D.I. 2397 at 1, but that is exactly what they propose to do. Allowing last-second, fundamental changes to Leffler's opinions that Intel cannot fully respond to would be highly prejudicial.

    Leffler's Reply Declaration was based on two key constructs that, significantly, <u>Leffler himself chose independently of Kaplan</u>, but that plaintiffs now confirm he wants to change. D.I. 2397, Ex. 1 ("Ex. 1") at 1, 3. First, Leffler originally ran his 2006 Overcharge Regression and other analysis of 2006 pricing on what <u>he defined</u> as the relevant products:

Leffler Reply, n.107. Leffler represented that from increased AMD competition in the second half of 2006. Leffler Reply, ¶ 42 (emphasis added). That opinion is the centerpiece of Leffler's Reply.

    Leffler now admits all desktop microprocessors did <u>not</u> have price reductions, so he wants to change his centerpiece opinion to "Intel lowered prices where it faced increased competition from AMD but not where it did not." Ex. 1 at 2. Thus, Leffler redefines "relevant" desktop products and re-does his analysis of 2006 pricing, <u>excluding</u> sales to Dell, the Pentium 4 600 series, so-called "duds," "legacy products," and products more than three years old as now "irrelevant." Remarkably, his new approach would eliminate as much as <u>80% of the volume</u> of desktop products analyzed in his Reply. In addition, Leffler rejects his former opinion that

Leffler now says he should have <u>included</u> some, but not all, mobile chips. Ex. 1 at 3. If Leffler believes these were the relevant products, he should have analyzed them in his Reply.

    The purported tie to Kaplan for all of this? According to plaintiffs, "Kaplan applies the [regression] model to individual brands and customers without taking any of these issues into

consideration." Ex. 1 at 3. Of course he didn't: "these issues" hadn't been invented until after Kaplan's report. Kaplan never said these were the correct products; he analyzed the relevant products Leffler had defined. Leffler wants to change his definition because his analysis did not support plaintiffs' motion. Changing opinions to sidestep criticisms is not proper rebuttal.

Second, Leffler analyzed microprocessor prices he calculated from Intel's database. Leffler Reply, ¶ 15. He opined that Intel's database cannot be matched with the OEM databases to determine whether an OEM treated Intel's concessions differently than Intel did. [redacted] Not only couldn't it be done, as Leffler opined, he went on to testify that [redacted] Yet Leffler's "rebuttal" analysis rebuts his own prior opinion. He now says the databases can be (partially) matched up, and, (apparently only) with respect to Dell, must be matched up to properly measure price. Ex. 1 at 5 (recalculating prices to Dell for Table 16 damages calculation).

Plaintiffs do not deny Leffler had the data to conduct this recalculation—indeed, all 15 of the purported rebuttal analyses—when he filed his Reply, which alone makes them improper rebuttal. *Palmer v. Asarco*, 2007 U.S. Dist. LEXIS 56969, at *16 (N.D. Okla.) (rebuttal cannot include what "could have [been] performed ... in a timely fashion."); *Daniel v. Coleman Co.*, 2008 WL 696592, at *4 (W.D. Wash.) (excluding testimony where "change is also not based on new information ... but rather is based on a very late change of counsel's mind").

Plaintiffs note Kaplan compared certain price data in Intel's database with cost data in Dell's. But that doesn't turn Leffler's brand new analysis into rebuttal. It at best concedes Leffler's prior testimony [redacted] is wrong, so he needs to change his opinion to evade Kaplan's criticism. But it is not enough, as plaintiffs argue, for appropriate rebuttal analysis simply to relate to something an opposing expert said. The question is whether that response properly defends the previous opinion or improperly changes it. *Palmer*, 2007 WL 2254343, at *3 (excluding improper rebuttal including "new opinions, facts and testing that were not previously disclosed" notwithstanding that "plaintiffs could not reasonably have anticipated every objection defendants would make").

Plaintiffs don't dispute that Intel wasn't told of Leffler's new opinions; they highlight it, criticizing Intel for an "incorrect characterization" of one of Leffler's analyses, where Intel—without the benefit of a report—was unable to divine Leffler's intent. *See* Ex. 1 at 3. Intel didn't know (at least until the partial disclosure in Ex. 1) what Leffler's analyses supposedly mean.

Plaintiffs also make much of the fact that Intel may be able to replicate many of Leffler's analyses. This means only that (in most cases, eventually) Intel could run the program and see the same results plaintiffs reported, a far cry from understanding how and why the program was created and being able to empirically test it and investigate the assumptions that underlie it, which cannot be effectively done in the days before the hearing. As one example, had Leffler included these opinions in his Reply, Intel could have asked AMD's 30(b)(6) witness whether AMD competed with Pentium 4 600 series chips in 2006, contrary to Leffler's new claim, but that time has passed. And as further evidence of the prejudice to Intel, just yesterday—one week before the hearing—plaintiffs produced yet another new program because Intel still can't even replicate all of Leffler's results. *See* Exhibit A.

Page 3
The Honorable Vincent J. Poppiti
April 8, 2010

                                      Sincerely,

                                        */s/ W. Harding Drane, Jr.*

                                      W. Harding Drane, Jr. (I.D. No. 1023)

WHD:cet
cc: Clerk of the Court (By CM/ECF
    Counsel of Record
960998/29282

PUBLIC VERSION
April 12, 2010

**EXHIBIT A**

**Wells, Gregory F.**

| | |
|---|---|
| From: | Small, Daniel [DSmall@cohenmilstein.com] |
| Sent: | Wednesday, April 07, 2010 5:00 PM |
| To: | Wells, Gregory F. |
| Cc: | Balabanian, David M.; Pickett, Donn |
| Subject: | Intel |
| Attachments: | Dell Lookup.do |

Greg,

I write in response to your inquiries in your April 6, 2010 letter concerning two of Dr. Leffler's rebuttal analyses. We can confirm that the numbers reported in the spreadsheet "Comparison of Intel and Dell Datasets (031910).xlsx" are correct. We discovered that one of the programs that generates those numbers was produced to you, inadvertently, as an earlier version. The current and correct version is attached.

As to your question about the spreadsheet "Summary of Overcharge Results (032110).xlsx", we can clarify that the number that appears in cell B3 in the "Correcting Kaplan" tab was taken from the Revised Reply Declaration of Dr. Keith Leffler. See Table 3 (showing a coefficient of -.146317). The -0.15 figure is not based on any new analysis but simply re-states the results of the old analysis conducted for Dr. Leffler's reply declaration. Accordingly, you can ignore the list of Intel microprocessors in cell A3.

Please let me know if you have any further questions.

Regards,
Dan


COHEN MILSTEIN

Daniel A. Small
Partner
202.408.4610
dsmall@cohenmilstein.com

Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC 20005
t: 202.408.4600
f: 202.408.4699
www.cohenmilstein.com

This transmission is intended for the exclusive use of the individual or entity that is the named addressee and may contain information that is privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee or an employee or agent responsible for delivering this message to the named addressee, you are not authorized to read, print, retain, copy or disseminate this transmission or any part of it. If you have received this message in error, please notify me immediately, discard all paper copies and delete any electronic files of this message. Thank you.

4/8/2010