## PRICKETT, JONES & ELLIOTT
A PROFESSIONAL ASSOCIATION
### 1310 KING STREET, BOX 1328
### WILMINGTON, DELAWARE 19899
TEL: (302)888-6500
FAX: (302)658-8111
http://www.prickett.com

Writer's Direct Dial:
(302)888-6507
Writer's Telecopy Number::
(302)658-8111
Writer's E-Mail Address:
jcathey@prickett.com

Dover Office:
11 NORTH STATE STREET
DOVER, DELAWARE 19901
TEL: (302)674-3841
FAX: (302)674-5864

June 16, 2010

**VIA E-MAIL, ELECTRONIC FILING**
**AND HAND DELIVERY**

The Honorable Vincent J. Poppiti, Special Master
Fox Rothschild LLP
919 North Market Street, Suite 1300
Wilmington, DE 19899-2323

**REDACTED**
**PUBLIC INSPECTION VERSION**

RE:   *In re Intel Corp. Microprocessor Antitrust Litigation*, MDL No. 05-1717-JJF;
*Phil Paul v. Intel Corp.*, Cons. C.A. No. 05-485-JJF; D.M. No.13

Dear Judge Poppiti:

We write regarding Mr. Drane's June 11, 2010 letter (D.I. 2064), which enclosed an opinion in *In re Flash Memory Antitrust Litigation,* Case No. C 07-0086-SBA (N.D. Cal. Mar. 31, 2010). We also wish to bring to Your Honor's attention the recent decisions of the Ninth and the Seventh Circuits in *Dukes v. Wal-Mart Stores, Inc.,* 603 F.3d 571 (9th Cir. 2010) and *Pella Corp. v. Saltzman,* 2010 WL 1994653 (7th Cir. May 20, 2010), copies of which are enclosed as Exhibits A and B, respectively. These appellate decisions provide further support for Class Plaintiffs' Motion for Class Certification (D.I. 753 in 05-485-JJF).

Intel's reliance on *Flash Memory* is premature and misplaced. After the court's initial opinion denying class certification, the plaintiffs in *Flash Memory* filed a motion for leave to file a motion for reconsideration, on the basis of the Ninth Circuit's subsequent opinion in *Dukes v. Wal-Mart.* The district court directed the defendants to respond to plaintiffs' motion, and the matter is currently under submission. Therefore, the opinion and the result may change. In any event, unlike *Flash Memory*, where the court heavily relied on its finding that there were no uniform price lists,

█████████████████████████████████████████████████████████████
Transmittal Certificate of Laina M. Herbert (D.I. 1675), Tab 213
█████████████████████████████████████████████████████████████

19684.1\435441v2

The Honorable Vincent J. Poppiti
June 16, 2010
Page 2

█████████████ ; *see also* Class Plaintiffs' Preliminary Trial Plan (D.I. 1667) at
59-61 ██████████████████████████[1]

     In its *en banc* opinion in *Dukes v. Wal-Mart*, the Ninth Circuit substantially affirmed the district court's class certification order in a massive Title VII gender discrimination class action. Contrary to the assertion by counsel for Intel at the class certification hearing that this Court should ignore recent decisions from other circuits because they are contrary to *Hydrogen Peroxide*, the *Dukes* opinion observed that in fact the legal standards for class certification among the various courts of appeals are entirely consistent with each other, as well as with the governing Supreme Court authority. *Dukes*, 603 F.3d at 581-88.

     Under that standard, "[t]he district court must analyze underlying facts and legal issues going to the certification questions regardless of any overlap with the merits. However, this does not mean a district court should put the actual resolution of the merits cart before the motion to dismiss, summary judgment, and trial horses by reaching out to decide issues unnecessary to the Rule 23 requirements." 603 F.3d at 585-86. *Dukes* also held that the district court should not determine "which of the parties' expert reports is more persuasive." Rather, it should "only examine the expert reports as far as they bear on the Rule 23 determination." *Id.* at 592 (internal citations and quotations omitted).

> While Plaintiffs and Wal-Mart disagree on whose findings are more persuasive, the disagreement is not one of whether Plaintiffs have asserted "common questions of law or fact." *Gen Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157, 159 (1982). The disagreement *is* the common question, and deciding which side has been more persuasive is an issue for the next phase of the litigation. Requiring even more findings and further analysis from the district court would be to force a trial on the merits at the certification stage.

*Dukes*, 603 F.3d at 609 (emphasis in original).

     In *Pella Corp. v. Saltzman*, 2010 WL 1994653, the Seventh Circuit affirmed the district court's order certifying a nationwide injunctive class and six statewide damages classes in a consumer fraud case. Rejecting arguments similar to those advanced by Intel, the court held:

> Pella argues that too many individual variances between class members exist, because wood can rot for many reasons other than window design and is affected by specific conditions such as improper installation. Proximate cause, however, is necessarily an individual issue and the need for individual proof alone does not necessarily preclude class certification. A district court has the discretion to split a case by certifying a class for some issues, but not others, or by certifying a class for liability alone where damages or causation may require individualized assessments. Under the district court's plan, class members still must prove individual issues of causation and damages. While it is almost inevitable that a

---

[1] The district court in *Flash Memory* did not hold a hearing, and made no effort to distinguish other decisions by courts in the Northern District of California certifying similar indirect-purchaser classes. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010 WL 1286478 (N.D. Cal. Mar. 28, 2010); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 63 (N.D. Cal. 2009). In *LCD* and *SRAM* the Ninth Circuit denied petitions by defendants to appeal under F.R.Civ.P. 23(f).

The Honorable Vincent J. Poppiti
June 16, 2010
Page 3

       class will include some people who have not been injured by the defendant's conduct because at the outset of the case many members may be unknown, or the facts bearing on their claims may be unknown, this possibility does not preclude class certification.

2010 WL 1994653, at *3 (internal citations omitted).

       For the foregoing reasons, Class Plaintiffs respectfully submit that *Flash Memory* is neither compelling nor controlling as to the Court's decision on their class certification motion.


                                       Respectfully,

                                       J. Clayton Athey
                                     (DE Bar #4378)

Enclosures

cc:     W. Harding Drane, Esquire (w/encls.)
        James L. Holzman, Esquire (office)



Westlaw.

Page 1

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
**(Cite as: 603 F.3d 571)**

▷

United States Court of Appeals,
Ninth Circuit.
Betty DUKES; Patricia Surgeson; Edith Arana;
Karen Williamson; Deborah Gunter; Christine
Kwapnoski; Cleo Page, on behalf of themselves and
all others similarly situated, Plaintiffs-
Appellees/Cross-Appellants,
v.
WAL-MART STORES, INC., Defendant-
Appellant/Cross-Appellee.
**Nos. 04-16688, 04-16720.**

Argued and Submitted March 24, 2009.
Filed April 26, 2010.

**Background:** Female employees of retail store chain brought Title VII against employer alleging sex discrimination and seeking injunctive and declaratory relief, back pay, and punitive damages. The United States District Court for the Northern District of California, Martin J. Jenkins, J., 222 F.R.D. 137, granted in part and denied in part plaintiffs' motion for class certification, and the Court of Appeals, Pregerson, Circuit Judge, 509 F.3d 1168, affirmed.

**Holdings:** On rehearing en banc, the Court of Appeals, Michael Daly Hawkins, Circuit Judge, held that:

(1) district court did not abuse its discretion in finding that commonality existed among potential class members;

(2) district court did not abuse its discretion in finding typicality prerequisite for class certification satisfied; but

(3) district court abused its discretion by certifying plaintiffs' punitive damages claims as a separate class for equitable relief, overruling Molski v. Gleich, 318 F.3d 937 (9th Cir.2003).

Affirmed in part, and remanded in part.

Graber, Circuit Judge, filed a concurring opinion.

Ikuta, Circuit Judge, filed a dissenting opinion, in which Kozinski, Chief Judge, and Rymer, Silverman, and Bea, JJ., joined.

Kozinski, Chief Judge, filed a dissenting opinion.

West Headnotes

**[1] Federal Courts 170B ☞817**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk817 k. Parties; pleading. Most Cited Cases
A district court's decision regarding class certification is not only reviewed for abuse of discretion, but also subject to very limited review, to be reversed only upon a strong showing that the district court's decision was a clear abuse of discretion.

**[2] Federal Courts 170B ☞817**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk817 k. Parties; pleading. Most Cited Cases
A court abuses its discretion in ruling on a motion for class certification if its decision is premised on legal error.

**[3] Federal Courts 170B ☞817**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk817 k. Parties; pleading. Most Cited Cases
A district court's factual findings as to the applicability of criteria under Federal Rule of Civil Procedure governing class actions are entitled to the traditional deference given such determinations. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ☞162**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
**(Cite as: 603 F.3d 571)**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
            170Ak162 k. Discretion of court. Most Cited Cases

**Federal Civil Procedure 170A ☞173**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings
            170Ak173 k. Hearing and determination; decertification; effect. Most Cited Cases
Federal Rule of Civil Procedure governing class actions provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court; if evidence not available at the time of certification disproves plaintiffs' contentions that common issues predominate, the district court has the authority to modify or even decertify the class, or use a variety of management devices to address the individualized issues that have arisen. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[5] Federal Civil Procedure 170A ☞172**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings
            170Ak172 k. Evidence; pleadings and supplementary material. Most Cited Cases
A party seeking class certification bears the burden of showing that each of the prerequisites of Federal Rule of Civil Procedure governing class actions and at least one requirement under provision of rule governing types of class actions maintainable have been met. Fed.Rules Civ.Proc.Rules 23(a), 23(b), 28 U.S.C.A.

**[6] Federal Civil Procedure 170A ☞171**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings

            170Ak171 k. In general; certification in general. Most Cited Cases

**Federal Civil Procedure 170A ☞174**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings
            170Ak174 k. Consideration of merits. Most Cited Cases
When considering class certification under the class action rule, district courts are not only at liberty to, but must, perform a rigorous analysis to ensure that the prerequisites of the rule have been satisfied; it does not mean that a district court must conduct a full-blown trial on the merits prior to certification, but a district court's analysis will often, though not always, require looking behind the pleadings, even to issues overlapping with the merits of the underlying claims. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[7] Federal Civil Procedure 170A ☞171**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings
            170Ak171 k. In general; certification in general. Most Cited Cases

**Federal Civil Procedure 170A ☞172**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings
            170Ak172 k. Evidence; pleadings and supplementary material. Most Cited Cases
At the class certification stage, district courts must make determinations that each requirement of Federal Rule of Civil Procedure governing class actions is actually met; while plaintiffs need not make more than allegations as to their substantive claims, whether the suit is appropriate for class resolution must be actually demonstrated, not just alleged, to the district court's satisfaction. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[8] Federal Civil Procedure 170A ☞171**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
**(Cite as: 603 F.3d 571)**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings
            170Ak171 k. In general; certification in general. Most Cited Cases

**Federal Civil Procedure 170A ⏀174**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings
            170Ak174 k. Consideration of merits.
Most Cited Cases
When considering class certification under Federal Rule of Civil Procedure governing class actions, district courts are not only at liberty to, but must, perform a rigorous analysis to ensure that the prerequisites of the rule have been satisfied, and this analysis will often, though not always, require looking behind the pleadings to issues overlapping with the merits of the underlying claims; it is important to note that the district court is not bound by these determinations as the litigation progresses. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[9] Federal Civil Procedure 170A ⏀171**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings
            170Ak171 k. In general; certification in general. Most Cited Cases

**Federal Civil Procedure 170A ⏀174**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings
            170Ak174 k. Consideration of merits.
Most Cited Cases
When considering class certification under Federal Rule of Civil Procedure governing class actions, district courts may not analyze any portion of the merits of a claim that do not overlap with the rule's requirements; relatedly, a district court performs this analy-

sis for the purpose of determining that each of the rules requirements has been satisfied. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[10] Federal Civil Procedure 170A ⏀161.1**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
            170Ak161.1 k. Factors, grounds, objections, and considerations in general. Most Cited Cases

**Federal Civil Procedure 170A ⏀165**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
            170Ak165 k. Common interest in subject matter, questions and relief; damages issues.
Most Cited Cases

**Federal Civil Procedure 170A ⏀174**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings
            170Ak174 k. Consideration of merits.
Most Cited Cases
When considering class certification under Federal Rule of Civil Procedure governing class actions, courts must keep in mind that different parts of the rule require different inquiries; for example, what must be satisfied for the commonality inquiry is that plaintiffs establish common questions of law and fact, and answering those questions is the purpose of the merits inquiry, which can be addressed at trial and at summary judgment. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[11] Federal Civil Procedure 170A ⏀172**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings
            170Ak172 k. Evidence; pleadings and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
**(Cite as: 603 F.3d 571)**

supplementary material. Most Cited Cases

**Federal Civil Procedure 170A** ⬤⟿**1267.1**

170A Federal Civil Procedure
　170AX Depositions and Discovery
　　170AX(A) In General
　　　170Ak1267 Discretion of Court
　　　　170Ak1267.1 k. In general. Most Cited
Cases
District courts retain wide discretion in class certification decisions, including the ability to cut off discovery to avoid a mini-trial on the merits at the certification stage; different types of cases will result in diverging frequencies with which the district court will properly invoke its discretion to abrogate discovery. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[12] Federal Civil Procedure 170A** ⬤⟿**165**

170A Federal Civil Procedure
　170AII Parties
　　170AII(D) Class Actions
　　　170AII(D)1 In General
　　　　170Ak165 k. Common interest in subject matter, questions and relief; damages issues. Most Cited Cases
Commonality under Federal Rule of Civil Procedure governing class actions focuses on the relationship of common facts and legal issues among class members. Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

**[13] Federal Civil Procedure 170A** ⬤⟿**165**

170A Federal Civil Procedure
　170AII Parties
　　170AII(D) Class Actions
　　　170AII(D)1 In General
　　　　170Ak165 k. Common interest in subject matter, questions and relief; damages issues. Most Cited Cases
The commonality test under Federal Rule of Civil Procedure governing class actions is qualitative rather than quantitative, as one significant issue common to the class may be sufficient to warrant certification. Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

**[14] Federal Civil Procedure 170A** ⬤⟿**172**

170A Federal Civil Procedure
　170AII Parties
　　170AII(D) Class Actions
　　　170AII(D)2 Proceedings
　　　　170Ak172 k. Evidence; pleadings and supplementary material. Most Cited Cases
District court did not abuse its discretion in accepting, at the class certification stage of female employees' Title VII sex discrimination action against retail store chain, social framework analysis of sociologist presented by plaintiffs, interpreting and explaining facts suggesting that employer had and promoted a strong corporate culture that might have included gender stereotyping, to support a finding of commonality; sociologist presented scientifically reliable evidence tending to show that a common question of fact, i.e., whether employer's policy of decentralized, subjective employment decision making operated to discriminate against female employees, existed with respect to all members of the class. Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

**[15] Evidence 157** ⬤⟿**546**

157 Evidence
　157XII Opinion Evidence
　　157XII(C) Competency of Experts
　　　157k546 k. Determination of question of competency. Most Cited Cases
As a general rule, district courts are not required to hold a *Daubert* hearing before ruling on the admissibility of scientific evidence.

**[16] Federal Civil Procedure 170A** ⬤⟿**172**

170A Federal Civil Procedure
　170AII Parties
　　170AII(D) Class Actions
　　　170AII(D)2 Proceedings
　　　　170Ak172 k. Evidence; pleadings and supplementary material. Most Cited Cases
District court did not abuse its discretion in accepting, at the class certification stage of female employees' Title VII sex discrimination action against retail store chain, regional level data analysis of statistician presented by plaintiffs, concluding that there were statistically significant disparities between men and women at the retail store chain in terms of compensation and promotions, that the disparities were widespread across regions, and that they could be explained only by gender discrimination, to support a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
(Cite as: 603 F.3d 571)

finding of commonality; district court stated the legal standard, analyzed plaintiffs' and retail store chain's competing claims, and dismissed retail store chain's statistical challenges. Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

[17] Federal Civil Procedure 170A ⬚172

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings
            170Ak172 k. Evidence; pleadings and supplementary material. Most Cited Cases
Plaintiffs may demonstrate commonality under Federal Rule of Civil Procedure governing class actions by presenting statistical evidence, which survives a rigorous analysis, sufficient to fairly raise a common question concerning whether there is class-wide discrimination. Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

[18] Federal Civil Procedure 170A ⬚172

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings
            170Ak172 k. Evidence; pleadings and supplementary material. Most Cited Cases

Federal Civil Procedure 170A ⬚184.15

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak184 Employees
               170Ak184.15 k. Sex discrimination actions. Most Cited Cases
District court did not abuse its discretion in considering, at the class certification stage of female employees' Title VII sex discrimination action against retail store chain, anecdotal evidence presented by plaintiffs in the form of sworn declarations, to support a finding of commonality, as the combination of the declarations and plaintiffs' other evidence raised an inference of common discriminatory experiences. Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

[19] Federal Civil Procedure 170A ⬚184.15

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak184 Employees
               170Ak184.15 k. Sex discrimination actions. Most Cited Cases
District court did not abuse its discretion in determining, at the class certification stage of female employees' Title VII sex discrimination action against retail store chain, that employer's subjective decision-making policy provided support for plaintiffs' contention that commonality existed among potential class members; plaintiffs produced substantial evidence of employer's centralized firm-wide culture and policies, thus providing a nexus between the subjective decision making and the considerable statistical evidence demonstrating a pattern of lower pay and fewer promotions for female employees. Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

[20] Federal Courts 170B ⬚712

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(H) Briefs
         170Bk712 k. Briefs in general. Most Cited Cases
Retail store chain did not waive its challenge to the district court's typicality finding at the class certification stage of female employees' Title VII sex discrimination action, even though it failed to offer specific objections to the district court's typicality determination, where retail store chain referred, somewhat obliquely, to the typicality factor in its opening brief. Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

[21] Federal Civil Procedure 170A ⬚164

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
            170Ak164 k. Representation of class; typicality. Most Cited Cases

Federal Civil Procedure 170A ⬚165

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
(Cite as: 603 F.3d 571)

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
            170Ak165 k. Common interest in subject matter, questions and relief; damages issues. Most Cited Cases
Although the commonality and typicality requirements of Federal Rule of Civil Procedure governing class actions tend to merge, each factor serves a discrete purpose; commonality examines the relationship of facts and legal issues common to class members, while typicality focuses on the relationship of facts and issues between the class and its representatives. Fed.Rules Civ.Proc.Rule 23(a)(2, 3), 28 U.S.C.A.

