IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | MDL Docket No. 05-1717-LPS |
| INTEL CORP. MICROPROCESSOR | ) | |
| ANTITRUST LITIGATION | ) | |
| | ) | |
| | ) | |
| PHIL PAUL, on behalf of himself | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-485-LPS |
| | ) | CONSOLIDATED |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

Pending before the Court are two motions filed quite some time ago in this multi-district putative class action. They are: (1) Plaintiffs' Motion to Certify Class ("Motion to Certify") (D.I. 753);[1] and (2) Defendant's' Motion to Exclude the Testimony of Plaintiffs' Expert Dr. Keith Leffler ("Motion to Exclude") (D.I. 1062). These motions come to the Court along with Plaintiffs' objections to the recommendation from a Special Master that the Court deny the Motion to Certify and grant the Motion to Exclude. The Court has determined, after some struggle, that, pursuant to Federal Rule of Civil Procedure 53(f)(1), it will need to conduct

---

[1]All citations to the Docket Index are to Civil Action No. 05-485-LPS, unless otherwise noted.

1

additional evidentiary proceedings in order to make a ruling on these motions.[2]

## BACKGROUND

This antitrust action was filed in July 2005. (D.I. 1) Later in 2005, the Joint Panel on Multidistrict Litigation created MDL No. 05-1717, so that related cases from multiple districts could proceed with coordinated pretrial proceedings in this Court. (C.A. 05-md-1717-LPS D.I. 1)

In their First Amended Complaint, Plaintiffs allege that Defendant, Intel Corporation ("Intel"), violated section 2 of the Sherman Act, 15 U.S.C. § 2; the California Cartwright Act, Cal. Bus. & Prof. Code § 16720; the California state tort law against monopolization; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; various state antitrust and restraint of trade laws; and various state consumer protection and unfair competition laws. (D.I. 49)

On May 11, 2006, the District Judge who was then presiding over this matter – the

---

[2]The docket reflects three other motions remain pending, but this appears to be incorrect. In January, 2009, The New York Times Company, Situation Publishing Ltd., Dow Jones & Company, Inc., The Washington Post, the Reporters Committee for Freedom of the Press, and the Computer & Communications Industry Association filed an Amended Motion to Modify Protective Order and Approve Protocol for Unsealing Documents. (C.A. 05-485-LPS D.I. 1302; C.A. 05-md-1717-LPS D.I. 1520) This motion was resolved on April 29, 2009 by an Order entered by the now-retired Judge Joseph J. Farnan, Jr., to whom this case was previously assigned. (C.A. 05-485-LPS D.I. 1499; C.A. 05-md-1717-LPS D.I. 1753) Plaintiffs' Motion for Sanctions for Intel's Failure to Preserve Evidence (C.A. 05-485-LPS D.I. 1897; C.A. 05-md-1717-LPS D.I. 2291), as well as Intel's Motion to Strike the Declaration of Shaun M. Simmons (C.A. 05-485-LPS D.I. 1957; C.A. 05-md-1717-LPS D.I. 2354), were both withdrawn without prejudice, pursuant to the Stipulation and Order Regarding Disposition of Certain Motions and Briefing Schedule on Class Plaintiffs' Forthcoming Objections to the Special Master's July 28, 2010 Report and Recommendations, entered by the undersigned Judge on August 17, 2010 (C.A. 05-485-LPS D.I. 2076; C.A. 05-md-1717-LPS D.I. 2474). Each of these three motions will be terminated.

2

Honorable Joseph J. Farnan, Jr., now retired – referred portions of this case to Special Master Vincent J. Poppiti (hereinafter, the "Special Master"). (D.I. 21) Between May 2006 and April, 2010, the Special Master held no fewer than six in-court hearings and issued at least seventy orders.[3]

## LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 53(f)(3), the Court "must decide de novo all objections to findings of fact made or recommended by a master." Further, the Court "must decide de novo all objections to conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(f)(4).[4] "[T]he court may set aside a master's ruling on a procedural matter only for an abuse of discretion." Fed. R. Civ. P. 53(f)(5). The Court "may receive evidence." Fed. R. Civ. P. 53(f)(1). After reviewing the objections according to the applicable standard of review, and following any additional proceedings the Court deems necessary, the Court "may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1).