**[22] Federal Civil Procedure 170A ☞184.15**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak184 Employees
               170Ak184.15 k. Sex discrimination actions. Most Cited Cases
District court did not abuse its discretion, at the class certification stage of female employees' Title VII sex discrimination action against retail store chain, by finding that plaintiffs' claims were sufficiently typical to satisfy the typicality requirement; even though individual employees in different stores with different managers may have received different levels of pay or may have been denied promotion or promoted at different rates, the discrimination they claimed to have suffered occurred through alleged common practices, e.g., excessively subjective decision making in a corporate culture of uniformity and gender stereotyping. Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

**[23] Federal Civil Procedure 170A ☞184.15**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak184 Employees
               170Ak184.15 k. Sex discrimination actions. Most Cited Cases
District court did not abuse its discretion, at the class

certification stage of female employees' Title VII sex discrimination action against retail store chain, by finding plaintiffs' representatives sufficiently typical of the class, even though only one of the class representatives held a salaried management position, and she held a somewhat low-level position; all female employees faced the same alleged discrimination, and the range of managers in the proposed class was limited to managers working in retail stores and excluded those at regional or national offices. Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

**[24] Federal Civil Procedure 170A ☞164**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
            170Ak164 k. Representation of class; typicality. Most Cited Cases
Typicality under Federal Rule of Civil Procedure governing class actions requires that the named plaintiffs be members of the class they represent. Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

**[25] Federal Civil Procedure 170A ☞184.15**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak184 Employees
               170Ak184.15 k. Sex discrimination actions. Most Cited Cases
District court did not abuse its discretion, at the class certification stage of female employees' Title VII sex discrimination action against retail store chain, by concluding that there was a sufficient common factual basis among putative class members' promotion claims to satisfy commonality prerequisite, where plaintiffs provided evidence sufficient to support their contention that company-wide corporate practices and policies, including excessive subjectivity in personnel decisions, gender stereotyping, and maintenance of a strong corporate culture, affected both compensation and promotion of all plaintiffs in a common manner. Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

**[26] Federal Civil Procedure 170A ☞184.15**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
**(Cite as: 603 F.3d 571)**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak184 Employees
               170Ak184.15 k. Sex discrimination actions. Most Cited Cases
District court did not abuse its discretion, at the class certification stage of female employees' Title VII sex discrimination action against retail store chain, by limiting eligibility for back pay for promotion claims to those positions for which objective applicant data was available to document class member interest, as allowing class members to demonstrate post hoc their previous interest in promotions might have been unmanageable. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[27] Declaratory Judgment 118A ☜⊃305**

118A Declaratory Judgment
   118AIII Proceedings
      118AIII(C) Parties
         118Ak305 k. Representative or class actions. Most Cited Cases

**Federal Civil Procedure 170A ☜⊃165**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
            170Ak165 k. Common interest in subject matter, questions and relief; damages issues. Most Cited Cases
Certification of a class, as a class in which injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole, is not appropriate where monetary relief is predominant over injunctive relief or declaratory relief; to determine whether monetary relief predominates, a district court should consider, on a case-by-case basis, the objective effect of the relief sought on the litigation, and factors such as whether the monetary relief sought determines the key procedures that will be used, whether it introduces new and significant legal and factual issues, whether it requires individualized hearings, and whether its size and nature, as measured by recovery per class member, raise particular due process and manageability concerns would all be relevant, though

no single factor would be determinative; overruling *Molski v. Gleich,* 318 F.3d 937 (9th Cir.2003). U.S.C.A. Const.Amend. 5; Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

**[28] Declaratory Judgment 118A ☜⊃305**

118A Declaratory Judgment
   118AIII Proceedings
      118AIII(C) Parties
         118Ak305 k. Representative or class actions. Most Cited Cases

**Federal Civil Procedure 170A ☜⊃184.10**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak184 Employees
               170Ak184.10 k. Discrimination and civil rights actions in general. Most Cited Cases
A request for back pay in a Title VII case is fully consistent with the certification of a class, as a class in which injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

**[29] Declaratory Judgment 118A ☜⊃305**

118A Declaratory Judgment
   118AIII Proceedings
      118AIII(C) Parties
         118Ak305 k. Representative or class actions. Most Cited Cases

**Federal Civil Procedure 170A ☜⊃165**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
            170Ak165 k. Common interest in subject matter, questions and relief; damages issues. Most Cited Cases
To decide whether certification of a class is appropriate as a class in which injunctive relief or corresponding declaratory relief is appropriate respecting the

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
**(Cite as: 603 F.3d 571)**

class as a whole, a district court must squarely face and resolve the question of whether the monetary damages sought by the plaintiff class predominate over the injunctive and declaratory relief; if so, then the court may either deny certification under the relevant provision or bifurcate the proceedings by certifying a class for equitable relief and a separate class for damages. Fed.Rules Civ.Proc.Rule 23(b)(2, 3), 28 U.S.C.A.

**[30]** Federal Civil Procedure 170A ⚖170.184.15

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak184 Employees
                    170Ak184.15 k. Sex discrimination actions. Most Cited Cases
District court abused its discretion, at the class certification stage of female employees' Title VII sex discrimination action against retail store chain, by certifying plaintiffs' punitive damages claims as a separate class for equitable relief rather than a class for damages, even though it imposed additional requirements for notice and the opportunity to opt out of the separate class, where it certified the separate class for equitable relief without first undertaking an analysis of whether certification of the claim for punitive damages rendered the final relief predominantly related to monetary damages. Fed.Rules Civ.Proc.Rule 23(b)(2, 3), 28 U.S.C.A.

**[31]** Declaratory Judgment 118A ⚖300

118A Declaratory Judgment
    118AIII Proceedings
        118AIII(C) Parties
            118Ak299 Proper Parties
                118Ak300 k. Subjects of relief in general. Most Cited Cases

**Declaratory Judgment 118A** ⚖305

118A Declaratory Judgment
    118AIII Proceedings
        118AIII(C) Parties
            118Ak305 k. Representative or class actions. Most Cited Cases
Putative class members in Title VII sex discrimina-

tion action brought by female employees against retail store chain who were no longer employees of the retail store chain at the time plaintiffs' complaint was filed did not have standing to pursue injunctive or declaratory relief. Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.
**\*576** Theodore J. Boutrous, Jr., Gibson, Dunn & Crutcher, Los Angeles, CA, for the defendant/appellant/cross-appellee.

Brad Seligman, The Impact Fund, Berkeley, CA, for the plaintiffs/appellees/cross-appellants.

Joel E. Krischer, Latham & Watkins, LLP, Los Angeles, CA, on behalf of amicus curiae Employers Group.

Rae T. Vann, Norris, Tysse, Lampley & Lakis, LLP, Washington, DC, on behalf of amicus curiae Equal Employment Advisory Council.

John H. Beisner, O'Melveny & Myers, LLP, Washington, DC, on behalf of amicus curiae Chamber of Commerce of the United States.

Daniel J. Popeo, Washington Legal Foundation, Washington, DC, on behalf of amicus curiae Washington Legal Foundation.

Laura C. Fentonmiller, Constantine Cannon LLP, Washington, DC, on behalf of amicus curiae The Retail Industry Leaders Association.

Pamela Coukos, Mehri & Skalet, Washington, DC, on behalf of amici curiae The National Employment Lawyers Association, The National Partnership for Women & Families, and The National Women's Law Center.

Daniel B. Kohrman, AARP Foundation Litigation, Washington, DC, on behalf of amicus curiae AARP.

Bill Lann Lee, Lewis, Feinberg, Lee, Renaker & Jackson, P.C., Oakland, CA, on behalf of amici curiae Consumers Union, National Consumer Law Center, Center for Constitutional Rights, and Communities for a Better Environment.

Audrey J. Wiggins, Lawyers' Committee for Civil Rights Under Law, Washington, DC, on behalf of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
(Cite as: 603 F.3d 571)

amici curiae Lawyers' Committee for Civil Rights Under Law, Asian American Justice Center, Asian Pacific American Legal Center of Southern California, Legal Aid Society-Employment Law Center, Mexican American Legal Defense & Educational Fund, NAACP Legal Defense & Educational Fund, Inc., National*577 Association for the Advancement of Colored People, Public Advocates, Inc. & Women Employed.

David R. Bruce, Santa Rose, CA, on behalf of amicus curiae California Employment Law Council.

James M. Beck, Dechert LLP, Philadelphia, PA, on behalf of amicus curiae Product Liability Advisory Council, Inc.

Mark Etheredge Burton, Hersh & Hersh, San Francisco, CA, on behalf of amicus curiae U.S. Women's Chamber of Commerce.

Joe R. Whatley, Whatley, Drake & Kallas, New York, NY, on behalf of amicus curiae Public Justice, P.C.

Barbara L. Sloan, Equal Employment Opportunity Commission, Office of the General Counsel, Washington, DC, on behalf of amicus curiae Equal Employment Opportunity Commission.

Appeals from the United States District Court for the Northern District of California, Martin J. Jenkins, District Judge, Presiding. D.C. No. CV-01-02252-MJJ.

Before: ALEX KOZINSKI, Chief Judge, STEPHEN REINHARDT, PAMELA ANN RYMER, HAWKINS, BARRY G. SILVERMAN, SUSAN P. GRABER, RAYMOND C. FISHER, RICHARD A. PAEZ, MARSHA S. BERZON, CARLOS T. BEA and SANDRA S. IKUTA, Circuit Judges.

Opinion by Judge HAWKINS; Concurrence by Judge GRABER; Dissent by Judge IKUTA; Dissent by Chief Judge KOZINSKI.

MICHAEL DALY HAWKINS, Circuit Judge:

Plaintiffs allege that Wal-Mart, Inc., discriminates against women in violation of Title VII of the Civil Rights Act of 1964. After detailed briefing and hearing, the district court certified a class encompassing all women employed by Wal-Mart at any time after December 26, 1998, and encompassing all Plaintiffs' claims for injunctive relief, declaratory relief, and back pay, while creating a separate opt-out class encompassing the same employees for punitive damages. We affirm [FN1] the district court's certification of a Federal Rule of Civil Procedure 23(b)(2) class of current employees with respect to their claims for injunctive relief, declaratory relief, and back pay. With respect to the claims for punitive damages, we remand so that the district court may consider whether to certify the class under Rule 23(b)(2) or (b)(3). We also remand with respect to the claims of putative class members who no longer worked for Wal-Mart when the complaint was filed so that the district court may consider whether to certify an additional class or classes under Rule 23(b)(3).

> FN1. We have jurisdiction under 28 U.S.C. § 1292(e).

## BACKGROUND

Plaintiffs' Third Amended Complaint,[FN2] brought on behalf of certain named plaintiffs and those similarly situated, asserts claims against Wal-Mart for sex discrimination under Title VII of the 1964 Civil Rights Act. Plaintiffs allege that women employed in Wal-Mart stores: (1) are paid less than men in comparable positions, despite having higher performance ratings and greater seniority; and (2) receive fewer-and wait longer for-promotions to in-store management positions than men. Plaintiffs contend that Wal-Mart's strong, *578 centralized structure fosters or facilitates gender stereotyping and discrimination, that the policies and practices underlying this discriminatory treatment are consistent throughout Wal-Mart stores, and that this discrimination is common to all women who work or have worked in Wal-Mart stores.

> FN2. The action was originally filed on June, 8, 2001.

Plaintiffs sought to certify a nationwide class of women who have been subjected to these allegedly discriminatory pay and promotion policies. The proposed class consists of women employed in a range of Wal-Mart positions, from part-time entry-level hourly employees to salaried managers. The class

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
(Cite as: 603 F.3d 571)

seeks injunctive and declaratory relief, back pay, and punitive damages, but not traditional "compensatory" damages. Plaintiffs proposed that the district court certify the following class pursuant to Rule 23:

> All women employed at any Wal-Mart domestic retail store at any time since December 26, 1998 who have been or may be subjected to Wal-Mart's challenged pay and management track promotions policies and practices.

*Dukes v. Wal-Mart Stores, Inc.,* 222 F.R.D. 137, 141-42(N.D.Cal.2004).

After the parties had conducted extensive discovery and filed copious briefs, the district court heard oral argument. At the hearing, Wal-Mart emphasized the "historic" nature of Plaintiffs' motion, including the size of the putative class, involving women employees at Wal-Mart's 3,400 stores in 41 regions. The court acknowledged Wal-Mart's concerns but noted that, while the class size was large, the issues were not unusual.[FN3]

> FN3. Ten times the dissent points out the large class size, referring to the "1.5 million" women alleging discrimination as a reason to reject certification. However, at oral argument, counsel for Wal-Mart conceded that if past employees are excluded the class to be certified would be less than 1.5 million, perhaps two-thirds less than the figure the dissent cites. Further, the dissent emphasizes that this is the largest class that we have ever certified "based on a small number of incidents." Dissent at 635 n. 11 (all references in this Opinion to the dissent refer to Judge Ikuta's dissent). As an initial matter, we do not find 120 claims of illegal sex discrimination a small number. Nevertheless, given that the class is suing by far the largest employer in the United States, we are unsurprised that Plaintiffs are seeking to represent such a large class. Of course, this should not change the analysis the Supreme Court required in *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 157-59, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), nor should it necessitate that we take an even harder look at the merits, essentially conducting a trial, as the dissent proposes.

## DISTRICT COURT PROCEEDINGS

The district court issued an eighty-four-page order granting in part and denying in part Plaintiffs' motion for class certification. See *id.* at 187-88. With respect to Plaintiffs' claims for equal pay, the district court granted Plaintiffs' certification motion as to issues of alleged discrimination and all forms of requested relief. With respect to Plaintiffs' promotion claim, the court's holding was mixed. The court certified the proposed class with respect to issues of alleged discrimination (including liability for punitive damages, as well as injunctive and declaratory relief); however, the court rejected the pro posed class with respect to the request for back pay, determining that data relating to the challenged promotions were not available for all class members. The court also exercised its discretion to provide for notice and an opportunity for employees to opt-out of the punitive damages portion of the class.

## THE APPEAL

Pursuant to Rule 23(f), Wal-Mart appealed, contending that the district court *579 erred by: (1) concluding that the class met Rule 23(a)'s commonality and typicality requirements; (2) eliminating Wal-Mart's ability to respond to individual Plain tiff's claims; and (3) failing to recognize that Plaintiffs' claims for monetary relief predominated over their claims for injunctive or declaratory relief. Plaintiffs cross-appealed from the district court's limitation of back pay relief for many of Plaintiffs' promotion claims.

## DISCUSSION

## I. STANDARD AND SCOPE OF REVIEW

[1] A district court's decision regarding class certification is not only reviewed for abuse of discretion, *Staton v. Boeing Co.,* 327 F.3d 938, 953 (9th Cir.2003), but also subject to "very limited" review, to be reversed "only upon a strong showing that the district court's decision was a clear abuse of discretion," *Armstrong v. Davis,* 275 F.3d 849, 867(9th Cir.2001) (internal quotation marks omitted). See also *Millowitz v. Citigroup Global Mkts., Inc. (In re Salomon Analyst Metromedia Litig.),* 544 F.3d 474, 480 (2d Cir.2008) ("When reviewing a grant of class

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
**(Cite as: 603 F.3d 571)**

certification, we accord the district court noticeably more deference than when we review a denial of class certification."); *Gonzales v. Free Speech Coal., 408 F.3d 613, 618 (9th Cir.2005)* ("Abuse of discretion is a highly deferential standard, under which the appellate court cannot substitute its view of what constitutes substantial justification for that of the district court; rather, the review is limited to assuring that the district court's determination has a basis in reason." (internal quotation marks omitted)); *Blyden v. Mancusi, 186 F.3d 252, 269 (2d Cir.1999)* ("A district court's decision to certify a class is reviewed for abuse of discretion, and '[a] reviewing court must exercise even greater deference when the district court has certified a class than when it has declined to do so.' " (quoting *Marisol A. v. Giuliani, 126 F.3d 372, 375 (2d Cir.1997)* (per curiam))); *Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1309(9th Cir.1977)* (stating that "the judgment of the trial court should be given the greatest respect and the broadest discretion" (internal quotation marks omitted)).