---

[3]*See, e.g.*, D.I. 81, 158, 234, 245, 257, 285, 307, 367, 396, 428, 460, 501, 538, 545, 684, 760, 798, 872, 919, 920, 983, 1011, 1015, 1046, 1052, 1066, 1116, 1118, 1129, 1137, 1160, 1291, 1364, 1391, 1405, 1416, 1463, 1493, 1524, 1554, 1555, 1594, 1598, 1605, 1607, 1608, 1612, 1613, 1614, 1628, 1633, 1635, 1639, 1684, 1694, 1699, 1701, 1714, 1749, 1872, 1880, 1908, 1942, 1947, 1984, 2040, 2041, 2042, 2061, 2073. The undersigned Judge expresses his sincere gratitude to Special Master Poppiti for all of the hard work he put into this matter, which has assisted the Court tremendously in its handling of these cases.

[4]Plaintiffs contend that the standard of review as to all of their objections is de novo. (Tr. at 6-7) Intel agrees that a de novo standard applies to the Court's review of the Special Master's recommendations to deny class certification and to exclude Leffler's opinions under *Daubert*. (D.I. 2091 at 34)

## MOTION TO CERTIFY

Plaintiffs filed their Motion to Certify on May 16, 2008. (D.I. 753) Plaintiffs seek certification of a nationwide class for injunctive relief under the Sherman Act § 2, pursuant to Fed. R. Civ. P. 23(b)(2), and a nationwide class for monetary relief under California law, pursuant to Fed. R. Civ. P. 23(b)(3). (*Id.*)

After filing extensive briefing, the parties appeared before the Special Master in April, 2010 for a three-day evidentiary hearing. On July 28, 2010, the Special Master issued an exhaustive, 111-page Report and Recommendation recommending denial of the Motion to Certify (and grant of Defendant's Motion to Exclude). (D.I. 2073) ("R&R")

Plaintiffs filed objections on October 4, 2010. (D.I. 2078) The objections run to 74 pages. (*Id.*) Defendant answered the objections with its own brief of 75 pages on November 15, 2010. (D.I. 2091) Plaintiffs replied, in a brief of 30 pages, on December 10, 2010. (D.I. 2097) The Court heard oral argument on Plaintiffs' objections on March 2, 2011. (*See* Mar. 2, 2011 hearing transcript, C.A. 05-md-1717 D.I. 2504) ("Tr.")

The Court has now decided that additional briefing and an evidentiary hearing will be necessary to enable to the Court to rule on the objections to the R&R and resolve the Motion to Certify (and Motion to Exclude). The reasons for the Court's decision are as follows:

1. *The Necessity to Make Credibility Determinations*

The parties agree that a substantial motivating factor behind the Special Master's recommendation to deny the Motion to Certify was the Special Master's assessment that Plaintiff's expert, Dr. Keith Leffler, was not credible. The Special Master's finding that Dr. Leffler lacked credibility is prevalent throughout the R&R. As defense counsel observed at the

hearing before this Court, "it's not just one or two times that he found credibility problems. He found it again and again and again. And you will see [it] throughout the report . . . ." (Tr. at 72; *see also id.* at 67 (same stating: "He drew some highly specific and highly critical conclusions about the credibility of expert testimony. . . . [H]e made very clear specific findings about Dr. Leffler's credibility, not just on one or two points but again and again and again."); D.I. 2091 at 35 (citing R&R at pp. 39, 48, and 88 as examples where Special Master found Leffler not to be credible))

The Court does not have a "firm conviction" that the Special Master's assessment of Dr. Leffler's credibility was wrong.[5] However, neither is the Court persuaded on the paper record before it that Dr. Leffler lacks sufficient credibility to be relied on as an adequate basis for granting the Motion to Certify. Therefore, the Court has decided that the most appropriate course to pursue under the circumstances is to conduct additional evidentiary proceedings, during which the Court can observe Dr. Leffler's testimony for itself and make its own credibility determination. (*See* Fed. R. Civ. Proc. 53(f)(1); Tr. at 62-63 (Plaintiffs' counsel stating, "I think if your Honor really did have concerns about the credibility issue, we could obviously bring Dr. Leffler back to testify before your Honor, and I think that would be the best way to handle that."))