[2][3] A court abuses its discretion if its decision is premised on legal error. *Hawkins v. Comparet-Cassani, 251 F.3d 1230, 1237 (9th Cir.2001)*. Moreover, the district court's factual findings as to the applicability of Rule 23 criteria are entitled to the traditional deference given such determinations. *See Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1161(9th Cir.2001)*.

[4] Rule 23 "provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." *Armstrong, 275 F.3d at 871 n. 28*. If evidence not available at the time of certification disproves Plaintiffs' contentions that common issues predominate, the district court has the authority to modify or even decertify the class, *Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)* ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."), or use a variety of management devices to address the individualized issues that have arisen, *see 2 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 4.26(4th ed.2002)*.[FN4]

FN4. As the district court acknowledged,

*Dukes, 222 F.R.D. at 143*, although federal courts are no longer permitted to engage in "conditional certification," *see Fed.R.Civ.P. 23 advisory committee's note to 2003 amends.*, district courts retain the authority to amend or decertify a class if, based on information not available or circumstances not anticipated when the class was certified, the court finds that either is warranted.

**\*580** Our review is limited to whether the district court correctly selected and applied Rule 23 criteria. *Bogus v. Am. Speech & Hearing Ass'n, 582 F.2d 277, 289 (3d Cir.1978); see also Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 295 (1st Cir.2000)* ("An abuse occurs when a court, in making a discretionary ruling, relies upon an improper factor, omits consideration of a factor entitled to substantial weight, or mulls the correct mix of factors but makes a clear error of judgment in assaying them."). Thus, if Plaintiffs demonstrate that they meet Rule 23's requirements, they should be allowed to pursue their action as a class.

## II. STANDARDS ROR CLASS CERTIFICATION UNDER RULE 23

A district court may certify a class only if:

  (1) the class is so numerous that joinder of all members is impracticable;

  (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

The district court must also find that at least one of the following three conditions is satisfied: (1) the prosecution of separate actions would create a risk of: (a) inconsistent or varying adjudications, or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to the members

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
(Cite as: 603 F.3d 571)

of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See id.* 23(b).

[5] The party seeking certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met. *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir.), *amended by* 273 F.3d 1266 (9th Cir.2001).

The parties vigorously contest the standards governing the district court in finding the Rule 23 requirements satisfied. For a number of reasons, we must clarify this standard. First, the parties' briefs demonstrate the degree of debate over the standard in this circuit. Second, a number of recent cases in other circuits have endeavored to clarify the standard, and we find it prudent to follow suit given evidence of confusion. Third, it is only very recently that any case in this circuit has interpreted language under the standard that drifts away from our clear case law, and we write to clarify our precedent. Fourth, we are not aware of a circuit that has detailed the issue in the Title VII context, and the typical situation presented in such a case implicates significant differences in the doctrine that require explanation to reach a resolution here and in future Title VII class action certification decisions.

*A. Supreme Court Authority*

The Supreme Court has provided clear, if sometimes misunderstood, guidance on the issue of what standards a district court applies when deciding whether to certify a class.

**\*581** The leading case describing these standards is *Falcon,* where the plaintiff successfully certified a class of Mexican-Americans claiming racial discrimination. After a full trial on the merits, however, the district court's findings distinguishing the named representative's claims from those of the class called the propriety of continued class certification into question. [FN4] On appeal, the Supreme Court held that because of the district court's findings at trial, Falcon's "complaint provided an insufficient basis for concluding that the adjudication of his claim of discrimination in promotion would require the decision of any common question concerning the failure of

[General Telephone] to hire more Mexican-Americans." *Id.* at 158., 102 S.Ct. 2364

> FN5. After a trial, the district court in *Falcon* made converse findings regarding Falcon, who was the named plaintiff, and the class he sought to represent. The district court found that the defendant, General Telephone Company of the Southwest, had not discriminated against Falcon when it hired him, but had discriminated against him when it failed to promote him. *Falcon,* 457 U.S. at 152, 102 S.Ct. 2364. But the district court also found the defendant had not discriminated against Mexican-Americans generally in pro motion decisions, but had discriminated against them in hiring. *Id.* This disconnect created a potential typicality problem under Rule 23(a)(3).

The Court described the implications of its holding, noting that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* at 160, 102 S.Ct. 2364. In either case, the Court held, "a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 161, 102 S.Ct. 2364. In conducting this rigorous analysis, the Court explained that "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 160, 102 S.Ct. 2364(internal quotation marks omitted).

Illustrating further, the Court approvingly cited Judge Godbold's concurring opinion in the Fifth Circuit case that had announced the "across-the-board" rule the Court was reviewing in *Falcon.* Judge Godbold's concurrence addressed the role of the district court in understanding the likely course of the litigation, and the Supreme Court praised his focus on "the need for more precise pleadings." *Id.* at 160, 102 S.Ct. 2364(internal quotation marks omitted). The Court approved of his statement that " 'without reasonable specificity the court cannot define the class, cannot determine whether the representation is adequate, and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
(Cite as: 603 F.3d 571)

the employer does not know how to defend.' " *Id.* at 161, 102 S.Ct. 2364(quoting *Johnson v. Ga. Highway Express, Inc.,* 417 F.2d 1122, 1126 (5th Cir.1969) (Godbold, J., specially concurring)).

[6] *Falcon* thus provides relatively straightforward guidance. When considering class certification under Rule 23, district courts are not only at liberty to, but must, perform a rigorous analysis to ensure that the prerequisites of Rule 23(a) have been satisfied. *See id.* at 160-61, 102 S.Ct. 2364. It does not mean that a district court must conduct a full-blown trial on the merits prior to certification. A district court's analysis will often, though not always, require looking behind the pleadings, even to issues overlapping with the merits of the underlying claims. *See id.* As we describe in more detail below, **\*582** every circuit to have considered this issue, including our own previous decisions, has reached essentially the same conclusion: *Falcon's* central command requires district courts to ensure that Rule 23 requirements are actually met, not simply presumed from the pleadings.

We also agree with the Second Circuit's recent decision in *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offerings Securities Litigation )* (" *IPO* "), which explained that, to the extent lower courts have evidenced confusion regarding the Rule 23 standard after *Falcon,* this confusion has existed because those courts have misread a Supreme Court statement made eight years before the Court handed down *Falcon. See* 471 F.3d 24, 33-34 (2d Cir.2006). Specifically, courts have misunderstood *Eisen v. Carlisle & Jacquelin,* in which the Supreme Court stated, "We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). "This statement has led some courts to think that in determining whether any Rule 23 requirement is met, a judge may not consider any aspect of the merits...." *IPO,* 471 F.3d at 33. It has "led other courts to think that a judge may not do so at least with respect to a prerequisite of Rule 23 that overlaps with an aspect of the merits of the case." *Id.*

As the *IPO* court recognized, the distinguishing features of *Falcon* and *Eisen* are the purposes for which the certifying court is using the underlying facts-whether to address a merits issue unnecessarily or to determine whether, for example, the plaintiffs have demonstrated questions of law or fact common to their proposed class. *See IPO,* 471 F.3d at 32-35. An easy way to understand this distinction is to analogize to a familiar dispute over the admissibility of alleged hearsay evidence. Offered for the truth of the matter asserted, an out-of-court statement by someone not testifying is, of course, inadmissible hearsay. However, that same evidence used to impeach a witness may be properly admitted. So, too, with inquiries into facts overlapping with merits issues in the Rule 23 context. It is whether courts are using the facts to probe the plaintiffs' claims of compliance with Rule 23, or to hear either parties' claims directed to standalone merits issues, that renders a court's use of the facts proper or improper. Courts have thus strayed from *Falcon* when they have myopically invoked *Eisen* to avoid considering facts properly relevant to the Rule 23 determination because the facts happen to be relevant to the later merits inquiry as well.

### B. Case Law in Other Circuits

Like our decision today, and in part because of courts' misunderstanding of *Eisen,* many of our sister circuits have recently been called upon to clarify the standard that a district court applies when deciding whether to certify a class under Rule 23.

Though *IPO* is the most notable of these decisions, other courts often trace the explanatory effort back to the Seventh Circuit's decision in *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672 (7th Cir.2001). In *Szabo,* the court rejected a nationwide products liability class because the class was generally unsuitable for class-wide resolution because of choice of law problems on the state breach-of-warranty and fraud claims. *Id.* at 674. The Seventh Circuit also found that the district court below had "certified the class without resolving factual and legal disputes that strongly influence the wisdom of class treatment" because the district court had stated that the plaintiffs' "allegations in **\*583** the complaint are accepted as true for purposes of the class motion." *Id.* at 675. Analogizing to the preliminary jurisdictional inquiries that district courts routinely make under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2), the court explained that, "[b]efore deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23." *Id.* at 676.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032,
2010 Daily Journal D.A.R. 6183
**(Cite as: 603 F.3d 571)**

The Second Circuit's decision in *IPO* agreed with *Szabo,* providing what is now the leading case on the extent to which a district court must resolve Rule 23 issues that overlap with the merits of the case. *IPO* held that factual disputes concerning each of the Rule 23 factors must be analyzed and resolved. *471 F.3d at 41.* This is a similar holding to our previous explanation-discussed in more detail below-that a district court must make "determinations" that the prerequisites of Rule 23(a) have been satisfied before it certifies a class, "which may require review of the same facts and the same law presented by review of the merits." *Falcon, 457 U.S. at 161, 102 S.Ct. 2364; Blackie v. Barrack, 524 F.2d 891, 897(9th Cir.1975).* *IPO* explained that "the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue." *471 F.3d at 41.* *IPO* expressly rejected the Second Circuit's approach in *Caridad v. Metro-North Commuter Railroad, 191 F.3d 283, 291-93 (2d Cir.1999),* and *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc. (In re Visa Check/MasterMoney Antitrust Litigation) ("Visa Check"), 280 F.3d 124, 135 (2d Cir.2001),* which had permitted class certification based on "some showing" that the Rule 23 factors were met, obviating the need to assess conflicting expert testimony pertinent to the Rule 23 inquiries. *IPO, 471 F.3d at 40.*

Since *IPO,* a number of other circuits have detailed the issue. The First Circuit has reviewed these appellate cases, noting that "[o]ur sister circuits agree that when class criteria and merits overlap, the district court must conduct a searching inquiry regarding the Rule 23 criteria, but how they articulate the necessary degree of inquiry ranges along a spectrum which suggests substantial differences." *Brown v. Am. Honda (In re New Motor Vehicles Canadian Export Antitrust Litig.), 522 F.3d 6, 24 (1st Cir.2008) ( "New Motor Vehicles ").*

Though, of course, different circuits have used different words in articulating the review necessary, we think *New Motor Vehicles* overstates the degree of difference among the circuits. The core holding across circuits that have considered the issue is essentially unanimous: district courts must satisfy themselves that the Rule 23 requirements have been met before certifying a class, which will sometimes, though not always, require an inquiry into and preliminary resolution of disputed factual issues, even if those same factual issues are also, independently, relevant to the ultimate merits of the case. *See, e.g.,* 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 3:12 (6th ed. 2009) ("Consensus is rapidly emerging among the United States Courts of Appeal. The First, Second, Third, Fourth, Fifth, Seventh, Eighth, Tenth and Eleventh Circuits have expressly adopted certification standards that require rigorous factual review and preliminary factual and legal determinations with respect to the requirements of Rule 23 even if those determinations overlap with the merits.").

A closer discussion of the cases the First Circuit has cited demonstrates the truly narrow range in which this "spectrum" actually exists. Requiring the district court to "make specific findings that each *584 Rule 23 criterion is met" represents, the First Circuit has claimed, "around the more rigorous end of [the] spectrum," and has been embraced by the Second, Fourth, Fifth, Seventh-and we would add Ninth-Circuits. *New Motor Vehicles, 522 F.3d at 24 (citing IPO, 471 F.3d at 33, 41; Unger v. Amedisys Inc., 401 F.3d 316, 321-22(5th Cir.2005)* (requiring courts to find facts favoring class certification through the use of "rigorous, though preliminary, standards of proof"); *Gariety v. Grant Thornton, LLP, 368 F.3d 356, 366 (4th Cir.2004)* (requiring that "the factors spelled out in Rule 23 ... be addressed through findings"); *Szabo, 249 F.3d at 675-76); see Blackie, 524 F.2d at 897.*

On the other end of this "spectrum," according to the *New Motor Vehicles* court, are cases in "the Third and Eighth Circuits [which] sometimes require an inquiry into and preliminary resolution of disputes, but they do not require findings and do not hold that such inquiry will always be necessary." *New Motor Vehicles, 522 F.3d at 24 (citing Blades v. Monsanto Co., 400 F.3d 562, 566-67 (8th Cir.2005); Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 166 (3d Cir.2001)).*

In our review of these cases, we find this "spectrum" of certification standards narrower and more internally consistent than does the First Circuit. To begin with, we respectfully disagree with *New Motor Vehicles's* characterization of the Third Circuit's approach. The case *New Motor Vehicles* cited, *Newton, 259 F.3d at 174-77,* only discussed a "presumption" of conformity with Rule 23 in the context of the fraud-on-the-market presumption in a securities class ac-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
(Cite as: 603 F.3d 571)

tion.

The Third Circuit has since provided clarification. It has noted that *Newton* does not hold that a district court can presume Rule 23 requirements met from contested pleadings outside the fraud-on-the-market context. *Vallies v. Sky Bank,* 591 F.3d 152, 162-63 (3d Cir.2009). It has also demonstrated its conformity with the other circuits' standard more broadly. In *In re Constar International Inc. Securities Litigation,* the court explained that "we require that each Rule 23 component be *satisfied.*" 585 F.3d 774, 780 (3d Cir.2009) (emphasis added) (citing *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 310 (3d Cir.2009) ( " *Hydrogen Peroxide* ")). Recognizing the importance of the class certification decision, the court emphasized that "district courts, where appropriate, [are] to 'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.' " *Id.* (quoting *Hydrogen Peroxide,* 552 F.3d at 316; *Newton,* 259 F.3d at 167). It further elucidated, "[a]n overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met." *Id.* (internal quotation marks omitted). The Third Circuit thus requires a district court "determination" that the "requirements" of Rule 23 have been "satisfied." *Id.* While we readily recognize the benefit of the additional cases available to us in conducting our review, we respectfully disagree with the First Circuit's conclusion that the Third Circuit allows a more lax standard of review than do other circuits.

*New Motor Vehicles* is on firmer ground describing the Eighth Circuit's decision in *Blades,* though we find the language in that case more nuanced than *New Motor Vehicles* describes, and we disagree that *Blades* "suggests substantial differences" from other circuits. *New Motor Vehicles,* 522 F.3d at 24. The *Blades* court cited *Falcon* in describing the standard as follows:

**\*585** To determine whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings. In conducting this preliminary inquiry, however, the court will look only so far as to determine whether, given the factual setting of the case, if the plaintiffs [sic] general allegations are true, common evidence could suffice to make out a prima facie

showing for the class....

The preliminary inquiry at the class certification stage may require the court to *resolve* disputes going to the factual setting of the case, and such disputes may overlap with the merits of the case. *See Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 676-77 (7th Cir.2001). Nonetheless, such disputes may be resolved only insofar as resolution is necessary to determine the nature of the evidence that would be sufficient, if the plaintiff's general allegations were true, to make out a prima facie case for the class.

*Blades,* 400 F.3d at 566-67 (some citations omitted) (emphasis added).

While this language is not as definitive as that used by the Second Circuit in *IPO,* for example, it sets up essentially the same standard. Under *Blades,* district courts in the Eighth Circuit must "resolve" factual disputes going to the "setting of the case," which we understand to mean the factual circumstances dictating whether the plaintiffs have met the Rule 23 requirements. *Id.* at 567. Supporting this understanding is *Blades's* later statement explaining that "[t]o certify a class action under Rule 23(b)(3), the Court must *find* that: 1) common questions predominate ... and 2) class resolution is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at 569 (emphasis added). Finally, like *IPO, Blades* understands *Eisen* as prohibiting the district court from making preliminary findings on merits issues not related to the Rule 23 resolution. *See id.* at 566-67; *see also* Richard A. Nagareda, *Class Actions in the Administrative State: Kalven and Rosenfield Revisited,* 75 U.Chi. L.Rev. 603, 616 (2008) ("Nagareda, *Class Actions* "). Not surprisingly, then, *IPO* cited *Blades* as a key case supporting its conclusion to require district court determinations that each of the Rule 23 requirements is met. *IPO,* 471 F.3d at 38.