---

[5]Intel argues for a deferential standard of review of the Special Master's credibility determinations, to which Intel would have the Court accord "due regard" and reject only if the Court has a "'definite and firm conviction that a mistake has been committed.'" (D.I. 2091 at 35) (quoting *In re J.A.R. Barge Lines, LP*, 2007 WL 674348, at *18 (W.D. Pa. Feb. 28, 2007; *see also* Tr. at 67) As explained above, the Court will be making its own credibility assessment by observing Dr. Leffler's testimony at a forthcoming hearing.

5

2. *The Court Will Allow Dr. Leffler's Rebuttal Analyses*

As noted, the Court is reserving judgment on the Motion to Exclude. The Court will decide whether to exclude Dr. Leffler's testimony after making its own assessment of his credibility at the forthcoming evidentiary hearing.

The Special Master, in addition to recommending the exclusion of Dr. Leffler's testimony, also prevented Dr. Leffler from presenting certain analyses Plaintiff characterized as rebuttal analyses. Specifically, on March 27, 2010, Plaintiffs submitted fifteen analyses Dr. Leffler intended to rely on to rebut arguments raised in Defendant's expert's reply. (D.I. 2078 at 6) Defendant moved to preclude these analyses. (D.I. 1993) On April 9, 2010, during a teleconference, the Special Master excluded 14 of the 15 analyses as improper rebuttal, and subsequently filed a Report & Recommendation on June 2, 2010, excluding the 14 of 15 analyses. (D.I. 2061) ("June 2 R&R")[6] During the three-day hearing, when Plaintiffs sought to introduce rebuttal testimony from Dr. Leffler, Intel objected, and the Special Master sustained the objection, finding Leffler's analysis was "untimely and prejudicial to Intel." (R&R at 48)

In Defendant's view, the exclusion of the rebuttal analyses was a procedural decision, which the Court may reject only if it finds the Special Master committed an abuse of discretion. (*See* Tr. at 105; D.I. 2091 at 35) Moreover, in Defendant's view, Plaintiff has lost the opportunity to seek further review of the exclusion of the rebuttal analyses because Plaintiff did not file objections to the June 2 R&R. (*See* Tr. at 116-19)

The Court agrees with Plaintiffs that Leffler's rebuttal analyses constitute proper rebuttal.

---

[6]Intel did not object to Leffler's general discussion of the 15th issue at the hearing. (D.I. 2091 at 23 n.24; *see also id.* at 70 n.54)

They concern the same subject matter as the opinions of Mr. Kaplan, the expert Plaintiffs seek to rebut, and they are consistent with Dr. Leffler's prior opinions. Therefore, they are being offered only to contradict or challenge Mr. Kaplan's opinions. *See* Fed. R. Civ. P. 26(a)(2)(C)(ii); *U.S. v. Chrzanowski*, 502 F.2d 573, 576 (3d Cir. 1974).

It is not entirely clear to the Court whether the rebuttal analyses were timely, and it is difficult for the Court at this distance to evaluate the degree of prejudice Intel suffered from the timing of the disclosure of these analyses. (*Compare* D.I. 2078 at 71 *and* D.I. 2097 at 30 *with* D.I. 2091 at 74) Nevertheless, given that the Court will be conducting additional proceedings, Intel will have more than sufficient time to prepare for how it will deal with the rebuttal analyses.