We thus view whether an appellate court requires district courts to "resolve," *id.;* "find," *Unger,* 401 F.3d at 319-20; or "determine," *IPO,* 471 F.3d at 40-41, that Rule 23 requirements have been met, as essentially, even if not precisely, the same standard.[FN6] To characterize such usage as embodying "substantial differences" seems to create a distinction where none exists. *See New Motor Vehicles,* 522 F.3d at 24;

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
**(Cite also: 603 F.3d 571)**

see also Richard A. Nagareda, _Class Certification in the Age of Aggregate Proof_, 84 N.Y.U. L.Rev. 97, 113-14 (2009) (Nagareda, _Aggregate Proof_ ) (describing federal courts as moving toward an "essentially uniform" standard that is "now-settled law"). Under any of these articulations, the charge to the district court follows the analysis the _IPO_ court explained, and we agree, that _Falcon_ and _Eisen_ require. _IPO_, 471 F.3d at 41. The district court must analyze underlying facts and legal issues going to the certification questions *586 regardless of any overlap with the merits. However, this does not mean a district court should put the actual resolution of the merits cart before the motion to dismiss, summary judgment, and trial horses by reaching out to decide issues unnecessary to the Rule 23 requirements.

> FN6. We recognize that these words imply slightly different approaches, and we agree with the _IPO_ court's thoughtful discussion of resisting use of the word " 'findings' because the word usually implies that a district judge is resolving a disputed issue of fact," and the Rule 23 inquiry, though it may require findings in some cases, "is really a mixed question of fact and law." 471 F.3d at 40. We cannot, however, agree that the difference in usage is significant enough that circuit courts using these various words employ substantially different standards. Cf. _New Motor Vehicles_, 522 F.3d at 24.

Having discussed our sister circuits' treatment of this issue, we now turn to the standard in our circuit as established by our previous cases.

**C. Ninth Circuit Precedent**

Since we first addressed the issue in the wake of the _Eisen_ and _Falcon_ decisions, our cases have made clear that a district court inquiry overlapping with the merits is permissible, and often required, under Rule 23. See _Moore v. Hughes Helicopters, Inc._, 708 F.2d 475, 480 (9th Cir.1983) ( "Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the certification stage." (citation omitted)). Later, we said that a district court is "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence

may also relate to the underlying merits of the case." _Hanon v. Dataproducts Corp._, 976 F.2d 497, 509 (9th Cir.1992) (internal quotation marks omitted); see also _Staton v. Boeing Co._, 327 F.3d 938, 954 (9th Cir.2003) ("The court may not go so far, of course, as to judge the validity of [the merits] claims.... But the breadth and consistency of class counsel's initial evidence places the district court's finding of commonality well within that court's discretion." (citation omitted)). We have also specifically cited _Eisen_ in rejecting a party's argument that _Eisen_ prohibits any inquiry overlapping with the merits and explaining that such an overlapping inquiry is sometimes necessary under Rule 23. See _Blackie_, 524 F.2d at 897("Nor is the class issue separable from the merits in all cases (including this one). The common questions, typicality, conflicts and adequacy of representation, and predominance tests, are determinations ... which may require review of the same facts and the same law presented by review of the merits." (citations omitted)).[FN7]

> FN7. Many other decisions have similarly shown this circuit's proper, narrow reading of the "no merits inquiry" passage from _Eisen_ to prohibit only merits inquiries unnecessary for the class certification decision. See, e.g., _McElmurry v. U.S. Bank Nat'l Ass'n_, 495 F.3d 1136, 1141-42(9th Cir.2007) (rejecting the appellants' broad claim relying on misunderstood language from _Eisen_ ); _Staton_, 327 F.3d at 954(citing _Eisen_ in explaining that a merits inquiry is improper at the class certification stage though the district court was "well within" its discretion in considering overlapping issues); _Valentino v. Carter-Wallace, Inc._, 97 F.3d 1227, 1232 (9th Cir.1996) (discussing _Eisen_ as prohibiting "a separate hearing to consider the merits of the plaintiffs' claims when determining class certification"); _Hanon_, 976 F.2d at 509(describing _Eisen_ as holding "a motion for class certification is not the appropriate point at which to resolve the merits of a plaintiff's claim"); _Wright v. Schock_, 742 F.2d 541, 544-45 (9th Cir.1984) (understanding _Eisen_ narrowly to allow a summary judgment motion before the class certification decision); _Moore_, 708 F.2d at 480 ("Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality re-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
(Cite as: 603 F.3d 571)

quirements of Rule 23(a), it is improper to advance a decision on the merits at the class certification stage."); *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1321-22 (9th Cir.), (characterizing *Eisen* as confirming the narrow rule that "the class representative need not demonstrate a likelihood of success on the merits in order to maintain a class action"), *vacated on other grounds,* 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982).

We have adhered to the Supreme Court's guidance in holding that "[a] class may only be certified if we are 'satisfied, **587 after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.' " *Hanon,* 976 F.2d at 509 (quoting *Falcon,* 457 U.S. at 161, 102 S.Ct. 2364). We have also, however, recognized that *Falcon* contemplated cases in which "the issues are plain enough from the pleadings" and do not require analysis beyond those papers. 457 U.S. at 160, 102 S.Ct. 2364; *Chamberlan v. Ford Motor Co.,* 402 F.3d 952, 961 (9th Cir.2005) (per curiam) ("The Supreme Court thus recognized over twenty years ago that a rigorous analysis does not always result in a lengthy explanation or in-depth review of the record."); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1023 (9th Cir.1998). Thus, in some cases, the pleadings will be sufficient to render the certification decision, and in others, the district court must make determinations on facts overlapping with the merits.

In addition, our cases have understood that *Falcon,* like Rule 23 itself, requires "*questions* of law or fact that were common to the claims." 457 U.S. at 158, 102 S.Ct. 2364 (emphasis added). Therefore, we have found class certification proper where a "plaintiff is attacking defendants' discriminatory practices against females, and this is not just as it applied to plaintiff only," because such a claim "identifies a common legal issue, discrimination against women, and a common factual problem, discrimination as applied" by the defendant. *Bouman v. Block,* 940 F.2d 1211, 1232 (9th Cir.1991) (internal quotation marks omitted); *see also Rodriguez v. Hayes,* 591 F.3d 1105, 1122-23 (9th Cir.2010) ("[T]he commonality requirements ask[s] us to look only for some shared legal issue or a common core of facts."). We have also, of course, rejected the "across-the-board" claims that *Falcon* prohibited, and we have denied class certification when a rigorous analysis did not show the class would implicate common questions.

*See, e.g., Lozano v. AT & T Wireless Servs., Inc.,* 504 F.3d 718, 730 (9th Cir.2007) (citing *Falcon* in rejecting certification of a class action based on the unconscionability of a class action waiver because the district court did not perform the requisite analysis). As one example, we have explained that "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members," because such a system implicates common factual questions. *Armstrong,* 275 F.3d at 868.

Our most recent statement considering *Falcon* and *Eisen* comports with this understanding as well. Writing for the court in *United Steel Workers v. Conoco-Phillips Co.,* Judge Bybee explained that it is the plaintiff's *theory* that matters at the class certification stage, not whether the theory will ultimately succeed on the merits. See 593 F.3d 802, 808-09 (9th Cir.2010). We thus found reversible error because the district court did not consider whether the plaintiff's legal theory "was one in which common *issues* of law and or fact did not predominate," and instead found the class did not meet Rule 23's requirements because " 'there can be no *assurances* that [plaintiffs] w [ould] prevail on this theory.' " *Id.* (citing the district court) (first emphasis added). In short, we have consistently held that when considering how the facts and legal issues apply to a class under Rule 23(a), the district court must focus on common questions and common issues, not common proof or likely success on the questions commonly raised. *See id.*

For the most part, the dozens of district court cases in this circuit parsing *Eisen, Falcon,* and our precedent, have considered *Eisen's* language in context, concluding that they must make determinations that the requirements of Rule 23 have been met, and acknowledging that these determinations will sometimes require examining issues that overlap with the merits.**588 *See, e.g., Endres v. Wells Fargo Bank,* No. C 06-7019, 2008 WL 344204, at *2 (N.D.Cal. Feb. 6, 2008) ("[T]he court is not permitted to make a preliminary inquiry into the merits of the plaintiffs' claims at that stage of the litigation. Nevertheless, the court must consider evidence relating to the merits if such evidence also goes to the requirements of Rule 23." (internal quotation marks and citation omitted)); *Westways World Travel, Inc. v. AMR Corp.,* 218 F.R.D. 223, 230 (C.D.Cal.2003) ("Although the Supreme Court once stated that courts have no authority

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
**(Cite as: 603 F.3d 571)**

to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action, [citing *Eisen* ] later cases make clear that a preliminary inquiry into the merits is sometimes necessary to make a meaningful determination of class certification issues. At the same time, the court is required to take the allegations of the plaintiff's complaint as true. Plaintiff bears the burden of showing that the elements of Rule 23 are met." (citations omitted)).[FN8] These *589 cases have correctly threaded the needle between *Eisen, Falcon,* and our precedent.

FN8. That district courts must consider questions overlapping with the merits, if doing so is necessary to find the Rule 23 requirements met, is the understanding of the majority of district court orders considering the issue in this circuit. *See Colvin v. Citigroup Global Mkts., Inc.,* No. C 09-00238, 2009 WL 1657331, at *1-2 (N.D.Cal. June 11, 2009) (hearing issues overlapping with merits before class certification motion); *In re First Am. Corp. ERISA Litig.,* 258 F.R.D. 610, 616 (C.D.Cal.2009) (citing *Eisen* but also noting *Falcon's* statement that class determinations are often "enmeshed" with merits issues); *In re Cooper Cos. Sec. Litig.,* 254 F.R.D. 628, 641 n. 7 (C.D.Cal.2009) (noting the obligation to consider evidence relating to the Rule 23 determination, but stating that "[a]t the same time, the inclusion of evidence that may speak to the merits of a case does not mean that a district court should mistake class action certification for summary judgment"); *Ballew v. Matrixx Initiatives, Inc.,* No. CV-07-267, 2008 WL 4831481, at *2 (E.D.Wash. Oct. 31, 2008) ("It is true that at this stage of the proceedings the Court is not resolving whether Plaintiff can establish that she can prove her case. Rather, the narrow question before the Court is whether, under Fed.R.Civ.P. 23, a class action is a proper vehicle for litigating the products liability claims brought by Plaintiff."); *Bishop v. Petro-Chem. Transp., LLC,* 582 F.Supp.2d 1290, 1305 (E.D.Cal.2008) ("[T]he Court has evaluated the evidence of the Motor Carrier exemption, not to determine whether plaintiff will ultimately prevail at trial, but to determine, again, whether the proposed class members

are similarly situated."); *Lindquist v. Farmers Ins. Co. of Ariz.,* No. CV 06-597, 2008 WL 343299, at *6 (D.Ariz. Feb. 6, 2008) ("While preliminary inquiry into the merits is sometimes appropriate to the extent necessary to evaluate class certification issues that happen to be intertwined with facts relating to the underlying merits ... the general rule followed by federal courts [is] that trial courts may not decide the merits of the case or consider the likelihood of success on the merits in determining whether the requirements of Rule 23 class certification are met."); *Alexander v. JBC Legal Group, P.C.,* 237 F.R.D. 628, 630 (D.Mont.2006) ("It is improper for this Court to consider the merits of the complaint beyond what is necessary to decide whether the requirements of Rule 23 have been met."); *In re Seagate Tech. II Sec. Litig.,* 843 F.Supp. 1341, 1367 (N.D.Cal.1994) (noting that "district courts *must* examine some of the merits" because "the adequacy of the representation cannot be ascertained without examining the composition of the class"); *Hernandez v. Alexander,* 152 F.R.D. 192, 194 (D.Nev.1993) ("The determination of whether to certify a class does not permit or require a preliminary inquiry into the merits. Only the class certification requirements of Rule 23 need be considered at the class certification stage. However, before certifying a class action the trial court must be satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been met." (citations to *Eisen* and *Falcon* omitted)); *Lim v. Citizens Sav. & Loan Ass'n,* 430 F.Supp. 802, 805-06 (N.D.Cal.1976) ("Although the *Eisen* rule has evolved into a wedge for broad class certification by *plaintiffs,* a close reading of the *Eisen* case indicates the Supreme Court's contrary intention...."); *El Concilio v. Modesto Elementary Sch. Dist.,* No. C-76-2479, 1978 WL 56, at *1 (N.D.Cal. May 11, 1978) ("While the Court is foreclosed from a preliminary inquiry into the merits in order to determine whether it may be maintained as a class action, it must determine whether plaintiffs have met their burden of establishing the existence of a claim of unlawful employment practices affecting an ascertainable class of persons of which they are

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
(Cite as: 603 F.3d 571)

members." (internal quotation marks and citation omitted)); _Nguyen Da Yen v. Kissinger,_ 70 F.R.D. 656, 661 (N.D.Cal.1976) ("In determining whether a matter should proceed as a class action the court is required to make findings concerning each essential element of the class action rule.").

In the less typical instances in which district courts in this circuit have been led astray, a common reason seems to have been a misreading of our statement in footnote 17 of _Blackie v. Barrack,_ in which we explained that district courts are "bound to take the substantive allegations of the complaint as true, thus necessarily making the class order speculative in the sense that the plaintiff may be altogether unable to prove his allegations." 524 F.2d at 901 n. 17; _see also Edwards v. City of Long Beach,_ 467 F.Supp.2d 986, 991 (C.D.Cal.2006) ("The court is bound to take the substantive allegations in the complaint as true."). But, that statement is taken out of context when relied on in this manner.[FN9] The subsequent sentences in _Blackie,_ which the erring district courts almost universally neglect to include, explained that, although "the court may not put the plaintiff to preliminary proof of his claim, it does require sufficient information to form a reasonable judgment. Lacking that, the court may request the parties to supplement the pleadings with sufficient material to allow an informed judgment on _each of the Rule's requirements._" 524 F.2d at 901 n. 17 (emphasis added). Discussing when a certification inquiry overlaps with the merits, we further explained in _Blackie:_

> FN9. District courts in this circuit have quoted this passage somewhat out of context on a number of occasions. See _Mateo v. V.F. Corp.,_ No. C 08-05313, 2009 WL 3561539, at *4 (N.D.Cal. Oct. 27, 2009) (citing _Blackie_ though noting that the defense's arguments addressed only the merits and not the Rule 23 inquiry); _Perez v. Safety-Kleen Sys., Inc.,_ 253 F.R.D. 508, 511 (N.D.Cal.2008) (noting that "the court must accept the substantive allegations contained in plaintiffs' complaints as true"); _Nw. Fruit Co. v. A. Levy & J. Zentner Co.,_ 116 F.R.D. 384, 388 (E.D.Cal.1986) (same); _see also_ Steig D. Olson, _"Chipping Away": The Misguided Trend Toward Resolving Merits Disputes as Part of the Class Certification Cal-_

_culus,_ 43 U.S.F. L.Rev. 935, 949 n. 89 (2009) (understanding _Blackie_ as requiring acceptance of a plaintiff's claims as to not only merits questions, but Rule 23 requirements as well).

Nor is the class issue separable from the merits in all cases (including this one). The common questions, typicality, conflicts and adequacy of representation, Fed.R.Civ.P. 23(a), and predominance tests, Fed.R.Civ.P. 23(b)(3), are determinations ... which may require review of the same facts and the same law presented by review of the merits.
524 F.2d at 897.

A better reading of _Blackie,_ then, is to understand it as having the meaning that our cases, and the majority of district court opinions, have ascribed to it: _Blackie_ is entirely consistent with the Supreme Court's guidance, explicitly requiring a district court to probe behind the pleadings if doing so is necessary to make findings on the Rule 23 certification decision. Thus, _Blackie_ does not, and could not, require the district court to unquestioningly accept a plaintiff's arguments as to the necessary Rule 23 determinations. The sense in which _Blackie_ referred to class certification as speculative is the same way in which we most recently, and more artfully, described the inquiry:

> *590 [A] court can never be _assured_ that a plaintiff will prevail on a given legal theory prior to a dispositive ruling on the merits, and a full inquiry into the merits of a putative class's legal claims is precisely what both the Supreme Court and we have cautioned is not appropriate for a Rule 23 certification inquiry.

_United Steel Workers,_ 593 F.3d at 808-09.

In short, the explanation we provide today is not a new standard at all. Though a small number of district courts in this circuit have misunderstood _Blackie_ and relied on _Eisen_ in the way that the Second Circuit has cautioned against, and that we now reject, the precedent from this court is consistent. We are unable to find a single case in our court that incorrectly relied on the "no merits inquiry" language from _Eisen_ in certifying a class without examining necessary issues because they overlapped with the merits. Cf. _Caridad,_ 191 F.3d at 291-92(applying the "no merits

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
**(Cite as: 603 F.3d 571)**

inquiry" language from *Eisen* out of context to pro-hibit the proper Rule 23 analysis). Our explanation confirms what our decisions have held for more than twenty-five years: A district court must sometimes resolve factual issues related to the merits to properly satisfy itself that Rule 23's requirements are met, but the purpose of the district court's inquiry at this stage remains focused on, for example, common *questions* of law or fact under Rule 23(a)(2), or predominance under Rule 23(b)(3), not the proof of answers to those questions or the likelihood of success on the merits. *Falcon,* 457 U.S. at 158, 102 S.Ct. 2364(requiring a "specific presentation identifying the *questions* of law or fact that were common to the claims of respondent and of the members of the class he sought to represent" (emphasis added)); *United Steel Workers,* 593 F.3d at 808-09 (district court erred in basing its decision on whether the plaintiffs could prove merits rather than whether their claims implicated common questions of law or fact). Of course, for class certification to be proper, the com-mon questions cannot simply arise from artful plead-ing. Plaintiffs must raise questions that the district court concludes, after a rigorous analysis, are suscep-tible to common resolution at a later stage.