To the extent Plaintiff forfeited its opportunity to file objections to the June 2 R&R, the Court nonetheless has discretion, as part of its review of the objections to the Motion to Certify/Motion to Exclude R&R, to "receive" evidence. *See* Fed. R. Civ. P. 53(f)(1); *see also* D.I. 2078 at 12; D.I. 2097 at 29 n.24. Part of the evidence the Court wishes to evaluate as it resolves those objections is Dr. Leffler's rebuttal analyses.[7] Accordingly, Dr. Leffler will be permitted to testify consistent with his rebuttal analyses at the forthcoming hearing on the Motion to Certify, and evidence of those analyses may be offered.[8]

That the Court needs to evaluate rebuttal analyses which the Special Master did not allow

---

[7]Hence, the Court does not believe it must conclude (and has not concluded) that the Special Master abused his discretion in order to exercise its own discretion to permit the rebuttal analyses to be part of the subject of the forthcoming hearing.

[8]The Court is not ruling on the Motion to Exclude. It is possible that an ultimate determination to grant the Motion to Exclude will cause the Court to exclude some or all of the rebuttal analyses, but that is a decision that will be made following the forthcoming evidentiary hearing. At that hearing, the Court will permit Plaintiffs to present Leffler's rebuttal analyses.

7

to be part of the record on the Motion to Certify provides another reason for the Court's decision to order additional evidentiary proceedings.

3. *The Size of This Case is Enormous*

By any measure, this is an enormous case. It involves 56 individual actions, consolidated for multi-district litigation. Plaintiffs allege that between $3 billion and $6 billion are at issue. (Tr. at 96-97; D.I. 2078 at 14 ("Intel overcharged its customers in excess of $4 billion.")) The proposed nationwide class consists of millions of consumers who made millions of computer purchases. As defense counsel summarized at oral argument: "you have a class that covers about five years of transactions, . . . over 200 million transactions, millions and millions of class members, and they're not out there buying a commodity, they're out there buying personal computers . . . that encompass . . . almost 2,000 different Intel microprocessors." (Tr. at 76-77; *see also* R&R at 52 ("The proposed class potentially consists of millions of members . . . ."))

Discovery has also been massive. Indeed, "it has been described as the largest document discovery antitrust case in history." (Tr. at 63; *see also* D.I. 2091 at 10 ("Discovery in the consolidated cases [including *Advanced Micro Devices, Inc. v. Intel Corporation*, C.A. No. 05-441-JJF] yielded one of the largest records in any private antitrust litigation in history. Intel produced some 14 million e-mails – hundreds of millions of pages of documents in total – and its current and former employees for over 180 deposition days. Discovery of AMD yielded millions more documents and over 170 days of testimony. Intel, AMD, and plaintiffs also took document and deposition discovery from dozens of third parties, including all major computer OEMs [original equipment manufacturers], distributors, and retailers. In addition, Intel deposed 91 class representatives.")) The record before the Special Master on the Motion to Certify included

8

over 1,300 pages of briefing and expert declarations. (D.I. 2091 at 24)

Given the vastness of the information the Court must analyze, the number of individuals whose interests are implicated, and the amount of money at stake, the Court deems it appropriate to conduct additional proceedings before making a decision on the Motion to Certify.

4.   *Plaintiffs Have Focused Their Allegations*

The Special Master's concerns with Dr. Leffler's (and Plaintiffs') credibility appear to stem, in part, from "the long, winding road of contradictory positions taken by Class Plaintiffs from May 2006 to April 2010," before Plaintiffs came to their final theory of their case. (R&R at 65; *see also* Tr. at 63 (Plaintiffs' counsel stating, "There has been, I will freely admit, an evolution in his [Dr. Leffler's] thinking."); *id.* at 130 (describing "an evolution in Dr. Leffler's opinion" as to whether all money paid by Intel to OEMs as lump sums were "for loyalty" or whether, as he later came to believe, some portion was passed on to consumers as lawful discounts)) Plaintiffs have now committed to a theory – and they will be held to it. The only payments Plaintiffs are now challenging as unlawful are the lump sum payments from Intel to OEMs that were not used for discounting the price of computers sold to consumers. (Tr. at 55; *see also id.* at 127 ("To the extent the OEMs used the lump sum payments for discounting, those are discounts. And we're not challenging them. . . . To the extent the lump sum money was put to the bottom line as a loyalty payment, that is what we're challenging as unlawful. And that was not passed on to consumers. No consumer benefitted from that."); D.I. 2078 at 38 ("Plaintiffs only challenge the Intel payments that were used to secure OEMs' loyalty. . . . [N]one of the payments that Plaintiffs challenge were passed through to customers . . . ."))