### D. Clarifying the Standard

#### 1. The Proper Standard of Rule 23 Adjudication

This review of Supreme Court dictates, as well as our own and other circuits' treatment of the issue, leads us to recognize a number of constant holdings across circuits that we must incorporate into our clarification of the proper standard governing a district court in considering a Rule 23 motion for class certification.

[7] To begin with, at the class certification stage, while *Eisen* prohibits a court from making determina-tions on the merits that do not overlap with the Rule 23 inquiry, district courts must make determinations that each requirement of Rule 23 is actually met. This bedrock rule is consistent with the Supreme Court's statements, other circuits' decisions, and our long-standing precedent. While plaintiffs need not make more than allegations as to their substantive claims, whether the suit is appropriate for class resolution must be actually demonstrated, not just alleged, to the district court's satisfaction.

In addition, in the cases such as *IPO* in which courts

have recognized how *Eisen* is sometimes misunder-stood, those circuits have uniformly reserved discre-tion with the district court to avoid a trial-level in-quiry at the certification stage despite the need to find the Rule 23 requirements *591 met.[FN10] See, e.g., Blades,* 400 F.3d at 567 ("The closer any dispute at the class certification stage comes to the heart of the claim, the more cautious the court should be in ensur-ing that it must be resolved in order to determine the nature of the evidence the plaintiff would require."). District courts must maintain the ability to cut off discovery to avoid either party bootstrapping a trial or summary judgment motion into the certification stage. Nearly every circuit to consider the issue, in-cluding our own, has recognized the practical impor-tance of the certification decision as leverage for set-tlement, yet Rule 23 gives neither party the right to turn the certification decision into a trial.

> FN10. *IPO's* "release valve" reads as fol-lows:
>
> [W]e reach the following conclusions: ... (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to as-sure that a class certification motion does not become a pretext for a partial trial of the merits.
>
> 471 F.3d at 41.

When reading recent class certification cases, one also notices the prevalence of securities fraud cases, and particularly the fraud-on-the-market presump-tion, in the evolution of the Rule 23 standard. *See, e.g., Oscar Private Equity Invs. v. Allegiance Tele-com, Inc.,* 487 F.3d 261, 264 (5th Cir.2007); *IPO,* 471 F.3d at 30-31; *Bowe v. Polymedica Corp. (In re PolyMedica Corp. Secs. Litig.),* 432 F.3d 1, 6-7(1st Cir.2005); *Unger,* 401 F.3d at 323-24; *Gariety,* 368 F.3d at 364-66; *West v. Prudential Sec., Inc.,* 282 F.3d 935, 937-38(7th Cir.2002).

It is an interesting feature of the case law's develop-ment that it has occurred largely in these fraud-on-the-market cases, in which a plaintiff typically must show the six "basic elements" of a securities fraud action, *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
(Cite as: 603 F.3d 571)

341-42, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), and the efficient market component of the causation element overlaps with the merits. We must, then, be aware that applying the same procedural rules, such as Rule 23, can lead to different outcomes when the underlying legal and factual frameworks is different. See, e.g., Hohider v. United Parcel Serv., Inc., 574 F.3d 169, 182-85 (3d Cir.2009) (describing how the pattern and practice evidentiary framework from Title VII cases is not perfectly applicable in the context of the Americans with Disabilities Act).

Thus, in contrast to a securities class action based on a fraud-on-the-market theory, in a pattern and practice discrimination case, a plaintiff will typically not come to court in the first place without anecdotal evidence. For practical purposes, assuming a plaintiff possesses anecdotal evidence, the plaintiff's statistical evidence does not overlap with the merits, it largely is the merits. See Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 986-87, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988); Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 337-39, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). This means that disputes over whose statistics are more persuasive are often not disputes about whether the plaintiffs raise common issues or questions, but are really arguments going to proof of the merits. See Nagareda, Class Actions, supra, at 619-20 ("Nowhere is this [disputed statistics] problem more acute than in employment discrimination class actions centered on statistical analysis of an aggregate nature."). Of course, if one party argued that the other party's statistics were unreliable or based on an unaccepted method, this may be an issue the district court would have to resolve to determine *592 whether the potentially problematic statistics were even capable of raising a common question.

In fact, after IPO, but before his recent elevation to the Second Circuit, Judge Gerard Lynch recognized this problem in a Title VII gender discrimination case in which the plaintiffs were seeking to certify on the same grounds as those here. Predictably faced with a dispute regarding whether the plaintiffs' statistics demonstrated commonality, Judge Lynch addressed IPO's application in a Title VII, gender discrimination context.[FN11]

> FN11. The plaintiffs in Hnot pled both disparate impact and disparate treatment theo-

ries of discrimination under Title VII. See Hnot v. Willis Group Holdings Ltd., 228 F.R.D. 476, 486 (S.D.N.Y.2005).

The problem, the district court explained, was that "[i]n deciding that the class certification order complied with In re IPO, it is important to note that disparate impact cases present unique difficulties in analyzing the commonality requirement of Rule 23(a). Plaintiffs in disparate impact cases often rely on statistical evidence to prove the merits of their claim." Hnot v. Willis Group Holdings Ltd., 241 F.R.D. 204, 210-11 (S.D.N.Y.2007). The court continued, "[i]n such a case, however, the same evidence must be considered to determine whether a plaintiff has satisfied the commonality requirement." Id. at 211.

In resolving this problem and certifying the class, the district court noted, "[c]ontrary to defendants' assertions, In re IPO does not stand for the proposition that the Court should, or is even authorized to, determine which of the parties' expert reports is more persuasive. Defendants ignore the fact that In re IPO specifically rejected this interpretation of Rule 23." Id. at 210. Instead, Judge Lynch explained, " In re IPO reiterated that 'experts' disagreement on the merits-whether a discriminatory impact [can] be shown-[is] not a valid basis for denying class certification.' " Id. (alterations in original) (quoting IPO, 471 F.3d at 35). Thus, the court could only "examine the expert reports as far as they bear on the Rule 23 determination." Id.

Judge Lynch similarly clarified, with regard to the disparate treatment issue in the case before him, that "plaintiffs and defendants disagree on whose statistical findings and observations are more credible, but this disagreement is relevant only to the merits of plaintiffs' claim-whether plaintiffs actually suffered disparate treatment-and not to whether plaintiffs have asserted common questions of fact or law; plaintiffs' ultimate success at trial on the merits requires an answer to that question, specifically that defendants actually did discriminate against plaintiffs." Id. at 210-11. "By asking the Court to decide which expert report is more credible, defendants are requesting that the Court look beyond the Rule 23 requirements and decide the issue on the merits, a practice In re IPO specifically cautions against." Id. at 210.

Thus, in addition to demonstrating Rule 23's proper

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
**(Cite as: 603 F.3d 571)**

implementation in various legal contexts (securities class actions versus Title VII claims), *Hnot* also illustrates a second feature of the certification cases that we must address. Because the fraud-on-the-market cases are typically decided under Rule 23(b)(3)'s predominance requirement, a related feature of the circuit court cases considering the proper standard a district court applies, when deciding whether to certify a class, is the difference between cases describing review of evidence under Rule 23(a) and those under *593 Rule 23(b).[FN12] We are unaware of any argument claiming that a different standard should apply in the two inquiries, and the cases generally treat the precedent as applying equally to both contexts. We do, however, note that the inquiry cannot be divorced from the text of Rule 23, which, of course, requires plaintiffs to make different showings under different parts of the rule. This distinction helps order the doctrine, keeping in mind the different requirements under Rule 23(a) and (b) and how those requirements may play out in a district court's certification decision.

> FN12. More specifically, as the cases demonstrate, is the standard for evidence under Rule 23(a)(2), commonality, versus Rule 23(b)(3), predominance.

This insight derives from the Supreme Court's explanation of the predominance test under Rule 23(b)(3). Predominance, the Court explained, "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), a standard "far more demanding" than the commonality requirement of Rule 23(a), *id.* at 623-24, 117 S.Ct. 2231. Thus, we would expect that cases in which the parties are contesting facts underlying the Rule 23(b)(3) determination may often require more determinations by the district court than those in which Rule 23(a)(2) is the primarily contested issue. Rule 23(a)(2) is about invoking common *questions, see Falcon*, 457 U.S. at 158, 102 S.Ct. 2364, whereas Rule 23(b)(3) requires a district court to formulate "some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case," *New Motor Vehicles*, 522 F.3d at 20 (internal quotation marks omitted). We thus should not be surprised that a district court will have to make more precise factual determinations under Rule

23(b)(3) than under Rule 23(a)(2). This insight does not apply a procedural rule differently in two like contexts; it applies the text of Rule 23 itself to the district court's task.

While we find the case law across circuits more uniform than some courts have implied, *see id.* at 24, to the extent it is not, this result may be because of courts' failure to recognize this key difference between a district court's job under Rule 23(a)(2) and its job under Rule 23(b)(3).[FN13] This conclusion is further supported when one notices that *Falcon's* primary inquiry was under Rule 23(a), 457 U.S. at 156-58, 102 S.Ct. 2364, whereas many of the circuit courts discussed above were concerned with Rule 23(b)'s predominance test and, thus, required the district court to make more detailed determinations as to how the facts at issue would play out-whether they would predominate-in the merits of the litigation. *See, e.g., Hydrogen Peroxide*, 552 F.3d at 310 (Rule 23(b)(3) predominance); *New Motor Vehicles*, 522 F.3d at 26 (same); *IPO*, 471 F.3d at 35 (same); *In re PolyMedica Corp. Secs. Litig.*, 432 F.3d at 3 & n. 4 (same); *Unger*, 401 F.3d at 320, 324-25 (same); *Blades*, 400 F.3d at 566 (same); *Gariety*, 368 F.3d at 364-65 (same); *Szabo*, 249 F.3d at 676-77 (same).

> FN13. Even commentators who clearly recognize this difference often lapse into speaking about Rule 23 as requiring a single showing, minimizing the differences between Rule 23(a)(2) and Rule 23(b)(3). *See, e.g.*, Nagareda, *Class Actions, supra*, at 622 ("To task the court at the class certification stage here with the making of a 'definitive assessment' of compliance with Rule 23 would be to call, as a practical matter, for an assessment of which side is right on the merits with regard to the existence of a company-wide policy.").

Though some courts have noted the difference between Rule 23(a) and 23(b) in passing, *see* *594Hydrogen Peroxide*, 552 F.3d at 310-11,[FN14] we are not aware of any decisions detailing the difference, and some courts have failed to note the distinction at all. *See, e.g., IPO*, 471 F.3d at 33 n. 3 ("We see no reason to doubt that what the Supreme Court said about Rule 23(a) requirements applies with equal force to all Rule 23 requirements, including those set forth in Rule 23(b)(3)."). We think a great deal of any

© 2010 Thomson Reuters. No Claim to Orig. U.S. Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032,
2010 Daily Journal D.A.R. 6183
(Cite as: 603 F.3d 571)

disparity in different courts' explication of the Rule 23 standard can be explained by this difference. The lesson for future district courts is that, in a given case, the text of Rule 23(a), as compared to Rule 23(b), may require them to determine more or different facts (typically more under Rule 23(b)(3)) to determine whether the plaintiffs have met their Rule 23 burden.

> FN14. *See also* Olson, *supra,* at 947(noting that class certification must be particularly predictive under Rule 23(b)(3)).

[8][9][10][11] In short, these observations, which include the Supreme Court's direction, long-standing precedent in this court, and treatment from other circuits, lead us to the following explanation of the proper standards governing a district court's adjudication of a Rule 23 motion for class certification. First, when considering class certification under Rule 23, district courts are not only at liberty to, but must, perform a rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied, and this analysis will often, though not always, require looking behind the pleadings to issues overlapping with the merits of the underlying claims. It is important to note that the district court is not bound by these determinations as the litigation progresses. Second, district courts may not analyze any portion of the merits of a claim that do not overlap with the Rule 23 requirements. Relatedly, a district court performs this analysis for the purpose of determining that each of the Rule 23 requirements has been satisfied. Third, courts must keep in mind that different parts of Rule 23 require different inquiries. For example, what must be satisfied for the commonality inquiry under Rule 23(a)(2) is that plaintiffs establish common *questions* of law and fact, and answering these questions is the purpose of the merits inquiry, which can be addressed at trial and at summary judgment. Fourth, district courts retain wide discretion in class certification decisions, including the ability to cut off discovery to avoid a mini-trial on the merits at the certification stage. Fifth, different types of cases will result in diverging frequencies with which the district court will properly invoke its discretion to abrogate discovery. As just one example, we would expect a district court to circumscribe discovery more often in a Title VII case than in a securities class action resting on a fraud-on-the-market theory, because the statistical disputes typical to Title VII cases often en-

compass the basic merits inquiry and need not be proved to raise common questions and demonstrate the appropriateness of class resolution. Plaintiffs pleading fraud-on-the-market, on the other hand, may have to establish an efficient market to even raise common questions or show predominance.

### 2. The Dissent's "Significant Proof" Standard

In addition to setting out our own review, we feel compelled to discuss the dissent's consideration of this issue. The Supreme Court's decisions in *Falcon* and *Eisen* are the primary guides to our ruling in this case. The dissent, in suggesting that we are unfaithful to *Falcon,* seeks to create a new class action require-ment*595 based on a hypothetical in one sentence of Supreme Court dicta; conflates, or at least fails to distinguish, the posture of *Falcon* and the present case; ignores the weight of the many cases in other circuits arriving at the same standard we have described above; and renders itself unpersuasive by critiquing the district court's eighty-four-page analysis as insufficiently rigorous. In doing so, the dissent is unfaithful to the actual distinctions the Supreme Court relied upon in *Falcon,* and variously depicts *Falcon* as instituting a "significant proof" "burden" or " 'significant proof' requirement" that *Falcon* did not create. Dissent at 633, 637-38.

We read *Falcon,* as has nearly every Court of Appeals to consider the question, as creating the standard we describe above. But in discussing what *it* views as the analysis required by *Falcon,* the dissent quotes a portion of a sentence of *Falcon* dicta in footnote 15 as standing for the requirement that plaintiffs cannot prevail at the certification stage without showing "[s]ignificant proof that an employer operated under a general policy of discrimination." *Id.* at 632. However, the entire footnote sentence reads as follows: "Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class *of both applicants and employees* if the discrimination manifested itself in hiring and promotion practices in the same general fashion, *such as through entirely subjective decision-making processes.*" *Falcon,* 457 U.S. at 159 n. 15, 102 S.Ct. 2364 (emphasis added).[FN15]

> FN15. The dissent chides us for ignoring the " 'significant proof' requirement" from *Falcon,* an approach the dissent finds trou-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
(Cite as: 603 F.3d 571)

bling, particularly because *Falcon* is "directly on point." Dissent at 632-33. Putting aside the fact that, unlike here, the problem in *Falcon* was a proposed class consisting of members of the general public who had sought employment, represented by an employee who had sought promotion, alleging different theories of discrimination, *see Falcon,* 457 U.S. at 157-58, 102 S.Ct. 2364, ignoring relevant Supreme Court guidance would indeed be troubling if that was in fact what we were doing. But the dissent mischaracterizes the role that "significant proof" played in the *Falcon* analysis. The statement was a hypothetical in clear dicta. *Id.* at 159 n. 15, 102 S.Ct. 2364. It is important not to apply Supreme Court dicta "to create a new rule-one [the Court] never envisioned." *Lopez-Rodriguez v. Holder,* 560 F.3d 1098, 1099 (9th Cir.2009) (order) (Bea, J., dissenting from denial of reh'g en banc). Further, here, we are not taking Supreme Court statements and "blandly shrug[ging] them off because they were not a holding." *Newdow v. U.S. Congress,* 328 F.3d 466, 480 (9th Cir.2003) (order) (O'Scannlain, J., dissenting from denial of reh'g en banc). Instead, we are considering the statements and avoiding creating a new rule of law, noting that we should be particularly wary of conceiving such a rule from dicta when the facts underlying the dicta are easily distinguished from the present case and when the dicta relied upon was in the form of a hypothetical.

*Falcon*'s discussion of two distinct processes-hiring and promotion-for which "significant proof" could prove sufficient to certify a single class, is an unusually high standard that Plaintiffs here need not meet because they did not present the distinct legal theories of recovery that the *Falcon* plaintiffs, both employees and applicants, had pursued together in one class. "The question before the district court was not whether [Plaintiffs] have definitively proven disparate treatment and a disparate impact; rather, the question was whether the basis of [Plaintiffs'] discrimination claims was sufficient to support class certification." *Brown v. Nucor Corp.,* 576 F.3d 149, 156 (4th Cir.2009), *cert. denied,* --- U.S. ----, 130 S.Ct. 1720, 176 L.Ed.2d 185 (2010).