Dr. Leffler will be subject to examination on how his theory has changed and "evolved"

9

over the course of this litigation. Nonetheless, the fact that Plaintiffs are now firmly committed to a relatively narrower theory of liability will enable the parties – and the Court – to focus on the credibility of the testimony related to this theory.

5. *The Court May Agree with Plaintiffs that Their Theory Can Be Proven through Common Evidence*

Intel contends that the key issue before the Court is the "lack of common proof of impact," which "alone, precludes certification." (D.I. 2091 at 2; *see also id.* at 42 n.38 ("The failure of common proof of impact was and is the focus of Intel's arguments, from beginning to end.")) Intel argues forcefully that "the fundamental problem in this case" is that Plaintiffs are "essentially . . . turning these Intel discounts into some kind of overcharges and trying to account for the benefits that accrued to class members." (Tr. at 71-72) The Special Master agreed with Intel, concluding as a result that Plaintiffs could not show that purported overcharges to consumers could be proven through common evidence. (*See, e.g.*, R&R at 65)

Plaintiffs respond that their theory is that "in the but for world, the same price reductions we think would have occurred but from a lower level. So if a customer, in fact, got a reduction in price as a result of some discount that Intel gave to the OEMs, we assume in the but for world that Intel is continuing to discount to try to get business and is doing it a lot more because they're actually facing real competition from AMD instead of this entrenchment monopoly position they have." (Tr. at 29; *see also id.* at 140 ("[I]t's our position that but for Intel's conduct in this case, the entire water table would have been lowered. . . . [I]n the but for world, everything gets lowered, everything."); D.I. 2078 at 8 ("The differences between individuals and enterprise purchasers identified by the Special Master, such as the existence of individualized negotiations

(R&R at 54), are not 'meaningful' in the class certification context because they would continue to exist in the but-for world of greater competition. However, in the but for world, the price negotiations between OEMs and their enterprise customers would have begun 'from a revised lower cost basis.'"); *id.* at 14 n.8 ("Plaintiffs' theory of consumer harm correctly stated is: Net of all adjustment to price, Intel's microprocessor prices would have been lower in the but-for world of greater competition."))

On de novo review, the Court may agree with Plaintiffs. But the Court needs to see the witnesses itself before it can reach any final conclusion.

6. *The Law Requires the Court to Undertake a "rigorous assessment"*

The Third Circuit, in *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 311-12 (3d Cir. 2008), stated: "[T]he task for plaintiffs . . . is to demonstrate that the element of antitrust impact is capable of proof at trial through evidence that is common to the class rather than individual to its members. Deciding this issue calls for the district court's rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove impact at trial." More generally, "proper analysis under Rule 23 requires rigorous consideration of all the evidence and arguments offered by the parties." *Id.* at 321. "Expert opinion with respect to class certification, like any matter relevant to a Rule 23 requirement, calls for rigorous analysis. . . . Weighing conflicting expert testimony at the certification stage is not only permissible; it may be integral to the rigorous analysis Rule 23 demands. . . . Rigorous analysis need not be hampered by a concern for avoiding credibility issues . . . ." *Id.* at 323-24.

The Court's ability to undertake the required "rigorous assessment" will be aided by the

11

further proceedings the Court is ordering.