**\*596** Contrary to the dissent,[FN16] *Falcon* does not say that Plaintiffs must show a common policy of proven *discrimination* at the class action stage, rather than just a common policy *alleged* to be discriminatory. 457 U.S. at 158-59, 102 S.Ct. 2364. Of course, as we have already explained, named plaintiffs must do more than merely allege discriminatory practices against themselves. *Id.* As we demonstrate below, Plaintiffs here do so, making showings through their expert testimony and statistical evidence, which further distinguishes the certification decision here from that decision in *Falcon.* In maintaining otherwise in its discussion, the dissent confuses merits decisions such as *Teamsters,* 431 U.S. at 336, 97 S.Ct. 1843, and class action certification decisions.[FN17] It also ignores our previous statement examining *Falcon* footnote 15 in which we explained that "[w]e understand footnote fifteen of *Falcon* to present a demonstrative example rather than a limited exception to the overall skepticism toward broad discrimination class actions." *Staton,* 327 F.3d at 955. In other words, as we have previously described *Falcon,* the Supreme Court "does not generally ban all broad classes but rather precludes a class action that, on the basis of one form of discrimination against one or a handful of plaintiffs, seeks to adjudicate all forms of discrimination against all members of a group protected by Title VII, § 1981, or a similar statute." *Id.*

FN16. The dissent reads *Falcon* to require a showing of evidence "sufficient to carry plaintiffs' burden of adducing significant proof." Dissent at 641. However, the dissent's encapsulating all of *Falcon* into this one phrase in dicta ignores other key distinctions on which the Court was actually relying. *Falcon* does not hold that a plaintiff must *prove* a widespread policy of discrimination to obtain class certification nor, of course, does it allow a district court to certify a class based on a plaintiff's mere allegations of discriminatory practices. 457 U.S. at 157-58, 102 S.Ct. 2364. Rather, *Falcon* only says that an individual who, on his own behalf, does not *allege* any overall policy cannot, by proving his own case, establish *on the merits* an inference relevant to the group, thus remedying his failure to otherwise make a showing of commonality. *Id.* Such a statement is a far cry from suggesting, as does the dissent, *see* Dissent at 633-34, 634-36, that a class cannot be certified

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
(Cite as: 603 F.3d 571)

unless the plaintiffs *prove* a discriminatory overall policy-in which case there would be no reason to have a trial at all.

FN17. The dissent's claim that Plaintiffs must prove discrimination at this stage, Dissent at 633-34, conflates the class certification and merits phases of the litigation. *See Brown,* 576 F.3d at 153 ("[A]llegations of a practice of disparate treatment in the exercise of unbridled discretion raises questions of law and fact common to all subject black employees." (emphasis added) (internal quotation marks omitted)); *Shipes v. Trinity Indus.,* 987 F.2d 311, 316 (5th Cir.1993) ("The threshold requirements of commonality and typicality are not high.... *Allegations* of similar discriminatory employment practices, such as the use of entirely subjective personnel processes that operate to discriminate, satisfy the commonality and typicality requirements of Rule 23(a)." (emphasis added)).

The dissent also largely ignores Supreme Court guidance by failing to recognize that *Falcon* addressed the claim that the allegations of an employee subject to discrimination in promotion decisions "fairly encompassed" the claims of non-employees allegedly subject to discrimination in a discrete hiring process. *Falcon,* 457 U.S. at 158, 102 S.Ct. 2364. Such a determination under Rule 23 is clearly distinct from an inquiry where, as here, a class consists entirely of individuals actually employed under the same corporate policies.[FN18] Critically,*597 in *Falcon,* the individual plaintiff's claim was based on promotion practices for his allegations and hiring practices for the putative class members, yet Falcon's "complaint contained no factual allegations concerning petitioner's hiring practices," *id.* at 150, 102 S.Ct. 2364, despite the fact that the class members' claims depended on pattern or practice in hiring, *id.* at 159, 102 S.Ct. 2364. In contrast, where the individual plaintiffs seek to prove their own cases through pattern or practice methods, they are *necessarily* dependent on proving facts relevant to others of the same protected group subject to the same policy, class action or no class action. *See Watson,* 487 U.S. at 994-95, 108 S.Ct. 2777; *see also* Nagareda, *Aggregate Proof, supra,* at 150 ("The terms 'pattern' and 'practice' themselves imply an aggregate perspective.").

FN18. Indeed, the record provides significant evidence of central control. The district court found that, "[h]aving reviewed the extensive evidence submitted by the parties, ... Wal-Mart's systems for compensating and promoting in-store employees are sufficiently similar across regions and stores to support a finding that the manner in which these systems affect the class raises issues that are common to all class members." *Dukes,* 222 F.R.D. at 149. Yet the dissent seems to assume that central control was not a pervasive feature of Wal-Mart's baseline promotion policies, or that if it was, such control undercuts Plaintiffs' case. Dissent at 6253 (rejecting Plaintiffs' claim that " 'the subjective decision-making in compensation and promotions takes place within parameters and guidelines that are highly uniform, and within a strong corporate culture,' " because "this argument is contrary to the thrust of plaintiffs' legal theory") (citing *Dukes,* 222 F.R.D. at 157). Such a view ignores the precise contours of Plaintiffs' claims. Questioning the degree of central control over the framework policies is particularly surprising given the district court's findings, *see Dukes,* 222 F.R.D. at 145-54, and additional evidence in the record that, for example, Wal-Mart posted employees in the "Rising Star Program" who were eligible for promotion on a wall in the Bentonville Home Office.

Finally, Plaintiffs here are unlike the plaintiff in *Falcon,* who failed to "otherwise [ ]support [his] allegation that the company ha[d] a policy of discrimination" except by claiming that he himself had been denied a promotion on discriminatory grounds. *Falcon,* 457 U.S. at 157-58, 102 S.Ct. 2364. As we detail below, Plaintiffs here have introduced "significant proof" of Wal-Mart's policies, and their effects on the certified class, and have introduced evidence of far more than "the validity of [their] own claim[s]." *Id.* Even if the dissent were correct in creating a "significant proof" standard (or burden, or requirement), which it is not, it would not apply to Plaintiffs in this case. "Subjective decisionmaking processes" are exactly what the Plaintiffs allege here and what the Supreme Court's hypothetical expressed concern with in *Falcon. Id.* at 159 n. 15, 102 S.Ct.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
**(Cite as: 603 F.3d 571)**

2364. In addition, it is not clear that such a standard, if it existed, need apply to Plaintiffs-everyone of whom was or is an employee-at all because they are not situated as the *Falcon* plaintiffs, who were both employees seeking promotion and job applicants pursuing a position and thus needed to show different facts and allege diverging legal theories.

Again unlike in *Falcon,* and as discussed in detail below, the district court here did not presume or fail "to evaluate carefully the legitimacy [of Plaintiffs' claims to be] proper class representative[s]," *id.* at 160, 102 S.Ct. 2364, but rather found Rule 23 satisfied only after undertaking the "rigorous analysis" the Supreme Court requires, *see Dukes,* 222 F.R.D. at 143-69. The specific recognition of *Falcon's* "rigorous analysis" requirement guided the district court's analysis throughout its lengthy order, and the court made determinations that each of Rule 23's requirements were satisfied. *Id.* at 143-44, 166-68 (applying *Falcon* ). The dissent's attenuated claim that the district court abused its discretion by failing to require a "specific presentation identifying the questions of law or fact that were common to the claims of respondent*598 and of the members of the class he sought to represent," *see Falcon,* 457 U.S. at 158, 102 S.Ct. 2364, is vitiated by the twenty-four pages in which the district court exhaustively performed exactly that analysis, explicitly considering questions of law and fact that were common to the members of the class and the named representatives,[FN19] *see Dukes,* 222 F.R.D. at 145-69. In short, and as we will now explain, at the certification stage, it is difficult for us to envision a more rigorous analysis than the one the district court conducted.

> FN19. These common issues of law and fact, necessary to bridge the gap from the class representatives to the entire class, are discussed in Part III.A. For now, it is sufficient to note that they include an analysis of similar promotion and compensation policies Wal-Mart applied to all employees, a dominant corporate culture Wal-Mart maintained throughout its stores, and statistical evidence showing class-wide gender disparities in compensation. *Dukes,* 222 F.R.D. at 145-69.

**III. CERTIFICATION OF THIS CLASS**

Unsurprisingly, the class in this case is broad and diverse, encompassing both salaried and hourly employees in a range of positions, who are or were employed at one or more of Wal-Mart's 3,400 stores across the country. The district court found that the large class is united by a complex array of company-wide practices, which Plaintiffs contend discriminate against women.

*A. Rule 23(a)*

At the outset of considering the district court's certification order in light of the above-clarified standard, we note two facets of the district court's review.

First, this case reached us after a significantly more searching review than cases in other circuit courts explaining the Rule 23 standard. In *Szabo,* for example, the district court "assumed that whatever [the plaintiff] allege [d] must be true," and it "[p]roceed[ed] as if class certification under Rule 23 were governed by the same principles as evaluating the sufficiency of the complaint under Rule 12(b)(6)." 249 F.3d at 674-75. In *Gariety,* the case came to the Fourth Circuit after the district court had concluded that "the fact that the plaintiffs have *asserted* that the Keystone market was efficient is enough at the certification stage to find the market efficient." 368 F.3d at 361 (emphasis added); *see also Vallario v. Vandehey,* 554 F.3d 1259, 1265-66 (10th Cir.2009) (district court abused its discretion in thinking it was barred from any consideration of action's merits); *IPO,* 471 F.3d at 30 (district court finding that only "plaintiffs-who have the burden of proof at class certification-must make '*some showing* ' ").

In other words, previous circuit courts addressing similar issues have been faced with district courts making the same mistake that we described a small number of district courts in this circuit have made in citing *Blackie* out of context: refusing to consider any issue overlapping with the merits, and assuming the plaintiffs' substantive allegations as true for the Rule 23 inquiry. As we demonstrate below, such review is entirely dissimilar from the district court's review in this case.

Second, we also note that resolving this case requires a close reading of the district court's lengthy opinion to determine the standard the district court applied in deciding to certify the class. Contrary to the claims of

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
**(Cite as: 603 F.3d 571)**

Wal-Mart and the dissent, such a reading of the district court's individual determinations on Rule 23(a) shows that the district court actually weighed evidence and made findings sufficient under the standard we have described above.

**\*599** In broadly discussing the standard of review, the district court stated the following:

> A party seeking to certify a class must demonstrate that it has *met* all four requirements of Federal Rule of Civil Procedure 23(a), and at least one of the requirements of Rule 23(b). Rule 23(a) *requires* that all of the following four factors be *met* .... In short, the class must *satisfy the requirements* of numerosity, commonality, typicality, and adequacy....

> The party seeking certification must provide facts sufficient to *satisfy* Rule 23(a) and (b) *requirements*. In turn, the district court must conduct a *rigorous analysis* to determine that the prerequisites of Rule 23 have been *met*. *Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)*. If a court is not fully satisfied, certification should be refused.... *See* Fed.R.Civ.P. 23 advisory committee's note to 2003 amends.

> ....

> ... "[A]lthough some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the certification stage." *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir.1983) (citation omitted); *see also Nelson v. United States Steel Corp.*, 709 F.2d 675, 679-80 (11th Cir.1983) (plaintiffs' burden at class certification "entails more than the simple assertion of [commonality and typicality] but less than a prima facie showing of liability") (citation omitted).

*Dukes, 222 F.R.D. at 143-44* (some citations omitted) (last alteration in original) (emphasis added). Unlike some other district courts, which have assumed facts in a complaint, the district court here spent significant effort explaining a nuanced standard that clearly comprehended the need to look well beyond the pleadings in the case.

Most importantly, as we will now explain, the district court's standard led to a review that complies with *Falcon* and with our herein-described standards that a district court must follow when deciding whether to certify a class.

### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Wal-Mart does not contest this point.

### 2. Commonality

[12][13] Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Commonality focuses on the relationship of common facts and legal issues among class members. *See, e.g.,* Conte & Newberg, *supra*, § 3:10, at 271. We noted in *Hanlon, 150 F.3d at 1019*:

> Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

The commonality test is "qualitative rather than quantitative"-one significant issue common to the class may be sufficient to warrant certification, *see, e.g., Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 352 (E.D.N.Y.1997), *aff'd*, 164 F.3d 81 (2d Cir.1998); *see also* Conte & Newberg, *supra*, § 3:10, at 272-74, a standard that dovetails with our discussion above, requiring plaintiffs to show common questions or issues.

**\*600** The district court found that Plaintiffs had provided evidence sufficient to support their contention that significant factual and legal questions are common to all class members. After analyzing Plaintiffs' evidence, the district court stated:

> Plaintiffs have exceeded the permissive and minimal burden of establishing commonality by providing: (1) significant evidence of company-wide corporate practices and policies, which include (a) excessive subjectivity in personnel decisions, (b)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
**(Cite as: 603 F.3d 571)**

gender stereotyping, and (c) maintenance of a strong corporate culture; (2) statistical evidence of gender disparities caused by discrimination; and (3) anecdotal evidence of gender bias. Together, this evidence raises an inference that Wal-Mart engages in discriminatory practices in compensation and promotion that affect all plaintiffs in a common manner.

*Dukes,* 222 F.R.D. at 166. Discussing commonality, the district court alluded to the determinations Rule 23 requires in certifying a class. The court stated, "Rule 23(a)(2) requires that common questions of law or fact exist among class members." *Id.* at 144. Recognizing this *requirement* of Rule 23, the district court went on to make reasoned determinations that commonality was met, concluding that "th[e] evidence more than satisfies plaintiffs' burden to demonstrate commonality under Rule 23(a)(2)." *Id.* at 145. The district court then detailed the four categories of commonality evidence to which we now turn. *Id.* We conclude, as explained in more detail below, that it was within the district court's discretion, and in line with *Falcon* and the standard we have clarified today, to determine that the commonality prerequisite to class certification was satisfied. *See* Fed.R.Civ.P. 23(a)(2).[FN20]

> FN20. Of course, returning to the standard discussed above, if the district court had rejected Wal-Mart's arguments regarding commonality solely because they overlapped with "merits issues," that would have been error. However, as we explain in the following sections, the district court did not do this but, instead, conducted a "rigorous analysis" of the conflicting evidence presented on the commonality question and ultimately concluded that Plaintiffs raised "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2); *see Falcon,* 457 U.S. at 161, 102 S.Ct. 2364; *Hanon,* 976 F.2d at 509.

### a. *Evidence of a Common Policy of Discrimination*

Pursuant to *Falcon,* 457 U.S. at 161, 102 S.Ct. 2364, Plaintiffs presented four categories of commonality evidence that the district court subjected to a "rigorous analysis": (1) facts supporting the existence of company-wide policies and practices that, in part

through their subjectivity, provide a potential conduit for discrimination; (2) expert opinions supporting the existence of company-wide policies and practices that likely include a culture of gender stereotyping; (3) expert statistical evidence of class-wide gender disparities attributable to discrimination; and (4) anecdotal evidence from class members throughout the country of discriminatory attitudes held or tolerated by management. *See Dukes,* 222 F.R.D. at 145-66. Wal-Mart contends this evidence is insufficient to suggest a common factual or legal question related to the existence of discrimination.

#### (1) Factual Evidence

As factual evidence, Plaintiffs presented evidence of the following: (1) uniform personnel and management structure across stores; (2) Wal-Mart headquarters's extensive oversight of store operations, company-wide policies governing pay and promotion decisions, and a strong, centralized corporate culture; and (3) consistent gender-related disparities in every domestic region of the company. Such evidence *601 supports Plaintiffs' contention that Wal-Mart operates a highly centralized company that promotes policies common to all stores and maintains a single system of oversight. Wal-Mart does not challenge this evidence.

#### (2) Expert Opinion

[14] Plaintiffs presented evidence from Dr. William Bielby, a sociologist, to interpret and explain the facts that suggest that Wal-Mart has and promotes a strong corporate culture-a culture that may include gender stereotyping. Dr. Bielby based his opinion on, among other things, Wal-Mart managers' deposition testimony; organizational charts; correspondence, memos, reports, and presentations relating to personnel policy and practice, diversity, and equal employment opportunity issues; documents describing the culture and history of the company; and a large body of social science research on the impact of organizational policy and practice on workplace bias.

Dr. Bielby testified that he employed a social framework analysis to examine the distinctive features of Wal-Mart's policies and practices and evaluated them "against what social science shows to be factors that create and sustain bias and those that minimize bias."[FN21] In Dr. Bielby's opinion, "social science research

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
(Cite as: 603 F.3d 571)

demonstrates that gender stereotypes are especially likely to influence personnel decisions when they are based on subjective factors, because substantial decisionmaker discretion tends to allow people to seek out and retain stereotyping-confirming information and ignore or minimize information that defies stereotypes." *Id.* at 153(internal quotation marks omitted). Dr. Bielby concluded that: (1) Wal-Mart's centralized coordination, reinforced by a strong organizational culture, sustains uniformity in personnel policy and practice; (2) there are significant deficiencies in Wal-Mart's equal employment policies and practices; and (3) Wal-Mart's personnel policies and practices make pay and promotion decisions vulnerable to gender bias. *See id.* at 153-54.

> FN21. For a description of the "social framework analysis," see Melissa Hart & Paul M. Secunda, *A Matter of Context: Social Framework Evidence in Employment Discrimination Class Actions*, 78 Fordham L.Rev. 37, 41-55 (2009).