7. *The Court Needs the Parties' Assistance on the Impact of Subsequent Authorities*

Yet another reason the Court has decided to conduct additional proceedings before ruling on the Motion to Certify is that numerous decisions relating to the certification of class actions have been issued in the years since the Motion to Certify was originally filed. More particularly, in the time since the Court heard argument on the objections in March 2011, the Supreme Court and the Third Circuit have handed down seemingly pertinent decisions. Indeed, subsequent to that hearing, the parties have submitted multiple letters, advising the Court of supplemental authorities one or both sides believe are pertinent to the issues pending before the Court. (*See* D.I. 2505 (citing *Wal–Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541 (2011)); D.I. 2507 (discussing *Wal-Mart*); D.I. 2511 (citing *Behrend v. Comcast Corp.*, 655 F.3d 182 (3d Cir. 2011)); D.I. 2512 (discussing *Behrend*); D.I. 2514 (citing *Sullivan v. DB Invs., Inc.*, 667 F.3d 373 (3d Cir. 2011)); D.I. 2515 (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012)); D.I. 2516 (citing *In Re K-Dur Antitrust Litig.*, 686 F.3d 197 (3d Cir. 2012))) Additionally, the undersigned judge has recently decided several motions to certify a class. *See Yarger v. ING Bank, FSB*, 2012 WL 3776012 (D. Del. Aug. 27, 2012); *O'Gara ex rel. Estate of Portnick v. Countrywide Home Loans, Inc.*, 282 F.R.D. 81 (D. Del. 2012).

The Court will require additional briefing from the parties addressing the impact, if any, of these and other recent decisions on the issues presented by Plaintiffs' Motion to Certify and Plaintiffs' objections to the R&R.

## MOTION TO EXCLUDE

On October 30, 2008, Defendant filed a motion to exclude the testimony of Plaintiffs'

12

expert, Dr. Keith Leffler. (D.I. 1062) In his July 28, 2010 R&R, the Special Master recommended that the Motion to Exclude be granted. (D.I. 2074)

For the same reasons given above in connection with the Motion to Certify, the Court has likewise concluded that additional proceedings – including an evidentiary hearing at which it can observe Dr. Leffler's testimony for itself – are required before the Court will be in a position to resolve Plaintiffs' objections to the Special Master's recommendation to grant the Motion to Exclude.

## CONCLUSION

The Court regrets the length of time it has taken it to reach today's interim decision.[9] The Court further regrets that its determination will put the parties to some degree of redundant effort. Nonetheless, for the reasons stated above, the Court has determined that additional proceedings will be required before it can resolve the objections and rule on the Motion to Certify and the Motion to Exclude.

Accordingly, consistent with this Memorandum Order, the Court will set a date for an evidentiary hearing and additional briefing. Before proceeding the Court will direct the parties to submit their proposal(s) for precisely how and on what schedule the Court should proceed.

---

[9] The class period ended on March 31, 2006. (Tr. at 68) In part as a result, both sides at the March 2011 hearing urged the Court to take the time it deemed necessary to resolve the issues before it. *See* Tr. at 34 (Plaintiffs' counsel: "I don't want to urge that the time that you devote be any quicker than [necessary]. . . . [W]e would like to get on with it and get to the merits of the case and get a trial date. . . . [W]e want your Honor to take the time and look at it and come to what we believe strongly is the correct conclusion . . . ."); *id.* at 68 (Defense counsel agreeing: "I also think you need to take the time, and I think here you have the luxury of time. . . . [I]n terms of urgency, there is nothing in particular other than the ordinary administration of justice that would require any particular speed with respect to your Honor's deliberations.").

13

**IT IS HEREBY ORDERED THAT**:

1. The parties shall meet and confer and file a joint status report, outlining their proposal(s) for proceeding consistent with this Memorandum Order, no later than October 15, 2012.

2. The following motions are **TERMINATED**:

    a. Amended Motion to Modify Protective Order and Approve Protocol for Unsealing Documents (C.A. 05-485-LPS D.I. 1302; C.A. 05-md-1717-LPS D.I. 1520).

    b. Plaintiffs' Motion for Sanctions for Intel's Failure to Preserve Evidence (C.A. 05-485-LPS D.I. 1897; C.A. 05-md-1717-LPS 2291).

    c. Intel's Motion to Strike the Declaration of Shaun M. Simmons (C.A. 05-485-LPS D.I. 1957; C.A. 05-md-1717-LPS D.I. 2354).

Dated: September 28, 2012                             UNITED STATES DISTRICT JUDGE