The district court reviewed Plaintiffs' and Wal-Mart's competing claims as to Wal-Mart's uniform culture and determined that "the evidence indicates that instore pay and promotion decisions are largely subjective and made within a substantial range of discretion by store or district level managers, and that this is a common feature which provides a wide enough conduit for gender bias to potentially seep into the system." *Id.* at 152. Having evaluated this evidence in detail, the court determined "that given the evidence regarding strong uniform culture and policies, the degree and impact of this practice is a significant question of fact common to the class as a whole." *Id.* at 153. Such a reasoned determination is what our standard for Rule 23 requires.

Wal-Mart vigorously challenges Dr. Bielby's third conclusion as vague and imprecise because he concluded that Wal-Mart is "vulnerable" to bias or gender stereotyping but failed to identify a specific discriminatory policy at Wal-Mart. Specifically, Wal-Mart contends that Dr. Bielby's testimony does not meet the standards for expert testimony set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), which held that a trial court must act as a "gatekeeper" in determining **\*602** whether to admit or exclude expert evidence.

Wal-Mart made an identical argument to the district court and the district court properly rejected it. A close reading of the district court's order demonstrates its correct understanding of its role at the Rule 23(a)(2) certification stage-to make factual determinations regarding evidence as it relates to common questions of fact or law but not to decide which parties' evidence is ultimately more persuasive as to liability. The court stated, "Dr. Bielby presents enough of a basis, both in his review of the scientific literature and on the facts of the case, to provide a foundation for his opinions." *Dukes*, 222 F.R.D. at 154. The court correctly explained that whether the jury was ultimately persuaded by those opinions was a question on the merits. For the class certification, however, Dr. Bielby's opinions, for which Wal-Mart did not challenge the methodology, raised a question "of corporate uniformity and gender stereotyping that is common to all class members." *Id.* We cannot say that considering Dr. Bielby's opinions in this method was an abuse of discretion.

This conclusion is furthered by the fact that Wal-Mart did not (and does not) challenge Dr. Bielby's methodology or contend that his findings lack relevance because they "do[ ] not relate to any issue in the case," *Daubert*, 509 U.S. at 591, 113 S.Ct. 2786 (internal quotation marks omitted). Wal-Mart challenges *only* whether certain inferences can be persuasively drawn from his data. But because *Daubert* does not require a court to admit or exclude evidence based on its persuasiveness, but rather requires a court to admit or exclude evidence based on its scientific reliability and relevance, *id.* at 587-92, 113 S.Ct. 2786(relevance standard "is a liberal one," under which evidence is relevant if it has " 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence' " (quoting Fed.R.Evid. 401)), testing Dr. Bielby's testimony for " *Daubert* reliability" would not have addressed Wal-Mart's objections. It would have simply revealed what Wal-Mart itself has admitted and courts have long accepted: that properly analyzed social science data, like that offered by Dr. Bielby, may support a plaintiff's assertions that a claim is proper for class resolution. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 235-36, 255, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (considering similar evidence offered by expert social psychologist).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
**(Cite as: 603 F.3d 571)**

[15] Accordingly, Wal-Mart's contention that the district court was required to strike Dr. Bielby's testimony under the *Daubert* test at the class certification stage, simply because the conclusion he reached seemed unpersuasive absent certain corroborating evidence, is misplaced.[FN22] See *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786 ("The focus, of course, must be solely *603 on principles and methodology, not on the conclusions that they generate."). While a *jury* may ultimately agree with Wal-Mart that, in the absence of a specific discriminatory policy promulgated by Wal-Mart, it is not more likely than not, based solely on Dr. Bielby's analysis, that Wal-Mart engaged in actual gender discrimination, that question must be left to the merits stage of the litigation (and presumably will not have to be decided as there will be other evidence). At the class certification stage, it is enough that Dr. Bielby presented scientifically reliable evidence tending to show that a common question of fact-i.e., "Does Wal-Mart's policy of decentralized, subjective employment decision making operate to discriminate against female employees?"-exists with respect to all members of the class.[FN23] This he did and, thus, we find no error in the district court's acceptance of Dr. Bielby's evidence to support a finding of commonality.

> FN22. We are not convinced by the dissent's argument that *Daubert* has exactly the same application at the class certification stage as it does to expert testimony relevant at trial. Dissent at 6255. However, even assuming it did, the district court here was not in error. Thus we need not resolve this issue here.

> In accepting Dr. Bielby's social framework analysis, the district court stated:

> The Court is further guided by *Daubert v. Merrell Dow Pharm., Inc. (Daubert II)*, 43 F.3d 1311, 1316 (9th Cir.1995), in which the Ninth Circuit stated that scientific knowledge "does not mean absolute certainty," and that expert testimony should be admitted when "the proffered testimony is 'based on scientifically valid principles.' " *Id.*, quoting *Daubert I*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. The Ninth Circuit continued: "Our task, then, is to analyze not what the ex-

perts say, but what basis they have for saying it." *Daubert II*, 43 F.3d at 1316. The Court is satisfied that Dr. Bi[e]lby's opinion-while subject to critique-is based on valid principles. Thus, it is sufficiently probative to assist the Court in evaluating the class certification requirements at issue in this case. Accordingly, Defendant's motion to strike Dr. Bilby's declaration is denied.

> *Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 192 (N.D.Cal.2004) (" *Dukes II* ").

On this review, regardless of whether full *Daubert* review is required at the class certification stage, we cannot say that admitting Dr. Bielby's social framework analysis was an abuse of discretion. The district court specifically considered *Daubert's* applicability to Dr. Bielby and was within its discretion to limit its inquiry. As the district court observed, Dr. Bielby's testimony could be admissible even without reaching "definitive[ ]" conclusions, because tentative rather than "conclusive determination[s]" are in "the nature of this particular field of science." *Dukes*, 222 F.R.D. at 154.

Other cases support this conclusion. The Third Circuit, citing *IPO*, has noted that when the plaintiffs' ability to prove their case "is genuinely disputed, the district court must resolve it after considering all relevant evidence. Here [in *Hydrogen Peroxide* ], the District Court apparently believed it was barred from resolving" these expert disputes. *Hydrogen Peroxide*, 552 F.3d at 325. Unlike *Hydrogen Peroxide* and other cases Wal-Mart cites, in the present case the district court *heard*, rather than excluded, the bulk of the relevant evidence. As a general rule, " '[d]istrict courts are not required to hold a *Daubert* hearing before ruling on the admissibility of scientific evidence,' " *Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 979 (9th Cir.2009) (quoting *Jaros v. E.I. DuPont (In re Hanford Nuclear Reservation Litig.)*, 292 F.3d 1124, 1138 (9th

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032,
2010 Daily Journal D.A.R. 6183
(Cite as: 603 F.3d 571)

Cir.2002)). Plaintiffs clearly established foundation for Dr. Bielby's testimony and statistics. It was not an abuse of discretion for the district court not to exclude them, under *Daubert* or otherwise.

FN23. As discussed below in Part II.A.2.b, this court and many others have held that "delegation to supervisors, pursuant to company-wide policies, of discretionary authority without sufficient oversight ... gives rise to common questions of fact warranting certification of the proposed class." *Caridad,* 191 F.3d at 291, *overruled on other grounds by IPO,* 471 F.3d at 39-42; *see Hnot,* 241 F.R.D. at 210(explaining that *IPO* did not overrule this aspect of *Caridad* ); *see also Staton,* 327 F.3d at 955-56 (rejecting argument that "decisionmaking at Boeing is too decentralized to permit a class that combines plaintiffs from disparate locales"); *Shipes v. Trinity Indus., 987 F.2d 311, 316 (5th Cir.1993)* (upholding commonality finding where all of company's plants "utilized the same subjective criteria in making personnel decisions"); *Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1557 (11th Cir.1986)* (holding that " '[a]llegations of similar discriminatory employment practices, such as ... [the] use of entirely subjective personnel processes that operated to discriminate, would satisfy the commonality and typicality requirements of Rule 23(a)' " (alterations in original) (quoting *Carpenter v. Stephen F. Austin State Univ., 706 F.2d 608, 617 (5th Cir.1983)*)); *Segar v. Smith, 738 F.2d 1249, 1276 (D.C.Cir.1984)* (explaining that "subjective criteria may well serve as a veil of seeming legitimacy behind which illegal discrimination is operating").

### (3) Statistical Evidence

[16][17] It is well established that plaintiffs may demonstrate commonality *604 by presenting statistical evidence, which survives a "rigorous analysis," sufficient to fairly raise a common question concerning whether there is class-wide discrimination. *See Falcon,* 457 U.S. at 159 n. 15, 161, 102 S.Ct. 2364; *Caridad,* 191 F.3d at 292;[FN24] *see also Stastny v. S. Bell Tel. & Tel. Co., 628 F.2d 267, 278 (4th*

Cir.1980) (recognizing that statistical data showing comparable disparities experienced by individual employees may indicate a policy or practice that commonly affects the class members and raises a common question concerning whether the pattern or practice is discriminatory).

FN24. *See Hnot,* 241 F.R.D. at 210 (" *Caridad* held, in part, that class challenges to subjective employment practices, like other disparate treatment and disparate impact claims, may satisfy the commonality requirement. *In re IPO* did not even address this aspect of *Caridad.* ... [I]t did not question *Caridad*'s holding that statistical evidence can demonstrate commonality in a challenge to subjective employment practices, which remains controlling authority." (citation omitted)).

A careful reading of the district court's treatment of the competing statistical evidence demonstrates that, in conducting its analysis, the district court followed the correct standard as explained in *Falcon* and our earlier cases, and clarified today.

Dr. Richard Drogin, Plaintiffs' statistician, analyzed data at a regional level. He ran separate regression analyses for each of the forty-one regions [FN25] containing Wal-Mart stores.[FN26] He concluded that "there are statistically significant disparities between men and women at Wal-Mart in terms of compensation and promotions, that these disparities are widespread across regions, and that they can be explained only by gender discrimination." *Dukes,* 222 F.R.D. at 154. Dr. Marc Bendick, Plaintiffs' labor economics expert, conducted a "benchmarking" study comparing Wal-Mart with twenty of its competitors, concluding Wal-Mart promotes a lower percentage of women than its competitors.[FN27] *See id.*

FN25. Each region contains approximately 80 to 85 stores.

FN26. Regression analyses, in general terms, provide estimates of the effect of independent variables on a single dependent variable. *See Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1183-84 & n. 9 (9th Cir.2002).* The purpose of this methodology is to estimate the extent to which a particular

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
(Cite as: 603 F.3d 571)

independent variable (in this case, gender) has influenced the dependent variables of compensation and promotion. See *id.; see also Rudebusch v. Hughes,* 313 F.3d 506, 511-12 (9th Cir.2002). As long as the analyses include enough relevant non-discriminatory independent variables (e.g., education, experience, performance, etc.), the results will indicate whether any salary disparities are attributable to gender (thereby raising an inference of discrimination) or whether the disparities are attributable to other factors (and thereby refuting such an inference). See *Hemmings,* 285 F.3d at 1183-84 & n. 9; *see also EEOC v. Gen. Tel. Co. of Nw., Inc.,* 885 F.2d 575, 577 n. 3 (9th Cir.1989) ("A regression analysis is a common statistical tool ... designed to isolate the influence of one particular factor-[e.g.,] sex-on a dependent variable-[e.g.,] salary." (internal quotation marks omitted)).

FN27. "Specifically, Dr. Bendick compared, or 'benchmarked,' Wal-Mart against twenty other [similar] general merchandise retailers by comparing workforce data provided by the companies to the Equal Employment Opportunity Commission." *Dukes,* 222 F.R.D. at 164. Dr. Bendick analyzed the data "to determine the extent to which women in the relevant market sought promotion, so that an inference could be made that roughly the same percentage of women would have [sought promotion] at Wal-Mart if given the opportunity." *See id.* As Dr. Bendick explained, "The logic in benchmarking is that, if retail chains comparable to Wal-Mart are successfully employing women at some rate, then women are presumably available, interested, and qualified to hold comparable positions at Wal-Mart at a similar rate." *Id.*

Wal-Mart challenges Dr. Drogin's findings and faults his decision to conduct his *605 research on the regional level, rather than analyze the data store-by-store.[FN28] However, the proper test of whether workforce statistics should be viewed at the macro (regional) or micro (store or sub-store) level depends largely on the similarity of the employment practices and the interchange of employees at the various facilities. See *Kirkland v. N.Y. State Dep't of Corr.*

*Servs.,* 520 F.2d 420, 425 (2d Cir.1975) (recognizing that the focus of analysis depends on the nature of a defendant's employment practices); 2 Barbara Lindemann & Paul Grossman, *Employment Discrimination Law* 1598, 1723 (3d ed.1996).

FN28. This argument is unsurprising, and is the statistical argument similarly situated defendants make as a matter of course.

Here, Dr. Drogin explained that a store-by-store analysis would not capture: (1) the effect of district, regional, and company-wide control over Wal-Mart's uniform compensation policies and procedures; (2) the dissemination of Wal-Mart's uniform compensation policies and procedures resulting from the frequent movement of store managers; or (3) Wal-Mart's strong corporate culture. *Dukes,* 222 F.R.D. at 157.

In conducting its rigorous analysis of these claims, the district court first re-stated its standard of review. Its decision makes clear that the district court made determinations that Plaintiffs' statistics raised common questions of fact or law only after it rigorously analyzed them, probing significantly behind the pleadings and resolving facts necessary to make determinations on Rule 23(a)(2).

Discussing the proper standard for evaluating the statistics, the district court said it rejected a full-blown merits evaluation of the evidence but had to "view[ ] the statistical evidence and testimony through the proper lens of the standards applicable to a class certification motion." *Dukes,* 222 F.R.D. at 155. Though noting it would not decide the actual merits of the claims, the court did "delve[ ] into the substance of the expert testimony ... to the extent necessary to determine if it [wa]s sufficiently probative of an inference of discrimination to create a common question as to the existence of a pattern and practice of gender discrimination at Wal-Mart." *Id.* This is the precise inquiry that cases such as *IPO* have required, and it clearly meets the standard we outline above, particularly given the depth of the district court's review, the evidentiary posture of the case as a Title VII pattern and practice case, and the underlying procedural standard where the district court here was reviewing evidence under Rule 23(a)(2), to raise a common question, rather than, like the cases Wal-Mart cites, Rule 23(b)(3), to determine predominance. See *Hnot,* 241 F.R.D. at 210.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
**(Cite as: 603 F.3d 571)**

In addition to formulating a review that complied with *Falcon* and our precedent, the district court, contrary to Wal-Mart's claims, did not improperly rely on out-of-circuit cases the Second Circuit overruled in *IPO.* Specifically, Wal-Mart cites *Visa Check* and *Caridad* as decisions *IPO* rejected, noting the district court's supposed reliance on this reasoning renders its decision error. As an initial matter, the district court did not cite *Visa Check* at all. *See Dukes,* 222 F.R.D. 137 passim. While it did cite to *Caridad,* nothing about its citation to *Caridad* was erroneous.

The district court cited *Caridad* five times. Two instances of this reliance can be immediately set aside as unproblematic because they relied on *Caridad*'s holding that excessive subjectivity in corporate *\*606 policies can contribute to a finding of commonality. *Dukes,* 222 F.R.D. at 149-50, 154. *IPO* neither addressed nor overruled this holding in *Caridad,* and it still remains "controlling authority" in the Second Circuit. *Hnot,* 241 F.R.D. at 210. A third citation to *Caridad* supported the district court's statement that, "although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits at the class certification stage." *Dukes,* 222 F.R.D. at 144(internal quotation marks omitted) (citing *Caridad,* 191 F.3d at 292). This statement is entirely consistent with *Falcon,* our precedent, and our ruling today. The two other citations to *Caridad* equally show that the district court did not adopt the "some showing" standard that the Second Circuit properly rejected. Instead, the district court refused to consider the merits-it would not conclusively find whether Wal-Mart had discriminated-but it analyzed the evidence to the extent, under Rule 23(a)(2), that it had to determine whether "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2); *Dukes,* 222 F.R.D. at 143.[FN29]

> FN29. The district court's other two citations to *Caridad* supported its statements that, first, "[d]efendant's arguments seek to engage the Court in a merits evaluation of the expert opinions. The Court rejects this approach, and views the statistical evidence and testimony through the proper lens of the standards applicable to a class certification

motion." *Dukes,* 222 F.R.D. at 155 & n. 21 (citing *Caridad,* 191 F.3d at 292). Second, "[t]he ultimate question of whether subjective decision-making and a uniform culture contribute to a nation-wide pattern of gender discrimination will, of course, be for a jury to decide. At this stage, however, these factors are apparent enough to support Dr. Drogin's regional approach as at least *a* reasonable means of conducting a statistical analysis." *Id.* at 159 & n. 29 (citing *Caridad,* 191 F.3d at 292-93). These are determinations of the type we require for Rule 23(a)(2) certification. Though we have used different language in clarifying the standard today, the district court examined the evidence and made a determination, over Wal-Mart's evidence, that Plaintiffs' evidence raised questions of law or fact common to the class. That is what Rule 23(a)(2), the Supreme Court, and we require.

Critically, the district court did not shy away from issues overlapping with the merits; rather it devoted fifteen pages of its opinion to probing the parties' statistics. The district court merely refused to decide the underlying merits themselves and examined evidence only to the extent necessary to satisfy itself under Rule 23(a)(2) that Plaintiffs raised common questions. In doing so, it joined dozens of other district courts in this circuit that have engaged the proper analysis, all using different wording, but all probing behind the pleadings to make determinations on the Rule 23 requirements. *See, e.g., In re Cooper Cos. Sec. Litig.,* 254 F.R.D. 628, 641 n. 7 (C.D.Cal.2009); *Bishop v. Petro-Chem. Transp., LLC,* 582 F.Supp.2d 1290, 1305 (E.D.Cal.2008); *Alexander v. JBC Legal Group, P.C.,* 237 F.R.D. 628, 629(D.Mont.2006); *Westways World Travel, Inc.,* 218 F.R.D. at 230.

Turning to the factual assertions in Plaintiffs' evidence, the court made a preliminary determination, based on the following "largely uncontested" statistics:

[W]omen working in Wal-Mart stores are paid less than men in every region, that pay disparities exist in most job categories, that the salary gap widens over time even for men and women hired into the same jobs at the same time, that women take longer

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
(Cite as: 603 F.3d 571)

to enter into management positions, and that the higher one looks in the organization the lower the percentage of women.

*Dukes, 222 F.R.D. at 155.* Importantly, and as instructed by *Falcon,* these factual *607 determinations were arrived at after looking beyond the pleadings to Plaintiffs' expert's deposition. *Id.*

Correctly noting that descriptive statistics do not address causation, the district court then analyzed not the pleadings, but Plaintiffs' and Wal-Mart's statistics, finding, "In short, all of Dr. Drogin's regressions show that gender is a statistically significant variable in accounting for the salary differentials between female class members and male employees at Wal-Mart stores." *Id.* at 156, 102 S.Ct. 2364.

The court specifically analyzed whether aggregation of statistics for regional units was proper or whether Wal-Mart was correct to insist upon a store-level evaluation. The district court first stated the relevant sub-standard: "The proper test of whether workforce statistics should be viewed at the macro (regional) or micro (store or sub-store) level depends largely on the similarity of the employment practices, and the interchange of employees, at the various facilities." *Id.* at 157, 102 S.Ct. 2364 (citation omitted). It continued, "Dr. Drogin contends that it is proper to conduct the analysis on a regional level because the subjective decision-making in compensation and promotions takes place within parameters and guidelines that are highly uniform.... Plaintiffs also have shown, as discussed above, that the primary salary decision-makers, Store Managers, experience frequent relocation among the various stores." *Id.* at 157, 102 S.Ct. 2364.

On appeal, Wal-Mart contends that the district court erred by not finding Wal-Mart's statistical evidence *more persuasive than Plaintiffs'* evidence because, according to Wal-Mart, its analysis was conducted store-by-store. However, contrary to Wal-Mart's characterization of its analysis, and the dissent's concerns regarding statistical aggregation,[FN30] Wal-Mart's own research was not conducted at the individual store level. Dr. Joan Haworth, Wal-Mart's expert, did not conduct a store-by-store analysis; instead she reviewed data at the *sub-store* level by comparing departments to analyze the pay differential between male and female hourly employees.[FN31]

Moreover, our task here is to determine whether the district court *abused its discretion*608 in finding that, based on all the evidence presented, there existed common questions of fact sufficient to justify class certification. *See Gonzales v. Free Speech Coal.,* 408 F.3d 613, 618 (9th Cir.2005); *Armstrong,* 275 F.3d at 867. We are *not* to re-examine the relative strength or persuasiveness of the commonality evidence ourselves. Thus, even if we were to find, based on an independent review of the record, that Wal-Mart's statistical evidence was more persuasive than Plaintiffs'-which we do not, in any event-this alone would not allow us to find that the district court improperly relied on Dr. Drogin's testimony as a valid component of its commonality analysis or that the district court erred in its ultimate conclusion that the commonality prerequisite was satisfied. That the jury might later find Wal-Mart's statistical evidence more persuasive does not detract from the district court's determination, after extensive review, that Dr. Drogin's regional analysis raises common issues appropriate for class adjudication.

> FN30. Contrary to the dissent's characterization, the district court was cognizant of the possibility of aggregation problems in the data. *Dukes, 222 F.R.D. at 155-59 & n. 22.* The dissent's invocation of "Simpson's Paradox" to discount Plaintiffs' statistical evidence is not compelling, particularly at the class certification stage. *See* Dissent at 637 n.12. First, Simpson's Paradox is a problem of incorrect causation inferences as much as it is the result of an aggregation problem, *see* Judea Pearl, *Causality: Models, Reasoning, and Inference* 130 (2000) (noting that the study the dissent cites, while not "defective," highlights "that no adjustment is guaranteed to give an unbiased estimate of causal effects, direct or indirect, absent a careful examination of the causal assumptions that ensure identification"), and the district court considered potential problems and causation inferences in its discussion of the competing regression analyses. *See Dukes, 222 F.R.D. at 155-56 & n. 22.* Second, at trial, Wal-Mart is free to further argue the unpersuasiveness of Plaintiffs' statistics, but lacking evidence showing a likelihood of a Simpson's Paradox, and given the many causal factors the statistical analyses addressed, *see id.;* Marios G. Pavlides &

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
**(Cite as: 603 F.3d 571)**

Michael D. Perlman, *How Likely is a Simpson's Paradox*, 63 Am. Statistician 226, 229-30 (2009), we find the district court properly considered Plaintiffs' statistics probative after a rigorous analysis. *See Falcon*, 457 U.S. at 161, 102 S.Ct. 2364; *Dukes*, 222 F.R.D. at 156-59.

FN31. This means that Dr. Haworth ran separate regression analyses for: (1) each of the specialty departments in the store, (2) each grocery department in the store, and (3) the store's remaining departments. She did not run regression analyses to examine pay differential between male and female salaried employees.

Here, again, the district court followed the Supreme Court's guidance to thoughtfully "probe behind the pleadings," *Falcon, 457 U.S. at 160, 102 S.Ct. 2364*, and did not abuse its discretion when it relied on Dr. Drogin's use and interpretation of statistical data as a valid component of its determination that Plaintiffs raised common questions. It considered Wal-Mart's challenges to Dr. Drogin's statistics and made the specific determination that "the Court is not persuaded that Dr. Drogin's aggregated statistical analysis should be rejected because he did not choose to utilize the Chow test," as Wal-Mart had urged. *Dukes, 222 F.R.D. at 158*. In other words, for the purposes of class certification, the district court reasonably made the determination to credit Plaintiffs' statistics.

Wal-Mart also claims the district court erred in determining that Wal-Mart provided little or no proper legal or factual challenge to Dr. Drogin's analysis,[FN32] and that, contrary to Wal-Mart's contention, Dr. Haworth's Store Manager survey evidence-which was stricken for failing to satisfy the standards of Rules 702 and 703 of Evidence [FN33]-did not undermine or contradict Dr. Drogin's evidence.

FN32. For example, Wal-Mart maintains that the district court erred by not requiring Dr. Drogin to perform a "Chow test" to determine whether data could be properly aggregated. We have not found a single case suggesting or requiring use of such a test.

FN33. In addition to her sub-store analysis,

Dr. Haworth conducted a survey of store managers. After reviewing the survey and its methodology, the district court concluded that the Store Manager survey was biased both "on its face" and in the way that it was conducted. *Dukes II, 222 F.R.D. at 196-97*(noting that the survey's results "are not the 'product of reliable principles and methods,' and therefore are not the type of evidence that would be 'reasonably relied upon by experts' " (quoting *Fed.R.Evid. 702, 703*)). Dr. Haworth's disaggregated analysis created pools too small to yield any meaningful results. Wal-Mart has not appealed this issue. Accordingly, this evidence is not properly before us. *See Kohler v. Inter-Tel Techs., 244 F.3d 1167, 1179 n. 8 (9th Cir.2001)* (recognizing that the appellant waived a claim by failing to raise it in their briefs).

In rejecting the inclusion of Wal-Mart's Store Manager surveys as a challenge to Dr. Drogin's statistics because they were not based on a scientifically valid reasoning or methodology, *Dukes II, 222 F.R.D. at 197-98 (discussing Rules 702 and 703), see Daubert, 509 U.S. at 592-93, 113 S.Ct. 2786*, the court noted that even if the evidence were included, "[t]he survey would not provide sufficient additional *weight* to Defendant's challenge to Dr. Drogin's analysis to sway the Court from its *conclusion* that his testimony supports *609 an inference of discrimination, and thus the existence of substantial questions common to the class," *Dukes II, 222 F.R.D. at 198 n. 9* (emphasis added). In so ruling, the district court went even further into the merits than necessary to make a reasoned, justifiable determination, after proper review under the correct standard, that Plaintiffs' claims were appropriate for class adjudication due to common questions.

Thus, because Dr. Drogin adequately explained, and the district court rigorously analyzed, why his statistical method best reflected the alleged discrimination, the court did not abuse its discretion when it credited Dr. Drogin's analysis of statistical evidence of common discrimination questions. Nor did the district court abuse its discretion when it concluded that Dr. Drogin's analysis supported Plaintiffs' contention that there is a common core of facts flowing from Wal-Mart's corporate structure and policies that affects

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
(Cite as: 603 F.3d 571)

class members generally with regard to their discrimination claims. While Plaintiffs and Wal-Mart disagree on whose findings are more persuasive, the disagreement is not one of whether Plaintiffs have asserted "common questions of law or fact." *Falcon,* 457 U.S. at 157, 159, 102 S.Ct. 2364. The disagreement *is* the common question, and deciding which side has been more persuasive is an issue for the next phase of the litigation. Requiring even more findings and further analysis from the district court would be to force a trial on the merits at the certification stage.

Finally, and discussed further below, the district court's review of statistics showing discrimination regarding promotions was also not an abuse of discretion. Plaintiffs and Defendant disagree over whether Dr. Drogin's analysis of internal promotion data was proper. Specifically, both sides agreed that Wal-Mart's actual applicant flow data for promotions during the class period was limited and contained significant gaps. *Dukes,* 222 F.R.D. at 162. Dr. Drogin's statistics estimated the applicant flow by "tabulating 'the incumbents in historical feeder jobs for each promotion.' " *Id.* Wal-Mart argued that the data, "while limited, is nonetheless sufficient to justify an extrapolation for all job openings during the entire class period." *Id.*

The district court, addressing this statistical dispute, found Plaintiffs' statistics "sufficient to create an inference of discrimination." *Id.* at 164. In doing so, the district court found Dr. Drogin's reasoning and methodology valid and applicable in the case. While the court noted in passing that Dr. Drogin's statistics were "reasonable," the court also, and more appropriately, stated that "it is well recognized that where actual applicant flow data is inadequate or unavailable, other measures of applicant flow-including but not limited to 'feeder pools'-are deemed acceptable so long as they are used in a reliable manner." *Id.* at 162-63. In doing so the district court cited an evidence treatise, Ninth Circuit precedent, and a district court case that had accepted the same type of feeder pool methodology in a dispute of the very same experts-Dr. Drogin and Dr. Haworth. *Id.* at 163 & n. 37 (citing *Hemmings v. Tidyman's Inc.,* 285 F.3d 1174, 1185-86 (9th Cir.2002); R. Paetzold and S. Willborn, *The Statistics of Discrimination* §§ 4.02-4.04 (2002); *Stender v. Lucky Stores, Inc.,* 803 F.Supp. 259, 333-34 (N.D.Cal.1992)).

Thus, properly considering Dr. Drogin's statistics, the court made a determination on the applicant pool data. It found that "Defendant's assertion that its approach is necessarily superior does not withstand scrutiny. Rather, Defendant's arguments, which go to the weight of the evidence [i.e., the persuasiveness on the merits], merely **\*610** highlight the presence of a significant issue affecting all class members which supports, rather than defeats, granting class certification." *Id.* at 164. This determination was thus made after a rigorous analysis of the parties' statistical claims.

In short, the district court stated the legal standard, analyzed Plaintiffs' and Wal-Mart's competing claims to the propriety of aggregating statistics on a regional level and addressing Wal-Mart's missing applicant flow data, noted Plaintiffs have "shown" reasons to accept their statistics, dismissed Wal-Mart's statistical challenges, demonstrated these finding were supported by relevant Ninth Circuit precedent (and an identical dispute involving the same two experts), rejected Wal-Mart's reliance on a district court case purportedly explaining why the sub-store statistical analysis was proper, and, finally, determined that at the class certification stage all of this analysis was sufficient to support Dr. Drogin's analysis and raise questions of law or fact common to the class. This searching analysis was solid, well founded and in no way an abuse of discretion.

### (4) Anecdotal Evidence

[18] Circumstantial and anecdotal evidence of discrimination is commonly used in Title VII "pattern and practice" cases to bolster statistical proof by bringing "the cold numbers convincingly to life." *Teamsters,* 431 U.S. at 339, 97 S.Ct. 1843; *see also Rudebusch v. Hughes,* 313 F.3d 506, 517 (9th Cir.2002). Wal-Mart contends that the district court erred by concluding that the anecdotal evidence, presented by Plaintiffs in the form of sworn declarations, supported a finding of commonality.[FN34] Wal-Mart maintains that the declarations depict a handful of "widely divergent" events that cannot be deemed probative or representative of discrimination in pay or management-track promotions.

> FN34. Plaintiffs submitted declarations from each of the class representatives, as well as 114 declarations from putative class mem-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

603 F.3d 571, 109 Fair Empl.Prac.Cas. (BNA) 15, 93 Empl. Prac. Dec. P 43,872, 10 Cal. Daily Op. Serv. 5032, 2010 Daily Journal D.A.R. 6183
(Cite as: 603 F.3d 571)

bers around the country. *See Dukes, 222 F.R.D. at 165.*

In their declarations, the potential class members testified to being paid less than similarly situated men, being denied or delayed in receiving promotions in a disproportionate manner when compared with similarly situated men, working in an atmosphere with a strong corporate culture of discrimination, and being subjected to various individual sexist acts. The district court credited this evidence.

Wal-Mart argues that 120 declarations cannot sufficiently represent a class of this size. However, we find no authority requiring or even suggesting that a plaintiff class submit a specific number of declarations for such evidence to have any value. Moreover, the district court did not state that this anecdotal evidence provided sufficient proof to *establish* commonality *by itself,* but merely noted such evidence provides *support* for Plaintiffs' contention that commonality is present. *See Dukes, 222 F.R.D. at 166* ("This anecdotal evidence, in combination with the other evidence previously discussed, further supports an inference that [Wal-Mart's] policies and procedures have the effect of discriminating against Plaintiffs in a common manner.").[FN35] Because the combination of these declarations and *611 Plaintiffs' other evidence, discussed below, raise an inference of common discriminatory experiences, the district court did not abuse its discretion when it considered Plaintiffs' anecdotal evidence.[FN36]

> FN35. Of course, the district court made no finding that Plaintiffs' anecdotal declarations *alone* would raise an inference of common discriminatory experiences. Therefore, contrary to the dissent's mischaracterization of our holding, Dissent at 6244-45, this case does not present the opportunity for us to consider, let alone affirm, such a hypothetical finding.

> FN36. The dissent's accusation that both we and the district court are playing the "proverbial shell game," is unpersuasive given the weight of the evidence the district court considered. *See* Dissent at 640-41. Not surprisingly, the dissent's implication that a single form of evidence must, by itself, be able to support a commonality finding to

satisfy the standard of significance set forth in *Falcon,* cites no authority for its proposition. *Id.* Even under a preponderance of the evidence standard, *see, e.g., Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir.2008),* the district court's review here would have been sufficient, finding Plaintiffs' "evidence more than satisfies plaintiffs' burden to demonstrate commonality under Rule 23(a)(2)." *See Dukes, 222 F.R.D. at 143, 145* ("The party seeking certification must provide facts sufficient to satisfy Rule 23(a) and (b) requirements. In turn, the district court must conduct a rigorous analysis to determine that the prerequisites of Rule 23 have been met. If a court is not fully satisfied, certification should be refused." (citations omitted)).

Finally, in arguing against certification based on affidavits, Plaintiffs' personal allegations, statistics, and expert testimony, the dissent intersperses references of *Falcon* immediately within discussion of *Cooper v. Federal Reserve Bank, 467 U.S. 867, 879, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984),* claiming "individual stories do not constitute significant proof that Wal-Mart has adopted a general policy of discrimination or that such a policy prevails" at Wal-Mart. Dissent at 635. This criticism, and particularly its temporary suspension of consideration of the statistical evidence, is indicative of the dissent's repeated attempts to go beyond the Supreme Court's concern with the need for "more precise pleadings" in class actions, *Falcon, 457 U.S. at 160-61, 102 S.Ct. 2364* (citing *Johnson, 417 F.2d at 1125),* and the Court's command that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," *id. at 160, 102 S.Ct. 2364,* in an effort to reframe the question as one on whether Plaintiffs can actually succeed on the merits. *Cf. Eisen, 417 U.S. at 177-78, 94 S.Ct. 2140*(explaining that the plaintiffs' likelihood of success on the merits is not part of deciding whether certification is proper).

Contrary to the dissent's proposed standard, Plaintiffs here need not "establish a prima facie case" on the merits. Dissent at 643. Class certification in *Cooper* had already taken place and, in fact, the case had gone through a trial. *467 U.S. at 872, 104 S.Ct. 2794.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.